JORDAN ETH (CA SBN 121617)
JEth@mofo.com
DAVID J. WIENER (CA SBN 291659)
DWiener@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105
Telephone:     (415) 268-7000
Facsimile:      (415) 268-7522

WILLIAM SAVITT (admitted *pro hac vice*)
WDSavitt@wlrk.com
SARAH K. EDDY (admitted *pro hac vice*)
SKEddy@wlrk.com
WACHTELL, LIPTON, ROSEN & KATZ
51 West 52nd Street
New York, NY 10019
Telephone:     (212) 403-1000
Facsimile:      (212) 403-2000

*Attorneys for Defendants Samuel Altman, Gregory Brockman,*
*OpenAI, Inc., OpenAI L.P., OpenAI, L.L.C., OpenAI GP, L.L.C.,*
*OpenAI OpCo, LLC, OpenAI Global, LLC, OAI Corporation, LLC,*
*OpenAI Holdings, LLC, OpenAI Startup Fund Management, LLC,*
*OpenAI Startup Fund GP I, L.L.C., OpenAI Startup Fund I, L.P.,*
*OpenAI Startup Fund SPV GP I, L.L.C., OpenAI Startup Fund SPV GP II, L.L.C.,*
*OpenAI Startup Fund SPV GP III, L.L.C., OpenAI Startup Fund SPV GP IV, L.L.C.,*
*OpenAI Startup Fund SPV I, L.P., OpenAI Startup Fund SPV II, L.P.,*
*OpenAI Startup Fund SPV III, L.P., OpenAI Startup Fund SPV IV, L.P.,*
*Aestas Management Company, LLC, and Aestas LLC*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| ELON MUSK,<br><br>                    Plaintiff,<br><br>     v.<br><br>SAMUEL ALTMAN, et al.,<br><br>                    Defendants. | Case No. 4:24-cv-04722-YGR<br><br>**OPENAI DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT OF PLAINTIFF ELON MUSK; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:  November 12, 2024<br>Time:  2:00 p.m.<br>Courtroom:  1 – 4th Floor<br>Judge:  Hon. Yvonne Gonzalez Rogers<br>Compl. Filed:  August 5, 2024 |

**NOTICE OF MOTION TO DISMISS**

TO ALL PARTIES AND THEIR COUNSEL: Please take notice that on November 12, 2024 at 2:00 p.m., or at such other time as the matter may be heard, in the courtroom of the Honorable Yvonne Gonzalez Rogers, in Courtroom 1 of the U.S. District Court for the Northern District of California, 1301 Clay Street, Oakland, CA 94612, Defendants Samuel Altman, Gregory Brockman, OpenAI, Inc., OpenAI L.P., OpenAI, L.L.C., OpenAI GP, L.L.C., OpenAI OpCo, LLC, OpenAI Global, LLC, OAI Corporation, LLC, OpenAI Holdings, LLC, OpenAI Startup Fund Management, LLC, OpenAI Startup Fund GP I, L.L.C., OpenAI Startup Fund I, L.P., OpenAI Startup Fund SPV GP I, L.L.C., OpenAI Startup Fund SPV GP II, L.L.C., OpenAI Startup Fund SPV GP III, L.L.C., OpenAI Startup Fund SPV GP IV, L.L.C., OpenAI Startup Fund SPV I, L.P., OpenAI Startup Fund SPV II, L.P., OpenAI Startup Fund SPV III, L.P., OpenAI Startup Fund SPV IV, L.P., Aestas Management Company, LLC, and Aestas LLC (the "OpenAI Defendants") will, and hereby do, move the Court pursuant to Federal Rules of Civil Procedure 8, 9(b), and 12(b)(6), for an order dismissing the complaint of Plaintiff Elon Musk dated August 5, 2024.

The OpenAI Defendants' motion is based on this Notice of Motion and Motion to Dismiss, the accompanying Memorandum of Points and Authorities, the OpenAI Defendants' Request for Judicial Notice, the Declaration of David J. Wiener and exhibits attached thereto, and such other argument and materials as may be presented before the Court takes this matter under submission.

**STATEMENT OF ISSUES TO BE DECIDED**

1.       Whether Musk's contract claims (Counts VI, VII, VIII, XIV) should be dismissed for failure to plausibly plead either (a) mutual assent to the terms alleged to have been breached or (b) bargained-for consideration.

2.       Whether Musk's claim for breach of the implied covenant of good faith and fair dealing (Count VIII) should be dismissed for the additional, independent reason that it is based on the same conduct as his contract claims and is thus impermissibly duplicative.

3.       Whether Musk's claim for tortious interference with contract (Count XIV) should be dismissed for the additional, independent reasons that: (a) the "OpenAI For-Profit Entities," as alleged agents of a party to the purported contract, cannot be liable for tortious interference; and (b) Musk fails to plead an intentional act directed at disturbing a contract.

4.       Whether Musk's claims for promissory fraud (Count I), aiding and abetting fraud (Count III), violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c) (Count IV), conspiracy to violate RICO, 18 U.S.C. § 1962(d) (Count V), and unjust enrichment (Count IX) should be dismissed for: (a) failure to plausibly plead a cognizable promise made to Musk by any OpenAI Defendant; and (b) failure to plead with the requisite particularity the other elements of fraud, including falsity of any purported promise and fraudulent intent.

5.       Whether Musk's claim for aiding and abetting fraud (Count III) should be dismissed for the additional, independent reasons that: (a) Musk fails to adequately allege that the OpenAI For-Profit Entities substantially assisted in the purported underlying fraud; and (b) the claim runs afoul of the agency immunity rule.

6.       Whether Musk's claims for violation of RICO (Count IV) and conspiracy to violate RICO (Count V) should be dismissed for the additional, independent reasons that Musk: (a) fails to allege with particularity all the elements of the RICO predicate of wire fraud; and (b) does not adequately plead conduct of an enterprise.

7.       Whether Musk's claims for constructive fraud (Count II), unfair competition under Cal. Bus. & Prof. Code §§ 17200 *et seq.* (Count XI), and aiding and abetting breach of fiduciary

duty (Count XIII) should be dismissed because: (a) as a non-profit donor with no reversionary interest in OpenAI's assets, Musk lacks standing to assert breach of fiduciary duty in connection with OpenAI's alleged misuse of his donations; and (b) Musk fails to allege particularized facts to support these claims.

8.     Whether Musk's claim for unfair competition under Cal. Bus. & Prof. Code §§ 17200 *et seq.* (Count XI) should be dismissed for the additional, independent reason that he fails to identify the statutory prong or the source of law that purportedly grounds the claim.

9.     Whether Musk's claim for aiding and abetting breach of fiduciary duty (Count XIII) should be dismissed for the additional, independent reason that it is barred under the agency immunity rule.

10.     Whether Musk's claims for false advertising under the Lanham Act, 15 U.S.C. § 1125(a)(1)(B) (Count X), and California's false advertising statute, Cal. Bus. & Prof. Code §§ 17500 *et seq.* (Count XII), should be dismissed because Musk: (a) identifies no commercial advertisement or statement made primarily out of economic motivation; and (b) fails to allege particularized facts to support these claims.

11.     Whether Musk's claim for false advertising under the Lanham Act (Count X) should be dismissed for the additional, independent reason that Musk's failure to allege a cognizable commercial injury deprives him of standing.

12.     Whether Musk's claim for declaratory relief (Count XV) should be dismissed because: (a) Musk pleads no viable claim for which the Court may order declaratory relief; and (b) Musk's request for declaratory relief is redundant of his other claims.

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................. 1

BACKGROUND ................................................................................................................... 3

I.     MUSK'S ALLEGATIONS ........................................................................................ 3

II.    MUSK'S STATE COURT SUIT ............................................................................... 4

III.   THIS ACTION ........................................................................................................... 5

ARGUMENT ........................................................................................................................ 6

I.     MUSK'S ALLEGATIONS CANNOT SUPPORT ANY CONTRACT CLAIM. ............. 6

       A.     Musk does not plead an express contract. ........................................................ 7

       B.     Musk does not plead an implied contract. ...................................................... 10

       C.     Musk's implied covenant and tortious interference claims cannot
              stand absent a contract, and fail for other reasons as well. .................................. 11

II.    MUSK'S ALLEGATIONS CANNOT SUPPORT ANY FRAUD CLAIM. ................... 13

       A.     Musk does not plead promissory fraud. ......................................................... 14

       B.     Musk's duplicative claim for unjust enrichment falls with his fraud claim. ......... 15

       C.     Musk does not plead aiding and abetting fraud. ............................................. 16

       D.     Musk does not plead the RICO predicate of wire fraud. ................................. 17

III.   MUSK'S RICO CLAIMS ARE SEPARATELY UNTENABLE FOR
       FAILURE TO PLEAD CONDUCT OF AN ENTERPRISE. ......................................... 18

IV.    MUSK LACKS STANDING TO ASSERT HIS FIDUCIARY CLAIMS,
       WHICH ARE IN ANY EVENT NOT COGNIZABLE. .................................................. 19

       A.     Musk's constructive fraud claim cannot stand. .............................................. 20

       B.     Musk's UCL claim cannot stand. ................................................................... 21

       C.     Musk does not plead aiding and abetting fiduciary breach. ............................. 22

V.     MUSK'S CLAIMS FOR FALSE ADVERTISING SHOULD BE DISMISSED. ........... 22

VI.    MUSK'S CLAIM FOR DECLARATORY RELIEF SHOULD BE DISMISSED. ......... 24

CONCLUSION ................................................................................................................... 24

1

**TABLE OF AUTHORITIES**

2

**Page(s)**

3

**Cases**

4

*Allen* v. *Ocwen Loan Servicing, LLC*,

5
2019 WL 13254112 (N.D. Cal. June 12, 2019) ...................................................... 17

6

*Allied Anesthesia Med. Grp., Inc.* v. *Inland Empire Health Plan*,
80 Cal. App. 5th 794 (2022). ................................................................... 10

7

8

*Am. Emps. Grp., Inc.* v. *Emp. Dev. Dep't*,
154 Cal. App. 4th 836 (2007) ................................................................... 8

9

*AngioScore, Inc.* v. *TriReme Med., LLC*,

10
70 F. Supp. 3d 951 (N.D. Cal. 2014) ................................................................... 16

11

*Aniel* v. *PHH Mortg. Corp.*,
2022 WL 2164702 (N.D. Cal. June 1, 2022) ...................................................... 17

12

13

*Ashcroft* v. *Iqbal*,
556 U.S. 662 (2009) ................................................................... 6

14

*Behnke* v. *State Farm Gen. Ins. Co.*,

15
196 Cal. App. 4th 1443 (2011) ................................................................... 14

16

*Bernardo* v. *Planned Parenthood Fed'n of Am.*,
115 Cal. App. 4th 322 (2004) ................................................................... 23

17

*Berryman* v. *Merit Prop. Mgmt., Inc.*,

18
152 Cal. App. 4th 1544 (2007) ................................................................... 21

19

*Casey* v. *U.S. Bank Nat'l Ass'n*,

20
127 Cal. App. 4th 1138 (2005) ................................................................... 16

21

*Charlotte's Web, Inc.* v. *AAXLL Supply Co. LLC*,
2020 WL 6891876 (N.D. Cal. Nov. 24, 2020)...................................................... 23

22

*Children's Health Def.* v. *Meta Platforms, Inc.*,

23
112 F.4th 742 (9th Cir. 2024) ................................................................... 22, 23

24

*Cisco Sys., Inc.* v. *Dexon Comput., Inc.*,
2022 WL 2222962 (N.D. Cal. June 21, 2022) ...................................................... 24

25

*County of Marin* v. *Deloitte Consulting LLP*,

26
836 F. Supp. 2d 1030 (N.D. Cal. 2011) ................................................................... 17

27

*Davidson* v. *Sprout Foods, Inc.*,

28
106 F.4th 842 (9th Cir. 2024) ................................................................... 23-24

*Davis* v. *Nadrich*,
  174 Cal. App. 4th 1 (2009) ................................................................. 13

*Desoto* v. *Condon*,
  371 Fed. App'x 822 (9th Cir. 2010) .................................................. 18

*Ebeid ex rel. U.S.* v. *Lungwitz*,
  616 F.3d 993 (9th Cir. 2010) ............................................................ 6

*Eclectic Props. E., LLC* v. *Marcus & Millichap Co.*,
  751 F.3d 990 (9th Cir. 2014) ............................................................ 17

*EcoHub, LLC* v. *Recology Inc.*,
  2023 WL 3852700 (N.D. Cal. June 6, 2023) .................................... 22

*Ellis* v. *J.P. Morgan Chase & Co.*,
  950 F. Supp. 2d 1062 (N.D. Cal. June 13, 2013) ............................. 19

*Ferrari* v. *Mercedes-Benz USA, LLC*,
  2016 WL 7188030 (N.D. Cal. Dec. 12, 2016) ................................. 18

*Flores* v. *EMC Mortg. Co.*,
  997 F. Supp. 2d 1088 (E.D. Cal. 2014) ........................................ 21-22

*Gregory* v. *Albertson's, Inc.*,
  104 Cal. App. 4th 845 (2002) ........................................................... 21

*Haskins* v. *Symantec Corp.*,
  2013 WL 6234610 (N.D. Cal. Dec. 2, 2013) ..................................... 9

*Haskins* v. *Symantec Corp.*,
  2014 WL 2450996 (N.D. Cal. June 2, 2024) ................................... 11

*Heritage Pac. Fin., LLC* v. *Monroy*,
  215 Cal. App. 4th 972 (2013) ............................................................ 7

*HomeLight, Inc.* v. *Shkipin*,
  694 F. Supp. 3d 1242 (N.D. Cal. 2023) ........................................... 23

*Horiike* v. *Humane Soc'y of the U.S.*,
  2016 WL 11744969 (C.D. Cal. June 20, 2016) ..................... 19, 20, 21

*Hsu* v. *OZ Optics, Ltd.*,
  211 F.R.D. 615 (N.D. Cal. 2002) ...................................................... 15

*In re Apple Inc. Device Performance Litig.*,
  386 F. Supp. 3d 1155 (N.D. Cal. 2019) .............................................. 9

*In re iPhone Application Litig.*,
  2011 WL 4403963 (N.D. Cal. Sept. 20, 2011) ................................ 12

*In re Mortg. Fund '08 LLC*,
527 B.R. 351 (N.D. Cal. 2015) ......................................................................... 22

*Ixchel Pharma, LLC* v. *Biogen, Inc.*,
9 Cal. 5th 1130 (2020) ............................................................................... 12, 13

*Jara* v. *Suprema Meats, Inc.*,
121 Cal. App. 4th 1238 (2004) ....................................................................... 10

*JMP Secs. LLP* v. *Altair Nanotechnologies Inc.*,
880 F. Supp. 2d 1029 (N.D. Cal. 2012) .......................................................... 13

*Kearns* v. *Ford Motor Co.*,
567 F.3d 1120 (9th Cir. 2009) ........................................................................ 21

*Klein* v. *Anaheim Memorial Hosp. Ass'n*,
2009 WL 3233914 (Cal. Ct. App. Oct. 8, 2009) ........................................... 8 n.9

*Langan* v. *United Servs. Auto. Ass'n*,
69 F. Supp. 3d 965 (N.D. Cal. 2014) ............................................................ 7, 12

*Lazar* v. *Hertz Corp.*,
69 Cal. App. 4th 1494 (1999) ......................................................................... 21

*Levy* v. *Only Cremations for Pets, Inc.*,
57 Cal. App. 5th 203 (2020) .......................................................................... 10

*Louis* v. *Nailtiques Cosmetic Corp.*,
423 Fed. App'x 711 (9th Cir. 2011) ............................................................... 14

*Markels* v. *AARP*,
689 F. Supp. 3d 722 (N.D. Cal. 2023) ........................................................... 15

*McGraw Co.* v. *Aegis Gen. Ins. Agency, Inc.*,
2016 WL 3745063 (N.D. Cal. July 13, 2016) ................................................ 16

*Meyer* v. *One West Bank, F.S.B.*,
91 F. Supp. 3d 1177 (C.D. Cal. 2015) ........................................................... 17

*Mintz* v. *Blue Cross of Cal.*,
172 Cal. App. 4th 1594 (2009) ....................................................................... 12

*Navient Sols., LLC* v. *BPG Office Partners XIII Iron Hill LLC*,
2023 WL 3120644 (Del. Super. Ct. Apr. 27, 2023) ...................................... 8 n.9

*Neder* v. *United States*,
527 U.S. 1 (1999) ........................................................................................... 17

*Netbula, LLC* v. *BindView Dev. Corp.*,
516 F. Supp. 2d 1137 (N.D. Cal. 2007) ........................................................... 9

*Oberly* v. *Howard Hughes Med. Inst.*,
    472 A.2d 366 (Del. Ch. 1984) ......................................................................... 8 n.9

*Oberly* v. *Kirby*,
    592 A.2d 445 (Del. 1991) ............................................................................... 8 n.9

*OpenAI, Inc.* v. *Open Artificial Intelligence, Inc. et al.*,
    No. 23-cv-03918-YGR (N.D. Cal. Sept. 25, 2024)............................................. 23

*Orcilla* v. *Big Sur, Inc.*,
    244 Cal. App. 4th 982 (2016) ............................................................................. 10

*Pac. Bay Recovery, Inc.* v. *Cal. Physicians' Servs., Inc.*,
    12 Cal. App. 5th 200 (2017) ............................................................................. 7, 8

*Pac. Recovery Sols.* v. *United Behav. Health*,
    481 F. Supp. 3d 1011 (N.D. Cal. 2020) ......................................................... 6, 17

*Perkowski* v. *Belvill*,
    2020 WL 3891674 (C.D. Cal. Mar. 2, 2020) ....................................................... 15

*Peterson* v. *Cellco P'ship*,
    164 Cal. App. 4th 1583 (2008) ........................................................................... 15

*Pinkert* v. *Schwab Charitable Fund*,
    2021 WL 2476869 (N.D. Cal. June 17, 2021) ........................................ 19, 20, 21

*Prager University* v. *Google LLC*,
    951 F.3d 991 (9th Cir. 2020)............................................................................... 23

*Richardson* v. *Reliance Nat'l Indem. Co.*,
    2000 WL 284211 (N.D. Cal. Mar. 9, 2000).............................................. 13-14, 15

*Rigsby* v. *GoDaddy Inc.*,
    59 F.4th 998 (9th Cir. 2023) .............................................................................. 24

*Ross* v. *Sioux Honey Ass'n, Coop.*,
    2013 WL 146367 (N.D. Cal. Jan. 14, 2013) ....................................................... 11

*Sandy* v. *McClure*,
    676 F. Supp. 2d 866 (N.D. Cal. 2009) ............................................................... 15

*Sanford* v. *MemberWorks, Inc.*,
    625 F.3d 550 (9th Cir. 2010)......................................................................... 18 n.10

*Semegen* v. *Weidner*,
    2780 F.2d 727 (9th Cir. 1985)............................................................................... 6

*Seva* v. *Shri Shirdi Sai Baba Sansthin L.A.*,
    2013 WL 1431673 (C.D. Cal. Apr. 9, 2013) ....................................................... 18

ix

*Shoemaker* v. *Myers*,
52 Cal. 3d 1 (1990) ................................................................................................ 12

*Shvarts* v. *Budget Grp., Inc.*,
81 Cal. App. 4th 1153 (2000) ................................................................................ 21

*Smith* v. *GlaxoSmithKline Consumer Healthcare Holdings (US) LLC*,
660 F. Supp. 3d 863 (N.D. Cal. 2023) .................................................................. 13

*Sonoma Foods, Inc.* v. *Sonoma Cheese Factory, LLC*,
634 F. Supp. 2d 1009 (N.D. Cal. 2007) ........................................................... 20, 21

*Strome* v. *DBMK Enters., Inc.*,
2014 WL 6485533 (N.D. Cal. Nov. 19, 2014) ...................................................... 24

*UMG Recordings, Inc.* v. *Glob. Eagle Ent., Inc.*,
117 F. Supp. 3d 1092 (C.D. Cal. 2015) ................................................................ 15

*Valencia* v. *Sharp Elecs. Corp.*,
561 Fed. App'x 591 (9th Cir. 2014) ...................................................................... 15

*Verde Media Corp.* v. *Levi*,
2015 WL 374934 (N.D. Cal. Jan. 28, 2015) ................................................. *passim*

*Villains, Inc.* v. *Am. Economy Ins. Co.*,
870 F. Supp. 2d 792 (N.D. Cal. 2012) .................................................................. 16

*Weddington Prods., Inc.* v. *Flick*,
60 Cal. App. 4th 793 (1998) .................................................................................... 9

*Westron* v. *Zoom Video Commc'ns, Inc.*,
2023 WL 3149262 (N.D. Cal. Feb. 15, 2023) ...................................................... 12

*Wier* v. *Howard Hughes Med. Inst.*,
407 A.2d 1051 (Del. Ch. 1979) ......................................................................... 8 n.9

*Winebarger* v. *Pa. Higher Educ. Assistance Agency*,
411 F. Supp. 3d 1070 (C.D. Cal. 2019) ............................................................ 10-11

*Yari* v. *Producers Guild of Am., Inc.*,
161 Cal. App. 4th 172 (2008) ................................................................................ 11

*Yetter* v. *Ford Motor Co.*,
428 F. Supp. 3d 210 (N.D. Cal. 2019) ............................................................... 6, 13

*Zenith Ins. Co.* v. *O'Connor*,
148 Cal. App. 4th 998 (2007) ................................................................................ 10

**Statutes**

15 U.S.C. § 1125(a)(1)(B) ................................................................................................ 22

18 U.S.C. § 1962(c) .......................................................................................................... 17

18 U.S.C. § 1962(d) .................................................................................................... 18 n.10

Fed. R. Civ. Pro. 9(b) ................................................................................................. *passim*

Cal. Bus. & Prof. Code §§ 17500, *et seq.* .................................................................. 22, 23

Cal. Civ. Code § 1565 ........................................................................................................ 8

Cal. Civ. Code § 1573 ...................................................................................................... 20

Cal. Civ. Code § 1605 ...................................................................................................... 10

Cal. Corp. Code § 5142(a) ............................................................................................... 19

**Other Authorities**

Cade Metz, *Elon Musk Revives Lawsuit Against OpenAI and Sam Altman*,
    N.Y. TIMES (Aug. 5, 2024),
    https://www.nytimes.com/2024/08/05/technology/elon-musk-openai-
    lawsuit.html .................................................................................................. 1 n.2, 5 n.6

*Farnsworth on Contracts*, § 2.02 (4th ed. 2022) ........................................................... 10

Judicial Council of California Civil Jury Instruction 4111 *Constructive Fraud*
    (Cal. Civ. Code, § 1573) ............................................................................................. 20

Mike Scarcella, *Elon Musk Taps Copyright Law Vet Toberoff for OpenAI Lawsuit*,
    REUTERS (Aug. 7, 2024), https://www.reuters.com/legal/litigation/elon-musk-
    taps-copyright-law-vet-toberoff-openai-lawsuit-2024-08-07/ ...................... 1 n.2, 1 n.3, 5 n.7

Nick Robins-Early, *Elon Musk Sues OpenAI Again, Alleging 'Deceit of
    Shakespearean Proportions,'* GUARDIAN (Aug. 5, 2024),
    https://www.theguardian.com/technology/article/2024/aug/05/elon-musk-
    openai-lawsuit ............................................................................................................ 5 n.6

*OpenAI and Elon Musk*, OPENAI (Mar. 5, 2024) ....................................................... 5 n.8

Restatement (Second) of Contracts, § 71 ........................................................................ 10

1

**INTRODUCTION**

2          This suit is the latest move in Elon Musk's increasingly blusterous campaign to harass

3   OpenAI for his own competitive advantage. OpenAI is dedicated to the safe and beneficial

4   development of artificial general intelligence ("AGI"). Musk once supported OpenAI in that

5   mission, but abandoned the venture when his bid to dominate it failed. Since launching a competing

6   artificial intelligence company, xAI, Musk has been trying to leverage the judicial system for an

7   edge. The effort should fail; Musk's complaint does not state a claim and should be dismissed.

8          Earlier this year, Musk sued OpenAI entities and individuals in California Superior Court.

9   He claimed that OpenAI, Inc.'s Certificate of Incorporation ("COI"), an email with OpenAI CEO

10  Sam Altman from 2015, and a blog post from the same year together comprised an enforceable

11  written contract—a "Founding Agreement" in which all of the defendants purportedly promised

12  Musk they would open-source their latest technology and would not license it, nor grant a board

13  observer seat, to a for-profit company.[1] That state court action—which Musk's current counsel has

14  called a "Goldfish" that "lacked teeth"[2]—was dismissed on Musk's own initiative, hours before

15  argument on defendants' fully-briefed demurrer.

16         Two months later, Musk brought this action—boasting through counsel that the goldfish

17  has morphed into a "Great White."[3] How? Not with new evidence; the core documents and facts

18  alleged are the same. And not with a new narrative; this complaint, though more hyperbolic,

19  recycles the same story. Instead, what's new is that the carcass of the "Founding Agreement" (now

20  lowercased and shunted to the back of the complaint, *see* ¶ 248[4]) is larded with allegations of fraud,

21

22

[1] *See* Complaint, *Musk* v. *Altman et al.*, Case No. CGC-24-612746 (filed February 29, 2024)
23  ("OC"), included at Ex. A to the Declaration of David J. Wiener. Citations of "Ex." are to the
24  Wiener Declaration.

[2] *See* Cade Metz, *Elon Musk Revives Lawsuit Against OpenAI and Sam Altman*, N.Y. TIMES (Aug.
25  5, 2024), https://www.nytimes.com/2024/08/05/technology/elon-musk-openai-lawsuit.html; Mike
26  Scarcella, *Elon Musk Taps Copyright Law Vet Toberoff for OpenAI Lawsuit*, REUTERS (Aug. 7,
    2024), https://www.reuters.com/legal/litigation/elon-musk-taps-copyright-law-vet-toberoff-
27  openai-lawsuit-2024-08-07/.

[3] *See* Scarcella, *supra* note 2.
28
[4] Citations of "¶ __" are to Musk's complaint in this action.

racketeering, and false advertising. Citing RICO and the Lanham Act, Musk now claims entitlement to treble damages.

But Musk offers neither the factual nor the legal scaffolding needed to sustain his claims. His express contract claim (Count VI) pleads no mutual assent and no bargained-for consideration—the two essential elements of any contract. The same goes for Musk's implied contract claim (Count VII), pursuit of which Musk disclaimed in his earlier action. Musk's claims for breach of the implied covenant (Count VIII) and tortious interference (Count XIV) fall with his contract claims and fail for independent reasons.

Musk's new claim for promissory fraud (Count I) and its unjust enrichment tag-along (Count IX) are puffed-up versions of his untenable contract claims. Musk cannot clearly identify any promises made to him that were then broken, much less any facts supporting his spurious accusation of intent to defraud. He comes nowhere near satisfying the heightened pleading requirement of Federal Rule of Civil Procedure 9(b). Nor, as a result, can he sustain his aiding-and-abetting claim (Count III)—which is in any event asserted against entities that did not exist at the time of the purported false promises.

Musk's RICO claims (Counts IV and V), predicated on supposed acts of wire fraud, bear the same defects, and also rest on the implausible premise—supported by zero facts pleaded—that Altman, OpenAI President Greg Brockman, and various entities within and outside the OpenAI organization infiltrated and corrupted OpenAI, Inc. as the mob might a business.

Musk's claims for constructive fraud (Count II), unfair competition (Count XI), and aiding and abetting fiduciary breach (Count XIII) are improper efforts to avoid standing rules designed to prevent precisely what Musk is attempting here: using one's status as a non-profit donor to try to control the affairs of the non-profit.

Musk's claims for false advertising under California law and the Lanham Act fail for, among other things, want of an advertisement.

Finally, Musk's request for a judicial declaration respecting what constitutes AGI should be dismissed for lack of any well-pleaded substantive claim to ground it.

1    In short, Musk's second attempt to muster a cognizable legal claim against any of the
2    OpenAI Defendants fails in its entirety.

3                                       **BACKGROUND**

4    **I.     Musk's Allegations**

5          For purposes of this motion, the OpenAI Defendants accept as true the facts alleged in the
6    complaint and documents incorporated by reference therein.

7          In 2015, Altman, Brockman, and Musk launched OpenAI as a non-profit dedicated to
8    researching and developing artificial intelligence and AGI. ¶¶ 68-77. Altman proposed the idea for
9    the venture to Musk in May 2015. ¶ 70. He suggested "start[ing] an AI 'Manhattan
10   Project' . . . structure[d] [] so that the tech belongs to the world via some sort of nonprofit." *Id.* In
11   June 2015, Altman proposed that the new "AI lab" have the "mission" of "creat[ing] the first
12   general AI and us[ing] it for individual empowerment." ¶ 72. "[S]afety [would] be a first
13   class-requirement," and "[t]he technology would be owned by the foundation and used 'for the
14   good of the world.'" *Id.*; Ex. A (OC) at *41 (Ex. 2). Altman added, "[w]e'd have an ongoing
15   conversation about what work should be open-sourced and what shouldn't." Ex. A (OC) at *41
16   (Ex. 2).

17         Six months later, in December 2015, OpenAI, Inc. was incorporated as a non-profit entity
18   in Delaware. ¶ 75. Its COI stated that OpenAI would be a "nonprofit corporation organized
19   exclusively for charitable and/or educational purposes" and that it would seek to "open source" its
20   artificial intelligence technology "for the public benefit when applicable." *Id*. The public blog post
21   announcing OpenAI's founding named Altman and Musk as "co-chair[s]" and said the company's
22   core mission would be advancing AI "in the way that is most likely to benefit humanity as a whole,
23   unconstrained by a need to generate financial return." ¶ 76; Ex. A (OC) at *44, *46 (Ex. 3).

24         In 2016 and 2017, Musk made donations to OpenAI, Inc. of approximately $15 million and
25   $20 million, respectively. ¶ 82. He stepped down as co-chair on February 21, 2018. *Id.* Thereafter,
26   and until September 14, 2020, Musk made further contributions to OpenAI, Inc. totaling
27   approximately $9 million. *Id.* Musk also at one point leased OpenAI, Inc.'s office space and paid
28   its overhead expenses. *Id.*

OpenAI released the second generation of its "Generative Pre-Trained Transformer" model—GPT-2—in 2019. ¶ 114. As part of that release, OpenAI open-sourced GPT-2's underlying code and published a detailed report describing the model. *Id.* In 2020, OpenAI published a similar report accompanying the release of its next model, GPT-3, without open-sourcing the model's code. ¶ 115. OpenAI did not open-source or publish a detailed report in connection with the release of GPT-4 in March 2023. ¶ 117. Nor did it do so in releasing any of its subsequent models. ¶ 121.

In March 2019, while Musk was still involved in the organization, OpenAI launched a "capped-profit" subsidiary called OpenAI, L.P. to enable greater fundraising in support of OpenAI, Inc.'s mission. ¶ 93. Other capped-profit entities were later incorporated under the umbrella of OpenAI, Inc. ¶¶ 93-100. OpenAI has entered commercial partnerships with Microsoft Corporation ("Microsoft"), and has granted Microsoft a license to certain of OpenAI's GPT products. ¶ 119. For a time, from November 2023 to July 9, 2024, Microsoft had a non-voting observer seat on OpenAI, Inc.'s board. ¶ 135.

## II.    Musk's State Court Suit

On February 29, 2024, Musk sued Altman, Brockman, OpenAI, Inc., OpenAI, L.P., and several other OpenAI entities in California Superior Court. In that action, as here, Musk accused the named defendants of abandoning OpenAI, Inc.'s mission, and asserted that they violated a supposed "Founding Agreement" with Musk by (1) licensing OpenAI's then-latest large language model, GPT-4, to a for-profit enterprise, Microsoft; (2) failing to open-source and erecting a paywall around GPT-4; and (3) permitting Microsoft to occupy a non-voting observer seat on OpenAI, Inc.'s board. Ex. A (OC) ¶ 125 (list of alleged breaches). The narrative offered to support these allegations was largely the same as the one offered in this matter.[5] On the back of that narrative, Musk asserted claims for breach of contract, promissory estoppel, breach of fiduciary duty, unfair business practices, and accounting. He did not claim fraud or any variant thereof.

Defendants in the Superior Court action promptly filed a demurrer as to each of Musk's claims and moved to strike his more sweeping demands for relief (including a request for specific

---

[5] *Compare* Ex. A (OC) ¶¶ 15-19, *with* ¶¶ 59-63; *compare* Ex. A (OC) ¶¶ 46-64, *with* ¶¶ 69-85; *compare* Ex. A (OC) ¶¶ 67-75, *with* ¶¶ 93-98; *compare* Ex. A (OC) ¶¶ 93-112, *with* ¶¶ 122-37.

performance of OpenAI's purported obligation to open-source GPT-4 and a judicial declaration that "next generation large language models" not yet in existence constitute AGI, *see* Ex. B (Mot. to Strike) at 7-8, 10). Musk, meanwhile, quickly served broad discovery requests on all defendants and sought the immediate depositions of non-party former directors of OpenAI, Inc.'s board.

With the demurrer and strike motion fully briefed, argument was set for 10 a.m. PT on June 12, 2024. At 11:40 a.m. PT on June 11, 2024, Musk, through counsel, informed defendants he was withdrawing his lawsuit. He offered no explanation.

**III.   This Action**

Less than two months later, on August 5, 2024, Musk filed this action. Where the state court complaint asserted five claims, led by the "Founding Agreement"-based contract claim, this one asserts 15 claims, leading with new counts of fraud and RICO, and subordinating the "founding agreement"-based contract claims. Where the state court complaint named as defendants OpenAI, Inc. and various of its subsidiaries, this one names the parent, more of its subsidiaries, OpenAI Startup Fund entities (which are not under the OpenAI, Inc. umbrella), and an entity called OpenAI Investment LLC (which is not affiliated with any other named defendant).

By early morning Eastern Time on August 5, the media were reporting statements by Musk's new counsel that this action held vast differences from the previously-withdrawn one, which "lacked teeth."[6] A few days later, Musk's counsel called the California state court action "a Goldfish," and touted this one as "a Great White."[7]

In truth, the only substantive differences between this complaint and the one in February— aside from new and even more implausible legal theories—are:

- an acknowledgment by Musk that his abandonment of OpenAI followed his failed effort to merge OpenAI with Tesla—that is, to use "Tesla as OpenAI, Inc.'s 'cash cow'" (¶ 83);[8]

---

[6] *See* Metz, *supra* note 2; Nick Robins-Early, *Elon Musk Sues OpenAI Again, Alleging 'Deceit of Shakespearean Proportions,'* GUARDIAN (Aug. 5, 2024), https://www.theguardian.com/technology/article/2024/aug/05/elon-musk-openai-lawsuit.

[7] Scarcella, *supra* note 2.

[8] Musk did not reference the Tesla connection in his first complaint; it was the subject of an OpenAI blog post after that filing. *See* Ex. D (*OpenAI and Elon Musk*, OPENAI (Mar. 5, 2024)).

1   • fact-free speculation that certain defendants created corporate entities with a nefarious purpose
2     (¶¶ 99-105);

3   • allegations of supposed "self-dealing" by Altman, based on "information and belief" and a
      source that does *not* (contrary to Musk's allegation) "report[]" that "Altman deliberately
      withheld key information and lied about his personal holdings and investments" (¶¶ 106-10);

4   • gratuitous invocation of criticism levied against OpenAI related to copyright, safety, and
5     employment matters (¶¶ 138-44); and

6   • citation of a press report concerning a potential corporate reorganization of OpenAI (¶ 146).

7                                    **ARGUMENT**

8          "To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient factual

9   matter that, when accepted as true, states a claim that is plausible on its face." *Pac. Recovery Sols.*

10  v. *United Behav. Health*, 481 F. Supp. 3d 1011, 1021 (N.D. Cal. 2020) (citing *Ashcroft* v. *Iqbal*,

11  556 U.S. 662, 678 (2009)). In addition, any claim grounded in allegations of fraud or false

12  representations must satisfy the heightened pleading standard dictated by Rule 9(b): it must plead

13  with particularity "what is false or misleading about a statement, and why it is false," and be

14  "specific enough to give defendants notice of the particular misconduct which is alleged to

15  constitute the fraud charged so that they can defend against the charge and not just deny that they

16  have done anything wrong." *Yetter* v. *Ford Motor Co.*, 428 F. Supp. 3d 210, 219-20 (N.D. Cal.

17  2019) (first quoting *Ebeid ex rel. U.S.* v. *Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010), then quoting

18  *Semegen* v. *Weidner*, 780 F.2d 727, 731 (9th Cir. 1985)).

19         Musk's allegations flunk these tests. His complaint is a PR stunt comprising:

20  (1) unimproved and implausible variants of contract and fiduciary claims he was not prepared to

21  defend in state court; and (2) implausible theories of fraud and false advertising that do not identify

22  particular false representations, what made them false, or what knowledge defendants had of their

23  supposed falsity. Defendants address the contract claims first because, although Musk's other

24  claims bear additional defects, they all share with the contract claims a core failure to plead

25  cognizable promises made to Musk and then broken.

26  **I.    MUSK'S ALLEGATIONS CANNOT SUPPORT ANY CONTRACT CLAIM.**

27         Mere months ago, Musk's headline claim was that he had a written contract with a host of

28  OpenAI entities *and* Altman *and* Brockman, memorialized in OpenAI, Inc.'s COI and a June 2015

                                          6

email. Ex. A (OC) at ¶¶ 123-27. That supposed contract was breached, Musk alleged, when defendants failed to open-source GPT-4 and licensed it to Microsoft, and when defendants granted a non-voting board observer seat to Microsoft. *Id.* ¶ 125. Musk disclaimed any reliance on an implied contract theory in his prior action. *See* Ex. C (Musk Dem. Opp.) at 2. He sought to dodge the requirement of bargained-for consideration, asserting (incorrectly) that "[a]dequate consideration is presumed for written contracts." *Id.* at 6.

The claim made no sense, and Musk withdrew it rather than defend it. Musk could point to no facts showing any defendant promised him anything—much less the specific undertakings (like open-sourcing GPT-4) he complained had been breached. Ex. A (OC) ¶ 125. Nor could Musk show any bargained-for exchange—nothing to suggest the contributions Musk made to OpenAI in its early years were made on condition of the (fictitious) promises Musk had pleaded.

Yet Musk re-asserts his deficient contract claim here, only slightly reimagined and with the addition of an implied contract claim that was absent from the abandoned state court complaint. ¶¶ 254-64. Musk still alleges the existence of an express written contract, but with different counterparties (just Altman and OpenAI, Inc. this time) and different evidencing documents (no longer invoking the COI—just "a series of express written correspondence in 2015" (¶ 248)).

The changes do not cure the infirmities in the original complaint, and Musk's contract-based claims (Counts VI, VII, VIII, XIV) must be dismissed.

### A.    Musk does not plead an express contract.

First, Musk fails to plead the essential elements of an express contract. The terms of an express contract are "stated in words," *Pac. Bay Recovery, Inc.* v. *Cal. Physicians' Servs., Inc.*, 12 Cal. App. 5th 200, 215 (2017) (citing Cal. Civ. Code § 1620), and there are only two ways to plead an express written contract, as Musk purports to have done here (*see* ¶ 248): (1) by attaching or quoting verbatim the writing; or (2) by pleading in detail the writing's "legal effect." *Heritage Pac. Fin., LLC* v. *Monroy*, 215 Cal. App. 4th 972, 993 (2013); *see also Langan* v. *United Servs. Auto. Ass'n*, 69 F. Supp. 3d 965, 979 (N.D. Cal. 2014) ("[I]t is absolutely essential to plead the terms of the contract either in haec verba or according to legal effect."). What must be apparent from the complaint—in the attached writing or its recitation—are the essential elements of (1) mutual assent

7

to the terms alleged to have been breached and (2) bargained-for consideration. *Pac. Bay Recovery, Inc.*, 12 Cal. App. 5th at 215-16 (for an express contract, the "mode of proof" of the "vital elements" of "mutual assent . . . and consideration" must be the terms stated in words).

Neither is present here.

### 1.     Musk does not plead mutual assent to the allegedly breached terms.

Mutual assent—a meeting of the minds—is the most rudimentary element of a contract, and "is determined under an objective standard applied to the outward manifestations or expressions of the parties." *Am. Emps. Grp., Inc.* v. *Emp. Dev. Dep't*, 154 Cal. App. 4th 836, 847 (2007); *see* Cal. Civ. Code § 1565 (consent must be "[c]ommunicated by each [party] to the other"). Yet Musk identifies no writing that can plausibly be construed as memorializing mutual assent to the terms he claims defendants have breached.

There is no writing attached to the complaint, and Musk nowhere attempts to recite the terms of the contract verbatim. Instead, Musk invokes his "express written correspondence in 2015" with Altman (¶ 248), but identifies no language therein constituting an undertaking to Musk to (a) open-source all technology "subject only to genuine safety considerations"; (b) not license certain technology to Microsoft; (c) refrain from granting Microsoft a board observer seat; (d) refrain from charging for use of any technology; (e) make no business deals with entities in which Altman has an interest; or (f) never contemplate a corporate reorganization. *See* ¶¶ 248, 250 (alleged breaches).[9] As a direct competitor of OpenAI in 2024, Musk evidently wishes he had these

---

[9] Musk alleges, for the first time, that Altman and OpenAI, Inc. breached his fictional contract "by . . . working to convert the non-profit into a fully for-profit commercial entity." ¶ 250(f); *see also* ¶ 261. But any alteration of OpenAI's organizational structure would be governed by the corporate law of Delaware, OpenAI, Inc.'s state of incorporation—not Musk's dictates. *See Oberly* v. *Howard Hughes Med. Inst.*, 472 A.2d 366, 391 (Del. Ch. 1984) (noting "fundamental principle" that Delaware law "is designed to permit a corporation—and particularly a nonprofit corporation—to regulate its own affairs"), *abrogation on other grounds recognized by Navient Sols., LLC* v. *BPG Office Partners XIII Iron Hill LLC*, 2023 WL 3120644, at *10 n.144 (Del. Super. Ct. Apr. 27, 2023); *see also Wier* v. *Howard Hughes Med. Inst.*, 407 A.2d 1051, 1056 (Del. Ch. 1979) (donor lacks standing under Delaware law to challenge the "disposition and control" of charitable assets); *Oberly* v. *Kirby*, 592 A.2d 445, 467 (Del. 1991) (nonprofit corporations "must be managed on behalf of [their] beneficiaries," whose interests are not represented by private plaintiffs); *Klein* v. *Anaheim Mem'l Hosp. Ass'n*, 2009 WL 3233914, at *4, *6-8 (Cal. Ct. App. Oct. 8, 2009) (donor lacked standing to challenge sale of non-profit public benefit corporation to a for-profit entity).

imagined undertakings. But nothing in the "cobble[d] together" correspondence and other documents Musk cites from 2015 shows that Altman or OpenAI, Inc. assented to any of Musk's purported contractual terms. *See Haskins* v. *Symantec Corp.*, 2013 WL 6234610, *10 (N.D. Cal. Dec. 2, 2013) (dismissing contract claim where plaintiff "attempt[ed] to cobble together the terms" of an alleged contract from disparate sources); *see also, e.g.*, *Verde Media Corp.* v. *Levi*, 2015 WL 374934, at *7 (N.D. Cal. Jan. 28, 2015) ("Plaintiff ha[d] not alleged sufficient facts to render plausible the existence of an agreement . . . arising merely from an in-person discussion and a few short and vague instant messages with [the defendant].").

Recognizing he can point to no writing specifying the undertakings to which he wants defendants bound, Musk tries to frame his "contract" in abstract terms, presumably to make them seem capacious enough to encompass the acts he complains constituted breach. *See, e.g.*, ¶ 248 ("Altman promised that OpenAI, Inc. (i) would be a non-profit and develop AI/AGI for the benefit of humanity, not personal profits, and (ii) to that end, would make OpenAI, Inc.'s technology largely open source . . . ."). But in trying to solve one problem, Musk creates another: the ideas Musk and Altman actually discussed in the correspondence cited, and that are reflected in OpenAI, Inc.'s founding documents, are not the "sufficiently definite terms" required to "form an enforceable contract." *Netbula, LLC* v. *BindView Dev. Corp.*, 516 F. Supp. 2d 1137, 1156 (N.D. Cal. 2007). To "support enforcement," contract terms must be certain enough to "provide a basis for determining what obligations the parties have agreed to" and "make possible a determination of whether those agreed obligations have been breached." *Weddington Prods., Inc.* v. *Flick*, 60 Cal. App. 4th 793, 811-12 (1998); *see also, e.g.*, *In re Apple Inc. Device Performance Litig.*, 386 F. Supp. 3d 1155, 1183 (N.D. Cal. 2019) (plaintiffs "fail[ed] to allege how Apple breached any alleged contract," where they simply "allege[d] that Apple's Devices did not perform as advertised or promised . . . but without identifying the terms of the contract, the Court [could not] evaluate this allegation"); *Verde Media*, 2015 WL 374934, at *7 (dismissing contract claim where "the terms of the contract as alleged [were] vague" and undefined). The ideas and mission statements Musk points to, by contrast, are not the stuff of contracts.

Having failed to plausibly plead that Altman and OpenAI, Inc. assented to deliver to him the things he complains were not delivered, Musk cannot sustain his claim. *See, e.g.*, *Allied Anesthesia Med. Grp., Inc.* v. *Inland Empire Health Plan*, 80 Cal. App. 5th 794, 809 (2022).

### 2. Musk does not plausibly plead bargained-for consideration.

Nor does Musk plausibly allege bargained-for consideration merely by pointing to contributions he made to OpenAI, Inc. in its early years. *See* ¶ 248. "It is not enough . . . to confer a benefit or suffer prejudice for there to be consideration." *Orcilla* v. *Big Sur, Inc.*, 244 Cal. App. 4th 982, 1006 (2016). "To constitute consideration, a performance or a return promise must be bargained for." *Jara* v. *Suprema Meats, Inc.*, 121 Cal. App. 4th 1238, 1249 (2004) (quoting Restatement (Second) of Contracts § 71); Farnsworth on Contracts § 2.02 (4th ed. 2022) (adequacy of consideration depends on "the process by which the parties had arrived at that exchange—was it the product of 'bargain?'"). Musk's only allegations of exchange or bargain are conclusory: he asserts that Altman and OpenAI, Inc. agreed to act and refrain from acting "[i]n exchange, and as consideration for" Musk's contributions, ¶ 248, while pleading no supporting fact—no writing, no conversation, nothing suggesting the parties engaged in bargaining of any kind. The contract is said to have been formed in 2015, yet Musk's donations did not begin until 2016, and none of the correspondence Musk cites evidences a *quid pro quo*.

This shortcoming is independently fatal to Musk's claim. Because Musk pleads no facts showing that his contributions were "an inducement to the promisor," Cal. Civ. Code § 1605, he has failed to plead an enforceable contract.

### B. Musk does not plead an implied contract.

The same defects render Musk's new implied contract claim untenable as well. Asserting that a contract is implied rather than express does not excuse a failure to plead mutual assent and bargained-for consideration. *Zenith Ins. Co.* v. *O'Connor*, 148 Cal. App. 4th 998, 1010 (2007) ("[A]n implied contract in no less degree than an express contract, must be founded upon an ascertained agreement of the parties to perform it." (cleaned up)); *Levy* v. *Only Cremations for Pets, Inc.*, 57 Cal. App. 5th 203, 211 (2020) ("As to the basic elements, there is no difference between an express and implied contract."); *see also Winebarger* v. *Pa. Higher Educ. Assistance*

10

*Agency*, 411 F. Supp. 3d 1070, 1093 (C.D. Cal. 2019) ("fail[ure] to allege the existence of any bargained-for consideration" in connection with an asserted implied contract dooms the claim). It just means one looks to the parties' alleged conduct rather than their alleged words to see if the elements are adequately pleaded. *Yari* v. *Producers Guild of Am., Inc.*, 161 Cal. App. 4th 172, 182 (2008) ("A cause of action for breach of implied contract has the same elements as does a cause of action for breach of contract, except that the promise is not expressed in words but is implied from the promisor's conduct."). No conduct alleged here plausibly demonstrates mutual assent or bargained-for consideration.

Musk does not even identify the specific conduct that allegedly gave rise to his implied contract, instead vaguely alluding to the "relationship, surrounding circumstances, and intentional course of conduct between Musk . . . and Altman and OpenAI, Inc." ¶ 255. Where a plaintiff "alleges only that the parties' implied contract arose in some nonspecific manner from the Parties' acts and conduct" and fails to identify the "source of [the] claimed terms," or to "explain how those terms became part of the parties' legal agreement," an implied contract claim cannot be sustained. *Haskins* v. *Symantec Corp.*, 2014 WL 2450996, at *4 (N.D. Cal. June 2, 2024) (quotation marks omitted). To the extent Musk is seeking to rely for his implied contract claim on the same "correspondence" cited for the express contract claim, *see* ¶¶ 254-59, that reliance is just as misplaced here as it was there; the communications do not "manifest[] an intent to create a contract," nor do they reveal "what the terms of that contract might be," *Ross* v. *Sioux Honey Ass'n, Coop.*, 2013 WL 146367, at *18 (N.D. Cal. Jan. 14, 2013). No facts of any kind are pleaded to establish supposed promises from Altman or OpenAI, Inc. to Musk that they would presumptively open-source all technology and refrain from the acts Musk catalogs. *See* ¶ 261 (summary of alleged breaches). Nor are any facts pleaded to show a bargain.

### C.    Musk's implied covenant and tortious interference claims cannot stand absent a contract, and fail for other reasons as well.

Musk claims that Altman and OpenAI, Inc. breached the "covenant of good faith and fair dealing," implied "in every agreement," "not [to] do anything to unfairly interfere with the right of any other party to receive the benefits of the agreement." ¶ 266. He also alleges that a collection of

entities he calls the "OpenAI For-Profit Entities" (*see* ¶ 100 & n.3) tortiously interfered with his "contract with Altman and OpenAI, Inc." ¶ 330. Because these claims presume the existence of an enforceable contract, and none has been pleaded, they must be dismissed. *See Langan*, 69 F. Supp. 3d at 980 ("The prerequisite for any action for breach of the implied covenant of good faith and fair dealing is the existence of a contractual relationship between the parties." (cleaned up)); *Ixchel Pharma, LLC* v. *Biogen, Inc.*, 9 Cal. 5th 1130, 1141 (2020) ("[I]nterference with contractual relations requires [] the existence of a valid contract between the plaintiff and a third party . . . .").

Even had Musk pleaded a contract, these claims could not stand.

Musk's implied covenant claim just mimics his contract claims and fails to identify non-duplicative contractual "purposes" allegedly frustrated. *See In re iPhone Application Litig.*, 2011 WL 4403963, at *9 (N.D. Cal. Sept. 20, 2011) (where plaintiffs had not identified "the contract's purposes," court could not "determine whether Plaintiffs were deprived of the benefits of the contract at issue"). Musk complains that "Altman and OpenAI, Inc. did not act fairly and in good faith by fraudulently inducing Musk to make significant contributions, failing to disclose material information to him, closing off the non-profit's technology for personal monetary gain, and engaging in brazen self-dealing and other profiteering." ¶ 269. Though more colorfully stated, the facts asserted here are the same ones offered to support Musk's contract claims, and therefore cannot state a cognizable implied covenant claim. *Westron* v. *Zoom Video Commc'ns, Inc.*, 2023 WL 3149262, at *2 (N.D. Cal. Feb. 15, 2023) (dismissing "impermissibly duplicative" implied covenant claim "based on the same conduct as [] breach of implied contract").

The tortious interference claim, for its part, is incoherent. First, one cannot—as Musk tries to do here—bring a claim for tortious interference against an alleged agent of a party to the purported contract. *Shoemaker* v. *Myers*, 52 Cal. 3d 1, 24 (1990); *Mintz* v. *Blue Cross of Cal.*, 172 Cal. App. 4th 1594, 1604, 1607 (2009) (a "representative of a contracting party may not be held liable for the tort of interfering with its principal's contract"). Having asserted that "Altman . . . formed the OpenAI For-Profit Entities" as agents of fraud against Musk, ¶ 190, Musk has pleaded himself out of this claim. Second, Musk fails to plead any "intentional acts" by the OpenAI For-Profit Entities "designed to induce a breach or disruption of [a] contractual

relationship." *Ixchel*, 9 Cal. 5th at 1141. He claims these entities "siphon[ed] the non-profit's most valuable assets into their for-profit apparatus," ¶ 332, but nowhere explains how that caused (or indeed is distinct from) any breach of the supposed contract. That failure to plead a key element is independently dispositive of the tortious interference claim. *See, e.g.*, *Davis* v. *Nadrich*, 174 Cal. App. 4th 1, 10 (2009) (intent to disrupt contract is an essential element).

## II.    Musk's Allegations Cannot Support Any Fraud Claim.

With no cognizable contract claim, Musk tries to repackage his grievances as fraud: Rather than claim that defendants made and then broke enforceable promises, Musk says those same promises were made to him with no present intention to fulfill them and therefore constituted fraud. *See* ¶¶ 149-70, 200-06, 276. These allegations undergird Musk's claims for promissory fraud (Count I), aiding and abetting fraud (Count III, against the OpenAI For-Profit Entities), and unjust enrichment (Count IX). They also form the predicate for Musk's RICO claims (Counts IV and V). But a failed contract claim cannot be so easily repurposed; a plaintiff cannot simply take "allegations underpinning a straightforward claim for breach of a commercial contract and recast them as [a] tort[]." *JMP Secs. LLP* v. *Altair Nanotechnologies Inc.*, 880 F. Supp. 2d 1029, 1043-44 (N.D. Cal. 2012). The fraud packaging may allow Musk to side-step the required elements of mutual assent and bargained-for consideration necessary to plead a contract claim, but it carries with it an obligation to plead the supposed promises—and their falsity, and the fraudulent intent with which they were made—with a heightened particularity that Musk comes nowhere near mustering.

Pleading fraud requires an account of "the time, place, and specific content of the false representations," as well as "what is false or misleading about [the] statement, and why it is false." *Yetter*, 428 F. Supp. 3d at 220, 231; *see also* Fed. R. Civ. P. 9(b); *Smith* v. *GlaxoSmithKline Consumer Healthcare Holdings (US) LLC*, 660 F. Supp. 3d 863, 875 (N.D. Cal. 2023) ("[C]ourts have consistently applied Rule 9(b)'s heightened pleading requirements to claims . . . for fraudulent misrepresentation, negligent misrepresentation, fraud by omission, and unjust enrichment."). A plaintiff cannot merely "add to [the] complaint a general allegation that the defendant never intended to keep her promise." *Richardson* v. *Reliance Nat'l Indem. Co.*, 2000 WL 284211, at *5

13

(N.D. Cal. Mar. 9, 2000). Musk does far less even than that; as discussed above, he fails even to identify a cognizable promise made to him. He also fails to plead facts demonstrating falsity of any purported promise, or facts establishing any defendant's contemporaneous intent not to perform.

### A. Musk does not plead promissory fraud.

A claim for promissory fraud under California law "is a subspecies of the action for fraud and deceit." *Behnke* v. *State Farm Gen. Ins. Co.*, 196 Cal. App. 4th 1443, 1453 (2011). To plead this claim, a plaintiff must allege with particularity "(1) a promise made regarding a material fact without any intention of performing it; (2) the existence of the intent not to perform at the time the promise was made; (3) intent to deceive or induce the promisee to enter into a transaction; (4) reasonable reliance by the promisee; (5) nonperformance by the party making the promise; and (6) resulting damage to the promisee." *Id*. Far from pleading all of these elements with the particularity required by Rule 9(b), Musk cannot clear the first prong of the first element even on a plausibility standard.

Musk fails to allege the sort of promise that governing authority recognizes. For this claim, Musk invokes the same collection of preliminary thoughts and discussions cited for the contract claims—including Altman's vision of an AI lab with a "mission . . . to create the first general AI and use it for individual empowerment," which would use "[t]he technology . . . 'for the good of the world'"—plus similar statements reflected on OpenAI's website. ¶¶ 151, 154-60. These are not promises of fact, but rather thoughts, ideas, and aspirations. They therefore cannot form the basis for a fraud claim. *See, e.g.*, *Louis* v. *Nailtiques Cosmetic Corp.*, 423 Fed. App'x 711, 713 (9th Cir. 2011) ("allegedly fraudulent promises about [] future success" were insufficient to ground fraud claim).

Even if the statements identified could be construed as actionable promises, and even if Musk had alleged with particularity their non-performance, the claim would still fail for want of particularized pleading that any defendant lacked the contemporaneous intent to perform. That is an independent defect. Sustaining a claim of promissory fraud requires alleging with particularity "why the promise was false when made," which in turn "requires pleading facts from which it can be inferred that the promisor had no intention of performing at the time the promise was made."

14

*UMG Recordings, Inc.* v. *Glob. Eagle Ent., Inc.*, 117 F. Supp. 3d 1092, 1108 (C.D. Cal. 2015). "Mere nonperformance of a promise does not suffice to show the falsity of the promise." *Id.*; *accord Perkowski* v. *Belvill*, 2020 WL 3891674, at *3 (C.D. Cal. Mar. 2, 2020). Instead, there must be "clear, specific and unequivocal" allegations "differentiating the [assertedly] false promise from a mere broken promise." *Valencia* v. *Sharp Elecs. Corp.*, 561 Fed. App'x 591, 593-94 (9th Cir. 2014); *see also Richardson*, 2000 WL 284211, at *4-5 (claim for promissory fraud based on defendants' purported representations that they "intended to allow plaintiff to own and control" an entity failed, as plaintiff "allege[d] no facts from which the Court [could] infer that the allegedly fraudulent statements were actually false when made" (quotation marks omitted)).

No false promise is alleged here. While Musk makes a conclusory assertion of no intent to perform, ¶ 162, he alleges no fact known contemporaneously to any defendant and not then known to Musk that would render any identifiable representation false, *see* ¶¶ 162-69. Courts have consistently rejected attempts to plead promissory fraud on this basis. *See, e.g.*, *Sandy* v. *McClure*, 676 F. Supp. 2d 866, 882 (N.D. Cal. 2009) (claims for promissory fraud "fail[ed]" where there was "no evidence that Defendants intended to not perform" a promise to "repay a substantial amount of the loan with [specific] funds . . . at the time that the promise was made"); *Hsu* v. *OZ Optics, Ltd.*, 211 F.R.D. 615, 620 (N.D. Cal. 2002) (Rule 9(b) requires pleading "facts from which the Court can infer that the allegedly fraudulent statements were actually false when made" (emphasis omitted)); *Verde Media*, 2015 WL 374934, at *9 (dismissing claim rooted in promissory fraud where plaintiff failed, *inter alia*, to allege a "contemporaneous intention not to perform [that was] clear, specific and unequivocal"). The Court should do the same here.

### B.    Musk's duplicative claim for unjust enrichment falls with his fraud claim.

Musk's unjust enrichment claim must be dismissed along with his fraud claim. Unjust enrichment under California law amounts to a claim for restitution and requires the plaintiff to plead "the receipt of a benefit and the unjust retention of the benefit at the expense of another." *Markels* v. *AARP*, 689 F. Supp. 3d 722, 731 (N.D. Cal. 2023) (quoting *Peterson* v. *Cellco P'ship*, 164 Cal. App. 4th 1583, 1593 (2008)). Where, as here, the claim is predicated on "allegations of fraudulent conduct," "such allegations must [] meet the heightened pleading standard of Rule 9(b)," and failure

to plead fraud to that standard is fatal to the claim. *See Verde Media*, 2015 WL 374934, at *8. Because Musk fails to adequately plead his fraud claim, his unjust enrichment claim fails as well.

### C.    Musk does not plead aiding and abetting fraud.

Musk's tack-on claim of aiding and abetting fraud, asserted against the OpenAI For-Profit Entities, should likewise be dismissed for want of pleading an underlying fraud. *Casey* v. *U.S. Bank Nat'l Ass'n*, 127 Cal. App. 4th 1138, 1148 (2005) (pleading aiding and abetting under California law requires a "primary violation" of which the defendant has "actual knowledge"). It suffers from two other defects as well.

First, Musk has not adequately alleged substantial assistance in the underlying fraud—an element that must be pled with "heightened specificity." *McGraw Co.* v. *Aegis Gen. Ins. Agency, Inc.*, 2016 WL 3745063, at *6 (N.D. Cal. July 13, 2016). He asserts that the OpenAI For-Profit Entities "willfully drain[ed] the non-profit's most valuable assets" by "employ[ing] much of the non-profit's former staff . . . , hous[ing] its research and intellectual property, . . . facilitat[ing] rampant self-dealing, . . . and hav[ing] been greatly enriched as a result." ¶ 191. The complaint is devoid of any particularized allegations evidencing this purported "draining." *Id.* Nor does Musk attempt to explain how any of the alleged conduct could amount to "substantial assistance" by the OpenAI For-Profit Entities—that is, how the Entities' receipt of IP and resources from the non-profit shows they intentionally assisted Altman in defrauding Musk years earlier through promises Altman purportedly had no intention of keeping. The Entities did not even exist at the time. *See AngioScore, Inc.* v. *TriReme Med., LLC*, 70 F. Supp. 3d 951, 958 (N.D. Cal. 2014) (aiding and abetting claim against an entity that "did not exist . . . at the time of [the] alleged breach [of fiduciary duty]" could survive only on the basis of factual allegations that "plausibly suggest[ed] circumstances that [could] support successor liability").

Second, Musk's allegations that the For-Profit Entities are agents of Altman and Brockman, or alternatively, that Altman and Brockman are these Entities' agents (¶ 190), doom his aiding and abetting claim. An agent cannot aid and abet its principal, nor vice versa. *See, e.g.*, *Villains, Inc.* v. *Am. Econ. Ins. Co.*, 870 F. Supp. 2d 792, 795-96 (N.D. Cal. 2012) (an "agent is, in effect, immune from liability" because "a principal cannot aid and abet itself").

16

1

### D.       Musk does not plead the RICO predicate of wire fraud.

Musk's preposterous RICO claims fail for another reason, addressed below, but also founder at the threshold for failure to plead with plausibility and particularity the underlying predicate act of wire fraud.

The RICO statute makes it "unlawful for any person employed by or associated with any enterprise . . . to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c). Reduced to its elements, this claim—asserted against Altman, Brockman, and the OpenAI For-Profit Entities—requires "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Verde Media*, 2015 WL 374934, at *5 (cleaned up). To establish a pattern of racketeering based on wire fraud, Musk must plead with particularity "(A) the formation of a scheme to defraud, (B) the use of the . . . wires in furtherance of that scheme, and (C) the specific intent to defraud." *Eclectic Props. E., LLC* v. *Marcus & Millichap Co.*, 751 F.3d 990, 997 (9th Cir. 2014). And to plead the "scheme to defraud," Musk must identify, with specificity, material information that defendants misrepresented or withheld from him. *See Meyer* v. *One West Bank, F.S.B.*, 91 F. Supp. 3d 1177, 1184 (C.D. Cal. 2015) ("[I]n the absence of any misrepresentations . . . [a] scheme to defraud requires at least some nondisclosure in violation of an independent duty to disclose or fraudulent omissions reasonably calculated to deceive."). As with other fraud claims, a wire fraud claim will not be sustained based on "expressions of opinion." *Eclectic Props.*, 751 F.3d at 1000; *see also Neder* v. *United States*, 527 U.S. 1, 24 (1999); *County of Marin* v. *Deloitte Consulting LLP*, 836 F. Supp. 2d 1030, 1039 (N.D. Cal. 2011) (dismissing mail fraud claims where alleged "representations [were] highly subjective, generalized statements of the superiority of [defendant's] qualifications" and thus "not quantifiable, actionable misstatements that can form the basis of a mail fraud claim"). And consistent with courts' "efforts to flush out frivolous RICO allegations at an early stage of the litigation," *Allen* v. *Ocwen Loan Servicing, LLC*, 2019 WL 13254112, at *6 (N.D. Cal. June 12, 2019) (cleaned up), "Rule 9(b)'s heightened pleading standard" for fraud is particularly "exacting in the context of RICO claims," *Aniel* v. *PHH Mortg. Corp.*, 2022 WL 2164702, at *6 (N.D. Cal. June 1, 2022); *see also Pac. Recovery Sols.*, 481 F. Supp. 3d at 1028.

Musk's RICO claims come nowhere close to meeting these exacting standards.[10] Despite piling on a host of irrelevant allegations—covering everything from OpenAI's content partnerships with publishers (*see* ¶ 212) to Altman's dismissal and reinstatement as CEO in November 2023 (*see* ¶¶ 222-24)—Musk's allegations of wire fraud are largely duplicative of his promissory fraud allegations. At bottom, Musk alleges that defendants "fraudulently induc[ed] him to make significant financial and other contributions [to OpenAI] to develop valuable AI/AGI for ostensibly charitable purposes," but purportedly "exploited [his donations] to enrich themselves instead." ¶ 199. Yet Musk can identify no particular representation that was false when made, much less facts establishing an intent to defraud—that is, any defendant's knowledge of falsity at the time the representation was made. Without plausible and particularized allegations to support these accusations, Musk's wire fraud allegations collapse, and so, as a result, do his RICO claims. *See, e.g.*, *Desoto* v. *Condon*, 371 Fed. App'x 822, 824 (9th Cir. 2010) (affirming dismissal of RICO claims where allegations to support mail and wire fraud predicates were "vague and conclusory"); *see also Seva* v. *Shri Shirdi Sai Baba Sansthin L.A.*, 2013 WL 1431673, at *4 (C.D. Cal. Apr. 9, 2013) (dismissing RICO claims predicated on mail and wire fraud relating to defendants' alleged procurement of charitable donations).

## III.   Musk's RICO Claims Are Separately Untenable for Failure to Plead Conduct of an Enterprise.

Wholly independent of the failure to plead cognizable predicate acts, Musk's RICO claims suffer from another defect that requires their dismissal: failure to plead that the supposedly fraudulent acts committed by the defendants named in these counts constituted the "conduct" "of an enterprise." *Cf. Ferrari* v. *Mercedes-Benz USA, LLC*, 2016 WL 7188030, at *2 (N.D. Cal. Dec. 12, 2016). Musk identifies the "enterprise" as OpenAI, Inc., *see* ¶¶ 227-30, but the only conduct he impugns is that of Altman and Brockman and their supposed agents, the OpenAI For-Profit Entities. That will not do; the "enterprise" cannot "simply be the same 'person' referred to by a different

---

[10] The RICO conspiracy claim under 18 U.S.C. § 1962(d) (Count V) falls with the substantive RICO claim. *See Sanford* v. *MemberWorks, Inc.*, 625 F.3d 550, 559 (9th Cir. 2010) ("Plaintiffs cannot claim that a conspiracy to violate RICO existed if they do not adequately plead a substantive violation of RICO." (quoting *Howard* v. *Am. Online Inc.*, 208 F.3d 741, 751 (9th Cir.2000))).

18

name," as "RICO enterprise liability depends on showing that the defendants conducted or participated in the conduct of the 'enterprise's affairs,' not just their own affairs." *Id.* (cleaned up); *see also Ellis* v. *J.P. Morgan Chase & Co.*, 950 F. Supp. 2d 1062, 1088 (N.D. Cal. June 13, 2013).

## IV. Musk Lacks Standing to Assert His Fiduciary Claims, Which Are In Any Event Not Cognizable.

Among the claims that Musk advanced and then abandoned in state court earlier this year were claims that the named defendants breached their fiduciary duties and engaged in unfair business practices by purportedly violating California Business & Professions Code § 17510.8, which codifies the fiduciary duties owed by a non-profit charitable organization or a person acting on its behalf to donors. Ex. A (OC) ¶¶ 133-36, 142.[11] Those claims were manifestly defective. In addition to resting on an imaginary and ill-pled "Founding Agreement," the claims were ones that Musk lacked standing to pursue: Under California law, only an officer or director of the non-profit to which duties are owed, or a party "with a reversionary, contractual, or property interest in" the entity's assets, or the Attorney General (or a relator) has standing to sue the non-profit for fiduciary breach. Cal. Corp. Code § 5142(a)(1)–(5); *see also Pinkert* v. *Schwab Charitable Fund*, 2021 WL 2476869, at *5-6 (N.D. Cal. June 17, 2021) (listing classes of plaintiffs with standing to assert breach of charitable trust under California law and noting that "a donor . . . is not among them"); *Horiike* v. *Humane Soc'y of the U.S.*, 2016 WL 11744969, at *16-17 (C.D. Cal. June 20, 2016) (dismissing claim for misuse of charitable donations asserted by settlor of charitable trust who retained no reversionary interest). Musk is none of those things. And his attempt to bootstrap himself into standing by asserting a fiduciary claim under the UCL is foreclosed by law. *See Pinkert*, 2021 WL 2476869, at *6 (plaintiff's "lack[] [of] standing" to bring claims for breach of

---

[11] Section 17510.8 provides: "Notwithstanding any other provision of this article, there exists a fiduciary relationship between a charity or any person soliciting on behalf of a charity, and the person from whom a charitable contribution is being solicited. The acceptance of charitable contributions by a charity or any person soliciting on behalf of a charity establishes a charitable trust and a duty on the part of the charity and the person soliciting on behalf of the charity to use those charitable contributions for the declared charitable purposes for which they are sought. This section is declarative of existing trust law principles."

19

fiduciary duty "dispos[ed] of [his] UCL claim too because it [was] predicated on" those claims).

Yet Musk now seeks to resurrect his fiduciary claims, albeit partially under a different guise. He again tries to use the UCL as an avenue for asserting violation of Section 17510.8 (Count XI), but rather than straightforwardly plead fiduciary breach, as he did in his first action, Musk accuses Altman, Brockman, and OpenAI, Inc. of "constructive fraud" (Count II). In addition, he charges the OpenAI For-Profit Entities with aiding and abetting the supposed violations of Section 17510.8 (Count XIII). These claims all suffer from the same infirmities as Musk's original fiduciary claims, and, in addition, fail under Rule 9(b).

### A.  Musk's constructive fraud claim cannot stand.

"To state a claim for constructive fraud under California law, [a plaintiff] must allege (1) a fiduciary or confidential relationship; (2) an act, omission or concealment involving a breach of that duty; (3) reliance; and (4) resulting damage." *Sonoma Foods, Inc.* v. *Sonoma Cheese Factory, LLC*, 634 F. Supp. 2d 1009, 1021 (N.D. Cal. 2007) (cleaned up); *see* Judicial Council of California Civil Jury Instruction 4111 *Constructive Fraud* (Cal. Civ. Code, § 1573) ("[C]onstructive fraud is a particular kind of breach of fiduciary duty in which the defendant has misled the plaintiff to the plaintiff's prejudice or detriment."). Here, the only "fiduciary or confidential relationship" alleged is that codified by Section 17510.8. ¶ 176. According to the complaint, Altman, Brockman, and OpenAI, Inc. breached their "duty to use [Musk's] contributions for [their] declared charitable purposes" (¶ 177)—allegedly to "develop AI for the benefit of humanity, [to] predominantly open source their technology, [to] avoid concentrating it, and [to] not operate for the profit of any person or company" (¶ 178)—because they failed to disclose certain details of OpenAI's GPT-4 technology and purportedly engaged in "self-dealing" (¶¶ 181-82).

As noted, Musk lacks standing to pursue a claim under Section 17510.8, and cannot cure this by dressing a purported violation of Section 17510.8 in a different outfit. *See Pinkert*, 2021 WL 2476869, at *6; *Horiike*, 2016 WL 11744969, at *17, *19 (indicating that plaintiffs could not ground UCL claim in Section 15710.8 absent standing). Separately, this claim also fails under Rule 9(b). The allegations quoted in the preceding paragraph form the entire factual predicate for this claim; like the rest of Musk's complaint, they do not identify with particularity the acts of purported

deception by any defendant. *Sonoma Foods*, 634 F. Supp. 2d at 1021 (dismissing constructive fraud claim for failure to satisfy Rule 9(b)).

### B.    Musk's UCL claim cannot stand.

For the same reasons, Musk's claim under the UCL must be dismissed. As an initial matter, Musk does not even say which UCL prong (unlawful, fraudulent, or unfair) he is purporting to proceed under, and does not identify the source of law that purportedly grounds his claim of unfairness, fraud, or unlawfulness. *See Gregory* v. *Albertson's, Inc.*, 104 Cal. App. 4th 845, 854 (2002) (noting requirement to do so where, as here, alleged violation is predicated on offense to "public policy"); *see also Lazar* v. *Hertz Corp.*, 69 Cal. App. 4th 1494, 1505 (1999) (a UCL "unlawfulness" claim requires the "predicate" of an identified "violation of . . . law[]"). Musk appears here again to be asserting a violation of Section 17510.8. *See* ¶ 300 (alleging that defendants "solicit[ed] contributions from Musk and others under the false pretense that such funds would be used for [OpenAI's alleged] non-profit purposes"). But Musk has no more standing to allege such a violation under the UCL than he does to allege it under a constructive fraud theory. *See Pinkert*, 2021 WL 2476869, at *6 (dismissing UCL claim that was "predicated" on charity's alleged breach of fiduciary duty); *Horiike*, 2016 WL 11744969, at *17, *19; *Berryman* v. *Merit Prop. Mgmt., Inc.*, 152 Cal. App. 4th 1544, 1555 (2007) (plaintiffs could not "bootstrap" a contract claim they lacked standing to pursue into a claim under the UCL). And in any event, Musk offers only conclusory allegations to support this claim, asserting that "[d]efendants engaged in unfair competition and other unlawful and/or fraudulent business practices by soliciting contributions . . . under the false pretense" that they would be used for "non-profit purposes," as Musk would construe those purposes. ¶ 300. These allegations lack both the plausibility and particularity necessary to ground this claim. *See Kearns* v. *Ford Motor Co.*, 567 F.3d 1120, 1127 (9th Cir. 2009) (affirming dismissal of UCL claim where "general pleadings [of nondisclosure] [did] not satisfy the heightened pleading requirements of Rule 9(b)"); *see also Shvarts* v. *Budget Grp., Inc.*, 81 Cal. App. 4th 1153, 1159-60 (2000) (dismissal warranted where plaintiffs offered no particularized allegations that defendant's business practices with respect to payment options were deceptive); *Flores* v. *EMC Mortg. Co.*, 997 F. Supp. 2d 1088, 1119 (E.D. Cal. 2014) (dismissing UCL claim

21

where pleading lacked "exactitude of fraudulent circumstances").

### C.   Musk does not plead aiding and abetting fiduciary breach.

In a third effort to justify naming the OpenAI For-Profit Entities as defendants, Musk asserts against them a claim of aiding and abetting fiduciary breach, again on the basis of Section 17510.8. ¶ 317. But because he has no standing to sue for the underlying breach, Musk cannot sue for aiding and abetting. Likewise, Musk's failure to plausibly plead the underlying breach with particularity independently dooms this claim. *See EcoHub, LLC* v. *Recology Inc.*, 2023 WL 3852700, at *9 (N.D. Cal. June 6, 2023) ("[F]ailure to adequately plead a breach of fiduciary duty against [the alleged principal] is fatal to [an] aiding and abetting claim."). The agency immunity rule, moreover, applies here just as it does to the claim that the For-Profit Entities aided and abetted promissory fraud. *See supra* at 16-17. Finally, like Musk's other accessory claims, this one is pled as a throw-away, with nothing approaching a sufficient factual predicate. Musk says the For-Profit Entities supposedly "help[ed Altman and Brockman] exploit OpenAI, Inc.'s intellectual property and staff for Defendants' private gain." ¶ 321; *see also* ¶¶ 322-23. But there are no particularized allegations that the subject Entities "actually knew [Altman, Brockman, and OpenAI, Inc. were] committing the specific breach for which [Musk] seeks to hold [them] liable," *In re Mortg. Fund '08 LLC*, 527 B.R. 351, 361-62 (N.D. Cal. 2015), or that the Entities' "conduct was a substantial factor in bringing about the injury allegedly suffered," *id.* at 365. Musk fails to identify the IP or staff the Entities purportedly "exploit[ed]" or how exactly that assisted OpenAI in its alleged misuse of Musk's specific donations. ¶ 321.

## V.   Musk's Claims for False Advertising Should Be Dismissed.

The last species of claim Musk asserts is false advertising—under the Lanham Act, 15 U.S.C. § 1125(a)(1)(B) (Count X), and California's false advertising statute, Bus. & Prof. Code §§ 17500 *et seq.* (Count XII). Neither of these counts should proceed.

First, Musk pleads no commercial advertisement. Lanham Act claims can be pursued only on the back of commercial advertisements for "goods, services, or commercial activities." *Children's Health Def.* v. *Meta Platforms, Inc.*, 112 F.4th 742, 764 (9th Cir. 2024) (quoting 15 U.S.C. § 1125(a)(1)(B)). Similarly, the California false advertising statute targets statements made

in connection with the disposal of "real or personal property" or the "perform[ance] [of] services." *Bernardo* v. *Planned Parenthood Fed'n of Am.*, 115 Cal. App. 4th 322, 356 (2004) (quoting Cal. Bus. & Prof. Code § 17500).

None of the statements from OpenAI's website that Musk has identified in his complaint—each of which concerns OpenAI's mission and general philosophy—is an advertisement for goods or services sold, or otherwise made "primarily out of economic motivation," *Children's Health Def.*, 112 F.4th at 765 (cleaned up). *See* ¶ 285 (*e.g.*, OpenAI's "mission is to ensure that [AGI] benefits all humanity . . . ."). Indeed, this Court recently concluded that many of these precise statements, drawn from the same OpenAI blog post, did not qualify as "actionable commercial speech" under the Lanham Act or Section 17500, as they were untethered to any "specific promotion of goods or services." *OpenAI, Inc.* v. *Open Artificial Intelligence, Inc. et al.*, No. 23-cv-03918-YGR, at *5 (N.D. Cal. Sept. 25, 2024); *see also Prager University* v. *Google LLC*, 951 F.3d 991, 999-1000 (9th Cir. 2020) ("[l]ofty" statements concerning defendant's commitment to free speech did not qualify as "advertising" of "goods, services, or commercial activities"); *HomeLight, Inc.* v. *Shkipin*, 694 F. Supp. 3d 1242, 1256 (N.D. Cal. 2023) ("While a statement that is quantifiable, that makes a claim as to the specific or absolute characteristics of a product' may support a false advertising claim, a general, subjective claim about a product is non-actionable puffery.'" (quotation marks omitted)). There is no plausible basis to conclude the statements' "purpose" was to "influenc[e] consumers to buy [OpenAI's] goods or services." *Children's Health Def.*, 112 F.4th at 764.

Second, as to the Lanham Act claim, Musk has no standing because he alleges no commercial injury. *See Charlotte's Web, Inc.* v. *AAXLL Supply Co. LLC*, 2020 WL 6891876, at *1 (N.D. Cal. Nov. 24, 2020). He complains that his reputation for technological openness has somehow been tarnished by his association with OpenAI, ¶ 282, and insinuates that he has had difficulty recruiting AI scientists to join his ventures, ¶ 294. But neither of these vague grievances "establish[es] a sufficiently direct chain of causation" between the purported advertisements and a commercial injury. *HomeLight*, 694 F. Supp. 3d at 1255.

Finally, Musk's false advertising claims independently fail under Rule 9(b). *See Davidson*

v. *Sprout Foods, Inc.*, 106 F.4th 842, 852-53 (9th Cir. 2024) (allegations under California's False Advertising Law must satisfy "the heightened pleading requirements of Rule 9(b)"); *Cisco Sys., Inc.* v. *Dexon Comput., Inc.*, 2022 WL 2222962, at *5 (N.D. Cal. June 21, 2022) (Rule 9(b) applied to Lanham Act claim "predicated on the theory that the defendant engaged in a knowing and intentional misrepresentation" (cleaned up)). As with all his claims sounding in fraud, Musk has pleaded his false advertising claims only conclusorily. *See* ¶ 288 ("Altman and Brockman made [] material, false, and misleading representations of fact about the nature, characteristics, and qualities of Defendants' products and services in commercial advertising . . ."); ¶ 308 (similar).

## VI.    Musk's Claim for Declaratory Relief Should Be Dismissed.

As he did in state court, Musk asks this Court to declare that GPT-4 and later-generation OpenAI models have achieved "AGI," or artificial general intelligence. ¶¶ 342-44. But a request for declaratory relief cannot stand where, as here, the plaintiff "has pleaded no viable claims that would allow [the court] to provide [declaratory] relief." *Rigsby* v. *GoDaddy Inc.*, 59 F.4th 998, 1010 (9th Cir. 2023) (affirming dismissal of declaratory relief requests where there was no viable claim on which to ground a declaratory judgment). And even if one of his other claims were cognizable, Musk's request for declaratory relief "would be redundant," as resolving the underlying claim would dispose of the parties' dispute. *Strome* v. *DBMK Enters., Inc.*, 2014 WL 6485533, at *5 (N.D. Cal. Nov. 19, 2014). Musk alleges that one of the ways defendants breached their contractual and fiduciary duties to him, and committed fraud upon him, was by "promising" not to license AGI to a private party like Microsoft and then licensing GPT-4, which Musk alleges (baselessly) constitutes AGI. *See* ¶¶ 167, 214, 250(b), 256. Were Musk allowed to proceed on those outlandish allegations, and were his claims not first dismissed on other grounds, resolving them would entail answering the question as to which Musk seeks a declaration.

## CONCLUSION

For the foregoing reasons, the Court should grant the motion to dismiss without leave to amend.

1  Date: October 8, 2024                    MORRISON & FOERSTER LLP

2
                                           */s/ Jordan Eth*
3                                          JORDAN ETH (CA SBN 121617)
                                           JEth@mofo.com
4                                          DAVID J. WIENER (CA SBN 291659)
                                           DWiener@mofo.com
5                                          MORRISON & FOERSTER LLP
                                           425 Market Street
6                                          San Francisco, CA 94105
                                           Telephone:    (415) 268-7000
7                                          Facsimile:    (415) 268-7522

8                                          WILLIAM SAVITT (admitted *pro hac vice*)
                                           WDSavitt@wlrk.com
9                                          SARAH K. EDDY (admitted *pro hac vice*)
                                           SKEddy@wlrk.com
10                                         WACHTELL, LIPTON, ROSEN & KATZ
                                           51 West 52nd Street
11                                         New York, NY 10019
                                           Telephone:    (212) 403-1000
12                                         Facsimile:    (212) 403-2000

13                                         *Attorneys for Defendants Samuel Altman,*
                                           *Gregory Brockman, OpenAI, Inc., OpenAI L.P.,*
14                                         *OpenAI, L.L.C., OpenAI GP, L.L.C., OpenAI*
                                           *OpCo, LLC, OpenAI Global, LLC, OAI*
15                                         *Corporation, LLC, OpenAI Holdings, LLC,*
                                           *OpenAI Startup Fund Management, LLC,*
16                                         *OpenAI Startup Fund GP I, L.L.C., OpenAI*
                                           *Startup Fund I, L.P., OpenAI Startup Fund SPV*
17                                         *GP I, L.L.C., OpenAI Startup Fund SPV GP II,*
                                           *L.L.C., OpenAI Startup Fund SPV GP III,*
18                                         *L.L.C., OpenAI Startup Fund SPV GP IV,*
                                           *L.L.C., OpenAI Startup Fund SPV I, L.P.,*
19                                         *OpenAI Startup Fund SPV II, L.P., OpenAI*
                                           *Startup Fund SPV III, L.P., OpenAI Startup*
20                                         *Fund SPV IV, L.P., Aestas Management*
                                           *Company, LLC, and Aestas LLC*

21

22

23

24

25

26

27

28