# EXHIBIT B

1  JORDAN ETH (CA SBN 121617)
   JEth@mofo.com
2  RAGESH K. TANGRI (CA SBN 159477)
   RTangri@mofo.com
3  DAVID J. WIENER (CA SBN 291659)
   Dwiener@mofo.com
4  MORRISON & FOERSTER LLP
   425 Market Street
5  San Francisco, CA  94105
   Telephone:    (415) 268-7000
6  Facsimile:    (415) 268-7522

7  WILLIAM SAVITT (*pro hac vice* application pending)
   WDSavitt@wlrk.com
8  BRADLEY R. WILSON (*pro hac vice* application forthcoming)
   BRWilson@wlrk.com
9  SARAH K. EDDY (*pro hac vice* application pending)
   SKEddy@wlrk.com
10 RANDALL W. JACKSON (*pro hac vice* application pending)
   RWJackson@wlrk.com
11 WACHTELL, LIPTON, ROSEN & KATZ
   51 West 52nd Street
12 New York, NY 10019
   Telephone:    (212) 403-1000
13 Facsimile:    (212) 403-2000

14 Attorneys for Defendants
   SAMUEL ALTMAN, GREGORY BROCKMAN,
15 OPENAI, INC., OPENAI, LP, OPENAI, LLC,
   OPENAI GP, LLC, OPENAI OPCO, LLC, OPENAI
16 GLOBAL LLC, OAI CORPORATION, LLC, and
   OPENAI HOLDINGS LLC

ELECTRONICALLY
**F I L E D**
*Superior Court of California,*
*County of San Francisco*

**03/27/2024**
**Clerk of the Court**
BY: VERA MU
**Deputy Clerk**

17              SUPERIOR COURT OF THE STATE OF CALIFORNIA

18                        COUNTY OF SAN FRANCISCO

19 ELON MUSK, AN INDIVIDUAL,                    Case No. CGC-24-612746

20           Plaintiff,                         **DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO STRIKE**
21     v.

22 SAMUEL ALTMAN, an individual,                Date:   April 24, 2024
   GREGORY BROCKMAN, an individual,             Time:   9:30 a.m.
23 OPENAI, INC., a corporation, OPENAI, L.P., a  Dept.:  302
   limited partnership, OPENAI, L.L.C., a limited Judge: Hon. Richard B. Ulmer, Jr.
24 liability company, OPENAI GP, L.L.C., a
   limited liability company, OPENAI OPCO,      Action Filed: February 29, 2024
25 LLC, a limited liability company, OPENAI     Trial Date:   None Set
   GLOBAL, LLC, a limited liability company,
26 OAI CORPORATION, LLC, a limited liability
   company, OPENAI HOLDINGS, LLC, a limited
27 liability company, and DOES 1 through 100,
   inclusive,
28           Defendants.

# TABLE OF CONTENTS

Page

INTRODUCTION .................................................................................................................... 5

ARGUMENT ............................................................................................................................ 5

    I.   THE COURT SHOULD STRIKE MUSK'S PRAYER FOR SPECIFIC PERFORMANCE. ........................................................................................................ 6

    II.  THE COURT SHOULD STRIKE THE REQUEST FOR A JUDICIAL DETERMINATION AS TO OPENAI'S "NEXT GENERATION LARGE LANGUAGE MODELS IN DEVELOPMENT." .......................................................... 10

    III. THE COURT SHOULD STRIKE THE PRAYER FOR PUNITIVE DAMAGES. ............................................................................................................... 11

CONCLUSION ........................................................................................................................12

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Bonk* v. *Boyajian*
  (1954) 128 Cal.App.2d 153 ................................................................................................ 7, 8

*Brosseau* v. *Jarrett*
  (1977) 73 Cal.App.3d 864 .................................................................................................. 11

*Brown* v. *Ralphs Grocery Co.*
  (2018) 28 Cal.App.5th 824 .................................................................................................. 6

*College Hospital Inc.* v. *Super. Ct.*
  (1994) 8 Cal.4th 704 .......................................................................................................... 11

*Korea Supply Co.* v. *Lockheed Martin Corp.*
  (2003) 29 Cal.4th 1134 ...................................................................................................... 12

*Lawrence* v. *Shutt*
  (1969) 269 Cal.App.2d 749 .............................................................................................. 8, 9

*Lewis* v. *YouTube, LLC*
  (2015) 244 Cal.App.4th 118 ......................................................................................... 7, 8, 9

*Pac. Gas & Electric Co.* v. *Super. Ct.*
  (2006) 144 Cal.App.4th 19 .................................................................................................. 6

*Phoenix Enterprises, Inc.* v. *GG H16 Apartments, LLC*
  (Super. Ct. Sac. June 2, 2021, No. 34-2020-00286487-CU-BC-GDS)
  2021 Cal. Super. LEXIS 80665 ........................................................................................... 6

*Selby Realty Co.* v. *City of San Buenaventura*
  (1973) 10 Cal.3d 110 ......................................................................................................... 10

*Turman* v. *Turning Point of Central Cal., Inc.*
  (2010) 191 Cal.App.4th 53 ...................................................................................... 6, 11, 12

**Statutes and Rules**

Cal. Civ. Code § 3294 ................................................................................................................ 11

Cal. Civ. Code § 3294(a) ........................................................................................................... 11

Cal. Civ. Code § 3294(c)(1) ............................................................................................... 11 & n.2

Cal. Civ. Code § 3294(c)(2) ............................................................................................... 11 & n.2

Cal. Civ. Code § 3294(c)(3) ................................................................................................ 11 n.2, 12

Cal. Civ. Code § 3390(e) ............................................................................................................ 7, 8, 9

Cal. Code Civ. Proc. § 431.10(b)(3) ......................................................................................... 6, 7, 10

Cal. Code Civ. Proc. § 436 ....................................................................................................... 6, 7, 10

Cal. Code Civ. Proc. § 1060 ........................................................................................................... 10

**Other Authorities**

13 Witkin, Summary of Cal. Law 11th *Equity* § 44 (2023) ............................................................. 7

Rutter Group, Cal. Prac. Guide Civ. Pro. Before Trial § 6:158 ..................................................... 11

## INTRODUCTION

For the reasons set forth in Defendants' demurrer, Plaintiff Elon Musk has not pleaded a cognizable cause of action. His suit rests on a make-believe "Founding Agreement" as to which he pleads no offer, no acceptance, no bargained-for consideration, and no mutual assent. The words "Founding Agreement" appear in no document anywhere. They are not alleged to have been uttered in any conversation ever. No contract is pleaded. And Musk's various alternative claims asserted on the back of the non-existent "Founding Agreement" likewise fail.

In addition, the complaint suffers from further infirmities properly addressed in this motion to strike:

Musk's prayer for relief asks the Court to enter an exorbitant and impractical order of specific performance. Because the imaginary "Founding Agreement" is not even alleged to contain precise and definite terms, the prayer for mandatory injunctive relief is impermissible as a matter of statute, case law, and common sense. It should be stricken.

Musk's prayer for relief also asks the Court to declare that a technology called "Q*" constitutes "Artificial General Intelligence" and must therefore be excluded from OpenAI's licensing agreement with Microsoft. The complaint concedes that Q* is presently "in development" and even admits that "it is not clear what Q* is." (¶ 92.)[1] Hypothetical facts about potential technologies cannot present an actual controversy fit for declaratory relief. The prayer for declaratory relief should be stricken.

Finally, Musk's assertion that he is entitled to punitive damages falls short of meeting the fundamental requirements of California law. The complaint pleads no facts suggesting the malice, oppression, or fraud required to support a request for punitive damages. The prayer for punitive damages should be stricken.

## ARGUMENT

A court may strike "any irrelevant, false, or improper matter inserted in any pleading," or "any pleading not drawn or filed in conformity with the laws of this state, a court rule, or an order

---

[1] Citations in the form "¶ __" are of the complaint.

of the court." (Cal. Code Civ. Proc. § 436.) "Irrelevant matter" includes "[a] demand for judgment requesting relief not supported by the allegations of the complaint[.]" (Cal. Code Civ. Proc. § 431.10(b)(3).) "The appropriate procedural device for challenging a portion of a cause of action seeking an improper remedy is a motion to strike." (*Brown* v. *Ralphs Grocery Co.* (2018) 28 Cal.App.5th 824, 844 (citation omitted).)

Courts routinely strike prayers for relief not supported by the allegations in a complaint. (*See, e.g.*, *Turman* v. *Turning Point of Central Cal., Inc.* (2010) 191 Cal.App.4th 53, 63-64 [punitive damages claim properly stricken where plaintiff failed to allege malice, oppression, or fraud, as required by statute]; *Pac. Gas & Electric Co.* v. *Super. Ct.* (2006) 144 Cal.App.4th 19, 22-24, 27 [trial court abused its discretion in denying motion to strike prayer for recovery of nonparty's deductible where proposed remedy was unsupported in the pleadings]; *Phoenix Enterprises, Inc.* v. *GG H16 Apartments, LLC* (Super. Ct. Sac. June 2, 2021, No. 34-2020-00286487-CU-BC-GDS) 2021 Cal. Super. LEXIS 80665, at *9 [Dkt. #50] [striking remedy of specific performance absent enforceable contract].)

Musk's allegations do not support his prayer for specific performance, for judicial declarations about OpenAI's technologies, or for punitive damages. The Court should strike these prayers from the complaint.

## I. THE COURT SHOULD STRIKE MUSK'S PRAYER FOR SPECIFIC PERFORMANCE.

The Court should strike Musk's prayer for specific performance and corresponding request for an injunction for two reasons:

***First***, as described in Defendants' demurrer, there is no contract, and so there are no contractual obligations to specifically enforce. (Demurrer at pp. 9-14.) The complaint seeks to enforce an indefinite purported agreement with unverifiable terms and no showing of mutual assent or bargained-for consideration. Musk does not identify any document or conversation in which any Defendant agreed to any contractual undertaking, and Musk's made-for-litigation "Founding Agreement" is not identified anywhere in the complaint. There are also no allegations that Musk was induced to contribute money to OpenAI in exchange for a promise as to how his contributions

would be deployed; or any allegations that OpenAI acted in accordance with the purported "Founding Agreement" in consideration of Musk's contributions. Thus, because the allegations do not support the prayer for relief, the Court should strike Musk's request for specific performance. (Cal. Code Civ. Proc. § 431.10(b)(3); *id.* § 436.)

***Second***, even if there were a contract, the allegations would still not support the prayer, because the obligations pleaded are too uncertain to be enforced through equity. The Civil Code prohibits specific performance where contractual terms "are not sufficiently certain to make the precise act which is to be done clearly ascertainable." (Cal. Civ. Code § 3390(e).) Accordingly, "[s]pecific performance cannot be granted unless the terms of the contract are sufficiently definite for the court to know what to enforce." (13 Witkin, Summary of Cal. Law 11th *Equity* § 44 (2023) [collecting cases].) Applying this settled rule, courts have repeatedly refused to order specific performance where the words of the relevant contractual provision were uncertain, where no contractual term required the performance sought, or where the parties reserved agreement on important terms. (*Lewis* v. *YouTube, LLC* (2015) 244 Cal.App.4th 118, 127 [plaintiff "failed to identify any provision of the Terms of Service that she seeks to have a court enforce"]; *Bonk* v. *Boyajian* (1954) 128 Cal.App.2d 153, 156-57 [specific performance unavailable where the "instrument on its face [was] incomplete, uncertain and indefinite" and the parties had reserved agreement on key terms].)

Musk seeks two orders of specific performance. Neither remotely satisfies the test for clear ascertainability.

<u>1. The Mandatory Open Source Injunction</u>

Musk first seeks "[a]n order requiring that Defendants continue to follow OpenAI's long-standing practice of making AI research and technology developed at OpenAI available to the public." (Compl. at 34:5-7; Prayer A.i (the "Mandatory Open Source Injunction").) According to the complaint, this injunction is justified by the following contractual obligations:

- OpenAI should "be open-source, ***balancing only countervailing safety considerations***," ¶ 24 (emphasis added);

7

- OpenAI "will seek to open source technology for the public benefit *when applicable*," ¶ 25 (emphasis added); and

- OpenAI's founders would "have ***an ongoing conversation*** about what work should be open-sourced and what shouldn't," (Compl., Ex. 2 (emphasis added).)

Even indulging the fiction that any of this constitutes a contract, nothing in the complaint indicates which components of OpenAI's "AI research and technology" were required to be made "available to the public." To the contrary, the contract as alleged by Musk indicates information would be made available only "when applicable." And the complaint supplies no basis to determine whether public disclosure is "applicable" or "inapplicable." The complaint also acknowledges that OpenAI's leaders were to engage in "an ongoing conversation about what work should be open-sourced and what shouldn't." (*Ibid.*) The proposed injunction would impermissibly overrun that part of the supposed bargain. (*See Bonk*, 128 Cal.App.2d at pp. 156-57 [no specific performance where parties reserved agreement on material term].) Nor does the complaint explain how "countervailing safety considerations" should be balanced, or even what those "considerations" would include. (*See* ¶ 24.) Finally, the injunction would require adherence to a "long-standing" practice nowhere identified in the complaint. (*Id.* at 34:5-7; Prayer A.i.)

An order of this sort would leave OpenAI to labor under a hopelessly indeterminate injunction, subject to pain of contempt for guessing wrong about its meaning. To avoid such inadministrable and unfair outcomes is precisely why specific performance is prohibited unless the mandatory terms of a contract are certain enough "to make the precise act which is to be done clearly ascertainable." (*See* Cal. Civ. Code § 3390(e); *Lawrence* v. *Shutt* (1969) 269 Cal.App.2d 749, 763-64 ["uncertainty of the release clause preclude[d] specific performance of the provision"]; *Lewis*, 244 Cal.App.4th at p. 127 [specific performance unavailable where plaintiff failed to identify contractual term for the court to enforce].) The terms alleged here are not ascertainable at all. The prayer for a Mandatory Open Source Injunction should be stricken.

2. The No Revenue Injunction

Next, Musk seeks "[a]n order prohibiting Defendants from utilizing OpenAI, Inc. or its assets for the financial benefit of the individual Defendants, Microsoft, or any other particular

person or entity." (Compl. at 34:8-10; Prayer A.ii (the "No Revenue Injunction").) This extraordinary relief is justified, according to the complaint, because Defendants agreed that:

- OpenAI "would … create the first general AI and *use it for individual empowerment*—ie, the distributed version of the future *that seems the safest*," ¶ 51 (emphasis added);
- OpenAI "would be a non-profit developing AGI for the benefit of humanity, not for a for-profit company seeking to maximize shareholder profits," ¶ 24; and
- OpenAI's technology "would be owned by the foundation and *used 'for the good of the world*,'" (Compl., Ex. 2 (emphasis added).)

Here again, the alleged contract terms are not even close to "sufficiently certain" to make the No Revenue Injunction "clearly ascertainable." (*See* Cal. Civ. Code § 3390(e).) The complaint identifies no provision of the imagined contract preventing OpenAI from using its technology for the "financial benefit" of any "particular person or entity." That alone negates the proposed relief. (*See Lewis*, 244 Cal. App. 4th at p. 127 [court could not order specific performance where plaintiff failed to identify a term requiring the performance she sought].)

The scope of the proposed injunction, moreover, is breathtaking: it would appear to prohibit payment of salaries to employees and officers; licensing of OpenAI technologies to generate revenue to advance the company's mission; and use of financial incentives to attract and retain the best engineers—without whose services the mission would surely fail. Nothing in Musk's pretend contract terms remotely supports such an order. Nor do the alleged terms define when any particular commercial activity would constitute "maximiz[ing] shareholder profits." Nor, finally, could an order of specific performance find "sufficiently certain" ground in a contract term that requires OpenAI to take actions in the service of "individual empowerment"; to distribute technologies that "seem[] the safest" (to whom?); or to act only "for the good of the world." These terms are the opposite of "certain": they are endlessly indeterminate, they prescribe nothing with precision, they do not correspond at all to the (equally indeterminate) proposed injunctive order, and for those reasons they flunk the legal requirements of certainty and clear ascertainability. (*See* Cal. Civ. Code § 3390(e); *Lawrence*, 269 Cal.App.2d at pp. 763-64 ["uncertainty of the release clause preclude[d] specific performance of the provision"].)

For these reasons, the Court should strike Prayer A and the corresponding request for an injunction in Prayer D. (Cal. Code Civ. Proc. § 431.10(b)(3); *id.* § 436.)

## II. THE COURT SHOULD STRIKE THE REQUEST FOR A JUDICIAL DETERMINATION AS TO OPENAI'S "NEXT GENERATION LARGE LANGUAGE MODELS IN DEVELOPMENT."

Musk's prayer for a "judicial determination" that "Q* and/or other OpenAI next generation large language models *in development* constitute(s) Artificial General Intelligence and is/are outside the scope of OpenAI's license to Microsoft" should be stricken from the complaint as an improper request for declaratory relief. (Compl. at 34:13-15, Prayer C (emphasis added); *id.* at 34:16, Prayer D.)

California law limits declaratory relief to "cases of actual controversy[.]" (Cal. Code Civ. Proc. § 1060.) An "actual controversy" is "one which admits of definitive and conclusive relief by judgment within the field of judicial administration, as distinguished from an advisory opinion upon a particular or hypothetical state of facts." (*Selby Realty Co.* v. *City of San Buenaventura* (1973) 10 Cal.3d 110, 117.) For that reason, there is no "actual controversy" where a plaintiff seeks a "judicial determination" of facts that do not yet exist. (*See, e.g.*, *id.* at pp. 117-18 [no "actual controversy" where county had merely issued a "tentative" plan of proposed streets that "if ultimately constructed, will cross plaintiff's property"].)

Musk's prayer admits that it seeks a declaration based on a "hypothetical state of facts." *Id.* at 117. Musk alleges that OpenAI "is developing" Q* and that "it is not clear what Q* is[.]" (¶ 92.) So Musk does not even know what Q* is. But Musk nevertheless wants the Court to decide that Q* and other OpenAI technology likewise "*in development*" is AGI and outside the scope of OpenAI's license to Microsoft. (Compl. at 34:13-15, Prayer C (emphasis added).) That is not a proper basis for declaratory relief. (*See Selby Realty*, 10 Cal.3d at pp. 117-18.) This Court cannot determine the nature of technologies that are still "in development" or are not yet known to exist. Musk's Prayer C and the corresponding request for an injunction should be stricken from the complaint. (Cal. Code Civ. Proc. § 431.10(b)(3); *id.* § 436.)

## III. THE COURT SHOULD STRIKE THE PRAYER FOR PUNITIVE DAMAGES.

The Court should also strike Musk's prayer for punitive damages because the complaint does not allege that Defendants are chargeable with oppression, fraud, or malice. (Compl. at 34:24-25, Prayer G.)

A prayer for punitive damages "must set forth the elements as stated in the general punitive damage statute, Civil Code section 3294." (*Turman*, 191 Cal.App.4th at p. 63.) Those elements include "that the defendant has been guilty of oppression, fraud, or malice." (Cal. Civ. Code § 3294(a).) To satisfy the statutory definition, the allegations must show "'intentional,' 'willful,' or 'conscious' wrongdoing of a 'despicable' or 'injur[ious]' nature."[2] (*College Hospital Inc.* v. *Super. Ct.* (1994) 8 Cal.4th 704, 721 (citation omitted).) Conclusory assertions are not enough—a plaintiff seeking punitive damages must allege specific facts supporting their demand. (*See Brosseau* v. *Jarrett* (1977) 73 Cal.App.3d 864, 872 ["conclusory characterization of defendant's conduct as intentional, wilful and fraudulent" was "patently insufficient" to satisfy section 3294]; Rutter Group, Cal. Prac. Guide Civ. Pro. Before Trial § 6:158 [plaintiff "must allege *specific facts* showing that defendant's conduct was oppressive, fraudulent or malicious"].)

Musk does not even make a *conclusory* allegation of oppression, fraud, or malice here, still less allegations of specific facts showing such conduct. Nothing is alleged to suggest that Defendants "intended" to injure Musk or that Defendants acted in "conscious disregard" of Musk's rights. Musk has not alleged anything coming close to "despicable conduct." (Cal. Civ. Code § 3294(c)(1), (2).) Nor has Musk alleged any fraud by Defendants. Musk's allegations that Defendants "induce[d]" him to make contributions to OpenAI fail to allege the necessary intent to deceive or show the "concealment of a material fact known" to Defendants. (*See* ¶¶ 129, 141; Cal.

---

[2] The statute defines "malice" as "conduct which is intended by the defendant to cause injury to the plaintiff or despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights or safety of others." (Cal. Civ. Code § 3294(c)(1).) "Oppression" is "despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights." (*Id.* § 3294(c)(2).) And "fraud" is "an intentional misrepresentation, deceit, or concealment of a material fact known to the defendant with the intention on the part of the defendant of thereby depriving a person of property or legal rights or otherwise causing injury." (*Id.* § 3294(c)(3).)

Civ. Code § 3294(c)(3).) Notably, Musk's passive-voice claim that he was "deceived" is found only in Musk's cause of action under California's unfair competition law—for which punitive damages are unavailable. (*See Korea Supply Co.* v. *Lockheed Martin Corp.* (2003) 29 Cal.4th 1134, 1148.)

Musk has not alleged any facts suggesting malice, oppression, or fraud by Defendants. As a result, the Court should strike his prayer for punitive damages. 191 Cal.App.4th at p. 63.)

## CONCLUSION

For the reasons stated herein, the Court should strike the unsupported and improper prayers for relief set forth in Musk's Prayer A, Prayer C, the corresponding requests for injunctive relief in Prayer D, and Musk's claim for punitive damages in Prayer G.

Date: March 27, 2024

By: /s/ Jordan Eth
JORDAN ETH
JEth@mofo.com
RAGESH K. TANGRI
RTangri@mofo.com
DAVID J. WIENER
DWiener@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105
Telephone: (415) 268-7000
Facsimile: (415) 268-7522

WILLIAM SAVITT
(*pro hac vice* application pending)
BRADLEY R. WILSON
(*pro hac vice* application forthcoming)
SARAH K. EDDY
(*pro hac vice* application pending)
RANDALL W. JACKSON
(*pro hac vice* application pending)
WACHTELL, LIPTON, ROSEN & KATZ
51 West 52nd Street
New York, NY 10019
Telephone: (212) 403-1000
Facsimile: (212) 403-2000

Attorneys for Defendants
SAMUEL ALTMAN, GREGORY BROCKMAN, OPENAI, INC., OPENAI, LP, OPENAI, LLC, OPENAI GP, LLC, OPENAI OPCO, LLC, OPENAI GLOBAL LLC, OAI CORPORATION, LLC, AND OPENAI HOLDINGS LLC