UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| ELON MUSK,<br>            Plaintiff,<br>v.<br>SAMUEL ALTMAN, et al.,<br>            Defendants. | Case No. 4:24-cv-04722-YGR<br><br>**[PROPOSED] ORDER GRANTING OPENAI DEFENDANTS' MOTION TO DISMISS COMPLAINT OF PLAINTIFF ELON MUSK**<br><br>Date:  November 12, 2024<br>Time:  2:00 p.m.<br>Courtroom:  1 – 4th Floor<br>Judge:  Hon. Yvonne Gonzalez Rogers<br>Compl. Filed:  August 5, 2024 |

**[PROPOSED] ORDER**

Defendants Samuel Altman, Gregory Brockman, OpenAI, Inc., OpenAI L.P., OpenAI, L.L.C., OpenAI GP, L.L.C., OpenAI OpCo, LLC, OpenAI Global, LLC, OAI Corporation, LLC, OpenAI Holdings, LLC, OpenAI Startup Fund Management, LLC, OpenAI Startup Fund GP I, L.L.C., OpenAI Startup Fund I, L.P., OpenAI Startup Fund SPV GP I, L.L.C., OpenAI Startup Fund SPV GP II, L.L.C., OpenAI Startup Fund SPV GP III, L.L.C., OpenAI Startup Fund SPV GP IV, L.L.C., OpenAI Startup Fund SPV I, L.P., OpenAI Startup Fund SPV II, L.P., OpenAI Startup Fund SPV III, L.P., OpenAI Startup Fund SPV IV, L.P., Aestas Management Company, LLC, and Aestas LLC (the "OpenAI Defendants"), have moved the Court, pursuant to Federal Rules of Civil Procedure 8, 9(b), and 12(b)(6), to dismiss the complaint filed by Elon Musk on August 5, 2024 (ECF No. 1, "Compl.").

Having considered all the papers filed by the parties in connection with the OpenAI Defendants' motion, the parties' arguments at the hearing on this matter, and other matters of which the Court may properly take judicial notice, the OpenAI Defendants' motion is GRANTED, and the complaint is DISMISSED WITH PREJUDICE in its entirety.

**BACKGROUND**

Elon Musk alleges that Altman, Brockman, and several OpenAI entities deceived him into supporting OpenAI, Inc., a non-profit organization dedicated to researching and developing safe and beneficial artificial intelligence for the benefit of humanity. Compl. ¶ 1. Musk claims that he contributed over $44 million to the non-profit based on promises made to him about open-sourcing of OpenAI's technology and use of that technology for private gain. *Id.* ¶¶ 1, 82. Claiming "perfidy and deceit . . . of Shakespearean proportions," *id.* ¶ 2, Musk alleges that the OpenAI Defendants broke those promises by, among other things, failing to open-source OpenAI's most recent technology and placing it behind a paywall, licensing its advanced technology, granting a non-voting board seat to a for-profit entity (Microsoft), and engaging in self-dealing. *Id.* ¶ 250. Musk brings 15 claims that fall into six categories: (1) contract claims (Counts VI, VII, VIII, XIV), (2) fraud claims (Counts I, III, IX), (3) claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962 (Counts IV, V), (4) claims for breach of fiduciary

duty (Counts II, XI, XIII), (5) false advertising claims (Counts X, XII), and (6) a claim for declaratory relief (Count XV).

## ANALYSIS

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted). Under this standard, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Pleading fraud requires an account of "the time, place, and specific content of the false representations," as well as "what is false or misleading about [the] statement, and why it is false." *Yetter* v. *Ford Motor Co.*, 428 F. Supp. 3d 210, 219-20 (N.D. Cal. 2019) (first quoting *Swartz* v. *KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (per curiam), then quoting *Ebeid ex rel. U.S.* v. *Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010)); *see also* Fed. R. Civ. P. 9(b); *Smith* v. *GlaxoSmithKline Consumer Healthcare Holdings (US) LLC*, 660 F. Supp. 3d 863, 875 (N.D. Cal. 2023). None of Musk's claims pass muster.

**I.     CONTRACT CLAIMS**

The complaint does not state a claim for breach of express contract (Count VI). To plead an express contract, a plaintiff must (a) attach the writing to the complaint or quote its text; or (b) plead in detail the writing's "legal effect." *Heritage Pac. Fin., LLC* v. *Monroy*, 215 Cal. App. 4th 972, 993 (2013). In either case, the essential elements of a contract claim—(1) mutual assent to the terms alleged to have been breached and (2) bargained-for consideration—must be apparent from the express terms of the writing itself. *See Pac. Bay Recovery, Inc.* v. *Cal. Physicians' Servs., Inc.*, 12 Cal. App. 5th 200, 215-16 (2017).

Musk attaches no writing to the complaint, nor does he attempt to recite the terms of the contract verbatim. Instead, Musk invokes his "express written correspondence in 2015" with Altman (Compl. ¶ 248), but identifies no language therein constituting an undertaking to Musk to (a) open-source all technology "subject only to genuine safety considerations"; (b) not license certain technology to Microsoft; (c) refrain from granting Microsoft a board observer seat; (d) refrain from charging for use of any technology; (e) make no business deals with entities in

1  which Altman has an interest; or (f) never contemplate a corporate reorganization. *See id.* ¶¶ 248,
2  250. This failure to plead mutual assent to the purported contract's terms is fatal. So is Musk's
3  failure to plausibly allege that his contributions to OpenAI were an "inducement to the promisor,"
4  as necessary to plead bargained-for consideration. Cal. Civ. Code § 1605. Without these two
5  foundational elements of contract formation, Musk cannot sustain this claim.

6  Musk's claim for breach of implied contract (Count VII) fails for the same reasons. *Zenith*
7  *Ins. Co.* v. *O'Connor*, 148 Cal. App. 4th 998, 1010 (2007) ("[a]n implied contract in no less degree
8  than an express contract, must be founded upon an ascertained agreement of the parties to perform
9  it," requiring the same showing of mutual and bargained-for consideration (cleaned up)). Musk
10 does not plausibly allege conduct evincing mutual assent or bargained-for consideration or even
11 identify with specificity the conduct that allegedly gave rise to his implied contract. *See Haskins* v.
12 *Symantec Corp.*, 2014 WL 2450996, at *4 (N.D. Cal. June 2, 2024).

13 Musk's implied covenant and tortious interference claims (Counts VIII, XIV) likewise fail
14 because they are predicated on the existence of an enforceable contract, and none has been pleaded.
15 The implied covenant claim fails for the additional, independent reason that it is "based on the same
16 conduct as [Musk's] breach of implied contract" claim and is thus "impermissibly duplicative."
17 *Westron* v. *Zoom Video Commc'ns, Inc.*, 2023 WL 3149262, at *2 (N.D. Cal. Feb. 15, 2023). And
18 Musk's own allegations undermine his tortious interference claim: Under California law, an agent
19 cannot interfere with its principal's contract, *see Mintz* v. *Blue Cross of Cal.*, 172 Cal. App. 4th
20 1594, 1604, 1607 (2009), and Musk alleges, on the face of the complaint, that Altman created the
21 OpenAI For-Profit Entities (the defendants to this count) as agents of his fraud, *see* ¶ 190. As a
22 result, these Entities cannot be sued for tortious interference under settled law. In any event, this
23 claim is inadequately pleaded, as the complaint offers only conclusory allegations that the OpenAI
24 For-Profit Entities committed "intentional acts designed to induce a breach or disruption" of
25 Musk's purported "contractual relationship." *Ixchel Pharma, LLC* v. *Biogen, Inc.*, 9 Cal. 5th 1130,
26 1141 (2020).

27 **II.    FRAUD CLAIMS**
28 Musk impermissibly tries to repackage his allegations of breach of contract as claims of

fraud. Rather than assert that Defendants made and then broke enforceable promises, Musk says those same promises were made to him with no present intention to fulfill them and therefore constituted fraud. *See* Compl. ¶¶ 149-70, 200-06, 276. But a failed contract claim cannot be so easily repurposed. *See, e.g., JMP Secs. LLP* v. *Altair Nanotechnologies Inc.*, 880 F. Supp. 2d 1029, 1043-44 (N.D. Cal. 2012) (dismissing fraud claim where plaintiff attempted to take "allegations underpinning a straightforward claim for breach of a commercial contract and recast them as [a] tort[]"). These claims—for promissory fraud (Count I), aiding and abetting fraud (Count III), and unjust enrichment (Count IX)—fail for the fundamental reason that Musk does not identify any promise that was made to him or any facts suggesting that any such promise was made with fraudulent intent, let alone plead these facts with the particularity required under Federal Rule of Civil Procedure 9(b). *See Behnke* v. *State Farm Gen. Ins. Co.*, 196 Cal. App. 4th 1443, 1453, 1459 (2011); *UMG Recordings, Inc.* v. *Glob. Eagle Ent., Inc.*, 117 F. Supp. 3d 1092, 1108 (C.D. Cal. 2015).

Musk's claim for aiding and abetting fraud (Count III) is deficient for two additional reasons. First, he fails to allege the OpenAI For-Profit Entities' "substantial assistance" in the purported underlying fraud with "heightened specificity." *McGraw Co.* v. *Aegis Gen. Ins. Agency, Inc.*, 2016 WL 3745063, at *6 (N.D. Cal. July 13, 2016). Second, as Musk elsewhere alleges that Altman and Brockman are agents of the OpenAI For-Profit Entities or vice versa (Compl. ¶ 190), this claim is barred by the agency immunity rule, *see Villains, Inc.* v. *Am. Econ. Ins. Co.*, 870 F. Supp. 2d 792, 795-96 (N.D. Cal. 2012) (under the "agency immunity rule," an "agent is, in effect, immune from liability" because "a principal cannot aid and abet itself").

### III. RICO CLAIMS

Musk's RICO claims (Counts IV and V) are likewise untenable in light of his failure to plead fraud.

The complaint attempts to plead a pattern of racketeering activity based on wire fraud, requiring Musk to plead with particularity: "(A) the formation of a scheme to defraud, (B) the use of the . . . wires in furtherance of that scheme, and (C) the specific intent to defraud." *Eclectic Props. E., LLC* v. *Marcus & Millichap Co.*, 751 F.3d 990, 997 (9th Cir. 2014). But Musk identifies

no particular representation by any Defendant that was false when made, nor does he allege facts establishing an intent to defraud—that is, any Defendant's knowledge of falsity at the time any alleged representation was made. Musk therefore does not plead cognizable predicate acts.

Separately, the complaint fails to plead that the purportedly fraudulent acts committed by the Defendants named in these counts constituted the "conduct" "of an enterprise"—that is, of OpenAI, Inc. *Cf. Ferrari* v. *Mercedes-Benz USA, LLC*, 2016 WL 7188030, at *2 (N.D. Cal. Dec. 12, 2016). The alleged "enterprise" cannot "simply be the same 'person' referred to by a different name," as "RICO enterprise liability 'depends on showing that the defendants conducted or participated in the conduct of the 'enterprise's affairs,' not just their own affairs.'" *Id.* (emphasis omitted) (quoting *Cedric Kushner Promotions, Ltd.* v. *King*, 533 U.S. 158, 163 (2001)). Yet, in support of his RICO claim, Musk identifies only acts allegedly committed by Altman and Brockman and their purported agents, the OpenAI For-Profit Entities. *See id.* at *4.

These deficiencies also necessarily defeat Musk's claim for RICO conspiracy (Count V). *See, e.g.*, *Sanford* v. *MemberWorks, Inc.*, 625 F.3d 550, 559 (9th Cir. 2010) ("Plaintiffs cannot claim that a conspiracy to violate RICO existed if they do not adequately plead a substantive violation of RICO." (quoting *Howard* v. *Am. Online Inc.*, 208 F.3d 741, 751 (9th Cir. 2000))).

## IV. FIDUCIARY BREACH CLAIMS

Musk lacks standing to assert his fiduciary breach claims—framed as constructive fraud (Count II), a violation of the UCL, Cal. Bus. & Prof. Code §§ 17200 *et seq.* (Count XI), and aiding and abetting breach of fiduciary duty (Count XIII)—because he is a donor with no "reversionary, contractual, or property interest in" the assets of OpenAI, Inc., nor is he an officer or director of the non-profit. Cal. Corp. Code § 5142(a)(1)-(4); *see also Pinkert* v. *Schwab Charitable Fund*, 2021 WL 2476869, at *5-6 (N.D. Cal. June 17, 2021) (listing classes of plaintiffs with standing to assert breach of charitable trust under California law and noting that "a donor . . . is not among them").

Musk cannot manufacture standing by repackaging his fiduciary breach claim as one under the UCL. *See id.* at *6 (plaintiff's "lack[] [of] standing" to bring claims for breach of fiduciary duty "dispos[ed] of [his] UCL claim too because it [was] predicated on" those claims).

Moreover, Musk's fiduciary breach claims fail for the additional, independent reason that

he does not support them with particularized facts as required by Rule 9(b). And as with his other claims against the OpenAI For-Profit Entities, Musk's claim for aiding and abetting fiduciary breach is in any event barred by the agency immunity rule.

## V. FALSE ADVERTISING CLAIMS

The complaint fails to state a false advertising claim under the Lanham Act, 15 U.S.C. § 1125(a)(1)(B) (Count X), or California's false advertising statute, Bus. & Prof. Code §§ 17500 *et seq.* (Count XII), because Musk identifies no commercial advertisement or statement made primarily out of economic motivation. *See Children's Health Def.* v. *Meta Platforms, Inc.*, 112 F.4th 742, 764 (9th Cir. 2024) (requiring a commercial advertisement for "goods, services, or commercial activities" to state a Lanham Act claim (quoting 15 U.S.C. § 1125(a)(1)(B)); *Bernardo* v. *Planned Parenthood Fed'n of Am.*, 115 Cal. App. 4th 322, 356 (2004) (requiring a statement made in connection with the disposal of "real or personal property" or the "perform[ance] [of] services" to state a claim for false advertising under California law (quoting Cal. Bus. & Prof. Code § 17500)). Each of the statements included in the complaint relates to OpenAI's mission and general philosophy. None is tethered to the promotion of OpenAI's goods or services. And, in any event, Musk's suggestion that his reputation for technological openness has been tarnished through association with OpenAI does not adequately plead commercial injury—an independent defect that deprives Musk of standing to assert a claim under the Lanham Act. *See Charlotte's Web, Inc.* v. *AAXLL Supply Co. LLC*, 2020 WL 6891876, at *1 (N.D. Cal. Nov. 24, 2020).

## VI. DECLARATORY RELIEF

The complaint fails to state a claim for declaratory relief (Count XV) because it pleads no viable underlying claim for which the Court may order declaratory relief. *Rigsby* v. *GoDaddy Inc.*, 59 F.4th 998, 1010 (9th Cir. 2023). Even if another of Musk's claims were cognizable, his request for declaratory relief "would be redundant" of such claim and fail for that reason. *Strome* v. *DBMK Enters., Inc.*, 2014 WL 6485533, at *5 (N.D. Cal. Nov. 19, 2014).

## CONCLUSION

For the foregoing reasons, the OpenAI Defendants' Motion to Dismiss is GRANTED, and Plaintiff Elon Musk's complaint is DISMISSED WITH PREJUDICE.

IT IS SO ORDERED this ___ day of _____, 202_

HONORABLE YVONNE GONZALEZ ROGERS
UNITED STATES DISTRICT COURT JUDGE