# EXHIBIT 26

**KKC**  Kohn, Kohn & Colapinto LLP

July 1, 2024

**URGENT MATTER**

The Honorable Gary Gensler
Chair
Securities and Exchange Commission
100 F Street, NE
Washington, DC 20549

**Re:    OpenAI Violations of Rule 21F-17(a) and Implementation of E.O. 14110**

Dear Chair Gensler:

We represent the one or more anonymous and confidential whistleblower(s) who filed a formal TCR complaint with the Securities and Exchange Commission ("SEC") documenting systemic violations of the Dodd-Frank Act, 15 U.S.C. § 78u-6 and SEC Rule 21F-17(a) committed by OpenAI.[1] OpenAI is a San Francisco based tech company most well-known for its artificial intelligence ("AI") product ChatGPT.[2] Under SEC precedent, and as a matter of law, OpenAI is required to comply with the SEC's regulation prohibiting illegally restrictive non-disclosure agreements ("NDAs").[3]

As explained in the complaint, OpenAI's employment, severance, non-disparagement, and non-disclosure agreements violated SEC Rule 21F-17(a). The agreements prohibited and discouraged both employees and investors from communicating with the SEC concerning securities violations, forced employees to waive their rights to whistleblower incentives and compensation, and required employees to notify the company of communication with government regulators. The SEC has made it abundantly clear that privately held companies that engage in these practices violate the law and are subject to fines and other enforcement actions.[4]

Given the risks associated with the advancement of AI,[5] there is an urgent need to ensure that employees working on this technology understand that they can raise complaints or address concerns to federal regulatory or law enforcement authorities. Likewise, it is critical for companies like OpenAI to understand the illegal nature of their NDAs, and to ensure that their workplace

---

[1] The official complaint number related to this filing will be transmitted separately by email.
[2] References to OpenAI include all associated legal entities, such as OpenAI Inc., OpenAI OpCo, LLC, OpenAI Holdings, LP, Aestas, LLC.
[3] Order Instituting Cease-and-Desist Proceedings Pursuant to Section 21C of the Securities Exchange Act of 1934, Making Findings, and Imposing a Cease-and-Desist Order, *Monolith Resources*, LLC, Release No. 98322, File No. 3-21629 (Sept. 8, 2023), https://www.sec.gov/files/litigation/admin/2023/34-98322.pdf.
[4] *Id.*
[5] *See, e.g. Statement on AI Risk,* Center for AI Safety, https://www.safe.ai/work/statement-on-ai-risk.

**KOHN, KOHN & COLAPINTO LLP**
1710 N Street NW, Washington, DC 20036 · (202) 342-6980 · kkc.com

STRICTLY CONFIDENTIAL
Page 2 of 7

cultures encourage employees to raise concerns, even if those concerns are raised directly to federal authorities, and even if those concerns may impact the profitability of the companies.

The SEC must take swift and aggressive steps to enforce SEC Rule 21F-17(a) within the AI sector, and to ensure that there have been no violations of 18 U.S.C. § 1513(e).[6] Executive Order 14110 requires nothing less, acknowledging that every agency of the federal government is responsible for "mitigating" the "substantial risks" posed by AI.[7] The Executive Order warns that "Artificial intelligence (AI) holds extraordinary potential for . . . peril," and the "irresponsible use" of this emerging technology "could exacerbate societal harms such as fraud, discrimination, bias, and disinformation; displace and disempower workers; stifle competition; and pose risks to national security." The Executive Order therefore concludes that ensuring the safe development of AI technology "demands a society-wide effort that includes government, the private sector, academia, and civil society."[8]

To achieve this end, the Order mandates that agencies such as the SEC enforce existing laws designed to protect the public and investors from fraud.[9] At the heart of any such enforcement effort is the recognition that insiders (i.e. whistleblowers) must be free to report concerns to federal authorities. Moreover, these employees need to be aware of their rights under the Dodd-Frank Act to file such reports confidentially and anonymously directly with the SEC. They also need to know that they cannot be retaliated against for making such reports, and that they are potentially eligible for compensation if their reports result in successful enforcement actions designed to protect the public and investors. Employees are in the best position to detect and warn against the types of dangers referenced in the Executive Order and are also in the best position to help ensure that AI benefits humanity, instead of having an opposite effect.

The SEC's Whistleblower Office was provided with significant documentation demonstrating that OpenAI's prior NDAs violated the law by requiring its employees to sign illegally restrictive contracts to obtain employment, severance payments, and other financial consideration. Given the well-documented potential risks posed by the irresponsible deployment of AI, we urge the

---

[6] As part of the Sarbanes-Oxley corporate reform measures Congress amended the obstruction of justice laws to include retaliation against whistleblowers. *See* 18 U.S.C. § 1513(e)("Whoever knowingly, with the intent to retaliate, takes any action harmful to any person, including interference with the lawful employment or livelihood of any person, for providing to a law enforcement officer any truthful information relating to the commission or possible commission of any Federal offense, shall be fined under this title or imprisoned not more than 10 years, or both.").

[7] Executive Order No. 14110, 88 Fed. Reg. 75191, 75191 (Nov. 1, 2023), https://www.federalregister.gov/documents/2023/11/01/2023-24283/safe-secure-and-trustworthy-development-and-use-of-artificial-intelligence.

[8] *Id.*

[9] *Id.* at 75193 ("The Federal Government will enforce existing consumer protection laws and principles and enact appropriate safeguards against fraud, unintended bias, discrimination, infringements on privacy, and other harms from AI. Such protections are especially important in critical fields like healthcare, financial services, education, housing, law, and transportation, where mistakes by or misuse of AI could harm patients, cost consumers or small businesses, or jeopardize safety or rights.")

STRICTLY CONFIDENTIAL
Page 3 of 7

Commissioners to immediately approve an investigation into OpenAI's prior NDAs, and to review current efforts apparently being undertaken by the company to ensure full compliance with SEC Rule 21F-17(a).

This request for an investigation is fully supported by the documents provided to the SEC by the Whistleblower(s). The agreements attached as exhibits to the SEC complaint support a finding that OpenAI's use of the NDAs submitted with the complaint violated numerous precedents of the SEC.

SEC precedent requires that an effective enforcement action be undertaken based on the NDAs provided as evidence in the Dodd-Frank complaint. In the SEC's first case addressing the issue of improper NDAs, the Commission sanctioned KBR for an NDA drafted *before* the Dodd-Frank Act was even passed. The company was sanctioned despite agreeing to fix the language in the NDAs, and despite the agreeing to contact employees who had executed these agreements in the past and informing them directly of their right to report wrongdoing to the appropriate authorities.[10]

Additionally, given the large number of improper NDAs used by OpenAI over a long period of time, it is imperative that the Commission ensure that all prior improper NDAs be cured, and that any corrective action taken by OpenAI is consistent with past Commission precedent.

The courage of our client(s) in coming forward creates an opportunity to help ensure that all participants in creating and marketing this new technology will firmly understand that employees and investors always have the right to report wrongdoing, safety issues, and violations of law to the appropriate authorities. The chilling effect of prior NDAs and the harmful message these illegal contracts create within the workplace culture needs to be addressed in an appropriate enforcement action, designed to fully address any harmful impact caused by these practices.[11] Accountably is at the heart of deterrence, and deterrence is at the heart of the Dodd-Frank Act.

---

[10] *See In the Matter of KBR,* Administrative File No. 3-16466, p. 3 (April 1, 2015) ("KBR has agreed to make reasonable efforts to contact KBR employees in the United States who signed the confidentiality statement from August 21, 2011 to the present, providing them with a copy of this Order and a statement that KBR does not require the employee to seek permission from the General Counsel of KBR before communicating with any governmental agency or entity, including but not limited to the Department of Justice, the Securities and Exchange Commission, the Congress, and any agency Inspector General, regarding possible violations of federal law or regulation.").

[11] *J.P. Morgan to Pay $18 Million for Violating Whistleblower Protection Rule*, SEC, Press Release 2024-7 (Jan. 16, 2024) *see* Order Instituting Administrative and Cease-and-Desist Proceedings Pursuant to Sections 15(b) and 21c of the Securities Exchange Act of 1934 and Section 203(e) of the Investment Advisers Act of 1940, Making Findings, and Imposing Remedial Sanctions and a Cease-and-Desist Order, *J.P. Morgan Securities, LLC*, Release No. 99344, Release No. 6530, File No. 3-21829, 3 (Jan. 16, 2024), https://www.sec.gov/files/litigation/admin/2024/34-99344.pdf; *see also* Order Instituting Administrative and Cease-and-Desist Proceedings, Pursuant to Sections 15(B) and 21c of the Securities Exchange Act of 1934, Making Findings, and Imposing Remedial Sanctions and a Cease-and-Desist Order, *Guggenheim Securities, LLC*, Release No. 92237, File No. 3-20370 (Jun. 23, 2021), https://www.sec.gov/files/litigation/admin/2021/34-92237.pdf.

STRICTLY CONFIDENTIAL
Page 4 of 7

Among the violations documented by the Whistleblower(s) are:

- Non-disparagement clauses that failed to exempt disclosures of securities violations to the SEC;[12]

- Requiring prior consent from the company to disclose confidential information to federal authorities;[13]

- Confidentiality requirements with respect to agreements, that themselves contain securities violations;[14]

- Requiring employees to waive compensation that was intended by Congress to incentivize reporting and provide financial relief to whistleblowers.[15]

---

[12] Order Instituting Cease-and-Desist Proceedings Pursuant to Section 21c of the Securities Exchange Act of 1934, Making Findings, and Imposing Remedial Sanctions and a Cease-and-Desist Order, *The Brink's Company*, Release No. 95138, File No. 3-20904, ¶¶ 4-5 (Jun. 22, 2022), https://www.sec.gov/litigation/admin/2022/34-95138.pdf.

[13] *See* Order Instituting Cease-and-Desist Proceedings Pursuant to Section 21c of the Securities Exchange Act of 1934, Making Findings, and Imposing a Cease-and-Desist Order, *KBR, Inc.*, Release No. 7461, File No. 3-16466, ¶ 6 (Apr. 1, 2015), https://www.sec.gov/litigation/admin/2015/34-74619.pdf; Order Instituting Cease-and-Desist Proceedings Pursuant to Section 21c of the Securities Exchange Act of 1934, Making Findings, and Imposing Remedial Sanctions and a Cease-and-Desist Order, *BlueLinx Holdings Inc.*, Release No. 78528, File No. 3-17371, ¶¶ 7-9, 13 (Aug. 10, 2016), https://www.sec.gov/litigation/admin/2016/34-78528.pdf; Order Instituting Administrative and Cease-and-Desist Proceedings, Pursuant to Sections 15(B) And 21c of the Securities Exchange Act of 1934, Making Findings, and Imposing Remedial Sanctions and a Cease-and-Desist Order, *Guggenheim Securities, LLC*, Release No. 92237, File No. 3-20370, ¶ 5-6 (Jun. 23, 2021), https://www.sec.gov/files/litigation/admin/2021/34-92237.pdf; Order Instituting Cease-and-Desist Proceedings Pursuant to Section 21c of the Securities Exchange Act of 1934, Making Findings, and Imposing Remedial Sanctions and a Cease-and-Desist Order, *The Brink's Company*, Release No. 95138, File No. 3-20904, ¶ 4-5 (Jun. 22, 2022), https://www.sec.gov/litigation/admin/2022/34-95138.pdf.

[14] *J.P. Morgan Securities, LLC*, Release No. 99344, Release No. 6530, File No. 3-21829, 3 (Jan. 16, 2024), https://www.sec.gov/files/litigation/admin/2024/34-99344.pdf ("[the JPMS client] shall keep this Agreement confidential and not use or disclose (including but not limited to, media statements, social media, or otherwise) the allegations, facts, contentions, liability, damages, or other information relating in any way to the Account, including but not limited to, the existence or terms of this Agreement").

[15] Order Instituting Cease-and-Desist Proceedings Pursuant to Section 21c of the Securities Exchange Act of 1934, Making Findings, and Imposing Remedial Sanctions and a Cease-and-Desist Order, *BlueLinx Holdings Inc.*, Release No. 78528, File No. 3-17371 (Aug. 10, 2016), https://www.sec.gov/litigation/admin/2016/34-78528.pdf; Order Instituting Cease-and-Desist Proceedings Pursuant to Section 21c of the Securities Exchange Act of 1934, Making Findings, and Imposing a Cease-and-Desist Order, *Health Net, Inc.*, Release No. 78590, File No. 3-17396 (Aug. 16, 2016), https://www.sec.gov/files/litigation/admin/2016/34-78590.pdf; Order Instituting Cease-and-Desist Proceedings Pursuant to Section 21c of the Securities Exchange Act of 1934, Making Findings, and Imposing a Cease-and-Desist Order, *BlackRock, Inc.*, Release No. 79804, File No. 3-17786 (Jan. 17, 2017),

STRICTLY CONFIDENTIAL
Page 5 of 7

As we expressed above, even if OpenAI is making reforms in light of the public disclosures of their illegal contracts, the importance of taking appropriate enforcement action is critical – not as an attack on OpenAI or to hinder the advancement of AI technology, but to send the message to others in the AI space, and to the tech industry at large, that violations on the right of employees or investors to report wrongdoing will not be tolerated. The door must be open for potential whistleblowers both at OpenAI and at other companies to come forward concerning misconduct and safety issues possibly occurring throughout the field. The law requires that such complaints be welcomed and rewarded as a matter of law and policy, not discouraged by companies sending direct or indirect messages to employees that they must honor a "code of silence" that has resulted in so many disasters in the past.

As the Senate Judiciary Committee pointed out in its report on the Sarbanes-Oxley Act, the SEC-enforced whistleblower laws are intended to specifically target and eliminate the corporate culture that inhibits lawful disclosure to law enforcement or regulatory authorities:

> [The] "corporate code of silence" not only hampers investigations, but also creates a climate where ongoing wrongdoing can occur with virtual impunity. The consequences of this corporate code of silence for investors in publicly traded companies, in particular, and for the stock market, in general, are serious and adverse, and they must be remedied.
>
> Senate Report 107-146, reprinted at https://www.congress.gov/congressional-report/107th-congress/senate-report/146/1.

SEC action here is perhaps the best way for development of this rapidly evolving and important industry to proceed in a safe, transparent manner.

Given the potential that advanced AI could "pose an existential risk to humanity,"[16] restrictive nondisclosure agreements are particularly egregious. We therefore request that the SEC take the following actions to quickly and effectively reinforce to OpenAI and all of their employees or investors – as well as employees of other companies in this space – that they have a right to file claims with the SEC and other federal or state law enforcement or regulatory authorities:

---

https://www.sec.gov/litigation/admin/2017/34-79804.pdf; Order Instituting Cease-and-Desist Proceedings Pursuant to Section 21c of the Securities Exchange Act of 1934, Making Findings, and Imposing a Cease-and-Desist Order, *Homestreet, Inc. and Darrell Van Amen*, Release No. 79844, Release No. 3852, File No. 3-17801 (Jan. 19, 2017), https://www.sec.gov/litigation/admin/2017/34-79844.pdf; Order Instituting Cease-and-Desist Proceedings Pursuant to Section 8a of the Securities Act of 1933 and Section 21C of the Securities Exchange Act of 1934, Making Findings, and Imposing a Cease-and-Desist Order, *Gaia, Inc. and Paul C. Tarell, Jr., CPA*, Release No. 11196, Release No. 97548, File No. 3-21438 (May 23, 2023), https://www.sec.gov/litigation/admin/2023/33-11196.pdf.

[16] Cade Metz, *How Could AI Destroy Humanity,* New York Times (June 10, 2023), https://www.nytimes.com/2023/06/10/technology/ai-humanity.html

STRICTLY CONFIDENTIAL
Page 6 of 7

1. Require OpenAI to produce for inspection every employment agreement, severance agreement, investor agreement, or any other contract that contains a nondisclosure agreement. Upon review of these agreements, the SEC can ensure that none of the employees or other persons who signed these agreements suffered any harm that is explicitly prohibited under the Sarbanes-Oxley Act's obstruction of justice provision, 18 U.S.C. § 1513(e).[17]

2. Require OpenAI to notify all past and current employees as to the violations they committed, notify every past and current employee that pursuant to the Dodd-Frank Act employees have the right to confidentially and anonymously report any violations of law to the SEC, and inform them of all the rights associated with such a report.

3. Fine OpenAI for each improper agreement under the Securities and Exchange Act to the extent the SEC deems appropriate.

4. Direct OpenAI to cure the "chilling effect" of its past practices consistent with the affirmative relief in prior Commission decisions.

Thank you for your time and consideration. We remain available to assist the government on this matter in any way going forward.

Sincerely,

*/s/ Stephen Kohn*
Stephen Kohn
Kohn, Kohn and Colapinto, LLP
1710 N Street, NW
Washington, DC 20036

Phone: (202) 342-6980
Fax:    (202) 342-6984

*/s/ Kayla Svihovec*
Kayla Svihovec

---

[17] As you are aware, when Congress amended the securities laws in 2002, they included an amendment to the federal obstruction of justice statute. This amendment codified as 18 U.S.C. § 1513(e) makes it a federal criminal offense to harm "any person" in their "livelihood" for providing a federal law enforcement agency (including the SEC) with information about a "possible" crime. The Whistleblower(s) who filed this complaint are thus protected under this law, and we would expect a full criminal investigation if any person who provided the SEC with information about a possible crime suffered any form of retaliation. Likewise, if OpenAI enforced their NDAs against any person who provided information regarding a potential crime to a federal law enforcement agency, OpenAI may have committed a criminal obstruction of justice. By reviewing prior NDAs, the Commission can confirm that no such criminal activity occurred, and also ensure that OpenAI does not take any retaliatory action against the complainant(s) in this matter.

STRICTLY CONFIDENTIAL
Page 7 of 7

Kohn, Kohn and Colapinto, LLP
1710 N Street, NW
Washington, DC 20036
█████████████████

Phone: (202) 342-6980
Fax:    (202) 342-6984


CC:    SEC Commissioners
       SEC Office of the Whistleblower