UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELON MUSK, et al.,<br><br>            Plaintiffs,<br><br>       v.<br><br>SAMUEL ALTMAN, et al.,<br><br>            Defendants. | Case No. 4:24-cv-04722-YGR<br><br>**[PROPOSED] ORDER GRANTING PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION**<br><br>Hearing Date: January 7, 2025<br>Action Filed: August 5, 2024<br>Judge: Hon. Yvonne Gonzalez Rogers |

**[PROPOSED] ORDER**

Plaintiffs Elon Musk ("Musk"), Shivon Zilis ("Zilis"), and X.AI Corp. ("xAI" and collectively, "Plaintiffs") have filed a motion for a preliminary injunction against Defendants Samuel Altman, Gregory Brockman, Deannah Templeton, Reid Hoffman, OpenAI, Inc., OpenAI L.P., OpenAI, L.L.C., OpenAI GP, L.L.C., OpenAI OpCo, LLC, OpenAI Global, LLC, OAI Corporation, LLC, OpenAI Holdings, LLC, OpenAI Startup Fund Management, LLC, OpenAI Startup Fund GP I, L.L.C., OpenAI Startup Fund I, L.P., OpenAI Startup Fund SPV GP I, L.L.C., OpenAI Startup Fund SPV GP II, L.L.C., OpenAI Startup Fund SPV GP III, L.L.C., OpenAI Startup Fund SPV GP IV, L.L.C., OpenAI Startup Fund SPV I, L.P., OpenAI Startup Fund SPV II, L.P., OpenAI Startup Fund SPV III, L.P., OpenAI Startup Fund SPV IV, L.P., Aestas Management Company, LLC, Aestas LLC,[1] and Microsoft (collectively, "Defendants"), as well as Involuntary Plaintiff, joined as defendant, Rob Bonta in his official capacity as the Attorney General of California. The Court, having fully reviewed and considered all papers and arguments submitted in support of and in opposition to the Motion, GRANTS the Motion.

**BACKGROUND**

This action arises from allegations that Defendants have engaged in anticompetitive conduct, breached a charitable trust, and engaged in self-dealing. Plaintiffs allege that Defendants have transformed OpenAI, Inc. from its founding mission as a transparent, safety-focused non-profit into a co-conspirator of Microsoft Corporation engaged in unlawful anticompetitive conduct.

Plaintiffs seek preliminary injunctive relief to prevent Defendants from: (1) making, enforcing or furthering agreements with investors not to invest in OpenAI's competitors; (2) holding interlocking directorates or benefiting from competitively sensitive information obtained through interlocking directorates; (3) converting or furthering the conversion of OpenAI from a non-profit to a for-profit enterprise; and (4) engaging in self-dealing transactions.

---

[1] This order uses "OpenAI" to refer collectively to the non-profit or charity (OpenAI, Inc.) and all other OpenAI entities (which include Aestas Management Company, LLC and Aestas, LLC); it further uses "For-Profit Entities" to refer collectively to all OpenAI entities, except the non-profit, OpenAI, Inc.

2

Case No. 4:24-cv-04722-YGR
[Proposed] Order Granting Mot. For Prelim. Inj.

## LEGAL STANDARD

"A plaintiff seeking a preliminary injunction must establish (1) that he is likely to succeed on the merits, (2) that he is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in his favor, and (4) that an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Alternatively, under the Ninth Circuit's "sliding scale" approach, serious questions going to the merits and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).

## DISCUSSION

The Court finds that Plaintiffs have satisfied both the *Winter* test and the Ninth Circuit's alternative sliding scale approach. Each element is analyzed in turn.

### I. Likelihood of Success on the Merits

#### A. Sherman Act Section 1 Claim

Plaintiffs have demonstrated a strong likelihood of success on their claim that OpenAI and Microsoft violated Section 1 of the Sherman Act. The evidence shows that during OpenAI's October 2024 funding round, Defendants conditioned the opportunity to invest in OpenAI on agreements by investors not to invest in OpenAI's competitors, specifically naming xAI. This conduct constitutes a *per se* violation of Section 1 as either a traditional horizontal group boycott, *PLS.Com, LLC v. Nat'l Ass'n of Realtors*, 32 F.4th 824, 834 (9th Cir. 2022), or a hub-and-spoke conspiracy under *Klor's, Inc. v. Broadway-Hale Stores, Inc.*, 359 U.S. 207 (1959). *See Honey Bum, LLC v. Fashion Nova, Inc.*, 63 F.4th 813, 821 (9th Cir. 2023). Even if the conduct were not *per se* illegal, it would still constitute a modified *per se* violation under *Northwest Wholesale Stationers, Inc. v. Pacific Stationery & Printing Co.*, 472 U.S. 284 (1985), as OpenAI and Microsoft possess a dominant position in the relevant market for generative artificial intelligence ("AI"), controlling approximately 69% of the market, and their conduct has restricted access to the capital financing necessary for competitors to effectively compete. Injunctive relief is appropriate. 15 U.S.C. § 26.

3

Case No. 4:24-cv-04722-YGR
[Proposed] Order Granting Mot. For Prelim. Inj.

### B. Clayton Act Section 8 Claim

Plaintiffs have also shown a likelihood of success on their claim that Defendants violated Section 8 of the Clayton Act through interlocking directorates. The undisputed evidence shows that Reid Hoffman served simultaneously on the boards of Microsoft and OpenAI, Inc. from March 2018 until March 2023, and Deannah Templeton served as Microsoft's representative on OpenAI, Inc.'s board from November 2023 until July 2024. Both Microsoft and OpenAI had capital, surplus, and undivided profits exceeding the statutory thresholds during the relevant period. *See* 89 Fed. Reg. 3926 (Jan. 22, 2024).

Microsoft's admission that it competes with OpenAI in its SEC filings, coupled with the similar pricing and features of their respective AI products (OpenAI's ChatGPT and Microsoft's Copilot), establishes that they are competitors within the meaning of Section 8. The information gained from these interlocking directorates, without regard to voting power, represents a grave and continuing threat to competition, and Defendants' violations are blatant and repeated. *See TRW, Inc. v. F.T.C.*, 647 F.2d 942, 946–47 (9th Cir. 1981). Injunctive relief is appropriate. *See United States v. W. T. Grant Co.*, 345 U.S. 629, 633 (1953).

### C. Charitable Trust Claim

Musk has demonstrated a likelihood of success on his claim that Defendants are violating the terms of his charitable donations. Under California law, Musk has standing to enforce the conditions of his gifts both as a donor with a contractual interest subject to a condition subsequent, Cal. Corp. Code § 5142(a)(4), and as a settlor of a charitable trust in favor of OpenAI, Inc. or as otherwise having a sufficiently special interest under *Holt v. College of Osteopathic Physicians & Surgeons*, 61 Cal. 2d 750 (1964).

The evidence shows that Defendants are actively working to convert OpenAI into a for-profit enterprise in direct contravention of the conditions on which Musk made his charitable donations, expressed unambiguously no later than September 20, 2017. Injunctive relief is appropriate. Cal. Corp. Code § 5142(a); *Holt*, 61 Cal. 2d at 757.

### D. Self-Dealing Claim

Finally, Plaintiffs have shown a likelihood of success on their claims regarding prohibited

4

Case No. 4:24-cv-04722-YGR
[Proposed] Order Granting Mot. For Prelim. Inj.

self-dealing under Cal. Corp. Code § 5233. Plaintiffs, as former members and directors, have standing to bring these claims in the name of OpenAI, Inc. *See* Cal. Corp. Code § 5710(b); *Turner v. Victoria*, 15 Cal. 5th 99, 134 (2023). The evidence demonstrates multiple transactions in which Altman had material financial interests, including:

1. The formation and operation of the For-Profit Entities;
2. The March 2023 selection of Stripe as OpenAI's payment processor;
3. OpenAI's $51 million contract with Rain AI;
4. Contracts with Humane and Limitless to use OpenAI's technology;
5. The contemplated agreement with Helion Energy for electricity; and
6. The May 2024 content licensing agreement with Reddit.

None of these transactions fall within the safe harbor provisions of Section 5233(b), nor have Defendants demonstrated compliance with the procedural requirements for approval of interested transactions. Injunctive relief is appropriate. Cal. Corp. Code § 5233(h).

## II.   Irreparable Harm

Plaintiffs have demonstrated they will suffer irreparable harm absent preliminary relief.

### A.   Harm to Competition

The term imposed by OpenAI and Microsoft on investors in OpenAI's October 2024 funding round directly impairs xAI's access to capital markets during a crucial developmental period for generative AI companies. Given the strong network effects in this market—where more users lead to better products, attracting still more users—the loss of investment opportunities now will result in competitive disadvantages that cannot be remedied by monetary damages alone. *See Epic Games, Inc. v. Apple Inc.*, 493 F. Supp. 3d 817, 851 (N.D. Cal. 2020).

The misuse of competitively sensitive information obtained by Microsoft/Templeton and Hoffman through interlocking directorates compounds this harm. Courts in this District "presume that Plaintiff will suffer irreparable harm if its proprietary information is misappropriated." *Comet Techs. United States of Am. Inc. v. Beuerman*, No. 18-CV-01441-LHK, 2018 WL 1990226, at *5 (N.D. Cal. Mar. 15, 2018). These harms create an ongoing competitive advantage that cannot be undone through monetary relief.

5

Case No. 4:24-cv-04722-YGR
[Proposed] Order Granting Mot. For Prelim. Inj.

### B. Harm to OpenAI, Inc.'s Charitable Mission

The imminent conversion of OpenAI, Inc. to a for-profit enterprise threatens irreparable harm to both Musk's interests as a donor and the public interest in charitable enforcement. Unlike the For-Profit Entities' current structure, which involves a limited number of sophisticated investors, full conversion to for-profit status would invite a greater number of investors, including retail investors, resulting in complex and formidable barriers to unwinding such transactions. OpenAI, Inc.'s full conversion to a for-profit structure therefore threatens permanent harm to the existence and charitable mission of the non-profit that Musk's donations were intended to support. There is also substantial doubt whether, in light of the self-dealing alleged and OpenAI's current rate of spending, OpenAI or Altman would have sufficient resources to pay a judgment for damages.

## III. Balance of Equities

The balance of equities tips sharply in Plaintiffs' favor. The requested preliminary injunction merely requires Defendants to comply with existing legal obligations under federal antitrust law and state corporate and charitable trust law. *See Henry Schein, Inc. v. Cook*, 191 F. Supp. 3d 1072, 1077 (N.D. Cal. 2016).

### A. Anticompetitive Conduct

Enjoining Defendants from enforcing their anticompetitive investment restriction imposes no legitimate hardship on them, as they have no right to orchestrate group boycotts or otherwise restrict the flow of capital to competitors. Similarly, preventing the misuse of information obtained through unlawful interlocking directorates creates no cognizable burden on Defendants, who should never have had access to such information in the first place.

### B. Charitable Mission and Self-Dealing

Maintaining OpenAI, Inc.'s charitable status pending final resolution and halting further self-dealing transactions protects both the organization's founding mission and the public interest in proper administration of charities. While Defendants may experience some delay in their planned corporate restructuring, any such private financial interests are substantially outweighed by the public's interest in preserving charitable assets and enforcing fiduciary duties.

6

Case No. 4:24-cv-04722-YGR
[Proposed] Order Granting Mot. For Prelim. Inj.

### IV. Public Interest

The public interest strongly favors preliminary relief.

#### A. Competition and Innovation

"[T]he central purpose of the antitrust laws, state and federal, is to preserve competition. It is competition . . . that these statutes recognize as vital to the public interest." *Glen Holly Ent., Inc. v. Tektronix Inc.*, 343 F.3d 1000, 1010 (9th Cir. 2003) (internal quotation marks omitted). The development of generative AI technology presents profound implications for society, making preservation of competitive markets in this sector particularly crucial to the public interest.

#### B. Charitable Enforcement

The public has a strong interest in ensuring that charitable assets are not diverted for private gain. This interest is particularly acute here given the substantial tax benefits OpenAI, Inc. received as a non-profit, the organization's repeated public commitments to developing AI technology for the benefit of humanity, and the serious safety concerns raised by former OpenAI employees regarding the organization's rush to market potentially dangerous products in pursuit of profit.

### V. Scope of Injunction

Having found that preliminary injunctive relief is warranted, the Court turns to crafting an appropriately tailored order that will maintain the status quo pending final resolution. *See Perfect 10, Inc. v. Google, Inc.*, 653 F.3d 976, 981 (9th Cir. 2011).

**IT IS HEREBY ORDERED** that, pending final resolution of this action:

1. Defendants, their officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them, are hereby **ENJOINED AND RESTRAINED** from directly or indirectly undertaking any action for the purpose of, or tending to have the effect of, making, enforcing, or furthering agreements with investors not to invest in OpenAI's competitors, such as xAI;

2. Defendants Reid Hoffman, Deannah Templeton, and Microsoft Corporation, as well as their officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them, are hereby **ENJOINED AND RESTRAINED** from directly or indirectly undertaking any action for the purpose of, or tending to have the effect of,

7

CASE NO. 4:24-CV-04722-YGR
[PROPOSED] ORDER GRANTING MOT. FOR PRELIM. INJ.

interlocking directorates or benefitting from wrongfully obtained competitively sensitive information or coordination via the Microsoft-OpenAI board interlocks;

3. Defendants are hereby **ENJOINED AND RESTRAINED** from directly or indirectly undertaking any action for the purpose of, or tending to have the effect of, furthering the conversion of OpenAI, Inc. to a for-profit enterprise or transferring any material assets, including intellectual property, owned, held, or controlled by OpenAI, Inc., its subsidiaries, or affiliates; and

4. Defendants are hereby **ENJOINED AND RESTRAINED** from directly or indirectly undertaking any action for the purpose of, or tending to have the effect of, causing OpenAI, Inc. to contract or do business with any entity in which any Defendant has a material financial interest.

## VI. Security

Under Federal Rule of Civil Procedure 65(c), no bond or security is required.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for a Preliminary Injunction is GRANTED. This Order shall remain in effect until final judgment in this action or further order of this Court.

IT IS SO ORDERED this ___ day of _____, 2025.

_____
HONORABLE YVONNE GONZALEZ ROGERS
UNITED STATES DISTRICT COURT JUDGE

8

CASE NO. 4:24-CV-04722-YGR
[PROPOSED] ORDER GRANTING MOT. FOR PRELIM. INJ.