EXHIBIT 9

**IRELL & MANELLA LLP**
Morgan Chu (SBN 70446)
Alan Heinrich (SBN 212782)
Iian Jablon (SBN 205458)
Abigail Sellers (SBN 342380)
Justin Koo (SBN 351547)
Henry White (SBN 351549)
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067
Telephone: (310) 277-1010
Fax: (310) 203-7199
mchu@irell.com
aheinrich@irell.com
ijablon@irell.com
asellers@irell.com
jkoo@irell.com
hwhite@irell.com

Attorneys for Plaintiff Elon Musk

## SUPERIOR COURT OF CALIFORNIA

## IN AND FOR THE COUNTY OF SAN FRANCISCO

| | |
|---|---|
| ELON MUSK, an individual,<br><br>    Plaintiff,<br><br>    vs.<br><br>SAMUEL ALTMAN, an individual, GREGORY BROCKMAN, an individual, OPENAI, INC., a corporation, OPENAI, L.P., a limited partnership, OPENAI, L.L.C., a limited liability company, OPENAI GP, L.L.C., a limited liability company, OPENAI OPCO, LLC, a limited liability company, OPENAI GLOBAL, LLC, a limited liability company, OAI CORPORATION, LLC, a limited liability company, OPENAI HOLDINGS, LLC, a limited liability company, and DOES 1 through 100, inclusive,<br><br>    Defendants. | Case No.: CGC-24-612746<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' DEMURRER**<br><br>Date of Hearing: April 24, 2024<br>Time of Hearing: 9:30AM<br>Dept: 302<br>Judge: Hon. Richard B. Ulmer, Jr.<br><br>Action Filed: February 29, 2024<br>Trial Date: N/A |

11318085

# **TABLE OF CONTENTS**

**Page**

I.     INTRODUCTION ........................................................................................................ 1

II.    LEGAL STANDARD ................................................................................................. 2

III.   THE COMPLAINT HAS SUFFICIENTLY PLED BREACH OF
       CONTRACT ............................................................................................................... 2

       A.     The Complaint Alleges A Written Contract ................................................... 2

       B.     The Complaint Alleges Mutual Assent .......................................................... 2

       C.     The Complaint Alleges Bargained-For Consideration .................................... 6

       D.     The Complaint Alleges Multiple Breaches of the Founding
              Agreement ..................................................................................................... 7

              1.     Licensing OpenAI's GPT-4 Technology Exclusively to
                     Microsoft ........................................................................................... 8

              2.     Permitting Microsoft to Exert Undue Influence over
                     OpenAI's Nonprofit Mission .............................................................. 8

              3.     Keeping GPT-4's Structures Closed-Source Solely to
                     Advance the Economic Interests of Defendants and
                     Microsoft ........................................................................................... 9

IV.    PLAINTIFF HAS SUFFICIENTLY PLED PROMISSORY ESTOPPEL ...................... 10

V.     PLAINTIFF HAS SUFFICIENTLY PLED BREACH OF FIDUCIARY
       DUTY ...................................................................................................................... 11

VI.    PLAINTIFF HAS SUFFICIENTLY PLED UNFAIR BUSINESS
       PRACTICES ............................................................................................................ 13

VII.   PLAINTIFF HAS SUFFICIENTLY PLED A CLAIM FOR
       ACCOUNTING ........................................................................................................ 15

VIII.  CONCLUSION ........................................................................................................ 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aronowicz v. Nalley's, Inc.*
(1972) 30 Cal.App.3d 27 .................................................................................................... 6

*B.D. v. Blizzard Entertainment, Inc.*
(2022) 76 Cal.App.5th 931 .................................................................................................. 3

*Buck v. Peace Apostolic Church,Inc.*
(Aug. 5, 2021, No. 21CMCV00087) 2021 Cal. Super. LEXIS 115558 ................................ 12

*Buck v. Peace Apostolic Church*
(June 16, 2022, No. 21CMCV00087) 2022 Cal. Super. LEXIS 42583 ................................ 12

*Bushell v. JPMorgan Chase Bank, N.A.*
(2013) 220 Cal.App.4th 915 .............................................................................................. 10

*Bustamante v. Intuit, Inc.*
(2006) 141 Cal.App.4th 199 ................................................................................................ 6

*C.R. v. Tenet Healthcare Corp.*
(2009) 169 Cal.App.4th 1094 ............................................................................................ 10

*Day v. Boyer*
(C.D. Cal., Jan. 21, 2020, No. 19-cv-01669) 2020 U.S. Dist. LEXIS 9959 ......................... 3

*First Com. Mortg. Co. v. Reece*
(2001) 89 Cal.App.4th 731 .................................................................................................. 2

*Flintco Pacific, Inc. v. TEC Management Consultants, Inc.*
(2016) 1 Cal.App.5th 727 .................................................................................................. 11

*L.B. Research & Education Foundation v. UCLA Foundation*
(2005) 130 Cal.App.4th 171 .............................................................................................. 12

*Marin Storage & Trucking, Inc. v. Benco Contracting & Eng'g, Inc.*
(2001) 89 Cal.App.4th 1042 ................................................................................................ 3

*Marina Pacific Hotel & Suites, LLC v. Fireman's Fund Ins. Co.*
(2022) 81 Cal.App.5th 96 .................................................................................................... 2

*Meixner v. Wells Fargo Bank, N.A.*
(E.D. Cal. 2015) 101 F.Supp.3d 938 ................................................................................. 11

*Morgan v. AT&T Wireless Services Inc.*
(2009) 177 Cal.App.4th 1235 ............................................................................................ 14

- ii -

*Pacific Home v. County of Los Angeles*
  (1953) 41 Cal.2d 844 ............................................................................................... 10

*Patterson v. Chapman*
  (1918) 179 Cal. 203 .................................................................................................. 6

*People v. McKale*
  (1979) 25 Cal.3d 626 ................................................................................................ 14

*Piedmont Cap. Mgmt., L.L.C. v. McElfish*
  (2023) 94 Cal.App.5th 961 ......................................................................................... 6

*Podolsky v. First Healthcare Corp.*
  (1996) 50 Cal.App.4th 632 ................................................................................. 13, 14

*Rose v. Bank of America, N.A.*
  (2013) 57 Cal.4th 390 .............................................................................................. 14

*Sackett v. Spindler*
  (1967) 248 Cal.App.2d 220 ......................................................................................... 7

*Schnall v. Hertz Corp.*
  (2000) 78 Cal.App.4th 1144 ...................................................................................... 14

*Seto v. Szeto*
  (2022) 86 Cal.App.5th 76 ........................................................................................... 6

*Short Term Rental All. of San Diego v. City of San Diego*
  (S.D. Cal., June 12, 2023, No. 22cv1831) 2023 U.S. Dist. LEXIS 102156 .............. 9

*Stevens v. Superior Court*
  (1999) 75 Cal.App.4th 594 ...................................................................................... 15

*Stocco v. Gemological Inst. of Am., Inc.*
  (S.D. Cal. 2013) 975 F.Supp.2d 1170 ....................................................................... 4

*The Family Federation for World Peace and Unification Intern. v. Moon*
  (D.C. Super., June 19, 2012, No. 2011 CA 003721B), 2012 WL 3070965 ................ 4

*Waters v. Waters*
  (1961) 197 Cal.App.2d 1 ............................................................................................ 3

*Wolf v. Donahue*
  (1929) 206 Cal. 213 .................................................................................................. 7

**Statutes**

Cal. Bus. & Prof. Code § 17200, 17204 ....................................................................... 13

Cal. Bus. & Prof. Code § 17204 ................................................................................... 13

Cal. Bus. & Prof. Code § 17510.8 .................................................................11, 12, 14, 15

Cal. Civ. Code § 1614 ..................................................................................................6

Cal. Code Civ. Proc. § 430.10(g) .................................................................................2

Cal. Code Civ. Proc. § 452 ...........................................................................................2

Cal. Corp. Code § 5142(a) ...........................................................................................12

Cal. Corp. Code § 5151(c) .............................................................................................9

**Other Authorities**

1 Corbin on Contracts § 2.10 (2024) .............................................................................3

Rest. 3d Trusts § 94(2) .................................................................................................12

1    **I.    INTRODUCTION**

2    Defendants' demurrer is based on the erroneous premise that Plaintiff's Complaint has not

3    alleged sufficient details concerning the parties' Founding Agreement or Defendants' breaches of

4    it. Defendants are wrong. The Complaint sufficiently pleads the details of the Founding Agreement

5    (Complaint ["Compl."] ¶ 24) and also attaches as Exhibits contemporaneous documents that spell

6    out those details. The first of those exhibits, Defendant OpenAI, Inc.'s Certificate of Incorporation

7    ("COI"), states on its first page: "This Corporation shall be a nonprofit corporation organized

8    *exclusively* for charitable and/or educational purposes," that "[t]he specific purpose of this

9    corporation is to provide funding for research, development and distribution of technology related

10   to artificial intelligence" that "*will benefit the public*," and that "[t]he corporation is *not organized*

11   *for the private gain of any person*." (*Id.* Ex. 1 at 1.[1]) The Complaint further alleges that Plaintiff

12   contributed *tens of millions of dollars* to OpenAI over a period of multiple years in consideration

13   for, and in reliance on, the Parties' Founding Agreement (*Id.* ¶¶ 26, 61), only to have the Founding

14   Agreement flipped on its head in 2023, when Defendant Samuel Altman forced the resignation of a

15   majority of OpenAI's non-profit Board and replaced them with new members hand-picked by

16   himself and blessed by Microsoft Corporation (*Id.* ¶ 31). OpenAI has become a *de facto* subsidiary

17   of the world's largest for-profit company, Microsoft, developing artificial general intelligence

18   ("AGI") technology for Microsoft's private benefit, not for the public benefit, contrary to its own

19   COI and the Founding Agreement it memorializes. (*Id.* ¶¶ 31-32.)

20   The detailed factual allegations in Plaintiff's Complaint are more than adequate to state

21   claims for breach of a written contract, promissory estoppel, breach of fiduciary duty, and unfair

22   competition. In their attempt to attack Plaintiff's well-pleaded Complaint, Defendants resort to

23   mischaracterizing Plaintiff's allegations and attacking straw men. Defendants also advance

24   arguments that are based on disputed facts outside the Complaint, which are plainly unsuitable for

25   resolution at the pleadings stage. For example, they contend they can show that Plaintiff supposedly

26   "abandoned" OpenAI, and thus is somehow precluded from bringing this suit. (Demurrer ["Dem."]

27

28   [1] Emphasis added unless otherwise noted.

11318085

at 1, 12, 17.) They also contend that Plaintiff is supposedly acting from improper motivation because he now wants to compete with OpenAI. (*Id.* at 1, 17.) Those purported facts are disputed, and are entirely outside the four corners of Plaintiff's Complaint—simply put, they are not a proper subject for a demurrer. Defendants' demurrer should be overruled in full.

## II.    LEGAL STANDARD

The sole function of a demurrer is to "test[] the legal sufficiency of the factual allegations in a complaint." (*Marina Pacific Hotel & Suites, LLC v. Fireman's Fund Ins. Co.* (2022) 81 Cal.App.5th 96, 104.) In deciding a demurrer, the Court must construe the complaint liberally and "assume the truth of the properly pleaded factual allegations, facts that reasonably can be inferred from those expressly pleaded and matters of which judicial notice has been taken." (*Ibid*; Cal. Code Civ. Proc. § 452.)

## III.    THE COMPLAINT HAS SUFFICIENTLY PLED BREACH OF CONTRACT

To state a claim for breach of contract under California law, a plaintiff must allege: "[1] the existence of the contract, [2] performance by the plaintiff or excuse for nonperformance, [3] breach by the defendant, and [4] damages." (*First Com. Mortg. Co. v. Reece* (2001) 89 Cal.App.4th 731, 745.) The Complaint alleges facts satisfying each of these four elements.

### A.    The Complaint Alleges A Written Contract

Defendants' demurrer leads off with the puzzling argument that the Complaint fails to specify whether the contract at issue is "written, oral or implied by conduct," as required by Cal. Code Civ. Proc. § 430.10(g). (Dem. at 9-10.) The Complaint clearly alleges breach of a written contract, memorialized in OpenAI's written "Articles of Incorporation and in written communications between Plaintiff and Defendants." (*See, e.g.*, Compl. ¶ 124.)

### B.    The Complaint Alleges Mutual Assent

The Complaint adequately alleges that the parties mutually assented to the Founding Agreement, with its two essential terms: that OpenAI "(a) would be a nonprofit developing AGI for the benefit of humanity, not for a for-profit company seeking to maximize shareholder profits; and (b) would be open-source, balancing only countervailing safety considerations, and would not keep

11318085

1    its technology closed and secret for proprietary commercial reasons." (*Id.*, ¶ 24.) Defendants'

2    challenge to mutual assent fails. (Dem. at 10-12.)

3        In assessing mutual assent, a court looks to the objective, outward "manifestations or

4    expressions of the parties" to determine whether both parties have agreed to the "same thing." (*B.D.*

5    *v. Blizzard Entertainment, Inc.* (2022) 76 Cal.App.5th 931, 943.) Mutual assent does not require

6    "[a]n actual negotiation regarding every term" of an agreement, only that the parties' words and

7    conduct would lead "a reasonable person" to conclude there was a "mutual agreement." (*Marin*

8    *Storage & Trucking, Inc. v. Benco Contracting & Eng'g, Inc.* (2001) 89 Cal.App.4th 1042, 1050.)

9        Here, Plaintiff has sufficiently alleged a meeting of the minds between the parties, including

10   because (1) the relevant terms of the Founding Agreement are clear, (Compl. ¶¶ 24-25, 50-51, 56);

11   (2) the parties engaged in months of communications leading up to the memorialization of the

12   Founding Agreement in OpenAI's Certificate of Incorporation, (*Id.* ¶¶ 41-44, 50-56); and (3) the

13   parties' course of conduct, over the course of several years, was consistent with the terms of the

14   Founding Agreement, (*Id.* ¶¶ 26, 54-55, 57-68). These detailed factual allegations sufficiently plead

15   a mutual understanding by the parties of the "same thing"—namely, the terms of the Founding

16   Agreement. (*B.D.*, 76 Cal.App.5th at p. 943.)

17       In challenging mutual assent, Defendants first argue that Plaintiff cannot point to a single

18   document entitled the "Founding Agreement," but instead points to "a handful of 2015 emails" and

19   "a certificate of incorporation." (Dem. at 10.) However, the law does not require that an agreement

20   be entirely contained in a "single document," much less in a single document entitled "Agreement."

21   Instead, in assessing mutual assent, a court may properly consider a variety of different (even

22   informal) writings between the parties. (*See, e.g., Waters v. Waters* (1961) 197 Cal.App.2d 1, 5 ["A

23   series of writings is to be construed together in arriving at the total understanding of the contracting

24   parties."]; *Day v. Boyer* (C.D. Cal., Jan. 21, 2020, No. 19-cv-01669) 2020 U.S. Dist. LEXIS 9959,

25   *13 [applying California law, holding that plaintiff stated a claim for breach of contract formed

26   "through a series of emails and text messages"]; 1 Corbin on Contracts § 2.10 (2024) [noting that

27   proof of mutual assent may comprise "a series of documents, more or less informal in character,"

28   which "have never [been] physically attached to each other"].)

1      The key terms of the Founding Agreement are set forth in OpenAI's COI (Compl. Ex. 1)

2  and in the other documents attached to Plaintiff's Complaint. The COI provides that "[t]his

3  Corporation shall be a nonprofit corporation organized *exclusively* for charitable and/or educational

4  purposes"; "[t]he specific purpose of this corporation is to provide funding for research,

5  development and distribution of technology related to artificial intelligence" that "***will benefit the***

6  ***public***"; [t]he corporation is ***not organized for the private gain of any person***"; and "[t]he property

7  of this corporation is ***irrevocably dedicated*** to" such non-profit purposes. (Compl. Ex. 1 at 1; *see*

8  *also* Compl. Ex. 2 ["The technology would be owned by the foundation and used 'for the good of

9  the world,'…."].) The COI further provides that "the corporation will seek to ***open source***

10  ***technology for the public benefit when applicable***." (Compl. Ex. 1 at 1.) Only ***safety***—and not the

11  private commercial gain of any person or entity—could counter-balance open-sourcing. (*See*

12  Compl. Ex. 2 ["***[S]afety should be a first-class requirement*** . . . [w]e'd have an ongoing

13  conversation about what work should be ***open-sourced*** and what shouldn't."].)

14      Defendants also wrongly suggest that Plaintiff cannot rely on OpenAI's COI to show the

15  parties' mutual assent. In fact, a breach of contract claim may properly be based on terms set forth

16  in a certificate of incorporation. For example, in *Stocco v. Gemological Inst. of Am., Inc.* (S.D. Cal.

17  2013) 975 F.Supp.2d 1170, 1177-80, the court, applying California law, held that the certificate of

18  incorporation of a foundation formed by the defendant set forth the terms of the alleged agreement

19  and thus provided a proper basis for plaintiff's breach of written contract claim. The court

20  accordingly denied the defendant's motion to dismiss that claim. (*See also The Family Federation*

21  *for World Peace and Unification Intern. v. Moon*, (D.C. Super., June 19, 2012, No. 2011 CA

22  003721B), 2012 WL 3070965 [refusing to dismiss large donor's breach of contract claim against

23  non-profit because agreement that the non-profit would use donor's funds in accordance with the

24  charitable purpose stated in its certificate of incorporation was evidenced by "decades of

25  dealings . . . in which [the parties] complied with [the] alleged promises"].)

26      Defendants also attempt to challenge mutual assent by arguing that "the complaint confirms

27  that not even Musk, let alone all the parties allegedly in agreement, understood that OpenAI would

28  refuse to partner with private investors or would reflexively open-source all of its technology."

PLAINTIFF'S OPPOSITION TO DEFENDANTS'
DEMURRER

1    (Dem. at 11.) However, this is a straw-man argument based on Defendants' mischaracterizations of

2    the Complaint and the Founding Agreement.

3          First, the Complaint never alleges an agreement whereby "OpenAI would refuse to partner

4    with private investors." (*Id.*) On the contrary, the Complaint alleges that OpenAI's formation of a

5    for-profit subsidiary—OpenAI LP—in 2019 was *not* in conflict with the Founding Agreement. As

6    the Complaint notes, OpenAI itself provided prospective investors in OpenAI LP with an "important

7    warning" that the for-profit entity "exists to advance OpenAI Inc.'s [the nonprofit's] ***mission of***

8    ***ensuring that safe artificial general intelligence is developed and benefits all of humanity***. The

9    General Partner's duty to this mission and the principles advanced in the OpenAI Inc. Charter ***take***

10    ***precedence over any obligation to generate a profit***," and that investors would thus be "wise to

11    view any investment in OpenAI LP in the spirit of a ***donation***." (Compl. ¶ 67.) Thus, far from

12    conflicting with the Founding Agreement, as Defendants incorrectly argue, this was a reaffirmation

13    of that Agreement's essential term that OpenAI "would be a non-profit developing AGI for the

14    benefit of humanity, not for a for-profit company seeking to maximize shareholder profits." (*Id.*

15    ¶ 24.) That essential term was breached in 2023, when OpenAI's non-profit Board was replaced at

16    the behest of Altman and Microsoft and OpenAI was turned into a *de facto* subsidiary of Microsoft,

17    working on AGI not for the benefit of humanity but rather to further enrich the largest corporation

18    in the world and the individual defendants personally. (*Id*. ¶¶ 31-32, 90-112, 121-122.)

19          Second, the Complaint never alleges an agreement whereby OpenAI "would reflexively

20    open-source all of its technology." (Dem. at 11.) Instead, Plaintiff alleges that the other essential

21    term of the Founding Agreement was that OpenAI's technology "would be open-source, ***balancing***

22    ***only countervailing safety considerations***, and would not keep its technology closed and secret for

23    proprietary commercial reasons." (Compl. ¶ 24.) Thus, the Complaint never alleges a "reflexive" or

24    "rigid" open-source obligation. (Dem. at 11, 13.) But it does allege a clear and unambiguous

25    agreement that OpenAI's technology would not be kept "closed and secret for proprietary

26    commercial reasons," which follows directly from the COI's irrevocable commitment that OpenAI

27    is "***not organized for the private gain of any person***." (Compl. ¶¶ 25, 56.) That essential term was

28    likewise breached by Defendants in 2023, when OpenAI released GPT-4 as closed-source

technology not for safety reasons but rather "primarily to serve the proprietary commercial interests of Microsoft." (*Id.* ¶¶ 32, 90.)

Additionally, Defendants' erroneous "mutual assent" argument also improperly ignores Plaintiff's allegations that the parties acted in accordance with the Founding Agreement for many years. (*See, e.g.*, Compl. ¶¶ 26-27, 54-55, 57-68.) Those allegations further underscore that the Complaint adequately alleges mutual assent to the Founding Agreement between the parties. (*E.g., Piedmont Cap. Mgmt., L.L.C. v. McElfish* (2023) 94 Cal.App.5th 961, 969 [mutual assent may be evidenced by "the subsequent conduct of the parties"]; *Seto v. Szeto* (2022) 86 Cal.App.5th 76, 90 [subsequent conduct proved there was a "binding contract" between the parties]; *Aronowicz v. Nalley's, Inc.* (1972) 30 Cal.App.3d 27, 43 [written communications exchanged by the parties "plus the subsequent conduct of all involved" were sufficient to support a finding that a contract existed].)[2]

In short, Defendants' arguments on mutual assent are wrong as a matter of law, and repeatedly misrepresent Plaintiff's allegations and the terms of the Founding Agreement. (*E.g.,* Dem. at 10-11, 13, 18). Defendants cannot prevail by knocking down their own straw men.

## C.    The Complaint Alleges Bargained-For Consideration

Defendants next challenge the Complaint's allegations of consideration. (Dem. at 12-13.) Adequate consideration is presumed for written contracts, such as at issue here, and need not be pled at all. (Cal. Civ. Code § 1614 ["A written instrument is presumptive evidence of a consideration"]; *Patterson v. Chapman* (1918) 179 Cal. 203, 205.)

Even putting aside the controlling legal presumption of consideration, the Complaint includes a plethora of factual allegations of consideration. The Complaint alleges that Plaintiff contributed tens of millions of dollars to OpenAI between 2016 and 2020, (Compl. ¶¶ 61, 65, 68), and also undertook critical recruiting and other substantial efforts, (*Id.* ¶¶ 58-62), "in exchange and as consideration for the Founding Agreement, namely that: OpenAI, Inc. (a) would be a non-profit

---

[2] Defendants cite *Bustamante v. Intuit, Inc.* (2006) 141 Cal.App.4th 199, 208, 215, which involved a claim for breach of contract in connection with a proposed joint venture that was never formed. As such, and unlike here, the plaintiff did not even have course of conduct *allegations*, let alone *evidence* of such conduct, to support his breach of contract claim, which was dismissed on summary judgment (not on demurrer). (*Id.* at p. 201.)

developing AGI for the benefit of humanity, not for a for-profit company seeking to maximize shareholder profits; and (b) would be open-source, balancing only countervailing safety considerations, and would not keep its technology closed and secret for proprietary commercial reasons," (*Id.* ¶ 124). The Complaint further alleges that "Mr. Musk brought to bear his connections, stature and clout in the effort." (*Id.* ¶ 58.) Without Mr. Musk's involvement and substantial supporting efforts and resources—***his consideration for the Founding Agreement***—it is highly likely that OpenAI, Inc. would never have gotten off the ground. (*Ibid.*)

In addition, Plaintiff has (among other things) included detailed factual allegations describing seven months' worth of communications with the individual Defendants leading up to the memorialization of the Founding Agreement in the COI, as well as Defendants' repeated reaffirmation of the Founding Agreement in subsequent years. (*Id.*, ¶¶ 50-57; 63-69.) For example, when Defendants Brockman and Altman expressed doubts about their commitment to OpenAI's non-profit structure in 2017, Plaintiff wrote, "[e]ither go do something on your own or continue with OpenAI as a nonprofit. I will no longer fund OpenAI until you have made a firm commitment to stay or I'm just being a fool who is essentially providing free funding to a startup." (*Id.* ¶ 63.) Altman responded, "I remain enthusiastic about the non-profit structure!" (*Id.* ¶ 64.) In consideration of this reaffirmation of one of the essential terms of the Founding Agreement, Plaintiff continued contributing millions of dollars to OpenAI in 2018 and 2019. (*Id.* ¶¶ 65, 68.)

In sum, the Complaint provides more than adequate allegations of bargained-for consideration. (*Wolf v. Donahue* (1929) 206 Cal. 213, 219 [affirming overruling of demurrer where plaintiff "set forth the facts from which the court may conclude that the contract is supported by an adequate consideration"].)

### D.    The Complaint Alleges Multiple Breaches of the Founding Agreement

To plead breach, a complaint only needs to allege that Defendants failed to perform "***any part*** of what [was] promised in [the] contract." (*Sackett v. Spindler* (1967) 248 Cal.App.2d 220, 227.) Here, the Complaint clearly does so. The Complaint alleges that Defendants breached the Founding Agreement in multiple ways, including by (1) licensing OpenAI's GPT-4 exclusively to Microsoft; (2) permitting Microsoft to exert undue influence over, and ultimately supplant, OpenAI,

– 7 –

Inc.'s nonprofit mission; and (3) keeping the details of GPT-4 secret from the public not for safety reasons but rather to advance the personal economic interests of the individual Defendants and Microsoft. (Compl. ¶ 125.)

### 1.    Licensing OpenAI's GPT-4 Technology Exclusively to Microsoft

A key term of the Founding Agreement required OpenAI to "be a non-profit developing [Artificial General Intelligence ("AGI")] for the benefit of humanity, not for a for-profit company seeking to maximize shareholder profits." (Compl. ¶ 24.) Defendants cannot and do not challenge the Complaint's detailed allegations explaining how and why OpenAI's revolutionary GPT-4 technology constitutes AGI. (*Id.* ¶¶ 86-89.) It is also undisputed that AGI technology is specifically outside the scope of OpenAI's exclusive license agreement with Microsoft. (*Id.* ¶ 69.) OpenAI nevertheless exclusively licensed its GPT-4 AGI technology to Microsoft, breaking the irrevocable commitment in its COI to develop AGI for the public benefit, not for the private economic benefit of a for-profit company (much less the largest corporation in the world). Defendants thereby breached the Founding Agreement, the motivating purpose of which was to keep control of AGI out of the hands of large for-profit corporations. (*Id.* ¶¶ 24, 50-51, 56-57.)

### 2.    Permitting Microsoft to Exert Undue Influence over OpenAI's Nonprofit Mission

The Complaint also explains how, in 2023, OpenAI was transformed from a non-profit working on AGI technology for the benefit of all of humanity into a "closed-source *de facto* subsidiary of the largest technology company in the world: Microsoft." (*Id.* ¶ 32.) In particular, a "Board coup took place in November 2023," which resulted in the forced resignation of a majority of OpenAI's non-profit Board members, who were replaced by new members hand-picked by Altman and blessed by Microsoft. (*Id.* ¶ 31.) Microsoft even obtained an observer seat on the new Board. (*Id.* ¶ 111.) Under this new Board, OpenAI is not just developing but is actually refining AGI to maximize Microsoft's profits. (*Id.* ¶ 32.) Microsoft's CEO even bragged that "it wouldn't matter '[i]f OpenAI disappeared tomorrow'" because "'we have all the IP rights and all the capability.' 'We have the people, we have the compute, we have the data, we have everything.' 'We

PLAINTIFF'S OPPOSITION TO DEFENDANTS'
DEMURRER

are below them, above them, around them.'" (*Ibid.*) Defendants did not simply breach the Founding Agreement, they "have essentially turned [the Founding Agreement] on its head." (*Ibid.*)

Defendants' response to these detailed and well-supported factual allegations is to call into question whether OpenAI's undertaking to "develop AI technology for the benefit of humanity" is actually "sufficiently definite to support a claim for breach of contract." (Dem. at 14.) This argument underscores how OpenAI has abandoned the mission plainly set forth in its own COI, which memorializes the Founding Agreement. Its COI "irrevocably dedicated" OpenAI to remain a "nonprofit corporation" to develop artificial intelligence technology that "will benefit the public," not for "the private gain of any person." (Compl. Ex. 1 at 1.) There is nothing indefinite about a non-profit mission such as that. Now that OpenAI is controlled by Microsoft it may wish to renounce its non-profit mission, but that is simply further evidence of its breach of the Founding Agreement.

### 3.    *Keeping GPT-4's Structures Closed-Source Solely to Advance the Economic Interests of Defendants and Microsoft*

The Complaint also alleges that pursuant to the Founding Agreement, OpenAI must "open-source" its technology, "balancing only countervailing safety considerations." (Compl. ¶ 24.) Plaintiff has alleged that in flat breach of this essential term, OpenAI's GPT-4 technology is closed-source solely "to advance Defendants and Microsoft's own private commercial interests," not for safety concerns. (*Id.* ¶¶ 90, 125.) Because Plaintiff has alleged facts showing that Defendants breached their promise not to make decisions about open-sourcing OpenAI's technology based upon commercial concerns (such as lining their own pockets and the pocket of their corporate benefactor), Plaintiff has also sufficiently alleged breach of the Founding Agreement on this basis, as well.

Defendants also improperly attempt to rely upon materials outside of the pleadings, namely Defendant OpenAI Inc.'s corporate bylaws, to argue that OpenAI, Inc. retained "complete control and discretion over the use of all contributions it receive[d],'" and thus there could be no breach by Defendants. (Dem. at 13, fn.1.) Defendants are flatly incorrect. As a preliminary matter, to the extent there is any conflict between OpenAI's COI and its corporate bylaws, the COI controls. (*See* Cal. Corp. Code § 5151(c) (a nonprofit's "bylaws may contain any provision, not in conflict with law or the articles"); *id.* § 7151(c) (same); *Short Term Rental All. of San Diego v. City of San Diego* (S.D.

PLAINTIFF'S OPPOSITION TO DEFENDANTS'
DEMURRER

Cal., June 12, 2023, No. 22cv1831) 2023 U.S. Dist. LEXIS 102156, at *5-8 [articles of incorporation controlled where there was contradiction between charitable purpose listed in articles of incorporation and bylaws].) Thus, even if OpenAI's corporate bylaws purported to give Defendants *carte blanche* to use contributions as they please (which is not remotely the case), that would not alter the outcome here because Defendants were legally and contractually bound to use the contributions for the "irrevocable" non-profit purposes stated in the COI. (*See Pacific Home v. County of Los Angeles* (1953) 41 Cal.2d 844, 852 ["[A]ll the assets of a corporation organized solely for charitable purposes must be deemed to be impressed with a charitable trust by virtue of the express declaration of the corporation's purposes….It follows that neither [the nonprofit] nor its successor could legally divert its assets to any purpose other than charitable purposes[.]"].)

Further, Defendants' argument is based on disputed facts that are outside the allegations of the Complaint, and thus is plainly not appropriate to be resolved via demurrer or judicial notice. (*C.R. v. Tenet Healthcare Corp.* (2009) 169 Cal.App.4th 1094, 1103-04 ["[T]he contents of a document may only be accepted where there is not or cannot be a factual dispute concerning that which is sought to be judicially noticed. And the general rule is that the truthfulness and interpretation of a document's contents are disputable."] [internal quotations omitted].)

## IV.    PLAINTIFF HAS SUFFICIENTLY PLED PROMISSORY ESTOPPEL

The elements of a claim for promissory estoppel are "(1) a clear and unambiguous promise by the promisor, and (2) reasonable, foreseeable and detrimental reliance by the promisee." (*Bushell v. JPMorgan Chase Bank, N.A.* (2013) 220 Cal.App.4th 915, 929.) Defendants do not dispute that foreseeable and detrimental reliance were adequately pled; instead, they challenge the allegations relating to Defendants' promises and Plaintiff's reasonable reliance thereon. Defendants' demurrer to the Complaint's promissory estoppel claim lacks merit.

First, the Complaint alleges that Defendants made multiple clear and unambiguous promises that Plaintiff's contributions would "irrevocably" be used only for non-profit purposes to benefit the public. In addition to OpenAI's founding COI, as another example, the Complaint alleges that in 2017, Plaintiff told Altman and Brockman that they "[e]ither go do something on your own or continue with OpenAI as a nonprofit. I will no longer fund OpenAI until you have made a firm

PLAINTIFF'S OPPOSITION TO DEFENDANTS'
DEMURRER

11318085

1  commitment to stay or I'm just being a fool who is essentially providing free funding to a startup."

2  (Compl. ¶ 63.) In response, Mr. Altman and Mr. Brockman each re-confirmed that they were

3  committed to OpenAI remaining a non-profit, (*Id.* ¶ 64), and Mr. Musk continued his contributions

4  (*Id.* ¶ 65, 68).

5      Simply put, Defendants repeatedly and "irrevocably" promised to maintain OpenAI's non-

6  profit structure in order to induce Plaintiff to contribute tens of millions and substantial non-financial

7  support to OpenAI over a period of several years. (*See, e.g.*, *id.* ¶¶ 56, 63-64.) These promises are

8  "clear and unambiguous because it is 'sufficiently definite to determine the scope of the promise

9  and respondent's obligation.'" (*Meixner v. Wells Fargo Bank, N.A.* (E.D. Cal. 2015) 101 F.Supp.3d

10  938, 950 [quoting *Garcia v. World Sav., FSB* (2010) 183 Cal.App.4th 1031, 1045].)

11      <u>Second</u>, the Complaint makes clear that Plaintiff actually relied on Defendants' promises in

12  making his tens of millions of dollars in contributions and providing other critical support. (*See,*

13  *e.g.,* Compl. ¶¶ 65, 68, 131.) Further, Plaintiff's reliance was clearly reasonable (especially in the

14  context of a demurrer challenge). For example, in 2017, Defendants reaffirmed their commitment

15  to OpenAI's non-profit mission. [*See, e.g.*, *id.* ¶¶ 63-64.] Indeed, OpenAI even reaffirmed its

16  fundamental non-profit mission when it launched its for-profit arm, as discussed above. (*See supra*

17  Section III.B; *see also Flintco Pacific, Inc. v. TEC Management Consultants, Inc.* (2016) 1

18  Cal.App.5th 727, 734 ["[W]hether the reliance was reasonable is a question of fact unless reasonable

19  minds could reach only one conclusion based on the evidence[.]"].)

20  **V.    PLAINTIFF HAS SUFFICIENTLY PLED BREACH OF FIDUCIARY DUTY**

21      Cal. Bus. & Prof. Code § 17510.8 establishes that there is a "fiduciary relationship between

22  a charity or any person soliciting on behalf of a charity, and the person from whom a charitable

23  contribution is being solicited." It further establishes "a duty on the part of the charity and the person

24  soliciting on behalf of the charity to use those charitable contributions for the declared charitable

25  purposes for which they are sought." (*Ibid.*) Here, the Complaint alleges that Defendants solicited

26  tens of millions of dollars in contributions from Plaintiff over a period of years for the

27  "irrevocabl[e]" charitable purposes stated in the COI, namely that "[t]he specific purpose of this

28  corporation is to provide funding for research, development and distribution of technology related

PLAINTIFF'S OPPOSITION TO DEFENDANTS'
DEMURRER

1  to artificial intelligence. The resulting technology will benefit the public and the corporation will

2  seek to open source technology for the public benefit when applicable. The corporation is not

3  organized for the private gain of any person." (Compl. ¶ 56.)

4      The Complaint further alleges multiple breaches of these express promises and improper use

5  by Defendants of his contributions and the intellectual property derived therefrom to benefit the

6  individual Defendants and non-party Microsoft. (*E.g.*, *id.* ¶ 134.) Thus, Plaintiff has plainly met his

7  burden to state a claim for breach of fiduciary duty at the pleading stage. (*See Buck v. Peace*

8  *Apostolic Church* (June 16, 2022, No. 21CMCV00087) 2022 Cal. Super. LEXIS 42583, at *11-16

9  [finding plaintiffs had "established a reasonable likelihood of success" on their breach of fiduciary

10  duty claim based on breach of the charitable purposes outlined in a non-profit's articles of

11  incorporation].)

12      Defendants incorrectly contend that Plaintiff lacks standing to bring a claim for breach of

13  fiduciary duty on the theory that he is purportedly not among the categories of individuals specified

14  in Cal. Corp. Code § 5142(a), which contains a non-exclusive list of persons or entities who have

15  standing to bring a claim for breach of a charitable trust. This argument is a *non sequitur*, since

16  Plaintiff's fiduciary duty claim relies on Cal. Bus. & Prof. Code § 17510.8, which clearly establishes

17  fiduciary duties owed by Defendants to Plaintiff here, not under Cal. Corp. Code § 5142(a). But

18  even assuming § 5142(a) applies, it is not exclusive. For example, California law recognizes that

19  donors, such as Plaintiff, who have a special relationship with a non-profit have standing to sue even

20  though they are not among the persons listed in Cal. Corp. Code § 5142(a). (*See, e.g., Buck v. Peace*

21  *Apostolic Church ,Inc*. (Aug. 5, 2021, No. 21CMCV00087) 2021 Cal. Super. LEXIS 115558, at *9-

22  11 [two individuals who donated to the charitable trust for a church had standing to bring a claim

23  for breach of fiduciary duty]; *L.B. Research & Education Foundation v. UCLA Foundation* (2005)

24  130 Cal.App.4th 171, 180 ["[T]he Attorney General's power to enforce charitable trusts does not in

25  this type of case deprive the donor of standing to enforce the terms of the trust it created."]; Rest.

26  3d Trusts § 94(2) ["A suit for the enforcement of a charitable trust may be maintained . . .  by a

27  ***settlor, or by another person who has a special interest in the enforcement of the trust***."]; Rest.

28

PLAINTIFF'S OPPOSITION TO DEFENDANTS'
DEMURRER

3d Trusts § 94(2) com. g(3) ["[W]hen numerous donors contribute to the funding of a trust," a "***major contributor relative to the trust's total funding has the required special interest***[.]"].)

Here, the Complaint alleges that Plaintiff was both a settlor of, and a person with a special interest in, OpenAI, Inc. (*See* Compl. ¶¶ 23-26, 50-57, 61.) For example, the Complaint alleges that Plaintiff co-founded OpenAI together with Defendants Altman and Brockman, and it was agreed among them that OpenAI would be a non-profit entity with the dedicated purpose of developing AGI for the benefit of humanity. (*Id.* ¶¶ 24-25, 41-44, 50-54, 56.) The Complaint also alleges that in 2016 and 2017, Plaintiff contributed more than any other donor to OpenAI, Inc., and between 2016 and September 2020, Plaintiff donated over $44 million dollars to OpenAI, Inc. (*Id.* ¶ 61.) Thus, consistent with the case law cited above, Plaintiff clearly has standing to bring his claim for breach of fiduciary duty.

## VI.    PLAINTIFF HAS SUFFICIENTLY PLED UNFAIR BUSINESS PRACTICES

To state a claim under Section 17200 *et. seq.* of the Cal. Bus. & Prof. Code ("the UCL") for an unfair, unlawful, or fraudulent business practice, an individual need only allege an (1) unfair, unlawful, or fraudulent business practice, (2) an injury in fact, and (3) lost money or property resulting from the business practice. (Cal. Bus. & Prof. Code §§ 17200, 17204.) The scope of the UCL is broad, such that it covers not just business practices, but single acts of misconduct. (*Podolsky v. First Healthcare Corp.* (1996) 50 Cal.App.4th 632, 647, 653.)

Defendants do not contest that Plaintiff has sufficiently pled injury in fact and lost money. Defendants instead argue that Plaintiff has not pled an unfair, unlawful, or fraudulent business practice. Defendants are wrong for multiple reasons.

First, the Complaint has sufficiently stated a claim that Defendants have engaged in unfair business practices. In this regard, the Complaint has pled facts showing that Defendants' unfair business practices offend California public policy and give Defendants an unfair advantage over law-abiding competitors. For example, the Complaint alleges that by founding OpenAI, Inc. as a non-profit, OpenAI, Inc. was able to collect "donations" and use such donations to purport to develop AGI for the public benefit. (Compl. ¶¶ 113-114.) But as it neared (and eventually attained) AGI, Defendants funneled OpenAI's technology into a for-profit entity, and eventually abandoned

PLAINTIFF'S OPPOSITION TO DEFENDANTS'
DEMURRER

its non-profit mission. (*Id.* ¶ 113-114.) By starting as a non-profit, OpenAI, Inc. was able to collect twice as much capital from "donors" as a for-profit competitor would have been able to collect from investors at the expense of the state and federal government tax coffers, then, by shifting the capital and assets to a for-profit entity, Defendants were able to reap the monetary benefits of a for-profit entity. (*Id.* ¶ 114.) This alleged conduct is not only against public policy, but it is unethical, immoral, and substantially injurious to consumers. These factual allegations are far from "conclusory," as suggested by Defendants (Dem. at 19), and are more than sufficient to support the conclusion that Defendants engaged in unfair business practices. (*See Rose v. Bank of America, N.A.* (2013) 57 Cal.4th 390, 397 ["The UCL reflects the Legislature's intent to discourage business practices that confer unfair advantages in the marketplace to the detriment of both consumers and law-abiding competitors"].)

Moreover, Defendants' arguments that their business practices are not unfair raise disputed fact issues that are not appropriate for resolution on demurrer. (*See People v. McKale* (1979) 25 Cal.3d 626, 635 ["What constitutes 'unfair competition' or 'unfair or fraudulent business practice' under any given set of circumstances is a question of fact . . . ."]; *Schnall v. Hertz Corp.* (2000) 78 Cal.App.4th 1144, 1167 [whether a business practice is unfair "cannot be mechanistically determined under the relatively rigid legal rules applicable to the sustaining or overruling of a demurrer"].)

The Complaint also sufficiently alleges a claim for unlawful business practices, which is a separate prong of the UCL. (*Podolsky*, *supra* 50 Cal.App.4th at 647 ["[A] practice is prohibited as unfair or deceptive even if not unlawful and vice versa."][internal quotations omitted]). "An unlawful business practice under the UCL is anything that can properly be called a business practice and that at the same time is forbidden by law." (*Morgan v. AT&T Wireless Services Inc.* (2009) 177 Cal.App.4th 1235, 1254. [internal quotations omitted].) Section 17200 "borrows violations of other laws and treats them as unlawful practices" that are "independently actionable" under the UCL. (*People ex rel. Allstate Ins. Co. v. Discovery Radiology Physicians, P.C.* (2023) 94 Cal.App.5th 521, 548 [internal quotations omitted].)

PLAINTIFF'S OPPOSITION TO DEFENDANTS'
DEMURRER

11318085

1    The Complaint sufficiently alleges that Defendants breached fiduciary duties owed to

2    Plaintiff in violation of Cal. Bus. & Prof. Code § 17510.8 and that Defendants' violations of

3    § 17510.8 give rise to a claim under the UCL. (Compl. ¶ 142.) Indeed, even assuming for the sake

4    of argument that this Court were to conclude (which it should not) that Plaintiff does not have a

5    direct cause of action under Cal. Bus. & Prof. Code § 17510.8, Plaintiff may nonetheless bring a

6    claim for unlawful business practices based upon a violation of that statute. (*Stevens v. Superior*

7    *Court* (1999) 75 Cal.App.4th 594, 603-604 ["[T]he [UCL] allows a private plaintiff to proceed under

8    it to seek redress for conduct which violates any predicate statute, unless the defendant is privileged,

9    immunized by another statute, or the predicate statute expressly bars its enforcement under the

10   [UCL]."].)

11   **VII.    PLAINTIFF HAS SUFFICIENTLY PLED A CLAIM FOR ACCOUNTING**

12   Defendants' sole argument that Plaintiff has failed to state a claim for an accounting is that

13   Plaintiff supposedly failed to state an underlying cause of action for breach of contract, promissory

14   estoppel, breach of fiduciary duty, and/or unfair business practices. But as described above, Plaintiff

15   more than adequately pled one or more of these causes of actions, thus Plaintiff has also adequately

16   pled a claim for an accounting.

17   **VIII.   CONCLUSION**

18   Plaintiff respectfully submits that he has sufficiently pled all of his causes of action, and that

19   Defendants' demurrer should be overruled in full.

20

21

22

23

24

25

26

27

28

DATED: April 10, 2024           **IRELL & MANELLA LLP**

By: _____

Morgan Chu
Alan Heinrich
Iian Jablon
Abigail Sellers
Justin Koo
Henry White

Attorneys for Plaintiff Elon Musk

11318085