EXHIBIT 17

# TOBEROFF

Toberoff & Associates, P.C. 23823 Malibu Road
Suite 50-363
Malibu, CA 90265
Telephone: +1 310 246 3100

**Marc Toberoff**
Direct Line:  +1 310 246 3333
mtoberoff@toberoffandassociates.com

December 6, 2024

*Via Email, UPS, & Personal Service*

Jordan Eth
*JEth@mofo.com*
David J. Wiener
*DWiener@mofo.com*
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105

William Savitt
*WDSavitt@wlrk.com*
Sarah K. Eddy
*SKEddy@wlrk.com*
WACHTELL, LIPTON, ROSEN & KATZ
51 West 52nd Street
New York, NY 10019

Russell P. Cohen
*Russ.cohen@dechert.com*
Howard M. Ullman
*Howard.ullman@dechert.com*
Nisha Patel
*Nisha.patelgupta@dechert.com*
Andrew J. Levander
*Andrew.levander@dechert.com*
Jay Jurata
*Jay.jurata@dechert.com*
DECHERT LLP
45 Fremont Street, 26th Floor
San Francisco, CA 94105

**RE: *Musk, et al., v. Altman, et al.*, No. 4:24-cv-04722-YGR (N.D. Cal., filed Aug. 5, 2024)**

Counsel:

  **PLEASE TAKE NOTICE THAT** Plaintiffs Elon Musk and Shivon Zilis are about to apply to the Attorney General of California for leave to sue in the name of the People of the State of California in the subject proceeding. (*See* Cal. Code Reg., tit. 11, §§ 1-2.) If leave to sue is granted forthwith in this special case, as we shall request in light of its urgent necessity, you may show cause thereafter and have our right to maintain and prosecute such a proceeding determined. (*Id.* § 10.)

  If leave to sue is not granted forthwith, we have requested, for good cause or as a special case, expedited briefing requiring that you appear and show cause, if any, why leave to sue should not be granted within five days, with our reply due within two days. (*Id.* §§ 3-4.) Failing either such request, you may appear and show cause within fifteen days, with our reply due within ten days. (*Ibid.*)

  We enclose all materials we are preparing to transmit to the Attorney General.

      Regards,

      Marc Toberoff
      Counsel for Elon Musk,
      Shivon Zilis, and X.AI Corp.

# TOBEROFF

Toberoff & Associates, P.C.
23823 Malibu Road
Suite 50-363
Malibu, CA 90265
Telephone: +1 310 246 3100

**Marc Toberoff**
Direct Line: +1 310 246 3333
mtoberoff@toberoffandassociates.com

December 6, 2024

*Via Email & Personal Service*

Caitlin Noble, Esq.
Supervising Deputy Attorney General
Charitable Trusts Section
455 Golden Gate Avenue, Suite 11000
San Francisco, CA 94102-7004
*Caitlin.noble@doj.ca.gov*

RE: ***Musk, et al., v. Altman, et al.***, No. 4:24-cv-04722-YGR (N.D. Cal., filed Aug. 5, 2024)

Dear Supervising Deputy Attorney General Noble:

Elon Musk and Shivon Zilis, Plaintiffs in the subject action, apply for leave to sue in the name of the People of the State of California, as detailed in the enclosed memorandum of points and authorities and verified complaint, containing within it a verified statement of facts. (Cal. Code Reg., tit. 11, §§ 1-2.) The enclosed complaint is prepared for the signature of the Attorney General, a deputy attorney general, and the attorney for the relators. (*Id.* § 2, subd. (a).)

As detailed in the enclosed points and authorities, we request that leave to sue issue forthwith in light of the special nature of this case and the urgent necessity to protect the People's interests. (*Id.* § 10.) In the alternative, as a special case or for good cause shown as detailed in the enclosed points and authorities, we request expedited briefing on our application, with Defendants provided five days to appear and show cause, if any, why leave should not be granted, and with two days provided for our reply. (*Id.* §§ 3-4.) Failing that, we request such expedited briefing as the Attorney General directs.

In addition, we present to the Attorney General an undertaking executed to the State of California in the amount of $500, to the effect that the proposed relators will pay any judgment for costs or damages that may be recovered against the plaintiff, and all costs and expenses incurred in the prosecution of the proceeding in which such "leave to sue" is granted. (*Id.* § 6.) The enclosed verified complaint is identical to the Verified First Amended Complaint already operative in the subject action, and provided to the Attorney General immediately before and after filing, subject only to those conforming changes necessary to reflect the substitution of Plaintiffs as relators for the Attorney General and the corresponding deletion of the Attorney General as an involuntary plaintiff, joined as defendant.

Please acknowledge receipt of this notice at your earliest convenience. We would be pleased to answer any questions or discuss any matters with you further.

Very truly yours,

Marc Toberoff
Counsel for Elon Musk,
Shivon Zilis, and X.AI Corp.

Cc:
Jordan Eth
*JEth@mofo.com*
David J. Wiener
*DWiener@mofo.com*
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105

William Savitt
*WDSavitt@wlrk.com*
Sarah K. Eddy
*SKEddy@wlrk.com*
WACHTELL, LIPTON, ROSEN & KATZ
51 West 52nd Street
New York, NY 10019

Russell P. Cohen
*Russ.cohen@dechert.com*
Howard M. Ullman
*Howard.ullman@dechert.com*
Nisha Patel
*Nisha.patelgupta@dechert.com*
Andrew J. Levander
*Andrew.levander@dechert.com*
Jay Jurata
*Jay.jurata@dechert.com*
DECHERT LLP
45 Fremont Street, 26th Floor
San Francisco, CA 94105

Encl.
Verified First Amended Complaint
Declaration of Marc Toberoff re: Verified First Amended Complaint
Plaintiffs' Notice of Motion and Motion for a Preliminary Injunction
Declaration of Marc Toberoff in Support of Plaintiffs' Motion for a Preliminary Injunction
Plaintiffs' Memorandum of Points and Authorities in Support of Relator Status
Letter to Relator Defendants
Undertaking for Relator Status

Marc Toberoff (S.B. #188547)
*mtoberoff@toberoffandassociates.com*
Jaymie Parkkinen (S.B. #318394)
*jparkkinen@toberoffandassociates.com*
TOBEROFF & ASSOCIATES, P.C.
23823 Malibu Road, Suite 50-363
Malibu, CA 90265
Telephone: (310) 246-3333
Facsimile: (310) 246-3101

*Attorneys for Plaintiffs Elon Musk,*
*Shivon Zilis, and X.AI Corp.*

## OFFICE OF THE ATTORNEY GENERAL
## DEPARTMENT OF JUSTICE
## STATE OF CALIFORNIA

| | |
|---|---|
| ELON MUSK, individually and derivatively on behalf of OpenAI, Inc.; SHIVON ZILIS, derivatively on behalf of OpenAI, Inc.; and X.AI CORP., a Nevada benefit corporation, | Matter No. _____ |
| Plaintiffs, | **PROPOSED RELATORS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF RELATOR STATUS** |
| v. | |
| SAMUEL ALTMAN, an individual; GREGORY BROCKMAN, an individual; OPENAI, INC., a Delaware corporation; OPENAI, L.P., a Delaware limited partnership; OPENAI, L.L.C., a Delaware limited liability company; OPENAI GP, L.L.C., a Delaware limited liability company; OPENAI OPCO, LLC, a Delaware limited liability company; OPENAI GLOBAL, LLC, a Delaware limited liability company; OAI CORPORATION, a Delaware corporation; OPENAI HOLDINGS, LLC, a Delaware limited liability company; OPENAI STARTUP FUND MANAGEMENT, LLC, a Delaware limited liability company; OPENAI STARTUP FUND GP I, L.L.C., a limited liability company; OPENAI STARTUP FUND I, L.P. a Delaware limited partnership; OPENAI STARTUP FUND | |

SPV GP I, L.L.C., a Delaware limited liability company; OPENAI STARTUP FUND SPV GP II, L.L.C., a Delaware limited liability company; OPENAI STARTUP FUND SPV GP III, L.L.C., a Delaware limited liability company; OPENAI STARTUP FUND SPV GP IV, L.L.C., a Delaware limited liability company; OPENAI STARTUP FUND SPV I, L.P., a Delaware limited partnership; OPENAI STARTUP FUND SPV II, L.P., a Delaware limited partnership; OPENAI STARTUP FUND SPV III, L.P., a Delaware limited partnership; OPENAI STARTUP FUND SPV IV, L.P., a Delaware limited partnership; AESTAS MANAGEMENT COMPANY, LLC, a Delaware limited liability company; AESTAS, LLC, a Delaware limited liability company; DEANNAH TEMPLETON, an individual; REID HOFFMAN, an individual; MICROSOFT CORP., a Washington corporation; ROB BONTA, in his official capacity as Attorney General of California; and DOES 1-100,

Defendants.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **INTRODUCTION**

Pursuant to the procedure specified by this Office, Plaintiffs Elon Musk ("Musk") and Shivon Zilis ("Zilis," and collectively, "Proposed Relators") respectfully request leave to sue forthwith in the name of the People of the State of California for breach of charitable trust, Cal. Corp. Code § 5142(a)(5) (Count XX), self-dealing, Cal. Corp. Code § 5233(c)(4) (Count XXIII), unfair competition, Cal. Bus. & Prof. Code §§ 17200 *et seq.* (Count XVII), false advertising, Cal. Bus. & Prof. Code §§ 17500 *et seq.* (Count XIX), breach of fiduciary duty to OpenAI, Inc. (Count XXII), and aiding and abetting breaches of fiduciary duty to OpenAI, Inc. (Count XXIV), in their action against Samuel Altman ("Altman"), Gregory Brockman, OpenAI, Inc., OpenAI, L.P., OpenAI, L.L.C., OpenAI GP, L.L.C., OpenAI OpCo, LLC, OpenAI Global, LLC, OAI Corporation, OpenAI Holdings, LLC, OpenAI Startup Fund Management, LLC, OpenAI Startup Fund GP I, L.L.C., OpenAI Startup Fund I, L.P., OpenAI Startup Fund SPV GP I, L.L.C., OpenAI Startup Fund SPV GP II, L.L.C., OpenAI Startup Fund SPV GP III, L.L.C., OpenAI Startup Fund SPV GP IV, L.L.C., OpenAI Startup Fund SPV I, L.P., OpenAI Startup Fund SPV II, L.P., OpenAI Startup Fund SPV III, L.P., OpenAI Startup Fund SPV IV, L.P., Aestas Management Company, LLC, Aestas, LLC,[1] Deannah Templeton, Reid Hoffman, and Microsoft Corp. (collectively, "Relator Defendants"), currently proceeding within *Musk, et al., v. Altman, et al.*, Case No. 4:24-cv-04722-YGR, in the United States District Court for the Northern District of California, for the reasons below and further detailed in the original verified complaint, containing a verified statement of facts, submitted concurrently with these points and authorities. (Cal. Code Reg., tit. 11, § 1, 10.)

Leave to sue forthwith is appropriate because this is a special case in which there is an urgent necessity to vindicate the People's interest in halting Relator Defendants' worsening misconduct in connection with perhaps California's largest charity ever. (*Id.* § 10.) As detailed

---

[1] This Memorandum uses "OpenAI" to refer collectively to the non-profit or charity (OpenAI, Inc.) and all other OpenAI entities (which include Aestas Management Company, LLC and Aestas, LLC); it further uses "For-Profit Entities" to refer collectively to all OpenAI entities except the non-profit, OpenAI, Inc.

in Proposed Relators' Motion for a Preliminary Injunction, *Musk, et al., v. Altman, et al.*, No. 4:24-cv-04722-YGR (Dkt. No. 46, filed Nov. 29, 2024) (hereinafter "MPI"), presently set for hearing on January 7, 2025, Relator Defendants' escalating misconduct risks irreparable injury to the charity OpenAI, Inc. and to the public, whether as taxpayers, consumers, investors, competitors, citizens interested in the rule of law, or persons concerned about rushed, unsafe artificial intelligence ("AI") products. (MPI at 1-2. 22-23.)

In the alternative, Proposed Relators submit that these same facts establish this is a special case or that good cause exists to set an expedited briefing schedule under Cal. Code Reg., tit. 11, §§ 3-4, with any opposition due within five days and any reply due within two days. Failing that, Proposed Relators request a briefing schedule that will permit resolution of this issue prior to the hearing scheduled on their MPI.

## **LEGAL FRAMEWORK**

Cal. Code Reg., tit. 11, § 2 provides that application for leave to sue is made by submitting to the Attorney General:

(a) Original verified complaint, together with one copy thereof, and a verified statement of facts. The proposed complaint shall be prepared for the signature of the Attorney General, a deputy attorney general and the attorney for the relator, as attorneys for plaintiff.

(b) Points and authorities showing why the proposed proceeding should be brought in the name of the people, and supporting the contention of relator that a public office or franchise is usurped, intruded into or unlawfully held or exercised by the proposed defendant.

(c) A notice directed to the proposed defendant to the effect that relator is about to apply to the Attorney General for "leave to sue" in the proceeding therein named, and that the proposed defendant may, within the period provided in Section 3 hereof, show cause, if any, why "leave to sue" should not be granted in accordance with the application therefor.

(d) Proof of service of such application, complaint, statement of facts, points and authorities and notice upon the proposed defendant.

Under Cal. Code Reg., tit. 11, § 10:

In special cases and upon a sufficient showing of urgent necessity, "leave to sue" will issue forthwith upon the filing of showing and undertaking required by Sections 2 and 6, upon condition that the

defendant may thereafter show cause and that the right of the relator to maintain and prosecute such proceeding shall be thereafter determined.[2]

No cases appear to elaborate on these standards; cases simply state that the Attorney General should grant relator status when it is "in the interests of justice to do so" (*Turner v. Victoria* (2023) 15 Cal. 5th 99, 131), and should not grant relator status when asked to authorize "frivolous lawsuits." (*People ex rel. Lacey v. Robles* (2020) 44 Cal. App. 5th 804, 816.) At least when, as in this case, both public and private rights are implicated, refusal of relator status (but not its grant) is reviewable by mandamus under the standard of arbitrary, capricious, or unreasonable refusal. (*Int'l Assn. of Fire Fighters v. City of Oakland* (1985) 174 Cal. App. 3d 687, 698.)

## **ARGUMENT**

### I.    **THE PEOPLE HAVE SIGNIFICANT INTEREST IN THE RELATOR DEFENDANTS' MISCONDUCT.**

The People's interest in this action, which reflects concerns expressed by regulators, scholars, and the marketplace, is paramount. (*See* FAC ¶¶ 7, 182-83.[3]) As detailed in Proposed Relators' verified complaint and MPI submitted herewith, never before has a corporation gone from tax-exempt charity to a $157 billion for-profit entity. (*Id.* ¶ 1.) Never before has it happened, because it requires lying to donors, members, markets, regulators (including the

---

[2] The undertaking specified in Section 10, also applicable in cases where leave to sue is issued other than forthwith, requires that Proposed Relators:

> present to the Attorney General an undertaking executed to the State of California in the sum of $500, to the effect that the relator will pay any judgment for costs or damages that may be recovered against the plaintiff, and all costs and expenses incurred in the prosecution of the proceeding in which such "leave to sue" is granted.

(Cal. Code Reg., tit. 11, § 6.)

[3] Citations are to the verified complaint submitted with this application, which reflects changes to conform with the proposed substitution of parties, but neither the paragraph numbers nor the substance of any facts or claims alleged therein has changed from Proposed Relators' Verified First Amended Complaint ("FAC") in *Musk, et al., v. Altman, et al.*, No. 4:24-cv-04722-YGR (Dkt. No. 32, filed Nov. 14, 2024).

Attorney General), and the public. (*Ibid.*) OpenAI, Inc., co-founded by Musk as an independent charity committed to safety and transparency—and nurtured in its infancy by Musk's money, advice, recruiting efforts and connections—is fast becoming a fully for-profit subsidiary of Microsoft, one where safety is an afterthought and self-dealing runs rampant. (*Id.* ¶¶ 1-8.)

In addition to breaching OpenAI, Inc.'s trust, self-dealing, breaching and aiding and abetting breaches of fiduciary duties to OpenAI, Inc., unfair competition, and numerous violations of federal law, OpenAI continues to act for profit with impunity. In doing so, Relator Defendants are violating California's antitrust laws and California Revenue and Taxation Code § 23701d(a) (charitable status), *id.* § 23703 (false application for exempt status), *id.* § 23701 (abuse of exempt status), *id.* § 19701 (tax fraud and false returns), *id.* § 19705 (tax evasion and false statements), Cal. Corp. Code § 6811 (false reports), *id.* § 6215 (false statements to the Attorney General), and Cal. Gov. Code § 12591.1 (charitable trust violations)—all laws the Attorney General is charged with enforcing. (FAC ¶¶ 338-50, 355-58, 387, subd. (e); *see, e.g.*, Cal. Bus. & Prof. Code § 16755(a); Cal. Gov't Code §§ 12580-12599.8.)

Relator Defendants' misconduct threatens not only billions of dollars in charitable assets but also the publicly-announced mission and fundamental purposes for which OpenAI, Inc. was established. Their conduct threatens public trust and respect for the law, as it suggests wealthy tech executives are allowed to do what the average citizen or charity could never. Given this ongoing egregious misconduct by a non-profit entity subsidized by their taxes and supervised by their Attorney General, the People have a direct, urgent, and substantial interest in protecting the charity and public from further irreparable harm.

## II.   PROPOSED RELATORS OFFER UNIQUE QUALIFICATIONS TO REPRESENT THE PEOPLE'S INTERESTS.

While Musk and Zilis have standing in their own rights as members of OpenAI, Inc. during the relevant conduct, as persons having a special interest in OpenAI, Inc. under the Restatement of the Law, Charitable Nonprofit Orgs. §§ 6.02 & -.05, and, in Musk's case,

under Cal. Corp. Code § 5142(a)(4) and the common law as embodied in the Probate Code and explicated by Justice Traynor in *Holt v. Coll. of Osteopathic Physicians & Surgeons* (1964) 61 Cal. 2d 750, 753, 756, *see also L.B. Rsch. & Educ. Found. v. UCLA Found.* (2005) 130 Cal. App. 4th 171, 180, their claims deserve to be brought in the name of the People.

First, as detailed above, the People's interests are direct, urgent, and substantial. But even so, as the California Supreme Court has noted, the Attorney General can be limited by staffing and funding considerations from discharging its responsibility to supervise public charities with full efficacy. (*Turner*, *supra*, 15 Cal. 5th at 130-31.) Proposed Relators, who have the resources to augment those of this Office, will fill the gaps.

Further, Proposed Relators offer unique qualifications to vindicate the People's interests. Musk, beyond his substantial financial commitment of over $44 million to OpenAI, Inc., brings critical insight as a co-founder (even OpenAI's webpage still notes Musk's founding co-chairmanship of the non-profit's board of directors) and expert in generative AI. (FAC ¶¶ 91-97, 443, 459.) Based on his experience shaping OpenAI, Inc. in its early years, he is uniquely positioned to understand how the charity's current conduct deviates from its original beneficial purposes and the harms caused by its members' self-dealing, unfair competition, and breaches of fiduciary duties. Zilis similarly offers invaluable expertise in both AI development and OpenAI, Inc.'s governance, much of which she gained in her role as one of its board members (2019-2023) and earliest advisors. (FAC ¶¶ 239, 444, 460.) Proposed Relators' direct involvement with OpenAI, Inc.'s formation and early operations positions them as optimal representatives of the People.

III.     **THERE IS AN URGENT NEED TO STOP RELATOR DEFENDANTS' MISCONDUCT, OR IN THE ALTERNATIVE, GOOD CAUSE TO EXPEDITE PROCEEDINGS.**

As detailed in Proposed Relators' verified complaint and MPI submitted herewith, investors, consumers, and the public at large will suffer irreparable harm if Relator Defendants' conduct continues unabated. (MPI at 1-2, 22-23.) The public has a strong interest in ensuring that charitable assets are not diverted for private gain. This interest is particularly

1    acute here given the substantial tax benefits OpenAI, Inc. received as a non-profit, the

2    organization's repeated public commitments to developing AI technology for the benefit of

3    humanity, and the serious safety concerns raised by numerous former OpenAI employees

4    regarding the charity's rush to market potentially dangerous products in pursuit of profit.

5    (FAC ¶¶ 184-89.)

6            Further, the potential harm to investors is particularly severe. Currently, OpenAI's

7    investors are sophisticated commercial parties, relatively small in number. After Proposed

8    Relators prevail on their breach of charitable trust claim, unwinding these existing

9    investments will already pose significant challenges. However, if OpenAI continues at its

10   current pace to accept new investments, including from more numerous smaller investors, or

11   proceeds with a public offering, the complexity of unwinding these transactions will increase

12   exponentially. The sheer number of affected parties would make it virtually impossible to

13   reverse the charity's conversion without causing widespread investor losses and market

14   disruption.[4] Providing Proposed Relators the backing of the People will better effectuate their

15   efforts to maintain OpenAI, Inc.'s charitable status until this case is decided on the merits,

16   protecting not only future investors, but the public's interest in the proper operation of

17   charities.

18           OpenAI, Inc. itself faces additional irreparable harm from Altman's ongoing self-

19   dealing. For example, OpenAI's decision to license content from Reddit has generated

20   hundreds of millions in personal profit for Altman. (FAC ¶ 137.) Meanwhile, Altman's refusal

21   to license content from sources where he lacks personal financial interest, such as *The New*

22   *York Times*, has resulted in multiple lawsuits, exposing OpenAI, Inc. to enormous damages

23   and reputational harm. (*Id*. ¶ 138.)

24

25   _____

26   [4] Unwinding the collapse of Sunwest Management, a $1.2 billion enterprise with just 1200
     investors, took the District of Oregon nearly ten years, at a cost of $155 million in expenses,
27   and many investors were never made whole. (*See SEC v. Sunwest Mgmt., Inc.* (D. Or. 2009)
     No. 6:09-cv-06056-AA.)
28

1    OpenAI's rapid expenditure of massive amounts of capital, including the profligate

2  spending on Altman's side deals, further amplifies these harms. The Ninth Circuit recognizes

3  that self-dealing, like Altman's, risks putting diverted assets out of reach, thereby

4  compounding the risk of irreparable injury to OpenAI, Inc. and investors. (*Walczak v. EPL

5  Prolong, Inc.* (9th Cir. 1999) 198 F.3d 725, 732.) OpenAI is on track to lose nearly $5 billion

6  this year, and at its current burn rate, will likely lack sufficient funds to pay damages, resulting

7  in substantial losses to the investing public and dissipation of assets irrevocably devoted to a

8  public charitable purpose.

9                                      **CONCLUSION**

10    For the foregoing reasons, Proposed Relators respectfully request leave to sue issue

11  forthwith, or in the alternative, that briefing under Cal. Code Reg., tit. 11, §§ 3-4, occur on an

12  expedited basis, with any opposition due within five days and any reply due within two days.

13  Failing that, Proposed Relators request a briefing schedule that will permit resolution of this

14  issue prior to the hearing scheduled on their Motion for a Preliminary Injunction.

15

16   DATED: December 5, 2024                    Respectfully Submitted,

17                                             TOBEROFF & ASSOCIATES, P.C.

18                                             _____*/s/ Marc Toberoff*_____
                                                      Marc Toberoff
19

20                                              *Attorneys for Plaintiffs Elon Musk
                                               Shivon Zilis, and X.AI Corp.*
21

22

23

24

25

26

27

28