# EXHIBIT 45



1600 20th Street, NW • Washington, D.C. 20009 • 202/588-1000 • www.citizen.org

December 17, 2024

Attorney General Rob Bonta
Office of the Attorney General
California Department of Justice
Attn: Public Inquiry Unit
P.O. Box 944255
Sacramento, CA 94244-2550

Attorney General Kathy Jennings
Delaware Department of Justice
Carvel State Building
820 N. French St.
Wilmington, DE 19801

     RE: OpenAI, Inc.

Dear Attorneys General Bonta and Jennings,

In a series of previous letters to the California Attorney General, we have argued that OpenAI is no longer operating as a nonprofit and pursuant to its charitable purpose.[i] We have urged that the nonprofit be dissolved and its assets – which we have argued should total well north of $30 billion[ii] – should be devoted to the charitable sector.

OpenAI now reportedly plans to convert from nonprofit to for-profit status.[iii] For-Profit OpenAI has reportedly committed to its new investors that it will, within two years, escape from the operational control of OpenAI Nonprofit.

Based on reporting from Reuters and the Wall Street Journal,[iv] it appears that OpenAI's plan is to maintain the nonprofit, which would receive payment from the for-profit for the value it transfers to the for-profit.

<u>We are writing to urge you to engage immediately with OpenAI to make clear that this approach is unacceptable and to make clear that a transformation of OpenAI into a for-profit enterprise must involve payments to a new, independent charitable enterprise, completely separate from OpenAI.</u> The interests of the charitable sector cannot be realized with payments to and a continuation of OpenAI Nonprofit.

1

Your respective authorities to take this action are well established. Under Delaware law, the Attorney General may seek "to revoke or forfeit the charter of any corporation for abuse, misuse or nonuse of its corporate powers." 8 Del. C. 1, § 284. As we have described in our previous letters and elaborate further below, OpenAI has misused its corporate powers, failing to uphold its nonprofit purpose. At this moment of transition for OpenAI, on behalf of its citizens and to protect the integrity of the nonprofit sector, Delaware can and should intervene.

California law provides broad investigatory power to the Attorney General to investigate and ensure "the purposes of [charitable organizations] are being carried out in accordance with the terms and provisions of the articles of incorporation or other instrument." Cal. Gov. Code § 12588. California law recognizes that the "primary responsibility … for protection of assets held by … public benefit corporations[ ] resides in the Attorney General." Cal. Gov. Code § 12598(a). Consequently, "[t]he Attorney General has broad powers under common law and California statutory law to carry out" enforcement responsibilities, including the power to suspend or revoke registration. *Id.*

**OpenAI Nonprofit has Failed to Uphold its Nonprofit Mission**

OpenAI Nonprofit has disqualified itself from continuing as a nonprofit because it has completely failed to uphold its nonprofit mission.

As we have documented in our series of letters, although OpenAI Nonprofit has a controlling interest in For-profit OpenAI, since at least November 2023, the for-profit has exercised control over the nonprofit, rather than the reverse:

- When OpenAI Nonprofit decided to dismiss Sam Altman, the non-profit's decision to dismiss Altman was overturned due to the pressure of the for-profit, including investors in the for-profit.
- As part of Altman's restoration, the non-profit board members who sought to dismiss him were themselves dismissed.
- The post-Altman firing gave Microsoft, one of the world's largest corporations, "observer status" on OpenAI's board.
- While OpenAI Nonprofit maintains a controlling interest in For-Profit OpenAI, it has failed to deliver on its claim that "OpenAI's guiding principles of safety and broad benefit would [remain] central to its approach."[v] In the past months, the leaders of OpenAI's safety team have departed the company and OpenAI closed its safety team. One of the safety team leaders specifically decried that "safety culture and processes have taken a backseat to shiny products."[vi] Other former OpenAI employees have raised similar concern.
- OpenAI has rushed ahead with the introduction of new products, such as Voice Mode, an audio version of ChatGPT that communicates in convincingly human-sounding voices, that have widely identified safety risks. These risks are significant enough that Google – a giant, for-profit corporation – declined to put a comparable product on the market, at least until OpenAI did.

2

In fact, since the Sam Altman restoration last year, there is virtually no evidence of OpenAI Nonprofit doing anything that signals a prioritization of its nonprofit mission over the for-profit, market share-obtaining objectives of For-Profit OpenAI. Now, at a pivotal moment for OpenAI, this record means that payment from For-Profit OpenAI should not go to the conflicted, compromised and mission-averse OpenAI Nonprofit, but should instead be allocated to a new, independent entity. The issue is not punishing OpenAI Nonprofit, but protecting the interests of the charitable sector and nonprofit purpose. OpenAI Nonprofit has demonstrated it cannot be trusted to do that.

**OpenAI Nonprofit's Board Has Disqualified Itself from Continued Nonprofit Authority**

OpenAI's Nonprofit Board has not protected its nonprofit mission, does not exhibit a nonprofit orientation, and is not prepared to steward a large-scale nonprofit organization going forward.

We know what a true nonprofit board at OpenAI would like: The board that existed prior to November 2023, but was replaced for exercising its oversight functions in accord with OpenAI's original, nonprofit mission.

It is fair to conclude that the board that replaced the previous board was constructed for the purpose of enabling and prioritizing the for-profit activities of For-Profit OpenAI over the OpenAI Nonprofit's mission. That conclusion follows both from the process and scenario by which they were installed and from their evident failure to ensure that safety is prioritized by OpenAI.

The board consists of only one person with expertise in AI ethics and safety, defining elements of OpenAI Nonprofit's mission. Instead, it is dominated by corporate executives and people with business experience. Being a corporate executive is certainly not disqualifying for service on a non-profit board. But in this instance, the board members appear to be on the board because of their for-profit orientation and expertise – that is, to further the for-profit interests of OpenAI, they have both permitted the improper for-profit dominance at OpenAI and seem to be a representation of it.

**OpenAI Nonprofit is Not Able to Engage in an Arms-Length Negotiation with OpenAI For-Profit**

The subordination of OpenAI Nonprofit to For-Profit OpenAI, the failure of OpenAI Nonprofit to uphold its mission, and the compromised nature of OpenAI Nonprofit's board of directors all make it blindingly obvious that OpenAI Nonprofit cannot and will not engage in an arms-length negotiation with OpenAI.

In giving up its controlling interest in For-Profit OpenAI and to advance its nonprofit purpose, OpenAI Nonprofit should seek the maximum amount possible and to protect its rights to Artificial General Intelligence (AGI), if such technologies are invented. But given that the nonprofit board has prioritized the interests of the for-profit – that is, OpenAI Nonprofit and the nonprofit board have shown they are more concerned with the well-being of the for-profit than the advancing the interests of the nonprofit -- it's virtually impossible to imagine this happening

In fact, OpenAI Nonprofit should refuse to give up its controlling interest without full and adequate compensation. But again, it's almost impossible to imagine OpenAI Nonprofit deciding to maintain its controlling interest. For-Profit OpenAI's recent investment infusion reportedly requires a severing of OpenAI Nonprofit's controlling interest – a move that, given its current controlling interest, the nonprofit must have agreed to. In other words, the nonprofit appears to have given away its negotiating leverage, committing to a pre-ordained outcome, before the negotiations even began.

Nor would it be any answer to say the two sides should agree to compensation determined by an outside adjudicator. Given the interconnected and conflicted nature of the entities, an outside adjudicator in the employ of the entities would necessarily be contaminated by the structural conflict.

**The Personal Interests of Sam Altman and, perhaps, the OpenAI Nonprofit Board Members Make a Fair Negotiation Impossible**

After the November 2023 turmoil, Sam Altman returned to OpenAI as CEO.[vii] In March 2024, Altman rejoined OpenAI Nonprofit's board of directors.[viii]

Now, going forward, it appears Sam Altman will be CEO of the independent For-Profit OpenAI. That fact alone makes a fair negotiation almost impossible. Altman will be on both sides of the negotiation – now underway. Given the relationships, it would be no answer for Altman to recuse himself from the negotiations, though that hardly seems possible. Simply the close relationship of the current OpenAI Nonprofit board with Altman makes the conflict insoluble.

But the issue is more complicated even than structural conflicts and personal relationships: Very large dollar amounts are at stake.

Bloomberg has reported that OpenAI is considering giving Altman a 7 percent stake in the for-profit, equivalent to roughly $10 billion.[ix] Altman apparently denied the report in conversation with OpenAI staff.[x] But whatever amounts are being discussed, OpenAI Board Chair Bret Taylor confirmed that an equity grant is under consideration:

> "The board has had discussions about whether it would be beneficial to the company and our mission to have Sam be compensated with equity, but no specific figures have been discussed nor have any decisions been made."[xi]

The Taylor quote embodies the irresolvable conflict facing the board. The board believes it owes a duty to both the for-profit over which it exercises control and to the nonprofit. But the nonprofit board's duty is in fact solely and exclusively to the nonprofit mission; and as the two prepare to sever their structural relationship, the board cannot consider the interests of the for-profit.

The allocation of equity in the for-profit to Altman, a member of the nonprofit board, at minimum raises significant questions of improper inurement. At minimum, addressing the issue

4

of inurement must mean that OpenAI Nonprofit is dissolved in connection with the conversion of For-Profit OpenAI into an independent entity.

There have been no reports of other OpenAI Nonprofit board members receiving equity in the for-profit as part of the transition, but any equity allocation to other OpenAI Nonprofit board members would further solidify the case for dissolving the nonprofit.

**It is Untenable for OpenAI Nonprofit to Own Significant Shares in For-Profit OpenAI**

Its latest funding round reportedly values OpenAI at more than $150 billion, but it is widely reported that the company does not have significant cash reserves and in fact needs cash to pay for its heavy compute needs and overall expansion plans. Thus, if it is required to pay OpenAI Nonprofit $30 billion or more, as we have argued, such payment will almost certainly be made in equity.

$30 billion in equity would make OpenAI Nonprofit the largest shareholder in the for-profit, once again giving it a controlling interest. Even if OpenAI were fully capitalized, $30 billion would represent 20 percent of the value of the company, likely leaving OpenAI Nonprofit as the largest shareholder. OpenAI Nonprofit's record shows it cannot be trusted in such a scenario to prioritize its nonprofit purpose over the interests of the for-profit. Equally, such a situation is unlikely to be acceptable to For-Profit OpenAI and its new investors.

These unavoidable conflicts almost inevitably mean that the equity from For-Profit OpenAI will be encumbered, perhaps with limits on exercise of voting rights. Payments may be spread over time. Restrictions may be imposed on when shares can be resold on the open market.

Thus, the transition to an independent, For-Profit OpenAI will almost inevitably require complicated negotiations over the terms of and limitations on an equity transfer. Given its past record and structural and personal conflicts, there is no way for OpenAI Nonprofit to conduct these negotiations solely with an eye to nonprofit interests and no way for OpenAI Nonprofit to manage a shareholding interest in For-Profit OpenAI with an exclusive focus on nonprofit interests.

**The Importance of Early Engagement by Your Offices**

Everything about the last 12 months has shown that OpenAI Nonprofit is under the control of For-Profit OpenAI – and that OpenAI Nonprofit and its board have subordinated nonprofit mission to the interests of the for-profit.

Now, in this time of transition, OpenAI Nonprofit's history, culture and conflicts make it impossible to manage the transition to protect nonprofit interests.

We urge you to engage in the OpenAI transition process now, to make it clear that the conversion of OpenAI to for-profit status must involve a payment to a new, independent entity in the charitable sector, not to the conflicted and compromised OpenAI Nonprofit, and to otherwise secure the vital interests of the charitable sector.

5

Thank you again for considering our views on these matters.

Sincerely,

*Robert Weissman*

Robert Weissman
Co-President

---

[i] Public Citizen letter to Attorney General Rob Bonta, January 9, 2024, https://www.citizen.org/article/letter-to-california-attorney-general-on-openais-nonprofit-status; Public Citizen letter to Attorney General Rob Bonta, March 5, 2024, https://www.citizen.org/article/second-letter-california-attorney-general-openai-nonprofit-status-musk-lawsuit; Public Citizen letter to Attorney General Rob Bonta, June 6, 2024, https://www.citizen.org/article/june-2024-california-ag-openai-nonprofit-status-letter.

[ii] Public Citizen letter to Attorney General Rob Bonta, September 30, 2024, https://www.citizen.org/article/fourth-letter-to-california-attorney-general-rob-bonta-openai-is-no-longer-operating-as-a-nonprofit/

[iii] Krystal Hu and Kenrick Cai, "OpenAI to Remove Nonprofit Control and Give Sam Altman Equity," September 25, 2024, Reuters, https://www.reuters.com/technology/artificial-intelligence/openai-remove-non-profit-control-give-sam-altman-equity-sources-say-2024-09-25.

[iv] https://www.wsj.com/tech/ai/openais-complex-path-to-becoming-a-for-profit-company-bad21a42

[v] https://openai.com/our-structure/

[vi] Jan Leike (@janleike), "Yesterday was my last day as head of alignment, superalignment lead, and executive @OpenAI." X, May 17, 2024. https://x.com/janleike/status/1791498174659715494

[vii] "Sam Altman Returns as CEO, OpenAI Has New Board," November 29, 2023, https://openai.com/index/sam-altman-returns-as-ceo-openai-has-a-new-initial-board/

[viii] "OpenAI Announces New Members to Board of Directors," March 8, 2024, https://openai.com/index/openai-announces-new-members-to-board-of-directors/

[ix] Rachel Metz, Dina Bass, Edward Ludlow, and Shirin Ghaffary, "OpenAI Discusses Giving Altman 7% Stake in For-Profit Shift," September 25, 2024, https://www.bloomberg.com/news/articles/2024-09-25/openai-cto-mira-murati-says-she-will-leave-the-company?srnd=homepage-americas.

[x] Thomas Barrabi, "OpenAI's Sam Altman calls report of 7% equity stake 'ludicrous,'" New York Post, September 27, 2024, https://nypost.com/2024/09/27/business/openais-sam-altman-calls-report-of-7-equity-stake-ludicrous.

[xi] Rachel Metz, Dina Bass, Edward Ludlow, and Shirin Ghaffary, "OpenAI Discusses Giving Altman 7% Stake in For-Profit Shift," September 25, 2024, https://www.bloomberg.com/news/articles/2024-09-25/openai-cto-mira-murati-says-she-will-leave-the-company?srnd=homepage-americas.