Marc Toberoff (S.B. #188547)
mtoberoff@toberoffandassociates.com
Jaymie Parkkinen (S.B. #318394)
jparkkinen@toberoffandassociates.com
TOBEROFF & ASSOCIATES, P.C.
23823 Malibu Road, Suite 50-363
Malibu, CA 90265
Telephone: (310) 246-3333
Facsimile: (310) 246-3101

*Attorneys for Plaintiffs Elon Musk,
Shivon Zilis, and X.AI Corp.*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELON MUSK, et al., | Case No. 4:24-cv-04722-YGR |
| Plaintiffs, | Assigned to Hon. Yvonne Gonzalez Rogers |
| v. | |
| SAMUEL ALTMAN, et al., | **DECLARATION OF ELON MUSK IN SUPPORT OF PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION** |
| Defendants. | |
| | Date: January 14, 2025<br>Time: 2:00 p.m.<br>Place: Courtroom 1 (4th Fl.)<br>1301 Clay St.<br>Oakland, CA 94612 |

# DECLARATION

I, Elon Musk, declare as follows:

1. I am the Founder and Chief Executive Officer of X.AI Corp. ("xAI"), as well as of Tesla and SpaceX. I submit this declaration in support of Plaintiffs' Motion for a Preliminary Injunction. I have personal knowledge of the facts stated in this declaration, except as otherwise noted, and if called as a witness, I could and would competently testify to them.

2. xAI is engaged in the development and implementation of generative artificial intelligence and, as such, competes directly with OpenAI and Microsoft.

3. I have been informed that, during OpenAI's October 2024 funding round, Sam Altman stated that participants' ability to invest in this round was contingent on their agreement to refrain from funding OpenAI's competitors and specifically named xAI.

4. After speaking to other market participants, I believe that other investors, not just those who participated in the October 2024 funding round, believe OpenAI may deny allocations to those who invest in xAI and other competitors of OpenAI.

5. OpenAI's efforts to create a syndicate of high-value investors exclusively committed to OpenAI damages competition in the generative AI market.

6. The infrastructure necessary to develop advanced AI platforms alone is staggeringly expensive and represents critical and prohibitively steep barriers to generative AI development. Unlike OpenAI, which benefits from its close partnership with Microsoft that provides it free or heavily discounted computing power, xAI must build its own. This means that xAI must undertake the extraordinarily costly and complex challenge of constructing its own technological infrastructure from the ground up. To do so, xAI needs significant capital investment, far more than OpenAI does with Microsoft as its de facto parent.

7. Additional necessary expenses to effectively compete in the generative AI marketplace include costs associated with training the AI models—a process that requires massive amounts of curated datasets, which are expensive to collect and process—and the recruitment of specialized engineering talent, the costs of which results in very significant additional annual expenses.

8. Simply put, more capital investment from high-value investors results in a stronger, more competitive generative AI marketplace. Without substantial and continuous access to capital, the growth and ability of OpenAI's rivals to compete will be artificially stymied.

9. I am also deeply concerned that OpenAI and Microsoft's obvious sharing of competitively sensitive information will further disadvantage competitors in the generative AI market, including xAI. The sharing of trade secrets between these companies concerning costs, pricing strategies, technological capabilities, product roadmaps, marketing targets, and business applications effectively transforms what should be a competitive relationship into a subsidiary one. This coordinated effort by OpenAI and Microsoft does not remotely resemble true competition.

10. In contrast, xAI must rely on its own technical infrastructure and research and develop its own training data sets, as well as conduct its own pre- and post-training programs on models. By sharing all of this and more, Microsoft and OpenAI save themselves considerable time and expense, two of the most important factors in determining success in the generative AI marketplace today.

11. I have been informed that OpenAI promised investors it would transition from its non-profit structure to become a fully for-profit company within two years or would repay all investment from the October 2024 funding round.

12. Sam Altman and Greg Brockman suggested to me in summer of 2017 that OpenAI should convert to a for-profit company. It was clear to me that they had discussed the matter with each other prior to raising it with me. I made it known to Altman and Brockman that, if OpenAI were to convert to a for-profit company, I expected my fair share of equity in proportion to the substantial financial contributions I had made to OpenAI since its founding.

13. Once it became clear Altman and Brockman would not agree, I made absolutely clear by an email on September 20, 2017, that further assistance and donations from me were contingent on OpenAI remaining a non-profit. Altman and Brockman agreed, and based thereon, I continued to provide both money and services to OpenAI.

14. I declare under penalty of perjury of the laws of the United States that the foregoing is true and correct. Executed on December __27__, 2024.

_____
Elon Musk

## ECF ATTESTATION

I, Marc Toberoff, am the ECF User whose ID and password are being used to file this **DECLARATION OF ELON MUSK IN SUPPORT OF PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION**. In accordance with Civil Local Rule 5-1, concurrence in the filing of this document has been obtained from each of the other signatories, and I shall maintain records to support this concurrence for subsequent production for the Court if so ordered or for inspection upon request by a party.

Dated: December 27, 2024         /s/ Marc Toberoff
                                  Marc Toberoff