Marc Toberoff (S.B. #188547)
mtoberoff@toberoffandassociates.com
Jaymie Parkkinen (S.B. #318394)
jparkkinen@toberoffandassociates.com
TOBEROFF & ASSOCIATES, P.C.
23823 Malibu Road, Suite 50-363
Malibu, CA 90265
Telephone: (310) 246-3333
Facsimile: (310) 246-3101

*Attorneys for Plaintiffs Elon Musk,
Shivon Zilis, and X.AI Corp.*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELON MUSK, et al., <br><br> Plaintiffs, <br><br> v. <br><br> SAMUEL ALTMAN, et al., <br><br> Defendants. | Case No. 4:24-cv-04722-YGR <br><br> Assigned to Hon. Yvonne Gonzalez Rogers <br><br> **PLAINTIFFS' RESPONSE TO THE AMICUS BRIEF OF KATHLEEN JENNINGS IN HER CAPACITY AS THE ATTORNEY GENERAL OF THE STATE OF DELAWARE** <br><br> Date: January 14, 2025 <br> Time: 2:00 p.m. <br> Place: Courtroom 1 (4th Fl.) <br> 1301 Clay St. <br> Oakland, CA 94612 |

**INTRODUCTION**

The Delaware Attorney General's amicus brief is correct that OpenAI's unprecedented conduct in operating a charity for private gain is a matter of "profound" importance. Del. Amicus at 4.[1] However, its implicit suggestion that the office's review of the "Proposed Transaction" is enough to protect the public interest misapprehends the issues at hand. Delaware does not, because it cannot, purport to protect the interests of Elon Musk, Shivon Zilis, and competitors like xAI, none of whom are Delaware citizens. Delaware does not, because it cannot, purport to regulate Microsoft, Reid Hoffman, or Deannah Templeton, none of whom are Delaware citizens. And Delaware does not, because it cannot, purport to have special competence in protecting the federal interests embodied in federal law.

Plaintiffs welcome the Delaware Attorney General's review of OpenAI's actions. But this review, even if it were more substantive than it appears, has essentially no relevance to the FAC and Plaintiffs' Motion for a Preliminary Injunction. Plaintiffs' pleadings do not raise claims based on Delaware law, because California is the state with the far stronger interest. *Am. Ctr. for Educ., Inc.*, 80 Cal. App. 3d 476, 487 (1978), *superseded by statute on other grounds as recognized in Patton v. Sherwood*, 152 Cal. App. 4th 339, 346 (2007). Further, Delaware's almost non-existent supervision of OpenAI before its conspicuously timed amicus does not inspire confidence, particularly in conjunction with the amicus' unduly narrow focus on the "Proposed Transaction" alone, excluding review of other important and troubling matters within the office's purview, such as Defendants' antitrust violations and Sam Altman's rampant self-dealing.

**ARGUMENT**

**I.   ONLY A COURT, NOT A STATE ATTORNEY GENERAL, IS COMPETENT TO BALANCE MULTI-JURISDICTIONAL INTERESTS.**

This case and the public's interest involve far more than just the Delaware corporate law to which the amicus is limited. But even in its review of corporate law, the amicus fails to

---

[1] Citations of "Del. Amicus" are to the amicus brief of the Delaware Attorney General. Citations of "Mot." are to Plaintiffs' Motion for a Preliminary Injunction, and citations of "FAC" are to Plaintiffs' Verified First Amended Complaint. Citations of "Ex." are to the January 3, 2025 Toberoff Declaration, unless otherwise stated.

1  consider the fact that OpenAI must clear at least four different hurdles across multiple
2  jurisdictions, and at different levels of government, if it is to sanitize its future profiteering. It
3  must receive permission to convert to a for-profit entity from the Delaware Attorney General.
4  Yet as Plaintiffs explained in both their FAC, ¶¶ 228-29, and Motion, Mot. at 15 n.11, and as
5  Defendants do not contest, California law governs charities like OpenAI operating within the
6  state. The California Attorney General must independently review and approve any
7  conversion of charitable assets according to principles of California law. Cal. Corp. Code
8  § 5813.5. The Delaware Attorney General's review cannot substitute for California's review
9  according to principles of California law, enacted to protect California citizens. Neither can
10 Delaware's process substitute for the IRS review of OpenAI's for-profit conversion prior to
11 concluding any such transaction. *See* Rev. Proc. 2023-1.
12         Even if the California and Delaware Attorneys General and the IRS eventually
13 approve some form of conversion, the fourth hurdle is this Court's determination of what
14 Musk is due as a settlor of the OpenAI charitable trust and under his breach of contract, fraud,
15 and other claims arising from OpenAI's transfers of charitable assets for private gain *before*
16 receiving regulatory approval. The Court must also determine Defendants' liability for their
17 violations of other federal and California laws alleged in the FAC, which the amicus does not
18 address. These diverse claims present a multi-jurisdictional landscape, with stakeholders
19 centered almost entirely outside of Delaware. California is where OpenAI is headquartered,
20 operates, has its employees and assets, and where most if not all of the challenged conduct
21 took place. It thus remains imperative for this Court to consider the public's interests
22 independently and to preserve the status quo until final disposition.

23 **II.   DELAWARE'S PATTERN OF ONGOING REGULATORY NEGLECT
24         DEMONSTRATES THE NECESSITY OF INTERVENTION BY THIS COURT.**

25         Prior to Plaintiffs' suit, the Delaware AG demonstrated little discernible oversight of
26 OpenAI's well-reported abandonment of its charitable mission or self-dealing for private
27 inurement. Indeed, the timing and substance of Delaware's amicus also reveal its limits.
28 Plaintiffs contacted the office shortly after filing their FAC to inform it of Defendants'

escalating pattern of misconduct, Ex. 1, but received no response. The office instead remained silent until filing this amicus after the close of briefing on Plaintiffs' Motion, and just one business day after OpenAI announced the "Proposed Transaction" in a blog post, the latest in OpenAI's campaign to litigate this case in the press, and its second crisis-comms salvo since Plaintiffs filed their Motion. Notably, the amicus relies solely on OpenAI's blog statements concerning its conversion plans, rather than demonstrating any independent regulatory scrutiny or formal investigation.[2] Delaware's silence toward Plaintiffs, the timing of its amicus, and prior regulatory forbearance despite numerous U.S. Senate inquiries and media reports publicizing OpenAI's troubling misconduct are concerning.

Indeed, even now that the Delaware Attorney General has chosen to get involved, the amicus brief says nothing of Sam Altman's escalating self-dealing or OpenAI's recent anticompetitive conduct, catalysts for Plaintiffs' Motion. These omissions, particularly from an office charged with protecting market competition and policing self-dealing, confirm the limited scope of the Attorney General's current review. Del. Code Ann. tit. 6, § 2105; *Oberly v. Kirby*, 592 A.2d 445, 468 (Del. 1991).

While the brief mentions that the "Proposed Transaction" may qualify as an interested director transaction, none of Altman's other extensive self-dealing, such as OpenAI's deal with Reddit that made Altman hundreds of millions of dollars, is even discussed. FAC ¶ 137. The amicus also omits any mention of Altman's 2023 Senate testimony, where he swore he held no equity in OpenAI—a statement now contradicted by admissions that he held equity through his stakes in Y Combinator and a Sequoia Capital fund. Dec. 27, 2024 Toberoff Decl. Ex. 52 at 1-2. The amicus further fails to address public documentation revealing that the OpenAI enterprise collectively generated $200 million in revenue in 2022, but the OpenAI charity received a mere $44,485, starkly illustrating the diversion of charitable assets even well before the initiation of the "Proposed Transaction." *Id*. Ex. 46 at 2; FAC ¶ 131.

---

[2] When Plaintiffs submitted a public records request to the Delaware Attorney General seeking documents related to OpenAI and OpenAI's relationship to Microsoft, the totality of the office's response was just one previously published letter to OpenAI. Ex. 2.

The Delaware Attorney General's review of OpenAI's concerning conversion of charitable assets for commercial gain is a positive development. But Delaware's limited, essentially happenstance role as the location of incorporation and the narrow scope of the office's efforts to supervise OpenAI render its processes inadequate to protect the interests of *all* stakeholders. This Court should protect the interests of Plaintiffs, AI competitors, AI users, OpenAI's nationwide beneficiaries, California, and federal law by preserving the status quo through a preliminary injunction stopping Defendants' ongoing illicit conduct.

## CONCLUSION

Delaware has, after considerable delay, raised its hand as an interested party. Its Attorney General has a role to play in judging OpenAI's conduct, one that Plaintiffs welcome. But the amicus' emphasis on the significance of the public interest in OpenAI's conversion of charitable assets for profit, when contrasted with the Delaware Attorney General's notable absence of prior intervention, only reinforces the imperative for this Court to act. This Court stands alone in its capacity to harmonize and protect the diverse interests at stake—from state regulatory concerns to private commercial rights to public welfare. The circumstances compel the issuance of a prohibitory injunction to protect the public interest and maintain Plaintiffs' access to meaningful relief.

DATED: January 3, 2025

Respectfully Submitted,

TOBEROFF & ASSOCIATES, P.C.

  */s/ Marc Toberoff*
Marc Toberoff

*Attorneys for Plaintiffs Elon Musk, Shivon Zilis, and X.AI Corp.*