JORDAN ETH (CA SBN 121617)
JEth@mofo.com
DAVID J. WIENER (CA SBN 291659)
DWiener@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105
Telephone:    (415) 268-7000
Facsimile:    (415) 268-7522

WILLIAM SAVITT (admitted *pro hac vice*)
WDSavitt@wlrk.com
SARAH K. EDDY (admitted *pro hac vice*)
SKEddy@wlrk.com
NATHANIEL CULLERTON (admitted *pro hac vice*)
NDCullerton@wlrk.com
WACHTELL, LIPTON, ROSEN & KATZ
51 West 52nd Street
New York, NY 10019
Telephone:    (212) 403-1000
Facsimile:    (212) 403-2000

*Attorneys for Defendants Samuel Altman, Gregory Brockman, OpenAI, Inc., OpenAI L.P., OpenAI, L.L.C., OpenAI GP, L.L.C., OpenAI OpCo, LLC, OpenAI Global, LLC, OAI Corporation, LLC, OpenAI Holdings, LLC, OpenAI Startup Fund Management, LLC, OpenAI Startup Fund GP I, L.L.C., OpenAI Startup Fund I, L.P., OpenAI Startup Fund SPV GP I, L.L.C., OpenAI Startup Fund SPV GP II, L.L.C., OpenAI Startup Fund SPV GP III, L.L.C., OpenAI Startup Fund SPV GP IV, L.L.C., OpenAI Startup Fund SPV I, L.P., OpenAI Startup Fund SPV II, L.P., OpenAI Startup Fund SPV III, L.P., OpenAI Startup Fund SPV IV, L.P., Aestas Management Company, LLC, and Aestas LLC*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| ELON MUSK, et al., <br><br> Plaintiffs, <br><br> v. <br><br> SAMUEL ALTMAN, et al., <br><br> Defendants. | Case No. 4:24-cv-04722-YGR <br><br> **OPENAI DEFENDANTS' RESPONSE TO STATEMENT OF INTEREST OF THE UNITED STATES AND FEDERAL TRADE COMMISSION** <br><br> Date:  February 4, 2025 <br> Time:  10:00 a.m. <br> Courtroom:  1 – 4th Floor <br> Judge:  Hon. Yvonne Gonzalez Rogers <br> Compl. Filed:  August 5, 2024 |

**INTRODUCTION**

On January 10, 2025, the Department of Justice and Federal Trade Commission jointly submitted a Statement of Interest (Dkt. No. 87, "Statement") to address: (1) the standard governing mootness of a claim under Section 8 of the Clayton Act; (2) the circumstances under which a company violates Section 8; (3) whether board interlocks may violate California state law; and (4) what sort of agreements qualify as *per se* group boycotts under the Sherman Act. The Agencies "take no position on the ultimate disposition of the motion" (Statement at 3) or "any other issue in this case, including the facts alleged by Plaintiffs" (*id.* at 2), which, as the OpenAI Defendants have demonstrated, are inaccurate and fail even to state a claim.

The Statement is largely premised on the same case law cited by the OpenAI Defendants in opposing the pending motion, and OpenAI agrees with many of the principles the Agencies seek to clarify. But the Statement mischaracterizes certain of the OpenAI Defendants' positions, invokes legal principles not applicable here, and appears to confuse the matters in dispute on this motion.

**I. WHETHER PLAINTIFFS' SECTION 8 CLAIM LACKS AN ARTICLE III "CASE OR CONTROVERSY"**

The Agencies assert that "ending an interlocking directorate, e.g., by having a person resign from a corporate board, is not sufficient, *on its own*, to moot a claim under Section 8," Statement at 4 (emphasis in original), and suggest the OpenAI Defendants have advanced a position on this issue contrary to governing precedent, *id*. Invoking *United States* v. *W.T. Grant Co.*, 345 U.S. 629 (1953), the Agencies emphasize that "voluntary cessation of allegedly illegal conduct [generally] does not . . . make [a] case moot." Statement at 5 (citations omitted).

While this is an accurate statement of the "voluntary cessation" doctrine, that doctrine does not apply here. The doctrine provides that a "defendant cannot automatically moot a case simply by ending its unlawful conduct *once sued*." *Already, LLC* v. *Nike, Inc.*, 568 U.S. 85, 91 (2013) (emphasis added). In *W.T. Grant*, where the Supreme Court applied the doctrine to bar assertion of mootness as a defense to a Section 8 claim, the director resigned his position *after* the government brought suit; there was a live controversy at the action's inception. *See* 345 U.S. at 632-34.

The facts here are otherwise. Reid Hoffman and Deannah Templeton resigned from their

respective positions *before* Plaintiffs asserted (or even threatened) a Section 8 claim.[1] At no time since inception of this suit has there been any alleged "board interlock." The case was therefore "moot" before it was brought—more precisely, Plaintiffs lacked Article III standing to assert the claim by the time of suit. *See Steel Co.* v. *Citizens for a Better Environment*, 523 U.S. 83, 109 (1998) (claim non-justiciable where defendant ceased offending conduct before suit); *Renne* v. *Geary*, 501 U.S. 312, 320-21 (1991) ("dispute[] had become moot by the time [plaintiffs] filed suit" because defendants had ceased the challenged conduct); *see also Friends of the Earth, Inc.* v. *Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 174, 190-91 (2000) (explaining conceptual distinction between "initial standing to bring suit" and "postcommencement mootness" but noting that "standing set in a time frame" has often been referred to as "mootness").[2]

The Agencies contend that the Ninth Circuit "squarely" addressed "mootness" in this context in *TRW, Inc.* v. *FTC*, 647 F.2d 942 (9th Cir. 1981), where the court found the FTC's Section 8 action not "moot[ed]" by the subject director's pre-suit resignation, *see id.* at 953-54 (citing *W.T. Grant*, 345 U.S. at 632); *see also* Statement at 5. But *TRW* predates the Supreme Court's decisions in *Renne* and *Steel Co.* and, importantly, involved a government enforcement action rather than private litigation. *Cf. Consumer Fin. Prot. Bureau* v. *Gordon*, 819 F.3d 1179, 1187 (9th Cir. 2016) (noting that "the Executive Branch . . . [is] excepted from the generalized grievance prohibition that private parties face under Article III" in establishing standing to bring enforcement actions). The Supreme Court has since made clear that the voluntary cessation doctrine and the related doctrine governing matters "capable of repetition yet evading review" cannot, in a suit brought by a private party, "revive a dispute which became moot before the action commenced." *Renne*, 501

---

[1] Microsoft had also relinquished any "right to appoint a representative as a non-voting board observer of the Board of Directors of OpenAI." Templeton Decl., Ex. B; *see also id* ¶ 15.

[2] In describing Plaintiffs' request for an injunction on this claim as "moot" in their Opposition, the OpenAI Defendants intended to convey both that Plaintiffs lacked Article III standing with respect to this claim and that no injunctive relief could be issued in light of the absence of a "cognizable danger of recurrent violation," something not addressed on these facts in the Statement. Opp. at 13-14 (quoting *TRW, Inc.* v. *F.T.C.*, 647 F.2d 942, 954 (9th Cir. 1981)). The Agencies may have misunderstood the OpenAI Defendants' reference to "mootness" to suggest that a director's resignation *post*-litigation would similarly render a Section 8 claim non-justiciable—an argument the OpenAI Defendants are not advancing.

U.S. at 320; *Steel Co.*, 523 U.S. at 109 (rejecting argument by United States as *amicus curiae* that voluntary cessation doctrine revived claim mooted pre-suit, as this would "make[] a sword out of a shield"); *S.F. Baykeeper, Inc.* v. *Moore*, 180 F. Supp. 2d 1116, 1123 (E.D. Cal. 2001) (*W.T. Grant*'s holding on mootness does not apply where a plaintiff has failed to "establish standing" at the time of suit, as "[t]he rule regarding 'voluntary cessation'" applies only where the defendant "halts offending conduct in response to litigation" (cleaned up)).

As the Supreme Court has explained, "[p]ast exposure to [allegedly] illegal conduct does not in itself show a present case or controversy regarding injunctive relief if unaccompanied by any continuing, present adverse effects." *Renne*, 501 U.S. at 320-21 (cleaned up). This concern applies with force in the context of Section 8, which itself imposes a timetable for unwinding board overlaps that does not contemplate liability extending endlessly into the future—Section 8 contains a safe harbor, affording directors whose service becomes unlawful one year to terminate their overlapping service without violating the statute. *See* 15 U.S.C. § 19(b). Because Plaintiffs have failed to proffer any evidence of continuing "effects" of the purported interlocks (which in any event were lawful when in place), they cannot establish a "present case or controversy" permitting injunctive relief on this claim. *See Renne*, 501 U.S. at 320-21; Opp. at 13-18.[3]

## II. WHETHER AN "OBSERVER" QUALIFIES AS A SECTION 8 "DIRECTOR"

The Statement next contends that a "board 'observer' may be a 'director' under [Section 8 of the Clayton Act] in certain circumstances," as holding otherwise would "undermine Section 8's [statutory] intent" and "exalt[] form over substance." Statement at 7 (citing *Square D Co.* v. *Schneider S.A.*, 760 F. Supp. 362, 366 (S.D.N.Y. 1991)).

To the extent the Agencies mean that a board observer lacking all power to act as a director may nonetheless be covered by Section 8, that interpretation finds no support in the statutory text or in relevant case law. Section 8 proscribes only simultaneous service as a "director or officer" of competing corporations—a person eligible to "act for such corporation[s] in such capacit[ies]." *See* 15 U.S.C. § 19(a)(1), (b). As the OpenAI Defendants explained in their Opposition, *see* Opp. at 16,

---

[3] Plaintiffs also fail to demonstrate antitrust standing (*see* Opp. at 14)—an element that has no place in government enforcement actions and as to which the Agencies offer no view.

it is a "fundamental canon of statutory construction" that "unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning." *LVRC Holdings LLC* v. *Brekka*, 581 F.3d 1127, 1132-33 (9th Cir. 2009). "When the term 'director' is used in reference to a corporation"—as it is in Section 8—"the term plainly means a person who is a member of the governing board of the corporation and participates in corporate governance." *In re Kunz*, 489 F.3d 1072, 1077-78 (10th Cir. 2007). A limited "observer" with no vote or voice in board decisions is not a "director," as courts have uniformly held in other contexts. *See* Opp. at 16-17. She lacks the capability to "act for [the] corporation" whose board proceedings she observes. 15 U.S.C. § 19(b).

*Square D Co.* v. *Schneider S.A.* does not support a different analysis or result. There, the court held that a plaintiff stated a Section 8 claim where the defendant, a hostile competitor, attempted to install as directors on the plaintiff's board several of its "agents." 760 F. Supp. at 364, 367. The court held, solely "[f]or purposes of deciding [a] motion to dismiss," that Section 8 applied because it would "exalt form over substance" to allow the defendant to dominate the plaintiff corporation's board by populating it with representatives who were not the defendant's "officers or directors" but delegates taking instruction from the defendant. *Id.* at 366-67. Crucially, there was no dispute in *Square D* that the delegates were to be "directors," in name and in fact, on the plaintiff's board, *id.* at 364, and "eligible . . . to act" as such, 15 U.S.C. § 19(a)(1), (b). The whole point of the planned infiltration was for the delegates to vote—as directors—in favor of the defendant's takeover bid. 760 F. Supp. at 364. Here, by contrast, Plaintiffs do not even allege (much less prove) that Templeton had the power to act as a director or officer of OpenAI or that she was an "agent" of OpenAI. And nothing about *Square D* suggests that merely "obtain[ing] entry to a meeting" of the OpenAI board as an observer satisfies the statutory test. Statement at 7.

### III.  ENFORCEMENT OF SECTION 8 UNDER CALIFORNIA LAW

The Agencies opine that "the Court may consider" whether the alleged board interlocks in this case amount to an "unfair method of competition" that "is contrary to Section 5 of the FTC Act," and therefore illegal under California's UCL by analogy. *See* Statement at 7-9.

This opinion has no bearing on Plaintiffs' motion, which does not seek relief based on their UCL claim. (*See* Dkt. No. 46). The OpenAI Defendants dispute the Agencies' suggestion that a

4
OPENAI DEFENDANTS' RESPONSE TO AGENCIES' STATEMENT OF INTEREST
CASE NO. 4:24-CV-04722-YGR

private plaintiff may use the UCL to challenge purported interlocks among third-party corporations under these circumstances (*see, e.g.*, *Archer* v. *United Rentals, Inc.*, 195 Cal. App. 4th 807, 815 (2011) (to establish standing under the UCL, plaintiffs must demonstrate that they "lost money or property" due to alleged misconduct))—a point that the incoming FTC Chair likewise appears to dispute.[4] But that dispute, and the Agencies' exposition on this matter, are irrelevant to the motion.

## IV.    REQUIREMENT OF AN "AGREEMENT" FOR A SECTION 1 BOYCOTT CLAIM

Finally, in summarizing the law of group boycotts under the Sherman Act, the Agencies say that "[t]he litigants disagree about whether the alleged fund-no-competitors edict is horizontal or vertical," but the "distinction does not preclude application of Section 1," as "per se liability under Section 1 can attach so long as there is [] a horizontal element to the alleged conspiracy." Statement at 10-11. The OpenAI Defendants do not dispute this; a *per se* unlawful group boycott can include a vertical element, so long as it also has a horizontal "rim." *See* Opp. at 10 (explaining that an alleged hub-and-spoke boycott would need both the "spokes," *i.e.*, vertical agreements between OpenAI and investors, and a "rim," *i.e.*, a horizontal agreement among the investors, to qualify for *per se* treatment). The point in dispute (and the one that matters) is different: Musk and xAI offer no evidence of *any* agreement—horizontal or "hub-and-spoke," written or oral, "formal" or "tacit" (Statement at 10-11 & n.6)—to boycott investment in xAI. Opp. at 9-11.

## CONCLUSION

Notwithstanding their misunderstanding of OpenAI's position and some of the relevant facts, the Agencies express no view on the merits of Plaintiffs' motion. Nothing in the Statement suggests Plaintiffs are entitled to the injunctive relief they seek on claims for which they have not even adequately pleaded a claim. The Court should deny Plaintiffs' motion in its entirety.

---

[4] In a concurrence dated two days before the Statement itself and styled as "Regarding the Statement of Interest Supporting Elon Musk," FTC Commissioner and Chair-Designate Andrew N. Ferguson, joined by Commissioner Melissa Holyoak, announced that he would not "have included the [Agencies'] argument regarding Section 5 of the Federal Trade Commission Act" in the Statement, in part because it does not "necessarily correctly describe the law." *See* Concurring Statement of Commissioner Andrew N. Ferguson Joined by Commissioner Melissa Holyoak Regarding the Statement of Interest Supporting Elon Musk, *Musk* v. *Altman*, 4:24-cv-04722-YGR (N.D. Cal.), Federal Trade Commission (Jan. 8, 2025), https://www.ftc.gov/system/files/ftc_gov/pdf/musk-statement-of-interest-ferguson-holyoak-concurrence.pdf.

| | |
|---|---|
| Date: January 20, 2025 | MORRISON & FOERSTER LLP |
| | */s/ Jordan Eth* |
| | JORDAN ETH (CA SBN 121617) |
| | JEth@mofo.com |
| | DAVID J. WIENER (CA SBN 291659) |
| | DWiener@mofo.com |
| | MORRISON & FOERSTER LLP |
| | 425 Market Street |
| | San Francisco, CA 94105 |
| | Telephone:   (415) 268-7000 |
| | Facsimile:   (415) 268-7522 |
| | |
| | WILLIAM SAVITT (admitted *pro hac vice*) |
| | WDSavitt@wlrk.com |
| | SARAH K. EDDY (admitted *pro hac vice*) |
| | SKEddy@wlrk.com |
| | NATHANIEL CULLERTON (admitted *pro hac vice*) |
| | NDCullerton@wlrk.com |
| | WACHTELL, LIPTON, ROSEN & KATZ |
| | 51 West 52nd Street |
| | New York, NY 10019 |
| | Telephone:   (212) 403-1000 |
| | Facsimile:   (212) 403-2000 |
| | |
| | *Attorneys for Defendants Samuel Altman, Gregory Brockman, OpenAI, Inc., OpenAI L.P., OpenAI, L.L.C., OpenAI GP, L.L.C., OpenAI OpCo, LLC, OpenAI Global, LLC, OAI Corporation, LLC, OpenAI Holdings, LLC, OpenAI Startup Fund Management, LLC, OpenAI Startup Fund GP I, L.L.C., OpenAI Startup Fund I, L.P., OpenAI Startup Fund SPV GP I, L.L.C., OpenAI Startup Fund SPV GP II, L.L.C., OpenAI Startup Fund SPV GP III, L.L.C., OpenAI Startup Fund SPV GP IV, L.L.C., OpenAI Startup Fund SPV I, L.P., OpenAI Startup Fund SPV II, L.P., OpenAI Startup Fund SPV III, L.P., OpenAI Startup Fund SPV IV, L.P., Aestas Management Company, LLC, and Aestas LLC* |