1 | RUSSELL P. COHEN (SBN 213105)
Russ.cohen@dechert.com
2 | HOWARD M. ULLMAN (SBN 206760)
Howard.ullman@dechert.com
3 | DECHERT LLP
45 Fremont Street, 26th Floor
4 | San Francisco, CA 94105
Telephone: (415) 262-4500
5 | Facsimile: (415) 262-45555

6 | NISHA PATEL (SBN 281628)
Nisha.patelgupta@dechert.com
7 | DECHERT LLP
633 West 5th Street, Suite 4900
8 | Los Angeles, CA 90071
Telephone: (213) 808-5700
9 | Facsimile: (213) 808-5760

ANDREW J. LEVANDER (admitted *pro hac vice*)
Andrew.levander@dechert.com
DECHERT LLP
Three Bryant Park
1095 Avenue of the Americas
New York, NY 10036
Telephone: (212) 698-3500
Facsimile: (212) 698-3599

JOHN (JAY) JURATA, JR. (admitted *pro hac vice*)
Jay.jurata@dechert.com
DECHERT LLP
1900 K Street, N.W.
Washington, DC 20006
Telephone: (202) 261-3300
Facsimile: (202) 261-3333

10 | *Attorneys for Defendants Microsoft Corporation,*
*Reid Hoffman, and Deannah Templeton*

11 |

12 | **UNITED STATES DISTRICT COURT**
13 | **NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

14 |

15 | ELON MUSK et al.,

16 |      Plaintiffs,

17 |   v.

18 | SAMUEL ALTMAN, et al.,

19 |      Defendants.

Case No. 4:24-cv-04722-YGR

Judge Yvonne Gonzalez Rogers

**DEFENDANTS MICROSOFT CORPORATION, REID HOFFMAN, AND DEANNAH TEMPLETON'S NOTICE OF MOTION, MOTION TO DISMISS FIRST AMENDED COMPLAINT, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**

| | |
|---|---|
| **Date:** | **May 28, 2025** |
| **Time:** | **10:00 a.m.** |
| **Place:** | **Courtroom 1 (4th Floor)** |
| | **1301 Clay St.** |
| | **Oakland, CA 94612** |

**Action filed: August 5, 2024**

1

## NOTICE OF MOTION AND MOTION

2      NOTICE IS HEREBY GIVEN THAT, on May 28, 2025, at 10:00 a.m., before Judge

3  Yvonne Gonzalez Rogers in Courtroom 1 of the U.S. District Court for the Northern District of

4  California, 1301 Clay Street, Oakland, California, Defendants Microsoft Corporation, Reid

5  Hoffman, and Deannah Templeton (the "Microsoft Defendants") will and do move this Court,

6  pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6), for an order dismissing with

7  prejudice the First Amended Complaint in this action, dated November 14, 2024.

8      This Motion is based on this Notice of Motion, the accompanying Memorandum of Points

9  and Authorities, all pleadings, records and papers on file, and such other argument and materials as

10  may be presented before the Court takes this matter under submission.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**STATEMENT OF ISSUES TO BE DECIDED**

1.      Whether Plaintiffs' Sherman Act Section 1 claim (Count 9) and their Cartwright Act Section 16720 claim (Count 11) should be dismissed for failure to adequately plead a *per se* unlawful restraint, a Rule of Reason violation, or for lack of concerted action.

2.      Whether Plaintiffs' Sherman Act Section 2 claim (Count 10) should be dismissed for failure to adequately plead sufficient market power or exclusionary conduct, including regarding any investment agreement, exclusive supply or distribution agreement, or below-cost pricing followed by a recoupment period featuring supra-competitive pricing.

3.      Whether Plaintiffs' Unfair Practices Act claim (Count 12) should be dismissed for failure to adequately plead below-cost pricing, a loss leader, or a secret payment, allowance, or unearned discount.

4.      Whether Plaintiffs' Clayton Act Section 3 claim (Count 13) should be dismissed for failure to adequately plead either an agreement relating to tangible goods or commodities, or a foreclosure of competition in a substantial share of any line of commerce affected.

5.      Whether Plaintiffs' Cartwright Act Section 16727 claim (Count 14) should be dismissed for failure to adequately plead substantial foreclosure of any relevant market.

6.      Whether Plaintiffs' Clayton Act Section 7 claim (Count 15) should be dismissed for failure to adequately plead an appreciable danger or reasonable probability of an anticompetitive merger, any acquisition by OpenAI of Microsoft assets, or that Microsoft acquired OpenAI assets through providing a service or by acquiring a non-exclusive license to OpenAI intellectual property.

7.      Whether Plaintiffs' Clayton Act Section 8 claim (Count 16) should be dismissed for failure to adequately plead a violation of the statute given that Templeton was not a Microsoft director or officer at the relevant time, that she was not an OpenAI director or officer, that Hoffman resigned from the OpenAI board within the statutory safe harbor, that no current board interlock exists, or that there is a cognizable danger of a recurrent board interlock.

8.      Whether Plaintiffs' antitrust claims (Count 9-16) should be dismissed for the additional, independent reasons that Plaintiffs have not adequately pled antitrust injury, and that Musk lacks antitrust standing.

- ii -

9.      Whether Plaintiffs' California Unfair Competition Law claim (Count 17) should be dismissed for failure to adequately plead any unlawful prong, unfair prong, or fraudulent prong violation, or that Plaintiffs have lost any money or property due to any alleged violation by the Microsoft Defendants.

10.     Whether Plaintiffs' California Unfair Competition Law claim (Count 17) should be dismissed for the additional, independent reason that, to the extent it incorporates Counts 8, 25, and 26, Plaintiffs have failed to plead fraud or aiding and abetting any fraud with the particularity required by Fed. R. Civ. P. 9(b).

11.     Whether Musk's quasi-contract claim (Count 4) should be dismissed for failure to adequately plead a quasi-contract or that Microsoft benefited from its allegedly wrongful conduct.

12.     Whether Musk's claim for tortious interference with contract (Count 5) should be dismissed for failure to adequately plead a valid contract, Microsoft's knowledge of it, Microsoft's intentional inducement of a breach, an actual breach, or resulting damage.

13.     Whether Musk's aiding and abetting claims (Counts 8, 21) and Musk's and Zillis' aiding and abetting claim (Count 24) should be dismissed for failure to adequately plead an underlying tortious act by a third party, Microsoft's knowledge that the act constituted a wrong, or substantial assistance or encouragement to so act.

14.     Whether Count 8 should be dismissed for the additional, independent reason that Plaintiffs have failed to adequately plead fraud or aiding and abetting any fraud with the particularity required by Fed. R. Civ. P. 9(b).

15.     Whether Counts 4, 5, 8, 21, and 24 should be dismissed for the additional, independent reason that Plaintiffs lack standing.

16.     Whether Plaintiffs' claims for violations of RICO Sections 1962(a)-(d) (Counts 25-26) should be dismissed for failure to adequately plead predicate acts with the necessary particularity, conduct of an enterprise, or any facts specific to Microsoft in support of the claims.

## **TABLE OF CONTENTS**

I.      INTRODUCTION ......................................................................................................... 1

II.     BACKGROUND ........................................................................................................... 2

        A.      GenAI is a Novel, Transformative Technology ............................................... 2

        B.      GenAI Is Costly to Develop, Requiring Significant Computing Resources
                and Capital ...................................................................................................... 2

        C.      Many Companies Are Developing GenAI ....................................................... 3

        D.      The Gravamen of the FAC Consists of Grievances Not Involving Microsoft ....... 3

III.    LEGAL STANDARD .................................................................................................. 4

IV.     ARGUMENT ............................................................................................................... 4

        A.      The FAC Fails to State Any Antitrust or Unfair Competition Law Claim ............ 4

                1.      The FAC Does Not State a Section 1 Claim (Count 9) or a
                        Cartwright Act Section 16720 Claim (Count 11) ..................................... 4

                        (a)     No *per se* violation ................................................................5

                        (b)     No Rule of Reason violation................................................6

                        (c)     No agreement on predatory pricing or inflated compensation........8

                        (d)     Other inchoate allegations do not constitute actionable Section 1
                                violations .............................................................................9

                2.      The FAC Does Not State a Section 2 Claim (Count 10) ......................... 10

                3.      The FAC Does Not State an Unfair Practices Act Claim (Count 12)....... 12

                4.      The FAC Does Not State a Clayton Act Section 3 Claim (Count 13)
                        or a Cartwright Act Section 16727 Claim (Count 14) ........................... 14

                5.      The FAC Does Not State a Clayton Act Section 7 Claim (Count 15)...... 15

                6.      The FAC Does Not State a Clayton Act Section 8 Claim (Count 16)...... 16

                7.      The FAC Does Not State a Section 17200 Claim (Count 17) ................. 17

                8.      xAI and Musk Fail to Adequately Allege Antitrust or UCL Injury,
                        and Musk Also Lacks Antitrust Standing (Claims 9-11, 13-17).............. 18

        B.      The FAC Fails to State Any Contract, Tort, or Aiding and Abetting Claim ........ 19

                1.      The FAC Does Not State a Quasi-Contract Claim (Count 4) .................. 19

                2.      The FAC Does Not State a Tortious Interference Claim (Count 5).......... 20

                3.      The FAC Does Not  State an Aiding and Abetting Claim (Counts 8,
                        21, 24) ................................................................................................. 21

        C.      The FAC Fails to State Any RICO Claim (Counts 25-26) ................................. 22

                1.      The FAC Does Not Allege with Particularity Predicate Offenses by
                        Microsoft ............................................................................................ 23

                2.      The FAC Does Not Allege Microsoft's Conduct in an Enterprise .......... 24

                3.      The FAC Does Not Allege a Section 1962(d) Conspiracy ..................... 25

V.      CONCLUSION ........................................................................................................... 25

1

# <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*ADT Sec. Servs., Inc. v. Security One Int'l, Inc.*,

5

  2013 WL 594298 (N.D. Cal. Feb. 14, 2013) ......................................................................... 19

6

*Am. Prof. Testing Serv., Inc. v. Harcourt, Brace, Jovanovich Legal & Prof. Publ'ns, Inc.*,

7

  108 F.3d 1147 (9th Cir. 1997) ............................................................................................ 12

8

*American Booksellers Ass'n v. Barnes & Noble, Inc.*,

9

  135 F. Supp. 2d 1031 (N.D. Cal. 2001) .............................................................................. 13

10

*Arena Rest. & Lounge LLC v. S. Glazer's Wine & Spirits, LLC*,

  2018 WL 4334631 (N.D. Cal. Sept. 10, 2018) .................................................................... 12

11

*Ashcroft v. Iqbal*,

12

  556 U.S. 662 (2009) ............................................................................................................... 4

13

*Atlantic Richfield Co. v. USA Petroleum, Inc.*,

  495 U.S. 328 (1990) ............................................................................................. 5, 7, 16, 19

14

*In re Baby Food Antitrust Litig.*,

15

  166 F.3d 112 (3d Cir. 1999) ................................................................................................... 9

16

*Bearden v. Ballad Health*,

17

  967 F.3d 513 (6th Cir 2020) ................................................................................................ 17

18

*Bell Atlantic Corp. v. Twombly*,

19

  550 U.S. 544 (2007) ..................................................................................................... 4, 9, 15

20

*Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*,

  509 U.S. 209 (1993) ............................................................................................................. 12

21

*Cascade Health Sols. v. PeaceHealth*,

22

  515 F.3d 883 (9th Cir. 2008) ............................................................................................... 12

23

*CDC Tech., Inc. v. IDEXX Lab., Inc.*,

  7 F. Supp. 2d 119 (D. Conn. 1998), *aff'd on other grounds*, 186 F.3d 74 (2d

24

  Cir. 1999) ........................................................................................................................... 7, 8

25

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*,

26

  20 Cal. 4th 163 (1999) ................................................................................................... 17, 18

27

*Chagby v. Target Corp.*,

  358 F. App'x 805 (9th Cir. 2009) ........................................................................................ 25

28

- v -

*Chandler Supply Co. v. GAF Corp.*,
   650 F.2d 983 (9th Cir. 1980) ................................................................................. 7

*In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Pracs. & Prod. Liab. Litig.*,
   295 F. Supp. 3d 927 (N.D. Cal. 2018) ................................................................ 24

*Code Rebel, LLC v. Aqua Connect, Inc.*,
   2013 WL 5405706 (C.D. Cal. Sept. 24, 2013) ................................................... 14

*Coronavirus Rep. v. Apple, Inc.*,
   85 F.4th 948 (9th Cir. 2023) ............................................................................... 23

*DeHoog v. Anheuser-Busch InBev SA/NV*,
   899 F.3d 758 (9th Cir. 2018) .............................................................................. 15

*Dejong v. Nationstar Mortg. LLC*,
   2017 WL 3968539 (N.D. Cal. Sept. 7, 2017) ..................................................... 18

*Diesel Elec. Sales & Serv., Inc. v. Marco Marine San Diego, Inc.*,
   16 Cal. App. 4th 202 (1993) ................................................................................ 13

*DocMagic, Inc. v. Ellie Mae, Inc.*,
   745 F. Supp. 2d 1119 (N.D. Cal. 2010) .............................................................. 18

*Dreamstime.com, LLC v. Google LLC*,
   54 F.4th 1130 (9th Cir. 2022) ............................................................................. 10

*Eastman v. Quest Diagnostics Inc.*,
   108 F. Supp. 3d 827 (N.D. Cal. 2015) .......................................................... 12, 17

*Eastman v. Quest Diagnostics, Inc.*,
   724 F. App'x 556 (9th Cir. 2018) ....................................................................... 14

*Eclectic Props. E., LLC v. Marcus & Millichap Co.*,
   751 F.3d 990 (9th Cir. 2014) .............................................................................. 23

*Epic Games, Inc. v. Apple, Inc.*,
   67 F.4th 946 (9th Cir. 2023) ............................................................................... 18

*Ernest W. Hahn, Inc. v. Codding*,
   423 F. Supp. 913 (N.D. Cal. 1976), *rev'd on other grounds*, 615 F.2d 830 (9th
   Cir. 1980) ............................................................................................................ 16

*Feitelson v. Google Inc.*,
   80 F. Supp. 3d 1019 (N.D. Cal. 2015) ................................................................ 14

*Ferrari* v. *Mercedes-Benz USA, LLC*,
   2016 WL 7188030 (N.D. Cal. Dec. 12, 2016) .............................................. 24, 25

*Flaa v. Hollywood Foreign Press Ass'n*,
   55 F.4th 680 (9th Cir. 2022) .......................................................................... 4

*Freeman v. San Diego Ass'n of Realtors*,
   322 F.3d 1133 (9th Cir. 2003) ....................................................................... 10

*FTC v. Qualcomm, Inc.*,
   969 F.3d 974 (9th Cir. 2020) ..................................................................... 5, 11

*Gerlinger v. Amazon.com, Inc.*,
   311 F. Supp. 2d 838 (N.D. Cal. 2004) ........................................................... 9

*In re Google, Inc. Privacy Pol'y Litig.*,
   58 F. Supp. 3d 968 (N.D. Cal. 2014) ........................................................... 18

*H.L. Hayden Co. of N.Y., Inc. v. Siemens Med. Sys., Inc.*,
   879 F.2d 1005 (2d Cir. 1989) ....................................................................... 11

*Hicks v. PGA Tour, Inc.*,
   165 F. Supp. 3d 898 (N.D. Cal. 2016), *affirmed in part, vacated in part on
   other grounds*, 897 F.3d 1109 (9th Cir. 2018) .............................................. 18

*Hokama v. E.F. Hutton & Co.*,
   566 F. Supp. 636 (C.D. Cal. 1983) .............................................................. 24

*Horiike v. Humane Soc'y of the U.S.*,
   2016 WL 11744969 (C.D. Cal. June 20, 2016) ............................................ 22

*Impac Funding Corp. v. Endresen*,
   2015 WL 13916649 (C.D. Cal. Dec. 16, 2015) ............................................ 21

*Kearns v. Ford Motor Co.*,
   567 F.3d 1120 (9th Cir. 2009) ..................................................................... 21

*Kendall v. Visa USA, Inc.*,
   518 F.3d 1042 (9th Cir. 2008) ................................................................ 5, 8, 9

*Killian Pest Control, Inc. v. HomeTeam Pest Defense, Inc.*,
   2015 WL 3766754 (N.D. Cal. June 16, 2015) ............................................. 13

*Kwikset Corp. v. Superior Court*,
   51 Cal. 4th. 310 (2011) ................................................................................ 19

*Lewis v. Sporck*,
   612 F. Supp. 1316 (N.D. Cal. 1985) ............................................................ 25

*Lorenz v. E. W. Bancorp, Inc.*,
   2016 WL 199392 (C.D. Cal. Jan. 14, 2016) ................................................ 21

- vii -

*Marcelos v. Dominguez,*
  2008 WL 2788173 (N.D. Cal. July 18, 2008) ........................................................ 21

*Maris Distrib. Co. v. Anheuser-Busch, Inc.,*
  302 F.3d 1207 (11th Cir. 2002) ........................................................................... 11

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,*
  475 U.S. 574 (1986) ............................................................................................... 9

*McCullough v. Zimmer, Inc.,*
  382 Fed. App'x 225 (3d Cir. 2010) ....................................................................... 25

*McLaughlin v. Anderson,*
  962 F.2d 187 (2d Cir. 1992) ................................................................................. 23

*Mendoza v. Procter & Gamble Co.,*
  707 F. Supp. 3d 932 (C.D. Cal. 2023) ............................................................ 19, 20

*Moore v. Kayport Package Exp., Inc.,*
  885 F.2d 531 (9th Cir. 1989) ........................................................................... 23, 24

*In re Musical Instruments & Equip. Antitrust Litig.,*
  798 F.3d 1186 (9th Cir. 2015) ............................................................................... 5

*Namer v. Bank of Am., N.A.,*
  2017 WL 1180193 (S.D. Cal. Mar. 30, 2017) ...................................................... 21

*Nat'l Specialty Pharmacy, LLC v. Padhye,*
  734 F. Supp. 3d 922 (N.D. Cal. 2024) ............................................................ 20, 21

*No Spill LLC v. Scepter Canada, Inc.,*
  2022 WL 1078435 (D. Kan. Apr. 6, 2022) ........................................................... 15

*Ohio v. Am. Express Co.,*
  585 U.S. 529 (2018) ................................................................................................ 6

*Omega Env't v. Gilbarco, Inc.,*
  127 F.3d 1157 (9th Cir. 1997) ....................................................................... 7, 8, 14

*Orion Pictures Distrib. v. Syufy Enters.,*
  829 F.2d 946 (9th Cir. 1987) ................................................................................ 10

*Pacific Bell Tel. v. Linkline Commc'ns, Inc.,*
  555 U.S. 438 (2009) ............................................................................................. 20

*Paladin Assocs., Inc. v. Mont. Power Co.,*
  328 F.3d 1145 (9th Cir. 2003) .............................................................................. 10

*Phoenix Elec. Co. v. Nat'l Elec. Contractors Ass'n,*
  867 F. Supp. 925 (D. Or. 1994) ........................................................................... 11

- viii -

*Pro Search Plus, LLC v. VFM Leonardo, Inc.*,
    2013 WL 3936394 (C.D. Cal. July 30, 2013) ........................................................ 14

*Rebel Oil Co. v. Atlantic Richfield Co.*,
    51 F.3d 1421 (9th Cir. 1995) .................................................................... 10, 11

*Renne v. Geary*,
    501 U.S. 312 (1991) ............................................................................ 17

*Rock River Commc'ns, Inc. v. Universal Music Grp., Inc.*,
    2008 WL 11338096 (C.D. Cal. Aug. 25, 2008) ........................................................ 15

*San Miguel v. HP Inc.*,
    317 F. Supp. 3d 1075 (N.D. Cal. 2018) ............................................................ 20

*Sanford* v. *MemberWorks, Inc.*,
    625 F.3d 550 (9th Cir. 2010) ..................................................................... 25

*Semegen* v. *Weidner*,
    780 F.2d 727 (9th Cir. 1985) ...................................................................... 4

*Somers v. Apple, Inc.*,
    729 F.3d 953 (9th Cir. 2013) ..................................................................... 13

*Spectrum Sports v. McQuillan*,
    506 U.S. 447 (1993) ............................................................................ 10

*State Oil Co. v. Khan*,
    522 U.S. 3 (1997) ................................................................................ 5

*Swartz v. KPMG LLP*,
    476 F.3d 756 (9th Cir. 2007) .................................................................. 22, 24

*Tanaka v. Univ. of S. Cal.*,
    252 F.3d 1059 (9th Cir. 2001) ..................................................................... 8

*TRW, Inc. v. FTC*,
    647 F.2d 942 (9th Cir. 1981) ..................................................................... 17

*Twin City Sportservice v. Charles O. Finley & Co.*,
    676 F.2d 1291 (9th Cir. 1982) ..................................................................... 7

*United States v. Arnold, Schwinn & Co.*,
    388 U.S. 365 (1967) .............................................................................. 7

*United States v. Brewbaker*,
    87 F.4th 563 (4th Cir. 2023) ...................................................................... 6

*Ebeid ex rel. United States* v. *Lungwitz*,
    616 F.3d 993 (9th Cir. 2010) ...................................................................... 4

- ix -

*United States v. Westinghouse Elec. Corp.*,
  648 F.2d 642 (9th Cir. 1981), *overruled on other grounds by FTC v. Actavis*,
  570 U.S. 136 (2013) ...................................................................................................... 7

*Universal Grading Service v. eBay, Inc.*,
  2012 WL 70644 (N.D. Cal. Jan. 9, 2012), *aff'd*, 563 F. App'x 571 (9th Cir.
  2014) ........................................................................................................................ 6

*Vinci v. Waste Mgmt., Inc.*,
  80 F.3d 1372 (9th Cir. 1996) ..................................................................................... 19

*Walter v. Drayson*,
  538 F.3d 1244 (9th Cir. 2008) ................................................................................... 24

*Weyerhaeuser Co. v. Ross-Simmons Hardwood Lumber Co.*,
  549 U.S. 312 (2007) .................................................................................................. 12

*Yari v. Producers Guild of Am., Inc.*,
  161 Cal. App. 4th 172 (2008) .................................................................................... 19

**Statutes**

Cartwright Act, Cal. Bus. and Prof. Code § 16720 ........................................................ 4, 18

Cartwright Act, Cal. Bus. and Prof. Code § 16727 ...................................................... 14, 18

Clayton Act § 3, 15 U.S.C. § 14 .......................................................................................... 14

Clayton Act § 7, 15 U.S.C. § 18 .................................................................................... 15, 16

Clayton Act § 8, 15 U.S.C. § 19 .................................................................................... 16, 17

California Unfair Competition Law, Cal. Bus. and Prof. Code Code § 17200 ................. 17, 18

California Unfair Practices Act, Cal. Bus. and Prof. Code § 17043 ................................ 12

California Unfair Practices Act, Cal. Bus. and Prof. Code § 17045 ................................ 13

Cal Bus. & Prof. Code § 17510 .......................................................................................... 22

Cal. Civ. Code § 1621 ........................................................................................................ 19

Cal. Corp. Code § 5142 ...................................................................................................... 22

RICO ........................................................................................................................ *passim*

Sherman Act ............................................................................................................. *passim*

- x -

1

**Court Rules**

2

Fed. R. Civ. P. 9(b)................................................................................ 4, 18, 21, 22, 23

3

**Other Authorities**

4

Areeda & Hovenkamp, ANTITRUST LAW ............................................................... 9, 16

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS MICROSOFT CORPORATION, REID HOFFMAN, AND DEANNAH TEMPLETON'S
NOTICE OF MOTION TO DISMISS AND MEMORANDUM IN SUPPORT                    4:24-CV-04722-YGR

1    **I.    INTRODUCTION**

2            Microsoft's collaboration with OpenAI has launched a "once in a generation" innovation

3    wave. In the past few years, billions have been invested in generative AI ("GenAI") startups.

4    Among these well-funded startups is Plaintiff xAI, a company founded by Elon Musk. Established

5    technology companies—including Google, Amazon, Apple, and Oracle—have also invested

6    massively. Competition is flourishing, bringing state-of-the-art GenAI technology to the world. In

7    the face of this vigorous competition led by Microsoft and OpenAI, Plaintiffs have launched 26

8    scattershot claims in their First Amended Complaint ("FAC") to slow Microsoft and OpenAI down.

9    But none of their claims lands.

10           Microsoft is the target of 16 of these claims, and Hoffman and Templeton are named in

11    two.[1] Yet none belong in this case. The Microsoft Defendants are strangers to the claimed

12    resentments at the core of the dispute, and Plaintiffs' efforts to drag in more parties and grievances

13    should be rejected. Plaintiffs have not adequately pled any claims against any of the Microsoft

14    Defendants. The FAC is devoid of factual specificity and substantiation, repeatedly relying on

15    unsupported "information and belief." And all claims against the Microsoft Defendants lack the

16    necessary factual or legal support, peddling in conclusory statements and labels, and omitting

17    allegations of essential elements.

18           Plaintiffs' attempt to treat Microsoft and OpenAI as one, and to fabricate competition-

19    related claims against Microsoft as obstacles to xAI's ability to compete, is exactly backward.

20    Microsoft's investments, customized computing resources, and support for a robust GenAI

21    ecosystem have helped OpenAI and many others to innovate. The result is more competition,

22    services, and opportunities for everyone. Plaintiffs cannot establish that the Microsoft Defendants

23    did anything warranting liability. The FAC's claims against the Microsoft Defendants should be

24    dismissed in their entirety.

25    _____

26    [1] Plaintiffs assert claims against Microsoft for breach of quasi-contract (Count 4), tortious
      interference (Count 5), aiding and abetting fraud (Count 8) and breach of fiduciary duty (Counts
27    21 and 24), as well as violations of the Sherman Act (Counts 9-10), Cartwright Act (Counts 11 and
      14), California competition law (Counts 12 and 17), Clayton Act (Counts 13, 15, and 16), and RICO
28    (Counts 25 and 26). The FAC also brings two of these claims—a Clayton Act board-interlock claim
      (Count 16) and the UCL claim (Count 17)—against Hoffman and Templeton.

## II.    BACKGROUND

### A.    GenAI is a Novel, Transformative Technology

GenAI has quickly captured the interest of the public and investment community. The reason is simple: GenAI, which is characterized by "its ability to process natural language inputs and generate human-like outputs," FAC ¶ 206, can solve complex problems, generate informational and media content, and automate tasks such as computer coding. *Id.* ¶ 204. It requires nothing more to operate "than [what is] required to ask a question." *Id.*¶ 206. And its applications are wide-ranging, revolutionizing fields from healthcare to the arts by accelerating drug discovery, creating stunning compositions, personalizing education, and enhancing creative processes. As the FAC explains, GenAI can be equal parts surprising ("writ[ing] a short story in the style of Shirley Jackson"), esoteric ("describ[ing] different theories on boiling an egg perfectly"), productive ("script[ing] a Python application to calculate the radius of a circle"), and inspiring ("suggest[ing] the perfect itinerary for your Roman holiday"). *Id.*¶ 206.

### B.    GenAI Is Costly to Develop, Requiring Significant Computing Resources and Capital

Although anyone can use GenAI, "[c]reating generative AI is a hugely expensive undertaking." *Id.* ¶ 222. It requires significant capital. *Id.* ¶ 95. It also requires access to massive amounts of computing power—"OpenAI's single most important raw material." *Id.* ¶ 112.

Unable to provide this necessary resource itself, OpenAI began purchasing computing resources, or "compute," from Microsoft in 2016. *Id.* ¶ 99. Generating and selling compute—which Microsoft supplies and OpenAI does not—is also "hugely expensive." *Id.* ¶¶ 218, 220. It requires Microsoft to buy and maintain "tens of thousands of computer processors," pay "highly-skilled personnel," design and operate "data centers housing its processors," and incur "significant real estate and energy expenses in operating them." *Id.* Microsoft allegedly had a 24% share of the "compute" market in 2023, behind bigger cloud providers like Amazon with 31%. *Id.* ¶ 217.

Microsoft has also provided OpenAI with needed investment capital. *Id.* ¶¶ 159, 218. In return, OpenAI licenses its GenAI technology to Microsoft. *Id.* ¶ 133.

- 2 -

### C.    Many Companies Are Developing GenAI

Microsoft's investments have helped OpenAI create cutting-edge GPT models that have attracted significant interest from users. Two months after its launch, OpenAI's ChatGPT reached 100 million monthly active users. *Id.* ¶ 210. By November 2023, two million developers were using OpenAI's service, including over 92% of Fortune 500 companies. *Id.* ¶ 211.

But OpenAI is far from the only developer in GenAI. There are numerous flagship "chatbots" (a specific type of GenAI application) that provide similar services to OpenAI's ChatGPT. *Id.* ¶ 207. These include Plaintiff xAI's Grok, Microsoft's Copilot (which uses OpenAI's technology), Google's Gemini (formerly DeepMind), Anthropic's Claude, Meta's LLaMA, Mistral AI, and Perplexity. *Id.*; *see also id.* ¶ 226 (xAI's Grok "competes directly with OpenAI's ChatGPT and Microsoft's Copilot.").

### D.    The Gravamen of the FAC Consists of Grievances Not Involving Microsoft

Plaintiffs' FAC (and the state and federal court complaints that preceded it) is grounded in a dispute over OpenAI's founding. *Id.* ¶¶ 4, 82-97. However, Musk's relationship with Altman and Brockman in OpenAI's early days predate Microsoft's commitment to invest in and provide critical computing power to OpenAI. Microsoft played no role whatsoever in OpenAI's founding in 2015; Microsoft's involvement began in September 2016. *Id.* ¶¶ 82-96, 99.

On top of that dispute, Plaintiffs now spatter half-baked antitrust and unfair competition claims, focusing on (1) alleged anticompetitive agreements between Microsoft and OpenAI relating to investment exclusivity, OpenAI's distribution of its GenAI technology, and Microsoft's supply of computing services; (2) Microsoft's alleged below-cost pricing of GenAI services and compute; (3) Microsoft's alleged control over and coordination with OpenAI; and (4) a grab-bag of miscellaneous allegations that have nothing to do with competition at all. These claims are disconnected from the reality of a dynamic marketplace and Plaintiffs do not adequately plead their essential elements.[2]

---

[2] For purposes of this Motion only, the allegations of the FAC are assumed true. However, and while unnecessary to resolve this motion, the FAC misstates fundamental facts. For example, Microsoft never agreed not to invest in OpenAI's competitors. *See* P.I. Opp. [Dkt. No. 65] at 11. Also, the FAC's allegation that Microsoft agreed to OpenAI GenAI exclusivity is inaccurate. *See,*

- 3 -

## III.  LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* An antitrust claim must also be economically plausible. *See Twombly*, 550 U.S. at 565.

In addition, any claim grounded in allegations of fraud or false representations must satisfy Rule 9(b)'s heightened pleading standard. The complaint must plead with particularity "what is false or misleading about a statement, and why it is false." *Ebeid ex rel. United States* v. *Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010) (citation omitted). And it must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen* v. *Weidner*, 780 F.2d 727, 731 (9th Cir. 1985).

## IV.  ARGUMENT

### A.    The FAC Fails to State Any Antitrust or Unfair Competition Law Claim

#### 1.    The FAC Does Not State a Section 1 Claim (Count 9) or a Cartwright Act Section 16720 Claim (Count 11)[3]

The FAC's Sherman Act Section 1 claim alleges three categories of misconduct: (1) a *per se* violation relating to an agreement not to fund competitors (FAC ¶ 331(a)); (2) exclusive agreements relating to the distribution of GenAI technology by Microsoft and the provision of

---

*e.g.*,  https://azure.microsoft.com/en-us/products/ai-model-catalog  (in addition to OpenAI, Microsoft makes available models from Microsoft, Mistral, Meta, Stability AI, Core42, Nixtla, and many others). Finally, almost daily developments further undermine the very premise of the FAC's antitrust claims. In the last week alone, there have been market-moving announcements relating to a new GenAI model from DeepSeek, *see e.g.*, 'Sputnik moment': $1tn wiped off US stocks after Chinese firm unveils AI chatbot (Jan. 27, 2025), and a massive investment in Stargate, *see* Trump announces a $500 billion AI infrastructure investment in the US (Jan. 21, 2025).

[3] The analysis under Section 16720 of the Cartwright Act, Cal. Bus. and Prof. Code § 16720, "mirrors the analysis" under Sherman Act § 1. *See Flaa v. Hollywood Foreign Press Ass'n*, 55 F.4th 680, 688 (9th Cir. 2022). Thus, if the challenged conduct does not support a Section 1 claim, it cannot support a Section 16720 claim.

computing resources to OpenAI (*id.* ¶¶ 331(b), 353, 331(d)); and (3) a miscellany of allegations drawn from other claims in the FAC. (*id.* ¶ 331(c), (e)-(q)). But these theories suffer from several defects discussed below: (a) the FAC does not allege an actionable "agreement," let alone a *per se* unlawful restraint; (b) those same allegations do not plead any actionable market foreclosure, as required by the Rule of Reason; (c) the FAC fails to allege facts to establish any agreement between Microsoft and OpenAI for predatory pricing or inflated employee compensation; and (d) the FAC presents a hodgepodge of other conduct that does not give rise to antitrust injury.[4]

### (a)    No *per se* violation

Section 1 of the Sherman Act requires proof of a "contract, combination . . . or conspiracy, in restraint of trade" that injures competition. 15 U.S.C. § 1; *see Kendall v. Visa USA, Inc.*, 518 F.3d 1042, 1047 (9th Cir. 2008). Most restraints are evaluated under the Rule of Reason; only a small set of restraints that have "such predictable and pernicious anticompetitive effect, and such limited potential for procompetitive benefit" can be "deemed unlawful *per se.*" *State Oil Co. v. Khan*, 522 U.S. 3, 10 (1997). Vertical agreements do not fall within this narrow category of *per se* unlawful restraints. *See id.* They are instead "analyzed under the rule of reason." *In re Musical Instruments & Equip. Antitrust Litig.*, 798 F.3d 1186, 1191 (9th Cir. 2015).

The FAC's only theory of a "*per se*" unlawful violation is that Altman, with "other Defendants," conditioned investments in OpenAI on investors agreeing not to invest in OpenAI's competitors. FAC ¶¶ 331(a), 201. But this claim—pled on information and belief—fails to allege the "who, what, when, where, and how" details required to adequately plead such an agreement. *See Kendall*, 518 F.3d at 1048. There can be no violation in the absence of an agreement, let alone a *per se* violation. *See id.* But even if Microsoft were part of any such imaginary agreement with OpenAI, that theory fails as a matter of law because a vertical agreement between "firms at

---

[4] All private antitrust plaintiffs must establish antitrust injury—that is, a loss that flows from an anticompetitive aspect or effect of the defendant's behavior. *See Atlantic Richfield Co. v. USA Petroleum, Inc.*, 495 U.S. 328, 334 (1990). All private antitrust plaintiffs also must establish antitrust standing, such that their injury is not remote (*i.e.*, not experienced in a different market than the defendant's conduct). *See FTC v. Qualcomm, Inc.*, 969 F.3d 974, 992 (9th Cir. 2020) (emphasizing that "prohibited conduct must be directed towards *competitors* and must be intended to injure competition" (citation omitted)).

- 5 -

1    different levels of distribution" cannot be a *per se* violation. *Ohio v. Am. Express Co.*, 585 U.S.

2    529, 541 (2018) (citation omitted). Thus, despite labeling the FAC's exclusive investment claim

3    as horizontal in nature, it clearly is an alleged vertical agreement not subject to the *per se* rule. *See*

4    P.I. Opp. [Dkt. No. 65] at 14.[5]

5    **(b)    No Rule of Reason violation**

6         The Rule of Reason applies to Section 1 claims when the *per se* rule does not. Because

7    Plaintiffs here do not allege direct evidence of anticompetitive effects (that is, in the form of

8    reduced output or supra-competitive prices), the Rule of Reason requires a "fact-specific

9    assessment" of market power and structure to assess the restraint's actual effect on competition.

10   *American Express*, 585 U.S. at 541-42. As a result, Plaintiffs must allege a "relevant market" and

11   "a substantial anticompetitive effect that harms consumers," with the defendant having market

12   power to cause such harm in that market. *Id.*; *see also Universal Grading Service v. eBay, Inc.*,

13   2012 WL 70644 (N.D. Cal. Jan. 9, 2012) at *7, *aff'd,* 563 F. App'x 571 (9th Cir. 2014) (same).

14        The FAC fails to adequately state a Rule of Reason violation because (1) the alleged facts

15   show the distribution agreements are ***not*** exclusive and competition in GenAI applications is

16   thriving, (2) alleged facts confirm there is no foreclosure in any upstream alleged market (which

17   is not even pled) for "compute" power, and (3) the alleged relevant market is facially flawed.

18        ***Purported exclusive distribution and dealing agreements.*** The FAC alleges that

19   Microsoft has exclusive rights to distribute OpenAI's GenAI technology. But the FAC itself

20   directly contradicts this claim by alleging that OpenAI sells its own services directly to consumers.

21   FAC ¶ 331(b); *see also id.* ¶¶ 174-80 (discussing OpenAI GenAI models); ¶ 211 (millions of

22   developers using OpenAI's platform); ¶ 180 (Microsoft (as well as OpenAI) sells "applications to

23   the public" based on OpenAI technology). The FAC thus fails to allege an exclusive distribution

---

25   [5] The FAC's other allegations—relating to exclusive vertical supply agreements, a "*de facto*"
26   merger, and the like—do not amount to any horizontal price-fixing or output agreement that could
     be *per se* unlawful. The same is true of the alleged predatory-pricing conspiracy because no actual
27   agreement is alleged. *See infra* at 8. But even if one were, in the dual-distribution scenario here
     (where OpenAI supplies the technology and the companies compete as to downstream products),
     any such agreement would have to be evaluated under the Rule of Reason. *See United States v.*
28   *Brewbaker*, 87 F.4th 563, 575-77 (4th Cir. 2023).

- 6 -

agreement, and Plaintiffs' claim should be dismissed for that reason alone. *Cf. United States v. Westinghouse Elec. Corp.*, 648 F.2d 642 (9th Cir. 1981) (non-exclusive license not a Section 1 violation), *overruled on other grounds by FTC v. Actavis*, 570 U.S. 136 (2013).

Even if the FAC had alleged an exclusive distribution agreement, it would not allege one that would violate Section 1. Exclusive distribution agreements do "not violate the Sherman Act" if "competitive products are readily available." *United States v. Arnold, Schwinn & Co.*, 388 U.S. 365, 376 (1967); *see also Chandler Supply Co. v. GAF Corp.*, 650 F.2d 983, 989 (9th Cir. 1980) (no violation for manufacturer to switch from one exclusive distributor to another). Here, Plaintiffs effectively concede that many GenAI technologies are not affected by the alleged agreement. FAC ¶¶ 206-207 (describing diverse GenAI applications, products, and companies). Nor does the FAC include any allegation that Plaintiff xAI cannot distribute its GenAI technology to consumers directly or otherwise; indeed, it alleges that xAI's Grok is a "flagship" product. *Id.* ¶ 207.

Nor does it matter that the FAC (falsely) alleges that Microsoft distributes only OpenAI's GenAI technology. *Id.* ¶ 353. Where competitors can reach consumers through other distribution channels, exclusive dealing does not foreclose competition "in *any* part of the relevant market." *Omega Env't v. Gilbarco, Inc.*, 127 F.3d 1157, 1163 (9th Cir. 1997). The FAC alleges that as of 2023, Microsoft held only a 30% share of a so-called GenAI market, *id.* ¶ 216, which does not rise to actionable foreclosure as a matter of law. *See Gilbarco*, 127 F.3d at 1162 (38% foreclosure insufficient); *CDC Tech., Inc. v. IDEXX Lab., Inc.*, 7 F. Supp. 2d 119, 130 (D. Conn. 1998) (50% distribution foreclosure insufficient), *aff'd on other grounds*, 186 F.3d 74 (2d Cir. 1999).[6] With ample alternate distribution channels to reach ultimate consumers available (*see, e.g.*, FAC ¶ 211), there is no foreclosure, and thus, no injury to competition. *See Atlantic Richfield*, 495 U.S. at 334.

**Purported exclusive compute supply agreement.** The FAC also alleges that OpenAI obtains its compute for training GenAI models exclusively from Microsoft. FAC ¶¶ 112, 331(d). The FAC does not, however, allege that Microsoft's exclusivity restrains trade by foreclosing

---

[6] Although *Gilbarco* is a Clayton Act case, the analysis of exclusive dealing under Section 1 of the Sherman Act is similar and looks to whether there is substantial foreclosure. *See Twin City Sportservice v. Charles O. Finley & Co.*, 676 F.2d 1291, 1302 (9th Cir. 1982).

1    access to a sufficient share of the compute required by other GenAI companies. Microsoft

2    allegedly holds only a 24% share of compute. *Id*. ¶ 217. Putting aside the lack of any allegation

3    that Microsoft's compute capacity is fully allocated to OpenAI, or that Microsoft is unable or

4    unwilling to supply compute to xAI or other GenAI companies, a 24% foreclosure is insufficient

5    to state a claim. *See Gilbarco*, 127 F.3d at 1162; *IDEXX*, 7 F. Supp. 2d at 130. The FAC also

6    makes clear that Amazon, Google, and others, including xAI, have substantial compute resources.

7    FAC ¶ 217. Because xAI can obtain compute from other providers or build its own, the FAC does

8    not sufficiently plead that xAI has suffered any antitrust injury.[7]

9        ***Plaintiffs' market definition is flawed and unsupported.*** They hypothesize a "market" for

10   GenAI models and platforms, FAC ¶ 204, citing a single outdated table from IOT Analytics. *Id*. ¶

11   216. Even at the pleading stage, this does not establish a "relevant market," which must include

12   all "goods or services that enjoy reasonable interchangeability of use and cross-elasticity of

13   demand." *Tanaka v. Univ. of S. Cal.*, 252 F.3d 1059, 1063 (9th Cir. 2001). It is unclear, for

14   example, what is meant by a market for models and platforms—as they are two entirely different

15   things. The FAC also fails to explain whether or how different models with very different

16   applications compete. FAC ¶ 206. Plaintiffs' failure to adequately define a relevant market

17   independently dooms their Rule of Reason claims.

18                  **(c)      No agreement on predatory pricing or inflated compensation**

19       Plaintiffs also suggest that Microsoft and OpenAI agreed to predatory, below-cost pricing

20   of (i) their GenAI products and (ii) compute provided to OpenAI. FAC ¶ 331(e)-(i). But Plaintiffs

21   do not allege an agreement let alone any who, what, when, where, and how facts that must be pled

22   in support. *See Kendall*, 518 F.3d at 1046-47. Moreover, even if they did allege the who, when,

23   where, and how, Plaintiffs do not allege any specific agreement on prices; they allege only that

24   OpenAI and Microsoft are each pricing GenAI and compute below their own respective costs and

25   _____

26   [7] To the extent Plaintiffs take the fallback position that the alleged *per se* investment exclusivity
     agreement alternatively violates the Rule of Reason, *see* FAC ¶ 201, that claim also fails. The
27   FAC does not allege that Microsoft or anyone else has power in some GenAI investment market
     (which the FAC does not define) or that there was sufficient foreclosure of GenAI investment
28   capital to be actionable. Once again, in the absence of foreclosure (here, of capital), the FAC fails
     to allege antitrust injury. *See supra* at 5 n.4.

DEFENDANTS MICROSOFT CORPORATION, REID HOFFMAN, AND DEANNAH TEMPLETON'S
NOTICE OF MOTION TO DISMISS AND MEMORANDUM IN SUPPORT              4:24-CV-04722-YGR

that the two have "wildly different cost structures." FAC ¶ 224. But an "agreement" that each firm price at some unspecified level below its own "wildly different" costs—where no particular price is specified or agreed to—is no agreement on price at all. *See Gerlinger v. Amazon.com, Inc.*, 311 F. Supp. 2d 838, 846, 848 (N.D. Cal. 2004) (agreement that did not set a minimum, maximum or range for prices was not a horizontal price-fixing agreement).[8] And because OpenAI is not alleged to supply compute (it instead consumes compute as an input), there is no plausible agreement with OpenAI to improperly set compute prices. *See Twombly*, 550 U.S. at 556.

Absent alleged facts showing a meeting of the minds, "parallel conduct," even if "consciously undertaken," does not make a conspiracy allegation plausible. *Id*. at 557. Such is the case here. The FAC challenges, at most, Microsoft's unilateral pricing of GenAI and compute. But a firm's own pricing is not actionable under Section 1. *See Kendall*, 518 F.3d at 1048.

Finally, the FAC alleges an agreement to pay "inflated" compensation for employees. *Id*. ¶ 331(n). But again, it provides no factual allegations or detail supporting any purported agreement. Nor does the FAC define a relevant market for this labor, as it must. And paying employees well is undeniably procompetitive.

### (d)    Other inchoate allegations do not constitute actionable Section 1 violations

Plaintiffs assert a host of other miscellaneous allegations under the umbrella of Section 1, but none supports a claim. The FAC nods to "abusing" a non-profit structure, purchasing stock, and interlocking boards as Section 1 violations but fails to sufficiently allege that any of those impact ***competition*** in a relevant market. *See, e.g.*, FAC ¶ 331(j); ¶ 331(l); ¶ 331(m). Conduct with no competition impact cannot support antitrust injury. *See supra* at 5 n.4. Similarly, FAC ¶ 331(o) challenges unspecified information exchanges, which to be actionable require specific exchange and price impact. *See, e.g.*, *In re Baby Food Antitrust Litig*., 166 F.3d 112, 125 (3d Cir. 1999).

---

[8] *See also* Areeda & Hovenkamp, Antitrust Law ("Areeda") ¶ 2007b1 ("Collusive predation would be even more difficult [than unilateral predation] to the extent that it requires the defendants *to set a predatory price by agreement*." (emphasis added)); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 590 (1986) (explaining that a predatory pricing conspiracy is "incalculably more difficult to execute" than a unilateral predation scheme).

- 9 -

The FAC pleads neither a specific exchange nor price impact. While FAC ¶ 331(p) alleges violations of promises to Musk, breach of contract is not an antitrust violation. *See Orion Pictures Distrib. v. Syufy Enters*., 829 F.2d 946, 949 (9th Cir. 1987). Nor does the FAC adequately plead a breach of contract claim (*see* Section I.A of OpenAI's Motion to Dismiss) or suggest that ***Microsoft*** breached any promises to Plaintiffs.

### 2.    The FAC Does Not State a Section 2 Claim (Count 10)

Plaintiffs' Section 2 claim alleges that Microsoft monopolized, attempted to monopolize, or conspired to monopolize the market for GenAI by engaging in the same conduct as alleged in their Section 1 claim. FAC ¶ 335. This claim, too, fails for at least four reasons. ***First***, Plaintiffs fail to allege market shares (setting aside that Plaintiffs base their allegations on nonsensical markets) sufficient to establish monopolization or attempted monopolization. ***Second***, firms cannot conspire to share a monopoly. ***Third***, the conduct alleged is not actionable under antitrust laws. And ***fourth***, the predatory pricing allegations fail to adequately plead below-cost pricing or the necessary element of a likelihood of recoupment.

Monopolization claims under Section 2 of the Sherman Act, 15 U.S.C. § 2, require showings of "monopoly power in a relevant market" and exclusionary conduct. *Dreamstime.com, LLC v. Google LLC*, 54 F.4th 1130, 1137 (9th Cir. 2022). Attempted monopolization claims require "specific intent to monopolize," a "dangerous probability" of success, and exclusionary conduct. *Spectrum Sports v. McQuillan*, 506 U.S. 447, 456 (1993). And conspiracy to monopolize claims require a "combination or conspiracy," an "overt act" in furtherance of the conspiracy, and "specific intent." *Paladin Assocs., Inc. v. Mont. Power Co*., 328 F.3d 1145, 1158 (9th Cir. 2003). The overt acts must also be "designed to effect" a specific intent to monopolize and reflect "improper" rather than benign reasons. *Freeman v. San Diego Ass'n of Realtors*, 322 F.3d 1133, 1154-55 (9th Cir. 2003) (citation omitted).

The FAC fails to adequately plead these necessary elements. It alleges that Microsoft has market shares of 24% in compute and 30% in GenAI. *Id*. ¶¶ 216-17. Even if Plaintiffs had correctly defined or supported their alleged relevant market (and they did not), those shares would be insufficient as a matter of law to establish monopolization or attempted monopolization. *See Rebel*

- 10 -

*Oil Co. v. Atlantic Richfield Co.*, 51 F.3d 1421, 1438 (9th Cir. 1995) ("[N]umerous cases hold that a market share of less than 50 percent is presumptively insufficient to establish market power . . . . When the claim involves attempted monopolization, most cases hold that a market share of 30 percent is presumptively insufficient").

Nor can Plaintiffs boost Microsoft's alleged market shares by adding them to OpenAI's. Aggregating competitors' shares in a Section 2 monopolization or attempt claim is improper. "To pose a threat of monopolization, one firm ***alone*** must have the power to control market output and exclude competition." *Rebel Oil*, 51 F.3d at 1443; *see also H.L. Hayden Co. of N.Y., Inc. v. Siemens Med. Sys., Inc.*, 879 F.2d 1005, 1018 (2d Cir. 1989) (defendants' market shares "could not be aggregated to establish an attempt to monopolize in violation of Sherman Act section 2").

Settled law also bars antitrust plaintiffs from combining market shares of firms at different distribution levels, even if the parties are alleged to be "*de facto*" merged. *See, e.g.*, *Maris Distrib. Co. v. Anheuser-Busch, Inc*., 302 F.3d 1207, 1215 (11th Cir. 2002) (market share in supply market irrelevant and cannot be imputed to the market share in the distribution market absent showing of "connection" to support such imputation). Yet that is what Plaintiffs try to do here. They define the relevant market as "generative AI models and platforms," FAC ¶ 204, but then allege that Microsoft uses OpenAI's models to create and commercialize downstream GenAI services. *Id.* ¶¶ 133, 180; *see also id.* ¶¶ 174-80, 207 (OpenAI develops GenAI models and technology). The chart in FAC ¶216 claims to show revenue shares, including both model licensing and application revenue across different market levels. But that cannot support Plaintiffs' case because a defendant must have a dangerous probability of achieving monopoly power in a ***single*** relevant market. *See supra* at 11:5-10. Plaintiffs have not plausibly made that showing.

Plaintiffs' conspiracy to monopolize claim fares no better. For one, Microsoft and OpenAI cannot conspire to share a monopoly because there is no offense of shared monopolization. *See Phoenix Elec. Co. v. Nat'l Elec. Contractors Ass'n*, 867 F. Supp. 925, 941 (D. Or. 1994).

Moreover, because Plaintiffs allege the same conduct as they do for their Section 1 claim, their Section 2 claim fails for the same reasons their Section 1 claim fails. *See Qualcomm*, 969 F.3d at 991 (If a court finds "conduct in question is *not* anticompetitive under § 1, the court need

- 11 -

1    not separately analyze the conduct under § 2.").

2         The FAC's suggestions that Microsoft sells compute to OpenAI, and GenAI to Microsoft's

3    customers, below cost fail to state a claim because they do not plead that the prices are below

4    marginal or average variable cost. *See Cascade Health Sols. v. PeaceHealth*, 515 F.3d 883, 909-

5    10 (9th Cir. 2008); *see also infra* at 13 (FAC cost allegations are wholly conclusory). The FAC

6    also fails to allege a dangerous probability of success, or that Microsoft will later raise prices

7    above competitive levels to recoup losses—necessary legal elements for a predatory pricing claim.

8    *See Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 224 (1993). "Evidence

9    of below-cost pricing is not alone sufficient to permit an inference of probable recoupment and

10   injury to competition." *Id*. at 226. But the FAC fails to plead a likelihood of "recoupment of

11   predatory losses." *Id.*

12        Finally, these same deficiencies apply to the FAC's theory of predatory bidding up of

13   employee compensation, FAC ¶ 331(n). There are no alleged facts that such conduct led to

14   "below-cost pricing of [Microsoft's] outputs," a "dangerous probability" of success, or "likely

15   recoupment." *Weyerhaeuser Co. v. Ross-Simmons Hardwood Lumber Co.*, 549 U.S. 312, 325

16   (2007). And predatory hiring is not a violation when the defendant productively uses the employee

17   rather than simply denying his services to a competitor. *See Am. Prof. Testing Serv., Inc. v.

18   Harcourt, Brace, Jovanovich Legal & Prof. Publ'ns, Inc.*, 108 F.3d 1147, 1153 (9th Cir. 1997).

19              **3.    The FAC Does Not State an Unfair Practices Act Claim (Count 12)**

20        In their overlapping Unfair Practices Act ("UPA") claim, Plaintiffs again allege that

21   Microsoft provides compute to OpenAI and sells GenAI to the public at less than Microsoft's

22   costs. FAC ¶¶ 344, 346. But Plaintiffs rest this claim on impermissibly conclusory allegations.

23        To state a below-cost pricing claim under Section 17043 of the UPA, Cal. Bus. and Prof.

24   Code § 17043, as well as under Cal. Bus. and Prof. Code § 17044 (covering loss leaders), a plaintiff

25   "must plead" both the "cost of the product at issue to the defendant" and the defendant's "sales

26   prices" in the alleged market. *Arena Rest. & Lounge LLC v. S. Glazer's Wine & Spirits, LLC*, 2018

27   WL 4334631, at *10 (N.D. Cal. Sept. 10, 2018); *see Eastman v. Quest Diagnostics Inc.*, 108 F.

28   Supp. 3d 827, 838 (N.D. Cal. 2015) (same). These costs and prices must be alleged "in other than

- 12 -

1     conclusionary terms." *Killian Pest Control, Inc. v. HomeTeam Pest Defense, Inc.*, 2015 WL

2     3766754, at *3 (N.D. Cal. June 16, 2015) (citing *Fisherman's Wharf Bay Cruise Corp. v. Superior*

3     *Ct. of S.F.*, 114 Cal. App. 4th 309, 322 (2003)).

4           Plaintiffs fail to do so. Notwithstanding their assertion that "[t]he economics are obvious,"

5     FAC ¶ 222, the FAC makes only vague and conclusory allegations about costs and prices. FAC

6     ¶¶ 218-20 (concluding OpenAI allegedly spends relatively little on Microsoft products and

7     services, while compute is "hugely expensive" to produce); FAC ¶ 221 ("It is apparent . . . that

8     Microsoft is charging OpenAI far less than it costs to produce [compute]. . . ."); FAC ¶¶ 222-24

9     (GenAI is "hugely expensive" but OpenAI charges $20/month for ChatGPT Plus; Microsoft

10    charges $20/month for one Copilot Pro product; and Google charges $19.99/month for Gemini

11    Advanced). Such vague conclusions fail as a matter of law. There are no specific allegations about

12    Microsoft's actual costs to produce compute or GenAI products. Likewise absent are specifics

13    about the prices of any Microsoft products other than Copilot Pro. Nor are there any factual

14    allegations that Microsoft's revenues do not cover its costs. The monthly charge per user alone

15    does not indicate whether Microsoft's prices are below any measure of cost. And the allegation

16    that Google—not an alleged participant in any below-cost pricing scheme—charges a similar price

17    per user (FAC ¶ 224) further undermines the plausibility of Plaintiffs' below-cost pricing claims.

18    *See Somers v. Apple*, *Inc.*, 729 F.3d 953, 964 (9th Cir. 2013) (finding the plaintiff's claim

19    "implausible in the face of contradictory market facts alleged in [plaintiff's] complaint").[9]

20          Finally, to the extent Plaintiffs attempt to allege a secret rebate/allowance claim under

21    Section 17045 regarding Microsoft's provision of compute to OpenAI (FAC ¶ 348), that fails on

22    multiple grounds. ***First***, the FAC does not allege any "secret" allowances, rebates, refunds, or

23    commissions, as there is no "secret" since Plaintiffs purport to know and plead the essential terms

24    of Microsoft's agreement to supply compute to OpenAI. FAC ¶¶ 218-21; *Diesel Elec. Sales &*

25    *Serv., Inc. v. Marco Marine San Diego, Inc.*, 16 Cal. App. 4th 202, 212 (1993). And there are no

26

27

28

---

[9] Separately, Plaintiffs fail to properly allege a causal connection between the purported below-cost pricing and some loss of anticipated revenue. That warrants dismissal of any claim for damages, too. *See American Booksellers Ass'n v. Barnes & Noble, Inc.*, 135 F. Supp. 2d 1031, 1043 (N.D. Cal. 2001).

allegations that any discounts were "unearned." To the contrary, Plaintiffs admit that Microsoft receives substantial value from OpenAI's licensed technology. FAC ¶ 349. **Second**, a Section 17045 plaintiff must also show "injury" to claim damages, *see Diesel*, 16 Cal. App. 4th at 212, which the FAC fails adequately to do. **Third**, Section 17042(c) excepts price differences between customers "in different functional classifications" from Section 17045's reach. Other compute customers that do not research, create, and license GenAI technology are not in the same classification as OpenAI.

### 4. The FAC Does Not State a Clayton Act Section 3 Claim (Count 13) or a Cartwright Act Section 16727 Claim (Count 14)[10]

Plaintiffs challenge the same purported exclusive vertical agreements relating to OpenAI's licensing of GenAI and Microsoft's supply of compute, discussed *supra* at 6, under Section 3 of the Clayton Act. But that statute does not apply to technology licenses. By its plain language, Section 3 of the Clayton Act applies only to agreements for tangible goods or commodities. *See* 15 U.S.C. § 14; *Pro Search Plus, LLC v. VFM Leonardo, Inc.*, 2013 WL 3936394, at *5 (C.D. Cal. July 30, 2013) (citing *Hudson Valley Asbestos Corp. v. Tougher Heating & Plumbing Co.*, 510 F.2d 1140, 1145 (2d Cir.1975)). GenAI software models and services (along with compute) are neither, so Section 3 does not apply. *See Feitelson*, 80 F. Supp. 3d at 1033-34 (non-exclusive license to reproduce and distribute Google Apps not a "commodity"); *Code Rebel, LLC v. Aqua Connect, Inc.*, 2013 WL 5405706 (C.D. Cal. Sept. 24, 2013) (licensed software not a "commodity").

Further, even if the statute did reach technology licenses, the claim here would still fail because Section 3 requires a showing that an exclusive dealing agreement has injured competition by foreclosing competition in a substantial share of an affected market, which the FAC does not. *See Eastman v. Quest Diagnostics, Inc.*, 724 F. App'x 556, 558 (9th Cir. 2018); *Gilbarco*, 127 F.3d at 1162 (same); *see also supra* at 6 (discussing the Section 1 claim).

---

[10] Section 16727 of the Cartwright Act, Cal. Bus. and Prof. Code § 16727, is based on Clayton Act Section 3. *See Feitelson v. Google Inc.*, 80 F. Supp. 3d 1019, 1033 (N.D. Cal. 2015). Thus, if the Clayton Section 3 claim fails, the Section 16727 claim also fails.

5.        **The FAC Does Not State a Clayton Act Section 7 Claim (Count 15)**

Plaintiffs claim that Microsoft violated Section 7 of the Clayton Act by acquiring stock and assets of OpenAI, and that OpenAI acquired Microsoft assets, lessening competition or creating a monopoly in the GenAI market. FAC ¶¶ 361-362. But these allegations of stock acquisition and control are entirely conclusory. And Plaintiffs fail to adequately allege any harm to competition, let alone to them.

Section 7 only applies to acquisitions of stock, share capital, or assets, 15 U.S.C. § 18. To state a claim under Section 7 a plaintiff must "establish a *prima facie* case that a merger is anticompetitive," meaning it creates an "appreciable danger" or "reasonable probability" of anticompetitive effects in the relevant market. *DeHoog v. Anheuser-Busch InBev SA/NV*, 899 F.3d 758, 763 (9th Cir. 2018) (citation omitted).

Plaintiffs allege (incorrectly) that Microsoft acquired some OpenAI stock, FAC ¶ 361, and therefore effectively controls OpenAI. Yet Plaintiffs allege no ***facts*** that the acquisition of stock resulted in Microsoft's control of OpenAI, influence over OpenAI's competitive products, or access to confidential competitive information. Under *Twombly*, this is not enough. Without such control or influence, there is no appreciable danger or reasonable probability of anticompetitive effects from any acquisition. Additionally, as discussed *infra* at 18, the FAC fails to allege such anticompetitive effects more generally.

Aside from Microsoft's alleged acquisition of OpenAI stock, the FAC alleges two other "assets" that were supposedly acquired by one party or the other: (1) OpenAI's acquisition of compute from Microsoft; and (2) Microsoft's non-exclusive (because OpenAI also sells GenAI apps based on its own IP) license for the use of OpenAI's IP. FAC ¶¶ 211, 361-362. Neither allegation is an acquisition governed by Section 7. As to the first, other paragraphs of the FAC make clear that Microsoft merely supplies compute ***services*** to OpenAI as opposed to selling "assets." *See id.* ¶ 220 (Microsoft "buy[s] and maintain[s] . . . tens of thousands of computer processors" and "sells and/or rents" compute (a service) to OpenAI). Moreover, a ***non-exclusive*** license for OpenAI's IP (because OpenAI retains those some rights for its own competitive use)

- 15 -

is, by definition, not a transfer of assets.[11] Thus, the FAC fails to plead any acquisition of assets that supports a Section 7 claim. *See Ernest W. Hahn, Inc. v. Codding*, 423 F. Supp. 913, 919 (N.D. Cal. 1976) ("Since the joint venture here is a partnership agreement (involving the acquisition of neither the stock nor the assets of a corporation), it cannot be the basis of a violation of Clayton Act Section 7."), *rev'd on other grounds*, 615 F.2d 830 (9th Cir. 1980).[12]

### 6.    The FAC Does Not State a Clayton Act Section 8 Claim (Count 16)

Plaintiffs allege impermissible board interlocks involving Templeton and Hoffman. FAC ¶¶ 369-375. But they cannot plead around the fact that Templeton was never an officer or director of Microsoft or OpenAI, and that Hoffman resigned from OpenAI's Board almost two years ago without violating any of Section 8's requirements.

To state a claim under Clayton Act Section 8, a plaintiff must show that the same person is concurrently serving as a director or officer of two competing corporations. *See* 15 U.S.C. § 19. The statute, however, has several important limitations or exceptions. For one, Section 8 applies only to persons who qualify as an "officer or director" of each company—and an "officer" is defined as an "officer elected or chosen by the Board of Directors." *Id.* § 19(a)(4). For another, under § 19(b), after firms' sales of competing products exceed a minimum amount as defined by the statute, there is a one-year grace period for directors or officers to resign.

Templeton does not fit the bill. She was neither a Microsoft director nor Section 8 officer at the relevant time, nor was she a voting OpenAI Board member. FAC ¶ 371. Instead, she was a non-voting observer outside the scope of Section 8, and she relinquished that role in July 2024. *Id*.

For his part, Hoffman at the very least falls within Section 8's one-year safe harbor

---

[11] *See Rock River Commc'ns, Inc. v. Universal Music Grp., Inc*., 2008 WL 11338096, at *3 n.4 (C.D. Cal. Aug. 25, 2008) (deferring determination of issue but citing FTC–DOJ IP Guidelines as support for conclusion that non-exclusive licenses are not Section 7 acquisitions); *No Spill LLC v. Scepter Canada, Inc*., 2022 WL 1078435, at *6 (D. Kan. Apr. 6, 2022) (dismissing Section 7 claim in part because a non-exclusive license does not give rise to anticompetitive harm). *See also* Areeda ¶ 1202g (ongoing supply contracts are subject to Section 3, not Section 7).

[12] Finally, xAI and Musk cannot challenge concentration in GenAI and resulting supra-competitive prices because xAI competes with OpenAI and thus benefits from any such alleged scheme. *See Atlantic Richfield Co.*, 495 U.S. at 337 (competitor lacks standing to complain about conspiracy to charge higher prices).

- 16 -

following the two firms' entering into competition. The FAC alleges that ChatGPT had little commercial value until March 14, 2023. *Id.* ¶¶ 174-179. Hence, there was no commercial activity before that date that could conceivably compete with Microsoft. *See also id.* ¶ 205 (competitive field is GenAI, which does not include AI). And Hoffman stepped off the OpenAI Board that same month. *Id.* ¶ 163 n.8. That forecloses any Section 8 liability.

Further, Plaintiffs' bare complaint about a board interlock (which ended long before they brought this claim) also rings hollow. The FAC fails to establish that the interlock's mere alleged existence caused any injury to them, let alone competition itself. That failure to allege injury-in-fact mandates dismissal for lack of Article III standing. *See Bearden v. Ballad Health*, 967 F.3d 513, 518 (6th Cir 2020); *see also Renne v. Geary*, 501 U.S. 312, 320-21 (1991) (past exposure to illegal conduct does not itself give rise to Article III standing).

Nor can vague allegations about an unspecified risk of "information exchanges" salvage Plaintiffs' claim, as Section 8 is narrowly tailored to reach only certain board or officer interlocks. And because neither Hoffman nor Templeton currently serves on the OpenAI Board or did at the time the FAC was filed (FAC ¶¶ 163 n.8, 371), there is no basis for injunctive relief. *See TRW, Inc. v. FTC*, 647 F.2d 942, 954 (9th Cir. 1981) (where director resigned, even though director frequently served on corporate boards and his company had commercial interests, there was no "cognizable danger of a recurrent violation").

### 7.    The FAC Does Not State a Section 17200 Claim (Count 17)

By its own terms, Cal. Bus. and Prof. Code § 17200 prohibits unlawful, unfair, or fraudulent business acts or practices. The "unlawful" prong prohibits business practices forbidden by law. *See Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999). As discussed above (and in Sections B and C, *infra*), the FAC pleads no violation of other laws. For that reason, its Section 17200 unlawful prong claim fails. *See Eastman*, 108 F. Supp. 3d at 838 (unlawful and unfair prong claims "are derivative of plaintiffs' monopolization and UPA claims and fail for the same reasons as those claims").

Under the "unfair" prong, competitors such as xAI must establish conduct that threatens an incipient antitrust violation, violates the policy or spirit of an antitrust law because its effects

- 17 -

1  are comparable to a violation, or significantly threatens or harms competition. *See Cel-Tech*, 20

2  Cal. 4th at 187. Courts routinely dismiss unfair prong claims by competitors when the underlying

3  antitrust claims are deficient. *See Hicks v. PGA Tour, Inc.*, 165 F. Supp. 3d 898, 911 (N.D. Cal.

4  2016) ("where the same conduct alleged to be unfair under the UCL is also alleged to be a violation

5  of another law, the UCL claim rises or falls with the other claims."), *affirmed in part, vacated in*

6  *part on other grounds*, 897 F.3d 1109 (9th Cir. 2018); *DocMagic, Inc. v. Ellie Mae, Inc.*, 745 F.

7  Supp. 2d 1119, 1147 (N.D. Cal. 2010) ("Where . . . the same conduct is alleged to support both a

8  plaintiff's federal antitrust claims and state-law unfair competition claim, a finding that the

9  conduct is not an antitrust violation precludes a finding of unfair competition." (quoting

10  *LiveUniverse, Inc. v. MySpace, Inc.*, 304 F. App'x 554, 557 (9th Cir. 2008))). To the extent xAI

11  asserts an unfair prong claim, it should be dismissed because it challenges the same conduct as the

12  FAC's antitrust claims.[13]

13  Turning to Section 17200's "fraudulent" prong, the FAC alleges no misstatement or

14  misrepresentation by the Microsoft Defendants. And there is no alleged conduct by the Microsoft

15  Defendants that is likely to deceive the public, which is required for a UCL fraudulent prong claim.

16  *See Dejong v. Nationstar Mortg. LLC*, 2017 WL 3968539, at *5 (N.D. Cal. Sept. 7, 2017) (quoting

17  *Lueras v. BAC Home Loans Servicing, L.P.*, 221 Cal. App. 4th 49, 81 (2013)).[14]

18  ### 8.  xAI and Musk Fail to Adequately Allege Antitrust or UCL Injury, and Musk Also Lacks Antitrust Standing (Claims 9-11, 13-17)

19

20  Finally, and as further articulated in Section VI.A of OpenAI's Motion to Dismiss, as to

21  the federal antitrust claims and those under Sections 16720 and 16727, xAI and Musk fail to

22  adequately allege ***any*** harm to competition from the purported investment or exclusive

23

---

24  [13] *Epic Games, Inc. v. Apple, Inc.*, 67 F.4th 946, 1001 (9th Cir. 2023), is not to the contrary. There, the Sherman Act claims failed after trial because of plaintiff's failure to prove a less-viable

25  alternative, *see id*. at 964, not because of a categorical legal bar. Here, on a motion to dismiss, the FAC fails to adequately allege Sherman Act or other statutory violations. That includes the alleged

26  Section 8 interlock, for which xAI lacks standing even under the UCL. *See infra* at 19.

[14] To the extent Count 17 incorporates the allegations in Count 8 (aiding and abetting fraud) or the

27  RICO claims in Counts 25-26, that also fails because any claim under the UCL averring fraud must meet Rule 9(b)'s heightened pleading requirement, which the FAC does not. *See In re*

28  *Google, Inc. Privacy Pol'y Litig.*, 58 F. Supp. 3d 968, 984 (N.D. Cal. 2014).

distribution/supply agreements, unilateral pricing, or the other miscellaneous challenged conduct. *See Atlantic Richfield*, 495 U.S. at 334. This is an additional, independent reason to dismiss with prejudice Claims 9-11 and 13-16 with respect to xAI and Musk. (Zilis does not assert any antitrust or unfair competition claims.) Further, Musk sues in his individual capacity as an owner or founder of co-Plaintiff xAI, FAC ¶ 9, but shareholders lack antitrust standing. *See Vinci v. Waste Mgmt., Inc.*, 80 F.3d 1372, 1375 (9th Cir. 1996) (former shareholder of defunct firm lacked antitrust standing to sue for injuries to the firm; even a sole shareholder lacks standing). As to Musk, claims 9-11 and 13-16 fail for this reason as well.

The UCL also has an injury requirement. A private UCL plaintiff must show loss of money or property because of defendant's alleged unlawful conduct to have standing to sue. *See Kwikset Corp. v. Superior Court*, 51 Cal. 4th. 310, 322 (2011). But, for all the reasons explained above in connection with the antitrust claims, neither xAI nor Musk has sufficiently pled an injury, and Zilis does not assert the Count 17 UCL claim.

### B.    The FAC Fails to State Any Contract, Tort, or Aiding and Abetting Claim

#### 1.    The FAC Does Not State a Quasi-Contract Claim (Count 4)

Count 4 alleges that OpenAI wrongfully obtained Musk's donations by misrepresenting that it was developing AI/AGI "for the public's benefit." FAC ¶ 280. The FAC, however, fails to allege any bad act *by Microsoft* or any improper benefit received. An implied contract is an agreement "the existence and terms of which are manifested by conduct" rather than words. Cal. Civ. Code § 1621. But a plaintiff must still plead mutual assent and consideration. *See Yari v. Producers Guild of Am., Inc.*, 161 Cal. App. 4th 172, 182 (2008). As explained in Section I.B of OpenAI's Motion to Dismiss, Plaintiffs do neither.

To the extent that Plaintiffs seek unjust enrichment, courts treat unjust enrichment as a quasi-contract claim for restitution. *See, e.g., Mendoza v. Procter & Gamble Co.*, 707 F. Supp. 3d 932, 945 (C.D. Cal. 2023). It is "[f]undamental" to such claims that "a person is not permitted to profit by his *own* wrong." *ADT Sec. Servs., Inc. v. Security One Int'l, Inc.*, 2013 WL 594298, at *1 (N.D. Cal. Feb. 14, 2013) (emphasis in original). Thus, to withstand dismissal on this claim, the FAC must allege that Microsoft, *through its own acts*, received a benefit that came at Musk's

- 19 -

1    expense. *See Mendoza*, 707 F. Supp. 3d at 945.

2              Plaintiffs' claim cannot be squared with these principles. ***First***, Microsoft did not commit

3    any bad act. While the FAC alleges that Altman, "in concert with other Defendants," solicited

4    capital and resources under false pretenses for charitable purposes, it does not allege that Microsoft

5    participated, coordinated with, or controlled OpenAI in these acts. FAC ¶ 4. At most, the FAC

6    alleges that Microsoft "obtained leverage" over OpenAI by offering discounted cloud compute.

7    *Id.* at ¶ 98. But this is hardly a bad act—it is procompetitive. *See Pacific Bell Tel. v. Linkline*

8    *Commc'ns, Inc.*, 555 U.S. 438, 451 (2009) (prices above cost are lawful). In fact, Musk approved

9    the deal, FAC Ex. 10 at 2 ("Fine by me …"), and subsequently donated nearly 50 times to OpenAI.

10   FAC ¶ 489. Even after Microsoft and OpenAI formed their partnership in July 2019, *Id*. at ¶ 112,

11   Musk made 14 more donations and continued paying OpenAI's office rent until 2020. *Id.* at ¶¶

12   489-90. ***Second***, there is no allegation that Microsoft benefited from its "own wrong." *Id.* ¶ 281.

13   Nor does the FAC mention a benefit that should have accrued to Musk but did not.

14                    **2.      The FAC Does Not State a Tortious Interference Claim (Count 5)**

15             Plaintiffs allege that Microsoft interfered with Musk's alleged contract with OpenAI and

16   Altman. To plead tortious interference, the FAC must allege a valid Musk/OpenAI contract,

17   Microsoft's knowledge of it, Microsoft's intentional inducement of a breach or disruption of the

18   contract, actual breach or disruption, and resulting damage. *See San Miguel v. HP Inc.*, 317 F.

19   Supp. 3d 1075, 1094 (N.D. Cal. 2018). Musk neither had nor has a contract with OpenAI. *See*

20   Section I.A of OpenAI's Motion to Dismiss. Thus, Microsoft could not have known about or

21   interfered with it. Musk's tortious interference claim must be dismissed for that reason alone.

22             Even if a contract existed, the FAC would still fail to allege how Microsoft induced a

23   breach. The FAC vaguely claims that Microsoft "unlawfully exploited its position of power." *Id*.

24   ¶ 288. But that does not cut it, as that fails to demonstrate an intent to breach or disrupt. *See Nat'l*

25   *Specialty Pharmacy, LLC v. Padhye*, 734 F. Supp. 3d 922, 928 (N.D. Cal. 2024) (vague allegation

26   that defendants interfered with contract insufficient to withstand dismissal). The FAC also

27   mentions Microsoft's exclusive deal with OpenAI and status as "primary current funder" but does

28   not explain how these interfered with any contract. FAC ¶ 288. Nor could it. Providing discounted

- 20 -

resources and funding only benefits OpenAI in advancing its mission. The FAC then alleges that Defendants siphoned the non-profit's assets "into [their] for-profit apparatus," *id.*, yet it never clearly explains how Microsoft was involved and relies only on vague and conclusory allegations. A claim must "clearly allege which defendants interfered and how." *Padhye*, 734 F. Supp. 3d at 928. The FAC does not do so.

### 3.    The FAC Does Not State an Aiding and Abetting Claim (Counts 8, 21, 24)

Musk asserts several aiding and abetting claims against Microsoft alleging that Microsoft assisted OpenAI to commit fraud and breach fiduciary duties to Musk. (Zillis joins Count 24.) Such claims require an underlying tortious act by a third party, knowledge that the act constituted a wrong, and substantial assistance or encouragement to so act. *See Marcelos v. Dominguez*, 2008 WL 2788173, at *8 (N.D. Cal. July 18, 2008). The FAC does not adequately plead any of these elements. Count 8 (aiding and abetting fraud) summarily asserts that Microsoft knew that Altman and Brockman were scheming to defraud Musk, because "on information and belief," Microsoft conducted due diligence requiring review of certain OpenAI documents and knew the conditions of Musk's donations. FAC ¶ 323. Such "[b]oilerplate and conclusory allegations are insufficient to establish that a [defendant] had actual knowledge" of a third party's breach of fiduciary duty. *Namer v. Bank of Am., N.A.*, 2017 WL 1180193, at *5 (S.D. Cal. Mar. 30, 2017). Merely alleging that an investigation by a third party "would have set off alarm bells" does not plead knowledge of wrongdoing. *Lorenz v. E. W. Bancorp, Inc.*, 2016 WL 199392, at *8 (C.D. Cal. Jan. 14, 2016).

Even worse are the FAC's generalized allegations of substantial assistance. FAC ¶ 325. These fall short of meeting Rule 9(b)'s heightened pleading standard for fraud claims, which require plaintiffs to specifically plead the "who, what, when, where, and how of the misconduct charged." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009); *see also Impac Funding Corp. v. Endresen*, 2015 WL 13916649, at *4 (C.D. Cal. Dec. 16, 2015) (applying the Rule 9(b) standard to aiding and abetting fraud claim). Although the FAC alleges that the For-Profit Entities and Microsoft "provid[ed] the corporate entities necessary to loot OpenAI," "draft[ed] and execut[ed] exclusive licensing and other contracts contrary to the purpose of OpenAI," and

- 21 -

"forc[ed] the pursuit of profits over safety and transparency," *id.* at ¶ 325, it is unclear which, if any, of these allegations pertain to Microsoft rather than the For-Profit Entities. That is textbook group pleading. A complaint cannot "merely lump multiple defendants together;" plaintiffs are required to "differentiate their allegations when suing more than one defendant." *Swartz v. KPMG LLP*, 476 F.3d 756, 764-65 (9th Cir. 2007) (cleaned up). The FAC also fails to specify when and where the acts occurred or how they assisted Altman or Brockman in their purported fraud. Indeed, their names are not even mentioned in this context.

The FAC's allegation that Musk was "directly and proximately injured" (FAC ¶ 326) fares no better. That is because it fails to detail the nature and extent of the underlying harm and is time-barred. *See* Section II.A of OpenAI's Motion to Dismiss.

As to Count 21 (aiding and abetting Altman's and Brockman's breach of fiduciary duty to Musk under Cal Bus. & Prof. Code § 17510), Musk has no standing to pursue that claim. Only a member, officer, or director of a non-profit, a party with a reversionary, contractual, or property interest in the entity's assets, or the Attorney General (or a relator) has standing to sue a non-profit for breach of trust under Cal. Corp. Code § 5142. *See Horiike v. Humane Soc'y of the U.S.*, 2016 WL 11744969, at *16-17 (C.D. Cal. June 20, 2016). Musk is none of these. His recycled allegations of substantial assistance suffer from the same deficiencies discussed above. And these same flaws apply equally to Count 24 (aiding and abetting breach of fiduciary duty to OpenAI) since it includes no new allegations that satisfy the aiding and abetting elements, and Musk lacks standing on the underlying derivative claim (Count 22). *See* Section V.A of OpenAI's Motion to Dismiss.

### C.    The FAC Fails to State Any RICO Claim (Counts 25-26)

Plaintiffs have rehashed their RICO claims from their prior complaint against Defendants Altman, Brockman, and the OpenAI For-Profit Entities, merely adding Microsoft without providing any factual details about its alleged involvement. This complete lack of factual basis falls far short of the exacting requirements for pleading a RICO claim. Plaintiffs' RICO claims against Microsoft fail for three basic reasons, discussed below.

1

2

**1.    The FAC Does Not Allege with Particularity Predicate Offenses by Microsoft**

3

4

5

6

7

8

9

10

11

12

The RICO statute requires plaintiffs to plead "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as 'predicate acts') (5) causing injury to plaintiff's business or property." *Coronavirus Rep. v. Apple, Inc.*, 85 F.4th 948, 958 (9th Cir. 2023) (citation omitted). When the pattern of racketeering activity alleged is based on wire fraud, plaintiffs must plead, with heightened particularity, "(A) the formation of a scheme to defraud, (B) the use of the . . . wires in furtherance of that scheme, and (C) the specific intent to defraud." *Eclectic Props. E., LLC* v. *Marcus & Millichap Co.,* 751 F.3d 990, 997 (9th Cir. 2014). Plaintiffs cannot rely on vague group pleading to discharge this burden. *See id.* In other words, they cannot lump parties together as "defendants" without specifying who did what. They must specifically allege at least two predicate acts by Microsoft and its intent to defraud. *See id.*

13

14

15

16

17

18

19

20

21

22

23

24

25

Plaintiffs base their RICO claim on alleged wire fraud predicate offenses—emails between Altman, Brockman, and Musk involving "repeated misrepresentations" to induce Musk's "financial and other contributions" to OpenAI, and allegedly false online marketing statements. FAC ¶¶ 486-87, 493. As detailed in Section II.C of OpenAI's Motion to Dismiss, Plaintiffs have not sufficiently pled wire fraud as a RICO predicate against any Defendant, much less with respect to Microsoft. Plaintiffs shoehorn Microsoft into their prior complaint against Altman and Brockman, merely appending "and Microsoft" to these allegations without a single new "fact" about Microsoft that satisfies the requirement to plead predicate acts ***by Microsoft***.[15] This does not suffice, especially under Rule 9(b)'s heightened standard. The predicate act allegations of fraud must identify "the role of each defendant in each scheme," which Plaintiffs fail to do. *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 541 (9th Cir. 1989); *see also McLaughlin v. Anderson*, 962 F.2d 187, 192 (2d Cir. 1992) ("the bare minimum of a RICO charge is that a defendant personally committed or aided and abetted the commission of two predicate acts").

26

Further, Plaintiffs rely on vague group pleading to implicate Microsoft in actions allegedly

27

28

---

[15] *Compare, e.g.*, Original Compl. ¶ 207, *with* FAC ¶ 492 (merely adding "acting in concert with . . . Microsoft"); Original Compl. ¶ 253, *with* FAC ¶ 513 (same).

1    taken by others. FAC ¶¶ 486, 503, 505. This again falls far short of the heightened pleading

2    standard for fraud, as Plaintiffs must "attribute specific conduct to individual defendants." *Moore*,

3    885 F.2d at 541; *see also Hokama v. E.F. Hutton & Co*., 566 F. Supp. 636, 645 (C.D. Cal. 1983)

4    (plaintiffs must "distinguish among the defendants with respect to their roles in [the fraud]"). The

5    only allegations that attempt to attribute conduct directly to Microsoft lump it together with the

6    For-Profit Entities without specifying who did what. FAC ¶ 496. This impermissible group

7    pleading does not give Microsoft adequate notice of what it is accused of doing. *See Swartz*, 476

8    F.3d at 764-65; *Hokama*, 566 F. Supp. at 646. That lack of particularity warrants dismissal.

9         Nor can Plaintiffs cure this deficiency. The FAC concedes that "[t]he predicate acts by

10   Microsoft . . . were committed by Altman, Brockman, and/or representatives of such entities," not

11   Microsoft itself. *Id*. ¶ 502. There are no allegations that Microsoft knowingly participated in the

12   allegedly fraudulent communications between Altman, Brockman, and Musk regarding Musk's

13   funding of OpenAI, or in OpenAI's online marketing. (Indeed, Microsoft's involvement began in

14   September 2016, *id.* ¶¶ 82-96, 99, after OpenAI's formation.) Instead, Plaintiffs allege that

15   Defendants Altman and Brockman used Musk's allegedly ill-gotten contributions to "attract

16   massive investment by Microsoft," undercutting any suggestion of Microsoft's involvement in the

17   alleged RICO fraud. FAC ¶ 495; *see also In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Pracs.

18   & Prod. Liab. Litig.*, 295 F. Supp. 3d 927, 983 (N.D. Cal. 2018) (the complaint must "plausibly

19   support that each Defendant was a knowing participant in the scheme to defraud"). Plaintiffs' own

20   FAC makes clear that Microsoft was not a knowing participant in the alleged scheme.

21         **2.    The FAC Does Not Allege Microsoft's Conduct in an Enterprise**

22         Next, Plaintiffs fail to plead the requisite enterprise required for RICO claims. To

23   adequately plead conduct of an enterprise, Plaintiffs must allege facts establishing that Microsoft

24   was a member of a RICO enterprise and "participat[ed] in [its] operation or management," "not

25   just [its] own affairs." *Ferrari* v. *Mercedes-Benz USA, LLC*, 2016 WL 7188030, at *2 (N.D. Cal.

26   Dec. 12, 2016); *see Walter v. Drayson*, 538 F.3d 1244, 1248-49 (9th Cir. 2008) (dismissing claim

27   for failure to allege that defendants had a part in directing the enterprise's affairs). But the FAC

28   does not show that Microsoft "conducted or participated in the conduct of the 'enterprise's affair,'

- 24 -

1   not just [its] own affairs." *Ferrari,* 2016 WL 7188030, at *2. Again, Plaintiffs plead no facts

2   establishing Microsoft's involvement in the alleged enterprise, merely adding "and Microsoft" to

3   their pre-existing definition of "Altman, Brockman, and the For-Profit Entities." *Compare*

4   Original Compl. ¶¶ 228, 229, *with* FAC ¶¶ 508, 510. Such conclusory allegations are insufficient.[16]

5           **3.**        **The FAC Does Not Allege a Section 1962(d) Conspiracy**

6           Finally, Plaintiffs' Section 1962(d) claim fails because a RICO conspiracy claim cannot

7   survive when the underlying RICO claim fails. *See Sanford* v. *MemberWorks, Inc.,* 625 F.3d 550,

8   559 (9th Cir. 2010). Additionally, Plaintiffs have failed to plead any facts showing that Microsoft

9   knew about and agreed to facilitate the alleged RICO scheme. *See Lewis v. Sporck*, 612 F. Supp.

10  1316, 1325 (N.D. Cal. 1985).

11  **V.**    **CONCLUSION**

12          For the foregoing reasons, the Court should grant the Microsoft Defendants' Motion to

13  Dismiss without leave to amend.

---

[16] *See Chagby v. Target Corp.*, 358 F. App'x 805, 808 (9th Cir. 2009); *McCullough v. Zimmer, Inc.*, 382 Fed. App'x 225, 232 (3d Cir. 2010) ("Simply listing a string of individuals or entities that engaged in illegal conduct, without more, is insufficient to allege the existence of a RICO enterprise.").

DEFENDANTS MICROSOFT CORPORATION, REID HOFFMAN, AND DEANNAH TEMPLETON'S
NOTICE OF MOTION TO DISMISS AND MEMORANDUM IN SUPPORT        4:24-CV-04722-YGR

1

2    DATED: January 31, 2025                      Respectfully Submitted,

3                                                  DECHERT LLP

4

5                                            By:   /s/ Russell P. Cohen
                                                   Russell P. Cohen (SBN 213105)
6                                                  Russ.cohen@dechert.com
                                                   Howard M. Ullman (SBN 206760)
7                                                  Howard.ullman@dechert.com
                                                   45 Fremont Street, 26th Floor
8                                                  San Francisco, CA 94105
                                                   Telephone: (415) 262-4500
9                                                  Facsimile: (415) 262-45555

10

11                                                 Nisha Patel (SBN 281628)
                                                   Nisha.patelgupta@dechert.com
12                                                 DECHERT LLP
                                                   633 West 5th Street, Suite 4900
13                                                 Los Angeles, CA 90071
                                                   Telephone: (213) 808-5700
14                                                 Facsimile: (213) 808-5760

15                                                 Andrew J. Levander (admitted *pro hac vice*)
16                                                 Andrew.levander@dechert.com
                                                   DECHERT LLP
17                                                 Three Bryant Park
                                                   1095 Avenue of the Americas
18                                                 New York, NY 10036
                                                   Telephone: (212) 698-3500
19                                                 Facsimile: (212) 698-3599

20                                                 John (Jay) Jurata, Jr. (admitted *pro hac vice*)
21                                                 Jay.jurata@dechert.com
                                                   DECHERT LLP1900 K Street, N.W.
22                                                 Washington, DC 20006
                                                   Telephone: (202) 261-3300
23                                                 Facsimile: (202) 261-3333

24
                                                   *Attorney for Defendants Microsoft*
25                                                 *Corporation, Reid Hoffman, and Deannah*
                                                   *Templeton*
26

27

28