# Exhibit A

# TOBEROFF

Toberoff & Associates, P.C.
23823 Malibu Road
Suite 50-363
Malibu, CA 90265
Telephone: +1 310 246 3333

**Marc Toberoff**
Direct Line:  +1 310 736 5666
mtoberoff@toberoffandassociates.com

February 10, 2025

*Via Email: WDSavitt@wlrk.com*; SKEddy@wlrk.com

| | |
|---|---|
| Bret Taylor, Chairperson | Adebayo Ogunlesi |
| Samuel Altman, CEO | Gen. Paul Nakasone |
| Adam D'Angelo | Nicole Seligman |
| Dr. Sue Desmond-Hellman | Fidji Simo |
| Zico Kolter | Larry Summers |

OpenAI, Inc.
550 Terry A Francois Blvd.
San Francisco, CA 94158

Dear Members of the Board of OpenAI, Inc.:

On behalf of a consortium of investors (the "**Buyer**"), including X.AI Corp., Baron Capital Group, Inc., Valor Management LLC, Atreides Management, LP, Vy Fund III, L.P., Emanuel Capital Management, LLC, Eight Partners VC, LLC, and others, I am pleased to submit this letter of intent ("**Letter of Intent**") outlining their proposal to acquire all assets (the "**Business**") of OpenAI, Inc. (the "**Company**"), on substantially the proposed terms and conditions set forth in Exhibit A hereto (the "**Transaction**").  This proposal is subject in all respects to the terms and conditions of this Letter of Intent.

1. <u>Definitive Agreement</u>. The obligations of Buyer, the Company, and its Members to consummate the Transaction and related transactions are subject to and conditioned upon (a) the negotiation and execution by Company and Buyer of a mutually acceptable definitive agreement governing the Transaction (the "**Definitive Agreement**"),  and (b)  satisfaction of all conditions precedent to closing as identified in the Definitive Agreement. The rights and obligations of Buyer and the Company with respect to the Transaction and related transactions will be only as set forth in the Definitive Agreement.

2. <u>Due Diligence</u>. During the Term of this Letter of Intent, the Company will, upon reasonable advance notice and during normal business hours, (a) afford Buyer and its

representatives customary due diligence investigation of the Company and its Business including access to any assets, facilities, equipment, books, and records of the Company in connection with the Business, and (b) upon reasonable request from Buyer with respect to particular personnel involved in the Business, grant Buyer and its representatives access to such personnel.

3. Operation of the Business. From the date of execution of this Letter of Intent through the Termination Date (as defined below), Company shall use reasonable efforts to continue to operate the Business in the ordinary course consistent with past practices.

4. Expenses. Whether or not the parties enter into the Definitive Agreement with respect to the Transaction and related transactions (but subject to the terms and conditions of the Definitive Agreement if entered into), each of the parties hereto will pay its own costs and expenses (including, without limitation, legal, financial advisory, and accounting fees and expenses) incurred at any time in connection with investigating, pursuing, or consummating the Transaction.

5. Counterparts. This Letter of Intent may be executed by electronic means and in any number of counterparts, each of which when executed and delivered will be deemed to be an original and all of which counterparts taken together will constitute but one and the same instrument.

6. Integration; Modifications. This Letter of Intent supersedes any prior written or oral understanding or agreements between the parties related to the Transaction and related transactions. This Letter of Intent may be amended, modified, or supplemented only by written agreement of the parties.

7. Term. This Letter of Intent and its Term (the "**Term**") will commence on the date hereof and terminate upon the earliest to occur of the following (the "**Termination Date**"): (a) the execution and delivery of the Definitive Agreement; (b) May 10, 2025; (c) the date that the parties mutually agree in writing to terminate this Letter of Intent; or (d) upon the Buyer's receipt of the Company's written declination to negotiate and/or enter into a Definitive Agreement. Upon such termination, this Letter of Intent will be deemed null, void, and of no further force or effect, except for the respective obligations of the parties under Section 4 (Expenses), which will survive any termination of this Letter of Intent.

8. Governing Law; Consent to Jurisdiction. This Letter of Intent, the rights and obligations of the parties hereto, and any claims or disputes relating thereto, will be governed by and construed under and in accordance with the laws of the State of Texas, without regard to conflicts of law principles that would result in the application of any law other than the laws of the State of Texas. Each party to this Letter of Intent hereby irrevocably and unconditionally submits, for itself and its property, to the exclusive jurisdiction of the United States District Court for the Western District of Texas, or if such court does not have jurisdiction, any Texas State court, sitting in Austin, Texas, and any appellate court from any thereof, in any action or proceeding arising out of or relating to this Letter of Intent or for recognition or enforcement of any judgment relating thereto.

We look forward to the opportunity to work with you to consummate a transaction as quickly as possible. Please acknowledge your acceptance of and agreement to the foregoing by

signing and returning to the undersigned as soon as possible a counterpart of this Letter of Intent.

Very truly yours,

Marc Toberoff

**BARON CAPITAL GROUP, INC.**

By: _____
Name: Ron Baron
Title: Chief Executive Officer

**X.AI, CORP.**

By: _____
Name: Elon Musk
Title: Chief Executive Officer

**VALOR MANAGEMENT LLC**

By: _____
Name: Antonio Gracias
Title: Chief Executive Officer and Chief Investment Officer

**ATREIDES MANAGEMENT, LP**

By: _____
Name: Gavin Baker
Title: Managing Partner & CIO

**VY FUND III, L.P.**

By: _____
Name: George Bashforth
Title: Director

**EMANUEL CAPITAL MANAGEMENT, LLC**

By: _____
Name: Ariel Z. Emanuel
Title: Chief Executive Officer

**EIGHT PARTNERS VC, LLC**

By: _____
Name: Ian M. Shannon
Title: General Counsel


ACCEPTED AND AGREED:

**OPENAI, INC.**

By: _____
Name:
Title:

3

**Exhibit A**

The principal terms and conditions of the Transaction Buyer proposes are as follows:

1.      **Purchase Price and Terms**. Based upon Buyer's limited review of selected financial and other information available to Buyer to date, Buyer would expect to acquire all assets of the Company for approximately Ninety-Seven Billion Three Hundred Seventy-Five Million U.S. Dollars ($97,375,000,000.). Buyer's valuation is based on the Company's historical financial results as well as projections for the Company available to Buyer to date, and it assumes the Company's public representations as to its ownership and complete control of its various subsidiary or affiliated for-profit entities (the "**OpenAI For-Profit Entities**") are accurate. Buyer anticipates that one hundred percent (100%) of the total purchase price would be paid in cash. The structure of the Transaction will be determined after taking into further account tax and other legal considerations.

2.      **Source of Financing**. Buyer will not require third-party debt financing to be a contingency to closing the Transaction.

3.      **Due Diligence**. Buyer's proposal is subject to customary due diligence investigation of the Company, including of the OpenAI For-Profit Entities, satisfactory to Buyer in its sole discretion. Key due diligence activities would include, among other things, (i) a complete legal, financial (including an audit), and tax review of the Company and its OpenAI For-Profit Entities, (ii) a detailed review of the Company's financial projections, including as to the OpenAI For-Profit Entities, with a focus on the key drivers of revenue growth and EBITDA, and (iii) detailed discussions with management.

4.      **Definitive Documentation**. The final price and terms of the Transaction will depend upon, among other things, (i) the negotiation and execution of a mutually acceptable Definitive Agreement and other documentation containing such representations and warranties, conditions, covenants and agreements, indemnification, and other terms as are customary or appropriate for a transaction of this type, and (ii) receipt of any necessary consents or approvals.

5.      **Time and Process**. Buyer has extensive resources to complete due diligence and transaction documentation, as well as a decision-making process that allows Buyer to review and complete desirable transactions in a highly expeditious manner. Given Buyer's familiarity with the industry, along with its commitment to move expeditiously, Buyer's expectation would be to close within thirty (30) days of the completion of its due diligence.