Pages 1 - 34

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Yvonne Rodriguez Gonzalez, Judge

ELON MUSK, et al.,            )
                              )
          Plaintiffs,         )
                              )
  VS.                         )      NO. 4:24-CV-04722-YGR
                              )
SAMUEL ALTMAN, et al.,        )
                              )
          Defendants.         )
_____)

                         Oakland, California
                         Friday, April 4, 2025

                  **TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES:**

For Plaintiffs:
                    TOBEROFF AND ASSOCIATES, P.C.
                    23823 Malibu Road, Suite 50-363
                    Malibu, CA 90265
               **BY:  MARC TOBEROFF, ATTORNEY AT LAW**

For Defendant Microsoft:
                    DECHERT, LLP
                    45 Fremont Street, 26th Floor
                    San Francisco, CA 94105
               **BY:  RUSSELL P. COHEN, ATTORNEY AT LAW**

                    DECHERT, LLP
                    633 West 5th Street
                    U.S. Bank Tower, Suite 4900
                    Los Angeles, CA 90071
               **BY:  NISHA PATEL, ATTORNEY AT LAW**

(Appearances continued on following page.)

REPORTED REMOTELY BY:  Stephen W. Franklin, RMR, CRR, CPE
                       Official United States Reporter

```
APPEARANCES (CONT.'D):

For Defendant Microsoft:
                DECHERT, LLP
                1900 K Street, Northwest
                Washington, DC 20006
          BY:  JOHN A. JURATA, JR., ATTORNEY AT LAW

For Defendant OpenAI:
                WACHTELL, LIPTON, ROSEN & KATZ
                51 West 52nd Street
                New York, NY 10019
          BY:  SARAH K. EDDY, ATTORNEY AT LAW
               WILLIAM SAVITT, ATTORNEY AT LAW
               KELSEY A. BORENZWEIG, ATTORNEY AT LAW

                MORRISON & FOERSTER, LLP
                425 Market Street
                San Francisco, CA 94105
          BY:  JORDAN ETH, ATTORNEY AT LAW
               WILLIAM FRENTZEN, ATTORNEY AT LAW
```

| | |
|---|---|
| 1 | **<u>Friday - April 4, 2025</u>**                    **<u>1:55 p.m.</u>** |
| 2 | <u>P R O C E E D I N G S</u> |
| 3 | ---o0o--- |
| 4 |     **THE COURT:**  Good afternoon. |
| 5 |     **THE COURTROOM DEPUTY:**  Thank you.  Please be seated. |
| 6 | Good afternoon. |
| 7 |     Your Honor, now calling the civil matter 24-CV-4722-YGR, |
| 8 | Musk versus Altman, et al.  Parties please step forward at the |
| 9 | lecterns and state your appearances for the record starting |
| 10 | with the plaintiff. |
| 11 |     **MR. TOBEROFF:**  Good afternoon, Your Honor.  Marc |
| 12 | Toberoff for the plaintiffs. |
| 13 |     **THE COURT:**  Good afternoon. |
| 14 |     **MR. COHEN:**  Good afternoon, Your Honor.  Russell Cohen |
| 15 | for the Microsoft defendants, and with me at counsel table is |
| 16 | Nisha Patel and Jay Jurata. |
| 17 |     **THE COURT:**  I see a lot of people over there. |
| 18 |     **MR. COHEN:**  On this side Ms. Patel and Mr. Jurata. |
| 19 |     **THE COURT:**  Okay. |
| 20 |     **MS. EDDY:**  Good afternoon, Your Honor.  Sarah Eddy for |
| 21 | the OpenAI defendants, and with me today are William Savitt, |
| 22 | Jordan Eth, Will Frentzen -- |
| 23 |     **MR. FRENTZEN:**  Good afternoon, Your Honor. |
| 24 |     **THE COURT:**  Mr. Frentzen. |
| 25 |     **MS. EDDY:**  -- and Kelsey Borenzweig. |

1          **THE COURT:**  Okay.  All right.  Let's see where we are.

2     I have a couple of questions, and then we will pull together a

3     program and schedule.

4          One is that -- and this is to -- let me get your names in

5     front of me again -- I guess you, Ms. Eddy.  The OpenAI

6     position included significantly more claims than the plaintiff

7     but was silent on count 17 and count 18.  I didn't know if that

8     was a mistake or if that was intentional in terms of a trial.

9     So 17 is the 17200 UCL, and 18 is the false advertising.

10          **MS. EDDY:**  Yes, Your Honor.  That was deliberate to

11     have left those out, and the reason is with respect to

12     count 17, as we read that count, it covers the entire landscape

13     of the rest of the complaint, so it seems to be capturing in

14     all the antitrust claims and other aspects, as well.

15          Count, I think it was 18, is the Lanham Act count, I

16     believe.

17          **THE COURT:**  Well, there are two Lanham Act counts,

18     count 18 and count 19.  You included 19, which is false

19     advertising under 17500, and you did not include count 18,

20     false advertising, under 1125.

21          **MS. EDDY:**  The reason for that is that the factual

22     predicates that are asserted in support of the two claims are

23     distinct, so we propose to include the claim that has the

24     factual predicate that essentially mirrors the other

25     allegations that would be --

1          **THE COURT:**  Well, what's the difference?

2          **MS. EDDY:**  With respect to count -- sorry, I want to

3     make sure I get them in the right order -- the federal Lanham

4     Act count, that one is predicated on representations concerning

5     safety over the years.

6          **THE COURT:**  They're both federal Lanham Act claims, so

7     that doesn't help me when you're trying to distinguish.

8          **MS. EDDY:**  Sorry, Your Honor.  Let me just pull up the

9     actual ...

10         Right.  So count 19 is the one that, as we understand it,

11    is asserting a similar factual predicate.  So it says that

12    there were false representations made by OpenAI in connection

13    with its init' -- same, same set of false representations that

14    are alleged as the predicate for the charitable trust claim and

15    for some of the contract claims and the fraud claims.

16         Whereas count 18 is against a broader set of defendants

17    and also predicated on a number of different safety statements

18    over the years.

19         **THE COURT:**  All right.  I have -- my notes indicate,

20    my chart indicates that they're against the same set of

21    defendants, but your second point may be accurate.  I have the

22    defendants the same.

23         **MS. EDDY:**  I think the distinction, Your Honor, and I

24    could be wrong about this, but I think the distinction is that

25    count 19 names OpenAI, Inc. as the only OpenAI entity as a

1    defendant, and count 18 has a broader set of defendants.  But

2    as I've said, I could have that wrong.

3         **THE COURT:**  Mr. Toberoff, do you agree that's how you

4    structured your complaint?

5         **MR. TOBEROFF:**  Yes, Your Honor.

6         **THE COURT:**  Okay.  All right.  So my sense is that the

7    defendants' approach to what should be in the trial makes more

8    sense in terms of the facts and the factual issues that would

9    be tried.  So that means on this faster track we are looking at

10   claims 1 through 8, 19 through 22, and 24 through 26.  We still

11   have motions to dismiss with respect to those claims, but we'll

12   get to that in a minute.

13        Regarding footnote number 2 in the case management

14   statement, I agree with the plaintiff that the Court dismissed

15   count 23 based upon the statutory elements of the claim.  Those

16   may or may not be the same as the common law elements.  They

17   frequently are different.  So maybe they remain, maybe they

18   don't, but I haven't ruled on that as a matter of law.  Those

19   two things do not rise and fall together.  So I'll address that

20   to the extent that there's anything there in the motions to

21   dismiss, but it's not automatic.

22        By contrast, I agree with the defendants in footnote

23   number 1 on count 16.  The Court did not limit its ruling to

24   the issue of mootness.  The Court explicitly said in its order

25   this is an issue of standing as a threshold issue.  There is no

```
 1   standing, therefore there can be no claim, period.  Count 16 is
 2   out.
 3        Any questions, Mr.Toberoff?
 4            MR. TOBEROFF:  No, Your Honor.
 5            THE COURT:  Ms. Eddy?
 6            MS. EDDY:  No, Your Honor.
 7            THE COURT:  Mr. Cohen?
 8            MR. COHEN:  No, Your Honor.
 9            THE COURT:  Okay.  I don't understand, and, you
10   know -- well, if we were on a long road, then I can understand
11   why briefing on a motion to dismiss takes two to three months.
12   We're no longer on a long road, we're on a short road.  I want
13   a reply, if you want to file a reply, by next Thursday.  There
14   will be no oral argument on that motion to dismiss.  You will
15   get an order very quickly.  You've agreed on the elements.
16   That's where I'm going to focus on.  I'm going to look at the
17   complaint, I'll take into consideration your arguments, but
18   you're just going to get an answer.  Does it comply?  Is it
19   plausible, or not?  Yes or no.  It's going to be an outline
20   order.  It is going to be quick and to the point.  Okay?  That
21   way everybody knows what's in the case and what's not.
22   Understand?
23            MR. TOBEROFF:  Understood, Your Honor.
24            MR. COHEN:  Understood, Your Honor.
25            MS. EDDY:  Understood.
```

1     And to clarify, Your Honor, that's April 10th would be the

2   deadline?

3          **THE COURT:**  Yes.

4     Okay.  If Microsoft is in the case, phase 1, then you get

5   to engage in discovery.  If you're not, you don't, period.

6     So all the antitrust claims are going to be stayed.  The

7   motions to dismiss those claims are going to be deemed

8   withdrawn and stayed because those claims are going to be

9   bifurcated.  Microsoft does not -- you don't get to just

10  intervene.  If you're a defendant in a case then you can engage

11  in discovery, and you've brought a motion on every single claim

12  asserted against you.  So if you win, you're happy.  You're not

13  in the case.

14    Do I make myself clear?

15         **MR. COHEN:**  May I speak to it, Your Honor?

16         **THE COURT:**  Well, does it mirror what you put in your

17  statement?

18         **MR. COHEN:**  I think it is.

19         **THE COURT:**  So let me be clear.  Under what federal

20  rule of evidence -- of civil procedure do you get to engage in

21  discovery when there are no claims in which you are a party?

22         **MR. COHEN:**  Your Honor --

23         **THE COURT:**  Answer that question first.

24         **MR. COHEN:**  FRCP 19, necessary party.  And I would

25  also point to the corporate code of California, 5142(b).  So as

1  you know --

2          THE COURT:  I don't remember seeing a reference to --

3  is the OpenAI bringing you in as a necessary party?

4          MR. COHEN:  Well, I don't believe they are, Your

5  Honor.

6          THE COURT:  Okay.  So, again, back to my question.

7  What civil rule of procedure allows you to participate as a

8  party when you're not one?

9          MR. COHEN:  Your Honor, if I could cite the Court to

10  corporate code 5142(b), which is the section under which the

11  Musk plaintiff brings the breach of charitable trust claim.

12  5142(b) says --

13          THE COURT:  Hold on.

14      (Reporter clarification.)

15          MR. COHEN:  Apologies, Mr. Reporter.  It's Russell

16  Cohen for the Microsoft defendants.

17          THE COURT:  I don't see their pictures.  Sorry about

18  that, Mr. Franklin.

19      All right.  You said 5121?  Again, it's not in your

20  statement.

21          MR. COHEN:  5142(b), Your Honor.  And that's correct,

22  it's not in our statement.

23      In our statement, we made the argument that because of

24  Microsoft's interests particularly in whatever remedy, if there

25  is a remedy that the Court might order, Microsoft has an

1    interest in communicating to the Court the public interest, the

2    impact --

3            **THE COURT:**  You could write an amicus.

4        **MR. COHEN:**  I understand that, Your Honor, but if I

5    could read to you what 5142(b) says.  It says:  In an action

6    under this section, the Court may not rescind or enjoin the

7    performance of a contract unless, number one, all of the

8    parties to the contract are parties to the action.

9        So the Musk plaintiffs are seeking to rescind or void all

10   contracts.  That's what paragraph 423 of the complaint says.

11   And so Microsoft, as we explained in the preliminary injunction

12   papers, is a party to a contract, a collaboration agreement,

13   with OpenAI.  It is the agreement by which Microsoft provides

14   compute and funding, and OpenAI provides models and the output

15   of its research and development.  So this is one of the

16   contracts that we understand that plaintiffs are challenging in

17   this proceeding as a consequence of what they claim is a breach

18   of trust.

19       So, Your Honor, what Microsoft is asking is not full party

20   rights if it is not a defendant in any of the claims being

21   tried.  The point that we are trying to make is simply that

22   there is a remedial interest that would impact Microsoft if the

23   Court gets to a remedy.  But there are also liability issues.

24   Some of the conduct that plaintiffs say that OpenAI engaged

25   in --

1      (Simultaneous crosstalk.)

2          **THE COURT:**  -- necessary party, then.  How can you

3    bring a motion to dismiss on a claim where you're a necessary

4    party?

5          **MR. COHEN:**  Your Honor, we don't think any of these

6    claims should go ahead against Microsoft, and we think we

7    should be out of the case.

8          **THE COURT:**  Assuming for purposes of argument it goes

9    ahead.

10         **MR. COHEN:**  Yes.

11         **THE COURT:**  And you're saying you're a necessary

12   party, but it should be dismissed against you because --

13   because what?  Because you're not a necessary party?  It's not

14   logical.

15         **MR. COHEN:**  Your Honor, I understand the Court's

16   concern.  What we are trying to convey --

17         **THE COURT:**  What I'm saying is that your position is

18   not logical.

19         **MR. COHEN:**  And what I'm asking of the Court is that

20   Microsoft have limited participation rights because there is an

21   interest that can be affected by a remedy, and there are also

22   conduct allegations in the case by the plaintiffs that relate

23   to things that Microsoft may have done.

24         **THE COURT:**  That's always the case.  So what?

25         **MR. COHEN:**  Well, the concern --

1        **THE COURT:**  That is always the case.  And the rules

2 don't give you rights because someone else might be litigating

3 and it might have some tangential effect if they're not seeking

4 liability against you.

5       Now, if you're a necessary party, then you're in the case.

6        **MR. COHEN:**  And, Your Honor, I understand that if the

7 claims against us are out and they're not being litigated and

8 we have a full opportunity to take discovery on those claims,

9 if those claims ever go forward, then that mitigates our

10 concern.  But what we were trying to express in the status

11 conference statement was that the effective remedy is an effect

12 on the public interest that Microsoft could speak to, and I

13 point to --

14        **THE COURT:**  We can do that by amicus.

15       That doesn't give you the rights to engage in the manner

16 in which you want to engage as a nonparty.  So you're either

17 part of the litigation or you're not.  And if you're not, even

18 if it has some impact on you, you can ask to be heard.  I don't

19 think that I generally deny people the opportunity to be heard,

20 but I won't have you trying to get all of the benefits and none

21 of the burdens of being a party.  It's pretty simple.

22       So I'm going to issue a schedule.  Do you want to -- and

23 you took a tactical approach by not engaging in the schedule.

24 Do you want to at this juncture, or do you want to waive that?

25        **MR. COHEN:**  Your Honor, our client has a concern with

this proceeding going forward without it having an ability to
participate.  If our client is going to have the ability to
participate and take discovery if these claims ever do go
forward, then we are protected from that concern.

What we are concerned about is if findings are made in a
phase 1 trial that could impact the liability of our client if
there ever is a phase 2 trial.  All of the claims against
Microsoft are derivative of the claims against OpenAI.  If
there is no liability, if there is no contract, if there is no
trust, there's no fraud, there's no breach of fiduciary duty,
there really are no claims as alleged in this complaint that
would go forward against Microsoft.  That would be the end of
it.  And so there's no reason to be concerned under that
scenario.

If there is a case that goes forward --

THE COURT:  I'm going to stop you, because you're not
answering my question.  Usually at the end of the hearing I
say, is there anything else, and when I say that, then you can
engage on what you want to say.  That wasn't my question.  You
need to listen to my question and answer that one.

We have a schedule, and I'm about to talk about the
schedule.  So do you want to engage in the schedule or not?

MR. COHEN:  I do want to engage in the schedule, Your
Honor, because you haven't yet ruled on the motion to dismiss,
and there may be claims against Microsoft that are going

1    forward.  So, yes.

2         THE COURT:  So you will get -- like I said, you'll get

3    a ruling pretty quickly on those, assuming that there's

4    something going forward.  Obviously if the whole thing is

5    thrown out -- and I doubt it will be.  I think it will get

6    trimmed, but I doubt the whole thing will get thrown out.  It's

7    not clear to me whether or not Microsoft will participate, but

8    let's work through this, then.

9         Discovery opens today under your proposal, correct?

10         MS. EDDY:  Correct.

11         MR. TOBEROFF:  Correct, Your Honor.

12         THE COURT:  So ordered.

13         MR. TOBEROFF:  Your Honor, before we get into the

14    schedule, may I just speak to the issue of the number of claims

15    that are the subject of the expedited trial?

16         THE COURT:  I'll give two minutes.

17         MR. TOBEROFF:  So we -- our proposal was consistent

18    with the Court's order which focused on an expedited trial as

19    to those claims that it viewed are in the public interest

20    having to do with the --

21         THE COURT:  I'm not going to try this case three

22    times, Mr. Toberoff.  All of the claims that I've identified

23    that were identified by OpenAI arise out of the same set of

24    facts.  You will not get, neither side or any three of you are

25    going to get two bites at the apple.  We are going to have one

```
1    jury who are going to decide all of these facts which relate to

2    all of these claims, whichever ones survive.  And like I said,

3    it is not clear to me that all of them survive.

4             MR. TOBEROFF:  I understand, Your Honor.

5             THE COURT:  So that is what we are going to do.

6         Now, if you cannot address all those claims as quickly as

7    you proposed, you let me know that now.

8             MR. TOBEROFF:  That was my point, Your Honor.  This

9    schedule that we've set forth is a schedule, in our view, that

10   was based on what we believed the trial would include based on

11   your order, which is the breach of charitable trust --

12            THE COURT:  That's not what it said, because it says

13   the parties propose, and that's a joint recommendation.  It

14   didn't give me two sets of dates, and the defendants had all of

15   these claims identified.

16            MR. TOBEROFF:  I understand.  I'm just explaining --

17            THE COURT:  All right.

18            MR. TOBEROFF:  -- what went into it from our end.

19        Now that there are going to be more claims included, I

20   think it impacts the schedule and impacts the number of

21   witnesses just as a practical matter.

22            THE COURT:  Okay.

23            MR. TOBEROFF:  And we didn't want to burden the Court

24   with duplicate sets of everything.  We wanted to try to come to

25   an agreement with opposing counsel rather than have dueling
```

```
 1   positions on too many things.

 2        THE COURT:  Well, I spent time trying to understand

 3   your perspectives.  So now I don't have a full picture, but we

 4   can work through it.

 5        So discovery opens today.

 6        I think that if I can have ... you'll have an answer on

 7   this motion for summary judgment by the end of the month.  No

 8   later than that; not sooner.  So answers probably will be due

 9   within two weeks.  You've had this case for a while.  You've

10   seen the claims.  It's not at if these -- if these are all --

11   not all of them.  It's not like these are complicated claims.

12   You know what the standard affirmative defenses are.  You

13   should have some view.  It should not take you 30 days to

14   answer a complaint.  So you're going to get 14 days to answer

15   the complaint.

16        MS. EDDY:  Your Honor, may I just speak to that

17   briefly?  Because the proposal we had made was that we would --

18   we would file an answer by next week, but respecting those

19   claims --

20        THE COURT:  I thought you were only filing an answer

21   as to some of the claims, not all of them.

22        MS. EDDY:  Right.  As to the claims that as to which

23   the motion to dismiss has been denied already.

24        THE COURT:  Right; but there are a number of things

25   that I haven't ruled on.
```

1      **MS. EDDY:**  I agree, Your Honor.  But do you mean 14

2    days from the ruling on the motion to dismiss?

3          **THE COURT:**  Correct.

4      **MS. EDDY:**  Oh, I'm sorry, I misunderstood.  Okay.

5          **THE COURT:**  Okay.  You'll exchange initial disclosures

6    April 11th.  That's ordered.

7        April 10th is the replies in support of the motions to

8    dismiss.

9        Are there counterclaims that are being contemplated by the

10   defendants that are not just the opposite of the claims that

11   are being asserted?

12         **MS. EDDY:**  There are counterclaims being contemplated

13   by the OpenAI defendants that arise from the same narrative and

14   underlying facts as are asserted in the claims that would

15   otherwise be going to trial.

16         **THE COURT:**  Well, are they merely the opposite of what

17   the plaintiffs are alleging?

18         **MS. EDDY:**  No, Your Honor, they're not merely the

19   opposite.

20         **THE COURT:**  So give me an example.

21         **MS. EDDY:**  So, for example, a claim alleging unfair

22   and fraudulent practices arising from Mr. Musk's campaign of

23   harassment against OpenAI beginning a couple of years ago and

24   culminating in his recent bid -- I put that in air quotes --

25   for the purchase of OpenAI, Inc.'s assets.

1          **THE COURT:**  Okay.  What else?

2          **MS. EDDY:**  The only other counterclaim that is being

3   contemplated right now would be a tortious interference with

4   prospective economic advantage arising out of that same

5   underlying fact pattern.

6          **THE COURT:**  Anything else?

7          **MS. EDDY:**  No, Your Honor.

8          **THE COURT:**  Okay.  So how much time do you all want to

9   complete document discovery?  Sounds like you want beyond

10  June 12th.  So what is it that you want?

11      Mr. Toberoff?

12          **MR. TOBEROFF:**  I would say an additional 30 days.

13          **THE COURT:**  Okay.  July 14th, does that ... any

14  comments?

15          **MS. EDDY:**  No, Your Honor, except I guess to clarify.

16          **THE COURT:**  I'm just going off your own chart.

17          **MS. EDDY:**  And our proposal had been to complete fact

18  discovery as of July 3rd in order to permit the other steps in

19  the schedule.  So as long as those are sort of moving as well,

20  then ...

21          **THE COURT:**  Well, we're going from the top to the

22  bottom here.  So I'm at line 8; that's at line 11.  Are you

23  with me?

24          **MS. EDDY:**  I am, Your Honor.

25          **THE COURT:**  Okay.  He's suggesting 30 days after

```
1    June 12th.  Do you have an objection to that?  Do you want more

2    time?

3              MS. EDDY:  No, we do not want more time.

4              THE COURT:  Any comments?

5              MR. COHEN:  No, Your Honor.

6              THE COURT:  All right.  So substantial completion of

7    document discovery, then, July 14th.

8         Under this approach you had fact depositions beginning a

9    week later.  Does that still work?  That would be July 21st.

10   Agree, or is someone asking for a different date?

11             MR. TOBEROFF:  No, Your Honor.

12             THE COURT:  No, you don't agree with me, or, no,

13   you're not asking?

14             MR. TOBEROFF:  No, we're not asking.  I would like to

15   avoid a double negative.  We can move the dates by 30 days so

16   they follow in the same progression.

17             THE COURT:  So the same progression would be one week.

18   Is that fine with you?  Depositions start July 21st.

19             MR. TOBEROFF:  I think two weeks would be better.

20             THE COURT:  Mr. Cohen?

21             MR. COHEN:  That's fine, Your Honor.

22             MS. EDDY:  That's fine, Your Honor.

23             THE COURT:  All right.  July 28th.

24        The next is the close of fact discovery you had two weeks

25   after the depos.  Now, are you going to have -- there are many
```

```
 1    counts, and you say you're contemplating an even wider scope

 2    with the counterclaims.  Can you get all the depositions done

 3    in two weeks?

 4         MS. EDDY:  We believe we can, but Mr. Toberoff may

 5    have a different view.

 6         MR. TOBEROFF:  I believe two weeks is too tight.  I

 7    think three weeks would make more sense.

 8         THE COURT:  Okay.  Mr. Cohen, any objection?

 9         MR. COHEN:  No objection, Your Honor.

10         THE COURT:  All right.  Three weeks, then, is

11    August 18th.  That would be the same -- under your approach,

12    that would be the same deadline to identify your opening

13    experts.  Everybody agree that that still works, August 18th,

14    or do you want more time?

15         MR. TOBEROFF:  I'd make it one week later, one or two

16    weeks later.

17         MS. EDDY:  That's fine with us, Your Honor.

18         MR. COHEN:  It's fine, Your Honor.

19         THE COURT:  Okay.  Which do you prefer?

20         MR. TOBEROFF:  Two weeks, please.

21         THE COURT:  You want it before the Labor Day weekend

22    or after?  On the 2nd or -- the 2nd is Tuesday.  The 29th is

23    Friday.  You want to enjoy your Labor Day weekend or not?

24    Let's say you enjoy your Labor Day weekend.  August 29th.  Your

25    experts aren't going to be around anyway.
```

1    Okay.  Exchange of opening reports.  And by the word

2  "exchange," understand a couple of things:

3    One, well, as a side note, make sure you've read my

4  standing order on civil cases.  I require expert reports to be

5  constructed in a particular way.  That helps me with *Dauberts*,

6  which probably wouldn't happen in this case.  If it is, you are

7  limited in the number that you can file.  But you must have an

8  executive summary in advance.  That should be the very first

9  thing.  Tell me what the opinions are.  Then the rest of the

10  report identifies the basis for the opinion.  It is the opinion

11  that matters.

12    It is not a proper motion to strike a report for hearsay.

13  Experts rely on hearsay all the time.  That's kind of what they

14  do.  That's not the point.  The point is what is the actual

15  opinion.

16    The report does not come into evidence.  So just because

17  an expert puts you on notice of the basis for their opinion

18  doesn't mean I should be getting a motion to strike the hearsay

19  from their report.  Okay?  I want to know what the expert's

20  opinions are upfront.  Everything has to be numbered, so if you

21  do have to bring a motion, you can cross-reference the actual

22  paragraphs that you're referring to.  Okay?  Just make sure to

23  read the standing order.

24    The other thing is when you exchange your opening reports,

25  you must exchange and produce all background information at the

exact same time as the report.  No one should have to ask for

that.  It should be automatically delivered to the other side.

Understood?

        **MS. EDDY:**  Understood.

        **MR. TOBEROFF:**  Understood, Your Honor.

        **MR. COHEN:**  Understood, Your Honor.

        **THE COURT:**  Okay.  So under the current -- under your

current approach you had those due eight days later.  You still

want eight days?  Well, that's Friday.  So that would be

September 8th.

        **MR. TOBEROFF:**  I think that works, Your Honor.

        **MS. EDDY:**  That works, Your Honor.

        **THE COURT:**  All right.  Mr. Cohen?

        **MR. COHEN:**  Yes, Your Honor, that works.

        **THE COURT:**  All right.  September 8th.

And then rebuttal reports.  Again, and these are

simultaneous openings and simultaneous rebuttals.  To the --

how many experts are you expecting?  That kind of impacts the

schedule.

From the plaintiff, what kind of experts do you expect?

        **MR. TOBEROFF:**  We expect to have now four, four

experts.

        **THE COURT:**  Okay.  What?

        **MR. TOBEROFF:**  We have a financial expert, financial

damages expert.  We would have a technical expert speaking to

AI safety and protocols for open sourcing, which dovetails with

safety.

        **THE COURT:**  Okay.

        **MR. TOBEROFF:**  We would have an expert as to

governance of a charity.  And we might have two experts on

that, one focused more on what is considered proper engagement

in for-profit activities by a charity, but then also an

additional expert having to do with -- possibly another expert

on charity governance dealing with where you draw the line with

respect to transactions engaged in by interested directors.

        **THE COURT:**  And the fourth?

        **MR. TOBEROFF:**  Those are the four, the financial

expert, technical AI expert, and then two experts dealing with

the charitable organizations.

        **MS. EDDY:**  We expect, Your Honor, to have between four

and six experts at this point, an accounting and tracing

expert, valuation expert, an expert focused on specialized

aspects of the not-for-profit structure and governance, an

industry expert to talk about the capital and compute demands

and investor considerations in this space, and potentially an

expert concerning open sourcing.  And I should say one or more

of those topics might entail two different experts.

        **THE COURT:**  Okay.  Mr. Cohen?

        **MR. COHEN:**  Your Honor, it's not clear to what extent

with the claims remaining against Microsoft there would be a

need for expert testimony.  The principal issues would be

knowledge and substantial participation.  Those may not be

expert issues.  There may be expert issues relating to the

tortious interference claim to the extent it's tried, and maybe

there would be experts on some of the issues that Ms. Eddy

identified, but at this point I'm not certain.

**THE COURT:**  Okay.  So a couple of notes as I hear you

talk about your experts:

One, you will be on time limits, so I would suggest that

you not have experts who are duplicative of each other.  I

don't tend to grant motions based upon 403, that it's -- wastes

time.  The reason I don't grant them is because you're going to

have time limits, and that's all the time you're gonna get.

I'm going to let you put on whatever it is you want to put on

within the confines of time limits, and if the other side

thinks it's a waste of time, well, that's only their opinion.

So you'll be able to try your case that way.

Two, do not have -- to the extent that there are issues

that you want your experts to testify on with respect to

governance or factual issues that will help the jury, just

remember to have them focus on the factual issues.  Law

professors who want to opine on what the law is will be struck.

Don't waste your time.  You can hire them as amicus to your

team to brief issues, but law professors do not tell the jury

what the law is.  It's inappropriate in my view.  And there may

1    be trial judges who allow it, but I do not.  Okay?

2       All right.  So that's a lot of experts, and I don't know

3    how big your teams are.  What you've told me is anywhere from

4    15, maybe more.  So do you want to do that in two weeks, or do

5    you want more time to do that?

6       **MR. TOBEROFF:**  We're going to need more time to depose

7    their experts if they have seven experts.

8       **THE COURT:**  Well, right now we're at four to six, and

9    we don't know about Microsoft.

10     Ms. Eddy?

11      **MS. EDDY:**  Your Honor, I think we could conduct the

12    expert -- if we're focused on the expert deposition period, I

13    think we could do that in two weeks, but we're happy to

14    accommodate more time.

15      **THE COURT:**  All right.  Three weeks, Mr. Toberoff?

16      **MR. TOBEROFF:**  I think that sounds right, Your Honor.

17      **THE COURT:**  In terms of the -- I didn't give you a

18    date on the rebuttal reports.  So under your proposal

19    originally, you had said three weeks.  Do you still want three

20    weeks for rebuttals?

21      **MR. TOBEROFF:**  Yes, Your Honor.

22      **THE COURT:**  That would be September 29th, then, for

23    exchange of rebuttal reports.  And then three weeks for depos,

24    that takes you to October 20th.

25     Does anyone anticipate needing expert testimony for

1    purposes of summary judgment?

2          **MS. EDDY:**  We don't anticipate that, Your Honor.

3          **THE COURT:**  Mr. Toberoff, do you anticipate needing

4    expert testimony?

5          **MR. TOBEROFF:**  I don't currently anticipate it.

6          **THE COURT:**  Do you anticipate bringing a motion for

7    summary judgment?

8          **MR. TOBEROFF:**  Yes, Your Honor.

9          **THE COURT:**  On what grounds?

10         **MR. TOBEROFF:**  I'm reserving the right.  I mean, I'm

11   reserving the ability to bring a motion for summary judgment.

12   I have -- it --

13         **THE COURT:**  It is pretty rare that a plaintiff in this

14   kind of case would bring a motion for summary judgment.  That's

15   why I'm asking the question.

16         **MR. TOBEROFF:**  I understand.

17     There may be discrete issues in which we bring a motion,

18   but I can't tell you.  It depends what claims survive.  And we

19   may cross-move for summary judgment.  We may move for summary

20   judgment.

21         **THE COURT:**  Given the schedule, you all probably have

22   to parallel process in terms of motions for summary judgment.

23   Things like fraud, implied contracts, breach of fiduciary duty,

24   rarely would those things lend themselves to summary judgment.

25   There might be something else, but those are pretty fact-

1   specific types of claims.  So since you don't need expert

2   testimony, from the date of close of fact discovery, by then

3   you'll know what your case looks like.

4        Just give me a minute.  I'm going to pull up my trial

5   schedule.

6        All right.  So I can meet with you all to talk about your

7   summary judgment motions September 17th, 2025, at 2:00 p.m.

8   You need to follow my process, again, in the standing order for

9   filing our letters in advance of the conference.  If you want

10  to file a motion for a summary judgment, you need to file that

11  letter by September 5th.  Any opposing motion, I need your

12  letter by September 10th.  There are page limits.  Make sure to

13  follow the page limits.  And then I'll talk to you on the 17th

14  at 2:00 p.m.

15       **MR. TOBEROFF:**  Your Honor, I'd like to clarify one

16  point as to the motions for summary judgment.  Given a little

17  more thought, I would anticipate bringing motions on their

18  counterclaims.

19       **THE COURT:**  Well, like I said, those are pretty fact-

20  based claims.  We'll see what you have to say.

21       I'm just suggesting to you -- look, this is what I will

22  tell you at the conference.  There are frequently times when I

23  encourage people to bring summary judgments when you have legal

24  issues.  I see them all the time in ERISA cases.  I see them

25  all the time in insurance cases.  Why?  Because there are no

disputes of fact.  Does the insurance contract, you know, cover

the claim at issue?  Yes/no.  We look at the language of the

contract.  It's in or out.  These are really straightforward

issues.  Employment cases, rarely.  Fraud cases, rarely.

Anything where it's he said/he said or he said/she said,

rarely.

    So if you want to waste your time and paper on filing that

motion, my general response is you get five pages back, half of

which are standards, that say "denied," material dispute of

fact.  So I can't stop you from bringing it under the Ninth

Circuit law, but I certainly don't have to write much.

    Understood?  Think about it.

        **MR. TOBEROFF:**  Understood, Your Honor.

        **MS. EDDY:**  Understood.

        **MR. COHEN:**  Understood, Your Honor.

        **THE COURT:**  And there is absolutely no way that I'm

going to pick Mr. Altman's testimony over Mr. Musk or vise

versa.  That's just not my job.  That's the job of a jury.

    Okay.  At the conference to the extent there is motion

practice on summary judgment, we will determine the dates then.

    Okay.  If there are cross motions for summary judgment, I

suspect we won't even be looking at those until the end of

October, the beginning of November, and then I need to rule on

them.  So it is unlikely we can do a pretrial conference on

November 21st.

```
 1          Under my standing order, you need to exchange all of your
 2    exhibits and all of your trial filings approximately 30 days
 3    prior to the pretrial conference.  That means all your motions,
 4    everything.  So given what we have so far, when do you want to
 5    start engaging in that process?  December?  January?
 6          MR. TOBEROFF:  I think we're looking at now it would
 7    be in January.
 8          MS. EDDY:  That's fine for the OpenAI defendants.
 9          MR. COHEN:  Yes, same for Microsoft defendants, Your
10    Honor.
11          THE COURT:  Okay.  So beginning of January?  End of
12    January?
13          MR. TOBEROFF:  Towards the end of January would be
14    preferred by us.
15          MS. EDDY:  That's fine with us, Your Honor.
16          MR. COHEN:  Fine, Your Honor.
17          THE COURT:  Okay.  So that means we are look at a
18    March trial date.
19          All right.  March 2nd.  Your pretrial conference will
20    be -- well, no, it's got to be later than that.  All right.
21    March 16th.  That means your pretrial conference, we're going
22    to put that February 20th, which is one week more time, because
23    I don't exactly know what it is you're going to get me.  That
24    will be your pretrial conference, March -- or February 20th.
25          Your statements, then, are due February ... it's even
```

1   later.  March 30th.  For pretrial conference, then, March 13th.

2   Your statement is due February 27th.  That means you'll start

3   exchanging everything by the end of January.  Okay?

4         There was a note in your filing about reserving on judge

5   versus jury.  This is a jury trial.  The only thing that is

6   required by the Court to be resolved by the Court is the UCL.

7   The UCL is not a jury claim.  17200 is a court claim.  But what

8   I always do with 17200s is ask for -- I give the jury questions

9   and usually base the decision on the factual findings as a --

10  as advice to the Court regarding what the factual finding

11  should be.

12        Unjust enrichment.  If the breach of express contract

13  survives, and I don't know that it will, you will be given an

14  election date.  Unjust enrichment is a form of restitution.  It

15  is not a standalone cause of action in California, but I let it

16  through all the time.  And I let it through all the time,

17  because California law also allows you to plead it in the

18  alternative.  But it is an alternative claim.  You will have to

19  elect.

20              **MR. TOBEROFF:**  Understood, Your Honor.

21              **THE COURT:**  Okay?  All right.  I think we have a plan.

22  Does anybody -- oh.  You need to follow the federal rules.  The

23  federal rules say that limits on interrogatories include

24  subparts.  You are bound by that.  So subparts are not in

25  addition.

1        I think those were all the open questions I had based upon

2   your joint case management statement.  Is there anything else

3   you wish to be heard on?

4        Now is the time, Mr. Cohen.

5        **MR. COHEN:**  There is one thing, Your Honor.  And we

6   did flag this in the status report.  It has to do with the

7   defendants, Mr. Hoffman and Ms. Templeton.  They were named in

8   the Clayton Act Section 8 claim.  That we understand has been

9   dismissed.  They were also named in the UCL claim, but the only

10  predicate relating to them is the interlock.  I would like for

11  them to be out of this case.

12       **THE COURT:**  I don't think there's a pending claim

13  against them.

14       **MR. COHEN:**  Well, I think there is.  I think the

15  plaintiffs have asserted that they have a damages claim.  There

16  are of course no damages under the UCL either.  It is a

17  restitutionary disgorgement or injunctive relief.  So I don't

18  believe there should be a claim against them, but I would like

19  to clarify that they are out of the case and no longer

20  defendants and have no further responsibilities.

21       **THE COURT:**  Okay.  Well, I don't -- I don't see how

22  there is a pending claim against them.

23       Mr. Toberoff, to the extent that you believe there's a

24  pending claim against them in light of my rulings, by next

25  Friday file a brief that explains to me how they're still in

1    this case in light of my rulings.  I thought part of your

2    argument was that I hadn't fully dismissed the, I think it was,

3    as I'm looking at footnote 1 -- I'm pulling up my order.

4        So according to my chart, I had those two defendants as

5    being named in count 16, which I dismissed, and count 17.  So I

6    understand what you're saying.  I mean, count 17 hasn't been

7    ruled on, but count 16 has been dismissed because there's no

8    standing.  In his -- in the statement, the plaintiff was

9    arguing that 16 was not fully dismissed because it was based on

10   mootness, which I said earlier and clarified earlier today I

11   disagree with.  I didn't say -- in fact, I explicitly said that

12   it's not -- well, I guess that went to the other one.

13       Okay.  So what's the theory under the 17200 for those two

14   individuals?

15       **MR. TOBEROFF:**  Your Honor, I need to study that

16   further, and if we don't submit a brief within a week

17   addressing that, then they are no longer parties.

18       **THE COURT:**  Okay.  So file something, then.  Today's

19   the 4th, so file it by the 11th.  If nothing is filed on the

20   11th, then, Mr. Cohen, send us a proposed form of order so that

21   the docket is clear that all the claims as to them are

22   dismissed.

23       **MR. COHEN:**  Thank you, Your Honor.

24       **MR. TOBEROFF:**  Thank you, Your Honor.

25       **THE COURT:**  If there -- if he does file something, you

1    can file a response a week later, on the 18th.  Okay?

2       Other issues, Mr. Cohen?

3           **MR. COHEN:**  I don't have anything else, Your Honor.

4    Thank you.

5           **THE COURT:**  Okay.  Other issues, Mr.Toberoff?

6           **MR. TOBEROFF:**  Nothing further, Your Honor.  Thank

7    you.

8           **THE COURT:**  Ms. Eddy, other issues?

9           **MS. EDDY:**  Nothing further, Your Honor.  Thank you.

10          **THE COURT:**  Okay.  I've not litigated with any of you,

11   but I do see Mr. Frentzen in the courtroom.  He spent a lot of

12   time in this courtroom.  And what I'm hoping, Mr. Frentzen, you

13   and I have joked about this in the past, the criminal bar is

14   more civil than the civil bar.  As you know, it is always best

15   for people to figure out what's important for trial and resolve

16   their differences.  Try not to bother the Court.  We spent

17   three months together in trial, and when he got involved in the

18   case I didn't have to worry about discovery, which I

19   appreciated.  We're very, very busy.

20      So if people aren't being reasonable, Mr. Frentzen, I'm

21   going to be asking you why.

22          **MR. FRENTZEN:**  Understood, Your Honor.

23          **THE COURT:**  All right.  Anything else?  No?

24          **MR. TOBEROFF:**  Nothing further, Your Honor.

25          **MS. EDDY:**  Nothing further, Your Honor.  Thank you.

1          **THE COURT:**  Okay.  We're adjourned.  Thank you.

2          **VOICES:**  Thank you.

3          **THE COURTROOM DEPUTY:**  Court is adjourned.

4      (Proceedings concluded at 2:56 p.m.)

5                          ---o0o---

6                 <u>**CERTIFICATE OF REPORTER**</u>

7          I certify that the foregoing is a correct transcript

8  from the record of proceedings in the above-entitled matter.

9  DATE:  Tuesday, April 8, 2025

10

11

12  _____

13      Stephen W. Franklin, RMR, CRR, CPE
        Official Reporter, U.S. District Court

14

15

16

17

18

19

20

21

22

23

24

25