1   RUSSELL P. COHEN (SBN 213105)          ANDREW J. LEVANDER (admitted *pro hac vice*)
    Russ.cohen@dechert.com                 Andrew.levander@dechert.com
2   HOWARD M. ULLMAN (SBN 206760)          DECHERT LLP
    Howard.ullman@dechert.com              Three Bryant Park
3   DECHERT LLP                            1095 Avenue of the Americas
    45 Fremont Street, 26th Floor          New York, NY 10036
4   San Francisco, CA 94105                Telephone: (212) 698-3500
    Telephone: (415) 262-4500              Facsimile: (212) 698-3599
5   Facsimile: (415) 262-45555

6   NISHA PATEL (SBN 281628)               JOHN (JAY) JURATA, JR. (admitted *pro hac vice*)
    Nisha.patelgupta@dechert.com           Jay.jurata@dechert.com
7   DECHERT LLP                            DECHERT LLP
    633 West 5th Street, Suite 4900        1900 K Street, N.W.
8   Los Angeles, CA 90071                  Washington, DC 20006
    Telephone: (213) 808-5700              Telephone: (202) 261-3300
9   Facsimile: (213) 808-5760              Facsimile: (202) 261-3333

10  *Attorneys for Defendants Microsoft Corporation,*
    *Reid Hoffman, and Deannah Templeton*
11

12                      **UNITED STATES DISTRICT COURT**
                      **NORTHERN DISTRICT OF CALIFORNIA**
13                          **OAKLAND DIVISION**

14

15  ELON MUSK et al.,                      Case No. 4:24-cv-04722-YGR

16          Plaintiffs,                    Judge Yvonne Gonzalez Rogers

17       v.                                **DEFENDANT MICROSOFT**
                                           **CORPORATION'S REPLY IN**
18  SAMUEL ALTMAN, et al.,                 **SUPPORT OF ITS MOTION TO**
                                           **DISMISS FIRST AMENDED**
            Defendants.                    **COMPLAINT**
19                                         **Date:       May 28, 2025**
                                           **Time:       10:00 a.m.**
20                                         **Place:      Courtroom 1 (4th Floor)**
                                           **             1301 Clay St.**
21                                         **             Oakland, CA 94612**

22                                         **Action filed:  August 5, 2024**

23

24

25

26

27

28

**STATEMENT OF ISSUES TO BE DECIDED**

1.      Whether Musk's quasi-contract claim (Count 4) should be dismissed because it is not a standalone claim nor is there an alleged contract between Musk and Microsoft for which to seek an election of remedy.

2.      Whether Musk's claim for tortious interference with contract (Count 5) should be dismissed for, among other reasons, failure to adequately plead Microsoft's knowledge of a valid contract and Microsoft's intentional inducement of a breach.

3.      Whether Musk's aiding and abetting claims (Counts 8, 21) and Musk's and Zillis' aiding and abetting claim (Count 24) should be dismissed for, among other reasons, failure to plead Microsoft's actual knowledge of an underlying tortious act, or substantial assistance or encouragement to so act.

4.      Whether Count 8 should be dismissed for the additional, independent reason that Plaintiffs have failed to adequately plead fraud or aiding and abetting any fraud with the particularity required by Fed. R. Civ. P. 9(b).

5.      Whether Plaintiffs' claims for violations of RICO Sections 1962(a)-(d) (Counts 25-26) should be dismissed for failure to adequately plead predicate fraudulent acts with the necessary particularity, conduct of an enterprise, or any facts specific to Microsoft in support of the claims.

6.      Whether Plaintiffs' RICO claims should be dismissed for the additional, independent reason that there is no actionable "co-schemer" theory of RICO liability, but even if there were, Plaintiffs have failed to adequately plead Microsoft's knowing participation, intent, and participation at the time the alleged fraud was allegedly committed by a co-schemer.

---

1

**TABLE OF CONTENTS**

2

**Page**

3   I.      INTRODUCTION ................................................................................................... 1

4   II.     ARGUMENT .......................................................................................................... 3

5           A.      The FAC Does Not State a Tortious Interference Claim (Count 5)........................ 3

6           B.      The FAC Does Not State an Aiding and Abetting Claim (Counts 8, 21, 24) ......... 5

7           C.      The FAC Does Not State Any RICO Claim Against Microsoft (Counts 25-26).... 7

8                   1.      The FAC Alleges No Facts that Microsoft Was a "Knowing
                            Participant" in the Alleged Scheme .......................................................... 8
9
                    2.      The FAC Fails to Allege that Microsoft Had the Requisite Intent to
10                          Defraud......................................................................................................... 9

11                  3.      The FAC Alleges No Facts Showing Microsoft's Alleged
                            Participation in a Scheme with a Co-schemer Who
12                          Contemporaneously Committed Fraud ....................................................... 10

13                  4.      The Conspiracy Allegations Against Microsoft Are Likewise
                            Deficient ..................................................................................................... 11
14
            D.      The FAC Does Not State a Quasi-Contract / Unjust Enrichment Claim (Count 4)11
15
    III.    CONCLUSION ..................................................................................................... 12
16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT MICROSOFT CORPORATION'S REPLY IN SUPPORT OF MOTION TO DISMISS FIRST
AMENDED COMPLAINT                                  4:24-CV-04722-YGR

1

## **TABLE OF AUTHORITIES**

2

**Page(s)**

3
**Cases**

4
*AngioScore, Inc. v. TriReme Med., LLC*,
   70 F. Supp. 3d 951 (N.D. Cal. 2014) ..................................................................... 6

5

*Applied Equip. Corp. v. Litton Saudi Arabia, Ltd.*,
6    7 Cal. 4th 503 (1994) ............................................................................................. 5

7
*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) .............................................................................................. 12

8
*Casey v. U.S. Bank Nat. Ass'n*,
9    127 Cal. App. 4th 1138 (2005).............................................................................. 6

10
*Coronavirus Rep. v. Apple, Inc.*,
   85 F.4th 948 (9th Cir. 2023).................................................................................. 7

11
*De Havilland v. FX Networks*,
12    LLC, 21 Cal. App. 5th 845 (2018) ................................................................. 11, 12

13
*Eclectic Props. E., LLC* v. *Marcus & Millichap Co.*,
   751 F.3d 990 (9th Cir. 2014).................................................................................. 8

14

*Howard v. Am. Online Inc.*,
15    208 F.3d 741, 751 (9th Cir. 2000)........................................................................ 11

16
*In re JUUL Labs, Inc., Mktg., Sales Pracs., & Prods. Liab. Litig.*,
   497 F. Supp. 3d 552 (N.D. Cal. 2020) ................................................................... 9

17
*Kearns v. Ford Motor Co.*,
18    567 F.3d 1120 (9th Cir. 2009)................................................................................ 7

19
*Lewis v. Sporck*,
   612 F. Supp. 1316, 1323 (N.D. Cal. 1985) .......................................................... 11

20
*Lorenz v. E.W. Bancorp, Inc.*,
21    2016 WL 199392 (C.D. Cal. Jan. 14, 2016) .......................................................... 6

22
*Lynwood Invs. Cy Ltd. v. Konovalov*,
   2021 WL 1164838 (N.D. Cal. Mar. 25, 2021)....................................................... 4

23
*McLaughlin v. Anderson*,
24    962 F.2d 187 (2d Cir. 1992)................................................................................... 7

25
*Namer v. Bank of Am., N.A.*,
   2017 WL 1180193 (S.D. Cal. Mar. 30, 2017) ....................................................... 6

26
*Pac. Gas & Elec. Co. v. Bear Stearns & Co.*,
27    50 Cal. 3d 1118 (1990) .......................................................................................... 4

28

enter

*Papapietro v. Trans Union LLC*,
    2013 WL 3803315 (N.D. Cal. July 19, 2013) ........................................................................ 12

*Plumstead Theatre Soc., Inc., v. C.I.R.*,
    675 F.2d 244 (9th Cir. 1982) ...................................................................................................... 5

*Sanford v. MemberWorks, Inc.*,
    625 F.3d 550 (9th Cir. 2010) ................................................................................................. 9, 11

*Sun Grp. U.S.A. Harmony City, Inc. v. CRRC Corp. Ltd.*,
    2018 WL 10689420 (N.D. Cal. July 9, 2018) ........................................................................... 4

*United States v. Stapleton*,
    293 F.3d 1111 (9th Cir. 2002) ..................................................................................................... 8

**Statutes**

RICO ..................................................................................................................................... *passim*

RICO § 1962(a)-(c) ................................................................................................................ 10, 11

RICO § 1962(d) ............................................................................................................................. 11

**Court Rules**

Fed. R. Civ. P. 9(b) ............................................................................................................. 2, 7, 9, 10

**Other Authorities**

UCSF Enters Drug Discovery Agreement with Genentech, *available at*
    https://www.ucsf.edu/news/2010/02/98234/ucsf-enters-drug-discovery-
    agreement-genentech ................................................................................................................. 5

DEFENDANT MICROSOFT CORPORATION'S REPLY IN SUPPORT OF MOTION TO DISMISS FIRST
AMENDED COMPLAINT                    4:24-CV-04722-YGR

1    **I.      INTRODUCTION**

2        Microsoft had nothing to do with the supposed promises that are the basis for this lawsuit.[1]

3    FAC ¶¶ 4, 82-97. Musk's relationship with Altman and Brockman in OpenAI's early days began

4    in 2015. *Id.* ¶ 83. But Microsoft's commitment to invest in and provide critical computing power

5    to OpenAI—the only concrete Microsoft action the FAC alleges in connection with the non-stayed

6    claims—did not begin until September 2016. *Id.* ¶¶ 82-96, 99. Nor does the FAC identify Microsoft

7    as being part of any of the conversations or correspondence after 2016 concerning the alleged terms

8    of Musk's financial support for OpenAI. Plaintiffs have zero basis to drag Microsoft into their feud

9    with Sam Altman and OpenAI.

10        Plaintiffs' Opposition to Microsoft's Motion, Dkt. No. 127, ("Opposition" or "Opp.")

11    confirms that Plaintiffs' allegations of Microsoft's "wrongdoing" all postdate OpenAI's founding.

12    All the allegations against Microsoft are derivative of the claims against OpenAI. Plaintiffs do not

13    plead allegations against Microsoft with the necessary specificity and do not identify wrongful

14    conduct by Microsoft. Each of the non-stayed counts alleged against Microsoft is fatally flawed

15    and should be dismissed.

16        Plaintiffs do not dispute the elements of the non-stayed counts but respond by pointing to

17    parts of the FAC that are equal parts generic (*e.g.*, "The For-Profit Entities and Microsoft …

18    draft[ed] and execut[ed] exclusive licensing and other contracts …") (FAC ¶ 434)) and conclusory

19    (*e.g.*, Microsoft "loot[ed] OpenAI, Inc. of its intellectual property and employees") (FAC ¶ 325)).

20    Yet that cannot overcome Plaintiffs' failure to allege (1) that Microsoft had actual contemporaneous

21    knowledge of Musk's supposed agreement with OpenAI, or that (2) Microsoft did anything that

22    would provide a basis for any of the counts. At best, the FAC alleges that Microsoft ***should have***

23    ***known*** about the supposed terms contained in emails ***not involving Microsoft***, but alleges no facts

24    plausibly suggesting ***actual knowledge***. And all Microsoft allegedly did was feed OpenAI's need

25    for computing resources by entering into an arms' length commercial agreement with OpenAI to

26    

27    [1] Pursuant to the Court's direction at the April 4, 2025, CMC (*see* Transcript at 6:9-10) this Reply
     addresses only Counts 4, 5, 8, 21, and 24-26, none of which names Hoffman or Templeton as a

28    Defendant. The Court stayed the remaining counts against Microsoft.

- 1 -

1   provide compute, and license OpenAI's technology in return. FAC ¶¶ 112, 133. That does not

2   suffice to salvage any of the non-stayed counts against Microsoft, which fail for the following

3   reasons:

4   - **Tortious Interference (Count 5).** The FAC fails to allege that Microsoft actually knew

5   about any supposed contract between Musk and OpenAI or that Microsoft induced a

6   breach or disruption of the purported contract.

7   - **Aiding and Abetting Fraud / Breach of Fiduciary Duty (Counts 8, 21, 24)**. The FAC

8   does not allege that Microsoft had actual knowledge of any underlying wrong,

9   substantially assisted any violation, or engaged in any fraudulent conduct meeting Rule

10   9(b)'s heightened pleading standard.

11   - **RICO Claims against Microsoft (Counts 25-26).** The FAC does not allege that

12   Microsoft committed any predicate acts, and Plaintiffs cannot impute OpenAI's alleged

13   conduct to Microsoft because the FAC does not allege (i) knowing participation, (ii)

14   intent, and (iii) participation at the time fraud was committed by a co-schemer.

15   - **Quasi-contract / Unjust Enrichment (Count 4).** There is no such stand-alone claim

16   under California law, and the FAC fails to adequately allege any claim against Microsoft

17   that supports restitutionary relief.

18       Plaintiffs have now drafted and refined their pleadings three times, including a State Court

19   complaint[2] and two complaints in Federal Court. Every iteration arises from the same nucleus of

20   factual allegations. The first two complaints did not name Microsoft as a defendant. The third

21   does. But none of the complaints, including the FAC, asserts any factual basis for plausibly

22   claiming that Microsoft had knowledge of any alleged terms of donation, acted wrongfully, or

23   substantially assisted a predicate wrong. That is fatal under California and Federal law. The Court

24   should dismiss Plaintiffs' non-antitrust claims against Microsoft with prejudice.[3]

25

26   _____

[2] *See* Dkt. No. 64-11 Ex. 8.

27   [3] To the extent that the Court dismisses the Counts against OpenAI on which the Counts against
Microsoft are predicated (Counts 1, 7, 20, 22, 25, and 26), the derivative claims against Microsoft

28   (Counts 5, 8, 21, and 24-26) must also be dismissed.

- 2 -

1

## II.    ARGUMENT

2    As a threshold matter, the Opposition paints a picture about Microsoft's supposed

3 knowledge and actions that is not actually supported by any plausibly alleged facts in the FAC.

4 This is unsurprising, as Plaintiffs cannot plausibly plead such facts. In fact, the FAC paragraphs

5 Plaintiffs rely upon in their Opposition allege very little about Microsoft, especially when stripped

6 of the allegations that are specific to OpenAI without mention of Microsoft, and those that contain

7 purely conclusory or irrelevant allegations. These Microsoft-only allegations are:

8    • Microsoft sold compute to OpenAI starting in 2016 (FAC ¶¶ 98-99, 112, 159, 288-289).

9    • Microsoft licensed OpenAI's technology (FAC ¶¶ 133-134, 146-147, 155, 157, 178,

10    180, 288-289, 325, 434, 477).

11    • Microsoft conducted due diligence, invested in, and took a stake in OpenAI (FAC ¶¶

12    113, 118, 124-126, 147, 154, 159, 196-198, 323, 432, 475, 496, 523).

13    • Reid Hoffman served on OpenAI's Board of Directors and Deannah Templeton was a

14    Board observer (FAC ¶¶ 163-165, 168, 374-375, 432, 524).

15    • Microsoft was involved as an investor and business partner during Altman's firing and

16    subsequent rehiring in 2023 (FAC ¶¶ 148, 154-161, 524).

17    The remainder of the allegations the Opposition cites do not  mention Microsoft (*see, e.g.,*

18 FAC ¶¶ 93, 105-109, 114-117, 119-123, 127, 167, 173-177, 201, 251-252, 256-257, 277-283, 322,

19 431, 474), make purely conclusory statements without factual basis (*see, e.g.,* FAC ¶¶ 241-242,

20 254, 532-537), or are irrelevant to the counts at issue (*see, e.g.,* FAC ¶ 179 (describing the release

21 of GPT-4)).

22    Plaintiffs cannot sustain a single cause of action against Microsoft on such threadbare and

23 conclusory pleadings. This fundamental pleading problem pervades every cause of action.

24    **A.    The FAC Does Not State a Tortious Interference Claim (Count 5)**

25    In particular, Plaintiffs' tortious interference claim fails because Plaintiffs do not

26 sufficiently plead that Microsoft actually knew about a contract between Musk and OpenAI or

27 that it induced a breach or disruption of the purported contract—elements Plaintiffs do not deny

28

- 3 -

1    they must plausibly plead to state a claim. *See Pac. Gas & Elec. Co. v. Bear Stearns & Co.*, 50

2    Cal. 3d 1118, 1126 (1990) (listing elements); Opening Br. at 20.

3         *First*, the FAC fails to allege "non-conclusory facts to show" that Microsoft was "aware

4    of" any supposed contract between OpenAI and Musk. *See Sun Grp. U.S.A. Harmony City, Inc.*

5    *v. CRRC Corp. Ltd.*, 2018 WL 10689420, at *11 (N.D. Cal. July 9, 2018); *see also Lynwood Invs.*

6    *Cy Ltd. v. Konovalov*, 2021 WL 1164838, at *15 (N.D. Cal. Mar. 25, 2021) (dismissing tortious

7    interference with contract claim because "conclusory" allegations failed to "demonstrate that the

8    [defendants] knew about any contracts"). The FAC points to alleged email communications

9    between Altman and Musk to support Plaintiffs' claim that there was a contract. FAC ¶ 251. But

10   none of those emails, allegedly exchanged over years, was sent to or from Microsoft. And the

11   FAC fails to specifically allege or even suggest that Microsoft knew about, had access to, or

12   reviewed these emails. Instead, the FAC merely concludes—without any supporting facts—that

13   "on further information and belief, Microsoft knew of Musk's donations and the conditions on

14   which they were made." FAC ¶ 323 (Count 8); *see also id*. ¶ 432 (Count 21) (same); ¶ 475 (Count

15   24) (same). Microsoft's lack of knowledge of the alleged contract—which supposed knowledge

16   Plaintiffs implausibly premise on Musk's exchange of emails with Altman over an almost four-

17   year period—defeats the tortious interference claim against Microsoft. *See Pac. Gas & Elec. Co*.,

18   50 Cal. 3d at 1126; *Sun Grp. U.S.A.* at *11; *Lynwood Invs*. at *15.

19        Unable to show Microsoft's actual knowledge of any such agreement, Plaintiffs' two-

20   paragraph response on this count (Opp. at 18) relies upon Microsoft's alleged due diligence before

21   investing in OpenAI. FAC ¶ 285. But this paragraph, at most, suggests that Microsoft ***should have***

22   ***known*** about the contract between Musk and OpenAI by reviewing "the formation documents and

23   investment term sheets" (not the Musk/Altman emails). A tortious interference claim, however,

24   requires actual knowledge, not constructive knowledge of a contract's existence. *See Sun Grp.*

25   *U.S.A.* at *11; *Lynwood Invs*. at *15. Plaintiffs do not cite any authority otherwise.

26        *Second*, the FAC fails to allege that Microsoft actually induced a breach. Beyond the

27   conclusory allegation that Microsoft "leverag[ed] its position as OpenAI's exclusive compute

28   supplier to induce OpenAI's breach" (Opp. 18, FAC ¶ 288), the FAC alleges no facts explaining

- 4 -

1    *how* Microsoft induced an alleged breach or disruption of the contract. *See supra* at 3. At most,

2    the FAC alleges that Microsoft provided computing resources to OpenAI, which resources

3    Plaintiffs do not deny allowed OpenAI to further its mission to research and develop GenAI

4    technology.[4] But Plaintiffs do not and cannot allege facts plausibly showing that providing these

5    resources induced a breach or disruption of a charity's purpose—whether embodied in a contract

6    or otherwise—to generally seek to develop research for the public benefit. Indeed, nothing about

7    Microsoft's alleged supply of compute to OpenAI or its licensing of OpenAI's technology is

8    incompatible with OpenAI's purpose or mission, particularly given the FAC admits that OpenAI

9    needs but cannot supply its own compute. FAC ¶ 112. Nonprofits commonly do business with for-

10   profit entities, and there is nothing wrongful with their doing so. In fact, it is an economic necessity

11   that tax authorities and courts have long recognized. *See, e.g., Plumstead Theatre Soc., Inc., v.*

12   *C.I.R.*, 675 F.2d 244, 244-45 (9th Cir. 1982) (organization's sale of portion of rights in a theatrical

13   production to outside investors did not revoke its status as a nonprofit "organized and operated

14   exclusively for charitable and educational purposes"). Such common collaborations include, for

15   example, universities granting for-profit entities licenses to commercialize their IP.[5]

16       For all these reasons, the Court should dismiss Musk's tortious interference claim against

17   Microsoft with prejudice.

18       **B.    The FAC Does Not State an Aiding and Abetting Claim (Counts 8, 21, 24)**

19       The FAC's aiding and abetting claims against Microsoft also fail because Plaintiffs again

20   do not allege that Microsoft had actual knowledge of any alleged wrongdoing by a third party, do

21   not allege that Microsoft substantially assisted any violation, and do not adequately allege any

22   fraudulent conduct meeting Rule 9(b)'s heightened pleading standard. Plaintiffs agree that to state

23   this claim, they must allege: (1) an underlying tortious act by a third party, (2) knowledge that the

24   act constituted a wrong; and (3) substantial assistance or encouragement to so act. *See Casey v.*

25   _____

26   [4] The FAC's conclusory (and erroneous) allegations about Microsoft's purported control of
     OpenAI also do not amount to an inducement of breach or disruption of any contract with Musk.
     If Microsoft did control OpenAI (and it did not and does not), it could not tortiously interfere with

27   its own contract. *See Applied Equip. Corp. v. Litton Saudi Arabia, Ltd.*, 7 Cal. 4th 503, 514 (1994).

28   [5] *See, e.g.*, UCSF Enters Drug Discovery Agreement with Genentech, *available at*
     https://www.ucsf.edu/news/2010/02/98234/ucsf-enters-drug-discovery-agreement-genentech.

- 5 -

DEFENDANT MICROSOFT CORPORATION'S REPLY IN SUPPORT OF MOTION TO DISMISS FIRST
AMENDED COMPLAINT                    4:24-CV-04722-YGR

1    *U.S. Bank Nat. Ass'n*, 127 Cal. App. 4th 1138, 1144 (2005); *AngioScore, Inc. v. TriReme Med.,*

2    *LLC*, 70 F. Supp. 3d 951, 957 (N.D. Cal. 2014) (Gonzalez Rogers, J.) ("to state a cause of action

3    against a corporate entity for aiding and abetting a fiduciary's breach of his or her duty of loyalty,

4    a plaintiff must allege (1) knowledge of the fiduciary's breach and (2) substantial participation in

5    the breach."). *See also* Opening Br. at 21.

6          And they do not deny that a plaintiff must plead facts that plausibly establish actual

7    knowledge. *See Casey*, 127 Cal. App. 4th at 1145 (to plead aiding and abetting an intentional tort,

8    including fraud, "a defendant must have actual knowledge of the specific primary wrong the

9    defendant substantially assisted") (cleaned up); *Namer v. Bank of Am., N.A.,* 2017 WL 1180193,

10   at *5 (S.D. Cal. Mar. 30, 2017) (to plead aiding and abetting breach of fiduciary duty,

11   "[b]oilerplate and conclusory allegations are insufficient to establish that a [defendant] had actual

12   knowledge" of a third party's breach of fiduciary duty). In other words, "[k]nowledge is the crucial

13   element." *Casey*, 127 Cal. App. 4th at 1145.

14         Plaintiffs' aiding and abetting claims rest on the same conclusory and insufficient

15   allegations of knowledge as Musk's tortious interference claim, and nothing in Plaintiffs'

16   Opposition overcomes this fatal flaw. *See supra*, Section II.A. Nor does alleged constructive

17   knowledge suffice. Again, the FAC asserts only that Microsoft had knowledge of OpenAI's

18   formation documents through its due diligence (FAC ¶ 323), which, as with the tortious

19   interference claim, is not enough to state a claim. *See Lorenz v. E.W. Bancorp, Inc*., 2016 WL

20   199392, at *8 (C.D. Cal. Jan. 14, 2016) (merely alleging that an investigation by a third party

21   "*would have* set off alarm bells" does not plead knowledge of wrongdoing) (italics in original);

22   Opening Br. at 21.

23         And of course, without actual knowledge of the alleged Musk/OpenAI contract, Microsoft

24   could not have known that OpenAI's actions were allegedly wrongful. Plaintiffs do not and cannot

25   plead the second element of aiding and abetting—knowledge that the underlying act constituted a

26   wrong.

27         Nor does the FAC allege that Microsoft substantially assisted the underlying violation (the

28   alleged fraud in Count 7, the alleged breach of trust in Count 20, or the alleged breach of fiduciary

- 6 -

1    duty in Count 22). As discussed *supra* at 3-5, the FAC merely alleges ordinary-course agreements

2    by Microsoft to supply OpenAI with compute (a necessary input for OpenAI's business, as the

3    FAC repeatedly alleges) and to license OpenAI's technology on a non-exclusive basis. The FAC

4    does not explain—nor could it—how these agreements amount to substantial assistance to commit

5    a fraud or breach a fiduciary duty. Nor does the FAC explain, other than in impermissibly

6    conclusory terms, how the alleged substantial assistance injured Musk. Plaintiffs' Opposition

7    offers no authority permitting Plaintiffs to overcome these fatal pleading flaws.

8         Finally, Plaintiffs do not deny that fraud claims must meet the heightened pleading

9    standard of Rule 9(b). Plaintiffs' allegations of substantial assistance in the FAC lack the "who,

10   what, when, where, and how of the misconduct alleged." *Kearns v. Ford Motor Co.*, 567 F.3d

11   1120, 1126 (9th Cir. 2009). As to substantial assistance, the Opposition cites only three paragraphs

12   containing invective about "looting" but tellingly limited to allegations about exclusive licensing

13   and contracting. *See* Opp. at 19 (citing ¶¶ 325, 434, and 437). As explained *supra* at 4-5, these

14   commercial transactions do not amount to inducement of a contract breach, and for the same

15   reason they do not constitute substantial assistance to commit any tort. Plaintiffs cannot meet Rule

16   9(b)'s heightened pleading standard by repeating vague and conclusory statements that Microsoft

17   was somehow bound by email terms Plaintiffs do not allege it even knew about.

18        **C.    The FAC Does not State Any RICO Claim Against Microsoft (Counts 25-26)**

19        Plaintiffs effectively admit they do not allege any predicate acts by Microsoft but rather

20   rely on predicate acts allegedly committed by the OpenAI Defendants. FAC ¶ 502 ("The predicate

21   acts by Microsoft . . . were committed by Altman, Brockman, and/or representatives of such

22   entities . . ."). This deficiency dooms Plaintiffs' RICO claims against Microsoft. *See McLaughlin

23   v. Anderson*, 962 F.2d 187, 192 (2d Cir. 1992) ("the bare minimum of a RICO charge is that a

24   defendant personally committed or aided and abetted the commission of two predicate acts.").

25        Plaintiffs agree that they must allege each of the following elements as to Microsoft: "(1)

26   conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as 'predicate

27   acts') (5) causing injury to plaintiff's business or property." *Coronavirus Rep. v. Apple, Inc.*, 85

28   F.4th 948, 958 (9th Cir. 2023) (citation omitted); Open. Br. at 23. When the pattern of racketeering

- 7 -

DEFENDANT MICROSOFT CORPORATION'S REPLY IN SUPPORT OF MOTION TO DISMISS FIRST
AMENDED COMPLAINT                    4:24-CV-04722-YGR

1    activity alleged is based on wire fraud, plaintiffs must plead, with heightened particularity, "(A)

2    the formation of a scheme to defraud, (B) the use of the . . . wires in furtherance of that scheme,

3    and (C) the specific intent to defraud." *Eclectic Props. E., LLC* v. *Marcus & Millichap Co.,* 751

4    F.3d 990, 997 (9th Cir. 2014). Plaintiffs do not come close to meeting this standard.

5          Nor does their new "co-schemer" theory suffice to state a claim against Microsoft based

6    on imputing OpenAI's conduct to Microsoft. For this, Plaintiffs rely on a criminal fraud case,

7    *United States v. Stapleton,* 293 F.3d 1111 (9th Cir. 2002). But that is not the claim they alleged,

8    and even if the test stated there did apply here (and it does not), Plaintiffs' allegations would still

9    fall far short. This is so because Plaintiffs do not allege (i) knowing participation, (ii) intent, or

10   (iii) participation at the time fraud was committed by a co-schemer. *See id*. at 1117-18.

11                    **1.    The FAC Alleges No Facts that Microsoft Was a "Knowing**
                          **Participant" in the Alleged Scheme**
12

13         Plaintiffs characterize Microsoft's role in the alleged RICO scheme as "helping

14   Defendants misappropriate, conceal, and monetize OpenAI's technology." Opp. at 20. But, again,

15   the FAC alleges only that Microsoft invested in OpenAI, sold compute to OpenAI, and obtained

16   a license for OpenAI's technology. FAC ¶¶ 99, 125, 133-34, 178; *see also supra* at 3-5. Plaintiffs

17   also make vague and conclusory allegations that Microsoft was somehow involved in the creation

18   of the for-profit entities but do not—because they cannot— provide any factual allegations to

19   support that assertion (because no such facts exist).[6]

20         Although Plaintiffs argue that the FAC "meticulously details Microsoft's specific

21   participation," Opp. at 20, the reality is that the FAC uses colorful language to portray Microsoft's

22   ordinary-course business interactions with OpenAI as nefarious. *See supra* at 3-5. Plaintiffs'

23   Opposition cites three "allegations" to establish Microsoft's knowing participation in a RICO

24   scheme. These passages, however, reveal that the FAC pleads nothing more than conclusory

25   allegations or allegations irrelevant to the question of knowing participation in a RICO scheme.

26   ─────────────

27   [6] As alleged in the FAC, the "for-profit" entity was incorporated in September 2018, and
     "launched" on March 11, 2019. *Id*. ¶ 114. Microsoft's first investment in and agreement to
     exclusively supply compute to OpenAI, however, allegedly occurred later, in July 2019. *Id*. ¶ 112.
28   There is no allegation bridging this time gap.

- 8 -

1   *See* FAC ¶ 496 (naked conclusion that Microsoft was aware of Altman/Brockman unlawful

2   conduct); ¶ 285, ¶ 323 (assertion that due diligence would have revealed OpenAI's charitable

3   purpose); and ¶ 158 (Microsoft CEO's statement about Microsoft's relationship with OpenAI).

4   At best, the FAC alleges the Microsoft ***should have known*** that OpenAI was a nonprofit

5   organization through its "investment due diligence." *Id*. ¶¶ 285, 323. But Plaintiffs do not allege

6   any facts or explain why Microsoft's investment in and doing business with a nonprofit

7   organization would rise to knowing participation in a RICO scheme to defraud Musk. *See In re*

8   *JUUL Labs, Inc., Mktg., Sales Pracs., & Prods. Liab. Litig.*, 497 F. Supp. 3d 552, 603 (N.D. Cal.

9   2020) (dismissing RICO claims where allegations of investment and marketing agreements

10  between two companies were insufficient to show a RICO enterprise "as opposed to going into

11  business with [the alleged co-schemer] to support the general business . . . for their mutual

12  benefit"). As in *JUUL Labs*, Microsoft's decision to do mutually beneficial business with OpenAI

13  is not enough to support RICO claims.

14  
15  **2.      The FAC Fails to Allege that Microsoft Had the Requisite Intent to Defraud**

16  Even under the Opposition's inapplicable co-schemer theory, Plaintiffs have not met the

17  requirement to plead intent to defraud "generally." *See Sanford v. MemberWorks, Inc.*, 625 F.3d

18  550, 558 (9th Cir. 2010); Fed.R.Civ.P. 9(b). Once again, they point only to conclusory or irrelevant

19  statements to show "intent" where none was alleged. *See* FAC ¶ 325 (conclusory allegation of

20  Microsoft's substantial assistance through contracting and licensing); ¶ 498 (conclusory allegation

21  that Microsoft acted "in concert" with OpenAI's transfer of assets to affiliates); ¶¶ 154 and 156

22  (Microsoft hired Altman and Brockman and solicited other OpenAI employees); ¶ 523 (Microsoft

23  supplied compute and pressured OpenAI to reinstate Altman); and ¶¶ 161, 168, and 524 (Microsoft

24  picked new OpenAI Board members and obtained a Board observer seat). Under the most

25  generous interpretation, these statements might show Microsoft's intent to protect its investment

26  and collaboration with OpenAI, but they do not show an intent to defraud Musk or anyone else.

27  FAC ¶¶ 488-89 (alleging that only Altman and Brockman, not Microsoft, had a "specific intent to

28  defraud Musk").

- 9 -

1

2

### 3. The FAC Alleges No Facts Showing Microsoft's Alleged Participation in a Scheme with a Co-schemer Who Contemporaneously Committed Fraud

3

4

5

6

7

8

9

The FAC's alleged predicate acts boil down to alleged misrepresentations by Altman to Musk *before* Microsoft's involvement with OpenAI. Microsoft began selling compute to OpenAI in 2016 (FAC ¶ 99), but Plaintiffs allege the "participation" began when Microsoft invested in and licensed OpenAI's technology in 2019 (FAC ¶ 112, 496). The last "predicate act" in the FAC occurred in 2017, when Altman and Brockman purportedly reassured Musk they were committed to the nonprofit concept.[7] *Id*. ¶ 488. By Plaintiffs' own allegations, Microsoft was not even an alleged participant during the time the "fraudulent" acts were occurring. *Id*. ¶ 112.

10

11

12

13

14

15

16

17

18

Additionally, every "allegation" Plaintiffs cite in their Opposition to support Microsoft's "participation" in the alleged scheme is conclusory and/or irrelevant. *See* FAC ¶ 496 (conclusion of aiding and abetting through provision of capital, unspecified advice and encouragement); ¶ 497 (naked allegation of a scheme); ¶ 492 (conclusory allegation that Microsoft acted "in concert" with Altman and Brockman to invest Musk's funds); ¶ 323 (conclusory allegation of knowledge because Microsoft "invest[ed]" money in OpenAI); ¶ 496 (Microsoft "siphon[ed]" and "exploit[ed]" OpenAI's assets); ¶ 125 (Microsoft owns a stake in the entity to which OpenAI's IP was "diverted"); and ¶¶ 196-98 (conclusion that Microsoft played a role in OpenAI's conversion and that Microsoft stands to earn substantial revenue from its relationship with OpenAI).

19

20

21

22

23

24

Even assuming, inconceivably, this alleged dispute between Musk and OpenAI rises to a fraudulent RICO scheme, the allegations make clear that Microsoft's supposed role is based entirely on its business dealings with OpenAI, and again Microsoft's "participation" came *after* the allegedly fraudulent acts. Attempting to hold Microsoft liable for a business dispute between Musk and OpenAI far exceeds the scope of RICO. The Court should dismiss Plaintiffs' Section 1962(a)-(c) RICO claims against Microsoft with prejudice.

25

26

27

28

---

[7] In an attempt to extend the alleged timeframe of predicate acts, Plaintiffs vaguely allege that Defendants made false or misleading statements on their website from 2015 to the present. FAC ¶ 493. Tellingly, those allegations give no details about when those statements were made, what the statements were, who made them, how they were false or misleading, or any other detail necessary to meet Rule 9(b)'s heightened standard for pleading fraud.

- 10 -

1          **4.      The Conspiracy Allegations Against Microsoft Are Likewise Deficient**

2          The Section 1962(d) RICO conspiracy claim fails not only because the underlying RICO

3    claim fails, *see Sanford*, 625 F.3d 550 at 559, but also for (once again) lack of allegations regarding

4    Microsoft's knowledge of and agreement to participate in a fraudulent scheme. *See Howard v.*

5    *Am. Online Inc*., 208 F.3d 741, 751 (9th Cir. 2000); *see also Lewis v. Sporck*, 612 F. Supp. 1316,

6    1323 (N.D. Cal. 1985).

7          Plaintiffs' Opposition cites 26 paragraphs in the FAC as demonstrating Microsoft's alleged

8    knowledge of and agreement to engage in the supposed RICO scheme. But only nine of those

9    paragraphs even arguably reference Microsoft:

10         • Paragraphs 98-99 use accusatory and conclusory language to try to impute a
            nefarious purpose to a routine business arrangement whereby Microsoft sold
11          compute to OpenAI. These paragraphs say nothing about Microsoft's knowledge of
            or agreement to engage in a RICO scheme.
12

13         • Paragraphs 124-127 do nothing more than detail that Microsoft is an investor in
            OpenAI Global, LLC, and do not speak to Microsoft's knowledge of or agreement
14          to a RICO scheme.

15         • Paragraphs 133-134 reference Microsoft's license to OpenAI technology. They
            allege nothing that would constitute knowledge of or agreement to a RICO scheme.

16         • Paragraphs 147-148 make conclusory allegations about Microsoft's "dominance"
            over OpenAI but contain no facts suggesting knowledge of or agreement to
17          participate in a RICO scheme.

18   The above nine paragraphs contain nothing that could plausibly support an inference that

19   Microsoft had knowledge of or an agreement to engage in a RICO conspiracy with OpenAI. The

20   remaining 17 paragraphs cited in the Opposition (FAC ¶¶ 82-86 and 304-315) detail only the

21   allegedly fraudulent interactions between Altman and Musk and do not reference Microsoft at all.

22   These paragraphs do not speak to Microsoft's knowledge or agreement in any way.

23         The Court should dismiss Counts 25-26 as to Microsoft with prejudice.

24         **D.      The FAC Does Not State a Quasi-Contract / Unjust Enrichment Claim
                     (Count 4)**
25

26         Finally, Musk's claim for unjust enrichment (Count 4) fails because it merely is a remedy

27   for an alleged contract that does not involve Microsoft. "Unjust enrichment is not a cause of action.

28   It is just a restitution claim." *De Havilland v. FX Networks*, LLC, 21 Cal. App. 5th 845, 870 (2018)

- 11 -

1   (cleaned up). *See also* April 4, 2025 CMC Transcript at 30:14-15 ("Unjust enrichment is a form

2   of restitution. It is not a standalone cause of action in California . . . ."). Because, as explained, all

3   non-antitrust counts should be dismissed against Microsoft, there is no cause of action to support

4   any such remedy. Accordingly, Plaintiffs' unjust enrichment claim against Microsoft must be

5   dismissed.[8]

6   **III.    CONCLUSION**

7           Plaintiffs have not alleged and cannot allege that Microsoft had actual knowledge of any

8   specific terms that Musk alleged were agreed to or conditioned his donations, or that it did

9   anything to substantially assist any underlying violation. The only allegations are implausibly thin

10  and cannot satisfy *Twombly*. "Determining whether a complaint states a plausible claim for relief

11  ... [is] a context-specific task that requires the reviewing court to draw on its judicial experience

12  and common sense." *Papapietro v. Trans Union LLC*, 2013 WL 3803315, at \*2 (N.D. Cal. July

13  19, 2013) (Gonzalez Rogers, J.) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). At this point,

14  common sense dictates that if Plaintiffs could have pled Microsoft's actual knowledge, wrongful

15  conduct, or substantial assistance, they would already have done so.

16          For the foregoing reasons, the Court should grant Microsoft's Motion to Dismiss Counts

17  4, 5, 8, 21, and 24-26 without leave to amend.

18

19

20

21

22

23

24

25

---

26  [8] The FAC also does not allege that Microsoft did anything wrong. *See De Havilland*, 21 Ca. App. 5th at 870 ("There being no actionable wrong, there is no basis for the relief."); *see also supra* at 3-5. And the FAC fails to sufficiently identify any benefit to Microsoft that came at the expense of Musk. Merely repeating that Defendants have been "unjustly enriched at Musk's expense," Opposition to OpenAI's Motion at 11, without any supporting factual allegations, does not meet the plausibility test under *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).

DEFENDANT MICROSOFT CORPORATION'S REPLY IN SUPPORT OF MOTION TO DISMISS FIRST
AMENDED COMPLAINT                    4:24-CV-04722-YGR

1

2   DATED: April 10, 2025                          Respectfully Submitted,

3                                                  DECHERT LLP

4

5                                                  By:   */s/ Russell P. Cohen*
                                                         Russell P. Cohen (SBN 213105)
6                                                        Russ.cohen@dechert.com
                                                         Howard M. Ullman (SBN 206760)
7                                                        Howard.ullman@dechert.com
                                                         45 Fremont Street, 26th Floor
8                                                        San Francisco, CA 94105
                                                         Telephone: (415) 262-4500
9                                                        Facsimile: (415) 262-45555

10

11                                                       Nisha Patel (SBN 281628)
                                                         Nisha.patelgupta@dechert.com
12                                                       DECHERT LLP
                                                         633 West 5th Street, Suite 4900
13                                                       Los Angeles, CA 90071
                                                         Telephone: (213) 808-5700
14                                                       Facsimile: (213) 808-5760

15                                                       Andrew J. Levander (admitted *pro hac vice*)
                                                         Andrew.levander@dechert.com
16                                                       DECHERT LLP
                                                         Three Bryant Park
17                                                       1095 Avenue of the Americas
                                                         New York, NY 10036
18                                                       Telephone: (212) 698-3500
                                                         Facsimile: (212) 698-3599
19

20                                                       John (Jay) Jurata, Jr. (admitted *pro hac vice*)
                                                         Jay.jurata@dechert.com
21                                                       DECHERT LLP1900 K Street, N.W.
                                                         Washington, DC 20006
22                                                       Telephone: (202) 261-3300
                                                         Facsimile: (202) 261-3333
23

24                                                       *Attorney for Defendants Microsoft*
                                                         *Corporation, Reid Hoffman, and Deannah*
25                                                       *Templeton*

26

27

28
                                        - 13 -

DEFENDANT MICROSOFT CORPORATION'S REPLY IN SUPPORT OF MOTION TO DISMISS FIRST
AMENDED COMPLAINT                          4:24-CV-04722-YGR