1  Marc Toberoff (S.B. #188547)
   *mtoberoff@toberoffandassociates.com*
2  Jaymie Parkkinen (S.B. #318394)
   *jparkkinen@toberoffandassociates.com*
3  TOBEROFF & ASSOCIATES, P.C.
4  23823 Malibu Road, Suite 50-363
   Malibu, CA 90265
5  Telephone: (310) 246-3333
   Facsimile: (310) 246-3101
6
7  *Attorneys for Plaintiffs Elon Musk,*
   *Shivon Zilis, and X.AI Corp.*
8
                    **UNITED STATES DISTRICT COURT**
9                  **NORTHERN DISTRICT OF CALIFORNIA**
10

11  ELON MUSK, et al.,                     Case No. 4:24-cv-04722-YGR

12              Plaintiffs,                 Assigned to Hon. Yvonne Gonzalez Rogers

13     v.                                   **PLAINTIFFS' SUPPLEMENTAL**
                                            **MEMORANDUM IN OPPOSITION TO**
14  SAMUEL ALTMAN, et al.,                  **THE MICROSOFT DEFENDANTS'**
                                            **MOTION TO DISMISS RE: HOFFMAN/**
15              Defendants.                 **TEMPLETON'S STATUS AS**
                                            **DEFENDANTS**
16

17

18

19

20

21

22

23

24

25

26

27

28

**INTRODUCTION**

Microsoft Corp., Reid Hoffman, and Deannah Templeton (the "Microsoft Defendants") seek dismissal of Hoffman and Templeton from Count 17, alleging California Unfair Competition Law ("UCL") violations for their service as interlocking directors, based on the Court's earlier denial of a preliminary injunction on Count 16, alleging violations of the Clayton Act based on similar facts, but notably different legal standards and scope of protection, 15 U.S.C. § 19. Dkt 121 at 8-11 (the "Order"). Pursuant to the Court's directive, Plaintiffs submit this supplemental brief to clarify why dismissal of Hoffman and Templeton is unwarranted despite the common factual nucleus.

*First*, the Order addressed Plaintiffs' standing under Count 16 solely as a matter of mootness. Dkt. 121 at 11. The interlock was illegal, as the Court noted "[n]either [Hoffman nor Templeton] have any business being on that board[.]" Hr. Trans. of 2/4/25 at 40, ln. 5. Accepting for purposes of this submission the Court's ruling that prospective relief claims can be mooted by defendants' voluntary cessation of illegal activity, claims for *damages* cannot be rendered moot by such cessation.[1] Plaintiffs pled damages under Count 16, FAC ¶ 382; *see id.* ¶¶ 227, 246, 380, and maintain that Hoffman and Templeton should remain defendants for these damage claims at the Phase Two trial.

*Second*, accepting for purposes of this submission the Court's analysis, Plaintiffs also expressly alleged in the FAC that Hoffman has continuing interlocks through his Greylock partnership under the deputization/indirect interlock theory revitalized by the FTC. FAC ¶ 375. While Plaintiffs expressly disclaimed this theory for purposes of a preliminary injunction, they preserved it for trial. Dkt. 46 at 14 n.10. Indeed, further pre-discovery investigations revealed *three more* indirect interlocks by Hoffman, bringing his current known total to four. Dkt. 73 at 17. Plaintiffs maintain Hoffman should remain a party to Count 16 for all purposes at the Phase Two trial.

---

[1] Mindful of the Court's indication that further briefing is not necessary on this topic, Dkt. 121 at 11 n.8, and to ensure this response is limited to only those issues raised at the April 4, 2025 Case Management Conference, Plaintiffs assume the Order is correct as to mootness for purposes of this response, but they respectfully do so without prejudice to or waiver of their right to review.

*Third*, the Court may defer ruling on the above, given they are Phase Two matters. If Count 17 is bifurcated, with antitrust claims set for the Phase Two trial, the Court may also postpone its decision on the UCL issue as well. However, if addressed now, both the United States Department of Justice and FTC (collectively, the "United States") have confirmed that interlock-related claims can be brought under the UCL's distinct and broader scope. Dkt. 87 at 7-10. Plaintiffs have UCL standing—a matter not addressed in the Order—to seek restitution and injunctive relief for Templeton's past interlock and Hoffman's past and continuing interlocks; Musk would never have donated to OpenAI had he known his funds would be used to pursue unlawful interlocking directorates that facilitated illegal business coordination and the sharing of competitively sensitive information for the purpose of for-profit activities. FAC ¶¶ 386, 389.

## ARGUMENT

### I.    THE ORDER DID NOT MOOT PLAINTIFFS' CLAIM FOR DAMAGES.

"Standing to seek prospective relief is analyzed separately from standing to seek retrospective relief." *Wills v. City of Monterey*, 617 F. Supp. 3d 1107, 1116 (N.D. Cal. 2022) (citing *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2210 (2021)) (holding a claim for injunctive relief moot, while holding claim for damages not moot). A claim for injunctive relief may thus be deemed moot, while a claim for damages, as Plaintiffs have alleged under the Clayton Act, remains completely viable. FAC ¶ 382. The Order addressed only standing for prospective relief, which makes sense, given it was ruling on a preliminary injunction motion. Dkt. 121 at 9-11. But there is no discussion, nor reason, why a damages claim based on past harms from interlocks, that ended just four months before filing the FAC, should be considered moot. Hoffman and Templeton's interpretation stretches the Court's Order beyond its intended scope.[2]

### II.    THE ORDER DID NOT ADDRESS HOFFMAN'S CONTINUING INTERLOCKS.

Given that Plaintiffs' Motion for a Preliminary Injunction disclaimed reliance on the indirect/deputization theory alleged in the FAC for purposes of that motion, *id*. ¶ 375; Dkt. 46 at 14

---

[2] Plaintiffs have been careful to avoid burdening the Court with briefing it has indicated is undesirable during these expedited proceedings. Dkt. 121 at 11 n.8. However, if the Court intends to dismiss the Count 16 damages claim or the claim as to Hoffman's continuing interlocks, Plaintiffs request the opportunity to fully brief these specific issues of concern.

1  n.10, the Order addressed only Hoffman and Templeton's *concluded* interlocks, Dkt. 121 at 9-11.

2  While Templeton appears at the moment to have no ongoing interlocks, Hoffman maintains at least

3  four interlocks under an indirect/deputization theory, as he remains on Microsoft's and Inflection

4  AI's boards while serving as a general partner at investment firms with the distinct power to appoint

5  representatives to the boards of competing AI companies. FAC ¶ 375; Dkt. 73 at 17; *see generally*

6  *Reading Intern., Inc. v. Oaktree Capital Management LLC*, 317 F. Supp. 2d 301, 326-31 (S.D.N.Y.

7  2003); *In re QEP Partners, LP*, No. C-4799 (FTC Oct. 10, 2023). The Court's ruling that

8  prospective relief is moot as to concluded interlocks cannot justify finding, as the Microsoft

9  Defendants urge, that damages and/or injunctive relief is moot with respect to Hoffman's

10  continuing interlocks.

**III.    PLAINTIFFS' CLAYTON ACT AND UCL CLAIMS ARE DISTINCT; THE UCL'S SCOPE IS BROAD.**

      **A.    Plaintiffs Have Pled a Plausible UCL Claim Based on Hoffman and Templeton's Interlocks.**

15       The Court's Clayton Act interlock ruling does not affect Plaintiffs' UCL claim. The UCL

16  prohibits "unfair competition," defined as "any unlawful, unfair or fraudulent business practice."

17  Cal. Bus. & Prof. Code § 17200. Its scope is "sweep[ing]" and "borrows violations of other laws . . .

18  and makes them independently actionable." *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel.*

19  *Co.*, 20 Cal. 4th 163, 180 (1999). "However, the law does more than just borrow. The statutory

20  language referring to 'any unlawful, unfair *or* fraudulent' practice makes clear that a practice may

21  be deemed unfair even if not specifically proscribed by some other law." *Id.* (emphasis in original);

22  *accord Epic Games v. Apple*. 67 F.4th 946, 1000-02 (9th Cir. 2023).

23       As the United States confirmed in its Statement of Interest, California "[c]ourts have looked

24  to Section 5 of the FTC Act and its prohibition against unfair methods of competition for guidance

25  on how to interpret California's UCL." Dkt. 87 at 7-8; *Cel-Tech*, 20 Cal. 4th at 185-86 (noting

26  California courts consider federal decisions under Section 5 to be "more than ordinarily

27  persuasive"). But, as the United States explained, the FTC Act "reaches beyond the Sherman and

28  Clayton Acts to encompass various types of unfair conduct that tend to negatively affect

competitive conditions." *Id.* at 8 (international quotation marks omitted). Thus, unlike the Clayton Act's formal, technical requirements, the UCL functions as a "catch-all" statute, reaching conduct that falls outside formalistic antitrust boundaries, including unfair practices, like those of Hoffman and Templeton, that "threaten[] an incipient violation of an antitrust law, or violate[] the policy or spirit of one of those laws." *Cel-Tech*, 20 Cal. 4th at 187; *see also* Dkt. 87 at 8-9 ("[C]ertain interlocks cannot 'escape liability through the allegedly porous wording of Section 8.'" (quoting *In re Kraftco Corp.*, 89 F.T.C. 46, 1977 WL 188540, at *13 (Jan. 11, 1977))). Applying these principles, the United States recognizes that "interlocking directorates are an unfair method of competition[.]" Dkt. 87 at 7.

This Court rejected Plaintiffs' request for preliminary relief as to the Clayton Act claim because the interlocks ended before the FAC was filed. Dkt. 121 at 9-11. However, as the United States explained in its Statement of Interest, "a potential conflict of interest or a potential frustration of competition may remain even after an interlock is resolved and even if one is unlikely to recur." Dkt. 87 at 5 (internal citations and quotation marks omitted). Specifically, "if companies use interlocking directors to exchange competitively sensitive information, they may frustrate competition so long as the information remains sensitive and in their possession." *Id.* This means that despite Hoffman's resignation and Templeton's observer role ending in July 2024, competitive harm from their information exchanges can still harm competition in the generative AI market. *Id.*

Indeed, the United States directly addressed this exact scenario: "[H]olding that a company moots a potential claim under Section 8 by simply ending an interlock would be contrary to the purpose of the statute and would significantly undermine enforcement of the Clayton Act." Dkt. 87 at 5. It emphasized that the interlock prohibition aims to "avoid the opportunity for the coordination of business decisions by competitors *and to prevent the exchange of commercially sensitive information by competitors*." *Id.* at 6 (emphasis in original) (internal quotation marks omitted). The FAC alleges precisely this type of ongoing harm, asserting that Hoffman and Templeton used their board positions to facilitate the exchange of "competitively sensitive information" between Microsoft and OpenAI. FAC ¶ 227 (alleging injury from "the exclusive exchange between OpenAI and Microsoft of competitively sensitive information, such as customer lists, pricing data, and

CASE NO. 24-CV-04722-YGR
PLS.' SUPP. MEMO RE: HOFFMAN/TEMPLETON

1    research, resulting in an unlawful competitive advantage"). Plaintiffs thus maintain, and the United

2    States' Statement of Interest confirms, that Hoffman and Templeton remain proper defendants in

3    this case and ought not escape accountability for their unlawful interlocks.

4            **B.    Plaintiffs Have Standing Under The UCL To Pursue Restitution**
             **And Injunctive Relief.**
5

6            Standing requirements under the UCL differ from those under the Clayton Act. The UCL

7    requires only that a plaintiff "suffered injury in fact and has lost money or property as a result of the

8    unfair competition." Cal. Bus. & Prof. Code § 17204. "Lost money or property—economic injury—

9    is itself a classic form of injury in fact." *Kwikset Corp. v. Superior Court*, 246 P.3d 877, 886 (2011).

10   However, "injury in fact is not a substantial or insurmountable hurdle." *Id.* at 886. Plaintiffs need

11   only "allege an 'identifiable trifle' of economic injury." *Id*. at 891 n.15.

12           Here, the Order neither found nor could have found that Plaintiffs failed to allege an injury-

13   in-fact, given the FAC's plausible allegations of both past and ongoing harm. *E.g.*, FAC ¶ 331(o)

14   (identifying harm including "colluding and conspiring to exchange confidential information and

15   trade secrets," specifically "intellectual property, customer lists, and pricing information, for the

16   purpose of fixing prices and/or otherwise substantially lessening competition."); *see also id*. ¶¶ 169,

17   227 (identifying harms including "an inability to license OpenAI technology," "an inability to

18   obtain compute from Microsoft on terms anywhere near as favorable as OpenAI receives,"

19   "difficulty recruiting scientists and other technically skilled employees," and "the exclusive

20   exchange between OpenAI and Microsoft of competitively sensitive information."). While the

21   Order held Plaintiffs lacked standing for a forward-looking injunction under the Clayton Act

22   because the interlocks had ended, this reasoning does not apply to UCL relief, which addresses a

23   broader conception of harm—not just the interlock itself, but the unfairness that persists.

                                  **CONCLUSION**

25            For the foregoing reasons, Plaintiffs respectfully request that the Court either retain

26   Hoffman and Templeton as defendants to Count 16 (Clayton Act) for the Phase Two trial or, in the

27   alternative, defer ruling on these matters pending full briefing. Regardless, Hoffman and Templeton

28   should remain defendants as to Count 17 (UCL). If the Court intends to group Count 17's antitrust-

based allegations with Plaintiffs' other antitrust claims in Phase Two, Plaintiffs consent to trying the

Hoffman/Templeton interlock issues under Count 17 in Phase Two, rather than Phase One.


DATED: April 11, 2025            Respectfully Submitted,

                                 TOBEROFF & ASSOCIATES, P.C.

                                 */s/ Marc Toberoff*
                                 Marc Toberoff

                                 *Attorneys for Plaintiffs Elon Musk*
                                 *Shivon Zilis, and X.AI Corp.*