# EXHIBIT 8

# TOBEROFF

Toberoff & Associates, P.C.
23823 Malibu Road
Suite 50-363
Malibu, CA 90265
Telephone: +1 310 246 3100

**Marc Toberoff**
Direct Line:  +1 310 246 3333
mtoberoff@toberoffandassociates.com

April 15, 2025

*Via Email*

Hon. Rob Bonta
Attorney General
California Department of Justice
1300 "I" Street
Sacramento, CA 95814-2919
rob.bonta@doj.ca.gov

### RE: <u>Denial of Relator Status in *Musk v. Altman*, No. 4:24-cv-04722 (N.D. Cal.)</u>

Dear Attorney General Bonta:

We represent Plaintiffs Elon Musk, Shivon Zilis, and xAI ("Plaintiffs") in the above referenced-matter. We are in receipt of the decision by your Supervising Deputy Attorney General Caitlin Noble denying our request for relator status (the "Decision") and urge you to reconsider this determination immediately. The Decision makes claims that are unfounded, directly contradicted by the evidence, and fails to protect the People's interests in the proper governance of California-based charities. We highlight below only a few of the numerous factual errors upon which this flawed determination is based.

The Decision contains significant mischaracterizations that suggests a lack of familiarity with Plaintiffs' First Amended Complaint ("FAC"), which they submitted with their request for relator status. For example, the statement in the Decision that both Musk and Zilis "have a personal interest in the relief sought," Decision at 3, is demonstrably false. The causes of action brought by Zilis (Counts 22-24) are exclusively derivative claims brought *on behalf of the OpenAI, Inc. charity itself*—not for personal benefit. *See* FAC ¶¶ 440, 454, 471. And while Musk brings certain claims in his individual capacity, he also pursues claims that are "urgent in terms of public, not private, consideration," as recognized by the Court. *Musk v. Altman*, No. 4:24-cv-04722-YGR (N.D. Cal.), Dkt. 121 at 1. The Decision misunderstands the broader public interest driving Musk's derivative claims for which he sought relator status and misapprehends Zilis's claims entirely.

As a further illustration of the Decision's errors, it asserts "it is not clear whether [Musk and Zilis] allege diversion of charitable assets in their federal action." *Id*. at 2. This statement is frankly perplexing, given the FAC contains numerous detailed paragraphs explicitly articulating this very allegation:

- FAC ¶ 130: "Defendants also transferred most of OpenAI, Inc.'s intellectual property to OpenAI, L.P. in 2019 and 2020…Since then, such transfers have continued apace with, for example, the issuance of patents and trademarks to OpenAI OpCo, LLC, which is listed on the U.S. Patent and Trademark Office website as the owner of most of OpenAI's registered intellectual property."

- FAC ¶ 132: "Defendants also drained the non-profit OpenAI, Inc. of most of its staff and transferred them over to the new private, for-profit company (now OpenAI OpCo, LLC), which also presently houses much of OpenAI's research and development. This strategic move conveniently shields Defendants from the public oversight and financial disclosures non-profits like OpenAI, Inc. must make."

- FAC ¶ 128: "While there is little concern with using a for-profit entity to help fundraise for a non-profit, it is quite another thing to launch a dense fleet of dozens of for-profit entities to loot the non-profit of its only valuable assets (intellectual property and employees) and facilitate veiled and unchecked profiteering, rife with conflicts, as Defendants have done."

- FAC ¶ 254(a): Defendants caused "less than all of OpenAI, Inc.'s technology to be owned by OpenAI, Inc. by, for example, assigning OpenAI, Inc.'s intellectual property to the For-Profit Entities and/or Microsoft."

The Decision twice repeats the false claim that Musk seeks to acquire OpenAI's assets for personal benefit—a narrative promulgated by OpenAI while simultaneously asserting that the bid by the Musk-led consortium was not genuine. *See* Dkt. 147. Both cannot be true. The Decision is predicated on this falsehood, despite the fact that Musk made his actual position crystal clear: "If OpenAI, Inc.'s Board is prepared to preserve the charity's mission and stipulate to take the 'for sale' sign off its assets by halting its conversion, Musk will withdraw the bid. Otherwise, the charity must be compensated by what an arms-length buyer will pay for its assets." Dkt. 117 at 2. While the Decision evidences familiarity with the federal docket, it mischaracterizes the facts by suggesting *Musk* is simply trying to purchase OpenAI's assets, when in reality, *OpenAI* is trying to sell them to enrich Sam Altman, Greg Brockman, and Microsoft.

The balance of the Decision is riddled with confounding, if not logically inconsistent, statements. *First*, despite the Attorney General's clear statutory mandate to register, supervise, and regulate California-based charities, the Decision suggests this responsibility lies with the IRS. *Id*. at 2. *Second*, the Decision notes Musk's previous counsel did not seek relator status in an entirely different case with different claims—none of which were derivative—without explaining why this non-sequitur bears on the current matter. *Id*. *Third*, the Decision circularly suggests relator status is unnecessary because the claim against Altman's self-dealing was dismissed by the federal court for lack of standing—precisely the deficiency that relator status would cure. *Id*. *Fourth*, the Decision conflates Musk's ability to bring personal claims with the entirely separate question of whether the People's interests should be represented in this litigation—the fundamental question the Decision does not meaningfully address.

We are disappointed that the Attorney General's office has refused to take action to protect the charity OpenAI, Inc., its mission, and its beneficiaries—the public. This inaction is particularly concerning given the broad support for intervention from respected organizations across the political spectrum: Public Citizen has submitted meticulously documented letters beginning in January 2024; prominent professors Lawrence Lessig of Harvard Law and Eugene Volokh of Stanford Law filed an amicus brief on behalf of numerous safety-oriented former OpenAI scientists and engineers; and just last week, a coalition of fifty-five labor and non-profit groups formally petitioned your office—all agreeing with Musk's position regarding OpenAI's preposterous conversion and explicitly calling for action.

Indeed, your office actively sought dismissal from having any role whatsoever in this case (on inapplicable grounds of sovereign immunity no less, *see* Dkts. 101 and 129 at pp. 2-4). The People now stand without representation in the sole forum deciding these weighty public issues, despite the concerns your natural constituencies have repeatedly implored you to champion.

We urge you to reverse the Decision, or at the very least remand for a more considered explanation why your office continues to permit OpenAI's egregious misconduct. We remain available to address any questions or concerns you may have regarding this matter and would welcome the opportunity for a productive dialogue.

Very truly yours,

Marc Toberoff