UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **ELON MUSK, ET AL.**, <br><br> Plaintiffs, <br><br> v. <br><br> **OPENAI, INC., ET AL.**, <br><br> Defendants. | Case No.: 4:24-CV-04722-YGR <br><br> **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS FIRST AMENDED COMPLAINT** <br><br> Re: Dkt. Nos. 101, 102, 103, 152, & 154. |

Pending before the Court are two motions to dismiss plaintiffs' First Amended Complaint (Dkt. No. 32, First Amended Complaint ("FAC").) Defendants Microsoft Corporation ("Microsoft"), Deannah Templeton, and Reid Hoffman filed one motion, (Dkt. No. 102, Motion to Dismiss First Amended Complaint ("Microsoft Mtn.")); and defendants OpenAI, Inc. ("OpenAI"), Samuel Altman, Gregory Brockman, and several for-profit entities owned and controlled by OpenAI ("the for-profit entities") filed another, (Dkt. No. 103, Motion to Dismiss First Amended Complaint ("OpenAI Mtn.")).[1] Having carefully considered the papers submitted and the pleadings in this action, and for the reasons set forth below, the Court hereby **GRANTS IN PART AND DENIES**

---

[1] The FAC also names the Attorney General of California as an involuntary defendant, and the Attorney General moves to dismiss the claim against him. (Dkt. No. 101.) The Court's order denying plaintiffs' request for a preliminary injunction disposed of the sole claim in which the Attorney General was joined. (Dkt. No. 121, Order Denying Motion for a Preliminary Injunction ("Prior Order") at 16 n.13.) As such, the Attorney General's motion is **DENIED AS MOOT.** The Court also received requests to file an amicus brief by former employees of OpenAI. (Dkt. Nos. 152 & 154.) The proposed brief contains factual assertions and does not assist the Court's understanding of the legal issues needed to resolve the instant motions. The requests for leave to file are therefore **DENIED.** Moreover, at Dkt. No. 104 the OpenAI defendants request that the Court take judicial notice of certain documents relating to litigation between the parties in state court. The Court does not find the documents helpful to its analysis of this order and the request is **DENIED.**

**IN PART** the Motions to Dismiss. As explained below, the Court grants leave to amend certain insufficiently pled claims.[2]

I. **BACKGROUND AND LEGAL FRAMEWORK**

The Court will not recount the contents of the 107-page FAC. The Court presumes the parties' familiarity with the allegations therein and the facts of this case. With respect to the legal standard, the standard is well-known and not in dispute and the Court will not elaborate here. Following the Court's decision to stay certain claims and to proceed to trial on an expedited basis as to others, the parties submitted competing proposals as to which claims the Court should include in Phase I. The Court adopted the OpenAI defendants' proposal and proceeds to evaluate the motions to dismiss as to those claims.

II. **ANALYSIS**

**A. Counts I & II: Breach of Express Contract and Breach of Implied-in-Fact Contract (Musk Against Altman and OpenAI)**

"To state a breach of contract claim, a plaintiff must assert: (1) the existence of a contract; (2) plaintiff's performance or excuse for non-performance; (3) breach of the terms of the contract; and (4) that the breach caused harm to the plaintiff." *Smith v. Nationstar Mortg. LLC*, 2019 WL 1745121, at *6 (N.D. Cal. Apr. 18, 2019). Unlike an implied contract, an express contract is "stated in words." Cal. Civ. Code, §1620. Here, the parties agree that there is no one single document that consists of a contract. At best, Musk argues that emails exchanged with various defendants between 2015 and 2019 constitute an express contract. (FAC ¶ 251). The Court disagrees. Therefore, the motion to dismiss Count I is **GRANTED**.

Although there is no express contract, Musk adequately pleads in the alternative that there is an implied-in-fact contract manifested by the alleged conduct of the OpenAI defendants. (*Id.* ¶ 260-262, 264). The FAC also adequately alleges Musk's performance, defendants' breach, and the resulting harm to Musk. The motion to dismiss Count II is **DENIED**.

---

[2] Unless stated otherwise, all claims are dismissed without leave to amend. Pursuant to Federal Rule of Civil Procedure 78(b) and Civil Local Rule 7-1(b), the Court finds this motion appropriate for decision without oral argument. Accordingly, the Court **VACATES** the hearing set for **May 28, 2025**.

### B. Count III: Breach of Implied Covenant of Good Faith and Fair Dealing (Musk Against Altman and OpenAI)

"A plaintiff asserting a claim for breach of the implied covenant of good faith and fair dealing must allege the following elements: (1) the existence of a contract; (2) the plaintiff did all, or substantially all of the significant things the contract required; (3) the conditions required for the defendant's performance had occurred; (4) the defendant unfairly interfered with the plaintiff's right to receive the benefits of the contract; and (5) the plaintiff was harmed by the defendant's conduct." *Oculus Innovative Scis., Inc. v. Nofil Corp.*, 2007 WL 2600746, at *4 (N.D. Cal. Sept. 10, 2007) (citation omitted). Plaintiff's claim for breach of the implied covenant appears to be based on the same conduct as the breach of implied contract and is therefore impermissibly duplicative. *Snapkeys Ltd. v. Google*, LLC, 442 F.Supp.3d 1196, 1210–11 (N.D. Cal. 2020). The motion to dismiss Count III is **GRANTED** with leave to amend. Any amended complaint must adequately allege behavior constituting breach of the implied covenant distinct from that giving rise to the breach of contract claim.

### C. Count IV: Breach of Quasi Contract or Unjust Enrichment (Musk Against Altman, Brockman, OpenAI, and Microsoft)

To state a claim for breach of quasi-contract (or "unjust enrichment"), a plaintiff must allege "receipt of a benefit and unjust retention of the benefit at the expense of another." *Prakashpalan v. Engstrom, Lipscomb & Lack*, 223 Cal.App.4th 1105, 1132 (2014). Plaintiff has sufficiently alleged that the OpenAI defendants unjustly retained the benefit of their conduct pled in Count II (FAC ¶¶ 260–61, 265), Count VI (*id.* ¶¶ 296–99), and Count VII (*id.* ¶¶ 305–08, 310–15). Therefore, the OpenAI defendants' motion to dismiss Count IV is **DENIED**.

Similarly, plaintiff asserts that Microsoft unjustly retained the benefit of the conduct alleged for Counts V, VIII, and XXI. Where a plaintiff's unjust enrichment claim is premised on the same factual allegations as claims that are dismissed, the claim for unjust enrichment must fail. *Gudgel v. Clorox Co.*, 514 F.Supp.3d 1177, 1188 (N.D. Cal. 2021). As set forth below, Counts V and XXI

survive the motion to dismiss. Accordingly, because the conduct for this count is based thereon, Microsoft's motion to dismiss Count IV is **DENIED**.[3]

### D. Count V: Tortious Interference with Contract (Musk Against the For-Profit Entities and Microsoft)

"The elements necessary to state a cause of action for intentional interference with contractual relations are (1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." *Mintz v. Blue Cross of Cal.*, 172 Cal.App.4th 1594, 1603 (2009) (internal cites omitted). As discussed above, Musk has adequately alleged the existence of an implied-in-fact contract with the OpenAI defendants. He has likewise sufficiently pled the defendants' knowledge of the contract, (FAC ¶ 285); acts designed to induce breach; breach; and resulting damage to plaintiff, (*id.* ¶¶ 287-89).

As to the for-profit entities, this Court recently noted that "California's 'agent's immunity rule' provides that 'duly acting agents and employees cannot be held liable for conspiring with their own principals.'" *Habr v. RxMapper, LLC*, 2025 WL 235619 at *2 (N.D. Cal. 2025) (quoting *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal.4th 503, 511 (Cal. 1994) (en banc)). OpenAI defendants properly note that the FAC alleges the for-profit entities are mere alter-egos of OpenAI itself. (*See* OpenAI Mtn. at 34; FAC ¶¶ 113, 322.) In fact, the FAC alleges just the opposite and plaintiffs cannot argue around the plain reading of their own complaint. (*See, e.g.*, FAC ¶ 322 ("The For-Profit Entities had actual knowledge that Altman and Brockman were engaging in such fraud because the For-Profit Entities were formed to help facilitate that very purpose. Further, the knowledge and intent of the officers, agents, employees, and/or owners of the For-Profit Entities, who on information and belief were aware of Altman and Brockman's

---

[3] Plaintiff must make an election to bring either a quasi-contract, or unjust enrichment claim, but not both, no later than thirty (30) days after the close of fact discovery.

fraudulent conduct, is imputed to the For-Profit Entities.").)[4] Because an agent cannot interfere with its own principle's contract under California law, the OpenAI defendants' motion to dismiss Count V is **GRANTED** and Microsoft's is **DENIED**.

### E. Count VI: Constructive Fraud (Musk Against Altman, Brockman, and OpenAI)

"To state a claim for constructive fraud under California law, a plaintiff must allege: (1) a fiduciary or confidential relationship; (2) an act, omission or concealment involving a breach of that duty; (3) reliance; and (4) resulting damage." *Fabian v. LeMahieu*, 2019 WL 4918431, at *14 (N.D. Cal. Oct. 4, 2019) (internal cites omitted).

As stated above and in the Prior Order, the Court finds Musk has adequately pled the existence of a fiduciary relationship based on a contract or charitable trust. The FAC adequately alleges a breach of that relationship, reliance and injury. The motion to dismiss Count VI is **DENIED**.

### F. Count VII: Fraud (Musk Against Altman, Brockman, and OpenAI)

Pleading fraud requires a showing of "(a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." *Lazar v. Super. Ct.*, 12 Cal.4th 631, 638 (1996) (quoting Witkin, Summary of Cal. Law Torts § 676, p. 778 (9th ed. 1988)).

The Court ruled in its prior order that the question of whether OpenAI made legally binding promises was a "toss-up." (*See* Prior Order at 13.) For purposes of the instant motion, Musk adequately alleges that the defendants promised to maintain OpenAI's non-profit status and structure in order to obtain his contributions, and that they intended to do so in order to obtain the capital needed to create a for-profit venture to enrich themselves. The statements identified as inducing such commitment are actionable non-puffery that meet Federal Rule of Civil Procedure 9(b)'s heightened pleading standards. Defendants argue the claim is barred by a three-year statute

---

[4] Nor can Musk's generalized, conclusory, and contradictory statement that "[w]ith respect to the conduct alleged in Count V, Microsoft and the For-Profit Entities did not act within any agency relationship with Altman and/or Brockman" suffice to save the claim. (*See* FAC ¶ 286.)

5

of limitations. To make the argument, they assert Altman disclosed the existence of the first for-profit entity in 2019 which effectively started the clock on Musk's fraud claim. That email, however, did not relate to OpenAI, Inc., the primary corporate entity that Musk now alleges is at the heart of the allegedly fraudulent promises. The Court therefore finds that it cannot, on this record, determine that the claim is barred by the statute of limitations. The motion to dismiss Count VII is **DENIED.**

### G. Count VIII: Aiding and Abetting Fraud (Musk Against the For-Profit Entities and Microsoft)

Where the underlying fraud is adequately pled, as here, a defendant may be liable for aiding and abetting that fraud where they "(a) know[] the other's conduct constitutes [fraud] and give[] substantial assistance or encouragement to the other to so act or (b) give[] substantial assistance to the other in accomplishing a tortious result and the person's own conduct, separately considered, constitutes a breach of duty to the third person." *See Casey v. United States Bank Nat'l. Ass'n.*, 127 Cal. App. 4th 1138, 1144, 1148 (2005).

As to the for-profit entities, the analysis is the same as it is under Count V with regard to the agent's immunity rule and OpenAI's motion to dismiss Count VIII is therefore **GRANTED.**

As to Microsoft, the FAC alleges the fraud defendants made false promises via emails from 2015 through early 2019. Microsoft's involvement in any activity that could plausibly be interpreted as assisting the transition to a for-profit entity did not begin until July 2019. (*See* FAC ¶ 112.) Even the allegations that Microsoft later learned of Altman and Brockman's promises to Musk during the course of due diligence do not plead knowledge that the statements were fraudulently made. Because later activity cannot give rise to liability for an earlier fraudulent promise, Microsoft's motion to dismiss Count VIII is **GRANTED.**

### H. Count XIX: False Advertising under California Law (Musk Against Altman, Brockman, and OpenAI)

Under California law, a defendant is liable for false advertising if, "with intent directly or indirectly to dispose of real or personal property or to perform services, professional or otherwise, or anything of any nature whatsoever or to induce the public to enter into any obligation relating

thereto," he "make[s] or disseminate[s] or cause[s] to be made or disseminated before the public . . . any statement, concerning that real or personal property or those services, professional or otherwise, or concerning any circumstance or matter of fact connected with the proposed performance or disposition thereof, which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500. "Under the false advertising law, . . . standing extends to any person who has . . . lost money or property as a result of a violation of" the statute. *Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th 310, 322 (2011) (internal cites omitted).

The claim here fails because there is no evidence Musk relied on OpenAI's public-facing statements to his detriment. The FAC notes the OpenAI website published a statement on December 11, 2015 which included promises "to benefit humanity as a whole, unconstrained by a need to generate financial return." (FAC ¶ 90.) Under the timeline as pled, however, the FAC states that "[i]n June 2015, Musk agreed to commit funding and help recruit the top scientists necessary to make Altman's project a success provided that, as promised, OpenAI, Inc. would be a non-profit . . . ." (*Id.* ¶ 88.) The exhibits submitted in support of the FAC further demonstrate that Musk himself helped author the December 2015 statements. (*See* Dkt. No. 32-5; FAC, Ex. 4.) To the extent defendants misled Musk with public-facing statements, the complaint would need to allege the existence of some statements that Musk did not help author.[5] The motion to dismiss Count XIX is **GRANTED**.[6]

I. **Count XX: Breach of Charitable Trust (Musk Against Altman, Brockman, and OpenAI)**

The Court denied the motion as to this claim in its Prior Order. (Prior Order at 15 n.11.)

---

[5] Of the statements which plaintiffs identify as violating the statute, some were posted on December 11, 2015 and others were posted at an unknown date.

[6] The false advertising claim brought under the federal Lanham Act (Claim XVIII) is brought by both Musk and xAI. Plaintiffs appear to rest this claim on a separate theory, however. Here, plaintiffs claim the Lanham Act violation injured them as direct competitors of OpenAI, not that the false statements induced them to depart with their property. Because Musk is not xAI himself, and cannot show injury as a consumer of OpenAI's products, he fails to show injury, and thus Claim XVIII is **DISMISSED** as to Musk.

7

### J. Count XXI: Aiding and Abetting Breach of Fiduciary Duty (Musk Against the For-Profit Entities and Microsoft)

There are two avenues to proving liability for this cause of action: "Liability may . . . be imposed on one who aids and abets the commission of an intentional tort if the person (a) knows the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other to so act or (b) gives substantial assistance to the other in accomplishing a tortious result and the person's own conduct, separately considered, constitutes a breach of duty to the third person.'" *Casey v. U.S. Bank Nat'l Ass'n*, 127 Cal.App.4th 1138, 1144 (2005) (quoting *Saunders v. Sup. Ct.,* 27 Cal.App.4th 832, 838-39 (1994)).

Musk brings this claim against the for-profit entities and Microsoft.

*First*, as to all named defendants, the second avenue enumerated above is unavailable to Musk, because as a threshold issue, none of these entities owed him any duty.

*Second,* as to the for-profit entities, the claim fails for the same reason described above with regard to the agency immunity rule. Musk asserts the for-profit entities are alter-egos of Altman, Brockman, and OpenAI. As explained above, under California law, an agent may not aid and abet itself.

*Third*, as to Microsoft, and also similar to the Court's reasoning above with regard to Count V, plaintiffs have plausibly alleged that Microsoft knew of the charitable trust and took steps constituting "substantial assistance or encouragement" in the violation thereof.

Therefore, OpenAI's motion to dismiss this claim is **GRANTED** and Microsoft's is **DENIED.**

### K. Counts XXII and XXIV: Breach of Fiduciary Duty (Musk and Zilis, derivatively as members of OpenAI, Against Altman and Brockman) and Aiding and Abetting Breach of Fiduciary Duty (Musk and Zilis, derivatively as members of OpenAI, Against the For-Profit Entities and Microsoft)

In ruling on plaintiffs' request for a preliminary injunction on the self-dealing claim, the Court already determined plaintiffs lack standing to bring a derivative suit on behalf of OpenAI. For the same reasons, the motions to dismiss Counts XXII and XXIV are **GRANTED.**[7]

---

[7] In the Prior Order, the Court already dismissed Count XXIII.

8

### L. Count XXV: Federal Civil RICO Violations and Conspiracy to Commit Federal Civil RICO Violations (Musk and xAI Against Altman, Brockman, Microsoft, and the For-Profit Entities)

Title 18 U.S.C. § 1962(a) makes it unlawful "for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity . . . to use or invest . . . any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce."

Subsection (b), in turn, makes it unlawful "for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce." 18 U.S.C. § 1962(b).

Finally, subsection (c) requires pleading: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (or 'predicate acts') (5) causing injury to the plaintiff's 'business or property.'" *Ferrari v. Merecedes-Benz USA, LLC*, 2016 WL 7188030 at *2 (N.D. Cal. 2016) (quoting 18 U.S.C. § 1962(c)).

The Court will dismiss the claims under subsections(a) and (b). Defendants properly note that these subsections require pleading injuries distinct from those caused by the predicate acts themselves. (*See* OpenAI Oppo. at 12-13.) In opposition, plaintiffs clarify that they plead injury from the predicate acts to Musk (loss of $44 million invested in OpenAI) but investment and control-related injury to xAI. (*See* Dkt. No. 128 at 17-18.). As the FAC does not allege that Musk and xAI are the alter-egos of one another, the claims are insufficiently pled.[8]

As to subsection (c), plaintiffs attest that the enterprise is OpenAI itself and Altman, Brockman, the for-profit entities, and Microsoft were all "persons" who committed the predicate acts under the statute. After parroting the statutory language, the FAC states the named defendants participated in the affairs of the enterprise in order to: "exploit" Musk's donations, "develop

---

[8] ". . . Plaintiffs do not explain how the alleged misuse of Musk's donations beginning in 2018 could have 'proximately caused' some unidentified and unpleaded competitive harm to xAI, which was not launched until 2023." (*See* Dkt. No. 150, OpenAI Defendants' Reply in Support of Motion to Dismiss the First Amended Complaint at 15-16.)

9

1 valuable AI/AGI technology" they could use to enrich themselves, and engage in self-dealing, and that they did so by creating the for-profit entities. (*See* FAC ¶¶ 510-15.) These allegations fail to identify how the named defendants operated the entity *through a pattern* of racketeering activity. The development of technology and creation of various corporate subsidiaries are not predicate acts, and the other allegations are not tethered to the enterprise's conduct. The motions to dismiss as to this subsection are therefore **GRANTED**. Here, the Court will grant plaintiffs leave to amend, but any further amended complaint must demonstrate how the defendants named under Section 1962(c) conducted OpenAI's affairs in a manner RICO was intended to reach.

Because the motions as to the underlying RICO offenses are granted, the Court also **GRANTS** the motions to dismiss Count XXVI, with leave to amend as to the underlying Section 1962(c) offense.

### III. CONCLUSION

For the reasons stated above, the Court rules as follows:

- The motion to dismiss Count I is **GRANTED.**
- The motion to dismiss Count II is **DENIED**.
- The motion to dismiss Count III is **GRANTED WITH LEAVE TO AMEND.**
- The motion to dismiss Count IV is **DENIED**.
- The motions to dismiss Count V are **GRANTED** as to the for-profit entities and **DENIED** as to Microsoft.
- The motion to dismiss Count VI is **DENIED.**
- The motion to dismiss Count VII is **DENIED**.
- The motions to dismiss Count VIII are **GRANTED.**
- Count XVIII is **DISMISSED** as to Musk.
- The motion to dismiss Count XIX is **GRANTED.**
- The motion to dismiss Count XX is **DENIED** as per the Court's prior order.
- The motion to dismiss Count XXI is **GRANTED** as to the OpenAI defendants and **DENIED** as to Microsoft.
- The motion to dismiss Count XXII is **GRANTED.**

- The motion to dismiss Count XXIII is **GRANTED** as per the Court's prior order.
- The motions to dismiss Count XXIV are **GRANTED.**
- The motions to dismiss Counts XXV and XXVI are **GRANTED WITH LEAVE TO AMEND.**
- The motion of the Attorney General of California is **DENIED AS MOOT.**
- The motions for leave to file an amicus brief are **DENIED.**

Within twenty-one (21) days of the date of this Order, plaintiffs shall file either a notice that the claims will not be amended or an amended complaint, if any, remedying the claims dismissed in this Order with leave to amend. Defendants shall respond with fourteen (14) days thereafter.

In any amended complaint, plaintiffs shall comply with the Court's Standing Order ¶ 13. Plaintiff shall not amend any claims dismissed other than those for which the Court granted leave to amend. Defendant shall file an answer to those counts at the same time as it responds above. Parties shall not renew arguments already made and resolved in this Order. Nor may defendant assert new arguments that could have been asserted in the first instance.

Furthermore, Musk shall elect to bring either a quasi-contract or unjust enrichment claim, but not both, no later than thirty (30) days after the close of fact discovery.

This terminates Dkt. Nos. 101, 102, 103, 152, & 154.

**IT IS SO ORDERED**.

Date: May 1, 2025

**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**