1

2

3

4

5

6

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

7

8

9

10

11

12

13

14

| | |
|---|---|
| ELON MUSK, et al., | Case No. 4:24-cv-04722-YGR |
| Plaintiffs, | Assigned to Hon. Yvonne Gonzalez Rogers |
| v. | **[PROPOSED] ORDER GRANTING PLAINTIFFS' MOTION TO DISMISS OPENAI'S COUNTERCLAIMS** |
| SAMUEL ALTMAN, et al., | |
| Defendants. | |

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1  **[PROPOSED] ORDER**

2      This matter comes before the Court on Plaintiffs Elon Musk and X.AI Corp.'s ("Plaintiffs")

3  Motion to Dismiss the Counterclaims filed by Defendants OpenAI, Inc., OpenAI OpCo, LLC, and

4  OpenAI Global, LLC (collectively, "OpenAI") pursuant to Federal Rules of Civil Procedure 8, 9(b),

5  and 12(b)(6). Having considered the motion, all supporting and opposing papers, argument, and the

6  record in this case, the Court rules as follows:

7                                      **BACKGROUND**

8      On April 9, 2025, OpenAI filed counterclaims against Plaintiffs, alleging (1) unfair

9  competition under California Business & Professions Code §§ 17200 *et seq.* ("UCL") and (2)

10  tortious interference with prospective economic advantage. The counterclaims are based on two

11  categories of challenged conduct: (1) Plaintiffs' communications with the California and Delaware

12  Attorneys General ("Attorneys General") regarding OpenAI's governance structure and operations;

13  and (2) a Letter of Intent dated February 10, 2025 (the "LOI") expressing interest in purchasing

14  OpenAI, Inc.'s assets for $97.375 billion. Plaintiffs move to dismiss the counterclaims on the

15  grounds that (1) Plaintiffs' communications are protected by the First Amendment; (2) Plaintiffs'

16  communications are also protected by California's litigation privilege; and (3) OpenAI has failed to

17  state a claim under Rule 9(b)'s heightened pleading standard applicable to its "sham" claim,

18  sounding in fraud, or even Rule 8's general plausibility standard.

19                                   **LEGAL STANDARD**

20      To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint

21  must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible

22  on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550

23  U.S. 544, 570 (2007)). A claim is facially plausible when "the plaintiff pleads factual content that

24  allows the court to draw the reasonable inference that the defendant is liable for the misconduct

25  alleged." *Id.* The court accepts factual allegations as true but need not accept legal conclusions as

26  true. *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory

27  statements, do not suffice." *Id.*

28

When claims sound in fraud, Rule 9(b)'s heightened pleading standard applies, requiring a party to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). This requires the plaintiff to "identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 964 (9th Cir. 2018) (internal quotation marks omitted). Additionally, when claims target constitutionally protected activity, courts demand more rigorous and detailed pleading. *Oregon Nat. Res. Council v. Mohla*, 944 F.2d 531, 533 (9th Cir. 1991).

## DISCUSSION

### I.    Plaintiffs' Communications Are Protected by the First Amendment's Petition Clause

The First Amendment guarantees "the right of the people . . . to petition the Government for a redress of grievances." U.S. Const. amend. I. Under the *Noerr-Pennington* doctrine, "those who petition any department of the government for redress are generally immune from statutory liability for their petitioning conduct." *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 929 (9th Cir. 2006). This doctrine has been extended beyond the antitrust context to bar state-law tort claims based on activity that implicates the Petition Clause, including claims for tortious interference with prospective economic advantage and unfair competition. *Theme Promotions, Inc. v. News Am. Mktg. FSI*, 546 F.3d 991, 1007 (9th Cir. 2008); *Sosa*, 437 F.3d at 942.

The Court finds that both categories of Plaintiffs' challenged communications—their communications with the California and Delaware Attorneys General and the LOI—constitute protected petitioning activity. Plaintiffs' communications with these state officials regarding potential charitable trust violations are quintessential petitioning activity protected by the First Amendment. *Kashian v. Harriman*, 98 Cal. App. 4th 892, 927 (2002) (holding that attorney communications with an attorney general regarding a charitable trust are protected).

The LOI is also protected as petitioning activity because it directly relates to those communications with the Attorneys General and the issues in this ongoing litigation. Had OpenAI engaged with the LOI's proposal, it may well have settled portions of this dispute as to whether the charity has been compensated at fair market value for its significant technological contributions.

The fact that OpenAI filed the LOI with this Court, Dkt. 116, further confirms its litigation-related character.

The "sham" exception to the *Noerr-Pennington* doctrine does not apply. This exception requires that (1) the petitioning activity "must be objectively baseless in the sense that no reasonable [petitioner] could realistically expect success on the merits," and (2) the subjective motivation must be to use the governmental process as an anticompetitive weapon. *Prof'l Real Estate Invs., Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60-61 (1993). OpenAI has failed to plead facts demonstrating that Plaintiffs' communications were objectively baseless. The fact that the Attorneys General have engaged with these concerns, *see* Dkt. 147 ¶ 108, reflects that they are not objectively baseless. Similarly, the $97.375 billion LOI was signed by major capital funds and formally communicated through counsel to OpenAI's board of directors, evidencing its seriousness.

Because the challenged communications constitute protected petitioning activity and the "sham" exception does not apply, both counterclaims are barred by the First Amendment and amendment would be futile. *Cal. Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 510-11 (1972).

## II.    Plaintiffs' Communications Are Protected by California's Litigation Privilege

Even if the First Amendment did not protect Plaintiffs' communications, California's litigation privilege would independently bar OpenAI's counterclaims. California Civil Code § 47(b) establishes an absolute privilege that precludes liability for any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action. *Silberg v. Anderson*, 50 Cal. 3d 205, 212 (1990).

Plaintiffs' communications with the Attorneys General regarding potential legal violations are privileged as a matter of law. *Hagberg v. Cal. Fed. Bank FSB*, 32 Cal. 4th 350, 361 (2004) (holding that reports to law enforcement or regulatory authorities concerning possible legal violations are protected). Similarly, the LOI, delivered during ongoing litigation by Plaintiffs' counsel to opposing counsel, relates directly to central issues in this case—OpenAI's planned for-profit conversion and alleged self-dealing—and therefore falls squarely within the litigation

privilege. *United Artists Corp. v. United Artist Studios LLC*, 2019 WL 8221088, at *6-7 (C.D. Cal. Aug. 2, 2019); *Apex.AI, Inc. v. Langmead*, No. 23-CV-02230-BLF, 2024 WL 1117055, at *3-4 (N.D. Cal. Mar. 13, 2024); *Better Meat Co. v. Emergy, Inc.,* 2023 WL 2977786, at *5-6 (E.D. Cal. Apr. 17, 2023). .

The litigation privilege bars all tort claims except malicious prosecution. *Rubin v. Green*, 4 Cal. 4th 1187, 1193-94 (1993) (holding litigation privilege barred UCL claim); *Silberg*, 50 Cal. 3d at 215-16 (holding privilege barred claim for intentional interference with prospective economic advantage). Accordingly, OpenAI's counterclaims are barred by California's litigation privilege and amendment would be futile. *Timothy W. v. Julie W*., 85 Cal. App. 5th 648, 661 (2022).

## III.    OpenAI Fails to State a Claim Upon Which Relief Can Be Granted

Even if Plaintiffs' communications were protected by neither the First Amendment nor California's litigation privilege, OpenAI's counterclaims still fail to state a claim upon which relief can be granted.

### A.    UCL Claim

To state a claim under Cal. Bus. & Prof. Code § 17200, a plaintiff must allege facts showing that the defendant engaged in an unlawful, unfair, or fraudulent business act or practice. *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999). OpenAI alleges that Plaintiffs' conduct was both "unfair" and "fraudulent," but fails to support either theory with the required particularity.

A business practice is "unfair" under the UCL only when it "threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws...or otherwise significantly threatens or harms competition." *Id.* at 187. OpenAI fails to allege facts establishing an incipient antitrust violation or conduct violating the policy or spirit of antitrust law. It does not identify any specific antitrust law allegedly violated by Plaintiffs' conduct, nor does it allege facts establishing Plaintiffs' market power or any actual anticompetitive effects.

A business practice is "fraudulent" under the UCL if "members of the public are likely to be deceived." *In re Tobacco II Cases*, 46 Cal. 4th 298, 312 (2009). OpenAI fails to identify any consumers who were deceived or explain how they were deceived. Indeed, OpenAI alleges that it

"recognized the bid as a feint," Dkt. 147 ¶ 90, and that media reports "recognized it as a sham," *id.* ¶ 85, facts and admissions that contradict its conclusory claim of consumer deception.

Moreover, because OpenAI's UCL claim sounds in fraud, it is subject to Rule 9(b)'s heightened pleading standard. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009). OpenAI's allegations that Plaintiffs' actions constituted a "sham" fail to satisfy this standard, as they provide no specific facts regarding "the who, what, when, where, and how of the misconduct charged." *Davidson*, 889 F.3d at 964.

## B.    Tortious Interference Claim

To state a claim for tortious interference with prospective economic advantage, a plaintiff must allege: "(1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff." *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1153 (2003). Additionally, a plaintiff must allege that the defendant's conduct was "independently wrongful," meaning that it was "wrongful by some legal measure other than the fact of interference itself." *Della Penna v. Toyota Motor Sales, U.S.A., Inc.*, 11 Cal. 4th 376, 393 (1995).

OpenAI's tortious interference claim fails because it does not adequately allege independently wrongful conduct. Its sole claim of independently wrongful conduct is that Plaintiffs' conduct allegedly violated the UCL. Dkt. 147 ¶ 125. As discussed above, OpenAI has failed to state a viable UCL claim, so its derivative tortious interference claim necessarily fails as well. *Korea Kumho Petrochemical v. Flexsys Am. LP*, 2007 WL 2318906, at *4-5 (N.D. Cal. Aug. 4, 2007). Furthermore, OpenAI fails to identify any specific economic relationship that was disrupted by Plaintiffs' conduct. Although it generally alleges relationships with "investors, employees, and customers," Dkt. 147 ¶ 116, it does not identify any specific third party with whom an economic relationship was allegedly disrupted. This level of generality is insufficient to state a claim for tortious interference with prospective economic advantage. *Westside Ctr. Assocs. v. Safeway Stores*

*23, Inc.*, 42 Cal. App. 4th 507, 527 (1996) (requiring the plaintiff to identify "an economic relationship" with a "particular third party").

Finally, OpenAI fails to allege actual disruption or economic harm resulting from Plaintiffs' conduct. Its allegations that the LOI "could 'frighten[] potential investors,'" Dkt. 147 ¶ 96, and "complicated the process for undertaking any corporate reorganization, and may ultimately raise [OpenAI's] cost of capital," *id.* ¶ 121 (emphasis added), are speculative and insufficient to establish "actual disruption" and "economic harm" as is required. *Korea Supply*, 29 Cal. 4th at 1153.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Motion to Dismiss OpenAI's Counterclaims is **GRANTED**. OpenAI's Counterclaims for Unfair Competition under Cal. Bus. & Prof. Code §§ 17200 *et seq.* and Tortious Interference with Prospective Economic Advantage are **DISMISSED WITH PREJUDICE**.

IT IS SO ORDERED this _____ day of _____, 2025.

_____

The Honorable Yvonne Gonzalez Rogers
United States District Court Judge