UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| ELON MUSK, et al.,<br><br>　　　　　　Plaintiffs,<br><br>　　v.<br><br>SAMUEL ALTMAN, et al.,<br><br>　　　　　　Defendants. | Case No. 4:24-cv-04722-YGR<br><br>**[PROPOSED] ORDER DENYING MOTION TO DISMISS OPENAI'S COUNTERCLAIMS**<br><br>Date:  July 1, 2025<br>Time:  2:00 p.m.<br>Courtroom:  1 – 4th Floor<br>Judge:  Hon. Yvonne Gonzalez Rogers |

## [PROPOSED] ORDER

Plaintiffs and Counterclaim Defendants Elon Musk and X.AI Corp. ("xAI" and, with Musk, "Plaintiffs") move to dismiss the Counterclaims of Defendants and Counterclaim Plaintiffs OpenAI, Inc., OpenAI OpCo, LLC, and OpenAI Global, LLC (collectively, "OpenAI") filed on April 9, 2025 (the "Motion" or "MTD").

Having considered all papers filed by the parties in connection with the Motion and the parties' arguments at the hearing on this matter, the Motion is DENIED.

## BACKGROUND

OpenAI has pleaded two claims against Musk and xAI: (1) unfair and fraudulent business practices, in violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq.*, based on Plaintiffs' "orchestrating a sham bid to purportedly acquire [] OpenAI, Inc.'s assets," and (2) tortious interference with prospective economic advantage, again based on the "purported bid." *See* ¶¶ 102-27.[1] OpenAI alleges that this "bid," which was conveyed in a "Letter of Intent" to OpenAI's board in February 2025 (the "LOI"), was a "naked effort to disrupt the [OpenAI, Inc. nonprofit] board's consideration" of a corporate reorganization that the board has been considering for roughly a year. ¶ 95.

OpenAI alleges that the bid was a sham that "dominated international news for days," ¶ 84, and "required OpenAI to expend significant resources in responding to it." ¶ 90. The counterclaims further allege that this "effort to disrupt the [OpenAI] board's consideration of a potential restructuring and sow confusion among employees and potential investors" has interfered with the valuation exercise implicated in OpenAI's planned reorganization, ¶ 95, has threatened OpenAI's relationships with its investors, and has "already made maintenance of those business relationships more costly and burdensome," ¶ 96; *see also* ¶¶ 107-08, 121-24. The sham bid thereby threatens competitive harm, as Plaintiffs' purpose in pursuing the bid was "to slow OpenAI's progress and impair its ability to compete effectively in an increasingly crowded field," and "also to seize and maintain for xAI an unearned edge designed to impair competition more broadly for the sole benefit of Musk's xAI, at the expense of the public interest." ¶ 98; *see also* ¶ 109.

---

[1] Citations in the form "¶ __" are of OpenAI's Counterclaims (Dkt. 147).

# ANALYSIS

**I.   NEITHER THE *NOERR-PENNINGTON* DOCTRINE NOR THE LITIGATION PRIVILEGE APPLIES**

Plaintiffs seek to dismiss OpenAI's counterclaims on the basis of the *Noerr-Pennington* doctrine and California's litigation privilege, arguing that OpenAI's counterclaims are "predicated" on (1) Plaintiffs' communications with the Delaware and/or California Attorneys General and/or (2) communications "incidental to" or constituting a "necessary or useful step" in the pursuit of proceedings before the Attorneys General and/or this litigation. *See* MTD 1. This premise is inaccurate. Plaintiffs' letters to the Attorneys General, mentioned in a lone paragraph of the counterclaims' factual narrative, *see* ¶ 69, are not the basis for OpenAI's counterclaims. Plaintiffs' bid and its attendant media hype are instead what ground those claims, and the pleaded facts do not support Plaintiffs' argument that the bid was an important part of their petitioning activity.

**A.   *Noerr-Pennington***

The "seldom-used" *Noerr-Pennington* doctrine "protects 'those who petition any department of the government for redress . . . from statutory liability *for their petitioning conduct*.'" *In re Apple Inc. Sec. Litig.*, 2020 WL 2857397, at *18 (N.D. Cal. June 2, 2020) (quoting *Sosa* v. *DIRECTV, Inc.*, 437 F.3d 923, 929 (9th Cir. 2006)) (emphasis added). The doctrine protects only "(1) petitioning activity itself—for instance, '[a] complaint, an answer, a counterclaim'—and (2) 'conduct incidental to a petition.'" *Cascades Comp. Innov. LLC* v. *RPX Corp.*, 2013 WL 6247594, at *16 (N.D. Cal. Dec. 3, 2013) (quoting *Freeman* v. *Lasky, Haas & Cohler*, 410 F.3d 1180, 1183-84 (9th Cir. 2005)). And "conduct incidental to a petition" is captured only where "'sufficiently related to petitioning activity,'" *id.* (quoting *Sosa*, 437 F.3d at 935), and where protecting the challenged activity is necessary "'to preserve the breathing space required for the exercise of the rights [the Petition Clause] protects,'" *Arista Networks, Inc.* v. *Cisco Sys. Inc.*, 2018 WL 11230167, at *11 (N.D. Cal. May 21, 2018) (quoting *Sosa*, 437 F.3d at 933).

The LOI does not fall within *Noerr-Pennington*'s zone of protection. It is not a communication with a court or part of a litigation. Plaintiffs assert the LOI is "the practical implementation of, and conduct 'incidental' to, their petition to the Attorneys General." MTD 9.

By "petition to the Attorneys General," Plaintiffs seem to mean: (1) a November 14, 2024 letter their counsel sent on their behalf to the Attorney General of Delaware enclosing a copy of the First Amended Complaint (Dkt. 32 ¶ 421); (2) a January 7, 2025 letter from that same counsel but this time on behalf of "certain major investors in generative artificial intelligence" to the Attorneys General of California and Delaware expressing interest in "bidding on the assets of OpenAI, Inc." (Dkt. 103-5); and/or (3) an unsuccessful application to the California Attorney General for relator status (Dkt. 157-1). *See* MTD 3-4, 9 n.8. But even imagining any of these qualified as a "petition," the LOI was not "incidental" to any of them. The LOI was not "useful or necessary to successfully petition [either Attorney General] for redress." *Wisk Aero LLC* v. *Archer Aviation Inc.*, 2021 WL 4932734, at *8 (N.D. Cal. Sept. 14, 2021). It was sent on behalf of a group different from the Plaintiffs in this suit; it was addressed not to a regulator or the Court but to the OpenAI, Inc. board; and it doesn't even mention any litigation or regulatory investigation. For the same reasons, Plaintiffs get no protection for their press campaign with respect to the LOI. Plaintiffs' alleged leaking of the LOI to the media and attendant press commentary were no more tethered to this litigation or to proceedings before the Attorneys General than the LOI itself. *See Wisk Aero*, 2021 WL 4932734, at *8 ("blog posts and press release" that "communicated with the public about the [underlying] lawsuit" did not qualify, as "they did not, in any manner, affect . . . or advance [defendant's] interests in [the lawsuit]" (emphasis removed)).[2]

### B. Litigation Privilege

For largely the same reasons, California's litigation privilege furnishes no basis to dismiss OpenAI's counterclaims. The "privilege generally applies to 'any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the

---

[2] The *Noerr-Pennington* doctrine also does not bar OpenAI's allegations with respect to other conduct, including Plaintiffs' letters to the Delaware and California Attorneys General, which is pleaded to contextualize the sham bid and demonstrate the risk of future harm. Courts have recognized that *Noerr-Pennington* is not a rule of evidence; it "does not provide a basis for exclusion" from trial of conduct that might be protected were it pleaded as the basis for liability. *See, e.g.*, *Hernandez* v. *Amcord, Inc.*, 215 Cal. App. 4th 659, 679-80 (2013) (collecting federal cases).

action.'" *Argentieri* v. *Zuckerberg*, 8 Cal. App. 5th 768, 780 (2017) (quoting *Silberg* v. *Anderson*, 50 Cal. 3d 205, 212 (1990)). "For the litigation privilege to apply" to out-of-court communications, "there must be a sufficient nexus between the statement and the litigation." *Id.* at 785. Specifically, "the communication must function as a necessary or useful step in the litigation [or regulatory] process and must serve its purposes." *See City of Costa Mesa* v. *D'Alessio Inv., LLC*, 214 Cal. App. 4th 358, 382 (2013) (quotation marks omitted).

The LOI is not covered by the privilege because it was not addressed to a court or regulator, and in no way "function[ed] as a necessary or useful step" in either this litigation or Musk's efforts to provoke the Attorneys General. *Id.* The LOI was not sent on behalf of the same group comprising Plaintiffs in this litigation, and makes no reference to this litigation. Nor can the litigation privilege immunize Plaintiffs' alleged press campaign surrounding the sham bid. Courts have found time and again that the privilege "will not protect statements that are made to persons who lack a substantial interest in the litigation," including statements to inherently disinterested media outlets. *Argentieri*, 8 Cal. App. 5th at 784-85 (litigation privilege does not apply to statements "sent to the press," including those related to the underlying case); *see also Rodriguez* v. *Panayiotou*, 314 F.3d 979, 988 (9th Cir. 2002) ("[T]he litigation privilege does not extend to 'litigating in the press.'" (quoting *Rothman* v. *Jackson*, 49 Cal. App. 4th 1134, 1149 (1996))).[3]

## II. OPENAI ADEQUATELY PLEADS BOTH COUNTERCLAIMS

A motion to dismiss must be denied where the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007)). "[A]ll reasonable inferences must be drawn in favor of the non-moving party." *In re Diadexus, Inc.*, 2019 WL 3412928, at *10 (N.D. Cal. July 29, 2019).

---

[3] As with *Noerr-Pennington*, the litigation privilege does not bar OpenAI from pleading or adducing as evidence of its counterclaims—and its affirmative defenses—conduct that would be protected by the litigation privilege if presented as the predicate for the claim, including Plaintiffs' communications with the Attorneys General. *See, e.g.*, *Oren Royal Oaks Venture* v. *Greenberg, Bernhard, Weiss & Karma, Inc.*, 42 Cal. 3d 1157, 1168 (1986) (litigation privilege "does not create an evidentiary privilege" and thus "statements made during the course of a judicial proceeding may be used for evidentiary purposes").

OpenAI's allegations readily clear this bar and amply sustain both its UCL claim, which alleges that Plaintiffs' sham bid constituted "unfair" and "fraudulent" conduct, and its claim for tortious interference with prospective economic advantage, which likewise centers on Plaintiffs' bid. This is true even if heightened particularity—entailing some specification of "the who, what, when, where, and how of the misconduct charged," *Amin* v. *Subway Rests., Inc.*, 2022 WL 20184652, at *4 (N.D. Cal. July 7, 2022)—is required.

### A.   Violation of California's UCL (First Counterclaim)

"Unfair competition" under California's Unfair Competition Law includes "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. "The UCL is a broad remedial statute" allowing challenges to "wrongful business conduct in whatever context such activity might occur." *Lozano* v. *AT&T Wireless Servs., Inc.*, 504 F.3d 718, 731 (9th Cir. 2007). OpenAI pleads a claim under both the "unfair" and "fraudulent" prongs of the UCL.

#### 1.   Unfair business acts or practices

Under the UCL, "unfairness to competitors" is "conduct that [1] threatens an incipient violation of an antitrust law, or [2] violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or [3] otherwise significantly threatens or harms competition." *Cel-Tech Commc'ns, Inc.* v. *L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 186-87 (1999). OpenAI's allegations readily meet this standard.

OpenAI alleges that Plaintiffs sought through the sham bid to disrupt and ultimately prevent an OpenAI structure change—all to impair OpenAI's "ab[ility] to compete fairly," *i.e.*, to raise needed capital on equal footing with competitors. *LegalForce RAPC Worldwide P.C.* v. *UpCounsel, Inc.*, 2019 WL 160335, at *18 (N.D. Cal. Jan. 10, 2019); *Planned Parenthood Fed'n of Am., Inc.* v. *Ctr. for Med. Progress*, 214 F. Supp. 3d 808, 837 (N.D. Cal. 2016) (allegations that "defendants' goal was to put plaintiffs—one of the largest providers of reproductive health services in the country—out of business" pled unfairness claim). The challenged conduct was directed at "impair[ing] [OpenAI's] ability to compete effectively in an increasingly crowded field" (¶ 98), "seiz[ing] and maintain[ing] for xAI an unearned edge designed to impair competition" (¶ 98), and thereby "threaten[ing] to reduce lawful competition in the market" (¶ 109). Under any pleading

standard, OpenAI's allegations suffice to state a claim of unfair conduct that "significantly threatens or harms competition." *Cel-Tech*, 20 Cal. 4th at 187.[4]

### 2. Fraudulent business acts or practices

OpenAI also states a claim of "fraudulent" business acts or practices, which requires pleading that "members of the public are likely to be deceived." *Morgan* v. *AT&T Wireless Servs., Inc.*, 177 Cal. App. 4th 1235, 1254 (2009). That entails pleading "the likely effect [the impugned] practice would have on a reasonable consumer." *Id.* at 1256-57. "[W]hether a business practice is deceptive will usually be a question of fact not appropriate for decision on [the pleadings]," and thus dismissal based on the issue will be "rare." *Williams* v. *Gerber Prods. Co.*, 552 F.3d 934, 938-39 (9th Cir. 2008).

This is not the "rare" instance in which dismissal on the pleadings is warranted. *Id.* OpenAI adequately pleads that the sham bid was likely to deceive reasonable consumers. According to OpenAI, Plaintiffs billed the bid as legitimate, *see* ¶¶ 84, 90, 95, but allegedly sought to conceal the bid's sham character, including by portraying the LOI's valuation as "based on OpenAI's 'historical financial results' and 'projections'" even though OpenAI had never provided the financial "projections" on which the bid was supposedly based, ¶ 86. The counterclaims also adequately plead "the requisite causal link to OpenAI's alleged harm." MTD 21. OpenAI alleges that the "existence" of the sham bid "and the media firestorm surrounding it" "required OpenAI to expend significant resources in responding to it." ¶¶ 90, 110. In the ensuing days, OpenAI's board "engaged in the formal process of reviewing and assessing" the LOI. ¶ 90. OpenAI was forced to immediately "bear substantial costs" in the form of "resources expended in hiring advisors to evaluate and respond to the bid and costs associated with the diversion of [OpenAI's] employees' time to respond to the bid," ¶ 111—resource expenditures that readily satisfy the UCL, *Cal. Med.*

---

[4] Plaintiffs argue that OpenAI is required to allege a violation of a "specific antitrust law"—such as "price-fixing, market allocation, or any other recognized antitrust violation"—as well as "facts establishing Plaintiffs' market power." MTD 18-19. This is wrong. "[A] practice may be deemed unfair even if not specifically proscribed by some other law," *Cel-Tech*, 20 Cal. 4th at 180, and "allegations typical of claims alleging violations of state or federal antitrust laws," such as "specific product or geographic markets, [or] market power," are not required to state a competitor claim under the UCL's unfairness prong, *Metricolor LLC* v. *L'Oréal S.A.*, 2020 WL 3802942, at *17 (C.D. Cal. July 7, 2020).

*Ass'n* v. *Aetna Health of Cal. Inc.*, 14 Cal. 5th 1075, 1088 (2023); *Ghazarian* v. *Magellan Health, Inc.*, 53 Cal. App. 5th 171, 193 (2020). Based on these allegations, OpenAI has adequately pleaded that its "economic injury [came] as a result of the unfair competition." *Kwikset Corp.* v. *Superior Ct.*, 51 Cal. 4th 310, 326 (2011).

### B. Tortious interference with prospective economic advantage (Second Counterclaim)

OpenAI's second counterclaim is likewise adequately pleaded. To state a claim for tortious interference with prospective economic advantage, a party must allege: "(1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant." *CRST Van Expedited, Inc.* v. *Werner Enters., Inc.*, 479 F.3d 1099, 1108 (9th Cir. 2007). Also required is pleading "an act that is wrongful independent of the interference itself." *Id.* All of these elements are pleaded here:

***Independently wrongful act.*** The "requirement of an independently wrongful act . . . may be satisfied [] by an alleged violation of . . . the UCL." *Id.* at 1110-11. Because OpenAI has pleaded a viable UCL claim for the reasons discussed above, this element is met.

***Economic relationship.*** OpenAI pleads "economic relationships with (1) third-party investors, (2) employees, and (3) customers." ¶ 116. Relationships of this kind are routinely held to satisfy the "economic relationship" element. *Byton N. Am. Co.* v. *Breitfeld*, 2020 WL 3802700, at *4 (C.D. Cal. Apr. 28, 2020) (employees); *Humboldt Wholesale, Inc.* v. *Humboldt Nation Distrib., LLC*, 2012 WL 2572065, at *6 (N.D. Cal. July 2, 2012) (distributors and retailers); *Sebastian Int'l, Inc.* v. *Russolillo*, 128 F. Supp. 2d 630, 637 (C.D. Cal. 2001) (customers).

***Actual disruption and economic harm.*** Finally, OpenAI has more than adequately alleged actual disruption and economic harm. Actual disruption "includes making plaintiff's performance more burdensome or expensive," Rutter, Cal. Prac. Guide: Civ. Proc. Before Trial, Claims & Defenses Ch. 3(II)-B (citing *Pac. Gas & Elec. Co.* v. *Bear Stearns & Co.*, 50 Cal. 3d 1118, 1129

(1990)), and OpenAI pleads just that: that the sham bid has "complicated the process for undertaking any corporate reorganization," ¶ 121, and has "already made maintenance of [its] business relationships [with investors] more costly and burdensome," given that the bid "came at a time when . . . OpenAI was engaged in an extremely competitive process to raise funds," ¶ 96. The counterclaims also allege that Plaintiffs' conduct has made OpenAI's relationships with employees and customers "more costly and burdensome," ¶ 122, including by "sow[ing] confusion among [OpenAI] employees," ¶ 95, who recognize the "chaos and arbitrary employment action" that come with a takeover by Musk, ¶ 99.

### III.     THE COUNTERCLAIMS SHOULD BE PROMPTLY TRIED

Plaintiffs argue in the alternative that OpenAI's counterclaims "should be stayed until Phase Two of this case" because they "fundamentally constitute competition-related claims." MTD 23. This argument misconstrues the Court's guidance with respect to which claims should be tried on an expedited schedule and which should be stayed. Under the Court's prior ruling, what matters is not the legal theory advanced but the factual predicate. *See* Dkt. 144 at 6, lns. 6-12. Applying that standard, the counterclaims should be included in the expedited proceeding.

Like those of Plaintiffs' claims designated for Phase One of this litigation, OpenAI's counterclaims focus on the course of conduct between OpenAI, its founders, and Musk from OpenAI's founding until the present. They also concern Musk's visions of OpenAI's future, his alleged attempts to control the company, and his abandonment, and subsequent targeting, of it when those attempts purportedly failed—factual allegations that, if true, would seemingly conflict with the basis of Musk's Phase One claims. The requisite close relationship between the facts to be tried on Musk's Phase One claims and the facts to be tried on OpenAI's counterclaims thus exists, such that those claims should be tried together.

### CONCLUSION

For the foregoing reasons, the Motion is DENIED.

IT IS SO ORDERED this ___ day of _____, 2025

_____
HONORABLE YVONNE GONZALEZ ROGERS
UNITED STATES DISTRICT COURT JUDGE