RUSSELL COHEN (SBN 213105)
Russ.Cohen@dechert.com
HOWARD ULLMAN (SBN 206760)
Howard.Ullman@dechert.com
DECHERT LLP
45 Fremont Street, 26th Floor
San Francisco, California 94105
Telephone: (415) 262-4500
Facsimile: (415) 262-4555

NISHA PATEL (SBN 281628
Nisha.PatelGupta@dechert.com
DECHERT LLP
633 West 5th Street, Suite 4900
Los Angeles, CA 90071
Telephone: (213) 808-5700
Facsimile: (213) 808-5760

ANDREW LEVANDER (admitted *pro hac vice*)
Andrew.Levander@dechert.com
DECHERT LLP
Three Bryant Park
1095 Avenue of the Americas
New York, NY 10036
Telephone: (212) 698-3500
Facsimile: (212) 698-3599

JOHN (JAY) JURATA, JR. (admitted *pro hac vice*)
Jay.jurata@dechert.com
DECHERT LLP
1900 K Street, N.W.
Washington, DC 20006
Telephone: (202) 261-3300
Facsimile: (202) 261-3333

*Attorneys for Defendant Microsoft Corporation*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

| | |
|---|---|
| ELON MUSK et al., | Case No. 4:24-cv-04722-YGR |
| Plaintiffs, | Judge Yvonne Gonzalez Rogers |
| v. | **DEFENDANT MICROSOFT CORPORATION'S ANSWER AND DEFENSES TO COUNTS IV, V, XIX, XX, AND XXI IN PLAINTIFFS' SECOND AMENDED COMPLAINT** |
| SAMUEL ALTMAN, et al., | |
| Defendants. | **DEMAND FOR JURY TRIAL** |
| | **Action filed: August 5, 2024** |

Defendant Microsoft Corporation answers Count IV (Breach of Quasi-Contract/Unjust Enrichment), Count V (Tortious Interference with Contract), Count XIX (Aiding and Abetting Breach of Fiduciary Duty), Count XX (Violations of Federal Civil RICO), and Count XXI (Conspiracy to Violate Civil RICO) of the Second Amended Complaint of Plaintiffs Elon Musk, and X.AI Corp., dated May 22, 2025 (Dkt. No. 170).[*]

## NATURE OF THE ACTION

1.      Never before has a corporation gone from tax-exempt charity to a $157 billion for-profit, market-paralyzing gorgon—and in just eight years. Never before has it happened, because doing so violates almost every principle of law governing economic activity. It requires lying to donors, lying to members, lying to markets, lying to regulators, and lying to the public. No amount of clever drafting nor surfeit of creative dealmaking can obscure what is happening here. OpenAI, Inc., co-founded by Musk as an independent charity committed to safety and transparency—and nurtured in its infancy by Musk's money, advice, recruiting efforts and connections—is, at the direction of Altman, Brockman, and Microsoft, fast becoming a fully for-profit subsidiary of Microsoft. *See infra* ¶¶ 192-200.

**RESPONSE:** Denied.

2.      Three events occasioned the filing of the FAC. *First*, the wholescale conversion of OpenAI, Inc. into a for-profit entity, which the original Complaint merely anticipated, see Dkt. No. 1 at 30, ¶ 146, is now in full swing. OpenAI and Microsoft have hired investment banks to negotiate Microsoft's enormous stake and set a hard two-year deadline to complete the conversion. *See infra* ¶ 193. *Second*, Microsoft and OpenAI, apparently unsatisfied with their monopoly, or near so, in generative artificial intelligence ("AI") are now actively trying to eliminate competitors, such as xAI, by extracting promises from investors not to fund them. *See infra* ¶ 199. *Third*, OpenAI's safety practices have devolved from shambolic at the time of the original Complaint to affirmatively

---

[*] Microsoft answers only the well-pleaded allegations relating to Counts IV, V, XIX, XX, and XXI. The remaining allegations in the Second Amended Complaint relate to claims that have been dismissed or stayed at the direction of the Court on April 4, 2025. Microsoft is answering Counts XX and XXI out of an abundance of caution pursuant to the Court's order on May 1, 2025. By answering these claims, Microsoft is not waiving its right to file a 12(b)(6) motion to dismiss those same counts, which were amended by Plaintiffs in the SAC. Microsoft will answer the remaining allegations in the SAC if and when ordered to do so by the Court.

harmful today, with droves of security researchers resigning in protest, or being forced out, and whole safety teams dissolved, all to make way for "security" personnel whose real job is to facilitate military contracting. *See infra* ¶¶ 73, 191.

**RESPONSE:** Microsoft admits that Microsoft and OpenAI have hired investment banks as part of negotiations over OpenAI's proposed restructuring. Microsoft denies the remaining allegations as to Microsoft regarding negotiations over OpenAI's "conversion," monopoly power in generative artificial intelligence, and efforts to eliminate competitors by "extracting promises from investors not to fund them." Microsoft otherwise lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 2 and therefore denies them.

3.     Some aspects of Altman, Brockman, and OpenAI's promises to Musk and the public are matters of degree, but the intent and effect of OpenAI's actions to flout those promises are now unambiguous. No reasonable person could conclude OpenAI is proceeding in good faith as a charity committed to safety and transparency above profit, organized for public rather than private benefit, and working to avoid the undue concentration of powerful AI technology. Defendants have admitted as much by their commitments to investors to convert OpenAI to a fully for-profit enterprise.

**RESPONSE:** Denied.

4.     As the original Complaint detailed, Altman, in concert with other Defendants, intentionally courted and deceived Musk, preying on Musk's humanitarian concern about the dangers posed by AI. *See infra* ¶ 73. The idea Altman sold Musk was that a non-profit, funded and backed by Musk, would attract world-class scientists, conduct leading AI research and development, and, as a meaningful counterweight to Google's DeepMind in the race for Artificial General Intelligence ("AGI"), decentralize its technology by making it open source. *See infra* ¶¶ 76-84. Altman repeatedly assured Musk and regulators that the non-profit structure guaranteed neutrality and a focus on safety and openness for the benefit of humanity, not shareholder value or individual enrichment. *See infra* ¶¶ 84-88. But after Musk lent his name to the venture as its co-chairman, invested significant time, tens of millions of dollars in seed capital, and recruited top AI

1  scientists for OpenAI, Inc., Musk and the non-profit's namesake objective were betrayed by Altman

2  and his accomplices.

3      **RESPONSE:** Microsoft lacks knowledge or information sufficient to form a belief as to

4  the truth of the allegations in Paragraph 4 and therefore denies them.

5      5.     These efforts by Altman and his cohorts to cash in and squeeze others out have their

6  roots in OpenAI's partnership with Microsoft. Together, they established an opaque web of for-

7  profit OpenAI affiliates, the only value of which came from looting OpenAI, Inc. of the intellectual

8  property, employees, and relationships developed by exploiting Musk's name and contributions,

9  the charity's tax status, and the goodwill generated by its supposed philanthropic commitment. *See*

10 *infra* ¶¶ 111-30. The resulting OpenAI network, in which, on information and belief, Altman,

11 Microsoft, and Brockman hold significant interests, was valued at the time of the original

12 Complaint at an eye-popping $100 billion; in the merely three months since, it has been valued at

13 a staggering $157 billion, making it the second most valuable start-up in American history.

14     **RESPONSE:** Microsoft denies the allegations that it "established an opaque web of for-

15 profit OpenAI affiliates" and that Microsoft had any role in "looting" OpenAI, Inc. or "cash[ing]

16 in and squeez[ing] others out." Microsoft otherwise lacks knowledge or information sufficient to

17 form a belief as to the truth of the remaining allegations in Paragraph 5 and therefore denies them.

18     6.     Throughout this process, Altman has engaged in rampant self-dealing, *see infra* ¶¶

19 134-43, leveraged Microsoft's stranglehold on OpenAI's most important raw material (computing

20 power) to seize control of its Board, *see infra* ¶¶ 110, 146-59, and joined with Microsoft in a de

21 facto merger to pursue the kinds of anticompetitive conduct for which Microsoft is notorious. *See*

22 *infra* ¶¶ 131, 145-46, 176, 199-200. Microsoft is now OpenAI, and OpenAI, Microsoft. *See infra*

23 ¶¶ 145-70.

24     **RESPONSE:** Microsoft denies the allegations regarding its relationship with OpenAI and

25 anticompetitive conduct. Microsoft otherwise lacks knowledge or information sufficient to form a

26 belief as to the truth of the remaining allegations in Paragraph 6 and therefore denies them.

27     7.     The world has gotten wise to Defendants' scheme: there are several pending lawsuits

28 against OpenAI over its unlawful practices; it is under investigation by Senators and multiple

1  federal agencies (including the Securities and Exchange Commission ("SEC") and the Federal

2  Trade Commission ("FTC")), *see infra* ¶ 180; it is the subject of numerous consumer advocacy

3  complaints to the Attorney General of California, *see infra* ¶ 181; and a recent spate of OpenAI

4  executives and insiders have blown the whistle on Altman, exposing his unscrupulous maneuvering

5  and self-dealing, while numerous departing AI-safety experts have sounded the alarm. *See infra* ¶¶

6  183-90.

**RESPONSE:** Microsoft admits there are several pending lawsuits against OpenAI, and the docket filings in those matters speak for themselves. Microsoft denies the allegations to the extent they mischaracterize, take out of context, or misstate or misquote the documents. Microsoft otherwise lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 7 and therefore denies them.

8.     As a result of their unlawful actions, Defendants have been unjustly enriched to the tune of hundreds of billions of dollars in value, while Musk has been conned along with the public.

**RESPONSE:** Paragraph 8 states conclusions of law and argument by Plaintiffs for which no response is required. To the extent a response is nonetheless deemed necessary, Microsoft denies the allegations of Paragraph 8.

9.     Musk brings this remedial action to divest Defendants of their ill-gotten gains and ensure OpenAI maintains its namesake mission to develop safe and open AI for the public good.

**RESPONSE:** Paragraph 9 states conclusions of law and argument by Plaintiffs for which no response is required. To the extent a response is nonetheless deemed necessary, Microsoft denies the allegations of Paragraph 9.

10.    xAI, a public benefit corporation founded by Musk to help accelerate scientific research via AI, brings this action to ensure that competition in the marketplace for generative AI remains healthy and that AI development proceeds in a safe and responsible manner for all stakeholders and society at large.

**RESPONSE:** Microsoft admits that xAI is a public benefit corporation founded by Musk. Microsoft lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 10 and therefore denies them.

## **PARTIES**

11.     Plaintiff Elon Musk is an individual, citizen, and resident of Texas.

**RESPONSE:** Admitted.

12.     Plaintiff X.AI Corp. is a public benefit corporation formed under the laws of Nevada with its principal place of business at 3180 18th Street, San Francisco, CA 94110.

**RESPONSE:** Admitted.

13.     Plaintiffs are informed and believe and thereon allege that Defendant Samuel Altman is a citizen and resident of San Francisco, California.

**RESPONSE:** Admitted.

14.     Plaintiffs are informed and believe and thereon allege that Defendant Gregory Brockman is a citizen and resident of San Francisco, California.

**RESPONSE:** Admitted.

15.     Plaintiffs are informed and believe and thereon allege that Defendant Deannah Templeton is a citizen and resident of Washington.

**RESPONSE:** The allegations in Paragraph 15 are irrelevant to the pending claims against Microsoft (Counts IV, V, XIX, XX, and XXI) and relate only to claims that were previously dismissed or stayed at the direction of the Court on April 4, 2025. Microsoft will answer these allegations if and when ordered to do so by the Court.

16.     Plaintiffs are informed and believe and thereon allege that Defendant Reid Hoffman is a citizen and resident of Washington.

**RESPONSE:** The allegations in Paragraph 16 are irrelevant to the pending claims against Microsoft (Counts IV, V, XIX, XX, and XXI) and relate only to claims that were previously dismissed or stayed at the direction of the Court on April 4, 2025. Microsoft will answer these allegations if and when ordered to do so by the Court.

17.     Defendant OpenAI, Inc. is a registered non-profit organization incorporated under the laws of Delaware on December 8, 2015. OpenAI, Inc. is registered as an out-of-state corporation with the California Secretary of State and has its principal place of business at 550 Terry A Francois Blvd., San Francisco, CA 94158.

**RESPONSE:** The OpenAI Defendants admitted the allegations in the first sentence of Paragraph 17 and that OpenAI, Inc. is registered as an out-of-state corporation with the California Secretary of State. Microsoft respectfully refers the Court to the OpenAI Defendants' response. Microsoft otherwise lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 17 and therefore denies them.

18. Defendant OpenAI, L.P. is a limited partnership formed under the laws of Delaware on September 19, 2018, originally as SummerSafe, L.P. On information and belief, on January 23, 2023, OpenAI, L.P. was converted to Defendant OpenAI OpCo, LLC. OpenAI, L.P. is registered as an out-of-state limited partnership with the California Secretary of State and has its principal place of business at 550 Terry A Francois Blvd., San Francisco, CA 94158.

**RESPONSE:** The OpenAI Defendants admitted the allegations in the first two sentences of Paragraph 18 and that OpenAI, L.P. is registered as an out-of-state limited partnership with the California Secretary of State. Microsoft respectfully refers the Court to the OpenAI Defendants' response. Microsoft otherwise lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 18 and therefore denies them.

19. Defendant OpenAI, L.L.C. is a limited liability company formed in Delaware on September 17, 2020. OpenAI, L.L.C. maintains its principal place of business in California.

**RESPONSE:** The OpenAI Defendants admitted the allegations in Paragraph 19. Microsoft respectfully refers the Court to the OpenAI Defendants' response.

20. Defendant OpenAI GP, L.L.C. is a limited liability company formed in Delaware on September 19, 2018. OpenAI GP, L.L.C. is registered as an out-of-state limited liability company registered with the California Secretary of State and has its principal place of business at 550 Terry A Francois Blvd., San Francisco, CA 94158.

**RESPONSE:** The OpenAI Defendants admitted the allegations in the first sentence of Paragraph 20 and that OpenAI GP, L.L.C. is registered as an out-of-state limited liability company with the California Secretary of State. Microsoft respectfully refers the Court to the OpenAI Defendants' response. Microsoft otherwise lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 20 and therefore denies them.

21.     Defendant OpenAI OpCo, LLC is a limited liability company formed in Delaware on September 19, 2018, as OpenAI, L.P., but was later converted on January 23, 2023, to OpenAI OpCo, LLC. OpenAI OpCo, LLC is registered as an out-of-state limited liability company with the California Secretary of State and has its principal place of business at 1960 Bryant Street, San Francisco, CA 94110.

**RESPONSE:** The OpenAI Defendants denied the allegations in the first sentence of Paragraph 21 and admitted that OpenAI OpCo, LLC is registered as an out-of-state limited liability company with the California Secretary of State. Microsoft respectfully refers the Court to the OpenAI Defendants' response. Microsoft otherwise lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 21 and therefore denies them.

22.     Defendant OpenAI Global, LLC is a limited liability company formed in Delaware on December 28, 2022. OpenAI Global, LLC is registered as an out-of-state limited liability company with the California Secretary of State and has its principal place of business at 1960 Bryant Street, San Francisco, CA 94110.

**RESPONSE:** The OpenAI Defendants admitted the allegations in the first sentence of Paragraph 22 and that OpenAI Global, LLC is registered as an out-of-state limited liability company with the California Secretary of State. Microsoft respectfully refers the Court to the OpenAI Defendants' response. Microsoft otherwise lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 22 and therefore denies them.

23.     Defendant OAI Corporation is a corporation formed in Delaware. OAI Corporation maintains its principal place of business in California.

**RESPONSE:** The OpenAI Defendants admitted the allegations in Paragraph 23. Microsoft respectfully refers the Court to the OpenAI Defendants' response.

24.     Defendant OpenAI Holdings, LLC is a limited liability company formed in Delaware on March 17, 2023. OpenAI Holdings, LLC is registered as an out-of-state limited liability company with the California Secretary of State and has its principal place of business at 1960 Bryant Street, San Francisco, CA 94110.

**RESPONSE:** The OpenAI Defendants admitted the allegations in the first sentence of Paragraph 24 and that OpenAI Holdings, LLC is registered as an out-of-state limited liability company with the California Secretary of State. Microsoft respectfully refers the Court to the OpenAI Defendants' response. Microsoft otherwise lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 24 and therefore denies them.

25.     Defendant OpenAI Startup Fund Management, LLC is a limited liability company formed in Delaware on July 16, 2021. OpenAI Startup Fund Management, LLC is registered as an out-of-state limited liability company with the California Secretary of State and has its principal place of business at 550 Terry A Francois Blvd., San Francisco, CA 94158.

**RESPONSE:** The OpenAI Defendants admitted the allegations in the first sentence of Paragraph 25 and that OpenAI Startup Fund Management, LLC is registered as an out-of-state limited liability company with the California Secretary of State. Microsoft respectfully refers the Court to the OpenAI Defendants' response. Microsoft otherwise lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 25 and therefore denies them.

26.     Defendant OpenAI Startup Fund GP I, L.L.C. is a limited liability company formed in Delaware on July 28, 2021. OpenAI Startup Fund GP I, L.L.C. is registered as an out-of-state limited liability company with the California Secretary of State and has its principal place of business at 550 Terry A Francois Blvd., San Francisco, CA 94158.

**RESPONSE:** The OpenAI Defendants admitted the allegations in the first sentence of Paragraph 26 and that OpenAI Startup Fund GP I, L.L.C. is registered as an out-of-state limited liability company with the California Secretary of State. Microsoft respectfully refers the Court to the OpenAI Defendants' response. Microsoft otherwise lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 26 and therefore denies them.

27.     Defendant OpenAI Startup Fund I, L.P. is a limited partnership formed in Delaware on July 28, 2021. OpenAI Startup Fund I, L.P. is registered as an out-of-state limited partnership

with the California Secretary of State and has its principal place of business at 550 Terry A Francois Blvd., San Francisco, CA 94158.

**RESPONSE:** The OpenAI Defendants admitted the allegations in the first sentence of Paragraph 27 and that OpenAI Startup Fund I, L.P. is registered as an out-of-state limited partnership with the California Secretary of State. Microsoft respectfully refers the Court to the OpenAI Defendants' response. Microsoft otherwise lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 27 and therefore denies them.

28.    Defendant OpenAI Startup Fund SPV GP I, L.L.C. is a limited liability company formed in Delaware on December 5, 2023. Plaintiffs are informed and believe and thereon allege that OpenAI Startup Fund SPV GP I, L.L.C. maintains its principal place of business in San Francisco, California.

**RESPONSE:** The OpenAI Defendants admitted the allegations in Paragraph 28. Microsoft respectfully refers the Court to the OpenAI Defendants' response.

29.    Defendant OpenAI Startup Fund SPV GP II, L.L.C. is a limited liability company formed in Delaware on April 4, 2024. Plaintiffs are informed and believe and thereon allege that OpenAI Startup Fund SPV GP II, L.L.C. maintains its principal place of business in San Francisco, California.

**RESPONSE:** The OpenAI Defendants admitted the allegations in Paragraph 29. Microsoft respectfully refers the Court to the OpenAI Defendants' response.

30.    Defendant OpenAI Startup Fund SPV GP III, L.L.C. is a limited liability company formed in Delaware on April 4, 2024. Plaintiffs are informed and believe and thereon allege that OpenAI Startup Fund SPV GP III, L.L.C. maintains its principal place of business in San Francisco, California.

**RESPONSE:** The OpenAI Defendants admitted the allegations in Paragraph 30. Microsoft respectfully refers the Court to the OpenAI Defendants' response.

31.    Defendant OpenAI Startup Fund SPV GP IV, L.L.C. is a limited liability company formed in Delaware on May 9, 2024. Plaintiffs are informed and believe and thereon allege that

1    OpenAI Startup Fund SPV GP IV, L.L.C. maintains its principal place of business in San Francisco,

2    California.

3         **RESPONSE:** The OpenAI Defendants admitted the allegations in Paragraph 31. Microsoft

4    respectfully refers the Court to the OpenAI Defendants' response.

5         32.    Defendant OpenAI Startup Fund SPV I, L.P. is a limited partnership formed in

6    Delaware on December 5, 2023. Plaintiffs are informed and believe and thereon allege that OpenAI

7    Startup Fund SPV I, L.P. maintains its principal place of business in San Francisco, California.

8         **RESPONSE:** The OpenAI Defendants admitted the allegations in Paragraph 32. Microsoft

9    respectfully refers the Court to the OpenAI Defendants' response.

10        33.    Defendant OpenAI Startup Fund SPV II, L.P. is a limited partnership formed in

11   Delaware on April 4, 2024. Plaintiffs are informed and believe and thereon allege that OpenAI

12   Startup Fund SPV II, L.P. maintains its principal place of business in San Francisco, California.

13        **RESPONSE:** The OpenAI Defendants admitted the allegations in Paragraph 33. Microsoft

14   respectfully refers the Court to the OpenAI Defendants' response.

15        34.    Defendant OpenAI Startup Fund SPV III, L.P. is a limited partnership formed in

16   Delaware on April 4, 2024. Plaintiffs are informed and believe and thereon allege that OpenAI

17   Startup Fund SPV III, L.P. maintains its principal place of business in San Francisco, California.

18        **RESPONSE:** The OpenAI Defendants admitted the allegations in Paragraph 34. Microsoft

19   respectfully refers the Court to the OpenAI Defendants' response.

20        35.    Defendant OpenAI Startup Fund SPV IV, L.P. is a limited partnership formed in

21   Delaware on May 9, 2024. Plaintiffs are informed and believe and thereon allege that OpenAI

22   Startup Fund SPV IV, L.P. maintains its principal place of business in San Francisco, California.

23        **RESPONSE:** The OpenAI Defendants admitted the allegations in Paragraph 35. Microsoft

24   respectfully refers the Court to the OpenAI Defendants' response.

25        36.    Defendant Aestas Management Company, LLC, is a Delaware limited liability

26   company formed in Delaware on February 10, 2023. Aestas Management Company, LLC is

27   registered as an out-of-state limited liability company with the California Secretary of State and

28   has its principal place of business at 1960 Bryant Street, San Francisco, CA 94110.

1    **RESPONSE:** The OpenAI Defendants admitted the allegations in the first sentence of

2    Paragraph 36 and that Aestas Management Company, LLC is registered as an out-of-state limited

3    liability company with the California Secretary of State. Microsoft respectfully refers the Court to

4    the OpenAI Defendants' response. Microsoft otherwise lacks knowledge or information sufficient

5    to form a belief as to the truth of the remaining allegations in Paragraph 36 and therefore denies

6    them.

7        37.    Defendant Aestas, LLC is a limited liability company formed in Delaware on

8    September 19, 2018. Aestas, LLC is registered as an out-of-state limited liability company with the

9    California Secretary of State and has its principal place of business at 1960 Bryant Street, San

10   Francisco, CA 94110.

11   **RESPONSE:** The OpenAI Defendants admitted the allegations in the first sentence of

12   Paragraph 37 and that Aestas, LLC is registered as an out-of-state limited liability company with

13   the California Secretary of State. Microsoft respectfully refers the Court to the OpenAI Defendants'

14   response. Microsoft otherwise lacks knowledge or information sufficient to form a belief as to the

15   truth of the remaining allegations in Paragraph 37 and therefore denies them.

16       38.    Defendant Microsoft Corp. is a corporation formed under the laws of Washington

17   with its principal place of business at One Microsoft Way, Redmond, WA 98052.

18   **RESPONSE:** Admitted.

19       39.    Plaintiffs are informed and believe and based thereon allege that the fictitiously

20   named defendants captioned hereinabove as Does 1 through 100, inclusive, and each of them, were

21   in some manner responsible or legally liable for the actions, damages, events, transactions, and

22   circumstances alleged herein. The true names and capacities of such fictitiously named defendants,

23   whether individual, corporate, associate, or otherwise are presently unknown to Plaintiffs, and

24   Plaintiffs will amend this SAC to assert the true names and capacities of such fictitiously named

25   defendants when they have been ascertained. For convenience, each reference herein to the named

26   Defendants shall also refer to the Doe defendants and each of them.

27   **RESPONSE:** Microsoft lacks knowledge or information sufficient to form a belief as to

28   the truth of the allegations in Paragraph 39 and therefore denies them.

1    **JURISDICTION, VENUE, AND DIVISIONAL ASSIGNMENT**

2    40.    This Court has subject matter jurisdiction under 15 U.S.C. § 4, 15 U.S.C § 1121, 18

3    U.S.C. § 1964, and 28 U.S.C. § 1331, because this is a civil case arising under the Sherman Antitrust

4    Act, 15 U.S.C. §§ 1 *et seq*., the Clayton Act, 15 U.S.C. §§ 12 *et seq*., the Racketeer Influenced and

5    Corrupt Organizations Act, 18 U.S.C. §§ 1961 et seq., and the Lanham Act, 15 U.S.C. §§ 1111 *et*

6    *seq*.

7    **RESPONSE:** Paragraph 40 states conclusions of law and argument by Plaintiffs for which

8    no response is required.

9    41.    Further, Plaintiffs' state-law claim for unfair competition (Count XVI) arises under

10    federal law for purposes of 28 U.S.C. § 1331 and necessarily raises a stated federal issue, actually

11    disputed and substantial, which a federal forum may entertain without disturbing any

12    congressionally approved balance of federal and state judicial responsibilities, in particular claims

13    under the federal civil and criminal revenue, competition, copyright, and trademark laws.

14    **RESPONSE:** Paragraph 41 states conclusions of law and argument by Plaintiffs for which

15    no response is required.

16    42.    The Court has supplemental jurisdiction over all other claims pursuant to 28 U.S.C.

17    § 1367, because all claims form part of the same case or controversy under Article III of the United

18    States Constitution.

19    **RESPONSE:** Paragraph 42 states conclusions of law and argument by Plaintiffs for which

20    no response is required.

21    43.    Jurisdiction over Samuel Altman is proper because he is domiciled in the State of

22    California and this District, has continuous and systematic contacts with the State of California and

23    this District, including contacts giving rise to the specific causes of action against him, and because

24    a substantial portion of the relevant acts complained of herein occurred in the State of California

25    and in this District.

26    **RESPONSE:** Paragraph 43 states conclusions of law and argument by Plaintiffs for which

27    no response is required. To the extent a response is nonetheless deemed necessary, Microsoft lacks

28

knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 43 and therefore denies them.

44.     Jurisdiction over Gregory Brockman is proper because he is domiciled in the State of California and this District, has continuous and systematic contacts with the State of California and this District, including contacts giving rise to the specific causes of action against him, and because a substantial portion of the relevant acts complained of herein occurred in the State of California and in this District.

**RESPONSE:** Paragraph 44 states conclusions of law and argument by Plaintiffs for which no response is required. To the extent a response is nonetheless deemed necessary, Microsoft lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 44 and therefore denies them.

45.     Jurisdiction over Deannah Templeton is proper because she has continuous and systematic contacts with the State of California and this District, including contacts giving rise to the specific causes of action against her, and because a substantial portion of the relevant acts complained of herein occurred in the State of California and in this District.

**RESPONSE:** Paragraph 45 states conclusions of law and argument by Plaintiffs relating to claims that were previously dismissed or stayed at the direction of the Court on April 4, 2025 for which no response is required.

46.     Jurisdiction over Reid Hoffman is proper because he has continuous and systematic contacts with the State of California and this District, including contacts giving rise to the specific causes of action against him, and because a substantial portion of the relevant acts complained of herein occurred in the State of California and in this District.

**RESPONSE:** Paragraph 46 states conclusions of law and argument by Plaintiffs relating to claims that were previously dismissed or stayed at the direction of the Court on April 4, 2025 for which no response is required.

47.     Jurisdiction over OpenAI, Inc. is proper because it has its principal place of business in the State of California and in this District, where it transacts business and may be found, and

because a substantial portion of the relevant acts complained of herein occurred in the State of California and in this District.

**RESPONSE:** Paragraph 47 states conclusions of law and argument by Plaintiffs for which no response is required. To the extent a response is nonetheless deemed necessary, Microsoft lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 47 and therefore denies them.

48.    Jurisdiction over OpenAI, L.P. is proper because it has its principal place of business in the State of California and in this District, where it transacts business and may be found, and because a substantial portion of the relevant acts complained of herein occurred in the State of California and in this District.

**RESPONSE:** Paragraph 48 states conclusions of law and argument by Plaintiffs for which no response is required. To the extent a response is nonetheless deemed necessary, Microsoft lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 48 and therefore denies them.

49.    Jurisdiction over OpenAI, L.L.C. is proper because it has its principal place of business in the State of California, and because a substantial portion of the relevant acts complained of herein occurred in the State of California and in this District, where it transacts business and may be found.

**RESPONSE:** Paragraph 49 states conclusions of law and argument by Plaintiffs for which no response is required. To the extent a response is nonetheless deemed necessary, Microsoft lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 49 and therefore denies them.

50.    Jurisdiction over OpenAI GP, L.L.C. is proper because it has its principal place of business in the State of California and in this District, where it transacts business and may be found, and because a substantial portion of the relevant acts complained of herein occurred in the State of California and in this District.

**RESPONSE:** Paragraph 50 states conclusions of law and argument by Plaintiffs for which no response is required. To the extent a response is nonetheless deemed necessary, Microsoft lacks

knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 50 and therefore denies them.

51.     Jurisdiction over OpenAI OpCo, LLC is proper because it has its principal place of business in the State of California and in this District, where it transacts business and may be found, and because a substantial portion of the relevant acts complained of herein occurred in the State of California and in this District.

**RESPONSE:** Paragraph 51 states conclusions of law and argument by Plaintiffs for which no response is required. To the extent a response is nonetheless deemed necessary, Microsoft lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 51 and therefore denies them.

52.     Jurisdiction over OpenAI Global, LLC is proper because it has its principal place of business in the State of California and in this District, where it transacts business and may be found, and because a substantial portion of the relevant acts complained of herein occurred in the State of California and in this District.

**RESPONSE:** Paragraph 52 states conclusions of law and argument by Plaintiffs for which no response is required. To the extent a response is nonetheless deemed necessary, Microsoft lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 52 and therefore denies them.

53.     Jurisdiction over OAI Corporation is proper because it has its principal place of business in the State of California, and because a substantial portion of the relevant acts complained of herein occurred in the State of California and in this District, where it transacts business and may be found.

**RESPONSE:** Paragraph 53 states conclusions of law and argument by Plaintiffs for which no response is required. To the extent a response is nonetheless deemed necessary, Microsoft lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 53 and therefore denies them.

54.     Jurisdiction over OpenAI Holdings, LLC is proper because it has its principal place of business in the State of California and in this District, where it transacts business and may be

found, and because a substantial portion of the relevant acts complained of herein occurred in the State of California and in this District.

**RESPONSE:** Paragraph 54 states conclusions of law and argument by Plaintiffs for which no response is required. To the extent a response is nonetheless deemed necessary, Microsoft lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 54 and therefore denies them.

55. Jurisdiction over OpenAI Startup Fund Management, LLC is proper because it has its principal place of business in the State of California and in this District, where it transacts business and may be found, and because a substantial portion of the relevant acts complained of herein occurred in the State of California and in this District.

**RESPONSE:** Paragraph 55 states conclusions of law and argument by Plaintiffs for which no response is required. To the extent a response is nonetheless deemed necessary, Microsoft lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 55 and therefore denies them.

56. Jurisdiction over OpenAI Startup Fund GP I, L.L.C. is proper because it has its principal place of business in the State of California and in this District, where it transacts business and may be found, and because a substantial portion of the relevant acts complained of herein occurred in the State of California and in this District.

**RESPONSE:** Paragraph 56 states conclusions of law and argument by Plaintiffs for which no response is required. To the extent a response is nonetheless deemed necessary, Microsoft lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 56 and therefore denies them.

57. Jurisdiction over OpenAI Startup Fund I, L.P. is proper because it has its principal place of business in the State of California and in this District, where it transacts business and may be found, and because a substantial portion of the relevant acts complained of herein occurred in the State of California and in this District.

**RESPONSE:** Paragraph 57 states conclusions of law and argument by Plaintiffs for which no response is required. To the extent a response is nonetheless deemed necessary, Microsoft lacks

1  knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph
2  57 and therefore denies them.

3      58.    Jurisdiction over OpenAI Startup Fund SPV GP I, L.L.C. is proper because it has
4  its principal place of business in the State of California and in this District, where it transacts
5  business and may be found, and because a substantial portion of the relevant acts complained of
6  herein occurred in the State of California and in this District.

7      **RESPONSE:** Paragraph 58 states conclusions of law and argument by Plaintiffs for which
8  no response is required. To the extent a response is nonetheless deemed necessary, Microsoft lacks
9  knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph
10  58 and therefore denies them.

11     59.    Jurisdiction over OpenAI Startup Fund SPV GP II, L.L.C. is proper because it has
12  its principal place of business in the State of California and in this District, where it transacts
13  business and may be found, and because a substantial portion of the relevant acts complained of
14  herein occurred in the State of California and in this District.

15     **RESPONSE:** Paragraph 59 states conclusions of law and argument by Plaintiffs for which
16  no response is required. To the extent a response is nonetheless deemed necessary, Microsoft lacks
17  knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph
18  59 and therefore denies them.

19     60.    Jurisdiction over OpenAI Startup Fund SPV GP III, L.L.C. is proper because it has
20  its principal place of business in the State of California and in this District, where it transacts
21  business and may be found, and because a substantial portion of the relevant acts complained of
22  herein occurred in the State of California and in this District.

23     **RESPONSE:** Paragraph 60 states conclusions of law and argument by Plaintiffs for which
24  no response is required. To the extent a response is nonetheless deemed necessary, Microsoft lacks
25  knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph
26  60 and therefore denies them.

27     61.    Jurisdiction over OpenAI Startup Fund SPV GP IV, L.L.C. is proper because it has
28  its principal place of business in the State of California and in this District, where it transacts

business and may be found, and because a substantial portion of the relevant acts complained of herein occurred in the State of California and in this District.

**RESPONSE:** Paragraph 61 states conclusions of law and argument by Plaintiffs for which no response is required. To the extent a response is nonetheless deemed necessary, Microsoft lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 61 and therefore denies them.

62.    Jurisdiction over OpenAI Startup Fund SPV I, L.P. is proper because it has its principal place of business in the State of California and in this District, where it transacts business and may be found, and because a substantial portion of the relevant acts complained of herein occurred in the State of California and in this District.

**RESPONSE:** Paragraph 62 states conclusions of law and argument by Plaintiffs for which no response is required. To the extent a response is nonetheless deemed necessary, Microsoft lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 62 and therefore denies them.

63.    Jurisdiction over OpenAI Startup Fund SPV II, L.P. is proper because it has its principal place of business in the State of California and in this District, where it transacts business and may be found, and because a substantial portion of the relevant acts complained of herein occurred in the State of California and in this District.

**RESPONSE:** Paragraph 63 states conclusions of law and argument by Plaintiffs for which no response is required. To the extent a response is nonetheless deemed necessary, Microsoft lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 63 and therefore denies them.

64.    Jurisdiction over OpenAI Startup Fund SPV III, L.P. is proper because it has its principal place of business in the State of California and in this District, where it transacts business and may be found, and because a substantial portion of the relevant acts complained of herein occurred in the State of California and in this District.

**RESPONSE:** Paragraph 64 states conclusions of law and argument by Plaintiffs for which no response is required. To the extent a response is nonetheless deemed necessary, Microsoft lacks

1    knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph

2    64 and therefore denies them.

3        65.    Jurisdiction over OpenAI Startup Fund SPV IV, L.P. is proper because it has its

4    principal place of business in the State of California and in this District, where it transacts business

5    and may be found, and because a substantial portion of the relevant acts complained of herein

6    occurred in the State of California and in this District.

7        **RESPONSE:**  Paragraph 65 states conclusions of law and argument by Plaintiffs for which

8    no response is required. To the extent a response is nonetheless deemed necessary, Microsoft lacks

9    knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph

10   65 and therefore denies them.

11       66.    Jurisdiction over Aestas Management Company, LLC is proper because it has its

12   principal place of business in the State of California and in this District, where it transacts business

13   and may be found, and because a substantial portion of the relevant acts complained of herein

14   occurred in the State of California and in this District.

15       **RESPONSE:**  Paragraph 66 states conclusions of law and argument by Plaintiffs for which

16   no response is required. To the extent a response is nonetheless deemed necessary, Microsoft lacks

17   knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph

18   66 and therefore denies them.

19       67.    Jurisdiction over Aestas, LLC is proper because it has its principal place of business

20   in the State of California and in this District, where it transacts business and may be found, and

21   because a substantial portion of the relevant acts complained of herein occurred in the State of

22   California and in this District.

23       **RESPONSE:**  Paragraph 67 states conclusions of law and argument by Plaintiffs for which

24   no response is required. To the extent a response is nonetheless deemed necessary, Microsoft lacks

25   knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph

26   67 and therefore denies them.

27       68.    Jurisdiction over Microsoft Corp. is proper because it has continuous and systematic

28   contacts with the State of California and this District, where it transacts business and may be found,

1    and because a substantial portion of the relevant acts complained of herein occurred in the State of

2    California and in this District.

3        **RESPONSE:** Paragraph 68 states conclusions of law and argument by Plaintiffs for which

4    no response is required.

5        69.    Upon information and belief, venue is proper in this Court pursuant to 28 U.S.C. §

6    1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred,

7    and a substantial part of property that is the subject of the action, is situated in this District.

8        **RESPONSE:** Paragraph 69 states conclusions of law and argument by Plaintiffs for which

9    no response is required.

10       70.    This action is properly assigned to the San Francisco Division of this District under

11   Civil Local Rule 3-2(c) because a substantial part of the events or omissions giving rise to Plaintiffs'

12   claims occurred, and a substantial part of the property that is the subject of the action is situated, in

13   San Francisco County, which is served by the San Francisco Division.

14       **RESPONSE:** Paragraph 70 states conclusions of law and argument by Plaintiffs for which

15   no response is required.

16                    **FACTS COMMON TO ALL CLAIMS FOR RELIEF**

17       A.    ***The Dangers of AI***

18       71.    Over the course of the 20th century, the United States gradually shifted from a

19   primarily labor-based economy to a knowledge-based one, with economic value increasingly

20   generated by human intelligence. As the century progressed, another paradigm shift was already

21   underway: value creation through AI.

22       **RESPONSE:** Microsoft admits that AI research and development progressed during the

23   second half of the 20th century. Microsoft otherwise lacks knowledge or information sufficient to

24   form a belief as to the truth of the remaining allegations in Paragraph 71 and therefore denies them.

25       72.    Starting in the late 2000s and early 2010s, an algorithm called "deep learning" was

26   developed, the hallmark of which was that it no longer needed to be designed with significant

27   knowledge of the task at hand because it could essentially "learn" from examples and program

28   itself. As deep learning algorithms became increasingly sophisticated, some of the world's leading

- 21 -

AI researchers set their sights on AGI. The basic concept of AGI is a general-purpose AI system, a machine having intelligence for a wide variety of tasks like a human.

**RESPONSE:** Microsoft admits that "deep learning" algorithms progressed in the late 2000s and early 2010s due to advances in computational power and GPU (Graphics Processing Unit) technology, that "deep learning" is a process whereby a neural network of billions of interconnected layered nodes performs computations on a massive scale, and that some AI researchers are focused on the development of AGI systems. Microsoft otherwise denies the remaining allegations in Paragraph 72.

73.    Musk has long been concerned by the grave threat these advanced systems pose to humanity, which he has repeatedly warned is likely the greatest existential threat we face today. These dangers include, without limitation (or exaggeration), completely replacing the human workforce, supercharging the spread of disinformation, malicious human impersonation, and the manipulation of political and military systems (which military-related contracting OpenAI is now reported to be pursuing aggressively), ultimately leading to the extinction of humanity. Musk's concerns have been shared by other leading figures including Stephen Hawking and 2024 physics Nobel laureate Geoffrey Hinton, who warned "this is not science fiction."[3]

**RESPONSE:** Microsoft lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 73 or its footnote and therefore denies them.

74.    Musk has publicly called for a variety of measures to address the dangers of AI, from voluntary moratoria to regulation, but his calls have largely fallen on deaf ears or were drowned out by OpenAI's use of putative charitable assets to oppose safety regulation, such as its successful killing of California SB 1047 (the Safe and Secure Innovation for Frontier Artificial Intelligence Models Act).

**RESPONSE:** Microsoft lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 74 and therefore denies them.

---

[3] In the short-term, AI, even before reaching AGI, is leading to a proliferation in child sexual abuse material and revenge pornography, cyberattacks, the automation of cybercrime, and the development of weapons, all while accelerating the economic dislocation of knowledge workers.

75.    Where some like Musk see AGI as an existential threat,[4] others like Google—and as it would turn out, Defendants—see it as a source of even greater profit and power.

**RESPONSE:** Denied as to Microsoft. Microsoft otherwise lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 75 or its footnote and therefore denies them.

76.    At the end of 2013, Musk learned that Google was planning to acquire DeepMind, which at the time was one of the most advanced AI companies in the industry. Musk, who is well-known for his opposition to closed technology—e.g., Musk's rocket company SpaceX holds almost no patents, and his electric vehicle company Tesla makes its patents open and available for public use—was deeply troubled by this development. He believed that such an important and potentially dangerous technology as AGI in the hands of a giant, private and rapacious company like Google was a matter of grave concern.

**RESPONSE:** Microsoft lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 76 and therefore denies them.

77.    To prevent this, Musk tried to stop the sale of DeepMind but was ultimately unsuccessful. In 2014, Google acquired DeepMind, and with its team, Google immediately catapulted to the front of the race for AGI.

**RESPONSE:** Microsoft admits that Google acquired DeepMind in 2014. Microsoft otherwise lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 77 and therefore denies them.

78.    Following Google's acquisition, Musk began hosting a series of dinner discussions on ways to counter Google and promote AI safety. He even reached out to President Barack Obama in 2015 to discuss his concerns. But regulation never came.

**RESPONSE:** Microsoft lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 78 and therefore denies them.

---

[4] This is the reason Musk organized xAI as a public benefit corporation, which is required to report the results of an annual analysis of the company's social impact. Nev. Benefit Corp. Act, Nev. Rev. Stat. Ann. § 78B.020, -.40, -.60, -.80.

1    79.    Musk continued to advocate for safe AI practices and in 2015, he thought he found

2    someone who understood his apprehensions: Sam Altman.

3    **RESPONSE:** Microsoft lacks knowledge or information sufficient to form a belief as to

4    the truth of the allegations in Paragraph 79 and therefore denies them.

5    **B.    *Altman Induces Musk to Back OpenAI, Inc.***

6    80.    From the start, Altman courted Musk by presenting himself as sharing Musk's well-

7    known concerns over the threat posed by AI/AGI. Altman, an experienced tech player, feigned

8    altruism to convince Musk to give him free start-up capital and, as importantly in a marketplace

9    where talent is scarce and connections and credibility are everything, to recruit top AI scientists.

10    **RESPONSE:** Microsoft lacks knowledge or information sufficient to form a belief as to

11    the truth of the allegations in Paragraph 80 and therefore denies them.

12    81.    Altman began by testing the waters. In early March 2015, he approached Musk to

13    help draft an open letter to the U.S. Government emphasizing the need for regulation to ensure the

14    safe creation of AI. Musk agreed, and the two began preparing the open letter and approaching

15    Musk's influential contacts in the technology and AI sectors about signing it.

16    **RESPONSE:** Microsoft lacks knowledge or information sufficient to form a belief as to

17    the truth of the allegations in Paragraph 81 and therefore denies them.

18    82.    Sensing opportunity, Altman suggested to Musk on May 25, 2015 that they

19    endeavor to beat Google in the race to develop AGI. He wrote that he'd "[b]een thinking a lot about

20    whether it's possible to stop humanity from developing AI. I think the answer is almost definitely

21    not. If it's going to happen, it seems like it would be good for someone other than Google to do it

22    first." Declaration of Marc Toberoff, Ex. 1 at 1.[5] Altman proposed that they start an AI "Manhattan

23    Project" and, to win Musk's backing, offered to "structure it so that the tech belongs to the world

24    via some sort of nonprofit but the people working on it get startup-like compensation if it works.

25    Obviously we'd comply with/aggressively support all regulation." *Id*. Still noncommittal, Musk

26    merely responded: "Probably worth a conversation." *Id*.

27

28

---

[5] Subsequent "Ex." citations are to the Toberoff Declaration.

**RESPONSE:** Microsoft admits that the quoted language appears in Ex. 1 to the Declaration of Marc Toberoff, which speaks for itself. Microsoft denies the allegations to the extent they mischaracterize, take out of context, or misstate or misquote the statements. Microsoft otherwise lacks knowledge or information sufficient to form a belief as to the truth of the statements, and therefore denies them. Microsoft lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 82 or its footnote and therefore denies them.

83.    To convince Musk of his sincerity, Altman promised that he too would have skin in the game and would make meaningful financial contributions to the non-profit. It has since been revealed that Altman grossly inflated what his actual financial contributions would be, which paled in comparison to what he had promised.

**RESPONSE:** Microsoft lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 83 and therefore denies them.

84.    A month later, on June 24, 2015, Altman tried again, this time wooing Musk with a detailed proposal for a new AI lab: "The mission would be to create the first general AI [AGI] and use it for individual empowerment—ie, the distributed version of the future that seems the safest. More generally, safety should be a first-class requirement." Ex. 2 at 1. "The technology would be owned by the foundation and used 'for the good of the world[.]'" *Id*. OpenAI's "researchers would have significant financial upside but it would be uncorrelated to what they build, which should eliminate some of the conflict (we'll pay them a competitive salary and give them [Y Combinator] equity for the upside)." *Id*. This time Musk agreed. *Id*.

**RESPONSE:** Microsoft admits the quoted language appears in Ex. 2, which speaks for itself. Microsoft denies the allegations to the extent they mischaracterize, take out of context, or misstate or misquote the statements. Microsoft otherwise lacks knowledge or information sufficient to form a belief as to the truth of the statements, and therefore denies them. Microsoft lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 84, and therefore denies them.

1    85.    Soon thereafter, Altman recruited Stripe's Chief Technology Officer ("CTO")

2   Gregory Brockman, his long-time colleague, who helped him seal the deal.

3    **RESPONSE:** Microsoft lacks knowledge or information sufficient to form a belief as to

4   the truth of the allegations in Paragraph 85 and therefore denies them.

5    86.    Altman's plan worked. In June 2015, Musk agreed to commit funding and help

6   recruit the top scientists necessary to make Altman's project a success provided that, as promised,

7   OpenAI, Inc. would be a non-profit devoted to developing AI/AGI responsibly by (i) distributing

8   its research and technology openly, preventing its concentration, (ii) focusing on safety, not profits,

9   and (iii) working to benefit the public and humanity rather than for private gain. Indeed, to celebrate

10  what he was led to believe was their mission, Musk named the endeavor "OpenAI."

11   **RESPONSE:** Microsoft lacks knowledge or information sufficient to form a belief as to

12  the truth of the allegations in Paragraph 86 and therefore denies them.

13   87.    On December 8, 2015, a Certificate of Incorporation for OpenAI, Inc. was filed with

14  the Delaware Secretary of State that reaffirmed Altman and Brockman's promises to Musk:

15
16   > This Corporation shall be a nonprofit corporation organized exclusively for charitable and/or educational purposes within the meaning of section 501(c)(3) of the Internal Revenue Code of 1986, as amended, or the corresponding provision of any future United States Internal Revenue law.
17   > **The specific purpose of this corporation is to provide funding for research, development and distribution of technology related to artificial intelligence. The resulting technology will benefit the public and the corporation will seek to open source technology for the public benefit when applicable. The corporation is not organized for the private gain of any person. . . .** The property of this corporation is irrevocably dedicated to the[se] purposes **. . . and no part of the net income or assets of this corporation shall ever inure to the benefit of any director, officer or member thereof or to the benefit of any private person.**
18
19
20
21
22

23  Ex. 21 at 4 (emphasis added).[6]

24

25  ---
    [6] OpenAI's filing for charitable status with California was slightly more general, but taken together, these representations are unambiguous:

26   > OpenAI, Inc. ("OpenAI") is a nonprofit artificial intelligence ("AI") scientific research organization. **Its goal is to engage in research activities that advance digital**
27   > **intelligence in the way that is most likely to benefit humanity as a whole, unconstrained by a need to generate financial return.** AI technology will help shape the 21st century, and **OpenAI wants to help the world build safe AI technology and ensure that AI's benefits are as widely and evenly distributed as possible.** To that

28

1    **RESPONSE:** Microsoft admits that the quoted text appears in Exhibit 21 and is excerpted

2    from OpenAI, Inc.'s Certificate of Incorporation, filed with the Delaware Secretary of State, and

3    OpenAI, Inc.'s Initial Registration Form, filed with the State of California, Office of the Attorney

4    General, Registry of Charitable Trusts, and that the documents speak for themselves.  Microsoft

5    denies the allegations to the extent they take language from the document out of context or

6    mischaracterize or misstate the document. Microsoft otherwise lacks knowledge or information

7    sufficient to form a belief as to the truth of the statements, and therefore denies them. Microsoft

8    otherwise lacks knowledge or information sufficient to form a belief as to the truth of the remaining

9    allegations in Paragraph 87 or its footnote and therefore denies them.

10    88.    OpenAI, Inc. was publicly announced on December 11, 2015, and leveraged Musk's

11    name by making him co-chair of its Board of Directors ("Board") alongside Altman, with

12    Brockman as CTO. The promotional announcement published on OpenAI's website further touted:

13    "OpenAI is a non-profit artificial intelligence research company [whose] goal is to advance digital

14    intelligence in the way that is most likely to benefit humanity as a whole, unconstrained by a need

15    to generate financial return. Since our research is free from financial obligations, we can better

16    focus on a positive human impact."

17    **RESPONSE:** Microsoft admits that OpenAI, Inc. was publicly announced on December

18    11, 2015. Microsoft further admits that the announcement included the quoted language and

19    identified Altman and Musk as co-chairs, and Brockman as CTO. Microsoft lacks knowledge or

20    information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 88

21    and therefore denies them.

22    **C.    _Musk's Crucial Contributions to OpenAI, Inc._**

23    89.    In an email to Altman and Brockman on the day of OpenAI, Inc.'s public

24    announcement, Musk stated: "Our most important consideration is recruitment of the best

25    people[,]" Ex. 6 at 1, and pledged that helping in this effort would be his "absolute top priority

26    24/7[,]" Ex. 5 at 1. He wrote: "We are outmanned and outgunned by a ridiculous margin by

27    _____

       end, OpenAI hopes to build AI as part of a larger community, and wants to openly
       share its plans and capabilities along the way.

28

Ex. 21 at 2 (emphases added).

1    organizations you know well, but we have right on our side and that counts for a lot. I like the
2    odds." Ex. 6 at 1.

3        **RESPONSE:** Microsoft admits the quoted language appears in Ex. 5 and 6, respectively,
4    which speaks for itself. Microsoft denies the allegations to the extent they mischaracterize, take out
5    of context, or misstate or misquote the documents. Microsoft otherwise lacks knowledge or
6    information sufficient to form a belief as to the truth of the statements, and therefore denies them.
7    Microsoft lacks knowledge or information sufficient to form a belief as to the truth of the remaining
8    allegations in Paragraph 89, and therefore denies them.

9        90.    As Altman had devised, Musk proved to be a driving force in the founding of
10    OpenAI, Inc. Musk, directly and through his company Musk Industries, LLC ("Musk Industries"),
11    contributed the majority of OpenAI, Inc.'s funding in its first several years, covered rent and
12    overhead, provided valuable advice and guidance on research directions, and most importantly,
13    Musk donated his time, effort, and connections to recruit some of the world's leading scientists and
14    engineers to work at the non-profit. In fact, recruiting for OpenAI, Inc. was a Herculean task in the
15    face of relentless counter-recruiting by Google/DeepMind, which offered lavish compensation
16    packages to squelch the new venture.

17        **RESPONSE:** Microsoft lacks knowledge or information sufficient to form a belief as to
18    the truth of the allegations in Paragraph 90 and therefore denies them.

19        91.    But Musk persevered and proved instrumental in securing key talent, including
20    Chief Scientist Dr. Ilya Sutskever ("Dr. Sutskever"), whom he hired away from Google, as well as
21    top research scientists Tim Salimans, Filip Wolski, and others.

22        **RESPONSE:** Microsoft lacks knowledge or information sufficient to form a belief as to
23    the truth of the allegations in Paragraph 91 and therefore denies them.

24        92.    Just as Altman planned, Musk used his connections, credibility, and clout to launch
25    the venture. The mere fact OpenAI, Inc. was an "Elon Musk"-sponsored initiative and that Musk
26    served as co-chair were key to its successful recruiting and financing efforts in the company's
27    pivotal early years.

28

1   **RESPONSE:** Microsoft lacks knowledge or information sufficient to form a belief as to

2   the truth of the allegations in Paragraph 92 and therefore denies them.

3       93.    Musk also brought the start-up capital to give OpenAI, Inc. a fighting chance. In late

4   February 2016, he emailed Altman and Brockman: "Whatever it takes to bring on ace talent is fin[e]

5   by me. Deepmind is causing me extreme mental stress. If they win, it will be really bad news with

6   their one mind to rule the world philosophy." Ex. 7 at 1.

7       **RESPONSE:** Microsoft admits that the quoted language appears in Ex. 7, which speaks

8   for itself. Microsoft denies the allegations to the extent they mischaracterize, take out of context,

9   or misstate or misquote the documents. Microsoft otherwise lacks knowledge or information

10  sufficient to form a belief as to the truth of statements, and therefore denies them. Microsoft

11  otherwise lacks knowledge or information sufficient to form a belief as to the truth of the remaining

12  allegations in Paragraph 93 and therefore denies them.

13      94.    In fact, Musk was OpenAI, Inc.'s largest financial backer. In 2016, Musk

14  contributed over $15 million, and in 2017 he contributed nearly $20 million. Additionally, through

15  Musk Industries, he leased OpenAI, Inc.'s office space in the Pioneer Building in San Francisco,

16  paid its monthly overhead expenses, and even though he stepped down from the Board and

17  relinquished his status as member on February 21, 2018, he nevertheless continued to make regular

18  contributions to OpenAI, Inc. until September 14, 2020. All told, Musk contributed more than $44

19  million in cash alone to OpenAI, Inc. in its first five critical years.

20      **RESPONSE:** Microsoft lacks knowledge or information sufficient to form a belief as to

21  the truth of the allegations in Paragraph 94 and therefore denies them.

22      95.    It is fair to say that without Musk's involvement, backing, and substantial supportive

23  efforts, there would have been no OpenAI.

24      **RESPONSE:** Microsoft lacks knowledge or information sufficient to form a belief as to

25  the truth of the allegations in Paragraph 95 and therefore denies them.

26      **D.    _Microsoft Gets Involved_**

27      96.    Even early on, Microsoft, which was working to develop its own AI, was keen to

28  exploit OpenAI, Inc. But as the non-profit had no shareholders and Microsoft could not simply

purchase influence, it obtained leverage in other ways by, for example, causing OpenAI, Inc. to become inextricably dependent on Microsoft's cloud computing system ("compute").

**RESPONSE:** Denied.

97.    In September 2016, Altman and Microsoft arranged for it to sell compute to OpenAI, Inc. at a steep discount so long as the non-profit agreed to publicly promote Microsoft's products. Ex. 10 at 3-5. Musk rejected the "donation" and marketing ploy, writing to Altman: "This actually made me feel nauseous. It sucks and is exactly what I would expect from them." *Id*. at 2. The deal eventually went through, but without marketing gimmicks and at a more fulsome, but still below-market, price. *Id*. at 1.

**RESPONSE:** Microsoft admits that it announced a new partnership to sell compute to OpenAI in November 2016. Microsoft has agreed to produce documents in its possession relating to the 2016 arrangement and the terms of the arrangement speak for itself. Microsoft lacks knowledge or information regarding Musk's alleged actions but admits that the quoted language appears in Ex. 10, which speaks for itself. Microsoft denies the allegations to the extent they mischaracterize, take out of context, or misstate or misquote the documents. Microsoft otherwise lacks knowledge or information sufficient to form a belief as to the truth of the statements, and therefore denies them. Microsoft otherwise denies the remaining allegations in Paragraph 97.

98.    While Musk had expressed an affinity for Microsoft's CEO Satya Nadella ("Nadella"), the values of Microsoft and OpenAI, Inc. did not align. Whereas Musk was concerned that AI posed an existential danger to humankind and believed the technology should be decentralized and open, Nadella and Microsoft's co-founder Bill Gates minimized Musk's concerns as "panic" and too far off in the future.

**RESPONSE:** Microsoft denies the allegation that the values of Microsoft and OpenAI, Inc. did not align. Microsoft admits that Nadella and Microsoft's co-founder Gates made comments in 2017 regarding Musk's concerns about the dangers of AI, but denies the allegations to the extent they mischaracterize, take out of context, or misstate or misquote the article. Microsoft otherwise lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 98 and therefore denies them.

1   99.    Musk wrote: "History unequivocally illustrates that a powerful technology is a

2   double-edged sword . . . The recent example of Microsoft's AI chatbot shows how quickly it can

3   turn incredibly negative. The wise course of action is to approach the advent of AI with caution and

4   ensure that its power is widely distributed and not controlled by any one company or person. **That**

5   **is why we created OpenAI.**" Ex. 9 at 1 (emphasis added).

6   **RESPONSE:** Microsoft admits the quoted language appears in Ex. 9, which speaks for

7   itself. Microsoft denies the allegations to the extent they mischaracterize, take out of context, or

8   misstate or misquote the document. Microsoft otherwise lacks knowledge or information sufficient

9   to form a belief as to the truth of statements, and therefore denies them. Microsoft otherwise lacks

10  knowledge or information sufficient to form a belief as to the truth of the remaining allegations in

11  Paragraph 99 and therefore denies them.

12  **E.    _Defendants Try to Convert OpenAI, Inc. to a For-Profit_**

13  100.    In 2017-2018, Altman and Brockman moved to recast the non-profit as a

14  moneymaking endeavor to bring in shareholders, sell equity, and raise capital, and pressed Musk

15  to agree. Ex. 12 at 1-2. Musk briefly toyed with the idea of using Tesla as OpenAI, Inc.'s "cash

16  cow" to solve the non-profit's cash-flow concerns, while keeping it in good hands and maintaining

17  its mission. Ex. 16 at 1-2.

18  **RESPONSE:** Microsoft admits the quoted language appears in Ex. 16, which speaks for

19  itself. Microsoft denies the allegations to the extent they mischaracterize, take out of context, or

20  misstate or misquote the documents. Microsoft otherwise lacks knowledge or information sufficient

21  to form a belief as to the truth of statements, and therefore denies them. Microsoft lacks knowledge

22  or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph

23  100 and therefore denies them.

24  101.    After some back and forth, Musk wrote to Altman and Brockman on September 20,

25  2017: "Either go do something on your own or continue with OpenAI as a non-profit. I will no

26  longer fund OpenAI until you have made a firm commitment to stay or I'm just being a fool who

27  is essentially providing free funding to a start-up. Discussions are over." Ex. 13 at 4.

28

**RESPONSE:** Microsoft admits the quoted language appears in Ex. 13, which speaks for itself. Microsoft denies the allegations to the extent they mischaracterize, take out of context, or misstate or misquote the document. Microsoft lacks knowledge or information sufficient to form a belief as to the truth of the statement, and therefore denies it. Microsoft lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 101 and therefore denies them.

102.    Altman tried to play the whole thing off, reassuring Musk the next day: "[I] remain enthusiastic about the non-profit structure!" *id*. at 1, with Brockman soon following suit. Ex. 14 at 1. On September 22, 2017, Shivon Zilis, who had been working at OpenAI, Inc. since 2016, providing strategic guidance, e-mailed Musk that Altman had reassured her also that he was "Great with keeping [it a] non-profit and continuing to support it." Ex. 14 at 1.

**RESPONSE:** Microsoft admits the quoted language appears in Ex. 14, which speaks for itself. Microsoft denies the allegations to the extent they mischaracterize, take out of context, or misstate or misquote the document. Microsoft lacks knowledge or information sufficient to form a belief as to the truth of the statements, and therefore denies them. Microsoft lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 102 and therefore denies them.

### F.    *Defendants Do Secretly What They Failed to Do Openly*

103.    We now know Altman and Brockman's reaffirmation was a lie. In January 2018, mere months after their September 2017 "enthusias[m]," Altman proposed a scam-worthy "ICO," or initial coin offering, that would have seen OpenAI, Inc. sell its own cryptocurrency. Ex. 15 at 1. Musk shot down this idea too, stating "it would simply result in a massive loss of credibility for OpenAI and everyone associated with the ICO." Ex. 16 at 3.

**RESPONSE:** Microsoft admits the quoted language appears in Ex. 15 and 16, respectively, which speaks for itself. Microsoft denies the allegations to the extent they mischaracterize, take out of context, or misstate or misquote the documents. Microsoft lacks knowledge or information sufficient to form a belief as to the truth of the statements, and therefore denies them. Microsoft

1    lacks knowledge or information sufficient to form a belief as to the truth of the remaining

2    allegations in Paragraph 103 and therefore denies them.

3        104.    On information and belief, mere weeks after Musk stopped their *second* get-rich-

4    quick scheme (the ICO), and no later than February 11, 2018, Altman and Brockman agreed among

5    themselves to figure out a structure for an equity fundraise—in other words, convert to a for-profit

6    structure.

7        **RESPONSE:** Microsoft lacks knowledge or information sufficient to form a belief as to

8    the truth of the allegations in Paragraph 104 and therefore denies them.

9        105.    On information and belief, this plan grew out of their discussions that had begun in

10   or around July 2017. Ex. 11 at 1 ("Coming up: Designing the for-profit structure").

11       **RESPONSE:** Microsoft admits the quoted language appears in Ex. 11, which speaks for

12   itself. Microsoft denies the allegations to the extent they mischaracterize, take out of context, or

13   misstate or misquote the document. Microsoft lacks knowledge or information sufficient to form a

14   belief as to the truth of the statement, and therefore denies it. Microsoft lacks knowledge or

15   information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 105

16   and therefore denies them.

17       106.    Notably, on March 25, 2018, barely a month after Musk stepped down from

18   OpenAI, Inc.'s Board, Altman proposed the selling of equity in an unusual "fixed maximum return"

19   structure, sufficiently developed to be actionable within four to six weeks. Ex. 18 at 1-2.

20       **RESPONSE:** Microsoft admits the quoted language appears in Ex. 18, which speaks for

21   itself. Microsoft denies the allegations to the extent they mischaracterize, take out of context, or

22   misstate or misquote the documents. Microsoft otherwise lacks knowledge or information sufficient

23   to form a belief as to the truth of statement, and therefore denies it. Microsoft otherwise lacks

24   knowledge or information sufficient to form a belief as to the truth of the remaining allegations in

25   Paragraph 106 and therefore denies them.

26       107.    It would ordinarily take months for such a billion-dollar proposal to reach this

27   advanced, concrete stage, and, on information and belief, for a novel mechanism like this,

28

1    preparations began no later than the summer of 2017. And, of course, a purported fixed maximum

2    return scheme is exactly what Defendants wound up confecting.

3        **RESPONSE:** Microsoft denies that it was involved in any such "preparations." Microsoft

4    otherwise lacks knowledge or information sufficient to form a belief as to the truth of the remaining

5    allegations in Paragraph 107 and therefore denies them.

6        108.    This unusual structure, what Defendants call a "capped-profit company," is one

7    where investors can make a profit capped at a certain multiple of their investment. On information

8    and belief, Defendants intended to set the multiple at 100x.

9        **RESPONSE:** Microsoft admits that a capped-profit entity is one in which investors are

10   able to receive returns capped at certain multiples of their investments. Microsoft denies the

11   remaining allegations in Paragraph 108.

12       109.    In early 2019, Altman finally succeeded in his multi-year effort to become OpenAI,

13   Inc.'s CEO.

14       **RESPONSE:** Microsoft admits that Altman became CEO of OpenAI, Inc. in 2019.

15   Microsoft otherwise lacks knowledge or information sufficient to form a belief as to the truth of

16   the remaining allegations in Paragraph 109 and therefore denies them.

17       110.    On information and belief, with its confederate Altman now in charge, Microsoft

18   extracted a July 22, 2019 agreement from OpenAI giving Microsoft the exclusive right to supply

19   OpenAI's single most important raw material, compute, without which OpenAI would cease to

20   exist. This agreement was extended in 2021 and again, on January 23, 2023.

21       **RESPONSE:** Microsoft denies the allegations in the first sentence of Paragraph 110.

22   Microsoft admits that it entered into an agreement on July 2, 2019 in which Microsoft agreed to

23   provide computing services to OpenAI. Microsoft admits the allegations in the second sentence of

24   Paragraph 110.

25       111.    On information and belief, at Altman's urging and with Brockman's assistance,

26   Defendants began forming numerous for-profit entities, in which Altman, Brockman, and

27   Microsoft hold generous stakes, and weaving them into an increasingly labyrinthian OpenAI

28   corporate web for the purpose of profiting from OpenAI, Inc.'s assets.

- 34 -

1    **RESPONSE:** Microsoft denies the allegations in Paragraph 111 insofar as they suggest

2    Microsoft had a role in forming for-profit entities and "weaving them into an increasingly

3    labyrinthian OpenAI corporate web for the purpose of profiting from OpenAI, Inc.'s assets."

4    Microsoft further denies the allegation in Paragraph 111 that it holds "generous stakes" in OpenAI's

5    for-profit entities. Microsoft otherwise lacks knowledge or information sufficient to form a belief

6    as to the truth of the remaining allegations in Paragraph 111 and therefore denies them.

7        112.    On March 6, 2019, Altman emailed Musk a draft of an announcement stating he was

8    forming a "new entity," OpenAI, L.P., as a capped-profit company, appointing himself as CEO and

9    Brockman as board chair. Ex. 19 at 1-4. The entity was not new, however. Altman had caused its

10    incorporation in Delaware on September 19, 2018.

11    **RESPONSE:** Microsoft admits the quoted language appears in Ex. 19, which speaks for

12    itself. Microsoft denies the allegations to the extent they mischaracterize, take out of context, or

13    misstate or misquote the document. Microsoft lacks knowledge or information sufficient to form a

14    belief as to the truth of the statement, and therefore denies it. Microsoft lacks knowledge or

15    information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 112

16    and therefore denies them.

17        113.    In response, and with evident displeasure, Musk demanded: "Please be explicit that

18    I have no financial interest in the for-profit arm of OpenAI." Ex. 20 at 1.

19    **RESPONSE:** Microsoft admits the quoted language appears in Ex. 20, which speaks for

20    itself. Microsoft denies the allegations to the extent they mischaracterize, take out of context, or

21    misstate or misquote the document. Microsoft lacks knowledge or information sufficient to form a

22    belief as to the truth of the statement, and therefore denies it. Microsoft lacks knowledge or

23    information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 113

24    and therefore denies them.

25        114.    On March 11, 2019, Altman and Brockman "launched" OpenAI, L.P. On January

26    23, 2023, OpenAI, L.P. was converted to OpenAI OpCo, LLC. After its conversion, it would be

27    operated by OpenAI GP, L.L.C., which on September 19, 2018 was formed in Delaware.

28

**RESPONSE:** The OpenAI Defendants admitted that the creation of OpenAI, L.P. was announced on March 11, 2019 in a blog post authored by Brockman and Sutskever; that OpenAI, L.P. was subsequently converted to OpenAI OpCo, LLC on January 23, 2023; that OpenAI OpCo, LLC was managed by OpenAI GP, L.L.C.; and that OpenAI GP, L.L.C. was formed in Delaware on September 19, 2018. Microsoft respectfully refers the Court to the OpenAI Defendants' response. Microsoft otherwise lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 114 and therefore denies them.

115.    On September 17, 2020, OpenAI, L.L.C. was formed in Delaware. OpenAI, L.L.C.'s sole member is currently OpenAI Global, LLC.

**RESPONSE:** The OpenAI Defendants admitted that OpenAI, L.L.C. was formed in Delaware on September 17, 2020. Microsoft respectfully refers the Court to the OpenAI Defendants' response. Microsoft otherwise lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 115 and therefore denies them.

116.    On December 28, 2022, OpenAI Global, LLC was formed in Delaware. On information and belief, OpenAI Global, LLC, like OpenAI, L.P., is a "capped" for-profit entity. OpenAI Global, LLC has two members: Microsoft and OAI Corporation.

**RESPONSE:** The OpenAI Defendants admitted the allegations in Paragraph 116 and Microsoft admits that it is a member of OpenAI Global, LLC. Microsoft respectfully refers the Court to the OpenAI Defendants' response.

117.    On information and belief, OpenAI Global, LLC, like OpenAI OpCo, LLC, is managed by OpenAI GP, L.L.C.

**RESPONSE:** The OpenAI Defendants admitted the allegations in Paragraph 117. Microsoft respectfully refers the Court to the OpenAI Defendants' response.

118.    On March 17, 2023, OAI Corporation was formed in Delaware as a corporation. Prior to September 2023, Defendant OAI Corporation was OAI Corporation, LLC, a limited liability company formed in Delaware with its principal place of business in California. The sole owner of OAI Corporation is OpenAI Holdings, LLC.

1    **RESPONSE:**  The OpenAI Defendants admitted that OAI Corporation, LLC was converted

2    to a corporation registered in Delaware on September 5, 2023. The OpenAI Defendants further

3    admitted the allegations in the third sentence of Paragraph 118. Microsoft respectfully refers the

4    Court to the OpenAI Defendants' response. Microsoft otherwise lacks knowledge or information

5    sufficient to form a belief as to the truth of the remaining allegations in Paragraph 118 and therefore

6    denies them.

7        119.    On March 17, 2023, OpenAI Holdings, LLC was formed in Delaware, and has

8    multiple members, including Aestas, LLC and various individuals.

9        **RESPONSE:** The OpenAI Defendants admitted the allegations in Paragraph 119.

10    Microsoft respectfully refers the Court to the OpenAI Defendants' response.

11        120.    On February 10, 2023, Aestas Management Company, LLC was formed as a limited

12    liability company in Delaware and is also managed by OpenAI GP, L.L.C.

13        **RESPONSE:** The OpenAI Defendants admitted the allegations in Paragraph 120.

14    Microsoft respectfully refers the Court to the OpenAI Defendants' response.

15        121.    On information and belief, the other entities—OpenAI Startup Fund Management,

16    LLC, OpenAI Startup Fund GP I, L.L.C., OpenAI Startup Fund I, L.P., OpenAI Startup Fund SPV

17    GP I, L.L.C., OpenAI Startup Fund SPV GP II, L.L.C., OpenAI Startup Fund SPV GP III, L.L.C.,

18    OpenAI Startup Fund SPV GP IV, L.L.C., OpenAI Startup Fund SPV I, L.P., OpenAI Startup Fund

19    SPV II, L.P., OpenAI Startup Fund SPV III, L.P., OpenAI Startup Fund SPV IV, L.P. (collectively,

20    with those entities named in paragraphs 114-20, *supra*, the "For-Profit Entities")—are also

21    interwoven into Defendants' corporate web for the purpose of profiting from the non-profit

22    OpenAI, Inc.'s assets. Many of these entities were only recently registered and indeed, more

23    OpenAI entities are popping up almost every month as part of Defendants' shell game.

24        **RESPONSE:** Microsoft denies the allegations in Paragraph 121 insofar as they suggest

25    Microsoft has participated in creating a "corporate web for the purpose of profiting from the non-

26    profit OpenAI, Inc.'s assets" or any kind of "shell game." Microsoft otherwise lacks knowledge or

27    information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 122

28    and therefore denies them.

122.    The complex and largely opaque profiteering arm of OpenAI—in which, on information and belief, Microsoft, Altman, and Brockman are significant shareholders—while publicly cloaked as a mere fundraising apparatus, is in reality, the foundation for Defendants' scheme to control and cash in on OpenAI, Inc.'s technology.

**RESPONSE:** Microsoft denies the allegations in Paragraph 122 that Microsoft is a "significant shareholder" in the "complex and largely opaque profiteering arm of OpenAI" and that it has participated in any "scheme to control and cash in on OpenAI, Inc.'s technology." Microsoft lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 122 and therefore denies them.

123.    We know, for example, that Microsoft owns a significant stake in OpenAI Global, LLC, which in turn is an owner of OpenAI, L.L.C. and OpenAI OpCo, LLC, Dkt. No. 18 at 1, ¶¶ 2-3, 5—the entity to which OpenAI, Inc.'s proprietary intellectual property was diverted. We also know that Altman named himself as the manager of OpenAI Startup Fund I, L.P., which raised $175,250,000.00 and in which, once again, Microsoft holds a significant ownership interest, Dkt. No. 18 at 2, ¶ 10.

**RESPONSE:** The OpenAI Defendants admitted that OpenAI Global, LLC is an owner of OpenAI OpCo, LLC and an indirect owner of OpenAI, L.L.C. Microsoft respectfully refers the Court to the OpenAI Defendants' response. Microsoft admits it holds a stake in OpenAI Startup Fund I, L.P., but otherwise lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 123 and therefore denies them.

124.    But because OpenAI, Inc. has intentionally chosen entity configurations that, by and large, do not require public disclosures, contrary to its commitments to transparency and its role as a publicly supervised charity, the true extent of Altman, Brockman, and Microsoft's conflicted dealings is unknown.

**RESPONSE:** Microsoft denies the allegation in Paragraph 124 that it is involved in any "conflicted dealings." Microsoft otherwise lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 124 and therefore denies them.

125.    What is clear is that Altman's repeated public proclamations to own no "equity" in these entities, is, as with so many of his statements, grossly and intentionally misleading because, on information and belief, he (or an entity owned or controlled by him) does.

**RESPONSE:** Microsoft lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 125 and therefore denies them.

## G.    *Defendants Use Their For-Profit Entities to Loot OpenAI, Inc.*

126.    As with many things, the issue here is one of degree. While there is little concern with using a for-profit entity to help fundraise for a non-profit, it is quite another thing to launch a dense fleet of dozens of for-profit entities to loot the non-profit of its only valuable assets (intellectual property and employees) and facilitate veiled and unchecked profiteering, rife with conflicts, as Defendants have done.

**RESPONSE:** Denied.

127.    To facilitate their profiteering, Defendants locked down and began withholding the non-profit's technology and scientific research.

**RESPONSE:** Denied.

128.    Defendants also transferred most of OpenAI, Inc.'s intellectual property to OpenAI, L.P. in 2019 and 2020. Ex. 22 at 2; Ex. 23 at 2. Since then, such transfers have continued apace with, for example, the issuance of patents and trademarks to OpenAI OpCo, LLC, which is listed on the U.S. Patent and Trademark Office website as the owner of most of OpenAI's registered intellectual property.

**RESPONSE:** Microsoft admits that certain intellectual property assets were transferred from OpenAI, Inc. to OpenAI, L.P. in 2019. Microsoft otherwise lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 128 and therefore denies them.

129.    Indeed, just *follow the money*. OpenAI, Inc.'s 2022 IRS tax return showed a mere $44,485 in revenue,[7] but one year later, OpenAI overall reportedly generated *$1.6 billion* in revenue.

**RESPONSE:** Microsoft admits that OpenAI, Inc. reported $44,485 in revenue to the IRS in its 2022 Form 990 filing. Microsoft otherwise lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 129 or its footnote and therefore denies them.

130.    Defendants also drained the non-profit OpenAI, Inc. of most of its staff and transferred them over to the new private, for-profit company (now OpenAI OpCo, LLC), which also presently houses much of OpenAI's research and development. This strategic move conveniently shields Defendants from the public oversight and financial disclosures non-profits like OpenAI, Inc. must make.

**RESPONSE:** Microsoft denies the allegations in Paragraph 130 to the extent they implicate Microsoft. Microsoft otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 130 and therefore denies them.

131.    From there, on information and belief, beginning September 22, 2020, Altman caused the non-profit to exclusively license its technology to Microsoft, the world's then-largest for-profit corporation, diverging from Altman and OpenAI, Inc.'s promises to Musk and the non-profit's black-letter commitments—e.g., OpenAI, Inc.'s Certificate of Incorporation: "no part of the net income or assets of this corporation shall ever inure to the benefit of . . . any private person," Ex. 21 at 4; and Charter: "We commit to . . . avoid enabling uses of AI or AGI that . . . unduly concentrate power[,]" Ex. 17 at 1.

**RESPONSE:** Microsoft admits that the quoted language appears in Exhibits 21 and 17, respectively, which speaks for itself. Microsoft denies the allegations to the extent they mischaracterize, take out of context, or misstate or misquote the documents. Microsoft otherwise lacks knowledge or information sufficient to form a belief as to the truth of statements, and therefore

---

[7] Notably, 2022 was the last year Defendants made such documents readily available to the public, yet another curious decision for a putative non-profit.

1    denies them. Microsoft otherwise lacks knowledge or information sufficient to form a belief as to

2    the truth of the remaining allegations in Paragraph 131 and therefore denies them.

3        132.    The Microsoft license is expansive and includes all OpenAI, Inc.'s "pre-AGI"

4    technologies, and tasks the Board with determining when "AGI" has been attained. To date, the

5    Board has made no such finding, thus giving Microsoft unfettered access to OpenAI's suite of

6    technology.

7        **RESPONSE:** Microsoft admits that it has entered into an agreement with OpenAI,

8    pursuant to which OpenAI granted Microsoft a license to OpenAI's "pre-AGI" intellectual

9    property, as defined in the agreement. Microsoft otherwise denies the remaining allegations in

10    Paragraph 132.

11        133.    In addition, Altman, with the assistance and/or cooperation of Brockman and the

12    For-Profit Entities, began to self-deal with impunity. On information and belief, while serving on

13    OpenAI, Inc.'s Board, Altman deliberately withheld key information and lied about his personal

14    holdings and investments both in and outside of OpenAI to keep the Board from discovering his

15    glaring conflicts of interest.

16        **RESPONSE:** Microsoft lacks knowledge or information sufficient to form a belief as to

17    the truth of the allegations in Paragraph 133 and therefore denies them.

18        134.    For example, on information and belief, Altman controls OpenAI Startup Fund I,

19    L.P., and stands to personally profit from its association with OpenAI.

20        **RESPONSE:** Microsoft lacks knowledge or information sufficient to form a belief as to

21    the truth of the allegations in Paragraph 134 and therefore denies them.

22        135.    In May 2024, Altman is reported to have induced OpenAI to strike a deal with

23    Reddit wherein OpenAI would pay to license Reddit's content to train ChatGPT. On information

24    and belief, Altman and/or entities he controls own a whopping 7.6% of Reddit, making him one of

25    its largest outside shareholders. After the deal was announced, Reddit's stock shot up 10%, boosting

26    Altman's stake by $69 million. On October 29, 2024, Reddit finally posted its first profit as a public

27    company due in large part to the revenue generated by its licensing deal with OpenAI, causing the

28    company's stock price to skyrocket more than 40% the following day.

1    **RESPONSE:** Microsoft lacks knowledge or information sufficient to form a belief as to

2    the truth of the allegations in Paragraph 135 and therefore denies them.

3        136.    By contrast, Altman and OpenAI made no such deal to use data from content

4    providers such as *The New York Times* or the *Chicago Tribune*, in which Altman had no ownership,

5    and which are now suing OpenAI for copyright infringement.

6        **RESPONSE:** Microsoft admits that *The New York Times* and *Chicago Tribune* have sued

7    OpenAI for copyright infringement. Microsoft otherwise lacks knowledge or information sufficient

8    to form a belief as to the truth of the remaining allegations in Paragraph 136 and therefore denies

9    them.

10       137.    On information and belief, in 2019, Altman caused OpenAI to sign a $51 million AI

11   chip deal with Rain AI, a company in which he held a significant interest.

12       **RESPONSE:** Microsoft lacks knowledge or information sufficient to form a belief as to

13   the truth of the allegations in Paragraph 137 and therefore denies them.

14       138.    On information and belief, in 2020 Altman invested in the hardware company

15   Humane, which plans to power its devices using OpenAI's software. Holding companies controlled

16   by Altman own 15% of Humane's equity—a greater amount than each of the company's founders.

17       **RESPONSE:** Microsoft admits, based on publicly available information, that Altman is an

18   investor in the company, Humane. Microsoft otherwise lacks knowledge or information sufficient

19   to form a belief as to the truth of the remaining allegations in Paragraph 138 and therefore denies

20   them.

21       139.    On information and belief, Altman invested in yet another hardware company,

22   Limitless, which also plans to power its devices using OpenAI's software. The timing of this

23   investment is not yet known.

24       **RESPONSE:** Microsoft admits, based on publicly available information, that Altman is an

25   investor in the company, Limitless.  Microsoft otherwise lacks knowledge or information sufficient

26   to form a belief as to the truth of the remaining allegations in Paragraph 139 and therefore denies

27   them.

28

140.    On information and belief, no later than March 15, 2023, OpenAI selected Stripe, in which Altman and Brockman have significant ownership interests, as its commercial partner to process payments as OpenAI moved to monetize its technology.

**RESPONSE:** Microsoft lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 140 and therefore denies them.

141.    On information and belief, no later than September 2023, Altman and former Apple chief design officer, Jony Ive, made plans to launch their own AI device company to exploit OpenAI's technology to compete with Apple's iPhone.

**RESPONSE:** Microsoft lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 141 and therefore denies them.

142.    On information and belief, OpenAI is hammering out a deal with Helion Energy (in which Altman owns a massive stake) for OpenAI to buy vast quantities of electricity to power its data centers. And in May 2023, Altman's ally Microsoft enriched him by striking such a deal with Helion Energy.

**RESPONSE:** Microsoft admits it agreed to purchase electricity from Helion Energy in May 2023. Microsoft otherwise lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 142 and therefore denies them.

143.    On information and belief, Altman, Brockman, Microsoft, and the For-Profit Entities have been and will continue to be enriched by their respective stake in OpenAI's for-profit machine. Altman alone stands to make billions from the non-profit Musk co-founded and invested considerable money, time, recruiting efforts, and goodwill in furtherance of its stated mission.

**RESPONSE:** Microsoft denies the allegation in the first sentence of Paragraph 143. Microsoft otherwise lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 143 and therefore denies them.

144.    Altman's scheme has now become clear: lure Musk with phony philanthropy; exploit his money, stature, and contacts to secure world-class AI scientists to develop leading technology; then feed the non-profit's lucrative assets into an opaque profit engine and proceed to cash in as OpenAI and Microsoft monopolize the generative AI market.

1    **RESPONSE:** Denied.

2    145.    On information and belief, Microsoft, acting in lockstep with the other Defendants,

3    stands to make hundreds of billions from its methodical infiltration of, and increasing leverage

4    over, the non-profit, its technology, and employees, to the point that Microsoft now exercises

5    effective control over OpenAI—a de facto merger in terms of Microsoft's accumulation of assets,

6    equity, and dominance over OpenAI.

7    **RESPONSE:** Denied.

8    H.    ***Microsoft Demonstrates Its Dominance and Control After OpenAI, Inc.'s Board
       Shows Independence***

9

10   146.    Microsoft demonstrated its dominance in a series of extraordinary developments

11   culminating on November 22, 2023. Microsoft and Altman leveraged their positions to force all but

12   one member of OpenAI, Inc.'s Board to resign and replaced them with underqualified and

13   compliant allies handpicked by Altman and blessed by Microsoft.

14   **RESPONSE:** Denied.

15   147.    Before this coup, the Board consisted of Chief Scientist Dr. Sutskever, Brockman,

16   Altman, Helen Toner ("Toner"), Adam D'Angelo ("D'Angelo"), and Tasha McCauley

17   ("McCauley"). In addition to serving on the Board, Toner is a researcher and advisor for the Center

18   for the Governance of AI ("GovAI") and the Director of Strategy at Georgetown's Center for

19   Security and Emerging Technology. McCauley is a Senior Management Scientist at RAND

20   Corporation, a non-profit which specializes in public policy decision making. Like Toner,

21   McCauley is also an advisor for GovAI.

22   **RESPONSE:** Microsoft admits that, prior to November 17, 2023, OpenAI, Inc.'s Board

23   consisted of Suskever, D'Angelo, McCauley, Toner, Altman, and Brockman. Microsoft otherwise

24   lacks knowledge or information sufficient to form a belief as to the truth of the remaining

25   allegations in Paragraph 147 and therefore denies them.

26   148.    The choice to include on the Board multiple academics and public policy experts

27   with deep AI policy experience, most of whom had no financial stake in OpenAI, was deliberate.

28   This composition of financially disinterested Board members with strong records of public service

1   ensured that the Board would put the non-profit's principles of openness and safety before financial

2   success—which it did.

3       **RESPONSE:** Microsoft lacks knowledge or information sufficient to form a belief as to

4   the truth of the remaining allegations in Paragraph 148 and therefore denies them.

5       149.    On November 17, 2023, OpenAI, Inc.'s Board dismissed Altman as CEO and from

6   the Board, announcing he was fired following "a deliberative review process by the board, which

7   concluded that he was not consistently candid in his communications with the board, hindering its

8   ability to exercise its responsibilities. The board no longer has confidence in his ability to continue

9   leading OpenAI." Brockman was also dismissed from the Board, but not as OpenAI, Inc.'s CTO,

10  though he resigned in solidarity with Altman shortly thereafter.

11      **RESPONSE:** Microsoft admits that OpenAI, Inc.'s Board dismissed Altman and

12  Brockman on November 17, 2023 and that OpenAI's public announcement included the quoted

13  language in the first sentence of Paragraph 149, which speaks for itself. Microsoft denies the

14  allegations to the extent they mischaracterize, take out of context, or misstate or misquote the

15  statements. Microsoft otherwise lacks knowledge or information sufficient to form a belief as to

16  the truth of the statements, and therefore denies them. Microsoft further admits that Brockman

17  resigned from OpenAI on November 17, 2023. Microsoft otherwise lacks knowledge or

18  information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 149

19  and therefore denies them.

20      150.    It has been reported that the Board fired Altman because he had deliberately

21  misrepresented what was happening at OpenAI, Inc. and explicitly lied to the Board to obstruct its

22  ability to carry out its oversight duties. The Board was likewise concerned by Altman's numerous

23  side hustles and conflicts of interest and his purposeful withholding of information necessary for

24  the Board to evaluate the scope and extent of his self-dealing and myriad conflicts.

25      **RESPONSE:** Microsoft lacks knowledge or information sufficient to form a belief as to

26  the truth of the allegations in Paragraph 150 and therefore denies them.

27

28

151. News reports further suggest Altman's firing was due in part to OpenAI, Inc.'s breakthroughs in AGI and Altman's prioritizing profit over safety and the non-profit's founding principles.

**RESPONSE:** Microsoft lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 151, and therefore denies them.

152. On information and belief, when Microsoft's CEO Nadella learned of Altman's firing, he was furious. As perhaps the largest shareholder in OpenAI's for-profit arm, Nadella felt Microsoft should have been consulted before the decision was made.

**RESPONSE:** Microsoft admits that Nadella conducted an interview with Kara Swisher published on November 21, 2023, in *New York Magazine* with a statement that he wished he had been consulted, which speaks for itself. Microsoft denies the allegations to the extent they mischaracterize, take out of context, or misstate or misquote the interview. Microsoft otherwise denies the remaining allegations in Paragraph 152.

153. On information and belief, aside from Altman and Brockman, OpenAI, Inc.'s then-constituted Board had no ties to Microsoft. Rather, Altman was the primary liaison between Microsoft and OpenAI, Inc., and with him gone, Microsoft's continued exclusive license of the non-profit's evolving technology (i.e., AGI) was in jeopardy.

**RESPONSE:** Denied.

154. Microsoft's response was swift. Nadella hired Altman and Brockman to lead a new Microsoft AI research lab, unbound by the constraints of OpenAI, Inc.'s humanitarian mission, and the three actively solicited OpenAI's employees to leave and join Microsoft's new lab. On information and belief, Altman and Brockman became senior employees of Microsoft.

**RESPONSE:** Microsoft admits that on November 20, 2023, it announced the hiring of Altman and Brockman to lead a new AI research team. Microsoft otherwise denies the remaining allegations in Paragraph 154.

155. Microsoft was nevertheless confident that, whatever happened, it could still capitalize on OpenAI, Inc.'s research and technology. Indeed, during an interview shortly after Altman's firing, Nadella stated:

We have all the IP rights and all the capability. If OpenAI disappeared tomorrow, I don't want any customer of ours to be worried about it quite honestly, because we have all of the rights to continue the innovation. Not just to serve the product, but we can go and just do what we were doing in partnership ourselves. We have the people, we have the compute, we have the data, we have everything.

**RESPONSE:** Microsoft admits that Nadella conducted an interview with Kara Swisher published on November 21, 2023, in *New York Magazine* with the statement quoted above, which speaks for itself. Microsoft denies the allegations to the extent they mischaracterize, take out of context, or misstate or misquote the article. Microsoft otherwise denies the remaining allegations in Paragraph 155.

156.    Despite Microsoft's bold statements, it apparently still wanted its man Altman on the inside as OpenAI, Inc.'s CEO. In the days following his firing, OpenAI, Inc.'s Board faced mounting pressure from Microsoft to reinstate Altman. Nadella even bragged about Microsoft's influence over the non-profit: "We are in there. We are below them, above them, around them."

**RESPONSE:** Microsoft admits that Nadella conducted an interview with Kara Swisher published on November 21, 2023, in *New York Magazine* with the statement quoted above, which speaks for itself. Microsoft denies the allegations to the extent they mischaracterize, take out of context, or misstate or misquote the article. Microsoft otherwise denies the remaining allegations in Paragraph 156.

157.    Microsoft indeed had leverage. On information and belief, at the time of Altman's ouster, Microsoft had paid only a fraction of the $13 billion commitment it had made to OpenAI. And if Microsoft were to withhold its compute on which OpenAI was reliant, it would be effectively incapacitated.

**RESPONSE:** Denied.

158.    The pressure on the Board from Altman, Brockman, and Microsoft continued until November 21, 2023, when Altman was reinstated as CEO after his dismissal, and Brockman as CTO. The coup took Defendants just four days.

**RESPONSE:** On information and belief, OpenAI made a decision to reinstate Altman as CEO and Brockman as President of OpenAI on November 21, 2023. Microsoft denies the allegation

1    in Paragraph 158 that it put "pressure on the Board." Microsoft otherwise lacks knowledge or

2    information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 158

3    and therefore denies them.

4         159.    Upon his return, Altman and Microsoft demanded the resignation of Toner,

5    McCauley, and Dr. Sutskever from the Board, taking the opportunity to clean house and purge

6    those who ousted Altman, as Nadella had vowed: "We'll definitely take care of all of the

7    governance issues and anything else . . . we have all the rights, so therefore we will make sure that

8    we are very, very clear that the governance gets fixed[.]" Notably, D'Angelo—the sole Board

9    member to remain after Altman's reinstatement—is a tech CEO and entrepreneur.

10        **RESPONSE:** Microsoft admits that Nadella conducted an interview with Kara Swisher

11   published on November 21, 2023, in *New York Magazine* with the statement quoted above, which

12   speaks for itself. Microsoft denies the allegations to the extent they mischaracterize, take out of

13   context, or misstate or misquote the interview. Microsoft denies the allegation in the first sentence

14   of Paragraph 159 that it made any demands for the resignation of OpenAI, Inc. Board members.

15   Microsoft otherwise lacks knowledge or information sufficient to form a belief as to the truth of

16   the remaining allegations in Paragraph 159 and therefore denies them.

17        160.    In fact, the 2023 Board that dismissed Altman, consisting, on information and belief,

18   of only Altman, Dr. Sutskever, D'Angelo, and the two AI governance experts, Toner and McCauley

19   (Brockman was reportedly absent from the Board meeting), was the first Board since 2018 not

20   adversely dominated by interests aligned with Altman and Brockman.

21        **RESPONSE:** Microsoft lacks knowledge or information sufficient to form a belief as to

22   the truth of the allegations in Paragraph 160 and therefore denies them.

23        161.    The 2022 Board consisted of Dr. Sutskever, Brockman, and Altman (both CEO and

24   President), as directors simultaneously working full time at OpenAI; and Will Hurd ("Hurd") (of

25   Allen & Company, a major investment bank catering to technology companies), Reid Hoffman

26   (general partner at tech venture capital firm Greylock Partners ("Greylock"), a member of

27   Microsoft's Board since March 2017, and a co-founder of the generative AI company Inflection

28

AI, Inc. ("Inflection")[8]), and D'Angelo, as directors aligned with Brockman and Altman's interests as technology entrepreneurs; and Zilis, Toner, and McCauley, as the only truly independent directors.

**RESPONSE:** Microsoft admits that Altman, Brockman, Sutskever, D'Angelo, McCauley, Hoffman, Zilis, Hurd, and Toner served on the board of OpenAI, Inc. in 2022, and that Hoffman has been a member of Microsoft's Board since March 2017. Microsoft further admits that Hoffman was a co-founder of Inflection AI, Inc. Microsoft otherwise lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 161 or its footnote and therefore denies them.

162.    The 2021 Board was no better: Altman, as President again, Brockman, Hoffman, D'Angelo, Hurd, Zilis, McCauley, Toner, and a charity CEO, Holden Karnofsky ("Karnofsky"), whose enterprises are primarily dependent on funding from tech entrepreneurs, in place of Dr. Sutskever. Even counting Karnofsky with the independents,[9] they were still in the minority, and Altman and Brockman represented 100% of the directors working at OpenAI full time.

**RESPONSE:** Microsoft admits that Altman, Brockman, Hoffman, D'Angelo, Hurd, Zilis, McCauley, Toner, and Karnofsky served on the board of OpenAI, Inc. at various times in 2021. Microsoft denies the allegation in the footnote that it possesses a monopoly and otherwise lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 162 or its footnote and therefore denies them.

163.    The 2020 Board had seven members: Altman as President, Brockman, Hoffman, D'Angelo, Zilis, McCauley, and Karnofsky. Again, even counting Karnofsky with Zilis and McCauley, the breakdown still has independents in the minority, with Altman and Brockman as the only full-time working directors.

---

[8] Notwithstanding his obvious conflicts, Hoffman was reportedly reluctant to step down from OpenAI, Inc.'s Board when he resigned in or about March 2023.

[9] This is generous to Karnofsky, given that, when he resigned, he cited as a potential conflict that his wife, Daniela Amodei, and her brother, Dario Amodei (both ex-OpenAI employees) were co-founding Anthropic, now the largest direct competitor to OpenAI/Microsoft's monopoly.

1      **RESPONSE:** Microsoft admits that Altman, Brockman, Hoffman, D'Angelo, Zilis,

2  McCauley, and Karnofsky served on the board of OpenAI, Inc. at various times in 2020. Microsoft

3  otherwise lacks knowledge or information sufficient to form a belief as to the truth of the remaining

4  allegations in Paragraph 163 and therefore denies them.

5      164.    The 2019 Board was even worse, with Sue Yoon, a former venture capitalist now at

6  Google, serving in what would become Zilis' spot on the Board.

7      **RESPONSE:** Microsoft admits that Yoon served on the board of OpenAI, Inc. for a time

8  during 2019. Microsoft otherwise lacks knowledge or information sufficient to form a belief as to

9  the truth of the remaining allegations in Paragraph 164 and therefore denies them.

10     165.    On information and belief, to avoid replicating the 2023 independent Board setup

11  that led to Altman's ouster, upon Altman's reinstatement, he handpicked a new Board that lacked

12  the technical expertise and substantial background in AI governance, which the previous Board had

13  by design. The new members were reportedly "big fans of Altman."

14     **RESPONSE:** Microsoft lacks knowledge or information sufficient to form a belief as to

15  the truth of the allegations in Paragraph 165 and therefore denies them.

16     166.    Microsoft also obtained an influential non-voting director seat on the Board from

17  which it could keep a close eye on its non-profit golden goose. Though on July 9, 2024, Microsoft

18  relinquished its seat amid scrutiny and pressure from antitrust agencies in the U.S. and Europe

19  suspicious of its all-too-cozy relationship with OpenAI, there is no un-ringing this bell.

20     **RESPONSE:** Microsoft admits that it obtained a non-voting observer seat on OpenAI,

21  Inc.'s Board, which it terminated on July 9, 2024. Microsoft otherwise denies the remaining

22  allegations in Paragraph 166.

23     167.    The same pertains to Hoffman's highly conflicted simultaneous service as a member

24  of the boards of OpenAI, Inc., Microsoft, and Inflection. Notwithstanding their glaring conflicts,

25  by virtue of their Board service, Microsoft and Hoffman had open access to *all* internal OpenAI,

26  Inc. materials as a matter of right under its Bylaws. Ex. 21 at 12.

27     **RESPONSE:** Denied.

28

168.    On information and belief, OpenAI, Inc.'s present Board is now dominated by directors with interests conflicted and adverse to those of OpenAI, Inc., Plaintiffs, and the public.

**RESPONSE:** Microsoft lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 168 and therefore denies them.

169.    With the reinstatement of Altman and the restructuring of OpenAI, Inc.'s Board, the once carefully crafted non-profit structure Musk agreed to is now thoroughly compromised by a fully profit-driven CEO (Altman) and sometimes-President (Brockman), a compliant Board with inferior technical expertise and almost no AI-governance experience, and a trillion-dollar pro-profit partner (Microsoft).

**RESPONSE:**  Denied.

170.    The loss of the Board's technical expertise in AI, neutrality, and commitment to OpenAI, Inc.'s non-profit purposes are particularly compromising as it is the Board that determines whether OpenAI has attained AGI, which, as detailed above, OpenAI had previously excluded from its license to Microsoft. Given Microsoft and OpenAI's de facto merger and enormous financial interest in the continued exploitation of the non-profit's technology, OpenAI, Inc.'s newly captured, conflicted, and compliant Board will have every reason to delay ever making a finding that OpenAI has attained AGI. The Microsoft-OpenAI for-profit leviathan may now operate fully unchecked.

**RESPONSE:** Denied.

I.    ***Altman Reneges in 2023 on His Repeated Promises to Musk, Regulators, and the Public to Open Source the Non-Profit's Technology***

171.    In its early years, OpenAI, Inc.'s research and development were performed in the open—as required by Musk's donations and OpenAI, Inc.'s filings with Delaware and California—providing the public with free access to the non-profit's designs, models, and code.

**RESPONSE:** Microsoft lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 171.

172.    For example, in June 2018, when OpenAI, Inc. researchers discovered that an algorithm called "Transformers" could perform natural language tasks without any explicit training, entire communities from open-source, grass-roots groups to commercial endeavors sprung up to

enhance and extend OpenAI, Inc.'s models—the intended benefit of making the non-profit's research open source.

**RESPONSE:** Microsoft lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 172 and therefore denies them.

173.    In 2019, OpenAI released the full, open version of a second-generation Generative Pre-Trained Transformer ("GPT"), GPT-2 with the stated hope that it would "be useful to developers of future powerful models." It also released a detailed report describing the new model and acknowledged some of the many benefits of openly releasing such models to the public.

**RESPONSE:** Microsoft admits that OpenAI released GPT-2 and published a report titled "Release Strategies and the Social Impacts of Large Language Models" in 2019. Microsoft denies the allegations to the extent they mischaracterize, take out of context, or misstate or misquote the statement, which speaks for itself. Microsoft otherwise lacks knowledge or information sufficient to form a belief as to the truth of the statement, and therefore denies them. Microsoft lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 173 and therefore denies them.

174.    In 2020, OpenAI, Inc. announced a third version of its model, GPT-3, and again, published a research paper detailing its complete implementation for others to build on.

**RESPONSE:** Microsoft admits that OpenAI announced GPT-3 and OpenAI researchers published a report titled "Language Models are Few-Shot Learners" in 2020. Microsoft otherwise lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 174 and therefore denies them.

175.    OpenAI, Inc.'s initial findings, while technologically interesting, had little commercial value and were openly published by Altman. But, as we now know, once OpenAI reached the threshold of commercially viable AI, Altman about-faced and began locking down the non-profit's technology for personal gain.

**RESPONSE:** Microsoft lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 175 and therefore denies them.

1    176.    It is also no coincidence that OpenAI veered away from open-sourcing its models

2    after it began exclusively licensing its technology to Microsoft.

3    **RESPONSE:** Microsoft lacks knowledge or information sufficient to form a belief as to

4    the truth of the allegations in Paragraph 176 and therefore denies them.

5    177.    On March 14, 2023, OpenAI, Inc. released its most advanced model to date, GPT-

6    4, which many including Microsoft celebrated as "a form of general intelligence." Microsoft's

7    scientists stated that, given GPT-4's advanced capabilities, "we believe [it] could reasonably be

8    viewed as an early (yet still incomplete) version of an artificial general intelligence (AGI) system."

9    Defendants, however, publicly released no report or code regarding GPT-4, preventing the public

10    from building on the non-profit's AI advancements as Musk had been promised.

11    **RESPONSE:** Microsoft admits that OpenAI released GPT-4 in 2023 and that Microsoft

12    researchers published a paper in March 2023 that included the quoted language. Microsoft denies

13    the allegations to the extent they mischaracterize, take out of context, or misstate or misquote the

14    article. Microsoft otherwise lacks knowledge or information sufficient to form a belief as to the

15    truth of the statements, and therefore denies them. Microsoft otherwise lacks knowledge or

16    information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 177

17    and therefore denies them.

18    178.    Defendants have kept GPT-4, and subsequent models including without limitation,

19    GPT-4T, GPT-4o (released May 2024), and OpenAI o1 (released September 2024), entirely closed.

20    On information and belief, the internal details of these models are known only to Defendants. The

21    reason for the secrecy is obvious: OpenAI and Microsoft stand to make a fortune from exclusive

22    control over the non-profit's technology and selling its applications to the public, which would not

23    be possible if the non-profit made its research and technology freely available, as Altman had

24    repeatedly promised Musk, regulators and the public.

25    **RESPONSE:** Microsoft admits that GPT-4o was released in May 2024 and a preview of

26    OpenAI o1 was released in September 2024. Microsoft lacks knowledge or information sufficient

27    to form a belief as to the truth of the allegations in Paragraph 178 regarding Altman's promises to

28

1    Musk, and therefore denies them. Microsoft otherwise denies the remaining allegations in
2    Paragraph 178.

3        **J.**    ***OpenAI Today***

4        179.    Defendants' unbridled power and profit focus have led to a recent flurry of safety
5    and legal concerns and forceful pushback against OpenAI and Altman for abandoning their non-
6    profit mission.

7        **RESPONSE:** Denied.

8        180.    Along with pending civil litigation from media outlets like *The New York Times* and
9    the *Chicago Tribune* concerning OpenAI's illegal use of their content to train GPT models, the
10   takeover of the Board and Microsoft's increasingly close relationship with OpenAI have sparked
11   numerous ongoing investigations by the SEC, FTC, and various U.K. and E.U. regulators. On July
12   22, August 1, and August 8, 2024, Senators sent Altman demand letters seeking documents and
13   questioning OpenAI's commercial practices, commitment to safety, Altman's self-dealing, and
14   illegal attempts to muzzle employee-whistleblowers.

15       **RESPONSE:** Microsoft admits that OpenAI is involved in pending civil litigation with
16   media outlets like *The New York Times* and *Chicago Tribune*. Microsoft further admits that various
17   U.S. Senators sent letters to OpenAI dated July 22, August 1, and August 8, 2024, which speak for
18   themselves. Microsoft denies the allegations to the extent they mischaracterize, take out of context,
19   or misstate or misquote these letters. Microsoft otherwise lacks knowledge or information sufficient
20   to form a belief as to the truth of the statements, and therefore denies them.  Microsoft denies the
21   allegations in Paragraph 180 characterizing its relationship with OpenAI. Microsoft otherwise lacks
22   knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph
23   182 and therefore denies them.

24       181.    Further, in a series of letters dated January 9, March 5, June 6, and September 30,
25   2024, to the California Attorney General, the prominent consumer advocacy organization Public
26   Citizen detailed numerous issues concerning Altman's self-dealing, the troublesome power
27   OpenAI's for-profit arm is wielding over the non-profit, and the recent move to convert OpenAI,

28

1    Inc. to a fully for-profit company, urging the Attorney General to investigate OpenAI, Inc.'s tax-

2    exempt status.

3    **RESPONSE:** Microsoft admits that Public Citizen sent a series of letters to the California

4    Attorney General regarding OpenAI, which speak for themselves. Microsoft denies the allegations

5    to the extent they mischaracterize, take out of context, or misstate or misquote the documents.

6    Microsoft otherwise lacks knowledge or information sufficient to form a belief as to the truth of

7    the statements, and therefore denies them. Microsoft otherwise lacks knowledge or information

8    sufficient to form a belief as to the truth of the allegations in Paragraph 181 and therefore denies

9    them.

10    182.    OpenAI has also continuously hemorrhaged employees and executives. On

11    information and belief, the resignations largely appear to be in protest of Altman and OpenAI's

12    increasingly unfettered and conflicted pursuit of profits at the expense of safety.

13    **RESPONSE:** Microsoft lacks knowledge or information sufficient to form a belief as to

14    the truth of the allegations in Paragraph 182 and therefore denies them.

15    183.    For instance, in May 2024, Chief Scientist Dr. Sutskever and OpenAI, Inc. executive

16    Jan Leike resigned. The two had led OpenAI, Inc.'s "Superalignment" team tasked with managing

17    the risk that its technology "could lead to the disempowerment of humanity or even human

18    extinction." Leike stated he could no longer work at the company because he was concerned that

19    safety and societal impact "have taken a backseat to shiny products."

20    **RESPONSE:** Microsoft admits that Sutskever and Leike resigned in May 2024, and that

21    Leike posted the language quoted in the third sentence of Paragraph 183 on his X account on May

22    27, 2024, which speaks for itself. Microsoft further admits that the language quoted in the second

23    sentence of Paragraph 183 appears in a July 25, 2023 announcement on OpenAI's website.

24    Microsoft denies the allegations to the extent they mischaracterize, take out of context, or misstate

25    or misquote the account and/or website. Microsoft otherwise lacks knowledge or information

26    sufficient to form a belief as to the truth of the statements, and therefore denies them. Microsoft

27    otherwise lacks knowledge or information sufficient to form a belief as to the truth of the remaining

28    allegations in Paragraph 183 and therefore denies them.

184.    Such shiny products include, for example, OpenAI's Whisper, an audio transcription system which OpenAI released knowing it tended to fabricate even highly important information (e.g., once released, Whisper fabricated medical records). Releasing products with alarming defects like this can be lethal and is not something a true safety-conscious non-profit with no pressure to generate revenue would rush to do.

**RESPONSE:** Microsoft admits that OpenAI released an automatic speech recognition product called Whisper. Microsoft otherwise lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 184 and therefore denies them.

185.    Other employees, including Daniel Kokotajlo resigned because they "lost trust in OpenAI leadership and their ability to responsibly handle AGI." In an interview with Vox on May 18, 2024, Kokotajlo stated: "I joined with substantial hope that OpenAI would rise to the occasion and behave more responsibly as they got closer to achieving AGI. It slowly became clear to many of us that this would not happen." That same article reported numerous other departures: "at least seven people [] tried to push OpenAI to greater safety from within, but ultimately lost so much faith in its charismatic leader [Altman] that their position became untenable."

**RESPONSE:** Microsoft admits that Daniel Kokotajlo was reported to make the quoted statements in an interview with *Vox* published on May 18, 2024, which speaks for itself. Microsoft denies the allegations to the extent they mischaracterize, take out of context, or misstate or misquote the article. Microsoft otherwise lacks knowledge or information sufficient to form a belief as to the truth of the statements, and therefore denies them. Microsoft otherwise lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 185 and therefore denies them.

186.    Carroll Wainwright, a former alignment researcher for OpenAI, also resigned in May 2024: "I worry that the board will not be able to effectively control the for-profit subsidiary, and I worry that the for-profit subsidiary will not be able to effectively prioritize the mission when the incentive to maximize profits is so strong."

**RESPONSE:** Microsoft admits that Wainwright resigned from OpenAI in May 2024 and posted the quoted language on her X account on June 4, 2024, which speaks for itself. Microsoft

denies the allegations to the extent they mischaracterize, take out of context, or misstate or misquote the post. Microsoft otherwise lacks knowledge or information sufficient to form a belief as to the truth of the statement, and therefore denies it. Microsoft otherwise lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 186 and therefore denies them.

187.    In June 2024, one month after leaving OpenAI, Dr. Sutskever launched Safe Superintelligence, Inc., whose mission is, pointedly, to focus on the development of safe AI.

**RESPONSE:** Microsoft lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 187 and therefore denies them.

188.    On August 5, 2024, John Schulman, with OpenAI since the beginning, quit to work at the safety-focused AI startup, Anthropic, and to "deepen [his] focus on AI alignment[.]"

**RESPONSE:** Microsoft admits that Schulman resigned from OpenAI to work at Anthropic in August 2024, and posted the quoted language on his X account on August 5, 2024. Microsoft denies the allegations to the extent they mischaracterize, take out of context, or misstate or misquote the post. Microsoft otherwise lacks knowledge or information sufficient to form a belief as to the truth of the statement, and therefore denies it. Microsoft otherwise lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 188 and therefore denies them.

189.    On September 25, 2024, OpenAI's CTO Mira Murati, who served as interim CEO during Altman's firing, abruptly left the company, along with Chief Research Officer Bob McGrew and the Head of Post-Training, Barret Zoph.

**RESPONSE:** Microsoft admits that Murati served as interim CEO during Altman's firing, and left OpenAI with McGrew and Zoph on or around September 25, 2024. Microsoft otherwise lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 189 and therefore denies them.

190.    On October 23, 2024, Miles Brundage, a policy researcher at OpenAI and senior adviser on OpenAI's AGI Readiness team resigned, stating: "In short, neither OpenAI nor any other frontier lab is ready" for AGI. His announcement also revealed the disbanding of OpenAI's AGI

1  Readiness Team. And just last week, Lilian Weng, OpenAI's VP of Research and Safety,

2  announced her resignation after seven years at the company.

3  **RESPONSE:** Microsoft admits that Brundage announced his resignation from OpenAI on

4  or around October 23, 2024, and that Weng announced her resignation from OpenAI on or around

5  November 8, 2024. Microsoft further admits that the quoted language appears in a blog post

6  published by Brundage on October 23, 2024. Microsoft denies the allegations to the extent they

7  mischaracterize, take out of context, or misstate or misquote the post. Microsoft otherwise lacks

8  knowledge or information sufficient to form a belief as to the truth of the statement, and therefore

9  denies it. Microsoft otherwise lacks knowledge or information sufficient to form a belief as to the

10  truth of the remaining allegations in Paragraph 190 and therefore denies them.

11  191.    In January 2024, notwithstanding Altman's promise to Musk that "safety should be

12  a first-class requirement" Ex. 2 at 1, OpenAI dropped a clause from its Usage Policies banning the

13  use of its technology for "activity that has a high risk of physical harm" such as "weapons

14  development" or "military and warfare." On October 25, 2024, OpenAI reportedly secured its first

15  contract with a combat division of the Department of Defense.

16  **RESPONSE:** Microsoft admits that the quoted language appears in Ex. 2, which speaks

17  for itself. Microsoft denies the allegations to the extent they mischaracterize, take out of context,

18  or misstate or misquote the document. Microsoft otherwise lacks knowledge or information

19  sufficient to form a belief as to the truth of the statements, and therefore denies them. Microsoft

20  otherwise lacks knowledge or information sufficient to form a belief as to the truth of the remaining

21  allegations in Paragraph 191 and therefore denies them.

22  192.    A June 15, 2024 article in Cointelegraph entitled "OpenAI Reportedly Considering

23  Shift to For-profit as CEO Stacks Board" detailed how Altman "told shareholders he was

24  considering the [for-profit] move sometime during the week of June 10. If realized, the pivot would

25  ostensibly result in OpenAI's nonprofit board losing control of the company." Altman is now fast-

26  tracking his plan to turn the non-profit Musk co-founded into the for-profit business Altman had

27  always envisaged.

28

1    **RESPONSE:** Microsoft admits that *Cointelegraph* published an article on June 15, 2024

2    that includes the quoted language in Paragraph 192, which speaks for itself. Microsoft denies the

3    allegations to the extent they mischaracterize, take out of context, or misstate or misquote the

4    article. Microsoft otherwise lacks knowledge or information sufficient to form a belief as to the

5    truth of the statements, and therefore denies them. Microsoft otherwise lacks knowledge or

6    information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 192

7    and therefore denies them.

8        193.    Since the filing of the original Complaint, this transformation has only accelerated,

9    with OpenAI and Microsoft hiring investment banks to negotiate their deal and a two-year deadline

10   to complete OpenAI's for-profit conversion.

11       **RESPONSE:** Microsoft admits that Microsoft and OpenAI have retained outside financial

12   advisors to advise on OpenAI's proposed restructuring. Microsoft otherwise lacks knowledge or

13   information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 193

14   and therefore denies them.

15       194.    The most recent reporting on those plans by the *Wall Street Journal* reveals that

16   Microsoft has a right to 75% of OpenAI's profits after the first $194 million until reaching $17.3

17   billion. Then Microsoft's share will drop to 49% until it receives 100 times its original investment,

18   or *profits* (not revenue) of $1.4 *trillion*. It has also been reported this "100 times investment" cap

19   is merely "theoretical," as the "cap" is subject to increase 20% annually beginning in 2025.[10]

20

21

22

23

24

25

26

27

---

[10] Notably, this *Wall Street Journal* article appears to be based on OpenAI and Microsoft's

28   projections—"Source: company documents"—and is therefore likely the most favorable possible
     presentation of this information.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16



17    **RESPONSE:** Paragraph 196 purports to quote from and characterize an October 18, 2024

18    article in *The Wall Street Journal* titled "The $14 Billion Question Dividing OpenAI and

19    Microsoft," which speaks for itself. Microsoft denies the allegations to the extent they

20    mischaracterize, take out of context, or misstate or misquote the article. Microsoft otherwise lacks

21    knowledge or information sufficient to form a belief as to the truth of the statements, and the

22    footnote to Paragraph 194, and therefore denies them.  Microsoft otherwise denies the remaining

23    allegations in Paragraph 194.

24        195.    On information and belief, OpenAI has raised a total of $21.9 billion in its funding

25    rounds. Even if *all* of the For-Profit Entities are capped—something far from certain—OpenAI

26    would need to generate $2.2 *trillion* in *profits* (not just revenues) before this for-profit scheme

27    would begin funneling anything more than a nominal 2% back to the charity.

28

1    **RESPONSE:** Microsoft lacks knowledge or information sufficient to form a belief as to

2    the truth of the allegations in Paragraph 195 and therefore denies them.

3        196.    This profit cap will not be reached anytime soon. On information and belief, the

4    entire worldwide market—the total value of the AI sector, not just profits—is presently $214.6

5    billion. Public projections suggest AI's worldwide market value—again, not profits but total market

6    value—will be just $1.3 trillion in 2030. Given these numbers, which are for all AI products and

7    services, not just generative AI, the idea that a single generative AI company can make $2.2 trillion

8    in *profits* over even the medium-term is implausible.

9        **RESPONSE:** Denied.

10        197.    If one considers that some of the For-Profit Entities might not be capped, and that

11    any cap may begin rising by 20% per year in 2025, then Defendants' scheme moves from an

12    implausible way to compensate OpenAI, Inc. for its value to an impossible one.

13        **RESPONSE:** Denied.

14        198.    As massive profits come into view, OpenAI and Microsoft's anticompetitive

15    practices have intensified. For instance, on information and belief OpenAI has attempted to starve

16    competitors of AI talent by aggressively recruiting employees with offers of lavish compensation,

17    and is on track to spend $1.5 billion on personnel for just 1,500 employees.

18        **RESPONSE:** The allegations in Paragraph 198 are irrelevant to the pending claims against

19    Microsoft (Counts IV, V, XIX, XX, and XXI) and relate only to claims that were previously

20    dismissed or stayed at the direction of the Court on April 4, 2025. Microsoft will answer these

21    allegations if and when ordered to do so by the Court.

22        199.    Further, during OpenAI's latest funding round in early October 2024, on

23    information and belief, Altman, in concert with and at the urging of other Defendants, conditioned

24    investors' ability to participate in the heavily oversubscribed offering on their agreeing *not* to invest

25    in OpenAI's competitors, specifically calling out xAI. As reported in the *Financial Times* on

26    October 3, 2024:

> OpenAI has asked investors to avoid backing rival start-ups such as
> Anthropic and Elon Musk's xAI, as it secures $6.6bn in new funding and
> seeks to shut out challengers to its early lead in generative artificial

intelligence. . . . During the negotiations, the company made clear that it expected an exclusive funding arrangement, according to three people with knowledge of the discussions.

Seeking exclusive relationships with investors restricts rivals' access to capital and strategic partnerships. . . . OpenAI can command unusual terms and an outsized valuation because investors believe the company could dominate the next wave of AI innovation, which they argue will be as significant a shift in consumer behaviour as the internet or mobile.

"Because the round was so oversubscribed, OpenAI said to people: 'We'll give you allocation but we want you to be involved in a meaningful way in the business so you can't commit to our competitors,'" according to one person with knowledge of the deal.

Ex. 25 at 1.

**RESPONSE:** The allegations in Paragraph 199 are irrelevant to the pending claims against Microsoft (Counts IV, V, XIX, XX, and XXI) and relate only to claims that were previously dismissed or stayed at the direction of the Court on April 4, 2025. Microsoft will answer these allegations if and when ordered to do so by the Court.

200.    More tell-tale signs of OpenAI's de facto merger with Microsoft have also begun to surface. In February 2023, Microsoft began making co-working space available for OpenAI employees in San Francisco. And recently, OpenAI has opened an outpost close to Microsoft's Washington headquarters, facilitating the ongoing merry-go-round of senior executives and engineers shuffling between the two companies.

**RESPONSE:** The allegations in Paragraph 200 are irrelevant to the pending claims against Microsoft (Counts IV, V, XIX, XX, and XXI) and relate only to claims that were previously dismissed or stayed at the direction of the Court on April 4, 2025. Microsoft will answer these allegations if and when ordered to do so by the Court.

### K.    *The Market for AI*

201.    The relevant geographic market for OpenAI and Microsoft's conduct at issue is worldwide (excluding countries such as the People's Republic of China that substantially restrict international internet access).

**RESPONSE:** The allegations in Paragraph 201 are irrelevant to the pending claims against Microsoft (Counts IV, V, XIX, XX, and XXI) and relate only to claims that were previously

1    dismissed or stayed at the direction of the Court on April 4, 2025. Microsoft will answer these

2    allegations if and when ordered to do so by the Court.

3        202.    The relevant product market for antitrust purposes is that of generative AI models

4    and platforms. Governments, businesses, and individual users employ generative AI to, without

5    limitation, solve complex problems that would otherwise require human reasoning; to generate

6    informational and media content; and to automate a large and diverse number of processes using

7    the same platform, such as, by way of example, writing computer code for vastly different purposes.

8        **RESPONSE:**  The allegations in Paragraph 202 are irrelevant to the pending claims against

9    Microsoft (Counts IV, V, XIX, XX, and XXI) and relate only to claims that were previously

10    dismissed or stayed at the direction of the Court on April 4, 2025. Microsoft will answer these

11    allegations if and when ordered to do so by the Court.

12        203.    Not all AI is generative AI. For example, there are narrow AI systems trained for

13    specific tasks, traditional machine learning models, and rule-based automation systems.

14        **RESPONSE:**  The allegations in Paragraph 203 are irrelevant to the pending claims against

15    Microsoft (Counts IV, V, XIX, XX, and XXI) and relate only to claims that were previously

16    dismissed or stayed at the direction of the Court on April 4, 2025. Microsoft will answer these

17    allegations if and when ordered to do so by the Court.

18        204.    What characterizes generative AI is its ability to process natural language inputs and

19    generate human-like outputs across multiple domains, while being adaptable to specific

20    applications and providing a platform for independent developers to generate specialized models.

21    Generative AI can write a short story in the style of Shirley Jackson, describe different theories on

22    boiling an egg perfectly, script a Python application to calculate the radius of a circle, and suggest

23    the perfect itinerary for your Roman holiday, all in the same platform, using the same interface, by

24    a person with no more training than required to ask a question.

25        **RESPONSE:**  The allegations in Paragraph 204 are irrelevant to the pending claims against

26    Microsoft (Counts IV, V, XIX, XX, and XXI) and relate only to claims that were previously

27    dismissed or stayed at the direction of the Court on April 4, 2025. Microsoft will answer these

28    allegations if and when ordered to do so by the Court.

205.    Examples of flagship products in the relevant market are ChatGPT (OpenAI), Copilot (Microsoft), Gemini (Google, and what became of DeepMind), Claude (Anthropic), LLaMA (Meta), Mistral (Mistral AI), Grok (xAI), and Perplexity (Perplexity). These products are sometimes called "chatbots."

**RESPONSE:** The allegations in Paragraph 205 are irrelevant to the pending claims against Microsoft (Counts IV, V, XIX, XX, and XXI) and relate only to claims that were previously dismissed or stayed at the direction of the Court on April 4, 2025. Microsoft will answer these allegations if and when ordered to do so by the Court.

206.    The generative AI market exhibits pronounced network effects, i.e., when people use the product, it increases in value, attracting more users, and so on. As developers create specialized applications through a platform-specific application programming interface, the platform becomes more useful, further attracting users. Generative AI platforms also learn from user interactions to further train and refine their systems. More users means better generative AI, which again leads to more users.

**RESPONSE:** The allegations in Paragraph 206 are irrelevant to the pending claims against Microsoft (Counts IV, V, XIX, XX, and XXI) and relate only to claims that were previously dismissed or stayed at the direction of the Court on April 4, 2025. Microsoft will answer these allegations if and when ordered to do so by the Court.

207.    As a consequence, separate and apart from the tremendous expense involved in purchasing, programming, and powering generative AI hardware and training a model using personnel from a very limited talent pool, there are significant barriers to entry by new market participants.

**RESPONSE:** The allegations in Paragraph 207 are irrelevant to the pending claims against Microsoft (Counts IV, V, XIX, XX, and XXI) and relate only to claims that were previously dismissed or stayed at the direction of the Court on April 4, 2025. Microsoft will answer these allegations if and when ordered to do so by the Court.

208.    Because of the non-profit's substantial lead in producing generative AI, the but-for and proximate causes of which are Musk's recruitment, financial, and other contributions, OpenAI

is estimated to have reached 100 million monthly active users for ChatGPT just two months after launch, making it the fastest-growing consumer application in history.

**RESPONSE:** The allegations in Paragraph 208 are irrelevant to the pending claims against Microsoft (Counts IV, V, XIX, XX, and XXI) and relate only to claims that were previously dismissed or stayed at the direction of the Court on April 4, 2025. Microsoft will answer these allegations if and when ordered to do so by the Court.

209. On information and belief, by November 2023, two million developers were already using OpenAI's platform, including more than 92% of Fortune 500 companies.

**RESPONSE:** The allegations in Paragraph 209 are irrelevant to the pending claims against Microsoft (Counts IV, V, XIX, XX, and XXI) and relate only to claims that were previously dismissed or stayed at the direction of the Court on April 4, 2025. Microsoft will answer these allegations if and when ordered to do so by the Court.

210. The result is that, aside from OpenAI and Microsoft, few other generative AI developers are producing much software revenue.

**RESPONSE:** The allegations in Paragraph 210 are irrelevant to the pending claims against Microsoft (Counts IV, V, XIX, XX, and XXI) and relate only to claims that were previously dismissed or stayed at the direction of the Court on April 4, 2025. Microsoft will answer these allegations if and when ordered to do so by the Court.

211. Even some of the best-known AI developers, such as Anthropic, face questions about their future profit margins, given the costly nature of developing the software.

**RESPONSE:** The allegations in Paragraph 211 are irrelevant to the pending claims against Microsoft (Counts IV, V, XIX, XX, and XXI) and relate only to claims that were previously dismissed or stayed at the direction of the Court on April 4, 2025. Microsoft will answer these allegations if and when ordered to do so by the Court.

212. In March 2024, Inflection, the well-funded and highly valued generative AI developer that Hoffman had co-founded (and served as a director of while serving on the Boards

1  of both OpenAl and Microsoft), was reported to "g[i]ve up its ambition to compete with OpenAl"

2  and most of its founders and employees moved to Microsoft in an unusually structured deal."[11]

3  **RESPONSE:** The allegations in Paragraph 212 and its footnote are irrelevant to the

4  pending claims against Microsoft (Counts IV, V, XIX, XX, and XXI) and relate only to claims that

5  were previously dismissed or stayed at the direction of the Court on April 4, 2025. Microsoft will

6  answer these allegations if and when ordered to do so by the Court.

7  213.    Cohere, founded in 2019 by the legendary Aidan Gomez, who was only twenty years

8  old when he wrote the paper that inspired OpenAl, has struggled to secure funding recently, even

9  without trying to go head-to-head with OpenAl/Microsoft in consumer generative AI.

10  **RESPONSE:** The allegations in Paragraph 213 are irrelevant to the pending claims against

11  Microsoft (Counts IV, V, XIX, XX, and XXI) and relate only to claims that were previously

12  dismissed or stayed at the direction of the Court on April 4, 2025. Microsoft will answer these

13  allegations if and when ordered to do so by the Court.

14  214.    On information and belief, as of the end of 2023, the last full year for which data is

15  available, OpenAl and Microsoft held approximately 69% of the worldwide market share for

16  generative AI, while the next largest competitor, Amazon Web Services ("AWS"), held only 8%:

17

18

19

20

21

22

23

24

25

26  ---

[11] Regulators in the U.K. classified Microsoft's acquisition of Inflection as a merger, despite Microsoft's efforts to evade such designation by structuring the deal as a mere acquisition of assets and personnel, a tactic similarly deployed by Defendants in the relationships between OpenAl, Inc., the For-Profit Entities, and Microsoft. Prior to the merger, Inflection, incorporated February 3, 2022, was in the business of providing generative AI, in particular a chatbot called "Pi," in direct competition with xAI' s Grok, OpenAl's ChatGPT, and Microsoft' s Copilot.

1
2
3
4
5
6
7
8
9
10
11
12
13



14    **RESPONSE:** The allegations in Paragraph 214 are irrelevant to the pending claims against

15    Microsoft (Counts IV, V, XIX, XX, and XXI) and relate only to claims that were stayed at the

16    direction of the Court on April 4, 2025. Microsoft will answer these allegations if and when ordered

17    to do so by the Court.

18    215.    As of the end of 2023, the last full year for which data is available, Microsoft was

19    reported to hold approximately 24% of the worldwide market for OpenAI's most important raw

20    material, compute, putting it in second place behind AWS (31%) and ahead of Google (11%).

21    Together, these top three market participants (Microsoft, AWS, and Google) control 66% of the

22    world's supply of compute.[12]

23    **RESPONSE:** The allegations in Paragraph 215 and its footnote are irrelevant to the

24    pending claims against Microsoft (Counts IV, V, XIX, XX, and XXI) and relate only to claims that

25    were previously dismissed or stayed at the direction of the Court on April 4, 2025. Microsoft will

26    answer these allegations if and when ordered to do so by the Court.

27

28    ---
[12] Security and other practical considerations largely limit U.S. enterprises that consume compute, such as OpenAI, to U.S. providers, which means in practice, Microsoft, AWS, and Google in fact control much more than 66% of the compute available to OpenAI.

216.    On information and belief, in 2017, OpenAI spent $7.9 million on compute. On information and belief, in the twelve months preceding Microsoft's 2019 investment of $1 billion in OpenAI, it spent less than $1 million on all Microsoft products and services combined, including compute, notwithstanding OpenAI's ever-increasing compute usage, which reportedly doubles every five months.

**RESPONSE:** The allegations in Paragraph 216 are irrelevant to the pending claims against Microsoft (Counts IV, V, XIX, XX, and XXI) and relate only to claims that were previously dismissed or stayed at the direction of the Court on April 4, 2025. Microsoft will answer these allegations if and when ordered to do so by the Court.

217.    In the two-and-a-half years after Microsoft's 2019 investment, on information and belief OpenAI's *total* spending on all Microsoft products and services combined was less than $230,000.

**RESPONSE:** The allegations in Paragraph 217 are irrelevant to the pending claims against Microsoft (Counts IV, V, XIX, XX, and XXI) and relate only to claims that were previously dismissed or stayed at the direction of the Court on April 4, 2025. Microsoft will answer these allegations if and when ordered to do so by the Court.

218.    Generating compute is a hugely expensive undertaking. In addition to buying and maintaining the tens of thousands of computer processors that Microsoft sells and/or rents to customers such as OpenAI, Microsoft must pay highly-skilled personnel to design and operate the data centers housing its processors, as well as incur significant real estate and energy expenses in operating them, sometimes consuming more power than an entire city.

**RESPONSE:** The allegations in Paragraph 218 are irrelevant to the pending claims against Microsoft (Counts IV, V, XIX, XX, and XXI) and relate only to claims that were previously dismissed or stayed at the direction of the Court on April 4, 2025. Microsoft will answer these allegations if and when ordered to do so by the Court.

219.    It is apparent from OpenAI's incredibly small expenditures on this valuable commodity that Microsoft is charging OpenAI far less than it costs to produce it, and in any event, vastly less than Microsoft charges other, similarly situated buyers. Selling compute through

1    Microsoft's Azure platform generated $62 billion in revenues as of the close of its June 2024 fiscal

2    year, and OpenAI is one of Azure's largest users.

3        **RESPONSE:** The allegations in Paragraph 219 are irrelevant to the pending claims against

4    Microsoft (Counts IV, V, XIX, XX, and XXI) and relate only to claims that were previously

5    dismissed or stayed at the direction of the Court on April 4, 2025. Microsoft will answer these

6    allegations if and when ordered to do so by the Court.

7        220.    Creating generative AI is a hugely expensive undertaking. In addition to extremely

8    expensive scientific personnel, drawn from a very limited pool, lawful generative AI incurs

9    significant costs in licensing material for training models, as well as to complete the training itself.

10   OpenAI is projected to spend $8.5 billion on just personnel and generative AI training this year

11   alone. Yet OpenAI charges Microsoft and the public considerably less for its generative AI products

12   than they cost to produce. The economics are obvious from the fact  OpenAI is on track to lose $5

13   billion this year and losses are expected to soar to $14 billion per year by 2026.

14       **RESPONSE:** The allegations in Paragraph 220 are irrelevant to the pending claims against

15   Microsoft (Counts IV, V, XIX, XX, and XXI) and relate only to claims that were previously

16   dismissed or stayed at the direction of the Court on April 4, 2025. Microsoft will answer these

17   allegations if and when ordered to do so by the Court.

18       221.    Microsoft also charges the public considerably less for its generative AI than it costs

19   to produce.

20       **RESPONSE:** The allegations in Paragraph 221 are irrelevant to the pending claims against

21   Microsoft (Counts IV, V, XIX, XX, and XXI) and relate only to claims that were previously

22   dismissed or stayed at the direction of the Court on April 4, 2025. Microsoft will answer these

23   allegations if and when ordered to do so by the Court.

24       222.    OpenAI charges $20 per month for its "ChatGPT Plus" plan. When Microsoft

25   launched its "Copilot Pro" plan less than a year later, it also charged $20 per month for almost

26   mirror-image benefits. Little wonder, then, that when Google launched its subscription product,

27   Gemini Advanced, the month after Microsoft, it had to charge $19.99 per month. There is no reason

28

1   to believe prices should have synchronized so quickly despite wildly different cost structures for

2   putatively different products.

3        **RESPONSE:**  The allegations in Paragraph 222 are irrelevant to the pending claims against

4   Microsoft (Counts IV, V, XIX, XX, and XXI) and relate only to claims that were previously

5   dismissed or stayed at the direction of the Court on April 4, 2025. Microsoft will answer these

6   allegations if and when ordered to do so by the Court.

7        223.    With U.S. and European antitrust regulators drawing nearer, Microsoft's Form 10-

8   K for the fiscal year ending June 30, 2024 listed OpenAI as a "competitor" for the very first time.

9   Although Microsoft is spending billions investing in other AI companies, the same filing lists only

10  a single "strategic partner": OpenAI.

11       **RESPONSE:**  The allegations in Paragraph 223 are irrelevant to the pending claims against

12  Microsoft (Counts IV, V, XIX, XX, and XXI) and relate only to claims that were previously

13  dismissed or stayed at the direction of the Court on April 4, 2025. Microsoft will answer these

14  allegations if and when ordered to do so by the Court.

15       224.    xAI's Grok competes directly with OpenAI's ChatGPT and Microsoft's Copilot in

16  the generative AI market. xAI also competes directly with OpenAI to acquire compute from

17  suppliers such as Microsoft, and xAI and OpenAI compete directly for the same investors.

18       **RESPONSE:**  The allegations in Paragraph 224 are irrelevant to the pending claims against

19  Microsoft (Counts IV, V, XIX, XX, and XXI) and relate only to claims that were previously

20  dismissed or stayed at the direction of the Court on April 4, 2025. Microsoft will answer these

21  allegations if and when ordered to do so by the Court.

22       225.    xAI has been harmed by, without limitation: investors declining to invest in xAI

23  because of the exclusivity agreement Defendants extracted during OpenAI's most recent funding

24  round; an inability to license OpenAI technology given Microsoft's exclusive license thereto; an

25  inability to obtain compute from Microsoft on terms anywhere near as favorable as OpenAI

26  receives, requiring xAI to invest tremendous sums to develop its own infrastructure to produce

27  compute; difficulty recruiting scientists and other technically skilled employees, whom Defendants

28  have locked down to prevent competitive hiring; and the exclusive exchange between OpenAI and

1   Microsoft of competitively sensitive information, such as customer lists, pricing data, and research,

2   resulting in an unlawful competitive advantage.

3       **RESPONSE:** The allegations in Paragraph 225 are irrelevant to the pending claims against

4   Microsoft (Counts IV, V, XIX, XX, and XXI) and relate only to claims that were previously

5   dismissed or stayed at the direction of the Court on April 4, 2025. Microsoft will answer these

6   allegations if and when ordered to do so by the Court.

7                   **COMMON STANDING ALLEGATIONS**

8       226.   Defendants have no meaningful relationship with Delaware, whose laws apply only

9   insofar as they concern the legality of OpenAl, Inc.'s Certificate of Incorporation and/or Bylaws.

10      **RESPONSE:** Denied.

11      227.   In all other respects, California law governs. Indeed, under the Attorney General of

12  California's interpretation of Cal. Corp. Code § 6910 as evidenced in practice, foreign non-profit

13  corporations doing business in California, like OpenAl, Inc., are subject to California law.

14      **RESPONSE:** Paragraph 227 states conclusions of law and argument by Plaintiffs for

15  which no response is required.

16      228.   Though OpenAl, Inc.'s Certificate of Incorporation states, contrary to Delaware law

17  applicable to charities, "[t]he corporation shall not have any members," Ex. 21 at 5, its Bylaws

18  expressly provide for membership and do not provide another means for electing directors or

19  otherwise exercising ultimate control over the corporation. Ex. 21 at 8-10.

20      **RESPONSE:** The statement that OpenAI, Inc's Certificate of Incorporation is "contrary to

21  Delaware law" is a conclusion of law and argument by Plaintiffs for which no response is required.

22  Microsoft admits the quoted language appears in Ex. 21, which speaks for itself. Microsoft denies

23  the allegations to the extent they mischaracterize, take out of context, or misstate or misquote the

24  document. Microsoft otherwise lacks knowledge or information sufficient to form a belief as to the

25  truth of the statements, and therefore denies them. Microsoft otherwise lacks knowledge or

26  information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 228

27  and therefore denies them.

28

229.    By virtue of Article II, § 1 of OpenAl, Inc.'s Bylaws, Musk was a member of OpenAl, Inc. from its founding until his resignation on February 21, 2018.

**RESPONSE:** Microsoft lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 229 and therefore denies them.

230.    Article III, § 1 of OpenAl, Inc.'s Bylaws expressly grants the persons defined to be members, such as Musk, "the right to vote": "for the election of a director or directors"; "on a disposition of all or substantially all of the assets of [the] corporation"; "on a merger or on a dissolution"; and "on changes to the articles or bylaws." *Id. §* 1(a), (c)-(f).

**RESPONSE:** Microsoft lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 230 and therefore denies them.

231.    Musk was thus not only a member of OpenAl, Inc. pursuant to the express language designating directors as members in the Bylaws, but also by virtue of his powers recited therein.

**RESPONSE:** Microsoft lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 231 and therefore denies them.

232.    Musk was therefore a member at the time of the transactions, in whole or in part, of which he complains. He is no longer a member for reasons related to his attempts to address the harms to OpenAl, Inc., including without limitation, those alleged herein.

**RESPONSE:** Microsoft lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 232 and therefore denies them.

233.    Adverse domination of OpenAl, Inc.'s Board during all periods except that from July 13, 2023 (upon the resignation of Hurd), through November 21, 2023 (upon Altman's return), as detailed in paragraphs 159-70, *supra,* excuses Musk from attempting to secure remedial action from the Board.

**RESPONSE:** Paragraph 233 states conclusions of law and argument by Plaintiffs for which no response is required. To the extent a response is nonetheless deemed necessary, Microsoft lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 333 and therefore denies them.

234.    As the settlor of a charitable trust and/or by virtue of the Contract detailed in paragraph 247, *infra,* Musk has standing to enforce compliance with the conditions of his donations.

**RESPONSE:** Paragraph 234 states conclusions of law and argument by Plaintiffs for which no response is required. To the extent a response is nonetheless deemed necessary, Microsoft denies the allegations in Paragraph 234.

235.    As a co-founder, early director, and critical donor, among other roles, Musk has a special interest in OpenAl's operation.

**RESPONSE:** Paragraph 235 states conclusions of law and argument by Plaintiffs for which no response is required. To the extent a response is nonetheless deemed necessary, Microsoft lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 235 and therefore denies them.

236.    Musk has delivered to OpenAl, Inc. and its Board a true copy of the SAC by providing it to counsel for OpenAl, Inc., prior to this filing.

**RESPONSE:** Microsoft lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 236 and therefore denies them.

## COMMON OPERATIONS ALLEGATIONS

237.    Except as otherwise specified herein, OpenAl, Inc. and the For-Profit Entities operate together as a unitary enterprise, the primary purpose of which is now for-profit. OpenAl, Altman, Brockman, and Microsoft have become alter egos of one another. Defendants' corporate veils should be pierced and their separate forms should now be disregarded because on information and belief, a single shareholder controls other entities (e.g., OpenAl, Inc. controls OpenAl OpCo, LLC, OpenAl GP, L.L.C., OpenAl, L.L.C., etc.) and because Defendants, some of which are undercapitalized, have commingled funds and/or assets (e.g., the intellectual property OpenAl, Inc. transferred to the For-Profit Entities), failed to respect corporate formalities, and have and continue to use the For-Profit Entities as shells to conduct illegal activities and/or to conceal or misrepresent the identity of their responsible ownership and respective business activities. Failing to ignore Defendants' corporate forms would produce an inequitable result.

1    **RESPONSE:** Denied as to Microsoft. Microsoft otherwise lacks knowledge or information

2    sufficient to form a belief as to the truth of the remaining allegations in Paragraph 237 and therefore

3    denies them.

4    238.    Except as otherwise specified herein, the unitary enterprise of OpenAl, or in the

5    alternative the individual entities comprising it, have engaged in a de facto merger with one another

6    and Microsoft. On information and belief, following the asset transfers structured to avoid merger

7    review, there exists a continuity of ownership; an effective cessation of business by many of the

8    OpenAl entities, including OpenAl, Inc. itself (which had only $44,485 in revenue in 2022; sharing

9    of officers, directors, and stockholders between OpenAl, Inc., the For-Profit Entities, and/or

10   Microsoft; a continuity of operations; and use of OpenAl, Inc.'s assets, including its name. No

11   adequate consideration has been given for OpenAl, Inc.'s assets and made available to meet the

12   claims of its unsecured creditors.

13   **RESPONSE:** Microsoft admits that OpenAI, Inc. reported $44,485 in revenue to the IRS

14   in its 2022 Form 990 filing and that Reid Hoffman previously served on the board of OpenAI, Inc.

15   while also serving on Microsoft's board. Microsoft denies the remaining allegations in Paragraph

16   238 as to Microsoft. Microsoft otherwise lacks knowledge or information sufficient to form a belief

17   as to the truth of the remaining allegations in Paragraph 238 and therefore denies them.

18   239.    Defendants have intentionally concealed their wrongful conduct, which prevented

19   Plaintiffs from discovering their scheme, notwithstanding Plaintiffs' exercise of due diligence.

20   **RESPONSE:** Denied as to Microsoft. Microsoft lacks knowledge or information sufficient

21   to form a belief as to the truth of the allegations as to the other defendants in Paragraph 239 and

22   therefore denies them.

23   240.    xAI, Microsoft, and OpenAI (both the non-profit and the For-Profit Entities) are

24   engaged in interstate and foreign commerce, and all of their complained-of actions are occurring in

25   commerce and/or are activities affecting commerce. These parties' goods, commodities, and/or

26   services are sold, leased, used, consumed, and/or resold, and/or contracts for their lease, sale, use,

27   consumption, or resale occur throughout the United States, including in California.

28

1  **RESPONSE:** Microsoft admits that Microsoft is engaged in interstate and foreign
2  commerce. Microsoft otherwise lacks knowledge or information sufficient to form a belief as to the
3  truth of the remaining allegations in Paragraph 240 and therefore denies them.

4  ## COMMON ANTITRUST ALLEGATIONS

5  241.    OpenAl alone, Microsoft alone, and/or OpenAl in combination with Microsoft, have
6  market power in generative AI. Microsoft has market power in compute.

7  **RESPONSE:** The allegations in Paragraph 241 are irrelevant to the pending claims against
8  Microsoft (Counts IV, V, XIX, XX, and XXI) and relate only to claims that were previously
9  dismissed or stayed at the direction of the Court on April 4, 2025. Microsoft will answer these
10  allegations if and when ordered to do so by the Court.

11  242.    As a direct and intended result of Defendants' conduct, Musk and xAI have been
12  injured by, without limitation, higher prices for compute, lower prices for their generative AI
13  products, fewer opportunities to compete in selling their generative AI goods, reduced ability to
14  attract and retain the highly skilled personnel critical to success in this market, and reduced access
15  to capital markets, all leading to reduced choices among consumers.

16  **RESPONSE:** The allegations in Paragraph 242 are irrelevant to the pending claims against
17  Microsoft (Counts IV, V, XIX, XX, and XXI) and relate only to claims that were previously
18  dismissed or stayed at the direction of the Court on April 4, 2025. Microsoft will answer these
19  allegations if and when ordered to do so by the Court.

20  243.    Although each of Defendants' acts is anticompetitive in its own right, the
21  interrelated and interdependent actions giving rise to the claims in this SAC have had a cumulative
22  and synergistic effect that has harmed Musk and xAI, competition, the competitive process, and
23  consumers.

24  **RESPONSE:** The allegations in Paragraph 243 are irrelevant to the pending claims against
25  Microsoft (Counts IV, V, XIX, XX, and XXI) and relate only to claims that were previously
26  dismissed or stayed at the direction of the Court on April 4, 2025. Microsoft will answer these
27  allegations if and when ordered to do so by the Court.

28

244.     The cumulative actions of Defendants are either per se illegal, or their obvious and likely anticompetitive effects require only a "quick look" rule-of-reason inquiry.

**RESPONSE:** The allegations in Paragraph 244 are irrelevant to the pending claims against Microsoft (Counts IV, V, XIX, XX, and XXI) and relate only to claims that were previously dismissed or stayed at the direction of the Court on April 4, 2025. Microsoft will answer these allegations if and when ordered to do so by the Court.

245.     Defendants' exclusionary acts lack a pro-competitive justification sufficient to offset the significant harms caused by their anticompetitive and unlawful conduct.

**RESPONSE:** The allegations in Paragraph 245 are irrelevant to the pending claims against Microsoft (Counts IV, V, XIX, XX, and XXI) and relate only to claims that were previously dismissed or stayed at the direction of the Court on April 4, 2025. Microsoft will answer these allegations if and when ordered to do so by the Court.

## COUNT IV: BREACH OF QUASI-CONTRACT/UNJUST ENRICHMENT

### (Musk Against Altman, Brockman, OpenAI,[13] and Microsoft)

274.     Plaintiff Musk re-alleges and incorporates by reference paragraphs 1 through 273 inclusive, as though fully set forth herein.

**RESPONSE:** Microsoft repeats and incorporates by reference its responses to the foregoing allegations in the Second Amended Complaint.

275.     Even in the absence of an enforceable agreement, Defendants have still been unjustly enriched at Musk's expense as a result of their improper exploitation for personal profit of OpenAI, Inc.'s resources, intellectual property, and assets as detailed above.

**RESPONSE:** Denied.

276.     Musk contributed considerable money and resources to launch and sustain OpenAI, Inc., which was done on the condition that the endeavor would be and remain a non-profit devoted to openly sharing its technology with the public and avoid concentrating its power in the hands of a few.

---

[13] As defined in note 2, *supra*, "OpenAI" refers to the non-profit OpenAI, Inc. and the For-Profit Entities, collectively.

1     **RESPONSE:** Microsoft lacks knowledge or information sufficient to form a belief as to

2     the truth of the allegations in Paragraph 276 and therefore denies them.

3         277.    It would be unjust and inequitable to allow Defendants to retain the substantial

4     benefits that were obtained as a direct and proximate result of their wrongful conduct including,

5     without limitation, their solicitation of capital and other valuable resources from Musk under the

6     false pretense and repeated promises that such would be used for charitable purposes, and while

7     misrepresenting to Musk, regulators, and the public that OpenAI, Inc. was developing AI/AGI for

8     the public's benefit and not for private gain.

9         **RESPONSE:** Denied as to Microsoft. Microsoft lacks knowledge or information sufficient

10    to form a belief as to the truth of the allegations as to the other defendants in Paragraph 277 and

11    therefore denies them.

12        278.    Musk has been directly and proximately injured by Defendants' conduct, acts,

13    and/or omissions, for which Defendants are jointly and severally liable. Defendants' wrongful

14    conduct, acts, and omissions have caused and will continue to cause Plaintiff irreparable harm if

15    allowed to continue without restraint, and as to which Plaintiff has no adequate remedy at law.

16        **RESPONSE:** Denied.

17        279.    Defendants have been and will continue to be unjustly enriched, in an amount to be

18    adjudicated and determined at trial, and for which restitution and nonrestitutionary disgorgement

19    are appropriate. The primary remedy is correction, via the imposition of a constructive trust over

20    Defendants and their ill-gotten gains, as well as the voiding of all contracts with any Defendant(s)

21    that are contrary to the non-profit's charitable purposes.

22        **RESPONSE:** Denied.

23        280.    Musk therefore seeks a judgment against Defendants for compensatory damages, an

24    accounting, the imposition of a constructive trust, preliminary and permanent injunctive relief,

25    prejudgment interest, an award of costs, and fees.

26        **RESPONSE:** Denied.

27

28

1

### COUNT V: TORTIOUS INTERFERENCE WITH CONTRACT

2

### (Musk Against Microsoft)

3      281.    Plaintiff Musk re-alleges and incorporates by reference paragraphs 1 through 280

4    inclusive, as though fully set forth herein.

5      **RESPONSE:** Microsoft repeats and incorporates by reference its responses to the

6    foregoing allegations in the Second Amended Complaint.

7      282.    Microsoft and the For-Profit Entities knew Musk had a valid contract with Altman

8    and OpenAl, Inc. and that the agreement required OpenAl, Inc.'s technology to be predominantly

9    open source for the benefit of the public, not for private commercial gain. Aside from the name

10    "OpenAI"—an appellation ironically shared by almost all the For-Profit Entities—these

11    Defendants all had knowledge of the charitable purpose for which Musk co-founded the non-profit,

12    as, on information and belief, the formation documents and investment term sheets of the For-Profit

13    Entities included a recitations of the non-profit's charitable purpose, and the diligence Microsoft

14    undoubtedly performed before investing significant sums in OpenAl would have revealed such

15    purpose.

16      **RESPONSE:** Microsoft admits that it knew about the charitable purpose in OpenAI's

17    certificate of incorporation documents. Microsoft denies the remaining allegations in Paragraph

18    282 including but not limited to the allegation that it had any knowledge of Musk having a valid

19    contract with Altman and OpenAI, Inc. and the terms of any such contract.

20      283.    With respect to the conduct alleged Count V, neither Microsoft nor the For-Profit

21    Entities acted as an agent of Altman and/or OpenAl, Inc.

22      **RESPONSE:** Microsoft admits it is not an agent of Altman and/or OpenAI, Inc. Microsoft

23    otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations

24    in Paragraph 283 and therefore denies them.

25      284.    On information and belief, Microsoft and the For-Profit Entities intended to disrupt

26    Altman and OpenAl, Inc.'s performance of their contract with Musk and/or knew that such

27    disruption of their performance was certain or substantially certain to occur as a result of Microsoft

28    and the For-Profit Entities' conduct.

1    **RESPONSE:**  Denied as to Microsoft. Microsoft otherwise lacks knowledge or information

2    sufficient to form a belief as to the truth of the allegations in Paragraph 284 and therefore denies

3    them.

4        285.    Microsoft, in concert with the For-Profit Entities, unlawfully exploited its position

5    of power over OpenAl, Inc.—e.g., by leveraging its position as OpenAl's exclusive compute

6    supplier and primary current funder—to induce OpenAl, Inc. to breach its agreement with Musk,

7    and it engaged in further independently wrongful conduct by siphoning, and conspiring to siphon,

8    the non-profit's most valuable assets into Defendants' for-profit apparatus, as well as executing

9    exclusive licenses and agreements for Defendants' benefit. On information and belief, the For-

10   Profit Entities currently employ much of the non-profit's former staff, house its research and

11   intellectual property, and have facilitated rampant self-dealing by Defendants.

12       **RESPONSE:**  Denied to as Microsoft. Microsoft otherwise lacks knowledge or information

13   sufficient to form a belief as to the truth of the allegations in Paragraph 285 and therefore denies

14   them.

15       286.    Musk has been directly and proximately injured by Defendants' conduct, acts,

16   and/or omissions, for which Defendants are jointly and severally liable. Defendants' wrongful

17   conduct, acts, and omissions have caused and will continue to cause Musk irreparable harm if

18   allowed to continue without restraint, and as to which Musk has no adequate remedy at law.

19       **RESPONSE:**  Denied.

20       287.    Defendants have been and will continue to be unjustly enriched, in an amount to be

21   adjudicated and determined at trial, and for which restitution and nonrestitutionary disgorgement

22   are appropriate. The primary remedy is correction, via the imposition of a constructive trust over

23   Defendants and their ill-gotten gains, as well as the voiding of all contracts with any Defendant(s)

24   that are contrary to the non-profit's charitable purposes.

25       **RESPONSE:**  Denied.

26       288.    Musk therefore seeks a judgment against Defendants for compensatory damages, an

27   accounting, the imposition of a constructive trust, preliminary and permanent injunctive relief,

28   prejudgment interest, an award of costs, and fees.

1   **RESPONSE:** Denied.

2   289.   Musk is further entitled to exemplary damages under Cal. Civ. Code § 3294(a)

3   because Defendants have acted with oppression, fraud, malice, and/or willful and wanton

4   negligence by, without limitation, acting with intent to harm Musk.

5   **RESPONSE:** Denied.

6   ## COUNT XIX: AIDING AND ABETTING BREACH

7   ## OF FIDUCIARY DUTY TO MUSK

8   **(Musk Against Microsoft)**

9   406.   Plaintiff Musk re-alleges and incorporates by reference paragraphs 1 through 405

10  inclusive, as though fully set forth herein.

11  **RESPONSE:** Microsoft repeats and incorporates by reference its responses to the

12  foregoing allegations in the Second Amended Complaint.

13  407.   As a charity and persons soliciting contributions on behalf of a charity, OpenAl,

14  Inc., Altman, and Brockman each owe a fiduciary duty to Musk, from whom charitable contributions

15  were actively solicited, including under Cal. Bus. & Prof. Code § 17510.8.

16  **RESPONSE:** Paragraph 407 states conclusions of law and argument by Plaintiffs for

17  which no response is required. To the extent a response is nonetheless deemed necessary, Microsoft

18  lacks knowledge or information sufficient to form a belief as to the truth of the allegations in

19  Paragraph 407 and therefore denies them.

20  408.   Altman, Brockman, and OpenAl, Inc. solicited and obtained contributions from

21  Musk by making repeated and material promises, representations, and reassurances to him that they

22  would develop AI for the benefit of humanity, would predominantly open source their technology,

23  avoid concentrating it, and would not operate for the profit of any person or company, as evidenced

24  in, without limitation, the emails, corporate filings, and online pronouncements alleged above.

25  **RESPONSE:** Microsoft lacks knowledge or information sufficient to form a belief as to

26  the truth of the allegations in Paragraph 408 and therefore denies them.

27  409.   Altman, Brockman, and OpenAl, Inc. breached their fiduciary duties to Musk in the

28  same manner by which they violated the terms of the Contract as either an express written

agreement or implied-in-fact contract, and/or the trust Musk created for OpenAl, Inc.'s benefit, as detailed in paragraph 250(a)-(m), *supra,* because such actions failed to observe, without limitation, the duties of obedience, loyalty, and/or care imposed by Cal. Bus. & Prof. Code § 17510.8.

**RESPONSE:** Microsoft lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 409 and therefore denies them.

410.    The For-Profit Entities had actual knowledge of the fiduciary duties Altman, Brockman, and OpenAl, Inc. owed to Musk, because the very purpose of the For-Profit Entities is to enable Altman and Brockman to operate for non-charitable purposes and to circumvent the fiduciary duties they owe to the donors. Further, the knowledge and intent of the officers, agents, employees, and/or owners of the For-Profit Entities, who on information and belief were aware of Altman, Brockman, and OpenAl, Inc.'s duties and breaches thereof, is imputed to the For-Profit Entities.

**RESPONSE:** Microsoft lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 410 and therefore denies them.

411.    Microsoft had actual knowledge of the fiduciary duties Altman, Brockman, and OpenAl, Inc. owed to Musk. Microsoft shared a board member with OpenAl, Inc. (i.e., Hoffman) and on information and belief, Microsoft's due diligence process before investing $13.75 billion would have required, at a minimum, review of OpenAl, Inc.'s Certificate of Incorporation and regulatory filing with the Attorney General of California, and on further information and belief, Microsoft knew of the donations by Musk and their conditions.

**RESPONSE:** Microsoft admits that Hoffman served as a board member with OpenAI, Inc. for a period of time and that Microsoft conducted due diligence before investing in OpenAI. Microsoft otherwise denies the remaining allegations in Paragraph 411.

412.    With respect to conduct alleged in this Count XIX, Microsoft and the For-Profit Entities did not act within any agency relationship with Altman, Brockman, and/or OpenAl, Inc.

**RESPONSE:** Microsoft admits it is not an agent of Altman, Brockman, and/or OpenAI, Inc. Microsoft otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 412 and therefore denies them.

1    413.    The For-Profit Entities and Microsoft provided substantial assistance or

2  encouragement to Altman, Brockman, and OpenAl, Inc., aiding and abetting their breaches of

3  fiduciary duty to Musk by, without limitation, providing the corporate forms necessary to loot

4  OpenAl, Inc. of its intellectual property and employees, drafting and executing exclusive licensing

5  and other contracts contrary to the purposes of OpenAl, Inc., and requiring the pursuit of profits

6  over safety and transparency. These actions were substantial factors in causing harm to Musk.

7    **RESPONSE:** Denied as to Microsoft. Microsoft otherwise lacks knowledge or information

8  sufficient to form a belief as to the truth of the allegations in Paragraph 413 and therefore denies

9  them.

10    414.    On information and belief, Defendants have been greatly enriched by their resulting

11  misappropriation of the non-profit's assets and their self-dealing in blatant derogation of the

12  fiduciary duties Altman, Brockman, and OpenAl, Inc. owed and continue to owe Musk.

13    **RESPONSE:** Denied.

14    415.    Musk has been directly and proximately injured by Defendants' conduct, acts,

15  and/or omissions, for which Defendants are jointly and severally liable. Defendants' wrongful

16  conduct, acts, and omissions have caused and will continue to cause Musk irreparable harm if

17  allowed to continue without restraint, and as to which Musk has no adequate remedy at law.

18    **RESPONSE:** Denied.

19    416.    Defendants have been and will continue to be unjustly enriched, in an amount to be

20  adjudicated and determined at trial, and for which restitution and nonrestitutionary disgorgement

21  are appropriate. The primary remedy is correction, via the imposition of a constructive trust over

22  Defendants and their ill-gotten gains, as well as the voiding of all contracts with any Defendant(s)

23  that are contrary to the non-profit's charitable purposes.

24    **RESPONSE:** Denied.

25    417.    Musk therefore seeks a judgment against Defendants for compensatory damages, an

26  accounting, the imposition of a constructive trust, preliminary and permanent injunctive relief,

27  prejudgment interest, an award of costs, and fees.

28    **RESPONSE:** Denied.

418.    Musk is further entitled to exemplary damages under Cal. Civ. Code § 3294(a) because Defendants have acted with oppression, fraud, malice, and/or willful and wanton negligence by, without limitation, acting with intent to harm Musk.

**RESPONSE:** Denied.

### COUNT XX: VIOLATIONS OF FEDERAL CIVIL RICO, 18 U.S.C. § 1962(c)

**(Musk and xAI Against Altman, Brockman, Microsoft, and the For-Profit Entities)**

419.    Plaintiffs Musk and xAI re-allege and incorporate by reference paragraphs 1 through 418 inclusive, as though fully set forth herein.

**RESPONSE:** Microsoft repeats and incorporates by reference its responses to the foregoing allegations in the Second Amended Complaint.

420.    The federal Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1962, 1964, provides a private right of action for plaintiffs to recover against defendants who harm them through a pattern of racketeering activity as well as defendants who conspire to do so. The statute specifically targets scenarios, like that present here, where defendants exploit legitimate companies, including non-profits, through a concerted pattern of unlawful conduct detrimental to the public interest (here, repeated wire fraud in connection with a publicly subsidized charity), so as to halt the manipulation and corruption of legitimate entities and prevent defendants from profiting from their wrongdoing.

**RESPONSE:** Paragraph 420 states conclusions of law and argument by Plaintiffs for which no response is required. To the extent a response is nonetheless deemed necessary, Microsoft denies the allegations of Paragraph 420.

#### A. *Wire Fraud Predicate Offenses*

421.    Altman and Brockman knowingly engaged in a scheme to exploit Musk and others (including donors Jessica Livingston, Peter Thiel, and Open Philanthropy) by inducing them with repeated misrepresentations to make significant financial and other contributions to develop valuable AI/AGI for ostensibly charitable purposes, which Defendants exploited to enrich themselves.

1    **RESPONSE:** Denied as to Microsoft. Microsoft otherwise lacks knowledge or information

2    sufficient to form a belief as to the truth of the allegations in Paragraph 421 and therefore denies

3    them.

4    422.    In furtherance of this scheme, Altman and Brockman transmitted, or caused to be

5    transmitted writings by means of wire communication in interstate commerce (emails), in violation

6    of 18 U.S.C. § 1343. The specific emails sent in furtherance of Defendants' scheme include, but

7    are not limited to, those detailed in paragraph 247, *supra.*

8    **RESPONSE:** Denied as to Microsoft. Microsoft otherwise lacks knowledge or information

9    sufficient to form a belief as to the truth of the allegations in Paragraph 422 and therefore denies

10    them.

11    423.    Altman and Brockman's specific intent to defraud Musk is clear from, *inter alia*,

12    their express misrepresentations and assurances to Musk in September 2017 that they remained

13    committed to the original non-profit structure and mission of OpenAI, Inc., while simultaneously

14    plotting to loot the charity's technology and employees for exploitation by the For-Profit Entities

15    and Defendants' private gain. See *supra* ¶¶ 100-02.

16    **RESPONSE:** Denied as to Microsoft. Microsoft otherwise lacks knowledge or information

17    sufficient to form a belief as to the truth of the allegations in Paragraph 423 and therefore denies

18    them.

19    424.    Altman and Brockman intended Musk to rely, or knew or could have reasonably

20    foreseen that Musk would rely, on their express promises, representations, and assurances, and in

21    good faith Musk reasonably did rely on them to his detriment. Based thereon, Musk caused to be

22    wired tens of millions of dollars of seed money to OpenAI, Inc. as follows:

| Date | Amount |
|---|---|
| 05/27/2016 | $500,000.00[14] |
| 06/08/2016 | $5,000,000.00 |

---

[14] On information and belief, Musk's initial $10 million in donations to OpenAI, Inc. in 2016 were first wired to Altman's "YC Org.," and then wired by YC Org. to OpenAI, Inc. once OpenAI, Inc. obtained its section 501(c)(3) status.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

| Date | Amount |
|---|---|
| 08/26/2016 | $4,500,000.00 |
| 10/03/2016 | $142,000.00 |
| 10/25/2016 | $142,000.00 |
| 11/21/2016 | $750,000.00 |
| 11/23/2016 | $142,000.00 |
| 12/07/2016 | $4,250,000.00 |
| 01/01/2017 | $1,140,000.00 |
| 01/01/2017 | $700,000.00 |
| 01/01/2017 | $16,028,500.00 |
| 01/05/2017 | $142,000.00 |
| 01/27/2017 | $142,000.00 |
| 07/18/2017 | $175,000.00 |
| 08/14/2017 | $175,000.00 |
| 09/15/2017 | $175,000.00 |
| 09/29/2017 | $85,000.00 |
| 10/16/2017 | $235,000.00 |
| 11/14/2017 | $235,000.00 |
| 12/14/2017 | $235,000.00 |
| 01/18/2018 | $290,000.00 |
| 02/20/2018 | $390,000.00 |
| 03/14/2018 | $290,000.00 |
| 04/16/2018 | $290,000.00 |
| 05/15/2018 | $290,000.00 |
| 06/14/2018 | $290,000.00 |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

| Date | Amount |
|---|---|
| 07/16/2018 | $290,000.00 |
| 08/14/2018 | $290,000.00 |
| 09/18/2018 | $290,000.00 |
| 10/17/2018 | $290,000.00 |
| 11/14/2018 | $290,000.00 |
| 12/17/2018 | $290,000.00 |
| 01/16/2019 | $290,000.00 |
| 02/14/2019 | $290,000.00 |
| 03/22/2019 | $290,000.00 |
| 04/16/2019 | $290,000.00 |
| 05/14/2019 | $290,000.00 |
| 06/14/2019 | $290,000.00 |
| 07/17/2019 | $290,000.00 |
| 08/14/2019 | $290,000.00 |
| 09/16/2019 | $290,000.00 |
| 10/17/2019 | $290,000.00 |
| 11/15/2019 | $290,000.00 |
| 12/17/2019 | $290,000.00 |
| 01/14/2020 | $290,000.00 |
| 02/14/2020 | $290,000.00 |
| 03/16/2020 | $290,000.00 |
| 04/13/2020 | $290,000.00 |
| 05/13/2020 | $290,000.00 |
| 06/15/2020 | $290,000.00 |

| Date | Amount |
|------|--------|
| 07/14/2020 | $290,000.00 |
| 08/17/2020 | $290,000.00 |
| 09/14/2020 | $290,000.00 |
| **Total:** | $44,563,500.00 |

**RESPONSE:** Microsoft lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 424 or its footnote and therefore denies them.

425.    During this period, Musk also caused Musk Industries to pay by interstate bank wire the monthly rent and overhead for OpenAI, Inc.'s office.

**RESPONSE:** Microsoft lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 425 and therefore denies them.

426.    Musk further invested his time, reputation, and connections to recruit top AI scientists and engineers for the non-profit, which included the transmission of emails and cellular telephonic communications.

**RESPONSE:** Microsoft lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 426 and therefore denies them.

427.    It was reasonably foreseeable that interstate wires would be used in connection with Defendants' scheme. In addition to the wire transmissions described above, Altman and Brockman, acting in concert with the For-Profit Entities and Microsoft, relied on wires to invest such funds in furtherance of their fraudulent scheme, and, on information and belief, relied on email or other forms of electronic communication to exchange information about their receipt and usage of such funds and contributions.

**RESPONSE:** Denied as to Microsoft. Microsoft otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 427 and therefore denies them.

428.    In addition, from December 11, 2015 to today, Defendants in their online marketing (e.g., website), advertisements, and promotions made knowingly false and/or misleading

1    representations to defraud the public and induce the false belief that OpenAI, Inc. would be a non-

2    profit whose charitable mission is to develop safe and open-source AI/AGI technology for the

3    public good, not private gain, as detailed in paragraphs 82-88 and 247, *supra*. These false and/or

4    misleading public pronouncements served to further reassure Musk and induce him to make further

5    contributions.

6        **RESPONSE:** Denied as to Microsoft. Microsoft otherwise lacks knowledge or information

7    sufficient to form a belief as to the truth of the allegations in Paragraph 428 and therefore denies

8    them.

9        429.    Altman and Brockman knowingly and repeatedly accepted contributions from Musk

10   and other member of the public in order to develop AI/AGI with no intention of honoring and

11   performing their promises at the time they were made, and failed to perform them. For instance,

12   OpenAI's recent GPT-4, GPT-4T, GPT-4o, and OpenAI o1 models are all closed source and

13   shrouded in secrecy for Defendants' commercial advantage and gain.

14       **RESPONSE:** Microsoft denies the allegations in Paragraph 429 as to Microsoft. Microsoft

15   otherwise lacks knowledge or information sufficient to form a belief as to the truth of the remaining

16   allegations in Paragraph 429 and therefore denies them.

17       430.    Altman and Brockman used and exploited Musk's contributions to fund and support

18   OpenAI, Inc.'s research and development of AI/AGI, and on information and belief, to attract

19   massive investment by Microsoft, as well as to launch the For-Profit Entities, in which, on

20   information and belief, Altman and Microsoft are significant shareholders.

21       **RESPONSE:** Denied as to Microsoft. Microsoft otherwise lacks knowledge or information

22   sufficient to form a belief as to the truth of the allegations in Paragraph 430 and therefore denies

23   them.

24       431.    Microsoft and the For-Profit Entities were aware of, benefitted from, and aided and

25   abetted the continuation of this unlawful conduct by, without limitation, providing the capital,

26   corporate structure(s), and advice and encouragement to exploit OpenAI, Inc. and its assets for

27   Defendants' enrichment rather than the public's benefit. Microsoft and the For-Profit Entities

28   further participated by siphoning off and exploiting OpenAI, Inc.'s valuable AI/AGI technology

1    and highly skilled personnel and by facilitating and concealing Defendants' profiteering, as

2    described in detail in paragraphs 127-133, *supra*.

3    **RESPONSE:** Denied as to Microsoft. Microsoft otherwise lacks knowledge or information

4    sufficient to form a belief as to the truth of the allegations in Paragraph 431 and therefore denies

5    them.

6    432.    While publicly cloaked as a mere fundraising apparatus, the For-Profit Entities are,

7    in reality, the foundation of Defendants' scheme to control, co-opt, and cash in on OpenAI, Inc.'s

8    valuable technology developed with Musk's significant contributions.

9    **RESPONSE:** Denied as to Microsoft. Microsoft otherwise lacks knowledge or information

10   sufficient to form a belief as to the truth of the allegations in Paragraph 432 and therefore denies

11   them.

12   433.    For instance, after Altman and Brockman launched OpenAI, L.P. (now OpenAI

13   OpCo, LLC), they transferred much of the non-profit's staff over to the new company, which also

14   now houses and operates much of OpenAI's technological research and development. Altman,

15   Brockman, and the For-Profit Entities' reshuffling of OpenAI, Inc.'s assets, in concert with

16   Microsoft, served to conveniently shield them and their scheme from public scrutiny and to evade

17   the financial disclosures non-profits like OpenAI, Inc. must make.

18   **RESPONSE:** Microsoft admits that certain assets were transferred from OpenAI, Inc. to

19   OpenAI, L.P after OpenAI, L.P. was launched. Microsoft denies the allegation that this "served to

20   conveniently shield them and their scheme from public scrutiny and to evade the financial

21   disclosures non-profits like OpenAI, Inc. must make." Microsoft otherwise lacks knowledge or

22   information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 433

23   and therefore denies them.

24   434.    Each of the predicate acts by Altman and/or Brockman alleged hereinabove were

25   committed within the scope of their employment, their positions as officers and/or directors at, or

26   their agency relationship with, the For-Profit Entities and/or Microsoft.

27

28

1    **RESPONSE:** Denied as to Microsoft. Microsoft otherwise lacks knowledge or information

2    sufficient to form a belief as to the truth of the allegations in Paragraph 434 and therefore denies

3    them.

4        435.    In addition, Altman, with the assistance and cooperation of Brockman, the For-

5    Profit Entities, and/or Microsoft, brazenly engaged in rampant self-dealing involving OpenAI, Inc.

6    and its assets, as described in detail in paragraphs 135-45, *supra*.

7        **RESPONSE:** Denied as to Microsoft. Microsoft otherwise lacks knowledge or information

8    sufficient to form a belief as to the truth of the allegations in Paragraph 435 and therefore denies

9    them.

10       436.    Altman and Brockman, in concert with the For-Profit Entities and Microsoft,

11   intentionally concealed their unlawful conduct, which prevented Musk from discovering their

12   scheme, notwithstanding his exercise of due diligence. Musk would not have contributed to

13   OpenAI, Inc. had he known of Defendants' true intentions and scheme.

14       **RESPONSE:** Denied as to Microsoft. Microsoft otherwise lacks knowledge or information

15   sufficient to form a belief as to the truth of the allegations in Paragraph 436 and therefore denies

16   them.

17       437.    Altman, Brockman, Microsoft, and the For-Profit Entities directly and indirectly

18   committed or aided and abetted these numerous predicate acts of wire fraud in furtherance of their

19   scheme. The predicate acts by Microsoft and the For-Profit Entities were committed by Altman,

20   Brockman, and/or representatives of such entities acting through, or on behalf of and for the benefit

21   of those entities. Each of these Defendants voluntarily and intentionally committed and/or aided

22   and abetted the commission of the predicate acts to effectuate and/or further their illicit scheme.

23       **RESPONSE:** Denied as to Microsoft. Microsoft otherwise lacks knowledge or information

24   sufficient to form a belief as to the truth of the allegations in Paragraph 437 and therefore denies

25   them.

26       **B. *Pattern of Racketeering Activity***

27       438.    Defendants committed multiple predicate acts of wire fraud which are indictable

28   under 18 U.S.C. § 1961(1)(B). Defendants knowingly, willfully, and unlawfully conducted or

1    participated, directly or indirectly, in a pattern of racketeering activity within the meaning of 18

2    U.S.C. § 1961(5).

3        **RESPONSE:** Paragraph 438 states conclusions of law and argument by Plaintiffs for

4    which no response is required. To the extent a response is nonetheless deemed necessary, Microsoft

5    denies the allegations of Paragraph 438.

6        439.    Altman, Brockman, the For-Profit Entities, and/or Microsoft committed, or

7    conspired with or aided and abetted one another in committing, at least two (and in fact, numerous)

8    predicate acts of wire fraud constituting a continuous course of conduct spanning a period from at

9    least March 2015 to the present. The temporal duration and the number of predicate acts are so

10   extensive as to constitute a cognizable pattern of racketeering activity with, at minimum, closed-

11   ended continuity, though, on information and belief, such conduct is continuing—e.g., Defendants

12   continue to form new for-profit entities, and to exploit the non-profit's technology for their private

13   gain, all while continuing to promote their counterfeit charitable mission—and there exists a

14   specific threat such conduct will persist indefinitely, constituting a pattern of racketeering activity

15   that is open-ended.

16       **RESPONSE:** Denied as to Microsoft. Microsoft otherwise lacks knowledge or information

17   sufficient to form a belief as to the truth of the allegations in Paragraph 439 and therefore denies

18   them.

19       440.    In order to implement their scheme, Defendants repeatedly used the interstate wires

20   to defraud Musk and other contributors. The predicate acts were related, having the same or similar

21   purposes and results (e.g., to obtain significant financial and other contributions to develop valuable

22   AI/AGI technology to be wrongfully exploited for Defendants' self-enrichment); involved the same

23   or similar participants (e.g., Defendants); and victims (e.g., Plaintiffs, donors, AI scientists and

24   engineers, and other contributors); and involved the same or similar methods of commission (e.g.,

25   misrepresentations via email, online marketing, etc.).

26       **RESPONSE:** Denied as to Microsoft. Microsoft otherwise lacks knowledge or information

27   sufficient to form a belief as to the truth of the allegations in Paragraph 440 and therefore denies

28   them.

441.    Altman, Brockman, the For-Profit Entities, and Microsoft each participated as a principal in the pattern of racketeering activity by, acting with intent or knowledge, committing, causing, aiding, abetting, counseling, commanding, inducing, or procuring the commission of, two or more acts of wire fraud that make up the alleged pattern of racketeering activity, or by willfully causing the commission of two or more acts of wire fraud that make up the pattern of racketeering activity, which, if Altman, Brockman, the For-Profit Entities, or Microsoft directly performed, would constitute the commission of two or more acts of wire fraud comprising such pattern.

**RESPONSE:**  Denied as to Microsoft. Microsoft otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 441 and therefore denies them.

### C. *Violations of Section 1962(c)*

442.    Title 18, Section 1962(c) makes it "unlawful for any person employed by or associated with any enterprise . . . to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity[.]"

**RESPONSE:** Paragraph 442 states conclusions of law and argument by Plaintiffs for which no response is required. To the extent a response is nonetheless deemed necessary, Microsoft denies the allegations of Paragraph 442.

443.    OpenAI, Inc. is an "enterprise" as defined by 18 U.S.C. § 1961(4), and engaged in, and its activities affected, interstate and foreign commerce. At all relevant times, OpenAI, Inc. had an existence separate and distinct from the pattern of racketeering in which Altman, Brockman, the For-Profit Entities, and Microsoft engaged.

**RESPONSE:** Paragraph 443 states conclusions of law and argument by Plaintiffs for which no response is required. To the extent a response is nonetheless deemed necessary, lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 443 and therefore denies them.

444.    Altman, Brockman, the For-Profit Entities, and Microsoft are "persons" within the definition of 18 U.S.C. § 1961(3), and at all relevant times were employed by and/or associated with OpenAI, Inc. Altman and Brockman are OpenAI, Inc.'s CEO and sometimes President/CTO,

1  respectively, and at various times have sat, and Altman currently sits, on its Board. On information

2  and belief, from November 29, 2023 to July 9, 2024, Microsoft held its so-called "observer seat"

3  on the Board, from which it participated in the management, operation, and/or control of OpenAI,

4  Inc. The For-Profit Entities, which on information and belief are largely owned, operated, and/or

5  controlled by Altman and Microsoft, knowingly implemented decisions of Altman, Brockman,

6  and/or Microsoft and have now so thoroughly infiltrated OpenAI, Inc., and are so intertwined with

7  OpenAI, Inc., so as to effectively participate in, manage, control, and/or operate the non-profit with

8  impunity for Defendants private gain.

9      **RESPONSE:** Paragraph 444 states conclusions of law and argument by Plaintiffs for

10  which no response is required. To the extent a response is nonetheless deemed necessary, Microsoft

11  admits that Microsoft held a non-voting board observer seat on the board of OpenAI, Inc. from

12  December 9, 2023 to July 29, 2024. Microsoft denies the remaining allegations as to Microsoft

13  including the allegation that it participated in the management and/or control of OpenAI entities

14  through its non-voting board observer seat. Microsoft otherwise lacks knowledge or information

15  sufficient to form a belief as to the truth of the allegations in Paragraph 444 and therefore denies

16  them.

17      445.    Defendants conducted the affairs of OpenAI, Inc. through a pattern of racketeering

18  activity by systematically engaging in wire fraud to direct, operate, and manage the enterprise.

19  Specifically:

20      a.    Altman and Brockman, as officers with operational control, used their positions

21  within OpenAI, Inc. to execute and direct the enterprise's core activities through the commission

22  of multiple predicate acts of wire fraud. Defendants directed OpenAI, Inc.'s solicitation of

23  charitable contributions and managed its fundraising operations through interstate wires containing

24  systematic fraudulent misrepresentations about the enterprise's non-profit mission, as detailed

25  above. Indeed, in reliance on Defendants' repeated misrepresentations, Musk contributed

26  approximately \$44,811,795.00[15] in seed capital via interstate wires to OpenAI, Inc. as set forth in

27

28  ---
    [15] In addition to his wired contributions, Musk donated Model 3 Teslas to OpenAI, Inc., valued at \$248,295.00, which contribution required communication over e-mail.

1    the detailed table above, provided office rent and overhead through Musk Industries, and invested

2    his time, reputation, and connections to recruit premier AI scientists and engineers for the non-

3    profit; and

4        b.    After securing initial control over the enterprise through multiple systematic

5    predicate acts of wire fraud, Defendants maintained and strengthened their control by transmitting

6    additional express misrepresentations via interstate wires to Musk in September 2017, falsely

7    claiming a continuing commitment to and enthusiasm for OpenAI's non-profit structure and

8    charitable mission, as detailed above. These strategic misrepresentations induced Musk to continue

9    to make substantial financial contributions to the enterprise (evidenced by numerous wire transfers

10   after September 2017), allowing Defendants to maintain control over the enterprise's financing and

11   operations.

12   **RESPONSE:**  Denied as to Microsoft. Microsoft otherwise lacks knowledge or information

13   sufficient to form a belief as to the truth of the allegations in Paragraph 445 or its footnote and

14   therefore denies them.

15       446.    The For-Profit Entities and Microsoft did more than just benefit from this pattern of

16   racketeering activity, they were vital to the scheme's success and actively aided and abetted Altman

17   and Brockman in operating the enterprise through this pattern by:

18       a.    Knowingly providing the capital, corporate structure(s), and advice and

19   encouragement that enabled Altman and Brockman to perpetuate their continuing wire fraud

20   scheme, thereby aiding and abetting the operation of the enterprise through the ongoing

21   transmission of fraudulent representations via interstate wires;

22       b.    Willfully participating in the deception of donors and the public by facilitating and

23   concealing Defendants' profiteering, thus aiding and abetting the continued operation of OpenAI,

24   Inc. through wire fraud that misrepresented its charitable mission and obscured Defendants'

25   profiteering;

26       c.    Serving as vital participants in siphoning off and exploiting OpenAI, Inc.'s valuable

27   AI/AGI technology and highly skilled personnel, acts that directly aided and abetted the core wire

28   fraud scheme; and

d.      Intentionally executing the reshuffling of OpenAI, Inc.'s assets that served to conveniently shield them and their scheme from public scrutiny and to evade the financial disclosures non-profits like OpenAI, Inc. must make, thus directly aiding and abetting the wire fraud. The concealment of Defendants' scheme from Musk, regulators, and the public was critical to its success.

**RESPONSE:**  Denied as to Microsoft. Microsoft otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 446 and therefore denies them.

447.    Further, the For-Profit Entities did not simply aid and abet the wire fraud scheme but actively participated in it by making material misrepresentations transmitted via interstate wires about their purpose and investors' expected returns, including falsely stating that investors should "consider their investment in the spirit of a donation" and that it is "clear that [investors] should never expect a profit," and claiming that "The [for-profit endeavor] exists to advance OpenAI, Inc.'s mission." These fraudulent communications, deliberately directed at both Musk and the public, served to reassure Musk and induced him to make further financial contributions to the enterprise. The For-Profit Entities themselves participated in the operation of the enterprise and directed its affairs by utilizing wire fraud to secure the enterprise's funding while concealing that its structure was designed to retain the vast majority of revenue in the For-Profit Entities and to maximize private financial returns, as revealed, for example, by OpenAI's recent agreement to remove all profit caps to amplify its investors' financial gains.

**RESPONSE:**  Microsoft lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 447 and therefore denies them.

448.    Defendants' concerted pattern of racketeering activity was not merely coincidental to the enterprise but was integral to its operation. Defendants did not simply commit predicate acts of wire fraud while associated with OpenAI, Inc., their ongoing wire fraud constituted the primary means through which they directed and controlled the enterprise's most critical functions: securing the necessary capital and top AI scientific talent to develop valuable AI technology so that Defendants could systematically loot and exploit that technology for their own enrichment.

1    **RESPONSE:** Denied as to Microsoft. Microsoft otherwise lacks knowledge or information

2    sufficient to form a belief as to the truth of the allegations in Paragraph 448 and therefore denies

3    them.

4        449.    The foregoing unlawful actions of Altman, Brockman, the For-Profit Entities, and

5    Microsoft directly, illegally, and proximately caused and continue to cause injuries to Musk and

6    xAI's respective business and property in an amount to be proven at the time of trial.

7        **RESPONSE:** Denied.

8        450.    In addition to the loss of Musk's considerable contributions to OpenAI, Inc.,

9    Plaintiffs were further harmed by Defendants' investment of the proceeds from their unlawful

10   conduct in OpenAI, Inc. and/or Defendants' acquisition of an interest in, or control over, OpenAI,

11   Inc. in furtherance of their scheme.

12       **RESPONSE:** Denied.

13       451.    OpenAI, now a competitor to xAI, used Musk's tax-free startup capital to gain an

14   unfair competitive advantage in the market for generative AI, resulting in decreased market share

15   and profits for xAI, diversion of customers/investors away from them, and/or the competitive

16   injuries detailed in Counts VIII-XVII.

17       **RESPONSE:** Microsoft lacks knowledge or information sufficient to form a belief as to

18   the truth of the allegations in Paragraph 451 and therefore denies them.

19       452.    Defendants further leveraged their control over OpenAI, Inc. and market power,

20   acquired through the pattern of unlawful activity described above, to undercut and block Musk and

21   xAI's entrance and/or growth in the generative AI market, including by controlling the limited

22   supply of available compute, investors, and limited pool of qualified AI talent.

23       **RESPONSE:** Denied as to Microsoft. Microsoft otherwise lacks knowledge or information

24   sufficient to form a belief as to the truth of the allegations in Paragraph 452 and therefore denies

25   them.

26       453.    Pursuant to the civil remedy provisions of 18 U.S.C. § 1964(c), Musk and xAI are

27   entitled to recover three times the damages they sustained, reasonable attorneys' fees, and costs of

28   litigation, as well as any other relief as authorized by statute.

**RESPONSE:** Paragraph 453 states conclusions of law and argument by Plaintiffs for which no response is required. To the extent a response is nonetheless deemed necessary, Microsoft denies the allegations of Paragraph 453.

## COUNT XXI: CONSPIRACY TO VIOLATE FEDERAL CIVIL RICO, 18 U.S.C. § 1962(d)

**(Musk and xAI Against Altman, Brockman, Microsoft, and the For-Profit Entities)**

454.    Plaintiffs Musk and xAI re-allege and incorporate by reference paragraphs 1 through 453 inclusive, as though fully set forth herein.

**RESPONSE:** Microsoft repeats and incorporates by reference its responses to the foregoing allegations in the Second Amended Complaint.

455.    Altman, Brockman, the For-Profit Entities, and Microsoft have undertaken the wrongful acts described in Count XX above as part of a common scheme. Defendants willfully, knowingly, and unlawfully conspired, confederated, and agreed together and with others to violate 18 U.S.C. § 1962(c), in violation of 18 U.S.C. § 1962(d). Defendants intentionally concealed their illicit conduct, which prevented Plaintiffs from discovering their scheme, notwithstanding Plaintiffs' exercise of due diligence.

**RESPONSE:** Denied as to Microsoft. Microsoft otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 455 and therefore denies them.

456.    Altman, Brockman, the For-Profit Entities, and Microsoft were aware of the unlawful activity alleged hereinabove. Altman, as OpenAI, Inc.'s co-founder, CEO, and Board member, and Brockman, as its President and prior CTO and Board member, in concert with Microsoft, knew that Altman, Brockman and through them, OpenAI. Inc., had made false and/or misleading representations to Musk and other contributors that OpenAI, Inc. would be a non-profit devoted to the open-source development of AI/AGI for the public's benefit, and that Musk's financial or other contributions were supposed to be used solely to further such charitable purpose. On information and belief, Altman and Brockman have at all relevant times been officers, agents,

employees, and/or owners whose knowledge and intent is imputed to the For-Profit Entities. The For-Profit Entities and Microsoft knew of and agreed to facilitate the operation of OpenAI, Inc. and/or Defendants' scheme.

**RESPONSE:** Denied as to Microsoft. Microsoft otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 456 and therefore denies them.

457. Altman, Brockman, and Microsoft directed and caused the For-Profit Entities to engage in the racketeering activity alleged hereinabove.

**RESPONSE:** Denied as to Microsoft. Microsoft otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 457 and therefore denies them.

458. Altman and Brockman understood that they were committing numerous RICO predicate acts and participating in a racketeering scheme, evidenced among other things, by their overt acts and involvement in repeatedly promulgating false and/or misleading representations via wire transmissions, including email correspondence, online transmittal, and social media posts, and receiving financial and other contributions, including wired funds, in response to those fraudulent communications. In addition, on information and belief, the For-Profit Entities and Microsoft understood they were facilitating and/or aiding and abetting Altman and Brockman's self-dealing and furthering the scheme by helping to conceal their fraudulent conduct and aiding in the exploitation of the non-profit's assets for private inurement.

**RESPONSE:** Denied as to Microsoft. Microsoft otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 458 and therefore denies them.

459. The participation and agreement of Altman, Brockman, each of the For-Profit Entities, and Microsoft was necessary to the scheme. Defendants knew their predicate acts were part of a pattern of racketeering activity and agreed to the commission of those acts to further the scheme, and agreed and conspired to conduct and participate in the affairs of OpenAI, Inc. through a consistent and continual pattern of racketeering activity. Further evidence of the agreement among

- 98 -

Altman, Brockman, the For-Profit Entities, and Microsoft is peculiarly within the knowledge and control of Defendants.

**RESPONSE:** Denied as to Microsoft. Microsoft otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 459 and therefore denies them.

460.   As a direct and proximate result of Defendants' conspiracy and violations of 18 U.S.C. § 1962(d), Musk and xAI have been injured in their business and property, as alleged herein, and are entitled to treble damages, attorneys' fees, and costs of suit.

**RESPONSE:** Denied.

To the extent not otherwise answered or denied, Microsoft denies any remaining allegation pertaining to the pending claims against Microsoft, including in the SAC's introduction/preamble and the footnotes to the introduction/preamble.

## PRAYER FOR RELIEF

Microsoft denies that Plaintiffs are entitled to any relief whatsoever, including but not limited to the relief sought in the section of the Second Amended Complaint titled "Prayer for Relief." To the extent that this section contains any allegations requiring a response, Microsoft denies them.

## DEFENSES

Without assuming any burden of proof that it would otherwise not bear, Microsoft also asserts the following additional defenses:

### First Defense: Failure to State a Claim

Plaintiffs' claims are barred, in whole or in part, because the Second Amended Complaint, and each purported cause of action therein, fails to state a claim upon which relief may be granted and/or to state facts sufficient to constitute a claim for relief against Microsoft.

### Second Defense: Lack of Standing

Plaintiff Musk lacks standing under Article III and California law to assert Count XIX (Aiding and Abetting Breach of Fiduciary Duty to Musk).

**Third Defense: Equitable Estoppel**

Plaintiffs' claims are barred, in whole or in part, by the doctrine of equitable estoppel.

**Fourth Defense: Waiver**

Plaintiffs' claims are barred, in whole or in part, by the doctrine of waiver.

**Fifth Defense: Acquiescence**

Plaintiffs' claims are barred, in whole or in part, by the doctrine of acquiescence because Plaintiffs, with knowledge of relevant facts, affirmatively consented to or failed to object to the conduct complained of in the Second Amended Complaint.

**Sixth Defense: Unclean Hands**

Plaintiffs' claims are barred, in whole or in part, by Plaintiff Musk's unclean hands.

**Seventh Defense: Laches**

Plaintiffs' claims are barred, in whole or in part, by the doctrine of laches.

**Eighth Defense: Statute(s) of Limitation**

Plaintiffs' claims are barred, in whole or in part, by the applicable statute(s) of limitation.

**Ninth Defense: No Damages**

Plaintiffs' claims are barred, in whole or in part, because Plaintiffs have not suffered any injury, loss, or damages from the conduct challenged in the Second Amended Complaint.

**Tenth Defense: No Causation**

Plaintiffs' claims are barred, in whole or in part, because to the extent Plaintiffs suffered any injury or incurred any damages as alleged in the Second Amended Complaint, which Microsoft denies, Microsoft's alleged conduct was not the actual or proximate cause of any injury or damage to Plaintiffs.

**Eleventh Defense: Speculativeness**

Plaintiffs' claims are barred, in whole or in part, because any alleged injury, which Microsoft denies, is wholly speculative.

**Twelfth Defense: Failure to Mitigate**

If and to the extent Plaintiffs have been damaged, which Microsoft denies, Plaintiffs, by the exercise of reasonable diligence, could have mitigated their damages but did not, and Plaintiffs are

therefore barred from recovery. Alternatively, any damages sustained by Plaintiffs, which Microsoft denies, must be reduced by the amount that such damages would have been reduced had Plaintiffs exercised reasonable diligence in mitigating their damages.

**Thirteenth Defense: Unjust Enrichment**

Plaintiffs' claims are barred, in whole or in part, because any recovery would result in unjust enrichment to Plaintiffs.

**Fourteenth Defense: Acts of Third Parties**

Plaintiffs' claims are barred, in whole or in part, because any harm allegedly incurred by Plaintiffs, which Microsoft denies, was caused by intervening or superseding events, factors, occurrences, conditions or the acts or omissions of third parties and not by the alleged wrongful conduct of Microsoft.

**Fifteenth Defense: Cal. Corp. Code § 5141(b)**

To the extent that any challenged contract or conveyance was authorized or ratified by the OpenAI, Inc. Board or done within the scope of its authority, actual or apparent, conferred by the Board or within the agency power of the officer executing it, Plaintiffs' claims are barred, in whole or in part, by Cal. Corp. Code §5141(b).

**Sixteenth Defense: Reliance**

Plaintiffs' claims are barred, in whole or in part, because Microsoft was entitled to rely on statements or representations of third parties.

**Seventeenth Defense: Business Judgment Rule**

Plaintiffs' claims are barred, in whole or in part, by the Business Judgment Rule because OpenAI's Board exercised good faith and due diligence to advance OpenAI's charitable purposes.

**Eighteenth Defense: Privilege to Protect Own Economic Interest**

Microsoft's alleged actions are protected by the Privilege to Protect One's Own Economic Interest.

**Nineteenth Defense: No Injunctive Relief**

Musk is not entitled to injunctive relief for Count XIX.

**Twentieth Defense: Adequate Remedy at Law**

Plaintiffs' claims for injunctive relief are barred, in whole or in part, because Plaintiffs have an adequate remedy at law.

**Twenty-First Defense: Ripeness**

Plaintiffs' claims are barred, in whole or in part, by the doctrine of ripeness.

**Twenty-Second Defense: Public Interest**

The injunctive relief Plaintiffs seek is inconsistent with the public interest and the balance of the equities.

**Reservation and Adoption of Additional Defenses**

Microsoft adopts by reference any applicable defenses pled by any other Defendant not expressly set forth herein. Microsoft will answer any additional claims that survive a motion to dismiss at a time ordered by the Court, and expressly reserve the right to assert additional defenses, including as to any additional claims, at that time. In asserting these defenses, Microsoft does not assume the burden of proof with respect to any issue as to which applicable law places the burden of proof on Plaintiffs. Additional facts may be revealed by future discovery that support additional defenses presently available to, but unknown to, Microsoft. Microsoft therefore reserves the right to assert additional defenses, cross-claims, and third-party claims, not asserted here but of which Microsoft may become aware during discovery or other investigation as may be appropriate.

Dated: June 5, 2025

Respectfully submitted,

DECHERT LLP


/s/ Russell P. Cohen
Russell P. Cohen (SBN 213105)
Russ.cohen@dechert.com
Howard M. Ullman (SBN 206760)
Howard.ullman@dechert.com
45 Fremont Street, 26th Floor
San Francisco, CA 94105
Telephone: (415) 262-4500
Facsimile: (415) 262-45555

Nisha Patel (SBN 281628)
Nisha.patelgupta@dechert.com
DECHERT LLP
633 West 5th Street, Suite 4900
Los Angeles, CA 90071
Telephone: (213) 808-5700
Facsimile: (213) 808-5760

Andrew J. Levander (admitted *pro hac vice*)
Andrew.levander@dechert.com
DECHERT LLP
Three Bryant Park
1095 Avenue of the Americas
New York, NY 10036
Telephone: (212) 698-3500
Facsimile: (212) 698-3599

John (Jay) Jurata, Jr. (admitted *pro hac vice*)
Jay.jurata@dechert.com
DECHERT LLP1900 K Street, N.W.
Washington, DC 20006
Telephone: (202) 261-3300
Facsimile: (202) 261-3333

*Attorneys for Microsoft Corporation*

1

## JURY DEMAND

2          Microsoft hereby demands a trial by jury on all claims, defenses, and issues in this action

3   so triable under Rule 38(b) of the Federal Rules of Civil Procedure.

4

5

6   Dated: June 5, 2025                      Respectfully submitted,

7                                            DECHERT LLP

8

9                                             /s/ Russell P. Cohen

10                                           Russell P. Cohen (SBN 213105)
                                             Russ.cohen@dechert.com
11                                           Howard M. Ullman (SBN 206760)
                                             Howard.ullman@dechert.com
12                                           45 Fremont Street, 26th Floor
                                             San Francisco, CA 94105
13                                           Telephone: (415) 262-4500
                                             Facsimile: (415) 262-45555

14                                           Nisha Patel (SBN 281628)
                                             Nisha.patelgupta@dechert.com
15                                           DECHERT LLP
                                             633 West 5th Street, Suite 4900
16                                           Los Angeles, CA 90071
                                             Telephone: (213) 808-5700
17                                           Facsimile: (213) 808-5760

18                                           Andrew J. Levander (admitted *pro hac
                                             vice*)
19                                           Andrew.levander@dechert.com
                                             DECHERT LLP
20                                           Three Bryant Park
                                             1095 Avenue of the Americas
21                                           New York, NY 10036
                                             Telephone: (212) 698-3500
22                                           Facsimile: (212) 698-3599

23                                           John (Jay) Jurata, Jr. (admitted *pro hac
                                             vice*)
24                                           Jay.jurata@dechert.com
                                             DECHERT LLP1900 K Street, N.W.
25                                           Washington, DC 20006
                                             Telephone: (202) 261-3300
26                                           Facsimile: (202) 261-3333

27                                           *Attorneys for Microsoft Corporation*

28