JORDAN ETH (CA SBN 121617)
JEth@mofo.com
WILLIAM FRENTZEN (CA SBN 343918)
WFrentzen@mofo.com
DAVID J. WIENER (CA SBN 291659)
DWiener@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105
Telephone:    (415) 268-7000
Facsimile:    (415) 268-7522

WILLIAM SAVITT (admitted *pro hac vice*)
WDSavitt@wlrk.com
BRADLEY R. WILSON (admitted *pro hac vice*)
BRWilson@wlrk.com
SARAH K. EDDY (admitted *pro hac vice*)
SKEddy@wlrk.com
NATHANIEL CULLERTON (admitted *pro hac vice*)
NDCullerton@wlrk.com
WACHTELL, LIPTON, ROSEN & KATZ
51 West 52nd Street
New York, NY 10019
Telephone:    (212) 403-1000
Facsimile:    (212) 403-2000

*Attorneys for Defendants Samuel Altman, Gregory Brockman,*
*OpenAI, Inc., OpenAI L.P., OpenAI, L.L.C., OpenAI GP, L.L.C.,*
*OpenAI OpCo, LLC, OpenAI Global, LLC, OAI Corporation, LLC,*
*OpenAI Holdings, LLC, OpenAI Startup Fund Management, LLC,*
*OpenAI Startup Fund GP I, L.L.C., OpenAI Startup Fund I, L.P.,*
*OpenAI Startup Fund SPV GP I, L.L.C., OpenAI Startup Fund SPV GP II, L.L.C.,*
*OpenAI Startup Fund SPV GP III, L.L.C., OpenAI Startup Fund SPV GP IV, L.L.C.,*
*OpenAI Startup Fund SPV I, L.P., OpenAI Startup Fund SPV II, L.P.,*
*OpenAI Startup Fund SPV III, L.P., OpenAI Startup Fund SPV IV, L.P.,*
*Aestas Management Company, LLC, and Aestas LLC*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| ELON MUSK, et al., | Case No. 4:24-cv-04722-YGR |
| Plaintiffs, | **OPENAI DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS SECOND AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES** |
| v. | |
| SAMUEL ALTMAN, et al., | |
| Defendants. | Date:  July 15, 2025<br>Time:  2:00 p.m.<br>Courtroom:  1 – 4th Floor<br>Judge:  Hon. Yvonne Gonzalez Rogers |

**NOTICE OF MOTION TO DISMISS**

TO ALL PARTIES AND THEIR COUNSEL: Please take notice that on July 15, 2025 at 2:00 p.m., or at such other time as the matter may be heard, in the courtroom of the Honorable Yvonne Gonzalez Rogers, in Courtroom 1 of the U.S. District Court for the Northern District of California, 1301 Clay Street, Oakland, CA 94612, Defendants Samuel Altman, Gregory Brockman, OpenAI, Inc., OpenAI L.P., OpenAI, L.L.C., OpenAI GP, L.L.C., OpenAI OpCo, LLC, OpenAI Global, LLC, OAI Corporation, LLC, OpenAI Holdings, LLC, OpenAI Startup Fund Management, LLC, OpenAI Startup Fund GP I, L.L.C., OpenAI Startup Fund I, L.P., OpenAI Startup Fund SPV GP I, L.L.C., OpenAI Startup Fund SPV GP II, L.L.C., OpenAI Startup Fund SPV GP III, L.L.C., OpenAI Startup Fund SPV GP IV, L.L.C., OpenAI Startup Fund SPV I, L.P., OpenAI Startup Fund SPV II, L.P., OpenAI Startup Fund SPV III, L.P., OpenAI Startup Fund SPV IV, L.P., Aestas Management Company, LLC, and Aestas LLC (the "OpenAI Defendants") will, and hereby do, move the Court pursuant to Federal Rules of Civil Procedure 8, 9(b), and 12(b)(6) for an order dismissing Counts III, XX, and XXI of the second amended complaint of Plaintiffs Elon Musk and X.AI Corp., dated May 22, 2025.

The OpenAI Defendants' motion is based on this Notice of Motion and Motion to Dismiss, the accompanying Memorandum of Points and Authorities, and such other argument and materials as may be presented before the Court takes this matter under submission.

**STATEMENT OF ISSUES TO BE DECIDED**

1.      Whether Musk's claim for breach of the implied covenant of good faith and fair dealing (Count III) should be dismissed because it is based on the same conduct as the breach of implied-in-fact contract claim (Count II) and is thus impermissibly duplicative.

2.      Whether Plaintiffs' RICO claims (Counts XX and XXI) should be dismissed for failure to adequately plead each of the following necessary elements: (a) a pattern of racketeering activity; (b) that any alleged racketeering activity was the conduct of the alleged enterprise's affairs; and (c) an enterprise distinct from the persons alleged to have conducted the enterprise's affairs.

1

# TABLE OF CONTENTS

2   INTRODUCTION ................................................................................................................... 1

3   BACKGROUND ..................................................................................................................... 1

4   ARGUMENT ........................................................................................................................... 2

5   I.      THE COURT SHOULD DISMISS WITH PREJUDICE MUSK'S IMPLIED
        COVENANT CLAIM (COUNT III) ................................................................................. 3
6

7   II.     THE COURT SHOULD DISMISS WITH PREJUDICE PLAINTIFFS' RICO
        CLAIMS (COUNTS XX & XXI) ...................................................................................... 7

8           A.      Plaintiffs fail to plead a pattern of racketeering activity ......................................... 8

9           B.      Plaintiffs fail to plead conduct of OpenAI, Inc.'s affairs ...................................... 12

10          C.      Plaintiffs fail to plead a RICO enterprise distinct from the persons alleged
                to have conducted the enterprise's affairs ............................................................. 13
11

12  CONCLUSION ....................................................................................................................... 14

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aniel* v. *PHH Mortg. Corp.*,
   2022 WL 2164702 (N.D. Cal. June 1, 2022) ..................................................... 3

*Anza* v. *Ideal Steel Supply Corp.*,
   547 U.S. 451 (2006) .......................................................................... 10 n.10

*Ashcroft* v. *Iqbal*,
   556 U.S. 662 (2009) ....................................................................................... 2

*Attia* v. *Google LLC*,
   983 F.3d 420 (9th Cir. 2020)......................................................................... 9

*Careau & Co.* v. *Sec. Pac. Bus. Credit, Inc.*,
   222 Cal. App. 3d 1371 (1990)................................................................... 4, 6

*Chagby* v. *Target Corp.*,
   358 F. App'x 805 (9th Cir. 2009) ........................................................ 14 n.11

*Cnty. of Marin* v. *Deloitte Consulting LLP*,
   836 F. Supp. 2d 1030 (N.D. Cal. 2011) ..................................................... 12

*Desoto* v. *Condon*,
   371 F. App'x 822 (9th Cir. 2010) ............................................................... 11

*Durning* v. *Citibank, Int'l*,
   990 F.2d 1133 (9th Cir. 1993)..................................................................... 10

*Ebeid ex rel. U.S.* v. *Lungwitz*,
   616 F.3d 993 (9th Cir. 2010).......................................................................... 2

*Ferrari* v. *Mercedes-Benz USA, LLC*,
   2016 WL 7188030 (N.D. Cal. Dec. 12, 2016) ................................. 13, 14 & n.11

*Garvey* v. *Wells Fargo & Co.*,
   2011 WL 13221027 (C.D. Cal. Nov. 23, 2011)............................................. 6

*Guz* v. *Bechtel Nat'l, Inc.*,
   24 Cal. 4th 317 (2000) ............................................................................ 3, 5

*Howard* v. *Am. Online Inc.*,
   208 F.3d 741 (9th Cir. 2000)......................................................................... 9

*Kan-Di-Ki, LLC* v. *Sorenson*,
   723 F. App'x 432 (9th Cir. 2018) ................................................................ 9

iv

*Lamke* v. *Sunstate Equip. Co., LLC*,
   387 F. Supp. 2d 1044 (N.D. Cal. 2004) ....................................................................... 3

*Malhotra* v. *Copa de Ora Realty, LLC*,
   673 F. App'x 666 (9th Cir. 2016) ............................................................................... 9

*Medallion Television Enters., Inc.* v. *SelecTV of Cal., Inc.*,
   833 F.2d 1360 (9th Cir. 1987).................................................................................. 10

*Pac. Recovery Sols.* v. *United Behav. Health*,
   481 F. Supp. 3d 1011 (N.D. Cal. 2020) .......................................................... 2, 3, 12

*Reves* v. *Ernst & Young*,
   507 U.S. 170 (1993).................................................................................................. 13

*Sanford* v. *MemberWorks, Inc.*,
   625 F.3d 550 (9th Cir. 2010)...................................................................................... 8

*Semegen* v. *Weidner*,
   780 F.2d 727 (9th Cir. 1985)...................................................................................... 2

*Sensible Foods, LLC* v. *World Gourmet, Inc.*,
   2012 WL 566304 (N.D. Cal. Feb. 21, 2012) ............................................................ 3

*Seva* v. *Shri Shirdi Sai Baba Sansthin L.A.*,
   2013 WL 1431673 (C.D. Cal. Apr. 9, 2013) .......................................................... 11

*Synopsys, Inc.* v. *Real Intent, Inc.*,
   2024 WL 5364480 (N.D. Cal. Aug. 26, 2024)........................................................... 6

*Turner* v. *Cook*,
   362 F.3d 1219 (9th Cir. 2004).................................................................................. 10

*U.S. Bank, N.A.* v. *Miller*,
   2013 WL 12183652 (C.D. Cal. May 8, 2013) ........................................................... 6

*Verde Media Corp.* v. *Levi*,
   2015 WL 374934 (N.D. Cal. Jan. 28, 2015) ............................................................. 7

*Yetter* v. *Ford Motor Co.*,
   428 F. Supp. 3d 210 (N.D. Cal. 2019) ...................................................................... 2

**Statutes and Rules**

18 U.S.C. § 1343 ............................................................................................................. 7

18 U.S.C. § 1961 ............................................................................................................. 9

18 U.S.C. § 1962 ..................................................................................................... *passim*

18 U.S.C. § 1964 ................................................................................................... 10 n.10

v

Fed. R. Civ. P. 9(b) ................................................................................ 2, 8 n.6, 11, 13

Fed. R. Civ. P. 12(b)(6) ............................................................................................ 2

1

**INTRODUCTION**

2       Plaintiffs have now taken three shots at pleading breach of the implied covenant and RICO

3   violations. Still they cannot allege a cognizable claim. The subject counts—Counts III, XX, and

4   XXI of Plaintiffs' Second Amended Complaint (the "SAC"), Dkt. 170—should be dismissed with

5   prejudice.

6       The Court dismissed the implied covenant claim from Plaintiffs' First Amended Complaint

7   (the "FAC") because it was "based on the same conduct as the breach of implied contract" claim.

8   Dkt. 163 at 3. That defect remains. The new allegations added to this count just repackage with

9   alternative framing—and in one instance, without even that—the same conduct pleaded to support

10  the implied-in-fact contract claim. That maneuver is barred by governing law.

11      The Court dismissed the FAC's claims for violation of 18 U.S.C. § 1962(c) and (d) because

12  they failed to "identify how the named defendants operated the entity *through a pattern* of

13  racketeering activity." Dkt. 163 at 10. The only alleged actions of the "enterprise," OpenAI, Inc.,

14  were not RICO predicates, and the other conduct alleged was not "tethered to the enterprise's

15  conduct." *Id.* This defect too remains. Plaintiffs still do not plead a pattern of racketeering activity,

16  let alone one carried out through the conduct of OpenAI, Inc.'s affairs. In fact, their allegations

17  *negate* a key requirement of the RICO theory they have invoked: that the "enterprise" be distinct

18  from the "persons" alleged to have conducted the enterprise's affairs.

19

**BACKGROUND**

20      Plaintiffs' SAC is the fourth pleading asserting a right by Elon Musk to direct and control

21  the affairs of nonprofit OpenAI, Inc. and its affiliated for-profit enterprise, which competes with

22  Musk's own artificial intelligence company, Plaintiff X.AI Corp. ("xAI"). A California state court

23  complaint filed by Musk in February 2024 against a subset of the current OpenAI Defendants

24  asserted claims for breach of contract, promissory estoppel, fiduciary breach, violation of

25  California's Unfair Competition Law, and accounting. *See* Dkt. 103-2.[1] Defendants filed a

26

27  _____

[1] In the state court action, Musk's contract theory was an express one; he disclaimed reliance on

28  any implied contract. *See* Dkt. 103-4 at 2. He also did not assert any breach of the implied covenant.
    *See* Dkt. 103-2.

demurrer, and, hours before argument on that application, Musk withdrew his complaint without explanation.

The first complaint in this federal case, filed on August 5, 2024, asserted 15 causes of action, including breach of the implied covenant and RICO violations. Dkt. 1. The OpenAI Defendants moved to dismiss, arguing, among other things, that the implied covenant claim was duplicative of Plaintiffs' contract claims and that the RICO claims failed to plead the conduct of an enterprise. Dkt. 25 at 11-12, 18-19. On November 14, 2024, rather than defend their pleading, Plaintiffs filed the FAC. Dkt. 32. It too asserted implied covenant and RICO claims, and the OpenAI Defendants again moved to dismiss, arguing once more that the implied covenant claim was duplicative and that the RICO claims failed to allege operation of an enterprise through a pattern of racketeering activity. Dkt. 103 at 9, 12-13.

By order dated May 1, 2025, the Court granted in part and denied in part the OpenAI Defendants' motion to dismiss the FAC. Dkt. 163. As relevant here, the Court dismissed the implied covenant claim and Plaintiffs' claims under 18 U.S.C. § 1962(c) and (d), but granted leave to amend those claims. *Id.* at 3, 9-10.

On May 22, 2025, Plaintiffs filed their SAC. Dkt. 170.

## ARGUMENT

"To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient factual matter that, when accepted as true, states a claim that is plausible on its face." *Pac. Recovery Sols.* v. *United Behav. Health*, 481 F. Supp. 3d 1011, 1021 (N.D. Cal. 2020) (citing *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009)). Any claim grounded in allegations of fraud or false representations must also satisfy Rule 9(b): it must plead with particularity "what is false or misleading about a statement, and why it is false," and be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Yetter* v. *Ford Motor Co.*, 428 F. Supp. 3d 210, 219-20 (N.D. Cal. 2019) (first quoting *Ebeid ex rel. U.S.* v. *Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010), then quoting *Semegen* v. *Weidner*, 780 F.2d 727, 731 (9th Cir. 1985)). "Rule 9(b)'s heightened pleading standard" for fraud—which Plaintiffs have

conceded applies to their RICO claims, *see* Dkt. 128 at 15—is particularly "exacting in the context of RICO claims," *Aniel* v. *PHH Mortg. Corp.*, 2022 WL 2164702, at *6 (N.D. Cal. June 1, 2022); *see also Pac. Recovery Sols.*, 481 F. Supp. 3d at 1028.

Evaluated against these well-established standards, Plaintiffs' implied covenant and RICO claims should be dismissed—for good.

## I. THE COURT SHOULD DISMISS WITH PREJUDICE MUSK'S IMPLIED COVENANT CLAIM (COUNT III)

Musk's implied covenant claim should be dismissed for the same reason the Court dismissed it the first time: It is duplicative of Musk's implied-in-fact contract claim.

While the implied covenant of good faith and fair dealing is "implied by law in every contract," *Guz* v. *Bechtel Nat'l, Inc.*, 24 Cal. 4th 317, 349 (2000), "in most cases, a claim for breach of the implied covenant can add nothing to a claim for breach of contract," *Lamke* v. *Sunstate Equip. Co., LLC*, 387 F. Supp. 2d 1044, 1047 (N.D. Cal. 2004). That is particularly true where, as here, the contract claim is predicated on an alleged implied contract rather than an express one. In such a case, the purpose and terms of the contract are divined from the parties' conduct, and the covenant "cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of their agreement" as evidenced by their conduct. *Guz*, 24 Cal. 4th at 336-37, 349-50. This leaves little, if any, room for the implied covenant: "[I]nsofar as [a defendant's] acts are directly actionable as a breach of an implied-in-fact contract term, a claim that merely realleges that breach as a violation of the covenant is superfluous." *Id.* at 352; *see also, e.g.*, *Sensible Foods, LLC* v. *World Gourmet, Inc.*, 2012 WL 566304, at *5 (N.D. Cal. Feb. 21, 2012) (dismissing implied covenant claim based on same conduct alleged to breach an implied contract). And insofar as the acts are *not* actionable as a breach of the implied-in-fact contract, "the claim is invalid" because it seeks to impose obligations "*beyond* those to which the parties actually agreed." *Guz*, 24 Cal. 4th at 352.

Whatever space the law might leave for asserting an implied covenant claim tethered to an already implied-in-fact contract, Plaintiffs' FAC did not occupy it. The implied covenant claim asserted in that pleading relied on the "same conduct" grounding the implied-in-fact contract claim.

Dkt. 163 at 3. Musk alleged that Altman and OpenAI, Inc. breached the implied covenant by "failing to observe a reasonable construction of the terms, understandings, and obligations of the parties" set forth in paragraph 254(a)-(m) of that complaint, which listed the various supposed terms of the "contract." FAC ¶ 273.[2] The theory was that Altman and OpenAI, Inc. abused "[w]hatever discretion" the supposed contractual terms afforded them. *Id.* An example Musk offered in defending the claim was that Altman and OpenAI, Inc. "abused their discretion regarding the For-Profit Entities' supposed support of OpenAI's charitable mission" by allegedly using those entities to further private interests rather than the interests of OpenAI, Inc., the nonprofit parent. Dkt. 128 at 10-11.[3] Although this theory of liability differed from the theory asserted for the implied-in-fact contract claim, insofar as it characterized the breach as a failure to reasonably construe contractual terms, it "rel[ied] on the same alleged acts" and sought "the same damages [and] other relief" as formed the basis of the "companion contract cause of action." *Careau & Co.* v. *Sec. Pac. Bus. Credit, Inc.*, 222 Cal. App. 3d 1371, 1395 (1990); *see* Dkt. 163 at 3. The Court therefore dismissed the claim with leave to cure that defect. *See* Dkt. 163 at 3.

The SAC does not fix the problem. Count III now identifies three categories of conduct that purportedly violated the implied covenant: defendants allegedly (1) "reinterpreted key terms" of that contract; (2) "obscured OpenAI's for-profit activities"; and (3) undertook the very actions alleged to be breaches of the supposed implied-in-fact contract. ¶ 269. But these allegations at most dress up in different framing the same conduct supporting the breach-of-contract claim:

*Alleged "reinterpret[ation of] key terms."* Where the FAC's implied covenant claim alleged that Altman and OpenAI, Inc. adopted unreasonable constructions of key contractual terms, FAC ¶ 273, now the SAC's implied covenant claim alleges that these defendants "systematically

---

[2] Citations in the form "FAC ¶ __" are of the FAC. Citations in the form "¶ __" are of the SAC.

[3] The term "For-Profit Entities"—a moniker assigned by Plaintiffs—refers to OpenAI L.P., OpenAI, L.L.C., OpenAI GP, L.L.C., OpenAI OpCo, LLC, OpenAI Global, LLC, OAI Corporation, LLC, OpenAI Holdings, LLC, OpenAI Startup Fund Management, LLC, OpenAI Startup Fund GP I, L.L.C., OpenAI Startup Fund I, L.P., OpenAI Startup Fund SPV GP I, L.L.C., OpenAI Startup Fund SPV GP II, L.L.C., OpenAI Startup Fund SPV GP III, L.L.C., OpenAI Startup Fund SPV GP IV, L.L.C., OpenAI Startup Fund SPV I, L.P., OpenAI Startup Fund SPV II, L.P., OpenAI Startup Fund SPV III, L.P., OpenAI Startup Fund SPV IV, L.P., Aestas Management Company, LLC, and Aestas LLC. ¶¶ 114-21.

1    and unilaterally reinterpreted key terms of their agreement in ways that undermined it," ¶ 269(a).

2    The words are superficially different, but the substance is the same, and the new allegation is no

3    more sufficient to sustain an implied covenant claim than the old.

4        The point is well illustrated by the particular "reinterpret[ation]" Musk now alleges: that

5    Altman and OpenAI, Inc. "evad[ed] conflict-of-interest protections" by defining "independence"

6    narrowly. *Id.* That is not separate conduct, but rather just another way of saying that defendants

7    violated the term Musk would have implied into the contract under Count II: that OpenAI, Inc.

8    would "'always assiduously act to minimize conflicts of interest among [its] employees and

9    stakeholders that could compromise' the non-profit's mission." ¶ 247(i); *see also* ¶ 250(j).[4] And to

10   the extent Musk is trying to use the implied covenant to require more than "assiduous[] act[ion] to

11   minimize conflicts"—that is, more than his own imagined implied contract term would demand—

12   that is a misuse of the doctrine. *See Guz*, 24 Cal. 4th at 349-50 (implied covenant "cannot impose

13   substantive duties or limits on the contracting parties beyond those incorporated in the specific

14   terms of their agreement").

15       ***"Obscur[ing of] OpenAI's for-profit activities."*** Musk next alleges that Altman and

16   OpenAI, Inc. "obscured OpenAI's for-profit activities through complex corporate structures,

17   deliberately designed to prevent Musk and the public from discovering their actual operations, and

18   by purporting to maintain the charity's control of their for-profit business when, in fact, the opposite

19   is true." ¶ 269(b). This is sleight-of-hand, designed to make it appear—falsely—that conduct apart

20   from contractual breach grounds the claim.

21       In his implied-in-fact contract claim, Musk accuses Altman and OpenAI, Inc. of *engaging*

22   in for-profit activities, in violation of the terms of his imagined implied contract. *See* ¶ 250(a), (b),

23   (c), (l) (alleging that Altman and OpenAI, Inc. breached implied-in-fact contract by assigning the

24   nonprofit's intellectual property to the "For-Profit Entities," allowing the "reap[ing of] significant

25   financial benefits from commercial activities" and "inure[ment]" to private benefit, and supposedly

26

---

27   [4] The allegations, such as these, that appear in the already-dismissed express contract count
     (Count I) are incorporated wholesale into the implied contract count (Count II). *See* ¶¶ 254, 261;
28   *see also* Dkt. 170 at 1 n.1.

"working to convert the non-profit into a fully for-profit commercial entity"). This alleged engagement in for-profit activities likewise grounded Plaintiffs' original implied covenant claim. *See* Dkt. 128 at 10-11. Now, to try to distinguish the implied covenant claim from the contract claim, Musk highlights not the for-profit activities but their supposed "obscur[ing]." *See* ¶ 269(b). But the ploy does not work. A plaintiff cannot use the implied covenant to plead as a separate cause of action a failure to disclose contractual breaches. *See, e.g.*, *Synopsys, Inc.* v. *Real Intent, Inc.*, 2024 WL 5364480, at *26 (N.D. Cal. Aug. 26, 2024) (that "implied covenant claim 'include[d] [defendant's] active concealment of its breach of [alleged] contracts'" did not save it from being impermissibly duplicative because "core allegation" was that defendant violated the parties' agreements and claim sought "the same damages already claimed in [the] breach of contract claim"). Were it otherwise, every plaintiff could plead an implied covenant claim just by asserting the defendant did not disclose—*i.e.*, "obscured"—the breach. Applicable law is to the contrary.

**_Other actions alleged as breaches of implied-in-fact contract._** Finally, Musk pleads as purported breaches of the implied covenant all conduct alleged in support of Count II but "determined not to breach the terms of the parties' implied-in-fact contract." ¶ 269(c). That contravenes the above-discussed governing law and the Court's ruling on the FAC, which recognized that an implied covenant claim predicated on the same conduct that is alleged in support of a contract claim cannot be maintained even at the pleading stage. *See* Dkt. 163 at 3; *Careau*, 222 Cal. App. 3d at 1395 ("If the allegations do not go beyond the statement of a mere contract breach and, relying on the same alleged acts, simply seek the same damages or other relief already claimed in a companion contract clause of action, they may be disregarded as superfluous as no additional claim is actually stated."); *see also, e.g.*, *Garvey* v. *Wells Fargo & Co.*, 2011 WL 13221027, at *5 (C.D. Cal. Nov. 23, 2011) (implied covenant claim "superfluous" where the allegations in support "merely incorporate[d] previous paragraphs of the complaint by reference," including "the paragraphs concerning [plaintiffs'] breach of contract claim," and "add[ed]" that such conduct also constituted a breach of the implied covenant); *U.S. Bank, N.A.* v. *Miller*, 2013 WL 12183652, at *6 (C.D. Cal. May 8, 2013) (dismissing implied covenant claim as "duplicative" where the claim "incorporate[d] by reference the factual allegations underlying the breach of contract claim").

1    Musk's implied covenant claim should be dismissed, this time with prejudice.

2    **II.    THE COURT SHOULD DISMISS WITH PREJUDICE PLAINTIFFS' RICO**
     **CLAIMS (COUNTS XX & XXI)**
3

4        The defect the Court identified in Plaintiffs' RICO claims likewise remains unaddressed.

5    The SAC does not plead with particularity enterprise conduct amounting to a pattern of racketeering

6    activity. *See Verde Media Corp.* v. *Levi*, 2015 WL 374934, at *5 (N.D. Cal. Jan. 28, 2015) (to plead

7    a RICO claim predicated on fraud, plaintiff must allege with particularity "(1) conduct (2) of an

8    enterprise (3) through a pattern (4) of racketeering activity").

9        In the FAC, Plaintiffs Musk and xAI asserted four RICO theories, only two of which are

10   relevant here: (1) that the OpenAI Defendants "conducted . . . OpenAI, Inc.'s affairs through a

11   pattern of racketeering activity," FAC ¶¶ 507-14 (citing 18 U.S.C. § 1962(c)), and (2) that the

12   OpenAI Defendants engaged in a "conspiracy" to violate RICO based on the same conduct, FAC

13   ¶¶ 531-37 (citing 18 U.S.C. § 1962(d)).[5] The "pattern of racketeering activity" consisted of

14   supposed predicate violations of the wire fraud statute, 18 U.S.C. § 1343. *See* FAC ¶¶ 486-506. In

15   dismissing these claims, the Court concluded that the facts alleged could not support them: the

16   allegations merely "state[d] the named defendants participated in the affairs of the enterprise [*i.e.*,

17   OpenAI, Inc.] in order to: 'exploit' Musk's donations, 'develop valuable AI/AGI technology' they

18   could use to enrich themselves, and engage in self-dealing, and that they did so by creating the for-

19   profit entities." Dkt. 163 at 9-10. These "allegations fail[ed] to identify how the named defendants

20   operated the entity *through a pattern* of racketeering activity," as the "development of technology

21   and creation of various corporate subsidiaries are not predicate acts, and the other allegations are

22   not tethered to the enterprise's conduct." *Id.* at 10. Plaintiffs were granted leave to re-plead, with

23   the instruction that "any further amended complaint must demonstrate how the defendants named

24   under Section 1962(c) conducted OpenAI's affairs in a manner RICO was intended to reach." *Id.*

25       The SAC does not meet that challenge. As amended, the remaining substantive RICO claim,

26   Count XX, pleads no "pattern" of RICO predicates, much less a pattern through which the affairs

27   ─────────────────

28   [5] The Court dismissed without leave to amend Plaintiffs' other RICO theories, pleaded under
     18 U.S.C. § 1962(a) and (b). *See* Dkt. 163 at 9.

of the alleged enterprise, OpenAI, Inc., were conducted. Because the substantive count fails, so too does the conspiracy claim on which it is based. *See Sanford* v. *MemberWorks, Inc.*, 625 F.3d 550, 559 (9th Cir. 2010).

### A.     Plaintiffs fail to plead a pattern of racketeering activity

The SAC pleads not a pattern of racketeering activity, but at best a single RICO predicate with a single purported victim: Musk.[6]

As in the FAC, the SAC invokes only the wire fraud statute to try to make a "pattern" showing. The descriptions of the "Wire Fraud Predicate Offenses" and how those supposed predicate acts formed a "Pattern of Racketeering Activity" are unchanged from the FAC. *Compare* FAC ¶¶ 486-502, *with* SAC ¶¶ 421-37; *compare* FAC ¶¶ 503-06, *with* SAC ¶¶ 438-41.[7] As in the FAC, the allegations offered to support the wire fraud claim largely mimic those offered to support Musk's claim for common-law fraud. They say that "Altman and Brockman . . . induc[ed] [Musk and others] with repeated misrepresentations to make significant financial and other contributions to develop valuable AI/AGI for ostensibly charitable purposes, which Defendants exploited to enrich themselves." ¶ 421; *compare* ¶¶ 301-16. Again mimicking the common-law fraud claim, the only specific representations identified as having been made with "intent to defraud" are supposed "assurances to Musk" by Altman and Brockman "in September 2017 that they remained committed to the original non-profit structure and mission of OpenAI, Inc." ¶ 423; *compare* ¶¶ 301-07.[8] No defendant other than Altman or Brockman is alleged to have committed any predicate act

---

[6] In its May 1, 2025 order, the Court instructed that "Parties shall not renew arguments already made and resolved in this Order." Dkt. 163 at 11. In dismissing Plaintiffs' RICO claims, the Court did not address the OpenAI Defendants' argument that Plaintiffs had failed to plead even one wire fraud predicate act. *See id.* at 5-6, 9-10. Separately, the Court denied the OpenAI Defendants' motion to dismiss Musk's common-law fraud claim. To the extent the question whether Plaintiffs have pleaded even one wire fraud predicate with the particularity required by Rule 9(b) remains an open one, the OpenAI Defendants respectfully renew their previous arguments on that point. *See* Dkt. 103 at 11-12; Dkt. 150 at 14-15.

[7] As relevant to this motion, the SAC differs from the FAC only in how it asserts Defendants "conducted the affairs of OpenAI, Inc. through [this supposed] pattern of activity." ¶ 445; *see also* ¶¶ 446-48.

[8] These "assurances" allegedly are reflected in Exhibits 13 and 14 to the SAC. *See* ¶¶ 101-02; Dkt. 170-14, 170-15. Exhibit 13 is an email from Altman to Musk conveying that he "remain[s]

identified in the "Wire Fraud Predicate Offenses" section or the "Pattern of Racketeering" section of Count XX; the For-Profit Entities and Microsoft are accused of having aided and abetted Altman and Brockman and conspired with them. ¶¶ 431-37, 439.[9]

Even assuming these allegations suffice to plead a wire fraud offense with particularity, they do not plead a pattern—much less, as required, a pattern against each named defendant. A pattern requires "'at least two acts of racketeering activity' within ten years of each." *Howard* v. *Am. Online Inc.*, 208 F.3d 741, 746 (9th Cir. 2000) (quoting 18 U.S.C. § 1961(5)); *see Attia* v. *Google LLC*, 983 F.3d 420, 427 (9th Cir. 2020) (affirming dismissal of RICO claims as to those defendants for whom "no pattern [was] established" because they were not alleged to have been involved in the two alleged predicate acts). Alleged here instead against Altman and Brockman— and none of the other OpenAI Defendants—is one instance of supposed wire fraud centered on one alleged misrepresentation each, made in September 2017.

Plaintiffs try to turn one predicate into a pattern by pointing to multiple wire transfers and emails. ¶¶ 422, 424. But even if these could be counted as separate predicates, that would not cure the defect. While at least two predicate acts are required to establish a pattern, a plaintiff must also plead that the predicates are both "related" and "continuous"—that they "extend[] over a substantial period of time" or otherwise plausibly plead "past conduct that by its nature projects into the future with a threat of repetition." *Howard*, 208 F.3d at 750 (cleaned up); *see also, e.g.*, *Kan-Di-Ki, LLC* v. *Sorenson*, 723 F. App'x 432, 434 (9th Cir. 2018) (failure to establish continuity in alleged RICO violation "involv[ing] a limited number of participants and a limited number of alleged actual victims" doomed RICO claim). Plaintiffs do not do this. They allege a "single episode" against one victim (Musk). *See Malhotra* v. *Copa de Ora Realty, LLC*, 673 F. App'x 666, 668 (9th Cir. 2016) (no continuous pattern under RICO where "all [10] predicate acts occurr[ed] in a short time frame" of 16 months, the "scheme had the singular purpose of fraudulently inducing [one plaintiff] to

---

enthusiastic about the non-profit structure." Dkt. 170-14 at 1. Exhibit 14 is an email sent the next day from Shivon Zilis to Musk, on which Brockman is not copied, reporting that Brockman "would like to continue with the non-profit structure." Dkt. 170-15 at 1.

[9] In the FAC, Musk asserted claims of aiding and abetting fraud against the For-Profit Entities and Microsoft. FAC ¶¶ 320-29. The Court dismissed those claims with prejudice. Dkt. 163 at 6.

transfer funds[,] . . . and the scheme had no victims" apart from two plaintiffs); *Durning* v. *Citibank, Int'l*, 990 F.2d 1133, 1139 (9th Cir. 1993) (no racketeering pattern where defendants' "numerous predicate acts" of mail and wire fraud "arose from" the initial misrepresentation). Though Plaintiffs name other alleged donors to OpenAI, Inc.—Jessica Livingston, Peter Thiel, and Open Philanthropy, ¶ 421—the SAC contains no allegations suggesting these other donors were defrauded. Nor do Plaintiffs allege that xAI was defrauded—or ever made any donations to OpenAI, Inc.[10] Musk alone purportedly relied on Altman's and Brockman's "express promises, representations, and assurances." ¶ 424. And the only such promises, representations, or assurances even arguably pleaded with particularity in support of this claim are from a discrete time period in 2017. That is not enough to plead a pattern of racketeering activity. *See, e.g.*, *Turner* v. *Cook*, 362 F.3d 1219, 1231 (9th Cir. 2004) (no pattern where "almost all of the alleged fraudulent communications [*i.e.*, hundreds of letters sent to 94 companies] occurred during [a] two month period" and the "additional three categories of communication occurred only sporadically in the preceding year"); *Medallion Television Enters., Inc.* v. *SelecTV of Cal., Inc.*, 833 F.2d 1360, 1363-64 (9th Cir. 1987) (no pattern where various alleged predicate acts "concern[ed] a single fraudulent inducement to enter a contract").

    To the extent Plaintiffs' allegations of "false and/or misleading representations" from "December 11, 2015 to today" in "Defendants['] . . . online marketing (e.g., website),

---

[10] The lack of any donations by xAI highlights Plaintiffs' failure to plead that xAI was injured "by reason of" the alleged RICO violation, as is necessary to sustain any RICO claim asserted on its behalf. *See* 18 U.S.C. § 1964(c). As the Court has already made clear, xAI cannot rely on donations by Musk to show injury to itself because the SAC, like the FAC, "does not allege that Musk and xAI are the alter-egos of one another." Dkt. 163 at 9. Nor are supposed "competitive injuries" sufficient to establish xAI's RICO standing. *See* ¶ 451; *see also* FAC ¶ 527 (same allegation). As the Court previously observed, Plaintiffs "do not explain how the alleged misuse of Musk's donations beginning in 2018 could have 'proximately caused' some unidentified and unpleaded competitive harm to xAI, which was not launched until 2023." Dkt. 163 at 9 n.8 (quoting Dkt. 150 at 15-16). That observation tracks Supreme Court precedent squarely precluding reliance on competitive injury of the sort alleged here to plead a cognizable RICO claim. *Anza* v. *Ideal Steel Supply Corp.*, 547 U.S. 451, 460 (2006) ("A RICO plaintiff cannot circumvent the proximate-cause requirement simply by claiming that the defendant's aim was to increase market share at a competitor's expense."). For all these reasons, even if Musk could plead a plausible RICO claim, xAI could not.

advertisements, and promotions," ¶ 428, are offered to plead separate predicate acts of wire fraud and thus build out a pattern, they fail at the task. These allegations—carryovers from the FAC—are not pleaded with anything near the particularity Rule 9(b) requires. The paragraphs they cross-reference, ¶¶ 82-88 and 247, describe a variety of statements mostly *predating* December 2015 (¶¶ 82-87) or pleaded as contractual terms rather than supposed fraudulent statements (¶ 247), and Plaintiffs make no effort to identify which of the promotional materials among them are supposed to establish wire fraud. One statement—the December 11, 2015 announcement of OpenAI, Inc.'s launch, ¶ 88—has already been held incompetent to support Musk's claim of deception, since Musk helped author it. Dkt. 163 at 7 (discussing in context of false advertising claim, FAC ¶¶ 393(b), 413, which identifies the same statement quoted in ¶ 88). Many of the statements identified are not sourced to any defendant named in the RICO claim. None can supply the grounding for a well-pleaded wire fraud predicate. *See, e.g., Desoto* v. *Condon*, 371 F. App'x 822, 824 (9th Cir. 2010) ("[T]he district court properly concluded [plaintiff's] second amended complaint . . . fail[ed] to plead the RICO predicate acts with sufficient specificity to satisfy [Rule] 9(b)" where the "mail and wire fraud allegations [were] vague and conclusory, and fail[ed] to state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." (cleaned up)); *Seva* v. *Shri Shirdi Sai Baba Sansthin L.A.*, 2013 WL 1431673, at *4 (C.D. Cal. Apr. 9, 2013) (dismissing RICO claims predicated on wire fraud relating to charitable donations where "plaintiffs [had] not plead[ed] facts about where, when, who and how the alleged representations were made" and had "not alleged what representations each particular defendant made and how the representations were false").

Finally, and for similar reasons, Plaintiffs do not plead any additional predicate act with their new allegations that the "For-Profit Entities" cautioned investors *in the For-Profit Entities* that they should not expect a return on their investment and that the For-Profit Entities "exist[ed] to advance OpenAI, Inc.'s mission." *See* ¶ 447 (apparently referencing Exhibit 19 to the SAC, a draft press release exchanged between Altman and Musk in March 2019 concerning the announcement of OpenAI L.P.'s formation). Plaintiffs make no attempt to plead which specific entity or entities made these representations, when or in what context they were made, why they

were false, or how (or even that) they were made with intent to defraud. *See, e.g.*, *Pac. Recovery Sols.*, 481 F. Supp. 3d at 1028 (no RICO pattern pleaded where "allegations in the complaint d[id] not identify the time, place, and specific content of the fraudulent communications at issue, or identify the person or persons involved in such communications"); *Cnty. of Marin* v. *Deloitte Consulting LLP*, 836 F. Supp. 2d 1030, 1040 (N.D. Cal. 2011) (alleged wire fraud predicate failed where plaintiff did "not allege that any of the representations made in [] emails or reports" regarding the "purported benefits" of becoming a customer "were false"). In fact, the SAC elsewhere alleges that these very statements were *required* by the terms of the alleged contract among Musk, Altman, and OpenAI, Inc., thus undercutting any suggestion of fraudulent intent. ¶ 247(k) (alleging contractual term that "all investors" in "[a]ny for-profit entity used to support OpenAI, Inc." needed to be informed that "they should never expect a profit"). Nor do Plaintiffs explain how these communications, directed to investors in the for-profit enterprise rather than donors to OpenAI, Inc., could have "reassure[d] Musk and induced him to make further financial contributions" to *OpenAI, Inc.* ¶ 447. Musk does not allege that he ever contributed to or invested in any of the For-Profit Entities.

If Plaintiffs have pleaded wire fraud at all, it is at best one predicate act grounded in one representation each from only Altman and Brockman (and no other defendant) in September 2017. By no stretch does this qualify as a pattern of racketeering activity. The RICO claims fail.

### B.    Plaintiffs fail to plead conduct of OpenAI, Inc.'s affairs

An additional, independent basis on which Plaintiffs' RICO claims fail is that they do not plead that any supposed racketeering activity was the "conduct" of OpenAI, Inc.'s "affairs"—as opposed to the conduct of the defendants' own affairs. *See* 18 U.S.C. § 1962(c); *Pac. Recovery Sols.*, 481 F. Supp. 3d at 1027 (allegation "that a defendant conducted [his] own affairs is insufficient to raise the inference that the defendant conducted the affairs of [a RICO] enterprise").

As the Court held in dismissing the RICO claims from the FAC, what matters in assessing whether conduct of an enterprise has been pleaded is whether the *predicate acts* alleged are plausibly pleaded as conduct of the alleged enterprise, OpenAI, Inc. Dkt. 163 at 10. The Court held that nothing pleaded in the FAC sufficed to show predicate acts "tethered to the enterprise's

conduct." *Id.* Imagining for the moment that the FAC's "Wire Fraud Predicate Offenses" and "Pattern of Racketeering Activity" allegations pleaded a cognizable pattern of wire fraud activity, that supposed pattern was anchored not in the conduct of OpenAI, Inc. itself but in statements made by individual defendants Altman and Brockman to Musk, their co-member—allegedly to "exploit" Musk's donations. Dkt. 163 at 9-10; FAC ¶¶ 510-14. The allegations are that Altman and Brockman conducted "their *own* affairs," not those of the enterprise. *Ferrari* v. *Mercedes-Benz USA, LLC*, 2016 WL 7188030, at *2 (N.D. Cal. Dec. 12, 2016).

This defect remains. As noted, the "Wire Fraud Predicate Offenses" and "Pattern of Racketeering Activity" allegations in the SAC are essentially unchanged from the FAC. And while Plaintiffs have added new allegations under the "Violations of Section 1962(c)" heading asserting that unspecified actors among the For-Profit Entities participated in the affairs of OpenAI, Inc. and "actively participated" in alleged wire fraud by telling their own investors they should expect no return and were subject to OpenAI, Inc.'s mission, ¶ 447, the additions do not plug the hole in Plaintiffs' pleading. As discussed above, these new allegations do not plead wire fraud with the particularity required by Rule 9(b), and accordingly do not plead racketeering activity (*i.e.*, predicate acts) in the conduct of *anyone*'s affairs. Dkt. 163 at 10. Nor do they, in any event, plead conduct *of OpenAI, Inc*. As the Supreme Court explained in *Reves* v. *Ernst & Young*, 507 U.S. 170 (1993), to violate § 1962(c), a defendant "must participate in the *operation or management* of the enterprise itself." *Id.* at 185 (emphasis added). That means "one must have some part in *directing* [the enterprise's] affairs." *Id.* at 179 (emphasis added). Mere "involvement in the affairs of an enterprise" will not suffice. *Id.* at 178. Yet that is—at most—what is alleged here. The new allegations about the For-Profit Entities' activities do not allege that any of these entities participated in operating or managing OpenAI, Inc. at all, let alone through any pattern of racketeering activity.

### C. Plaintiffs fail to plead a RICO enterprise distinct from the persons alleged to have conducted the enterprise's affairs

The third and final independently dispositive defect in Plaintiffs' RICO claims is that the SAC's allegations negate a key element of any § 1962(c) claim: "the existence of two *distinct*

entities: (1) a person . . . and (2) an 'enterprise.'" *Ferrari*, 2016 WL 7188030, at *2 (emphasis added). According to the SAC, "OpenAI, Inc. and the For-Profit Entities operate together as a unitary enterprise, the primary purpose of which is now for-profit," and "OpenAI, Altman [and] Brockman [] have become alter egos of one another." ¶ 237. In other words, there is no "enterprise" distinct from the "persons" alleged to have conducted its affairs through a pattern of racketeering activity. That dooms these RICO claims.[11]

## CONCLUSION

The Court should grant the motion to dismiss without leave to amend.

---

[11] The alter ego allegation has already doomed Plaintiffs' accessory claims against the For-Profit Entities. *See* Dkt. 163 at 4, 6, 8 (dismissing Plaintiffs' accessory claims against the "For-Profit Entities" on the basis that they are alleged to be "mere alter-egos of OpenAI itself," and "duly acting agents and employees cannot be held liable for conspiring with their own principals"). A similar analysis applies under RICO. *See Ferrari*, 2016 WL 7188030, at *2; *Chagby* v. *Target Corp.*, 358 F. App'x 805, 808 (9th Cir. 2009).

14

1   Date: June 5, 2025                              MORRISON & FOERSTER LLP

2
                                                    /s/ Jordan Eth
3                                                   JORDAN ETH (CA SBN 121617)
                                                    JEth@mofo.com
4                                                   WILLIAM FRENTZEN (CA SBN 343918)
                                                    WFrentzen@mofo.com
5                                                   DAVID J. WIENER (CA SBN 291659)
                                                    DWiener@mofo.com
6                                                   MORRISON & FOERSTER LLP
                                                    425 Market Street
7                                                   San Francisco, CA 94105
                                                    Telephone:    (415) 268-7000
8                                                   Facsimile:    (415) 268-7522

9                                                   WILLIAM SAVITT (admitted *pro hac vice*)
                                                    WDSavitt@wlrk.com
10                                                  BRADLEY R. WILSON (admitted *pro hac
                                                    vice*)
11                                                  BRWilson@wlrk.com
                                                    SARAH K. EDDY (admitted *pro hac vice*)
12                                                  SKEddy@wlrk.com
                                                    NATHANIEL CULLERTON (admitted *pro
13                                                  hac vice*)
                                                    NDCullerton@wlrk.com
14                                                  WACHTELL, LIPTON, ROSEN & KATZ
                                                    51 West 52nd Street
15                                                  New York, NY 10019
                                                    Telephone:    (212) 403-1000
16                                                  Facsimile:    (212) 403-2000

17                                                  *Attorneys for Defendants Samuel Altman,
                                                    Gregory Brockman, OpenAI, Inc., OpenAI L.P.,
18                                                  OpenAI, L.L.C., OpenAI GP, L.L.C., OpenAI
                                                    OpCo, LLC, OpenAI Global, LLC, OAI
19                                                  Corporation, LLC, OpenAI Holdings, LLC,
                                                    OpenAI Startup Fund Management, LLC,
20                                                  OpenAI Startup Fund GP I, L.L.C., OpenAI
                                                    Startup Fund I, L.P., OpenAI Startup Fund SPV
21                                                  GP I, L.L.C., OpenAI Startup Fund SPV GP II,
                                                    L.L.C., OpenAI Startup Fund SPV GP III,
22                                                  L.L.C., OpenAI Startup Fund SPV GP IV,
                                                    L.L.C., OpenAI Startup Fund SPV I, L.P.,
23                                                  OpenAI Startup Fund SPV II, L.P., OpenAI
                                                    Startup Fund SPV III, L.P., OpenAI Startup
24                                                  Fund SPV IV, L.P., Aestas Management
                                                    Company, LLC, and Aestas LLC*

25

26

27

28