UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| ELON MUSK, et al., | Case No. 4:24-cv-04722-YGR |
| Plaintiffs, | **[PROPOSED] ORDER GRANTING OPENAI DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT** |
| v. | |
| SAMUEL ALTMAN, et al., | Date:   July 15, 2025 |
| Defendants. | Time:  2:00 p.m. |
| | Courtroom:  1 – 4th Floor |
| | Judge:  Hon. Yvonne Gonzalez Rogers |

1

## [PROPOSED] ORDER

2   Defendants Samuel Altman, Gregory Brockman, OpenAI, Inc., OpenAI L.P., OpenAI,

3   L.L.C., OpenAI GP, L.L.C., OpenAI OpCo, LLC, OpenAI Global, LLC, OAI Corporation, LLC,

4   OpenAI Holdings, LLC, OpenAI Startup Fund Management, LLC, OpenAI Startup Fund GP I,

5   L.L.C., OpenAI Startup Fund I, L.P., OpenAI Startup Fund SPV GP I, L.L.C., OpenAI Startup

6   Fund SPV GP II, L.L.C., OpenAI Startup Fund SPV GP III, L.L.C., OpenAI Startup Fund SPV GP

7   IV, L.L.C., OpenAI Startup Fund SPV I, L.P., OpenAI Startup Fund SPV II, L.P., OpenAI Startup

8   Fund SPV III, L.P., OpenAI Startup Fund SPV IV, L.P., Aestas Management Company, LLC, and

9   Aestas LLC (the "OpenAI Defendants"), have moved the Court, pursuant to Federal Rules of Civil

10  Procedure 8, 9(b), and 12(b)(6) to dismiss Counts III, XX, and XXI of the second amended

11  complaint filed by Plaintiffs Elon Musk and X.AI Corp. on May 22, 2025 (Dkt. 170).

12   Having considered all the papers filed by the parties in connection with the OpenAI

13  Defendants' motion, the parties' arguments at the hearing on this matter, and other matters of which

14  the Court may properly take judicial notice, the OpenAI Defendants' motion is GRANTED, and

15  Counts III, XX, and XXI of the second amended complaint are DISMISSED WITH PREJUDICE.

16

## BACKGROUND

17   This Order presumes familiarity with Plaintiffs' factual allegations and with the procedural

18  history of the case.

19   On May 1, 2025, the Court dismissed with leave to amend Plaintiffs' claims in the First

20  Amended Complaint (the "FAC") for breach of the implied covenant of good faith and fair dealing

21  and for violation of 18 U.S.C. § 1962(c) and (d). *See* Dkt. 163 at 3, 9-10. On May 22, 2025,

22  Plaintiffs filed a Second Amended Complaint (the "SAC"). *See* Dkt. 170. The Court finds that the

23  amended pleading does not cure the defects identified in the May 1 ruling, and therefore dismisses

24  the implied covenant and RICO claims with prejudice.

25

## ANALYSIS

26   "To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient factual

27  matter that, when accepted as true, states a claim that is plausible on its face." *Pac. Recovery Sols.*

28

v. *United Behav. Health*, 481 F. Supp. 3d 1011, 1021 (N.D. Cal. 2020) (citing *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009)). Any claim grounded in allegations of fraud or false representations must also satisfy Rule 9(b): it must plead with particularity "what is false or misleading about a statement, and why it is false," and be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Yetter* v. *Ford Motor Co.*, 428 F. Supp. 3d 210, 219-20 (N.D. Cal. 2019) (first quoting *Ebeid ex rel. U.S.* v. *Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010), then quoting *Semegen* v. *Weidner*, 780 F.2d 727, 731 (9th Cir. 1985)). "Rule 9(b)'s heightened pleading standard" for fraud—which Plaintiffs have conceded applies to their RICO claims, *see* Dkt. 128 at 15—is particularly "exacting in the context of RICO claims," *Aniel* v. *PHH Mortg. Corp.*, 2022 WL 2164702, at *6 (N.D. Cal. June 1, 2022).

Plaintiffs' implied covenant and RICO claims are dismissed under these standards.

## I.    IMPLIED COVENANT CLAIM (COUNT III)

Musk's implied covenant claim is dismissed for the same reason the Court dismissed it the first time: It is "based on the same conduct" and therefore duplicative of Musk's implied-in-fact contract claim. *See* Dkt. 163 at 3.

While the implied covenant of good faith and fair dealing is "implied by law in every contract," *Guz* v. *Bechtel Nat'l, Inc.*, 24 Cal. 4th 317, 349 (2000), "in most cases, a claim for breach of the implied covenant can add nothing to a claim for breach of contract," *Lamke* v. *Sunstate Equip. Co., LLC*, 387 F. Supp. 2d 1044, 1047 (N.D. Cal. 2004). The covenant "cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of their agreement." *Guz*, 24 Cal. 4th at 336-37, 349-50. "[I]nsofar as [a defendant's] acts are directly actionable as a breach of an implied-in-fact contract term, a claim that merely realleges that breach as a violation of the covenant is superfluous." *Id.* at 352; *see also, e.g.*, *Sensible Foods, LLC* v. *World Gourmet, Inc.*, 2012 WL 566304, at *5 (N.D. Cal. Feb. 21, 2012). And insofar as the acts are *not* actionable as a breach of the implied-in-fact contract, "the claim is invalid" because it seeks to impose obligations "*beyond* those to which the parties actually agreed." *Guz*, 24 Cal. 4th at 352.

Like the implied covenant claim asserted in the FAC, Musk's amended implied covenant claim relies on the "same conduct" grounding his implied-in-fact contract claim. *See* Dkt. 163 at 3. Although the SAC identifies three categories of conduct that purportedly violated the implied covenant, these allegations at bottom "rely[] on the same alleged acts" and seek "the same damages [and] other relief" as form the basis of Musk's "companion contract cause of action." *Careau & Co.* v. *Sec. Pac. Bus. Credit, Inc.*, 222 Cal. App. 3d 1371, 1395 (1990).

*First*, the SAC alleges that Altman and OpenAI, Inc. "systematically and unilaterally reinterpreted key terms of their agreement in ways that undermined it" by allegedly "evading conflict-of-interest protections by defining board member 'independence' in an extraordinarily narrow fashion." ¶ 269(a).[1] This allegation is just a reformulation of Musk's claim that Altman and OpenAI, Inc. violated an implied-in-fact contract term requiring that OpenAI, Inc. "'always assiduously act to minimize conflicts of interest among [its] employees and stakeholders that could compromise' the non-profit's mission." ¶ 247(i); *see also* ¶ 250(j).

*Second*, Musk alleges that Altman and OpenAI, Inc. "obscured OpenAI's for-profit activities through complex corporate structures, deliberately designed to prevent Musk and the public from discovering their actual operations, and by purporting to maintain the charity's control of their for-profit business when, in fact, the opposite is true." ¶ 269(b). The only distinction between this allegation and similar allegations offered to support Musk's implied-in-fact contract claim is that the focus is on "*obscur[ing]* OpenAI's for-profit activities," *id.* (emphasis added), rather than *engaging* in such activities, *see* ¶ 250(a), (b), (c), (l) (alleging that Altman and OpenAI, Inc. breached implied-in-fact contract by assigning the non-profit's intellectual property to the "For-Profit Entities," allowing the "reap[ing of] significant financial benefits from commercial activities" and "inure[ment]" to private benefit, and supposedly "working to convert the non-profit into a fully for-profit commercial entity"). That does not suffice to plead conduct separately actionable under the implied covenant. *See, e.g.*, *Synopsys, Inc.* v. *Real Intent, Inc.*, 2024 WL 5364480, at *26 (N.D. Cal. Aug. 26, 2024).

---

[1] Citations in the form "¶ __" are of the SAC (Dkt. 170).

*Third*, the SAC pleads as purported breaches of the implied covenant all conduct alleged in support of Musk's implied-in-fact contract claim but "determined not to breach the terms of the parties' implied-in-fact contract." ¶ 269(c). This allegation is inadequate to state an implied covenant claim under governing law. *See* Dkt. 163 at 3; *Careau*, 222 Cal. App. 3d at 1395 ("If the allegations do not go beyond the statement of a mere contract breach and, relying on the same alleged acts, simply seek the same damages or other relief already claimed in a companion contract clause of action, they may be disregarded as superfluous as no additional claim is actually stated."); *see also, e.g.*, *Garvey* v. *Wells Fargo & Co.*, 2011 WL 13221027, at *5 (C.D. Cal. Nov. 23, 2011); *U.S. Bank, N.A.* v. *Miller*, 2013 WL 12183652, at *6 (C.D. Cal. May 8, 2013).

## II.    RICO CLAIMS (COUNTS XX & XXI)

In its prior order, the Court dismissed the FAC's claims for violation of 18 U.S.C. § 1962(c) and (d) because they failed to "identify how the named defendants operated the entity *through a pattern* of racketeering activity." Dkt. 163 at 10; *see Verde Media Corp.* v. *Levi*, 2015 WL 374934, at *5 (N.D. Cal. Jan. 28, 2015) (plaintiff must allege with particularity "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity"). The only alleged actions of the "enterprise," OpenAI, Inc., were not RICO predicates, and the other conduct alleged was not "tethered to the enterprise's conduct." Dkt. 163 at 10. The SAC fails to cure this defect.

*First*, the SAC pleads not a "pattern of racketeering activity," but at best a single RICO predicate with a single purported victim: Musk. As in the FAC, the SAC invokes only the wire fraud statute to try to make a "pattern" showing. Tracking Musk's common-law fraud claim, the only specific representations identified as having been made with "intent to defraud" are supposed "assurances to Musk" by Altman and Brockman "in September 2017 that they remained committed to the original non-profit structure and mission of OpenAI, Inc." ¶ 423; *compare* ¶¶ 301-07. No defendant other than Altman and Brockman is alleged to have committed any predicate act identified in the "Wire Fraud Predicate Offenses" section or the "Pattern of Racketeering Activity" section of Count XX. Assuming these allegations suffice to plead a wire fraud offense with particularity, they do not plead a pattern—much less, as required, a pattern against each named defendant. *See Howard* v. *Am. Online Inc.*, 208 F.3d 741, 746 (9th Cir. 2000) (a pattern requires

1    "'at least two acts of racketeering activity' within ten years of each" (quoting 18 U.S.C. § 1961(5)));

2    *see also Attia* v. *Google LLC*, 983 F.3d 420, 427 (9th Cir. 2020) (affirming dismissal of RICO

3    claims as to those defendants for whom "no pattern [was] established" because they were not

4    alleged to have been involved in the two alleged predicate acts).

5          Other allegations offered to support the RICO counts do not plead wire fraud predicates

6    with the requisite particularity. Plaintiffs' allegations of "false and/or misleading representations"

7    from "December 11, 2015 to today" in "Defendants['] . . . online marketing (e.g., website),

8    advertisements, and promotions," ¶ 428, merely cross-reference a variety of statements mostly

9    *predating* December 2015 (¶¶ 82-87) or pleaded as contractual terms rather than supposed

10   fraudulent statements (¶ 247). Plaintiffs make no effort to identify which of the promotional

11   materials among them are supposed to establish wire fraud, and many of the statements identified

12   are not sourced to any defendant named in the RICO claim. None can supply the grounding for a

13   well-pleaded wire fraud predicate. *See, e.g.*, *Desoto* v. *Condon*, 371 F. App'x 822, 824 (9th Cir.

14   2010); *Seva* v. *Shri Shirdi Sai Baba Sansthin L.A.*, 2013 WL 1431673, at *4 (C.D. Cal. Apr. 9,

15   2013). Similarly, Plaintiffs do not plead any additional predicate act with their new allegations that

16   the "For-Profit Entities" cautioned investors *in the For-Profit Entities* that they should not expect

17   a return on their investment and that the For-Profit Entities "exist[ed] to advance OpenAI, Inc.'s

18   mission." *See* ¶ 447. Plaintiffs do not plead which specific entity or entities made these

19   representations, when or in what context they were made, why they were false, or how (or even

20   that) they were made with intent to defraud. *See, e.g.*, *Pac. Recovery Sols.*, 481 F. Supp. 3d at 1028;

21   *Cnty. of Marin* v. *Deloitte Consulting LLP*, 836 F. Supp. 2d 1030, 1040 (N.D. Cal. 2011). Nor do

22   Plaintiffs explain how these communications, directed to investors in the for-profit enterprise rather

23   than donors to OpenAI, Inc., could have "reassure[d] Musk and induced him to make further

24   financial contributions" to *OpenAI, Inc*. ¶ 447.

25         *Second*, as with the FAC (*see* Dkt. 163 at 10), the SAC again fails to plead that any supposed

26   racketeering activity was the "conduct" of OpenAI, Inc.'s "affairs"—as opposed to the conduct of

27   the defendants' own affairs. *See* 18 U.S.C. § 1962(c); *Pac. Recovery Sols.*, 481 F. Supp. 3d at 1027.

28   As discussed, the only predicate arguably pleaded with particularity centers on conduct of Altman

and Brockman in their own dealings with Musk in September 2017, not on the conduct of OpenAI, Inc.'s affairs. Even assuming the SAC's new allegations under the "Violations of 1962(c)" heading pleaded predicate acts with particularity, here too the conduct alleged is not the conduct of OpenAI, Inc.'s affairs. The most that is pleaded is the For-Profit Entities' "*involvement* in the affairs of an enterprise," which does not suffice to plead "participat[ion] in the *operation or management* of the enterprise itself." *See Reves* v. *Ernst & Young*, 507 U.S. 170, 178, 185 (1993) (emphasis added).

*Third*, the SAC's allegations negate a key element of any § 1962(c) claim: "the existence of two *distinct* entities: (1) a person. . .and (2) an 'enterprise.'" *Ferrari* v. *Mercedes-Benz USA, LLC*, 2016 WL 7188030, at *2 (N.D. Cal. Dec. 12, 2016) (emphasis added). According to the SAC, "OpenAI, Inc. and the For-Profit Entities operate together as a unitary enterprise, the primary purpose of which is now for-profit," and "OpenAI, Altman [and] Brockman [] have become alter egos of one another." ¶ 237. In other words, there is no "enterprise" distinct from the "persons" alleged to have conducted its affairs through a pattern of racketeering activity.

Because Plaintiffs' substantive RICO count fails, so too does the conspiracy claim on which it is based. *See Sanford* v. *MemberWorks, Inc.*, 625 F.3d 550, 559 (9th Cir. 2010).

## CONCLUSION

For the foregoing reasons, the OpenAI Defendants' Motion to Dismiss is GRANTED, and Counts III, XX, and XXI of the second amended complaint of Plaintiffs Elon Musk and X.AI Corp. are DISMISSED WITH PREJUDICE.


IT IS SO ORDERED this ___ day of _____, 2025




                                                    _____
                                                    HONORABLE YVONNE GONZALEZ ROGERS
                                                    UNITED STATES DISTRICT COURT JUDGE