UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELON MUSK, et al.,<br><br>               Plaintiffs,<br><br>  v.<br><br>SAMUEL ALTMAN, et al.,<br><br>               Defendants. | Case No. 4:24-cv-04722-YGR<br><br>Assigned to Hon. Yvonne Gonzalez Rogers<br><br>**[PROPOSED] ORDER DENYING OPENAI DEFENDANTS' MOTION TO DISMISS COUNTS III, XX, XXI**<br><br>Date:    July 15, 2025<br>Time:   2:00 p.m.<br>Place:  Courtroom 1 (4th Fl.)<br>          1301 Clay St.<br>          Oakland, CA 94612 |

**[PROPOSED] ORDER**

Defendants Samuel Altman, Gregory Brockman, OpenAI, Inc., OpenAI L.P., OpenAI, L.L.C., OpenAI GP, L.L.C., OpenAI OpCo, LLC, OpenAI Global, LLC, OAI Corporation, LLC, OpenAI Holdings, LLC, OpenAI Startup Fund Management, LLC, OpenAI Startup Fund GP I, L.L.C., OpenAI Startup Fund I, L.P., OpenAI Startup Fund SPV GP I, L.L.C., OpenAI Startup Fund SPV GP II, L.L.C., OpenAI Startup Fund SPV GP III, L.L.C., OpenAI Startup Fund SPV GP IV, L.L.C., OpenAI Startup Fund SPV I, L.P., OpenAI Startup Fund SPV II, L.P., OpenAI Startup Fund SPV III, L.P., OpenAI Startup Fund SPV IV, L.P., Aestas Management Company, LLC, and Aestas LLC (the "Defendants"), have moved the Court, pursuant to Federal Rules of Civil Procedure 8, 9(b), and 12(b)(6) to dismiss the second amended complaint ("SAC") filed by Plaintiffs Elon Musk and X.AI Corp. on May 22, 2025, Dkts. 170, 175. Having considered the Motion, Plaintiffs' Opposition, the pleadings on file, and the arguments of counsel, the Court hereby **DENIES** the Motion.

**BACKGROUND**

In 2015, Sam Altman, Greg Brockman, Ilya Sutskever, and Elon Musk launched OpenAI as a laboratory dedicated to developing safe and beneficial artificial general intelligence ("AGI") for the public good. Dkt. 170 ¶¶ 80-88, 91. Musk made substantial donations to OpenAI, Inc. from 2016 until September 2020, totaling over $44 million. *Id.* ¶ 94. In March 2023, Musk created X.AI Corp. ("xAI"), which now competes with OpenAI in the generative AI market. *Id.* ¶¶ 10, 224-25.

Musk filed this federal action on August 5, 2024. Dkt. 1. On November 14, 2024, he filed the FAC, including antitrust claims, and added as defendants Microsoft, Reid Hoffman, and Deannah Templeton. Dkt. 32. After granting in part and denying in part motions to dismiss filed by OpenAI and Microsoft, Dkt. 163, the Court granted Plaintiffs leave to amend Count III (breach of the implied covenant of good faith and fair dealing), Count XX (RICO), and Count XXI (RICO conspiracy). *Id.* at 10-11. OpenAI has now filed a renewed motion to dismiss addressed to Counts III, XX, and XXI. Dkt. 175.

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court must accept all well-pleaded factual allegations as true and draw reasonable inferences in favor of the plaintiff. *See id.* "Dismissal for failure to state a claim is proper only where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (internal quotation marks omitted). "[W]here a complaint includes allegations of fraud, Federal Rule of Civil Procedure 9(b) requires more specificity including an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (internal citations omitted).

## ANALYSIS

After careful consideration of the parties' arguments and the allegations in the SAC, the Court finds that Plaintiffs have stated plausible claims against the Defendants sufficient to survive a motion to dismiss.

### I.   Implied Covenant of Good Faith and Fair Dealing (Count III)

The SAC states a claim for breach of the implied covenant of good faith and fair dealing. Every contract contains an implied covenant requiring parties to act in good faith and not to frustrate the contract's benefits. *Carma Devs. (Cal.), Inc. v. Marathon Dev. Cal., Inc.*, 2 Cal. 4th 342, 372 (1992). Contrary to Defendants' assertion, this claim is not duplicative because it focuses on Defendants' abuse of discretion in performing the contract, rather than technical breaches of its express terms.

Specifically, the SAC alleges Defendants exercised in bad faith any discretion under the implied-in-fact agreement Musk alleged by (1) systematically and unilaterally reinterpreting key terms of the agreement so as to undermine the agreement and its objectives; (2) obscuring OpenAI's for-profit activities through complex corporate structures that violated their fiduciary duties to Musk; and (3) engaging in activities alleged to breach the parties' agreement that are determined not

to technically breach the agreement itself. Dkt. 170 ¶ 269.

## II. RICO (Count XX)

The SAC sufficiently pleads civil RICO violations under 18 U.S.C. § 1962(c). First, the only defect identified by the Court in its order on OpenAI's prior motion to dismiss, and therefore the only proper subject of a renewed motion to dismiss, was Plaintiffs' failure to allege the conduct of an enterprise through racketeering activity. Dkt. 163 at 9-11. Nevertheless, for the sake of comprehensiveness, the Court addresses all of OpenAI's arguments.

### A. The SAC Pleads Multiple Predicate Acts with Rule 9(b) Particularity.

The SAC alleges a pattern of wire fraud with the specificity Rule 9(b) requires by alleging the same acts the Court has already deemed sufficient to plead Defendants' fraudulent conduct in Count VII. Dkt. 163 at 8.

### B. The Predicate Acts Form a Cognizable Pattern.

The SAC establishes both relatedness and continuity required for a RICO pattern. *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 239 (1989). The acts satisfy the relatedness criterion because every predicate act served the common purpose of transforming OpenAI from a charity to a for-profit while maintaining a philanthropic façade. Dkt. 170 ¶¶ 307-10, 421, 440. The scheme had common participants (Altman and Brockman), common victims (Musk, other donors, AI scientists, the public), and a common method (fraudulent misrepresentations via interstate wires). *Id.* ¶¶ 421, 428, 447.

The acts satisfy the continuity criterion because they span nearly a decade, from initial fraudulent solicitations in 2015 through ongoing deceptions today. *Id.* ¶¶ 82-88, 428, 439. Even focusing solely on Musk's fraudulently induced wire transfers, these span from May 2016 through September 2020—over four years. *Id.* ¶ 424. The threat of continued racketeering is manifest as Defendants actively work to complete OpenAI's for-profit conversion. *Id.* ¶¶ 193, 428.

### C. Defendants Conducted OpenAI, Inc.'s Affairs Through Racketeering Activity.

The SAC specifically alleges how each Defendant participated in conducting OpenAI, Inc.'s affairs through a pattern of racketeering activity, satisfying *Reves v. Ernst & Young*, 507 U.S. 170,

183 (1993). As CEO and President/CTO, respectively, Altman and Brockman held ultimate operational authority and used their positions within OpenAI, Inc. to "execute and direct the enterprise's core activities through the commission of multiple predicate acts of wire fraud." Dkt. 170 ¶¶ 109, 114, 149, 445(a). When a charity CEO lies to donors to fund operations for personal enrichment, he is conducting the enterprise's affairs through fraud. *Reves*, 507 U.S. at 179.

The For-Profit Entities served as the vehicles by which Defendants looted OpenAI's technology and employed AI scientists recruited through misrepresentations about its charitable mission. Dkt. 170 ¶¶ 127-30, 433. They "knowingly implemented decisions of" Altman, Brockman, and Microsoft and were "indispensable to achievement of the enterprise's goal." *Ketayi v. Health Enrollment Grp.*, 516 F. Supp. 3d 1092, 1136 (S.D. Cal. 2021).

Microsoft exercised operational control through the placement of Deannah Templeton, and facilitation of Reid Hoffman's service, on OpenAI, Inc.'s Board, the exclusive supply and control of its compute resources giving it veto power over decisions, use of that power to quickly reinstate Altman after his termination, and by directing strategic decisions including OpenAI, Inc.'s effective for-profit conversion, without regulatory approval. Dkt. 170 ¶¶ 110, 146-59, 161, 167, 193-94, 358.

### D. The Enterprise-Person Distinctness Requirement Is Satisfied.

Section 1962(c) requires only that the "enterprise" be legally distinct from the "person[s]" conducting its affairs. *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161 (2001). OpenAI, Inc., as a § 501(c)(3) non-profit corporation, maintains separate legal existence from Altman and Brockman (natural persons), Microsoft (a separate corporation), and the For-Profit Entities (separate legal entities). Dkt. 170 ¶¶ 38, 87, 114-21, 147, 160-65, 223. This satisfies § 1962(c)'s distinctiveness requirement under *Cedric Kushner*, where the president and sole owner of a corporation was held to could be distinct from his closely-held company. 533 U.S. at 163.

### E. xAI Has Standing to Assert RICO Claims.

xAI suffered direct competitive injuries from Defendants' pattern of wire fraud. The scheme enabled Defendants to monopolize AI talent, engage in predatory pricing, and dominate the market—all through fraudulently obtained funding. Dkt. 170 ¶¶ 198, 220-22, 318(e)-(f), (n), 421. Unlike *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451 (2006), which involved merely indirect

injury from tax fraud, xAI's injuries flow directly from Defendants' fraudulent misrepresentations to Musk, AI talent, and the public about OpenAI's commitment to safe, open source AI development for humanity's benefit. The "alleged violation[s]" rather than fraud on tax authorities "led directly to [xAI's] injuries." *Id.* at 461.

### III. RICO Conspiracy (Count XXI)

OpenAI does not present argument concerning the conspiracy count other than to state that if Count XX is dismissed, this count must be as well. Even if the Court were to find the substantive RICO claim inadequate, however, the conspiracy claim survives. As the Supreme Court has explained concerning RICO, "It is elementary that a conspiracy may exist and be punished whether or not the substantive crime ensues." *Salinas v. United States*, 522 U.S. 52, 65 (1997). As the Ninth Circuit has further explained, "[i]t is the mere agreement to violate RICO that § 1962(d) forbids; it is not necessary to prove any substantive RICO violations ever occurred as a result of the conspiracy." *Oki Semiconductor Co. v. Wells Fargo Bank*, 298 F.3d 768, 774-75 (9th Cir. 2002).

The SAC alleges OpenAI Defendants agreed to participate in the RICO conspiracy through their: (1) false representations to Musk and other contributors that OpenAI, Inc. would be a non-profit devoted to the open source development of AI/AGI for the public's benefit, Dkt. 170 ¶ 456; (2) receipt of financial and other contributions, including wired funds, in response to those fraudulent communications, *id.* ¶ 458; and (3) systematic conduct over multiple years demonstrating specific intent to further their fraudulent scheme. This pattern of coordinated activity establishes the requisite agreement through the OpenAI Defendants' "words, actions, [and] interdependence of activities and persons involved." *Oki Semiconductor Co.*, 298 F.3d at 775. By failing to challenge these allegations, Defendants have waived any objection to the conspiracy count's sufficiency.

### CONCLUSION

For the foregoing reasons, OpenAI's Motion to Dismiss is **DENIED**.

1 | IT IS SO ORDERED this ____ day of _____, 2025.

_____
The Honorable Yvonne Gonzalez Rogers
United States District Court Judge