VIA CM/ECF

June 22, 2025

The Honorable Yvonne Gonzalez Rogers
District Judge of the Northern District of California
Oakland Courthouse, Courtroom 1 – 4th Floor
1301 Clay Street, Oakland, CA 94612

Re:   *Musk, et al. v. Altman, et al.*, Case No. 4:24-cv-04722-YGR

Dear Judge Gonzalez Rogers,

We write in response to OpenAI Defendants' ("OpenAI") June 20, 2025 letter, Dkt. 180, which inaccurately portrays the facts and outstanding issues. On the afternoon of June 18, Plaintiffs circulated an email to Defendants proposing that all parties exchange their search-related information, as only Plaintiffs had disclosed their search terms, custodians, and efforts. At 9:00 p.m. that same day, OpenAI served Plaintiffs with its portion of a joint discovery letter, unilaterally declaring an impasse on issues still under active consideration and demanding a response by noon on June 20—the next business day following the Juneteenth federal holiday—precisely when Plaintiffs were due to file two opposition briefs to OpenAI and Microsoft's motions to dismiss. On June 19, Plaintiffs' counsel responded that OpenAI's letter appeared to have been sent without OpenAI having considered Plaintiffs' proposed information exchange, which would likely resolve or substantially narrow the disputed issues. Plaintiffs suggested that OpenAI withdraw its letter pending the parties' exchange, but OpenAI refused and filed it on June 20.

OpenAI's letter to this Court is procedurally deficient, and at best, premature. Paragraph 8(b) of this Court's Standing Order requires parties to serve "**one *joint*** letter" with "limited and specific legal authority *only for resolution of dispositive issues*" (emphasis added), and mandates that counsel "attest that, prior to filing the request for relief, counsel met and conferred in person or by videoconference." Instead, OpenAI filed its own brief containing irrelevant case citations designed to malign Mr. Musk while raising new issues without having made any attempt to meet and confer.

Plaintiffs were at least pleased to see Mr. Frentzen's signature on the letter, particularly given the Court's prior observation that his involvement has historically facilitated more collaborative discovery. 4/4/25 Hr. Trans. 33:10–22. It is unfortunate, however, that Mr. Frentzen did not actively participate in this process or communicate with Plaintiffs' counsel at all regarding these matters.

**Third-Party Documents**: OpenAI's letter contains numerous inaccuracies that the correspondences between the parties will readily demonstrate, should the Court desire them. Chief among them is OpenAI's statement that "it is now clear that Musk and his counsel do not plan to collect any documents from Musk." Dkt. 180 at 2. This is incorrect. On June 14, for example, Plaintiffs sent Defendants a letter informing them that Plaintiffs were conducting searches of Mr. Musk's mobile phone, having searched his emails, and that Mr. Musk does not use a computer.

OpenAI claims that Mr. Musk and his counsel "have not collected and are refusing to collect, review, or produce emails that Musk sent or received using his" non-party company email accounts including those of Tesla, SpaceX, and Neuralink. *Id*. This too is entirely inaccurate. In that same June 14 letter, Plaintiffs explained that they are working with these companies to soon produce responsive documents. OpenAI's claim that Plaintiffs "forced" it to subpoena these third parties is

also false—OpenAI, conceding the companies' third-party status, served subpoenas on its own volition *weeks before* inquiring whether Plaintiffs planned to produce third-party documents.

OpenAI's assertion that Plaintiffs are "working with the entities to resist discovery" is incorrect. *Id*. Plaintiffs have actively assisted these third parties in their production efforts by helping them understand the case, collaboratively developing search terms and appropriate custodian lists, and providing guidance during responsiveness review. Plaintiffs' June 14 letter disclosed the third-party custodian email addresses identified to date and the search terms used.

These third parties are contributors to an efficient production process, not obstacles as willfully misconstrued by OpenAI. *First,* they possess sensitive data that *they* are best positioned to identify. SpaceX, for example, coordinates with NASA and the Armed Forces on national defense, making the company's participation not merely appropriate, but necessary for the secure and efficient handling of its materials. *Second*, while Plaintiffs are actively involved in the production process, these third parties enhance efficiency by serving as additional resources in Plaintiffs' production effort. More to the point, regardless of whether documents are transmitted by Plaintiffs or these companies directly, OpenAI receives the same materials, rendering this issue entirely academic.

What OpenAI *does* have correct is that discovery is a two-way street. Plaintiffs have served subpoenas on investment entities owned and controlled by Sam Altman—including Altman Family LLC and others—which Mr. Altman has used to covertly invest in companies doing business with OpenAI. During the parties' June 12 conference and again in Plaintiffs' June 14 letter, Plaintiffs specifically inquired whether, given Defendants' position on Mr. Musk's third-party obligations, OpenAI would produce documents from these Altman-controlled entities. To date, OpenAI has neither produced documents from these entities nor stated whether it even intends to search for or produce any such materials. While Plaintiffs work to ensure third-party documents are imminently produced, the Court's guidance as to Defendants' production obligations concerning Mr. Altman's various investment entities would be beneficial to the efficient resolution of this matter.

**Non-Party Jared Birchall:** OpenAI's attestation that it met and conferred with Plaintiffs concerning Mr. Birchall, Dkt. 180 at 1, is also false. The parties neither conferred concerning service of his deposition subpoena nor exchanged correspondence on the matter. The actual events are as follows: Late on June 13, following the conclusion of the parties' two-day conference—during which, Mr. Birchall's deposition was never raised or discussed—OpenAI's counsel emailed Plaintiffs' counsel with subpoena notices directed to Plaintiffs' counsel and Mr. Birchall noticing his deposition, and asked whether Plaintiffs would accept service on behalf of both. On June 16, the next business day, OpenAI's counsel emailed Plaintiffs' counsel stating that, if we would not accept service on behalf of Mr. Birchall and the law firm, they would proceed with personal service the following day. On June 17, we responded that, while of course we would accept service on behalf of the law firm, we did not have authority to accept service on behalf of Mr. Birchall. No further communication occurred on this matter until OpenAI served its discovery letter the next day. Contrary to its obligations, OpenAI made *no effort to meet and confer* with Plaintiffs.

OpenAI's letter contends that, because Mr. Birchall is involved in certain of Mr. Musk's companies, Plaintiffs' counsel must accept service on his behalf. This argument misunderstands the attorney-client relationship. While an employer may designate an employee to offer testimony in litigation, this does not compel the employee to accept representation by counsel retained by the

employer. An employee maintains the fundamental right to select counsel of their own choosing and cannot be forced to accept representation—and certainly not at opposing counsel's insistence. OpenAI's inapposite legal authority concerning venue transfer does not suggest otherwise.

Moreover, N.D. Cal. Local Rule 30-1 requires that, "before noticing a deposition of a party *or witness affiliated with a party*, the noticing party must confer about the scheduling of the deposition with opposing counsel" (emphasis added). OpenAI never attempted or even requested such a conference, demonstrating either that OpenAI was unfamiliar with the Local Rules or that it properly considered Mr. Birchall to be "a witness who is not a party or affiliated with a party." *Id*. After Plaintiffs' counsel advised OpenAI they lacked authority to accept service, OpenAI should have simply followed through on its stated plan to serve Mr. Birchall personally, rather than unnecessarily burdening the Court with such routine procedural matters.

Plaintiffs respectfully request the Court strike OpenAI's improper June 20, 2025 letter.

Sincerely,

*/s/ Jaymie Parkkinen*
Jaymie Parkkinen
TOBEROFF & ASSOCIATES, P.C.
23823 Malibu Road, Suite 50-363
Malibu, CA 90265
Telephone: (310) 246-3333
Facsimile: (310) 246-3101


*Attorneys for Plaintiffs Elon Musk and X.AI Corp.*