1   Marc Toberoff (S.B. #188547)
2   *mtoberoff@toberoffandassociates.com*
    Jaymie Parkkinen (S.B. #318394)
3   *jparkkinen@toberoffandassociates.com*
    TOBEROFF & ASSOCIATES, P.C.
4   23823 Malibu Road, Suite 50-363
    Malibu, CA 90265
5   Telephone: (310) 246-3333
    Facsimile: (310) 246-3101
6
7   *Attorneys for Plaintiffs Elon Musk
    and X.AI Corp.*

8                   **UNITED STATES DISTRICT COURT**
9                  **NORTHERN DISTRICT OF CALIFORNIA**

10

11  ELON MUSK, et al.,                    Case No. 4:24-cv-04722-YGR

12              Plaintiffs,               Assigned to Hon. Yvonne Gonzalez Rogers

13      v.                                **PLAINTIFFS' NOTICE OF MOTION
                                          AND MOTION TO STRIKE OPENAI
14  SAMUEL ALTMAN, et al.,                DEFENDANTS' FIFTY-FIVE DEFENSES**

15              Defendants.               Date:    August 5, 2025
16                                        Time:    2:00 p.m.
                                          Place:   Courtroom 1 (4th Fl.)
17                                                 1301 Clay St.
18                                                 Oakland, CA 94612

19

20

21

22

23

24

25

26

27

28

## <u>NOTICE OF MOTION AND MOTION</u>

PLEASE TAKE NOTICE that on August 5, 2025, at 2:00 p.m., or as soon as the matter may be heard, in the courtroom of the Honorable Yvonne Gonzalez Rogers at the United States District Court for the Northern District of California, Ronald V. Dellums Federal Building and United States Courthouse, Courtroom 1 (4th Floor), 1301 Clay Street, Oakland, California 94612, Plaintiffs Elon Musk and X.AI Corp. ("xAI," and collectively, "Plaintiffs") will, and hereby do, move the Court to strike the fifty-five defenses filed by defendants Samuel Altman, Gregory Brockman, OpenAI, Inc., OpenAI, L.P., OpenAI, L.L.C., OpenAI GP, L.L.C., OpenAI OpCo, LLC, OpenAI Global, LLC, OAI Corporation, LLC, OpenAI Holdings, LLC, OpenAI Startup Fund Management, LLC, OpenAI Startup Fund GP I, L.L.C., OpenAI Startup Fund I, L.P., OpenAI Startup Fund SPV GP I, L.L.C., OpenAI Startup Fund SPV GP II, L.L.C., OpenAI Startup Fund SPV GP III, L.L.C., OpenAI Startup Fund SPV GP IV, L.L.C., OpenAI Startup Fund SPV I, L.P., OpenAI Startup Fund SPV II, L.P., OpenAI Startup Fund SPV III, L.P., OpenAI Startup Fund SPV IV, L.P., Aestas Management Company, LLC, and Aestas, LLC (collectively, "OpenAI"), pursuant to Federal Rules of Civil Procedure 8 and 12(f), and Civil Local Rule 7-2.

As detailed in the Proposed Order submitted with this Motion, Plaintiffs seek an order striking OpenAI's affirmative defenses. This Motion is made on the grounds that: (1) the affirmative defenses fail to satisfy the *Twombly/Iqbal* standard for pleading; (2) the negative defenses are impermissibly duplicative; and, regardless, (3) the sheer number of overlapping defenses and their utter lack of factual or legal specificity render them "insufficient" as a matter of pleading because they do not "give[] [P]laintiffs fair notice of the defense[s]." *Wyshak v. City Nat. Bank*, 607 F.2d 824, 827 (9th Cir. 1979); *Winns v. Exela Enter. Sols., Inc.*, No. 4:20-CV-06762-YGR, 2021 WL 5632587, at *2 (N.D. Cal. Dec. 1, 2021).

This Motion is based on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, Plaintiffs' Second Amended Complaint ("SAC"), Dkt. No. 170, OpenAI's Answer, Counterclaims, and Defenses, Dkt. No. 176, the Declaration of Jaymie Parkkinen, all matters of which the Court may take judicial notice, all other pleadings on file in this action, and any other written or oral argument or evidence that Plaintiffs may present to the Court.

1

DATED: June 26, 2025

Respectfully Submitted,

2

TOBEROFF & ASSOCIATES, P.C.

3

*/s/ Marc Toberoff*

4

Marc Toberoff

5

*Attorneys for Plaintiffs Elon Musk and X.AI Corp.*

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## ISSUES TO BE DECIDED

Pursuant to Local Civil Rule 7-4(a)(3), Plaintiffs identify the following issues to be decided:

1.      Whether OpenAI's total failure to allege any facts or elements of law in support of its affirmative defenses requires them to be struck under the plausibility standard of *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).

2.      Whether OpenAI's pleading of duplicative negative defenses requires them to be struck, as in *Barnes v. AT & T Pension Ben. Plan-Nonbargained Program*, 718 F. Supp. 2d 1167 (N.D. Cal. 2010).

3.      Whether, regardless of the applicable pleading standard or the propriety of pleading duplicative negative defenses, OpenAI's overlapping defenses, pled without factual or legal support, and in many instances, without specification of the claims to which a purported defense applies, fail to provide Plaintiffs with "fair notice" of OpenAI's defenses under *Wyshak v. City Nat. Bank*, 607 F.2d 824, 827 (9th Cir. 1979).

4.      Whether OpenAI's misuse of these insufficiently and confusingly pled defenses as a weapon in discovery establishes prejudice to Plaintiffs.

CASE NO. 24-CV-04722-YGR
PLAINTIFFS' MOT. TO STRIKE

1

## **INTRODUCTION**

2      Plaintiffs acknowledge that the Court disfavors motions to strike under Federal Rule of Civil

3  Procedure 12(f) and accordingly, endeavored to present this Motion with brevity and precision.

4  OpenAI's evolving defensive posture reveals a telling trajectory: what commenced as twelve

5  discrete defenses in its initial Answer to Plaintiffs' First Amended Complaint ("FAC"), Dkt. 147 at

6  96-98, has metastasized into *fifty-five* separately pled defenses in its Answer to the SAC, Dkt. 176 at

7  117-124, despite the SAC asserting *fewer* claims. Remarkably, not one of those fifty-five defenses

8  furnishes even the most rudimentary factual basis, notwithstanding that *sixteen* unambiguously

9  constitute affirmative defenses subject to *Twombly/Iqbal*'s heightened pleading standard.

10      Beyond its sixteen affirmative defenses that proffer mere legal conclusions devoid of factual

11  substance, OpenAI has separately articulated thirty-seven impermissible "negative" defenses that

12  constitute nothing more than duplicative restatements of denials found elsewhere in the pleading,

13  serving only to unnecessarily encumber these proceedings. Compounding this deficiency, all but

14  one of OpenAI's fifty-five defenses completely lack any citation to law, thereby compelling

15  Plaintiffs to divine the substantive elements OpenAI believes it can show. Fifteen of these ostensible

16  "defenses" fail even to specify the claim to which they purportedly apply.

17      In light of these deficiencies, all of OpenAI's defenses warrant striking for at least one of

18  three reasons. *First*, regarding the sixteen unequivocally affirmative defenses that proffer neither

19  legal authority nor factual allegations (Nos. 4-6, 12-14, 16-18, 46-49, 51-52, and 55)—much less

20  facts sufficient to render their skeletal labels and conclusory assertions plausible—the

21  *Twombly/Iqbal* standard compels them to be struck. *Winns v. Exela Enter. Sols., Inc.*, No. 4:20-CV-

22  06762-YGR, 2021 WL 5632587, at *2 (N.D. Cal. Dec. 1, 2021). *Second*, as to the thirty-seven

23  negative defenses (Nos. 1-2, 7-11, 15, 19-43 50, 53-54), "these affirmative defenses, which, in fact,

24  are merely rebuttal to plaintiff's claims" should therefore be "stricken" as needlessly duplicative.

25  *Barnes v. AT & T Pension Ben. Plan-Nonbargained Program*, 718 F. Supp. 2d 1167, 1173-74 (N.D.

26  Cal. 2010). *Third*, the proliferation of defenses, coupled with their lack of specificity, substantial

27  overlap, and absence of factual or legal foundation, fundamentally deprives Plaintiffs of adequate

28  "fair notice" regarding the purported defenses, thereby contravening both Rule 8 and due process

1   (irrespective whether *Twombly/Iqbal* standards govern any particular assertion). *Wyshak v. City Nat.*

2   *Bank*, 607 F.2d 824, 827 (9th Cir. 1979).

3          Finally, these denuded pleadings prejudice Plaintiffs. They prevent Plaintiffs from

4   conducting targeted and meaningful discovery, while the inherent logical inconsistencies render

5   certain defenses virtually incomprehensible. Perhaps most egregiously, OpenAI has been exploiting

6   its panoply of hollow labels and conclusory statements dressed as "defenses" to justify dramatically

7   expanding the scope of discovery *it* seeks. Parkkinen Decl. ¶ 3. This Court bifurcated and expedited

8   this case to facilitate efficient adjudication of Plaintiffs' most pressing causes of action, yet OpenAI

9   has undermined this goal by piling in fifty-five indiscriminate defenses for trial. As such, Plaintiffs

10  respectfully request the Court strike OpenAI's defenses in their entirety.

11                                **STATEMENT OF FACTS**

12         Plaintiffs' FAC asserted multiple claims for relief. Dkt. 32 at 1-2. While OpenAI's initial

13  answer purported to address the Breach of Charitable Trust claim, Dkt. 147 at 94-96, it was, in fact,

14  a comprehensive pleading encompassing *sixty-seven* pages of responses to *all* factual allegations

15  throughout the FAC, *id.* at 27-94, including two counterclaims, *id.* at 1-26, and twelve defenses, *id.*

16  at 96-97. Their defenses were not limited to Plaintiff's Breach of Charitable trust claim, variously

17  contending that the *entire* FAC "fail[ed] to state a claim" and that it was barred "in whole or in part"

18  by any number of these defenses. *Id.*

19         Following the Court's granting in part and denying in part OpenAI's motion to dismiss,

20  Plaintiffs filed their SAC, containing five fewer causes of action. Dkt. 170 at 1-2. OpenAI

21  responded to this narrowed pleading by filing an exponentially expanded Answer, increasing its

22  separately denominated defenses by 350%. Dkt. 176 at 117-24.

23         The following among OpenAI's fifty-five separately pled defenses constitute classic

24  affirmative defenses: unclean hands (No. 4), laches (No. 5), statute of limitations (No. 6), excusal

25  (No. 12), substantial performance (No. 13), failure of consideration (No. 14), termination (No. 16),

26  statute of frauds (No 17), non-occurrence of conditions (No. 18), equitable estoppel (No. 46),

27  waiver (No. 47), acquiescence (No. 48), the economic loss rule (No. 49), speculative or remote

28  damages (No. 51), failure to mitigate damages (No. 52), and public policy (No. 55). *Id.*

Nearly the entirety of the remaining thirty-nine "defenses" constitute impermissible negative defenses that merely contend Plaintiffs have failed to establish their claims: "Failure to state a claim" (No. 1), "Lack of [statutory?] standing" (No. 2), "Lack of charitable trust" (No. 7), "No breach of charitable trust" (No. 8), "No breach of alleged contract" (No. 9), "Indefiniteness of alleged conduct" (No. 10), "Lack of implied-in-fact contract" (No. 11), "No mutual assent" (No. 15), "No unfair interference" (No. 19), "No breach of alleged implied covenant" (No. 20), "No harm" (No. 21), "Impermissibly duplicative" (No. 22), "No benefit" (No. 23), "No unjust retention of a benefit" (No. 24), "No fiduciary/confidential relationship" (No. 25), "No breach of any duty" (No. 26), "No false statement" (No. 27), "Lack of scienter" (No. 28), "Lack of intent to defraud" (No. 29), "No breached promise" (No. 30), "Lack of reliance" (No. 31), "[Sic] Substantial Factor" (No. 32), "No acts of racketeering activity" (No. 33), "Lack of conduct" (No. 34), "Lack of distinctiveness" (No. 35), "No pattern" (No. 36), "No related acts" (No. 37), "No continuous acts" (No. 38), "Lack of conduct of an enterprise" (No. 39), "Lack of injury" (No. 40), "Lack of causation" (No. 41), "No agreement to violate RICO" (No. 42), "Lack of [statutory?] standing" (No. 43), "No damages" (No. 50), "No enhanced damages" (No. 53), and "No equitable relief" (No. 54). *Id.*

The only "defenses" that are neither affirmative nor duplicative negative defenses are: "Lack of subject matter jurisdiction" for lack of "Article III standing" (No. 44, also the only defense mentioning any source of law) and "Ripeness/Mootness" (No. 45), though OpenAI presumably meant "Lack of Ripeness."

None of the affirmative or negative defenses contain a scintilla of fact or law, and fifteen fail to even specify the Phase One claims to which they purportedly apply (Nos. 4-6, 43, 45-55). Dkt. 176 at 117-24. This timely motion to strike necessarily follows. Fed. R. Civ. P. 12(f)(2).

## **LEGAL STANDARD**

The Court has recently set forth the standard governing motions to strike:

A court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "The function of a [Rule] 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial."

*Whittlestone, Inc. v. Handi–Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010) (quoting *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993) *rev'd on other grounds*, 510 U.S. 517 (1994)). "Motions to strike 'are generally disfavored because they are often used as delaying tactics and because of the limited importance of pleadings in federal practice.'" *Shaterian v. Wells Fargo Bank, N.A.*, 829 F. Supp. 2d 873, 879 (N.D. Cal. 2011) (quoting *Rosales v. Citibank, Fed. Sav. Bank*, 133 F. Supp. 2d 1177, 1180 (N.D. Cal. 2001)). Further, because Rule 12(f) motions are disfavored, "courts often require a showing of prejudice by the moving party before granting the requested relief." *Sanchez v. City of Fresno*, 914 F. Supp. 2d 1079, 1122 (E.D. Cal. 2012) (quoting *Cal. Dep't of Toxic Substances Control v. Alco Pac., Inc.*, 217 F. Supp. 2d 1028, 1033 (C.D. Cal. 2002)).

*Decena v. Allegiant Final Mile, Inc.*, No. 4:23-CV-03633-YGR, 2024 WL 37221, at *2 (N.D. Cal. Jan. 2, 2024).

## <u>ARGUMENT</u>

## I. OPENAI'S AFFIRMATIVE DEFENSES FAIL THE *TWOMBLY/IQBAL* STANDARD.

"An affirmative defense is an assertion raising new facts and arguments that, if true, will defeat plaintiff's claim, even if all allegations in [the] complaint are true." *Winns v. Exela Enter. Sols., Inc.*, No. 4:20-CV-06762-YGR, 2021 WL 5632587, at *2 (N.D. Cal. Dec. 1, 2021) (quoting *Bay Area Roofers Health & Welfare Tr. v. Sun Life Assurance Co. of Can.*, No. 13-CV-04192-WHO, 2013 WL 6700017 at *2 (N.D. Cal. Dec. 19, 2013)). "In pleading affirmative defenses, a defendant must allege sufficient facts to 'nudge[ ] their [legal] claims across the line from conceivable to plausible.'" *Id.* (citing and quoting *Twombly*, 550 U.S. at 570; *Barnes v. AT & T Pension Ben. Plan-Nonbargained Program*, 718 F. Supp. 2d 1167, 1172 (N.D. Cal. 2010)). "While this standard does not require extensive factual allegations, mere labels and conclusions do not suffice . . . ." *Id.* (citing *Iqbal*, 556 U.S. at 678).

Consider three of OpenAI's affirmative defenses as exemplars:

### FOURTH DEFENSE: UNCLEAN HANDS

The Second Amended Complaint is barred, in whole or in part, by Plaintiff Musk's unclean hands.

### FIFTH DEFENSE: LACHES

The Second Amended Complaint is barred, in whole or in part, by the doctrine of laches.

1
## SIXTH DEFENSE: STATUTE OF LIMITATIONS

2
      The Second Amended Complaint is barred, in whole or in part, by the

3
applicable statutes of limitations and limitations periods.

4
Dkt. 176 at 117.

5
      To which claims do these defenses apply? The pleading offers only the unhelpful disjunctive

6
of the SAC "in whole or in part." *Id*. Are equitable defenses being deployed against legal claims?

7
What law governs? While California law might reasonably be presumed, OpenAI has previously

8
(and erroneously) urged the application of Delaware law.[1] Dkt. 109 at 19 n.3. Do these constitute

9
statutory or common-law defenses, as some states have codified common-law defenses? If statutory,

10
*which* statutes, so Plaintiffs may ascertain their constituent elements? Irrespective of governing law,

11
what non-conclusory factual allegations render OpenAI's satisfaction of those elements *plausible*?

12
      The deficiencies transcend mere failure to satisfy the standards of *Twombly/Iqbal*; defenses

13
pled this inadequately would have proven insufficient even under pre-*Twombly* jurisprudence. *See*

14
*Wyshak*, 607 F.2d at 827 ("While the amended answer simply alleged that 'plaintiff's claims are

15
barred by the applicable statute of limitations,' the attached memorandum made specific mention of

16
Cal. Code Civ. Proc. § 338.1 as the statute of limitations upon which CNB relied. We find that under

17
these circumstances the statute of limitations was adequately pleaded.").

18
      All of OpenAI's affirmative defenses exhibit comparable deficiencies. Accordingly,

19
Plaintiffs respectfully request they be struck.

20
## II.   OPENAI'S NEGATIVE DEFENSES ARE IMPERMISSIBLY DUPLICATIVE.

21
      In the *Barnes* decision, which the Court cited favorably in *Winns*, 2021 WL 5632587 at *2,

22
the court observed that "'[a] defense which demonstrates that plaintiff has not met its burden of

23
proof as to an element plaintiff is required to prove is not an affirmative defense.'" 718 F. Supp. 2d

24
at 1173 (quoting *Zivkovic v. S. California Edison Co.,* 302 F.3d 1080, 1088 (9th Cir. 2002)). "Such a

25
defense is merely rebuttal against the evidence presented by the plaintiff." *Id.* "Thus, it is curious

26
that defendant asserts as affirmative defenses that which it need not prove." *Id.* at 1174.

27

28
[1] Of course, there is the additional complexity whether defenses to federal claims derive exclusively from federal common law or are borrowed from the law of the state in which the federal court sits.

The *Barnes* court determined that "[t]o the extent that the [defendant] restates negative defenses that exist in other parts of the complaint, those defenses are redundant pursuant to Rule 12(f) and should be struck so as to simplify and streamline the litigation." *Id.* (citing *Federal Trade Comm'n v. Think All Pub. L.L.C.,* 564 F.Supp.2d 663, 665 (E.D. Tex. 2008)). Consider these three exemplars among OpenAI's thirty-seven iterations of this approach:

**TWENTY-THIRD DEFENSE: NO BENEFIT**

Count IV (Breach of Quasi-Contract/Unjust Enrichment) fails because Plaintiff Musk did not confer a benefit on any OpenAI Defendant at his expense.

**TWENTY-FOURTH DEFENSE: NO UNJUST RETENTION OF A BENEFIT**

Count IV (Breach of Quasi-Contract/Unjust Enrichment) fails because none of the OpenAI Defendants unjustly retained a benefit at the expense of Plaintiff Musk.

**TWENTY-FIFTH DEFENSE: NO FIDUCIARY/CONFIDENTIAL RELATIONSHIP**

Count VI (Constructive Fraud) fails because no fiduciary or confidential relationship existed between Altman, Brockman, or OpenAI, Inc., on the one hand, and Plaintiff Musk, on the other hand.

Dkt. 176 at 120. The Twenty-Third and Twenty-Fourth Defenses constitute wholesale duplications of OpenAI's denials in Count IV (Unjust Enrichment). *Id.* at 95-96. The Twenty-Fifth Defense similarly mirrors in its entirety OpenAI's denials in Count VI (Constructive Fraud), *id.* at 96-98, and reiterated elsewhere, *id.* at 101-02.

All of OpenAI's negative defenses exhibit comparable redundancy and superfluity. Accordingly, Plaintiffs respectfully request they be struck.

## III. REGARDLESS, OPENAI'S OVERLAPPING, THREADBARE DEFENSE PLEADING DEPRIVES PLAINTIFFS OF FAIR NOTICE.

OpenAI will almost certainly contend in response to this Motion that, if Plaintiffs are allowed to plead a number of claims for relief, Plaintiffs should not be heard to object to OpenAI's kitchen-sink approach.[2] Of course, the difference is that Plaintiffs provided OpenAI with extensive

---

[2] The irony proves acute given OpenAI's prior characterization of Plaintiffs' antitrust claims as "kitchen sink . . . outlandish theories," Dkt. 106 at 33—at least before the Biden Administration's Department of Justice and FTC backed them, Dkt. 87—while it is now reported that OpenAI itself contemplates antitrust complaints to regulators concerning Microsoft on similar grounds. *OpenAI*

factual and legal support for each of their claims; indeed, the Court even held those requiring heightened particularity satisfied that standard. Dkt. 163 at 4-6. The other notable difference is that OpenAI chose to proliferate its defenses by 350% *after* the Court had already *narrowed* Plaintiffs' claims in that very same order. OpenAI has now introduced more affirmative defenses than Plaintiffs have claims proceeding to the Phase One trial.

In any event, OpenAI would be correct insofar as reciprocal standards should govern both parties' pleading obligations. If Plaintiffs must provide OpenAI with particular pleading under Federal Rule of Civil Procedure 9(b), and at a minimum, plausible pleading under *Twombly/Iqbal*, OpenAI can reasonably be expected to provide a single factual allegation to support its kitchen-sink defenses. "The key to determining the sufficiency of pleading an affirmative defense is whether it gives plaintiff fair notice of the defense." *Wyshak*, 607 F.2d at 827. OpenAI's pleading systematically deprives Plaintiffs of essential information regarding the governing legal authority, constituent defensive elements, and supporting factual allegations—in essence, everything fundamental fairness demands for a fair chance to respond. *Banga v. Kanios*, No. 16-CV-04270-RS, 2018 WL 11360187, at *2 (N.D. Cal. Mar. 20, 2018) ("At minimum, 'fair notice' generally requires some pleading of facts: 'Neither mere reference to a legal doctrine, nor a bare recitation of statutory provisions, provides fair notice of an affirmative defense.'" (quoting *Barrilleaux v. Mendocino Cty.*, 2016 WL 1298860, at *2 (N.D. Cal. Apr. 4, 2016)).

Further, OpenAI's overlapping defenses render Plaintiffs even more perplexed. According to OpenAI's Answer, Plaintiffs lack standing to pursue *any* of the "Subject Claims" (No. 43), which term encompasses Breach of Charitable Trust, Dkt. 176 at 27, yet in addition, Musk specifically lacks standing to assert a breach of charitable trust claim (No. 2). This duplication cannot be attributed to the distinction between Article III standing and statutory standing, given that there is yet another defense of no Article III standing (No. 44). Consequently, some undisclosed rationale must underlie Plaintiffs' purported lack of standing regarding charitable trust claims under two

---

*executives weigh antitrust accusation against Microsoft, WSJ reports*, Reuters (June 17, 2025), *available at* https://www.reuters.com/sustainability/boards-policy-regulation/openai-executives-have-discussed-accusing-microsoft-anticompetitive-behavior-wsj-2025-06-16/.

CASE NO. 24-CV-04722-YGR
PLAINTIFFS' MOT. TO STRIKE

distinct statutory frameworks. Which statutes? Plaintiffs cannot discern.

Identical perplexity results from OpenAI's pleading of "No pattern" (No. 36) followed by separate pleading of "No related acts" (No. 37) and "No continuous acts" (No. 38), when relatedness and continuity are the sole elements of a pattern under RICO. *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989). A deficiency in either relatedness or continuity would necessarily establish the absence of any cognizable pattern as a matter of law. What additional meaning can "No pattern" therefore convey?

## IV.    OPENAI'S WEAPONIZATION OF ITS INSUFFICIENTLY PLED DEFENSES DURING DISCOVERY PREJUDICES PLAINTIFFS.

If OpenAI's fifty-five defenses were merely "haphazardly" filed "without a legitimate basis," Plaintiffs would not impose on the Court with this Motion, especially as to the sixteen classic affirmative defenses. *Fabian v. LeMahieu*, No. 4:19-CV-00054-YGR, 2020 WL 3402800, at *4 (N.D. Cal. June 19, 2020). However, OpenAI's tactical expansion to fifty-five defenses now imposes issues in dispute for summary judgment practice and trial. Plaintiffs have no way to know—and, absent striking, will not know until, at the earliest, summary judgment, after the close of discovery—what discovery to seek concerning OpenAI's vague contentions that are inherently highly fact-intensive.[3] *See, e.g.*, *Morfin-Arias v. Knowles*, No. 16-CV-06114-BLF, 2018 WL 1710369, at *8 (N.D. Cal. Apr. 9, 2018) ("The application of the unclean hands doctrine is generally a fact intensive inquiry."); *Namisnak v. Uber Techs., Inc.*, 315 F. Supp. 3d 1124, 1128 (N.D. Cal. 2018), *aff'd,* 971 F.3d 1088 (9th Cir. 2020) ("The linchpin for equitable estoppel is equity— fairness," and "the application of the doctrine is fact-specific."); *Golden Gate Way, LLC v. Enercon Servs., Inc.*, 572 F. Supp. 3d 797, 830 (N.D. Cal. 2021) ("This is a difficult standard to meet because waiver always rests upon intent, and the burden is on the party claiming a waiver of right to prove it by clear and convincing evidence that does not leave the matter to speculation." (cleaned up)).

Additional prejudice arises from permitting OpenAI to assert defenses with "clearly

---

[3] The prejudicial uncertainty, highlighted in Part III, equally afflicts the negative defenses. In addition to the standing example, Plaintiffs must also endeavor to decipher what might qualify as "No damages" (No. 50), as distinguished from "No harm" (No. 21), and regarding "No damages" specifically, how it differs from a "Lack of injury" (No. 40), for purposes of RICO.

CASE NO. 24-CV-04722-YGR
                                        PLAINTIFFS' MOT. TO STRIKE

apparent" insufficiency. *Prods. & Ventures Int'l v. Axus Stationary (Shanghai) Ltd.*, No. 16-CV-00669-YGR, 2017 WL 1330598, at *2 (N.D. Cal. Apr. 11, 2017). As several courts within this District have recognized, the need to "separately litigate" deficiently pled defenses and the consequent "additional costs in discovery" are important considerations warranting relief under Rule 12(f). *Free Speech Sys., LLC v. Menzel*, 390 F. Supp. 3d 1162, 1176 (N.D. Cal. 2019); *FBC Mortg., LLC v. Skarg*, 699 F. Supp. 3d 837, 840–41 (N.D. Cal. 2023) ("'[T]he function of a 12(f) motion to strike is to avoid the expenditure of time and money[, which] arise from litigating spurious issues by dispensing with those issues prior to trial.'" (quoting *Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983))); *Nippon Sigmax Co., Ltd v. Kranos Corp.*, No. 21-CV-0375-DOC (ADSx), 2021 WL 2634823, at *4 (C.D. Cal. June 25, 2021) ("[T]he Court believes extending the plausibility requirement to affirmative defenses strikes the proper balance between judicial economy and avoiding prejudice to the parties. The *Twombly/Iqbal* heightened standard saved judicial resources by avoiding fishing expeditions, where a plaintiff's threadbare accusations could subject defendants to the rigors of discovery."); *Harris v. Chipotle Mexican Grill, Inc.*, 303 F.R.D. 625, 630 (E.D. Cal. 2014) ("This defense, purely hypothetical and supported by no factual basis, risks sending plaintiffs on a fishing expedition . . . and the court will grant plaintiffs' motion to strike it." (citation omitted)); *Vogel v. Huntington Oaks Delaware Partners, LLC*, 291 F.R.D. 438, 441 (C.D. Cal. 2013) ("Requiring a defendant to bolster its affirmative defenses with some factual support comports with *Iqbal*'s message that discovery should not be used as a fishing expedition." (citing *Barnes*, 718 F. Supp. 2d at 1172)).

Here, OpenAI has weaponized its sweeping defenses in an effort to justify its overbroad discovery demands, fundamentally incompatible with the expedited nature and purposes of Phase One proceedings. For example, during an exhaustive nine-hour meet-and-confer conference spanning June 12-13, 2025, OpenAI sought to rationalize its onerous discovery requests by repeatedly invoking its voluminous defenses. Parkkinen Decl. ¶ 3. This approach inflicts demonstrable prejudice upon Plaintiffs, who have and must continue to expend substantial resources responding to discovery demands untethered, like OpenAI's fifty-five defenses, to any coherent legal theory, facts, or cause of action. When Plaintiffs questioned the substantive basis of these

defenses, OpenAI persisted undeterred, arguing that Plaintiffs had failed to contest OpenAI's defensive pleadings, *id*. ¶ 4—implicitly soliciting the present Motion.

Indeed, since the conclusion of the parties' June 12-13 conference, OpenAI, emboldened, has issued an *additional* eleven subpoenas, including taking the extraordinary step of subpoenaing Plaintiffs' litigation counsel. *Id*. ¶ 5. In sum, such heightened discovery demands, purportedly buttressed by fifty-five "defenses," impose burdensome obligations not merely upon Plaintiffs, but upon numerous third parties who must now divert resources and attention to respond to subpoenas predicated, in whole or in part, upon legally insufficient pleadings. OpenAI has thus exploited its defenses as instruments for discovery expansion rather than substantive legal positions worthy of consideration and adjudication, creating a cascade of prejudicial effects that undermines the efficiency these expedited proceedings were designed to achieve.

## **CONCLUSION**

For the foregoing reasons, the insufficiency of OpenAI's defenses is "clearly apparent." *Prods. & Ventures Int'l*, 2017 WL 1330598, at *2. Plaintiffs respectfully request the Court strike OpenAI's fifty-five separately denominated defenses as insufficient under Federal Rule of Civil Procedure 12(f). In the alternative, and at a minimum, Plaintiffs request the Court strike OpenAI's sixteen manifestly insufficient affirmative defenses.

DATED: June 26, 2025                         Respectfully Submitted,

TOBEROFF & ASSOCIATES, P.C.

           */s/ Marc Toberoff*
              Marc Toberoff

*Attorneys for Plaintiffs Elon Musk
and X.AI Corp.*