1           UNITED STATES DISTRICT COURT

2           NORTHERN DISTRICT OF CALIFORNIA

3     Before The Honorable Thomas S. Hixson, Magistrate Judge

4

5   MUSK,                        )
                                 )
6           Plaintiff,           )
                                 )
7   vs.                          )   No. C 24-04722-YGR
                                 )
8   ALTMAN, et al.,              )
                                 )
9           Defendants.          )
    _____ )
10

11                              San Francisco, California
                                Tuesday, July 1, 2025
12
    TRANSCRIPT OF PROCEEDINGS OF THE OFFICIAL ELECTRONIC SOUND
13            RECORDING 1:03 - 1:27 = 25 MINUTES

14  APPEARANCES:

15  For Plaintiff:
                                23823 Malibu Road
16                              Suite 50-363
                                Malibu, California 90265
17                         BY:  JAYMIE PARKKINEN, ESQ.

18  For Defendants:
                                Wachtell, Liptom, Rosen & Katz
19                              51 W 52nd Street
                                New York, New York 10019
20                         BY:  BRADLEY R. WILSON, ESQ.
                                NATHANIEL CULLERTON, ESQ.
21
                                Dechert, LLP
22                              45 Fremont Street
                                Floor 26
23                              San Francisco, California
                                 94105
24                         BY:  RUSSELL P. COHEN, ESQ.
                                HOWARD M. ULLMAN, ESQ.
25
                (APPEARANCES CONTINUED ON NEXT PAGE)

2

1  For Defendants:

2                                    Morrison & Foerster, LLP
                                     425 Market Street
                                     San Francisco, California
3                                      94105
                                BY:   WILLIAM FRENTZEN, ESQ.
4

   Transcribed by:               Echo Reporting, Inc.
5                                 Contracted Court Reporter/
                                  Transcriber
6                                 echoreporting@yahoo.com

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

3

1    Tuesday, July 1, 2025                                    1:03 p.m.

2                        P-R-O-C-E-E-D-I-N-G-S

3                             --oOo--

4              THE CLERK:  We are here in civil action 24-4722,

5    Musk versus Altman, the Honorable Thomas S. Hixson

6    presiding.

7         Counsel, please state your appearances.  Let's start

8    with Plaintiffs' counsel, and then Open ID (sic) Defendants,

9    and then the rest of the Defendants' counsel, okay?  So go

10   ahead.

11             MR. PARKKINEN (via Zoom):  Good afternoon.  Jaymie

12   Parkkinen on behalf of Plaintiffs, Elon Musk and xAI.

13             THE COURT:  Good afternoon.

14             MR. WILSON (via Zoom):  Good afternoon, your

15   Honor.  Bradley Wilson from Wachtell, Lipton, Rosen, and

16   Katz on behalf of the OpenAI Defendants.  I'm here with my

17   partner Nate Cullerton.

18             THE COURT:  Good afternoon.

19             MR. FRENTZEN (via Zoom):  Good afternoon, your

20   Honor.  William Frentzen, also for the OpenAI Defendants.

21             THE COURT:  Good afternoon.

22             MR. COHEN (via Zoom):  And good afternoon, your

23   Honor.  Russell Cohen on behalf of the Microsoft Defendants.

24   And here with me is Howard Ullman.

25             THE COURT:  Good afternoon.

4

1      We are here on a discovery dispute raised by the OpenAI

2  Defendants.  And the issue to be decided is whether Mr.

3  Musk's e-mail accounts at the other business entities that

4  he controls should be treated as party discovery or third-

5  party discovery.  Before we get to that, I wanted the

6  parties to update me on the status of things.

7      Let me first turn to the OpenAI Defendants.  In your

8  most recent filing, you indicated that Tesla, X Corp,

9  Excession, and the Musk Foundation have produced nothing and

10 that SpaceX and Neuralink have produced no metadata.  Is

11 that still the case, or are there status updates you have

12 for me?

13          MR. WILSON:  Your Honor, thank you for the

14 question.  The state of play as it existed when we sent that

15 letter yesterday remains unchanged.

16          THE COURT:  I see.

17      Then let me turn to Plaintiffs.  Do you disagree with

18 that characterization?

19          MR. PARKKINEN:  We disagree insofar as X Corp was

20 only sent a subpoena two weeks ago, and it's not even due to

21 respond to the subpoena until tomorrow.  So, certainly, you

22 know, it's not surprising that X Corp hasn't produced any

23 documents just yet.

24          THE COURT:  Okay.

25          MR. PARKKINEN:  Yes, I'll leave it -- I'll leave

5

1  it at that.

2        THE COURT:  Okay.  Well, thank you for that

3  clarification.

4     And then the OpenAI Defendants, in terms of the other

5  Musk-controlled entities that you've mentioned, the ones

6  that you specifically mentioned in the brief were Tesla, X

7  Corp, Excession, the Musk Foundation, SpaceX, and Neuralink.

8  But when you refer to the Musk-controlled entities, you use

9  words like "including."  Are there other Musk-controlled

10  entities that are embraced within this discovery dispute?

11        MR. WILSON:  No, your Honor, those are the

12  entities that we're focused on.  I have not included xAI,

13  which is another Musk-controlled entity, because it is a

14  Plaintiff in the case, and so I think, as to that entity,

15  they are agreeing on the other side that they are on the

16  hook for party discovery from xAI.

17        THE COURT:  Okay.  Thank you.

18     Then let me turn to Plaintiffs' counsel.  For the

19  entities, Tesla, X Corp, Excession, the Musk Foundation,

20  SpaceX, and Neuralink, do you dispute that Mr. Musk controls

21  those entities?

22        MR. PARKKINEN:  We would just add that he does not

23  exclusively control all of these entities.  As I'm sure you

24  may know, Tesla, for example, is a publicly traded

25  corporation with many people involved in the controlling of

6

1  that entity.  But we don't dispute that he has control over

2  his e-mail accounts with respect to those entities.

3          THE COURT:  So for all of those entities, you

4  agree that he has control over his business e-mail accounts,

5  correct?

6          MR. PARKKINEN:  At least as a practical matter,

7  your Honor, yes.

8          THE COURT:  Can you clarify me -- let's start with

9  Tesla.  What is his position at the company?  Is he CEO?

10          MR. PARKKINEN:  Yes, he's CEO, and I -- to be

11  honest, I'm not sure if he has other titles within the

12  company as well.

13          THE COURT:  Do you know if he's the majority

14  shareholder?

15          MR. PARKKINEN:  I do not know for certain whether

16  he is or not.  I don't think he is.

17          THE COURT:  For X Corp, is he the CEO?

18          MR. PARKKINEN:  Again, I believe that's true.  For

19  Neuralink -- and if I see where your Honor is going, I do

20  not know his exact position in all of these companies and

21  couldn't speak to it with certainty.  He is the CEO of xAI,

22  which is the Plaintiff in this case.

23          THE COURT:  Would you agree that Mr. Musk is a

24  high level executive at each of these entities?

25          MR. PARKKINEN:  Yes.

7

1          THE COURT:  Under the case law, if someone is a

2   high level executive at a company, they are deemed to have

3   control over their business e-mail accounts, and so my

4   tentative thought is to conclude that this is party

5   discovery and that because of this control that Mr. Musk has

6   as a high level executive, these e-mails should be produced

7   as part of party discovery.  I didn't see any legal

8   arguments to the contrary advanced by Plaintiffs, so why

9   don't I turn to you now to see if you have any legal

10  arguments to the contrary?

11         MR. PARKKINEN:  Well, your Honor, our position is

12  largely that -- if I can just back up just a little bit to

13  provide some --

14         THE COURT:  Sure, that would be fine.

15         MR. PARKKINEN:  -- some context.

16     So the OpenAI Defendants subpoenaed Tesla, SpaceX,

17  Neuralink, for example, and then those entities, their in-

18  house counsel and some retained outside counsel, proceeded

19  to respond to those subpoenas.  OpenAI and those counsel

20  negotiated the scope of the requests and the agreed upon

21  production.  They negotiated the search terms, all without

22  any involvement of Plaintiffs.  OpenAI -- I was not copied

23  on any e-mails.  I was not a party of any of these

24  conferences that took place.  And then come June, OpenAI all

25  of a sudden now wants these documents produced from

8

1  Plaintiffs, even though we were excluded from the process
2  the entire time.  And so our position is that at this point,
3  it's somewhat moot.  The party -- the -- SpaceX, for
4  example, has already produced documents.  Neuralink has
5  already produced documents.  And it's not quite clear what
6  exactly OpenAI Defendants are, in fact, seeking, whether
7  they want those documents to come from Plaintiffs with
8  Plaintiffs' Bates numbers on them or what exactly the relief
9  is they're requesting.  So we believed we were -- while
10  trying to respect the third-party nature of these other
11  entities -- working to help facilitate and help these third
12  parties understand the issues in the case, the scope of
13  discovery, what would be responsive, providing them copies
14  of the protective order, the complaint, and so on.  So we
15  believe as an effective matter, you know, as we said in our
16  letter, this is essentially moot because, you know, it's not
17  just OpenAI that wants these documents.  Plaintiffs want
18  these documents as well.  We agree that there's a lot of
19  relevant information coming from these entities, and we're
20  just as incentivized to get these documents as they are.  So
21  while not necessarily being a legal argument, we just -- we
22  believe it's moot and really not necessitating the Court's
23  input or attention any further.
24          THE COURT:  Well, it doesn't sound like it is moot
25  because, according to the OpenAI Defendants, Tesla, X Corp,

9

1  Excession, and the Musk Foundation have produced nothing.

2  So that doesn't sound like obligations have been satisfied.

3  And they say that SpaceX and Neuralink haven't produced any

4  metadata.  So it doesn't sound to me like this dispute is

5  moot.  And I don't think that their serving subpoenas on

6  these other entities waives any argument about these being

7  party discovery.  They can do a belt and suspenders approach

8  to discovery, and it looks like that's what they've done.

9  But you represent the Plaintiffs in this action, Counsel,

10  and one of them is Mr. Musk, and he has control over those

11  e-mail accounts in those other companies, and you represent

12  him in this action, and so you need to make those e-mails

13  get produced.

14          MR. PARKKINEN:  Your Honor, we are working with

15  these companies to get those e-mails produced, and that

16  production is ongoing.  Tesla is due to produce documents

17  imminently.  And if I may ask for some clarification, what

18  is it specifically that the Plaintiffs must be doing

19  differently is, I guess, our question either to OpenAI

20  Defendants or if the Court can offer some guidance.

21          THE COURT:  Well, this is party discovery, so you

22  don't get to put responsibility on other people for what is

23  your job.  So you and your client should be collecting

24  documents and producing them.  And if I understand

25  correctly, under the current case schedule, the deadline for

10

the substantial completion of document discovery is July

14th.  Do you agree that's the substantial completion

deadline?

MR. PARKKINEN:  Yes.

THE COURT:  Then that's the deadline that you need

to meet.  And you can't hide behind these other companies as

third parties because your client in this case controls his

business e-mail accounts at those companies.

MR. PARKKINEN:  Just to clarify, your Honor, I

assure you, we're not hiding behind the companies with

respect to producing Mr. Musk's e-mails.  We -- like -- as I

said, we want these documents as well and are -- you know,

as my colleague says, we're in violent agreement with OpenAI

about this.  We all want these documents, and we're going to

make sure that these documents get produced.

In terms of searching for these documents, as we stated

in our letter response, it's really important to have these

entities involved in this production process, as they have

proprietary information, and as we said, with SpaceX, they

coordinate with NASA and the armed forces regarding national

defense matters, and so their participation is really

integral to, you know, the efficient handling of this

process.

THE COURT:  There is no problem with involving

additional attorneys or other additional people who might

1   need to be involved.  That's not a problem.  But,

2   ultimately, the responsibility for complying with discovery

3   obligations rests on the parties and their attorneys, and so

4   that's your client and you.  So if you want to involve other

5   people at the companies or other outside counsel to review

6   things to make sure that, you know, appropriate safeguards

7   are in place, that's all perfectly fine.  However, that

8   doesn't allow you to get out of the deadlines under the case

9   schedule.  So it's perfectly fine for you to involve other

10  people.  You've identified some relevant considerations

11  that, for example, SpaceX might have, and I think those are

12  legitimate concerns to have.  However, even as you deal with

13  those issues, you do have to comply with your obligations in

14  this case and to complete document production in a timely

15  fashion.

16      Now, if some of these subpoenas asked for things beyond

17  the scope of Mr. Musk's e-mails, then those are, in fact,

18  subpoenas to other companies, and so I'm not expressing a

19  view on that.  The only issue teed up for me is Mr. Musk's

20  e-mail accounts at those companies, and I think that is

21  party discovery.

22      Let me turn to the OpenAI Defendants.  You're not

23  asking me to say that things that Tesla or SpaceX, for

24  example, possess outside of Musk's e-mail accounts, that

25  those are party discovery, are you?

12

1        MR. WILSON:  No, your Honor, we aren't.  And

2   that's actually the answer to the question why we served the

3   subpoenas.  There are other relevant individuals at these

4   companies, other relevant repositories of documents that

5   we're seeking through those subpoenas.  And what this motion

6   is about is Mr. Musk's e-mail accounts at the various

7   companies.  And I suppose if there is a folder, for example,

8   of electronic documents at any of these companies that only

9   Mr. Musk could access, then that might be covered by party

10  discovery.  We don't have enough insight into this to know

11  whether those kinds of repositories exist, but that's the

12  only caveat I would offer to the Court's question.

13        THE COURT:  Okay.  Well, thank you for that

14  additional information.  And so I'm going to issue a written

15  order, but, as far as I'm concerned, the only issue teed up

16  for me today is whether Mr. Musk's e-mail accounts at those

17  other entities at which he's a high level executive aren't

18  under his control, and I think that the answer is yes.

19      Let me turn to Plaintiffs' counsel.  The substantial

20  completion deadline is July 14th.  Are you on track to meet

21  that?

22        MR. PARKKINEN:  We are -- I just want to be

23  careful and think through this.  You know, for example --

24        THE COURT:  And just to make sure my question is

25  clear, when I say, "Are you on track to meet that?" I mean

13

1 including Mr. Musk's e-mail accounts at these other entities

2 that we've discussed.

3          MR. PARKKINEN:  I will say, broadly speaking, yes,

4 your Honor.  The only reason I pause is, for example, the X

5 Corp -- not to be confused with xAI, but the X Corp, as we

6 said, the subpoena response is not even due until tomorrow.

7 So that production, to have that -- you know, all the

8 documents searched for and reviewed within two weeks would

9 be challenging indeed.

10          THE COURT:  Well, as I've explained, if the OpenAI

11 Defendants are asking for things from X Corp outside of Mr.

12 Musk's e-mails, I'm not expressing an opinion one way or the

13 other about whether that's party discovery.  That issue

14 hasn't been teed up for me.  So if there's true third-party

15 discovery, then that's not what I'm asking about.  But it's

16 really about X Corp's -- Mr. Musk's e-mails at X Corp.  Are

17 you on track to have those reviewed and produced by July

18 14th?

19          MR. PARKKINEN:  Yes, your Honor.

20          THE COURT:  Okay.

21          MR. WILSON:  Your Honor, if I could just clarify

22 that the metadata issue is important here to us, and I

23 didn't mention it, but I think that is captured within our

24 request about Mr. Musk's e-mails, and we would ask that the

25 Court's order -- and if the Court is so inclined -- would

14

1 include a requirement that Mr. Musk's e-mail accounts have

2 metadata produced along with the e-mails.

3      THE COURT:  My tentative thought is that I do

4 think that metadata is included within the e-mails that Mr.

5 Musk controls, but let me turn to Plaintiffs' counsel.

6   Do you have a different view?  Do you distinguish

7 control over the e-mails from control over metadata?

8      MR. PARKKINEN:  I would have to think about that.

9 I have not considered that as of yet.  I will say that

10 complicates the July 14th deadline because it's much more

11 invasive to go in and reach in and grab this metadata as

12 well.

13      THE COURT:  Have the parties discussed with each

14 other an ESI protocol, in terms of when you produce

15 documents, what's to be included with them, for example

16 metadata?

17      MR. PARKKINEN:  We have discussed that.  We had

18 circulated an ESI protocol draft, and OpenAI has not given

19 it back to us for, you know, final review and consideration

20 or entry by the Court, and I believe we sent that draft

21 maybe five weeks ago, so I'm not sure why that's taking so

22 long, but --

23      MR. WILSON:  Your Honor, I don't want to bog down

24 on an issue that is not presented to the Court, but what Mr.

25 Parkkinen just said is not accurate.  We exchanged multiple

15

1  drafts of an ESI protocol.  I think we were down to

2  essentially agreement on all the terms except for perhaps

3  one or two, and neither of those, I think, should impede

4  their ability to provide at least customary metadata for

5  these e-mails.

6           THE COURT:  In my opinion, it is typical to

7  produce metadata with an e-mail document production, and so

8  I will expect that for these e-mail accounts as well.  I'm

9  just talking about the normal and customary metadata fields

10 that litigants normally produce, and that's what I think

11 should be done here.  If you want to negotiate something

12 more elaborate or detailed than that, then you can, of

13 course, do that, but in terms of the scope of my order, I do

14 think that metadata should accompany the e-mail productions.

15     And to be clear, I'm only ruling on the party status of

16 these e-mail accounts at the other companies.  If there are

17 particular disputes, for example as to particular request

18 for production or timeframes or something like that, that's

19 not presented to me, and I'm not expressing a view on that.

20 But I am going to issue a written order finding that these

21 e-mail accounts at these other entities are party discovery

22 and that Plaintiffs are obligated to produce this in a

23 timely fashion under the case schedule.

24     Now, this -- the case schedule is keeping the parties

25 on a fast track, and so what I would like to do is to ask if

16

1  there are any other discovery disputes that are likely to

2  arise that the parties will want me to address.  If you

3  can't think of them right now and they come up later, that's

4  fine.  I'm just asking for a preview, if there's anything

5  that you see coming down the road, to help me see what's

6  coming.

7       Let me first turn to Plaintiffs.  Do you have any

8  discovery disputes that you anticipate having to need to

9  raise with the Court?

10           MR. PARKKINEN:  Yes, your Honor.  We have a fair

11 number of issues about the scope of requests for production,

12 OpenAI's refusals to respond to requests for admission,

13 evasive interrogatory answers.  So we do anticipate needing

14 some relief if we can't get to the bottom of that through

15 the meet and confer process soon.  We've already met and

16 conferred about it.  We've exchanged letters.  It appears

17 we're reaching impasses on some of these matters, and so we

18 would expect to have to submit a letter soon.

19           THE COURT:  All right.  Thank you for that.

20      And let me turn first to the OpenAI Defendants.  Are

21 there any discovery disputes that you see coming down the

22 pipeline?

23           MR. WILSON:  Unfortunately, your Honor, yes.  In

24 terms of the discovery bit that's been requested from us,

25 I'm a little surprised by what Mr. Parkkinen just said.

1   It's been, I think, two weeks since we made substantial

2   compromise positions or conveyed substantial compromise

3   positions to the other side, and we hadn't heard anything

4   further about that, but we'll deal with whatever lingering

5   issues there are.

6        On our side, we do have substantial concerns, including

7   -- I would start with the Plaintiffs' position that they're

8   not obligated to produce any documents that are relevant to

9   our counterclaims in the case because there's a pending

10  motion to dismiss those counterclaims.  Our position is,

11  under the federal rules, there's no automatic stay of

12  discovery.  The Court has entered an expedited schedule at

13  the Plaintiffs' request.  This case is progressing to

14  depositions in a few weeks, and that motion will not be

15  decided by the Court.  It may not even be fully submitted to

16  the Court in time for those depositions.  And so we think

17  the idea that discovery on our counterclaims should be held

18  in abeyance does not have merit.  So if we don't get

19  progress on that, we'll have to present that to the Court.

20       We've also been met with reluctance to produce

21  documents and communications related to the alleged implied

22  contract that is at the core of this dispute.  The

23  Plaintiffs are taking the position that those communications

24  should not be produced unless we produce documents

25  responsive to other requests on what I would characterize as

18

1    tangential at best issues, and we don't think a tit for tat

2    approach on core documents in the case when they're the

3    Plaintiff is appropriate.  And so we would anticipate, if we

4    can't get a resolution, bringing that to the Court's

5    attention I would anticipate no later than next week.

6          THE COURT:  All right.  Thank you.

7       And then let me turn to the other Defendants.  Are

8    there other discovery fights you see coming up?

9          MR. ULLMAN (via Zoom):  Your Honor, we've tried to

10   structure or tailor our discovery requests to focus on

11   Microsoft-specific issues.  We understand from the

12   Plaintiffs that they are conducting one search, one

13   collection process for documents responsive to OAI's

14   requests, as well as ours, and are making tranches of

15   productions responsive to both sets of requests or all sets

16   of requests.  So I would just say we share OpenAI's concerns

17   about the e-mail domain searches that have just been

18   discussed and about the scope and pace of Plaintiffs'

19   document production.

20         THE COURT:  Okay.  Thank you.

21      Then this is a fairly tight case schedule, so we need

22   to keep things moving.  So if you have a discovery dispute,

23   I want the parties to meet and confer with each other

24   promptly.  But please don't meet and confer forever.  Meet

25   and confer in good faith to see if you can resolve the

19

1  dispute.  And if you can't, then promptly get a joint

2  discovery letter brief on file.  We need to -- if there are

3  disputes that the parties can't work out, that's what I'm

4  here for, to help resolve those issues.  So don't let these

5  things drag out for a long time.  Meet and confer.  Do so in

6  good faith and attempt to resolve it.  And if you can't

7  resolve it, that's fine.  Please quickly get one or more

8  joint discovery letter briefs on file.

9       So let me turn to Plaintiffs.  Is there anything

10 further that you would like to address at the hearing today?

11          MR. PARKKINEN:  One thing, yes, your Honor.  It's

12 in OpenAI's initial letter to Judge Gonzalez Rogers.  They

13 had raised the issue of Mr. Birchall's subpoenas and our

14 ability to accept service of them.  Within that, while, you

15 know, we have since been authorized to accept service and

16 have done so, the issue arises that they unilaterally

17 scheduled Mr. Birchall's deposition without conferring with

18 Counsel regarding that scheduling in violation of the local

19 rules.  And so we propose that, rather than doing this

20 piecemeal, scattershot and have a -- having a unorganized

21 schedule at the parties, including Microsoft, OpenAI, and

22 the Plaintiffs, you know, get together and try to

23 collaborate on a global deposition schedule, given that

24 there are likely numerous witnesses to be deposed in the

25 relatively short amount of time.  And so if we could get

20

1  some guidance from the Court on that, I think that would

2  help resolve that issue kind of proactively.

3          THE COURT:  I think what you should do is meet and

4  confer with the Defendants, and then if you're able to get

5  an agreement on that, then great.  And if you're not, then

6  the parties should promptly file a joint discovery letter

7  brief, and we can discuss the scheduling and sequence of the

8  depositions.

9          MR. PARKKINEN:  Thank you.

10         THE COURT:  And let me turn to the OpenAI

11  Defendants.  Do you have any further issues you would like

12  to address at the hearing today?

13         MR. WILSON:  Nothing further, your Honor, except

14  to say that on the deposition of Mr. Birchall, I had thought

15  we had been very clear with Mr. Parkkinen that that date was

16  there as a placeholder and that we were planning to discuss

17  its scheduling in connection with the broader schedule.  But

18  if there was any confusion on that, hopefully I've just

19  clarified it.

20         THE COURT:  All right.  And then let me turn to

21  the other Defendants.

22      Do you have any additional issues you would like to

23  raise at the hearing today?

24         MR. COHEN:  We don't, your Honor.  Thank you.

25         THE COURT:  All right.  Thank you, Counsel.  The

21

1   matter is submitted.  I will issue a written order.

2           MR. WILSON:  Thank you, your Honor.

3           MR. PARKKINEN:  Thank you, your Honor.

4           THE CLERK:  Thank you, everyone.  We're off the

5   record in this matter.  Court is in recess.

6       (Proceedings adjourned at 1:27 p.m.)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

22

CERTIFICATE OF TRANSCRIBER

1

2

3      I certify that the foregoing is a true and correct

4  transcript, to the best of my ability, of the above pages of

5  the official electronic sound recording provided to me by

6  the U.S. District Court, Northern District of California, of

7  the proceedings taken on the date and time previously stated

8  in the above matter.

9      I further certify that I am neither counsel for,

10  related to, nor employed by any of the parties to the action

11  in which this hearing was taken; and, further, that I am not

12  financially nor otherwise interested in the outcome of the

13  action.

14

15

16

17      Echo Reporting, Inc., Transcriber

18          Saturday, July 5, 2025

19

20

21

22

23

24

25