VIA CM/ECF

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| ELON MUSK, et al., <br><br> Plaintiffs, <br><br> v. <br><br> SAMUEL ALTMAN, et al., <br><br> Defendants. | Case No. 4:24-cv-04722-YGR <br><br> **JOINT LETTER BRIEF** <br><br> Judge: Hon. Yvonne Gonzalez Rogers <br><br> Magistrate Judge: Hon. Thomas S. Hixson <br><br> Date Action Filed: August 5, 2024 <br> Trial Date: March 30, 2026 |

July 7, 2025

The Honorable Thomas S. Hixson
United States District Court, Northern District of California
450 Golden Gate Avenue
San Francisco, CA 94102

    Re:  *Musk, et al.* **v.** *Altman, et al.*, **Case No. 4:24-cv-04722-YGR**

Dear Judge Hixson:

    Pursuant to Your Honor's Discovery Standing Order, the parties respectfully submit this joint letter addressing:

1. OpenAI Defendants' First Set of Requests for Production to Plaintiff Elon Musk;
2. OpenAI Defendants' First Set of Requests for Production to Plaintiff Shivon Zilis;
3. OpenAI Defendants' First Set of Requests for Production to Plaintiff X.AI Corp.;
4. OpenAI Defendants' Second Set of Requests for Production to Plaintiff Elon Musk;
5. OpenAI Defendants' Second Set of Requests for Production to Plaintiff X.AI Corp.;
6. OpenAI Defendants' First Set of Interrogatories to Plaintiff Elon Musk;
7. OpenAI Defendants' First Set of Requests for Admission to Plaintiff Elon Musk;
8. OpenAI Defendants' Subpoena to Ariel Z. Emanuel; and
9. OpenAI Defendants' Subpoena to Emanuel Capital Management, LLC.

    The parties attest that they met and conferred in good faith in an effort to resolve this dispute before filing this joint letter.

**VIA CM/ECF**

| | |
|---|---|
| */s/ Jaymie Parkkinen* | */s/ Bradley R. Wilson* |
| Jaymie Parkkinen, SBN 318394 | Bradley R. Wilson (admitted *pro hac vice*) |
| TOBEROFF & ASSOCIATES, P.C. | Nathaniel Cullerton (admitted *pro hac vice*) |
| 23823 Malibu Road, Suite 50-363 | WACHTELL, LIPTON, ROSEN & KATZ |
| Malibu, CA 90265 | 51 West 52nd Street |
| Telephone: (310) 246-3333 | New York, NY 10019 |
| Facsimile: (310) 246-3101 | Telephone: (212) 403-1000 |
| | Facsimile: (212) 403-2000 |

*Attorneys for Plaintiffs Elon Musk and X.AI Corp.*

JORDAN ETH (CA SBN 121617)
JEth@mofo.com
WILLIAM FRENTZEN (CA SBN 343918)
WFrentzen@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105
Telephone: (415) 268-7000
Facsimile: (415) 268-7522

*Attorneys for Defendants Samuel Altman, Gregory Brockman, OpenAI, Inc., OpenAI L.P., OpenAI, L.L.C., OpenAI GP, L.L.C., OpenAI OpCo, LLC, OpenAI Global, LLC, OAI Corporation, LLC, OpenAI Holdings, LLC, OpenAI Startup Fund Management, LLC, OpenAI Startup Fund GP I, L.L.C., OpenAI Startup Fund I, L.P., OpenAI Startup Fund SPV GP I, L.L.C., OpenAI Startup Fund SPV GP II, L.L.C., OpenAI Startup Fund SPV GP III, L.L.C., OpenAI Startup Fund SPV GP IV, L.L.C., OpenAI Startup Fund SPV I, L.P., OpenAI Startup Fund SPV II, L.P., OpenAI Startup Fund SPV III, L.P., OpenAI Startup Fund SPV IV, L.P., Aestas Management Company, LLC, and Aestas LLC*

VIA CM/ECF

## OpenAI Defendants' Statement

Plaintiff Elon Musk is asserting broad powers to direct OpenAI's affairs in perpetuity on the basis of an alleged implied contract and charitable trust with OpenAI, Inc. and its CEO, Sam Altman. The OpenAI Defendants deny that any contract with Musk exists, and likewise deny the existence of any charitable trust—much less one that Musk has standing to enforce—and are seeking evidence from the Musk Parties (Musk, Plaintiff xAI, and former plaintiff Shivon Zilis) that would disprove Musk's claims. But the Musk Parties have blocked discovery relevant to Musk's core claims and refused to produce any documents relevant to OpenAI's counterclaims. Substantial completion is a week away, and the Court's assistance is needed. The response below shows why: It touts productions that don't exist—Plaintiffs have still produced zero documents gathered for this action—and is emblematic of the Musk Parties' ever-evolving and always opaque positions.

***Background.*** OpenAI was launched in 2015 by Altman, Greg Brockman, Ilya Sutskever, and Musk as a nonprofit lab dedicated to developing safe and beneficial artificial general intelligence, or AGI. Musk claims he donated to OpenAI from 2016 to 2020. Musk resigned as OpenAI's co-Chair in 2018 when his bid to control the venture failed, and he began suing Altman, Brockman, and OpenAI in early 2024, just months after launching xAI, a competing AI company. Musk filed this action in August 2024, later joining xAI and Zilis as co-plaintiffs represented by the same law firm. From the outset, Musk's central theory has been that he has the right to dictate OpenAI's operations and governance based on contract law and charitable trust principles. The OpenAI Defendants vigorously dispute those claims. OpenAI, Inc. (OpenAI's controlling nonprofit) and two of its for-profit affiliates have also filed counterclaims against Musk and xAI. They seek redress for Musk's efforts to damage OpenAI and create an unfair competitive advantage for Musk's competing AI venture, including through a purported "bid" for OpenAI's assets by a group of investors, led by Musk, that was hastily crafted and announced in February. The OpenAI Defendants served initial party discovery on April 7. The Musk Parties then served boilerplate objections that obscured their positions. This approach necessitated a nine-hour meet-and-confer, spread over two days, and multiple rounds of letters. That process revealed that the Musk Parties have an extremely cramped view of their discovery obligations—despite being the plaintiffs. This letter addresses several key issues on which the parties have reached impasse, but discussions are ongoing, and a further submission in the coming days may prove necessary.[1]

***Musk's Alleged Contract***. Musk alleges that an implied contract with OpenAI gives him broad authority to direct its affairs, but Musk and Zilis have refused to produce documents and communications "concerning the Purported Contract" or OpenAI's alleged "noncompliance" with it. (Musk RFPs 5, 29; Zilis RFPs 8, 13.) They will not do so unless the OpenAI Defendants agree to produce all "agreements, drafts, and communications" related to OpenAI's contracts with Microsoft. This attempt to hold core discovery hostage is improper, particularly because the contracts are not remotely comparable: Musk's purported contract is the foundation for his case, and its formation and terms are in dispute. None of that applies to the OpenAI/Microsoft contracts,

---

[1] Exhibit A reproduces the text of the requests addressed in this joint statement and sets forth the Musk Parties' final position which respect to each. Exhibits B and C are the most recent discovery letters exchanged by the parties. The OpenAI Defendants would be happy to provide the full correspondence record if that would be helpful to the Court.

which are relevant only to Musk's allegations that their existence breaches alleged promises made to Musk. That allegation can be tested based on the OpenAI/Microsoft contracts themselves, and those contracts will be produced in the next few days. But that aside, the Musk Parties must produce all documents about the alleged implied agreement at the heart of Musk's claims.

***Alleged Breaches of Contract/Charitable Trust***. The Musk Parties have refused to provide discovery relevant to OpenAI's alleged breaches of contract and charitable trust, including OpenAI's: (1) decision not to open-source certain AI models; (2) formation of for-profit affiliates to raise the capital needed to achieve the nonprofit's mission; and (3) consideration of a potential reorganization of its for-profit arm into a public benefit corporation, or PBC. Among other defenses, the OpenAI Defendants contend that Musk's claims are inconsistent with his own words and conduct and the policies he has adopted at xAI. But the Musk Parties have blocked discovery in aid of that defense, including documents that concern: (1) Musk and xAI's decisions on open-sourcing (Musk RFP 27; xAI RFP 4); (2) Musk's proposal to absorb OpenAI into Tesla or convert OpenAI into a for-profit company (Musk RFPs 21-22; Zilis RFPs 14-15); (3) Musk's views regarding the capital required to develop AGI (Musk RFP 31; xAI RFP 3; Zilis RFP 17); and (4) Musk's decision to form xAI as a PBC (Musk RFP 26; xAI RFP 1). This discovery once again relates to a core claim, and the Musk Parties have provided no valid reason to oppose it.

***Alleged Donations to OpenAI***. Musk's charitable trust claim is founded on allegations that he made donations to OpenAI between 2016 and 2020. Defenses to this claim will likely include that (i) Musk does not have standing to assert this claim because he did not personally make the alleged donations to OpenAI; and (ii) the alleged donations were made to OpenAI with none of the pleaded conditions attached. Musk has refused to provide discovery directly relevant to these defenses. He has rejected requests seeking (1) documents and communications related to his alleged charitable contributions through donor advised funds at Fidelity and Vanguard (Musk RFP 16); (2) documents showing the structure of the Musk Foundation, which also made alleged donations on Musk's behalf (Musk RFP 10); and (3) tax filings showing when Musk took deductions for each of the alleged donations (Musk RFP 15). Musk has also refused to provide a complete response to interrogatories seeking the details of the alleged donations, including a description of any conditions placed on them. (Musk Rogs 4-6.) Instead, Musk has proposed to produce (in partial response to Musk RFPs 12-14) only documents "sufficient to reflect" his donations and "communications concerning the same." But this would exclude important documents reflecting the conditions, restrictions, or rights attached to Musk's donations—if any exist. This discovery is directed at the heart of Musk's claims, and Musk has no valid basis for refusing to provide it.

***Discovery on Counterclaims***. The Musk Parties (and certain third parties represented by the same counsel) have refused to provide any discovery relevant to OpenAI's counterclaims, citing their pending motion to dismiss.[2] But "[t]he Federal Rules do not provide for stays of discovery simply because a motion to dismiss is pending," *Novelposter* v. *Javitch Canfield Grp.*, 2014 WL 12618174, at *1 (N.D. Cal. May 23, 2014), and that principle should apply with even more force in this expedited proceeding. The Musk Parties also ignore that these requests are relevant to other

---

[2] The requests subject to this blanket objection include: Musk RFPs 28, 34-36, 39-40, 44-47, 50, 54-55; xAI RFPs 2, 9-10, 14, 17-22; Zilis RFPs 20, 23-26, 28; Musk Rogs 11-12; RFA 5; Subpoenas to Ariel Emanuel/Emanuel Capital.

triable issues—including the defense of unclean hands and the availability of equitable remedies. For example, the OpenAI Defendants are seeking discovery into Musk's "bid," including the names of the bidders and potential bidders (Musk Rogs 11-12) and the Musk Parties' communications with all of them (Musk RFPs 35-36; xAI RFP 10). This discovery is essential, including because, as the Court recognized in denying the Musk Parties' request for a preliminary injunction, Musk's "bid" undermines any claim of irreparable harm (Dkt. 121 at 14 n.10).

*Date Range*. The Musk Parties take the position that privileged documents created after February 29, 2024 (the date on which Musk filed a different lawsuit) need not be logged, but that approach would be prejudicial to the OpenAI Defendants. For example, it appears that the Musk Parties intend to take the position that essentially every document and communication about the "bid" is privileged, on the (unsubstantiated) theory that Musk's trial counsel also represented each of the bidders. To challenge that dubious theory, the OpenAI Defendants need a privilege log. If the Musk Parties contend that a customary logging obligation would be unduly burdensome in this case, the OpenAI Defendants are willing to accept a metadata log as a compromise.

*Third-Party Productions*. The Musk Parties will not commit to sharing third-party productions within 48 hours, insisting they need at least a week to do so. This makes no sense—productions can be shared with a few keystrokes and do not require "reproduction"—and it is prejudicial. Indeed, the OpenAI Defendants learned from counsel for certain subpoena recipients that the Musk Parties have been sitting on productions since mid-June. The Musk Parties finally purported to share those documents this morning after being called out for their delay in this statement.

## Plaintiffs and Non-Party Zilis's[3] Statement

*Background***:** Phase One of this case concerns the 2015 founding of OpenAI, Inc. and Defendants' breach of contract, charitable trust violations, and fraud as they systematically converted Musk's charitable contributions into a for-profit enterprise for Defendants' self-enrichment. Phase Two concerns the parties' competition-related claims. Hr. Trans. of 4/4/2025 at 8, lns. 6-9. Nowhere does Musk assert the authority to control OpenAI's operations; he merely seeks to enforce rights where, in the words of the Court, "the public interest [is] at stake and potential for harm if a conversion contrary to law occurred." Dkt. 121 at 16. Defendants violated these rights implicating "the public interest" by breaching foundational agreements with Musk through the transfer of OpenAI's intellectual property and employees to an opaque web of for-profit entities controlled by Altman, Brockman, and Microsoft, culminating in their recent efforts to permanently strip the charity of its assets for well below market value. Dkt. 170 ¶¶ 1-6. OpenAI's Counterclaims for unfair competition and tortious interference, by contrast, concern legitimate business conduct in February 2025. OpenAI admits its Counterclaims are competition-related by claiming they "seek redress for…an unfair competitive advantage"—precisely the type of issues the Court designated for Phase Two. Plaintiffs moved to dismiss those Counterclaims or, alternatively, to stay them until Phase Two when the Court will address all competition-related claims. Dkt. 166.

---

[3] OpenAI repeatedly characterizes Zilis as a "former plaintiff" in an apparent attempt to circumvent her non-party status. OpenAI worked diligently to remove Zilis from the case and succeeded. During the parties' June 12-13 conference, OpenAI confirmed it understood that Zilis holds non-party status. The Court should not permit OpenAI to burden her with fishing expeditions or trample the protections afforded by F.R.C.P. 45.

***Musk's Contract*:** OpenAI misapprehends Plaintiffs' position. To clarify, Plaintiffs have agreed to produce (and are already producing) responsive documents concerning Musk's agreements with Altman and OpenAI, mooting Defendants' concerns. However, Plaintiffs' objection to OpenAI's unwillingness to reciprocally produce drafts and communications concerning *its* agreements with Microsoft that violated Musk's contract remains unresolved. *E.g.*, Musk's RFP No. 40 to OpenAI. Plaintiffs explained to OpenAI that production of its final Microsoft contracts are necessary but insufficient—communications and drafts must also be produced to show OpenAI and Microsoft's intent concerning their agreements, which is directly relevant to Plaintiffs' claims for aiding and abetting, conspiracy, tortious interference with contract, and fraud. Dkt. 170 ¶¶ 284, 292, 306-07, 411, 455-56. Plaintiffs agreed to produce responsive communications; OpenAI should do the same.

***OpenAI's Breaches of Contract/Charitable Trust*:** OpenAI's spurious argument, which ignores the discovery already provided, requires careful parsing. Plaintiffs' claims against OpenAI sound in fraud, breach of contract, and breach of charitable trust—all predicated on OpenAI's deception regarding its charitable mission. Plaintiffs have provided responsive discovery as to these claims. What OpenAI is in fact complaining about is evidence it falsely believes would show that xAI's current business practices somehow excuse OpenAI's foundational misconduct. OpenAI cites no authority to support its schoolyard deflection of "what about you?" This is not even an unclean hands defense, as there is no allegation that, for example, xAI was founded as a publicly-subsidized charity with public commitments to the non-profit, open-source development of AI for humanity's benefit. *See Brewster v. City of Los Angeles,* 672 F. Supp. 3d 872, 1003 (C.D. Cal. 2023) ("The determination of the unclean hands defense cannot be distorted into a proceeding to try the general morals of the parties."). The fact that xAI is a for-profit entity provides no justification for OpenAI to masquerade as a charity while siphoning billions in assets, developed with public donations, to private investors, thereby defrauding Musk, other donors, regulators, tax authorities, and the public. OpenAI cannot transform the narrow Phase One claims concerning its breach of founding commitments into a fishing expedition for irrelevant and competitively sensitive information about a competitor. Furthermore, OpenAI mischaracterizes Plaintiffs' position. In their June 18, 2025 letter, Plaintiffs committed to producing documents concerning OpenAI and Tesla and documents concerning OpenAI's capital needs, which is all Phase One calls for.

***Donations to OpenAI*:** In their June 18 letter, Plaintiff proposed to limit the scope of production concerning Musk's financial contributions to OpenAI to "documents sufficient to reflect (i) Musk's financial contributions to OpenAI, Inc., (ii) financial contributions Musk made to OpenAI, Inc. through YC Org, and (iii) payments made by Musk Industries to or on behalf of OpenAI, Inc., along with communications concerning the same." This proposal strikes the appropriate balance between providing information to substantiate Musk's financial contributions, along with communications concerning the same (including, without limitation, any discussion of conditions attached to such payments), and protecting Plaintiff's sensitive financial information. To the extent Plaintiff's proposal was unclear, this production would include documents reflecting the transfers from Fidelity and Vanguard, and would include documents in possession of Musk Foundation/ Excession/Musk Industries consistent with this Court's prior Order. Documents beyond this reasonable scope are not proportional to the needs of this case, as expedited by the Court, and would constitute unnecessary intrusions into Plaintiff's private financial affairs. And while it is unclear how the structure of the Musk Foundation relates to the significance of donations, and OpenAI has provided no supporting authority, Plaintiff also agrees to search for such documents.

***Discovery on Counterclaims*:** Discovery on OpenAI's Counterclaims for unfair competition and tortious interference with economic advantage, or its profligate *fifty-five* defenses, is inappropriate pending Plaintiffs' Motion to Dismiss OpenAI's Counterclaims, Dkt. 166, and Motion to Strike OpenAI's Defenses, Dkt. 186. Even if the Counterclaims are not dismissed, they will likely be stayed because as pled, they concern precisely the type of competition-related issues the Court stayed for Phase Two, after adopting OpenAI's position in its case management statement. Dkt. 125. According to OpenAI, the scope of Phase One is limited to "claims concern[ing] the circumstances of Musk's donations to OpenAI, Inc. and the OpenAI Defendants' alleged breach of purported commitments to Musk in connection with those donations." *Id*. at 2. The Phase Two claims, however, "stand on a different footing, because they center not on Musk's donations but instead on allegations that Defendants have entered into investment agreements, exclusivity arrangements, and pricing decisions that purportedly hinder competition in the generative AI industry." *Id*. at 2-3. "The OpenAI Defendants' position is that the expedited proceedings contemplated by the Court's Order should be limited to . . . [breach of charitable trust, contract, fraud, etc. and] any counterclaims that share a common nucleus of operative facts with the[se] claims[.]" *Id*. at 2. OpenAI said it best: "including [competition-related claims] within the scope of the contemplated expedited proceedings would add complexity and burden not justified by efficiency." *Id*. at 3. Yet now, when it serves some other interest, OpenAI reverses course.

This about-face is familiar. In this case's state-court predecessor, *Musk v. Altman, et al.*, Case No. CGC-24-612746 (S.F. Sup. Ct.), OpenAI moved to dismiss and strike Plaintiff's claims and thereafter strenuously objected to discovery as "premature" pending resolution of its motions, arguing that such resolution "would result in the dismissal of each cause of action contained in the complaint without the need for factual discovery" or could "change the scope of the case and, accordingly, the scope of appropriate discovery." Plaintiffs quoted this language in their June 18 letter, but it was conspicuously omitted from OpenAI's Exhibit A. There is no reason to treat this differently here. At a minimum, the Court should not order discovery on these matters until after a decision is rendered on Plaintiffs' Motion to Dismiss, scheduled for hearing on July 15.

***Date Range*:** OpenAI misconstrues Plaintiffs' position. Plaintiffs proposed the February 29, 2024 log limitation as a good faith measure to ease the burden of logging documents once litigation commenced. This was meant to apply to all parties, not just Plaintiffs, and indeed OpenAI (and Microsoft) adopted this position and refused to produce documents after that date. They have since reversed course. In any event, the two lawsuits concern the same subject matter and the information OpenAI wants concerns only its Counterclaims, and is irrelevant to Phase One. Should the Court disagree, Plaintiffs agree to withdraw their February 2024 proposal and provide a customary privilege log, and request that the Court order OpenAI to withdraw its reciprocal objection.

***Third-Party Productions*:** Plaintiffs have since produced the documents in question, mooting the issue. Nevertheless, Plaintiffs disagree that third-party documents can be reproduced with "a few keystrokes." The document upload and reproduction process through Plaintiffs' e-discovery platform takes several business days. Plaintiffs also disagree with OpenAI's characterization that they have been "sitting on" productions. Instead, documents from third parties have been trickling in incrementally, and rather than producing two or three documents piecemeal, Plaintiffs intended to make a comprehensive production once the trickle subsided.

**VIA CM/ECF**

## **SIGNATURE ATTESTATION**

I hereby attest that the signatories listed above, on whose behalf this document is submitted, concur in the filing's content and have authorized the filing.

Dated: July 7, 2025               */s/     William Frentzen*
                                          William Frentzen (CA SBN 343918)