# EXHIBIT C

## WACHTELL, LIPTON, ROSEN & KATZ

MARTIN LIPTON
HERBERT M. WACHTELL
EDWARD D. HERLIHY
DANIEL A. NEFF
STEVEN A. ROSENBLUM
SCOTT K. CHARLES
JODI J. SCHWARTZ
ADAM O. EMMERICH
RALPH M. LEVENE
ROBIN PANOVKA
DAVID A. KATZ
ILENE KNABLE GOTTS
ANDREW J. NUSSBAUM
RACHELLE SILVERBERG
STEVEN A. COHEN
DEBORAH L. PAUL
DAVID C. KARP
RICHARD K. KIM
JOSHUA R. CAMMAKER
MARK GORDON
JEANNEMARIE O'BRIEN

STEPHEN R. DiPRIMA
NICHOLAS G. DEMMO
IGOR KIRMAN
JONATHAN M. MOSES
T. EIKO STANGE
WILLIAM SAVITT
GREGORY E. OSTLING
DAVID B. ANDERS
ADAM J. SHAPIRO
NELSON O. FITTS
JOSHUA M. HOLMES
DAMIAN G. DIDDEN
IAN BOCZKO
MATTHEW M. GUEST
DAVID E. KAHAN
DAVID K. LAM
BENJAMIN M. ROTH
JOSHUA A. FELTMAN
ELAINE P. GOLIN
EMIL A. KLEINHAUS
KARESSA L. CAIN

**51 WEST 52ND STREET**
**NEW YORK, N.Y. 10019-6150**

**TELEPHONE: (212) 403-1000**
**FACSIMILE:  (212) 403-2000**

GEORGE A. KATZ (1965-1989)
JAMES H. FOGELSON (1967-1991)
LEONARD M. ROSEN (1965-2014)

OF COUNSEL

DAVID M. ADLERSTEIN          ERIC S. ROBINSON
ANDREW R. BROWNSTEIN       ERIC M. ROSOF
WAYNE M. CARLIN                 JOHN F. SAVARESE
BEN M. GERMANA                  MICHAEL J. SEGAL
SELWYN B. GOLDBERG           WON S. SHIN
PETER C. HEIN                       DAVID M. SILK
JB KELLY                              ELLIOTT V. STEIN
JOSEPH D. LARSON               LEO E. STRINE, JR.*
RICHARD G. MASON               PAUL VIZCARRONDO, JR.
PHILIP MINDLIN                     JEFFREY M. WINTNER
THEODORE N. MIRVIS            AMY R. WOLF
DAVID S. NEILL                      MARC WOLINSKY
TREVOR S. NORWITZ

* ADMITTED IN DELAWARE

COUNSEL

SUMITA AHUJA                     ANGELA K. HERRING
LOREN BRASWELL                 MICHAEL W. HOLT
HEATHER D. CASTEEL          DONGHWA KIM
FRANCO CASTELLI                MARK A. KOENIG
ANDREW J.H. CHEUNG         J. AUSTIN LYONS
PAMELA EHRENKRANZ         ALEXANDER S. MACKLER
ALINE R. FLODR                    ALICIA C. McCARTHY
KATHRYN GETTLES-ATWA     JUSTIN R. ORR
LEDINA GOCAJ                      NEIL M. SNYDER
ADAM M. GOGOLAK              JEFFREY A. WATIKER

RONALD C. CHEN
BRADLEY R. WILSON
GRAHAM W. MELI
GREGORY E. PESSIN
CARRIE M. REILLY
MARK F. VEBLEN
SARAH K. EDDY
VICTOR GOLDFELD
RANDALL W. JACKSON
BRANDON C. PRICE
KEVIN S. SCHWARTZ
MICHAEL S. BENN
ALISON Z. PREISS
TIJANA J. DVORNIC
JENNA E. LEVINE
RYAN A. McLEOD
ANITHA REDDY
JOHN L. ROBINSON
STEVEN WINTER
EMILY D. JOHNSON
JACOB A. KLING

RAAJ S. NARAYAN
VIKTOR SAPEZHNIKOV
MICHAEL J. SCHOBEL
ELINA TETELBAUM
ERICA E. AHO
LAUREN M. KOFKE
ZACHARY S. PODOLSKY
RACHEL B. REISBERG
MARK A. STAGLIANO
CYNTHIA FERNANDEZ
LUMERMANN
CHRISTINA C. MA
NOAH B. YAVITZ
BENJAMIN S. ARFA
NATHANIEL D. CULLERTON
ERIC M. FEINSTEIN
ADAM L. GOODMAN
STEVEN R. GREEN
MENG LU

Direct Dial: (212) 403-1108
E-Mail: BRWilson@wlrk.com

June 24, 2025

**Via E-mail**

Jaymie Parkkinen, Esq.
Toberoff & Associates, P.C.
23823 Malibu Road, Suite 50-363
Malibu, CA 90265

Re:   *Elon Musk, et al.* v. *Samuel Altman, et al.*,
        C.A. No. 4:24-cv-04722-YGR

Dear Jaymie:

We write in response to your June 18 letter concerning the OpenAI Defendants' discovery requests to Elon Musk, xAI, and Shivon Zilis. Your letter misrepresents in multiple respects both the June 14 letter to which it responds and our meet-and-confer discussions. It also fails to provide your clients' positions on several outstanding issues on which you agreed to get

WACHTELL, LIPTON, ROSEN & KATZ

Jaymie Parkkinen, Esq.
June 24, 2025
Page 2

back to us.[1]  We therefore write again in one final attempt to narrow the scope of potential disputes or at a minimum clarify Plaintiffs' positions regarding the appropriate scope of discovery on Musk, xAI, and Zilis.

## THRESHOLD ISSUES

  Custodial/ESI Issues:  The OpenAI Defendants have already sought judicial relief regarding the scope of your collection of Musk's documents and will not address that issue further.

  We have also received your June 23 letter containing ESI-related information respecting xAI, Zilis, the Musk Foundation, and Excession.  We asked four follow-up questions related to that letter in an email sent earlier today, and we look forward to receiving your answers to those questions.  Our review of your June 23 letter is ongoing, and we will follow up as appropriate in prompt due course.

  Relevance Filter:  We asked in our June 14 letter whether you intended to stand on your position that it is appropriate for Musk, xAI, and Zilis to withhold documents and information that are facially responsive to the OpenAI Defendants' document requests or interrogatories based on your team's subjective and undisclosed assessments of "relevance."  *See* June 14 Letter from B. Wilson to J. Parkkinen ("June 14 Letter") at 3-4.  You responded in your June 18 letter that "Plaintiffs are prepared to accommodate OpenAI Defendants' preferences and will withdraw 'relevance' from their discovery responses."  June 18 Letter from J. Parkkinen to B. Wilson ("June 18 Letter") at 2.

  We understand that, by agreeing to "withdraw 'relevance' from [your] discovery responses," Musk, xAI, and Zilis are committing to produce responsive, non-privileged documents to the full scope of each request respecting which Plaintiffs had previously reserved the right to apply this "relevance" filter.  In other words, we understand that your clients will not withhold any documents or information based on a determination that such documents or information are not "relevant" to the action.  It is also our understanding that where Musk, xAI, or Zilis previously limited any of their responses to the OpenAI Defendants' interrogatories based on a "relevance" filter, Musk, xAI, and Zilis will (as applicable) supplement their responses and provide the complete information called for by the OpenAI Defendants' interrogatories.

  We do not want there to be any confusion on this point.  If you disagree in any respect with our understanding of Plaintiffs' position on this issue, please let us know immediately.

---

[1] Among other issues, your letter is written in a manner that obscures Plaintiffs' responses to points raised in our June 14 letter, as you have regrouped and reordered many of the requests and ignored many of the positions set forth in our letter.  We ask that, in responding to this letter, you maintain the order in which we present the outstanding issues so that the parties can effectively crystallize, and promptly resolve, our remaining disputes.

WACHTELL, LIPTON, ROSEN & KATZ

Jaymie Parkkinen, Esq.
June 24, 2025
Page 3

In addition, please also confirm that Plaintiffs will instruct all of the Musk-affiliated entities from which the OpenAI Defendants are seeking documents that they should not apply any filter, screen, or objection to withhold documents that are facially responsive to the OpenAI Defendants' requests based on an attorney's subjective and undisclosed assessments of "relevance." We need this confirmation immediately, because just tonight, we received from SpaceX an entirely new (and untimely) set of purported objections that stated, for the first time, that SpaceX would only produce "responsive" and "*relevant*" documents in response to each request. Given this odd timing and your firm's recent disclosure in a court filing that it is "providing guidance" to SpaceX and other Musk-controlled entities "during responsiveness review" and generally "helping them understand the case," we are concerned that your firm may be instructing these entities to apply the same inappropriate and impermissible relevance filter that you just days ago purported to withdraw.

Discovery Related to Counterclaims: You state in your letter that "discovery concerning [OpenAI's] counterclaims is inappropriate pending resolution of [Plaintiffs'] motion" and on this basis, refuse to provide documents and information responsive to a wide variety of requests (*i.e.*, RFP Nos. 28, 34-36, 39-40, 44-47, 50, 54-55 to Musk; RFP Nos. 2, 9-10, 14, 17-22 to xAI; RFP Nos. 20, 23-26, 28 to Zilis; Response to Interrogatory Nos. 11-12; Response to RFA No. 5; Subpoena to Ariel Emanuel; Subpoena to Emanuel Capital). June 18 Letter at 4. You suggest this position is analogous to the "approach the OpenAI Defendants adopted in the state court action" and claim you "do not see why the situation should be treated differently here." *Id.*

Your position is without merit for multiple reasons. *First*, the current "situation" is nothing like the position in which the parties found themselves in the state court action. This matter is proceeding toward an expedited trial; the Court has set imminent deadlines for the substantial completion of document discovery; and depositions are scheduled to begin in five weeks. None of that was true of the state court action. *Second*, your position is inconsistent with established law, as "[t]he Federal Rules do not provide for stays of discovery simply because a motion to dismiss is pending." *Novelposter* v. *Javitch Canfield Group*, 2014 WL 12618174, at *1 (N.D. Cal. May 23, 2014); *accord Serenium, Inc.* v. *Zhou*, 2021 WL 7541379, at *1 (N.D. Cal. Feb. 11, 2021). *Third*, your position is inconsistent with the Pretrial Schedule ordered by the Court in this action, which does not contemplate a discovery stay with respect to OpenAI's counterclaims. *See* Pretrial Schedule, Dkt. 146 (Apr. 9, 2025). *Fourth*, most, if not all, of the requests at issue are relevant to both OpenAI's defenses to Plaintiffs' claims and to OpenAI's counterclaims. As one example, the Court itself has discussed the relevance of Plaintiffs' purported bid to the claims on which they sought an injunction. *See* Order, Dkt. 121 at 14 n.10 (noting that "this additional interaction between the parties [*i.e.*, the bid]. . . . undermine[s] the claim of irreparable harm"). *Finally*, this objection is waived with respect to the vast majority of requests at issue, as you first interposed this objection with respect to RFP Nos. 54-55 to Musk (*i.e.*, OpenAI's Second Set of Requests). *See Richmark Corp.* v. *Timber Falling Consultants*, 959 F.2d 1468, 1473 (9th Cir. 1992) (explaining that failure to timely raise a specific objection to discovery requests resulted in its waiver). Our counterclaims were pending when you first served

WACHTELL, LIPTON, ROSEN & KATZ

Jaymie Parkkinen, Esq.
June 24, 2025
Page 4

objections to our discovery requests, and it is simply not credible that you had not considered the possibility of moving to dismiss as of the date of service.

For all of these reasons, your refusal to produce documents and information in response to the requests at issue, solely on the basis that they target information relevant to the counterclaims, is inappropriate. Please reconsider your position in light of the foregoing and let us know if Musk, xAI, and Zilis will withdraw this blanket objection.

Date Range: Musk, xAI, and Zilis initially refused to produce (or log) any documents or information from the time period after February 29, 2024. You now propose that the "the parties [] mutually agree that privileged documents created after February 29, 2024 need not be logged, while responsive documents through the present should be produced." June 18 Letter at 2. According to your letter, it is your position that this would be the "most practical approach."

We do not agree. To the extent both parties agree to produce documents or information dated after February 29, 2024, they must also commit to logging any responsive, privileged documents or information after that date. This is the standard approach, and you have provided no information to support your implicit claim that logging documents and information post-dating February 29, 2024 would be unduly burdensome.

Finally, we reiterate our request that you confirm that you have collected and are reviewing documents dated after February 29, 2024, notwithstanding your date range objection, as you declined to answer that question in your June 18 letter.

## REQUESTS FOR PRODUCTION—MUSK

General Objections – Privacy, "Official Information," "Identity of Informer" Privilege, Confidentiality Obligations, and Protective Orders: We asked whether your clients are excluding or withholding any documents on the basis of these General Objections (Nos. 9, 15, 19). You responded, "[a]s to the privacy, identity of informer privilege, and confidentiality objections," that "no documents have been withheld on these bases to date" and that "[t]hese objections" were intended as "standard precautionary measures." June 18 Letter at 2. We understand this response to apply equally to the privileges asserted on the basis of "official information" and "protective orders," but please correct us if that is mistaken. Please further confirm that to the extent you intend to withhold or redact documents on the basis of any of these privileges, you will include them on a privilege log that identifies the specific privilege you are asserting with respect to each document and provides sufficient information to permit the OpenAI Defendants to test each assertion.

Moreover, with respect to our request that you identify authority for your claimed "right to redact or exclude information from Documents to protect unnecessary disclosure of nonresponsive or irrelevant sensitive, confidential, or proprietary business information," you provided no authority, but instead "observe[d] that [the] OpenAI Defendants have advocated for a

WACHTELL, LIPTON, ROSEN & KATZ

Jaymie Parkkinen, Esq.
June 24, 2025
Page 5

considerably broader redaction framework." *Id.* This is a clear mischaracterization of our position. The "right to apply targeted redactions to protect OpenAI interests" that we asserted related specifically to Plaintiffs' RFP No. 69, which concerns Plaintiffs' "bid" to purchase OpenAI's assets. *See* June 10 Letter from B. Wilson to J. Parkkinen at 8. As we have explained, in that specific context, targeted redaction of competitively-sensitive valuation information is necessary given your firm's purported representation of the bidding investor consortium and the possibility of future bids. We reiterate our request for authority on your position with respect to redactions.

        RFP No. 2:  You state that "[i]n a good faith effort to resolve this matter, Musk agrees to expand the temporal scope of his production to 2015-2025." June 18 Letter at 2. This narrowing construction is unacceptable. Even as amended, Musk's position is that he will only produce "non-privileged communications with Samuel Altman or Gregory Brockman . . . concerning the founding of OpenAI." These are communications that our clients likely already have and excludes Musk's communications with "any other Person concerning an actual or potential research lab, enterprise, or other organization (whether for-profit or not-for-profit) focused on artificial intelligence or AGI, and all Documents concerning any such Communications." These documents are highly relevant to, among other issues, Musk's motivations for supporting OpenAI in its early days, Musk's reasons for subsequently withdrawing his support of OpenAI, Musk's willingness to consider providing support to competing artificial intelligence enterprises, and Musk's understanding of the purported terms of the alleged implied contract. Please confirm you will produce documents responsive to the full scope of this request.

        RFP No. 5 (and similar RFP No. 8 to Zilis):  We reject your attempt to condition Musk's and Zilis's willingness to produce documents responsive to these core requests—which seek documents concerning the purported contract at the center of this case—on the OpenAI Defendants' agreeing to produce "agreements, drafts, and communications concerning the same" with respect to OpenAI's contracts with Microsoft.

        As we explained during our meet-and-confers, the contracts at issue are not remotely comparable with respect to their relevance to this case. Musk asserts that he has an implied contract with OpenAI, Inc. and Sam Altman, and claims that that implied contract affords Musk broad authority to direct OpenAI's affairs in perpetuity. The existence of the alleged implied contract—which is an essential predicate for much of Musk's case—is disputed. By contrast, to the extent Plaintiffs contend that OpenAI's agreements with Microsoft violated the terms of any purported contract or charitable trust, that allegation can be tested based on the final terms of the agreements themselves—which we have agreed to produce—without the need for parol evidence.

        Musk and Zilis must produce all documents concerning Musk's alleged implied contract with OpenAI, Inc. and Altman. Please reconsider your clients' refusal to produce these documents without condition.

        RFP No. 9 (and similar RFP No. 5 to xAI):  You have proposed to narrow this request to Plaintiffs "hiring artificial intelligence engineers from OpenAI from 2015 to 2018." June 18 Letter at 2. That proposal is constructive but not sufficient. In the interest of compromise,

WACHTELL, LIPTON, ROSEN & KATZ

Jaymie Parkkinen, Esq.
June 24, 2025
Page 6

we propose that Plaintiffs produce documents concerning efforts by Musk or any entity or business owned, operated, or controlled by Musk—including without limitation Neuralink, SpaceX, Tesla, or The Boring Company—to recruit and/or hire artificial intelligence engineers or other employees from OpenAI between 2015 and 2019.  Please let us know if Musk agrees to this counterproposal.

RFP No. 10:  Your letter asserts inaccurately that we "did not articulate the relevance of this request," and apparently on that basis, you refuse to produce any documents in response to this RFP.  *See* June 18 Letter at 2.  We explained the relevance of this RFP during our meet-and-confers.  To repeat that explanation, the Musk Foundation was the source of certain donations, made indirectly to OpenAI, that form the predicate for several of Plaintiffs' claims, and information concerning the structure of the Foundation, and who controls it, is accordingly important to understanding the legal significance of the donations at issue.

In light of your position, we understand the parties to be at an impasse on this RFP.  Please advise if that is inaccurate.

RFP No. 11 (and similar RFP No. 3 to xAI and RFP No. 11 to Zilis):  You have offered to produce in response to these RFPs documents and communications "concerning OpenAI's capital needs."  That proposal is acceptable, provided that it includes documents and communications that concern Musk's views—or the views of any other person or entity—of OpenAI's capital needs.  June 18 Letter at 3.  Please confirm that it does.

RFP Nos. 12-14:  Your proposal to produce only "documents sufficient to reflect" Musk's financial contributions and "communications concerning the same" in response to these requests is not acceptable.  As we explained at length on our meet-and-confer calls, these RFPs target critical information regarding Musk's purported donations to OpenAI.  Those alleged donations form the predicate for each of the claims at issue in Phase I of this proceeding, including Musk's claim for breach of implied contract, fraud, constructive fraud, unjust enrichment, and breach of charitable trust.  All documents and communications concerning Musk's alleged contributions to OpenAI, Inc. must therefore be produced.  Please confirm that you will provide documents responsive to the full scope of these requests.  Otherwise, we will need to seek the magistrate judge's guidance on the matter.

RFP No. 15:  In our June 14 Letter, we reiterated our suggestion, which we raised for the first time during the meet-and-confers, that Musk consider producing "redacted tax forms in response to this request" that would "exclude certain discrete financial information that would have no bearing on tax deductions taken in connection with his purported donations to OpenAI."  June 14 Letter at 5.  You had told us during the meet-and-confers that you would consider this suggestion, but your June 18 Letter did not address it at all.  Please let us know if Musk is amenable to producing tax filings with redactions, and if he is, we would be happy to discuss in more detail what kinds of redactions would be acceptable to the OpenAI Defendants.

Rather than addressing the suggestion we referenced in our June 14 Letter, your response to that letter refers back to another possible approach that we alluded to briefly during

Wachtell, Lipton, Rosen & Katz

Jaymie Parkkinen, Esq.
June 24, 2025
Page 7

the earlier meet-and-confers—namely, a stipulation. We considered that possible approach more after the meet-and-confers and decided that it is not workable, as we determined that any hypothetical stipulation would need to be informed by the discovery record in this case. For that reason, we did not mention it in our June 18 Letter.

RFP No. 16: We explained the relevance of this RFP during the meet-and-confers, and you told us you would consider the points we made and come back to us with Musk's position. Rather than staking out a position, however, your June 18 Letter raises the prospect of the parties addressing the subject matter of this RFP with a stipulation. That is not something we ever discussed, and it is not acceptable to the OpenAI Defendants.

Musk should search for and produce the documents and communications called for by this important RFP. Please let us know if he will do so.

RFP No. 19 (and similar RFP No. 7 to xAI and RFP No. 7 to Zilis): Your letter states that your clients are "willing to consider producing [] documents [concerning OpenAI's valuation] on a reciprocal basis." June 18 Letter at 3. Please provide your proposal regarding what a reciprocal agreement to produce would entail with respect to valuation issues, and we will consider that proposal and revert promptly.

RFP Nos. 21-22 (and similar RFP Nos. 14-15 to Zilis): You state that Musk and Zilis will "produce responsive documents subject to their stated objections" with respect to these requests. June 18 Letter at 3. We do not understand what your clients are committing to produce. Please identify which specific objections you are referencing for each of these RFPs, and please also confirm that Musk and Zilis are no longer planning to limit their productions in response to these RFPs to documents and communications that "concern[] Exhibit 16 to the Complaint."

RFP No. 23 (and similar RFP No. 16 to Zilis): We accept your proposal with respect to these RFPs.

RFP No. 25 (and similar RFP No. 10 to Zilis): With respect to these requests, during the meet-and-confers, we explained that we are focused on the use of OpenAI personnel or resources or not-publicly-available technology or IP to provide assistance "with the development of Tesla's autopilot/self-driving mode, or in connection with any other projects, initiatives, or operations of Tesla, Neuralink, SpaceX, The Boring Company, xAI, or X Corp." With this in mind, and in an effort to be constructive, we proposed carving out and treating as non-responsive the use of ChatGPT to assist with any such projects, initiatives, or operations.

Rather than responding to our proposal, your June 18 letter stated that you "reject OpenAI Defendants' unfounded argument that the relevance standard is satisfied through deflective finger-pointing that only serves to divert attention from the substantive claims in this litigation." June 18 Letter at 3. We do not know how to interpret those comments. We have already explained the relevance of these RFPs and offered a reasonable narrowing construction to

WACHTELL, LIPTON, ROSEN & KATZ

Jaymie Parkkinen, Esq.
June 24, 2025
Page 8

address your purported overbreadth concern. Please confirm you will produce documents responsive to these RFPs with the limitation described in the preceding paragraph.

RFP No. 26 (and similar RFP No. 1 to xAI): Here again your letter asserts that during the meet-and-confers we were supposedly "not able to explain why . . . the corporate form of xAI was relevant to any claims or defenses in this case." June 18 Letter at 3. This is not accurate. In fact, we explained both during our meet-and-confers and in the subsequent correspondence that "Musk's decision to form xAI as a public benefit corporation is relevant to his criticisms of OpenAI's consideration of a similar structure for its for-profit arm." June 14 Letter at 6. Please reconsider your refusal to produce documents in response to these RFPs.

RFP No. 27 (and similar RFP No. 3 to xAI): Once more you claim that we have failed to substantiate the relevance of these RFPs (which you improperly group with RFP Nos. 25-26). As we stated in our prior letter, "[d]uring the meet-and-confer, we explained the basis for and relevance of this request, including that decisions by Musk and xAI regarding whether to open-source or not open-source xAI's products and software are relevant to assessing Musk's and xAI's views regarding when it is appropriate or not appropriate to open-source technology." June 14 Letter at 6. Please reconsider your refusal to produce documents in response to these RFPs.

RFP No. 28, 34, 39-40, 44-47, 50, 54-55 (and similar RFP Nos. 9, 14, 17-22, 28-29 to xAI, RFP Nos. 20, 23-26, 28 to Zilis): As we explain above, your position that no discovery should proceed on OpenAI's counterclaims is improper and impractical given the expedited schedule. Moreover, and in any event, your letter failed to consider our position that these RFPs are independently relevant to defenses to Plaintiffs' claims, including, without limitation, the OpenAI Defendants' unclean hands defense. In light of that defense, there can be no question that your clients should produce documents in response to these RFPs. Please reconsider your position with respect to these RFPs in light of that oversight and get back to us promptly.

RFP No. 29 (and similar RFP No. 13 to Zilis): We do not accept your proposal regarding these RFPs. As we have already explained, there is no basis for your attempt to condition Musk's and Zilis's cooperation with these core requests—requests that concern the purported implied contract at the center of this case—on the OpenAI Defendants' agreeing to provide broad discovery into "agreements, drafts, and communications concerning the same" with respect to OpenAI's business relationship with Microsoft. Please confirm that Musk and Zilis will produce documents responsive to the full scope of these requests. Otherwise, we will need to seek the magistrate judge's guidance on the matter.

RFP No. 31 (and similar RFP No. 3 to xAI, RFP No. 17 to Zilis): We do not accept your proposal regarding these RFPs. We explained on the meet-and-confer that Musk's personal views regarding the amount of capital other entities—including xAI—will require to develop AGI are relevant to assessing Musk's criticisms of OpenAI's decisions with respect to its efforts to raise capital. Please confirm that you will produce documents responsive to the full scope of this request.

WACHTELL, LIPTON, ROSEN & KATZ

Jaymie Parkkinen, Esq.
June 24, 2025
Page 9

RFP No. 32:  We accept your proposed narrowing construction for this RFP.

RFP No. 33:  Before we can accept your proposed narrowing construction of documents concerning "actual, contemplated, or potential proposals [Musk] has made concerning OpenAI, Inc.'s governance structure that are in his possession, custody, or control," *see* June 18 Letter at 4, we would like to better understand what this proposal is intended to exclude.  Please advise what documents would be responsive to the RFP as drafted but not to your proposed narrowing construction in your view.

RFP Nos. 35-36 (and similar RFP No. 10 to xAI):  You again have refused to produce documents responsive to these requests on the basis of your counterclaims objection.  That position is especially untenable with respect to these requests, which relate to Plaintiffs' purported bid to purchase OpenAI's assets in February 2025, a subject that is plainly relevant to the OpenAI Defendants' Phase I defenses, as well as the counterclaims.

As we argued to the Court before the counterclaims were even filed, "Musk's purported takeover bid cannot be reconciled with [his] charitable trust claim. . . .  Musk argues that OpenAI, Inc.'s assets cannot be 'transferred away' for 'private gain. . . .  But out of court, those constraints evidently do not apply, so long as Musk and his allies are the buyers.'"  Request for Leave to File Supplemental Material, Dkt. 118 (Feb. 13, 2025).  The Court when it denied Plaintiffs' request for a preliminary injunction agreed as to the relevance of the purported bid, noting that "this additional interaction between the parties . . . . undermine[s] the claim of irreparable harm."  Order, Dkt. 121 at 14 n. 10.  Please reconsider your position and refusal to produce documents and get back to us promptly.

RFP No. 38 (and similar RFP No. 13 to xAI):  We understand that Plaintiffs are no longer reserving the right to withhold communications responsive to these RFPs based on the journalistic privilege.  It remains unclear, however, whether Plaintiffs will produce the communications the OpenAI Defendants seek.  Please confirm that Musk and xAI will produce all communications responsive to the full scope of these RFPs.

RFP No. 43:  We do not agree with your attempt to condition your proposed compromise on this RFP to the entirely separate issue of the production of documents in advance of depositions.  This RFP and that one have nothing to do with each other.

With respect to your compromise, we are prepared to agree to it, provided that the scope of Musk's production in response to this RFP is expanded to include "the subject matter of Plaintiffs' Second Amended Complaint *and OpenAI's counterclaims*."  Please let us know if you agree.

RFP No. 49:  We do not accept your proposal to limit Musk's production in response to this RFP and others concerning Musk's alleged donations (*e.g.*, RFP Nos. 12-14)  to "documents . . . sufficient to show [Musk's donations to OpenAI, Inc.] along with communications concerning the same."  As we explained in our prior letter, this RFP seeks documents "concerning

WACHTELL, LIPTON, ROSEN & KATZ

Jaymie Parkkinen, Esq.
June 24, 2025
Page 10

the Musk Foundation's practices with respect to its donations" in other contexts, which are relevant to evaluating the donations in this case and any restrictions that Musk purportedly placed on them. June 18 Letter at 5. Your proposal is not responsive to the RFP at all. It also ignores our suggestion that the RFP could be limited based on the size of the Foundation's donations—or to the donations identified in Exhibit A to the RFPs.

Please reconsider your position with respect to this RFP.

RFP No. 51 (and similar RFP No. 25 to xAI, RFP No. 29 to Zilis): We wish to be clear about the OpenAI Defendants' position: We intend to produce in advance all documents that are in the exclusive possession of the OpenAI Defendants and that we intend to use at depositions, but we do not intend to produce public documents. We do not understand the basis for your contrary position that the parties must produce *all* documents they intend to use at depositions— including news articles or other publicly available documents—10 days in advance of any such deposition. As we have explained, imposing that requirement would not prevent "sandbagging" but would instead afford the other side an unnecessary and unfair preview of the plan for the deposition. If you have any authority for the proposition that your proposal is the required one under the Federal Rules, please provide it to us.

RFP No. 52 (and similar RFP No. 26 to xAI, RFP No. 30 to Zilis): We cannot understand why Plaintiffs would need a full week from their receipt of a third-party production to reproduce the production in the exact form in which it was received—particularly in the context of this expedited proceeding. We are concerned that, in suggesting 48 hours is insufficient to accomplish that simple task, you intend to reserve the right to analyze, reconfigure, or in any way alter third-party productions that you receive before serving them on other parties.

Please confirm that you will re-produce third-party productions in the precise form in which you receive them and that you have done so with respect to any third-party productions you have received to date. Please also provide your final position with respect to the timing of reproduction so that we may if necessary seek the magistrate judge's guidance.

## ADDITIONAL DISCOVERY TO XAI AND ZILIS

Overlap with Musk RFPs: Please confirm there are no requests to xAI or Zilis that you intend to treat differently from a corresponding request to Musk with respect to responsiveness or scope of production.

xAI/X Corp. Employees: In our June 14 Letter, and during our meet-and-confers, we asked that you inform us whether any employees of xAI are now technically employed by X Corp. following the reported merger of those entities. We explained that it is urgent and important that you provide this information, as we may need to subpoena individuals with relevant information who are no longer technically employed by a party to the case. You have not provided the information we asked for. Please do so or explain why you will not.

WACHTELL, LIPTON, ROSEN & KATZ

Jaymie Parkkinen, Esq.
June 24, 2025
Page 11

RFP No. 1 to xAI:  In your June 18 Letter, you say that we have not adequately explained why "the corporate form of xAI was relevant to any of the claims or defenses in this case."  But we have explained.  To reiterate, in a case in which Musk challenges OpenAI's potential restructuring of its for-profit arm into a public benefit corporation, evidence regarding Musk's own decision to form Plaintiff xAI as a public benefit corporation, and his "consideration of alternative corporate forms," is highly relevant.  Please let us know whether xAI is refusing to produce documents responsive to the full scope of this request.

RFP No. 2 to xAI:  A we explained during our meet-and-confers, this RFP seeks documents concerning the composition of xAI's control group—that is, its key decision-makers—and xAI's agreement to provide documents "sufficient to show the business structure of xAI" is insufficient.  Based on the discussion during our meet-and-confers, it was our understanding that xAI is not willing to produce documents sufficient to show the identity of its key decision-makers, and we asked you to confirm that understanding in our June 14 Letter.

In your June 18 Letter, you lump this RFP in with your clients' general refusal to produce documents relevant to OpenAI's counterclaims.  For the reasons stated above, your position on this issue is meritless.  It is also inapplicable to this RFP in any event, because (i) the identity of the key decision-makers at xAI—a *Plaintiff* in this action—is basic information that cuts across the entire case; and (ii) xAI has already agreed to produce documents in response to this RFP.  Please clarify whether xAI is (i) refusing to produce any documents at all in response to this RFP; (ii) standing on its original position to that it will only produce documents "sufficient to show the business structure of xAI," or (iii) willing to produce all of the documents called for by this RFP.

RFPs to Zilis:  In your June 18 letter, you state that Zilis "will respond to OpenAI's RFPs in accordance with her obligations under Federal Rule of Civil Procedure 45."  Please advise whether you are placing any limitations on Zilis's collection, search, review, and production of documents responsive to the RFPs to Zilis on this basis.

## INTERROGATORY AND RFA RESPONSES

General Objection No. 11 – "Privacy":  In our June 3 letter, we asked that if any information is being withheld from Musk's interrogatory responses on the basis of this objection, you should (i) identify the person or entity whose privacy rights are supposedly implicated; (ii) specify the source of the claimed privacy right; and (iii) provide a general description of the information that Musk is withholding based on the claimed privacy right.  During the meet-and-confer, you agreed to provide this information, or confirm that no information is being withheld based on a claim of privacy.  In your June 18 Letter, you "clarify that no **documents** have been withheld on" the basis of privacy to date.  Please confirm as well that no information has been withheld from Musk's interrogatory responses on the basis of privacy, or if it has, please provide the requested information.

WACHTELL, LIPTON, ROSEN & KATZ

Jaymie Parkkinen, Esq.
June 24, 2025
Page 12

    **Responses to Interrogatory Nos. 2, 3, and 10**: The OpenAI Defendants accept your proposal and will supplement their responses to ROG Nos. 1 and 2 to Altman, Brockman, and OpenAI, Inc. promptly after Musk serves supplemental responses to Interrogatory Nos. 2, 3, and 10 that identify and describe all responsive oral communications.

    **Responses to Interrogatory Nos. 4, 5, and 6**: As we have explained, with respect to these interrogatories, your position that "the requested information will be ascertainable from the documents being produced" is not acceptable, including because Musk is attempting to limit the documents he is agreeing to produce in response to RFPs relating to his purported charitable donations to OpenAI. These interrogatories seek critical information about Musk's purported charitable contributions, and they require a complete response.[2] Please let us know if Musk will answer these interrogatories in full.

    Moreover, your letter fails to provide the information necessary to identify the entity referred to as "UBS DAF" in Exhibit 1 to your interrogatory responses, apart from noting vaguely that "UBS is the custodian of the Fidelity DAF." June 18 Letter at 5. We again ask that you identify the legal name of the entity you have referred to as UBS DAF in the event that we determine we need to subpoena it. Please also confirm that the donations made through "UBS DAF" according to Exhibit 1 to your interrogatory responses were in fact made through Fidelity Charitable.

    **Response to Interrogatory No. 7**: In your June 18 Letter, you state that you are "continuing to confer with our client concerning the interrogatory responses" and that if "Musk recalls an oral conversation regarding open sourcing OpenAI's technology, we will supplement this interrogatory response." The return date for Musk's interrogatory responses was April 28, and we explained the deficiency with this response and offered clarifications about the information it seeks approximately three weeks ago, on June 3. We do not understand why, [75] days after this Interrogatory was served, Musk has still not provided an answer. Please supplement this response immediately. If Musk is not aware of any information responsive to this interrogatory, or has no recollection, he must so state in a verified response. Please clarify Musk's final position on whether he will provide a complete response to the Interrogatory, and if so, when.

    **Response to Interrogatory No. 9**: During the meet-and-confer, you confirmed that Musk's response to this interrogatory was limited by his interpretation of what information was "relevant to the litigation," but you refused to explain how Musk had decided what responsive information was irrelevant to this litigation (in his view). In your June 18 Letter, Plaintiffs purport to withdraw their relevance filter. But now you complain that this Interrogatory is "overbroad and burdensome" and propose limiting your response to "identifying persons with whom Musk communicated about establishing OpenAI." That limitation is not acceptable and appears designed to yield the same or similar response to that which Musk provided in the first instance. As we explained, this interrogatory is relevant to the OpenAI Defendants' defenses in this action, as the

---

[2] We explained the specific deficiencies with Musk's responses to each of these Interrogatories in our June 3 letter.

WACHTELL, LIPTON, ROSEN & KATZ

Jaymie Parkkinen, Esq.
June 24, 2025
Page 13

OpenAI Defendants have alleged, among other things, that when Musk failed in his effort to create a for-profit OpenAI over which he would have control, he abandoned OpenAI and sought to form a competitor AI company. This interrogatory seeks information about who Musk spoke to "about potentially working together to establish or pursue a non-profit or for-profit entity, organization, or venture to study, develop, refine, or otherwise focus attention on artificial intelligence or AGI." Please let us know if Musk will reconsider his position and provide a complete response to this interrogatory.

        <u>Response to Interrogatory Nos. 11 and 12</u>: We explained the deficiencies with Musk's responses to these interrogatories in detail in our June 3 letter. We also asked you about these interrogatories during our meet-and-confers and in my June 12 email and our June 14 Letter. We have also explained that "we need the missing information immediately because it is a gating item for additional third-party discovery the OpenAI Defendants plan to pursue in this expedited proceeding." You indicated that you would respond more fully to these interrogatories, but refused to commit to a timeline for doing so.

        Now, in your June 18 Letter, you have changed course. You now purport to fold these two interrogatories into your objection to producing any information relevant to the OpenAI Defendants' counterclaims, and seemingly refuse to provide any more information in response to these interrogatories, despite having previously provided partial responses. We have explained above why this objection is frivolous and not acceptable.

        We reject your attempt to re-trade your commitment on Musk's behalf to supplement Musk's responses to these interrogatories—in circumstances where you acknowledged during the meet-and-confers that the existing responses are deficient. Please confirm that Musk will provide complete responses to these interrogatories, or we will seek the magistrate judge's guidance.

        <u>Response to Interrogatory No. 13</u>: We explained the deficiency with Musk's response to this interrogatory in detail in our June 3 letter. You represented during the meet-and-confers that we would receive the missing substantive information called for by this interrogatory in your June 14 Letter. But that letter failed to provide much of the missing information.

        As you know, this interrogatory calls for Musk to identify the email addresses he used to send and receive emails responsive to the OpenAI Defendants' document requests. Please confirm whether the email addresses identified in your June 14 Letter are a complete inventory of such email addresses. This interrogatory also calls for Musk to identify all personal devices (and <u>corresponding phone numbers</u>) he used to send and receive responsive messages. Your June 14 Letter makes reference to Musk's mobile phone but does not identify the phone number. As we have explained, with a confidentiality order now in place, there is no reason not to provide this information immediately.

WACHTELL, LIPTON, ROSEN & KATZ

Jaymie Parkkinen, Esq.
June 24, 2025
Page 14

        <u>Response to Interrogatory No. 14</u>:  Please supplement Musk's response to this interrogatory to identify the specific usernames or user identification for the accounts referenced in this Interrogatory response.

        <u>Response to RFA No. 5</u>:  We explained the deficiency with Musk's response to this interrogatory in detail in our June 3 letter.  During the meet-and-confers, you asked for clarification of the term "representative of OpenAI."  We said that the term would include an OpenAI director or executive.  You said you would take that back and consider supplementing your response.  But you did not address this interrogatory in your June 18 Letter.  Please let us know whether Musk will provide a complete response to this interrogatory.

*   *   *

        It is imperative that we conclude our discussions about these party discovery issues very promptly.  We ask that you respond to the above issues by no later than Monday, June 30 and provide your clients' final positions on each issue so that the parties can submit a joint letter to the magistrate judge—addressing all unresolved issues regarding the appropriate scope of written discovery from Musk, xAI, and Zilis—promptly thereafter.

        If you believe that a further meet-and-confer to address any of the foregoing issues would be productive, please let us know your availability for a conference this week.

### SUBPOENAS TO MUSK FOUNDATION AND EXCESSION

        Your responses concerning the subpoenas to the Musk Foundation and Excession are not satisfactory.  We still do not know whether your firm will be collecting, searching, and reviewing sources of ESI from these entities that are reasonably likely to contain responsive documents and producing documents responsive to the subpoenas.  We still do not know whether your firm will be collecting, searching, and producing from Jared Birchall's accounts at these entities.  We still do not know whether Musk has accounts at these entities and, if so, whether your firm will be collecting, searching, and producing from any of those accounts.  We still do not know which requests, if any, these entities will be producing documents in response to.

        Your recent correspondence only serves to confuse matters.  Your June 18 letter stated that you were "prepared to facilitate the production of documents consistent with Plaintiffs' responses to the Requests for Production," suggesting that both the Musk Foundation and Excession were prepared to produce documents to the extent Plaintiffs agreed to produce documents in response to similar RFPs.  Your June 23 letter now appears to stake out a different— and even more limited—position.  It states that you are "conducting searches for documents evidencing Musk's financial contributions to OpenAI, Inc. and responsive communications concerning the same."  Neither of these alternatives would be sufficient to discharge the Musk Foundation's and Excession's discovery obligations.  But we cannot properly advance the ball in the meet-and-confer process until we know which RFPs these entities are willing to respond to,

WACHTELL, LIPTON, ROSEN & KATZ

Jaymie Parkkinen, Esq.
June 24, 2025
Page 15

and to what extent. We have been asking for your position on the subpoenas to these entities for
nearly a month, and yet we do not appear any closer to receiving it.

Making matters worse, your June 18 Letter now appears, for the first time, to be
conditioning any production from the Musk Foundation and Excession on a production from
certain entities affiliated with Mr. Altman. That is improper. The OpenAI Defendants' subpoenas
to the Musk Foundation and Excession were served more than two-and-a-half months ago, and we
have yet to receive a single document in response to either subpoena. Moreover, as we've
explained at length, both the Musk Foundation and Excession are likely to possess core evidence,
including from Mr. Birchall, whom we understand has used his email accounts at both entities to
communicate on subjects central to the litigation.

By contrast, you only noticed the Altman entities' subpoenas on June 4, and you
have made no showing that those entities are likely to possess any relevant evidence at all, let alone
evidence that cannot be obtained from the OpenAI Defendants. Nevertheless, we are investigating
whether Mr. Altman has email accounts at any of these entities that are reasonably likely to contain
non-duplicative documents responsive to Plaintiffs' RFPs to Altman, and we will update you on
our findings promptly.

Please respond to the above nonparty issues with by no later than Monday, June 30
so that the parties can submit a joint letter to the magistrate judge promptly thereafter. If you
believe that a further meet-and-confer to address any of the foregoing nonparty issues would be
productive, please let us know your availability for a conference this week.

## REPRESENTATION OF THIRD PARTIES

Your remaining questions regarding the third parties represented by the OpenAI
Defendants are answered in our June 19 letter (at pages 4 and 5).

Sincerely,

Bradley R. Wilson

Bradley R. Wilson

Wᴀᴄʜᴛᴇʟʟ, Lɪᴘᴛᴏɴ, Rᴏsᴇɴ & Kᴀᴛᴢ

Jaymie Parkkinen, Esq.
June 24, 2025
Page 16

cc:     Marc Toberoff, Esq.
        William Savitt, Esq.
        Sarah Eddy, Esq.
        Nathaniel Cullerton, Esq.
        Jordan Eth, Esq.
        William Frentzen, Esq.
        David Wiener, Esq.
        Russell Cohen, Esq.
        Andrew Levander, Esq.
        Howard Ullman, Esq.