VIA CM/ECF

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# OAKLAND DIVISION

| | |
|---|---|
| ELON MUSK, et al., | Case No. 4:24-cv-04722-YGR |
| Plaintiffs, | **JOINT LETTER BRIEF** |
| v. | Judge: Hon. Yvonne Gonzalez Rogers |
| SAMUEL ALTMAN, et al., | Magistrate Judge: Hon. Thomas S. Hixson |
| Defendants. | Date Action Filed: August 5, 2024<br>Trial Date: March 30, 2026 |

July 7, 2025

The Honorable Thomas S. Hixson
United States District Court, Northern District of California
450 Golden Gate Avenue
San Francisco, CA 94102

      Re:   *Musk, et al.* v. *Altman, et al.*, Case No. 4:24-cv-04722-YGR

Dear Judge Hixson:

      Pursuant to Your Honor's Discovery Standing Order, the parties respectfully submit this joint letter addressing the OpenAI Defendants' subpoenas to the Musk Foundation and Excession, LLC, which were served on April 10. *See* Exs. A & B. Plaintiffs' counsel serves as counsel for these entities and provided responses and objections on May 14. *See* Exs. C & D. The parties attest that they met and conferred in good faith in an effort to resolve this dispute before filing this joint letter.

VIA CM/ECF

| | |
|---|---|
| */s/ Jaymie Parkkinen* | */s/ Nathaniel Cullerton* |
| Jaymie Parkkinen, SBN 318394 | Bradley R. Wilson (admitted *pro hac vice*) |
| TOBEROFF & ASSOCIATES, P.C. | Nathaniel Cullerton (admitted *pro hac vice*) |
| 23823 Malibu Road, Suite 50-363 | WACHTELL, LIPTON, ROSEN & KATZ |
| Malibu, CA 90265 | 51 West 52nd Street |
| Telephone: (310) 246-3333 | New York, NY 10019 |
| Facsimile: (310) 246-3101 | Telephone: (212) 403-1000 |
| | Facsimile: (212) 403-2000 |

*Attorneys for The Musk Foundation and Excession, LLC*

JORDAN ETH (CA SBN 121617)
JEth@mofo.com
WILLIAM FRENTZEN (CA SBN 343918)
WFrentzen@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105
Telephone: (415) 268-7000
Facsimile: (415) 268-7522

*Attorneys for Defendants Samuel Altman, Gregory Brockman, OpenAI, Inc., OpenAI L.P., OpenAI, L.L.C., OpenAI GP, L.L.C., OpenAI OpCo, LLC, OpenAI Global, LLC, OAI Corporation, LLC, OpenAI Holdings, LLC, OpenAI Startup Fund Management, LLC, OpenAI Startup Fund GP I, L.L.C., OpenAI Startup Fund I, L.P., OpenAI Startup Fund SPV GP I, L.L.C., OpenAI Startup Fund SPV GP II, L.L.C., OpenAI Startup Fund SPV GP III, L.L.C., OpenAI Startup Fund SPV GP IV, L.L.C., OpenAI Startup Fund SPV I, L.P., OpenAI Startup Fund SPV II, L.P., OpenAI Startup Fund SPV III, L.P., OpenAI Startup Fund SPV IV, L.P., Aestas Management Company, LLC, and Aestas LLC*

VIA CM/ECF

## OpenAI Defendants' Statement

The OpenAI Defendants seek an order compelling a production of documents responsive to subpoenas served nearly three months ago on two Musk-controlled entities—the Musk Foundation (Musk's charitable foundation) and Excession, LLC (his family office). Both entities are represented by Plaintiffs' trial counsel here. While Your Honor has ordered Plaintiffs to collect and produce responsive documents from any Musk email accounts maintained at these entities in party discovery, the entities are refusing to produce additional important discovery from non-Musk custodians. They have served improper objections, refused to even disclose which requests, if any, they are willing to comply with, and produced zero documents. The entities' section of this joint letter only highlights the lack of clarity of their positions. The OpenAI Defendants still do not understand what documents will be produced or withheld, necessitating the Court's intervention.

***Background.*** Musk's core claims are premised on allegations that he made donations to OpenAI, Inc. (the nonprofit entity that controls OpenAI) in its early years. Dkt. 170 at ¶¶ 94, 424. Many of the alleged donations were made by the Musk Foundation, not Musk personally. The Foundation's donations, in turn, were made not to OpenAI directly, but to donor-advised funds (Vanguard Charitable and Fidelity Charitable) and to OpenAI's "fiscal sponsor" (YC Org).

Musk is the Foundation's President and Director, and his long-time adviser, Jared Birchall, is the Secretary and Treasurer. Birchall has for years managed Musk's sprawling financial and personal affairs, taking leading roles in everything from Musk's acquisition of Twitter to Musk's political expenditures. Birchall is also a senior executive at multiple Musk-controlled entities, including Plaintiff xAI (CFO) and Neuralink (CEO). Discovery has revealed that Birchall used his Musk Foundation email to communicate regarding topics central to the litigation, including Musk's alleged financial support of OpenAI.

Birchall is also the head of Musk's family office, Excession. Birchall also used his Excession email to communicate on relevant topics, including Musk's alleged donations to OpenAI, negotiations between Musk and OpenAI's other founders in 2017 over Musk's push to control the organization, and Musk's purported "bid" to purchase OpenAI earlier this year. That "bid" is at the heart of OpenAI's pending counterclaims against Musk and xAI. *See* Dkt. 176.

***The Musk Foundation and Excession block relevant discovery.*** The OpenAI Defendants served subpoenas on the Musk Foundation (Ex. A) and Excession (Ex. B) on April 10. The Musk Foundation subpoena seeks (i) documents and communications concerning donations to OpenAI, YC Org, and donor-advised funds (RFPs 2-4); (ii) the Foundation's IRS Form 990s (tax forms for charitable organizations that Musk requested from OpenAI and that OpenAI has agreed to produce) (RFP 6); (iii) documents sufficient to show the terms on which certain Foundation grants were made (RFP 5); and (iv) documents and communications concerning OpenAI and its founders (RFP 1) and Musk's efforts to interfere with OpenAI's business (RFPs 7-13).

The Excession subpoena targets similar documents and communications, including those relating to Musk's alleged donations (RFP 3); OpenAI and its founders (RFP 1); key events in OpenAI's history and relationship with Musk (RFPs 2, 4-5); Musk's purported bid to purchase OpenAI (RFPs 6-7); and Musk's efforts to interfere with OpenAI's business (RFPs 8-15).

Both entities, acting through Musk's counsel, served deficient responses and objections that asserted a litany of boilerplate objections and failed to identify which, if any, of the RFPs the Musk Foundation and Excession would comply with, or how. *See* Exs. C-D. The OpenAI Defendants spent more than a month seeking clarity on the entities' positions through the meet-and-confer process—to no avail. Counsel for the entities refused to confirm whether Musk or Birchall maintained email accounts at the Musk Foundation or Excession; whether those accounts would be collected and searched; and what parameters (if any) would be applied to that effort.

Counsel also provided vague and contradictory responses regarding the entities' positions: On June 18, Musk's counsel stated they were prepared to "facilitate the production of documents consistent with Plaintiffs' responses to the Requests for Production," suggesting that the Musk Foundation and Excession would produce documents to the same extent as Plaintiffs in response to similar requests. But counsel walked that back on June 23, stating that the entities were only "conducting searches for documents evidencing Musk's financial contributions to OpenAI, Inc. and responsive communications concerning the same." Neither formulation is satisfactory, because neither provides any clarity as to what these entities intend to do, if anything, to collect, search, review, and produce responsive documents—or which RFPs they intend to comply with.

***The entities should be compelled to comply with the subpoenas in full.*** "[T]he scope of discovery through a Rule 45 subpoena is the same as the scope of discovery permitted under Rule 26(b)." *Abdo* v. *Fitzsimmons*, 2019 WL 10910805, at *1 (N.D. Cal. Oct. 2, 2019). As explained in more detail in the OpenAI Defendants' section of the parties' joint letter addressing the Musk Parties' deficient discovery responses, all of the requests directed at the Musk Foundation and Excession seek relevant evidence that they have no basis to resist:

- Musk's donations (Foundation RFPs 2-4, 6; Excession RFP 3), through the Musk Foundation and donor-advised funds, are relevant to Musk's breach of charitable trust and breach of contract claims. The entities' attempt to limit their production to documents "evidencing Musk's financial contributions to OpenAI, Inc." excludes relevant contributions by the Musk Foundation, as well as any contributions through donor-advised funds or YC Org. And the entities' position, expressed below, that they can continue to withhold unspecified "internal files and documents" and those that are not "directly relevant" (even if responsive to an RFP) continues to improperly obscure what documents will be withheld or produced.

- Documents concerning the Musk Foundation's grants to other organizations (RFP 5) are also relevant. The Court has expressed skepticism that Musk would have made tens of millions of dollars in contributions to OpenAI without any writing memorializing those contributions or the conditions Musk now alleges he placed on them. Dkt. 109 (PI Hearing Tr. 54:10 - 56:12). The Musk Foundation's customary practices when making grants—such as whether they are

typically memorialized in writing, and if so, how—are probative of whether Musk's assertions concerning his alleged donations to OpenAI are true or not.[1]

- Musk's alleged "bid" to purchase OpenAI and other efforts to interfere with OpenAI's business interests (Foundation RFPs 7-12; Excession RFPs 6-15) are relevant to OpenAI's counterclaims, the OpenAI Defendants' defenses, and the availability of equitable remedies.

- Birchall's communications about OpenAI and its founders (RFP 1) and Musk's involvement in OpenAI (Excession RFPs 2, 4-5) are undeniably relevant. Musk has already agreed to produce documents in response to similar requests in party discovery.

The entities' objections to these requests are meritless. Neither has even tried to substantiate any burden objection. Nor could they, given that responsive documents are likely to exist predominantly in emails from only a single non-Musk custodian—Birchall. In any event, any objections should be deemed waived. As courts in this District have held, vague responses "to meet and confer regarding [ ] scope" like those served here violate Rule 34(b)(2)(B), which requires that a responding "party state with specificity its grounds for objecting to a request and identify any documents withheld based on such objection." *See, e.g.*, *Handloser* v. *HCL Am., Inc.*, 2020 WL 4923971, at *6 (N.D. Cal. Aug. 21, 2020). The OpenAI Defendants have repeatedly raised this deficiency with the entities' counsel, citing legal authority, and the entities have refused to amend their responses and objections or provide any clarity on their positions. That is improper and prejudicial, and has made it impossible for the OpenAI Defendants to assess whether the entities are complying with the subpoenas. The Court should order them to do so.

## Musk Foundation and Excession, LLC's Statement

**Background**: Subpoenaed parties Musk Foundation and Excession, LLC, ("Subpoenaed Parties") incorporate by reference the Background sections from Plaintiffs' statements in the concurrently filed joint discovery briefs to avoid burdensome repetition.

**Musk's Financial Contributions to OpenAI**: OpenAI seeks yet another unnecessary order from the Court. In its statement above, OpenAI falsely claims "Counsel for the entities refused to confirm whether Musk or Birchall maintained email accounts at the Musk Foundation or Excession; whether those accounts would be collected and searched; and what parameters (if any) would be applied to that effort," and that no RFPs are being responded to. However, in their June 18 letter, the Subpoenaed Parties informed OpenAI: "Regarding the subpoenas served on the Musk Foundation and Excession, we are prepared to facilitate the production of documents consistent with Plaintiffs' responses to the Requests for Production…." The Subpoenaed Parties did not "walk[] that back," but rather, clarified that, in terms of financial information, such production would include "documents sufficient to reflect (i) Musk's financial contributions to OpenAI, Inc., (ii) financial contributions Musk made to OpenAI, Inc. through YC Org, and (iii) payments made

---

[1] *Tremblay* v. *OpenAI, Inc.*, 2025 WL 714108, at *2, cited by the entities, is inapposite. That case involved a subpoena for confidential agreements between two nonparties with no connection to the underlying dispute. Here, OpenAI seeks documents concerning donations made by a Musk-controlled entity in a case about donations by that entity.

by Musk Industries to or on behalf of OpenAI, Inc., along with communications concerning the same." They further confirmed in their June 27 email that, "Regarding the Musk Foundation and Excession, we are conducting targeted searches for categories of documents, as discussed, and *are conducting searches of both Musk's and Birchall's email accounts*" (emphasis added)."[2] There is nothing contradictory about the Subpoenaed Parties' position, which is responsive to OpenAI's requests—quite unlike OpenAI's responses concerning Altman's entities.

Further, as clarified in Plaintiff's statement concerning OpenAI's joint letter, "this production would include documents reflecting the transfers from Fidelity and Vanguard, and would include documents in possession of Musk Foundation/Excession/Musk Industries[.]" To the extent the subpoenas seek internal files and documents beyond those directly relevant to Musk's financial contributions to OpenAI, such requests constitute an improper intrusion into the Subpoenaed Parties' confidential information. *See, e.g., Digital Shape Techs., Inc. v. Glassdoor, Inc.*, No. 16-mc-80150-JSC, 2016 WL 5930275, at *4 (N.D. Cal. Oct. 12, 2016) ("Requests are unduly intrusive and burdensome where they . . . request confidential internal information[] and appear to be a broad fishing expedition for irrelevant information") (internal quotation marks and citation omitted); *Edwards v. California Dairies, Inc.*, No. 1:14-MC-00007-SAB, 2014 WL 2465934, at *2 (E.D. Cal. June 2, 2014) ("While discovery should not be unnecessarily restricted, discovery is more limited to protect third parties from harassment, inconvenience, or disclosure of confidential documents."), *reconsideration denied*, No. 1:14-MC-00007-SAB, 2014 WL 3420991 (E.D. Cal. July 14, 2014).

Moreover, to the extent OpenAI seeks Form 990s (*see* Musk Foundation No. 6), OpenAI may readily obtain these documents from public sources. *Travelers Indem. Co. v. Metro. Life Ins. Co.*, 228 F.R.D. 111, 114 (D. Conn. 2005) (granting motion to quash because "in the absence of some showing that the publicly available information in that proceeding is inadequate, the onus is properly on MetLife as a party to the litigation."); *see* https://projects.propublica.org/nonprofits/organizations/770587507. OpenAI has made no showing these publicly available documents are inadequate.

**Musk Foundation's Donations to <u>Other</u> Entities:** OpenAI's request constitutes a needless and disproportionate intrusion upon third parties, based on mere speculation that they might be relevant to a claim or defense without demonstrating substantial need. "[T]he 'substantial need' showing must be concrete, not speculative." *Tremblay v. OpenAI, Inc.*, No. 23-CV-03223-AMO (RMI), 2025 WL 714108, at *2 (N.D. Cal. Mar. 5, 2025). Courts have repeatedly held that the mere possibility of some relevance does not justify discovery requests, particularly where the requests are scattershot, speculative, or unduly burdensome. *See Elgindy v. Aga Serv. Co.*, 2021 WL 5083761, at *3 (N.D. Cal. Nov. 2, 2021) (discovery's "relevance gauge . . . cannot be used as a license to engage in a scattershot, burdensome, or speculative fishing expedition"). A showing of "marginal relevance" is also insufficient. *See Tremblay*, 2025 WL 714108 at *2.

---

[2] OpenAI cites *Handloser*, 2020 WL 4923971, but that case concerned only party discovery under Federal Rule 34, not non-party discovery under Rule 45, and in any event, the Subpoenaed Parties have made their positions appropriately clear during the meet-and-confer process.

Here, OpenAI seeks discovery of the terms and conditions of *twenty-eight* separate grants made by the Musk Foundation to organizations wholly unrelated to OpenAI involving different charitable purposes that bear no relevance to the specific allegations in this case. Such a broad fishing expedition into irrelevant third-party charitable activities fails the proportionality requirements of Federal Rule 26(b)(1) and imposes an undue burden on a non-party whose grant-making practices to other charitable organizations have no probative value regarding Musk's financial contributions to OpenAI at issue here. *See Beaver Cty. Employees' Ret. Fund v. Tile Shop Holdings, Inc.*, No. 16- MC-80076-JSC, 2016 WL 7212308, at *4 (N.D. Cal. Dec. 13, 2016) (imposing sanctions on the defendants for issuing an overbroad subpoena to a third party, seeking a large volume of documents of dubious value to the case); *Tremblay*, 2025 WL 714108, at *1-3 (denying plaintiff's motion to compel non-party's compliance with a subpoena seeking the non-party's agreements *with others* because "the marginal relevance of the information Plaintiffs seek is substantially outweighed by the burden its production would pose to the non-parties"). OpenAI claims *Tremblay* is inapposite, yet simultaneously seeks sensitive financial documents from "nonparties" concerning donations "with no connection to the underlying dispute." OpenAI attempts to distinguish *Tremblay* while exemplifying the very overreach that case prohibits.

***OpenAI's Counterclaims Regarding the Letter of Intent and Its Fifty-Five Defenses***: As explained in Plaintiff's statement in OpenAI's concurrently filed joint letter brief, which is incorporated herein by reference, discovery on OpenAI's Counterclaims and fifty-five defenses is inappropriate pending Plaintiffs' Motion to Dismiss, Dkt. 166, and Motion to Strike, Dkt. 186, as the Counterclaims may be dismissed or, at minimum, stayed until Phase Two of these proceedings, and many or most of their gratuitous defenses may be struck. Indeed, Plaintiffs have yet to even answer OpenAI's Counterclaims and discovery concerning them is not appropriate where the pleadings are not in final form. *See Morris v. Barra*, 10-CV-2642-AJB (BGS), 2012 WL 4900203 (S.D. Cal. 2012) ("Given that this case is still in the pleading stage, the Court finds that merits-based discovery is inappropriate at this time, as its relevancy is outweighed by the burden and expense of production"); *Thomas v. Felker*, CIV S-09-2486 CMK (TEMP), 2011 WL 2225133 (E.D. Cal. 2011) ("Plaintiff is apprised that any motion to compel will be found premature until the court has issued its final ruling on the motion to dismiss"); *Hall v. Tilton*, No. C 07-3233 RMW (PR), 2010 WL 539679, at *2 (N.D. Cal. Feb. 9, 2010) (granting stay of discovery until disposition of motion to dismiss).

Given that the District Judge is scheduled to hear Plaintiffs' Motion to Dismiss on July 15, this Court should defer ordering any discovery on the Counterclaims and fifty-five defenses until a ruling has been rendered on their viability.

***Birchall's Communications About OpenAI and Musk's Involvement in OpenAI***: As described above, in their June 18 letter, the Subpoenaed Parties informed OpenAI: "Regarding the subpoenas served on the Musk Foundation and Excession, we are prepared to facilitate the production of documents consistent with Plaintiffs' responses to the Requests for Production…." They further confirmed in their June 27 letter that this would include "conducting targeted searches for categories of documents, as discussed, and are conducting searches of both Musk's and Birchall's email accounts." OpenAI has demonstrated no need for discovery beyond this.

**VIA CM/ECF**

## SIGNATURE ATTESTATION

     I hereby attest that the signatories listed above, on whose behalf this document is submitted, concur in the filing's content and have authorized the filing.

| | |
|---|---|
| Dated:  July 7, 2025 | _/s/_     _William Frentzen_<br>William Frentzen (CA SBN 343918) |