# EXHIBIT A

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Northern District of California

| | |
|---|---|
| Elon Musk, et al., | ) |
| *Plaintiff* | ) |
| v. | )   Civil Action No.  4:24-CV-4722-YGR |
| OpenAI, Inc., et al. | ) |
| *Defendant* | ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:                                     Musk Foundation
c/o Registered Agents Solutions, Inc., 5301 Southwest Pakrway Suite 400 Austin, Texas 78735

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:**See Schedule A.**

| Place: Morrison Foerster<br>425 Market Street<br>San Francisco, CA 94105 | Date and Time:<br><br>04/23/2025 5:00 pm |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:   04/09/2025

                    *CLERK OF COURT*
                                        OR
                                                 */s/ David J. Wiener*
_____          _____
*Signature of Clerk or Deputy Clerk*          *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*  OpenAI Defendants
_____ , who issues or requests this subpoena, are:

David Wiener, Morrison & Foerster, 425 Market Street, San Francisco, CA 94105, DWiener@mofo.com, (415) 268-6441

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.  4:24-CV-4722-YGR

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❏ I served the subpoena by delivering a copy to the named person as follows: _____

_____    on *(date)* _____ ; or

❏ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00    .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

 **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
   **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
   **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
     **(i)** is a party or a party's officer; or
     **(ii)** is commanded to attend a trial and would not incur substantial expense.

 **(2)** *For Other Discovery.* A subpoena may command:
   **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
   **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

 **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

 **(2)** *Command to Produce Materials or Permit Inspection.*
   **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
   **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
     **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
     **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

 **(3)** *Quashing or Modifying a Subpoena.*
   **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
     **(i)** fails to allow a reasonable time to comply;
     **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
     **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
     **(iv)** subjects a person to undue burden.
   **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
     **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

     **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
   **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
     **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
     **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

 **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
   **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
   **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
   **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
   **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

 **(2)** *Claiming Privilege or Protection.*
   **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
     **(i)** expressly make the claim; and
     **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
   **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## SCHEDULE A TO SUBPOENA TO THE MUSK FOUNDATION

As used in Schedule A, the following terms shall have the following meanings:[1]

### DEFINITIONS

1.      "You" and "Your" means Musk Foundation, the private charitable organization founded and controlled by Elon Musk and any of its predecessors, successors, parents, divisions, subsidiaries, or affiliates, and each and all of (a) its present and former employees, agents, representatives, or advisors; (b) any entity over which Musk Foundation exercised or exercises control; and (c) any other Persons acting on its or their behalves.

2.      "AB 501" means draft assembly bill "AB-501 Startup venture capital nonprofits: transfer" introduced to the California assembly on February 10, 2025, found at https://leginfo.legislature.ca.gov/faces/billNavClient.xhtml?bill_id=202520260AB501.

3.      "Action" means the action captioned *Musk et al.* v. *Altman et al.*, Case No. 4:24-cv-04722-YGR.

4.      "Any" and "all" means any and all in the most inclusive sense of those terms.

5.      "Communication" and "Communications" means any act or instance of transferring, transmitting, passing, delivering, or giving information by oral, written, or electronic means, including but not limited to by notes, letter, telegram, facsimile, electronic mail, electronic message (including text message), or voicemail.

6.      "Complaint" means the amended complaint filed on November 14, 2024 in the Action.

7.      "Document" and "Documents" shall have the broadest meaning permitted under the Federal Rules of Civil Procedure and shall include, without limitation, the original and all non-identical copies of any handwritten, printed, typed, recorded, or graphic material, or ESI (as defined below), of any kind and nature, including all drafts and transcriptions thereof, however

---

[1] Notwithstanding any definition set forth herein, each word, term, or phrase used in this Subpoena is intended to have the broadest meaning permitted under the Federal Rules of Civil Procedure and the Local Rules of the Northern District of California.

produced or reproduced, and including but not limited to accounting materials, accounts, agreements, analyses, appointment books, books, books of account, brochures, calendars, catalogs, checks, computer data, computer disks, contracts, correspondence, data sheets, date books, diaries, diskettes, drawings, email messages, faxes, guidelines, instructions, inter-office communications, invoices, letters, logs, manuals, memoranda, minutes, notes, opinions, payments, plans, presentations, purchase confirmations, receipts, records, regulations, reports, sound recordings, spreadsheets, statements, studies, surveys, tickets, text messages, instant messages, timesheets, trade records, video recordings, voice-mail messages, vouchers, word processing materials (however stored or maintained), and all other means by which information is stored for retrieval.

8.      "ESI" means information that is stored in an electronic format, regardless of the media or whether it is in the original format in which it was created, and that is retrievable in perceivable form and includes but is not limited to metadata, system data, deleted data, and fragmented data.

9.      "Fidelity" means the ultimate parent organization of Fidelity Charitable.

10.     "Fidelity Charitable" means Fidelity Investments Charitable Gift Fund, a 501(c)(3) charitable organization, and any of its predecessors, successors, and affiliates.

11.     "Form 990" means Internal Revenue Service Form 990, Return of Organization Exempt from Income Tax.

12.     "Governmental Authority" means any U.S. (federal, state, or local) or foreign government, or any U.S. or foreign governmental, regulatory, judicial, or administrative authority, agency, or commission, together with any of their respective employees, attorneys, agents, or representatives, and all other Persons acting or purporting to act on their behalf.

13.     "Including" means including but not limited to.

14.     "LASST" means the organization Legal Advocates for Safe Science and Technology.

15.    "Musk" means Elon Musk and all other Persons or entities acting or purporting to act on his behalf.

16.    "OpenAI" means Defendant OpenAI, Inc. and its affiliated entities.

17.    "OpenAI Defendants" means Samuel Altman, Gregory Brockman, OpenAI, Inc., OpenAI L.P., OpenAI, L.L.C., OpenAI GP, L.L.C., OpenAI OpCo, LLC, OpenAI Global, LLC, OAI Corporation, LLC, OpenAI Holdings, LLC, OpenAI Startup Fund Management, LLC, OpenAI Startup Fund GP I, L.L.C., OpenAI Startup Fund I, L.P., OpenAI Startup Fund SPV GP I, L.L.C., OpenAI Startup Fund SPV GP II, L.L.C., OpenAI Startup Fund SPV GP III, L.L.C., OpenAI Startup Fund SPV GP IV, L.L.C., OpenAI Startup Fund SPV I, L.P., OpenAI Startup Fund SPV II, L.P., OpenAI Startup Fund SPV III, L.P., OpenAI Startup Fund SPV IV, L.P., Aestas Management Company, LLC, and Aestas LLC.

18.    "Person" means any natural person, individual, corporation, limited liability company, trust, partnership, proprietorship, association, joint venture, group, business entity, governmental or public entity, or any other form or organization of legal entity.

19.    "Request" or "Requests" means the requests contained in this Schedule A To Subpoena To The Musk Foundation.

20.    "SB 1047" means California's Senate Bill 1047, which aims to regulate artificial intelligence safety.

21.    "Vanguard" means the ultimate parent organization of Vanguard Charitable.

22.    "Vanguard Charitable" means Vanguard Charitable Endowment Program, a 501(c)(3) charitable organization, and any of its predecessors, successors, and affiliates.

23.    "xAI" means X.AI Corp and any of its predecessors, successors, parents, divisions, subsidiaries, or affiliates (including X Corp. or XAI Holdings Corp.).

24.    "X Corp." means the technology company established by Musk and any of its predecessors, successors, parents, divisions, subsidiaries, or affiliates.

25.    "Y Combinator" means Y Combinator, LLC, and each of its wholly owned affiliates and subsidiaries.

26.    "YC Org" means YC Org, a 501(c)(3) charitable organization, and each of its predecessors, successors, affiliates, parents, or subsidiaries.

27.    The terms "concerning" and "with respect to" shall be read and applied as interchangeable and shall be construed in the broadest sense permitted to mean discussing, supporting, describing, concerning, regarding, with regard to, relating to, referring to, pertaining to, containing, analyzing, evaluating, studying, recording, memorializing, reporting on, commenting on, reviewed in connection or in conjunction with, evidencing, setting forth, contradicting, refuting, considering, recommending, or constituting, in whole or in part.

28.    Whenever used herein, (i) the singular shall be deemed to include the plural, and the plural shall be deemed to include the singular; (ii) the masculine shall be deemed to include the feminine, and the feminine shall be deemed to include the masculine; (iii) the disjunctive ("or") shall be deemed to include the conjunctive ("and"), and the conjunctive ("and") shall be deemed to include the disjunctive ("or"); (iv) each of the functional words "each," "every," "any," and "all" shall be deemed to include each of the others; and (v) the use of the present or past tense shall be construed to include both the present and past tenses as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

## INSTRUCTIONS

1.    These Requests require the production of all responsive Documents that are in Your possession, custody, or control, wherever located and whether active, in storage, or otherwise, including in the possession of Your agents or advisors.  To the extent these Requests seek production of Documents or Communications sent or received by Elon Musk from accounts or platforms maintained, hosted or stored by You, the OpenAI Defendants are also seeking those Documents and Communications from Musk through party discovery in the Action, and maintain that Musk has an obligation to collect and produce any such Documents or Communications as a party to the Action.

2.      You are obligated to undertake and produce all responsive Documents in Your possession, custody, or control even if You believe that another Person has already produced the same or similar Documents or may produce such Documents in the future.

3.      All Documents shall be produced as kept in the ordinary course of business, in the form and in the same order within each file in which they were located prior to production. Where a portion of a Document is responsive to the Requests set forth below, the entire Document, along with all transmittal sheets, cover letters, attachments, appendices, enclosures, and exhibits to such Document, shall be produced.

4.      Each Request shall be construed independently, and none of the Requests shall be construed as limiting the scope of any of the other Requests.

5.      Each Request shall be considered as including all non-identical copies and, to the extent applicable, preliminary drafts of Documents that, as to content, differ in any respect from the original or final draft or from each other.

6.      If any Documents called for by these Requests are withheld under a claim of privilege or protection, You are requested at the time of responding to these Requests, or at such other time as may be mutually agreed by You and the OpenAI Defendants, to produce a log that separately identifies each such Document and both (i) specifies the assertion(s) of privilege or protection asserted for withholding the Document; and (ii) sets forth all information necessary to support the assertion(s) of privilege or protection for withholding the Document, including the type or nature of the Document (*e.g.*, letter, memorandum, e-mail, etc.), its author, all recipients, all Persons to whom it was shown or otherwise made available or with whom it was discussed, the date of the Document, and a description of the substance of the Document, all in a manner sufficient to allow the Court to rule on the validity of the claim(s) of privilege or protection asserted for withholding each Document from production.

7.      You must produce all portions of requested Documents that are not subject to a claim of privilege or protection by excising or otherwise protecting the portions of such Document for which a claim of privilege or protection is asserted and producing the remainder.

5

8.    If no Documents exist that are responsive to a particular Request, so state in Your response to such Request.  If any Documents requested herein have been lost, discarded, deleted, destroyed, or are otherwise no longer in Your possession, custody, or control, You shall identify such Documents as completely as possible, including the following information:  (i) the date of disposal; (ii) the manner of disposal; (iii) the reason(s) for disposal; (iv) the Person(s) who authorized the disposal; and (v) the Person(s) who disposed of the Document.

9.    Where anything has been deleted or redacted from a Document produced in response to a Request, specify the nature of the material deleted or redacted and the reason for the deletion or redaction, and identify the location of any deletion or redaction on the produced copy of such Document.

10.    Each of these Definitions and Instructions shall be fully applicable to all of the Requests, notwithstanding that a particular Definition or Instruction above may, in whole or in part, be reiterated in certain Requests or that certain Requests may incorporate supplemental instructions or definitions.

11.    Unless otherwise specified in the Request, each Request shall be deemed to include all Documents prepared, sent, received, written, reviewed, or marked upon from January 1, 2015 through the date of production.

12.    Subject to any protocol governing the production and use of ESI that may be agreed to by You and the OpenAI Defendants or ordered by the Court, all Documents shall be Bates-labeled and shall be produced electronically in single page Group IV TIF format (except that Microsoft Excel, PowerPoint, and structured data files shall be produced in native format), with load files containing, for each Document, extracted searchable text and all available metadata for at least the following fields:  BEGBATES; ENDBATES; BEGBATESATT; ENDBATESATT; All Custodians; File Name; Email Importance; File Type; File Size; Page Count; Author; Subject; From; To; CC; BCC; Sent Date; Received Date; Date Appointment Start; Date Appointment End; Time Zone Processed; MD5 Hash; and Redaction.

## REQUESTS FOR PRODUCTION

**Request For Production No. 1:**

All Documents and Communications concerning (i) OpenAI, (ii) Samuel Altman, (iii) Gregory Brockman, or (iv) the Action.

**Request For Production No. 2:**

All Documents and Communications concerning any charitable contributions, donations, gifts, or grants to OpenAI, including Documents and Communications concerning (i) the terms on which any charitable contributions, donations, gifts, or grants were made to OpenAI; (ii) any actual or contemplated agreements, contracts, arrangements, or understandings (including any drafts) governing any charitable contributions, donations, gifts, or grants to OpenAI; and (iii) any conditions or restrictions (or lack thereof) on the disposition or use of any charitable contributions, donations, gifts, or grants to OpenAI.

**Request For Production No. 3:**

All Documents and Communications concerning any charitable contributions, donations, gifts, or grants to Y Combinator or YC Org, including Documents and Communications concerning (i) the terms on which any charitable contributions, donations, gifts, or grants were made to Y Combinator or YC Org; (ii) any actual or contemplated agreements, contracts, arrangements, or understandings (including any drafts) governing any charitable contributions, donations, gifts, or grants to Y Combinator or YC Org; and (iii) any conditions or restrictions (or lack thereof) on the disposition or use of any charitable contributions, donations, gifts, or grants to Y Combinator or YC Org.

**Request For Production No. 4:**

All Documents and Communications concerning any charitable contributions, donations, gifts, or grants to Fidelity Charitable, Vanguard Charitable, or any donor-advised or other charitable fund associated with Fidelity or Vanguard, including Documents and Communications concerning (i) the terms on which any charitable contributions, donations, gifts, or grants were made Fidelity Charitable, Vanguard Charitable, or any donor-advised or other charitable fund

7

associated with Fidelity or Vanguard; (ii) any actual or contemplated agreements, contracts, arrangements, or understandings (including any drafts) governing any charitable contributions, donations, gifts, or grants to Fidelity Charitable, Vanguard Charitable, or any donor-advised or other charitable fund associated with Fidelity or Vanguard; and (iii) any conditions or restrictions (or lack thereof) on the disposition or use of any charitable contributions, donations, gifts, or grants to Fidelity Charitable, Vanguard Charitable, or any donor-advised or other charitable fund associated with Fidelity or Vanguard.

**Request For Production No. 5:**

With respect to each of the grants or charitable contributions listed in Exhibit A to these Requests, Documents and Communications sufficient to show (i) the terms on which each such grant or charitable contribution was made, including any contracts, agreements, arrangements, or understandings governing each grant or charitable contribution; and (ii) any conditions or restrictions on the disposition or use of each grant or charitable contribution.

**Request For Production No. 6:**

Client copies of Your Form 990s for each year You have been in operation, including any attachments, schedules, or other supporting documentation thereto.

**Request For Production No. 7:**

All Documents and Communications concerning the "Open Letter" titled "Pause Giant AI Experiments: An Open Letter," published by the Future of Life Institute on March 22, 2023, and signed by Elon Musk, including all Communications with any signatories or concerning Musk's decision to sign and promote the Open Letter and call for a pause in the development of certain artificial intelligence technologies and all Documents concerning such Communications.

**Request For Production No. 8:**

All Communications between You or any Person affiliated with You, on the one hand, and any Governmental Authority, on the other hand, concerning OpenAI, Samuel Altman, Gregory Brockman, or the Action, including any Communications with representatives from (i) the office of the Delaware Attorney General; (ii) the office of the California Attorney General; (iii) the office of any other state's Attorney General; (iv) the Internal Revenue Service; (v) the U.S. Securities and Exchange Commission; (vi) the Federal Trade Commission; (vii) the Central Intelligence Agency; (viii) the Department of Justice; (ix) the Department of Commerce; (x) the Department of Defense; (xi) the Department of Government Efficiency; (xii) the Department of State; (xiii) the United States Congress; (xiv) any candidate for President of the United States; (xv) the President Elect of the United States; and (xvi) the President of the United States.

**Request For Production No. 9:**

All Communications between You or any Person affiliated with You, on the one hand, and any representative of a nonprofit or charitable entity, on the other hand, about OpenAI, Samuel Altman, Gregory Brockman, or any of the topics discussed in the Complaint, including Communications with those Persons listed in Exhibit B of these Requests.

**Request For Production No. 10:**

All Communications between You or any Person affiliated with You, on the one hand, and any representative of any competitor of OpenAI, on the other hand, concerning OpenAI, Samuel Altman, Gregory Brockman, or any of the topics discussed in the Complaint, including all Communications with representatives of Meta Platforms, Inc. or any of its affiliates (including Mark Zuckerberg) related to its interactions with the California Attorney General.

**Request For Production No. 11:**

All Documents and Communications concerning any payments to, or any actual, contemplated, or potential engagement or solicitation of any Person to make public statements about OpenAI, Samuel Altman, Gregory Brockman, or the Action.

**Request For Production No. 12:**

All Documents and Communications concerning SB 1047 or AB 501 or the potential impact of either on xAI or OpenAI, including any Communications between You or any Person affiliated with You, on the one hand, and any Governmental Authority or advocacy group, on the other hand, concerning SB 1047 or AB 501 and all Documents concerning such Communications.

**Request For Production No. 13:**

All Documents and Communications with or concerning LASST, Tyler Whitmer, or Vivian Dong regarding OpenAI, Samuel Altman, Gregory Brockman, or any topic referenced in the Complaint.

**Request For Production No. 14:**

All Documents and Communications sent or received by Elon Musk responsive to the OpenAI Defendants' First Set of Requests for Production to Musk attached as Exhibit C.

## Exhibit A – Musk Foundation Contributions

Musk Foundation Charitable Contributions in 2023:

1. $102,267,186 to The Foundation to support school operations and programs;
2. $54,000,000 to the XPRIZE Foundation to support technological development for carbon removal;
3. $34,808,757 to The Foundation to support school operations and programs;
4. $36,081,291 to Fidelity Charitable;
5. $4,000,000 to Hack Foundation to support coding education;
6. $2,200,000 to GivedDrectly Inc to support financial aid for families living in poverty;
7. $2,215,110 to Los Fresnos Consolidated Independent School District to support school operations and programs;
8. $2,000,000 to Code.org to support access to and participation in computer science in schools; and
9. $1,750,000 to Brownsville Independent School District to support school operations and programs.

Musk Foundation Charitable Contributions in 2022:

10. $4,000,000 to the XPRIZE Foundation to support technological development for carbon renewal;
11. $89,941,380 and $10,000,000 to The Foundation to support school operations and programs;
12. $36,081,291 to Fidelity Charitable;
13. $7,000,000 grant to Khan Academy to support computer science work and unfinished learning programs; and
14. $54,000,000 grant approved in 2022 for future payment to the XPRIZE Foundation to support technological development for carbon removal.

Musk Foundation Charitable Contributions in 2021:

1. $55,000,000 to St. Jude's Children's Research Hospital to support research and treatment of pediatric catastrophic diseases;
2. $54,000,000 to the XPRIZE Foundation to support technological development for carbon removal;
3. $4,000,000 to Future of Life Institute to support research and initiatives for safeguarding life and developing optimistic visions of the future;
4. $10,000,000 to the University of Texas at Austin to support research programs;
5. $2,000,000 to Georgetown University to support research programs;
6. $1,500,000 to the University of Pennsylvania to support research programs; and
7. $1,500,000 to the Massachusetts Institute of Technology to support research programs.

Musk Foundation Charitable Contributions in 2020:

1. $1,000,000 to The Mercatus Center and George Mason University for Covid-19 scientific research;
2. $50,000 to Sacred Heart University for Covid-19 antibody seroprevalence study; and
3. $20,701,689 to Fidelity Charitable.

Musk Foundation Charitable Contributions in 2018:

1. $12,431,640 to Fidelity Charitable; and
2. $2,000,000 to Future of Life Institute for Artificial Intelligence.

Musk Foundation Charitable Contributions in 2017:

1. $10,000,000 to YC.org for scientific research; and
2. $37,798,322 to Vanguard Charitable.

**Exhibit B – Representative of a Nonprofit or Charitable Entity**

1. Mark Zuckerberg and/or any other representatives of The Chan Zuckerberg Initiative

2. Priscilla Chan

3. Robert Weissman and/or any other representatives of Public Citizen

4. Fred Blackwell and/or any other representatives of the San Francisco Foundation

5. Orson Aguilar and/or any other representatives of Latino Prosperity

6. Aarti Kohli and/or any other representatives of Asian Law Caucus

7. Mark Philpart and/or any other representatives of California Black Freedom Fund

8. Sabrina Smith and/or any other representatives of California Calls

9. Adam Briones and/or any other representatives of California Community Builders

10. Miguel Santana and/or any other representatives of California Community Foundation

11. Richard Tate and/or any other representatives of The California Wellness Foundation

12. John Kim and/or any other representatives of Catalyst California

13. Alex Tom and/or any other representatives of Center for Empowered Politics

14. Natalie Foster and/or any other representatives of Economic Security Project

15. Cathy Cha and/or any other representatives of Evelyn and Walter Haas, Jr. Fund

16. Michelle Vilchez and/or any other representatives of Innovate Public Schools

17. Allison Scott and/or any other representatives of Kapor Foundation

18. Sonja Diaz and/or any other representatives of Latina Futures 2050 Lab

19. Julián Castro and/or any other representatives of Latino Community Foundation

20. Shane Goldsmith and/or any other representatives of Liberty Hill Foundation

21. Mike Kubzansky and/or any other representatives of Omidyar Network LLC

22. Joseph Tomás McKellar and/or any other representatives of PICO California

23. Guillermo Mayer and/or any other representatives of Public Advocates

24. Paulina Gonzalez-Britto and/or any other representatives of Rise Economy

25. Cynthia Strathmann and/or any other representatives of Strategic Actions for a Just Economy

26. Catherine Bracy and/or any other representatives of TechEquity

27. Brenda Solorzano and/or any other representatives of The California Endowment

28. Don Howard and/or any other representatives of The James Irvine Foundation

29. Fred Sotelo and/or any other representatives of Urban Leadership Development Institute

30. Joanna S. Jackson and/or any other representatives of Weingart Foundation

31. Merrick Wayne and/or any other representatives of Loevy + Loevy

32. Yasmin Aslam and/or any other representatives of Eko.org or SumofUs.

# Exhibit C
## Requests for Production to Plaintiff Elon Musk

JORDAN ETH (CA SBN 121617)
JEth@mofo.com
DAVID J. WIENER (CA SBN 291659)
DWiener@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105
Telephone: (415) 268-7000
Facsimile: (415) 268-7522

WILLIAM SAVITT (admitted *pro hac vice*)
WDSavitt@wlrk.com
BRADLEY R. WILSON (admitted *pro hac vice*)
BRWilson@wlrk.com
SARAH K. EDDY (admitted *pro hac vice*)
SKEddy@wlrk.com
NATHANIEL CULLERTON (admitted *pro hac vice*)
NDCullerton@wlrk.com
WACHTELL, LIPTON, ROSEN & KATZ
51 West 52nd Street
New York, NY 10019
Telephone: (212) 403-1000
Facsimile: (212) 403-2000

*Attorneys for Defendants Samuel Altman, Gregory Brockman,*
*OpenAI, Inc., OpenAI L.P., OpenAI, L.L.C., OpenAI GP, L.L.C.,*
*OpenAI OpCo, LLC, OpenAI Global, LLC, OAI Corporation, LLC,*
*OpenAI Holdings, LLC, OpenAI Startup Fund Management, LLC,*
*OpenAI Startup Fund GP I, L.L.C., OpenAI Startup Fund I, L.P.,*
*OpenAI Startup Fund SPV GP I, L.L.C., OpenAI Startup Fund SPV GP II, L.L.C.,*
*OpenAI Startup Fund SPV GP III, L.L.C., OpenAI Startup Fund SPV GP IV, L.L.C.,*
*OpenAI Startup Fund SPV I, L.P., OpenAI Startup Fund SPV II, L.P.,*
*OpenAI Startup Fund SPV III, L.P., OpenAI Startup Fund SPV IV, L.P.,*
*Aestas Management Company, LLC, and Aestas LLC*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| ELON MUSK, et al., | Case No.: 4:24-cv-04722-YGR |
| Plaintiffs, | **OPENAI DEFENDANTS' FIRST SET OF REQUESTS FOR PRODUCTION TO PLAINTIFF ELON MUSK** |
| v. | |
| SAMUEL ALTMAN, et al., | Date Action Filed: August 5, 2024 |
| Defendants. | Trial Date: Not yet determined |

Propounding Party:                OpenAI Defendants

Responding Party:                Plaintiff Elon Musk

Set No.:                            One

Defendants Samuel Altman, Gregory Brockman, OpenAI, Inc., OpenAI L.P., OpenAI, L.L.C., OpenAI GP, L.L.C., OpenAI OpCo, LLC, OpenAI Global, LLC, OAI Corporation, LLC, OpenAI Holdings, LLC, OpenAI Startup Fund Management, LLC, OpenAI Startup Fund GP I, L.L.C., OpenAI Startup Fund I, L.P., OpenAI Startup Fund SPV GP I, L.L.C., OpenAI Startup Fund SPV GP II, L.L.C., OpenAI Startup Fund SPV GP III, L.L.C., OpenAI Startup Fund SPV GP IV, L.L.C., OpenAI Startup Fund SPV I, L.P., OpenAI Startup Fund SPV II, L.P., OpenAI Startup Fund SPV III, L.P., OpenAI Startup Fund SPV IV, L.P., Aestas Management Company, LLC, and Aestas LLC (the "OpenAI Defendants" and together with the other defendants named in the captioned action, "Defendants"), by and through their attorneys, hereby request, pursuant to Federal Rule of Civil Procedure 34, that Plaintiff Elon Musk respond to this First Set of Requests for Production (the "Requests").  These Requests are governed by the Definitions and Instructions that follow.

## DEFINITIONS

1.      "2016 OpenAI-Microsoft Transaction" means the partnership between OpenAI and Microsoft announced in November 2016.  *See* "Microsoft, Elon Musk's AI Group Strike Partnership, Cloud Deal," BLOOMBERG (November 15, 2016), https://www.bloomberg.com/news/articles/2016-11-15/microsoft-elon-musk-s-ai-group-strike-partnership-cloud-deal.

2.      "2019 OpenAI-Microsoft Transaction" means the $1 billion investment transaction between OpenAI and Microsoft announced in July 2019.  *See* "Microsoft invests in and partners with OpenAI to support us building beneficial AGI," OPENAI (July 22, 2019), https://openai.com/index/microsoft-invests-in-and-partners-with-openai/.

3.      "2020 OpenAI-Microsoft Transaction" means the investment transaction between OpenAI and Microsoft to license GPT-3 to Microsoft announced in September 2020.  *See* "OpenAI licenses GPT-3 technology to Microsoft," OPENAI (Sept. 22, 2020),

2

https://openai.com/index/openai-licenses-gpt-3-technology-to-microsoft/.

4.    "2023 OpenAI-Microsoft Transaction" means the multibillion dollar investment transaction between OpenAI and Microsoft announced in January 2023.  *See* "OpenAI and Microsoft extend partnership," OPENAI (Jan. 23, 2023), https://openai.com/index/openai-and-microsoft-extend-partnership.

5.    "2024 OpenAI Fundraising" means the $6.6 billion investment transaction between OpenAI and multiple investors.  *See* "New funding to scale the benefits of AI," OPENAI (Oct. 2, 2024), https://openai.com/index/scale-the-benefits-of-ai/.

6.    "2025 OpenAI Fundraising" means the $40 billion investment transaction between OpenAI and Softbank announced in March 2025. *See* "New funding to build towards AGI," OPENAI (Mar. 31, 2025), https://openai.com/index/march-funding-updates/.

7.    "2025 Stargate Transaction" means the multibillion dollar investment transaction in which SoftBank, OpenAI, Oracle, and MGX, are initial equity funders in a company that intends to invest in building new artificial intelligence infrastructure for OpenAI in the United States.  *See* "Announcing The Stargate Project," OPENAI (Jan. 21, 2025), https://openai.com/index/announcing-the-stargate-project/.

8.    "2025 World Governments Summit Interview" means the interview between you and Omar Sultan Al Olama that took place in a plenary session titled "Boring cities, AI, and DOGE" at the 2025 World Governments Summit in Dubai on February 13, 2025, found at https://www.youtube.com/watch?v=eV396ioBs3g&t=13s.

9.    "AB 501" means draft assembly bill "AB-501 Startup venture capital nonprofits: transfer" introduced to the California assembly on February 10, 2025, found at https://leginfo.legislature.ca.gov/faces/billNavClient.xhtml?bill_id=202520260AB501.

10.    "Action" means the action captioned, *Musk, et al.* v. *Altman, et al.*, Case No. 4:24-cv-04722-YGR.

11.    "AGI" means artificial general intelligence.

12.    "Alternative Transaction" means any potential acquisition or strategic transaction involving OpenAI considered by You or any other actual or potential investor in the transaction

described in the February 10, 2025 Letter of Intent, including the transaction described in the February 10, 2025 Letter of Intent, any similar transaction, or any alternative to such transaction, whether formal or informal.

13.    "Any" and "all" means any and all in the most inclusive sense of those terms.

14.    "Articles of Incorporation" means the certificate of incorporation filed in the State of Delaware establishing OpenAI, Inc. included in Exhibit 21 attached to the Complaint.

15.    "Books and Records Requests" means the requests for documents and related information You made to OpenAI in 2023 through Your counsel, Alex Spiro.

16.    "Bylaws" means the bylaws of OpenAI, Inc. included in Exhibit 21 attached to the Complaint.

17.    "Cerebras" means the artificial intelligence company Cerebras Systems Inc.

18.    "CNBC Interview" means the interview between You and David Faber on May 16, 2023, found at https://www.youtube.com/watch?v=bWr-DA5Wjfw.

19.    "Communication" and "Communications" means any act or instance of transferring, transmitting, passing, delivering, or giving information by oral, written, or electronic means, including but not limited to by notes, letter, telegram, facsimile, electronic mail, electronic message (including text message), or voicemail.

20.    "Complaint" means the amended complaint filed on November 14, 2024 in the Action.

21.    "Document" and "Documents" shall have the broadest meaning permitted under the Federal Rules of Civil Procedure and shall include, without limitation, the original and all non-identical copies of any handwritten, printed, typed, recorded, or graphic material, or ESI (as defined below), of any kind and nature, including all drafts and transcriptions thereof, however produced or reproduced, and including but not limited to accounting materials, accounts, agreements, analyses, appointment books, books, books of account, brochures, calendars, catalogs, checks, computer data, computer disks, contracts, correspondence, data sheets, date books, diaries, diskettes, drawings, email messages, faxes, guidelines, instructions, inter-office communications, invoices, letters, logs, manuals, memoranda, minutes, notes, opinions,

4

payments, plans, presentations, purchase confirmations, receipts, records, regulations, reports, sound recordings, spreadsheets, statements, studies, surveys, tickets, text messages, instant messages, timesheets, trade records, video recordings, voice-mail messages, vouchers, word processing materials (however stored or maintained), and all other means by which information is stored for retrieval.

22.    "ESI" means information that is stored in an electronic format, regardless of the media or whether it is in the original format in which it was created, and that is retrievable in perceivable form and includes but is not limited to metadata, system data, deleted data, and fragmented data.

23.    "February 10, 2025 Letter of Intent" means the Letter of Intent dated February 10, 2025 addressed to the "Members of the Board of OpenAI, Inc.," and the "proposal" described therein to "acquire all assets . . . of OpenAI, Inc."

24.    "Fidelity Charitable" means Fidelity Investments Charitable Gift Fund, a 501(c)(3) charitable organization, and any of its predecessors, successors, and affiliates.

25.    "Former Employee Letter" means the purported letter from former OpenAI employees that You shared in a post on the social media platform X on November 21, 2023, found at https://x.com/elonmusk/status/1727096607752282485?s=46.

26.    "Governmental Authority" means any U.S. (federal, state, or local) or foreign government, or any U.S. or foreign governmental, regulatory, judicial, or administrative authority, agency, or commission, together with any of their respective employees, attorneys, agents, or representatives, and all other Persons acting or purporting to act on their behalf.

27.    "GPT-3" means the model referenced in the paper T. Brown et al., *Language Models are Few-Shot Learners*, arXiv:2005.14165 (May 28, 2020), https://arxiv.org/abs/2005.14165.

28.    "Including" means including but not limited to.

29.    "JCDA" means the Joint Collaboration and Development Agreement entered into between OpenAI and Microsoft in 2019 to facilitate cooperation in the development of artificial intelligence products and any amendments thereto, amended and restated versions, or successor

agreements, including the Joint Collaboration and Development Agreements entered into between OpenAI and Microsoft in 2021 and 2023.

30.    "Joe Rogan Interview" means the interview between You and Joe Rogan in episode #2281 of the podcast The Joe Rogan Experience, found at https://podcasts.apple.com/us/podcast/2281-elon-musk/id360084272?i=1000696846801.

31.    "LASST" means the organization Legal Advocates for Safe Science and Technology.

32.    "Microsoft" means Microsoft Corporation.

33.    "Musk Foundation" means the private charitable organization founded and controlled by You and any of its predecessors, successors, parents, divisions, subsidiaries, or affiliates.

34.    "Musk Industries" means Musk Industries LLC and any of its predecessors, successors, or related or affiliated entities.

35.    "Neuralink" means Neuralink Corp. and any of its predecessors, successors, parents, divisions, subsidiaries, or affiliates.

36.    "OpenAI" means Defendant OpenAI, Inc. and its affiliated entities.

37.    "OpenAI Board" means the board of directors of OpenAI, Inc.

38.    "Person" means any natural person, individual, corporation, limited liability company, trust, partnership, proprietorship, association, joint venture, group, business entity, governmental or public entity, or any other form or organization of legal entity.

39.    "Purported Contract" means the purported contract described in Paragraph 251 of the Complaint.

40.    "SB 1047" means California's Senate Bill 1047, which aims to regulate artificial intelligence safety.

41.    "SpaceX" means the space transportation and aerospace company known as Space Exploration Technologies Corporation or SpaceX, which was founded by You, and any of its predecessors, successors, parents, divisions, subsidiaries, or affiliates.

42.    "Tesla" means Tesla, Inc. and any of its predecessors, successors, parents,

divisions, subsidiaries, or affiliates.

43.    "The Boring Company" means the infrastructure company founded by You and any of its predecessors, successors, parents, divisions, subsidiaries, or affiliates.

44.    "Tucker Carlson Interview" means the interview between You and Tucker Carlson published in October 2024, found at

https://x.com/TuckerCarlson/status/1843375397024485778?t=4773.

45.    "Vanguard Charitable" means Vanguard Charitable Endowment Program, a 501(c)(3) charitable organization, and any of its predecessors, successors, and affiliates.

46.    "xAI" means X.AI Corp and any of its predecessors, successors, parents, divisions, subsidiaries, or affiliates (including X Corp. or XAI Holdings Corp.).

47.    "X Corp." means the technology company established by You and any of its predecessors, successors, parents, divisions, subsidiaries, or affiliates.

48.    "Y Combinator" means Y Combinator, LLC, and each of its wholly owned affiliates and subsidiaries.

49.    "YC Org" means YC Org, a 501(c)(3) charitable organization, and each of its predecessors, successors, affiliates, parents, or subsidiaries.

50.    "You" and "Your" means Plaintiff Elon Musk and each and all of (i) his present and former employees, agents, representatives, or advisors; (ii) any entity over which Plaintiff Elon Musk exercised or exercises control; and (iii) any other Persons acting on his or their behalves.

51.    The terms "concerning" and "with respect to" shall be read and applied as interchangeable and shall be construed in the broadest sense permitted to mean discussing, supporting, describing, concerning, regarding, with regard to, relating to, referring to, pertaining to, containing, analyzing, evaluating, studying, recording, memorializing, reporting on, commenting on, reviewed in connection or in conjunction with, evidencing, setting forth, contradicting, refuting, considering, recommending, or constituting, in whole or in part.

52.    Whenever used herein, (i) the singular shall be deemed to include the plural, and the plural shall be deemed to include the singular; (ii) the masculine shall be deemed to include

7

the feminine, and the feminine shall be deemed to include the masculine; (iii) the disjunctive

("or") shall be deemed to include the conjunctive ("and"), and the conjunctive ("and") shall be

deemed to include the disjunctive ("or"); (iv) each of the functional words "each," "every,"

"any," and "all" shall be deemed to include each of the others; and (v) the use of the present or

past tense shall be construed to include both the present and past tenses as necessary to bring

within the scope of the discovery request all responses that might otherwise be construed to be

outside of its scope.

## **INSTRUCTIONS**

1.      These Requests require the production of all responsive Documents and

Communications that are in Your possession, custody, or control, wherever located, including, for

the avoidance of doubt, any email or other electronic messages sent or received by You from

accounts or platforms maintained, hosted, or stored by Musk Industries, Neuralink, SpaceX,

Tesla, The Boring Company, the Musk Foundation, xAI, or X Corp., or any of their respective

affiliates, predecessors, or successors, and whether active, in storage, or otherwise, including in

the possession of Your agents or advisors.

2.      You are obligated to undertake and produce all responsive Documents in Your

possession, custody, or control even if You believe that another Person has already produced the

same or similar Documents or may produce such Documents in the future.

3.      All Documents shall be produced as kept in the ordinary course of business, in the

form and in the same order within each file in which they were located prior to production.

Where a portion of a Document is responsive to the Requests set forth below, the entire

Document, along with all transmittal sheets, cover letters, attachments, appendices, enclosures,

and exhibits to such Document, shall be produced.

4.      Each Request shall be construed independently, and none of the Requests shall be

construed as limiting the scope of any of the other Requests.

5.      Each Request shall be considered as including all non-identical copies and, to the

extent applicable, preliminary drafts of Documents that, as to content, differ in any respect from

the original or final draft or from each other.

8

6.    If any Documents called for by these Requests are withheld under a claim of privilege or protection, You are requested at the time of responding to these Requests, or at such other time as may be mutually agreed by You and the OpenAI Defendants, to produce a log that separately identifies each such Document and both (i) specifies the assertion(s) of privilege or protection asserted for withholding the Document; and (ii) sets forth all information necessary to support the assertion(s) of privilege or protection for withholding the Document, including the type or nature of the Document (*e.g.*, letter, memorandum, e-mail, etc.), its author, all recipients, all Persons to whom it was shown or otherwise made available or with whom it was discussed, the date of the Document, and a description of the substance of the Document, all in a manner sufficient to allow the Court to rule on the validity of the claim(s) of privilege or protection asserted for withholding each Document from production.

7.    You must produce all portions of requested Documents that are not subject to a claim of privilege or protection by excising or otherwise protecting the portions of such Document for which a claim of privilege or protection is asserted and producing the remainder.

8.    If no Documents exist that are responsive to a particular Request, so state in Your response to such Request.  If any Documents requested herein have been lost, discarded, deleted, destroyed, or are otherwise no longer in Your possession, custody, or control, You shall identify such Documents as completely as possible, including the following information:  (i) the date of disposal; (ii) the manner of disposal; (iii) the reason(s) for disposal; (iv) the Person(s) who authorized the disposal; and (v) the Person(s) who disposed of the Document.

9.    Where anything has been deleted or redacted from a Document produced in response to a Request, specify the nature of the material deleted or redacted and the reason for the deletion or redaction, and identify the location of any deletion or redaction on the produced copy of such Document.

10.    Each of these Definitions and Instructions shall be fully applicable to all of the Requests, notwithstanding that a particular Definition or Instruction above may, in whole or in part, be reiterated in certain Requests or that certain Requests may incorporate supplemental instructions or definitions.

11.    Unless otherwise specified in the Request, each Request shall be deemed to include all Documents prepared, sent, received, written, reviewed, or marked upon from January 1, 2015 through the date of production.

12.    Subject to any protocol governing the production and use of ESI that may be agreed to by You and the OpenAI Defendants or ordered by the Court, all Documents shall be Bates-labeled and shall be produced electronically in single page Group IV TIF format (except that Microsoft Excel, PowerPoint, and structured data files shall be produced in native format), with load files containing, for each Document, extracted searchable text and all available metadata for at least the following fields: BEGBATES; ENDBATES; BEGBATESATT; ENDBATESATT; All Custodians; File Name; Email Importance; File Type; File Size; Page Count; Author; Subject; From; To; CC; BCC; Sent Date; Received Date; Date Appointment Start; Date Appointment End; Time Zone Processed; MD5 Hash; and Redaction.

## REQUESTS FOR PRODUCTION

**Request For Production No. 1:**

All Documents and Communications concerning (i) OpenAI; (ii) Samuel Altman; (iii) Gregory Brockman; or (iv) the Action, including but not limited to Communications with: (a) any current or former OpenAI employees or members of the OpenAI Board; (b) Demis Hassabis, Luke Nosek, Larry Page, Peter Thiel, Sam Teller, Jared Birchall, JB Straubel, or Mark Juncosa; or (c) any other Person identified in response to Interrogatory Nos. 9 or 10.

**Request For Production No. 2:**

All Communications between You and Samuel Altman, Gregory Brockman, or any other Person concerning an actual or potential research lab, enterprise, or other organization (whether for-profit or not-for-profit) focused on artificial intelligence or AGI, and all Documents concerning any such Communications.

**Request For Production No. 3:**

All Documents and Communications concerning the actual, contemplated, or potential formation of OpenAI, including any Documents and Communications related to OpenAI's goals, purposes, organizational structure, open-source policies, capital needs and sources, considerations

of safety risks, recruitment efforts, and director and employee compensation.

**Request For Production No. 4:**

All Documents and Communications concerning any consideration or decision making on behalf of OpenAI regarding whether or not to open-source any given technology, including the criteria that OpenAI would or should apply or consider when determining whether or not to open-source any given technology.

**Request For Production No. 5:**

All Documents and Communications concerning the Purported Contract, including the "series of writings" that purportedly "constitute" the Purported Contract and any "representations and reassurances" that You contend "manifested . . . assent" to the terms of the Purported Contract.

**Request For Production No. 6:**

All Documents and Communications concerning any actions or failures to act through which You allege in Paragraph 254 of the Complaint that "Altman and OpenAI, Inc. have breached their Purported Contract with Elon Musk."

**Request For Production No. 7:**

All Documents and Communications concerning (i) the Articles of Incorporation, including any Documents and Communications related to the drafting and/or intended meaning of the statement in the Articles of Incorporation that the "corporation will seek to open source technology for the public benefit when applicable"; and (ii) the Bylaws, including any Documents and Communications related to the intended meaning of the statement in the Bylaws at Article IX, Section 5 that "[u]nless otherwise determined by resolution of the Board in particular cases, this corporation shall retain complete control and discretion over the use of all contributions it receives."

**Request For Production No. 8:**

All Documents and Communications concerning the recruitment of individuals to potentially join OpenAI and/or their potential compensation, including any Documents and Communications related to Your recruitment of Ilya Sutskever and other "world's leading

11

scientists and engineers" to OpenAI, as alleged in Paragraph 92 of the Complaint.

**Request For Production No. 9:**

All Documents and Communications concerning actual or potential competition between any entity or business owned, operated, or controlled by You, including Neuralink, SpaceX, Tesla, The Boring Company, xAI, or X Corp., on the one hand, and OpenAI, on the other hand, for artificial intelligence engineers or other employees.

**Request For Production No. 10:**

All Documents and Communications sufficient to show the organizational structure of the Musk Foundation or any entity or business identified in response to Interrogatory No. 8, including Documents sufficient to identify the directors, managers, members, or any Persons with the ability to control or direct the activities of any such organizations.

**Request For Production No. 11:**

All Documents and Communications concerning OpenAI's capital needs and sources, including any Documents and Communications related to Your personal views of OpenAI's capital needs.

**Request For Production No. 12:**

All Documents and Communications concerning any actual or potential charitable contributions, donations, gifts, grants, loans, or investments to OpenAI made by You, made on Your behalf, or made by any Person affiliated with You, including all Documents and Communications concerning the donations alleged in Paragraph 489 of the Complaint.

**Request For Production No. 13:**

All Documents and Communications concerning any charitable contributions, donations, gifts, or grants to Y Combinator or YC Org, including all contracts, agreements, arrangements, or understandings between You or any Person affiliated with You, on the one hand, and Y Combinator or YC Org, on the other hand related to such charitable contributions, donations, gifts, or grants.

**Request For Production No. 14:**

All Documents and Communications concerning any payments to OpenAI or to third

12

parties on behalf of OpenAI by Musk Industries, LLC, including the payments alleged in Paragraphs 96, 309, and 490 of the Complaint and including any state or federal tax filings by Musk Industries reflecting any such payments.

**Request For Production No. 15:**

All of Your state or federal tax filings that reflect charitable contributions, donations, grants, or gifts to OpenAI, Y Combinator or YC Org.

**Request For Production No. 16:**

All Documents and Communications concerning any charitable contributions, donations, grants, or gift made by You, made on Your behalf, or made by or on behalf of any Person affiliated with you, to (i) Fidelity Charitable, or (ii) Vanguard Charitable, including any agreements, arrangements, contracts, or understanding with Fidelity Charitable or Vanguard Charitable related to any such charitable contributions, donations, grants, or gifts, as well as any account opening forms, substantiation letters, confirmations or acknowledgements, and any proposals or instructions regarding the use or distribution of any charitable contributions, donations, grants, or gifts.

**Request For Production No. 17:**

All Documents and Communications concerning any charitable contributions, donations, gifts, loans, or investments that You or anyone acting on Your behalf solicited on OpenAI's behalf or for OpenAI's benefit.

**Request For Production No. 18:**

All Documents and Communications reflecting any alleged promises made by OpenAI, Samuel Altman, Gregory Brockman, or anyone else purporting to act on any of their behalves to induce any charitable contributions, gifts donations, loans, or investments to or in OpenAI.

**Request For Production No. 19:**

All Documents and Communications reflecting Your personal views or any analysis or assessment conducted by You or on Your behalf regarding the past, current, or future actual or potential value of OpenAI.

///

13

**Request For Production No. 20**:

All Documents and Communications concerning (i) the governance or organizational structure of OpenAI and any actual, contemplated, or potential change thereto; (ii) any actual, contemplated, or, potential formation of a for-profit entity affiliated with OpenAI; or (iii) any actual, contemplated, or potential change in OpenAI's means of raising capital, including all Documents and Communications concerning the potential impact of (i), (ii), or (iii) on OpenAI's ability to pursue its mission, raise capital, or recruit talent to OpenAI.

**Request For Production No. 21**:

All Documents and Communications concerning (i) any potential acquisition or other strategic transaction involving Tesla and OpenAI or any affiliated entity; (ii) any contemplated, actual, or potential investment by Tesla in OpenAI or any affiliated entity; or (iii) any actual, contemplated, or potential funding relationship of any kind involving Tesla and OpenAI or any affiliated entity, including any Communications with Gregory Brockman, Ilya Sutskever, Samuel Altman, Sam Teller, Jared Birchall, Shivon Zilis, Andrej Karpathy, JB Straubel, and Mark Juncosa regarding subjects: (i), (ii), or (iii).

**Request For Production No. 22**:

All Documents and Communications concerning (i) any potential investment by a for-profit entity in OpenAI or any affiliated entity; or (ii) any funding relationship of any kind involving a for-profit entity and OpenAI or any affiliated entity.

**Request For Production No. 23**:

All Documents and Communications relating to any potential transaction, partnership, or relationship of any kind between OpenAI, on the one hand, and Cerebras or any other artificial intelligence company, on the other hand.

**Request For Production No. 24**:

All Documents and Communications concerning the Dota 2 match between Dendi and the OpenAI bot at the 2017 1v1 mainstage at The International, including all Documents and Communications concerning Your assertion that OpenAI Five's victory over Dendi constituted a "triggering event" and that the victory signaled that it was "[t]ime to make the next step for

14

OpenAI."

**Request For Production No. 25:**

All Documents and Communications concerning the actual, contemplated, or potential use of OpenAI technology, personnel, or resources by You or any entity or business owned, operated, or controlled by You, including Neuralink, SpaceX, Tesla, The Boring Company, xAI, or X Corp., to provide assistance in connection with the development of Tesla's autopilot/self-driving mode, or in connection with any other projects, initiatives, or operations of Tesla, Neuralink, SpaceX, The Boring Company, xAI, or X Corp., including Communications with Samuel Altman, Gregory Brockman, Scott Gray, Junli Gu, Andrej Karpathy, Chris Lattner, Aimee Pham, Ilya Sutskever, Jim Keller, and Sam Teller regarding these subjects.

**Request For Production No. 26:**

All Documents and Communications concerning the actual, contemplated, or potential formation of xAI, including Documents and Communications concerning the determination to form xAI as a for-profit public benefit corporation and any consideration of alternative corporate forms.

**Request For Production No. 27:**

All Documents and Communications concerning the determination by xAI to open-source or not open-source any xAI product or software, including Grok 1, Grok 1.5, Grok 2, and Grok 3, and any future artificial intelligence products or software.

**Request For Production No. 28:**

All Documents and Communications concerning any solicitation of OpenAI employees by You, any entity or Person affiliated with You, including Tesla, Neuralink, SpaceX, The Boring Company, xAI, or X Corp, or any entity or Person acting on Your behalf, including any efforts to recruit Andrej Karpathy, Kyle Kosic, Greg Yang, Igor Babuschkin, or Ilya Sutskever, and/or to persuade Messrs. Karpathy, Kosic, Yang, Babuschkin, or Sutskever to depart OpenAI.

**Request For Production No. 29:**

All Documents and Communications reflecting Your personal views of the following agreements or transactions and/or their compliance or non-compliance with the Purported

Contract and/or any other promises or commitments allegedly made to You in connection with any donations or gifts made to OpenAI by You or on Your behalf:  (i) the JCDA; (ii) the 2016 OpenAI-Microsoft Transaction; (iii) the 2019 OpenAI-Microsoft Transaction; (iiv) the 2020 OpenAI-Microsoft Transaction; (v) the 2023 OpenAI-Microsoft Transaction; (vi) any other actual or potential agreement between Microsoft and OpenAI; (vii) the 2024 OpenAI Fundraising; (viii) the 2025 Stargate Transaction; (ix) the 2025 OpenAI Fundraising; and/or (x) any other fundraising transactions by OpenAI.

**Request For Production No. 30:**

All Documents and Communications concerning Your reasons for Your resignation from the OpenAI Board in February 2018, including any actual or potential conflicts of interest.

**Request For Production No. 31:**

All Documents and Communications concerning Your personal views or assessments, whether formal or informal, regarding the amount of capital necessary to develop AGI, the amount of computing power necessary to develop AGI, and/or the recruitment of talent necessary to develop AGI.

**Request For Production No. 32:**

All Documents and Communications concerning the creation of the public benefit corporation, Open Artificial Intelligence Technologies, Inc., registered on September 15, 2017, or any other entity created by you to potentially hold OpenAI or any of its assets in the case of a restructuring or other transaction.

**Request For Production No. 33:**

All Documents and Communications concerning any actual, contemplated, or potential proposals You have made regarding the governance structure of OpenAI or Your opinions or beliefs regarding the governance structure of OpenAI.

**Request For Production No. 34:**

All Documents and Communications concerning the "Open Letter" titled "Pause Giant AI Experiments:  An Open Letter," published by the Future of Life Institute on March 22, 2023 and signed by You, including all Communications with any signatories or concerning Your decision

16

to sign and promote the Open Letter and call for a pause in the development of certain artificial intelligence technologies and all Documents concerning such Communications.

**Request For Production No. 35:**

All Documents and Communications concerning the February 10, 2025 Letter of Intent, the transaction described therein, or any Alternative Transaction, including in either case any diligence or financing arrangements with respect to any of the foregoing.  Documents responsive to this Request shall include: (i) all Documents and Communications relating to the proposed condition in the Letter that OpenAI "shall use reasonable efforts to continue to operate the Business in the ordinary course consistent with past practices"; (ii) all Documents and Communications concerning the $97,375,000,000 "valuation" ascribed to OpenAI by the Letter; (iii) all Documents and Communications concerning Your representation in this Action that "[t]he purchase offer would become relevant only after—and if—(1) this Court denies Plaintiffs' Motion [for a Preliminary Injunction], (2) OpenAI proceeds with its conversion, and (3) OpenAI obtains approvals from the IRS and California and Delaware Attorneys General"; and (iv) all Documents and Communications relating to any efforts to solicit any Person to sign the February 10, 2025 Letter of Intent, to commit to invest, whether directly or indirectly, in the transaction described in the February 10, 2025 Letter of Intent or any Alternative Transaction, or to otherwise participate in or support the transaction described in the February 10, 2025 Letter of Intent or any Alternative Transaction.

**Request For Production No. 36:**

All Communications between You, on the one hand, and any potential investors, including but not limited to xAI, Baron Capital Group, Inc., Valor Management LLC, Atreides Management, LP, Vy Fund III, L.P., Emanuel Capital Management, LLC, Eight Partners VC, LLC, and their principals, affiliates, and subsidiaries, on the other hand, regarding OpenAI and/or the February 10, 2025 Letter of Intent or any Alternative Transaction.

**Request For Production No. 37:**

All Documents and Communications concerning any press report, news article, or interview discussed in the Complaint, including those listed in Exhibit B of these Requests.

**Request For Production No. 38:**

All Communications between You or any Person affiliated with You, on the one hand, and any reporter, journalist, or Governmental Authority, on the other hand, about OpenAI, Samuel Altman, Gregory Brockman, or any of the topics discussed in the Complaint, including Communications with: (i) David Faber; (ii) Joe Rogan; (iii) Omar Sultan Al Olama; and (iv) Tucker Carlson.

**Request For Production No. 39:**

All Documents and Communications concerning any payments to, or any actual, contemplated, or potential engagement or solicitation of any Person to make public statements about OpenAI, Samuel Altman, Gregory Brockman, or the Action.

**Request For Production No. 40:**

All Communications between You or any Person affiliated with You, on the one hand, and any Governmental Authority, on the other hand, concerning OpenAI, Samuel Altman, Gregory Brockman, or the Action, including any Communications with representatives from (i) the office of the Delaware Attorney General; (ii) the office of the California Attorney General; (iii) the office of any other state's Attorney General; (iv) the Internal Revenue Service; (v) the U.S. Securities and Exchange Commission; (vi) the Federal Trade Commission; (vii) the Central Intelligence Agency; (viii) the Department of Justice; (ix) the Department of Commerce; (x) the Department of Defense; (xi) the Department of Government Efficiency; (xii) the Department of State; (xiii) the United States Congress; (xiv) any candidate for President of the United States; (xv) the President Elect of the United States; and (xvi) the President of the United States.

**Request For Production No. 41:**

All Communications between You or any Person affiliated with You, on the one hand, and any Governmental Authority, on the other hand, that concerns any business owned, operated, or controlled by You, including Neuralink, SpaceX, Tesla, The Boring Company, xAI, or X Corp, and pertains to any inquiry, investigation, probe, or request for information related to artificial intelligence or any of the topics discussed in the Complaint.

///

18

**Request For Production No. 42:**

All Documents provided by You or any Person affiliated with You to any Governmental Authority that concerns any business owned, operated, or controlled by You, including Neuralink, SpaceX, Tesla, The Boring Company, xAI, or X Corp, and pertains to any inquiry, investigation, probe, or request for information related to artificial intelligence or any of the topics discussed in the Complaint.

**Request For Production No. 43:**

All Documents and Communications relating to transcripts or recordings of any interview, podcast, town hall, or public discussion in which You have participated relating in whole or in part to OpenAI, Samuel Altman, Gregory Brockman, or any of the topics discussed in the Complaint, including: (i) the CNBC Interview; (ii) the Joe Rogan Interview; (iii) the 2025 World Governments Summit Interview; and (iv) the Tucker Carlson Interview.

**Request For Production No. 44:**

All Communications between You or any Person affiliated with You, on the one hand, and any representative of a nonprofit or charitable entity, on the other hand, about OpenAI, Samuel Altman, Gregory Brockman, or any of the topics discussed in the Complaint, including Communications with those Persons listed in Exhibit C of these Requests.

**Request For Production No. 45:**

All Communications between You or any Person affiliated with You, on the one hand, and any representative of any competitor of OpenAI or any entity or business owned, operated, or controlled by You, including Neuralink, SpaceX, Tesla, The Boring Company, xAI, or X Corp., on the other hand, concerning OpenAI, Samuel Altman, Gregory Brockman, or any of the topics discussed in the Complaint, including all Communications with representatives of Meta Platforms, Inc. or any of its affiliates (including Mark Zuckerberg) related to its interactions with the California Attorney General.

**Request For Production No. 46:**

All Documents and Communications concerning SB 1047 or AB 501 or the potential impact of either on xAI or OpenAI, including any Communications between xAI or any Person

affiliated with xAI, on the one hand, and any Governmental Authority or advocacy group, on the

other hand, concerning SB 1047 or AB501 and all Documents concerning such Communications.

**Request For Production No. 47:**

All Documents and Communications with or concerning LASST, Tyler Whitmer, or

Vivian Dong regarding OpenAI, Samuel Altman, Gregory Brockman, or any topic referenced in

the Complaint.

**Request For Production No. 48:**

All Documents and Communications concerning the Former Employee Letter, including

any Communications with current or former employees or directors of OpenAI related to the

Former Employee Letter or the issues raised therein.

**Request For Production No. 49:**

With respect to (i) each of the grants or charitable contributions listed in Exhibit A to

these Requests; and (ii) any other grants or charitable contributions made by the Musk

Foundation since 2017, Documents and Communications sufficient to show (x) the terms on

which the grant or charitable contribution was made, including any relevant written agreement(s)

(*i.e.*, involving the Musk Foundation or donor advised funds, such as Vanguard Charitable, and/or

Fidelity Charitable); (y) any conditions on the use of the grant or charitable contribution; and (z)

any other restriction on or expectation regarding the recipient's use of the grant or charitable

contribution.

**Request For Production No. 50:**

All Documents and Communications related to Your Books and Records Requests,

including Documents and Communications concerning Your reasons for seeking the requested

books and records, and any disclosure to, or use by, You or any entity or business owned,

operated or controlled by You, including Neuralink, SpaceX, Tesla, The Boring Company, xAI,

or X Corp., of the requested books and records.

**Request For Production No. 51:**

All Documents You intend to rely upon at trial, or at any deposition or hearing in this

Action.

**Request For Production No. 52:**

All Documents and Communications received from third parties in connection with this Action (whether through subpoena, request, agreement, or otherwise).

**Request For Production No. 53:**

All Documents and Communications identified in response to the OpenAI Defendants' First Set of Interrogatories.

Date:  April 7, 2025

MORRISON & FOERSTER LLP

By:  /s/ David J. Wiener

JORDAN ETH (CA SBN 121617)
JEth@mofo.com
DAVID J. WIENER (CA SBN 291659)
DWiener@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA  94105
Telephone:    (415) 268-7000
Facsimile:    (415) 268-7522

WILLIAM SAVITT (admitted *pro hac vice*)
WDSavitt@wlrk.com
BRADLEY R. WILSON (admitted *pro hac vice*)
BRWilson@wlrk.com
SARAH K. EDDY (admitted *pro hac vice*)
SKEddy@wlrk.com
NATHANIEL CULLERTON (admitted *pro hac vice*)
NDCullerton@wlrk.com
WACHTELL, LIPTON, ROSEN & KATZ
51 West 52nd Street
New York, NY  10019
Telephone:    (212) 403-1000
Facsimile:    (212) 403-2000

*Attorneys for Defendants Samuel Altman, Gregory Brockman, OpenAI, Inc., OpenAI L.P., OpenAI, L.L.C., OpenAI GP, L.L.C., OpenAI OpCo, LLC, OpenAI Global, LLC, OAI Corporation, LLC, OpenAI Holdings, LLC, OpenAI Startup Fund Management, LLC, OpenAI Startup Fund GP I, L.L.C., OpenAI Startup Fund I, L.P., OpenAI Startup Fund SPV GP I, L.L.C., OpenAI Startup Fund SPV GP II, L.L.C., OpenAI Startup Fund SPV GP III, L.L.C., OpenAI Startup Fund SPV GP IV, L.L.C., OpenAI Startup Fund SPV I, L.P., OpenAI Startup Fund SPV II, L.P., OpenAI Startup Fund SPV III, L.P., OpenAI Startup Fund SPV IV, L.P., Aestas Management Company, LLC, and Aestas LLC*

21

1

## Exhibit A – Musk Foundation Contributions

2

Musk Foundation Charitable Contributions in 2023:

3
4
5
6
7
8
9
10
11

1. $102,267,186 to The Foundation to support school operations and programs;
2. $54,000,000 to the XPRIZE Foundation to support technological development for carbon removal;
3. $34, 808,757 to The Foundation to support school operations and programs;
4. $36,081,291 to Fidelity Charitable;
5. $4,000,000 to Hack Foundation to support coding education;
6. $2,200,000 to GivedDrectly Inc to support financial aid for families living in poverty;
7. $2,215,110 to Los Fresnos Consolidated Independent School District to support school operations and programs;
8. $2,000,000 to Code.org to support access to and participation in computer science in schools; and
9. $1,750,000 to Brownsville Independent School District to support school operations and programs.

Musk Foundation Charitable Contributions in 2022:

12
13
14
15
16
17
18

10. $4,000,000 to the XPRIZE Foundation to support technological development for carbon renewal;
11. $89,941,380 and $10,000,000 to The Foundation to support school operations and programs;
12. $36,081,291 to Fidelity Charitable;
13. $7,000,000 grant to Khan Academy to support computer science work and unfinished learning programs; and
14. $54,000,000 grant approved in 2022 for future payment to the XPRIZE Foundation to support technological development for carbon removal.

Musk Foundation Charitable Contributions in 2021:

19
20
21
22
23
24
25

1. $55,000,000 to St. Jude's Children's Research Hospital to support research and treatment of pediatric catastrophic diseases;
2. $54,000,000 to the XPRIZE Foundation to support technological development for carbon removal;
3. $4,000,000 to Future of Life Institute to support research and initiatives for safeguarding life and developing optimistic visions of the future;
4. $10,000,000 to the University of Texas at Austin to support research programs;
5. $2,000,000 to Georgetown University to support research programs;
6. $1,500,000 to the University of Pennsylvania to support research programs; and
7. $1,500,000 to the Massachusetts Institute of Technology to support research programs.

26

Musk Foundation Charitable Contributions in 2020:

27
28

1. $1,000,000 to The Mercatus Center and George Mason University for Covid-19 scientific research;

22

2.  $50,000 to Sacred Heart University for Covid-19 antibody seroprevalence study; and
3.  $20,701,689 to Fidelity Charitable.

Musk Foundation Charitable Contributions in 2018:

1.  $12,431,640 to Fidelity Charitable; and
2.  $2,000,000 to Future of Life Institute for Artificial Intelligence.

Musk Foundation Charitable Contributions in 2017:

1.  $10,000,000 to YC.org for scientific research; and
2.  $37,798,322 to Vanguard Charitable.

**Exhibit B – Press and Interviews**

1. The materials referenced in Paragraph 152 of the Complaint in which, "[i]t has been reported that indeed the Board fired Altman because he had deliberately misrepresented what was happening at OpenAI, Inc. and explicitly lied to the Board to obstruct its ability to carry out its oversight duties."

2. The materials referenced in Paragraph 153 of the Complaint constituting, "[n]ews reports further suggest[ing] Altman's firing was due in part to OpenAI, Inc.'s breakthrough in realizing AGI and Altman's prioritizing profit over safety and the non-profit's founding principles."

3. The reporting of statements made by Satya Nadella referenced in Paragraphs 157,158, and 161 of the Complaint.

4. The *Wall Street Journal* article referenced in Paragraph 196 of the Complaint.

5. The October 3, 2024 *Financial Times* article referenced in Paragraph 201 of the Complaint.

6. Jin, Dotan & Hagey, *The Opaque Investment Empire Making OpenAI's Sam Altman Rich*, Wall Street Journal (June 3, 2024), https://www.wsj.com/tech/ai/openai-sam-altmaninvestments-004fc785?mod=hp_lead_pos1.

7. Orru & Laursen*, Microsoft Quits OpenAI's Board Amid Antitrust Scrutiny*, Wall Street Journal (July 10, 2024), https://www.wsj.com/tech/ai/microsoft-withdraws-from-openaisboard-amid-antitrust-scrutiny-aab6ff1e?reflink=desktopwebshare_permalink.

8. Samuel, *"I lost trust": Why the OpenAI team in charge of safeguarding humanity imploded*, Vox (May 18, 2024), https://www.vox.com/future-perfect/2024/5/17 24158403/openai-resignations-ai-safety-ilya-sutskever-jan-leike-artificial-intelligence.

9. Greene, *OpenAI reportedly considering shift to for-profit as CEO stacks board*, Cointelegraph (June 15, 2024), https://www.cointelegraph.com/news/open-ai-artificial- intelligence-for-profit.

24

**Exhibit C - Representative of a Nonprofit or Charitable Entity**

1.  Mark Zuckerberg and/or any other representatives of The Chan Zuckerberg Initiative

2.  Priscilla Chan

3.  Robert Weissman and/or any other representatives of Public Citizen

4.  Fred Blackwell and/or any other representatives of the San Francisco Foundation

5.  Orson Aguilar and/or any other representatives of Latino Prosperity

6.  Aarti Kohli and/or any other representatives of Asian Law Caucus

7.  Mark Philpart and/or any other representatives of California Black Freedom Fund

8.  Sabrina Smith and/or any other representatives of California Calls

9.  Adam Briones and/or any other representatives of California Community Builders

10. Miguel Santana and/or any other representatives of California Community Foundation

11. Richard Tate and/or any other representatives of The California Wellness Foundation

12. John Kim and/or any other representatives of Catalyst California

13. Alex Tom and/or any other representatives of Center for Empowered Politics

14. Natalie Foster and/or any other representatives of Economic Security Project

15. Cathy Cha and/or any other representatives of Evelyn and Walter Haas, Jr. Fund

16. Michelle Vilchez and/or any other representatives of Innovate Public Schools

17. Allison Scott and/or any other representatives of Kapor Foundation

18. Sonja Diaz and/or any other representatives of Latina Futures 2050 Lab

19. Julián Castro and/or any other representatives of Latino Community Foundation

20. Shane Goldsmith and/or any other representatives of Liberty Hill Foundation

21. Mike Kubzansky and/or any other representatives of Omidyar Network LLC

22. Joseph Tomás McKellar and/or any other representatives of PICO California

23. Guillermo Mayer and/or any other representatives of Public Advocates

24. Paulina Gonzalez-Britto and/or any other representatives of Rise Economy

25. Cynthia Strathmann and/or any other representatives of Strategic Actions for a Just Economy

26. Catherine Bracy and/or any other representatives of TechEquity

25

27. Brenda Solorzano and/or any other representatives of The California Endowment

28. Don Howard and/or any other representatives of The James Irvine Foundation

29. Fred Sotelo and/or any other representatives of Urban Leadership Development Institute

30. Joanna S. Jackson and/or any other representatives of Weingart Foundation

31. Merrick Wayne and/or any other representatives of Loevy + Loevy

32. Yasmin Aslam and/or any other representatives of Eko.org or SumofUs