# EXHIBIT 3

# WACHTELL, LIPTON, ROSEN & KATZ

| | | | | |
|---|---|---|---|---|
| MARTIN LIPTON | STEPHEN R. DiPRIMA | **51 WEST 52ND STREET** | RONALD C. CHEN | RAAJ S. NARAYAN |
| HERBERT M. WACHTELL | NICHOLAS G. DEMMO | **NEW YORK, N.Y. 10019-6150** | BRADLEY R. WILSON | VIKTOR SAPEZHNIKOV |
| EDWARD D. HERLIHY | IGOR KIRMAN | | GRAHAM W. MELI | MICHAEL J. SCHOBEL |
| DANIEL A. NEFF | JONATHAN M. MOSES | TELEPHONE: (212) 403-1000 | GREGORY E. PESSIN | ELINA TETELBAUM |
| STEVEN A. ROSENBLUM | T. EIKO STANGE | FACSIMILE: (212) 403-2000 | CARRIE M. REILLY | ERICA E. AHO |
| SCOTT K. CHARLES | WILLIAM SAVITT | | MARK F. VEBLEN | LAUREN M. KOFKE |
| JODI J. SCHWARTZ | GREGORY E. OSTLING | GEORGE A. KATZ (1965-1989) | SARAH K. EDDY | ZACHARY S. PODOLSKY |
| ADAM O. EMMERICH | DAVID B. ANDERS | JAMES H. FOGELSON (1967-1991) | VICTOR GOLDFELD | RACHEL B. REISBERG |
| RALPH M. LEVENE | ADAM J. SHAPIRO | LEONARD M. ROSEN (1965-2014) | RANDALL W. JACKSON | MARK A. STAGLIANO |
| ROBIN PANOVKA | NELSON O. FITTS | | BRANDON C. PRICE | CYNTHIA FERNANDEZ |
| DAVID A. KATZ | JOSHUA M. HOLMES | OF COUNSEL | KEVIN S. SCHWARTZ | LUMERMANN |
| ILENE KNABLE GOTTS | DAMIAN G. DIDDEN | | MICHAEL S. BENN | CHRISTINA C. MA |
| ANDREW J. NUSSBAUM | IAN BOCZKO | DAVID M. ADLERSTEIN    ERIC S. ROBINSON | ALISON Z. PREISS | NOAH B. YAVITZ |
| RACHELLE SILVERBERG | MATTHEW M. GUEST | ANDREW R. BROWNSTEIN   ERIC M. ROSOF | TIJANA J. DVORNIC | BENJAMIN S. ARFA |
| STEVEN A. COHEN | DAVID E. KAHAN | WAYNE M. CARLIN        JOHN F. SAVARESE | JENNA E. LEVINE | NATHANIEL D. CULLERTON |
| DEBORAH L. PAUL | DAVID K. LAM | BEN M. GERMANA         MICHAEL J. SEGAL | RYAN A. McLEOD | ERIC M. FEINSTEIN |
| DAVID C. KARP | BENJAMIN M. ROTH | SELWYN B. GOLDBERG     WON S. SHIN | ANITHA REDDY | ADAM L. GOODMAN |
| RICHARD K. KIM | JOSHUA A. FELTMAN | PETER C. HEIN          DAVID M. SILK | JOHN L. ROBINSON | STEVEN R. GREEN |
| JOSHUA R. CAMMAKER | ELAINE P. GOLIN | JB KELLY               ELLIOTT V. STEIN | STEVEN WINTER | MENG LU |
| MARK GORDON | EMIL A. KLEINHAUS | JOSEPH D. LARSON       LEO E. STRINE, JR.* | EMILY D. JOHNSON | |
| JEANNEMARIE O'BRIEN | KARESSA L. CAIN | RICHARD G. MASON       PAUL VIZCARRONDO, JR. | JACOB A. KLING | |
| | | PHILIP MINDLIN         JEFFREY M. WINTNER | | |
| | | THEODORE N. MIRVIS     AMY R. WOLF | | |
| | | DAVID S. NEILL         MARC WOLINSKY | | |
| | | TREVOR S. NORWITZ | | |
| | | * ADMITTED IN DELAWARE | | |
| | | COUNSEL | | |
| | | SUMITA AHUJA           ANGELA K. HERRING | | |
| | | LOREN BRASWELL         MICHAEL W. HOLT | | |
| | | HEATHER D. CASTEEL     DONGHWA KIM | | |
| | | FRANCO CASTELLI        MARK A. KOENIG | | |
| | | ANDREW J.H. CHEUNG     J. AUSTIN LYONS | | |
| | | PAMELA EHRENKRANZ      ALEXANDER S. MACKLER | | |
| | | ALINE R. FLODR         ALICIA C. McCARTHY | | |
| | | KATHRYN GETTLES-ATWA   JUSTIN R. ORR | | |
| | | LEDINA GOCAJ           NEIL M. SNYDER | | |
| | | ADAM M. GOGOLAK        JEFFREY A. WATIKER | | |

Direct Dial: (212) 403-1108
E-Mail: BRWilson@wlrk.com

June 19, 2025

**Via E-mail**

Jaymie Parkkinen, Esq.
Toberoff & Associates, P.C.
23823 Malibu Road, Suite 50-363
Malibu, CA 90265

Re:   *Elon Musk, et al.* v. *Samuel Altman, et al.*,
      C.A. No. 4:24-cv-04722-YGR

Dear Jaymie:

We write on behalf of the OpenAI Defendants in response to your June 16 letter.

Let me respond briefly at the outset to the accusations in the first paragraph of your letter. They are unfounded and apparently designed to deflect attention from Plaintiffs' unreasonable discovery positions and unwillingness to be transparent about them, as well as Plaintiffs' general refusal to undertake appropriate efforts to collect, search, and ultimately produce responsive documents and communications from the files of Musk, xAI, Zilis, and Musk's affiliated entities. The net result is that with the substantial completion deadline now only 25 days

WACHTELL, LIPTON, ROSEN & KATZ

Jaymie Parkkinen, Esq.
June 19, 2025
Page 2

away, these individuals and entities have produced a grand total of 345 documents, consisting entirely of a pre-packaged set of materials collected in 2024, as the metadata shows.

Our meet-and-confers were contentious at points in large part because you were unprepared for the discussion and refused to address basic threshold questions regarding Plaintiffs' discovery positions and collection. But I did not make any "personally disrespectful comments." As to your allegation of "use of profanity," if what you have in mind is that I observed, after seven hours of your obfuscation, that you hadn't "done a damned thing" to meet your discovery obligations—I did indeed say that and regret if this phrase offended you (and I apologized when you said that it did). My statement, however, was and remains entirely accurate.

Turning to the substantive issues, in the spirit of cooperation and in an effort to limit the number of discovery disputes in this expedited proceeding, the OpenAI Defendants have already offered significant compromises in response to the concerns Plaintiffs have raised. Our June 10 letter responding to your June 3 letter described the OpenAI Defendants' proposed compromises in detail, and this enabled the parties to more productively discuss the OpenAI Defendants' positions during the meet-and-confers sessions.[1] Plaintiffs regrettably made no effort to reciprocate that cooperation in advance of the meet-and-confer. For example, Plaintiffs never responded to the OpenAI Defendants' June 3 deficiency letter, which defeated our attempt to narrow (or at least crystallize) the field of disputed issues in advance of the conference.

We have again carefully considered in consultation with our clients the questions and concerns described in your June 16 letter. We address each of the issues in turn.

**RFP Nos. 12, 41, 73; OpenAI, Inc. ROG No. 13; Subpoena Request Nos. 6-7**

We do not agree that Plaintiffs established the relevance of these requests to the claims to be litigated in Phase One of this litigation during the meet-and-confer conferences.

Nevertheless, in a further attempt to find compromise, the OpenAI Defendants will supplement their responses to Plaintiffs' RFPs and also produce non-privileged documents and communications of directors and officers of OpenAI, Inc. reflecting concerns about Altman's self-dealing, conflicts of interest, truthfulness, or approach to safety-related issues, dated between November 1, 2023 through November 17, 2023, to the extent such documents are within the OpenAI Defendants' possession, custody, or control and are identified through a reasonable search.

---

[1] Your June 16 letter requests confirmation that the OpenAI Defendants will provide the supplemental responses and produce the additional requested documents in accordance with the compromises described in our June 10 letter. We already confirmed that the OpenAI Defendants will do so during our June 13 meet-and-confer, and we are happy to re-confirm that point here.

WACHTELL, LIPTON, ROSEN & KATZ

Jaymie Parkkinen, Esq.
June 19, 2025
Page 3

**RFP Nos. 13-33; Altman RFA Nos. 36, 39-58; Brockman RFA Nos. 38-41; Altman and Brockman ROG No. 4; OpenAI, Inc. ROG Nos. 10, 15; Subpoena Request No. 8**

We do not agree that Plaintiffs established the relevance of these requests to the claims to be litigated in Phase One of this litigation during the meet-and-confer conferences.

Nevertheless, in a further attempt to find compromise, the OpenAI Defendants will supplement their responses to Plaintiffs' RFPs and also produce (i) documents showing the financial interests of Altman and/or Brockman, if any, in the entities identified in these RFPs, and (ii) non-privileged OpenAI Board and Board Committee minutes and presentations, as well as Board-level communications, that concern the entities identified in these RFPs, in each case to the extent such documents are within the OpenAI Defendants' possession, custody, or control and are identified through a reasonable search.

**RFP Nos. 45, 49, 51, 58, 62, 74, 78; OpenAI, Inc. ROG No. 6; Altman RFA Nos. 65-67; Brockman RFA No. 50; OpenAI, Inc. RFA Nos. 29, 39-40; Subpoena Request Nos. 2-3, 12.**

We do not agree that Plaintiffs established the relevance of these requests to the claims to be litigated in Phase One of this litigation during the meet-and-confer conferences. Contrary to the suggestion in your letter, the issue is not that we are "unfamiliar[]" with the term "safety." Rather, as we repeatedly explained, the issue is that "safety" is used to refer to a number of distinct issues in the context of OpenAI's business. For this reason, Plaintiffs' safety-related requests are vague and also wildly overbroad. Plaintiffs have made no effort to specify what they mean by "safety" or to otherwise narrow the scope of these requests.

Nevertheless, in a further attempt to find compromise, and subject to the paragraph that follows, the OpenAI Defendants are prepared to agree to supplement their responses to Plaintiffs' RFPs and also produce non-privileged documents and communications of directors and officers of OpenAI, Inc. reflecting discussion of whether OpenAI is or is not adhering to the safety commitments allegedly made to Musk, to the extent such documents are within the OpenAI Defendants' possession, custody, or control and are identified through a reasonable search.

As we made clear during the meet-and-confer, any production of safety-related documents should be reciprocal, because xAI's documents relating to its safety policies and practices are equally relevant to those of OpenAI. For example, if Plaintiffs seek to prove that OpenAI does not have "first-class" safety practices, the OpenAI Defendants must be permitted to explore and present evidence at trial regarding the safety practices at Musk's competing company. We intend to serve additional discovery promptly to ensure that these subjects are properly captured by our discovery requests. Please confirm that xAI is willing to produce equivalent safety-related documents in this proceeding.

WACHTELL, LIPTON, ROSEN & KATZ

Jaymie Parkkinen, Esq.
June 19, 2025
Page 4

### RFP 35

Plaintiffs contend that the OpenAI Defendants' response to RFP No. 35 and "several" other unidentified RFPs is deficient insofar as the response states that the OpenAI Defendants "will produce responsive, non-privileged documents or communications to the extent such documents or communications are responsive to other Requests that the OpenAI Defendants have agreed to produce documents in response to." We disagree. This is a standard response in circumstances where (as here) a party serves numerous overlapping document requests.

Thus, for example, in their response to RFP No. 35, the OpenAI Defendants observed that the request is "duplicative of a number of other Requests, including, *inter alia*, Request Nos. 2 and 9." Accordingly, the OpenAI Defendants agreed to produce "documents or communications [that] are responsive to other Requests that the OpenAI Defendants have agreed to produce documents in response to," and this would include, *inter alia*, RFP Nos. 2 and 9.

### RFP No. 2

The OpenAI Defendants have already agreed to supplement their production in response to this RFP. In our June 10 letter, the OpenAI Defendants agreed to "also produce non-privileged documents and communications concerning Altman's communications with Zilis relating to Sutskever's involvement in the creation of OpenAI's for-profit affiliates." During the meet-and-confer, we explained that Zilis's status as a board member and her prior affiliation with OpenAI caused your request for "[a]ll [c]ommunications" with Zilis to be unreasonable and overbroad. We urged you to consider narrowing the request to focus on relevant, discrete categories of Zilis documents and communications you are focused on. Plaintiffs have offered no limiting construction for this RFP. We reiterate our request that you identify discrete categories of documents or information that you are focused on, and we will consider your proposal.

### RFP No. 7

As the OpenAI Defendants have explained, RFP No. 7 is significantly overbroad to the extent it seeks all documents "reflecting payment of overhead expenses for OpenAI, Inc." for a six-year period without regard to any connection between the subject matter of such documents and the claims and defenses to be tried in this phase of the litigation. We also explained during the meet-and-confer process that the undefined term "overhead expenses" could conceivably encompass every expense paid by OpenAI, Inc. Plaintiffs have now clarified that they are "primarily interested in the overhead expenses identified in their request—namely, rent, salaries, and utilities, as well as compute, equipment, and other similar operational expenses."

In a further attempt to find compromise, as further discussed below in connection with RFP Nos. 54-55, the OpenAI Defendants are prepared to agree to supplement their responses to Plaintiffs' RFPs and also produce audited financial statements of OpenAI, provided that xAI agrees to make a reciprocal production. We are also working with our clients to develop a better

WACHTELL, LIPTON, ROSEN & KATZ

Jaymie Parkkinen, Esq.
June 19, 2025
Page 5

understanding of the kinds of documents that exist that might be responsive to this RFP as narrowed, and we expect to come back to you soon.

### RFP No. 36

As we discussed during the meet-and-confer, and as the OpenAI Defendants explained in their discovery responses, RFP No. 36 is overbroad and vague and ambiguous "to the extent it seeks documents concerning the 'intention to . . . use in any way a for-profit structure.'" To address this concern, the OpenAI Defendants agreed to provide "documents and communications concerning the formation of the for-profit entities affiliated with OpenAI from January 1, 2015 through December 31, 2019," given that OpenAI's for-profit arm was established in 2019. During the meet-and-confer, Plaintiffs said they would take our position under advisement and get back to us with suggestions for narrowing this RFP, but Plaintiffs have not done so. Please let us know what you suggest, and we will consider your proposal.

### RFP No. 38

As we discussed during the meet-and-confer, the OpenAI Defendants believe that the documents they have already agreed to provide in response to RFP Nos. 34 and 36 are sufficient to respond to this RFP as well, and Plaintiffs have not explained why the information they are seeking through this RFP would not be included within the documents the OpenAI Defendants have already agreed to produce.

### RFP No. 40

As we discussed during the meet-and-confer, the OpenAI Defendants believe that the documents they have already agreed to provide in response to RFP No. 40 are sufficient. Plaintiffs have not adequately explained why they need documents beyond the final Microsoft agreements themselves to argue that those agreements violated the alleged contract with Musk. Moreover, in their June 10 letter, the OpenAI Defendants agreed to supplement their response to this RFP and produce additional communications with Microsoft, including "communications with Microsoft concerning the compliance or non-compliance of OpenAI-Microsoft agreements with (i) OpenAI, Inc.'s mission or (ii) alleged promises to Musk, regulators, or public," and "communications with Microsoft concerning whether to open source technology."

### RFP No. 44

In response to RFP No. 44, the OpenAI Defendants agreed to produce "responsive, non-privileged Board-level documents and communications concerning whether to open source OpenAI's technology." Thereafter, in the interest of seeking compromise and in response to the points raised in Plaintiffs' June 3 letter, the OpenAI Defendants further agreed in their June 10 letter to supplement their response to this RFP and also produce "communications with Microsoft concerning whether to open source technology." Plaintiffs again take issue with the OpenAI Defendants' position, asserting without justification that they "need all communications

**WACHTELL, LIPTON, ROSEN & KATZ**

Jaymie Parkkinen, Esq.
June 19, 2025
Page 6

concerning whether to open source technology," with no narrowing construction whatsoever. We do not agree that Plaintiffs established the relevance of this request to the claims to be litigated in Phase One of this litigation during the meet-and-confer conferences.

Nevertheless, in a further attempt to find compromise, the OpenAI Defendants will supplement their responses to Plaintiffs' RFPs and also produce non-privileged documents and communications of directors and officers of OpenAI, Inc. concerning whether to open source OpenAI's technology, to the extent such documents are within the OpenAI Defendants' possession, custody, or control and are identified through a reasonable search.

### RFP Nos. 54-55

Plaintiffs' attempted justification for these requests—"that this financial information is directly relevant to Plaintiffs' claims for unjust enrichment and constructive trust, which require Plaintiffs to trace Musk's contributions through OpenAI's corporate structure"—does not make sense to us. We do not agree that Plaintiffs established the relevance of these requests to the claims to be litigated in Phase One of this litigation during the meet-and-confer conferences. Moreover, as the OpenAI Defendants have explained, information sought by these requests is not proportional to the needs of this expedited litigation because it is "highly competitively sensitive," and its disclosure "would be harmful to OpenAI, in circumstances where Plaintiffs are direct competitors of OpenAI."

Nevertheless, in a further attempt to find compromise, and provided that Plaintiffs are willing to produce the same information for xAI, the OpenAI Defendants are prepared to agree to supplement their responses to Plaintiffs' RFPs and also produce audited financial statements of OpenAI, provided that xAI agrees to make a reciprocal production. We intend to serve additional discovery promptly to ensure that these subjects are properly captured by our discovery requests. Please confirm that xAI is willing to produce equivalent documents in this proceeding.

### RFP Nos. 59, 69

In addition to the OpenAI Defendants' agreement to provide "responsive, non-privileged OpenAI Board and OpenAI Board committee meeting minutes concerning" the subject matter of these requests, the OpenAI Defendants in their June 10 letter agreed to supplement their responses to Plaintiffs' RFPs and also "produce responsive, non-privileged communications with board members and/or any outside consultants who provided input concerning the OpenAI Board's consideration of the February 10, 2025 Letter of Intent." We believe this production is sufficient and proportional to the needs of the case.

Your June 16 letter also takes issues with the OpenAI Defendants "reserv[ing] the right to apply targeted redactions to protect OpenAI's interests." During the meet-and-confers, we explained that such redactions would be necessary because Plaintiffs' trial counsel in this case purportedly represents a consortium of bidders who have made an unsolicited bid for OpenAI's assets within the last several months. The OpenAI Defendants stand by their position.

Jaymie Parkkinen, Esq.
June 19, 2025
Page 7

### RFP 66

In a further attempt to find compromise, the OpenAI Defendants will supplement their response to this RFP and also produce communications with state regulators, if any, related to OpenAI's non-profit purpose and mission, from January 1, 2015 to February 29, 2024, to the extent such documents are within the OpenAI Defendants' possession, custody, or control and are identified through a reasonable search.

### RFP 71

In response to RFP No. 71, the OpenAI Defendants agreed to provide "communications with Musk that concern statements made to donors, Employees, prospective Employees, or the public regarding OpenAI's commitment to safety or to open source its technology." After considering the issues raised in Plaintiffs' June 3 letter, the OpenAI Defendants in their June 10 letter agreed to supplement their response to this RFP and "also produce non-privileged communications with donors, employees, or the public regarding any commitments made by OpenAI to Musk regarding safety or open-sourcing of its technology." The OpenAI Defendants believe that their response to this RFP is sufficient and proportional to the needs of the case and do not find Plaintiffs' demand for additional documents on the basis of their conclusory assertion that such documents are relevant to their RICO claims to be compelling.

### RFP 80

During the meet-and-confer, the OpenAI Defendants explained that they were not trying to "sandbag" Plaintiffs, but rather that Plaintiffs' proposal that the parties identify the specific documents they intend to use at each deposition "ten days before the deposition" is neither customary nor practicable in an expedited proceeding like this one. The only purpose the OpenAI Defendants can conceive of for requiring the parties to specifically identify all deposition exhibits in advance of depositions—including documents that are publicly available—would be for the deponent and his or her counsel to have the advantage of knowing exactly what documents will be used at the deposition. The OpenAI Defendants remain willing to discuss a reasonable agreement regarding the treatment of deposition exhibits.

### Altman, Brockman, and OpenAI, Inc. ROG Nos. 1-2

As we observed in our June 10 letter, during the meet-and-confers, and in our June 14 letter, the "OpenAI Defendants' Interrogatory Nos. 2, 3, and 10 to Musk asked Musk to identify and 'describe in detail' any responsive communications that were not in writing. *See, e.g.*, Interrogatory No. 2 to Musk ("For each such Communication that was not in writing, Describe that Communication in detail."). Musk did not identify a single non-written communication in his responses to any of these Interrogatories." Yet Plaintiffs continue to insist that the OpenAI Defendants amend their interrogatory responses to identify oral communications without making any reciprocal commitment on behalf of Musk. That is not reasonable.

**WACHTELL, LIPTON, ROSEN & KATZ**

Jaymie Parkkinen, Esq.
June 19, 2025
Page 8

### OpenAI, Inc. ROG No. 4

As we stated in our June 10 letter and again during the meet-and-confers, "the OpenAI Defendants' commitment to produce documents in response to RFP No. 42 includes the valuation report that the OpenAI Board considered in connection with the transaction referenced in OpenAI's response to Interrogatory No. 4." You have not explained why that is not sufficient to resolve Plaintiffs' concerns about the response to this Interrogatory.

### OpenAI, Inc. ROG No. 15

We refer to OpenAI, Inc.'s specific objections to Interrogatory No. 15, which Plaintiffs have not addressed. Nor did Plaintiffs adequately explain the relevance of this information. The information sought by the interrogatory is highly competitively sensitive, as it includes the identity of OpenAI's investors and the terms of their investments, and as OpenAI has explained the disclosure of such information "would be harmful to OpenAI, in circumstances where Plaintiffs are direct competitors of OpenAI." xAI has notably resisted providing similar information on similar grounds. The interrogatory also employs numerous undefined terms and phrases that are subject to multiple interpretations, including, but not limited to, "profit share" and "restrictions, rights, or privileges." The interrogatory also contains several discrete subparts—in circumstances in which Plaintiffs have served 25 separately numbered interrogatories in the aggregate—to the extent it asks OpenAI, Inc. to identify "all investors in any of the For-Profit Entities" and separately to identify the "date and amount of each investment and corresponding profit share," "any restrictions, rights, or privileges applicable to such investment or investor," and any "Communications with such investor Concerning investing in competing companies."

### Altman RFA Nos. 41, 44, 47, 50, 54, 57, 61, 63, 77-79; Brockman RFA Nos. 41, 45, 47, 54-56; OpenAI, Inc. RFA Nos. 36, 38, 61-63

The OpenAI Defendants do not agree to supplement their responses to these RFAs after document production is substantially complete. Plaintiffs are equally capable of reviewing the OpenAI Defendants' document productions. Although you represented in our meet-and-confers that this is a standard form of interrogatory, you have not cited any authority for that proposition.

### RFAs to the For-Profit Entities

As stated in the Other Entity Defendants' responses and objections to Plaintiffs' RFAs, the RFAs to the Other Entity Defendants are "overly broad, unduly burdensome, and oppressive"; "Plaintiff Musk has served a total of more than 1,000 requests for admission on" the OpenAI Defendants; and "[m]any of these requests are duplicative and cumulative, seeking identical or substantially the same information from multiple Defendants." During the meet-and-confers, we explained the burden associated with responding and asked Plaintiffs what unique information they were looking to obtain. Plaintiffs confusingly suggested that the Other Entity Defendants should "just deny" the RFAs, and you suggested that the RFAs may not be burdensome

WACHTELL, LIPTON, ROSEN & KATZ

Jaymie Parkkinen, Esq.
June 19, 2025
Page 9

to respond to because of their highly duplicative nature. You were unable to explain why the RFAs were necessary, aside from boilerplate assertions that RFAs as a discovery device are meant to reduce the number of issues for trial. We also suggested that you tell us what you were specifically focused on and propose a narrower set of RFAs designed to obtain unique information. You have made no such proposal.

### Subpoenas to Deng, Hurd, Brundage, and Morikawa

Request No. 1

We do not agree that Plaintiffs established the relevance of these requests to the claims to be litigated in Phase One of this litigation during the meet-and-confer conferences.

Nevertheless, in a further attempt to find compromise, nonparties Deng, Hurd, Brundage, and Morikawa will supplement their responses to Plaintiffs' RFPs and produce responsive, non-privileged documents and communications, if any, in which they attribute their departure from OpenAI to OpenAI's alleged failure to adhere to its safety policies or practices, OpenAI's alleged contravention of its mission, or Altman's or Brockman's purported self-dealing, to the extent such documents are within their possession, custody, or control and are identified through a reasonable search.

Request No. 11

We do not agree that Plaintiffs established the relevance of these requests to the claims to be litigated in Phase One of this litigation during the meet-and-confer conferences.

Nevertheless, in the spirit of compromise, nonparties Deng, Hurd, Brundage, and Morikawa will produce responsive, non-privileged documents and communications, if any, that make express reference to OpenAI's mission in connection with their decision to join OpenAI, the negotiated terms of their employment, or their decision to depart from OpenAI, to the extent such documents are within their possession, custody, or control and are identified through a reasonable search.

\* \* \*

Please let us know if you have any questions regarding the above. The OpenAI Defendants agree that the parties may set forth the substance of their supplemental discovery responses by letter rather than amending their formal responses and objections.

Finally, we have received and are reviewing your June 18 letter—which responds to certain issues raised in our June 14 letter—and will respond in prompt due course.

WACHTELL, LIPTON, ROSEN & KATZ

Jaymie Parkkinen, Esq.
June 19, 2025
Page 10

                                                    Sincerely,

                                                    Bradley R. Wilson

cc:    Marc Toberoff, Esq.
        William Savitt, Esq.
        Sarah Eddy, Esq.
        Nathaniel Cullerton, Esq.
        Jordan Eth, Esq.
        William Frentzen, Esq.
        David Wiener, Esq.
        Russell Cohen, Esq.
        Andrew Levander, Esq.
        Howard Ullman, Esq.