JORDAN ETH (CA SBN 121617)
JEth@mofo.com
WILLIAM FRENTZEN (CA SBN 343918)
WFrentzen@mofo.com
DAVID J. WIENER (CA SBN 291659)
DWiener@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105
Telephone:    (415) 268-7000
Facsimile:    (415) 268-7522

WILLIAM SAVITT (admitted *pro hac vice*)
WDSavitt@wlrk.com
BRADLEY R. WILSON (admitted *pro hac vice*)
BRWilson@wlrk.com
SARAH K. EDDY (admitted *pro hac vice*)
SKEddy@wlrk.com
NATHANIEL CULLERTON (admitted *pro hac vice*)
NDCullerton@wlrk.com
WACHTELL, LIPTON, ROSEN & KATZ
51 West 52nd Street
New York, NY 10019
Telephone:    (212) 403-1000
Facsimile:    (212) 403-2000

*Attorneys for Defendants Samuel Altman, Gregory Brockman,*
*OpenAI, Inc., OpenAI L.P., OpenAI, L.L.C., OpenAI GP, L.L.C.,*
*OpenAI OpCo, LLC, OpenAI Global, LLC, OAI Corporation, LLC,*
*OpenAI Holdings, LLC, OpenAI Startup Fund Management, LLC,*
*OpenAI Startup Fund GP I, L.L.C., OpenAI Startup Fund I, L.P.,*
*OpenAI Startup Fund SPV GP I, L.L.C., OpenAI Startup Fund SPV GP II, L.L.C.,*
*OpenAI Startup Fund SPV GP III, L.L.C., OpenAI Startup Fund SPV GP IV, L.L.C.,*
*OpenAI Startup Fund SPV I, L.P., OpenAI Startup Fund SPV II, L.P.,*
*OpenAI Startup Fund SPV III, L.P., OpenAI Startup Fund SPV IV, L.P.,*
*Aestas Management Company, LLC, and Aestas LLC*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| ELON MUSK, et al., | Case No. 4:24-cv-04722-YGR |
| Plaintiffs, | **OPPOSITION TO MOTION TO STRIKE THE OPENAI DEFENDANTS' DEFENSES** |
| v. | |
| SAMUEL ALTMAN, et al., | Date:  August 5, 2025 |
| Defendants. | Time:  2:00 p.m.<br>Courtroom:  1 – 4th Floor<br>Judge:  Hon. Yvonne Gonzalez Rogers |

**STATEMENT OF ISSUES TO BE DECIDED**

1.      Whether Plaintiffs' motion to strike should be denied where (i) the OpenAI Defendants adequately plead each of their defenses, including the negative defenses targeting elements of Plaintiffs' claims and the defenses Plaintiffs categorize as affirmative defenses, including based on the hundreds of detailed factual allegations and responses to Plaintiffs' verified allegations in the OpenAI Defendants' responsive pleading; and (ii) Plaintiffs have failed to identify any prejudice to justify their motion to strike.

2.      Whether, in the alternative, Plaintiffs' motion to strike should be denied as moot in light of the OpenAI Defendants' proposed amended answer, filed simultaneously with this Opposition as Exhibit A to the Declaration of William Frentzen, which addresses the issues Plaintiffs claim to have identified in their motion to strike.

1

**TABLE OF CONTENTS**

2   INTRODUCTION ........................................................................................................... 1

3   BACKGROUND .............................................................................................................. 2

4   ARGUMENT ................................................................................................................... 5

5   I.      PLAINTIFFS' BROADSIDE AGAINST THE OPENAI DEFENDANTS' DEFENSES
            RESTS ON A FALLACY ................................................................................................ 5
6
7   II.     PLAINTIFFS OFFER NO BASIS ON WHICH TO STRIKE THE OPENAI
            DEFENDANTS' "NEGATIVE" DEFENSES ................................................................. 7

8   III.    THE OPENAI DEFENDANTS ADEQUATELY PLEAD THEIR AFFIRMATIVE
            DEFENSES. ................................................................................................................. 9
9
    IV.     PLAINTIFFS HAVE NOT SHOWN THE REQUIRED PREJUDICE AND HAVE
10          INSTEAD USED THE MOTION'S PENDENCY TO PREVENT THE OPENAI
            DEFENDANTS FROM OBTAINING DISCOVERY. ................................................... 15
11
    CONCLUSION ............................................................................................................... 17
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ACF 2006 Corp.* v. *Mark C. Ladendorf, Att'y at Law, P.C.*,
   826 F.3d 976 (7th Cir. 2016)............................................................................................... 9-10

*Agency Holding Corp.* v. *Malley-Duff & Assocs., Inc.*,
   483 U.S. 143 (1987) ........................................................................................................... 14

*Barnes* v. *AT&T Pension Ben. Plan-Nonbargained Program*,
   718 F. Supp. 2d 1167 (N.D. Cal. 2010) ................................................................................ 7

*Barnes & Noble, Inc.* v. *LSI Corp.*,
   849 F. Supp. 2d 925 (N.D. Cal. 2012) ........................................................................... 12-13

*Bentkowsky* v. *Benchmark Recovery, Inc.*,
   No. 3:13-cv-01252-VC, Dkt. 56 (N.D. Cal. May 21. 2014) ................................................ 17

*Cadence Design Sys. Inc.* v. *Syntronic AB*,
   2022 WL 1320629 (N.D. Cal. May 3, 2022) ...................................................................... 13

*Castillo* v. *Prime Hydration LLC*,
   748 F. Supp. 3d 757 (N.D. Cal. 2024) .................................................................................. 9

*Chan* v. *Brady*,
   2021 WL 3604694 (N.D. Cal. Aug. 13, 2021)...................................................................... 7

*Chaquico* v. *Jefferson Starship, Inc.*,
   2022 WL 17540793 (N.D. Cal. Dec. 8, 2022) ................................................................... 14

*Decena* v. *Allegiant Final Mile, Inc.*,
   2024 WL 37221 (N.D. Cal. Jan. 2, 2024) .......................................................................... 17

*Dodocase VR, Inc.* v. *MerchSource, LLC*,
   2020 WL 363040 (N.D. Cal. Jan. 22, 2020) ................................................................... 8, 10

*Fabian* v. *LeMahieu*,
   2020 WL 3402800 (N.D. Cal. June 19, 2020) ........................................................... 5, 14, 16

*Free Speech Sys., LLC* v. *Menzel*,
   390 F. Supp. 3d 1162 (N.D. Cal. 2019) ........................................................................... 5, 14

*Hammond* v. *BMW of N.A., LLC*,
   2019 WL 2912232 (C.D. Cal. June 26, 2019) ................................................................ 15 n.4

*In re Honest Co., Inc. Secs. Litig.*,
   343 F.R.D. 147 (C.D. Cal. 2022) ......................................................................................... 8

*In re Xyrem (Sodium Oxybate) Antitrust Litig.*,
   2022 WL 393208 (N.D. Cal. Feb. 9, 2022) ....................................................................... 13

*In re Yoon*,
  2025 WL 52552 (Bankr. N.D. Cal. Jan. 8, 2025) ........................................................... 15 n.4

*Jarrow Formulas, Inc.* v. *Nutrition Now, Inc.*,
  304 F.3d 829 (9th Cir. 2002) .......................................................................................... 13

*JB Carter Enters., LLC* v. *Elavon, Inc.*,
  2025 WL 17112 (9th Cir. Jan. 2, 2025) ......................................................................... 15 n.4

*Karimi* v. *Golden Gate Sch. of Law*,
  361 F. Supp. 3d 956 (N.D. Cal. 2019) ............................................................................ 9 n.2

*Kendall-Jackson Winery, Ltd.* v. *Sup. Ct.*,
  76 Cal. App. 4th 970 (1999) ........................................................................................... 11

*MLW Media LLC* v. *World Wrestling Ent., Inc.*,
  2023 WL 7167117 (N.D. Cal. Oct. 31, 2023) ................................................................. 17

*Navcom Tech., Inc.* v. *Oki Elec. Indus. Co., Ltd.*,
  2017 WL 2617977 (N.D. Cal. June 16, 2017) ................................................................. 15 n.4

*Nextdoor.Com, Inc.* v. *Abhyanker*,
  2013 WL 3802526 (N.D. Cal. July 19, 2013) ................................................................. 10

*Pac. Bay Recovery, Inc.* v. *Cal. Physicians' Servs., Inc.*,
  12 Cal. App. 5th 200 (2017) ........................................................................................... 15 n.4

*Rodgers* v. *Claim Jumper Rest., LLC*,
  2014 WL 1760959 (N.D. Cal. May 1, 2014) ........................................................ 5, 10, 11, 17

*Sanai* v. *Cardona*,
  2023 WL 3101512 (N.D. Cal. Feb. 22, 2023) ................................................................. 15 n.4

*Smith* v. *Wal-Mart Stores*,
  2006 WL 2711468 (N.D. Cal. Sept. 20, 2006) ............................................................... 8

*Synopsys, Inc.* v. *Ubiquiti Networks, Inc.*,
  2017 WL 3485881 (N.D. Cal. Aug. 15, 2017) ................................................................. 9, 10

*TransUnion LLC* v. *Ramirez*,
  594 U.S. 413 (2021) ............................................................................................... 7 n.1, 9 n.2

*Williams* v. *Exeter Fin. LLC*,
  2019 WL 6768317 (N.D. Cal. Dec. 11, 2019) ................................................................. 8

*Winns* v. *Exela Enterprise Solutions, Inc.*,
  2021 WL 5632587 (N.D. Cal. Dec. 1, 2021) ................................................................... 10, 11

**Statutes and Rules**

Cal. Code Civ. Proc. § 338(d) ........................................................................................... 14

Cal. Code Civ. Proc. § 339(1) ........................................................................................... 14

Fed. R. Civ. P. 8 ................................................................................................................ 1

Fed. R. Civ. P. 8(b) ........................................................................................ 8, 9

Fed. R. Civ. P. 8(c) ...................................................................................... 8, 10

Fed. R. Civ. P. 12(f) ...................................................................................... 5, 8

U.S. Const. Art. III .............................................................................. 7 n.1, 9 n.2

**Other Authorities**

5 Wright & Miller's *Federal Practice & Procedure* § 1274 (4th ed. 2025)................................ 10

**INTRODUCTION**

Plaintiffs' motion to strike every one of OpenAI's defenses is nothing more than a tactical maneuver to continue to frustrate discovery in an expedited case that Plaintiffs brought. Motions to strike are "generally disfavored" by courts, including in this District, because they are "often used as delaying tactics." That is what is happening here.

The substantial completion deadline is four days away, and neither Elon Musk nor xAI has produced a single document that was collected to respond to discovery served in this litigation. Plaintiffs refused to even collect and search Musk's email accounts until Magistrate Judge Hixson ordered them to do so nine days ago. Plaintiffs still have not produced any of those documents.

This motion—filed 18 days before the substantial completion deadline, with an accompanying hearing date *after* the close of fact discovery—is part of this pattern of recalcitrance. Plaintiffs are now deploying the motion to justify withholding all discovery into each of the OpenAI Defendants' defenses. This gamesmanship should not be countenanced; the motion provides no such basis:

*First*, the motion's premise is false. The OpenAI Defendants did not respond to a "narrowed pleading" with an "exponentially expanded Answer." MTS 2. The OpenAI Defendants' answer to the Second Amended Complaint contended with *eight* times as many claims as its original answer, which responded to only Plaintiffs' claim for breach of charitable trust. *See infra* Point I.

*Second*, Plaintiffs are wrong that pleading so-called "negative defenses" is impermissible, as Rule 8 and case law make clear. In any event, Plaintiffs cannot show the prejudice required to justify their motion to strike: as Plaintiffs concede, these defenses target elements of their own claims, which they need to establish and on which they bear the burden. *See infra* Point II.

*Third*, far from lacking "the most rudimentary factual basis," MTS 1, the OpenAI Defendants' affirmative defenses are supported by over 100 paragraphs of detailed factual allegations and more than 400 responses to Plaintiffs' verified allegations—all ignored by Plaintiffs' motion. These factual allegations and responses more than suffice to put Plaintiffs on notice of these defenses, particularly given that discovery remains ongoing. *See infra* Point III.

*Fourth*, Plaintiffs' prejudice argument is pretextual. They say now that the "proliferation of [OpenAI's] defenses," their alleged "overlap," and their supposed lack of "foundation," MTS 2, impedes their ability to respond to discovery. Yet through hours of meeting and conferring, and voluminous discovery correspondence, not once did Plaintiffs even mention any alleged defects in the OpenAI Defendants' defenses before filing their motion to strike, all the while refusing to produce the most basic of discovery. *See infra* Point IV.

For all these reasons, Plaintiffs' motion to strike should be denied.

However, to avoid burdening the Court with an unnecessary dispute and in light of the expedited schedule and roadblocks Plaintiffs have sought to impose, the OpenAI Defendants have also included with this Opposition a proposed amended answer. *See* Exhibit A to the Declaration of William Frentzen. The proposed amendment omits the negative defenses Plaintiffs assert are redundant and unnecessary, and reiterates in the recitation of the remaining defenses facts alleged elsewhere in the pleading. If accepted by the Court, the amended answer would moot the issues Plaintiffs claim to perceive with the defenses in their current form.

Plaintiffs' motion to strike should thus be denied, or, in the alternative, denied as moot.

## BACKGROUND

Plaintiffs Elon Musk, xAI, and Shivon Zilis filed their First Amended Complaint ("FAC") in this action on November 14, 2024. Dkt. 32. The FAC asserted 26 claims against Defendants Sam Altman, Greg Brockman, OpenAI, Inc., and another 21 OpenAI entities (the "OpenAI Defendants"). Plaintiffs sought a preliminary injunction with respect to a subset of those claims, which the Court denied. *See* Dkts. 46, 121.

After denying Plaintiffs' request for an injunction, the Court ordered that this action proceed on a bifurcated schedule: claims related to the circumstances of Musk's alleged donations to OpenAI, Inc. and the OpenAI Defendants' alleged breach of commitments to Musk in connection with those donations, as well as any counterclaims arising out of the same factual predicate, would be tried in an expedited proceeding (Phase I). All other claims would be stayed until Phase II. *See* Dkts. 125, 144, 146.

The OpenAI Defendants filed their initial Counterclaims, Answer, and Defenses to the FAC

on April 9, 2025. As that filing made clear, the OpenAI Defendants answered only the FAC's claim for breach of charitable trust, which the Court had ruled would go forward. *See* Dkt. 147 at 27 ("[T]he OpenAI Defendants [] hereby answer Count XX (Breach of Charitable Trust) of the First Amended Complaint"); Dkt. 121 at 15 n.11. The remainder of Plaintiffs' Phase I claims were then still subject to pending motions to dismiss.

In their April filing, the OpenAI Defendants pleaded 12 defenses to Plaintiffs' charitable trust claim, as well as two counterclaims against Musk and xAI: (1) unfair and fraudulent business practices, in violation of California's Unfair Competition Law, based on Plaintiffs' "orchestrating a sham bid to purportedly acquire [] OpenAI, Inc.'s assets," and (2) tortious interference with prospective economic advantage, again based on the "purported bid." Dkt. 147 ¶¶ 102-27.

On May 1, the Court granted in part and denied in part the OpenAI Defendants' motion to dismiss the remainder of Plaintiffs' Phase I claims. Dkt. 163. Plaintiffs then filed a Second Amended Complaint ("SAC"), in which they sought to replead their claims for breach of the implied covenant (SAC, Count III) and their civil RICO claims (SAC, Counts XX-XXI), which the Court had dismissed with leave to amend. Dkt. 170.

Consistent with the Court's May 1 order, the OpenAI Defendants filed an answer to the SAC on June 5, 2025 (the "Answer"), responding to these repleaded claims and all the claims as to which the Court denied the OpenAI Defendants' motion to dismiss. *See* Dkt. 163 at 11. Contending with seven additional claims, including Plaintiffs' civil RICO claims, the OpenAI Defendants pleaded 43 additional defenses in their Answer to the SAC. Dkt. 176 at 117-24. These defenses were supported by 127 paragraphs of affirmative factual allegations and over 400 responses to Plaintiffs' verified complaint. Dkt 176.

Discovery was supposed to proceed on an expedited basis. While Defendants have produced thousands of documents, and have committed to produce thousands more, Plaintiffs have largely refused to participate in discovery. Although they complain in their motion of undue burden and "prejudice" from the OpenAI Defendants seeking discovery on their defenses, MTS 9, Plaintiffs have thus far undertaken no meaningful efforts to search for and produce documents. For weeks, they refused to collect and search relevant Musk email accounts at his controlled entities. Dkt. 180.

After the OpenAI Defendants brought the matter to the Court's attention, on July 1, Magistrate Judge Hixson ordered that Plaintiffs' counsel collect and "timely produce [those] documents . . . in compliance with the case schedule." *See* Dkt. 194. Plaintiffs have not yet produced a single document in response to that order.

With the July 14 deadline for substantial completion of document discovery only four days away, Musk has produced only 345 documents, consisting entirely of a pre-packaged set of PDFs gathered before discovery commenced and apparently for purposes of drafting Plaintiffs' pleadings in this action. xAI has produced nothing at all. Plaintiffs have also refused to produce any documents relevant to OpenAI's counterclaims, claiming no obligation to do so while their motion to dismiss those claims is pending. Plaintiffs have taken the same position with respect to discovery relevant to the OpenAI Defendants' defenses, because they are now subject to this pending motion to strike. Dkt. 199 at 4.

Counsel for the OpenAI Defendants met and conferred with Plaintiffs' counsel for nearly nine hours on June 12 and 13 on discovery matters and have exchanged voluminous discovery correspondence both before and after conferencing. Not once in those many hours of conferencing, or in the parties' extensive discovery correspondence, did Plaintiffs' counsel raise any defect in the OpenAI Defendants' defenses, ask for clarification on any issues raised in their motion, or request that the OpenAI Defendants supplement their defenses to address the prejudice that Plaintiffs now claim to be suffering in responding to discovery. Any of these courses of action could have avoided burdening the Court with this dispute.

Instead, on June 26, less than three weeks before document discovery is supposed to be substantially complete, Plaintiffs filed this motion to strike, setting a hearing date of August 5—a day after the scheduled close of fact discovery. *See* Dkt. 146.

Despite addressing only a small number of the OpenAI Defendants' defenses in their motion, and despite failing to cite a single factual allegation from the OpenAI Defendants' answer and counterclaims, Plaintiffs ask the Court to strike all of the OpenAI Defendants' defenses—those Plaintiffs categorize as "affirmative" defenses, those they describe as impermissible "negative" defenses, and others related to the justiciability of their claims that are purportedly "neither

affirmative nor [] negative." MTS 1-3. The OpenAI Defendants oppose the motion.

## ARGUMENT

"Federal Rule of Civil Procedure 12(f) provides that a court 'may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.'" *Free Speech Sys., LLC* v. *Menzel*, 390 F. Supp. 3d 1162, 1168-69 (N.D. Cal. 2019) (quoting Fed. R. Civ. P. 12(f)). "Motions to strike" under this Rule "are generally disfavored because they are often used as delaying tactics," especially where they do not serve their principal "function" of "avoid[ing] the expenditure of time and money that must arise from litigating spurious issues by dispensing of those issues before trial." *Id.* at 1169 (cleaned up). "[B]ecause Rule 12(f) motions are disfavored, courts often require a showing of prejudice by the moving party before granting the requested relief." *Fabian* v. *LeMahieu*, 2020 WL 3402800, at *4 (N.D. Cal. June 19, 2020).

"The key to determining the sufficiency of pleading an affirmative defense" under Rule 12(f) "is whether it gives plaintiff fair notice of the defense." *Id.* "[S]trik[ing] an affirmative defense" is appropriate only where "under no set of circumstances could the defense succeed," "view[ing] the pleadings in a light most favorable to the pleading party." *Rodgers* v. *Claim Jumper Rest., LLC*, 2014 WL 1760959, at *1 (N.D. Cal. May 1, 2014). "Where a court strikes an affirmative defense, leave to amend should be freely given so long as there is no prejudice to the moving party." *Id.* But "[i]n most cases, a motion to strike should not be granted unless the matter to be stricken clearly could have no possible bearing on the subject of the litigation." *Free Speech Sys.*, 390 F. Supp. 3d at 1169.

## I.    PLAINTIFFS' BROADSIDE AGAINST THE OPENAI DEFENDANTS' DEFENSES RESTS ON A FALLACY.

Plaintiffs' motion rests on the false premise that "OpenAI responded to [Plaintiffs'] narrowed pleading" containing "*fewer* claims" by "filing an exponentially expanded Answer, increasing its separately denominated defenses by 350%." MTS 1-2; *see also id.* at 7 ("OpenAI chose to proliferate its defenses by 350% *after* the Court had already *narrowed* Plaintiffs' claims in that very same order") (emphases in original). This repeated assertion flagrantly misrepresents the record, as the OpenAI Defendants' Answer to the SAC responded to *eight* times as many claims

as its original answer.

As Plaintiffs are well aware, the OpenAI Defendants' original answer responded to only the FAC's claim for breach of charitable trust. *See* Dkt. 147 at 27; Dkt. 121 at 15 n.11. After the Court issued its May 1 order, granting in part and denying in part the OpenAI Defendants' motion to dismiss as to the FAC's remaining claims, *see* Dkt. 163, Plaintiffs filed their SAC, in which they sought to replead their claims for breach of the implied covenant and their civil RICO claims, *see* Dkt. 170. Consistent with the Court's order, *see* Dkt. 163 at 11, the OpenAI Defendants answered the SAC on June 5, responding to these repleaded claims, and—for the first time—the other claims as to which the Court had denied the OpenAI Defendants' motion to dismiss, *see* Dkt. 176.

This Answer—filed in response to Plaintiffs' supposedly "narrowed pleading"—is the subject of Plaintiffs' motion to strike. MTS 1-2. Instead of addressing solely Musk's charitable trust claim, the OpenAI Defendants were required to respond to Plaintiffs' claims for (1) breach of implied-in-fact contract, (2) breach of implied covenant of good faith and fair dealing, (3) breach of quasi-contract/unjust enrichment, (4) constructive fraud, (5) fraud, (6) violation of civil RICO, and (7) RICO conspiracy, in addition to (8) Plaintiffs' charitable trust claim. Thus, in asserting that the OpenAI Defendants "increas[ed] [their] separately denominated defenses by 350%," *id.*, Plaintiffs omit that OpenAI Defendants' second answer responded to seven *more* claims than their first: a 700% increase in the claims at issue.

Plaintiffs suggest that the addition of these new claims was immaterial because the OpenAI Defendants' original answer was "a comprehensive pleading encompassing *sixty-seven* pages of responses to *all* factual allegations." MTS 2 (emphases in original). This is wrong and misleading. The OpenAI Defendants' original answer did not respond to all of the FAC's factual allegations— it expressly declined to answer many on the grounds that they were "irrelevant to the Breach of Charitable Trust claim." *See, e.g.*, Dkt. 147 (Answer) ¶¶ 200-27. To be sure, answering Musk's claim for breach of charitable trust required addressing a substantial portion of the FAC's factual allegations, but that merely reflects Plaintiffs' shotgun pleading. Plaintiffs' charitable trust claim "re-allege[d] and incorporate[d]" *all* of the FAC's preceding paragraphs. *Id.* ¶ 416. And the claim borrowed as its alleged breaches all of the same conduct that purportedly constituted breach of

Musk's now-dismissed express contract claim, including much of OpenAI's business in the last six years. *Id.* ¶ 420.

Moreover, the seven additional claims in the SAC to which the OpenAI Defendants were required to respond included several, including under the RICO statute, that are notoriously complex. *See Chan* v. *Brady*, 2021 WL 3604694, at *4 (N.D. Cal. Aug. 13, 2021) ("RICO claims are complex claims that are expensive and time-consuming to litigate"). Indeed, 16 of the new defenses the OpenAI Defendants added in responding to the SAC are addressed to Plaintiffs' RICO claims, which remain subject to the OpenAI Defendants' renewed motion to dismiss. Dkt. 176 at 120-22 (Twenty-Seventh – Forty-Second Defenses).

Thus, far from any "tactical expansion" (MTS 8), the OpenAI Defendants' addition of new defenses in response to the SAC is simply a function of the seven new claims to which the OpenAI Defendants were obligated to respond, each of which suffered from multiple infirmities as identified in their Answer to the SAC.

## II.  PLAINTIFFS OFFER NO BASIS ON WHICH TO STRIKE THE OPENAI DEFENDANTS' "NEGATIVE" DEFENSES.

Plaintiffs argue that the OpenAI Defendants' "negative" defenses—that is, "defenses which demonstrate that [Plaintiffs] [have] not met [their] burden of proof as to an element [they are] required to prove"—are "redundant" and "should be struck." MTS 5-6 (cleaned up) (quoting *Barnes* v. *AT&T Pension Ben. Plan-Nonbargained Program*, 718 F. Supp. 2d 1167, 1173-74 (N.D. Cal. 2010)). The argument fails for two reasons: (i) Plaintiffs' contention that negative defenses may not be raised in an answer is incorrect, and (ii) Plaintiffs in any event fail to establish the prejudice required to ground their motion to strike.

(1) Plaintiffs categorize 37[1] of the OpenAI Defendants' pleaded defenses as "impermissible

---

[1] In their motion, Plaintiffs reference "thirty-seven negative defenses" several times, but only list 36 (*i.e.*, "Nos. 1-2, 7-11, 15, 19-43, 50, 53-54"). MTS 1. The OpenAI Defendants assume that Plaintiffs inadvertently omitted from their list Defense No. 3 (Plaintiff Musk's lack of Article III standing to assert Count XVIII (Breach of Charitable Trust)), which is not otherwise addressed in Plaintiffs' motion and would be categorized as a "negative defense" as Plaintiffs use that term. *See TransUnion LLC* v. *Ramirez*, 594 U.S. 413, 430-31 (2021) ("As the party invoking federal jurisdiction, the plaintiffs bear the burden of demonstrating that they have standing.").

7

negative defenses that merely contend Plaintiffs have failed to establish their claims." MTS 3. But there is nothing impermissible about pleading a negative defense. Rule 8(b) requires a defendant to "state in short and plain terms its *defenses* to each claim," which is broader than "affirmative" defenses, addressed elsewhere in the same rule. *Compare* Fed. R. Civ. P. 8(b), *with* Fed. R. Civ. P. 8(c) (emphasis added). For this reason, "[n]egative defenses may be raised in an answer." *In re Honest Co., Inc. Secs. Litig.*, 343 F.R.D. 147, 150 (C.D. Cal. 2022) (citing Fed. R. Civ. P. 8(b)).

(2) Moreover, "motions to strike are rarely granted" as to these defenses "in the absence of a showing of prejudice to the moving party." *Smith* v. *Wal-Mart Stores*, 2006 WL 2711468, at *10 (N.D. Cal. Sept. 20, 2006). Courts do not hesitate to "deny motions to strike when they do not align with Rule 12(f)'s central purpose of avoiding the unnecessary expenditure of time and money or enhancing efficiency by dispensing with spurious issues prior to trial." *In re Honest Co., Inc. Secs. Litig.*, 343 F.R.D. at 151.

Plaintiffs do not even attempt to explain how striking these defenses would "simplify and streamline [this] litigation." MTS 6. Nor could they: as Plaintiffs concede (and evidently had little trouble recognizing), these 37 negative defenses target elements of their claims, which Plaintiffs acknowledge they will need to "establish" and on which they will bear the burden of proof. *Id.* at 3. If anything, the OpenAI Defendants' inclusion of these specific defenses—"each of [which] relates to issues that will necessarily be litigated for the merits of the case"—assists Plaintiffs by providing more notice of the issues in dispute. *See Dodocase VR, Inc.* v. *MerchSource, LLC*, 2020 WL 363040, at *4-6 (N.D. Cal. Jan. 22, 2020) (denying motion to strike as to challenged defenses that were "standard," even though the defenses amounted to "an attack on plaintiff's case-in-chief [and were] not [] affirmative defense[s]," as "motions to strike . . . are disfavored"); *Smith*, 2006 WL 2711468, at *10 (denying motion to strike negative defenses where "Plaintiffs have failed to show that they will be prejudiced by a failure to strike these defenses" and the defenses could "simply [be] construe[d] [] as denials"). Because these defenses simply "negate elements of Plaintiffs' claims," *Smith*, 2006 WL 2711468, at *10, striking them "would not simplify the litigation," and an "assessment of [their] sufficiency . . . is better left for adjudication on the merits." *Williams* v. *Exeter Fin. LLC*, 2019 WL 6768317, at *1 (N.D. Cal. Dec. 11, 2019).

\*     \*     \*

Nevertheless, given the expedited schedule, and in an effort to avoid burdening the Court with this dispute, the OpenAI Defendants have submitted a proposed amended answer simultaneously with this Opposition that omits these 37 defenses (*i.e.*, Defenses 1-3, 7-11, 15, 19-43, 50, 53-54 to the OpenAI Defendants' answer to the SAC), based on Plaintiffs' representations and subject to the understanding that removing the defenses will not prejudice the OpenAI Defendants' ability to raise them at summary judgment or trial. *See* Frentzen Decl. Ex. A & Ex. B (redline).[2]

## III.    THE OPENAI DEFENDANTS ADEQUATELY PLEAD THEIR AFFIRMATIVE DEFENSES.

Plaintiffs next move to strike all of what they categorize as the OpenAI Defendants' affirmative defenses because these defenses supposedly "proffer neither legal authority nor factual allegations . . . much less facts sufficient to render" the defenses "plausible" under "the *Twombly/Iqbal* standard." MTS 1. Plaintiffs' arguments again lack merit.

(1) As an initial matter, defendants are not required to cite "legal authority" in pleading their defenses. As with any pleading, the sufficiency of an affirmative defense is measured by its factual allegations, not legal authority. *See* Fed. R. Civ. P. 8(b), (c); *Castillo* v. *Prime Hydration LLC*, 748 F. Supp. 3d 757, 768 (N.D. Cal. 2024) (sufficiency of pleading depends on its "non-conclusory factual content"); *Synopsys, Inc.* v. *Ubiquiti Networks, Inc.*, 2017 WL 3485881, at *1 (N.D. Cal. Aug. 15, 2017) (denying "motion to strike [] affirmative defenses where [counterclaim-defendant] alleged sufficient facts in its [Complaint] and Answer to support its defenses"); *see also ACF 2006*

---

[2] The OpenAI Defendants have also omitted from this proposed amended answer the two defenses Plaintiffs characterize as "neither affirmative nor duplicative negative defenses"—"lack of subject matter jurisdiction" (No. 44) and "ripeness/mootness" (No. 45). MTS 3. These defenses, which relate to the Court's jurisdiction, need not be separately pleaded and are not waivable. *See Karimi* v. *Golden Gate Sch. of Law*, 361 F. Supp. 3d 956, 973 (N.D. Cal. 2019) (rejecting argument that Defendants waived defenses concerning "[d]efects in subject matter jurisdiction," including their "defense of mootness," by "failing to raise it in their answer" as defenses concerning a "limitation of the federal courts' jurisdiction . . . cannot be forfeited or waived"). And it remains Plaintiffs' burden to establish Article III standing to prosecute each of their claims, without which the Court would lack subject-matter jurisdiction. *See TransUnion LLC*, 594 U.S. at 430-31.

*Corp.* v. *Mark C. Ladendorf, Att'y at Law, P.C.*, 826 F.3d 976, 981 (7th Cir. 2016) ("Making legal arguments in support of one's claim comes after the pleadings.").

(2) Despite seeking to strike all of the OpenAI Defendants' defenses for their supposed lack of supporting "factual allegations," MTS 1, Plaintiffs' brief does not include a single citation to the 127 paragraphs of detailed factual allegations pleaded in OpenAI's counterclaims, or to the more than 400 responses to Plaintiffs' verified allegations included in the OpenAI Defendants' answer. *See* Dkt. 176. Plaintiffs cannot ignore those factual allegations and responses simply because they were not separately recited under each defense. As courts—including in this District—have recognized, affirmative defenses may be supported by "facts alleged elsewhere in the amended answer and counterclaim." *See, e.g.*, *Nextdoor.Com, Inc.* v. *Abhyanker*, 2013 WL 3802526, at *10 (N.D. Cal. July 19, 2013) (denying motion to strike where defense was "at least plausibly" supported by "facts alleged elsewhere in the amended answer and counterclaim," despite the "asserted defense [being] followed by a sentence simply stating the applicability of the defense, and providing little to no detail about the grounds for the asserted defense"); *Dodocase*, 2020 WL 363040, at *6 ("While the paragraph that discussed Defendants' unclean hands defense lacks sufficient facts, Defendants have alleged that Plaintiffs acted inequitably, fraudulently, and deceptively elsewhere in the answer"); *Synopsys*, 2017 WL 3485881, at *1 (affirmative defenses supported by "sufficient facts in [] [Complaint] and Answer").

(3) This Court has stated previously that "[a]lthough the Ninth Circuit has not yet addressed the issue, numerous courts in the Northern District of California have applied the *Iqbal–Twombly* pleading standard to affirmative defenses." *Rodgers*, 2014 WL 1760959, at *1; *see also Winns* v. *Exela Enterprise Solutions, Inc.*, 2021 WL 5632587, at *2 (N.D. Cal. Dec. 1, 2021); *but see* 5 Wright & Miller's *Federal Practice & Procedure* § 1274 (4th ed. 2025) (Pleading Affirmative Defenses) ("[T]he majority of courts have rightly held that Rule 8(c) does not warrant the extension of the *Twombly* and *Iqbal* standard to affirmative defenses."). The resolution of that issue is not necessary to dispose of Plaintiffs' motion: whether analyzed under the *Iqbal*/*Twombly* pleading standard or Rule 8(c)'s preexisting fair notice standard, the factual allegations supporting the OpenAI Defendants' affirmative defenses suffice.

Even under the *Iqbal/Twombly* standard, adequately pleading an affirmative defense "does not require extensive factual allegations," *Winns*, 2021 WL 5632587, at *2, and a motion to strike "will not be granted if the insufficiency of the defense is not clearly apparent," *Rodgers*, 2014 WL 1760959, at *1. "[T]he moving party must demonstrate that there are no questions of fact" and that "under no set of circumstances could the defense succeed." *Id*.

Although Plaintiffs seek to strike each of what they characterize as the OpenAI Defendants' "sixteen unequivocally affirmative defenses," MTS 1, Plaintiffs' motion fails to address (and thus waives any argument to strike) all but three: unclean hands (fourth defense), laches (fifth defense), and statute of limitations (sixth defense). MTS 4-5; *see id.* at 5 (asserting only that the remainder "exhibit comparable deficiencies"). Plaintiffs do not come close to the required showing needed to strike any of them.

***Unclean Hands***. The OpenAI Defendants plead extensive factual allegations supporting their defense alleging Musk's "unclean hands," which Plaintiffs ignore in their motion. MTS 4.

The unclean hands doctrine "demands that a plaintiff act fairly in the matter for which he seeks a remedy," *i.e.*, that "[h]e [] come into court with clean hands, and keep them clean, or he will be denied relief." *Kendall-Jackson Winery, Ltd.* v. *Sup. Ct.*, 76 Cal. App. 4th 970, 978 (1999). Application of this doctrine, which "is available in legal as well as equitable actions," is a "question of fact." *Id.* To invoke "unclean hands" requires a showing of "conduct that violates conscience, or good faith, or other equitable standards of conduct" that "relate[s] directly to the cause at issue." *Id.* at 979.

The OpenAI Defendants' answer and counterclaims identify substantial bad-faith conduct by Musk that directly relates to the subject matter of his Phase I claims, which allege that "for-profit" business activities undertaken by OpenAI entities violated some obligation allegedly owed to Musk personally. *See generally* Dkt. 170 (SAC) ¶¶ 1-10. For example, the OpenAI Defendants plead:

- In 2017, Musk sought a for-profit restructuring of OpenAI that would afford him "sole control of the new [entity], at least in the short term," entitling Musk, as the hypothetical for-profit's CEO, to a "majority equity stake, and control of the majority of the board."

11

Dkt. 176 (Counterclaims) ¶ 33.

- In 2017, while serving as co-Chair of OpenAI, Inc., "Musk caused top AI engineers from OpenAI to be seconded to Tesla so they could impart scarce AI learning to Tesla employees" and even "poached one of those OpenAI engineers for Tesla." *Id.* ¶ 44. Following his resignation from OpenAI, Musk continued to try to recruit OpenAI engineers on behalf of businesses under his control. *Id.*

- In early 2018, Musk "proposed absorb[ing] OpenAI into Tesla" through a "for-profit pivot [that] would allow OpenAI to use 'Tesla as [OpenAI's] cash cow.'" *Id.* ¶ 37.

- In 2023, only days after his "clandestine incorporation of his nascent competitor [xAI]," Musk noisily supported a six-month 'moratorium' on development of [advanced] AI" of the kind OpenAI was then pursuing. *Id.* ¶ 60.

- A few weeks later, Musk "demanded access to OpenAI's confidential and commercially sensitive internal documents," "[f]eigning concern as a former donor and director of OpenAI, and without ever disclosing he was building a competitor in secret." *Id.* ¶ 61.

- In February 2025, Musk, along with a "consortium of private investors," orchestrated a sham bid to purchase OpenAI, Inc.'s assets for $97.375 billion, without a shred of diligence or evidence of financing, as a "naked effort to disrupt the [OpenAI] board's consideration of a potential restructuring and to sow confusion among employees and potential investors," for the ultimate purpose of threatening "OpenAI's ability to pursue its mission on terms uncorrupted by unlawful harassment and interference." *Id.* ¶¶ 83-96.

These allegations show that Musk's supposed grievances are not genuinely held and that his deceptive conduct is part of a bad-faith "campaign of harassment, interference, and misinformation designed to take down OpenAI and clear the field for himself." *Id.* ¶ 58.[3] This more than suffices to plead an unclean hands defense at this stage of the case. *See Barnes & Noble, Inc.*

---

[3] The Court has acknowledged the relevance of Plaintiffs' purported bid as countervailing evidence to Musk's claim for breach of charitable trust. *See* Dkt. 121 at 14 n.10 (noting that "this additional interaction between the parties [*i.e.*, the bid]. . . . undermine[s] the claim of irreparable harm").

v. *LSI Corp.*, 849 F. Supp. 2d 925, 941 (N.D. Cal. 2012) (denying motion to strike on unclean hands defense supported by "allegations regarding [the opposing party's] misleading conduct," which were "sufficient at this stage to render their defense plausible and put [the opposing party] on notice of the claim").

**Laches**. The OpenAI Defendants likewise adequately plead an affirmative defense of laches. Laches requires a showing that "[1] the plaintiff delayed filing suit for an unreasonable and inexcusable length of time . . . and [2] the delay operated to the prejudice or injury of the defendant," with "the bare fact of delay creat[ing] a rebuttable presumption of prejudice." *In re Xyrem (Sodium Oxybate) Antitrust Litig.*, 2022 WL 393208, at *3 (N.D. Cal. Feb. 9, 2022) (cleaned up) (denying motion to strike where "Defendants ha[d] raised a plausible laches defense"). Laches imposes "time limitations" specific to equitable claims for relief and rests "on the maxim that one who seeks the help of a court of equity must not sleep on his rights." *Jarrow Formulas, Inc.* v. *Nutrition Now, Inc.*, 304 F.3d 829, 835 (9th Cir. 2002) (cleaned up).

The OpenAI Defendants' answer and counterclaims contain substantial factual allegations that Musk slept on his rights, including with respect to his central grievance in this litigation—that the creation and activities of OpenAI for-profit subsidiaries violated duties he contends he was owed personally. As the OpenAI Defendants allege, "[t]he creation of the capped-profit entity was no secret. Brockman, Sutskever, and OpenAI announced it in a blog post in early March 2019. Musk had advance notice; he was offered, and declined, equity in the new entity. The day the blog post went live, Musk asked Altman to make clear to others that he had 'no financial interest in the for-profit arm of OpenAI.' Musk raised no objection to the formation of OpenAI, L.P." Dkt. 176 (Counterclaims) ¶¶ 47-48; *see also id.* (Answer) ¶¶ 100-14 (incorporating documents showing that "[i]n 2017-2018" Musk was aware of the alleged "move[] to recast the non-profit as a moneymaking endeavor").

These allegations—showing Musk's unreasonable delay in challenging OpenAI's and its for-profit subsidiaries' activities—more than suffice to plead laches. *See Cadence Design Sys. Inc.* v. *Syntronic AB*, 2022 WL 1320629, at *3 (N.D. Cal. May 3, 2022) (motion to strike laches defense denied where plaintiff "knew about [allegedly] infringing activity [] six years prior to filing suit");

*Chaquico* v. *Jefferson Starship, Inc.*, 2022 WL 17540793, at *3 (N.D. Cal. Dec. 8, 2022) (denying motion to strike because "[w]hether . . . laches attached . . . turn[ed] on factual questions that cannot be resolved at the pleadings stage"); *Fabian*, 2020 WL 3402800, at *6 (even thin "allegations" of laches survived motion to strike where they "sufficiently put [plaintiff] on notice").

***Statute of limitations***. These allegations showing Musk's inexcusable delay apply with equal force to the OpenAI Defendants' statute of limitations defense. MTS 5. For example, Plaintiffs' contract-based Phase I claims are subject to a two-year statute of limitations, *see* Cal. Code Civ. Proc. § 339(1), their claims asserting breach of trust and sounding in fraud are subject to a three-year limitations period, *see* Cal. Code Civ. Proc. § 338(d), and their RICO claims are subject to a four-year limitations period, *see Agency Holding Corp.* v. *Malley-Duff & Assocs., Inc.*, 483 U.S. 143, 156 (1987); *see also* Ex. A (Third Defense). The OpenAI Defendants' allegations that Musk had "advance notice" of OpenAI's imminent launch of a for-profit arm more than six years ago and that Musk "raised no objection to [its] formation," *see* Dkt. 176 (Counterclaims) ¶¶ 47-48; *supra* p. 13, more than suffice at this stage of the proceeding to put Plaintiffs on notice of a statute of limitations defense, *see Chaquico*, 2022 WL 17540793, at *3.

\*      \*      \*

The affirmative defenses that Plaintiffs challenge are each grounded in substantial factual allegations sufficient to put Plaintiffs on notice as to the basis of the defense, and Plaintiffs' motion should be denied on that basis. Moreover, striking any of the OpenAI Defendants' affirmative defenses would be especially inappropriate at this stage of the litigation, with discovery ongoing (and being fiercely resisted by Plaintiffs). *See Fabian*, 2020 WL 3402800, at *5 (striking affirmative defenses inappropriate where additional "detail" could be provided through the "discovery process"); *see also Free Speech Sys.*, 390 F. Supp. 3d at 1176 (declining to strike affirmative defenses where it "ma[de] more sense to see how the evidence develop[ed]" and "there [was] no prejudice to [plaintiff] if those defenses remain[ed] in [the] case").

However, as noted, the OpenAI Defendants have submitted a proposed amended answer simultaneously with this Opposition, which reiterates in the recitation of each of the defenses Plaintiffs categorize as "affirmative" (*i.e.*, Nos. 4-6, 12-14, 16-18, 46-49, 51-52, and 55) the

detailed facts alleged elsewhere in the pleading. *See* Ex. A. While not necessary, the proposed amendment addresses the issue Plaintiffs claim to have identified in their motion and renders the motion moot. *See infra* p. 17.

The OpenAI Defendants do not agree that all of those defenses are in fact affirmative defenses. Seven of the defenses—excusal of performance (No. 12), substantial performance (No. 13), no consideration (No. 14), nonoccurrence of conditions (No. 18), economic loss rule (No. 49), speculative or remote damages (No. 51), and public policy (No. 55)—are not affirmative defenses, as they go to issues on which Plaintiffs bear the burden of proof.[4] Nevertheless, the OpenAI Defendants have provided additional detail with respect to those defenses in their proposed amended answer to obviate any dispute.

## IV. PLAINTIFFS HAVE NOT SHOWN THE REQUIRED PREJUDICE AND HAVE INSTEAD USED THE MOTION'S PENDENCY TO PREVENT THE OPENAI DEFENDANTS FROM OBTAINING DISCOVERY.

According to Plaintiffs, their motion to strike every one of the OpenAI Defendants' defenses—brought in the final stages of written discovery in this expedited matter—is necessary because "during an exhaustive nine-hour meet-and-confer conference" the OpenAI Defendants purportedly "sought to rationalize [their] onerous discovery requests by repeatedly invoking [their] voluminous defenses[,] . . . inflict[ing] demonstrable prejudice upon Plaintiffs, who have and must

---

[4] *See, e.g.*, *Navcom Tech., Inc.* v. *Oki Elec. Indus. Co., Ltd.*, 2017 WL 2617977, at *2-3 (N.D. Cal. June 16, 2017) (Nos. 12 & 13: "Plaintiff [] required to present evidence sufficient to show it did all, or substantially all, of the significant things that the contract required it to do" and that "Defendant failed to do something that the contract required it to do"); *Pac. Bay Recovery, Inc.* v. *Cal. Physicians' Servs., Inc.*, 12 Cal. App. 5th 200, 215 (2017) (No. 14: "vital elements of a cause of action" for breach of implied contract include "consideration"); *In re Yoon*, 2025 WL 52552, at *4 (Bankr. N.D. Cal. Jan. 8, 2025) (No. 18: "[A] party seeking to enforce a contract containing conditions precedent bears the burden of proof as to the occurrence of the conditions"); *Hammond* v. *BMW of N.A., LLC*, 2019 WL 2912232, at *2 n.2 (C.D. Cal. June 26, 2019) (No. 49: "The economic loss rule is a bar to recovery. . . . Plaintiff cites no authority, and the Court found none, that Defendant was required to plead the economic loss rule as an affirmative defense."); *JB Carter Enters., LLC* v. *Elavon, Inc.*, 2025 WL 17112, at *3 (9th Cir. Jan. 2, 2025) (No. 51: "A plaintiff must prove a non-speculative amount of damages with reasonable accuracy."); *Sanai* v. *Cardona*, 2023 WL 3101512, at *3 (N.D. Cal. Feb. 22, 2023) (No. 55: plaintiff must "show that an injunction would be in the public interest").

continue to expend substantial resources responding to [the OpenAI Defendants'] discovery demands." MTS 9. These assertions of "prejudice"—which Plaintiffs never raised before filing this motion to strike and without which Plaintiffs cannot justify their motion, s*ee Fabian*, 2020 WL 3402800, at *4—do not accurately reflect the discovery record.[5]

Plaintiffs are correct that discovery needs to proceed in view of "the expedited nature" of this case, which they brought. MTS 9. Yet, Plaintiffs have largely refused to participate in discovery: with four days to go before document productions are supposed to be substantially completed, they have still not produced anything from Musk's custodial files. And Plaintiffs' suggestion that they have suffered from "expend[ing] substantial resources responding to discovery demands" grounded in the OpenAI Defendants' "voluminous defenses" rings hollow, given that they have refused to produce a single document in response to those demands. MTS 9.

Plaintiffs have refused to produce discovery regarding OpenAI's counterclaims pending resolution of Plaintiffs' motion to dismiss. Through this tactical motion to strike, Plaintiffs also seek to foreclose any discovery regarding the OpenAI Defendants' defenses, claiming once again no obligation to produce documents relevant to those defenses while the instant motion is pending. *See* Dkt. 199 at 4.

Plaintiffs reproach the OpenAI Defendants for taking "the extraordinary step of subpoenaing Plaintiffs' litigation counsel." MTS 10. What Plaintiffs fail to mention is that OpenAI served this subpoena after learning in third-party discovery that Mr. Toberoff played a key role in coordinating Musk's sham bid for OpenAI—including by hastily soliciting numerous third parties to participate in the supposed hostile takeover. *See* Dkt. 176 (Counterclaims) ¶¶ 83-91. Plaintiffs' counsel have also refused to produce documents in response to the subpoena, even though, as Magistrate Judge Hixson recently agreed, "Musk's bid for OpenAI is relevant to phase

---

[5] The OpenAI Defendants are mindful that the Court has referred to Magistrate Judge Hixson "all discovery matters," Dkt. 184, and thus will not address all inaccuracies in Plaintiffs' account of the meet-and-confer record. *See* MTS 9. The OpenAI Defendants note, however, that its counsel did not seek to "rationalize its onerous discovery requests by repeatedly invoking its voluminous defenses" during the parties' conference. *Id.* The OpenAI Defendants raised *one* defense—unclean hands—as a partial basis for certain discovery requests and explained the basis for that defense, in detail, consistent with the description in this Opposition, *see supra* pp. 11-12.

16

1 issues [and] may be inconsistent with Plaintiffs' phase 1 theories of liability." Dkt. 203 at 2.

Plaintiffs should not be allowed to use this motion to strike—a type of motion they acknowledge is "generally disfavored because [such motions] are often used as delaying tactics," *see* MTS 4 (citing *Decena* v. *Allegiant Final Mile, Inc.*, 2024 WL 37221, at *2 (N.D. Cal. Jan. 2, 2024))—as a ploy to avoid discovery, especially in the context of the "expedited deadlines" that Plaintiffs themselves requested, *see Rodgers*, 2014 WL 1760959, at *2. The motion to strike should be denied in full.

Alternatively, because it is imperative that the parties work diligently toward the completion of fact discovery, the OpenAI Defendants request that Plaintiffs' motion be denied as moot and that the Court grant the OpenAI Defendants leave to file their proposed amended answer, which addresses the alleged defects Plaintiffs identify in their motion. *See* Ex. A; *MLW Media LLC* v. *World Wrestling Ent., Inc.*, 2023 WL 7167117, at *1-2 (N.D. Cal. Oct. 31, 2023) (terminating motion to strike as moot due to proposed amended answer); *Bentkowsky* v. *Benchmark Recovery, Inc.*, No. 3:13-cv-01252-VC, Dkt. 56 (N.D. Cal. May 21. 2014) (same).

## CONCLUSION

The motion to strike should be denied. In the alternative, the motion should be denied as moot and leave should be granted to file the proposed amended answer, attached as Exhibit A to the Declaration of William Frentzen.

1   Date: July 10, 2025                        MORRISON & FOERSTER LLP

2
                                               */s/ Jordan Eth*
3                                              JORDAN ETH (CA SBN 121617)
                                               JEth@mofo.com
4                                              WILLIAM FRENTZEN (CA SBN 343918)
                                               WFrentzen@mofo.com
5                                              DAVID J. WIENER (CA SBN 291659)
                                               DWiener@mofo.com
6                                              MORRISON & FOERSTER LLP
                                               425 Market Street
7                                              San Francisco, CA 94105
                                               Telephone:    (415) 268-7000
8                                              Facsimile:    (415) 268-7522

9                                              WILLIAM SAVITT (admitted *pro hac vice*)
                                               WDSavitt@wlrk.com
10                                             BRADLEY R. WILSON (admitted *pro hac
                                               vice*)
11                                             BRWilson@wlrk.com
                                               SARAH K. EDDY (admitted *pro hac vice*)
12                                             SKEddy@wlrk.com
                                               NATHANIEL CULLERTON (admitted *pro
13                                             hac vice*)
                                               NDCullerton@wlrk.com
14                                             STEVEN WINTER (*pro hac vice* application
                                               forthcoming)
15                                             SWinter@wlrk.com
                                               WACHTELL, LIPTON, ROSEN & KATZ
16                                             51 West 52nd Street
                                               New York, NY 10019
17                                             Telephone:    (212) 403-1000
                                               Facsimile:    (212) 403-2000
18
                                               *Attorneys for Defendants Samuel Altman,*
19                                             *Gregory Brockman, OpenAI, Inc., OpenAI L.P.,*
                                               *OpenAI, L.L.C., OpenAI GP, L.L.C., OpenAI*
20                                             *OpCo, LLC, OpenAI Global, LLC, OAI*
                                               *Corporation, LLC, OpenAI Holdings, LLC,*
21                                             *OpenAI Startup Fund Management, LLC,*
                                               *OpenAI Startup Fund GP I, L.L.C., OpenAI*
22                                             *Startup Fund I, L.P., OpenAI Startup Fund SPV*
                                               *GP I, L.L.C., OpenAI Startup Fund SPV GP II,*
23                                             *L.L.C., OpenAI Startup Fund SPV GP III,*
                                               *L.L.C., OpenAI Startup Fund SPV GP IV,*
24                                             *L.L.C., OpenAI Startup Fund SPV I, L.P.,*
                                               *OpenAI Startup Fund SPV II, L.P., OpenAI*
25                                             *Startup Fund SPV III, L.P., OpenAI Startup*
                                               *Fund SPV IV, L.P., Aestas Management*
26                                             *Company, LLC, and Aestas LLC*

27

28