UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| ELON MUSK, et al., <br><br> Plaintiffs, <br><br> v. <br><br> SAMUEL ALTMAN, et al., <br><br> Defendants. | Case No. 4:24-cv-04722-YGR <br><br> **JOINT LETTER BRIEF RE: NON-PARTY EIGHT PARTNERS VC'S PRIVILEGE ASSERTIONS** <br><br> Judge: Hon. Yvonne Gonzalez Rogers <br><br> Magistrate Judge: Hon. Thomas S. Hixson <br><br> Date Action Filed: August 5, 2024 <br> Trial Date: March 30, 2026 |

July 18, 2025

The Honorable Thomas S. Hixson
United States District Court, Northern District of California
450 Golden Gate Avenue, San Francisco, CA 94102

  Re: *Musk, et al.* v. *Altman, et al.*, Case No. 4:24-cv-04722

Dear Judge Hixson:

  Non-party Eight Partners VC LLC ("8VC") has clawed back twenty documents it produced in response to a subpoena served by the OpenAI Defendants, asserting that the documents are shielded from disclosure by the attorney-client privilege and/or work product doctrine. After meeting and conferring, the OpenAI Defendants believe 8VC has failed to meet its burden to establish privilege or work product protection over these documents, and seeks an order compelling their immediate production. The parties attest that they have met and conferred in good faith to resolve this dispute.

<div style="display: flex;">
<div>

*/s/ David J. Wiener*
Bradley R. Wilson (admitted *pro hac vice*)
Nathaniel Cullerton (admitted *pro hac vice*)
WACHTELL, LIPTON, ROSEN & KATZ
51 West 52nd Street
New York, NY 10019
Telephone: (212) 403-1000
Facsimile: (212) 403-2000

Jordan Eth (CA SBN 121617)
William Frentzen (CA SBN 343918)
David J. Wiener (CA SBN 291659)
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105
Telephone: (415) 268-7000
Facsimile: (415) 268-7522

*Attorneys for Defendants Samuel Altman, Gregory Brockman, OpenAI, Inc., OpenAI L.P., OpenAI, L.L.C., OpenAI GP, L.L.C., OpenAI OpCo, LLC, OpenAI Global, LLC, OAI Corporation, LLC, OpenAI Holdings, LLC, OpenAI Startup Fund Management, LLC, OpenAI Startup Fund GP I, L.L.C., OpenAI Startup Fund I, L.P., OpenAI Startup Fund SPV GP I, L.L.C., OpenAI Startup Fund SPV GP II, L.L.C., OpenAI Startup Fund SPV GP III, L.L.C., OpenAI Startup Fund SPV GP IV, L.L.C., OpenAI Startup Fund SPV I, L.P., OpenAI Startup Fund SPV II, L.P., OpenAI Startup Fund SPV III, L.P., OpenAI Startup Fund SPV IV, L.P., Aestas Management Company, LLC, and Aestas LLC*

</div>
<div>

*/s/ Steven S. Kaufhold*
Steven S. Kaufhold (CA SBN 157195)
SKaufhold@kaufholdgaskin.com
Liana Mayilyan (CA SBN 295203)
LMayilyan@kaufholdgaskin.com
KAUFHOLD GASKIN LLP
485 Pacific Avenue
San Francisco, CA 94133
Telephone: (415) 881-3189
Facsimile: (415) 480-6076

*Attorneys for Non-Party Eight Partners VC LLC*

</div>
</div>

I.   **OPENAI DEFENDANTS' POSITION**

**Background.** On February 10, 2025, Plaintiffs' litigation counsel, Marc Toberoff, sent a "Letter of Intent" ("LOI") to the board of OpenAI, Inc. on behalf of a "consortium" of private investors. The LOI purported to offer $97.375 billion to purchase OpenAI, Inc.'s assets. The consortium of investors (all close associates of Musk) included Musk's artificial intelligence company, Plaintiff xAI, as well as 8VC. 8VC is a prominent investor in Musk's Boring Company and helped fund Musk's acquisition of Twitter; its founder also donated to Musk's super-PAC during the 2024 presidential election.

The LOI provided no evidence of financing to support the offer. One investor has admitted that there was no due diligence performed nor any valuation analysis supporting the offer price, and the LOI was recognized by certain savvy media commentators as a sham.[1]

8VC was one of only six private investors who signed the LOI. On April 9, 2025, the OpenAI Defendants served a subpoena on 8VC seeking documents about the LOI, Musk's efforts to solicit investors, 8VC's and other members of the consortium's reasons for signing the LOI, and any diligence conducted by the investors. After meeting and conferring, 8VC agreed to produce documents responsive to nearly all of the OpenAI Defendants' requests.

On July 9, 2025, this Court ruled that discovery related to Musk's bid and the LOI "is relevant to phase 1 issues . . . because Musk's bid may be inconsistent with Plaintiffs' phase 1 theories of liability." (ECF No. 203 at 2.)

**8VC seeks to withhold relevant documents.** On June 2, 2025, 8VC produced 22 documents. Four days later, 8VC sought to claw back 20 of those documents—including all documents discussing 8VC's participation in the preparation and transmission of the LOI—as purportedly privileged and, with respect to one document, protected by the attorney work product doctrine. The only documents 8VC did not seek to claw back are two executed copies of the LOI.

The OpenAI Defendants promptly requested a privilege log, which 8VC then delayed providing for nearly a month. As reflected in 8VC's July 9, 2025 privilege log (Exhibit A), 8VC asserts attorney-client privilege and/or work product protection over the 20 clawed back documents (entries 1-20, all emails and attachments) on the basis of a purported attorney-client relationship with Mr. Toberoff—despite no indication of any attorney-client relationship between Mr. Toberoff and 8VC. 8VC also added two documents to its privilege log that were not previously produced (entries 21-22). OpenAI disputes the privilege assertion over log entries 1-21, all of which were exchanged in the days leading up to and the day of the bid.

**8VC has failed to meet its burden to establish privilege.** 8VC bears the burden of establishing any privilege. *Apple Inc. v. Samsung Elecs. Co.*, 306 F.R.D. 234, 237 (N.D. Cal.

---

[1] Scott Rosenberg, Musk lawyers say he'll drop bid for OpenAI if it gives up for-profit plan, Axios (Feb. 13, 2025), https://www.axios.com/2025/02/13/musk-altman-openai-nonprofit-filing; Elon Musk's $97bn offer is a headache for Sam Altman's OpenAI, The Economist (Feb. 11, 2025), https://www.economist.com/business/2025/02/11/elon-musks-97bn-offer-is-a-headachefor-sam-altmans-openai; Chris Stokel-Walker, Elon Musk owning OpenAI would be a terrible idea. That doesn't mean it won't happen, The Guardian (Feb. 12, 2025), https://www.theguardian.com/commentisfree/2025/feb/12/elon-musk-owning-openai-trump-aisam-altman

1

2015). While a privilege log may be sufficient to meet this burden in some circumstances, "[i]f. . . the requesting party challenges the sufficiency of the assertion of privilege protection, the asserting party may no longer rest on the privilege log, but bears the burden of establishing an evidentiary basis—by affidavit, deposition transcript, or other evidence—for each element of each privilege protection claimed for each document or category of document." *Id.*, n.9 (citations omitted); *see also Bryant v. Mattel, Inc.*, No. CV 04-09049 SGLRNBX, 2007 WL 5430887, at *2 (C.D. Cal. June 20, 2007) (rejecting privilege assertion where withholding party had "not made any attempt to substantiate its claim of the attorney-client privilege other than the unsupported assertions in [its] privilege log").[2]

That is especially true where, as here, the challenged documents have been clawed back. In that circumstance, Rule 45(e)(2)(b) expressly allows the subpoenaing party to "present the information under seal to the court . . . for a determination of the claim." That approach is all the more appropriate here because 8VC's privilege log does not provide sufficient evidence that any privilege exists. For example, the log incudes nine emails (entries 1-7, 13-14) with Jared Birchall, a third party unaffiliated with 8VC who did not sign the LOI and who has no apparent attorney-client relationship with Mr. Toberoff in connection with the LOI. Other entries (13-14) log communications that include other bidders, with no evidence that these bidders were also represented by Mr. Toberoff or shared any common legal interest with 8VC. And still other entries simply appear incorrect—entry 14, for example, logs documents 8VC000018-022, even though documents 8VC000019-022 have not been clawed back.

8VC, moreover, has failed to provide any evidence of an attorney-client relationship with Mr. Toberoff, or that Mr. Toberoff provided 8VC with any legal advice. During the meet-and-confer process, 8VC's outside counsel stated that Mr. Toberoff—who advertises himself as practicing in "all areas of general civil, commercial and intellectual property litigation and arbitration"—was engaged to provide "investment related representation regarding OpenAI." According to counsel, that purported representation commenced on January 24, 2025, the same date of the earliest email 8VC sought to claw back, and was not documented in any engagement letter or similar writing. Indeed, 8VC's initial production consisted almost entirely of documents it later sought to claw back, suggesting that 8VC itself was unaware that Mr. Toberoff was purportedly acting as its attorney at the time.[3]

Even if Mr. Toberoff was acting as 8VC's attorney, 8VC has not provided any information indicating that the withheld communications reflect legal advice from Mr. Toberoff. That Mr. Toberoff was involved as a go-between to facilitate a potential business transaction between members of Musk's consortium of investors does not shield every communication involving Mr. Toberoff from discovery. Mr. Toberoff's communications providing business services or transmitting information regarding the LOI are not protected by the attorney-client privilege. 8VC

---

[2] *In re Grand Jury Investigation* and *In re Napster*, cited by 8VC, are not to the contrary. In *Grand Jury Investigation*, the party whose privilege assertion was challenged submitted "affidavits of in-house and retained counsel as evidence that the documents are privileged." 974 F.2d 1068, 1069 (9th Circ. 1992). The court in *In re Napster* addressed whether the party challenging privilege assertions had met its burden to "vitiate" an already established privilege assertion based on the crime-fraud exception.

[3] 8VC now states for the first time that it is prepared to submit affidavits that have never previously been disclosed to OpenAI, despite failing to provide any details concerning any purported attorney-client relationship during the lengthy meet and confer process.

2

now suggests that the clawed back documents reflect Mr. Toberoff's legal advice on "quintessentially legal matters" including "antitrust considerations and regulatory compliance." To the extent the Court believes it is necessary, the OpenAI Defendants respectfully request, pursuant to Rule 45(e)(2)(b), that the Court review the documents *in camera* to assess 8VC's contention that the documents actually reflect any such legal advice.

8VC has likewise provided no evidence that privilege log entry number seven was "prepared in anticipation of litigation," *see* Fed. R. Civ. P. 26(b)(3), and is thus protected work-product. To the contrary, just two days after the LOI was sent to OpenAI's board, Mr. Toberoff represented to the Court that the bid and LOI were "entirely irrelevant" to the pending proceedings. (ECF No. 119.)

Other members of the consortium have also claimed to be represented by Mr. Toberoff and have similarly clawed back and/or withheld communications with Musk's representatives concerning the LOI. Like 8VC, however, not one of those investors has provided any contemporaneous evidence of an attorney-client relationship with Mr. Toberoff. 8VC and Musk's other close associates cannot invoke Mr. Toberoff's business involvement in the LOI to shield all communications about the bid. Pursuant to Rule 37, the OpenAI Defendants respectfully request an order compelling 8VC to produce entries 1-21 on its privilege log immediately.

## II.    8VC'S POSITION

The Ninth Circuit had held that a privilege log sufficiently establishes the attorney-client privilege. *See In re Grand Jury Investigation*, 974 F.2d 1068, 1071 (9th Circ. 1992), citing *Dole v. Milonas*, 889 F.2d 885, 888 n.3, 890 (9th Cir. 1989); FRCP 26(b)(5)(A)(ii). OpenAI Defendants do not dispute that 8VC's privilege log contains sufficient information for OpenAI Defendants or the Court to evaluate 8VC's claims of privilege. Instead, OpenAI Defendants speculate that confidential communications with Mr. Toberoff are not privileged simply because he also happens to be Plaintiff's litigation counsel. Mr. Toberoff's position as Plaintiff's litigation counsel does not preclude him from entering and forming an attorney-client relationship with Non-Party 8VC and providing 8VC with privileged legal advice, including as part of a consortium, including one member for whom Mr. Birchall serves as both an agent and employee, where such privilege was enjoyed jointly. Unlike in-house counsels, where the business-versus-legal advice distinction may become murkier, communications with outside counsel are presumed to fall within the scope of the privilege. *United States v. ChevronTexaco Corp.*, 241 F. Supp. 2d 1065, 1073-74 (N.D. Cal. 2002); *United States v. Chen*, 99 F.3d 1495, 1501 (9th Cir. 1996) ("A client is entitled to hire a lawyer, and have his secrets kept, for legal advice regarding the client's business affairs.").

The attorney-client privilege "is the oldest of the privileges for confidential communications known to the common law." *Upjohn Co. v. United States,* 449 U.S. 383, 389 (1981) (citing 8 J. Wigmore, Evidence § 2290 (J. McNaughton rev.1961)). Its aim is "to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Id.* at 389. The attorney-client privilege protects confidential communications between attorneys and clients, which are made for the purpose of giving legal advice. *Id.* The attorney-client privilege exists where: "(1) [ ] legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are

at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived." *United States v. Graf*, 610 F.3d 1148, 1156 (9th Cir. 2010). Additionally, the scope of the attorney-client privilege extends to not only communications exchanged between the attorney and client, but also to materials and documents that discuss the matters on which the client intends to seek legal advice or that discuss the legal advice rendered by counsel. *United States v. ChevronTexaco Corp.*, 241 F. Supp. 2d, 1065, 1073 (N.D. Cal. 2002). OpenAI Defendants are not entitled to peer into outside counsel's emails with clients that directly relate to and concern legal advice, including drafts of matters sent for review and discussion of legal implications. *ChevronTexaco Corp.*, 241 F. Supp. 2d at 1073-74.

In this instance, all the entries on 8VC's Privilege Log memorialize confidential communications between 8VC, its in-house counsel, and Mr. Toberoff. Specifically, 8VC sought confidential legal advice regarding a letter of intent expressing its interest in purchasing OpenAI's assets from attorney Mr. Toberoff, who did provide, based on objective indicia, a limited legal representation to 8VC for that purpose. Mr. Toberoff advised 8VC regarding the legal implications of the proposed transaction, and by drafting, reviewing, negotiating the terms of the Letter of Intent on behalf of the consortium of investors, including 8VC. Each step of this potentially complex transaction required Mr. Toberoff to balance, and offer advice concerning, quintessentially legal matters, such as antitrust considerations and regulatory compliance. Whether the particular communications in question contain that advice themselves or were transmittals of information, such as drafts, necessary to provide that advice via phone calls or otherwise is immaterial. *In re Banc of California Sec. Litig.*, No. SACV1700118AGDFMX, 2018 WL 6167907, at *2 (C.D. Cal. Nov. 26, 2018); *In re Premera Blue Cross Customer Data Sec. Breach Litig.*, 329 F.R.D. 656, 661 (D. Or. 2019); *Ideal Elec. Co. v. Flowserve Corp.*, 230 F.R.D. 603, 6-608 (D. Nev. 2005). That business decisions prompt the need for legal advice in no way changes the fact that, e.g., drafts exchanged and discussed are privileged. *Chen*, 99 F.3d at 1501.

Given this, 8VC's communications with Mr. Toberoff are privileged and OpenAI Defendants have not presented any evidence indicating otherwise. Even *in camera* review represents an infringement on the privilege, and as such, is unwarranted where OpenAI Defendants have made no showing an outside attorney was retained for anything other than his legal advice. *In re Napster, Inc. Copyright Litig.*, 479 F.3d 1078, 1091-92 (9th Cir. 2007), *abrogated on other grounds by Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100 (2009). Moreover, 8VC and Mr. Toberoff are prepared to submit declarations confirming the attorney-client relationship. They have not done so given this Court's Discovery Standing Order precluding submission of affidavits in connection with discovery joint letter briefs. Further, "if a person hires a lawyer for advice, there is a rebuttable presumption that the lawyer is hired 'as such' to give 'legal advice,' whether the subject of the advice is criminal or civil, business, tort, domestic relations, or anything else." *Chen*, 99 F.3d at 1501. This presumption is rebutted only "when the facts show that the lawyer was 'employed without reference to his knowledge and discretion in the law,'" a showing OpenAI Defendants nowhere make concerning a legally complex proposed business transaction. *Id.* Accordingly, the Court should deny OpenAI Defendants' request to compel the privileged documents.

**ATTESTATION**

Pursuant to Civil Local Rule 5.1 regarding signatures, I attest that concurrence in the filing of this document has been obtained from the other signatories.

Dated: July 18, 2025                                      By:   */s/ David J. Wiener*