UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| ELON MUSK, et al., | Case No. 4:24-cv-04722-YGR |
| Plaintiffs, | **FURTHER JOINT LETTER BRIEF RE: NON-PARTY EIGHT PARTNERS VC'S PRIVILEGE ASSERTIONS** |
| v. | |
| SAMUEL ALTMAN, et al., | Judge: Hon. Yvonne Gonzalez Rogers |
| Defendants. | Magistrate Judge: Hon. Thomas S. Hixson |
| | Date Action Filed: August 5, 2024<br>Trial Date: March 30, 2026 |

July 28, 2025

The Honorable Thomas S. Hixson
United States District Court, Northern District of California
450 Golden Gate Avenue, San Francisco, CA 94102

    Re:   *Musk, et al.* v. *Altman, et al.*, Case No. 4:24-cv-04722

Dear Judge Hixson:

    Pursuant to Your Honor's July 21, 2025 Discovery Order (ECF No. 213), non-party Eight Partners VC LLC ("8VC") served on the OpenAI Defendants declarations from Marc Toberoff and Ian Shannon, 8VC's General Counsel, relating to 8VC's privilege assertions addressed by the Joint Letter Brief filed on July 18, 2025 (ECF No. 210) (the "Joint Letter Brief"). Copies of the Toberoff and Shannon declarations are attached as Exhibits 1-2. The OpenAI Defendants continue to believe 8VC has failed to meet its burden to establish privilege or work product protection over the disputed documents and request *in camera* review of the disputed documents and an order compelling their immediate production.

*/s/ David J. Wiener*
Bradley R. Wilson (admitted *pro hac vice*)
Nathaniel Cullerton (admitted *pro hac vice*)
WACHTELL, LIPTON, ROSEN & KATZ
51 West 52nd Street
New York, NY 10019
Telephone: (212) 403-1000
Facsimile: (212) 403-2000

Jordan Eth (CA SBN 121617)
William Frentzen (CA SBN 343918)
David J. Wiener (CA SBN 291659)
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105
Telephone: (415) 268-7000
Facsimile: (415) 268-7522

*Attorneys for Defendants Samuel Altman, Gregory Brockman, OpenAI, Inc., OpenAI L.P., OpenAI, L.L.C., OpenAI GP, L.L.C., OpenAI OpCo, LLC, OpenAI Global, LLC, OAI Corporation, LLC, OpenAI Holdings, LLC, OpenAI Startup Fund Management, LLC, OpenAI Startup Fund GP I, L.L.C., OpenAI Startup Fund I, L.P., OpenAI Startup Fund SPV GP I, L.L.C., OpenAI Startup Fund SPV GP II, L.L.C., OpenAI Startup Fund SPV GP III, L.L.C., OpenAI Startup Fund SPV GP IV, L.L.C., OpenAI Startup Fund SPV I, L.P., OpenAI Startup Fund SPV II, L.P., OpenAI Startup Fund SPV III, L.P., OpenAI Startup Fund SPV IV, L.P., Aestas Management Company, LLC, and Aestas LLC*

*/s/ Steven S. Kaufhold*
Steven S. Kaufhold (CA SBN 157195)
SKaufhold@kaufholdgaskin.com
Liana Mayilyan (CA SBN 295203)
LMayilyan@kaufholdgaskin.com
KAUFHOLD GASKIN LLP
485 Pacific Avenue
San Francisco, CA 94133
Telephone: (415) 881-3189
Facsimile: (415) 480-6076

*Attorneys for Non-Party Eight Partners VC LLC*

I.      **OPENAI DEFENDANTS' POSITION**

The Toberoff and Shannon Declarations do not support 8VC's assertion of privilege over the disputed documents (entries 1-21 on 8VC's privilege log, attached as Ex. A to the Joint Letter Brief) and do not address, much less cure, the issues identified by the OpenAI Defendants in the Joint Letter Brief.

Because 8VC clawed back virtually its entire production, *in camera* review is appropriate under Rule 45(e)(2)(b), which expressly provides that the recipient of a claw back request may "present the information under seal" to the Court for determination of the privilege claim. Courts thus routinely recognize the receiving party's right to *in camera* review in challenges involving clawed back documents. *See In re Google RTB Consumer Priv. Litig.*, No. 21-CV-02155-YGR-VKD, 2022 WL 1316586, at *4 (N.D. Cal. May 3, 2022) (analyzing virtually identical clawback language in Rule 26(b)(5)(B) and stating that "[t]he Rule . . permit[s] the party to 'present' the privileged material to a court under seal. . . either party may provide the disputed document to the court for in camera review"); *D'Anna ex rel. United States v. Lee Mem'l Health Sys.*, No. 2:14-CV-437-JLB-NPM, 2024 WL 916559, at *1 (M.D. Fla. Mar. 4, 2024) ("[W]hen a party makes a claim of privilege pursuant to Rule 26(b)(5)(B), the opposing party has two choices: it may accept the claim or it may challenge the claim by providing the material under seal to the Court for determination of the issue of privilege."); *GXO Logistics Supply Chain, Inc. v. Young Living Essential Oils, LC*, No. 3:23-CV-61-SA-RP, 2024 WL 3930501, at *2 (N.D. Miss. Aug. 23, 2024) (Rule 26(b)(5)(B) "permits the party to 'present' the privileged material to the court under seal").

*In camera* review is especially appropriate here, as the declarations 8VC provided to support its privilege assertions raise more questions than they answer. The declarations provide only the vaguest assertions about the purported attorney-client relationship between Mr. Toberoff, 8VC, and the other bidders. Neither declaration identifies when the attorney-client relationship purportedly began or ended. And neither provide any evidence of a formal engagement of Mr. Toberoff (8VC has admitted that no engagement letter or similar writing exists). Mr. Shannon and Mr. Toberoff merely assert that they "understood" that Mr. Toberoff would provide legal advice concerning what Mr. Shannon states was a "business decision." Shannon Decl. ¶¶ 3, 4; Toberoff Decl. ¶ 3.

Mr. Toberoff goes on to say that unidentified "objective indicia" led him to believe he jointly represented *six* prominent investment firms (and xAI and Musk) at some point in connection with a proposed transaction that, if consummated at the nearly $100 billion offer price, would have been one of the largest M&A deals in history. Mr. Toberoff has no apparent corporate or corporate transactional law experience, instead advertising himself as a "leading attorney in the area of copyright and entertainment litigation."[1]

The dearth of evidence, including any writing memorializing the purported engagement, is particularly striking given the claimed simultaneous representation by Mr. Toberoff of at least eight distinct clients in the proposed transaction, each with their own potentially divergent financial and legal interests. That supposed joint representation suggests a need to obtain "informed written consent" from each client prior to taking on the representation. *See* Cal. Rule of

---

[1] https://toberoffandassociates.com/marc-toberoff

1

Prof. Conduct 1.7(b) & Comment [2], [4] (Rule requiring "informed written consent from each client" applies "to all types of legal representations, including the concurrent representation of multiple parties . . . in a single transaction or in some other common enterprise" and noting that "a lawyer's obligations to two or more clients in the same matter, such as several individuals seeking to form a joint venture, may materially limit the lawyer's ability to recommend or advocate all possible positions that each might take").

Even if 8VC had shown that Mr. Toberoff represented it at some point, it has presented no evidence that the clawed-back documents reflect Mr. Toberoff's legal advice. Notably, the declarations do not so much as mention the clawed-back documents, much less represent that any of them reflect legal advice. Neither declaration is willing to stand behind 8VC's prior (unsworn) suggestion in the Joint Letter Brief that the documents reflect legal advice on "antitrust considerations and regulatory compliance." ECF No. 210 at 4. Instead, both declarations vaguely assert—using identical language—that Mr. Toberoff generally (not in any of the clawed-back documents) provided advice on the "legal implications of the proposed transactions." Shannon Decl. ¶ 5; Toberoff Decl. ¶ 4.

The declarations are likewise silent regarding the numerous deficiencies in 8VC's privilege log previously identified in the Joint Letter Brief, including multiple entries reflecting communications with third parties who did not sign the LOI, and apparent erroneous descriptions of the clawed-back documents. ECF No. 210 at 2-3.

The OpenAI Defendants therefore respectfully request that the Court review the disputed documents *in camera* to assess 8VC's contention that they reflect legal advice and are protected by the attorney-client privilege. Following the Court's review of the disputed documents, the OpenAI Defendants respectfully request an order compelling 8VC to produce entries 1-21 on its privilege log immediately.

## II.    8VC'S POSITION

The Toberoff and Shannon Declarations established that an attorney-client relationship existed between Non-Party 8VC and its outside counsel, Mr. Toberoff, and that Mr. Toberoff provided privileged legal advice to 8VC.  Specifically, Mr. Shannon, 8VC's General Counsel, testified that "[i]n early 2025", 8VC made the business decision to participate in a collective bid with consortium of investors to purchase OpenAI's assets, should those assets be for sale.  Shannon Decl. ¶3.  8VC "agreed . . . that it made sense to engage joint counsel, Marc Toberoff" to represent it and the other investors.  *Id.* at ¶4. Mr. Shannon further testified that "8VC understood and intended to rely on Mr. Toberoff's legal representation." *Id.* Mr. Toberoff "did provide "legal advice to 8VC regarding the legal implications of the proposed transaction, and by drafting, reviewing and structuring the terms of the Letter of Intent on behalf of 8VC and the other Investors." *Id.* at ¶5. Ultimately, on February 10, 2025, Mr. Toberroff submitted a Letter of Intent outlining the Investors' proposal to acquire OpenAI's assets. *Id.* at ¶6. The Shannon Declaration – and, in particular, ¶5 – is dispositive of the issue here as it confirms that Mr. Toberoff was retained to and did in fact provide legal advice, including across drafts of the LOI, to 8VC regarding the potential purchase.

2

Mr. Toberoff's Declaration corroborated Mr. Shannon's Declaration. Mr. Toberoff similarly testified that he "intended to provide, and understood that [he] was providing, including based on objective indicia, legal representation" to 8VC with the Letter of Intent. Toberoff Decl. ¶3. His representation included advising the Investors, including 8VC, on the "legal implications of the proposed transaction, and by drafting, reviewing, and structuring the terms of the Letter of Intent on their behalf." *Id.* at ¶4. He further testified that he "intended" and "understood" that the Investors would benefit from his legal expertise and professional judgment in their evaluation and execution of the Letter of Intent. *Id.* at ¶5. That should be the end of the inquiry here.

None of the purported issues raised by OpenAI Defendants regarding the supporting Declarations warrant the disclosure of privileged communications and work-product. First, Mr. Shannon's Declaration provided the timeframe for Mr. Toberoff's representation of 8VC in connection with the Letter of Intent. As Mr. Shannon testified it was in "early 2025" that Mr. Toberoff provided limited legal representation to 8VC regarding the proposed transaction, which ultimately resulted in a Letter of Intent that was submitted on February 10, 2025. Shannon Decl. ¶¶ 3, 6.

Next, OpenAI Defendants contend that there is no evidence of a "formal engagement of Mr. Toberoff." However, "[a] formal contract is not necessary to show that an attorney-client relationship has been formed." *Waggoner v. Snow, Becker, Kroll, Klaris & Krauss,* 991 F.2d 1501, 1505 (9th Cir. 1993). Nor have the OpenAI Defendants cited any case law that suggests that any supposed failure to comply with requirements of "informed written consent" regarding (a supposed, but non-existent) potential conflict of interest waives the attorney-client privilege. The Court should decline OpenAI Defendants' invitation to speculate regarding potential conflicts of interest among the Investors and how such hypothetical conflicts could impact Mr. Toberoff's legal representation. OpenAI Defendants' further attempts to second-guess 8VC's decision to retain Mr. Toberoff based on areas of specialization or the kind of documentation the parties found agreeable are even more improper.

Nor is there any requirement that the Declarations must have specifically addressed the clawed-back documents. Whether the particular communications in question contain legal advice themselves or were transmittals of information such as drafts, necessary to provide that advice via phone calls or otherwise is immaterial. *In re Banc of California Sec. Litig.,* No. SACV1700118AGDFMX, 2018 WL 6167907, at *2 (C.D. Cal. Nov. 26, 2018); *In re Premera Blue Cross Customer Data Sec. Breach Litig.,* 329 F.R.D. 656, 661 (D. Or. 2019); *Ideal Elec. Co. v. Flowserve Corp.*, 230 F.R.D. 603, 6-608 (D. Nev. 2005). The information in the Privilege Log, together with the supplemental facts set forth in the supporting Declarations, is more than sufficient to establish privilege. Indeed, the entire point of the privilege is that no detailed discussion of the documents' contents is possible.

Finally, no *in camera* review is necessary here given that the Declarations provided sufficient details to permit a meaningful review of 8VC's claim of privilege. Indeed, even *in camera* review represents an infringement on the privilege and, as such, remains unwarranted where OpenAI Defendants have made no showing an outside attorney was retained for anything other than his legal advice. *In re Napster, Inc. Copyright Litig.*, 479 F.3d 1078, 1091-92 (9th Cir. 2007), *abrogated on other grounds by Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100 (2009); *In*

3

*re Grand Jury Investigation,* 974 F.2d 1068, 1075 (9th Cir.1992) (requiring a "factual basis sufficient to support a reasonable, good faith belief that *in camera* inspection may reveal evidence that information in the materials is not privileged"). The fact Rule 45 provides a *procedure* for *in camera* review does not change it is still OpenAI Defendants' heavy burden to show such review is proper.

The supplemented record demonstrates that Mr. Toberoff provided legal advice to 8VC regarding a complex price exploration in virtually unprecedented legal territory. OpenAI does not have the right to dictate the form of documentation of the attorney-client relationship 8VC was satisfied with or to raise concerns about Mr. Toberoff's practice areas or conflicts procedures. Certainly such peripheral, hypothetical speculations do not justify the burden on both the Court and the privilege imposed by the extraordinary remedy of *in camera* review. Accordingly, the Court should deny OpenAI Defendants' request to compel the disclosure of privileged attorney-client communications, as well as OpenAI Defendants' request for *in camera* review of the privileged documents.

4

## ATTESTATION

Pursuant to Civil Local Rule 5.1 regarding signatures, I attest that concurrence in the filing of this document has been obtained from the other signatories.

Dated: July 28, 2025

By: ___*/s/ David J. Wiener*___