# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| ELON MUSK et al., <br><br> Plaintiffs, <br><br> vs. <br><br> SAMUEL ALTMAN et al., <br><br> Defendants. | Case No.  24-cv-04722-YGR <br><br> **JOINT LETTER BRIEF** <br><br> Judge:  Hon. Yvonne Gonzalez Rogers <br><br> Magistrate Judge:  Hon. Thomas S. Hixson <br><br> Date Action Filed: August 5, 2024 <br> Trial Date: March 30, 2026 |

August 26, 2025

The Honorable Thomas S. Hixson
San Francisco Courthouse
Courtroom E, 15th Floor
450 Golden Gate Avenue
San Francisco, CA 94102

Dear Magistrate Judge Hixson:

      Pursuant to Your Honor's Discovery Standing Order, the parties respectfully submit this joint letter addressing:

1. The OpenAI Defendants' Motion To Compel Meta Platforms, Inc.; and
2. Plaintiffs' Request for a Protective Order.

      The parties attest that they met and conferred in good faith in an effort to resolve these disputes before filing this joint letter.

| | |
|---|---|
| */s/ Jaymie Parkkinen* | */s/ Alison L. Plessman* |
| Jaymie Parkkinen, SBN 318394 | Alison L. Plessman |
| TOBEROFF & ASSOCIATES, P.C. | Stephanie Xiao |
| 23823 Malibu Road, Suite 50-363 | Nicholas Kellum (Admitted Pro Hac Vice) |
| Malibu, CA 90265 | HUESTON HENNIGAN LLP |
| Telephone: (310) 246-3333 | 523 W. 6th Street, Suite 400 |
| Facsimile: (310) 246-3101 | Los Angeles, CA 90014 |
| | Telephone: (213) 788-4340 |
| Steven F. Molo (*pro hac vice*) | Facsimile: (888) 866-4825 |
| Robert K. Kry (*pro hac vice*) | |
| Jennifer Schubert (*pro hac vice*) | *Attorneys for Defendants Samuel Altman, Gregory Brockman, OpenAI, Inc., OpenAI L.P., OpenAI, L.L.C., OpenAI GP, L.L.C., OpenAI OpCo, LLC, OpenAI Global, LLC, OAI Corporation, LLC, OpenAI Holdings, LLC, OpenAI Startup Fund Management, LLC, OpenAI Startup Fund GP I, L.L.C., OpenAI Startup Fund I, L.P., OpenAI Startup Fund SPV GP I, L.L.C., OpenAI Startup Fund SPV GP II, L.L.C., OpenAI Startup Fund SPV GP III, L.L.C., OpenAI Startup Fund SPV GP IV, L.L.C., OpenAI Startup Fund SPV I, L.P., OpenAI Startup Fund SPV II, L.P., OpenAI Startup Fund SPV III, L.P., OpenAI Startup Fund SPV IV, L.P., Aestas Management Company, LLC, and Aestas LLC* |
| MOLOLAMKEN LLP | |
| 430 Park Avenue | |
| New York, NY 10022 | |
| Telephone: (212) 607-8160 | |
| | |
| *Attorneys for Plaintiffs Elon Musk and X.AI Corp.* | |

**Plaintiffs' Statement**

On August 12, 2025, the Court ruled that the OpenAI Defendants' ("OpenAI's") counterclaims—which arise from Plaintiffs' February 10, 2025 letter of intent ("LOI") to purchase OpenAI, Inc.'s assets should OpenAI proceed with its for-profit conversion—belong in Phase II of this litigation. Dkt. 228 at 9.  Notwithstanding that ruling, OpenAI continues to seek expansive discovery concerning the LOI and other matters this Court has already determined to be irrelevant to Phase I.  Despite having already received documents related to the LOI from Plaintiffs and various third parties, OpenAI continues to seek documents regarding that topic from other third parties, such as Meta Platforms.  OpenAI intends to depose at least three entities that signed the LOI, and it has listed the LOI as one of the topics in its Rule 30(b)(6) notice to Plaintiff xAI, which is not even a party to the Phase I claims.  That discovery has little if any relevance to the Phase I claims and is plainly disproportionate to the needs of this phase of the case.  Plaintiffs therefore agree with Meta Platforms that the Court should deny OpenAI's motion to compel.  Plaintiffs further request that the Court enter a protective order forbidding any further discovery into this topic, or any other Phase II topic, during Phase I.

*Background.*  On February 10, 2025, Plaintiffs, along with a consortium of investors, submitted a letter of intent seeking to open discussions about purchasing OpenAI's assets for over $97 billion. Dkt. 118-1.[1]  That offer was contingent on OpenAI proceeding with its for-profit conversion, and Plaintiffs offered to withdraw the bid if OpenAI remained a non-profit.  Dkt. 119 at 1.  Within months, OpenAI filed counterclaims asserting that delivery of the LOI to OpenAI and publication of the letter in the *Wall Street Journal* constituted unfair competition and tortious interference with prospective economic advantage.  Dkt. 147 ¶¶ 102-127.  OpenAI then served subpoenas on every entity that signed the LOI, seeking broad categories of documents concerning that letter, the respondents' potential investments in OpenAI, and other topics.  OpenAI also sought documents related to the LOI from entities that did not sign the letter, such as Meta Platforms.

Plaintiffs moved to dismiss the counterclaims.  The Court denied that motion on August 12, 2025. Dkt. 228.  The Court agreed with Plaintiffs that delivery of the LOI to OpenAI's board of directors was protected by California's litigation privilege, but it determined that publication of the letter in the *Wall Street Journal* was not protected and allowed the counterclaims to proceed on that basis. *Id.* at 5-6.  Nonetheless, the Court agreed with Plaintiffs that the counterclaims belonged in Phase II of the case because "the counterclaims themselves stem from actions taken far after the actions forming the basis of plaintiff's breach of contract claims." *Id.* at 9.

Notwithstanding that ruling, OpenAI has persisted in seeking broad discovery concerning the LOI during these expedited Phase I proceedings, including from Meta Platforms and other third parties. OpenAI has announced its intent to depose at least three entities whose only connection to this case is having signed the LOI: Vy Capital, Baron Capital, and Atreides Management.  OpenAI has now served a Rule 30(b)(6) deposition notice on xAI—which is not a party to any Phase I claim—seeking testimony concerning "[t]he February 10, 2025 Letter of Intent, the transaction described therein, or any Alternative Transaction," among other Phase II topics.  OpenAI even took the

---

[1] The investors were X.AI, Atreides Management LP, Baron Capital Group, Inc., Eight Partners VC LLC, Valor Management LLC, Vy Fund III, L.P., and Emanuel Capital Management, LLC.

extraordinary step of serving a subpoena on Plaintiffs' litigation counsel in this case in an attempt to obtain documents about the LOI.

*Argument.* The Court should grant a protective order precluding additional discovery into the LOI and other Phase II matters. For "good cause," the Court may "forbid[ ] inquiry into certain matters" or "limit[ ] the scope of disclosure or discovery." Fed. R. Civ. P. 26(c)(1)(D). Good cause exists when the relevance of discovery "is marginal at best and the burden the discovery imposes is not proportional to any benefit." *United States v. Metic Transplantation Lab Inc.*, No. 13-cv-7039, 2017 WL 11636152, at *2 (C.D. Cal. Feb. 16, 2017); *see also Kannan v. Apple Inc.*, No. 17-cv-7305, 2019 WL 5152627, at *3 (N.D. Cal. Oct. 15, 2019) (granting protective order where "discovery is not relevant and proportional to the needs of [the] case").

Good cause exists here. Phase I discovery must be relevant to the Phase I claims. *See Rivera v. NIBCO, Inc.*, 364 F.3d 1057 (9th Cir. 2004) (prohibiting discovery into information relevant only to remedy issues, not liability); *Browne v. Clark*, No. 2:21-cv-2840, 2025 WL 819024, at *4-6 (C.D. Cal. Feb. 18, 2025) (quashing subpoena for information relevant only to later phase of litigation). The Court postponed OpenAI's counterclaims to Phase II precisely because those claims have little if any connection to the issues in Phase I. Dkt. 228 at 9.

Your Honor previously ruled that the LOI could be relevant on the ground that Musk's alleged plans to purchase OpenAI's assets may be "inconsistent with Plaintiffs' phase 1 theories of liability" (i.e., that Musk donated to OpenAI on the understanding that it would remain a non-profit). Dkt. 230 at 2. But even setting aside the fact that the LOI was conditional on OpenAI deciding to proceed with its for-profit conversion against Musk's wishes, that theory cannot justify invasive discovery *from third parties*. The beliefs and conduct of third parties are irrelevant to *Musk's* motives and state of mind in serving the LOI. OpenAI asserts that the evidence is also relevant to unclean hands. But that defense requires that the conduct "relate directly" to the claim at issue. *Brewster v. City of Los Angeles*, 672 F. Supp. 3d 872, 1003 (C.D. Cal. 2023). The LOI does not relate directly to any Phase I claim. Regardless, a supposed connection to one of several affirmative defenses does not justify making a topic the sole focus for *three* of ten depositions.

Moreover, OpenAI has already received substantial discovery concerning the LOI from Plaintiffs and third parties, who have produced nearly 1,000 documents on the matter. Allowing still more discovery on this topic would be cumulative and disproportionate. *See Gonzales v. Google, Inc.*, 234 F.R.D. 674, 686 (N.D. Cal. 2006) (limiting discovery where party had already received substantial discovery). OpenAI's complaint about the number of documents that Plaintiffs produced ignores over *120* relevant entries on their counsel's privilege log. Most of the documents are privileged because the LOI was sent by Musk's litigation counsel.

The additional discovery that OpenAI seeks threatens serious burdens for Plaintiffs. OpenAI's Rule 30(b)(6) deposition notice to xAI would require Plaintiffs to devote substantial time during the expedited Phase I discovery schedule to preparing a corporate representative to testify about the LOI and other Phase II topics.[2] Meanwhile, OpenAI's three deposition subpoenas to third

---

[2] The Rule 30(b)(6) notice is objectionable for many other reasons as well, including that it seeks testimony on topics this Court has already ruled irrelevant in connection with OpenAI's requests

4

parties who signed the LOI would result in still more distraction during what is already an extremely compressed discovery schedule. Those burdens far outweigh any conceivable relevance. *See Thompson v. Cnty. of Riverside*, No. 5:19-cv-122, 2023 WL 8168859, at *8-9 (C.D. Cal. July 26, 2023) (granting protective order where third-party depositions unfairly burdened opposing party). Enough is enough.

OpenAI's references to earlier rulings ignore the one ruling that matters most—the Court's order deferring the LOI counterclaim to Phase II. Dkt. 228 at 9. The Court deferred those issues to ensure that Phase I would remain focused on a limited set of claims that could be litigated and tried on an expedited basis. OpenAI's sprawling discovery demands improperly undermine that design by trying to bring in through the back door issues that the Court intentionally deferred to Phase II. Even assuming the LOI has some marginal relevance to Phase I issues, OpenAI has already had plenty of discovery on the topic. Still more discovery would elevate those collateral issues into a centerpiece of Phase I, contrary to the Court's order intentionally deferring them to Phase II.

### OpenAI Defendants' Statement

Days after nonparty Meta Platforms strenuously denied that it was "coordinating" with Elon Musk regarding Musk's "bid" to purchase OpenAI, Musk now joins Meta's effort to resist bid-related discovery. Under the guise of that joinder, Musk asks the Court to reconsider its prior rulings and block *all* discovery—from parties and nonparties alike—into Musk's $97.3 billion bid to acquire "all assets" of OpenAI.

Musk's latest attempt to shut down discovery on this subject is legally and factually unsupported. This Court already held that the bid is relevant to Phase I, over Musk's objection that bid discovery belonged in Phase II. Musk advances the same argument again now. It should be rejected again. The OpenAI Defendants, moreover, are not seeking "expansive" and "sprawling" discovery—the relevant requests are targeted, and the relevant events span weeks, not years. Musk and his co-bidders, meanwhile, have not produced "plenty of discovery on the topic." Contrary to Musk's contention that "nearly 1,000" bid-related documents have been produced, the discovery record on that issue is threadbare. Musk has produced *one* text message related to the bid; co-bidder xAI has produced nothing; and the nonparty co-bidders have produced nothing of substance.

Plaintiffs have sought to explain the absence of bid-related documents by representing that their communications were primarily oral. If that is true, then the need for depositions—of Musk, an xAI representative, and other co-bidders—is even more acute. Without that evidence, the OpenAI Defendants will be denied a fair opportunity to present their unclean hands defense at trial, and the Court will not have access to an appropriate record if it is ever confronted with the question whether Musk's attempt to buy OpenAI is "inconsistent with [his] Phase I theories of liability," as the Court has twice acknowledged is a distinct possibility.

---

for production. *See* Dkt. 203 at 1-2 (rejecting requests for production concerning xAI's decisions about whether to open-source its software, its estimates of the resources required to develop AGI, and its formation, all topics on which OpenAI now seeks deposition testimony). Plaintiffs reserve the right to seek relief on these topics in a future submission if not adequately addressed through the meet-and-confer process.

Notably, Musk is the only signatory to the LOI who has raised any objections to this discovery with the Court. And this is now at least his third attempt to excise the bid from the case.[3] One must wonder why Musk has put more work into resisting this discovery than would have been needed to comply with it. Plaintiffs' request for a protective order should be denied.[4]

***Background***. As alleged in the SAC, Musk is pursuing this lawsuit to "ensure OpenAI maintains its namesake mission to develop safe and open AI for the public good." SAC ¶ 9. According to Musk, because OpenAI's assets are held in charitable trust, none of its "property," "net income," or "assets" should "inure . . . to the benefit of *any* private person." *Id.* ¶ 247(c) (emphasis added). In a supposed effort to preserve OpenAI's charitable status, Musk seeks, among other remedies, an injunction barring any purported "conversion" of OpenAI into a for-profit enterprise, and a "constructive trust" over OpenAI's "assets" and "property." *Id.* ¶ 2; *id.* at 89-90.

While this case was pending, and while Musk was simultaneously alleging that he had been promised that OpenAI's assets would remain irrevocably dedicated to the public good, Musk and a group of co-bidders made an unsolicited bid to purchase OpenAI's assets for $97.3 billion. Signatories to Musk's "letter of intent" include some of the most sophisticated investment firms on earth, along with Musk's own competing for-profit AI company, xAI. Musk's counsel, Marc Toberoff, announced the bid to the *Wall Street Journal*, which reported that Musk could "end up with a . . . controlling stake in the new OpenAI" and "xAI . . . could merge with OpenAI" as a result. Toberoff told the *Journal* that "Musk's investor group [was] prepared to match or exceed any bids higher than their own." *See* Jessica Toonkel and Berber Jin, *Elon Musk-Led Group Makes $97.4 Billion Bid for Control of OpenAI*, WSJ (Feb. 10, 2025).

Against this backdrop, after the OpenAI Defendants moved to compel in early July, the Court ordered Musk, xAI, and other Musk affiliates to respond to targeted discovery requests relating to the bid. Dkt. 203 at 2. In so doing, the Court recognized that "Musk's bid may be inconsistent with Plaintiffs' phase 1 theories of liability." *Id.*; *see also id.* at 3 ("efforts by Musk . . . to convert [OpenAI] into a for-profit company are relevant"); Dkt. 121 at 14 n. 10 (the bid "undermine[s] [Musk's] claim of irreparable harm").

On August 12, 2025, the Court denied Plaintiffs' motion to dismiss OpenAI's counterclaims and stayed ultimate resolution of the merits to Phase II. Dkt. 228 at 9. The counterclaims allege that

---

[3] In the last two months alone, Musk refused to produce bid-related discovery (forcing a motion to compel) (Dkt. 199), moved to dismiss OpenAI's counterclaims (Dkt. 166), and moved to strike its affirmative defenses (Dkt. 186) (which rely on allegations concerning the bid in significant part, *see* Dkt. 229 at 22-27, 121-22). The Court then compelled Musk and nonparties to produce discovery related to the bid (Dkt. 203 at 2), denied the motion to dismiss (Dkt. 228 at 4-9), and permitted bid-related affirmative defenses to proceed (*id.* at 13).

[4] At the forthcoming conference, Hueston Hennigan will argue the motion to compel against Meta. To the extent the Court is inclined to hear argument on Plaintiffs' motion for a protective order, co-counsel from Wachtell, Lipton, Rosen & Katz will handle those arguments.

Musk has engaged in a years' long effort to interfere with OpenAI's business through unlawful means, including by recently making a "bid" to purchase OpenAI. The Court's order staying the counterclaims did not address discovery. Through the same order, the Court also granted OpenAI's motion to amend its Phase I answer to assert several affirmative defenses, including an unclean hands defense also premised in part on Musk's bid. *Id.* at 13.

***Argument***. There is no "good cause" to issue a protective order barring further discovery into Musk's bid. *First*, Musk argues that bid-related discovery should cease because the counterclaims have been stayed. But Musk already raised that prospect in July when he last sought to avoid this discovery, arguing that it was inappropriate because the counterclaims would "likely be . . . stayed for Phase Two." Dkt. 199 at 5. The Court rejected that argument, concluding that the bid was independently relevant to Phase I. *See* Dkt. 203 at 2. That remains true today. Moreover, Musk ignores that the bid is also relevant to the OpenAI Defendants' unclean hands defense, which the Court has now found to be adequately pleaded. *See* Dkt. 228 at 13.

*Second*, Musk argues that the "beliefs and conduct of third parties are irrelevant to Mr. Musk's motives and state of mind" in making the bid. That's also wrong. It is implausible that sophisticated investors—all long-time Musk associates—signed the LOI, or even considered doing so, without understanding Musk's and xAI's goals. Co-bidder depositions will also allow OpenAI to explore the veracity of Musk's newfound claim—reflected nowhere in the LOI's text—that the bid was "conditional on OpenAI deciding to proceed with its for-profit conversion against Musk's wishes."

*Third*, Musk distorts the record in suggesting that "nearly 1,000 documents" on the bid have been produced. Musk has produced *one* document relating to the bid. xAI has produced zero. The rest of the bidders have produced a total of approximately 870 documents, nearly all of which are news alerts, unanswered press inquiries, or duplicate copies of the executed LOI. A single bidder alone produced more than *600* news alerts, all apparently included in Musk's "nearly 1,000." Last week, Musk told the OpenAI Defendants that this meager record should be "unsurprising" because the bid discussions were "primarily oral." Now he is telling the Court that this is "plenty" of discovery and that OpenAI should move on. Plaintiffs also invoke their counsel's privilege log, but that log does not include a single document involving Musk or xAI, who themselves have failed to log a single bid-related document on their own log.

*Fourth*, depositions will not "threaten[] serious burdens on Plaintiffs," particularly given the near total absence of a documentary record. xAI is a multi-billion dollar company that sought to orchestrate a nearly $100 billion takeover of a competitor while in active litigation—as the plaintiff—against the target. It can surely make a representative available to answer questions about the bid—only one of the noticed 30(b)(6) topics—without difficulty. As for any other bidders (none of whom have been noticed for deposition to date), Plaintiffs vaguely allude to concerns over "distraction," but do not explain how they will be burdened if any of these depositions proceed. Regardless, any minimal burden would be entirely proportional—without any documents, depositions are the only means available to obtain relevant discovery.[5]

---

[5] Plaintiffs suggest in passing that any protective order should also cover "any other Phase II topic." But they do not identify what these topics are, or point to any specific discovery that they are attempting to resist on this basis, or offer any argument relating to these unidentified topics.