# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| ELON MUSK, et al., | Case No. 4:24-cv-04722-YGR |
| Plaintiffs, | **JOINT LETTER BRIEF** |
| v. | Judge: Hon. Yvonne Gonzalez Rogers |
| SAMUEL ALTMAN, et al., | Magistrate Judge: Hon. Thomas S. Hixson |
| Defendants. | Date Action Filed: August 5, 2024<br>Trial Date: March 30, 2026 |

September 2, 2025

The Honorable Thomas S. Hixson
United States District Court, Northern District of California
450 Golden Gate Avenue
San Francisco, CA 94102

      **Re:**   ***Musk, et al.*** **v.** ***Altman, et al.***, **Case No. 4:24-cv-04722-YGR**

Dear Judge Hixson:

      Pursuant to Your Honor's Discovery Standing Order, the undersigned counsel for the OpenAI Defendants and nonparties Shivon Zilis and Jared Birchall respectfully submit this joint letter addressing the OpenAI Defendants' motion to compel immediate document productions from Zilis and Birchall in response to pending discovery requests, including through a linear review of their texts with each other and with Plaintiff Elon Musk.

      In addition, the OpenAI Defendants seek an order requiring Zilis and Birchall to sit for additional depositions to be questioned about any documents they produce less than seven days before their respective primary depositions. The OpenAI Defendants are seeking this relief from Your Honor because it relates to a discovery matter. The OpenAI Defendants recognize, however, that this relief also concerns the case schedule, and therefore if the Court so directs, the OpenAI Defendants are prepared to promptly refile this joint letter brief to seek the same relief from Judge Gonzalez Rogers.

      The parties attest that they met and conferred in good faith in an effort to resolve this dispute before filing this joint letter.

/s/ Bradley R. Wilson
Bradley R. Wilson (admitted *pro hac vice*)
Nathaniel Cullerton (admitted *pro hac vice*)
WACHTELL, LIPTON, ROSEN & KATZ
51 West 52nd Street
New York, NY 10019
Telephone: (212) 403-1000
Facsimile: (212) 403-2000

*Attorneys for Defendants* Samuel *Altman,
Gregory Brockman, OpenAI, Inc., OpenAI
L.P., OpenAI, L.L.C., OpenAI GP, L.L.C.,
OpenAI OpCo, LLC, OpenAI Global, LLC,
OAI Corporation, LLC, OpenAI Holdings,
LLC, OpenAI Startup Fund Management,
LLC, OpenAI Startup Fund GP I, L.L.C.,
OpenAI Startup Fund I, L.P., OpenAI
Startup Fund SPV GP I, L.L.C., OpenAI
Startup Fund SPV GP II, L.L.C., OpenAI
Startup Fund SPV GP III, L.L.C., OpenAI
Startup Fund SPV GP IV, L.L.C., OpenAI
Startup Fund SPV I, L.P., OpenAI Startup
Fund SPV II, L.P., OpenAI Startup Fund
SPV III, L.P., OpenAI Startup Fund SPV IV,
L.P., Aestas Management Company, LLC,
and Aestas LLC*

/s/ Jaymie Parkkinen
Jaymie Parkkinen, SBN 318394
TOBEROFF & ASSOCIATES, P.C.
23823 Malibu Road, Suite 50-363
Malibu, CA 90265
Telephone: (310) 246-3333
Facsimile: (310) 246-3101

Steven F. Molo (*pro hac vice*)
Robert K. Kry (*pro hac vice*)
Jennifer Schubert (*pro hac vice*)
MOLOLAMKEN LLP
430 Park Avenue
New York, NY  10022
Telephone: (212) 607-8160

*Attorneys for Plaintiffs Elon Musk
and X.AI Corp.*

SIGNATURE ATTESTATION

I hereby attest that the signatories listed above, on whose behalf this document is submitted, concur in the filing's content and have authorized the filing.

/s/ Jordan Eth
Jordan Eth

**OpenAI Defendants' Statement**

Shivon Zilis and Jared Birchall are two of the most important witnesses in this case. Both are close Musk associates with leadership roles at multiple Musk companies; both were centrally involved in key events; and both are represented by Musk's trial counsel, Toberoff & Associates. OpenAI served discovery on Zilis in April and Birchall in June. Yet Zilis has produced none of her Gmail and Birchall has produced nothing at all. Meanwhile, counsel has repeatedly assured OpenAI that the Zilis and Birchall reviews were well underway with productions imminent.

Counsel's representations were untrue. On Friday, August 29, days before Zilis and Birchall are being deposed, and after the written discovery cutoff, the Toberoff firm changed its story. In a late-night email, counsel disclosed that it had only just begun *collecting* critical documents, including *450,000* Birchall text messages and *all* of Zilis's Gmail account, which she used regularly to communicate about OpenAI. Not only are productions of these key documents not imminent, but as of yesterday, most were not even accessible to counsel. Even now, counsel cannot provide a commitment for when these documents will be produced.

This pattern of obfuscation and delay has jeopardized OpenAI's ability to fairly litigate this expedited case. Birchall is scheduled to be deposed on September 10 and Zilis on September 12. Pre-motion letters relating to anticipated summary judgment motions are due in three days. Birchall's and Zilis's unproduced documents likely implicate all of the key issues and witnesses, and they are all the more critical given that Musk has produced almost no texts himself—including zero private text messages with Zilis or Birchall over the entire ten-year period at issue in this case. (OpenAI plans to file a separate joint letter tomorrow addressing Musk's text message production.)

OpenAI has dedicated enormous resources to complying with the current schedule, producing more than 1,400 text messages, including based on linear reviews for key counterparties. There is no excuse for the Musk side, which has access to Musk's vast resources, to not do the same. But a long record of discovery correspondence shows that will not happen without a court order. The Court should require Zilis and Birchall to produce all of their responsive documents within 72 hours. This could be done (in whole or in part) pursuant to a "quick peek" arrangement, as permitted by FRE 502(d), if Zilis and Birchall wish to avail themselves of that option. In all events, the process should include a linear review of Zilis's and Birchall's texts with each other and with Musk. Zilis and Birchall should also be ordered to provide sworn declarations disclosing the timeline of their discovery efforts and to sit for additional depositions about any documents they produce fewer than seven days before their respective primary depositions.

***Background.*** Zilis is a former OpenAI director and a close personal advisor to Musk. She was a conduit between Musk and OpenAI's co-founders on matters central to this case, including discussions about a potential 2017 restructuring that would have given Musk a large equity stake in OpenAI and OpenAI's creation of a for-profit arm in 2019. Birchall is another trusted advisor to Musk, having held senior positions at numerous Musk entities: director of the Musk Foundation, CEO of Neuralink, head of Musk's family office, and CFO of Plaintiff xAI. Birchall also had a central role in the key events here, managing the Musk Foundation's alleged donations to OpenAI and advising on Musk's attempt to transform OpenAI into a for-profit entity under Musk's control.

***OpenAI diligently pursues discovery.*** OpenAI served discovery requests on Zilis on April 7 and a subpoena on Birchall on June 27. Musk's counsel at the Toberoff firm repeatedly assured OpenAI that a review was underway and documents would soon be produced.

<u>Zilis</u>

- Beginning on June 27, OpenAI was assured that the Toberoff firm's "collection efforts include searching Zilis's Gmail account" and "imaging . . . Zilis's mobile phones." Ex. A.

- On July 22, the Toberoff firm represented that it was "***currently reviewing [Zilis's documents] for responsiveness***" and would "***make a production soon.***" Ex. B (emphasis added).

- On August 2, counsel stated that it had "encountered technical difficulties," but that those had been "resolved" and a production would come at "the earliest opportunity." Ex. C.

- On August 15, OpenAI sent counsel a draft joint letter addressing Zilis's discovery failures. In their section sent on August 19, counsel called the motion "premature" and represented that Zilis "anticipates completing her production . . . by Monday [August 25]." Counsel reiterated that any technical issues had been "resolved" and assured OpenAI that it was "presently undertaking a responsiveness review" and "collecting and searching [Zilis's] personal email."

- On Friday evening, August 29, counsel informed OpenAI that Zilis's Gmail had only been collected the day before, and that it had so much data that Google placed it on hold. Ex. D.

<u>Birchall</u>

- On July 23, the Toberoff firm said it was "evaluating whether imaging Mr. Birchall's phone . . . is appropriate" or whether "targeted data collections will suffice." Ex. E.

- On August 1, counsel stated that it had determined that imaging Birchall's phone was "not necessary" and represented that "***Mr. Birchall's data is currently undergoing responsiveness review***" and that it would "***begin making our production soon***." *Id.* (emphasis added).

- OpenAI followed up on August 7 and August 13 regarding review of Birchall's texts, then met and conferred with counsel on August 14, receiving no answers each time. *Id*.

- On August 19, OpenAI sent another draft joint discovery letter, this time addressing Birchall. The Toberoff firm twice refused to provide a responsive section, contending that the letter was unnecessary because Birchall would be making additional productions over the weekend of August 23 that would "address[]" and "resolve[]" the issues. Ex. F.

- On Friday evening, August 29, counsel disclosed that it had only a day earlier finally collected ***450,000*** text messages from Birchall's phone. Ex. D. Counsel said it could not even begin reviewing those texts, however, because they would first need to be reviewed by Tesla. *Id.*

Zilis has produced nothing from her Gmail account and just six texts with Musk and eleven with Birchall (all of which arrived yesterday). Prior to Monday, Zilis had produced 71 *total* documents. Birchall has produced nothing at all from his personal files. Birchall is being deposed on September 10; Zilis on September 12. Counsel agreed to those "firm . . . dates" to satisfy the condition OpenAI imposed before it would agree to adjust the schedule at Musk's request. Ex. G.

***Requested Relief.*** Zilis and Birchall have had months to comply with their subpoenas, and there is no more time to lose. They say that a "court-ordered deadline is not necessary," but their repeated failure to honor commitments—or even provide an honest report on the status of their collections and reviews—says otherwise. Zilis and Birchall should be ordered to produce all of their potentially responsive documents within 72 hours. Given Musk's apparent failure to preserve his own text messages (an issue OpenAI plans to present to the Court tomorrow) this should include a linear review of all of Zilis's and Birchall's texts with Musk and with each other. Zilis and Birchall cite no reason why linear review is not appropriate. Counsel's new representation that Birchall's responsive texts are "relatively few in number," days after disclosing that 450,000 texts had been extracted from his phone, casts serious doubt on the adequacy of the search terms being used and illustrates the need for linear review to ensure all responsive texts are produced.

Zilis and Birchall should also be ordered to swear declarations explaining the steps they took to comply with the subpoenas and when. Those declarations should provide the detail missing from the section below regarding the "technical and logistical challenges" that supposedly explain the multi-month delay in their productions. Finally, Zilis and Birchall should be required to sit for second depositions to be questioned on any documents they produce fewer than seven days prior to their primary depositions. Rescheduling the depositions, as Zilis and Birchall suggest, would reward them for their for discovery lapses and let their counsel off the hook for repeated written misrepresentations. It would also deny OpenAI the benefit of its bargain in agreeing to extend the discovery period to allow Musk, Zilis, and Birchall to complete their document productions—in exchange for OpenAI getting "firm" commitments on dates for those critical depositions.

## Non-Parties Jared Birchall and Shivon Zilis's Statement

Non-Parties Jared Birchall and Shivon Zilis acknowledge that they are important witnesses in the case and that Defendants need sufficient time to review their communications before they are deposed. Many of those communications (Birchall's work emails, Zilis's work emails, and Zilis's texts) have already been produced. For the two remaining repositories (Birchall's texts and Zilis's personal Gmails), counsel are working diligently to produce the communications as soon as possible despite multiple setbacks. A court order is not warranted or necessary to further expedite processes that are already a top priority.

Birchall is a financial advisor to Musk who works for several Musk entities. He has work email accounts at Excession (the Musk family office), the Musk Foundation, and Neuralink. All of those entities are non-parties, although Plaintiffs' counsel represents the first two. Neuralink produced Birchall's emails some time ago. Plaintiffs' counsel have been producing the Excession and Musk Foundation emails over the past few weeks. As of August 28, about 6,200 documents remained for review. Counsel reassigned additional attorneys to the review team and used targeted searches to prioritize documents most likely to be responsive. Counsel completed that process on September 1, producing a total of 3939 pages of emails comprising 485 documents.

Zilis is a former OpenAI director and another advisor to Musk. She used an OpenAI work email address throughout the relevant period, as well as Neuralink, Tesla, and SpaceX addresses. Neuralink, Tesla, and SpaceX produced her emails some time ago, and OpenAI produced emails from her OpenAI account. Zilis also sometimes used her phone to send text messages about work matters. Despite multiple logistical and technical issues, Zilis's texts were extracted from her

phone two weeks ago, and counsel then promptly reviewed and produced them on a rolling basis. That production was completed on September 1, yielding over 800 responsive text threads.

In addition to their multiple work email accounts (and in Zilis's case, her texts), Birchall's and Zilis's communications also appear throughout the documents produced from other custodians, both parties and non-parties. Defendants thus have an ample basis to prepare for Birchall's and Zilis's depositions. Nonetheless, Birchall and Zilis acknowledge that two collection and review processes remain ongoing.

***First***, Birchall sometimes uses his phone to send texts about work matters. After months of logistical challenges, Birchall's texts were extracted from his phone by e-discovery professionals on or around August 27. Unfortunately, more issues ensued. First, Tesla required that the extracted texts be screened for sensitive Tesla data before being released to counsel. Second, there was a technical problem with the extraction that resulted in far more texts being extracted than should have been based on the search terms. Despite those obstacles, Tesla reported earlier today that they expect to provide the first batch of texts, about 200 text strings, later today or tomorrow. Although there will be a second batch later, it is expected to be largely non-responsive, resulting from an overbroad search term.

***Second***, Zilis sometimes uses her personal Gmail account to send emails about work matters. Over several months, counsel made repeated attempts in coordination with Zilis to collect her responsive Gmails. Those attempts were unsuccessful for a variety of technical reasons. On or around August 28, e-discovery professionals attempted to extract Zilis's Gmails, but due to the volume, Google placed a security lock on the account. The emails were then finally extracted on or around August 31. They are not yet on Plaintiffs' review platform. Tesla, as Zilis's former employer, required a similar prescreening process. The hit count is about 15,000 documents.

As soon as the Birchall texts and the Zilis Gmails are available, counsel plan to review them promptly and produce documents on a rolling basis using targeted search terms to prioritize documents more likely to be responsive, as with the Excession/Musk Foundation emails. Counsel will continue to keep OpenAI apprised about the progress. A court order is not necessary to move that process forward because counsel are already working diligently to obtain, review, and produce the documents as soon as possible.

We understand that OpenAI needs sufficient time to review the materials before the Birchall and Zilis depositions. We remain hopeful that the review and production can be completed in time for the scheduled depositions. But if not, the depositions can be rescheduled. The current Birchall and Zilis deposition dates are some of the earliest ones on the calendar.

Counsel acknowledge that there were delays in initially collecting the Birchall texts and Zilis Gmails. These were a product of several factors, including the technical and logistical challenges of collecting texts and emails from third-party witnesses' phones and personal Gmail accounts, as well as the heightened sensitivities around turning over communications that include private personal material and nonresponsive sensitive commercial data relating to Musk's other ventures. The delays were not the result of any inattention or dilatory conduct by counsel or the witnesses. Counsel have been working diligently to collect, review, and produce Birchall's and Zilis's communications. Again, most of their communications have already been produced (three work email accounts for Birchall and three work email accounts plus texts for Zilis). The ongoing work involves only one remaining repository for each of them.

OpenAI's complaints that Birchall and Zilis's counsel misled them about the status of collection efforts are misplaced. OpenAI misinterprets some of the statements as specific commitments regarding the Birchall texts or Zilis Gmails when they were actually intended as general updates about broader collection and review processes. Admittedly, counsel did make good-faith projections about completion timelines that in some instances ultimately proved optimistic, and there was one instance where information was conveyed based on an internal miscommunication within the team. But counsel consistently worked to provide accurate updates throughout the process.

The Court should not order Birchall and Zilis to produce all their texts and Gmails within 72 hours. Birchall and Zilis's counsel are working diligently to process, review, and produce these materials as quickly as possible. For Birchall's texts, the latest information suggests that most of the responsive texts can be produced in the next few days, and that they are relatively few in number. For Zilis's Gmails, the search term hit count is higher than anticipated, but counsel are evaluating how best to proceed with the review process on a priority basis. Imposing a court-ordered deadline is not necessary or helpful to expedite that process.

Nor should the Court order Birchall and Zilis to produce all their texts and Gmails on a "quick peek" basis without any prior review for responsiveness or privilege at all. Quick peek agreements under Federal Rule of Evidence 502(d) are supposed to be *voluntary* agreements between the parties, not court-imposed directives. *See Winfield v. City of New York*, No. 15-cv-05236, 2018 WL 2148435, at *1-9 (S.D.N.Y. May 10, 2018) (denying request to compel quick peek review); *EEOC v. George Washington Univ.*, No. 17-cv-1978, 2020 WL 3489478, at *11 (D.D.C. June 26, 2020) (same); The Sedona Conference, *The Sedona Principles*, 19 Sedona Conf. J. 1, 153-54 (2018) (" 'Quick peek' agreements should not be entered lightly and should have the voluntary consent of the producing party. Courts should not compel or indirectly leverage a party to enter a 'quick peek' agreement."). A quick peek approach would be particularly inappropriate here. Birchall and Zilis both work for other Musk companies, so their communications contain reams of commercially sensitive material that is nonresponsive and irrelevant. Their communications also include many privileged communications (Birchall's in particular). Finally, these particular repositories are *personal* communications media that the witnesses routinely use for private personal purposes. The Court should not lightly order non-parties to hand over personal, commercially sensitive, and/or privileged communications to opposing parties' counsel in litigation with no prior review for responsiveness or privilege at all.

Birchall and Zilis should not be forced to sit for two depositions each. If their texts and Gmails cannot be produced in time, their depositions should be rescheduled. Finally, no useful purpose would be served by requiring Birchall and Zilis to submit sworn declarations regarding their counsel's production efforts. Counsel are already providing status reports on an ongoing basis. Sworn declarations would only distract from the parties' shared goal of reviewing and producing these remaining materials as soon as possible.