UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

| | |
|---|---|
| ELON MUSK et al., <br><br> Plaintiffs, <br><br> v. <br><br> SAMUEL ALTMAN, et al., <br><br> Defendants. | Case No. 4:24-cv-04722-YGR <br><br> **MICROSOFT'S AND PLAINTIFF'S JOINT LETTER BRIEF** <br><br> Judge Yvonne Gonzalez Rogers <br><br> Magistrate Judge Thomas S. Hixson <br><br> **Action Filed: August 5, 2024** <br> **Trial Date: March 30, 2026** |

September 3, 2025

The Honorable Thomas S. Hixson
United States District Court, Northern District of California
San Francisco Courthouse
Courtroom E, 15th Floor
450 Golden Gate Avenue
San Francisco, CA 94102

      **Re:** ***Musk, et al. v. Altman, et al.*, Case No. 4:24-cv-04722-YGR**

Dear Judge Hixson:

      Pursuant to Your Honor's Discovery Standing Order, Defendant Microsoft and Plaintiff Musk respectfully submit this Joint Letter Brief addressing information, including testimony at an upcoming September 8 Microsoft 30(b)(6) deposition, that Microsoft maintains should be protected from disclosure because it is irrelevant and subject to the business strategy privilege. The issues in this Joint Letter Brief are related to but narrower than those raised in the Joint Discovery Letter Brief submitted yesterday by Plaintiff and Defendant OpenAI, *see* Dkt. 239, and the parties suggest that it would be efficient to hear the issues together. The parties attest that they met and conferred in good faith in an effort to resolve this dispute before filing this Letter Brief.

| | |
|---|---|
| DATED: September 3, 2025 | Respectfully submitted, |
| | DECHERT LLP |
| | By:  */s/ Russell P. Cohen* |
| |      Russell P. Cohen (SBN 213105) |
| |      Russ.cohen@dechert.com |
| |      Howard M. Ullman (SBN 206760) |
| |      Howard.ullman@dechert.com |
| |      45 Fremont Street, 26th Floor |
| |      San Francisco, CA 94105 |
| |      Telephone: (415) 262-4500 |
| |      Facsimile: (415) 262-45555 |

Nisha Patel (SBN 281628)
Nisha.patelgupta@dechert.com
DECHERT LLP
633 West 5th Street, Suite 4900
Los Angeles, CA 90071
Telephone: (213) 808-5700
Facsimile: (213) 808-5760

Andrew J. Levander (admitted *pro hac vice*)
Andrew.levander@dechert.com
DECHERT LLP
Three Bryant Park
1095 Avenue of the Americas
New York, NY 10036
Telephone: (212) 698-3500
Facsimile: (212) 698-3599

John (Jay) Jurata, Jr. (admitted *pro hac vice*)
Jay.jurata@dechert.com
DECHERT LLP1900 K Street, N.W.
Washington, DC 20006
Telephone: (202) 261-3300
Facsimile: (202) 261-3333

*Attorneys for Defendants Microsoft Corporation*

*/s/ Jaymie Parkkinen*
Jaymie Parkkinen, SBN 318394
TOBEROFF & ASSOCIATES, P.C.
23823 Malibu Road, Suite 50-363
Malibu, CA 90265
Telephone: (310) 246-3333
Facsimile: (310) 246-3101


Steven F. Molo (*pro hac vice*)
Robert K. Kry (*pro hac vice*)
Jennifer Schubert (*pro hac vice*)
MOLOLAMKEN LLP
430 Park Avenue
New York, NY  10022
Telephone: (212) 607-8160

*Attorneys for Plaintiffs Elon Musk and X.AI Corp.*

## Microsoft's Statement

***Introduction***: Plaintiff's deposition of Microsoft's 30(b)(6) witness is scheduled for September 8. One of the noticed deposition topics is "Microsoft's role in OpenAI's corporate restructuring, entity formation, and conversion planning."[1] Plaintiff has challenged OpenAI's ability to withhold information or redact certain documents, including documents regarding OpenAI's current corporate restructuring strategy, based on the business strategy privilege, *see* Dkt. 239, and now takes a similar position as to the September 8 Microsoft deposition. Plaintiff is taking this position while aware that OpenAI and Microsoft, among others, are actively negotiating these corporate restructuring issues. Microsoft joins OpenAI's arguments on the applicability of the business strategy privilege here, and seeks a narrow protective order to exclude from discovery limited information—whether in the form of deposition testimony or documents—relating to (i) purely internal Microsoft deliberations or communications regarding its negotiating strategy or positions vis-à-vis OpenAI's potential restructuring, and (ii) Microsoft's valuation information underlying those internal analyses that were not shared with OpenAI.

Contrary to Plaintiff's assertion, Microsoft does not seek to limit Plaintiff's ability to inquire into "the steps that OpenAI is taking and plans to take in this latest effort to transform itself into a[n alleged] fully for-profit venture." Nor does it seek to limit discovery into "profits that OpenAI and Microsoft have earned from their [alleged] for-profit reinvention of the company." *See infra* at 4. Instead, Microsoft seeks the above limited protective order because such information is irrelevant and negotiations over a potential OpenAI restructuring, which has not yet resulted in any agreement with OpenAI, are ongoing. Such information is irrelevant to the ongoing dispute and the Phase I claims because it does not establish Microsoft's actual interest in OpenAI, so it does not make more or less likely unjust enrichment, tortious interference, or aiding and abetting alleged fiduciary duty breaches—the claims asserted against Microsoft in Phase I. And requiring disclosure of sensitive, ***internal negotiating information***—which would include internal undisclosed valuations, negotiation strategy, and the like—would be highly prejudicial to Microsoft because it is actively negotiating with OpenAI, who, as a party to this case, would have access to any such discovery. OpenAI is represented by counsel in this case who are members of the same firm that is advising OpenAI in the restructuring negotiations.[2] In the parties' meet-and-confer, Microsoft indicated that it would not move if Plaintiff agreed not to elicit such information in any Microsoft deposition. Plaintiff declined.

---

[1] Microsoft objected to this topic and proposed limiting testimony to "whether and to what extent Microsoft has ***had*** a role in OpenAI's corporate restructuring, entity formation, and conversion planning." (emphasis added). *See* Microsoft Responses and Objections to Plaintiff's 30(b)(6) Deposition Notice, Topic 7. Given the imminence of the deposition, Plaintiff and Microsoft have agreed that if this issue is not resolved before September 8, Microsoft can instruct the witness not to answer questions about the subset of information at issue, and the parties reserve their rights pending the Court's ruling. If the Court denies the requested relief, Microsoft will re-produce a witness on a mutually agreeable date to address those limited issues that were subject to Microsoft's reservation of rights.

[2] OpenAI also raises the concern that Musk's attorney, Mr. Toberoff, was involved in making a hostile bid for OpenAI and that information concerning OpenAI's value could be misused in connection with any continuing or future bid. Microsoft defers to OpenAI regarding such concerns.

- 1 –

If the business negotiations between Microsoft and OpenAI result in a commercial agreement relating to Microsoft's interest in any restructured entity, Microsoft will produce the terms of any such agreement under the protective order entered in this case.

***Background***: Phase 1 of this case arises from a dispute between Plaintiff Musk and the OpenAI Defendants (OpenAI, Altman, and Brockman) regarding: (a) purported commitments the OpenAI Defendants made to Musk; or (b) alleged breaches of fiduciary duties Musk claims the OpenAI Defendants owe to him. Those commitments were supposedly made beginning in 2015, years before Microsoft's investments in OpenAI. The operative Second Amended Complaint names Microsoft in only three remaining Phase 1 counts: Count 4 (breach of quasi-contract/unjust enrichment), Count 5 (tortious interference with contract), and Count 19 (aiding and abetting breach of fiduciary duty).

To succeed on these claims, Plaintiff Musk must establish Microsoft's knowledge of an underlying contract between Musk and OpenAI or breach of a fiduciary duty owed by OpenAI to Musk, and Microsoft's intentional acts to disrupt that alleged contract or to substantially assist a breach of that purported duty. *See* May 1 Order on Motions to Dismiss [Dkt. 163] at 4 (tortious interference) and 6 (aiding and abetting); *see also First Nationwide Savings v. Perry*, 11 Cal. App. 4th 1657, 1663 (1992) (no unjust enrichment when defendant has no notice of restrictions or limitations on a party's ability to act).

***Discovery Requests to Microsoft***: Starting on July 8, Microsoft pressed Plaintiff Musk for a list of 30(b)(6) deposition topics. Plaintiff finally provided a tentative list of 12 topics one month later on August 8. In an August 12 letter preceding an August 13 meet-and-confer, Microsoft noted that forward-looking expectations of benefits from its relationship with OpenAI are out of scope and unduly burdensome. On August 18, Plaintiff noticed Microsoft's 30(b)(6) deposition on largely unchanged topics including Topic 7 ("Microsoft's role in OpenAI's corporate restructuring, entity formation, and conversion planning"). On August 28, Microsoft objected to Topic 7 but agreed to provide testimony "about ***whether and to what extent*** Microsoft has ***had*** a role in OpenAI's corporate restructuring, entity formation, and conversion planning" (emphasis added). On August 29, Plaintiff's counsel stated in an email that Microsoft's responses and objections were "largely agreeable" aside from an unrelated date range issue in connection with a different Topic.

Earlier, on May 8, Plaintiff Musk issued Requests for Production ("RFPs") to Microsoft like those at issue in Plaintiff's/OpenAI Defendants' Joint Letter Brief. Through its RFP responses and objections, as well as subsequent meet-and-confer correspondence in June and early August, Microsoft objected to the production of purely forward-looking information but agreed to produce documents (i) sufficient to identify its actual financial interest in OpenAI, (ii) showing how its interest was acquired and in what form, (iii) consisting of past financial statements regarding its actual stake in any OpenAI entity, and (iv) containing valuation and related information that it had already shared with OpenAI. Microsoft substantially completed its document production by August 4.

Based on Plaintiff's arguments in his discovery dispute with OpenAI, Dkt. 239, on September 1 Microsoft asked Plaintiff's counsel if they intended to inquire into similar undisclosed restructuring-related ongoing negotiation strategies during Microsoft's upcoming 30(b)(6)

deposition, notwithstanding the apparent agreement on scope. Plaintiff's counsel informed Microsoft that they do intend to seek Microsoft's purely internal deliberations, documents, and communications concerning ongoing negotiation strategy with OpenAI about its stake in any restructured entity, including forward-looking valuations relating to such analyses that Microsoft has not shared with OpenAI. Thus, Microsoft raises this issue now given the imminent Microsoft 30(b)(6) deposition.[3]

*Argument*: Microsoft's internal deliberations and forward-looking analyses about any potential OpenAI restructuring are irrelevant to Plaintiff Musk's Phase 1 claims. (*See also* OpenAI's portion of the Plaintiff/OpenAI Joint Letter Brief explaining why similar OpenAI information is irrelevant or at most marginally relevant to the claims against OpenAI.) What matters is what Microsoft *actually knew* about any purported OpenAI commitments or obligations to Musk, what Microsoft *actually did* that supposedly breached or assisted any breach, and what if any benefit Microsoft *actually received*. And so, Microsoft has agreed to produce a witness to testify about its role to date, if any, in OpenAI's restructuring, entity formation, and restructuring planning. Microsoft has also produced its agreements with OpenAI, documents showing its current financial interest in OpenAI, and financial statements regarding its actual stake in any OpenAI entity. Microsoft also will produce any restructuring term sheet or definitive agreement with OpenAI if one is reached, subject to the protective order in this case.

Microsoft's internal negotiation strategy, stake assessments, and forward-looking, unshared valuations about a potential OpenAI restructuring, however, are irrelevant to the Phase 1 claims against Microsoft, including Musk's claim for quasi-contract/unjust enrichment. At this stage, because there has been no restructuring, Microsoft's future stake remains undetermined. Regardless of Plaintiff's allegations of ongoing breaches or wrongs, only actions that Microsoft or OpenAI actually took could matter; unexecuted plans or strategies do not. A plaintiff cannot be awarded restitution as to activity that has not yet occurred, or a benefit not yet conferred.[4] Nor is the limited information sought to be protected relevant to whether Plaintiff is entitled to a permanent injunction—because the restructuring hasn't happened yet. *Compare* August 28 Order [Dkt. 237] at 2 ("The LOI [Letter of Intent] and the facts surrounding the LOI do not seem to have anything to do with the obligations OpenAI did or did not take on with respect to the conversion and contract-based claims, nor with whether OpenAI did or did not live up to those alleged obligations.") (barring further discovery concerning the LOI in Phase 1). Just as the Court determined that the LOI is unrelated to the Phase 1 claims against OpenAI, Microsoft's internal

---

[3] Given Plaintiff's counsel's email that Plaintiff was largely satisfied with Microsoft's 30(b)(6) responses, Plaintiff has waived any right to compel deposition testimony about the subcategory of documents at issue. And given that (i) Plaintiff Musk and Microsoft had two meet-and-confers in June and August about discovery issues, including those relating to this Letter Brief, (ii) Plaintiff Musk did not move to compel further production from Microsoft, and (iii) depositions, including of Microsoft witnesses, will begin in less than a week and must be concluded by October 1, it is too late to entertain any argument by Plaintiff about the scope of Microsoft's production.

[4] Even Plaintiffs' own case, *American Master Lease LLC v. Idanta Partners, Ltd.*, 225 Cal. App. 4th 1451 (2014), merely recognized that a defendant can be ordered to disgorge money actually "obtained through an unfair business practice." *Id*. at 1482-83. Obviously, Microsoft has not actually obtained anything through negotiations with OpenAI about a *potential* restructuring.

negotiation strategy and valuations of a potential OpenAI restructuring are entirely disconnected from the Phase 1 claims against Microsoft.

Moreover, even if Microsoft's purely internal deliberations about the potential OpenAI restructuring and its value were relevant—and they are not—requiring Microsoft to provide testimony or information about such internal deliberations would be highly prejudicial. As noted above, Microsoft is actively negotiating with OpenAI about a potential restructuring. Requiring disclosure of such sensitive, internal negotiating information would likely derail the negotiation itself. The business strategy privilege shields exactly this type of material. *See* OpenAI's portion of its Joint Letter Brief, which Microsoft incorporates by reference here; *see also Matter of Heizer Corp.,* 1987 WL 19560 (Del. Ch. Nov. 9, 1987) at *3 (applying privilege to protect documents relating to ongoing negotiations over disposition of trust assets; "In the corporate context, this Court has consistently recognized the threat that disclosure of ongoing negotiations with third parties will undermine the corporation's ability to successfully conclude those negotiations.").

### Plaintiffs' Statement

Microsoft barely mentions the business strategy doctrine that forms the centerpiece of OpenAI's opposition to Plaintiffs' letter motion. For good reason: That doctrine does not apply in a case like this where the defendant company has **already rejected** the plaintiff's proposal. *See BNS Inc. v. Koppers Co.*, 683 F. Supp. 454, 455-58 (D. Del. 1988) (protection expires "if, and when, the . . . board formally rejects" the plaintiff's proposal); *Allergan, Inc. v. Valeant Pharms. Int'l, Inc.*, No. 14-1214, 2014 WL 12573358, at *1-2 (C.D. Cal. Sept. 22, 2014) (similar). That Microsoft may still be negotiating with OpenAI is not a reason to withhold relevant discovery **from Plaintiffs**. It does not trigger the business strategy doctrine.

Microsoft argues that its negotiations and valuations in its current round of talks with OpenAI are irrelevant. But that plainly is not the case. Plaintiffs' central claim in this litigation is that OpenAI breached its contractual and charitable trust obligations by repeatedly seeking to transform OpenAI into an ever more commercial for-profit enterprise. Dkt. 170. OpenAI's latest round of restructuring talks with Microsoft is the most recent and most egregious example of those breaches. Microsoft's internal documents concerning the negotiations are directly relevant because they will reflect and evidence the steps that OpenAI is taking and plans to take in this latest effort to transform itself into a fully for-profit venture. Those documents evidence both the fact of the breach as well as OpenAI's calculated plans to breach its obligations.

Beyond that, one of the remedies that Plaintiffs seek is the disgorgement of wrongful profits that OpenAI and Microsoft have earned from their for-profit reinvention of the company, including Musk's share of their unrealized profits in the form of increases in OpenAI's value. Dkt. 170. Microsoft's valuations of OpenAI and its valuations of Microsoft's stake in OpenAI are relevant to that remedy because they are key ingredients to measuring those wrongful profits. Finally, Plaintiffs also seek a permanent injunction prohibiting the transaction that Microsoft and OpenAI are currently negotiating over. *Id.* It is self-evident that Microsoft's internal documents concerning the very transaction that Plaintiffs seek to enjoin are highly relevant to that claim for relief.

Microsoft's assertion that requiring it to disclose this information would be prejudicial to its negotiations with OpenAI ignores the protective order. That order expressly allows parties to designate information "Highly Confidential," restricting access to their outside litigation counsel. Dkt. 171 §§ 2.7, 7.3. Microsoft has not been shy about invoking that designation in the past, applying it to vast swaths of its productions. Microsoft complains that some of OpenAI's litigation counsel work for the same firm as some of its restructuring counsel. But the proper remedy for that issue is to modify the protective order to prohibit OpenAI from sharing Highly Confidential documents with those restructuring attorneys – not to punish Plaintiffs for OpenAI's law firm retention decisions by denying Plaintiffs access to relevant discovery. Microsoft fails to show that the protective order is insufficient to address its concerns. *See Cincinnati Bell Cellular Sys. Co. v. Ameritech Mobile Phone Servs. of Cincinnati, Inc.*, No. Civ. A. 13389, 1995 WL 347799, at *3 (Del. Ch. May 17, 1995) ("'[A]ttorneys' eyes only' restriction . . . will provide [party] with sufficient protections . . . ."); *Computervision Corp. v. Prime Computer, Inc.*, No. Civ. A. 9513, 1988 WL 909326, at *1 (Del. Ch. Jan. 26, 1988) (similar).

Microsoft's suggestion that Plaintiffs waived this issue in connection with Microsoft's objections to the deposition topics is meritless. Plaintiffs' Topic 7 expressly sought testimony about "Microsoft's role in OpenAI's corporate restructuring, entity formation, and conversion planning." Microsoft never told Plaintiffs that it was refusing to provide testimony about the current round of restructuring negotiations that have been going on for over a year. Microsoft claims it objected by agreeing to provide testimony "about whether and to what extent Microsoft has *had* a role in OpenAI's corporate restructuring, entity formation, and conversion planning" (emphasis added) – as if that single elliptical use of the past tense word "had" should have alerted Plaintiffs that Microsoft was putting off limits the entire past year of its restructuring negotiations. That oblique wording choice was far too vague to convey Microsoft's current position. To the extent there was any doubt, when Microsoft brought up this waiver argument during the meet and confer call, Plaintiffs made clear that they did not understand that Microsoft's fleeting use of the word "had" was intended to exclude all testimony about Microsoft's recent restructuring negotiations over the past year, and that Plaintiffs never intended to waive their request for that testimony. That clarification should have resolved any doubt.

Microsoft seeks to withhold highly relevant evidence based on unsupported claims of prejudice that ignore the protective order. Unlike OpenAI, Microsoft barely even mentions any privilege or immunity for withholding the evidence. Microsoft's relevance and prejudice arguments are unavailing. Its corporate representative should answer questions on this topic.

**ATTESTATION**

Pursuant to Civil Local Rule 5.1 regarding signatures, I attest that concurrence in the filing of this document has been obtained from the other signatories.

Dated: September 3, 2025                                          By: /s/ *Russell P. Cohen*