UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| ELON MUSK, et al., | Case No. 4:24-cv-04722-YGR |
| Plaintiffs, | **JOINT LETTER BRIEF** |
| v. | Judge:  Hon. Yvonne Gonzalez Rogers |
| SAMUEL ALTMAN, et al., | Magistrate Judge:  Hon. Thomas S. Hixson |
| Defendants. | Date Action Filed: August 5, 2024<br>Trial Date: March 30, 2026 |

September 3, 2025

The Honorable Thomas S. Hixson
United States District Court, Northern District of California
450 Golden Gate Avenue
San Francisco, CA 94102

  **Re: *Musk, et al.* v. *Altman, et al.*, Case No. 4:24-cv-04722-YGR**

Dear Judge Hixson:

  Pursuant to Your Honor's Discovery Standing Order, the undersigned counsel for the OpenAI Defendants and Plaintiff Elon Musk respectfully submit this joint letter addressing Musk's production of text messages in response to the OpenAI Defendants' discovery requests. The parties attest that they met and conferred in good faith in an effort to resolve this dispute before filing this joint letter.

### ATTESTATION

  Pursuant to Civil Local Rule 5.1 regarding signatures, I attest that concurrence in the filing of this document has been obtained from the other signatories.

Dated: September 3, 2025            */s/ Jordan Eth*
                         Jordan Eth

<div style="column-count:2">

*/s/ Bradley R. Wilson*
Bradley R. Wilson (admitted *pro hac vice*)
Nathaniel Cullerton (admitted *pro hac vice*)
WACHTELL, LIPTON, ROSEN & KATZ
51 West 52nd Street
New York, NY 10019
Telephone: (212) 403-1000
Facsimile: (212) 403-2000

*Attorneys for Defendants Samuel Altman, Gregory Brockman, OpenAI, Inc., OpenAI L.P., OpenAI, L.L.C., OpenAI GP, L.L.C., OpenAI OpCo, LLC, OpenAI Global, LLC, OAI Corporation, LLC, OpenAI Holdings, LLC, OpenAI Startup Fund Management, LLC, OpenAI Startup Fund GP I, L.L.C., OpenAI Startup Fund I, L.P., OpenAI Startup Fund SPV GP I, L.L.C., OpenAI Startup Fund SPV GP II, L.L.C., OpenAI Startup Fund SPV GP III, L.L.C., OpenAI Startup Fund SPV GP IV, L.L.C., OpenAI Startup Fund SPV I, L.P., OpenAI Startup Fund SPV II, L.P., OpenAI Startup Fund SPV III, L.P., OpenAI Startup Fund SPV IV, L.P., Aestas Management Company, LLC, and Aestas LLC*

*/s/ Jaymie Parkkinen*
Jaymie Parkkinen, SBN 318394

TOBEROFF & ASSOCIATES, P.C.
23823 Malibu Road, Suite 50-363
Malibu, CA 90265
Telephone: (310) 246-3333
Facsimile: (310) 246-3101

Steven F. Molo (*pro hac vice*)
Robert K. Kry (*pro hac vice*)
Jennifer Schubert (*pro hac vice*)
MOLOLAMKEN LLP
430 Park Avenue
New York, NY 10022
Telephone: (212) 607-8160

*Attorneys for Plaintiffs Elon Musk and X.AI Corp.*

</div>

### OpenAI Defendants' Statement

Elon Musk is a prolific user of texts and other messages. Real-time messages showing what Musk was being told about OpenAI, and what he was saying to others, would be critical to resolving Musk's claims for fraud, breach of implied contract, and breach of charitable trust. But Musk's production of text messages from a *ten-year* period is improbably paltry. Excluding messages exchanged with Sam Altman, Musk has produced *37 texts in total*, and zero texts with anyone in his inner circle. Most notably, Musk has produced no texts with either Shivon Zilis or Jared Birchall. After Musk, these are the two most important witnesses on Plaintiffs' side of the case, and they have also produced very few texts. Zilis has produced just six with Musk and eleven with Birchall (all arrived Monday), and Birchall has produced no texts at all.

Musk claims all his texts from the key period are gone, but his counsel refuses to answer questions about that claim. After dodging OpenAI's inquiries for months, on August 19, the Toberoff firm finally disclosed that Musk had *no* text messages pre-dating 2020, supposedly because in that year Musk "activated cloud storage." That explanation makes no sense. Cloud storage is a retention tool, and activating it should have *preserved* Musk's texts from prior years, not destroyed them. Nor could Musk have allowed his text messages to be deleted in 2020 without violating retention obligations in ongoing legal proceedings. Among those was a derivative lawsuit filed against Musk by Tesla shareholders in 2018 that is still pending in the Delaware state courts. But Musk's counsel has refused to answer reasonable follow-up questions regarding Musk's texts or provide information about Musk's efforts to recover them. When OpenAI suggested that counsel ask Musk's attorneys in other cases whether they have phone images or other stored data that might contain the missing texts, the Toberoff firm refused, claiming "work product," and stated that Musk's team would "not spend further time" trying to address this massive problem.

Counsel has also rebuffed OpenAI's questions about the inexplicable gaps in Musk's production of *post*-2020 text messages. Given what he agreed to produce, it is not possible that Musk exchanged no responsive texts with Zilis or Birchall over the past five years: Either Musk deleted those messages too, or there is a problem with the collection or review protocols. But Musk has declined to provide any information to help OpenAI understand what is going on, including by refusing to disclose whether Musk has *any* retained text messages with Zilis or Birchall.

Musk brought this lawsuit, and he should be held to his discovery obligations. The Court should order Musk to: (1) provide a sworn declaration answering the questions previously posed to counsel regarding the circumstances through which Musk lost all his pre-2020 texts; (2) request from other law firms that have represented Musk or his companies copies of any phone images or other stored data that might contain pre-2020 Musk texts; and (3) have his counsel conduct linear reviews of all of Musk's retained texts with Zilis, Birchall, and Sam Teller (another key witness).

***Background.*** Musk texts a lot, and he has a history of withholding his texts in discovery. During the Twitter merger litigation, Musk publicly filed a document[1] showing hundreds of responsive text messages from a span of only a few months. Musk's April 2022 texts alone span

---

[1] https://s3.documentcloud.org/documents/23108357/redacted-version-of-exhibits-a-j-to-letter-to-the-honorable-kathaleen-st-j-mccormick-from-edward-b.pdf

25 pages and contain many texts with Birchall and other people relevant to this case. Yet Musk initially failed to produce any texts in that suit. He only trickled them out when the people he was texting revealed their existence—and after Twitter sought sanctions. *Twitter, Inc.* v. *Elon Musk*, C.A. No. 2022-0613-KSJM (Sept. 7, 2022 Ltr. Order) ("glaring deficiencies" in text production).

OpenAI has been pursuing Musk's texts for months. On June 14, it sent a letter asking whether Musk had "preserved all of his potentially responsive electronic communications." Ex. A. Counsel never responded. Musk produced a small number of texts on July 13, and five days later, OpenAI alerted counsel to a major gap in that production. Texts produced by others, including OpenAI, made clear that Musk sent and received responsive messages using at least three different phone numbers. Musk, however, had only made a sparse production of texts from one of those numbers. Ex. B. Musk's counsel responded more than two weeks later, writing on August 2 that they were "still working to determine whether the messages associated with those [additional] phone numbers remain in Mr. Musk's possession." Ex. C. Counsel provided no further update.

On August 15, OpenAI sent a joint discovery letter. In its responsive section, sent six days before the close of written discovery, the Toberoff firm finally revealed that Musk "does not possess responsive texts dated prior to 2020." This was supposedly because Musk "activated a cloud storage feature" that "wiped and disposed of" his pre-2020 texts. Rather than rushing into court, and accepting counsel's assurance that more Musk texts would be produced soon, OpenAI agreed to Musk's suggestion to hold the discovery letter in abeyance temporarily. Ex. D. OpenAI hoped it could learn more about the non-preservation of this critical evidence and explore whether it might be retrievable from other sources. But Musk has not cooperated with that effort.

On August 20, OpenAI asked counsel to "advise when you first learned that Musk had relevant messages that were not preserved and explain what steps you have taken to investigate whether any data . . . might still exist." *Id.* Counsel responded on August 26, stating: "[W]e consulted with our client" and "[w]e are unaware of any repositories that would likely contain messages from before 2020." Ex. E. The next day, OpenAI sent a letter with twelve questions about "(i) when and how Mr. Musk's text messages from earlier time periods were deleted; and (ii) your efforts to retrieve Mr. Musk's text messages from other potential data repositories." Ex. F. Counsel refused to answer, saying they would "not spend further time on it." Ex. G.

Meanwhile, Musk's existing text production is glaringly deficient. Musk's discovery obligations span a 10-year period and cover several broad topics, including OpenAI and Altman. Yet Musk has produced no texts of substance that OpenAI did not already have. He has produced zero texts with Zilis, zero with Birchall, and zero with Sam Teller (Musk's former chief of staff).

***Requested Relief.*** OpenAI has asked reasonable questions about the circumstances through which Musk apparently lost his pre-2020 text messages. Ex. F. Because OpenAI has "raised legitimate concerns" about Musk's preservation efforts, the Court can and should compel Musk to provide a "detailed declaration" addressing those questions. *Vieste, LLC* v. *Hill Redwood Development*, 2011 WL 2198257, at *1 (N.D. Cal. June 6, 2011). What few answers Musk's counsel has provided do not add up, and OpenAI has been blocked from learning the details of Musk's apparent destruction of evidence, including whether it was improper. This is not aimless

"discovery on discovery." OpenAI has identified a "specific deficiency" in Musk's production, *Uschold* v. *Carriage Servs.*, 2019 WL 8298261, at *4 (N.D. Cal. Jan. 22, 2019), and the missing evidence is as important as it gets. Nor is OpenAI acting at the "eleventh hour": For four months, counsel concealed the fact that Musk supposedly deleted years' worth of texts, and he should not be rewarded for counsel's efforts to run out the clock, especially with trial still months away.

Musk's argument that he had no duty to preserve texts about OpenAI misses the point. Because Musk was required to preserve texts on other subjects (a fact he does not deny), his story that *all* pre-2020 phones and texts were "wiped and disposed of" raises major questions. When a phone is imaged for collection, an image is taken of the entire phone—not of specific messages—so if Musk kept some pre-2020 messages, all messages from that period should have been preserved. In any event, this is not a sanctions motion. OpenAI simply asks that Musk be ordered to take reasonable steps to recover his pre-2020 texts, including by asking his or his companies' prior law firms for phone images or data that might contain those texts. That data is within Musk's possession, custody, and control, *Lifeguard Licensing Corp.* v. *Kozak*, 2016 WL 3144049, at *5 (S.D.N.Y. May 23, 2016), and there is no need to "parse privilege" or "overcome" court orders. If the data exists, it belongs to Musk, and he need only ask that it be returned to him for review.

As for Musk's post-2020 texts, it is implausible that he didn't exchange any responsive messages with his closest confidants, including Zilis and Birchall, over the past five years. Either those messages were deleted too, or the search protocol employed by Musk's counsel is inadequate. Musk's counsel should be ordered to disclose how many texts Musk has preserved with Zilis, Birchall, and Teller, and over what time period, and conduct a linear review of any retained messages with each of those individuals to identify responsive communications.

## Plaintiff's Statement

OpenAI Defendants ("OpenAI") seek the extraordinary and disfavored remedy of "discovery-on-discovery"—after the close of written fact discovery and notwithstanding Mr. Musk's substantial productions. That request ignores both the governing legal standard and the record, which confirms that Mr. Musk has complied fully with every Rule 26 and Court-ordered discovery obligation. OpenAI does not dispute that Mr. Musk and his affiliated third-party companies, as well as non-party Shivon Zilis, have produced thousands of relevant documents dating back to 2015. Instead, OpenAI fixates on the fact that Mr. Musk's own responsive text messages date back to 2020. But as Plaintiff has explained, the reason for that date range is that 2020 is the year Mr. Musk activated cloud storage on his phone. As a result, text messages from after 2020 were preserved in cloud storage, whereas text messages from before that date were lost whenever Mr. Musk changed phones. OpenAI ignores that obvious explanation for the dates of the texts Mr. Musk produced, and it shows no other justification for its extraordinary and belated demands.

**Background.** On July 23, 2025, Mr. Musk's counsel explained to OpenAI's counsel the methodology used to search Mr. Musk's phone, confirming that those searches dated back to January 1, 2015 and that responsive documents were produced. At that time, Mr. Musk noted that the limited number of post-2020 text messages was consistent with his disengagement from

OpenAI in fall 2020. While OpenAI now attempts to blame Mr. Musk for its tardy motion, Mr. Musk has been transparent from the beginning that he does not have texts prior to 2020.

When OpenAI inquired about texts from Mr. Musk's previous phone numbers (area codes 310 and 956), his counsel immediately began investigating the issue and committed to producing any responsive materials, if located. Following consultation with Mr. Musk's IT personnel responsible for managing his personal devices, Plaintiff has determined that no other devices are likely to contain responsive data.[2] OpenAI subsequently served a burdensome discovery-on-discovery letter on August 27—after the close of written fact discovery—containing numerous demands without any supporting legal authority. Plaintiff responded on August 29, citing legal authority and explaining that such discovery-on-discovery was not appropriate under these circumstances. Plaintiff requested any legal authority for OpenAI's position. OpenAI did not respond. This letter-motion followed.

*Argument.* Courts have repeatedly held that discovery into an opposing party's discovery processes—"discovery-on-discovery"—is disfavored. *See, e.g.*, *Uschold v. Carriage Servs., Inc.*, No. 17-cv-4424, 2019 WL 8298261, at *4 (N.D. Cal. Jan. 22, 2019) ("Generally, 'discovery on discovery' is disfavored and, to be both relevant and proportional to the needs of the case, a party seeking it 'must show a specific deficiency in the other party's production.'"); *Jensen v. BMW of N. Am., LLC*, 328 F.R.D. 557, 566 (S.D. Cal. 2019) ("Essentially, Plaintiff seeks discovery on discovery itself with these requests. 'Discovery into another party's discovery process is disfavored.'"); *Freedman v. Weatherford Int'l Ltd.*, No. 12-cv-2121, 2014 WL 4547039, at *2 (S.D.N.Y. Sept. 12, 2014) ("[R]equests for such 'meta-discovery' should be closely scrutinized in light of the danger of extending the already costly and time-consuming discovery process ad infinitum."). OpenAI shows no justification for its extraordinary requests here.

OpenAI makes much of the fact that Mr. Musk has produced no texts dated prior to 2020. But there is a simple explanation for this. In 2020, Mr. Musk activated the cloud storage feature for his cellular data, which preserved messages from that point forward. Since then, Mr. Musk has acquired new phones upon release of the latest models; old devices, in accordance with standard security protocols for retired equipment, have been wiped and disposed of. Mr. Musk therefore does not possess responsive texts dated prior to 2020. OpenAI's recycled Twitter exhibits (detailing messages from 2022 concerning a 2022 lawsuit) do not suggest, far less prove, otherwise.

Mr. Musk was under no obligation to preserve documents for this current litigation back in 2020. A preservation duty arises once a party reasonably anticipates litigation. *See In re Napster, Inc., Copyright Litig.*, 462 F. Supp. 2d 1060, 1068 (N.D. Cal. 2006). The duty attaches only once "a potential claim [is] identified or future litigation [becomes] probable." *Realnetworks, Inc. v. DVD Copy Control Ass'n, Inc.*, 264 F.R.D. 517, 526 (N.D. Cal. 2009). OpenAI points to no

---

[2] OpenAI mischaracterizes counsel's statement regarding Mr. Musk's document production. Counsel did not claim that "more Musk texts would be produced soon," but rather specified that Mr. Musk would complete his production by Monday, August 25: "Mr. Musk, in good faith, anticipates completing [his] production, or as nearly so as has proven technically feasible, by Monday". Mr. Musk produced an additional batch of responsive emails on that date.

evidence that Mr. Musk anticipated this current litigation back in 2020. That Mr. Musk has changed his phone number or purchased new phones over the past decade thus does not constitute a discovery violation. Mr. Musk has conducted a diligent search of his cellular data for responsive communications using OpenAI's requested search terms. He maintains no other personal devices to be searched.

Nor is the limited number of post-2020 text messages at all surprising. As this Court and OpenAI are aware, the relevant events concerning OpenAI's founding primarily occurred between 2015 and 2020. Dkt. 226 at 1-2. It should not be surprising that there are limited responsive text messages in Plaintiff's possession. OpenAI criticizes Mr. Musk for not producing messages with certain individuals, such as Sam Teller, despite the fact that Mr. Teller ceased working for Mr. Musk in 2019, before Mr. Musk's cloud storage was activated in 2020.

OpenAI urges that Mr. Musk has been involved in other litigation matters and may have been under preservation duties in connection with them. However, OpenAI makes no showing whatsoever that any of those unrelated legal proceedings, such as the Tesla derivative suit, have any factual overlap with the present case. Absent such overlap, Mr. Musk's involvement in prior litigation is irrelevant and cannot support the discovery-on-discovery OpenAI seeks. *See Oracle Am., Inc. v. Hewlett Packard Enter. Co.*, 328 F.R.D. 543, 549 (N.D. Cal. 2018) (holding that duty to preserve evidence for current litigation did not arise from role in earlier litigation before a different judge in a different jurisdiction, even though documents preserved for earlier litigation covered a similar time period and involved arguably related issues).

Even if there were some factual overlap, OpenAI's eleventh-hour request would impose extraordinary and disproportionate burdens. It would require Mr. Musk to canvass more than a dozen prior counsel, overcome numerous protective orders restricting disclosure of information from other cases, image multiple generations of obsolete devices, and parse privileged files—an exercise that is neither proportional nor feasible given the March 30, 2026 trial date and depositions commencing next week. OpenAI does not contest that Mr. Musk and affiliated third parties have already produced thousands of responsive emails spanning 2015 to 2020 as well as text messages from Ms. Zilis. Mr. Birchall's text messages are also expected imminently. Dkt. 240. OpenAI has failed to demonstrate that any of Mr. Musk's pre-2020 text messages—if such data even exists—would yield unique information beyond what has already been produced by the parties. OpenAI's out-of-circuit authority for the proposition that prior litigation materials are in Mr. Musk's possession, custody, or control, *Lifeguard Licensing Corp. v. Kozak*, 2016 WL 3144049, at *5 (S.D.N.Y. May 23, 2016), does not render OpenAI's request proportional or timely.

OpenAI's untimely, disproportionate fishing expedition seeks to manufacture discovery violations without demonstrating that additional, unique evidence exists or would actually advance the case. OpenAI has failed to raise any legitimate concerns about Mr. Musk's preservation efforts. Its references to unrelated prior cases involving different subject matters does not fill that gap. OpenAI's motion to compel should be denied.