

**Dechert LLP**
45 Fremont Street
Floor 26
San Francisco, CA 94105
+1 415 262 4500 Main
+1 415 262 4555 Fax

**Russell Cohen**

Russ.Cohen@dechert.com
+1 415 262 4506 Direct
+1 415 262 4555 Fax

September 5, 2025

**Via ECF**

The Honorable Yvonne Gonzalez Rogers
United States District Court for the Northern District of California

*Re: Elon Musk, et al. v. Samuel Altman, et al.*, Case No. 4:24-cv-04722-YGR

Dear Judge Gonzalez Rogers:

Defendant Microsoft Corporation respectfully submits this Pre-Filing Summary Judgment Conference Letter in connection with the September 17, 2025 Pre-Filing Conference.

This case arises from a dispute between Plaintiff Musk and the OpenAI Defendants regarding purported: (a) commitments the OpenAI Defendants made to Musk; or (b) breaches of fiduciary duties owed by the OpenAI Defendants to Musk. Those commitments were supposedly made beginning in 2015, which was years before Microsoft's investments in OpenAI. The Second Amended Complaint ("SAC") names Microsoft in three Phase 1 counts: Count 4 (breach of quasi-contract/unjust enrichment), Count 5 (tortious interference with contract), and Count 19 (aiding and abetting breach of fiduciary duty). Musk was required to elect between his contractual theories (*e.g.*, Count 2) and his quasi-contract/unjust enrichment claim. *See* Order on MTD [Dkt. 163] at 4 n.3; *see also* April 4, 2025 CMC Tr. at 30. Since Musk has refused to make that election, this letter addresses all three claims.

Summary judgment is appropriate on the claims against Microsoft because there is no evidence that Microsoft (1) knew of any agreement between the OpenAI Defendants and Musk, (2) intended its conduct to interfere with any such agreement, or (3) knew of any breach of fiduciary duties allegedly owed by the OpenAI Defendants to Musk. Knowledge is an essential element of each of these claims. Holding commercial partners liable without notice of restrictions on a non-profit's ability to conduct business—in effect, imposing fiduciary-type duties on a for-profit partner—would have a chilling effect on such collaborations, deterring innovation. Microsoft's lack of knowledge as a third party as to the alleged agreement or the alleged fiduciary duty breach, and its lack of intent to interfere with any purported Musk-OpenAI contract, provides Microsoft a separate basis for summary judgment that will not be briefed by the OpenAI Defendants and therefore warrants a separate Microsoft motion.[1]

[1] Musk cannot establish an underlying agreement with the OpenAI Defendants, duty owed by them, breach by them, standing, or that such claims are timely, so all defendants are entitled to summary judgment on that basis. To avoid duplication, Microsoft will not separately brief but will incorporate the OpenAI Defendants' motion on those points.





## I. Legal Standard

Microsoft would base its motion on the absence of evidence showing that Microsoft had either knowledge of any alleged OpenAI obligations to Musk, or intent to interfere with or assist breaches of such obligations. *See* Fed. R. Civ. P. 56(c)(1)(B); *Rosenthal & Rosenthal of Cal., Inc. v. Hilco Trading, LLC*, 2020 WL 12948055, at *5 (C.D. Cal. Dec. 29, 2020), *aff'd*, 2022 WL 18906 (9th Cir. Jan. 3, 2022) (evidence that merely suggests the possibility of actual knowledge is insufficient to survive summary judgment, especially when there is countervailing evidence).

## II. Discussion

### a. Count 5: Tortious Interference with Contract

A third party cannot be tortiously liable for interfering with a contract unless that party knew of the contract. *See Winchester Mystery House, LLC v. Glob. Asylum, Inc.*, 210 Cal. App. 4th 579, 596 (2012); *Davis v. Nadrich*, 174 Cal. App. 4th 1, 10–11 (2009), *as modified* (May 21, 2009) (affirming summary judgment when defendant was not "sufficiently aware of the details of the [] contract to form an intent to harm it"); *see also* MTD Order at 4 (applying California law to Count 5). A defendant must also intend the disruption; that the defendant should have known its conduct would constitute interference is insufficient. *See Rosenthal*, 2020 WL 12948055 at *5.

Here, the Court has already determined there was no express contract. *See* MTD Order at 2. That leaves as the predicate for Count 5 only the implied-in-fact contract claim (Count 2). This claim posits the existence of an agreement through a series of alleged communications that did not involve Microsoft and predate Microsoft's 2019 partnership with OpenAI. Contrary to the allegations in the SAC, the evidence shows that Microsoft's pre-investment due diligence did not uncover any purported commitments that the OpenAI Defendants allegedly made to Musk. On the contrary, OpenAI represented to Microsoft that the non-profit board approved Microsoft's investment. That is unsurprising given Musk never claimed that OpenAI made any commitments to him that would limit such an investment until he launched x.AI, a competitor to OpenAI, and brought this lawsuit five years after Microsoft's initial involvement. Further, it also is undisputed that the OpenAI board approved the OpenAI-Microsoft partnership terms (as did Zilis when on the board in 2021 and 2023). Microsoft was entitled to rely on these commercial counterparty representations and actions. There is also no evidence that Microsoft intended that its conduct would interfere with any contract with Musk.

### b. Count 19: Aiding and Abetting Breach of Fiduciary Duty

Under California (and Delaware) law, a defendant must have "actual knowledge of the specific primary wrong the defendant substantially assisted." *AngioScore, Inc. v. TriReme Med., LLC*, 70 F. Supp. 3d 951, 957 (N.D. Cal. 2014) (Gonzalez Rogers, J.) (cit. omit.). "[T]he requirement of *knowing* participation means plaintiff must plead that the defendant had actual knowledge that the acts of the fiduciary constituted a breach." *Id.* (emphasis in original). "[A] vague suspicion of





wrongdoing … [or] hunch that 'something fishy was going on'" does not sufficiently demonstrate knowledge. *Id.* (cit. omit.). As such, "[k]nowledge is the crucial element." *Casey v. U.S. Bank Nat'l Ass'n*, 127 Cal. App. 4th 1138, 1145 (2005); *see also* MTD Order at 6 (applying California law to Count 19).

Here again, the evidence reveals that Microsoft never knew, and was never told about, the purported "specific primary wrong" or alleged breaches of fiduciary duties allegedly owed to Musk—let alone any basis for finding a duty owed to Musk. Discovery has unsurprisingly shown that OpenAI expressly represented that it had the legal authority to enter its agreements with Microsoft.

**c. Count 4: Breach of Quasi-Contract/Unjust Enrichment**

Count 4 does not assert that Microsoft itself had an arrangement with Musk. Instead, it seeks to recover for Microsoft's purported "unjust enrichment" as a third party. Count 4 thus parallels Counts 5 and 19, which seek to hold Microsoft liable for disrupting an alleged OpenAI contract with Musk or for aiding and abetting alleged OpenAI breaches of fiduciary duty. However, when a third party, here Microsoft, relies on a party to a transaction or agreement, here OpenAI, and has no notice of restrictions or limitations on the party's ability to act, the third party cannot be unjustly enriched or required to pay restitution. *See First Nationwide Savings v. Perry*, 11 Cal. App. 4th 1657, 1663 (1992); *City of Hope Nat. Med. Ctr. v. Superior Court*, 8 Cal. App. 4th 633, 637 (1992); *see also* MTD Order at 3 (applying California law to Count 4). As explained above, Microsoft's lack of knowledge about the core dispute alleged between Musk and OpenAI means that any financial benefit Microsoft acquired in dealings with OpenAI cannot, as a matter of law, be "unjust."

**d. Knowledge of the OpenAI Certificate of Incorporation Is Not Sufficient**

Musk's interrogatory responses fail to identify any facts showing Microsoft's knowledge of purported agreements or breached duties. Nonetheless, Musk may oppose the proposed motion by pointing to Microsoft's knowledge of OpenAI's Certificate of Incorporation ("COI") or other public formation documents. But Microsoft's (or anyone else's) knowledge of these documents does not evidence that Microsoft (or anyone else) knew about any commitments OpenAI purportedly made ***to Musk***.

Musk cannot assert a "breach" of OpenAI's COI or other documents as a predicate for a tortious interference claim against Microsoft because the COI is not itself a contract ***with Musk*** with which Microsoft could have interfered. *See Winchester*, 210 Cal. App. 4th at 596 (tort requires a valid contract between the plaintiff and another party and defendant's knowledge of same). Nor does knowledge of OpenAI's COI amount to knowledge of breach of any duty the OpenAI Defendants purportedly owed ***to Musk***. And the COI does not constitute knowledge of restrictions that would make Microsoft's retention of any benefits "unfair," let alone to Musk.





Respectfully submitted,

*/s/ Russell Cohen*

Russell Cohen
Attorney for Microsoft Corporation