September 5, 2025

The Honorable Yvonne Gonzalez Rogers
United States District Judge, Northern District of California

      Re:    *Musk, et al.* v. *Altman, et al.*, Case No. 4:24-cv-04722-YGR

Dear Judge Gonzalez Rogers:

      The OpenAI Defendants respectfully request leave to move for summary judgment on the following issues: (i) Musk's lack of standing as to his charitable trust claim; (ii) fatal defects in Musk's constructive fraud claim; (iii) legal bars to Musk's implied contract, quasi-contract, and fraud claims; and (iv) statutes of limitations that bar or substantially narrow Musk's Phase 1 claims.

      ***Summary judgment should be granted on Musk's charitable trust claim.*** (1) Musk lacks standing as to his charitable trust claim because the undisputed facts show he did not make the donations to OpenAI on which his claim relies. His alleged cash donations to OpenAI were made by Donor Advised Funds (DAFs) from Vanguard and Fidelity or YC Org, OpenAI's fiscal sponsor.

      (a) As a matter of law, donors to DAFs lack standing to assert claims for breach of charitable trust based on contributions made by DAFs. *E.g.*, *Pinkert* v. *Schwab Charitable Fund*, 2021 WL 2476869 (N.D. Cal. June 17, 2021), *aff'd*, 48 F.4th 1051 (9th Cir. 2022). A DAF is a "charitable giving vehicle that allows donors" to take immediate tax deductions for contributions to the DAF, while retaining "advisory privileges with respect to" later donations made by the DAF. 48 F.4th at 1052-53. Under the statutory framework governing DAFs, and as made clear in the Vanguard and Fidelity policies that governed Musk's contributions to those entities: (i) the donor loses ownership and control over the assets once contributed to the DAF; (ii) any subsequent donation is made by the DAF, not the donor; and (iii) the donor cannot itself impose binding restrictions on the DAF's subsequent donations. *E.g.*, *id.*; *Fund for Anonymous Gifts* v. *I.R.S.*, 1997 WL 198108, at *4 (D.D.C. Apr. 15, 1997); VC000001; FIDCHAR-OPENAI-000129.

      In *Pinkert*, the Ninth Circuit held that a donor lacked standing to sue Schwab (the DAF) for mismanaging his contributions. Musk too "lacks Article III standing" because "he gave up title to and control of his donation." 2021 WL 2476869, at *3. Musk also lacks standing under California charitable trust law, because he no longer has any "definite interest in the property." *Id.* at *5 (quoting *Holt* v. *Coll. of Osteopathic Phys. & Surgeons*, 61 Cal. 2d 750, 753 (1964)); *see also, e.g.*, *In re Nat'l Heritage Found., Inc.*, 510 B.R. 526, 540-41 (E.D. Va. 2014).[1] Musk's claim to standing is even further removed: his claim is not against the DAFs, but the charity to which the DAFs donated. No case has ever found donor standing in these circumstances.

      (b) The same is true for the remaining funds Musk donated to YC Org, which then donated to OpenAI. As OpenAI's fiscal sponsor, YC Org received contributions from donors until OpenAI received its § 501(c)(3) tax exemption. Like DAFs, under the federal tax laws, fiscal sponsors must exercise "control and discretion over use of" the donated funds. *E.g.*, IRS Rev. Rul. 68-489 (1968).

---

[1] *Fairbairn* v. *Fidelity Invs. Charitable Gift Fund*, 2018 WL 6199684 (N.D. Cal. Nov. 28, 2018), is not to the contrary, as it involved breaches of alleged promises the DAF made to the donor.

YC Org's donations to OpenAI were governed by an agreement between YC Org and OpenAI, which confirmed that "Grantor [YC Org] has exercised and shall retain full discretion and control over the selection process [for grants], acting completely independently of Grantee or any funding source." Again, no case has ever found that a donor retains standing based on donations the fiscal sponsor made to a charity.

(2) Even if Musk had made the donations directly to OpenAI, he would still be unable to pursue a charitable trust claim. (a) The Court denied the OpenAI Defendants' motion to dismiss based on the Third Restatement's approach to settlor standing. Dkt. 121 at 15 n.11; § 94 cmt. g. But even under the Third Restatement, Musk's claim fails because a donation to a charity "to be used for its general purposes, is charitable but does not create a trust as that term is used in this Restatement." § 28 cmt. a. Only "restricted" donations—those made for specific purposes—create a charitable trust under the Third Restatement. *Id*.; IRS Form 990 at 50. OpenAI's tax filings and financial statements confirm OpenAI received no such "restricted" donations. Musk's alleged conditions on his donations (SAC ¶ 247), which largely mimic the general duties in OpenAI's non-profit charter, confirm their unrestricted character. In all events, as detailed above, Musk lacked the power to impose such restrictions, and there is no evidence that the DAFs or YC Org did so.

(b) Musk also lacks standing under California law. He invokes Cal. Corp. Code § 5142, but that section does not apply to non-profits incorporated outside of California. In any event, Musk does not meet any of the statute's standing requirements, including because his donations to the DAFs and YC Org preclude any finding that Musk retained a "reversionary, contractual, or property interest" in the assets donated to OpenAI. § 5142(a)(4). Musk's lack of a "reversionary interest" likewise dispenses with any claim of "special interest" standing. *E.g.*, *Horiike* v. *Humane Soc. of the U.S.*, 2016 WL 11744969, at *16-17 (C.D. Cal. June 20, 2016) (citing *L.B. Research*). Musk's reliance on Cal. Bus. & Prof. Code § 17510.8 is also a dead end. It applies to solicitations to the general public, and not, as here, to "solicitations … within the membership of a charitable organization." § 17510.6. Even if applicable, § 17510.8 does not extend standing to anyone. *Id*.

(c) Finally, Musk cannot pursue a charitable trust claim based on either (i) the four Teslas he donated to OpenAI (Musk Interrog. 17), as there is no evidence that the Teslas were not used for their intended purpose (*i.e.*, as compensation to employees), or (ii) his alleged "personal investment of time, expertise, guidance, and use of his reputation and professional network" (*id.* at 10), as these contributions, even if valuable, cannot ground a charitable trust claim because they do not constitute "trust property." Restatement (Third) of Trusts § 2 & cmt. i.; 60 Cal. Jur. 3d Trusts § 24 (knowledge, skill, and labor "do not constitute property that may be held in trust").

***Summary judgment should be granted on Musk's constructive fraud claim.*** Musk's constructive fraud claim is based on an alleged "fiduciary relationship" arising from § 17510.8 and the same alleged contributions underlying his charitable trust claim. ¶¶ 291-93. Summary judgment is warranted because, as explained above: (i) Musk did not make those contributions to OpenAI; (ii) § 17510.8 does not apply; and (iii) Musk lacks standing to sue for an alleged failure to "use those charitable contributions for [their] declared charitable purposes" (§ 17510.8; ¶ 292).

***Summary judgment should be granted on Musk's implied contract claim.*** The OpenAI Defendants are entitled to summary judgment on Musk's implied contract claim on several independent grounds. *First*, the claim is barred by the statute of frauds. Musk's alleged contract is

"[a]n agreement that by its terms is not to be performed within a year from [its] making," and the Court has already found it was not "subscribed" in a writing. Cal. Civ. Code § 1624(a)(1). The terms of the alleged contract included commitments to "continue with OpenAI as a nonprofit," and "open source technology for the public benefit" (¶¶ 247(f), (j)), among others—which were not capable of being performed within a year and Musk claims OpenAI continues to breach today.

*Second*, Musk's alleged implied contract was terminated before any alleged breach. Under California law, perpetual obligations "will be avoided unless compelled by the [contract's] unequivocal language." *E.g.*, *Aspex Eyewear, Inc.* v. *Vision Service Plan*, 472 F. App'x 426, 427 (9th Cir. 2012). By definition, Musk's implied contract contains no such language. For an implied contract to apply indefinitely, it must be terminable at will. *Id*. Even if Musk's contract existed, it would have been terminated no later than 2018, when Musk ended his affiliation with and support of OpenAI, and before any breaching conduct, including the alleged for-profit pivot in 2019. ¶ 250.

*Third*, Musk's alleged implied contract is too "indefinite" to enforce. "[P]romises are enforceable only if they are definite enough that a court can determine the scope of the duty and the limits of performance." *Prostar Wireless Grp.* v. *Domino's Pizza*, 815 F. App'x 117, 119 (9th Cir. 2020) (affirming grant of summary judgment). Musk's alleged terms—*e.g.*, ¶ 86 (OpenAI "would be a non-profit devoted to developing AI/AGI responsibly" to "benefit the public and humanity"); ¶ 247(g) ("[S]afety should be a first-class requirement")—are too "amorphous" and "vague" to serve as enforceable promises. *Prostar*, 360 F. Supp. 3d 994, 1012 (N.D. Cal. 2018).

**Summary judgment should be granted on Musk's fraud and quasi-contract claims.** Musk's fraud claim is based on statements that Musk asserts are terms of his alleged implied contract. ¶¶ 304-05; Musk Interrog. 9-10. California's independent tort doctrine bars Musk's attempt to bring a "fraud claim [that] stem[s] directly from the contract" underlying his breach claim. *Dwyer* v. *Bicoy*, 2009 WL 10697966, at *4 (C.D. Cal. Nov. 17, 2009) (granting summary judgment); *Rattagan* v. *Uber Techs., Inc.*, 17 Cal. 5th 1, 34, 39 (2024) (requiring exposure to harm beyond alleged breach). California law also precludes Musk's attempt to recover in quasi-contract to the extent he "chooses" to "proceed[] with" tort claims based on the same conduct for which he seeks restitution. *Silver* v. *Stripe Inc.*, 2021 WL 3191752, at *8 (N.D. Cal. July 28, 2021).

**Summary judgment should be granted based on statutes of limitations.** Musk filed this suit in August 2024. His claim that an implied contract was breached by transactions involving OpenAI's For-Profit Entities starting in 2019 (*e.g.*, ¶¶ 250(a)-(e), (i)) is barred by a two-year limitations period. Cal. Civ. Proc. Code § 339(1); *Kourtis* v. *Cameron*, 419 F.3d 989, 1000 (9th Cir. 2005) (statute runs from "time of breach"). So are the alleged subsequent breaches, as the statute runs anew only for severable contracts. *Lamont* v. *Time Warner, Inc.*, 586 F. App'x 357, 357 (9th Cir. 2014). Musk's quasi-contract claim is also barred, as the two-year period "run[s] immediately" upon payment or delivery of the alleged benefit. *Roots Ready Made Garments* v. *Gap Inc.*, 2007 WL 3045999, at *5 (N.D. Cal. Oct. 18. 2007). Musk's alleged donations to OpenAI largely ended by mid-2017, except for monthly rent payments, and even those ended by 2020. Finally, Musk's fraud and constructive fraud claims are subject to a three-year statute, Cal. Civ. Proc. Code § 338(d), and accrued no later than 2019, when Musk discovered, or should have discovered, the facts he claims evidence the fraud—the supposed for-profit pivot. *E.g.*, Dkt. 229 at 117-19; *see Hamilton Materials, Inc.* v. *Dow Chem. Corp.*, 494 F.3d 1203, 1206-07 (9th Cir. 2007) (claim accrues upon "notice of a potential misrepresentation").

Judge Gonzalez Rogers
Page 4

                                        Respectfully submitted,

                                        */s/ Jordan Eth*
                                        Jordan Eth (CA SBN 121617)
William Frentzen (CA SBN 343918)
David J. Weiner (CA SBN 291659)
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105
Telephone: (415) 268-7000
Facsimile: (415) 268-7522

William Savitt (*pro hac vice*)
Bradley R. Wilson (*pro hac vice*)
Sarah K. Eddy (*pro hac vice*)
Steven Winter (*pro hac vice*)
Nathanial Cullerton (*pro hac vice*)
WACHTELL, LIPTON, ROSEN & KATZ
51 West 52nd Street
New York, NY 10019
Telephone: (212) 403-1000
Facsimile: (212) 403-2000

*Attorneys for OpenAI Defendants*