UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ELON MUSK, et al.,

                    Plaintiffs,

          v.

SAMUEL ALTMAN, et al.,

                    Defendants.

Case No.  24-cv-04722-YGR   (TSH)

**DISCOVERY ORDER**

Re: Dkt. Nos. 239, 241

We are here with a couple of disputes about what is sometimes called the "business strategy doctrine."  First let's discuss the doctrine, and then let's turn to the disputes.

**A.      Business Strategy Doctrine**

Let's start with *BNS Inc. v. Koppers Co., Inc.*, 683 F. Supp. 454 (D. Del. 1988), a leading case in this area.  In that case, Plaintiff BNS sought to acquire Defendant Koppers through an all cash hostile tender offer.  The Koppers board had formally rejected as inadequate BNS's initial offer of $45 per share and a subsequent offer of $56 per share.  At the time the discovery dispute arose, the Koppers board was considering BNS's latest offer of $60 per share.  During the course of the tender offer, the Koppers board had announced that it was also exploring alternatives to the tender offer.  *See id.* at 455.  In discovery, BNS sought two categories of documents:  all documents relating to Kopper's ongoing analysis of the $60 per share offer to which Koppers had not yet formally responded, as well as all documents relating to alternative defense measures which the Koppers board was considering.  *See id.* at 455-56.

The court explained that "[w]hile not framed as such by the pleadings, the Koppers position is one seeking a protective order under Rule 26(c)."  *Id.* at 457.  The court noted that Rule 26(c) "requires striking a balance between the countervailing legitimate interests and

accommodating the needs of both parties. As such the inquiry is fact specific." *Id*. The court then

explained its reasoning as follows:

> If the BNS $60 offer were accepted, BNS would have no need of the documents relied upon by the Koppers board in reaching its decision. Conversely, should the offer be rejected, BNS has a pressing need for the alleged supporting documentation in order to attempt to establish the Koppers board's conduct was such that it would be deprived of the benefit of the presumption of the business judgment rule. On the other hand, Koppers has an even more pressing reason not to reveal the information at this time. If Koppers were to be compelled to produce documents about what its position should be on the $60 offer, it could destroy its ability to act in the best interest of its shareholders. For example, providing the documents to BNS would seriously impair, if not destroy, the Koppers board's ability to negotiate a higher offer for its shareholders. On balance, the equities favor not producing documents available to the board during its ongoing consideration of the BNS $60 offer.
>
> The burden will be upon BNS to counter a showing by the Koppers board that its response was reasonable in relation to the perceived threat posed by the tender offer of BNS. It follows BNS will have a critical need for documents which contain information relative to all defensive alternatives being pursued by the Koppers board. Weighed against this need is the possible detriment to Koppers shareholders. If BNS were privy to advance disclosure of Koppers strategy in its formative stages, it conceivably could take preemptive measures to prevent Koppers from mounting a counter offensive. A preemptive strike of this magnitude, while beneficial to BNS, could prove detrimental to the Koppers shareholders. Weighing the need of BNS against the risk to the Koppers board and its shareholders, I conclude the balance of equities favors Koppers at this time. The BNS motion to compel documents relating to prospective defensive strategies will be denied.
>
> BNS will not be denied the documents forever. This fact has been a significant factor in the Court's efforts to accommodate the needs of the parties. As discussed above, BNS has a genuine need for the documents it seeks. It is equally clear at some future point BNS may be immediately entitled to that which has been refused it today. That point will be reached with respect to the $60 offer if, and when, the Koppers board formally rejects it. Similarly, if the Koppers board should formally announce its intent to adopt any one or a combination of defenses, BNS will become immediately entitled to all documents relating to all defensive strategies it had considered.

*Id*. at 457-58 (citations omitted).

Courts applying this doctrine have explained that "[t]he business strategy doctrine applies

when documents reveal strategies for retaining or obtaining corporate control during a live

corporate takeover situation." *Allergan, Inc. v. Valeant Pharms. Int'l, Inc.*, 2014 WL 12573358, at

2

United States District Court
Northern District of California

*1 (C.D. Cal. Sept. 22, 2014).  "Because of the dynamic context, deciding whether the business strategy doctrine applies is a fact-specific and time-sensitive inquiry.  In determining whether certain documents should be protected, courts must balance the interests of the litigant who needs the documents to prepare for trial and the interests of the litigant who seeks to protect its offensive or defensive corporate control strategy.  Courts operate on the assumption that the documents must be produced sooner or later and only protect the documents until a particular strategy is no longer being considered."  *Id.*  "[A] target company's strategies, alternatives, or proposals, while under consideration are protected from disclosure.  The Court also agrees that the protection from disclosure is for a limited time."  *Stena Finance B.V. v. Sea Containers Ltd.*, 131 F.R.D. 361, 362 (D.D.C. 1989).

"[T]his court and others have recognized that in a contest for corporate control, the board of directors of a target company continues to have an ongoing responsibility to manage the corporation and, in the face of such a contest, that responsibility may entail the exploration of alternative transactions that would better promote corporate and shareholder welfare.  The discovery process may legitimately give some consideration to such efforts.  We have repeatedly recognized that disclosure of such efforts, while they are ongoing, may be detrimental to shareholder interests."  *Parsons v. Jefferson-Pilot Corp.*, 141 F.R.D. 408, 418-19 (M.D.N.C. 1992); *accord, Grand Metropolitan PLC v. Pillsbury Co.*, 1988 WL 130637, at *3 (Del. Ch. Nov. 22, 1988).

"Most importantly, defendants must establish the time period for the documents to be protected. . . . Only strategies or plans still being pursued in good faith should enjoy protection. . . . Even under a business strategy protection, there is no doubt [Plaintiff] will obtain otherwise unprotected relevant documents; the only question is when."  *IPALCO Enterprises, Inc. v. PSI Resources, Inc.*, 148 F.R.D. 604, 607 (S.D. Ind. 1993); *accord Parsons*, 141 F.R.D. at 419 ("The cases engaging in this analysis, however, have developed a few helpful principles.  Primary among these is the notion that, once a decision has been made, the shareholders are entitled to test the validity of that decision and, for that purpose, to inquire into its underlying basis.") (cleaned up); *Hexion Specialty Chemicals Inc. v. Huntsman Corp.*, 959 A.2d 47, 53 (Del. Ch. 2008) (rejecting

1  the application of the business strategy doctrine to the situation of a deal that had already been

2  negotiated and entered into but had not yet closed: "almost any piece of relevant discovery could

3  be used to renegotiate the deal and that fact, standing alone, will not prevent discovery.").

4      Some courts have also applied the business strategy doctrine (which has also been called

5  "business strategy immunity" or "white knight immunity") outside of the context of corporate

6  takeovers.  For example, in *Matter of Heizer Corp.*, 1987 WL 19560 (Del. Ch. Nov. 9, 1987), the

7  court applied the doctrine in the context of ongoing negotiations with a third party:

> I agree with the Heizer Group that the analogy to corporate takeovers
> is imperfect. However, one of the considerations that has caused this
> Court to limit the scope of "white knight" discovery applies equally
> to the present controversy. In the corporate context, this Court has
> consistently recognized the threat that disclosure of ongoing
> negotiations with third parties will undermine the corporation's ability
> to successfully conclude those negotiations. The prospect that
> disclosure would thus harm the corporation and its stockholders has
> been a factor in limiting "white knight" discovery. The same concern
> applies to Hackbarth's ongoing negotiations over the disposition of
> trust assets.

*Id.* at *3; *see also Gioia v. Texas Air Corp.*, 1988 WL 18224, at *1 (Del. Ch. March 3, 1988)

("The pending motion to compel the production of documents raises the question whether a

corporate defendant may, in the circumstances presented, legitimately withhold from discovery

documents that disclose its corporate plans to deal with a possible future strike of its work force,"

and answering the question in the affirmative).

**B.    Application to This Case**

   **1.      OpenAI**

   Plaintiffs say that OpenAI has withheld or redacted 159 documents based on the "business

strategy privilege," 98 of them solely on that ground.  The parties agree the documents span from

May 2024 to June 2025.  OpenAI makes two arguments in support of the business strategy

doctrine.  First, it says that its board is considering a potential recapitalization of OpenAI's for-

profit arm into a public benefit corporation still under the non-profit's control.  Defendant

Microsoft is a major investor in the for-profit arm, and the OpenAI board has been in intensive

negotiations with Microsoft as to the relative economic interests in any eventual public benefit

corporation as between the non-profit and OpenAI's investors.  Second, in February 2025, Musk

United States District Court
Northern District of California

1    and xAI made an unsolicited $97 billion bid for the assets of the nonprofit.  Although OpenAI

2    rejected the bid, no one representing Musk has retracted their declaration of a future intention to

3    big, and Musk and xAI must therefore be regarded as active bidders for OpenAI's assets.

4        Let's consider these arguments in turn.

5            **a.**      **Microsoft**

6        The Court finds that the business strategy doctrine applies as to OpenAI's ongoing

7    negotiations with Microsoft.  This is not a ruling on the application of the doctrine to any

8    particular document that OpenAI has redacted or withheld, none of which the Court has seen.

9    Rather, the Court makes a more general holding that OpenAI's ongoing negotiation with

10   Microsoft is the sort of live transaction that triggers the policy concerns that animate the business

11   strategy doctrine.  In so doing, the Court follows *Heizer* and *Gioia* in applying the doctrine outside

12   of just the narrow confines of corporate takeovers.

13       The ongoing negotiation between OpenAI and Microsoft is a significant negotiation.  The

14   parties (meaning OpenAI and Microsoft, not Plaintiffs) represent that it is currently in progress.

15   They cannot say at this time that it will conclude in a deal, or if so, when that deal will be struck,

16   but they both maintain that unfettered discovery into the negotiations as they are underway could

17   harm either or both sides to the negotiations.  The problem, as the Court sees it, is not with

18   providing the documents and information to the Plaintiffs, who maintain the contemplated

19   transaction is flatly illegal and should be enjoined, but that Microsoft and OpenAI are co-

20   Defendants and any discovery that gets produced to the Plaintiffs will end up in the other

21   Defendant's possession as well.

22       This is a real, legitimate problem, and the business strategy doctrine was meant to help in

23   this situation.  Accordingly, the Court finds that the business strategy doctrine applies here.  There

24   is then a second question about what to do about that, and the Court discusses that issue below.

25           **b.**      **Plaintiffs**

26       By contrast, the business strategy doctrine does not apply as to Plaintiffs.  As noted above,

27   in the context of a corporate takeover, for the target company the business strategy doctrine is

28   about protecting the target from discovery into the board's consideration of pending bids for

control, as well as pending decisions on defensive strategies. Once those decisions are made, the business strategy doctrine no longer applies.

Here, OpenAI rejected Musk's bid four days after it was made. Any application of the business strategy doctrine ended right then and there. In addition, following rejection of that bid, OpenAI has repeatedly said that Musk's bid was a sham. ECF No. 299 ¶¶ 83-90; ECF No. 210 at 3; ECF No. 199 at 3. It is not true that OpenAI's board is currently considering a bid it long ago rejected and that it regards as a sham. Musk does not have a current bid for OpenAI pending. Under the case law, a past bid that was rejected does not trigger the business strategy doctrine. That doctrine applied here from February 10 (the date of Musk's bid) until February 14 (the date OpenAI's board rejected it). During those four days, Musk was not entitled to discovery into OpenAI's consideration of his bid, as well as any defensive measures it was considering in response to that bid. But once OpenAI rejected the bid, those materials became discoverable. There is certainly no authority to support OpenAI's position that the potential for another bid in the future gives rise to an indefinite block on discovery into the board's actions. OpenAI tries to flip the doctrine on its head by arguing that Musk has not disclaimed an intent to make another bid in the future, as if the burden is on the plaintiff to negate the possibility of a future bid. However, the doctrine is about things happening *now* – live negotiations, live planning, and so on – not things that might or might not happen in the future. Besides, "almost any piece of relevant discovery could be used to [make a future bid] and that fact, standing alone, will not prevent discovery." *Hexion*, 959 A.2d at 53. Accordingly, the business strategy doctrine does not apply as to Plaintiffs.

### 2. Microsoft

Microsoft "seeks a narrow protective order to exclude from discovery limited information—whether in the form of deposition testimony or documents—relating to (i) purely internal Microsoft deliberations or communications regarding its negotiating strategy or positions vis-à-vis OpenAI's potential restructuring, and (ii) Microsoft's valuation information underlying those internal analyses that were not shared with OpenAI." ECF No. 241 at 3.

As an initial matter, Microsoft makes a categorical argument that all possible documents

United States District Court
Northern District of California

and information that fall within these two categories are *per se* irrelevant to phase I.   The Court is unable to accept that categorical argument.  Microsoft's internal deliberations could reflect or imply its knowledge of things relevant to phase I, such as its understanding of OpenAI's obligations as a charitable trust and what they mean for what is legally permissible in its business operations, or Microsoft's understanding of the obligations OpenAI has toward Musk.  In its letter brief concerning summary judgment, Microsoft seems to agree these are relevant phase I issues.  ECF No. 248.  Accordingly, the Court cannot make a categorical finding that all documents or testimony that might be related to these subjects are irrelevant to phase I.

As to the business strategy doctrine, Microsoft says nothing about Musk's bid for OpenAI, and the Court does not see how Microsoft has any sort of argument that the business strategy doctrine applies as to the Plaintiffs.  Microsoft's sole focus is on the potential harm to its negotiating position if its sensitive documents were turned over to OpenAI while their current negotiations are ongoing.  This is just the flip side of the same argument OpenAI made, and the Court's conclusion is the same:  The business strategy doctrine applies as between Microsoft and OpenAI.

### 3.    What to Do About This

As the Court sees it, there are two options about how to handle this situation.  One is to take the approach the court took in *Gioia* and simply deny the requested discovery.  *Gioia*, 1988 WL 18224, at *3 ("I do not regard confidentiality orders as providing absolute protection.  If they did, there would be no need to attempt to evaluate competing claims in this setting, for the words written on a page would afford the protection of a guarded vault.  We must operate, however, in a world more closely aligned with a reality in which mistakes occur and in which trust is sometimes abused for advantage.").  The other is to modify the existing protective order so that the requested documents and information can be produced to the Plaintiffs without them falling into the wrong hands at either OpenAI or Microsoft.

In opting for the latter approach, the Court is mindful that this discovery dispute arises in a context that the Court has not seen in any case applying the business strategy doctrine:  The transaction that OpenAI and Microsoft are negotiating *is* the transaction Plaintiffs are seeking to

United States District Court
Northern District of California

1  enjoin in this case.  In Defendants' point of view, they are negotiating a high stakes investment in

2  groundbreaking technology.  In Plaintiffs' point of view, they are culminating years of legal

3  wrongdoing in a conspiracy to harm the Plaintiffs.  Denying Plaintiffs this discovery seems to

4  prejudge the case in Defendants' favor.  It seems profoundly unfair to deny Plaintiffs discovery

5  that may be important to their claims just because Defendants are finalizing their plans on how to

6  do the very thing Plaintiffs seek the Court's aid to stop.

7      The Court also has a structural concern that if the Court were to allow OpenAI and

8  Microsoft to withhold documents and information not just from each other but also from Plaintiffs,

9  this would incentivize broad claims of privilege aimed at denying the Plaintiffs discovery rather

10  than genuinely protecting information from their co-Defendant.  OpenAI and Microsoft's

11  positions on the business strategy doctrine do not seem to differentiate between documents that

12  each does not want the other to see (a legitimate concern) and documents they don't want

13  Plaintiffs to have (not a legitimate concern, and one that the Court has rejected because Musk does

14  not have a live bid).  OpenAI has justified all of its claims of business strategy privilege on both

15  grounds.  Likewise, Microsoft seeks a broad protective order that would bar discovery into its

16  internal deliberations and communications regarding its negotiating strategy or positions vis-à-vis

17  OpenAI's potential restructuring.  Despite Microsoft characterizing that as a "narrow" request, it

18  could be construed to capture all internal communications about OpenAI's potential restructuring.

19  The *Gioia* court wisely noted that "[w]e must operate . . . in a world more closely aligned with a

20  reality in which mistakes occur and in which trust is sometimes abused for advantage."  *Gioia*,

21  1988 WL 18224, at *3.  Here, that concern counsels against letting OpenAI and Microsoft use the

22  pending negotiation between them as a basis for denying Plaintiffs discovery to support the claims

23  against them.

24      For these reasons, the better approach is to allow OpenAI and Microsoft to withhold

25  documents and information from each other pursuant to the business strategy doctrine, but not

26  from Plaintiffs.  Of course, OpenAI and Microsoft's trial counsel in this action will need to receive

27  those items so they can defend the case; the issue is appropriate restrictions beyond that to ensure

28  that these items do not fall into the hands of people who should not have them.  Accordingly, the

Court **ORDERS** the parties to meet and confer concerning proposed modifications to the protective order in this action.  Within seven days the parties shall file either a stipulation and proposed order or competing proposed orders and a joint discovery letter brief setting forth their respective positions.  The Court further **ORDERS** that OpenAI and Microsoft may withhold discovery from each other based on the business strategy doctrine, but they may not withhold discovery from Plaintiffs on that basis.

**IT IS SO ORDERED.**

Dated: September 9, 2025

THOMAS S. HIXSON
United States Magistrate Judge