

Steven F. Molo
MoloLamken LLP
430 Park Avenue
New York, NY 10022
T: 212.607.8170
F: 646.710.4950
smolo@mololamken.com
www.mololamken.com

September 10, 2025

Hon. Yvonne Gonzalez Rogers
U.S. District Court for the Northern District of California

BY ECF

      Re:    *Musk v. Altman*, No. 4:24-cv-04722-YGR – Response to Microsoft Letter

Dear Judge Gonzalez Rogers:

      Plaintiff Elon Musk respectfully opposes Microsoft's September 5, 2025 summary judgment pre-filing letter (Dkt. 248). The Court should deny Microsoft permission to move for summary judgment because the proposed motion raises obvious factual disputes that should be resolved by the jury at trial.

      Microsoft's sole basis for seeking summary judgment is lack of knowledge – namely, lack of knowledge that OpenAI had an agreement with Musk for purposes of the tortious interference claim, that OpenAI owed fiduciary duties to Musk for purposes of the aiding and abetting claim, and that there were restrictions on OpenAI's use of Musk's contributions for purposes of the unjust enrichment claim. Microsoft's argument ignores ample evidence from which a jury could readily find such knowledge.

      OpenAI's founding announcement made clear that Musk was a large contributor to the non-profit: "OpenAI's co-chairs are Sam Altman and Elon Musk. Sam, Greg, Elon, [and others] are donating to support OpenAI. In total, these funders have committed $1 billion . . . ." OpenAI, *Introducing OpenAI* (Dec. 11, 2015), openai.com/index/introducing-openai. Within 24 hours, Microsoft CEO Satya Nadella circulated a copy of that announcement to others at the company, commenting on the list of contributors and asking whether Microsoft had been invited to participate. MSFT_MUSK000044294.

      Microsoft also knew that OpenAI was formed as a non-profit to pursue specific public objectives. OpenAI's publicly available certificate of incorporation stated that its mission was to "provide funding for research, development and distribution of technology related to artificial intelligence," that "[t]he resulting technology will benefit the public," and that "[t]he corporation is not organized for the private gain of any person." Dkt. 170-22 at 5. OpenAI's property was "irrevocably dedicated to the[se] purposes," and "no part of the net income or assets of th[e] corporation shall ever inure . . . to the benefit of any private person." *Id.* Microsoft has acknowledged that it reviewed that certificate during due diligence on OpenAI. Microsoft Rough Dep. 123:7-14. OpenAI's California charitable registration likewise stated that "OpenAI wants to

help the world build safe AI technology and ensure that AI's benefits are as widely and evenly distributed as possible." Dkt. 170-22 at 3. OpenAI publicly reaffirmed that commitment yet again in its 2018 charter, "commit[ting] to use any influence we obtain over AGI's deployment to ensure it is used for the benefit of all, and to avoid enabling uses of AI or AGI that harm humanity or unduly concentrate power." OpenAI, *OpenAI Charter*, openai.com/charter.

Microsoft also knew that Musk was a key motivating force behind OpenAI's public mission. After meeting with OpenAI about its Dota work, one senior Microsoft research officer commented: "I had the feeling that the two phases of Dota work are motivated by a need to show how AI can crush humans, ***as part of Elon Musk's interest in demonstrating why we should all be concerned about the power of AI***." MSFT_MUSK000000150 (emphasis added). Nadella later complimented Musk personally on the project's success. 2024MUSK_0000669.

Microsoft is presumed to know the ordinary legal consequences of OpenAI's non-profit status and mission. "The familiar maxim 'ignorance of the law is no excuse' typically holds true." *Elonis v. United States*, 575 U.S. 723, 734-35 (2015). Microsoft knew that OpenAI was a non-profit charity with a specific public mission and knew that Musk was one of OpenAI's principal donors and proponents of that mission. Microsoft is thus presumed to know that OpenAI owed certain legal duties to Musk that customarily attach to a charity's relationship with its major donors.

Microsoft's internal emails confirm that knowledge. On March 7, 2018, a Microsoft employee reported to Nadella that OpenAI was planning to launch a new commercial venture to deliver vertically integrated AI training hardware and related services. MSFT_MUSK000044183. Microsoft Chief Technology Officer Kevin Scott weighed in: "***I wonder if the big OpenAI donors are aware of these plans? Ideologically, I can't imagine that they funded an open effort to concentrate [machine learning] talent so that they could then go build a closed, for profit thing on its back.***" *Id.* (emphasis added).

Microsoft's knowledge of OpenAI's charitable status and knowledge of Musk's role as a major donor establish the necessary mental state for aiding and abetting and unjust enrichment. "A plaintiff may prove actual knowledge through inference or circumstantial evidence." *Simi Mgmt. Corp. v. Bank of Am., N.A.*, 930 F. Supp. 2d 1082, 1099 (N.D. Cal. 2013). There is plenty of evidence that Microsoft knew OpenAI owed duties to Musk. Moreover, fact discovery is far from complete. The parties just started depositions this week, and key witnesses like Nadella will not be deposed until later this month.

Microsoft's knowledge also satisfies the "intent" element for tortious interference. A "jury may infer culpable intent from conduct substantially certain to interfere with the contract." *Bank of New York v. Fremont Gen. Corp.*, 523 F.3d 902, 911 (9th Cir. 2008) (quotation marks omitted); *see also Quelimane Co. v. Stewart Title Guar. Co.*, 960 P.2d 513, 531 (Cal. 1998) (intent shown where "interference . . . is incidental to the actor's independent purpose and desire" so long as interference is "known to him to be a necessary consequence of his action").

Microsoft urges that it did not know about "any commitments OpenAI purportedly made ***to Musk***." Dkt. 248 at 3. Under California law, however, a plaintiff alleging tortious interference need not show that the defendant knew the identity of the counterparty. *See Sebastian Int'l, Inc.*

2

*v. Russolillo*, 162 F. Supp. 2d 1198, 1204 (C.D. Cal. 2001) (finding requisite intent "if the defendant knows that contractual relations with a third party exist, but does not know the specific identity of the contractual party"); *Ramona Manor Convalescent Hosp. v. Care Enters.*, 177 Cal. App. 3d 1120, 1133 (1986) ("We are not persuaded knowledge of the injured party's specific identity or name is a prerequisite to recovery . . . ."). Regardless, Microsoft did know Musk's identity, from the founding announcement. OpenAI's willingness to embrace Microsoft as a partner does not foreclose Plaintiffs' claims either: Tortious interference is actionable even when the object of the interference consents. *See, e.g.*, *Blizzard Ent. Inc. v. Ceiling Fan Software LLC*, 28 F. Supp. 3d 1006, 1016 (C.D. Cal. 2013) (finding tortious interference from sale of "bot" software to computer-game players that induced players to breach game's terms of use).

Finally, Microsoft is incorrect to suggest that "Musk has refused to make th[e] election" this Court directed. Dkt. 248 at 1. The Court stated that "Plaintiff must make an election to bring either a ***quasi-contract***, or unjust enrichment claim, but not both, no later than thirty (30) days after the close of fact discovery." Dkt. 163 at 4 n.3 (emphasis added); *see also id.* at 11 (same). Written fact discovery closed on August 25, 2025, so the election is due on September 24, 2025. Dkt. 214 at 5; Dkt. 215. Plaintiffs will make the required election by that date. The Court should not expand the order by requiring Musk to elect between his ***implied*** contract and unjust enrichment claims. California law is clear that a party may pursue both those claims in the alternative at trial, and the jury must decide which one the evidence supports. *See Newport Harbor Ventures, LLC v. Morris Cerullo World Evangelism*, 6 Cal. App. 5th 1207, 1223 n.4 (2018) ("At some point, [plaintiff] might have to elect between a breach of contract remedy and a quantum meruit remedy. But that point is not now. 'Plaintiff is entitled to introduce his evidence upon each and all of these causes of action, and the election, or in other words the decision as to which of them is sustained, is, after the taking of all the evidence, a matter for the judge or the jury.'"); *Williams v. Marshall*, 37 Cal. 2d 445, 457 (1951); *Tanforan v. Tanforan*, 173 Cal. 270, 274 (1916); 4 Witkin, California Procedure: Pleading §§ 418-419 (6th ed. 2025).

The Court should accordingly deny Microsoft's request to move for summary judgment. Disputes over Microsoft's knowledge should be resolved at trial.

Respectfully submitted,

Steven F. Molo
*Attorney for Plaintiffs (pro hac vice)*

cc: all counsel