Case 4:24-cv-04722-YGR    Document 261    Filed 09/10/25    Page 1 of 4



Steven F. Molo
MoloLamken LLP
430 Park Avenue
New York, NY 10022
T: 212.607.8170
F: 646.710.4950
smolo@mololamken.com
www.mololamken.com

September 10, 2025

Hon. Yvonne Gonzalez Rogers
U.S. District Court for the Northern District of California

BY ECF

      Re:    *Musk v. Altman*, No. 4:24-cv-04722-YGR – Response to OpenAI Letter

Dear Judge Gonzalez Rogers:

      Plaintiff Elon Musk respectfully opposes the OpenAI Defendants' ("Open AI's") September 5, 2025 summary judgment pre-filing letter (Dkt. 249). The Court should deny permission to move for summary judgment because the Court has already rejected many of OpenAI's arguments; there is no realistic probability that the motion would avoid the need for a trial; the motion likely would not even narrow the issues; and summary judgment proceedings would impose unwarranted burdens on the Court and the parties in this expedited litigation.

      **Charitable Trust & Constructive Fraud.** This Court already ruled in its injunction order that "plaintiffs' standing [is] sufficient" because Musk was a "settlor." Dkt. 121 at 15 n.11; *see* Restatement (Third) of Trusts § 94(2) & cmt. g (2012)) (permitting enforcement "by a settlor, or by another person who has a special interest"). Musk also separately has standing based on his contractual interest in the funds. *See* Cal. Corp. Code § 5142(a)(4) (granting standing to "[a] person with a reversionary, contractual, or property interest in the assets").

      OpenAI urges that Musk made some of his contributions through his dedicated Donor Advised Fund accounts at Vanguard or Fidelity or through OpenAI's fiscal sponsor, YC Org. Those details do not affect Musk's standing as a settlor or contracting party. The "settlor" of a trust is the "person who creates [the] trust" by arranging the contribution, not the intermediary that implements the transfer. Restatement (Third) of Trusts § 3(1) (2003). The settlor is thus the party who "makes ***or causes to be made***" the contribution. *Id.* §10 cmt. g (emphasis added); *see, e.g.*, *Sec.-First Nat'l Bank of L.A. v. Wright*, 47 Cal. App. 2d 787, 793 (1941) (deeming wife to be settlor of trust even though husband actually delivered property); *In re Hertsberg Inter Vivos Tr.*, 578 N.W.2d 289, 293 (Mich. 1998); *Forsyth v. Rowe*, 629 A.2d 379, 384 (Conn. 1993). Put differently, there would be no contribution absent the settlor taking action.

      A jury could readily find that Musk himself was the settlor and "caused" all the transfers here. The DAFs transferred funds to OpenAI only when Musk asked them to do so. EXMF-0003026; EXMF-0003879; EXMF-0003899. Sometimes Musk paid funds into the DAFs to enable specific payments to OpenAI. BMO_00000522. Musk made certain contributions through YC Org only because OpenAI's own 501(c)(3) application was still pending; no one doubted that the funds would be paid to OpenAI. 2024MUSK-0009632; BMO_00000153. OpenAI's tax forms list "Elon Musk granted via YC ORG," "Elon Musk granted via Fidelity," and "Elon Musk Via

Vanguard Charitable" as the donors.  OPENAI_MUSK00004698; OPENAI_MUSK00006061. Moreover, the DAFs and YC Org do not change the fact that Musk himself entered into the implied contract with OpenAI.  Musk thus has standing under Cal. Corp. Code § 5142(a) regardless.

Musk's contributions were not "general" rather than "restricted."  Musk helped set up and fund OpenAI to pursue specific public objectives reflected in its formation documents, its charter, and Musk's early emails.  Those charitable purposes are specific enough to support a claim.  *See* Restatement (Third) of Trusts § 28 & cmts. a, g, h (2012) (citing as examples trusts "to establish a scholarship for poor children," to "maintain a home for the poor," or "to establish, maintain, or help to maintain schools, colleges, or other educational institutions").

OpenAI's argument that Cal. Corp. Code § 5142(a) applies only to California charities has no support in the provision's text.  OpenAI provides no choice-of-law analysis showing that a California court would apply foreign law.  OpenAI must also show that foreign law would yield a different result.  *See* Restatement (Second) of Conflict of Laws § 136 cmt. h (1971).  OpenAI has not done that, so the Court should apply forum law by default.  *Id.*

OpenAI's reliance on Cal. Bus. & Prof. Code § 17510.6's exception for "solicitations . . . within the membership of a charitable organization" is misplaced.  Musk was not a "member" of a membership organization.  Even if his participation on OpenAI's board of directors counted, Musk made contributions for more than two years after resigning.

In any event, there is no dispute that Musk personally donated four Teslas directly to OpenAI to compensate key employees, including defendant Brockman.  OpenAI protests that "there is no evidence that the Teslas were not used for their intended purpose."  Dkt. 249 at 2.  But a jury could find otherwise:  Musk donated the cars to reward key employees for their work pursuing OpenAI's public objectives.  Musk would not have donated them if he knew that Brockman or other employees were secretly plotting a for-profit venture.  Even apart from the cars, moreover, certain monetary contributions did not go through the DAFs.  BMO_00000153.

**Breach of Contract.**  The statute of frauds does not foreclose this claim.  OpenAI itself argues that any contract was "terminable at will."  Dkt. 249 at 3.  Contracts terminable at will may always be performed within one year, so the statute of frauds does not apply.  *See White Lighting Co. v. Wolfson*, 68 Cal. 2d 336, 344 (1968) ("Since in the instant case the alleged oral contract may be terminated at will by either party, it can, under its terms, be performed within one year."); *Foley v. Interactive Data Corp.*, 47 Cal. 3d 654, 673 (1988).  Moreover, the statute of frauds does not bar relief where a party has partially performed.  *See Sutton v. Warner*, 12 Cal. App. 4th 415, 422 (1993); *Byrne v. Laura*, 52 Cal. App. 4th 1054, 1068 (1997) (equitable estoppel).

OpenAI argues that Musk terminated the contract by resigning from OpenAI's board in February 2018.  But Musk continued to contribute millions of dollars per year until September 2020 – a date within the four-year limitations period applicable to several claims.  Cal. Civ. Proc. Code § 343.  Regardless, the fact that Musk ultimately stopped making contributions does not prove that he "terminated" the contract.  OpenAI still had an obligation to use the funds that Musk did contribute in a manner consistent with its public purpose.

Finally, this Court rejected OpenAI's indefiniteness claim when it denied OpenAI's motion to dismiss. Dkt. 163 at 2. The implied contract terms are no less definite at this stage. "[T]he law does not favor but leans against the destruction of contracts because of uncertainty; and it will, if feasible, so construe agreements as to carry into effect the reasonable intentions of the parties if [they] can be ascertained." *Patel v. Liebermensch*, 45 Cal. 4th 344, 349 (2008); *see also Binder v. Aetna Life Ins. Co.*, 75 Cal. App. 4th 832, 850 (1999).

**Fraud and Unjust Enrichment.** The independent tort doctrine does not bar Musk's promissory fraud claim. Promissory fraud requires a separate element: the defendant's intent not to keep the promise. *See Ly Cong Huynh v. Soon Lee*, No. G057411, 2020 WL 5200928, at *8 (Cal. App. 2020) ("[C]laims of promissory fraud . . . are separately actionable from an underlying breach of contract claim."); *Walker v. Signal Cos.*, 84 Cal. App. 3d 982, 996 (1978). The fraud claim does not preclude the unjust enrichment claim either. *See SVF II Aggregator (DE) LLC v. Shafi*, No. 23-cv-03834, 2024 WL 3324623, at *2 (N.D. Cal. May 2, 2024) (holding that "an unjust enrichment claim may be sustained as [a] claim for relief in the alternative" to fraud). At a minimum, Musk should be permitted to argue both claims in the alternative to the jury.

**Statute of Limitations.** All of Musk's claims are timely. California courts "have long settled that separate, recurring invasions of the same right can each trigger their own statute of limitation." *Aryeh v. Canon Bus. Sols., Inc.*, 55 Cal. 4th 1185, 1198 (2013); *see also Water Audit Cal. v. Merced Irrig. Dist.*, 333 Cal. Rptr. 3d 377 (2025); *J.B. Painting & Waterproofing, Inc. v. RGP Holdings, LLC*, 650 F. App'x 450, 453-54 (9th Cir. 2016). OpenAI promised to refrain from for-profit activities for private benefit. OpenAI breached that obligation multiple times, including by entering into increasingly more lucrative and expansive deals with Microsoft. Musk can sue over the more recent breaches, whether or not claims over the earlier ones are time-barred. Moreover, under the continuing violation doctrine, a jury could find that even claims over the earlier breaches are timely. *See Aryeh*, 55 Cal. 4th at 1192 ("The continuing violation doctrine aggregates a series of wrongs or injuries for purposes of the statute of limitations, treating the limitations period as accruing for all of them upon commission or sufferance of the last of them."); *see also Myles v. United States*, No. 20-55910, 2022 WL 4011172, at *2-3 (9th Cir. Sept. 2, 2022).

The contract claim is subject to a four year statute of limitations because it is implied from written instruments, like OpenAI's certificate of incorporation. Cal. Civ. Proc. Code § 337(a); *Amen v. Merced Cnty. Title Co.*, 58 Cal. 2d 528, 532 (1962). The unjust enrichment claim accrued when OpenAI unjustly enriched itself from Musk's contributions, not from when the contributions were made. *See Aryeh*, 55 Cal. 4th at 1191. Finally, the date when a plaintiff discovered or reasonably should have discovered any breaches is "normally a question of fact." *Jolly v. Eli Lilly & Co.*, 44 Cal. 3d 1103, 1112 (1988).

Thus, significantly, OpenAI's proposed summary judgment motion would not avoid a trial. OpenAI does not even seek summary judgment on the unjust enrichment claim, only an election. The statute of limitations arguments will not affect the scope of the trial, and the other arguments are unlikely to meaningfully narrow the issues. Full briefing would be a massive distraction and a poor use of the parties' and the Court's time in these expedited proceedings.

Respectfully submitted,

[signature]

Steven F. Molo
*Attorney for Plaintiffs (pro hac vice)*

cc: all counsel

Respectfully submitted,

Steven F. Molo
*Attorney for Plaintiffs (pro hac vice)*

cc:  all counsel