<pre>
 1                    UNITED STATES DISTRICT COURT

 2                   NORTHERN DISTRICT OF CALIFORNIA

 3        Before The Honorable Thomas S. Hixson, Magistrate Judge

 4

 5  MUSK,                         )
                                  )
 6            Plaintiff,          )
                                  )
 7  vs.                           )   No. C 24-04722-YGR
                                  )
 8  ALTMAN, et al.,               )
                                  )
 9            Defendants.         )
    _____)
10

11                                San Francisco, California
                                  Monday, September 22, 2025
12

13   TRANSCRIPT OF PROCEEDINGS OF THE OFFICIAL ELECTRONIC SOUND
              RECORDING 2:02 - 2:46 = 44 MINUTES
14

15  APPEARANCES:

16  For Plaintiff:
                                  MoloLamken LLP
17                                600 New Hampshire Avenue
                                  Washington, DC 20037
18                        BY:  ROBERT KRY, ESQ.

19                                MoloLamken LLP
                                  430 Park Avenue
20                                Sixth Floor
                                  New York, New York 10022
21                        BY:  STEVEN F. MOLO, ESQ.

22

23

24            (APPEARANCES CONTINUED ON NEXT PAGE)

25
</pre>

2

```
 1  For Plaintiff:
                                Toberoff and Associates, P.C.
 2                              23823 Malibu Road
                                Suite 50-363
 3                              Malibu, California 90265
                           BY:  JAYMIE PARKKINEN, ESQ.
 4
    For Defendants:
 5                              Wachtell, Liptom, Rosen & Katz
                                51 West 52nd Street
 6                              New York, New York 10019
                           BY:  NATHANIEL CULLERTON, ESQ.
 7
                                Dechert, LLP
 8                              45 Fremont Street
                                26th Floor
 9                              San Francisco, California
                                 94105
10                         BY:  HOWARD M. ULLMAN, ESQ.

11  Transcribed by:             Echo Reporting, Inc.
                                Contracted Court Reporter/
12                              Transcriber
                                echoreporting@yahoo.com
13

14

15

16

17

18

19

20

21

22

23

24

25
```

3

1  <u>Monday, September 22, 2025</u>                              <u>2:02 p.m.</u>

2                        P-R-O-C-E-E-D-I-N-G-S

3                              --oOo--

4       (Call to order of the Court.)

5            THE CLERK:  We are now calling Civil Matter

6  24-4722-YGR, Musk versus Altman, et al.

7       Counsel, starting with the Plaintiff, please state your

8  appearances for the record.

9            MR. MOLO (via Zoom):  Steven Molo and Robert Kry

10  for the Plaintiff.

11            THE COURT:  Good afternoon.

12            MR. PARKKINEN (via Zoom):  And Jaymie Parkkinen

13  for Plaintiff, as well as non-parties Shivon Zilis, Jared

14  Birchall, Musk Foundation and Excession.

15            THE COURT:  Good afternoon.

16            MR. CULLERTON (via Zoom):  Good afternoon, your

17  Honor.  Nate Cullerton from Wachtell Liptom for the OpenAI

18  Defendants.

19            THE COURT:  Good afternoon.

20            MR. ULLMAN (via Zoom):  And good afternoon, your

21  Honor.  Howard Ullman on behalf Microsoft.

22            THE COURT:  Good afternoon.

23       We're here today to discuss the joint discovery letter

24  briefs at ECF numbers 240 and 264.  And I would also like to

25  discuss the joint discovery letter brief that was filed on

4

1   Friday at ECF number 273.

2       First with respect to 240 and 264, let me turn to

3   counsel for Zilis.  The joint discovery letter brief gave a

4   status update concerning her Gmail documents.  Can you

5   please tell me where that stands today?

6           MR. KRY (via Zoom):  Your Honor, I can weigh on

7   this, and I should clarify that we also represent non-

8   parties Birchall and Zilis.

9           THE COURT:  Okay.  Thank you.

10          MR. KRY:  So on -- as we stated in our letter, we

11  made three productions of Gmails prior to Ms. Zilis'

12  deposition on September 12th.  That was a production on

13  September 10th of 106 Gmails, a production on September 11th

14  of 189 Gmails, and then a second production on September

15  11th of 184 Gmails.

16      The following week on September 17th we made a final

17  production of 419 Gmails, and we confirmed to Plaintiffs --

18  pardon me, to defense counsel that day that the production

19  of the Gmails was complete.

20          THE COURT:  Okay.  So from your point of view, the

21  production with respect to Zilis is complete, is that

22  correct?

23          MR. KRY:  Yes, your Honor.

24          THE COURT:  Is that not only Gmails, but in

25  general her production is complete?

5

1          MR. KRY:  I'm not aware of anything else that's

2    outstanding.  Mr. Parkkinen can maybe confirm that.

3          MR. PARKKINEN:  Yes, that's correct.

4          THE COURT:  And what about with Birchall.  Is --

5    are the production of his documents complete?

6          MR. KRY:  So, Birchall's texts, which were

7    produced by Birchall as set forth on the first of those

8    discovery letters, we produced 28 of his text strings on

9    September 5th, another five of his text strings on September

10   9th, and then he sat for his deposition on September 10th.

11   And then we had confirmed that the production of the texts

12   was complete.

13        Birchall also had work emails through Excession

14   Foundation, which is a different, non-party on the case, but

15   it's Mr. Musk's family office, and so they are also

16   represented by us.  And so the Birchall emails had been

17   produced by Excession and Musk Foundation, and that process

18   was also understood to be complete earlier than this, but

19   before issue about the Birchall texts came up.

20        I will note that there's an issue, which we don't think

21   is ripe for resolution today, but as to which OpenAI's

22   counsel has raised concerns in that that there was a third-

23   party production from non-party BMO that's separately

24   represented, that included some Birchall emails that did not

25   show up in the production from Excession to Musk Foundation.

6

The -- and so we've been investigating that.  That matter
has currently been raised with the -- the in-house team that
did the collection of those emails.  And we're told that we
should expect a report back this -- this week.  And so we
certainly plan to continue to engage over that, because we
don't at this time have an explanation for that discrepancy.

THE COURT:  I see.  Okay.

Is there anything else that Plaintiff's counsel or
counsel for the non-parties would like to add in terms of
the status of Birchall and Zilis' productions?

MR. KRY:  Not from us, your Honor.

THE COURT:  Let me turn to OpenAI.  Your thoughts
respect to these two witnesses?

MR. CULLERTON:  Thank you, your Honor.  And I
think just stepping back, I mean I think the primary issue
that is addressed by all -- at this point by all three
pending motions, both as to Mr. Musk and Mr. Birchall and
Ms. Zilis, is that we don't believe that we've received a
fair or complete or timely production on behalf of the three
most important witnesses on the Musk side in this case.  And
we don't believe that we've received fair or reasonable
cooperation from Musk's counsel, who also represents Ms.
Zilis and Mr. Birchall, to address those issues.

An upshot is that in an expedited case initiated by Mr.
Musk, where we are nearing the end of the deposition period,

7

1 we are still learning about significant discovery

2 deficiencies as recently as Friday evening.  And this is in

3 a case where discovery started in April, and which we were

4 repeatedly assured since then by counsel, every time we

5 raised an issue or a question that there's nothing to worry

6 about and the documents are going to be forthcoming, only to

7 find out later that that's not the case.

8      And we think that's still where we are today, and

9 boiled all the way down, the core issue is that the Musk

10 side has produced virtually no text messages exchanged

11 between the three most important witnesses on their side.

12      And just focusing on Birchall and Zilis because that's

13 the first motion that's teed up.  Birchall has produced 31

14 text chains over a 10-year period.  Thirty-one.  And this

15 despite counsel's representation to us over the Labor Day

16 weekend that Mr. Birchall had 450,000 text messages

17 extracted from his mobile device.  Birchall has produced

18 only three text messages with Elon Musk over a 10-year

19 period.  Similar for Ms. Zilis, 13 text chains with Musk

20 over a 10-year period, 13 with Birchall over a 10-year

21 period.

22      And we don't think, and we set this out in both of our

23 letters, that it's remotely credible or plausible that that

24 is the sum total of the text message production between

25 these three individuals, Mr. Musk, Mr. Birchall and Ms.

8

1 Zilis.

2     And just focusing in on Ms. Zilis for a second, she has
3 been one of Musk's closest advisors for nearly a decade on
4 matters relating to OpenAI and to AI generally.  She has
5 four children with Mr. Musk.  She served on the board at
6 OpenAI from 2020 through 2023, and worked with Mr. Musk on
7 OpenAI matters for years before that, and was a Plaintiff in
8 this case until her claims were dismissed.

9     Birchall has likewise been one of Musk's closest
10 advisors for a decade, runs Musk family office at Excession,
11 senior role at the Musk Foundation, was responsible for the
12 donations that are the heart of this case.  Runs day-to-day
13 operations at Musk's AI company, XAI.  And the notion that
14 he has produced three text messages with Mr. Musk over a
15 decade is just simply not credible.

16     And we raised all these issues and questions over the
17 last two months, and have gotten nothing in response but
18 stonewalling.  We asked how many texts between Birchall and
19 Musk have been reviewed by Plaintiff's counsel.  We asked
20 how many texts between Birchall and Zilis had been reviewed
21 by Plaintiff's counsel.  We asked how many Zilis/Musk texts
22 had been reviewed, or how many Zilis/Birchall texts had been
23 reviewed.  Plaintiff's counsel has refused to answer all of
24 those questions.

25     We asked Ms. Zilis at her deposition whether she

1  believed it was possible that she only exchanged 14 text

2  messages with Mr. Musk over a decade, and her counsel

3  instructed her not to answer on the basis of privilege.  So

4  we are left in a position where we're not getting any

5  responses from Plaintiff's counsel, and we've gotten no

6  production from the three most key witnesses in the case.

7       And so I think for the Zilis and Birchall motion that

8  is pending, the one piece of outstanding relief that we are

9  asking for today is that they be -- Zilis and Birchall's

10  counsel be ordered to conduct a linear review of all their

11  text messages exchanged with each other and with Mr. Musk,

12  because we think something has obviously gone wrong with the

13  review process, whether that be the search terms, which

14  aren't picking up relevant text messages, or the review

15  itself, or some involvement by Tesla's counsel.

16       Because your Honor knows on Friday night we learned for

17  the first time that there's some sort of Tesla screen of

18  these documents that is being conducted, and that some issue

19  with this Tesla screen caused some unknown number of Musk's

20  post-2020 text messages to not have been sent to Plaintiff's

21  counsel for review.

22       We have asked -- on Saturday we asked what the nature

23  of that issue was, whether it impacted any Birchall or

24  Zilis' text messages, and we've gotten no response to that

25  question either.  So we think for the Zilis and Birchall

10

1   motion at this time the limited review of a -- the limited

2   relief of a linear review is totally appropriate and

3   warranted.  That's something the OpenAI Defendants did on

4   their side with the custodian text messages for the reason I

5   just said, that often search terms don't adequately pick up

6   the texts.  And given the number of issues that we've

7   encountered and the paltry production that we've received to

8   date from these key witnesses, that's what we're asking for

9   today on Birchall and Zilis.

10          THE COURT:  You've used the term "linear review" a

11  number of time without explaining that you mean by that.  Do

12  you mean that counsel should review every single text

13  message?

14          MR. CULLERTON:  Not -- sorry, and I should have

15  been more precise, your Honor.  So every message exchanged

16  between Zilis and Birchall and every text message each of

17  Zilis and Birchall exchanged with Mr. Musk during the

18  relevant time period.

19      So, in other words, rather than limiting the universe

20  through search terms, reviewing each of the message, which

21  is the approach that the OpenAI Defendants took for their

22  key custodians, Mr. Altman and Brockman, for the reasons I

23  just said, which is, search terms are not always adequate.

24  And clearly here, there's been some type of issue on the --

25  with the review or the search terms, given the virtual

11

1 blackout we've gotten in terms of the text messages

2 produced.

3        THE COURT:  I see.  So the request is that counsel

4 for Plaintiffs and the non-parties should review every text

5 message as between Zilis and Birchall, or as between either

6 of them and Musk, is that correct?

7        MR. CULLERTON:  That's correct, your Honor.

8        THE COURT:  Okay.  And the concern there is that

9 the search terms might not be adequate.  They -- I guess

10 maybe there are two concerns.  One is whether they've

11 collected things from the right place, but the linear review

12 would not address that concern.  It should address whether

13 -- assuming the collections were adequate, whether their

14 search terms or other mechanism to search the other text

15 messages, whether that were sufficient, is that the idea?

16        MR. CULLERTON:  That's correct.  And I mean, we'd

17 ask, since we're here talking about these issues, that we

18 get answers to the questions that we've asked regarding the

19 -- you know, which is part of the relief we asked for in the

20 Musk motion regarding what the nature of the Tesla review

21 was.  Why Tesla's counsel is involved?  How that as -- that

22 may or may not have impacted the collection and review of

23 text messages from Mr. Musk, as well as Mr. Birchall and Ms.

24 Zilis.

25      But, yes, for purpose of the Birchall and Zilis motion,

12

1  your Honor is correct, we would ask for the linear review,

2  which would at least address the existing messages and

3  whether they were -- you know, the search protocol

4  appropriately captured all responsive messages.

5          THE COURT:  Well, one of the other forms of relief

6  that OpenAI asked for with respect to Zilis and Birchall was

7  a declaration explaining the steps that counsel took to

8  comply with the subpoenas.  Are you still seeking that

9  relief?

10         MR. CULLERTON:  Well, we think -- we certainly are

11 seeking that relief, your Honor, given the numerous issues

12 and the inability to receive any answers for the numerous

13 questions we've asked, yes, your Honor.

14         THE COURT:  Let me turn then to Plaintiff's

15 counsel, who are also counsel for Zilis and Birchall.  Can

16 you please give me your thoughts on the two questions of

17 linear review, as OpenAI has described its request, and then

18 also with respect to a declaration.

19         MR. KRY:  Sure.  Just as context though, first of

20 all, your Honor.  The suggestion that this has been some

21 sort of paltry production that demonstrates prima facie that

22 there's some problem with it, I just don't think is

23 accurate.

24     For Zilis we produced over 800 text strings from Ms.

25 Zilis.  That number is more than half of the total text

1   string production that OpenAI made for all of its witnesses

2   combined.  That is a very, very large production of text

3   strings from Ms. Zilis, and certainly does not suggest that

4   obviously there must be something missing.

5        With respect to Mr. Birchall, for sure it was -- it was

6   smaller.  It was a few dozen responsive texts on top of the

7   hundreds of responsive emails that we produced for him.  But

8   that's consistent with what we were expecting, because Mr.

9   Birchall was not involved with OpenAI at all.  He shows up

10  in the documents mainly because he's a financial advisor for

11  Musk, and so he was involved in connection with some of the

12  contributions that Mr. Musk made to OpenAI, but that does

13  not mean that you would expect to see large numbers of texts

14  from Mr. Birchall to Mr. Musk.

15       You know, unlike Ms. Zilis who has children with Mr.

16  Musk and otherwise has a -- you know, many connections with

17  him not related to the case, Mr. Birchall just doesn't have

18  the same sort of pervasive relationship in all aspects of

19  this case that would lead one to suspect that there would be

20  a large number of texts from him.

21       And so I -- like I think before undertaking or ordering

22  additional burdensome steps, there are other types of

23  evidence that OpenAI could have identified if they thought

24  there were missing texts that would be located by a linear

25  review.  For example, finding texts out of the 800 texts

14

1  sent by Ms. Zilis that don't show up in Musk's production or

2  don't show up in Birchall's production, like those are the

3  sorts of real -- real issues that would then warrant further

4  investigation from us.  But just complaining that we want

5  more, we don't want -- you know, we want a great number of

6  texts than we got, I have concerns that that's not a -- not

7  a strong justification for ordering very burdensome steps.

8      And so turning to those steps now, first of all, the

9  linear review, the obvious problem with that, your Honor, is

10 that it's not limited to responsive documents.  I -- or even

11 documents hitting on search terms.  I mean, they're asking

12 for every single text message between Ms. Zilis and Mr. Musk

13 to be reviewed, or between Mr. Birchall and Mr. Musk to be

14 reviewed, regardless of whether it even hits on search

15 terms.  And that's an enormous volume of documents, and it

16 just is not proportional to trying to identify any discovery

17 issues.

18     So with respect to Mr. Zilis (sic) and Mr. Musk, again,

19 they have children together.  They have I don't know how

20 many untold numbers of text communications they would be

21 sending among each other, that there's no realistic prospect

22 of having anything to do with this case whatsoever.  And

23 having to go through every one of those single

24 communications and try and, you know, trace conversations

25 about whose going to pick up the kids or something like

15

1  that, it's crazy, your Honor.  There's no justification for

2  that kind of relief.

3      And, ditto, for Mr. Birchall, even though he's not in

4  some sort of personal relationship or family relationship

5  with Mr. Musk, he handles Mr. Musk's finances across the

6  board.  And that expands well beyond anything remotely

7  relating to OpenAI.

8      And so a text-by-text review of every single

9  communication Mr. Birchall had with Mr. Musk, whether or not

10 it had any relationship to OpenAI, whether or not it hits on

11 search terms, is just very disproportionate from any -- any

12 problem that OpenAI is trying to identify here.

13     And so we would -- and all this is in the context of

14 the parties, both sides, are very, very busy right now, your

15 Honor.  We have 15 depositions being taken in the span of 30

16 days.  We're -- everyone on both sides of this case is

17 extremely busy right now.  And just pulling people off the

18 work that actually needs to get done to get through the

19 deposition period to do this sort of linear review of texts

20 that are not responsive, and that do not hit on search

21 terms, and that have no other reason to believe they'll be

22 helpful except for looking in like a -- for a needle on a

23 haystack of thousands and thousands of non-responsive texts

24 just isn't going to be useful.

25     And to put this in perspective to the -- Mr. Cullerton

16

1  referred to the 425,000 text figure for Mr. Birchall, and I

2  think that's actually very, very telling.  Because the

3  reason why that number came about is that when the text

4  extraction from his phone was initially done, there was a

5  technical problem with the application of the search terms

6  to it, and so that ended up spitting out like everything

7  that was on the phone -- or that it was everything, but it

8  was at least a wildy broader set of parameters than what

9  should have been run based on the search terms, and that's

10 where that 425,000 number came from.

11     Once we actually ran the search terms on that case, you

12 know, then we got it down to a few -- a few hundred texts.

13 And when those were reviewed, that came down to a few dozen

14 texts.  And so that -- those are the numbers that matter.

15 But that 425,000 number, that's the one that matters for a

16 linear review.  Because if we're going to go text by text,

17 regardless of search terms, regardless of responsiveness,

18 and figure out who texted to who on any topic whatsoever,

19 like we are dealing with those kinds of numbers.  And that's

20 just -- you know, that will be a enormous burden and

21 distraction in a case where counsel are very busy.

22         THE COURT:  Well, it's not all of their text

23 messages.  It would be as between Zilis and Birchall or

24 either of them and Musk.  Do you have any numbers for that?

25         MR. KRY:  I don't, your Honor, but it would be --

17

1 I mean, logically, it would be a very large number because,

2 again, Mr. Zilis (sic) and -- I'm sorry, Ms. Zilis and Mr.

3 Musk are -- have a personal relationship, and, I mean, she

4 also works at many different -- several different companies

5 in the Musk broader group of companies.  So, there are going

6 to be many, many non-responsive, irrelevant texts in that

7 set.

8      And for Mr. Birchall, again, it -- there will be a very

9 large number just because he does not much work -- and he

10 does hardly any work in connection with OpenAI, but does

11 plenty of work in terms of Mr. Musk's other -- other

12 finances.  And so the proportion of responsive or relevant

13 emails is just going to be very, very small, which means

14 that a -- a linear review is going to involve hundreds of

15 thousands of times more documents than what you would get

16 through a traditional approach with search terms.

17      And so I do -- you're absolutely right.  It's not --

18 it's not -- we don't have to review every text out of the

19 425,000, but it's still going to be a very large number, and

20 I don't think those are burdens that should be imposed on

21 parties in their current expedited schedule.

22           THE COURT:  I am going to order the linear review

23 because I do not have confidence that Plaintiff's counsel

24 has reviewed the text messages in an appropriate way.

25 OpenAI has made an evidentiary showing that the text

18

1    messages produced for Zilis are -- or what has been produced

2    just can't possibly be right.  That's less clear for

3    Birchall, but definitely for Zilis, and then for Musk as

4    well.  I think OpenAI has carried that evidentiary burden,

5    and so we need to do something about that, something that

6    will address the problem and hopefully solve it.  And I

7    think there are two components.

8         One is for counsel to serve one or more declarations

9    explaining the steps that counsel took to comply with the

10   subpoenas to Zilis and Birchall.  That addresses, you know,

11   where you looked at what devices were searched and things

12   like that.

13        But then the other is for counsel to do this linear

14   review.  Something happened that wasn't supposed to happen,

15   and there was a breakdown in the review and production.  And

16   I do not have confidence that Plaintiff's counsel have done

17   the search for text messages in a way that is rigorous and

18   necessary for this case.  So I am going to order that.

19        I understand that Zilis and Birchall have both been

20   deposed, is that correct?

21             MR. MOLO:  Yes, your Honor.

22             MR. CULLERTON:  Yes, your Honor.

23             THE COURT:  And one of the remedies OpenAI asked

24   for was another deposition.  I'm not going to order that

25   right now.  I am going to order the declaration, and then

1 the linear review.  My view on a second deposition is that

2 OpenAI would need to show that documents produced after the

3 deposition are of sufficient importance that they justify a

4 second deposition.

5     How exactly you make that showing, if you make it,

6 would be open to -- up to OpenAI as the moving party, but

7 I'm just -- I'm not going to automatically say that if text

8 messages or other documents are produced after the

9 depositions, then you automatically get a second one.  I

10 think you have to show that it would be worthwhile to have

11 another deposition.  And so that burden would be on you, if

12 further text messages or other documents are produced.  So

13 that's my thought on how to deal with the request for a

14 second deposition.

15     I do want to -- at the end of the hearing, I want to

16 talk about the big picture and where this leaves the parties

17 as they go forward.  Right now I'm ready to move on to ECF

18 number 273, but let me first turn to Plaintiffs.

19     Is there more that you wanted to say about Zilis and

20 Birchall before I turn to the other joint discovery letter

21 brief?

22          MR. KRY:  Nothing, your Honor.

23          THE COURT:  And how about from AI?

24          MR. CULLERTON:  No, your Honor.  Thank you.

25          THE COURT:  And then from Microsoft?

20

1          MR. ULLMAN:  No, your Honor.

2          THE COURT:  All right.  Thank you.

3      Let's turn to ECF number 273.  One of the items that

4  Plaintiffs identified was that Tesla was apparently able to

5  locate an image of one of Musk's prior phones.  And can you

6  please give me a status update -- and you said that it may

7  contain data from the 2015 to 2020 period.  You weren't sure

8  as of the writing.  Can you please give me an update on the

9  status of that?

10         MR. KRY:  Well, it's that Tesla identified that --

11  well, so for context.  Your Honor ordered a search for prior

12  phones held by different attorneys on the 12th of September,

13  so a week ago Friday.  And then we learned about this data

14  at Tesla which is -- it's not a phone or an image

15  technically, it's a backup extraction of texts that were on

16  a phone.  But our understanding from the -- the Tesla team

17  that recovered this, is that it could well recover -- it

18  could have texts that cover the entire five-year period from

19  2015 to 2020.

20         THE COURT:  Do you now have possession of that

21  extraction?

22         MR. KRY:  No.  So, as we mentioned in prior

23  letters, under Tesla's policies before they release data

24  from their own systems to outside counsel, there needs to be

25  a screen on that data that's done.  The most recent

21

information we have from them is that we're expecting --
we're expecting to receive that data within the next day or
two.

THE COURT:  I see.  And at that point you would
then review for responsive text messages?

MR. KRY:  Correct.  And then at that point we'd
also have a hit count of the number of documents in the
review, and so we'd be able to provide a much more reliable
estimate as to when that review would be complete.

THE COURT:  Okay.  Thank you.

Is there anything that OpenAI could like to say with
respect to that image extraction?

MR. CULLERTON:  We look for ward to understanding
what's on it and whether it is complete, and whether it
contains the text messages.  I'll just make two quick
points, and I'm sure your Honor has zeroed in on this.

I mean, we're asking for the same relief with respect
to Musk, which would be a linear review of his messages with
Zilis and with Birchall for any preserved texts, whether
they be on the pre-2020 -- whether they be pre-2020 or post-
2020, and we think that relief is warranted for all the
reasons we discussed with Birchall and Zilis.

And, in addition, because of these kind of new and
additional and 11th hour disclosures about post-2020 issues
that were never previously disclosed to us, and that only

22

1  came up after we, you know, made multiple joint letter

2  statements and engaged in lengthy correspondence with Musk's

3  counsel.  So that's the first I would make.

4      The second point I would make about the pre-2020 is as

5  of the last update, we got -- Musk's counsel had reached out

6  to something like 33 former counsel, had not yet heard back

7  from -- from all those counsel.  And we certainly think that

8  process should continue as your Honor ordered initially.  I

9  think there's a status report due on the 26th, if I'm not

10  mistaken, on those efforts.

11      Until we know whether this Tesla image is complete or

12  has all the relevant pre-2020 messages, I think the -- the

13  process that's currently underway with other counsel should

14  continue.

15          THE COURT:  All right.  Thank you, counsel.

16      Then also relating to Tesla, but for the post-2020 time

17  frame, it looks like on the day before this joint discovery

18  letter brief was submitted, Plaintiff's counsel commenced an

19  investigation into other text messages that Tesla had.  Can

20  you give me a status update on that, please?

21          MR. KRY:  I can, your Honor.  So, our

22  understanding of this has evolved between last Thursday when

23  it was brought to our attention and the situation today.

24  And unlike location of the initial phone backup that could

25  yield a considerable number of additional texts that we

23

1 didn't previously have, it sounds now that based on our

2 current understanding, this issue with the post-2020 texts

3 is actually much more discrete.  There were two texts that

4 had been produced from Zilis that OpenAI's counsel pointed

5 out, we did not have corresponding texts from in the Musk

6 production.

7      And so recognizing that that was an issue, we -- and

8 investigation was done to look into the cause of that.  And

9 initially, we weren't sure, and it seemed like it may have

10 been a situation where an entire batch of texts had not been

11 transmitted from Tesla to the outside review platform.  We

12 now no longer believes that's the case.

13      And the reason why is, with text strings, it's tricky

14 because you don't always have the exact same documents on

15 both sides.  If you're pulling like a day's worth of texts

16 around the particular text, that can end up being a

17 different set of texts than the ones you would see on the

18 other phone, and that complicated the situation here.

19      For one of the two text strings they identified that

20 showed up in Zilis but not in Musk, on further review we

21 were able to locate the corresponding one, which was a

22 different subset, but it -- we were able to locate it in the

23 Musk production.  And the conclusion was, it should have

24 been produced and it just wasn't because of a responsiveness

25 coding error.  And so that's the situation with that one.

24

1    And then with the other one, upon investigation it was

2  determined that that had been screened from Tesla.  We don't

3  -- or by Tesla, and we don't -- what we've been advised is

4  that the -- the text that showed up on the Musk side of that

5  included personal sort of family type information.  And so

6  that had been pulled out by Tesla, and this was -- this was

7  news to us.  But that's what we were told, and that's why

8  that particular one did not show up.  And so that's the

9  information we have with respect to that.

10    So we don't think this is a broader systemic with an

11  entire batch of texts being not transmitted or lost

12  somewhere.  We think they're one-offs, and they're certainly

13  legitimate concerns for OpenAI to raise, but that's where

14  our investigation stands.

15        THE COURT:  And when do you anticipate completing

16  the production of the responsive text messages for this time

17  period?

18        MR. KRY:  Responsive -- sorry.  For the post-2020

19  time period?  So, I mean, based on -- we will conduct the

20  limited -- pardon me, the linear review that your Honor

21  ordered.  And if additional texts need to be produced as a

22  result of that, that will be done.  I do not have a -- not

23  having personally done the linear review, like what OpenAI

24  is asking for here, and also not knowing what the volume of

25  texts going into that linear review is going to be, I'm not

25

1   able to quantify an estimate for that.

2        In terms of an investigation into the -- an

3   investigation resulting from the two Zilis emails that

4   OpenAI's counsel identified, I'm not sure there's something

5   further to be done there, because our current assessment is

6   that those were both just one-off issues and not symptomatic

7   of any broader problem.

8        I mean, again, Zilis we did produce over 800 text

9   strings for more than half of all of OpenAI's entire text

10  string production for all witnesses.  So I don't -- for

11  Zilis, we just see that there's a issue of having less texts

12  than one would expect, but I don't -- yeah.  Then we'll do

13  the linear review.  I don't know how long that will take,

14  but I'm not sure what other -- what other steps we have to

15  do with respect to the Zilis texts.

16            THE COURT:  All right.  Thank you.

17       Let me turn to OpenAI.  Is there anything you would

18  like to say concerning Musk's texts messages in the post-

19  2020 time frame?

20            MR. CULLERTON:  There is, your Honor, because I

21  still feel like I have no understanding what the issue was

22  on the Tesla side.  I don't think that explanation really

23  told the Court or us anything about what the problem was.

24       And you'll recall, your Honor, that the very first

25  motion we made to your Honor in this case was a motion to

26

1  ensure that Musk's counsel was responsible for discovery

2  over Musk's documents, and not all of Musk controlled

3  entities.  And what it sounds like I've just heard from Mr.

4  Kry, who did not respond to our emails on this subject in

5  advance of this hearing asking for this very information, is

6  that there are messages being screened out by Tesla on

7  apparently grounds that they are personal Musk messages, not

8  even Tesla-related information.  And that is a process that

9  Plaintiff's counsel doesn't seem to have any visibility

10  into.

11      We have no idea what criteria is being used by Tesla's

12  counsel to review Mr. Musk's text messages and release them

13  for review to Plaintiff's counsel.  And that is just not a

14  tenable situation for discovery in this case for a source of

15  evidence that this -- that is this critical.

16      So we would ask for the declaration that clearly sets

17  out what is going on, what is Tesla's counsel doing?  What

18  messages does Musk's counsel have access to?  Is it all of

19  them or not?  And what's being done to remedy the situation

20  in addition to linear review?

21          THE COURT:  Right.  My relief with respect to

22  Musk's text messages is going to be similar as to Zilis and

23  Birchall.  I think OpenAI has proven that there was a

24  significant problem here.  That much is clear.  Whether it's

25  the sources that were searched or whether it was the search

27

1 terms that were used, or whether it's both remains unclear

2 to me.  But I think OpenAI is entitled to a declaration

3 explaining what steps were taken.  And then OpenAI is also

4 entitled to a linear review, meaning that Plaintiff's

5 counsel should review the text messages between Musk and

6 Zilis or Musk and Birchall to see which ones are responsive.

7      If there were search terms used, it seems like either

8 there was a big problem with the search terms.  And so

9 counsel will need to lay eyes on these text messages and see

10 what should be produced.

11      The Court's efforts with the declaration and the linear

12 review are an attempt to solve the problem, but it is clear

13 from what OpenAI has shown that there is a problem and

14 something has indeed gone wrong for the production for

15 Plaintiff's text messages.

16      So that's going to be my ruling with respect to ECF

17 number 273.  I'm going to issue a written order stating

18 this.

19      Now we'd like to move on to where this leaves the

20 parties, but first let me ask Plaintiff's counsel, is there

21 more that you wanted to say with respect to ECF number 273?

22           MR. KRY:  We understand your Honor's order.  I --

23 obviously we would definitely like to discuss the scheduling

24 of the Musk deposition, but perhaps that's what your Honor

25 was going to turn to next.

1         THE COURT:  It wasn't, and that's precisely why I
2    ask questions like that.  Thank you for raising that.
3         My thought with respect to the Musk deposition is --
4    OpenAI, is it correct that you still want to proceed with
5    that deposition on September 26?
6         MR. CULLERTON:  Yes, your Honor.
7         THE COURT:  Then here in my thought.  If you want
8    to proceed with the deposition on September 26, you are free
9    to do so, but you should know that if you want to get a
10   second deposition of him, you'll have to make the same
11   showing that you will with respect to Zilis and Birchall.
12   In other words, if text messages or other documents are
13   produced after his September 26 deposition, you will need to
14   make an evidentiary showing that a second deposition is
15   warranted.  So that will be your burden if you decide to go
16   ahead on September 26, understood?
17        MR. CULLERTON:  Understood, your Honor.
18        MR. MOLO:  Your Honor, Steven Molo for Plaintiffs.
19   I just want to, if I may, add a comment to that.
20        What we're talking about with Musk here, and we can't
21   represent the exact volume, but his phone image from the
22   period 2015 to 2020, so it's five years, and it's a rather
23   -- I think rather likely that we're going to find some text
24   messages.  How important they are to the case isn't clear,
25   but we're going to find some that will certainly be

29

1  responsive and be produced.

2      So, without prejudging anything and without having

3  looked at any of these messages, I think the likelihood of

4  having to come back for a second deposition is substantial.

5      So rather than go through that and -- and go through

6  the process of, you know, apply -- having OpenAI apply for

7  the opportunity to take the deposition and make that showing

8  that your Honor has said that they would have to make, it

9  seems to us more prudent and reasonable to pick another

10 date.  We've offered six specific dates to OpenAI, which

11 would allow us to complete that review.

12     And I'll be very, very direct with your Honor, part of

13 this is the fact of representing Mr. Musk and everyone is

14 busy.  Mr. Altman is busy, everyone is busy.  But having

15 him, you know, come back a second time is going to be a

16 challenge for us.

17     I understand, you know, we're going to do whatever the

18 Court directs us to do, but it would be much simpler and I

19 think much more productive to simply pick another date

20 that's in the not-too-distant future, whereby, you know, for

21 which time we could have done this review and produced Mr.

22 Musk's responsive text messages from that period.

23          THE COURT:  Well, I don't agree with that.

24 Plaintiff should have produced these text messages a long

25 time ago.  And it's entirely Plaintiff's fault that OpenAI

30

1 is not in possession of these text messages.  And I don't

2 think that OpenAI should be punished for something that is

3 Plaintiff's fault.

4    So I'm going to let them go ahead with the deposition

5 on the date that they had noticed, and then they will have

6 to make or satisfy an evidentiary burden to have a second

7 day of deposition.  That burden will be on them.  But

8 Plaintiffs have been dilatory and not diligent in producing

9 these items for discovery, and I don't think that OpenAI

10 should be punished for that.

11    MR. MOLO:  Okay.  I wasn't suggesting that they be

12 punished, I was just suggesting that it might be more

13 efficient to just do it one time.  But --

14    THE COURT:  I understand.  I was -- they -- I

15 think they were count -- what they said in the joint

16 discovery letter brief is that they had been planning on the

17 September 26 date and looking to do the deposition on that

18 date and gearing up for that.  And that's what -- why they

19 characterized it as being punished, but obviously it's not a

20 sanction or anything like that.  I know you weren't

21 suggesting that.

22    MR. MOLO:  Thank you.

23    THE COURT:  Is there anything further Plaintiffs

24 wanted to discuss with respect to the September 26

25 deposition?

1          MR. KRY:  Not from Plaintiffs, your Honor.

2          THE COURT:  For OpenAI?

3          MR. CULLERTON:  No, your Honor.  Thank you.

4          THE COURT:  And for Microsoft?

5          MR. ULLMAN:  No, your Honor.

6          THE COURT:  Okay.  Then let's turn to the picture

7   going forward.  My understanding is that the last fact

8   discovery related deadline is the October 1st deadline to

9   complete fact witness depositions.

10      So Plaintiffs agree that's the last fact discovery

11  deadline?

12         MR. KRY:  Your Honor, with one qualification,

13  which is that the parties on consent have agreed to take one

14  third-party witness deposition after the deadline.  There

15  was a certain witness that the third party's lawyer couldn't

16  -- couldn't make work, but she offered -- offered it up on a

17  subsequent date.  And then the Defendants, to their credit,

18  agreed with us that that could go ahead.  And so we're going

19  to be doing that one on October 8th.

20         THE COURT:  What date was that?

21         MR. KRY:  October 8th in Washington, D.C.

22         THE COURT:  Okay.  Thank you.

23      And then let me turn to OpenAI.  With the exception of

24  that third-party deposition on October 8th, do you agree

25  that the last court-ordered fact discovery deadline is

32

1  October 1st?

2           MR. CULLERTON:  Yes, your Honor.

3           THE COURT:  And, Microsoft, do you agree with that

4  as well?

5           MR. ULLMAN:  Yes, your Honor.

6           THE COURT:  Then in my opinion, October 1st is the

7  close of fact discovery within the meaning of Civil Local

8  Rule 37-3.  As a reminder, that's the local rule that says

9  that any discovery related motions have to be brought within

10 seven days after the close of fact discovery.

11      Now in my opinion, when the parties stipulate to

12 conduct a deposition after the close of fact discovery, and

13 here it seems that you have, then that deadline under Local

14 Rule 37-3 is automatically tolled until that deposition for

15 issues that arise at that deposition.

16      So, for example, if a motion to compel comes out of the

17 October 8th deposition due to an issue that arose at that

18 deposition, you would have seven days after that deposition

19 to raise it.  But other than that, I think that all

20 discovery related motions are due seven days after October

21 1st.

22      And I encourage the parties to look at the commentary

23 associated with Civil Local Rule 37-3, which explains that

24 discovery related has a broad meaning.  It's not just

25 motions to compel, it's motions that are related to

33

discovery, such as motions for sanctions, and spoliation
motions and things like that. So those would generally be
due on October 8th.

     And I'm not highlighting this to be unduly pessimistic.
I'm highlighting this because the parties have raised a
number of important discovery related disputes, not all of
which have been resolved. And I want the parties to be
clear about what I think the deadline is to get further
discovery motions on file and any motions related to
discovery on file.

     And, in general, for fact discovery that's October 8th,
unless, as I've noted, a deposition takes place by the
consent of the parties after the close of fact discovery on
October 1st. And so -- so that's the deadline. So, I
realize that as a result of my orders today, more documents
are likely to be produced by Plaintiffs, but if -- you know,
the deadline to get something on file to ask me to do
something is October 8th.

     Once that passes, if either side has a discovery issue
you want to raise, you will need to go to Judge Gonzalez
Rogers and ask her to modify the case schedule to enable you
to raise that further discovery issue or discovery related
issue, because the deadline in front of me will have run.

     Let me turn to Plaintiff's counsel. Did you have any
questions or commentary?

34

1          MR. MOLO:  I do have a question about that, Judge.

2    You've ordered this linear review, and I just -- we just

3    don't know exactly how long that is going to take,

4    particularly with respect to this long period of time with

5    the data from Mr. Musk's phone.

6        If it -- I mean, we're not going to just do it in a

7    haphazard way.  We're going to do it in a meaningful way

8    with the right resources applied to it.  If that October 1st

9    poses -- date poses a problem for us to do it in a proper

10   way, what should we do?  What would you like us to do?

11         THE COURT:  I would like the -- it looks like Zoom

12   froze there for a minute.  Is it working now?

13         MR. MOLO:  It's fine -- it's fine on my end now.

14   Thank you.

15         THE COURT:  Okay.  Thank you.  If that arises, and

16   I hear what you're saying, that it might arise, then I would

17   like the parties to meet and confer about what you would

18   like to do.  And if you need the discovery schedule pushed

19   back, you will need to make that request for -- to Judge

20   Gonzalez Rogers.  I can't do it.  I make no prediction about

21   what she will or will not be willing to grant.  However, if

22   you run into that problem, she is the person you will need

23   to take it to.

24         MR. MOLO:  Okay.

25         THE COURT:  And let me to turn to OpenAI.  Did you

35

1  have any questions or commentary about these deadlines?

2        MR. CULLERTON:  Yeah, just a point of

3  clarification, your Honor.  Thank you.  Because obviously

4  some of the relief is stemming from these pending motions

5  and may implicate a request for a second deposition that,

6  you know, would not occur until after the 10-8 cutoff.  So

7  do you view that as outside, you know, subject to the local

8  rule or related to a pending motion sufficiently that it

9  would -- it could trail?

10        For example, if we wanted to ask that Mr. Musk be

11  deposed a second time because we receive a number of

12  documents on -- just picking a date, October 1st or October

13  3rd or October 5th, that -- does the same apply, the same

14  guidance you just gave Mr. Molo apply to us?

15        THE COURT:  It does.  For example, if the

16  Plaintiffs produce a big stack of important documents to you

17  on October 9th, and you want -- and the witnesses are

18  unwilling to sit voluntarily for a second deposition, and

19  you want to come into court and get relief, you would need

20  to go to Judge Gonzalez Rogers and ask her to modify the

21  case schedule to allow you to bring that motion, because it

22  would be untimely in front of me.

23        MR. CULLERTON:  Understood.  Thank you for that

24  clarification.

25        THE COURT:  And, Microsoft, is there -- do you

*Echo Reporting, Inc.*

36

1 have any questions or commentary about that?

2          MR. ULLMAN:  No, your Honor.

3          THE COURT:  All right.  That covers the agenda

4 that I had for this hearing.  And, again, I'm going to issue

5 a written order following this hearing.  But let me ask the

6 parties if there's anything else that you would like to

7 address.

8      Plaintiffs, is there anything else that you would to

9 address?

10          MR. MOLO:  Mr. Kry?

11          MR. KRY:  Not to my knowledge.

12      Mr. Parkkinen, anything else on our side?

13          MR. PARKKINEN:  Nothing further at this time.

14 Thank you.

15          THE COURT:  And, OpenAI, anything else that you

16 would like to raise?

17          MR. CULLERTON:  No, your Honor.  Thank you.

18          THE COURT:  And, Microsoft, how about you?

19          MR. ULLMAN:  No, your Honor.

20          THE COURT:  All right.  Thank you, counsel.  The

21 matter is submitted.  We're adjourned.

22      (Proceedings adjourned at 2:46 p.m.)

23

24

25

37

CERTIFICATE OF TRANSCRIBER

1

2

3      I certify that the foregoing is a true and correct

4 transcript, to the best of my ability, of the above pages of

5 the official electronic sound recording provided to me by

6 the U.S. District Court, Northern District of California, of

7 the proceedings taken on the date and time previously stated

8 in the above matter.

9      I further certify that I am neither counsel for,

10 related to, nor employed by any of the parties to the action

11 in which this hearing was taken; and, further, that I am not

12 financially nor otherwise interested in the outcome of the

13 action.

14

15

16

17           Echo Reporting, Inc., Transcriber

18              Thursday, September 25, 2025

19

20

21

22

23

24

25