UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| ELON MUSK, et al.,<br><br>            Plaintiffs,<br><br>    v.<br><br>SAMUEL ALTMAN, et al.,<br><br>            Defendants. | Case No. 4:24-cv-04722-YGR<br><br>**JOINT LETTER BRIEF**<br><br>Judge:  Hon. Yvonne Gonzalez Rogers<br><br>Magistrate Judge:  Hon. Thomas S. Hixson<br><br>Date Action Filed: August 5, 2024<br>Trial Date: March 30, 2026 |

September 19, 2025

The Honorable Thomas S. Hixson
United States District Court, Northern District of California
450 Golden Gate Avenue
San Francisco, CA 94102

      **Re:**   *Musk, et al.* **v.** *Altman, et al.*, **Case No. 4:24-cv-04722-YGR**

Dear Judge Hixson:

      Pursuant to Your Honor's September 12 Order (Dkt. 263), the undersigned counsel for the OpenAI Defendants and Plaintiff Elon Musk respectfully submit this joint letter addressing Musk's production of post-2020 text messages in response to the OpenAI Defendants' discovery requests.

### ATTESTATION

      Pursuant to Civil Local Rule 5.1 regarding signatures, I attest that concurrence in the filing of this document has been obtained from the other signatories.

Dated: September 19, 2025                                    */s/ Jordan Eth*
                                                                             Jordan Eth

- 2 -

| | |
|---|---|
| */s/ Bradley R. Wilson* | */s/ Jaymie Parkkinen* |
| Bradley R. Wilson (admitted *pro hac vice*) | Jaymie Parkkinen, SBN 318394 |
| Nathaniel Cullerton (admitted *pro hac vice*) | Marc Toberoff, SBN 188547 |
| WACHTELL, LIPTON, ROSEN & KATZ | TOBEROFF & ASSOCIATES, P.C. |
| 51 West 52nd Street | 23823 Malibu Road, Suite 50-363 |
| New York, NY 10019 | Malibu, CA 90265 |
| Telephone: (212) 403-1000 | Telephone: (310) 246-3333 |
| Facsimile: (212) 403-2000 | Facsimile: (310) 246-3101 |

*Attorneys for Defendants Samuel Altman, Gregory Brockman, OpenAI, Inc., OpenAI L.P., OpenAI, L.L.C., OpenAI GP, L.L.C., OpenAI OpCo, LLC, OpenAI Global, LLC, OAI Corporation, LLC, OpenAI Holdings, LLC, OpenAI Startup Fund Management, LLC, OpenAI Startup Fund GP I, L.L.C., OpenAI Startup Fund I, L.P., OpenAI Startup Fund SPV GP I, L.L.C., OpenAI Startup Fund SPV GP II, L.L.C., OpenAI Startup Fund SPV GP III, L.L.C., OpenAI Startup Fund SPV GP IV, L.L.C., OpenAI Startup Fund SPV I, L.P., OpenAI Startup Fund SPV II, L.P., OpenAI Startup Fund SPV III, L.P., OpenAI Startup Fund SPV IV, L.P., Aestas Management Company, LLC, and Aestas LLC*

Steven F. Molo (*pro hac vice*)
Robert K. Kry (*pro hac vice*)
Jennifer Schubert (*pro hac vice*)
MOLOLAMKEN LLP
430 Park Avenue
New York, NY 10022
Telephone: (212) 607-8160

*Attorneys for Plaintiffs Elon Musk and X.AI Corp.*

## **OpenAI Defendants' Statement**

*Introduction.* Something has gone terribly wrong with the production of Elon Musk's documents. For months, OpenAI has been asking Plaintiffs' counsel a simple but critically important question: How could it be that Musk has produced just 37 texts not copying Sam Altman over the ten-year review period, including zero texts with Shivon Zilis and only two texts with Jared Birchall (both with Altman as well)? For months, Plaintiffs have refused to acknowledge the implausibility of this glaring hole in the Musk discovery record, repeatedly assuring OpenAI that all of Musk's post-2020 texts had been preserved, that Plaintiffs' counsel had diligently gathered and reviewed them for responsiveness, and that there was no more evidence to be produced.

Tonight those assurances crumbled. After receiving OpenAI's section of this joint letter, which identified specific examples of responsive, and highly relevant, post-2020 messages that Musk had failed to produce, counsel changed its story. Citing the results of an "investigation" that apparently started yesterday, Plaintiffs' counsel finally admitted that Musk has failed to produce responsive texts.[1] This failure, it is said, was caused by an "unknown issue" that occurred in the "transmission process" from Tesla—a Musk-controlled company that is not a party to this case—to "Plaintiff's e-discovery vendor."

Everything about this disclosure is alarming. Before today, Plaintiffs never told OpenAI that Tesla employees—individuals beholden to Musk but not accountable to this Court—were conducting an "independent screen" of Musk's text messages. Although Plaintiffs have indicated that some of Musk's business emails would need to be reviewed by SpaceX personnel to safeguard national security interests, they disclosed no similar concerns with Musk's personal texts, nor would that make any sense. This lack of candor casts significant doubt on Plaintiffs' entire discovery program. The delays associated with Tesla's (undisclosed) involvement have also created a significant practical problem: Musk is being deposed on September 26, and as of now, Plaintiffs cannot even estimate when the missing Musk text messages will finally be produced.

*Background.* Musk's Phase I claims rest heavily on allegations about events post-dating his affiliation with OpenAI. For example, Musk has put at issue:

- OpenAI-Microsoft transactions announced in March 2021 and January 2023;
- Altman's removal from and subsequent reinstatement to the OpenAI board in November 2023; and
- OpenAI's deliberations regarding a potential recapitalization of its for-profit arm as a public benefit corporation, which began in the first half of 2024 and continue today.

Musk has commented extensively about these events, as well as OpenAI and Altman, in recent years. *See* Exs. A-D. Yet Musk has produced almost no private messages from this period on these subjects: just one text about Microsoft that does not include Altman; zero texts about

---

[1] Counsel attempts to justify its failure to investigate sooner by claiming that it was previously unaware of the missing Musk texts that OpenAI cites in this letter. But those texts were produced by Zilis—who is represented by the same law firms that represent Musk in this action—and OpenAI has been raising concerns about the paucity of Musk's text production since mid-July.

Altman's ouster; and zero texts about OpenAI's potential recapitalization. Nor has Musk produced or logged the contemporaneous record of communications that must exist (or have once existed) concerning:

- Musk's pursuit of OpenAI books and records in March 2023, as he was forming xAI;
- the filing of a state court complaint against OpenAI and others in February 2024; and
- the filing of this action in August 2024.

There can be no doubt that Musk continued to discuss OpenAI with Zilis and Birchall, in particular, from 2020 forward. Zilis has been Musk's closest confidant and advisor regarding AI generally, and OpenAI specifically, for years. From January 2020 through February 2023, Zilis served as a director on OpenAI's board, a position she took with Musk's encouragement for the express purpose of keeping him informed about OpenAI's affairs. *See, e.g.*, Ex. E (February 2018 Zilis-Musk text discussing Musk's preference for Zilis to "stay close and friendly to OpenAI to keep info flowing"). Zilis is also the mother of four of Musk's children and admitted that she spoke with Musk as recently as the morning of her deposition in this case. Musk has not produced a single text or other message with Zilis—from either the pre- or post-2020 time periods.

As for Birchall, he holds or has held senior positions at five Musk entities over the past ten years. Birchall testified at deposition that he exchanged written communications with Musk at least every other day, rarely by email. Although Birchall claimed that he and Musk have almost exclusively used messaging services set to auto-delete for many years, there are significant reasons to question that story. First, Musk has had a duty to preserve his documents for at least the last several years, a duty that Musk would have violated by using disappearing messages as the primary means of communicating with Birchall or others in his inner circle. Second, during the Twitter merger litigation in 2022, Musk was forced to belatedly turn over—under threat of sanctions—dozens of responsive texts with Birchall from 2022.[2] Musk, however, has produced only two texts with Birchall in this case (both of which included Altman).

As Plaintiffs now acknowledge, clear evidence already exists in the record that Musk has failed to produce responsive messages sent and received after 2020:

1. After the parties submitted their initial joint letter regarding Musk's texts on September 3, Zilis produced two obviously responsive post-2020 texts with Musk, one from October 23, 2022 and one from November 20, 2023. These texts were produced without metadata and with Musk identified by the alias "Schrodinger's Cat." The texts concern core issues in Phase I of this litigation, including Musk's purported donations to OpenAI, OpenAI's formation of a capped-profit subsidiary, and OpenAI's relationship with Microsoft. *See* Exs. F; G. Musk produced neither text.

2. In addition, Musk's former chief of staff, Sam Teller, produced messages he exchanged with Musk in October 2024 relating to the departure of another OpenAI founder, Ilya

---

[2]    https://s3.documentcloud.org/documents/23108357/redacted-version-of-exhibits-a-j-to-letter-to-the-honorable-kathaleen-st-j-mccormick-from-edward-b.pdf (pp. 64-69).

Sutskever, from the company. Ex. H. Musk did not produce this document, which appears to contain direct messages (DMs) sent via Musk's X platform.

***Requested Relief***. First, Musk should be ordered to submit a declaration from lead counsel of record explaining (i) the role that Tesla and any other Musk-controlled company has played in the collection, review, and production of Musk's texts and other documents; (ii) the details of the "transmission issue" that prevented Musk from timely producing all his responsive post-2020 texts; and (iii) the volume of texts affected by this error. Second, Musk should be ordered to conduct a linear review of all preserved texts with Zilis, Birchall, and Teller to identify any responsive communications (*e.g.*, any communications about OpenAI, Altman, or this action).

Third, Musk should be ordered to appear for a second deposition to answer questions about any texts that are not produced within 48 hours of his first deposition (set for September 26). Seeking to avoid this remedy, Musk just hours ago proposed that his deposition be postponed to the very end of the court-ordered window or after it. The parties agreed on the date for Musk's deposition in mid-July, and OpenAI and its counsel have built their deposition program—including witness allocations and travel arrangements—in reliance on that date. Allowing Musk to move his deposition at the eleventh hour because of his own discovery failures rewards Musk and prejudices OpenAI. Musk should appear for deposition next week as noticed, and he should bear the consequence of his own delayed production by returning for questioning about late-arriving texts.

Plaintiffs argue that the Court's intervention is unnecessary because they have supposedly "identified the likely cause of the missing texts." But Plaintiffs had months to sort out why Musk's texts were missing and failed to conduct a reasonable inquiry. If the Court had not ordered the parties to submit this joint letter, the Tesla "transmission issue" would never have come to light, and an untold number of responsive Musk text messages would have been kept out of the record. It is clear that Plaintiffs will not make a fair production of Musk's texts unless ordered to do so.[3]

---

[3] Plaintiffs informed the OpenAI Defendants for the first time in their section of this letter that Tesla retained an image of Musk's old phone that "may contain data from the 2015-2020 period." The OpenAI Defendants intend to follow up on this disclosure promptly and in advance of Plaintiffs filing their status report on September 26 per the Court's recent order. *See* Dkt. 263 at 2.

**Plaintiff's Statement**

Plaintiff maintains that the limited number of Mr. Musk's post-2020 text messages relating to OpenAI's founding and early operations (2015-2020), which constitute the subject matter of Phase I, is consistent with his 2020 disengagement with the organization. However, upon receiving OpenAI's portion of this joint letter yesterday afternoon—which brought two post-2020 Musk-Zilis text messages to the attention of Plaintiff's counsel for the first time—we immediately commenced an investigation into the matter. As Plaintiff has previously informed the Court and OpenAI, Plaintiff's document review process includes having Tesla's counsel screen data for sensitive information. *See, e.g.*, Dkt. 240 at 4 (describing Tesla's requirement that "extracted texts be screened for sensitive Tesla data before being released to counsel"); Dkt. 240-4 at 1 (similar). This process applies to Mr. Musk's mobile phone as well, which he uses for both personal and business-related communications. Our preliminary investigation has revealed that after Tesla's counsel had completed their review of Mr. Musk's text data, an unknown issue occurred during the transmission process to Plaintiff's e-discovery vendor, resulting in a batch of Mr. Musk's text data not being ingested into Plaintiff's review platform. The exact cause of the transmission issue is not yet known, but Plaintiff's counsel are working diligently to retrieve the missing data and remain committed to reviewing and producing any responsive materials as expeditiously as possible.

OpenAI's only other alleged discrepancy relates, not to Mr. Musk's text messages, but to unproduced "direct messages (DMs) sent via Musk's X platform" to Sam Teller—another dispute that OpenAI is raising for the first time in this joint letter, having failed to meet and confer on the subject beforehand. This topic is beyond the scope of the joint submission the Court ordered and is not ripe for consideration. Defendants likewise have not produced social media direct messages from their own custodians, even though those custodians sometimes used DMs to communicate. For example, Sam Altman testified at his deposition that he and Mr. Musk exchanged DMs regarding Mr. Altman's failure to acknowledge Mr. Musk as a co-founder of OpenAI in a public Twitter/X post, Altman Dep. 159:23-160:11, yet none of those messages were produced.[4]

Given that Plaintiff has identified the likely cause of the missing texts, the relief sought by OpenAI is unnecessary. OpenAI has not shown that the additional information it seeks or a "linear review" of the custodians' texts would serve a useful purpose. Instead, those tasks would only impose burdens on Plaintiff's counsel who are already heavily engaged in preparing for and conducting fact depositions. Plaintiff is actively working to obtain this missing data and will produce any responsive non-privileged messages uncovered through this process.

Finally, as an additional matter, Plaintiff wishes to update the Court on his efforts to locate pre-2020 text messages from prior cases involving Mr. Musk. Within hours of the Court's September 12 Order, Plaintiff's counsel contacted general counsel at Tesla, Neuralink, SpaceX, and the Boring Company. Counsel also compiled an exhaustive list of 333 prior cases involving

---

[4] OpenAI's reference to auto-deleting Signal messages is similarly far beyond the scope of the submission this Court ordered. OpenAI produced no Signal messages either, even though their document production shows that some of their witnesses used Signal to communicate about case-related matters. OPENAI_MUSK00024357, OPENAI_MUSK00024284.

Mr. Musk or his companies since 2015, and narrowed that list to 33 cases from the relevant period which had proceeded to discovery. Plaintiff's counsel then began systematically contacting counsel of record in those matters. The former counsel who have responded as of this filing have indicated they either never had or no longer possess Mr. Musk's data from the relevant timeframe. Today, however, we were informed that Tesla was able to locate an image of one of Mr. Musk's prior phones that may contain data from the 2015-2020 period. Searches are now underway to determine whether this image contains responsive messages. If it does, Plaintiff will produce the responsive non-privileged messages as soon as possible. Mr. Musk's deposition should be postponed to ensure adequate time to produce any responsive texts. Plaintiff's counsel have proposed six different dates within the next three weeks when Mr. Musk could be made available.