# EXHIBIT 1.1

1  MARC TOBEROFF (CA SBN 188547)
   MToberoff@toberoffandassociates.com
2  JAYMIE PARKKINEN (CA SBN 318394)
   JParkkinen@toberoffandassociates.com
3  TOBEROFF & ASSOCIATES, P.C.
   23823 Malibu Road, Suite 50-363
4  Malibu, CA 90265
   Telephone: (310) 246-3333
5
   STEVEN F. MOLO (*pro hac vice*)
6  ROBERT K. KRY (*pro hac vice*)
   JENNIFER M. SCHUBERT (*pro hac vice*)
7  MOLOLAMKEN LLP
   430 Park Avenue
8  New York, NY 10022
   Telephone: (212) 607-8160
9
   *Attorneys for Plaintiffs Elon Musk*
10 *and X.AI Corp.*

11                    UNITED STATES DISTRICT COURT

12                   NORTHERN DISTRICT OF CALIFORNIA

13                           OAKLAND DIVISION

14 | ELON MUSK et al.,          | Case No. 4:24-cv-04722-YGR |
15 |     Plaintiffs,             |                             |
16 |     v.                      | **DECLARATION OF JAYMIE PARKKINEN** |
17 | SAMUEL ALTMAN et al.,       |                             |
18 |     Defendants.             |                             |

**CONFIDENTIAL**

# DECLARATION

I, Jaymie Parkkinen, declare as follows:

1. I am a member of the bar of the State of California and an associate at the law firm Toberoff & Associates, P.C., counsel of record for Elon Musk ("Musk" or "Plaintiff"), Shivon Zilis ("Zilis"), and Jared Birchall ("Birchall"). I submit this Declaration pursuant to the Court's September 22, 2025 order. Dkt. 276. Except where otherwise stated, I have personal knowledge of the facts set forth herein and, if called as a witness, could and would so testify.

*Zilis Requests for Production*

2. OpenAI Defendants ("OpenAI") served Requests for Production of Documents on non-party Zilis ("RFPs") on April 7, 2025. OpenAI did not serve Zilis with a document subpoena.

3. Zilis served responses and objections to OpenAI's RFPs on April 28, 2025.

4. On or around May 8, 2025, we prepared a list of search terms to run against collected data.

5. On or around May 9, 2025, we began coordinating a plan to obtain Zilis's cell phone data and personal emails.

6. In late May and early June 2025, counsel for the parties began to meet and confer on the scope of the RFPs.

7. I believe the scope of the RFPs was largely agreed upon on or around June 18, 2025.

8. On or around June 25, 2025, we were informed that in the process of collecting the cell data from Zilis's iPhone, Apple, the phone manufacturer, placed an automatic security hold on the data due to its large volume, preventing it from being transmitted. We were further informed that this hold was due to end on or around July 7, 2025.

9. After this Apple security hold was lifted, our e-discovery team attempted to obtain the data from Zilis's iPhone. We were then informed that numerous bugs in the extraction software had caused repeated issues in the data extraction process.

10. We were further informed that once the data extraction was obtained, the issues with the software continued during application of search terms to the extracted data. For instance,

when the search terms were run against the data, the program indicated it would take weeks to return the data that hit on those terms. Repeated correspondence with the software vendor ensued to patch the various bugs as they arose.

11. On or around August 1, 2025, we ultimately decided to abandon use of the problematic software and try another software tool to run the searches beginning this same day.

12. We were informed that, on or before August 6, 2025, the renewed searches had been run and the data was ready for review.

13. We were operating with the understanding that Zilis's personal emails would be obtained in the process of her cell phone data extraction, but that did not turn out to be the case.

14. On August 22, 2025, Zilis began making rolling productions of her text messages.

15. On or around August 26, 2025, we coordinated with our e-discovery team to obtain Zilis's personal emails.

16. On August 27, 2025, we were informed that Zilis's personal email data export had been initiated.

17. On August 29, 2025, we were informed that Gmail had implemented a 48-hour export hold preventing the export of Zilis's personal emails, with no known work around.

18. On August 31, 2025, we were informed that the Gmail hold was lifted, and the data had been exported.

19. On or around September 7, 2025, we began reviewing Zilis's personal emails for privilege and responsiveness.

20. On September 9, 2025, Zilis produced the final batch of her text messages.

21. On September 10, 2025, Zilis began making rolling productions of her personal emails.

22. On September 11, 2025, we notified OpenAI's counsel that we had identified what appeared to be OpenAI's privileged information. OpenAI's counsel requested that all Zilis Gmails with top-level @openai.com addressees be clawed back and sequestered pending further review. We complied with that request and sequestered approximately 1,300 documents on the review platform. The parties have not yet agreed on a plan for reviewing those documents.

23. On September 17, 2025, Zilis produced the final batch of her personal emails, with the exception of the documents sequestered at OpenAI's counsel's direction.

**_Birchall Subpoena_**

24. On June 27, 2025, we accepted service of the Birchall document subpoena.

25. On or around July 3, 2025, we began investigating where documents concerning Birchall that were reasonably likely to contain responsive information might be located. We concluded that likely repositories included Birchall's email accounts at Excession, LLC and Musk Foundation, which documents were produced by those entities, as well as Birchall's cell phone.

26. On July 11, 2025, we served responses and objections to the Birchall subpoena.

27. On or around July 15, 2025, counsel for the parties met and conferred briefly regarding the Birchall subpoena.

28. On or around July 22, 2025, we initiated efforts to obtain data from Birchall's cell phone.

29. On August 1, 2025, we informed OpenAI's counsel that Birchall's personal email accounts were not reasonably expected to house responsive documents.

30. We were informed that due to Birchall's extremely demanding work and travel schedule, there were challenges in coordinating the data extraction from Birchall's cell phone resulting in the rescheduling of plans to conduct such extraction.

31. We were informed that on or around August 27, 2025, the data from Birchall's cell phone was extracted.

32. On September 5, 2025, Birchall began making rolling productions of his text messages.

33. On September 9, 2025, Birchall produced the final batch of his text messages

**_Musk's Text Messages_**

34. We were informed that after Musk's cell data was extracted and the search terms run, that subset of data was transmitted to Tesla's legal department.

35. We were informed that Tesla's in-house counsel conducted an initial review of the data for Tesla's sensitive business information as well as Musk's sensitive personal information.

**CONFIDENTIAL**

36. We were informed that the resulting data was then transmitted to Plaintiff's discovery platform.

37. No other Musk-affiliated company has played any role in the collection, review, or production of Musk's texts.

38. In the afternoon on September 18, 2025, OpenAI's counsel sent us its half of a court-ordered status update. Dkt. 263.

39. In OpenAI's half of the letter, it identified two text messages between Musk and Zilis that Zilis produced, but Musk had not.

40. As of September 19, 2025, we believed this production discrepancy may have been a result of an unknown transmission issue between Tesla's and Plaintiff's discovery vendors that had occurred after Tesla had completed its initial review of Musk's texts.

41. Our investigation continued over the weekend, and by September 23, 2025 we were able to conclude that there had not been a transmission issue.

42. Rather, as described during the September 23 hearing before Judge Hixson, we believe that the Musk side of the text thread beginning with ZILIS-0002342 had been inadvertently omitted from Musk's production due to a coding error when it should have been produced. We have no reason to believe that this error had any broader effect beyond this specific text message thread. The document beginning with ZILIS-0002319, while containing some responsive material, primarily contained a screenshot of a different text message exchange between Musk and Sam Altman. Musk had already produced the duplicate native file associated with the original Musk/Altman text exchange. *See* 2024MUSK-0006375. We are informed that the Musk side of the text exchange was withheld pending redaction, since it contained personal photos and information about Musk's young children.

43. I declare under penalty of perjury that the foregoing is true and correct.

Executed on September 24, 2025, at San Francisco, California.

                                                                                   */s/ Jaymie Parkkinen*
                                                                                   Jaymie Parkkinen

# PROOF OF SERVICE

I, Jaymie Parkkinen, declare:

I am over the age of eighteen years and not a party to the within action. I am a resident of or employed in the county where the service described below occurred. My business address is 23823 Malibu Road, Suite 50-363, Malibu, CA 90265. On the date indicated below, I caused the following:

**DECLARATION OF JAYMIE PARKKINEN**

to be served as follows:

[X]   **BY ELECTRONIC MAIL** -  I caused the above-described document to be served by electronic mail transmission on the interested parties noted below, where an electronic mail address is indicated.

William Savitt
*wdsavitt@wlrk.com*
Bradley R Wilson
*brwilson@wlrk.com*
Sarah Eddy
*skeddy@wlrk.com*
Nathaniel Cullerton
*ndcullerton@wlrk.com*
Ioannis Drivas
*iddrivas@wlrk.com*
Kelsey Borenzweig
*kaborenzweig@wlrk.com*
WACHTELL, LIPTON, ROSEN & KATZ

Russell Cohen
*russ.cohen@dechert.com*
Nisha Patel Gupta
*nisha.patelgupta@dechert.com*
Howard Ullman
*howard.ullman@dechert.com*
Jay Jurata
*jay.jurata@dechert.com*
Andrew Levander
*andrew.levander@dechert.com*
DECHERT LLP

Jordan Eth
*jeth@mofo.com*
William Frentzen
*wfrentzen@mofo.com*
David Wiener
*dwiener@mofo.com*
MORRISON & FOERSTER LLP

I declare under penalty of perjury that the foregoing is true and correct. Executed on September 24, 2025, at San Francisco, California.

                                             */s/ Jaymie Parkkinen*
                                             Jaymie Parkkinen