# EXHIBIT 2

| | |
|---|---|
| **From:** | Jaymie Parkkinen |
| **To:** | Wilson, Bradley R. |
| **Cc:** | Savitt, William D.; Marc Toberoff; Cohen, Russell P. (Dechert LLP); Levander, Andrew J. (Dechert LLP); Ullman, Howard; Jurata, John A. (Dechert LLP); Patel Gupta, Nisha; Eddy, Sarah K.; Cullerton, Nate; Eth, Jordan D. (Morrison & Foerster, LLP); Frentzen, William; Wiener, David J. (Morrison & Foerster, LLP); David, Zachary M.; Kry, Robert K. (MoloLamken LLP); Schubert, Jennifer; Tapernoux, Camila A.; Pilgrim, Dara |
| **Subject:** | Re: Musk v. Altman - Case No. 4:24-cv-04722-YGR |
| **Date:** | Monday, September 29, 2025 7:49:49 PM |

**\*\*External Email-Use Caution\*\***

**CONFIDENTIAL**

Brad:

**Thank you for the courtesy extension. Please see our responses to your questions below in blue.**

<u>Zilis</u>

1. Was **Zilis's** cell phone **imaged**?

    a. If so, when and by whom?

    b. If not, how did Plaintiffs' counsel collect Zilis's text messages?

- Zilis's phone was not imaged. Musk's IT personnel extracted the text data.

2. Who informed Plaintiffs' counsel that Apple had "placed an automatic security hold on [the Zilis] data" and what was the exact date of that communication?

- Tesla's counsel informed us of the Apple hold. This was communicated orally and we are not sure of the exact date of this communication, but believe it was on or before June 25, 2025.

3. When was the Apple security hold lifted?

- We do not know the precise date, but believe it was on or around July 7, 2025.

4. What "extraction software" was used to extract the Zilis data?

- ModeOne.

5. Who informed Plaintiffs' counsel that "bugs in the extraction software had caused repeated issues in the data extraction process"?

- Mr. Musk's IT personnel.

6. What "program" is referenced in ¶ 10 of the declaration?

- Pinpoint Harvester.

7. What "software vendor" is referenced in ¶ 10 of the declaration?

- Pinpoint Labs.

8. What software did Plaintiffs' counsel "abandon" and what was the alternative "software tool" that Plaintiffs' counsel decided to use?

- We instructed Musk's IT personnel to abandon Pinpoint Harvester; we decided to use RelativityOne instead.

9. What was the basis for Plaintiffs' counsel's understanding that "Zilis's personal emails would be obtained in the process of her cell phone data extraction" and how did that "not turn out to be the case"?

- We had a call with our discovery vendor in April or May 2025, and were under this impression.

10. Who handled the Zilis "personal email data export"?

- Tesla IT personnel.

11. Did anyone at Tesla play a role in the review of Zilis's documents?

- Tesla's in-house counsel reviewed her text messages for sensitive Tesla data and sensitive personal information such as family photos, and then transmitted the data to us. For Zilis's emails, Tesla provided them directly to us for initial review, we then transmitted the responsive emails to Tesla to review for sensitive Tesla/personal data.

12. Did anyone at any other Musk-controlled company play a role in the review of Zilis's documents?

- Not to our knowledge.

13. If the answer to (11) or (12) is yes, describe the role the relevant company or companies played in the review.

- See above.


Birchall

1. Who informed Plaintiffs' counsel that data from Birchall's cell phone had been extracted on or around August 27, 2025?

- Tesla IT personnel.

2. Was Birchall's cell phone imaged?
	a. If so, when and by whom?

    b. If not, how did Plaintiffs' counsel collect Birchall's text messages?

- Birchall's cell phone was not imaged. Cellebrite was used to extract the text data instead.

3. Did anyone at Tesla play a role in the review of Birchall's documents?

- Tesla's in-house counsel conducted a review for sensitive Tesla and personal data.

4. Did anyone at any other Musk-controlled company play a role in the review of Birchall's documents?

- Not to our knowledge.

5. If the answer to (3) or (4) is yes, describe the role the relevant company or companies played in the review.

- Tesla reviewed data for sensitive Tesla and personal data before releasing to us.

Musk

1. Was Musk's cell phone **imaged**?

    a. If so, when and by whom?

    b. If not, how did Plaintiffs' counsel collect Musk's text messages?

- Musk's cell phone was imaged on or before June 10, 2025 by Musk's IT personnel.

2. Which employees at Tesla handled Tesla's "initial review of Musk's texts"?

- Tesla's in-house counsel conducted the initial review for sensitive Tesla and personal data.

3. When did the Tesla "initial review" take place?

- In or around mid-June 2025.

4. What instructions were the Tesla employees who conducted the review given?

- We understand that Tesla required that it review the data for sensitive Tesla or personal information before releasing the data to third parties.

5. Why was Tesla given responsibility for screening out "Musk's sensitive personal information"?

- Plaintiff's counsel did not give Tesla responsibility for conducting this review. Tesla required that it review the data for sensitive Tesla or personal information before releasing the data to third parties.

6. Why did Plaintiffs' counsel initially conclude that there had been a "transmission issue" that affected the transfer of Musk's texts from Tesla to Plaintiffs' counsel?

- Tesla had stated that it transmitted the data to us, but we could not initially locate the two text message threads OpenAI had identified in its joint letter to the Court in our database. As a result, we believed something had happened during the transmission.

7. What was involved in the "investigation" that Plaintiffs' counsel conducted to satisfy itself that there had not in fact been any "transmission issue"?

- We had our discovery vendor do a comprehensive search of our database, traced back where Tesla stated the documents had been transferred from, and were informed by Tesla that it was also trying to locate the documents. Eventually we located the two documents in question.

8. What steps, if any, has Plaintiffs' counsel taken to satisfy itself that the "coding error" referenced in ¶ 42 did not affect any other Musk text threads?

- After reviewing some additional Musk sides of Musk-Zilis text messages, we did not identify any other coding issues.

9. How is it that Musk's version of the text chain produced at ZILIS-0002319 contains "personal photos and information about Musk's young children" that do not appear in the Zilis version of that text chain that Zilis produced?

- We are not certain. It is possible that the Musk version of the text exchange includes additional messages at the beginning or end of the chain that were not included in the Zilis version.

10. Who is responsible for the "redaction" process referenced in ¶ 42 and when will that process be completed?

- Plaintiff's counsel will coordinate with Tesla to produce a redacted version of this document.

11. Are there any other Musk text messages that are being withheld pending this redaction process?

- We are not aware of any other text messages being withheld pending redaction.

12. Did Tesla withhold any Musk texts that are responsive? If so, on what basis?

- We are informed that Tesla did not.

**Regards,**

**Jaymie Parkkinen**
**Toberoff & Associates, P.C.**
**23823 Malibu Road, Suite 50-363**
**Malibu, California 90265**
**Tel: 310.246.3333**
**Fax: 310.246.3101**
_____

This message and any attached documents may contain information from Toberoff & Associates, P.C. that is confidential and/or privileged. If you are not the intended recipient, you may not read, copy, distribute, or otherwise use this information. If you have received this transmission in error, please notify the sender immediately by reply email and then delete this message.

**On Sat, Sep 27, 2025 at 2:55 PM Wilson, Bradley R. <BRWilson@wlrk.com> wrote:**

> Jaymie,
>
> As a professional courtesy, and based on our understanding that you intend to provide substantive responses, we are willing to give you until 5:00 p.m. PDT on Monday to respond to the questions from our September 25 email.
>
> Regards,
>
> Brad
>
> ---
>
> **From:** Jaymie Parkkinen <jparkkinen@toberoffandassociates.com>
> **Sent:** Friday, September 26, 2025 6:05 PM
> **To:** Wilson, Bradley R. <BRWilson@wlrk.com>
> **Cc:** Savitt, William D. <wdsavitt@WLRK.com>; Marc Toberoff <mtoberoff@toberoffandassociates.com>; Cohen, Russell P. (Dechert LLP) <russ.cohen@dechert.com>; Levander, Andrew J. (Dechert LLP) <andrew.levander@dechert.com>; Ullman, Howard <Howard.Ullman@dechert.com>; Jurata, John A. (Dechert LLP) <jay.jurata@dechert.com>; Patel Gupta, Nisha <Nisha.PatelGupta@dechert.com>; Eddy, Sarah K. <SKEddy@wlrk.com>; Cullerton, Nate <NDCullerton@wlrk.com>; Eth, Jordan D. (Morrison & Foerster, LLP) <jeth@mofo.com>; Frentzen, William <WFrentzen@mofo.com>; Wiener, David J. (Morrison & Foerster, LLP) <dwiener@mofo.com>; David, Zachary M. <ZMDavid@wlrk.com>; Kry, Robert K. (MoloLamken LLP) <rkry@mololamken.com>; Schubert, Jennifer <JSchubert@mololamken.com>; Tapernoux, Camila A. <CTapernoux@mofo.com>; Pilgrim, Dara <DPilgrim@mofo.com>
> **Subject:** Re: Musk v. Altman - Case No. 4:24-cv-04722-YGR

> **\*\*External Email-Use Caution\*\***
>
> **Brad:**
>
> We disagree with your view that the September 24 declaration fails to comply with the Court's order. Nevertheless, in the spirit of transparency and cooperation, we are willing to address your inquiries where appropriate.
>
> As you know, we are currently preoccupied with Mr. Musk's deposition, which will likely consume our entire day today leaving little time tomorrow to answer the 30+ questions you asked last night. As a professional courtesy, we ask that you permit us until Monday, September 29 to respond on these matters.
>
> Thank you.
>
> **Jaymie Parkkinen**
>
> **Toberoff & Associates, P.C.**
>
> **23823 Malibu Road, Suite 50-363**
>
> **Malibu, California 90265**
>
> **Tel: 310.246.3333**
>
> **Fax: 310.246.3101**
>
> _____
>
> This message and any attached documents may contain information from Toberoff & Associates, P.C. that is confidential and/or privileged. If you are not the intended recipient, you may not read, copy, distribute, or otherwise use this information. If you have received this transmission in error, please notify the sender immediately by reply email and then delete this message.
>
> On Thu, Sep 25, 2025 at 5:43 PM Wilson, Bradley R. <**BRWilson@wlrk.com**> wrote:
>
>> Jaymie,
>>
>> The declaration that you served last night does not comply with Judge Hixson's

recent order.

First, as to the Zilis and Birchall documents, rather than explaining the steps that "Plaintiffs' counsel . . . took to comply with the subpoenas . . . and when they took those steps," the declaration relies heavily on the passive voice (invoking a variant of the phrase "we were informed" more than a dozen times) and omits the dates of significant steps in the document collection process. The declaration also provides no details about the claimed "technical and logistical challenges counsel encountered" when collecting Zilis's and Birchall's documents.

Second, as to Musk's text messages, the declaration provides almost no information about the "role that Tesla . . . has played in the collection, review, and production of Musk's texts," and it provides no information at all about the "investigation" that Plaintiffs' counsel conducted to satisfy itself that the production of Musk's texts was not affected by a "transmission error" after all.

Please serve a supplemental declaration that addresses the following specific deficiencies:

Zilis

    1.    Was Zilis's cell phone imaged?

        a.    If so, when and by whom?

        b.    If not, how did Plaintiffs' counsel collect Zilis's text messages?

    2.    Who informed Plaintiffs' counsel that Apple had "placed an automatic security hold on [the Zilis] data" and what was the exact date of that communication?

    3.    When was the Apple security hold lifted?

    4.    What "extraction software" was used to extract the Zilis data?

    5.    Who informed Plaintiffs' counsel that "bugs in the extraction software had caused repeated issues in the data extraction process"?

    6.    What "program" is referenced in ¶ 10 of the declaration?

    7.     What "software vendor" is referenced in ¶ 10 of the declaration?

    8.     What software did Plaintiffs' counsel "abandon" and what was the alternative "software tool" that Plaintiffs' counsel decided to use?

    9.     What was the basis for Plaintiffs' counsel's understanding that "Zilis's personal emails would be obtained in the process of her cell phone data extraction" and how did that "not turn out to be the case"?

    10.    Who handled the Zilis "personal email data export"?

    11.    Did anyone at Tesla play a role in the review of Zilis's documents?

    12.    Did anyone at any other Musk-controlled company play a role in the review of Zilis's documents?

    13.    If the answer to (11) or (12) is yes, describe the role the relevant company or companies played in the review.

Birchall

    1.     Who informed Plaintiffs' counsel that data from Birchall's cell phone had been extracted on or around August 27, 2025?

    2.     Was Birchall's cell phone imaged?

         a.     If so, when and by whom?

         b.     If not, how did Plaintiffs' counsel collect Birchall's text messages?

    3.     Did anyone at Tesla play a role in the review of Birchall's documents?

    4.     Did anyone at any other Musk-controlled company play a role in the review of Birchall's documents?

    5.     If the answer to (3) or (4) is yes, describe the role the relevant company or companies played in the review.

Musk

    1.     Was Musk's cell phone imaged?

         a.     If so, when and by whom?

         b.     If not, how did Plaintiffs' counsel collect Musk's text

messages?

2. Which employees at Tesla handled Tesla's "initial review of Musk's texts"?

3. When did the Tesla "initial review" take place?

4. What instructions were the Tesla employees who conducted the review given?

5. Why was Tesla given responsibility for screening out "Musk's sensitive personal information"?

6. Why did Plaintiffs' counsel initially conclude that there had been a "transmission issue" that affected the transfer of Musk's texts from Tesla to Plaintiffs' counsel?

7. What was involved in the "investigation" that Plaintiffs' counsel conducted to satisfy itself that there had not in fact been any "transmission issue"?

8. What steps, if any, has Plaintiffs' counsel taken to satisfy itself that the "coding error" referenced in ¶ 42 did not affect any other Musk text threads?

9. How is it that Musk's version of the text chain produced at ZILIS-0002319 contains "personal photos and information about Musk's young children" that do not appear in the Zilis version of that text chain that Zilis produced?

10. Who is responsible for the "redaction" process referenced in ¶ 42 and when will that process be completed?

11. Are there any other Musk text messages that are being withheld pending this redaction process?

12. Did Tesla withhold any Musk texts that are responsive? If so, on what basis?

If we do not receive a satisfactory supplemental declaration within 48 hours, we will seek appropriate relief from Judge Hixson.

Regards,

Brad

**From:** Jaymie Parkkinen <jparkkinen@toberoffandassociates.com>
**Sent:** Thursday, September 25, 2025 2:46 AM
**To:** Savitt, William D. <wdsavitt@WLRK.com>
**Cc:** Marc Toberoff <mtoberoff@toberoffandassociates.com>; Cohen, Russell P. (Dechert LLP) <russ.cohen@dechert.com>; Levander, Andrew J. (Dechert LLP) <andrew.levander@dechert.com>; Ullman, Howard <Howard.Ullman@dechert.com>; Jurata, John A. (Dechert LLP) <jay.jurata@dechert.com>; Patel Gupta, Nisha <Nisha.PatelGupta@dechert.com>; Eddy, Sarah K. <SKEddy@wlrk.com>; Cullerton, Nate <NDCullerton@wlrk.com>; Eth, Jordan D. (Morrison & Foerster, LLP) <jeth@mofo.com>; Frentzen, William <WFrentzen@mofo.com>; Wiener, David J. (Morrison & Foerster, LLP) <dwiener@mofo.com>; David, Zachary M. <ZMDavid@wlrk.com>; Kry, Robert K. (MoloLamken LLP) <rkry@mololamken.com>; Schubert, Jennifer <JSchubert@mololamken.com>; Tapernoux, Camila A. <CTapernoux@mofo.com>; Pilgrim, Dara <DPilgrim@mofo.com>; Wilson, Bradley R. <BRWilson@wlrk.com>
**Subject:** Musk v. Altman - Case No. 4:24-cv-04722-YGR

**\*\*External Email-Use Caution\*\***

**Counsel:**

Please see a service copy of the attached.

**Regards,**

**Jaymie Parkkinen**

**Toberoff & Associates, P.C.**

**23823 Malibu Road, Suite 50-363**

**Malibu, California 90265**

**Tel: 310.246.3333**

**Fax: 310.246.3101**

_____

**This message and any attached documents may contain information from Toberoff & Associates, P.C.**

that is confidential and/or privileged. If you are not the intended recipient, you may not read, copy, distribute, or otherwise use this information. If you have received this transmission in error, please notify the sender immediately by reply email and then delete this message.

===================================================

Please be advised that this transmittal may be a confidential attorney-client communication or may otherwise be privileged or confidential. If you are not the intended recipient, please do not read, copy or re-transmit this communication. If you have received this communication in error, please notify us by e-mail (helpdesk@wlrk.com) or by telephone (call us collect at 212-403-4357) and delete this message and any attachments.

Thank you in advance for your cooperation and assistance.

===================================================