COOLEY LLP
SIMONA AGNOLUCCI (246943)
(sagnolucci@cooley.com)
EDUARDO SANTACANA (281668)
(esantacana@cooley.com)
ANIKA HOLLAND (336071)
(anika.holland@cooley.com)
HARRIS MATEEN (335593)
(hmateen@cooley.com)
REMY CARREIRO (359384)
(rcarreiro@cooley.com)
3 Embarcadero Center, 20th Floor
San Francisco, California 94111-4004
Telephone: +1 415 693 2000
Facsimile: +1 415 693 2222

Attorneys for Non-Party
ILYA SUTSKEVER

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| ELON MUSK, et al.,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>SAMUEL ALTMAN, et al.,<br><br>　　　　　Defendants. | Case No. 4:24-cv-04722-YGR (TSH)<br><br>**NON-PARTY ILYA SUTSKEVER'S MOTION FOR RELIEF FROM NONDISPOSITIVE PRETRIAL ORDER OF MAGISTRATE JUDGE** |

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

NON-PARTY ILYA SUTSKEVER'S MOTION FOR RELIEF
FROM NONDISPOSITIVE PRETRIAL ORDER OF
MAGISTRATE JUDGE-CASE NO. 4:24-CV-04722-YGR

Non-party Ilya Sutskever objects under Rule 72(a) to the Magistrate Judge's October 17, 2025 Discovery Order (Dkt. 324).

The Order compels Mr. Sutskever to reveal granular financial information in violation of his constitutional right to privacy without performing the required balancing test, contrary to law. It also failed to consider that Mr. Musk's counsel apparently violated the Protective Order as to the exact same type of financial information regarding a senior OpenAI executive.

Further, the Order compels production of the "Brockman memo," even though Plaintiffs entered into a binding agreement, evidenced by a sworn declaration, that left the Brockman memo outside the scope of production. Further, Plaintiffs never requested that memo before Mr. Sutskever's deposition. The Order ignored these facts, accepted an unsworn attorney representation from Mr. Musk's counsel contradicting the facts, ignored the binding production agreement Mr. Musk entered into, and ordered both production and a second deposition of a non-party based solely on an uninformed view of the perceived relevance of the document.

## I. The Order erroneously compels disclosure of private financial information.

When discovery threatens the fundamental right to privacy in financial information, *Valley Bank of Nev. v. Superior Ct.*, 15 Cal. 3d 652, 656 (1975), relevance alone is insufficient. Courts must conduct a "careful balancing" of the competing interests: the actual need for the specific information versus the seriousness of the privacy intrusion. *Id.* at 657. Critically, this balancing must account for non-parties, who deserve "extra protection from the courts." *High Tech Med. Instrumentation v. New Image Indus., Inc.*, 161 F.R.D. 86, 88 (N.D. Cal. 1995); *see also U.S. v. Columbia Broadcasting System, Inc.*, 666 F.2d 364, 371–72 (9th Cir. 1982).

The Order fails to afford Mr. Sutskever the "extra protection" the law requires for non-parties by misapplying the standards governing financial privacy. *High Tech Med. Instrumentation*, 161 F.R.D. at 88 (N.D. Cal. 1995). The Court was required to balance actual need, the severity of the intrusion (including the risk of disclosure), and the availability of less intrusive means. *See Hill v. Nat'l Collegiate Athletic Assn.*, 7 Cal. 4th 1, 37–40 (1994). But the Order skipped the required analysis, and concluded that *relevance alone* justified the intrusion, relying on *United States v. Harris*, 185 F.3d 999, 1008 (9th Cir. 1999). Dkt. 324 at 1. That was legal error. *Harris* addressed

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

NON-PARTY ILYA SUTSKEVER'S MOTION FOR RELIEF
FROM NONDISPOSITIVE PRETRIAL ORDER OF
MAGISTRATE JUDGE-CASE NO. 4:24-CV-04722-YGR

the *admissibility* of impeachment evidence at a *criminal trial*. It did not address privacy rights, proportionality, or the heightened protections afforded to non-parties.

The Order compounded this error by citing civil cases involving discovery from *litigants* where financial information was *directly* relevant to the claims, not non-parties. *See Vieste, LLC v. Hill Redwood Dev.*, 2011 WL 855831, at *2 (N.D. Cal. Mar. 9, 2011) (defendant's net worth); *Cohen v. Trump*, 2015 WL 3966140 (S.D. Cal. June 30, 2015) (presidential candidate defendant).

As below, had the Court performed the balancing, the motion would have been denied.

**Actual Need.** Where probative value is low and the intrusion is significant, discovery *must* be denied. *Vena v. Moore, Schulman & Moore, APC*, 2023 WL 6194315, at *4 (S.D. Cal. Mar. 24, 2023). The exact dollar amount of Mr. Sutskever's shares has little value because he already provided general testimony about his financial interest in OpenAI, as well as that the value increased over time, and how the interest compares to that of other executives. Dkt. 322 at 4; Agnolucci Decl. ¶ 14. Forcing another deposition just to disclose a precise dollar amount provides marginal, cumulative value. (At most, the Court should order a sworn written disclosure, not another deposition). Indeed, courts routinely deny discovery of specific financial details when *general* testimony is sufficient. *See, e.g.*, *Vena*, 2023 WL 6194315, at *4 (denying where evidence could be obtained "without intruding on the nonparty's privacy interests"); *Buchholtz v. Rogers Benefit Grp., Inc.*, 2013 WL 1694830, at *6 (S.D. Cal. Apr. 18, 2013) (protecting non-party's financial details where general testimony sufficed).

**Seriousness of the Intrusion.** The Order invades a well-established constitutional right to privacy. Further, the Magistrate Judge refused to consider Plaintiff's recent misconduct when analyzing this factor. The risk of disclosure here is not abstract. At the deposition, Plaintiff's counsel flagrantly violated the Protective Order by revealing the precise value of the shares of another OpenAI executive in a roomful of unauthorized individuals. Agnolucci Decl ¶ 14; *see also* Ex. B, 360:1-4 (admonitions from OpenAI and Microsoft's counsel for violating the protective order). That violation demonstrated a clear disregard for the confidentiality of this exact kind of sensitive information. Dkt. 322 at 5. The Order ignored this demonstrated misconduct, and requires

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2

NON-PARTY ILYA SUTSKEVER'S MOTION FOR RELIEF
FROM NONDISPOSITIVE PRETRIAL ORDER OF
MAGISTRATE JUDGE-CASE NO. 4:24-CV-04722-YGR

Mr. Sutskever to disclose constitutionally protected information to individuals who have shown themselves to be untrustworthy with the same kind of information from another individual.

What's more, Mr. Musk is no ordinary litigant. He is the world's richest man, a confidant of the President, owns one of the world's most visited websites, and has shown a particular interest in Mr. Sutskever on his social media platform. Disclosing Mr. Sutskever's financial interest to Mr. Musk's counsel presents a unique and severe privacy intrusion that the Magistrate Judge refused to weigh. And ordering a deposition about it compounds the intrusion needlessly.

## II.     The Order erroneously disregards the subpoena's negotiated scope.

The Order erroneously ignored the evidence before it and ordered production of a document Mr. Musk agreed not to seek, and a second deposition, imposing a substantial burden on a non-party with no justification. The Order should be set aside, or modified to reduce the burden on Mr. Sutskever by, for example, excising the second deposition.

Since the firing of Sam Altman in November 2023, the public, including Elon Musk himself, have expressed extensive curiosity about what happened; that curiosity extended to two memos reported on extensively but never leaked to the public on which the Board relied: one about Mr. Altman and one about Mr. Brockman. Agnolucci Decl. ¶ 6. Recognizing this, Mr. Sutskever, upon receiving Mr. Musk's subpoena, carefully negotiated a scope of production in correspondence with Mr. Musk's then-primary counsel that narrowed that subpoena to material of core relevance. That scope is found in two sworn declarations from Mr. Sutskever's counsel. ECF 322-1 (Holland Decl.) ¶ 3; Agnolucci Decl. ¶¶ 3-4; Ex. A. Portions of the Altman memo fell within the negotiated scope, so Mr. Sutskever produced the Altman memo (along with nearly a thousand pages of other documents). Agnolucci Decl. ¶ 7. The Brockman memo did not, because none of the carefully negotiated topics encompass any portion of that memo, so Mr. Sutskever did not produce it. *Id.* ¶ 8. From May through September of this year, Mr. Musk's counsel never requested the Brockman memo by name, even knowing that the Altman memo had been produced. *Id.* ¶ 9. As far as the undersigned knew on the day of Mr. Sutskever's October 1 deposition, Mr. Musk had no interest in seeking the Brockman memo, and a binding agreement with Mr. Musk precluded its production.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

3

NON-PARTY ILYA SUTSKEVER'S MOTION FOR RELIEF
FROM NONDISPOSITIVE PRETRIAL ORDER OF
MAGISTRATE JUDGE-CASE NO. 4:24-CV-04722-YGR

At that deposition, counsel from a *different* law firm took the lead, asked Mr. Sutskever about the Brockman memo (evidencing clear knowledge it existed), and introduced a *Wall Street Journal* article about it before anyone had mentioned it. *Id.* ¶¶ 10-12. Mr. Musk's counsel claimed that the memo should have been produced, and professed to know nothing about any prior agreement to limit the scope of the subpoena with Mr. Musk's prior primary counsel. *Id.* ¶ 13. In a subsequent phone call after the issue came up, according to contemporaneous notes, Mr. Musk's counsel professed to "take responsibility for what our team has done," and for "the gaps" caused by "passing the baton" between law firms. *Id.* ¶¶ 15-18. The undersigned are sympathetic, but that is not Mr. Sutskever's fault.

There are three reasons the Order should be set aside or modified to reduce burden.

**First**, the Order disregarded the agreement Mr. Musk entered into. Mr Musk argued, and the Magistrate Judge agreed, that "ultimately this issue does not matter" because the document is relevant. Dkt. 324 at 2. That was clear error and contrary to law. "When parties agree to specific discovery protocols, courts enforce these commitments as binding." *United States v. Peters*, 2025 WL 1474737, at *5 (E.D. Cal. May 22, 2025). By casting aside the agreement, the Order "thwart[ed] the meet-and-confer process by undermining the parties' agreement." *Greene v. California Dep't of Corr. & Rehab.*, 2025 WL 790498, at *4 (E.D. Cal. Mar. 12, 2025).

This principle is especially crucial for non-parties, who are entitled to extra protection. Mr. Sutskever was entitled to rely on the negotiated scope of the subpoena and review documents for responsiveness. *Gamefam, Inc. v. WowWee Grp. Ltd.*, 2024 WL 1181001, at *6 (N.D. Cal. Mar. 18, 2024). This system relies on the "trust that a party produces documents after a review and assessment for relevance and responsiveness" within the agreed-upon boundaries. *UAB "Planner5D" v. Meta Platforms, Inc.*, 746 F. Supp. 3d 806, 808 (N.D. Cal. 2024). The Order cast all this aside with an ex post relevance judgment call with significant ramifications.

**Second**, the Order disregarded incontrovertible evidence that Mr. Musk's counsel were negligent, which is no reason to penalize a non-party by upending an agreement and ordering a second deposition. A sworn declaration demonstrated that the agreement existed, and Mr. Musk did not deny the details of the negotiated scope of production. *See* Dkt. 322-1 ¶ 3. Nor did Mr.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

4

NON-PARTY ILYA SUTSKEVER'S MOTION FOR RELIEF
FROM NONDISPOSITIVE PRETRIAL ORDER OF
MAGISTRATE JUDGE-CASE NO. 4:24-CV-04722-YGR

Musk deny that he never requested the Brockman memo by name before the deposition, even after receiving a copy of the Altman memo. In fact, during a subsequent phone call, Mr. Musk's counsel claimed that they received the Altman memo and chose to assume that it survived the self-deleting nature of the e-mail attaching it in November 2023 due to a "fluke" that they further assumed did not also apply to the Brockman memo; and so, they claim, they never brought it up or asked about it. Agnolucci Decl. ¶ 16-17. Indeed, the "self-deleting email" argument is a canard. The reporting on which Mr. Musk relies said the memos were sent via self-deleting e-mail, yet everyone knew one of the attachments still existed. No competent lawyer would have failed to ask if the Brockman memo still existed, if they indeed wanted it. The inescapable explanation here is negligence (in part due to the change in counsel), not malfeasance. And that negligence coupled with ignoring the agreement on scope has led to extensive unnecessary litigation. One simple question by Mr. Musk's counsel any time from May to September would have avoided all this. But the Magistrate Judge reasoned simply that the memo is relevant (without seeing it[1]), that the agreement "does not matter," and that because an article based on anonymous sources said the memo was sent in a self-deleting e-mail, Mr. Musk's experienced counsel were excused for having never asked the question of whether a copy still existed. This series of events is astonishing; a non-party should not be subjected to such burden and after-the-fact second-guessing because a litigant cannot get their act together.

**Third**, the Order failed to protect Mr. Sutsekver's interest in confidentiality in light of the inappropriate interest in irrelevant material. This Court should not allow itself to become a forum for satisfying the idle curiosity of private actors through civil discovery, especially when the private actor in question is unique among nearly all litigants for his wealth, power, influence, and particular interest in the subject matter, and his counsel have proven themselves untrustworthy with confidential information. If the Brockman memo were so important to Mr. Musk's case (as opposed to his own curiosity), he would have asked for it before the day of Mr. Sutsekver's deposition.

---

[1] Nothing in the Brockman Memo relates to the negotiated categories of the subpoena. Dkt. 322 at 6. Should the Court choose to verify this fact, Mr. Sutskever offers the Brockman Memo for *in camera* review.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

5

NON-PARTY ILYA SUTSEKVER'S MOTION FOR RELIEF
FROM NONDISPOSITIVE PRETRIAL ORDER OF
MAGISTRATE JUDGE-CASE NO. 4:24-CV-04722-YGR

| | |
|---|---|
| Dated: October 29, 2025 | COOLEY LLP |
| | By: */s/ Simona Agnolucci* |
| | Simona Agnolucci |
| | Eduardo Santacana |
| | Anika Holland |
| | Harris Mateen |
| | Remy Carreiro |
| | |
| | Attorneys for Non-Party |
| | ILYA SUTSKEVER |

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

6

NON-PARTY ILYA SUTSKEVER'S MOTION FOR RELIEF FROM NONDISPOSITIVE PRETRIAL ORDER OF MAGISTRATE JUDGE-CASE NO. 4:24-CV-04722-YGR

**Certification of Conference Pursuant to Standing Order**

**<u>Regarding Court Operations During Government Shutdown</u>**

I, Eduardo Santacana, declare as follows:

1. On October 29, 2025, Plaintiffs' counsel confirmed by email that they agree Mr. Sutskever's motion to stay the appeal of Judge Hixson's Order and objections to the Order itself needed to be decided urgently.

Pursuant to this Court's Standing Order, I hereby certify that counsel have conferred as described above, and that the Motion to Stay and the Rule 72(a) Objection must be urgently resolved.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: October 29, 2025                                              */s/ Eduardo Santacana*

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

7

NON-PARTY ILYA SUTSKEVER'S MOTION FOR RELIEF
FROM NONDISPOSITIVE PRETRIAL ORDER OF
MAGISTRATE JUDGE-CASE NO. 4:24-CV-04722-YGR