JORDAN ETH (CA SBN 121617)
JEth@mofo.com
WILLIAM FRENTZEN (CA SBN 343918)
WFrentzen@mofo.com
DAVID J. WIENER (CA SBN 291659)
DWiener@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105
Telephone:    (415) 268-7000
Facsimile:    (415) 268-7522

WILLIAM SAVITT (admitted *pro hac vice*)
WDSavitt@wlrk.com
BRADLEY R. WILSON (admitted *pro hac vice*)
BRWilson@wlrk.com
SARAH K. EDDY (admitted *pro hac vice*)
SKEddy@wlrk.com
STEVEN WINTER (admitted *pro hac vice*)
SWinter@wlrk.com
NATHANIEL CULLERTON (admitted *pro hac vice*)
NDCullerton@wlrk.com
WACHTELL, LIPTON, ROSEN & KATZ
51 West 52nd Street
New York, NY 10019
Telephone:    (212) 403-1000
Facsimile:    (212) 403-2000

*Attorneys for Defendants Samuel Altman, Gregory Brockman,*
*OpenAI, Inc., OpenAI L.P., OpenAI, L.L.C., OpenAI GP, L.L.C.,*
*OpenAI OpCo, LLC, OpenAI Global, LLC, OAI Corporation, LLC,*
*OpenAI Holdings, LLC, OpenAI Startup Fund Management, LLC,*
*OpenAI Startup Fund GP I, L.L.C., OpenAI Startup Fund I, L.P.,*
*OpenAI Startup Fund SPV GP I, L.L.C., OpenAI Startup Fund SPV GP II, L.L.C.,*
*OpenAI Startup Fund SPV GP III, L.L.C., OpenAI Startup Fund SPV GP IV, L.L.C.,*
*OpenAI Startup Fund SPV I, L.P., OpenAI Startup Fund SPV II, L.P.,*
*OpenAI Startup Fund SPV III, L.P., OpenAI Startup Fund SPV IV, L.P.,*
*Aestas Management Company, LLC, and Aestas LLC*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

| | |
|---|---|
| ELON MUSK, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>SAMUEL ALTMAN, et al.,<br><br>Defendants. | Case No. 4:24-cv-04722-YGR<br><br>**OPENAI DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**<br><br>Date:  January 7, 2026<br>Time:  2:00 p.m.<br>Courtroom:  1 – 4th Floor<br>Judge:  Hon. Yvonne Gonzalez Rogers |

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................................... 1

ARGUMENT ...................................................................................................................... 1

I.      MUSK LACKS STANDING TO BRING HIS CHARITABLE TRUST CLAIM ............ 1

        A.      Musk lacks Article III standing because he donated only to DAFs and YC. .......... 2

        B.      Musk also lacks standing under California common law ........................................ 4

        C.      Musk lacks statutory standing. ............................................................................. 8

        D.      Musk's noncash contributions do not save his claim. ............................................ 9

II.     MUSK CANNOT PURSUE HIS CONSTRUCTIVE FRAUD CLAIM ........................ 10

III.    MUSK'S FRAUD CLAIM FAILS ON MULTIPLE GROUNDS ................................. 10

        A.      The record is devoid of any actionable misrepresentation. ................................... 10

        B.      The record evidence negates the element of justifiable reliance. .......................... 11

        C.      Musk's fraud and constructive fraud claims are time-barred. ............................... 12

IV.     MUSK'S UNJUST ENRICHMENT CLAIM FAILS ON MULTIPLE GROUNDS ....... 13

        A.      Musk's pursuit of tort claims bars his unjust enrichment claim ........................... 13

        B.      Musk fails to tether his unjust enrichment claim to an actionable wrong. ............. 13

        C.      Musk's unjust enrichment claim is time-barred. .................................................. 14

CONCLUSION ................................................................................................................. 15

1

# TABLE OF AUTHORITIES

2

**Page(s)**

3

**Cases**

4

*Advanced Riggers & Millwrights, LLC* v. *Hoist Liftruck MFG, Inc.*,
5
   2015 WL 12860470 (C.D. Cal. Oct. 29, 2015) ....................................................... 13

6

*Aryeh* v. *Canon Bus. Sol'ns, Inc.*,
   55 Cal. 4th 1185 (2013) ........................................................................... 15 n.8
7

*Astiana* v. *Hain Celestial Grp.*,
8
   783 F.3d 753 (9th Cir. 2015)................................................................... 13, 14

9

*Atari Corp.* v. *Ernst & Whinney*,
10
   981 F.2d 1025 (9th Cir. 1992)................................................................... 12

11

*Bily* v. *Arthur Young & Co.*,
   3 Cal. 4th 370 (1992) ............................................................................. 4
12

13

*Cohen* v. *Kabbalah Centre Int'l, Inc.*,
   35 Cal. App. 5th 13 (2019) .................................................................... 9

14

*Crusader Ins. Co.* v. *Scottsdale Ins. Co.*,
15
   54 Cal. App. 4th 121 (1997) .................................................................. 9

16

*Derblom* v. *Archdiocese of Hartford*,
   289 A.3d 1187 (Conn. 2023) ................................................................ 6, 6 n.5
17

18

*Guar. Tr. Co. of N.Y.* v. *N.Y. Tr. Co.*,
   74 N.E.2d 232 (N.Y. 1947)..................................................................... 7

19

*Hamilton Materials, Inc.* v. *Dow Chem. Corp.*,
20
   494 F.3d 1203 (9th Cir. 2007)................................................................. 12-13

21

*Hamilton* v. *U.S. Bank N.A.*,
   2022 WL 1736 8815 (C.D. Cal. Oct. 14, 2022)....................................... 15

22

*Hammerling* v. *Google LLC*,
23
   615 F. Supp. 3d 1069 (N.D. Cal. 2022), *aff'd*,
   2024 WL 937247 (9th Cir. Mar. 5, 2024)................................................. 14
24

25

*Holt* v. *Coll. of Osteopathic Phys. & Surgeons*,
   61 Cal. 2d 750 (1964) ........................................................................... *passim*

26

*Honey Baked Ham, Inc.* v. *Honey Baked Ham Co.*,
27
   2021 WL 5990164 (C.D. Cal. Nov. 4, 2021)........................................... 15

28

ii

*In re Brooks*,
  844 F.2d 258 (5th Cir. 1988) .................................................................................... 6-7

*In re Hertsberg Inter Vivos Tr.*,
  578 N.W. 2d 289 (Mich. 1998) ...................................................................................... 7

*In re National Heritage Found.*,
  510 B.R. 526 (E.D. Va. 2014) ........................................................................................ 3

*L.B. Rsch. & Educ. Found.* v. *UCLA Found.*,
  130 Cal. App. 4th 171 (2005) ................................................................................. 4 n.4

*Ladore* v. *Sony Comput. Ent. Am., LLC*,
  75 F. Supp. 3d 1065 (N.D. Cal. 2014) ......................................................................... 13

*Lamont* v. *Time Warner, Inc.*,
  586 F. App'x 357 (9th Cir. 2014) ................................................................................. 15

*Lehman* v. *Commissioner*,
  109 F.2d 99 (2d Cir. 1940) ............................................................................................ 7

*Leon* v. *Wells Fargo Bank*,
  2018 WL 3474182 (N.D. Cal. July 19, 2018) .............................................................. 12

*Lowery* v. *Blue Steel Releasing, Inc.*,
  2005 WL 6215612 (C.D. Cal. Nov. 23, 2005) ......................................................... 10-11

*Major* v. *Ocean Spray Cranberries, Inc.*,
  2015 WL 859491 (N.D. Cal. Feb. 26, 2015) ................................................................ 11

*McBride* v. *Boughton*,
  123 Cal. App. 4th 379 (2004) ................................................................................. 13, 14

*Mosier* v. *Erwin & Johnson, LLP*,
  2013 WL 12122421 (C.D. Cal. May 29, 2013) ............................................................ 14

*OCM Principal Opportunities Fund* v. *CIBC World Mkts. Corp.*,
  157 Cal. App. 4th 835 (2007) ................................................................................. 11, 12

*Pac. Home* v. *L.A. Cnty.*,
  41 Cal. 2d 844 (1953) .................................................................................................... 6

*Phoenix Techs. Ltd.* v. *VMware, Inc.*,
  2017 WL 1289863 (N.D. Cal. Jan. 6, 2017) ................................................................ 15

*Pinkert* v. *Schwab Charitable Fund*,
  2021 WL 2476869 (N.D. Cal. June 17, 2021) ....................................................... *passim*

*Pinkert* v. *Schwab Charitable Fund*,
  48 F.4th 1051 (9th Cir. 2022) ............................................................................... *passim*

*Rodriguez* v. *Int'l Bus. Machs. Corp.*,
  2024 WL 3908119 (N.D. Cal. Aug. 19, 2024)........................................................................ 14

*Ruocco* v. *Bateman, Eichler, Hill, Richards, Inc.*,
  903 F.2d 1232 (9th Cir. 1990)................................................................................................ 7

*Security-First Nat. Bank of L.A.* v. *Wright*,
  47 Cal. App. 2d 787 (1941)..................................................................................................... 7

*Silver* v. *Stripe*,
  2021 WL 3191752 (N.D. Cal. July 28, 2021)....................................................................... 13

*Styles* v. *Friends of Fiji*,
  373 P.3d 965 (Nev. 2011) ........................................................................................................ 3

*Tenn. Div. UDC* v. *Vanderbilt Univ.*,
  174 S.W.3d 98 (Tenn. Ct. App. 2005) ................................................................................... 9

*Vera* v. *REL-BC, LLC*,
  66 Cal. App. 5th 57 (2021) .................................................................................................... 12

*Water Audit Cal.* v. *Merced Irrigation Dist.*,
  111 Cal. App. 5th 1147 (2025) ...................................................................................... 15 n.8

*Wu* v. *Sunrider Corp.*,
  2018 WL 6266577 (C.D. Cal. May 22, 2018) ...................................................................... 14

*Young* v. *Cree, Inc.*,
  2021 WL 4749384 (N.D. Cal. Oct. 12, 2021)....................................................................... 14

*Zeichner* v. *Nord Sec. Inc.*,
  2024 WL 4951261 (N.D. Cal. Dec. 2, 2024) ........................................................................ 13

**Statutes and Rules**

26 U.S.C. § 4966(d)(2)................................................................................................................. 2

Cal. Bus. & Prof. Code § 17510.6 ............................................................................................. 9

Cal. Bus. & Prof. Code § 17510.8 ............................................................................................. 9

Cal. Civ. Proc. Code § 338(d) .................................................................................................. 14

Cal. Civ. Proc. Code § 339(1) .................................................................................................. 14

Cal. Civ. Proc. Code § 343 ....................................................................................................... 14

Cal. Corp. Code § 5141.............................................................................................................. 8

Cal. Corp. Code § 5142.............................................................................................................. 8

**Other Authorities**

George G. Bogert, *The Law of Trusts and Trustees* §§ 113, 323 (3d. ed. 2014) ............................ 7

IRS Rev. Rul. 68-489 (1968) ........................................................................................ 3

Restatement (Third) of Trusts § 28 .............................................................................. 5

Restatement (Third) of Trusts § 94 ....................................................................... 5, 6, 8

Witkin, Actions § 595 ................................................................................................ 15

Witkin, Contracts § 1057 ........................................................................................... 14

**INTRODUCTION**

The briefing on this motion shows that plaintiff Elon Musk's claims all rely on departures from well-settled legal rules—special exemptions he seeks for himself alone.

Musk seeks to enforce a California charitable trust on the basis of donations made by DAFs. No case has ever permitted that result. Musk seeks to enforce a California charitable trust on the basis of general-purpose donations. No case has ever permitted that result. Musk invokes California law to enforce a charitable trust even though he has no reversionary or other interest in the donations. No case has ever permitted that result. Musk's charitable trust claim thus seeks dispensations that have never been accorded to any other party under California law.

Musk's other claims are similarly deficient. He asserts fraud on the basis of alleged misrepresentations he swore under oath he knew were untrue. He asserts unjust enrichment without bothering to attach the claim to an underlying actionable wrong. He pursues all these claims years after the expiration of the applicable limitations periods. His claims fail on all these grounds.

They fail as well under the rules allocating regulatory responsibility over non-profit corporations. Musk claims for himself the authority to enforce the terms of OpenAI's mission. But in all except the most unusual circumstances, none present here, that authority falls to the Attorney General, not to donors or private citizens. The Attorneys General of both California and Delaware have exercised their authority here, forcefully. As Musk notes, OpenAI completed the recapitalization of its for-profit affiliate on October 28. That recapitalization proceeded following intensive regulatory review and subject to commitments requested by and made to the Attorneys General confirming OpenAI's continued adherence to its public mission. Exs. 83-86. Musk's lawsuit has from the beginning sought to usurp the function of the Attorneys General and to advance his own competitive objectives. There is no warrant for that outcome in law, logic, or policy.

**ARGUMENT**

**I.    MUSK LACKS STANDING TO BRING HIS CHARITABLE TRUST CLAIM**

Musk's claim to "common law settlor standing" fails for three separate reasons: (1) Musk's donations to the DAFs and YC severed his legal interest in the donated assets, depriving him of Article III standing; (2) Musk seeks to exercise common law settlor standing in circumstances

unrecognized under California law and the Third Restatement; and (3) Musk is not even the settlor of the alleged trust. Pt. I.A-B, *infra*. Musk's "statutory standing" arguments fare no better (Pt. I.C, *infra*), and his attempt to salvage his claim by pointing to four Teslas he donated nearly a decade ago only confirms the absence of any legal or evidentiary basis for his claim (Pt. I.D, *infra*).

> **A.    Musk lacks Article III standing because he donated only to DAFs and YC.**

Musk does not dispute that he made his claimed cash donations to DAFs and YC, rather than directly to OpenAI. Br. 5; SUF 8-9, 34; Ex. 4 & n.1. Nor does Musk dispute that he was required to surrender ownership and control of the donated funds when he gave them to the DAFs and YC—*before* the DAFs and YC later contributed the funds to OpenAI. Br. 6-7; SUF 10-17.

Musk nevertheless claims the privileges of a direct donor, calling the DAFs "mere conduits" and YC a "mere intermediary." Opp. 10-14. These labels don't change the facts. Musk donated to the DAFs and YC—not to OpenAI. Musk reaped the tax benefits when he donated to the DAFs and YC—not when the DAFs and YC later donated to OpenAI. The ultimate decision whether to donate to OpenAI rested with the DAFs and YC—not Musk. And any rights associated with the donations to OpenAI accrued to the DAFs and YC—not Musk. Br. 6-8; SUF 10-20.

Musk responds that he "supplied all the funds" the DAFs later donated to OpenAI. Opp. 14. That observation only restates a DAF's defining feature: "a charitable giving vehicle that allows donors to take a present-year income tax deduction, while distributing the funds to charity at a later time." *Pinkert* v. *Schwab Charitable Fund*, 48 F.4th 1051, 1052-53 (9th Cir. 2022). That Musk donated funds to one charity (the DAF) that later donated to a second charity (OpenAI) imbues him with no legal rights as to the DAF's ultimate donation. To the contrary: Musk's DAF donation was "tax-deductible only" because once Musk made his donation, the DAF "own[ed] and control[led] the assets that [were] donated." *Id.* (quoting 26 U.S.C. § 4966(d)(2)). Equally unavailing is Musk's observation that the DAFs "never refused to make a contribution to OpenAI" that Musk recommended. Opp. 14. A donor to a DAF lacks standing even where the DAF "followed his advice in the past by donating funds from his DAF to charities he supports." *Pinkert*, 48 F.4th at 1056.

As for YC, Musk asserts that he donated to YC only "because the IRS had not yet approved OpenAI's own 501(c)(3) status." Opp. 12. That is just the point. Musk could have donated directly

to OpenAI. He chose instead to donate to YC, securing (as with the DAF donations) immediate tax benefits, and thereby surrendered "control and discretion over [YC's] use of [the] funds." IRS Rev. Rul. 68-489; Br. 7. Likewise irrelevant is Musk's claim that OpenAI "repeatedly assured" him that YC would direct those contributions to OpenAI. 12. What Musk does not and cannot claim is that he retained the legal right to direct the further disposition of his donations. Br. 7; Opp. 12-14.

That dooms his claim to standing. As explained in the opening brief (pp. 6-8), the Ninth Circuit in *Pinkert* held that a donor like Musk, who gave up the "right to control how [the DAF] donates the funds he contributed[,] … lacks Article III standing" to assert a charitable trust claim with respect to those funds. 48 F.4th at 1056, *aff'g*, 2021 WL 2476869 (N.D. Cal. June 17, 2021). Musk seeks to distinguish this controlling authority on the ground that the donor there sued the DAF, not a "third-party charity" the DAF donated to. Opp. 14-15. But Musk's claim to standing is even farther afield—the *Pinkert* donor at least had a direct donative relationship with the donee, unlike Musk here. Br. 8. The *Pinkert* donor nevertheless lacked standing because he conclusively surrendered "the right to control" those assets when he contributed them to the DAF. 48 F.4th at 1056. Musk relinquished the same right when he contributed to the DAFs and YC. Br. 6-8.[1]

Musk does not even try to address the other cases, which, like *Pinkert*, hold that when donors "accept the special tax advantages derived from contributing to" vehicles like DAFs and fiscal sponsors, they "gave up the right to make these kinds of claims" because they "relinquish[ed] all right and interest in the donated assets." Br. 8 (citing *In re Nat'l Heritage* and *Styles*). And faced with the plain words in the DAF and YC contribution documents ███████████████████

████████████████████████████████, Musk sputters that "contract language … is not dispositive" where "evidence points the other way." Opp. 13-14. But Musk has supplied no such evidence. SUF 10-17; *supra* pp. 2-3.[2] And no

---

[1] Musk's loss of control also deprives him of standing under California law. *Pinkert*, 2021 WL 2476869, at *5 (no "definite interest in the property" (citing *Holt*)); Br. 7-8; *infra* pp. 4, 8.

[2] Musk claims that the summary of the YC fiscal sponsorship agreement he received omitted that YC retained ██████████████████████ Opp. 13. Musk is mistaken. The summary states expressly: ████████████████████ Musk Ex. 17 at '131 (neglecting to highlight that language).

evidence is necessary or admissible to interpret the plain words of those contracts.[3]

Here is the conclusive fact: in their opening brief, the OpenAI Defendants challenged Musk to produce even a single case holding that a donor to a DAF or fiscal sponsor retains standing to sue the recipient of the DAF's or fiscal sponsor's later donations. Br. 8. Musk produced nothing. No authority exists to support Article III standing here. Without it, the charitable trust claim fails.

**B.    Musk also lacks standing under California common law.**

Musk presses a claim for "common law standing," saying the Court already ruled for him on the issue and this is "a belated motion for reconsideration." Opp. 10. Even if he had it, common law standing would do Musk no good because he lacks Article III standing. *Pinkert* 48 F.4th at 1056. And Musk does not have common law standing. Though the Court held that Musk's standing was sufficient "for purposes of" the earlier motion, Dkt. 121 at 15 n.11, it did not then have before it full argument on a developed record.  California law affords Musk no standing on the facts here.

**1.    California does not recognize settlor standing absent a reversionary interest.**

In *Holt*, Justice Traynor ruled that a donor must "have some reversionary interest in the trust property" for standing. 61 Cal. 2d 750, 753 (1964). That principle has been repeatedly reaffirmed by California courts. Br. 13 (collecting cases). Musk concedes he has no reversionary interest.  Opp 17.[4] This concession is an independent ground for dismissal of the charitable trust claim.

To save his common-law standing claim, Musk invokes the Third Restatement. Opp. 10. While California sometimes looks to the Restatement, its courts do not follow Restatements wholesale, *see, e.g.*, *Bily* v. *Arthur Young & Co.*, 3 Cal. 4th 370, 414 (1992) ("In adopting the

---

[3] Musk points to OpenAI tax forms describing the ██████████████████████████████████, Opp. 13-14, ignoring that the DAF contracts and tax rules expressly contemplate such acknowledgement while at the same time making clear that the DAF is the legal donor. *See, e.g.*, Ex. 17 at 30 ████████████████████████████████████████████████████████████████████████████████ Ex. 23 at 21 (donors may "receive acknowledgments directly from recipient charities," even though "*the grant is made by Fidelity Charitable*").

[4] Musk's parenthetical suggestion that *L.B. Research* held the "plaintiff had standing as settlor even assuming he lacked a *contractual* reversionary interest" is misleading. Opp. 10-11. *L.B. Research*'s dictum assumed that the settlor *had* a reversionary interest, just not one based in contract. Br. 13. Unless otherwise noted, emphasis is added and internal citations are omitted.

4

approach of Restatement Second of Torts [§ 552(2)] … we do not necessarily endorse other provisions of section 552 or of the Restatement"), and California has not endorsed the Third Restatement's "departure from the general insistence of traditional trust doctrine that the settlor, as such, lacks standing to enforce a charitable trust." § 94 cmt. g(3). *Holt* supplies the controlling standard. Musk has provided nothing to satisfy it, nor any case authorizing a federal court sitting in diversity to apply a Restatement provision contrary to controlling state law.

## 2. The Third Restatement recognizes only charitable trusts formed to achieve a "specific purpose" absent here.

*Holt* aside, Musk lacks common law standing because the Third Restatement would not recognize the trust Musk seeks to enforce. Br. 9-11. Musk's claimed general-purposes donations do not create a trust within its meaning, and Musk therefore cannot rely (as he does) on the Third Restatement's expansion of standing to settlors to ground his claim.

Under the Third Restatement, a charitable trust is created only when a donation to a charity is made "for a *specific* purpose." Restatement (Third) of Trusts § 28 cmt. a. A donation "to be used for [the charity's] *general* purposes, is charitable but does not create a trust as that term is used in this Restatement." *Id.* Invoking a handful of charitable purposes identified in § 28 of the Restatement, Musk argues the restrictions allegedly attached to his claimed donations—"that OpenAI would be 'open source' and 'nonprofit'"—were "sufficiently specific." Opp. 15-16. But the examples Musk invokes are of when a purpose "is *charitable.*" § 28 & cmt. a. Musk ignores the examples of when a condition on a donation to a charitable organization is sufficiently *specific* to create a trust of the kind the Third Restatement recognizes. *Id.* (referring to "a disposition to [a hospital or university] for a specific purpose" like "to support medical research, perhaps on a particular disease, or to establish a scholarship fund in a certain field of study").

Musk's own testimony confirms that his "two fundamental" alleged terms "merely track the purposes set forth in OpenAI's founding documents," Opp. 16, and ███████████████████ ████████████████████████████ SUF 21-22; Br. 10. That undisputed evidence is dispositive: because Musk's claimed donations were subject to the *same* "limitation[s]" that "appl[y] to all charitable gifts"—"that the organization must use it in furtherance of the duties imposed [on] it by

its charter or articles of incorporation"—they are "general purpose" donations. *Derblom* v. *Archdiocese of Hartford*, 289 A.3d 1187, 1197 (Conn. 2023); Br. 10 (citing additional cases).[5]

No doubt knowing he flunks the "specific purpose" test, Musk tries to avoid it. He tells the Court it applies only to donations to an "existing charity" and not to "founders" like himself. Opp. 16. Musk cites nothing to support this novel rule. He seems to have just made it up.

Musk's attempt to erase the specific-purpose requirement would, if approved, disrupt the Third Restatement's essential balance: donors who give for a specific purpose may sue "only to enforce the restriction," § 94 cmt. g(3), while the "public interest" in the corporation's adherence to its general purposes is "represented by the Attorney General." *Id.*; *see also, e.g.*, *Pac. Home* v. *L.A. Cnty.*, 41 Cal. 2d 844, 851-52 (1953) ("duty to protect [charitable] trust" "to carry out the objects for which the organization was created" "placed upon the attorney general").

This case especially does not warrant the unprecedented expansion of special interest standing Musk proposes. The doctrine exists to "enhanc[e] enforcement of charitable trusts, in light of the limitations … in Attorney General enforcement." Restatement (Third) § 94 cmt. g; *Holt*, 61 Cal. 2d at 754. Here, not only are the terms of Musk's alleged trust coextensive with OpenAI's public commitments, but two Attorneys General completed extensive reviews of the same recapitalization of OpenAI's for-profit entity that Musk challenges in this lawsuit. Exs. 83-86. Musk does not seek to fill a regulatory void. He seeks instead to undermine for commercial gain a non-profit transaction reviewed and accepted by regulators acting in the name of the people.

### 3.    Musk is not a settlor in any case.

Even assuming settlor standing were theoretically available, Musk is not a settlor—for the reasons set out in Section I.A. Though Musk claims to have "supplie[d] the consideration" for the DAFs' and YC's donations to OpenAI, Opp. 11, he gave up his legal interest in those funds before they were donated to OpenAI. The Bogert treatise—which Musk touts as the "leading" authority

---

[5] Musk calls the lack of any "restricted assets" in OpenAI's tax filings "a red herring" because the IRS's "regulatory distinction between restricted and general purpose donations does not track Section 28" of the Third Restatement. Opp. 16; Br. 10. Musk is wrong. *Compare* Ex. 73 at 60 (IRS form defining donor-imposed restriction as "use for a contributed asset that is more specific than broad limits resulting from … [t]he purposes specified in its articles of incorporation"), *with Derblom*, 289 A.3d at 1197 ("general purposes" are those specified in "articles of incorporation").

6

(Opp. 12)—holds that to be a settlor, one must have a "definite interest in [the] described property" that forms the "trust res"—that is, "the property interest must be … owned by the settlor at the time the trust is created." Bogert, *The Law of Trusts and Trustees* §§ 113, 323. Because Musk "gave up title to and control of his donation[s] in exchange for an immediate tax deduction," he no longer had "a definite interest in the property," and thus could not be the settlor with respect to the DAFs' and YC's later donations to OpenAI. *Pinkert*, 2021 WL 2476869, at \*3, \*5 (quoting *Holt*).

One after another, Musk's own cases (Opp. 11-12) illustrate the point. In *In re Brooks*, the settlor sufficiently "controll[ed] [the trust] assets to consider him a settlor." 844 F.2d 258, 263-64 (5th Cir. 1988). Musk here surrendered all legal control of the assets when he donated to the DAFs and YC. In *Guar. Tr. Co. of N.Y.* v. *N.Y. Tr. Co.*, the settlor held "equitable title" to the trust assets. 74 N.E.2d 232, 234 (N.Y. 1947). Musk here surrendered all title to the assets when he donated to the DAFs and YC. In *Lehman* v. *Commissioner*, the settlor had the "power to terminate the trust and take the principal." 109 F.2d 99, 100-01 (2d Cir. 1940). Musk here surrendered any legal power to take the assets when he donated to the DAFs and YC. In *In re Hertsberg Inter Vivos Tr.*, the settlor "had control over the disposition of the property." 578 N.W. 2d 289, 292 (Mich. 1998). Musk here surrendered control over the property when he donated to the DAFs and YC.

Musk's remaining cases are not to the contrary. In *Ruocco* v. *Bateman, Eichler, Hill, Richards, Inc.*, the Court ruled that an employer was not the "settlor" of a retirement plan because it "did not pay the premium costs to fund the plan." 903 F.2d 1232, 1239 (9th Cir. 1990). Here, there is no dispute that the DAFs and YC donated the funds to OpenAI. And in *Sec.-First Nat'l Bank of L.A.* v. *Wright*, the court reasoned that as between an estranged husband and wife, the wife "must be deemed the settlor" of a trust "made for [her]" where the "intent [] so clearly expressed in the property settlement agreement" was for the trust property to "revert to the estate of the wife and not to the husband." 47 Cal. App. 2d 787, 792-93 (1941). Here, the opposite is clear, where Musk relinquished any reversionary interest when he donated to the DAFs and YC. In his entire brief, Musk manages to cite no case, under the Third Restatement or otherwise, where a settlor lacking a reversionary or other interest in trust property had standing to sue for breach of the trust. Here again, Musk asks for a right to sue that finds no support in the decided cases.

1    Alternatively, Musk argues that he is the settlor because the DAFs and YC "were acting as

2  Musk's agents." But as Musk admits, an agency relationship exists only "where 'the principal

3  maintain[s] control over the agent's actions.'" Opp. 13-14. The rules governing DAFs and fiscal

4  sponsors foreclose any such relation. Br. 6 (DAFs "own and control the assets"); Br. 6-7 (fiscal

5  sponsors have "control and discretion over use of the funds"); *supra* pp. 2-4. Musk supplies no

6  basis for disregarding them. *Id.*

7    **C.    Musk lacks statutory standing.**

8        **1.    No standing under Cal. Corp. Code § 5142.**

9    Musk concedes that § 5142's references to "corporation[s]" do not apply to foreign

10  corporations like OpenAI. Br. 11-12; Opp. 17. Musk argues that because § 5142(a)(4) does not

11  itself repeat the term "corporation," it applies to *all* charitable trusts, even if the defendant is a

12  foreign corporation or not a corporation at all. Opp. 17. That reading of the *Corporations* Code is

13  nonsensical. Moreover, as the text of § 5142 makes plain, the entire section is a limitation on

14  § 5141, which concerns *ultra vires* claims involving a "corporation." Musk cites no case applying

15  § 5142(a)(4), or any other subsection of § 5142, to a foreign corporation. There is none. Br. 12.

16    And even if § 5142(a)(4) applied, Musk could not satisfy it. He concedes that he holds no

17  reversionary or property interest in OpenAI's assets. Opp. 17. He asserts he has a "contractual"

18  interest based on his alleged (and since abandoned) implied contract with Altman and OpenAI. *Id.*

19  But that is not the same as the required contractual interest "*in the assets* subject to such charitable

20  trust." § 5142(a)(4). Musk relinquished any such interest as a matter of law when he donated to the

21  DAFs and YC. Br. 12-13; SUF 11, 13; *Pinkert*, 2021 WL 2476869, at *5 ("[T]he plaintiff does not

22  have a reversionary, contractual, or property interest in the assets.").

23    In any event, Musk abandoned his claim that such a contract existed. Musk elected between

24  his implied contract claim, which "rest[s] on allegations that a contract existed," Dkt. 298 at 3, and

25  his unjust enrichment claim, which is premised on "the absence of an enforceable agreement," SAC

26  ¶ 275. Musk chose the latter, and cannot now claim that an enforceable contract "existed."

27    And Musk's contract claim would remain legally infirm even if he still made it. As the

28  OpenAI Defendants previewed in their pre-motion letter, filed before Musk dropped his contract

8

claim: (1) the statute of frauds bars enforcement of Musk's alleged implied contract because OpenAI's alleged obligations cannot be performed within a year, and (2) Musk terminated the alleged contract before any alleged breach by OpenAI. Dkt. 249 at 2-3. Musk's deposition confirmed these fatal defects, as he testified that ███████████████████████████ ████████ and that ███████████████████████████████████████████████. Musk Tr. 54:22-23, 74:9-12, 226:16-17, 289:20-290:7. This record precludes a finding of contract.

### 2. No standing under Cal. Bus. & Prof. Code § 17510.8.

Musk invokes § 17510.8 of California's charitable solicitations statute as a basis for standing. Opp. 18. Faced with the demonstration that § 17510.8 does not confer standing on anyone (Br. 13-14), Musk asserts it "implicitly" grants standing—but the case he cites warns "not [to] engraft" standing on statutes. *Crusader Ins. Co.* v. *Scottsdale Ins. Co.*, 54 Cal. App. 4th 121, 125 (1997). Musk ignores all the adverse cases cited in the opening brief, which uniformly hold that donors lack standing to sue for breach of any trust imposed by § 17510.8. Br. 14.

Section 17510.8 is also inapplicable by virtue of § 17510.6, which states that "[t]he provisions of *this article*," which includes § 17510.8, "shall not apply to solicitations … within the membership of a charitable organization." Cal. Bus. & Prof. Code § 17510.6. California courts have rejected Musk's argument that § 17510.6 is trumped by § 17510.8's "notwithstanding" clause. *E.g.*, *Cohen* v. *Kabbalah Centre Int'l, Inc.*, 35 Cal. App. 5th 13, 23 (2019). This Court should as well.[6]

### D. Musk's noncash contributions do not save his claim.

Musk touts his contributions of "time, assistance, advice, and credibility," but does not dispute that those cannot ground a charitable trust claim. Opp. 3; Br. 14-15.

Nor can Musk's donation of four Teslas establish standing because he concededly has no reversionary interest in them. *Supra* p. 4. Nor, moreover, is there a genuine dispute that OpenAI used the cars for their intended use: compensation to four employees. Br. 14; Opp. 15. In all events, Musk's claim must be limited to the cars, and his remedy limited to the return of the cars or their fair market value. *Tenn. Div. UDC* v. *Vanderbilt Univ.*, 174 S.W.3d 98, 114 (Tenn. Ct. App. 2005)

---

[6] Even if Musk had standing under § 17510.8, his claim would be limited to at most the monthly rent payments OpenAI received after Musk resigned from the board. Opp. 18-19.

1  ("donor's remedy" for failure to comply with conditions "is limited to recovery of the gift").

2  **II.     MUSK CANNOT PURSUE HIS CONSTRUCTIVE FRAUD CLAIM**

3      Musk's lack of standing to bring his charitable trust claim forecloses his constructive fraud

4  claim. Br. 15. It also fails for lack of reliance and is time-barred. *Id.* Musk's opposition provides

5  no independent basis to sustain the claim. Opp. Pt. I. Summary judgment is warranted.

6  **III.    MUSK'S FRAUD CLAIM FAILS ON MULTIPLE GROUNDS**

7      **A.     The record is devoid of any actionable misrepresentation.**

8      Musk insists that statements in two September 2017 emails are actionable because at the

9  time Altman and Brockman "had no intention whatsoever of keeping OpenAI as a nonprofit." Opp.

10  23. But setting aside that they *have* "ke[pt] OpenAI as a nonprofit," Musk identifies no evidence of

11  Altman's intent in September 2017, and for Brockman cites only three snippets ██████████████

12  ████████████████████████████████████████████████████████████████

13  ████████████████████████████████████. Opp. 23. Two such snippets are from

14  November 2017, ████████████████████████████████████████████

15  ████████████████████████, SUF 48-49—*after* the September emails. Musk Exs. 43 ███

16  ████████████████████████████████████████████████████████████████

17  ████████████████████████████, 45. They ██████████████████████

18  ████████. The third snippet, ████████████████████████ Musk Ex. 46, is from

19  August 21, 2017, ██████████████████████████████████████████.

20  SUF 52; Ex. 58. By no stretch can it show ████████████████ if, *after those discussions ended*,

21  he continued to show support for the nonprofit.

22      Musk's opposition invokes two new alleged misrepresentations: a January 31, 2018 email

23  from Brockman to Musk stating "we must[] [t]ry our best to remain a non-profit," Musk Ex. 44,

24  and a November 6, 2017 ████████████████████, Musk Ex. 43, which Musk describes

25  as ████████████████████████████████████████████████████████████

26  ████████ Opp. 23. Musk may not smuggle in statements unpleaded in his three complaints in

27  this case. *E.g.*, *Lowery* v. *Blue Steel Releasing, Inc.*, 2005 WL 6215612, at *4 n.4 (C.D. Cal. Nov.

28  23, 2005) (rejecting reliance on a "further alleged misrepresentation" not in complaint), *aff'd*, 261

F. App'x 17 (9th Cir 2007). In any event, these new statements are not actionable. Urging that "we must try our best to remain a non-profit" is not a factual representation, and Musk does not identify anything false in what he calls ███████████████.

**B.    The record evidence negates the element of justifiable reliance.**

Musk's fraud claim fails for an independent reason: the evidence negates the element of justifiable reliance. The record shows that Musk did not believe the alleged misrepresentations. Br. 17-18. Musk tries to create a fact issue by quoting snippets of his own testimony to suggest he only "'started to suspect that [he] was being swindled' in 2017." Opp. 24. But Musk could not recall ███████████████████████████████████████ Musk Tr. 70:6-9. And when presented with the September 2017 emails underlying his claim, Musk testified that he ███████████████████ ████████████████████████████████████████ *Id.* at 84:1-13, 87:17-20. As to Altman's "enthusias[m] about the nonprofit structure," Musk said he ████████████████████████ *Id.* at 91:17-92:7. There is no reliance where, as here, a plaintiff's "own deposition testimony establishes that she never believed" the alleged misrepresentation. *Major* v. *Ocean Spray Cranberries, Inc.*, 2015 WL 859491, at *4 (N.D. Cal. Feb. 26, 2015); Br. 17-18.

Musk also points to his testimony that he "became uncomfortable by degrees." Musk Tr. 288:11-19. But Musk had already stopped his quarterly donations, which ended in May 2017, because his ████████████████ *Id.* at 288:3-10; SUF 42; Exs. 4, 71. Musk's testimony about his degrees of discomfort thus supports rather than rebuts Musk's 2017 disbelief of the alleged misrepresentations. No reasonable jury could conclude Musk relied on them. Br. 17-18.

Musk further argues that it was not unreasonable to rely on the alleged misrepresentations because he "did not discover the full truth until after Microsoft's $10 billion investment in 2023." Opp. 24. But Musk's fraud claim requires proof that he "actually relied on the defendant's misrepresentations." *OCM Principal Opportunities Fund* v. *CIBC World Mkts. Corp.*, 157 Cal. App. 4th 835, 863 (2007). Musk's testimony that he did not believe the alleged misrepresentations negates any claim of actual reliance. It also negates any claim that it was reasonable for Musk "to

accept the defendant's statements without an independent inquiry or investigation." *Id.* at 864. As Musk viewed the alleged representations as "obviously false" and did not trust their authors, his "continued reliance on [them] and the assurances of [defendants] cannot be justified." *Atari Corp.* v. *Ernst & Whinney*, 981 F.2d 1025, 1030-31 (9th Cir. 1992) (affirming summary judgment).

Finally, Musk ignores that he could not have relied on the alleged September 2017 statements in making his quarterly donations, which ended months earlier. Br. 17-18. Summary judgment is warranted as to all but the post-September 2017 rent payments on this ground alone.

### C.    Musk's fraud and constructive fraud claims are time-barred.

Uncontroverted evidence shows that Musk's fraud and constructive fraud claims accrued at the latest in 2019, by which time Musk was on notice of the alleged for-profit pivot that grounds his claims—and thus they are barred by the three-year statute of limitations. Br. 18-19. Musk objects that "notice of fraud is for the trier of fact." Opp. 24. But "inquiry notice is only a question of fact where the facts alleged [are] susceptible to opposing inferences." *Hamilton Materials, Inc.* v. *Dow Chem. Corp.*, 494 F.3d 1203, 1207 (9th Cir. 2007). Summary judgment is "proper" where, as here, there is no genuine factual dispute. *Id.* (affirming summary judgment).

Musk argues for a later accrual date because "he did not discover the truth about OpenAI's full-blown commercial status until after Microsoft made its $10 billion investment in 2023." Opp. 25. But Musk's alleged discovery of "the truth" is not the relevant inquiry. Rather, "[a] fraud claim will accrue even without actual knowledge if a plaintiff knows facts that should raise suspicion and trigger a further investigation." *Vera* v. *REL-BC, LLC*, 66 Cal. App. 5th 57, 69-72 (2021). Nor can Musk postpone accrual by claiming he did not "understand[]" the conduct's "full scope." *Id.*; *Leon* v. *Wells Fargo Bank*, 2018 WL 3474182, at *4 (N.D. Cal. July 19, 2018).

Musk testified that ███████████████████████ when Altman and Brockman allegedly committed in September 2017 to keep OpenAI a non-profit; and undisputed documents show that ████████████████████████████████████████. Br. 18-19; Exs. 60-63. As a "knowledgeable and sophisticated" participant in OpenAI's early years, *Hamilton Materials*, 494 F.3d at 1206, Musk "had, at a minimum, reason to be suspicious and should have investigated [the alleged] fraud," *Vera*, 66 Cal. App. 5th at 70. His claims grounded in fraud are time-barred.

1    **IV.    MUSK'S UNJUST ENRICHMENT CLAIM FAILS ON MULTIPLE GROUNDS**

2        **A.    Musk's pursuit of tort claims bars his unjust enrichment claim.**

3        Because Musk "chose to sue in tort," he is "not entitled to restitution under a quasi-contract

4    theory" under California law, and his unjust enrichment claim must for that reason be dismissed.

5    *Silver* v. *Stripe*, 2021 WL 3191752, at *8 (N.D. Cal. July 28, 2021). Musk observes that his unjust

6    enrichment and tort claims have different elements. Opp. 19. True but irrelevant, as shown by *Silver*

7    and all cases subject to California's economic loss rule, which bars tort claims that seek recovery

8    for economic harm from contract breaches. Contract and tort claims have different elements, yet

9    plaintiffs cannot avoid the economic loss rule by invoking the right to pursue alternative claims.

10   *E.g.*, *Ladore* v. *Sony Comput. Ent. Am., LLC*, 75 F. Supp. 3d 1065, 1075 (N.D. Cal. 2014).

11       Musk wrongly claims that *McBride* supports a contrary rule. Opp. 20. But *McBride* says a

12   plaintiff may pursue unjust enrichment "instead" of suing in tort—not that he can pursue both. 123

13   Cal. App. 4th 379, 388 (2004). Cases applying *McBride* explicitly hold that plaintiffs "cannot

14   proceed" on unjust enrichment claims because they chose to sue in tort. *Zeichner* v. *Nord Sec. Inc.*,

15   2024 WL 4951261, at *8 (N.D. Cal. Dec. 2, 2024). And while *Astiana* v. *Hain Celestial Grp.* held

16   that an unjust enrichment claim should not be dismissed merely as "duplicative of" other claims,

17   783 F.3d 753, 762 (9th Cir. 2015), alternative pleading "cannot, on its own, overcome dismissal on

18   the basis of" a substantive state law bar. *Advanced Riggers & Millwrights, LLC* v. *Hoist Liftruck*

19   *MFG, Inc.*, 2015 WL 12860470, at *7 (C.D. Cal. Oct. 29, 2015) (so holding as to economic loss

20   rule). Musk cites not one case under the *McBride* rule that allowed an unjust enrichment claim

21   alongside tort claims for the same conduct. Musk is entitled to no special dispensation.

22       **B.    Musk fails to tether his unjust enrichment claim to an actionable wrong.**

23       Because unjust enrichment "is not a standalone cause of action," Musk must tie the

24   enrichment to a cognizable theory of injustice. Br. 20. The only theories of unjust enrichment

25   invoked in Musk's complaint are request and fraud. SAC ¶ 277 (alleging that defendants

26   "solicit[ed]" contributions from Musk under "false pretense"). As to "request," Musk does not

27   dispute the lack of evidence that anyone expected Musk to be compensated for his alleged

28   contributions to OpenAI, which he agrees is needed for a request-based claim. Opp. 21; Br. 21-22.

And as to fraud, the absence of evidence establishing either an actionable misrepresentation or justifiable reliance "also defeat[s] [Musk's] unjust enrichment claim" based on a fraud theory. *Young* v. *Cree, Inc.*, 2021 WL 4749384, at \*10 (N.D. Cal. Oct. 12, 2021).

Instead of linking his unjust enrichment claim to a cognizable wrong, Musk simply asserts that the "retention of [his] benefits is plainly 'unjust' within the broad contours of California law." Opp. 21. This won't do. The law requires Musk to "make[] clear upon which of the[] theories his unjust enrichment claim is based." *McBride*, 123 Cal. App. 4th at 388. Musk does not claim—and evidence does not support—any "mistake, fraud, [or] coercion." Witkin, Contracts § 1057; *see also Astiana*, 783 F.3d at 762 (requiring "mistake, fraud, coercion, or request"). Without such an underlying "actionable wrong," Musk's unjust enrichment claim fails. *E.g.*, *Hammerling* v. *Google LLC*, 615 F. Supp. 3d 1069, 1096 (N.D. Cal. 2022) (dismissing unjust enrichment claim for lack of "an actionable wrong"), *aff'd*, 2024 WL 937247, at \*3 n.3 (9th Cir. Mar. 5, 2024) (claim "cannot lie where the defendant has not committed some predicate actionable wrong").

## C.    Musk's unjust enrichment claim is time-barred.

Musk's claim that the "catchall" four-year statute of limitations applies (Opp. 21 (citing Cal. Civ. Proc. Code § 343)) is foreclosed by settled law. *Mosier* v. *Erwin & Johnson, LLP*, 2013 WL 12122421, at \*5 (C.D. Cal. May 29, 2013) (§ 343 inapplicable to unjust enrichment claim). Unjust enrichment claims have a limitations period of two years under § 339(1), if grounded in quasi-contract, or three years under § 338(d), if grounded in fraud or mistake. Br. 23-24; *Rodriguez* v. *Int'l Bus. Machs. Corp.*, 2024 WL 3908119, at \*2 (N.D. Cal. Aug. 19, 2024).

Musk's quasi-contract claim accrued "no later" than when Musk "last made a payment." *E.g.*, *Wu* v. *Sunrider Corp.*, 2018 WL 6266577, at \*5-6 (C.D. Cal. May 22, 2018), *aff'd*, 793 F. App'x 507 (9th Cir. 2019); Br. 23 (citing cases). Musk asserts that the claim accrued at some unspecified later point of "unjust retention of the benefit, not the plaintiff's payment." Opp. 21. Even if that were correct, Musk claims that OpenAI "solicit[ed] … capital" from him under "false pretense[s]," SAC ¶ 277, so retention of the capital would have been unjust as soon as it was received. Opp. 21 (acknowledging that "unjust retention [can] coincide[] with payment"). In any event, a quasi-contractual "duty implied by law to pay" for a plaintiff's contributions "arises

14

immediately on performance," at which point the statute "begins to run." Witkin, Actions § 595. It is undisputed that Musk's last payment was in 2020. Ex. 4. The two-year statute thus expired long before Musk filed suit in 2024.[7]

As to his fraud-based unjust enrichment theory, Musk repeats his claim that it did not accrue until 2023. Opp. 22. That contention fails here for the same reasons it fails with respect to Musk's fraud claims—Musk's own testimony confirms ███████████████. *See* Pt. III.C, *supra*. The claims accrued at that time and are therefore time-barred. Br. 23-24.

Finally, Musk contends that even if he "can no longer sue over OpenAI's wrongful retention of benefits in 2019, he can still sue over OpenAI's more recent misconduct that renders its retention of benefits unjust." Opp. 22. In arguing for "accru[al] each time a wrongful act occurs," *id.*, Musk cites California's "continuous accrual" doctrine. But that doctrine applies only when a defendant's duties are "severed into intervals." *Lamont* v. *Time Warner, Inc.*, 586 F. App'x 357, 357 (9th Cir. 2014); *see also Honey Baked Ham, Inc.* v. *Honey Baked Ham Co.*, 2021 WL 5990164, at *8 (C.D. Cal. Nov. 4, 2021) (continuous accrual requires "a series of severable obligations"). Musk claims OpenAI was required to "be open source and a nonprofit" ████████ Musk Tr. 54:15-23, 285:19-286:24. There is no evidence these alleged duties were severed into intervals or constituted severable obligations, and Musk does not claim they were.[8] *E.g.*, *Hamilton* v. *U.S. Bank Nat'l Ass'n*, 2022 WL 1736 8815, at *7 (C.D. Cal. Oct. 14, 2022) (deed of trust not "divisible or severable"); *Phoenix Techs. Ltd.* v. *VMware, Inc.*, 2017 WL 1289863, at *6 (N.D. Cal. Jan. 6, 2017) (perpetual license "not severable"). Continuous accrual does not apply and the claim remains time-barred.

## CONCLUSION

The Court should grant the OpenAI Defendants' motion for summary judgment.

---

[7] Even if the four-year statute applied, only two payments—████████████████████████████ ████████████████—were made within four years of the August 5, 2024 filing of the complaint. Ex. 4. Thus, summary judgment would be warranted for all but those two payments.

[8] Musk's cases (Opp. 22) involved severable obligations. *Aryeh* v. *Canon Bus. Sols., Inc.*, 55 Cal. 4th 1185, 1200 (2013) ("duty not to impose unfair charges in monthly bills" "susceptible to recurring breaches"); *Water Audit Cal.* v. *Merced Irrigation Dist.*, 111 Cal. App. 5th 1147, 1192 (2025) (statute provided "[e]ach day" a violation continues "shall constitute a separate violation").

1    Date:  November 21, 2025

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MORRISON & FOERSTER LLP

/s/ Jordan Eth
JORDAN ETH (CA SBN 121617)
JEth@mofo.com
WILLIAM FRENTZEN (CA SBN 343918)
WFrentzen@mofo.com
DAVID J. WIENER (CA SBN 291659)
DWiener@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105
Telephone:    (415) 268-7000
Facsimile:    (415) 268-7522

WILLIAM SAVITT (admitted *pro hac vice*)
WDSavitt@wlrk.com
BRADLEY R. WILSON (admitted *pro hac vice*)
BRWilson@wlrk.com
SARAH K. EDDY (admitted *pro hac vice*)
SKEddy@wlrk.com
STEVEN WINTER (admitted *pro hac vice*)
SWinter@wlrk.com
NATHANIEL CULLERTON (admitted *pro hac vice*)
NDCullerton@wlrk.com
WACHTELL, LIPTON, ROSEN & KATZ
51 West 52nd Street
New York, NY 10019
Telephone:    (212) 403-1000
Facsimile:    (212) 403-2000

*Attorneys for the OpenAI Defendants*