# EXHIBIT 84

**Not Under Seal**

October 27, 2025

*Via email*

This Memorandum of Understanding ("MOU") is entered into by Rob Bonta, Attorney General of California, on behalf of the People of the State of California ("Attorney General"), and OpenAI, Inc. (the "NFP," together with its subsidiaries "OpenAI") (collectively, the NFP and the Attorney General, "the Parties" and each a "Party") to memorialize their agreement regarding the restructuring or recapitalization transaction ("Recapitalization") of OpenAI, of which notice was given on October 10 and 13, 2025.

WHEREAS the Recapitalization contemplates, among other terms, the recapitalization of OpenAI's for-profit limited liability company into a newly formed for-profit public benefit corporation (the "PBC"), with the NFP retaining control of the PBC in accordance with the Representations made in this MOU;

WHEREAS under the Supervision of Trustees and Fundraisers for Charitable Purposes Act ("Supervision Act"), the Attorney General has primary responsibility for supervising charitable trusts, for ensuring compliance with trusts and articles of incorporation, and for protection of assets held by charitable trusts and public benefit corporations (Gov. Code, § 12580 et seq.) including foreign nonprofit corporations doing business or holding assets in California (Gov. Code, §§ 12582.1, 12588) such as the NFP;

WHEREAS OpenAI is committed to creating jobs, economic stimulus, and problem-solving that Californians need;

WHEREAS OpenAI was founded and started in California as a research lab and has now grown in its home state of California to a point where it generates thousands of jobs and over a billion dollars of positive economic impact for California annually;

WHEREAS OpenAI has been able to grow and expand in large part because California is its home, including the ability to access the talent and ideas to ensure that AGI will benefit all of humanity;

WHEREAS OpenAI is looking forward to bringing meaningful benefits to the state via a nonprofit that has the potential to be one of the largest nonprofits in the world;

WHEREAS OpenAI through the PBC will continue to increase its hiring of employees in the state, expand its office presence in its home state of California, and generate material local and state tax revenue for the state;

WHEREAS OpenAI is excited to have the opportunity to continue to deepen its commitment to its home state of California; and

WHEREAS the Attorney General's position as stated in the MOU is formed in reliance upon, and contingent upon the accuracy of, the documents and information provided to the Attorney General or his advisors by OpenAI and its advisors during the course of the Attorney General's review of the Recapitalization (the "Information"), including but not limited to the below listed representations made to the Attorney General and his advisors by OpenAI concerning the

1

OpenAI enterprise's corporate structure contemplated by the proposed Recapitalization (the "Representations"). The Attorney General understands the following Representations will be implemented as part of the Recapitalization.

Representations:

It is therefore agreed:

1. With the Recapitalization, OpenAI will maintain its NFP headquarters and have its PBC headquarters in California, and, as a result of this agreement, is now able to expand its footprint in California, all of which is subject to the NFP Board's ability to advance the mission and the NFP and PBC Boards' respective fiduciary duties under Delaware law.

2. So long as the NFP holds Class N Common Stock, the NFP will retain control and oversight over the newly formed PBC, including the sole power and authority of the Board of Directors of the NFP (the "NFP Board") to appoint members of the Board of Directors of the PBC (the "PBC Board") and the power and authority of the NFP Board to remove PBC Board members. The decision whether to relinquish the Class N Common Stock, if ever, is in the control of the NFP Board.

3. The mission of the PBC will be identical to that of the NFP (the "Mission"), and the Mission of the NFP as currently codified in its Certificate of Incorporation will remain its mission as of the Recapitalization.

4. The PBC will publish the "OpenAI Charter," as published at https://openai.com/charter, which describes the principles the PBC will use to execute the Mission.

5. The NFP Board owes fiduciary duties to the NFP, the Mission, and the public beneficiaries of the NFP in accordance with Delaware law. In fulfilling their fiduciary duties, the directors of the NFP shall: 1) act in support and furtherance of the Mission and 2) act with loyalty and care consistent with the duties of loyalty and care under Delaware law.

6. The NFP operates and holds charitable assets in California, which benefit the People of California. The NFP Board shall cause the NFP to carry out its charitable purpose in accordance with its Certificate of Incorporation.

7. As long as the NFP holds Class N Common Stock of the PBC, the NFP's prior written approval will be required, as further described in definitive documents, for the PBC to: 1) amend the PBC's "Corporate Governance Guidelines," 2) "amend any provision of Article III (Public Benefit)" which states the Mission of the PBC, 3) "enter into any definitive agreement providing for, or consummate (to the extent not previously so approved), any Deemed Liquidation Event or any sale of material assets of the [PBC] and its subsidiaries, taken as a whole," 4) "issue any additional shares of Class N Common Stock," 5) "other than in the case of the issuance of Class B Common Stock in connection with any acquisition transaction or similar

2

transaction or the authorization of additional shares of Class B Common Stock, issue or authorize the creation of any share of capital stock of the [PBC] entitled to vote on the election of directors, including through an amendment to this Certificate of Incorporation to provide any then-existing share of capital stock of the [PBC] the right to vote on the election of directors," and 6) "amend, supplement or otherwise modify any provision of this Certificate of Incorporation or the Bylaws of the [PBC] (including by way of merger or otherwise) to the extent any such modification would disproportionately and adversely affect the rights of the holder of Class N Common Stock, in its capacity as a holder of Class N Common Stock."

8. The PBC Certificate of Incorporation contains a provision consistent with Section 141(a) of the Delaware General Corporation Law requiring the PBC Board to consider only the Mission (and may not consider the pecuniary interests of stockholders or any other interest) in respect of safety and security issues related to the OpenAI enterprise, including in connection with all actions and decisions of the members of the Safety and Security Committee of the NFP Board ("SSC") (or any successor committee thereto) in their capacities as such, or of the PBC Board with respect to such matters.

9. The SSC will be a committee of the NFP, not the PBC, and will have the authorities granted in the Unanimous Written Consent of the NFP Board dated September 15, 2024, including "overseeing and reviewing the safety and security processes and practices of the Corporation and its controlled affiliates with respect to model development and deployment." The PBC and NFP will enter a contractual agreement providing the SSC an effective approval right, consistent with current practice prior to the Recapitalization, over PBC actions relating to safety and security as described above, such contractual agreement (and any material amendments thereto) to be provided promptly to the Attorney General.

10. The Chair of the SSC will be a director on the NFP Board and will not be a director on the PBC Board. Mr. Zico Kolter will be the Chair of the SSC when the Recapitalization is consummated. The Chair of the SSC will have full observation rights to attend all PBC Board and committee meetings and will receive all information regularly shared with the PBC Board and any additional information shared with the PBC Board related to safety and security of AI and of Artificial General Intelligence (AGI).

11. The SSC has and will continue to have the authority to require mitigation measures—up to and including halting the release of models or AI systems—even, for the avoidance of doubt, where the applicable risk thresholds would otherwise permit release. The NFP will provide advance notice to the Attorney General of any material changes to the SSC's authority.

12. OpenAI will continue to undertake measures to mitigate risks to teens and others in connection with the development and deployment of AI and of AGI.

13. As to be set forth in a Support and Services Agreement between the PBC and the

3

OPENAI_MUSK00037812

NFP, the PBC and NFP acting reasonably and with the intent of advancing the NFP's Mission, and to the extent that the NFP reasonably requires access to personnel and/or resources to support its Mission, including but not limited to access to OpenAI's advanced research, intellectual property (providing that any access arrangements respecting advanced research and intellectual property will be designed to preserve the value of the intellectual property of the NFP or the PBC as the case may be), products and platforms, including artificial intelligence models, APIs, and related tools and technologies, as well as ongoing operational and programmatic support, and employees of the PBC, the PBC will be contractually obligated to provide the NFP with those reasonable services and resources without compensation. In the event the NFP and the PBC are unable to reach agreement with respect to those services and resources, the determination of the NFP Board as to the services and resources reasonably required to adequately support the NFP's Mission shall control. This agreement will not be terminated without the NFP's written consent.

14. Within one year of the Recapitalization, at least one current NFP director (in addition to the SSC Chair) will serve only on the NFP Board.

15. The PBC Board will be composed of a majority of independent directors, reinforcing oversight. These independent directors will not be employees or members of management, and, in the determination of the PBC Board, will have no relationship or interest that could compromise their judgment — ensuring strong, objective oversight that reinforces accountability and mission alignment.

16. The OpenAI enterprise will have robust corporate governance guidelines and conflict of interest policies, and will establish Audit & Risk, Compensation, and Nominating & Governance Committees at the PBC level, each comprised solely of independent directors.

17. The PBC will provide fully public reports at least annually that demonstrate its progress toward its mission.

18. Members of the NFP Board's Mission & Strategy Committee will be available to meet with this Office semiannually. Senior members of the PBC will also be available to meet with this office quarterly and more frequently as needed. OpenAI will work with this Office in advance of those meetings to set an agenda and ensure that it provides this Office with timely information about its operations and progress towards its mission.

19. The NFP will provide at least 21 days' prior written notice to the Attorney General before consenting to: (a) a change of control of the PBC; (b) any change to the PBC mission as set out in the PBC Delaware charter; (c) any amendment to the PBC Delaware charter that would remove the NFP's sole right, as holder of the Class N shares, to appoint PBC directors or otherwise reduces in any material respect the rights of the Class N shares; or (d) the relocation of the headquarters of the NFP or PBC outside of California.

20. As part of the Attorney General's oversight, the Attorney General may, in his/her sole discretion, retain experts or consultants, to have under contract, to assist in reviewing material transactions subject to the 21-day advance and complete notice requirement as further described above. The Attorney General shall be entitled to reimbursement from the NFP for all actual, reasonable, direct costs incurred in reviewing, evaluating, and making the determination, including administrative costs. Reimbursable costs under this paragraph shall not exceed an amount that is reasonable and necessary to conduct the review and evaluation, and the Attorney General shall endeavor to cooperate, and not unnecessarily duplicate efforts engaged in pursuant to this paragraph. The NFP shall pay all such costs on behalf of the Attorney General after receipt of an invoice provided by or on behalf of the Attorney General or, at the Attorney General's discretion, reimburse the Attorney General for such costs advanced.

    The notice shall be provided pursuant to Title 11 of the California Code of Regulations, section 328. As way of example, the written notices or requests shall be deemed filed with the Attorney General when the notices or requests are received at the Office of the Attorney General, during normal business hours, and when notices or requests are received after 5:00 p.m. on a business day, or at any time on a weekend or holiday, they will be considered to be filed on the following business day. Every notice to the Attorney General shall include all material facts to permit the Attorney General to fully evaluate the notice provided pursuant to Paragraph 19, and the Attorney General retains the right to request and promptly receive Information material to the Attorney General's review of the notice provided pursuant to Paragraph 19. A notice that does not contain all of the required information is incomplete and not deemed filed.

21. The NFP will require board members that serve on both the NFP and PBC boards to participate in annual training on the fiduciary duties they hold with respect to each board to ensure that their duties are to the mission, not to private or other interests. This training will be provided by the PBC's Chief Compliance Officer and outside counsel with expertise in corporate and nonprofit governance.

22. Based on the Information and documents provided by OpenAI, in reliance on the Representations above and including that the Recapitalization is fair or reasonable from a financial point of view to the NFP, and conditioned upon and subject to (a) the non-occurrence of any material change to OpenAI's business, condition, operations, or otherwise, that would require the Information provided to be updated, (b) no facts material to the Attorney General's review having been excluded in the Information, and (c) the approval of the Recapitalization by the NFP Board, the Attorney General shall not object to the Recapitalization.

23. **NO IMPACT ON ANY OTHER CASE:** The terms of this MOU shall apply only to the Parties that are expressly made the subject of this MOU, and shall not determine the past or future rights of any Party with respect to any other transaction or litigation concerning any subject, as to which each Party reserves all rights.

5

OPENAI_MUSK00037814

24. **DISPUTES**: Disputes arising under this MOU will be resolved by the Superior Court of the State of California, County of San Francisco, to whose jurisdiction both Parties expressly consent.

25. **ENTIRE TERMS**: This MOU contains all the terms and conditions agreed upon by the Parties. No other understandings, oral or otherwise, regarding the subject matter of this MOU shall be deemed to exist or be binding upon the Parties.

26. **AUTHORITY TO ENTER INTO MOU**: By signing this MOU, the persons executing the MOU represent that they have the capacity and authority to execute the MOU as the representative of their respective Party and to bind their respective Party to the terms of this Agreement.

27. **EFFECTIVE DATE**: This MOU becomes effective upon the signing of all Parties, and the MOU can only be terminated upon written consent of both Parties.

28. **RELIANCE**: The Attorney General is unaware of any facts contrary to the foregoing Representations, and is expressly and solely relying upon the Information and the Representations, which OpenAI has asserted to be true and accurate in all material respects. The Attorney General expressly reserves all rights and waives none.

By:

*Elizabeth Kim*

Elizabeth Kim

Senior Assistant Attorney General

California Department of Justice

*[signature]*

Renny Hwang

Deputy General Counsel

OpenAI OpCo, LLC, *on behalf of* OpenAI, Inc.