JORDAN ETH (CA SBN 121617)
JEth@mofo.com
WILLIAM FRENTZEN (CA SBN 343918)
WFrentzen@mofo.com
DAVID J. WIENER (CA SBN 291659)
DWiener@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105
Telephone:    (415) 268-7000
Facsimile:    (415) 268-7522

WILLIAM SAVITT (admitted *pro hac vice*)
WDSavitt@wlrk.com
BRADLEY R. WILSON (admitted *pro hac vice*)
BRWilson@wlrk.com
SARAH K. EDDY (admitted *pro hac vice*)
SKEddy@wlrk.com
STEVEN WINTER (admitted *pro hac vice*)
SWinter@wlrk.com
NATHANIEL CULLERTON (admitted *pro hac vice*)
NDCullerton@wlrk.com
WACHTELL, LIPTON, ROSEN & KATZ
51 West 52nd Street
New York, NY 10019
Telephone:    (212) 403-1000
Facsimile:    (212) 403-2000

*Attorneys for Defendants Samuel Altman, Gregory Brockman,
OpenAI, Inc., OpenAI L.P., OpenAI, L.L.C., OpenAI GP, L.L.C.,
OpenAI OpCo, LLC, OpenAI Global, LLC, OAI Corporation, LLC,
OpenAI Holdings, LLC, OpenAI Startup Fund Management, LLC,
OpenAI Startup Fund GP I, L.L.C., OpenAI Startup Fund I, L.P.,
OpenAI Startup Fund SPV GP I, L.L.C., OpenAI Startup Fund SPV GP II, L.L.C.,
OpenAI Startup Fund SPV GP III, L.L.C., OpenAI Startup Fund SPV GP IV, L.L.C.,
OpenAI Startup Fund SPV I, L.P., OpenAI Startup Fund SPV II, L.P.,
OpenAI Startup Fund SPV III, L.P., OpenAI Startup Fund SPV IV, L.P.,
Aestas Management Company, LLC, and Aestas LLC*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

| | |
|---|---|
| ELON MUSK, et al., | Case No. 4:24-cv-04722-YGR |
| Plaintiffs, | **OPENAI DEFENDANTS' STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| SAMUEL ALTMAN, et al., | |
| Defendants. | Date:  January 7, 2026<br>Time:  2:00 p.m.<br>Courtroom:  1 – 4th Floor<br>Judge:  Hon. Yvonne Gonzalez Rogers |

Pursuant to the Court's Standing Order, the OpenAI Defendants submit the following separate statement of undisputed material facts in support of their Motion for Summary Judgment.

| Issue No. | OpenAI Defendants' Undisputed Material Facts and Supporting Evidence | Plaintiffs' Response and Supporting Evidence |
|---|---|---|
| Issue 1 (Summary judgment is required on Musk's claim for breach of charitable trust) | <u>Fact 1</u>.  OpenAI, Inc. ("OpenAI") is a nonprofit corporation incorporated in Delaware and headquartered in California.<br><br>Ex. 1; Ex. 2; Ex. 15. | |
| Issue 1 | <u>Fact 2</u>.  OpenAI filed its original certificate of incorporation with the Delaware Secretary of State on December 8, 2015.<br><br>Ex. 1. | |
| Issue 1 | <u>Fact 3</u>.  OpenAI filed an amended certificate of incorporation with the Delaware Secretary of State on April 23, 2020.<br><br>Ex. 2. | |
| Issue 1 | <u>Fact 4</u>.  OpenAI's mission "is to ensure that artificial general intelligence … benefits all of humanity."<br><br>Ex. 3 at 1; Ex. 2 at 2; Ex. 15 at 2. | |
| Issue 1 | <u>Fact 5</u>.  As reflected in its IRS Form 990s, OpenAI received approximately $133.2 million in charitable contributions between 2016 and 2020.  That included $10 million from Aphorism Foundation; $20 million from Gabe Newell; $30 million from Good Ventures Foundation; and $30 million from Silicon Valley Community Foundation.<br><br>Ex. 41 at 1; Ex. 42 at 1, 22; Ex. 43 at 1, 22; Ex. 44 at 1, 22; Ex. 45 at 1. | |
| Issue 1 | <u>Fact 6</u>.  All of Musk's[1] claimed "financial contributions" to OpenAI, including cash and non-cash property, are reflected in Exhibit 4.<br><br>Ex. 4; Ex. 13 at 17-19. | |
| Issue 1 | <u>Fact 7</u>.  As reflected in Exhibit 4, Musk's claimed cash contributions to OpenAI totaled $37,537,000 between 2016 and 2020.<br><br>Ex. 4. | |
| Issue 1 | <u>Fact 8</u>.  As reflected in Exhibit 4, all of Musk's claimed cash contributions were granted to | |

---

[1] Unless otherwise specified, "Musk" includes Elon Musk, the Elon Musk Revocable Trust, and the Musk Foundation.

| | | | |
|---|---|---|---|
| | | OpenAI by the Vanguard Charitable Endowment Program ("Vanguard"), Fidelity Investments Charitable Gift Fund ("Fidelity"), or YC.org ("YC Org.").<br><br>Ex. 4. | |
| | Issue 1 | <u>Fact 9.</u>  As reflected in Exhibit 4, of Musk's claimed cash contributions of $37,537,000:<br><br>• $16,052,000 was granted to OpenAI or YC Org. by Vanguard.<br>• $10,985,000 was granted to OpenAI by Fidelity.<br>• $26,027,000 was granted to OpenAI by YC Org. (of which $10,500,000 was previously granted to YC Org. by Musk and of which $15,527,000 was previously granted to YC Org. by Vanguard).<br><br>Ex. 4. | |
| | Issue 1 | <u>Fact 10.</u>  Musk's contributions to Vanguard were subject to the terms specified in Vanguard's *Policies and Guidelines*.<br><br>Ex. 16 at 7. | |
| | Issue 1 | <u>Fact 11.</u>  Pursuant to Vanguard's *Policies and Guidelines*:<br><br>• The recommending donor "no longer has control over the assets" once contributed to Vanguard;<br>• Contributions "are no longer the property of the donor; they are owned by Vanguard";<br>• Contributions to Vanguard are "unconditional," "irrevocable," and immediately tax deductible;<br>• Subsequent grants made by Vanguard are "[g]rants from Vanguard," not from the recommending donor;<br>• The recommending donor may not take additional tax deductions for subsequent grants made by Vanguard;<br>• The recommending donor "cannot impose any restrictions or conditions" on subsequent donations "that prevent [Vanguard] from freely and effectively using the gift to further its mission";<br>• "Generally, grants from [Vanguard] cannot be used to fulfill any obligation associated with an existing grant agreement or legally binding pledge between a donor and a charity," and "satisfying a pledge through a grant | |

| | | | |
|---|---|---|---|
| | | from a [Vanguard] account constitutes impermissible benefit to" the recommending donor.<br><br>Ex. 17 (2014) at 6, 10, 17, 24, 29; Ex. 18 (2015) at 6, 10, 17, 24, 28-29; Ex. 19 (2016) at 6, 10, 17, 24, 28-29; Ex. 20 (2017) at 6, 10, 17, 24, 28-29. | |
| | Issue 1 | <u>Fact 12</u>. Musk's contributions to Fidelity were subject to the terms specified in the *Fidelity Charitable Policy Guidelines: Program Circular*.<br><br>Ex. 21 at 7; Ex. 22 at 4. | |
| | Issue 1 | <u>Fact 13</u>. Pursuant to Fidelity's *Program Circular*:<br><br>• Once Fidelity accepts a contribution, it takes "exclusive legal control over all contributed assets";<br>• Contributions to Fidelity are "irrevocable and are immediately tax deductible to the fullest extent allowed by law";<br>• The recommending donor is "not eligible for additional charitable deductions for" "grants to charities based on recommendations";<br>• Subsequent grants made by Fidelity are "grant[s] from Fidelity," which "is granting its own assets";<br>• The recommending donor's grant recommendations "are not binding, and are subject to review and approval by [Fidelity] in [its] sole discretion";<br>• Subsequent donations made by Fidelity cannot provide "more than incidental benefits" to the recommending donor, including "[s]upport for" the recommending donor's "own fundraising commitment" or the fulfillment of "[a] financial obligation, such as an enforceable pledge … made as a legally binding obligation."<br><br>Ex. 23 (July 2017) at 3, 6, 11, 17-19; Ex. 24 (Mar. 2018) at 3, 6, 11, 18-20; Ex. 25 (June 2018) at 3, 6, 11, 18-20; Ex. 26 (July 2018) at 3, 6, 11, 18-20; Ex. 27 (Oct. 2018) at 3, 6, 11-12, 18-20; Ex. 28 (Aug. 2019) at 6, 12, 15-17; Ex. 29 (Mar. 2020) at 6, 12, 15-17; Ex. 30 (Aug. 2020) at 6, 12, 15-17; *see also* Ex. 31 at 22; Ex. 32 at 17. | |
| | Issue 1 | <u>Fact 14</u>. YC Org. served as OpenAI's tax- | |

| | | | |
|---|---|---|---|
| | | exempt fiscal sponsor before OpenAI attained its own tax-exempt status.<br><br>Ex. 34 at 1; Ex. 35 (Birchall Tr.) at 35:8-13. | |
| | Issue 1 | <u>Fact 15</u>. YC Org.'s grants to OpenAI were governed by the Fiscal Sponsorship Grant Agreement ("FSA") between YC Org. and OpenAI.<br><br>Ex. 34; Ex. 36; *see also* Ex. 6. | |
| | Issue 1 | <u>Fact 16</u>. Pursuant to the FSA, YC Org. exercised and retained "full discretion and control over the selection [of grantees], acting completely independently of … any funding source."<br><br>Ex. 34; Ex. 74 at 12. | |
| | Issue 1 | <u>Fact 17</u>. Vanguard's grant confirmations sent to YC Org. specified that "[b]y accepting this grant from Vanguard Charitable, you certify that your organization maintains discretion and control over any grant funds used to support the fiscal sponsorship of another organization."<br><br>Ex. 9 at 5, 9, 13, 17, 21, 25, 29, 33, 37, 41, 45. | |
| | Issue 1 | <u>Fact 18</u>. Musk claimed present-year tax deductions for assets he donated to Vanguard, Fidelity, and YC Org.<br><br>Ex. 37 at 3, 7, 11; *see also* Exs. 33, 38. | |
| | Issue 1 | <u>Fact 19</u>. Musk did not claim additional tax deductions for any assets donated to OpenAI by Vanguard, Fidelity, or YC Org.<br><br>Ex. 33; Ex. 37. | |
| | Issue 1 | <u>Fact 20</u>. The Musk Foundation used the donations it made to Vanguard, Fidelity, and YC Org. as "qualifying distributions" to satisfy its annual distribution requirements.<br><br>Ex. 31 at 21-22 (Fidelity);<br>Ex. 39 at 6, 8 (Vanguard and YC Org.);<br>Ex. 35 (Birchall Tr.) at 48:2-12 (acknowledging that contributions to donor advised funds count towards satisfying the requirement). | |
| | Issue 1 | <u>Fact 21</u>. Musk testified that there were only "two fundamental things that were agreed to" with respect to his alleged contract and the alleged terms attached to his donations: "[t]hat [OpenAI] would be open source and a nonprofit."<br><br>Ex. 12 (Musk Tr.) at 285:19-286:24. | |

| | | | |
|---|---|---|---|
| 1 | Issue 1 | Fact 22. Musk testified that those alleged terms were "consistent publicly and privately," and that the alleged "promises that were made to" Musk personally were no "different than the promises that were made to the public."<br><br>Ex. 12 (Musk Tr.) at 184:13-185:7. | |
| 5 | Issue 1 | Fact 23. OpenAI's original certificate of incorporation filed with the Delaware Secretary of State on December 8, 2015 states, among other things, that:<br><br>"THIRD: This Corporation shall be a nonprofit corporation organized exclusively for charitable and/or educational purposes within the meaning of section 501(c)(3) of the Internal Revenue Code of 1986, as amended, or the corresponding provision of any future United States Internal Revenue law. The specific purpose of this corporation is to provide funding for research, development and distribution of technology related to artificial intelligence. The resulting technology will benefit the public and the corporation will seek to open source technology for the public benefit when applicable. The corporation is not organized for the private gain of any person.<br><br>…<br><br>FIFTH: The property of this corporation is irrevocably dedicated to the purposes in Article THREE hereof and no part of the net income or assets of this corporation shall ever inure to the benefit of any director, officer or member thereof or to the benefit of any private person."<br><br>Ex. 1 at 2. | |
| 20 | Issue 1 | Fact 24. OpenAI's amended certificate of incorporation filed with the Delaware Secretary of State on April 23, 2020 states, among other things, that:<br><br>"THIRD: This Corporation shall be a nonprofit corporation organized exclusively for charitable purposes within the meaning of section 501(c)(3) of the Internal Revenue Code of 1986, as amended, or the corresponding provision of any future United States Internal Revenue law. The specific purpose of this corporation is to ensure that artificial general intelligence benefits all of humanity, including by conducting and/or funding artificial intelligence research. The corporation may also research and/or otherwise support efforts to | |

| | | | |
|---|---|---|---|
| | | safely develop and distribute such technology and its associated benefits, including analyzing the societal impacts of the technology and supporting related educational, economic, and safety policy research and initiatives. The resulting technology will benefit the public and the corporation will seek to distribute it for the public benefit when applicable. The corporation is not organized for the private gain of any person.<br><br>…<br><br>FIFTH: The property of this corporation is irrevocably dedicated to the purposes in Article THREE hereof and no part of the net income or assets of this corporation shall ever inure to the benefit of any director, officer or member thereof or to the benefit of any private person."<br><br>Ex. 2 at 2. | |
| | Issue 1 | <u>Fact 25</u>. Musk did not attempt to impose specific restrictions on Musk's claimed cash contributions that were granted to OpenAI by Vanguard, Fidelity, or YC Org.<br><br>Ex. 35 (Birchall Tr.) at 28:15-29:11 (Birchall "help[ed] to manage Mr. Musk's donations in connection with OpenAI"); 55:2-17 ("ultimately, [OpenAI] could have decided what they did with the money [from Fidelity]"), 56:3-25 (Birchall did not "have any communications with Fidelity … direct[ing] the grants be used for anything more specific than general support"); 57:1-12 (Birchall was not aware of "any communications" to OpenAI in which Fidelity or Vanguard "direct[ed] that grants … be used for a specific purpose"); 57:13-25 (Birchall was not aware of "anyone having communicated to anyone at" Fidelity or Vanguard "that grants from Fidelity to OpenAI should be used for a specific purpose"); 58:1-8 (Birchall did not recall "ever hav[ing] any communications … with Mr. Musk in which he [Musk] directed that … donations to OpenAI should be used for any purpose more specific than general support"), 59:19-60:6 (Birchall did not recall "ever communicat[ing] to anyone at YC org that the grants should be used for a specific purpose by OpenAI" and was not aware of any such communications by Musk); Exs. 9-11 (grant receipts). | |
| | Issue 1 | <u>Fact 26</u>. Vanguard did not impose specific restrictions on its donations to YC Org. To the extent that any of Vanguard's contributions to | |

| | | |
|---|---|---|
| | | YC Org. can be deemed restricted gifts, they were restricted at most insofar as they were "[t]o be used for" OpenAI or, in one case, OpenAI building expenses.<br><br>Ex. 9 at 2, 7, 11, 15, 19, 23, 27, 31, 35, 39, 43; Ex. 35 (Birchall Tr.) at 57:1-25, 58:1-8, 59:19-60:6. | |
| | Issue 1 | <u>Fact 27</u>.  Vanguard did not impose specific restrictions on its donations to OpenAI.  To the extent that any of Vanguard's contributions to OpenAI can be deemed restricted gifts, they were restricted at most insofar as they were "[t]o be used for" OpenAI building expenses.<br><br>Ex. 10 at 2, 6, 10; Ex. 35 (Birchall Tr.) at 57:1-25, 58:1-8. | |
| | Issue 1 | <u>Fact 28</u>.  Fidelity did not impose specific restrictions on its donations to OpenAI.  All of Fidelity's contributions to OpenAI were designated as to be used for OpenAI's "general support."<br><br>Ex. 11; Ex. 40; Ex. 35 (Birchall Tr.) at 55:19-56:1, 57:1-25, 58:1-8. | |
| | Issue 1 | <u>Fact 29</u>.  For the years 2016 through 2020, OpenAI's IRS Form 990s state that all of OpenAI's net assets were "unrestricted" and "without donor restrictions."<br><br>Ex. 41 at 11 (2016: "unrestricted");<br>Ex. 42 at 11 (2017: "unrestricted");<br>Ex. 43 at 11 (2018: "unrestricted");<br>Ex. 44 at 11 (2019: "without donor restrictions");<br>Ex. 45 at 11 (2020: "without donor restrictions"). | |
| | Issue 1 | <u>Fact 30</u>.  For the years 2016 through 2020, OpenAI's audited financial statements state that all of OpenAI's net assets were "without donor restrictions."<br><br>Ex. 46 at 4; Ex. 47 at 4; Ex. 48 at 5; Ex. 49 at 6; Ex. 50 at 6. | |
| | Issue 1 | <u>Fact 31</u>.  OpenAI's Form 990s are publicly available, and were available to Musk and his representatives, including before they were filed.<br><br>Ex. 41 at 6; Ex. 42 at 6; Ex. 43 at 6; *see also* Ex. 35 (Birchall Tr.) at 72:13-15 (Birchall had access to OpenAI's Form 990s). | |
| | Issue 1 | <u>Fact 32</u>.  Musk never objected to OpenAI's classification of its assets as "unrestricted" and "without donor restrictions" on its Form 990s. | |

7

| | | |
|---|---|---|
| Issue 1 | Fact 33.  Musk does not recall ever having discussed with anyone, including at OpenAI, "the possibility of retaining the right to reclaim [his] donations"; "a right to direct that [his] donations be transferred to another party"; or "the possibility" of them "one day reverting to [him]."<br><br>Ex. 12 (Musk Tr.) at 42:21-43:16; Dkt. 73 at 3, 18 (disclaiming any "reversionary interest"). | |
| Issue 1 | Fact 34.  Musk's only direct donations to OpenAI are comprised of four vehicles with a total fair market value of $262,400.<br><br>Ex. 4. | |
| Issue 1 | Fact 35.  Musk donated those four vehicles to OpenAI to be given to four specific employees as bonuses.<br><br>Ex. 51; *see also* Ex. 35 (Birchall Tr.) at 51:5-53:7. | |
| Issue 1 | Fact 36.  The vehicles were given as bonuses to the four specific employees Musk identified.<br><br>Ex. 52. | |
| Issue 1 | Fact 37.  Musk is not the Attorney General of California. | |
| Issue 1 | Fact 38.  Musk has not been granted relator status by the Attorney General of California.<br><br>Dkt. 157. | |
| Issues 1 & 2 (Cal. Bus. & Prof. Code § 17510.8 does not apply) | Fact 39.  Musk was a member of OpenAI from its founding through his departure from the board on February 21, 2018.<br><br>Dkt. 170 (SAC) ¶ 229;<br>Ex. 53 at 26-27 (admitting that Musk was a "member of OpenAI, Inc. from the time of its founding until [his] resignation from the Board on February 21, 2018");<br>Ex. 54 (Musk confirming his resignation from OpenAI's board effective February 21, 2018). | |
| Issues 1 & 2 | Fact 40.  OpenAI did not solicit donations from Musk or the Musk Foundation after Musk's departure from the board on February 21, 2018. | |
| Issues 3 (Musk's fraud claim fails because there is no justifiable reliance), 6 (Musk's fraud and constructive fraud claims are time-barred), & 7 (Musk's unjust | Fact 41.  On February 25, 2016, Musk pledged to donate $20 million per year to OpenAI through $5 million quarterly donations, for a total of $60 million over three years. | |

| | | |
|---|---|---|
| 1 | enrichment claim is time-barred) | Ex. 55 at 3; Ex. 12 (Musk Tr.) at 287:15-22. |
| 2 | Issues 3, 6, & 7 | <u>Fact 42</u>.  Musk's final claimed $5 million quarterly donation was made in May 2017. |
| 3 | | |
| | | Ex. 4; *see also* Ex. 78. |
| 4 | Issues 3, 6, & 7 | <u>Fact 43</u>.  After May 2017, the remainder of Musk's claimed cash contributions were monthly donations for payment of rent and building expenses for OpenAI and Neuralink. |
| 5 | | |
| 6 | | |
| 7 | | Ex. 4; Ex. 12 (Musk Tr.) at 94:5-19; Ex. 35 (Birchall Tr.) at 66:24-68:1; Ex. 56 at 3. |
| 8 | Issue 3 | <u>Fact 44</u>.  Musk testified that at the time Altman and Brockman expressed enthusiasm "about the non-profit structure" and with "keeping [OpenAI] non-profit," in September 2017, Musk believed they "were being deceptive." |
| 9 | | |
| 10 | | |
| 11 | | Ex. 12 (Musk Tr.) at 84:14-85:1, 84:8-13 ("what they were saying was not honest" and "they just intended to create a for-profit entity to enrich themselves"), 87:15-20 ("no longer trusted them"), 91:17-92:7 ("had already concluded [he] couldn't trust [Altman]"). |
| 12 | | |
| 13 | | |
| 14 | Issue 3 | <u>Fact 45</u>.  In August 2017, Musk directed his team to stop the $5 million quarterly donations. |
| 15 | | |
| | | Ex. 71; Ex. 78; Ex. 12 (Musk Tr.) at 288:3-10. |
| 16 | Issue 3 | <u>Fact 46</u>.  Musk testified that, by September 2017, he did not "want to be associated with" Altman and Greg Brockman, was "done with" them, and "declined to provide significant further funding." |
| 17 | | |
| 18 | | |
| 19 | | Ex. 12 (Musk Tr.) at 90:17-91:16, 94:5-95:7; *see also id.* 287:20-288:10; 289:20-291:6 (testifying that he "supend[ed] [his quarterly] contributions" when he "lost confidence that they were going to be a nonprofit, open source"). |
| 20 | | |
| 21 | | |
| 22 | Issue 4 (Musk's quasi-contract theory of unjust enrichment fails) | <u>Fact 47</u>.  Musk testified that he contributed to OpenAI "to create a nonprofit open-source organization" and there were "[n]o" other terms of the deal. |
| 23 | | |
| 24 | | |
| | | Ex. 12 (Musk Tr.) at 52:11-54:23. |
| 25 | Issue 5 (Musk's fraud claim fails for lack of actionable misrepresentation) | <u>Fact 48</u>.  In October 2017, Musk conveyed to Sutskever and Brockman requirements for resuming quarterly donations to OpenAI, Inc. that included assigning Musk more "board seats on the nonprofit OpenAI [board]." |
| 26 | | |
| 27 | | |
| 28 | | Ex. 12 (Musk Tr.) at 93:7-16; Ex. 79. |

| | | |
|---|---|---|
| Issue 5 | Fact 49.  Brockman and Sutskever never acceded to the requirements for resuming quarterly donations that Musk conveyed.<br><br>Ex. 12 (Musk Tr.) at 94:2-4. | |
| Issues 6 & 7 | Fact 50.  This action was filed in August 2024.<br><br>Dkt. 1. | |
| Issue 6 | Fact 51.  Musk testified that he "started to suspect that [he] was being swindled" by Altman and Brockman in 2017.<br><br>Ex. 12 (Musk Tr.) at 76:20:77:5; *see also id.* at 83:10-85:1 (as of September 20, 2017, Musk "felt that [he] was being deceived by Sam and Greg" and his "conclusion was that [he] was being swindled"), 87:15-88:5 (as of September 2017, Musk's "suspicions were sufficient to – that [he] no longer trusted" Altman and Brockman). | |
| Issue 6 | Fact 52.  In 2017, Musk participated in discussions regarding the possibility that OpenAI would create a for-profit entity.<br><br>Ex. 12 (Musk Tr.) at 78:18-80:8; Ex. 51; Ex. 58; Ex. 76; Ex. 77. | |
| Issue 6 | Fact 53.  Musk proposed that OpenAI "attach to Tesla."<br><br>Ex. 59 at 1-2; Ex. 12 (Musk Tr.) at 107:16-24. | |
| Issue 6 | Fact 54.  Musk was aware that OpenAI was contemplating forming a for-profit subsidiary no later than April 2018.<br><br>Ex. 60 (Apr. 2018); Ex. 61 (Aug. 2018); Ex. 62 (Sept. 2018); Ex. 63 (Nov. 2018). | |
| Issue 6 | Fact 55.  Musk received a term sheet for a proposed investment in the for-profit subsidiary, OpenAI L.P. ("LP"), which specified, among other things, that: (i) LP would "initially be capitalized by a contribution of assets from [OpenAI]"; and (ii) LP might "seek[] to commercialize technology in a way that will generate significant revenue … ."<br><br>Ex. 61 at 2, 4. | |
| Issue 6 | Fact 56.  Musk was offered, and declined, equity in LP.<br><br>Ex. 64 at 4; Ex. 65. | |
| Issue 6 | Fact 57.  Musk was provided a draft press release in March 2019 regarding LP.<br><br>Ex. 66. | |
| Issue 6 | Fact 58.  In March 2019, Altman sought to | |

10

| | | | |
|---|---|---|---|
| | | schedule a call with Musk to discuss "the new openai structure," and that call was scheduled for March 11, 2019.<br><br>Ex. 67. | |
| | Issue 6 | <u>Fact 59</u>.  Musk raised no contemporaneous objection to the formation of LP.<br><br>Ex. 63; Ex. 65 (Musk "decided to be supportive in spirit of OpenAI but not participate in the new instrument"); Ex. 68 (Musk to Altman: "Please be explicit that I have no financial interest in the for-profit arm of OpenAI"). | |
| | Issue 6 | <u>Fact 60</u>.  In July 2019, Microsoft made a $1 billion investment in LP, which OpenAI publicly announced.<br><br>Ex. 69. | |
| | Issue 7 | <u>Fact 61</u>.  None of Musk's alleged contributions to OpenAI were made after September 14, 2020.<br><br>Ex. 4; Ex. 57; *see also* Ex. 13 at 17-19. | |
| | Issue 7 | <u>Fact 62</u>.  Musk testified that he did not recall providing "significant further funding" or any "support of any kind to OpenAI other than providing the rent" after 2017.<br><br>Ex. 12 (Musk Tr.) at 94:5-11, 95:2-5. | |

1    I attest that the evidence cited herein fairly and accurately supports the facts as asserted.

2

3    Date:  October 17, 2025

4                                                        /s/ William Savitt

5                                                        JORDAN ETH (CA SBN 121617)
                                                         JEth@mofo.com
6                                                        WILLIAM FRENTZEN (CA SBN 343918)
                                                         WFrentzen@mofo.com
7                                                        DAVID J. WIENER (CA SBN 291659)
                                                         DWiener@mofo.com
8                                                        MORRISON & FOERSTER LLP
                                                         425 Market Street
9                                                        San Francisco, CA 94105
                                                         Telephone:    (415) 268-7000
10                                                       Facsimile:    (415) 268-7522

11                                                       WILLIAM SAVITT (admitted *pro hac vice*)
                                                         WDSavitt@wlrk.com
12                                                       BRADLEY R. WILSON (admitted *pro hac
                                                         vice*)
13                                                       BRWilson@wlrk.com
                                                         SARAH K. EDDY (admitted *pro hac vice*)
14                                                       SKEddy@wlrk.com
                                                         STEVEN WINTER (admitted *pro hac vice*)
15                                                       SWinter@wlrk.com
                                                         NATHANIEL CULLERTON (admitted *pro
16                                                       hac vice*)
                                                         NDCullerton@wlrk.com
17                                                       WACHTELL, LIPTON, ROSEN & KATZ
                                                         51 West 52nd Street
18                                                       New York, NY 10019
                                                         Telephone:    (212) 403-1000
19                                                       Facsimile:    (212) 403-2000

20                                                       *Attorneys for OpenAI Defendants*

21

22

23

24

25

26

27

28