# EXHIBIT 13
## Not Under Seal

Marc Toberoff (S.B. #188547)
*mtoberoff@toberoffandassociates.com*
Jaymie Parkkinen (S.B. #318394)
*jparkkinen@toberoffandassociates.com*
TOBEROFF & ASSOCIATES, P.C.
23823 Malibu Road, Suite 50-363
Malibu, CA 90265
Telephone: (310) 246-3333
Facsimile: (310) 246-3101

Steven F. Molo (admitted *pro hac vice*)
*smolo@mololamken.com*
Robert K. Kry (admitted *pro hac vice*)
*rkry@mololamken.com*
Jennifer M. Schubert (admitted *pro hac vice*)
*jschubert@mololamken.com*
MOLO LAMKEN LLP
430 Park Avenue
New York, NY 10022
Telephone: (212) 607-8160
Facsimile: (212) 607-8161

*Attorneys for Plaintiffs Elon Musk*
*and X.AI Corp.*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ELON MUSK, et al., <br><br> Plaintiffs, <br><br> v. <br><br> SAMUEL ALTMAN, et al., <br><br> Defendants. | Case No. 4:24-cv-04722-YGR <br><br> Assigned to Hon. Yvonne Gonzalez Rogers <br><br> **PLAINTIFF MUSK'S SUPPLEMENTAL RESPONSES AND OBJECTIONS TO OPENAI DEFENDANTS' SECOND SET OF INTERROGATORIES** |

<u>Propounding Parties</u>:          OpenAI Defendants

<u>Responding Party</u>:          Plaintiff Elon Musk

<u>Set No.</u>:          Two

   Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Plaintiff Elon Musk ("Plaintiff") hereby submits these supplemental responses and objections ("Responses") to OpenAI Defendants' Second Set of Interrogatories ("Interrogatories"), as follows:

<u>**PRELIMINARY STATEMENT**</u>

   These Responses are made solely for purposes of this action and are subject to all objections as to competence, relevance, materiality, privilege, and admissibility, and any and all objections and grounds that would require exclusion of any statement made herein if such statement were made by a witness present and testifying in court, all of which objections and grounds are reserved and may be interposed at the time of trial. These Responses shall not be used in connection with any other proceeding.

   No incidental or implied admissions are intended by these Responses. The fact that Plaintiff responds or objects to any of the Interrogatories should not be construed as an admission that Plaintiff accepts or admits the existence of any facts assumed by such Interrogatory, or that such Response constitutes admissible evidence as to any such assumed facts. The fact that Plaintiff responds to part or all of any of the Interrogatories is not intended to be and shall not be construed as a waiver of any part of any objection to any Interrogatory.

   Plaintiff is still in the process of investigating the facts of this case and searching for responsive information and Documents. Nor has Plaintiff completed discovery or concluded preparation for summary judgment or trial. As a result, Plaintiff's Responses herein are preliminary and based on information and Documents that are presently available and specifically known to Plaintiff after having made a diligent search and reasonable and good faith inquiry, and are made without prejudice to Plaintiff's right to: (1) amend, alter, supplement, clarify or otherwise modify these Responses as this matter proceeds; (2) make use of, or introduce at any hearing or trial, any Documents, information, facts, evidence, and legal theories which are subsequently discovered or which are now known but whose relevance, significance, or applicability has not yet been

2

ascertained; and (3) offer expert witness opinions on any relevant matter, which opinions may be at variance with these Responses or the information and Documents referenced in response to the OpenAI Defendants' Interrogatories.

Furthermore, Plaintiff's Responses are made without in any way intending to waive, but on the contrary, intending to preserve:

1.      The right to raise—as part of any subsequent proceeding in, or the trial of, this or any other action—all questions of authenticity, foundation, relevancy, materiality, privilege, and admissibility as evidence for any purpose of any information or Documents produced or identified in support of any of the Responses to any portion of the OpenAI Defendants' Interrogatories;

2.      The right to object on any ground—as part of any subsequent proceeding in, or the trial of, this or any other action—to the use of any information or Documents produced or identified in support of any of the Responses to any portion of the OpenAI Defendants' Interrogatories;

3.      The right to object to introduction into evidence of any of these Responses; and

4.      The right to object on any ground at any time to other discovery involving the subject thereof.

## **GENERAL OBJECTIONS**

Plaintiff objects to each particular Interrogatory on the following grounds, which are hereby incorporated within each Response set forth below:

1.      Plaintiff objects to each and every Interrogatory, definition, and instruction that purports to impose obligations beyond those required or permitted by the Federal Rules of Civil Procedure. Plaintiff interprets each and every Interrogatory, definition, and instruction to be consistent with the Federal Rules of Civil Procedure.

2.      Plaintiff objects to each and every Interrogatory, definition, and instruction to the extent it contains argumentative, inaccurate, incomplete, or misleading descriptions of the facts, persons, relationships, events, and pleadings underlying this action. Any Response to any Interrogatory shall not constitute Plaintiff's agreement with or acquiescence to any such description.

3.      Plaintiff objects to each and every Interrogatory, definition, and instruction to the extent it seeks information that is neither relevant to any claim or defense in this action, nor

1   reasonably calculated to lead to the discovery of admissible evidence. Plaintiff will only disclose

2   information consistent with Plaintiff's Responses below.

3       4.      Plaintiff objects to each and every Interrogatory, definition, and instruction to the

4   extent it is vague, ambiguous, unclear, or fails to identify the requested information with reasonable

5   particularity. To the extent that an Interrogatory requires subjective judgment on the part of Plaintiff

6   as to what information is requested, Plaintiff will disclose responsive, non-privileged information

7   according to Plaintiff's understanding of the Interrogatory.

8       5.      Plaintiff objects to each and every Interrogatory, definition, and instruction to the

9   extent it is overbroad, onerous, and unduly burdensome and, thus, outside the scope of permissible

10  discovery. Plaintiff will only disclose information consistent with Plaintiff's Responses below.

11      6.      Plaintiff objects to each and every Interrogatory to the extent it seeks information

12  that is a matter of public record, already in the possession of the OpenAI Defendants, or otherwise

13  equally available to the public and the OpenAI Defendants. That said, without committing to

14  undertake a search specifically for information in the public record, Plaintiff will not withhold any

15  responsive information that Plaintiff identifies in Plaintiff's files through a reasonably diligent

16  search because it may also be available in the public record, but Plaintiff will not undertake a search

17  of the public record for the OpenAI Defendants.

18      7.      Plaintiff objects to each and every Interrogatory to the extent that it seeks disclosure

19  of information that is unreasonably cumulative or duplicative of other discovery served in this

20  action, or is obtainable from sources that are more convenient, less burdensome, or less expensive.

21      8.      Plaintiff objects to each and every Interrogatory to the extent that it seeks to require

22  Plaintiff to use more than reasonable diligence to locate and identify responsive information.

23  Consistent with Plaintiff's obligations, Plaintiff will conduct a reasonably diligent inquiry for

24  responsive information and Documents.

25      9.      Plaintiff objects to each and every Interrogatory, definition, and instruction to the

26  extent it seeks information that is not within Plaintiff's possession, custody, or control.

27      10.     Plaintiff objects to each and every Interrogatory, definition, and instruction to the

28  extent it seeks information protected by the attorney-client privilege, the attorney work product

4

doctrine, communications made in anticipation of litigation, the common interest or joint defense privileges, including any communications made for the purpose of facilitating the rendition of legal services to parties with common interests, rules and agreements governing privacy or confidentiality, or any other applicable privilege or protection recognized under statute or applicable case law. Inadvertent disclosure by Plaintiff of any information protected by any applicable privilege or protection shall not constitute a waiver, in whole or in part, of the privilege or protection.

11.     Plaintiff objects to each and every Request, definition, and instruction to the extent it calls for a response that would infringe upon the legitimate privacy rights of current or former employees, officers, or directors of Plaintiff, current or former affiliates, related companies, subsidiaries, or other individuals, to the full extent such privacy rights and expectations are protected by constitution, statute, contract, court order, or public policy. Plaintiff reserves the right to exclude information to protect unnecessary disclosure of nonresponsive or irrelevant sensitive, confidential, or proprietary business information.

12.     Plaintiff objects to each and every Interrogatory, definition, and instruction to the extent it seeks Plaintiff's sensitive, confidential, or proprietary business information. Plaintiff objects to the production of any and all information before a protective order and an applicable ESI protocol have been entered in this case. To the extent information is responsive, relevant, and not privileged, Plaintiff will disclose such confidential information pursuant to a protective order, and any subsequent revisions to that protective order upon which the parties may agree.

13.     Plaintiff objects to each and every Interrogatory, definition, and instruction to the extent it seeks information protected by any governmental privilege, including but not limited to the official information privilege and identity of informer privilege, or similar protections under federal and California law, without such objection suggesting or intending to suggest the existence of any such information.

14.     Plaintiff objects to each Interrogatory, definition, and instruction to the extent that it prematurely requests discovery of expert materials and information in advance of their respective deadlines under the Scheduling Order governing this case and/or the Federal Rules of Civil

5

Procedure. Plaintiff will not disclose any expert materials or information before such deadlines.

15.     Plaintiff objects to each and every Interrogatory to the extent it seeks information the disclosure of which would be prohibited by applicable law, rule, regulation, or contractual obligation. In particular, Plaintiff objects to each and every Interrogatory to the extent it seeks information subject to confidentiality obligations or protective orders. Plaintiff cannot, and will not, identify any such information unless and until Plaintiff is relieved of Plaintiff's confidentiality obligations with respect to such information, and nothing contained in any Response to any Interrogatory should be considered an agreement to identify such information.

16.     Nothing contained in any Response herein shall be deemed an admission, concession, or waiver by Plaintiff as to the validity of any claim or defense asserted by the OpenAI Defendants.

17.     All objections as to the relevance, authenticity, or admissibility of these Responses and any information referenced therein are expressly reserved by Plaintiff.

18.     To the extent that Plaintiff responds to any of the Interrogatories, Plaintiff reserves the right to object on any grounds, at any time, to other discovery requests involving or relating to the subject matter of the Interrogatories that Plaintiff has responded to herein.

19.     Plaintiff reserves all objections to the use of these Responses. All such objections may be interposed by Plaintiff at the time of trial or as otherwise required by the rules or order of the Court.

20.     Plaintiff's Responses herein shall not in any way constitute an adoption of the OpenAI Defendants' purported "Definitions" of words or phrases or "Instructions" contained in the Interrogatories. Plaintiff objects to the Definitions, Instructions, and Interrogatories to the extent they: (i) are vague, ambiguous, compound, overbroad, unduly burdensome, and not reasonably tailored to avoid imposing undue burden and expense on Plaintiff; (ii) seek information for an undefined period of time or, if defined, cover and span an unreasonably long or burdensome time period, and therefore are burdensome and oppressive; (iii) are inconsistent with the ordinary and customary meaning of the words or phrases they purport to define; (iv) seek to impose obligations different from, or in excess of, those created by the Federal Rules of Civil Procedure; (v) include

**CONFIDENTIAL**

assertions of purported fact that are inaccurate or disputed by the parties to this action; and/or (vi) incorporate other purported defined terms that suffer from such defects. In responding to the Interrogatories, Plaintiff has, where possible, employed what Plaintiff regards as the reasonable, common-sense interpretation of the Interrogatory in light of the relevant issues in the case.

21.     Plaintiff objects to each Interrogatory to the extent that it assumes the existence, relevance, materiality, truth, admissibility, or authenticity of any particular information, or assumes the validity of any claim or defense. In responding to these Interrogatories, Plaintiff does not make any admissions or waive any rights or objections, all of which are expressly preserved.

22.     Plaintiff objects to each Interrogatory to the extent that it requires Plaintiff to draw a legal conclusion.

23.     Plaintiff reserves the right to revise, amend, or supplement Plaintiff's Responses and/or production, and to use in discovery and at trial any information that is omitted as a result of mistake, inadvertence, or oversight. Plaintiff notes that discovery is ongoing and that Plaintiff's Responses are thus based on the information that is presently available and specifically known to Plaintiff.

24.     Plaintiff objects to the definition of "Elon Musk Revocable Trust" as overbroad, unduly burdensome, and vague, as the definition includes "any of its predecessors, successors, and affiliates." Plaintiff interprets "Elon Musk Revocable Trust" to mean the Elon Musk Revocable Trust itself.

25.     Plaintiff objects to the definition of "Musk Foundation" as overbroad, unduly burdensome, and vague, as the definition includes "any of its predecessors, successors, or related or affiliated entities predecessors, successors, parents, divisions, subsidiaries, or affiliates." Plaintiff interprets "Musk Foundation" to mean the Musk Foundation itself.

26.     Plaintiff objects to the definition of "You" and "Your" as overbroad, unduly burdensome, and vague, as the definition includes "Elon Musk and each and all of (i) his present and former employees, agents, representatives, or advisors; (ii) any entity over which Plaintiff Elon Musk exercised or exercises control; and (iii) any other Persons acting on his or their behalves," and is to be read as including the Elon Musk Revocable Trust and the Musk Foundation. Plaintiff

1    interprets "You" and "Your" to refer to Elon Musk himself.

2        27.    Plaintiff objects to Instruction No. 1 as it seeks information spanning an

3    unreasonably long and burdensome time period and thus seeks irrelevant information outside the

4    scope of permissible discovery. Plaintiff will only disclose information consistent with Plaintiff's

5    Responses below.

6        28.    Plaintiff objects to Instruction No. 5 to the extent it purports to impose obligations

7    beyond those required or permitted by the Federal Rules of Civil Procedure.

8        29.    The fact that Plaintiff may reassert particular objections in responding to individual

9    Interrogatories should not be construed as limiting the generality of the foregoing objections. The

10   General Objections set forth herein are asserted with respect to each and every Interrogatory.

11       30.    Plaintiff further objects that many of the OpenAI Defendants' Interrogatories contain

12   discrete subparts in contravention of Federal Rule of Civil Procedure 33. Plaintiff counts each of

13   these discrete subparts toward the OpenAI Defendants' twenty-five interrogatory limit, and has

14   identified at least twenty-four discrete interrogatories propounded by the OpenAI Defendants in

15   their First Set of Interrogatories to Plaintiff.

16                      **SPECIFIC OBJECTIONS AND RESPONSES**

17   **INTERROGATORY NO. 15.**

18       Describe in detail the terms of the Purported Implied Contract, including by Identifying the

19   date(s) on which You, on the one hand, and Altman and OpenAI, Inc., on the other hand, reached

20   agreement on the material terms of the Purported Implied Contract, all of the consideration that You

21   contend You provided pursuant to the Purported Implied Contract, and the date(s) on which You

22   provided each component of such consideration.

23   **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 15.**

24       Plaintiff incorporates the Preliminary Statement and General Objections above as if fully set

25   forth herein. Plaintiff objects on the grounds that this Request is compound, overbroad, and unduly

26   burdensome given that "You" is defined as Plaintiff Elon Musk and thousands of his "present and

27   former employees, agents, representatives, or advisors . . . and any other Persons acting on his or

28   their behalves," and purports to include the Elon Musk Revocable Trust and the Musk Foundation.

1   Plaintiff objects to this Interrogatory as unduly burdensome, harassing, and duplicative of

2   Interrogatory Nos. 2 and 3. Further responding, Plaintiff objects to this Interrogatory because this

3   information is already in the OpenAI Defendants' possession and is thus obtainable from a source

4   other than Plaintiff that is more convenient and less burdensome. *See* Fed. R. Civ. P. 26(b)(2)(C)(i).

5   Plaintiff further objects to the production of any and all information before an applicable ESI

6   protocol has been entered in this case.

7         Subject to and without waiving any of the foregoing General and specific objections,

8   Plaintiff responds as follows based on Plaintiff's present knowledge, information, and belief and

9   without limitation:

10  • OpenAI, Inc. "shall be a [section 501(c)(3)] nonprofit" (dated on or about December 8,

11    2015);

12  • OpenAI, Inc. "is a nonprofit " (dated on or about August 28, 2017);

13  • All of OpenAI, Inc.'s AI/AGI "technology would be owned by the foundation" (dated on or

14    about June 24, 2015);

15  • OpenAI, Inc.'s technology would be used "for the good of the world" (dated on or about

16    June 24, 2015);

17  • OpenAI, Inc.'s technology would be used in the way "most likely to benefit humanity as a

18    whole" (dated on or about December 8, 2015),

19  • OpenAI, Inc.'s technology would not be used "for the private gain of any person" (dated on

20    or about December 8, 2015);

21  • No "property," "net income," or "assets" of OpenAI, Inc. would "ever inure to the benefit of

22    any director, officer or member thereof or to the benefit of any private person" (dated on or

23    about December 8, 2015);

24  • OpenAI, Inc. would operate "unconstrained by a need to generate financial return" (dated on

25    or about August 28, 2017);

26  • The goal of OpenAI, Inc. is to "ensure that AI's benefits are as widely and evenly

27    distributed as possible" (dated on or about August 28, 2017);

28  • OpenAI, Inc. would avoid "undu[e] concentrat[ions] [of] power" of its technology (dated on

1   or about April 2, 2018);

2   • OpenAI "will seek to open source technology for the public benefit" (dated on or about

3   December 8, 2015);

4   • OpenAI, Inc. would "openly share its plans and capabilities along the way" (dated on or

5   about December 8, 2015), except where its technology can be "dangerous" (dated on or

6   about March 21, 2016), causing genuine "safety and security concerns" (dated on or about

7   April 2, 2018);

8   • "[S]afety should be a first-class requirement" of OpenAI, Inc.'s research and development

9   of AI (dated on or about June 24, 2015);

10   • OpenAI, Inc.'s "researchers would have significant financial upside but it would be

11   uncorrelated to what they build, which should eliminate some of the conflict (we'll pay them

12   a competitive salary and give them [Y Combinator] equity for the upside)" (dated on or

13   about June 24, 2015);

14   • OpenAI, Inc. would "always assiduously act to minimize conflicts of interest among our

15   employees and stakeholders that could compromise" the non-profit's mission (dated on or

16   about April 2, 2018);

17   • OpenAI, Inc. would "continue with [] as a nonprofit" (dated on or about September 21,

18   2017);

19   • Any for-profit entity used to support OpenAI, Inc., if subsequently agreed to by the parties

20   (which agreement never materialized), would have a "fixed maximum return" structure

21   (dated on or about April 23, 2018), and be organized "in a way all investors are clear that

22   they should never expect a profit" (dated on or about March 6, 2019).

23   Samuel Altman and OpenAI, Inc. made these promises in exchange for Plaintiff's financial

24   contributions, *see* Exhibit 1 hereto, provision of office facilities, coverage of operational expenses,

25   as well as his personal investment of time, expertise, guidance, and use of his reputation and

26   professional network to recruit persons with the specialized knowledge essential for OpenAI, Inc.'s

27   operations. Plaintiff expressly reserves the right to supplement or amend this Response.

28

10

**INTERROGATORY NO. 16.**

Identify and Describe in detail any documents, communications, relationships, circumstances, and/or conduct that resulted in the formation of the Purported Implied Contract.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 16.**

Plaintiff incorporates the Preliminary Statement and General Objections above as if fully set forth herein. Plaintiff refers the OpenAI Defendants to the Second Amended Complaint in this action, Dkt. 170 ("SAC") which describes in detail the documents, communications, relationships, circumstances, and conduct that resulted in the formation of the parties' contract. Plaintiff objects to this Interrogatory as unduly burdensome, harassing, and duplicative of Interrogatory Nos. 1, 3, and 15. Plaintiff objects to this Interrogatory on the grounds that it contains multiple discrete subparts, which Plaintiff counts toward the OpenAI Defendants' twenty-five interrogatory limit and further objects on the grounds that this Interrogatory exceeds the OpenAI Defendants' twenty-five interrogatory limit. *See* Fed. R. Civ. P. 33(a)(1). Further responding, Plaintiff objects to this Interrogatory because this information is already in the OpenAI Defendants' possession and is thus obtainable from a source other than Plaintiff that is more convenient and less burdensome. *See* Fed. R. Civ. P. 26(b)(2)(C)(i). Plaintiff further objects to the production of any and all information before an applicable ESI protocol has been entered in this case.

Subject to and without waiving any of the foregoing General and specific objections, Plaintiff responds as follows based on Plaintiff's present knowledge, information, and belief and without limitation:

- OpenAI, Inc. "shall be a [section 501(c)(3)] nonprofit" (dated on or about December 8, 2015);

- OpenAI, Inc. "is a nonprofit " (dated on or about August 28, 2017);

- All of OpenAI, Inc.'s AI/AGI "technology would be owned by the foundation" (dated on or about June 24, 2015);

- OpenAI, Inc.'s technology would be used "for the good of the world" (dated on or about June 24, 2015);

- OpenAI, Inc.'s technology would be used in the way "most likely to benefit humanity as a

whole" (dated on or about December 8, 2015),

- OpenAI, Inc.'s technology would not be used "for the private gain of any person" (dated on or about December 8, 2015);

- No "property," "net income," or "assets" of OpenAI, Inc. would "ever inure to the benefit of any director, officer or member thereof or to the benefit of any private person" (dated on or about December 8, 2015);

- OpenAI, Inc. would operate "unconstrained by a need to generate financial return" (dated on or about August 28, 2017);

- The goal of OpenAI, Inc. is to "ensure that AI's benefits are as widely and evenly distributed as possible" (dated on or about August 28, 2017);

- OpenAI, Inc. would avoid "undu[e] concentrat[ions] [of] power" of its technology (dated on or about April 2, 2018);

- OpenAI "will seek to open source technology for the public benefit" (dated on or about December 8, 2015);

- OpenAI, Inc. would "openly share its plans and capabilities along the way" (dated on or about December 8, 2015), except where its technology can be "dangerous" (dated on or about March 21, 2016), causing genuine "safety and security concerns" (dated on or about April 2, 2018);

- "[S]afety should be a first-class requirement" of OpenAI, Inc.'s research and development of AI (dated on or about June 24, 2015);

- OpenAI, Inc.'s "researchers would have significant financial upside but it would be uncorrelated to what they build, which should eliminate some of the conflict (we'll pay them a competitive salary and give them [Y Combinator] equity for the upside)" (dated on or about June 24, 2015);

- OpenAI, Inc. would "always assiduously act to minimize conflicts of interest among our employees and stakeholders that could compromise" the non-profit's mission (dated on or about April 2, 2018);

- OpenAI, Inc. would "continue with [] as a nonprofit" (dated on or about September 21,

2017);

- Any for-profit entity used to support OpenAI, Inc., if subsequently agreed to by the parties (which agreement never materialized), would have a "fixed maximum return" structure (dated on or about April 23, 2018), and be organized "in a way all investors are clear that they should never expect a profit" (dated on or about March 6, 2019).

Samuel Altman and OpenAI, Inc. made these promises in exchange for Plaintiff's financial contributions, *see* Exhibit 1 hereto, provision of office facilities, coverage of operational expenses, as well as his personal investment of time, expertise, guidance, and use of his reputation and professional network to recruit persons with the specialized knowledge essential for OpenAI, Inc.'s operations, all of which Plaintiff, in fact, made. These acts of performance occurred within the context of numerous and continuing conversations between Plaintiff, on the one hand, and Altman and/or Brockman, individually and/or on behalf of OpenAI, Inc., on the other, from approximately January 2015 through September 2020, confirming OpenAI, Inc.'s charitable mission as well as reaffirming the promises set forth above. Initially, Altman and OpenAI, Inc. performed their obligations by, among other conduct, forming OpenAI, Inc. as a non-profit and publicly disclosing OpenAI, Inc.'s findings and research regarding its preliminary GPT models. Plaintiff expressly reserves the right to supplement or amend this Response.

**INTERROGATORY NO. 17.**

Identify and Describe in detail all damages You allegedly suffered in connection with the Subject Claims.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 17.**

Plaintiff incorporates the Preliminary Statement and General Objections above as if fully set forth herein. Plaintiff objects that this Request is compound, overbroad, and unduly burdensome given that "You" is defined as Plaintiff Elon Musk and thousands of his "present and former employees, agents, representatives, or advisors . . . and any other Persons acting on his or their behalves," and purports to include the Elon Musk Revocable Trust and the Musk Foundation. Plaintiff objects to this Interrogatory on the grounds that it exceeds the OpenAI Defendants' twenty-five interrogatory limit. *See* Fed. R. Civ. P. 33(a)(1). Plaintiff objects to this Interrogatory to the

extent that it requires Plaintiff to draw a legal conclusion. Plaintiff further objects to the production of any and all information before an applicable ESI protocol has been entered in this case.

Subject to and without waiving any of the foregoing General and specific objections, Plaintiff responds as follows based on Plaintiff's present knowledge, information, and belief and without limitation:

a. The full market value of Musk's direct financial contributions to OpenAI, Inc., totaling approximately $38,000,000 as itemized in Exhibit 1 hereto, including incidental, consequential, and/or expectancy or benefit-of-the-bargain damages;

b. The full market value of office space, overhead, and other operational expenses provided by Musk from 2015–2020, including incidental, consequential, and/or expectancy or benefit-of-the-bargain damages;

c. The full market value of Musk's time, recruitment efforts, guidance, connections, and reputational capital used to launch and establish OpenAI, including incidental, consequential, and/or expectancy or benefit-of-the-bargain damages;

d. Lost profits and business opportunities suffered by Musk as a direct result of Defendants' misconduct;

e. Economic injuries to Musk resulting from Defendants' misconduct;

f. The value of all intellectual property developed using Musk's contributions, estimated to exceed $200 billion based on OpenAI's recent $300 billion valuation;

g. All revenues derived from the commercialization of technology that, per the parties' understanding and agreement, should have been open source for the public's benefit, should have never inured to private benefit, and/or should have been developed with safety as a first-class requirement;

h. The value of benefits received by Defendants through self-dealing transactions and conflicts of interest;

i. Any and all ownership interests in any OpenAI entity traceable to Musk's efforts and/or contributions;

j.    All intellectual property developed by OpenAI using Musk's contributions, wherever now

held;

k.    All costs, fees, and expenses associated with this and related actions; and

l.    Plaintiff's damages also include appropriate treble and punitive damages, as provided by

applicable statutes.

Plaintiff expressly reserves the right to supplement or amend this Response.

**INTERROGATORY NO. 18.**

Describe in detail the alleged contributions You referenced in Your Responses and

Objections to Interrogatory Nos. 1 and 2 of the OpenAI Defendants' First Set of Interrogatories that

are not identified in Exhibit 1 of Your Responses, including without limitation Your alleged

provision of office facilities and Your alleged coverage of operational expenses and/or overhead,

and for each alleged contribution, Identify the date of the contribution, the value of the contribution,

the Person who made the contribution, and the Person to which or to whom the contribution was

made (including in each case any intermediaries through which the contribution was allegedly made

or received).

**RESPONSE TO INTERROGATORY NO. 18.**

Plaintiff incorporates the Preliminary Statement and General Objections above as if fully set

forth herein. Plaintiff objects that this Request is compound, overbroad, and unduly burdensome

given that "You" is defined as Plaintiff Elon Musk and thousands of his "present and former

employees, agents, representatives, or advisors . . . and any other Persons acting on his or their

behalves," and purports to include the Elon Musk Revocable Trust and the Musk Foundation.

Plaintiff further objects on the grounds it seeks information that is duplicative of the information

contained in documents already requested in OpenAI Defendants' Requests for Production to

Plaintiff and document subpoenas to third parties, and the burden of deriving or ascertaining the

answer to this Interrogatory is substantially the same for either party. Plaintiff objects to this

Interrogatory as unduly burdensome, harassing, and duplicative of other Interrogatories propounded

by the OpenAI Defendants. Plaintiff objects to this Interrogatory on the grounds that it contains

multiple discrete subparts, which Plaintiff counts toward the OpenAI Defendants' twenty-five

interrogatory limit and further objects that it exceeds the OpenAI Defendants' twenty-five interrogatory limit. *See* Fed. R. Civ. P. 33(a)(1). Plaintiff further objects to the production of any and all information before an applicable ESI protocol has been entered in this case.

Subject to and without waiving any of the foregoing General and specific objections, Plaintiff responds as follows based on Plaintiff's present knowledge, information, and belief and without limitation: Plaintiff reminds the OpenAI Defendants that he and certain third parties have already agreed to produce documents concerning such contributions. *See* Fed. R. Civ. P. 33(d). Plaintiff expressly reserves the right to supplement or amend this Response.

DATED: September 25, 2025                    TOBEROFF & ASSOCIATES, P.C.

*/s/ Marc Toberoff*
Marc Toberoff

*Attorneys for Plaintiffs Elon Musk
and X.AI Corp.*

**EXHIBIT 1**

| Immediate Sender | Immediate Recipient | Amount | Date |
|---|---|---|---|
| Elon Musk | YC Org | $500,000.00 | 5/27/2016 |
| Elon Musk | OpenAI, Inc. | $248,295.00 | 10/2/2017 |
| Elon Musk | OpenAI, Inc. | $14,104.50 | 1/24/2018 |
| Elon Musk - Vanguard DAF | YC Org | $5,000,000.00 | 6/2/2016 |
| Musk Industries | Bridgeton Pioneer | $141,666.67 | 6/15/2016 |
| Musk Foundation | YC Org | $5,000,000.00 | 2/27/2017 |
| Musk Foundation | YC Org | $5,000,000.00 | 5/26/2017 |
| Musk Foundation - Vanguard DAF | YC Org | $4,500,000.00 | 08/19/2016 |
| Musk Foundation - Vanguard DAF | YC Org | $142,000.00 | 09/22/2016 |
| Musk Foundation - Vanguard DAF | YC Org | $142,000.00 | 10/17/2016 |
| Musk Foundation - Vanguard DAF | YC Org | $750,000.00 | 11/11/2016 |
| Musk Foundation - Vanguard DAF | YC Org | $142,000.00 | 11/15/2016 |
| Musk Foundation - Vanguard DAF | YC Org | $4,250,000.00 | 11/30/2016 |
| Musk Foundation - Vanguard DAF | YC Org | $142,000.00 | 12/15/2016 |
| Musk Foundation - Vanguard DAF | YC Org | $142,000.00 | 01/17/2017 |
| Musk Foundation - Vanguard DAF | YC Org | $142,000.00 | 02/15/2017 |
| Musk Foundation - Vanguard DAF | YC Org | $175,000.00 | 03/16/2017 |
| Musk Foundation - Vanguard DAF | OpenAI, Inc. | $175,000.00 | 04/18/2017 |
| Musk Foundation - Vanguard DAF | OpenAI, Inc. | $175,000.00 | 05/15/2017 |
| Musk Foundation - Vanguard DAF | OpenAI, Inc. | $175,000.00 | 06/15/2017 |
| Musk Foundation - Fidelity DAF | OpenAI, Inc. | $175,000.00 | 7/18/2017 |
| Musk Foundation - Fidelity DAF | YC Org* | $250,000.00 | 7/19/2017 |
| Musk Foundation - Fidelity DAF | OpenAI, Inc. | $175,000.00 | 8/14/2017 |
| Musk Foundation - Fidelity DAF | OpenAI, Inc. | $175,000.00 | 9/15/2017 |
| Musk Foundation - Fidelity DAF | OpenAI, Inc. | $85,000.00 | 9/29/2017 |

| Immediate Sender | Immediate Recipient | Amount | Date |
|---|---|---|---|
| Musk Foundation - Fidelity DAF | OpenAI, Inc. | $235,000.00 | 10/16/2017 |
| Musk Foundation - Fidelity DAF | OpenAI, Inc. | $235,000.00 | 11/14/2017 |
| Musk Foundation - Fidelity DAF | OpenAI, Inc. | $235,000.00 | 12/14/2017 |
| Musk Foundation - Fidelity DAF | OpenAI, Inc. | $290,000.00 | 1/18/2018 |
| Musk Foundation - Fidelity DAF | OpenAI, Inc. | $390,000.00 | 2/20/2018 |
| Musk Foundation - Fidelity DAF | OpenAI, Inc. | $290,000.00 | 3/14/2018 |
| Musk Foundation - Fidelity DAF | OpenAI, Inc. | $290,000.00 | 4/16/2018 |
| Musk Foundation - Fidelity DAF | OpenAI, Inc. | $290,000.00 | 5/15/2018 |
| Musk Foundation - Fidelity DAF | OpenAI, Inc. | $290,000.00 | 6/14/2018 |
| Musk Foundation - Fidelity DAF | OpenAI, Inc. | $290,000.00 | 7/16/2018 |
| Musk Foundation - Fidelity DAF | OpenAI, Inc. | $290,000.00 | 8/14/2018 |
| Musk Foundation - Fidelity DAF | OpenAI, Inc. | $290,000.00 | 9/18/2018 |
| Musk Foundation - Fidelity DAF | OpenAI, Inc. | $290,000.00 | 10/17/2018 |
| Musk Foundation - Fidelity DAF | OpenAI, Inc. | $290,000.00 | 11/14/2018 |
| Musk Foundation - Fidelity DAF | OpenAI, Inc. | $290,000.00 | 12/17/2018 |
| Musk Foundation - Fidelity DAF | OpenAI, Inc. | $290,000.00 | 1/16/2019 |
| Musk Foundation - Fidelity DAF | OpenAI, Inc. | $290,000.00 | 2/14/2019 |
| Musk Foundation - Fidelity DAF | OpenAI, Inc. | $290,000.00 | 3/22/2019 |
| Musk Foundation - Fidelity DAF | OpenAI, Inc. | $290,000.00 | 4/16/2019 |
| Musk Foundation - Fidelity DAF | OpenAI, Inc. | $290,000.00 | 5/14/2019 |
| Musk Foundation - Fidelity DAF | OpenAI, Inc. | $290,000.00 | 6/14/2019 |
| Musk Foundation - Fidelity DAF | OpenAI, Inc. | $290,000.00 | 7/17/2019 |
| Musk Foundation - Fidelity DAF | OpenAI, Inc. | $290,000.00 | 8/14/2019 |
| Musk Foundation - Fidelity DAF | OpenAI, Inc. | $290,000.00 | 9/16/2019 |
| Musk Foundation - Fidelity DAF | OpenAI, Inc. | $290,000.00 | 10/17/2019 |
| Musk Foundation - Fidelity DAF | OpenAI, Inc. | $290,000.00 | 11/15/2019 |
| Musk Foundation - Fidelity DAF | OpenAI, Inc. | $290,000.00 | 12/17/2019 |

CASE NO. 24-CV-04722-YGR
MUSK'S SUPP. R&OS TO OPENAI ROG2

| Immediate Sender | Immediate Recipient | Amount | Date |
|---|---|---|---|
| Musk Foundation - Fidelity DAF | OpenAI, Inc. | $290,000.00 | 1/14/2020 |
| Musk Foundation - Fidelity DAF | OpenAI, Inc. | $290,000.00 | 2/14/2020 |
| Musk Foundation - Fidelity DAF | OpenAI, Inc. | $290,000.00 | 3/16/2020 |
| Musk Foundation - Fidelity DAF | OpenAI, Inc. | $290,000.00 | 4/13/2020 |
| Musk Foundation - Fidelity DAF | OpenAI, Inc. | $290,000.00 | 5/13/2020 |
| Musk Foundation - Fidelity DAF | OpenAI, Inc. | $290,000.00 | 6/15/2020 |
| Musk Foundation - Fidelity DAF | OpenAI, Inc. | $290,000.00 | 7/14/2020 |
| Musk Foundation - Fidelity DAF | OpenAI, Inc. | $290,000.00 | 8/17/2020 |
| Musk Foundation - Fidelity DAF | OpenAI, Inc. | $290,000.00 | 9/14/2020 |

* For YC Org UBI Project.

19

1

## <u>VERIFICATION</u>

2     I, Elon Musk, hereby verify that the facts set forth in the answers to the Interrogatories are

3     true to the best of my present knowledge, information, and belief.

4

5     I declare under penalty of perjury under the laws of the United States that the foregoing is

6     true and correct.

7

8     Executed on ___9/25/25___.

9     _____

10                Elon Musk

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## PROOF OF SERVICE

2    I, Jaymie Parkkinen, declare:

3        I am over the age of eighteen years and not a party to the within action. I am a resident of or

4    employed in the county where the service described below occurred. My business address is 23823

5    Malibu Road, Suite 50-363, Malibu, CA 90265. On the date indicated below, I caused the following:

6
7    **PLAINTIFF MUSK'S SUPPLEMENTAL RESPONSES AND OBJECTIONS TO OPENAI DEFENDANTS' SECOND SET OF INTERROGATORIES**

8    to be served as follows:

9        [X]    **BY ELECTRONIC MAIL** -  I caused the above-described document to be served by

10    electronic mail transmission on the interested parties noted below, where an electronic mail address

11    is indicated.

12    William Savitt                           Russell Cohen
      *wdsavitt@wlrk.com*                      *russ.cohen@dechert.com*
13    Bradley R Wilson                         Nisha Patel Gupta
      *brwilson@wlrk.com*                      *nisha.patelgupta@dechert.com*
14    Sarah Eddy                               Howard Ullman
      *skeddy@wlrk.com*                        *howard.ullman@dechert.com*
15    Nathaniel Cullerton                      Jay Jurata
16    *ndcullerton@wlrk.com*                   *jay.jurata@dechert.com*
      Ioannis Drivas                           Andrew Levander
17    *iddrivas@wlrk.com*                      *andrew.levander@dechert.com*
      Kelsey Borenzweig                        DECHERT LLP
18    *kaborenzweig@wlrk.com*
19    WACHTELL, LIPTON, ROSEN & KATZ

20    Jordan Eth
      *jeth@mofo.com*
21    William Frentzen
      *wfrentzen@mofo.com*
22    David Wiener
      *dwiener@mofo.com*
23    MORRISON & FOERSTER LLP

24

25        I declare under penalty of perjury that the foregoing is true and correct. Executed on

26    September 25, 2025, at San Francisco, California.

27                                        */s/ Jaymie Parkkinen*
                                          Jaymie Parkkinen

28