# EXHIBIT 34
## Not Under Seal

# FISCAL SPONSORSHIP GRANT AGREEMENT

On May 20, 2016, YC.org, a California nonprofit public benefit corporation, ("Grantor") decided that financial support for the OpenAI Gym and other OpenAI research initiatives (the "Projects"), more particularly described in a proposal dated May 15, 2016, (the "Proposal"), from OpenAI, Inc., a Delaware nonprofit nonstock corporation, ("Grantee") will further Grantor's tax-exempt purposes under Section 501(c)(3) of the Internal Revenue Code ("IRC"). With regard to the selection of Grantee or any other beneficiary to conduct the Projects, Grantor has exercised and shall retain full discretion and control over the selection process, acting completely independently of Grantee or any funding source. Grantor has created a restricted fund designated for the purposes of the Projects and has decided to grant all amounts that it may receive and deposit to that fund (less any administrative charge set forth below), to Grantee, subject to the following terms and conditions:

1. Grantee is a Delaware nonprofit nonstock corporation which is, and shall be throughout the duration of this Agreement, organized and operated for tax-exempt purposes described in IRC Section 501(c)(3). Grantee will apply to the Internal Revenue Service for recognition of its Section 501(c)(3) tax-exempt status and shall keep Grantor informed of the progress of its application.

2. Grantee shall use the grant solely for the purposes of the Projects described in the Proposal, and Grantee shall repay to Grantor any portion of the amount granted which is not spent or committed for Project purposes. Any significant changes in the purposes for which grant funds are spent must be approved in writing by Grantor before implementation. Because the restricted fund is held under the charitable trust doctrine for the purposes of the Projects as understood by and with funding sources, the parties intend that assets in the restricted fund are not subject to the claims of any creditor or to legal process resulting from activities of Grantor unrelated to the Projects.

a. Neither party shall spend or otherwise obligate Grantor to pay for an amount or amounts exceeding the balance in the restricted fund, nor shall either party authorize or permit anyone to do so. Grantor retains the unilateral right, if Grantee materially breaches this Agreement, or if Grantee's conduct of the Projects jeopardizes Grantor's legal or tax status, to withhold, withdraw, or demand immediate return of grant funds, and to spend such funds so as to accomplish the purposes of the Projects as nearly as possible within Grantor's sole judgment, subject to any donor-imposed restrictions on the charitable use of such assets.

{00781368.DOCX; 1} {00781368.DOCX; 1}

CONFIDENTIAL

OPENAI_MUSK00018902

      b.    Consistent with Accounting Standards Codification (ASC) paragraphs ASC 958-605-25-25 and -26, formerly expressed in Statement No. 136 issued by the Financial Accounting Standards Board (FASB), Grantor retains the unilateral power, without approval from any funding source, from Grantee, or from any other interested party, to redirect use of grant funds away from Grantee to another beneficiary capable of fulfilling the purposes of the Projects.

      c.    With regard to the selection of any subgrantees or subcontractors to carry out the purposes of this grant, Grantee retains full discretion and control over the selection process, acting completely independently of Grantor. There is no agreement, written or oral, by which Grantor may cause Grantee to choose any particular subgrantee or subcontractor.

      d.    Any tangible or intangible property, including copyrights, obtained from third parties or created by Grantee as part of these Projects shall remain the property of Grantee.

      e.    Grantor's sponsorship of the Projects is effective as of May 20, 2016, and shall continue in effect unless and until terminated under Paragraph 11 below. The amount and date of each disbursement of grant funds to Grantee shall be within the discretion of Grantor.

3.    Grantee may solicit gifts, contributions, and grants to Grantor, identified as in support of the purposes of the Projects. Grantee's choice of funding sources to be approached, and the text of Grantee's fundraising materials, are subject to Grantor's prior written approval and shall include an express disclosure of Grantor's variance power under Paragraph 2.b. above. All grant agreements, pledges, or other commitments with funding sources to support these Projects shall be executed by Grantor. The cost of any reports or other compliance measures required by such funding sources shall be borne by Grantee. Grantor shall be responsible for the processing, acknowledgment, and deposit in the restricted fund of all monies and any property received for the Projects, which shall be reported as the income of Grantor on Grantor's financial statements and tax returns.

4.    Grantee is solely responsible for all activities supported by the grant funds, the content of any product created with the grant funds, and the manner in which any such product may be disseminated. Nothing in this Agreement shall constitute the naming of Grantee as an agent or legal representative of Grantor for any purpose whatsoever except as specifically and to the extent set forth herein. This Agreement shall not be deemed to create any relationship of agency, partnership, or joint venture between the parties hereto, and Grantee shall make no such representation to anyone.

{00781368.DOCX; 1} {00781368.DOCX; 1}

CONFIDENTIAL

OPENAI_MUSK00018903

5.    Grantee shall submit a written report to Grantor for each of Grantee's annual accounting periods (ending on the last day of the month of December within which grant funds are received, held, or spent.  Reports shall be submitted by Grantee no later than ninety (90) days after the end of such period.  The report shall describe the charitable programs conducted by the Grantee with the aid of grant funds and the expenditures made with grant funds, and shall report on the Grantee's compliance with the terms of this Agreement.

7.    These grant funds shall not be used in any attempt to influence legislation within the meaning of IRC Section 501(c)(3).

8.    Grantee shall not use any portion of the funds granted herein to participate or intervene in any political campaign on behalf of or in opposition to any candidate for public office, to induce or encourage violations of law or public policy, to cause any private inurement or improper private benefit to occur, nor to take any other action inconsistent with IRC Section 501(c)(3).

9.    Neither this Agreement nor any other statement, oral or written, nor the making of any contribution or grant to Grantee, shall be interpreted to create any pledge or any commitment by Grantor or by any related person or entity to make any other grant or contribution to Grantee or any other entity for these or any other projects.  The grant relationship contemplated by this Agreement shall be separate and independent from any other transaction between Grantor and Grantee or any other entity.

10.    Grantee hereby irrevocably and unconditionally agrees, to the fullest extent permitted by law, to defend, indemnify and hold harmless Grantor, its officers, directors, trustees, employees and agents, from and against any and all claims, liabilities, losses and expenses (including reasonable attorneys' fees) directly, indirectly, wholly or partially arising from or in connection with any act or omission of Grantee, its employees or agents, in applying for or accepting the grant, in expending or applying the funds furnished pursuant to the grant or in carrying out the program or project to be funded or financed by the grant, except to the extent that such claims, liabilities, losses or expenses arise from or in connection with any act or omission of Grantor, its officers, directors, trustees, employees or agents.  This paragraph shall survive the termination of this Agreement.

11.    This Agreement shall terminate when Grantor determines that the objectives of the Projects can no longer reasonably be accomplished by Grantee.  If the objectives of the Projects can still be accomplished, either Grantor or Grantee may terminate this Agreement on thirty (30) days' written notice to the other party, so long as another nonprofit corporation, acceptable to both parties, which is tax-exempt under IRC

CONFIDENTIAL    OPENAI_MUSK00018904

Section 501(c)(3), and is not classified as a private foundation under Section 509(a), ("a Successor") is willing and able to sponsor the Projects. The balance of assets in Grantor's restricted fund designated for the Projects shall be transferred to the Successor at the end of the notice period or sooner if all parties so agree, subject to the approval of any third parties that may be required. Grantee shall be eligible to be a Successor itself so long as Grantee has received, no later than the end of the notice period, a determination letter from the Internal Revenue Service indicating that Grantee meets the qualifications for a Successor stated above. If no Successor is found within a reasonable time, Grantor may dispose of the Projects' assets in any manner consistent with applicable tax and charitable trust laws.

12.  In the event of any controversy, claim, or dispute between the parties arising out of or related to this Agreement, or the alleged breach thereof, the prevailing party shall, in addition to any other relief, be entitled to recover its reasonable attorneys' fees and costs of sustaining its position.

13.  The failure of Grantor to exercise any of its rights under this Agreement shall not be deemed to be a waiver of such rights. Each provision of this Agreement shall be separately enforceable, and the invalidity of one provision shall not affect the validity or enforceability of any other provision. This Agreement shall be governed by and construed in accordance with the laws of the State of California applicable to contracts to be performed entirely within such State. Time is of the essence of this Agreement and of each and every provision hereof.

14.  This Agreement shall supersede any prior oral or written understandings or communications between the parties and constitutes the entire agreement of the parties with respect to the subject matter hereof. This Agreement may not be amended or modified, except in a writing signed by both parties hereto.

IN WITNESS WHEREOF, the parties have executed this Fiscal Sponsorship Grant Agreement effective on the 20th day of May, 2016.

GRANTOR:  YC.org,
a California nonprofit public benefit corporation

Dated May 20, 2016

By:_____
Name: _____
Title: _____

{00781368.DOCX; 1} {00781368.DOCX; 1}

-4-

CONFIDENTIAL

OPENAI_MUSK00018905

GRANTEE:   OpenAI, Inc.,
a Delaware nonprofit nonstock
corporation

Dated:  May 20, 2016

By:_____

Name: _____

Title: _____

CONFIDENTIAL