EXHIBIT 29



ROSEMARY E. FEI
ROBERT A. WEXLER
ERIK DRYBURGH
INGRID MITTERMAIER
DAVID A. LEVITT
STEPHANIE L. PETIT
NANCY E. McGLAMERY
ERIC K. GOROVITZ

GREGORY L. COLVIN - SENIOR COUNSEL
———
STEVEN CHIODINI - OF COUNSEL
MATTHEW CLAUSEN - OF COUNSEL

235 MONTGOMERY STREET • RUSS BUILDING, SUITE 1220 • SAN FRANCISCO, CALIFORNIA 94104
TEL: 415.421.7555 • FAX: 415.421.0712 • WWW.ADLERCOLVIN.COM

September 1, 2016

**VIA FEDERAL EXPRESS**

Internal Revenue Service
Attn: Extracting - Stop 312
201 West Rivercenter Boulevard
Covington, Kentucky 41011-1454

> Re:    OpenAI, Inc.
>          Employer Identification Number 81-0861541

Dear Sir/Ms.:

We enclose the tax exemption application of OpenAI, Inc. ("OpenAI") a Delaware nonprofit nonstock corporation, for your review. OpenAI seeks a determination that it is a charitable organization described in Section 501(c)(3) of the Internal Revenue Code, and a publicly supported organization described in Section 509(a)(1) and 170(b)(1)(A)(vi). The application consists of the following documents:

1.    Our check for $850.00;

2.    Form 1023 Checklist;

3.    Form 2848, Power of Attorney;

4.    Form 5768, Election/Revocation of Election by an Eligible Section 501(c)(3) Organization to Make Expenditures to Influence Legislation;

5.    Form 1023, Application for Recognition of Exemption;

6.    Certificate of Incorporation, certified by the Delaware Division of Corporations;

7.    Bylaws;

8.    Proposed Budget;

{00823580.DOCX; 1}

MSFT_MUSK000036519

Internal Revenue Service
Attn: Extracting - Stop 312
September 1, 2016
Page 2



9.      Supplemental Response to From 1023;

10.     Conflict of Interest Policy; and

11.     Line of Credit Agreement.

We look forward to receiving your prompt decision that OpenAI is an organization described in Sections 501(c)(3), 509(a)(1), and 170(b)(1)(A)(vi). If you have any questions, however, please contact this office.

Very truly yours,

Ingrid Mittermaier

IM:JL:lne

Enclosures

cc:     OpenAI, Inc.
        *(via email)*

HIGHLY CONFIDENTIAL                                    MSFT_MUSK000036520

Case 4:24-cv-04722-YGR   Document 270-51   Filed 01/06/26   Page 4 of 54

**ADLER & COLVIN**
235 MONTGOMERY ST. SUITE 1220
SAN FRANCISCO, CA 94104
(415) 421-7555

**CITY NATIONAL BANK**
PRIVATE CLIENT SERVICES  650-812-8300
245 LYTON AVE, STE 100
PALO ALTO, CA 94301
16-1606/1220

1646

8/11/2016

PAY TO THE
ORDER OF   **U.S. Department of the Treasury**                                    $ **$850.00**

**Eight Hundred Fifty and No/100 Dollars**-------------------------------------------------- DOLLARS

U.S. Department of the Treasury
201 Eet Rivercenter Blvd., Attn: Ex
Covington, KY 41011

MEMO   **Client code: OPENAI**                                     AUTHORIZED SIGNATURE

⑈0016460 ⑆122016066⑆ 441⑈038070⑈

---

ADLER & COLVIN

1646

U.S. Department of the Treasury          1646          8/11/2016
Inv.Date       Inv.No.           Invoice Description                              Amount
08-11-2016     QuickCheck        Client code: OPENAI                              850.00

$850.00

HIGHLY CONFIDENTIAL

MSFT_MUSK000036521

OPENAI, INC.
EIN: 81-0861541

# Form 1023 Checklist
## (Revised December 2013)

**Application for Recognition of Exemption under Section 501(c)(3) of the Internal Revenue Code**

**Note.** *Retain a copy of the completed Form 1023 in your permanent records. Refer to the* General Instructions *regarding Public Inspection of approved applications.*

**Check each box to finish your application (Form 1023). Send this completed Checklist with your filled-in application. If you have not answered all the items below, your application may be returned to you as incomplete.**

☒ Assemble the application and materials in this order:
  • Form 1023 Checklist
  • Form 2848, *Power of Attorney and Declaration of Representative* (if filing).
  • Form 8821, *Tax Information Authorization* (if filing)
  • Expedite request (if requesting)
  • Application (Form 1023 and Schedules A through H, as required)
  • Articles of organization
  • Amendments to articles of organization in chronological order
  • Bylaws or other rules of operation and amendments
  • Documentation of nondiscriminatory policy for schools, as required by Schedule B
  • Form 5768, Election/Revocation of Election by an Eligible Section 501(c)(3) Organization To Make Expenditures To Influence Legislation (if filing)
  • All other attachments, including explanations, financial data, and printed materials or publications. Label each page with name and EIN.

☒ User fee payment placed in envelope on top of checklist. DO NOT STAPLE or otherwise attach your check or money order to your application. Instead, just place it in the envelope.

☒ Employer Identification Number (EIN)

☒ Completed Parts I through XI of the application, including any requested information and any required Schedules A through H.
  • You must provide specific details about your past, present, and planned activities.
  • Generalizations or failure to answer questions in the Form 1023 application will prevent us from recognizing you as tax exempt.
  • Describe your purposes and proposed activities in specific easily understood terms.
  • Financial information should correspond with proposed activities.

☒ Schedules. Submit only those schedules that apply to you and check either "Yes" or "No" below.

| | | | | | |
|---|---|---|---|---|---|
| Schedule A | Yes __ | No **X** | Schedule E | Yes __ | No **X** |
| Schedule B | Yes __ | No **X** | Schedule F | Yes __ | No **X** |
| Schedule C | Yes __ | No **X** | Schedule G | Yes __ | No **X** |
| Schedule D | Yes __ | No **X** | Schedule H | Yes __ | No **X** |

OPENAI, INC.
EIN: 81-0861541

☒ An exact copy of your complete articles of organization (creating document). Absence of the proper purpose and dissolution clauses is the number one reason for delays in the issuance of determination letters.

  • Location of Purpose Clause from Part III, line 1 (Page, Article and Paragraph Number) **Page 1, Para. Third**

  • Location of Dissolution Clause from Part III, line 2b or 2c (Page, Article and Paragraph Number) or by operation of state law **Page 1, Para. Fifth**

☒ Signature of an officer, director, trustee, or other official who is authorized to sign the application.
  • Signature at Part XI of Form 1023.

☒ Your name on the application must be the same as your legal name as it appears in your articles of organization.

Send completed Form 1023, user fee payment, and all other required information, to:

Internal Revenue Service
P.O. Box 192
Covington, KY 41012-0192

If you are using express mail or a delivery service, send Form 1023, user fee payment, and attachments to:

Internal Revenue Service
201 West Rivercenter Blvd.
Attn: Extracting Stop 312
Covington, KY 41011

HIGHLY CONFIDENTIAL

| Form **2848** | **Power of Attorney** | OMB No. 1545-0150 |
|---|---|---|

**Form 2848**
(Rev. Dec. 2015)
Department of the Treasury
Internal Revenue Service

**Power of Attorney and Declaration of Representative**

▶ Information about Form 2848 and its instructions is at *www.irs.gov/form2848*.

OMB No. 1545-0150
For IRS Use Only
Received by:
Name _____
Telephone _____
Function _____
Date  /  /

**Part I    Power of Attorney**

**Caution:** *A separate Form 2848 must be completed for each taxpayer. Form 2848 will not be honored for any purpose other than representation before the IRS.*

**1    Taxpayer information.** *Taxpayer must sign and date this form on page 2, line 7.*

| Taxpayer name and address | Taxpayer identification number(s) |
|---|---|
| OpenAI, Inc.<br>335 Pioneer Way<br>Mountain View, CA 94041 | 81-0861541 |
|  | Daytime telephone number: (650) 387-6701 — Plan number (if applicable) |

hereby appoints the following representative(s) as attorney(s)-in-fact:

**2    Representative(s)** *must sign and date this form on page 2, Part II.*

| Name and address | |
|---|---|
| Ingrid Mittermaier, Adler & Colvin<br>235 Montgomery Street, Suite 1220<br>San Francisco, CA  94104<br>Check if to be sent copies of notices and communications ☒ | CAF No. **9006-13523R**<br>PTIN **P01444999**<br>Telephone No. **(415) 421-7555**<br>Fax No. **(415) 421-0712**<br>Check if new: Address ☐  Telephone No. ☐  Fax No. ☐ |
| Name and address<br>Jorge Lopez, Adler & Colvin<br>235 Montgomery Street, Suite 1220<br>San Francisco, CA  94104<br>Check if to be sent copies of notices and communications ☒ | CAF No. **0310-42845R**<br>PTIN **P01618359**<br>Telephone No. **(415) 421-7555**<br>Fax No. **(415) 421-0712**<br>Check if new: Address ☐  Telephone No. ☐  Fax No. ☐ |
| Name and address<br><br>(**Note:** *IRS sends notices and communications to only two representatives.*) | CAF No. _____<br>PTIN _____<br>Telephone No. _____<br>Fax No. _____<br>Check if new: Address ☐  Telephone No. ☐  Fax No. ☐ |
| Name and address<br><br>(**Note:** *IRS sends notices and communications to only two representatives.*) | CAF No. _____<br>PTIN _____<br>Telephone No. _____<br>Fax No. _____<br>Check if new: Address ☐  Telephone No. ☐  Fax No. ☐ |

to represent the taxpayer before the Internal Revenue Service and perform the following acts:

**3    Acts authorized (you are required to complete this line 3).** *With the exception of the acts described in line 5b, I authorize my representative(s) to receive and inspect my confidential tax information and to perform acts that I can perform with respect to the tax matters described below. For example, my representative(s) shall have the authority to sign any agreements, consents, or similar documents (see instructions for line 5a for authorizing a representative to sign a return).*

| Description of Matter (Income, Employment, Payroll, Excise, Estate, Gift, Whistleblower, Practitioner Discipline, PLR, FOIA, Civil Penalty, Sec. 5000A Shared Responsibility Payment, Sec. 4980H Shared Responsibility Payment, etc.) (see instructions) | Tax Form Number (1040, 941, 720, etc.) (if applicable) | Year(s) or Period(s) (if applicable) (see instructions) |
|---|---|---|
| **Application for Recognition of Exemption - Income Tax** | **Form 1023** | **2016 - 2018** |
|  |  |  |
|  |  |  |

**4    Specific use not recorded on Centralized Authorization File (CAF).** *If the power of attorney is for a specific use not recorded on CAF, check this box. See the instructions for Line 4. Specific Use Not Recorded on CAF* . . . . . . . . . . . . . . . . . ▶ ☒

**5a    Additional acts authorized.** *In addition to the acts listed on line 3 above, I authorize my representative(s) to perform the following acts (see instructions for line 5a for more information):*

☐ *Authorize disclosure to third parties;*    ☐ *Substitute or add representative(s);*    ☐ *Sign a return;* _____

☐ *Other acts authorized:* _____

**For Privacy Act and Paperwork Reduction Act Notice, see the instructions.**    Form **2848** (Rev. 12-2015)

ISA

MSFT_MUSK000036524

Form 2848 (Rev. 12-2015)                                                                                                              Page **2**

**b** **Specific acts not authorized.** My representative(s) is (are) not authorized to endorse or otherwise negotiate any check (including directing or accepting payment by any means, electronic or otherwise, into an account owned or controlled by the representative(s) or any firm or other entity with whom the representative(s) is (are) associated) issued by the government in respect of a federal tax liability.
List any other specific deletions to the acts otherwise authorized in this power of attorney (see instructions for line 5b): _____
_____

**6** **Retention/revocation of prior power(s) of attorney.** The filing of this power of attorney automatically revokes all earlier power(s) of attorney on file with the Internal Revenue Service for the same matters and years or periods covered by this document. If you do **not** want to revoke a prior power of attorney, check here . . . . . . . . . . . . . . . . . . . . . . . . . . . ▶ ☐
**YOU MUST ATTACH A COPY OF ANY POWER OF ATTORNEY YOU WANT TO REMAIN IN EFFECT.**

**7** **Signature of taxpayer.** If a tax matter concerns a year in which a joint return was filed, each spouse must file a separate power of attorney even if they are appointing the same representative(s). If signed by a corporate officer, partner, guardian, tax matters partner, executor, receiver, administrator, or trustee on behalf of the taxpayer, I certify that I have the legal authority to execute this form on behalf of the taxpayer.
▶ **IF NOT COMPLETED, SIGNED, AND DATED, THE IRS WILL RETURN THIS POWER OF ATTORNEY TO THE TAXPAYER.**

| | | |
|---|---|---|
| *Chris Clark* | 9/1/16 | President |
| Signature | Date | Title (if applicable) |
| Chris Clark | | OpenAI, Inc. |
| Print Name | | Print name of taxpayer from line 1 if other than individual |

**Part II**    **Declaration of Representative**

*Under penalties of perjury, by my signature below I declare that:*
• I am not currently suspended or disbarred from practice, or ineligible for practice, before the Internal Revenue Service;
• I am subject to regulations contained in Circular 230 (31 CFR, Subtitle A, Part 10), as amended, governing practice before the Internal Revenue Service;
• I am authorized to represent the taxpayer identified in Part I for the matter(s) specified there; and
• I am one of the following:

**a** Attorney—a member in good standing of the bar of the highest court of the jurisdiction shown below.
**b** Certified Public Accountant—licensed to practice as a certified public accountant is active in the jurisdiction shown below.
**c** Enrolled Agent—enrolled as an agent by the Internal Revenue Service per the requirements of Circular 230.
**d** Officer—a bona fide officer of the taxpayer organization.
**e** Full-Time Employee—a full-time employee of the taxpayer.
**f** Family Member—a member of the taxpayer's immediate family (spouse, parent, child, grandparent, grandchild, step-parent, step-child, brother, or sister).
**g** Enrolled Actuary—enrolled as an actuary by the Joint Board for the Enrollment of Actuaries under 29 U.S.C. 1242 (the authority to practice before the Internal Revenue Service is limited by section 10.3(d) of Circular 230).
**h** Unenrolled Return Preparer—Authority to practice before the IRS is limited. An unenrolled return preparer may represent, provided the preparer (1) prepared and signed the return or claim for refund (or prepared if there is no signature space on the form); (2) was eligible to sign the return or claim for refund; (3) has a valid PTIN; and (4) possesses the required Annual Filing Season Program Record of Completion(s). **See Special Rules and Requirements for Unenrolled Return Preparers in the instructions for additional information.**
**k** Student Attorney or CPA—receives permission to represent taxpayers before the IRS by virtue of his/her status as a law, business, or accounting student working in an LITC or STCP. See instructions for Part II for additional information and requirements.
**r** Enrolled Retirement Plan Agent—enrolled as a retirement plan agent under the requirements of Circular 230 (the authority to practice before the Internal Revenue Service is limited by section 10.3(e)).

▶ **IF THIS DECLARATION OF REPRESENTATIVE IS NOT COMPLETED, SIGNED, AND DATED, THE IRS WILL RETURN THE POWER OF ATTORNEY. REPRESENTATIVES MUST SIGN IN THE ORDER LISTED IN PART I, LINE 2.**

Note: For designations d–f, enter your title, position, or relationship to the taxpayer in the "Licensing jurisdiction" column.

| Designation— Insert above letter (a–r). | Licensing jurisdiction (State) or other licensing authority (if applicable). | Bar, license, certification, registration, or enrollment number (if applicable). | Signature | Date |
|---|---|---|---|---|
| a | CA | 172665 | | 9/1/16 |
| a | CA | 281523 | | 9/1/16 |
| | | | | |
| | | | | |
| | | | | |

Form **2848** (Rev. 12-2015)

HIGHLY CONFIDENTIAL                                                                        MSFT_MUSK000036525

Form **5768**

(Rev. September 2016)

Department of the Treasury
Internal Revenue Service

### Election/Revocation of Election by an Eligible Section 501(c)(3) Organization To Make Expenditures To Influence Legislation
(Under Section 501(h) of the Internal Revenue Code)

▶ Information about Form 5768 and its instructions is at *www.irs.gov/form5768.*

For IRS
Use Only ▶

| Name of organization | Employer identification number |
|---|---|
| OpenAI, Inc. | 81-0861541 |

| Number and street (or P.O. box no., if mail is not delivered to street address) | Room/suite |
|---|---|
| 335 Pioneer Way | |

| City, town or post office, and state | ZIP + 4 |
|---|---|
| Mountain View, California | 94041 |

**1  Election—** As an eligible organization, we hereby elect to have the provisions of section 501(h) of the Code, relating to expenditures to influence legislation, apply to our tax year ending ............ December 31, 2016 ............ and all subsequent tax years until revoked.

(Month, day, and year)

**Note:** This election must be signed and postmarked within the first taxable year to which it applies.

**2  Revocation—** As an eligible organization, we hereby revoke our election to have the provisions of section 501(h) of the Code, relating to expenditures to influence legislation, apply to our tax year ending ........................................................ and all subsequent tax years *(until a new election is made).*

(Month, day, and year)

**Note:** This revocation must be signed and postmarked before the first day of the tax year to which it applies.

Under penalties of perjury, I declare that I am authorized to make this (check applicable box) ▶   ☑ election   ☐ revocation
on behalf of the above named organization.

_Chris Clark_
(Signature of officer or trustee)

Chris Clark, President
(Type or print name and title)

9/1/16
(Date)

## General Instructions

*Section references are to the Internal Revenue Code.*

Section 501(c)(3) states that an organization exempt under that section will lose its tax-exempt status and its qualification to receive deductible charitable contributions if a substantial part of its activities are carried on to influence legislation. Section 501(h), however, permits certain eligible section 501(c)(3) organizations to elect to make limited expenditures to influence legislation. An organization making the election will, however, be subject to an excise tax under section 4911 if it spends more than the amounts permitted by that section. Also, the organization may lose its exempt status if its lobbying expenditures exceed the permitted amounts by more than 50% over a 4-year period. For any tax year in which an election under section 501(h) is in effect, an electing organization must report the actual and permitted amounts of its lobbying expenditures and grass roots expenditures (as defined in section 4911(c)) on its annual return required under section 6033. See Part II-A of Schedule C (Form 990 or Form 990-EZ). Each electing member of an affiliated group must report these amounts for both itself and the affiliated group as a whole.

To make or revoke the election, enter the ending date of the tax year to which the election or revocation applies in item 1 or 2, as applicable, and sign and date the form in the spaces provided.

**Eligible organizations.** A section 501(c)(3) organization is permitted to make the election if it is not a disqualified organization (see below) and is described in:

1. Section 170(b)(1)(A)(ii) (relating to educational institutions),
2. Section 170(b)(1)(A)(iii) (relating to hospitals and medical research organizations),
3. Section 170(b)(1)(A)(iv) (relating to organizations supporting government schools),
4. Section 170(b)(1)(A)(vi) (relating to organizations publicly supported by charitable contributions),
5. Section 170(b)(1)(A)(ix) (relating to agricultural research organizations),
6. Section 509(a)(2) (relating to organizations publicly supported by admissions, sales, etc.), or
7. Section 509(a)(3) (relating to organizations supporting certain types of public charities other than those section 509(a)(3) organizations that support section 501(c)(4), (5), or (6) organizations).

**Disqualified organizations.** The following types of organizations are not permitted to make the election:

a. Section 170(b)(1)(A)(i) organizations (relating to churches),

b. An integrated auxiliary of a church or of a convention or association of churches, or

c. A member of an affiliated group of organizations if one or more members of such group is described in a or b of this paragraph.

**Affiliated organizations.** Organizations are members of an affiliated group of organizations only if (1) the governing instrument of one such organization requires it to be bound by the decisions of the other organization on legislative issues, or (2) the governing board of one such organization includes persons (i) who are specifically designated representatives of another such organization or are members of the governing board, officers, or paid executive staff members of such other organization, and (ii) who, by aggregating their votes, have sufficient voting power to cause or prevent action on legislative issues by the first such organization.

For more details, see section 4911 and section 501(h).

**Note:** A private foundation (including a private operating foundation) is not an eligible organization.

**Where to file.** Mail Form 5768 to:

Department of the Treasury
Internal Revenue Service Center
Ogden, UT 84201-0027

Cat. No. 12125M

Form **5768** (Rev. 9-2016)

HIGHLY CONFIDENTIAL

MSFT_MUSK000036526

Form **1023**
(Rev. December 2013)
Department of the Treasury
Internal Revenue Service

### Application for Recognition of Exemption
### Under Section 501(c)(3) of the Internal Revenue Code

▶ (Use with the June 2006 revision of the Instructions for Form 1023 and the current Notice 1382)

OMB No. 1545-0056
**Note.** *If exempt status is approved, this application will be open for public inspection.*

*Use the instructions to complete this application and for a definition of all* **bold** *items.* For additional help, call IRS Exempt Organizations Customer Account Services toll-free at 1-877-829-5500. Visit our website at **www.irs.gov** for forms and publications. If the required information and documents are not submitted with payment of the appropriate user fee, the application may be returned to you.

Attach additional sheets to this application if you need more space to answer fully. Put your name and EIN on each sheet and identify each answer by Part and line number. Complete Parts I - XI of Form 1023 and submit only those Schedules (A through H) that apply to you.

### Part I    Identification of Applicant

| | |
|---|---|
| **1**  Full name of organization (exactly as it appears in your **organizing document**) | **2**  c/o Name (if applicable) |
| **OpenAI, Inc.** | |

| | | |
|---|---|---|
| **3**  Mailing address (Number and street) (see instructions) | Room/Suite | **4**  Employer Identification Number (EIN) |
| **335 Pioneer Way** | | **81-0861541** |
| City or town, state or country, and ZIP + 4 | | **5**  Month the annual accounting period ends (01 – 12) |
| **Mountain View , CA 94041** | | **12** |

**6**  Primary contact (officer, director, trustee, or **authorized representative**)
a Name: **Ingrid Mittermaier, Adler & Colvin**

b  Phone: **(415) 421-7555**
c  Fax: (optional) **(415) 421-0712**

**7**  Are you represented by an authorized representative, such as an attorney or accountant? If "Yes," provide the authorized representative's name, and the name and address of the authorized representative's firm. Include a completed Form 2848, *Power of Attorney and Declaration of Representative*, with your application if you would like us to communicate with your representative.   ☒ Yes   ☐ No

**8**  Was a person who is not one of your officers, directors, trustees, employees, or an authorized representative listed in line 7, paid, or promised payment, to help plan, manage, or advise you about the structure or activities of your organization, or about your financial or tax matters? If "Yes," provide the person's name, the name and address of the person's firm, the amounts paid or promised to be paid, and describe that person's role.   ☐ Yes   ☒ No

**9a**  Organization's website: **www.openai.com**

**b**  Organization's email: (optional)

**10**  Certain organizations are not required to file an information return (Form 990 or Form 990-EZ). If you are granted tax-exemption, are you claiming to be excused from filing Form 990 or Form 990-EZ? If "Yes," explain. See the instructions for a description of organizations not required to file Form 990 or Form 990-EZ.   ☐ Yes   ☒ No

**11**  Date incorporated if a corporation, or formed, if other than a corporation.   (MM/DD/YYYY)  **12/8/2015**

**12**  Were you formed under the laws of a **foreign country**?
If "Yes," state the country.   ☐ Yes   ☒ No

**For Paperwork Reduction Act Notice, see page 24 of the instructions.**

Form **1023** (Rev. 12-2013)

ISA

HIGHLY CONFIDENTIAL

MSFT_MUSK000036527

| Form 1023 (Rev. 12-2013) | Name: **OpenAI, Inc.** | EIN: **81-0861541** | Page **2** |
| --- | --- | --- | --- |

## Part II  Organizational Structure

You must be a corporation (including a limited liability company), an unincorporated association, or a trust to be tax exempt. (See instructions.) **DO NOT file this form unless you can check "Yes" on lines 1, 2, 3, or 4.**

| | | | |
| --- | --- | --- | --- |
| 1 | Are you a **corporation**? If "Yes," attach a copy of your articles of incorporation showing **certification of filing** with the appropriate state agency. Include copies of any amendments to your articles and be sure they also show state filing certification. | ☒ Yes | ☐ No |
| 2 | Are you a **limited liability company (LLC)**? If "Yes," attach a copy of your articles of organization showing certification of filing with the appropriate state agency. Also, if you adopted an operating agreement, attach a copy. Include copies of any amendments to your articles and be sure they show state filing certification. Refer to the instructions for circumstances when an LLC should not file its own exemption application. | ☐ Yes | ☒ No |
| 3 | Are you an **unincorporated association**? If "Yes," attach a copy of your articles of association, constitution, or other similar organizing document that is dated and includes at least two signatures. Include signed and dated copies of any amendments. | ☐ Yes | ☒ No |
| 4a | Are you a **trust**? If "Yes," attach a signed and dated copy of your trust agreement. Include signed and dated copies of any amendments. | ☐ Yes | ☒ No |
| b | Have you been funded? If "No," explain how you are formed without anything of value placed in trust. | ☐ Yes | ☐ No |
| 5 | Have you adopted **bylaws**? If "Yes," attach a current copy showing date of adoption. If "No," explain how your officers, directors, or trustees are selected. | ☒ Yes | ☐ No |

## Part III  Required Provisions in Your Organizing Document

The following questions are designed to ensure that when you file this application, your organizing document contains the required provisions to meet the organizational test under section 501(c)(3). Unless you can check the boxes in both lines 1 and 2, your organizing document does not meet the organizational test. **DO NOT file this application until you have amended your organizing document.** Submit your original and amended organizing documents (showing state filing certification if you are a corporation or an LLC) with your application.

| | | |
| --- | --- | --- |
| 1 | Section 501(c)(3) requires that your organizing document state your exempt purpose(s), such as charitable, religious, educational, and/or scientific purposes. Check the box to confirm that your organizing document meets this requirement. Describe specifically where your organizing document meets this requirement, such as a reference to a particular article or section in your organizing document. Refer to the instructions for exempt purpose language. | ☒ |
| | Location of Purpose Clause (Page, Article, and Paragraph): **Page 1, Paragraph Third** | |
| 2a | Section 501(c)(3) requires that upon dissolution of your organization, your remaining assets must be used exclusively for exempt purposes, such as charitable, religious, educational, and/or scientific purposes. Check the box on line 2a to confirm that your organizing document meets this requirement by express provision for the distribution of assets upon dissolution. If you rely on state law for your dissolution provision, do not check the box on line 2a and go to line 2c. | ☒ |
| b | If you checked the box on line 2a, specify the location of your dissolution clause (Page, Article, and Paragraph). Do not complete line 2c if you checked box 2a. **Page 1, Paragraph Fifth** | |
| c | See the instructions for information about the operation of state law in your particular state. Check this box if you rely on operation of state law for your dissolution provision and indicate the state: | ☐ |

## Part IV  Narrative Description of Your Activities

Using an attachment, describe your *past, present,* and *planned* activities in a narrative. If you believe that you have already provided some of this information in response to other parts of this application, you may summarize that information here and refer to the specific parts of the application for supporting details. You may also attach representative copies of newsletters, brochures, or similar documents for supporting details to this narrative. Remember that if this application is approved, it will be open for public inspection. Therefore, your narrative description of activities should be thorough and accurate. Refer to the instructions for information that must be included in your description.

## Part V  Compensation and Other Financial Arrangements With Your Officers, Directors, Trustees, Employees, and Independent Contractors

1a  List the names, titles, and mailing addresses of all of your officers, directors, and trustees. For each person listed, state their total annual **compensation**, or proposed compensation, for all services to the organization, whether as an officer, employee, or other position. Use actual figures, if available. Enter "none" if no compensation is or will be paid. If additional space is needed, attach a separate sheet. Refer to the instructions for information on what to include as compensation.

| Name | Title | Mailing address | Compensation amount (annual actual or estimated) |
| --- | --- | --- | --- |
| **See supplemental response** | | | |
| | | | |
| | | | |
| | | | |

Form **1023** (Rev. 12-2013)

HIGHLY CONFIDENTIAL

MSFT_MUSK000036528

Form 1023 (Rev. 12-2013)    Name: **OpenAI, Inc.**    EIN: 81-0861541    Page **3**

## Part V — Compensation and Other Financial Arrangements With Your Officers, Directors, Trustees, Employees, and Independent Contractors (Continued)

**b** List the names, titles, and mailing addresses of each of your five highest compensated employees who receive or will receive compensation of more than $50,000 per year. Use the actual figure, if available. Refer to the instructions for information on what to include as compensation. Do not include officers, directors, or trustees listed in line 1a.

| Name | Title | Mailing address | Compensation amount (annual actual or estimated) |
|------|-------|-----------------|---------------------------------------------------|
| **See supplemental response** | | | |
| | | | |
| | | | |
| | | | |
| | | | |

**c** List the names, names of businesses, and mailing addresses of your five highest compensated **independent contractors** that receive or will receive compensation of more than $50,000 per year. Use the actual figure, if available. Refer to the instructions for information on what to include as compensation.

| Name | Title | Mailing address | Compensation amount (annual actual or estimated) |
|------|-------|-----------------|---------------------------------------------------|
| **None** | | | |
| | | | |
| | | | |
| | | | |
| | | | |

The following "Yes" or "No" questions relate to *past, present, or planned* relationships, transactions, or agreements with your officers, directors, trustees, highest compensated employees, and highest compensated independent contractors listed in lines 1a, 1b, and 1c.

**2a** Are any of your officers, directors, or trustees **related** to each other through **family** or **business relationships**? If "Yes," identify the individuals and explain the relationship.    ☒ Yes    ☐ No

**b** Do you have a business relationship with any of your officers, directors, or trustees other than through their position as an officer, director, or trustee? If "Yes," identify the individuals and describe the business relationship with each of your officers, directors, or trustees.    ☐ Yes    ☒ No

**c** Are any of your officers, directors, or trustees related to your highest compensated employees or highest compensated independent contractors listed on lines 1b or 1c through family or business relationships? If "Yes," identify the individuals and explain the relationship.    ☒ Yes    ☐ No

**3a** For each of your officers, directors, trustees, highest compensated employees, and highest compensated independent contractors listed on lines 1a, 1b, or 1c, attach a list showing their name, qualifications, average hours worked, and duties.

**b** Do any of your officers, directors, trustees, highest compensated employees, and highest compensated independent contractors listed on lines 1a, 1b, or 1c receive compensation from any other organizations, whether tax exempt or taxable, that are related to you through **common control**? If "Yes," identify the individuals, explain the relationship between you and the other organization, and describe the compensation arrangement.    ☐ Yes    ☒ No

**4** In establishing the compensation for your officers, directors, trustees, highest compensated employees, and highest compensated independent contractors listed on lines 1a, 1b, and 1c, the following practices are recommended, although they are not required to obtain exemption. Answer "Yes" to all the practices you use.

**a** Do you or will the individuals that approve compensation arrangements follow a conflict of interest policy?    ☒ Yes    ☐ No

**b** Do you or will you approve compensation arrangements in advance of paying compensation?    ☒ Yes    ☐ No

**c** Do you or will you document in writing the date and terms of approved compensation arrangements?    ☒ Yes    ☐ No

Form **1023** (Rev. 12-2013)

HIGHLY CONFIDENTIAL

Form 1023 (Rev. 12-2013)    Name: **OpenAI, Inc.**      EIN: **81-0861541**      Page **4**

| Part V | Compensation and Other Financial Arrangements With Your Officers, Directors, Trustees, Employees, and Independent Contractors *(Continued)* |
|---|---|

**d** Do you or will you record in writing the decision made by each individual who decided or voted on compensation arrangements?    ☒ Yes ☐ No

**e** Do you or will you approve compensation arrangements based on information about compensation paid by **similarly situated** taxable or tax-exempt organizations for similar services, current compensation surveys compiled by independent firms, or actual written offers from similarly situated organizations? Refer to the instructions for Part V, lines 1a, 1b, and 1c, for information on what to include as compensation.    ☒ Yes ☐ No

**f** Do you or will you record in writing both the information on which you relied to base your decision and its source?    ☒ Yes ☐ No

**g** If you answered "No" to any item on lines 4a through 4f, describe how you set compensation that is **reasonable** for your officers, directors, trustees, highest compensated employees, and highest compensated independent contractors listed in Part V, lines 1a, 1b, and 1c.

**5a** Have you adopted a **conflict of interest policy** consistent with the sample conflict of interest policy in Appendix A to the instructions? If "Yes," provide a copy of the policy and explain how the policy has been adopted, such as by resolution of your governing board. If "No," answer lines 5b and 5c.    ☒ Yes ☐ No

**b** What procedures will you follow to assure that persons who have a conflict of interest will not have influence over you for setting their own compensation?

**c** What procedures will you follow to assure that persons who have a conflict of interest will not have influence over you regarding business deals with themselves?
**Note.** A conflict of interest policy is recommended though it is not required to obtain exemption. Hospitals, see Schedule C, Section I, line 14.

**6a** Do you or will you compensate any of your officers, directors, trustees, highest compensated employees, and highest compensated independent contractors listed in lines 1a, 1b, or 1c through **non-fixed payments**, such as discretionary bonuses or revenue-based payments? If "Yes," describe all non-fixed compensation arrangements, including how the amounts are determined, who is eligible for such arrangements, whether you place a limitation on total compensation, and how you determine or will determine that you pay no more than reasonable compensation for services. Refer to the instructions for Part V, lines 1a, 1b, and 1c, for information on what to include as compensation.    ☒ Yes ☐ No

**b** Do you or will you compensate any of your employees, other than your officers, directors, trustees, or your five highest compensated employees who receive or will receive compensation of more than $50,000 per year, through non-fixed payments, such as discretionary bonuses or revenue-based payments? If "Yes," describe all non-fixed compensation arrangements, including how the amounts are or will be determined, who is or will be eligible for such arrangements, whether you place or will place a limitation on total compensation, and how you determine or will determine that you pay no more than reasonable compensation for services. Refer to the instructions for Part V, lines 1a, 1b, and 1c, for information on what to include as compensation.    ☒ Yes ☐ No

**7a** Do you or will you purchase any goods, services, or assets from any of your officers, directors, trustees, highest compensated employees, or highest compensated independent contractors listed in lines 1a, 1b, or 1c? If "Yes," describe any such purchase that you made or intend to make, from whom you make or will make such purchases, how the terms are or will be negotiated at arm's length, and explain how you determine or will determine that you pay no more than **fair market value**. Attach copies of any written contracts or other agreements relating to such purchases.    ☐ Yes ☒ No

**b** Do you or will you sell any goods, services, or assets to any of your officers, directors, trustees, highest compensated employees, or highest compensated independent contractors listed in lines 1a, 1b, or 1c? If "Yes," describe any such sales that you made or intend to make, to whom you make or will make such sales, how the terms are or will be negotiated at arm's length, and explain how you determine or will determine you are or will be paid at least fair market value. Attach copies of any written contracts or other agreements relating to such sales.    ☐ Yes ☒ No

**8a** Do you or will you have any leases, contracts, loans, or other agreements with your officers, directors, trustees, highest compensated employees, or highest compensated independent contractors listed in lines 1a, 1b, or 1c? If "Yes," provide the information requested in lines 8b through 8f.    ☒ Yes ☐ No

**b** Describe any written or oral arrangements that you made or intend to make.

**c** Identify with whom you have or will have such arrangements.

**d** Explain how the terms are or will be negotiated at arm's length.

**e** Explain how you determine you pay no more than fair market value or you are paid at least fair market value.

**f** Attach copies of any signed leases, contracts, loans, or other agreements relating to such arrangements.

**9a** Do you or will you have any leases, contracts, loans, or other agreements with any organization in which any of your officers, directors, or trustees are also officers, directors, or trustees, or in which any individual officer, director, or trustee owns more than a 35% interest? If "Yes," provide the information requested in lines 9b through 9f.    ☐ Yes ☒ No

Form **1023** (Rev. 12-2013)

HIGHLY CONFIDENTIAL

Form 1023 (Rev. 12-2013)   Name: **OpenAI, Inc.**   EIN: **81-0861541**   Page **5**

| **Part V** | **Compensation and Other Financial Arrangements With Your Officers, Directors, Trustees, Employees, and Independent Contractors** *(Continued)* |
|---|---|

  **b** Describe any written or oral arrangements you made or intend to make.

  **c** Identify with whom you have or will have such arrangements.

  **d** Explain how the terms are or will be negotiated at arm's length.

  **e** Explain how you determine or will determine you pay no more than fair market value or that you are paid at least fair market value.

  **f** Attach a copy of any signed leases, contracts, loans, or other agreements relating to such arrangements.

| **Part VI** | **Your Members and Other Individuals and Organizations That Receive Benefits From You** |
|---|---|

The following "Yes" or "No" questions relate to goods, services, and funds you provide to individuals and organizations as part of your activities. Your answers should pertain to *past*, *present*, and *planned* activities. (See instructions.)

**1a** In carrying out your exempt purposes, do you provide goods, services, or funds to individuals? If "Yes," describe each program that provides goods, services, or funds to individuals. ☐ Yes ☒ No

  **b** In carrying out your exempt purposes, do you provide goods, services, or funds to organizations? If "Yes," describe each program that provides goods, services, or funds to organizations. ☐ Yes ☒ No

**2** Do any of your programs limit the provision of goods, services, or funds to a specific individual or group of specific individuals? For example, answer "Yes," if goods, services, or funds are provided only for a particular individual, your members, individuals who work for a particular employer, or graduates of a particular school. If "Yes," explain the limitation and how recipients are selected for each program. ☐ Yes ☒ No

**3** Do any individuals who receive goods, services, or funds through your programs have a family or business relationship with any officer, director, trustee, or with any of your highest compensated employees or highest compensated independent contractors listed in Part V, lines 1a, 1b, and 1c? If "Yes," explain how these related individuals are eligible for goods, services, or funds. ☐ Yes ☒ No

| **Part VII** | **Your History** |
|---|---|

The following "Yes" or "No" questions relate to your history. (See instructions.)

**1** Are you a **successor** to another organization? Answer "Yes," if you have taken or will take over the activities of another organization; you took over 25% or more of the fair market value of the net assets of another organization; or you were established upon the conversion of an organization from for-profit to non-profit status. If "Yes," complete Schedule G. ☐ Yes ☒ No

**2** Are you submitting this application more than 27 months after the end of the month in which you were legally formed? If "Yes," complete Schedule E. ☐ Yes ☒ No

| **Part VIII** | **Your Specific Activities** |
|---|---|

The following "Yes" or "No" questions relate to specific activities that you may conduct. Check the appropriate box. Your answers should pertain to *past*, *present*, and *planned* activities. (See instructions.)

**1** Do you support or oppose candidates in **political campaigns** in any way? If "Yes," explain. ☐ Yes ☒ No

**2a** Do you attempt to **influence legislation**? If "Yes," explain how you attempt to influence legislation and complete line 2b. If "No," go to line 3a. ☒ Yes ☐ No

  **b** Have you made or are you making an **election** to have your legislative activities measured by expenditures by filing Form 5768? If "Yes," attach a copy of the Form 5768 that was already filed or attach a completed Form 5768 that you are filing with this application. If "No," describe whether your attempts to influence legislation are a substantial part of your activities. Include the time and money spent on your attempts to influence legislation as compared to your total activities. ☒ Yes ☐ No

**3a** Do you or will you operate bingo or **gaming** activities? If "Yes," describe who conducts them, and list all revenue received or expected to be received and expenses paid or expected to be paid in operating these activities. **Revenue and expenses** should be provided for the time periods specified in Part IX, Financial Data. ☐ Yes ☒ No

  **b** Do you or will you enter into contracts or other agreements with individuals or organizations to conduct bingo or gaming for you? If "Yes," describe any written or oral arrangements that you made or intend to make, identify with whom you have or will have such arrangements, explain how the terms are or will be negotiated at arm's length, and explain how you determine or will determine you pay no more than fair market value or you will be paid at least fair market value. Attach copies or any written contracts or other agreements relating to such arrangements. ☐ Yes ☒ No

  **c** List the states and local jurisdictions, including Indian Reservations, in which you conduct or will conduct gaming or bingo.

Form **1023** (Rev. 12-2013)

HIGHLY CONFIDENTIAL

MSFT_MUSK000036531

Form 1023 (Rev. 12-2013)    Name: **OpenAI, Inc.**    EIN: **81-0861541**    Page **6**

| Part VIII | Your Specific Activities *(Continued)* |
| --- | --- |

**4a** Do you or will you undertake **fundraising**? If "Yes," check all the fundraising programs you do or will conduct. (See instructions.)    ☒ Yes    ☐ No

☒ mail solicitations                          ☐ phone solicitations
☒ email solicitations                        ☒ accept donations on your website
☒ personal solicitations                    ☒ receive donations from another organization's website
☐ vehicle, boat, plane, or similar donations    ☒ government grant solicitations
☒ foundation grant solicitations            ☐ Other

Attach a description of each fundraising program.

**b** Do you or will you have written or oral contracts with any individuals or organizations to raise funds for you? If "Yes," describe these activities. Include all revenue and expenses from these activities and state who conducts them. Revenue and expenses should be provided for the time periods specified in Part IX, Financial Data. Also, attach a copy of any contracts or agreements.    ☐ Yes    ☒ No

**c** Do you or will you engage in fundraising activities for other organizations? If "Yes," describe these arrangements. Include a description of the organizations for which you raise funds and attach copies of all contracts or agreements.    ☐ Yes    ☒ No

**d** List all states and local jurisdictions in which you conduct fundraising. For each state or local jurisdiction listed, specify whether you fundraise for your own organization, you fundraise for another organization, or another organization fundraises for you.

**e** Do you or will you maintain separate accounts for any contributor under which the contributor has the right to advise on the use or distribution of funds? Answer "Yes" if the donor may provide advice on the types of investments, distributions from the types of investments, or the distribution from the donor's contribution account. If "Yes," describe this program, including the type of advice that may be provided and submit copies of any written materials provided to donors.    ☐ Yes    ☒ No

**5** Are you **affiliated** with a governmental unit? If "Yes," explain.    ☐ Yes    ☒ No

**6a** Do you or will you engage in **economic development**? If "Yes," describe your program.    ☐ Yes    ☒ No
**b** Describe in full who benefits from your economic development activities and how the activities promote exempt purposes.

**7a** Do or will persons other than your employees or volunteers **develop** your facilities? If "Yes," describe each facility, the role of the developer, and any business or family relationship(s) between the developer and your officers, directors, or trustees.    ☐ Yes    ☒ No

**b** Do or will persons other than your employees or volunteers **manage** your activities or facilities? If "Yes," describe each activity and facility, the role of the manager, and any business or family relationship(s) between the manager and your officers, directors, or trustees.    ☐ Yes    ☒ No

**c** If there is a business or family relationship between any manager or developer and your officers, directors, or trustees, identify the individuals, explain the relationship, describe how contracts are negotiated at arm's length so that you pay no more than fair market value, and submit a copy of any contracts or other agreements.

**8** Do you or will you enter into **joint ventures**, including partnerships or **limited liability companies** treated as partnerships, in which you share profits and losses with partners other than section 501(c)(3) organizations? If "Yes," describe the activities of these joint ventures in which you participate.    ☐ Yes    ☒ No

**9a** Are you applying for exemption as a childcare organization under section 501(k)? If "Yes," answer lines 9b through 9d. If "No," go to line 10.    ☐ Yes    ☒ No

**b** Do you provide child care so that parents or caretakers of children you care for can be **gainfully employed** (see instructions)? If "No," explain how you qualify as a childcare organization described in section 501(k).    ☐ Yes    ☐ No

**c** Of the children for whom you provide child care, are 85% or more of them cared for by you to enable their parents or caretakers to be gainfully employed (see instructions)? If "No," explain how you qualify as a childcare organization described in section 501(k).    ☐ Yes    ☐ No

**d** Are your services available to the general public? If "No," describe the specific group of people for whom your activities are available. Also, see the instructions and explain how you qualify as a childcare organization described in section 501(k).    ☐ Yes    ☐ No

**10** Do you or will you publish, own, or have rights in music, literature, tapes, artworks, choreography, scientific discoveries, or other **intellectual property**? If "Yes," explain. Describe who owns or will own any copyrights, patents, or trademarks, whether fees are or will be charged, how the fees are determined, and how any items are or will be produced, distributed, and marketed.    ☒ Yes    ☐ No

Form **1023** (Rev. 12-2013)

HIGHLY CONFIDENTIAL

Form 1023 (Rev. 12-2013)      Name: **OpenAI, Inc.**                      EIN: **81-0861541**          Page **7**

| Part VIII | Your Specific Activities *(Continued)* |
|---|---|

**11** Do you or will you accept contributions of: real property; conservation easements; closely held    ☒ Yes    ☐ No
securities; intellectual property such as patents, trademarks, and copyrights; works of music or art;
licenses; royalties; automobiles, boats, planes, or other vehicles; or collectibles of any type? If "Yes,"
describe each type of contribution, any conditions imposed by the donor on the contribution, and any
agreements with the donor regarding the contribution.

**12a** Do you or will you operate in a **foreign country** or **countries?** If "Yes," answer lines 12b through 12d. If    ☐ Yes    ☒ No
"No," go to line 13a.

  **b** Name the foreign countries and regions within the countries in which you operate. See supplemental response.

  **c** Describe your operations in each country and region in which you operate.

  **d** Describe how your operations in each country and region further your exempt purposes.

**13a** Do you or will you make grants, loans, or other distributions to organization(s)? If "Yes," answer lines 13b    ☐ Yes    ☒ No
through 13g. If "No," go to line 14a.

  **b** Describe how your grants, loans, or other distributions to organizations further your exempt purposes.

  **c** Do you have written contracts with each of these organizations? If "Yes," attach a copy of each contract.    ☐ Yes    ☐ No

  **d** Identify each recipient organization and any **relationship** between you and the recipient organization.

  **e** Describe the records you keep with respect to the grants, loans, or other distributions you make.

  **f** Describe your selection process, including whether you do any of the following:

    **(i)** Do you require an application form? If "Yes," attach a copy of the form.    ☐ Yes    ☐ No

    **(ii)** Do you require a grant proposal? If "Yes," describe whether the grant proposal specifies your    ☐ Yes    ☐ No
responsibilities and those of the grantee, obligates the grantee to use the grant funds only for the
purposes for which the grant was made, provides for periodic written reports concerning the use of
grant funds, requires a final written report and an accounting of how grant funds were used, and
acknowledges your authority to withhold and/or recover grant funds in case such funds are, or appear
to be, misused.

  **g** Describe your procedures for oversight of distributions that assure you the resources are used to further
your exempt purposes, including whether you require periodic and final reports on the use of resources.

**14a** Do you or will you make grants, loans, or other distributions to foreign organizations? If "Yes," answer    ☐ Yes    ☒ No
lines 14b through 14f. If "No," go to line 15.

  **b** Provide the name of each foreign organization, the country and regions within a country in which each
foreign organization operates, and describe any relationship you have with each foreign organization.

  **c** Does any foreign organization listed in line 14b accept contributions earmarked for a specific country or    ☐ Yes    ☐ No
specific organization? If "Yes," list all earmarked organizations or countries.

  **d** Do your contributors know that you have ultimate authority to use contributions made to you at your    ☐ Yes    ☐ No
discretion for purposes consistent with your exempt purposes? If "Yes," describe how you relay this
information to contributors.

  **e** Do you or will you make pre-grant inquiries about the recipient organization? If "Yes," describe these    ☐ Yes    ☐ No
inquiries, including whether you inquire about the recipient's financial status, its tax-exempt status under
the Internal Revenue Code, its ability to accomplish the purpose for which the resources are provided,
and other relevant information.

  **f** Do you or will you use any additional procedures to ensure that your distributions to foreign    ☐ Yes    ☐ No
organizations are used in furtherance of your exempt purposes? If "Yes," describe these procedures,
including site visits by your employees or compliance checks by impartial experts, to verify that grant
funds are being used appropriately.

Form **1023** (Rev. 12-2013)

HIGHLY CONFIDENTIAL

| Form 1023 (Rev. 12-2013) | Name: **OpenAI, Inc.** | EIN: **81-0861541** | Page **8** |
|---|---|---|---|

**Part VIII    Your Specific Activities** *(Continued)*

| | | | |
|---|---|---|---|
| 15 | Do you have a **close connection** with any organizations? If "Yes," explain. | ☐ Yes | ☒ No |
| 16 | Are you applying for exemption as a **cooperative hospital service organization** under section 501(e)? If "Yes," explain. | ☐ Yes | ☒ No |
| 17 | Are you applying for exemption as a **cooperative service organization of operating educational organizations** under section 501(f)? If "Yes," explain. | ☐ Yes | ☒ No |
| 18 | Are you applying for exemption as a **charitable risk pool** under section 501(n)? If "Yes," explain. | ☐ Yes | ☒ No |
| 19 | Do you or will you operate a **school**? If "Yes," complete Schedule B. Answer "Yes," whether you operate a school as your main function or as a secondary activity. | ☐ Yes | ☒ No |
| 20 | Is your main function to provide **hospital** or **medical care**? If "Yes," complete Schedule C. | ☐ Yes | ☒ No |
| 21 | Do you or will you provide **low-income housing** or housing for the **elderly** or **handicapped**? If "Yes," complete Schedule F. | ☐ Yes | ☒ No |
| 22 | Do you or will you provide scholarships, fellowships, educational loans, or other educational grants to individuals, including grants for travel, study, or other similar purposes? If "Yes," complete Schedule H. **Note. Private foundations** may use Schedule H to request advance approval of individual grant procedures. | ☐ Yes | ☒ No |

Form **1023** (Rev. 12-2013)

HIGHLY CONFIDENTIAL

Form 1023 (Rev. 12-2013)    Name: **OpenAI, Inc.**    EIN: **81-0861541**    Page **9**

| Part IX | Financial Data |

For purposes of this schedule, years in existence refer to completed tax years. If in existence 4 or more years, complete the schedule for the most recent 4 tax years. If in existence more than 1 year but less than 4 years, complete the statements for each year in existence and provide projections of your likely revenues and expenses based on a reasonable and good faith estimate of your future finances for a total of 3 years of financial information. If in existence less than 1 year, provide projections of your likely revenues and expenses for the current year and the 2 following years, based on a reasonable and good faith estimate of your future finances for a total of 3 years of financial information. (See instructions.)

### A. Statement of Revenues and Expenses

<table>
<tr><th colspan="2" rowspan="2">Type of revenue or expense</th><th>Current tax year</th><th colspan="3">3 prior tax years or 2 succeeding tax years</th><th rowspan="2">(e) Provide Total for (a) through (d)</th></tr>
<tr><th>(a) From ___ To ___</th><th>(b) From ___ To ___</th><th>(c) From ___ To ___</th><th>(d) From ___ To ___</th></tr>
<tr><td rowspan="13">Revenues</td><td>1</td><td>Gifts, grants, and contributions received (do not include unusual grants)</td><td></td><td></td><td></td><td></td><td></td></tr>
<tr><td>2</td><td>Membership fees received</td><td></td><td></td><td></td><td></td><td></td></tr>
<tr><td>3</td><td>Gross investment income</td><td></td><td></td><td></td><td></td><td></td></tr>
<tr><td>4</td><td>Net unrelated business income</td><td></td><td></td><td></td><td></td><td></td></tr>
<tr><td>5</td><td>Taxes levied for your benefit</td><td></td><td></td><td></td><td></td><td></td></tr>
<tr><td>6</td><td>Value of services or facilities furnished by a governmental unit without charge (not including the value of services generally furnished to the public without charge)</td><td colspan="3" rowspan="2">**Please see attached budget.**</td><td></td><td></td></tr>
<tr><td>7</td><td>Any revenue not otherwise listed above or in lines 9–12 below (attach an itemized list)</td><td></td><td></td></tr>
<tr><td>8</td><td>Total of lines 1 through 7</td><td></td><td></td><td></td><td></td><td></td></tr>
<tr><td>9</td><td>Gross receipts from admissions, merchandise sold or services performed, or furnishing of facilities in any activity that is related to your exempt purposes (attach itemized list)</td><td></td><td></td><td></td><td></td><td></td></tr>
<tr><td>10</td><td>Total of lines 8 and 9</td><td></td><td></td><td></td><td></td><td></td></tr>
<tr><td>11</td><td>Net gain or loss on sale of capital assets (attach schedule and see instructions)</td><td></td><td></td><td></td><td></td><td></td></tr>
<tr><td>12</td><td>**Unusual grants**</td><td></td><td></td><td></td><td></td><td></td></tr>
<tr><td>13</td><td>Total Revenue Add lines 10 through 12</td><td></td><td></td><td></td><td></td><td></td></tr>
<tr><td rowspan="11">Expenses</td><td>14</td><td>Fundraising expenses</td><td></td><td></td><td></td><td></td><td></td></tr>
<tr><td>15</td><td>Contributions, gifts, grants, and similar amounts paid out (attach an itemized list)</td><td></td><td></td><td></td><td></td><td></td></tr>
<tr><td>16</td><td>Disbursements to or for the benefit of members (attach an itemized list)</td><td></td><td></td><td></td><td></td><td></td></tr>
<tr><td>17</td><td>Compensation of officers, directors, and trustees</td><td></td><td></td><td></td><td></td><td></td></tr>
<tr><td>18</td><td>Other salaries and wages</td><td></td><td></td><td></td><td></td><td></td></tr>
<tr><td>19</td><td>Interest expense</td><td></td><td></td><td></td><td></td><td></td></tr>
<tr><td>20</td><td>Occupancy (rent, utilities, etc.)</td><td></td><td></td><td></td><td></td><td></td></tr>
<tr><td>21</td><td>Depreciation and depletion</td><td></td><td></td><td></td><td></td><td></td></tr>
<tr><td>22</td><td>Professional fees</td><td></td><td></td><td></td><td></td><td></td></tr>
<tr><td>23</td><td>Any expense not otherwise classified, such as program services (attach itemized list)</td><td></td><td></td><td></td><td></td><td></td></tr>
<tr><td>24</td><td>Total Expenses Add lines 14 through 23</td><td></td><td></td><td></td><td></td><td></td></tr>
</table>

Form **1023** (Rev. 12-2013)

HIGHLY CONFIDENTIAL

MSFT_MUSK000036535

Form 1023 (Rev. 12-2013)     Name: **OpenAI, Inc.**     EIN: **81-0861541**     Page **10**

| Part IX | Financial Data *(Continued)* | | |
|---|---|---|---|

| B. Balance Sheet (for your most recently completed tax year) | | Year End: **2015** |
|---|---|---|

**Assets** — (Whole dollars)

| | | | |
|---|---|---|---|
| 1 | Cash . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 1 | |
| 2 | Accounts receivable, net . . . . . . . . . . . . . . . . . . . | 2 | |
| 3 | Inventories . . . . . . . . . . . . . . . . . . . . . . . . | 3 | |
| 4 | Bonds and notes receivable (attach an itemized list) . . . . . . . | 4 | |
| 5 | Corporate stocks (attach an itemized list) . . . . . . . . . . . | 5 | |
| 6 | Loans receivable (attach an itemized list) . . . . . . . . . . . | 6 | |
| 7 | Other investments (attach an itemized list) . . . . . . . . . . . | 7 | |
| 8 | Depreciable and depletable assets (attach an itemized list) . . . . | 8 | |
| 9 | Land . . . . . . . . . . . . . . . . . . . . . . . . . . | 9 | |
| 10 | Other assets (attach an itemized list) . . . . . . . . . . . . . | 10 | |
| 11 | **Total Assets** (add lines 1 through 10) . . . . . . . . . | 11 | 0 |

**Liabilities**

| | | | |
|---|---|---|---|
| 12 | Accounts payable . . . . . . . . . . . . . . . . . . . . . | 12 | |
| 13 | Contributions, gifts, grants, etc. payable . . . . . . . . . . . | 13 | |
| 14 | Mortgages and notes payable (attach an itemized list) . . . . . . | 14 | |
| 15 | Other liabilities (attach an itemized list) . . . . . . . . . . . | 15 | |
| 16 | **Total Liabilities** (add lines 12 through 15) . . . . . . . | 16 | 0 |

**Fund Balances or Net Assets**

| | | | |
|---|---|---|---|
| 17 | Total fund balances or net assets . . . . . . . . . . . . . . | 17 | |
| 18 | **Total Liabilities and Fund Balances or Net Assets** (add lines 16 and 17) . . . . | 18 | 0 |
| 19 | Have there been any substantial changes in your assets or liabilities since the end of the period shown above? If "Yes," explain. | ☒ Yes   ☐ No | |

| Part X | Public Charity Status |
|---|---|

Part X is designed to classify you as an organization that is either a **private foundation** or a **public charity**. Public charity status is a more favorable tax status than private foundation status. If you are a private foundation, Part X is designed to further determine whether you are a **private operating foundation**. (See instructions.)

**1a** Are you a private foundation? If "Yes," go to line 1b. If "No," go to line 5 and proceed as instructed. If you are unsure, see the instructions.   ☐ Yes  ☒ No

**b** As a private foundation, section 508(e) requires special provisions in your organizing document in addition to those that apply to all organizations described in section 501(c)(3). Check the box to confirm that your organizing document meets this requirement, whether by express provision or by reliance on operation of state law. Attach a statement that describes specifically where your organizing document meets this requirement, such as a reference to a particular article or section in your organizing document or by operation of state law. See the instructions, including Appendix B, for information about the special provisions that need to be contained in your organizing document. Go to line 2.   ☐

**2** Are you a private operating foundation? To be a private operating foundation you must engage directly in the active conduct of charitable, religious, educational, and similar activities, as opposed to indirectly carrying out these activities by providing grants to individuals or other organizations. If "Yes," go to line 3. If "No," go to the signature section of Part XI.   ☐ Yes  ☐ No

**3** Have you existed for one or more years? If "Yes," attach financial information showing that you are a private operating foundation; go to the signature section of Part XI. If "No," continue to line 4.   ☐ Yes  ☐ No

**4** Have you attached either (1) an affidavit or opinion of counsel, (including a written affidavit or opinion from a certified public accountant or accounting firm with expertise regarding this tax law matter), that sets forth facts concerning your operations and support to demonstrate that you are likely to satisfy the requirements to be classified as a private operating foundation; or (2) a statement describing your proposed operations as a private operating foundation?   ☐ Yes  ☐ No

**5** If you answered "No" to line 1a, indicate the type of public charity status you are requesting by checking one of the choices below. You may check only one box.

The organization is not a private foundation because it is:

**a** 509(a)(1) and 170(b)(1)(A)(i)—a church or a convention or association of churches. Complete and attach Schedule A.   ☐

**b** 509(a)(1) and 170(b)(1)(A)(ii)—a **school**. Complete and attach Schedule B.   ☐

**c** 509(a)(1) and 170(b)(1)(A)(iii)—a **hospital**, a cooperative hospital service organization, or a medical research organization operated in conjunction with a hospital. Complete and attach Schedule C.   ☐

**d** 509(a)(3)—an organization supporting either one or more organizations described in line 5a through c, f, g, or h or a publicly supported section 501(c)(4), (5), or (6) organization. Complete and attach Schedule D.   ☐

Form **1023** (Rev. 12-2013)

HIGHLY CONFIDENTIAL

Form 1023 (Rev. 12-2013)    Name: **OpenAI, Inc.**    EIN: **81-0861541**    Page **11**

| **Part X** | **Public Charity Status** (Continued) |
|---|---|

   **e**  509(a)(4)—an organization organized and operated exclusively for testing for public safety. ☐

   **f**  509(a)(1) and 170(b)(1)(A)(iv)—an organization operated for the benefit of a college or university that is owned or operated by a governmental unit. ☐

   **g**  509(a)(1) and 170(b)(1)(A)(vi)—an organization that receives a substantial part of its financial support in the form of contributions from publicly supported organizations, from a governmental unit, or from the general public. ☒

   **h**  509(a)(2)—an organization that normally receives not more than one-third of its financial support from gross **investment income** and receives more than one-third of its financial support from contributions, membership fees, and gross receipts from activities related to its exempt functions (subject to certain exceptions). ☐

   **i**  A publicly supported organization, but unsure if it is described in 5g or 5h. The organization would like the IRS to decide the correct status. ☐

**6**  If you checked box g, h, or i in question 5 above, you must request either an **advance** or a **definitive ruling** by selecting one of the boxes below. Refer to the instructions to determine which type of ruling you are eligible to receive.

   **a**  **Request for Advance Ruling:** By checking this box and signing the consent, pursuant to section 6501(c)(4) of the Code you request an advance ruling and agree to extend the statute of limitations on the assessment of excise tax under section 4940 of the Code. The tax will apply only if you do not establish public support status at the end of the 5-year advance ruling period. The assessment period will be extended for the 5 advance ruling years to 8 years, 4 months, and 15 days beyond the end of the first year. You have the right to refuse or limit the extension to a mutually agreed-upon period of time or issue(s). Publication 1035, *Extending the Tax Assessment Period,* provides a more detailed explanation of your rights and the consequences of the choices you make. You may obtain Publication 1035 free of charge from the IRS web site at *www.irs.gov* or by calling toll-free 1-800-829-3676. Signing this consent will not deprive you of any appeal rights to which you would otherwise be entitled. If you decide not to extend the statute of limitations, you are not eligible for an advance ruling. ☐

   Consent Fixing Period of Limitations Upon Assessment of Tax Under Section 4940 of the Internal Revenue Code

   For Organization

   ----------------------------------------    ----------------------------------------    ---------------------------
   (Signature of Officer, Director, Trustee, or other    (Type or print name of signer)    (Date)
   authorized official)

                   ----------------------------------------
                   (Type or print title or authority of signer)

   For IRS Use Only

   ----------------------------------------    ---------------------------
   IRS Director, Exempt Organizations    (Date)

   **b**  **Request for Definitive Ruling:** Check this box if you have completed one tax year of at least 8 full months and you are requesting a definitive ruling. To confirm your public support status, answer line 6b(i) if you checked box g in line 5 above. Answer line 6b(ii) if you checked box h in line 5 above. If you checked box i in line 5 above, answer both lines 6b(i) and (ii). ☐

     **(i) (a)**  Enter 2% of line 8, column (e) on Part IX-A. Statement of Revenues and Expenses. _____

         **(b)**  Attach a list showing the name and amount contributed by each person, company, or organization whose gifts totaled more than the 2% amount. If the answer is "None," check this box. ☐

     **(ii) (a)**  For each year amounts are included on lines 1, 2, and 9 of Part IX-A. Statement of Revenues and Expenses, attach a list showing the name of and amount received from each **disqualified person.** If the answer is "None," check this box. ☐

         **(b)**  For each year amounts are included on line 9 of Part IX-A. Statement of Revenues and Expenses, attach a list showing the name of and amount received from each payer, other than a disqualified person, whose payments were more than the larger of (1) 1% of line 10, Part IX-A. Statement of Revenues and Expenses, or (2) $5,000. If the answer is "None," check this box. ☐

**7**  Did you receive any unusual grants during any of the years shown on Part IX-A. Statement of Revenues and Expenses? If "Yes," attach a list including the name of the contributor, the date and amount of the grant, a brief description of the grant, and explain why it is unusual.   ☐ Yes  ☒ No

Form **1023** (Rev. 12-2013)

HIGHLY CONFIDENTIAL

Form 1023 (Rev. 12-2013)    Name: **OpenAI, Inc.**    EIN: **81-0861541**    Page **12**

| **Part XI** | **User Fee Information** |
| --- | --- |

*You must include a user fee payment with this application. It will not be processed without your paid user fee. If your average annual gross receipts have exceeded or will exceed $10,000 annually over a 4-year period, you must submit payment of $850. If your gross receipts have not exceeded or will not exceed $10,000 annually over a 4-year period, the required user fee payment is $400. See instructions for Part XI, for a definition of **gross receipts** over a 4-year period. Your check or money order must be made payable to the United States Treasury. User fees are subject to change. Check our website at www.irs.gov and type "User Fee" in the keyword box, or call Customer Account Services at 1-877-829-5500 for current information.*

| | | | |
| --- | --- | --- | --- |
| 1 | Have your annual gross receipts averaged or are they expected to average not more than $10,000? | ☒ Yes | ☐ No |
| | If "Yes," check the box on line 2 and enclose a user fee payment of $400 (Subject to change—see above). | | |
| | If "No," check the box on line 3 and enclose a user fee payment of $850 (Subject to change—see above). | | |
| 2 | Check the box if you have enclosed the reduced user fee payment of $400 (Subject to change). | | ☐ |
| 3 | Check the box if you have enclosed the user fee payment of $850 (Subject to change). | | ☒ |

I declare under the penalties of perjury that I am authorized to sign this application on behalf of the above organization and that I have examined this application, including the accompanying schedules and attachments, and to the best of my knowledge it is true, correct, and complete.

| | | |
| --- | --- | --- |
| **Please Sign Here** ▶ | *Chris Clark* | 9/1/16 |
| | (Signature of Officer, Director, Trustee, or other authorized official) | (Date) |
| | **Chris Clark** | |
| | (Type or print name of signer) | |
| | **President** | |
| | (Type or print title or authority of signer) | |

**Reminder:** Send the completed Form 1023 Checklist with your filled-in application.    Form **1023** (Rev. 12-2013)

HIGHLY CONFIDENTIAL    MSFT_MUSK000036538

OPENAI, INC.
EIN: 81-0861541

State of Delaware
Secretary of State
Division of Corporations
Delivered  02:22 PM 12/08/2015
FILED  02:22 PM 12/08/2015
SR 20151247198 - File Number  5902936

## CERTIFICATE OF INCORPORATION OF

## A NON-STOCK CORPORATION

## OPENAI, INC.

FIRST: The name of the Corporation is "OpenAI, Inc." (the "**Corporation**").

SECOND: The address of the Corporation's registered office in the State of Delaware is 2711 Centerville Road, Suite 400, Wilmington, New Castle County, Delaware 19808. The name of its registered agent at such address is Corporation Service Company.

THIRD: This Corporation shall be a nonprofit corporation organized exclusively for charitable and/or educational purposes within the meaning of section 501(c)(3) of the Internal Revenue Code of 1986, as amended, or the corresponding provision of any future United States Internal Revenue law. The specific purpose of this corporation is to provide funding for research, development and distribution of technology related to artificial intelligence. The resulting technology will benefit the public and the corporation will seek to open source technology for the public benefit when applicable. The corporation is not organized for the private gain of any person. In furtherance of its purposes, the corporation shall engage in any lawful act of activity for which nonprofit corporations may be organized under the General Corporation Law of Delaware.

FOURTH: This corporation is organized and operated exclusively for purposes set forth in Article THIRD hereof within the meaning of the Internal Revenue Code section 501(c)(3). No substantial part of the activities of this corporation shall consist of carrying on propaganda, or otherwise attempting to influence legislation and this corporation shall not participate or intervene in any political campaign (including the publishing or distribution of statements) on behalf on any candidate for public office. Notwithstanding any other provision of these articles, the corporation shall not carry on any other activities not permitted to be carried on (a) by a corporation/organization exempt from Federal income tax under section 501(c)(3) of the Internal Revenue Code, or the corresponding section of any future federal tax code, or (b) by a corporation/organization, contributions to which are deductible under section 170(c)(2) of the Internal Revenue Code, or the corresponding section of any future federal tax code.

FIFTH: The property of this corporation is irrevocably dedicated to the purposes in Article THREE hereof and no part of the net income or assets of this corporation shall ever inure to the benefit of any director, officer or member thereof or to the benefit of any private person. Upon the dissolution or winding up of this corporation, its assets remaining after payment, or provision for payment, of all debts and liabilities of this corporation shall be distributed to a nonprofit fund, foundation, or corporation which is organized and operated exclusively for charitable, educational and/or religious purposes and which has established its tax exempt status under Internal Revenue Code section 501(c)(3), or the corresponding section of any future federal tax code, or shall be distributed to the federal government, or to a state or local government, for a public purpose.

SIXTH: The corporation shall not have any capital stock.

HIGHLY CONFIDENTIAL

OPENAI, INC.
EIN: 81-0861541

SEVENTH: The corporation shall not have any members.

EIGHTH: The name and mailing address of the incorporator are as follows:

Jonathan Levy
335 Pioneer Way
Mountain View, CA 94041

I, Jonathan Levy, for the purpose of forming a corporation under the laws of the State of Delaware, do make, file and record this Certificate, and do certify that the facts herein stated are true, and I have accordingly hereunto set my hand this

Executed on December 8, 2015.

**AUTHORIZED OFFICER**

/s/Jonathan Levy_____
Jonathan Levy

HIGHLY CONFIDENTIAL

OPENAI, INC.
EIN: 81-0861541

# BYLAWS

**of**

**OpenAI, INC.**

HIGHLY CONFIDENTIAL

MSFT_MUSK000036541

OPENAI, INC.
EIN: 81-0861541

# TABLE OF CONTENTS

Page

ARTICLE I – REGISTERED OFFICE AND PRINCIPAL PLACE OF BUSINESS ...................... 1

ARTICLE II – MEMBERSHIP ............................................................................................. 1
    Section 1.    Conditions of Membership ............................................................. 1
    Section 2.    Meetings and Actions of Members................................................. 1
    Section 3.    Nonliability.................................................................................... 2
    Section 3.    Nontransferability.......................................................................... 2

ARTICLE III – MEMBERSHIP RIGHTS ............................................................................. 2
    Section 1.    Voting Rights................................................................................. 2
    Section 2.    Inspection Rights........................................................................... 2
    Section 3.    Other Rights.................................................................................. 3

ARTICLE IV – BOARD OF DIRECTORS .......................................................................... 3
    Section 1.    Powers........................................................................................... 3
    Section 2.    Number of Directors....................................................................... 3
    Section 3.    Election and Term of Office of Directors....................................... 3
    Section 4.    Vacancies...................................................................................... 3
    Section 5.    Resignation and Removal .............................................................. 3
    Section 6.    Annual Board Meetings ................................................................. 3
    Section 7.    Special Meetings ........................................................................... 4
    Section 8.    Place of Meetings; Notice ............................................................. 4
    Section 9.    Waiver of Notice .......................................................................... 4
    Section 10.    Quorum........................................................................................ 4
    Section 11.    Action Without a Meeting.............................................................. 4
    Section 12.    Telephone or Electronic Meetings................................................. 4
    Section 13.    Reliance ....................................................................................... 5
    Section 14.    Inspection..................................................................................... 5
    Section 15.    Board Compensation ..................................................................... 5
    Section 16.    Executive Compensation................................................................ 5

ARTICLE V – COMMITTEES ............................................................................................ 5
    Section 1.    Board Committees......................................................................... 5
    Section 2.    Subcommittees ............................................................................. 6
    Section 3.    Advisory Committees.................................................................... 6
    Section 4.    Audit Committees ......................................................................... 6
    Section 5.    Meetings ....................................................................................... 7
        A.    Of Board Committees ................................................................... 7
        B.    Of Advisory Committees .............................................................. 7

ARTICLE VI – OFFICERS ................................................................................................. 7

HIGHLY CONFIDENTIAL

MSFT_MUSK000036542

OPENAI, INC.
EIN: 81-0861541

| | | |
|---|---|---|
| Section 1. | Officers | 7 |
| Section 2. | Election | 7 |
| Section 3. | Removal | 7 |
| Section 4. | Resignation | 7 |
| Section 5. | Vacancies | 7 |
| Section 6. | President | 8 |
| Section 7. | Secretary | 8 |
| Section 8. | Treasurer | 8 |

ARTICLE VII – INTERESTED DIRECTOR OR OFFICER TRANSACTIONS ........................... 8

| | | |
|---|---|---|
| Section 1. | Voidability of Transactions | 8 |
| Section 2. | Quorum | 9 |
| Section 3. | Conflict of Interest Policy | 9 |

ARTICLE VIII – INDEMNIFICATION AND INSURANCE ........................................... 9

| | | |
|---|---|---|
| Section 1. | Indemnification | 9 |

ARTICLE IX – GRANTS ADMINISTRATION ............................................................. 10

| | | |
|---|---|---|
| Section 1. | Purpose of Grants | 10 |
| Section 2. | Board of Directors Oversight | 10 |
| Section 3. | Refusal; Withdrawal | 11 |
| Section 4. | Accounting | 11 |
| Section 5. | Restrictions on Contributions | 11 |

ARTICLE X – MISCELLANEOUS ............................................................................ 11

| | | |
|---|---|---|
| Section 1. | Fiscal Year | 11 |
| Section 2. | Contracts, Notes, and Checks | 11 |
| Section 3. | Amendments | 11 |
| Section 4. | Governing Law | 11 |

HIGHLY CONFIDENTIAL

MSFT_MUSK000036543

OPENAI, INC.
EIN: 81-0861541

# BYLAWS
of
## OpenAI, INC.

## ARTICLE I
### REGISTERED OFFICE AND PRINCIPAL PLACE OF BUSINESS

This corporation shall have and maintain at all times within the State of Delaware a registered office at such place as may be specified in the Certificate of Incorporation or subsequently designated by the Board. Notwithstanding the foregoing, this corporation's principal place of business may be different from its registered office, and may be located from time to time at any place as may be designated by the Board of Directors of this corporation, including a place outside of the State of Delaware. This corporation shall keep at its principal place of business current copies of the Certificate of Incorporation and Bylaws of this corporation, and in accordance with these Bylaws, the Secretary shall furnish copies of the Certificate of Incorporation and Bylaws to the members or directors requesting to inspect them.

## ARTICLE II
### MEMBERSHIP

Section 1.    Conditions of Membership.   The conditions of membership shall be as follows: (1) the directors of this corporation then serving shall serve as the members of this corporation, (2) election to the Board shall constitute election to the membership of this corporation; and (3) the membership status of any director shall terminate immediately and without further corporate action upon such person's ceasing to be a director for any reason.

Section 2.    Meetings and Actions of Members.

(a)    Any action which may be taken at a meeting of the members, may be taken without a meeting, without prior notice, and without a vote if a consent or consents in writing, setting forth the action so taken, shall be dated and signed by members having not less than the minimum number of votes that would be necessary to authorize or take such action at a meeting at which all members having a right to vote thereon were present and voted, and shall be delivered to this corporation by delivery to its registered office in this State, its principal place of business, or its Secretary. Any such writing may be signed in counterparts. Notwithstanding the foregoing, members may demonstrate their consent to actions through an electronic transmission, provided that the electronic transmission is delivered with information from which this corporation can determine: (A) that the electronic transmission was transmitted by the member (or by a person or persons authorized to act for the member); and (B) the date on which such member or authorized person or persons transmitted such electronic transmission. Such electronic transmissions may be delivered to the principal place of business of this corporation or to this corporation's Secretary if either such delivery has been approved by resolution of the Board of Directors and is made in the manner provided in the resolution.

HIGHLY CONFIDENTIAL

(b)     Except as otherwise expressly provided in the Certificate of Incorporation or Bylaws or in the Delaware General Corporation Law, meetings and actions of the members shall be governed by and held and taken in accordance with the provisions of Article IV of these Bylaws concerning meetings and actions of the Board of Directors, with such changes in content as are necessary to substitute the members for the Board of Directors.

Section 3.    Nonliability.    The members shall not be liable for the debts, liabilities, or obligations of this corporation.

Section 4.    Nontransferability.    No member may transfer for value or otherwise his or her membership or any right arising therefrom.    Appointing successor members shall not be deemed to be a transfer.

## ARTICLE III
## MEMBERSHIP RIGHTS

Section 1.    Voting Rights.    Subject to these Bylaws, the members of this corporation shall have the following rights, as set forth in these Bylaws:

(a)     the exclusive right to elect any director and to set the number of authorized directors;

(b)     the exclusive right to remove a director;

(c)     the right to vote on any sale, lease, transfer, or other disposition of all or substantially all of the assets or properties of this corporation;

(d)     the right to vote on any merger of this corporation, but only to the extent required by the Delaware General Corporation Law;

(e)     the right to vote on dissolution of this corporation;

(f)     the exclusive right to vote on the amendment or repeal of these Bylaws;

(g)     the right to vote on any amendment to this corporation's Certificate of Incorporation; and

(h)     the right to vote on any other matters that may properly be presented to the members for a vote, pursuant to this corporation's Certificate of Incorporation, Bylaws, or action of the Board of Directors, or by operation of law.

Section 2.    Inspection Rights.    The right of the members to have access to the membership list of this corporation or its other books and records shall be governed by Section 220 of the Delaware General Corporation Law.

- 2 -

HIGHLY CONFIDENTIAL

OPENAI, INC.
EIN: 81-0861541

Section 3.    Other Rights.  In addition to the rights described in these Bylaws, the members of this corporation shall have any other rights afforded voting members under the Delaware General Corporation Law.

ARTICLE IV
BOARD OF DIRECTORS

Section 1.    Powers.  This corporation shall have powers to the full extent allowed by law.  All powers and activities of this corporation shall be exercised and managed by the Board of Directors of this corporation directly or, if delegated, under the ultimate direction of the Board.

Section 2.    Number of Directors.  The number of directors shall be not less than one nor more than seven, with the exact authorized number of directors to be fixed from time to time by the members.

Section 3.    Election and Term of Office of Directors.  Except for the initial directors appointed by the incorporator, directors shall be elected from time to time by a majority of the votes of the members of this corporation present in person or represented by proxy at the meeting and entitled to vote thereon.  The effective date of any election shall be as provided in the action of the members.  Directors shall be elected annually.  Each director shall hold office until such director's successor is elected and qualified or until such director's earlier death, resignation or removal.

Section 4.    Vacancies.  A vacancy shall be deemed to exist on the Board in the event that the actual number of directors is less than the authorized number for any reason.  Vacancies may be filled by the members for the unexpired portion of the term.  No reduction in the number of directors shall have the effect of removing any director prior to the expiration of his or her term of office.

Section 5.    Resignation and Removal.  Any director may resign at any time upon notice given in writing addressed to any director or officer of this corporation other than himself or herself or by electronic transmission addressed to any member of the Board or officer of this corporation other than himself or herself.  A resignation is effective when the resignation is delivered unless the resignation specifies a later effective date or an effective date determined upon the happening of an event or events.  Unless otherwise specified in that notice, the acceptance of the resignation shall not be necessary to make it effective.  Any director may be removed at any time by the members with or without cause or by the Board of Directors if and to the extent permitted in the Certificate of Incorporation.

Section 6.    Annual Board Meetings.  A meeting of the Board of Directors shall be held at least once a year.  Annual meetings shall be called by the President or any two directors; or, if only one director is serving, by the sole director, and noticed in accordance with Section 8 of this Article.

- 3 -

HIGHLY CONFIDENTIAL                                                    MSFT_MUSK000036546

OPENAI, INC.
EIN: 81-0861541

Section 7.    Special Meetings.  Special meetings of the Board may be called by the President or any two directors; or, if only one director is serving, by the sole director, and noticed in accordance with Section 8 of this Article.

Section 8.    Place of Meetings; Notice.  Meetings of the Board of Directors may be held at a location inside or outside of the state of Delaware, which is fixed by the Board of Directors or, in the case of a special meeting, by the person or persons calling the special meeting. Notice of the annual meeting and any special meetings of the Board of Directors shall state the date, place, and time of the meeting and shall be given to each director at least four days before any such meeting if given by first-class mail or forty-eight hours before any such meeting if given personally, by telephone, including a voice messaging system, or by other system of technology designed to record and communicate messages, by facsimile, or by electronic transmission.

Section 9.    Waiver of Notice.  Whenever notice is required to be given under any provision of these Bylaws, a written waiver, signed by the person entitled to notice, or a waiver by electronic transmission by the person entitled to notice, whether before or after the time stated therein, shall be deemed equivalent to notice.  Attendance of a person at a meeting shall constitute a waiver of notice of such meeting, except when the person attends a meeting for the express purpose of objecting, at the beginning of the meeting, to the transaction of any business because the meeting is not lawfully called or convened.  Neither the business to be transacted at, nor the purpose of, any regular or special meeting of the Board of Directors or committee of the Board of Directors need be specified in any written waiver of notice or any waiver by electronic transmission.  All waivers, consents, and approvals shall be filed with the corporate records or made a part of the minutes of the meeting.  Such filing shall be in paper form if the minutes are maintained in paper form and shall be in electronic form if the minutes are maintained in electronic form.

Section 10.    Quorum.  A majority of the total number of directors then in office shall constitute a quorum of the Board.  Except as otherwise required by the Certificate of Incorporation, these Bylaws or the Delaware General Corporation Law, the act of a majority of the directors present at a meeting at which a quorum is present shall be the act of the Board.  Each director shall be entitled to one vote.

Section 11.    Action Without a Meeting.  Any action required or permitted to be taken at any meeting of the Board of Directors may be taken without a meeting if all members of the Board consent thereto in writing or by electronic transmission, and if the writing or writings or electronic transmission or transmissions are filed with the minutes of proceedings of the Board. Such filing shall be in paper form if the minutes are maintained in paper form and shall be in electronic form if the minutes are maintained in electronic form.

Section 12.    Telephone or Electronic Meetings.  Directors may participate in a meeting through use of conference telephones, electronic video screen, or similar communications equipment so long as all directors participating in such meeting can hear one another. Participation in a meeting pursuant to this Section constitutes presence in person at such meeting.

- 4 -

HIGHLY CONFIDENTIAL

MSFT_MUSK000036547

OPENAI, INC.
EIN: 81-0861541

Section 13. <u>Reliance</u>. Any director or member of a committee of the Board shall, in the performance of his or her duties, be fully protected in relying in good faith upon the records of this corporation and upon such information, opinions, reports, or statements presented to this corporation by any of this corporation's officers or employees, or committees of the Board of Directors, or by any other person as to matters the director reasonably believes are within such other person's professional or expert competence and who has been selected with reasonable care by or on behalf of this corporation.

Section 14. <u>Inspection</u>. Every director shall have the right to examine this corporation's list of members and its other books and records for a purpose reasonably related to the director's position as a director.

Section 15. <u>Board Compensation</u>. The Board of Directors may authorize, by resolution, the payment to a director of a reasonable fee for services and expenses as a director and for attending meetings of the Board and Board Committees. The Board may authorize the advance or reimbursement of actual reasonable expenses incurred by a director in carrying out his or her duties as a director.

Section 16. <u>Executive Compensation</u>. For any tax year in which this corporation is required to register and file reports with the Attorney General of the State of California, the Board of Directors (or a Board Committee) shall review any compensation packages (including all benefits) of the President or the chief executive officer and the Treasurer or chief financial officer, regardless of job title, and shall approve such compensation only after determining that the compensation is just and reasonable. This review and approval shall occur when such officer is hired, when the term of employment of such officer is renewed or extended, and when the compensation of such officer is modified, unless the modification applies to substantially all of the employees of this corporation.

## ARTICLE V
## COMMITTEES

Section 1. <u>Board Committees</u>. The Board of Directors may, by resolution adopted by a majority of the directors then in office, create any number of Board Committees, each consisting of one or more directors. The Board may designate one or more directors as alternate members of any committee, who may replace any absent or disqualified member at any meeting of the committee. Appointments to and removals from any Board Committee shall be made by any method determined by a majority of the directors then in office. Any such committee, to the extent provided in the resolution of the Board of Directors, shall have and may exercise all the powers and authority of the Board of Directors in the management of the business and affairs of this corporation except that no such committee shall have the power or authority to:

(a)    approve or adopt, or recommend to the members, any action or matter (other than the election or removal of directors) expressly required by these Bylaws, the Certificate of Incorporation, or the Delaware General Corporation Law to be submitted to members for approval;

- 5 -

HIGHLY CONFIDENTIAL                                                                    MSFT_MUSK000036548

OPENAI, INC.
EIN: 81-0861541

(b)    amend or repeal any resolution of the Board of Directors which by its express terms is not so amendable or repealable;

(c)    adopt, amend, or repeal any bylaw of this corporation; or

(d)    adopt amendments to the Certificate of Incorporation of this corporation.

Section 2.    Subcommittees. Unless otherwise provided in the resolution of the Board of Directors designating the Board committee, such committee may create one or more subcommittees, each subcommittee to consist of one or more members of the committee, and delegate to a subcommittee any or all of the powers and authority of the committee.

Section 3.    Advisory Committees. The Board of Directors may establish one or more Advisory Committees to the Board. The members of any Advisory Committee may consist of directors or non-directors and may be appointed as the Board determines.    Advisory committees may not exercise the authority of the Board to make decisions on behalf of this corporation, but shall be restricted to making recommendations to the Board or Board Committees, and implementing Board or Board Committee decisions and policies under the supervision and control of the Board or Board Committee.

Section 4.    Audit Committee. For any tax year in which this corporation is required to register and file reports with the Attorney General of the State of California and has gross revenues of $2 million or more, this corporation shall have an Audit Committee whose members shall be appointed by the Board of Directors, and who may include both directors and non-directors, subject to the following limitations: (a) members of the finance committee, if any, shall constitute less than one-half of the membership of the Audit Committee; (b) the chair of the Audit Committee may not be a member of the Finance Committee, if any; (c) the Audit Committee may not include any member of the staff, including the President or chief executive officer and Treasurer or chief financial officer; (d) the Audit Committee may not include any person who has a material financial interest in any entity doing business with this corporation; and (e) Audit Committee members who are not directors may not receive compensation greater than the compensation paid to directors for their Board service. The Audit Committee shall: (1) recommend to the full Board of Directors for approval the retention and, when appropriate, the termination of an independent certified public accountant to serve as auditor, (2) subject to the approval of the full Board, negotiate the compensation of the auditor on behalf of the Board, (3) confer with the auditor to satisfy the Audit Committee members that the financial affairs of this corporation are in order, (4) review and determine whether to accept the audit, and (5) approve performance of any non-audit services provided to this corporation by the auditor's firm.

- 6 -

HIGHLY CONFIDENTIAL

MSFT_MUSK000036549

OPENAI, INC.
EIN: 81-0861541

Section 5.    Meetings.

A.    Of Board Committees. Meetings and actions of Board Committees or subcommittees thereof shall be governed by and held and taken in accordance with the provisions of Article IV of these Bylaws concerning meetings and actions of the Board of Directors, with such changes in the content of those Bylaws as are necessary to substitute the Board Committee and its members for the Board of Directors. Minutes shall be kept of each meeting of any Board Committee and shall be filed with the corporate records.

B.    Of Advisory Committees. Subject to the authority of the Board of Directors, Advisory Committees shall determine their own meeting rules and whether minutes shall be kept.

The Board of Directors may adopt rules for the governance of any Board or Advisory Committee not inconsistent with the provisions of these Bylaws.

## ARTICLE VI
## OFFICERS

Section 1.    Officers. The officers of this corporation shall be a President a Secretary, and a Treasurer. This corporation may also have, at the discretion of the Board of Directors, such other officers as may be appointed by the Board of Directors. Any number of offices may be held by the same person.

Section 2.    Election. The officers of this corporation shall be elected annually by the Board of Directors, and each shall serve at the pleasure of the Board, subject to the rights, if any, of an officer under any contract of employment. Each officer shall hold office until his or her successor is elected and qualified or until his or her earlier resignation or removal.

Section 3.    Removal. Subject to the rights, if any, of an officer under any contract of employment, any officer may be removed, with or without cause, by the Board of Directors or by an officer on whom such power of removal may be conferred by the Board of Directors.

Section 4.    Resignation. Any officer may resign at any time by giving written notice to any member of the Board or officer of this corporation other than himself or herself or by electronic transmission addressed to any member of the Board or officer of this corporation other than himself or herself. A resignation is effective when delivered unless the resignation specifies a later effective date or an effective date determined upon the happening of an event or events, and unless otherwise specified in that notice, the acceptance of the resignation shall not be necessary to make it effective. Any resignation is without prejudice to the rights, if any, of this corporation under any contract to which the officer is a party.

Section 5.    Vacancies. A vacancy in any office for any reason shall be filled in the same manner as these Bylaws provide for election to that office.

HIGHLY CONFIDENTIAL

MSFT_MUSK000036550

OPENAI, INC.
EIN: 81-0861541

Section 6.    President.    The President shall be the chief executive officer of this corporation and shall, subject to control of the Board, generally supervise, direct, and control the business and other officers of this corporation. The President shall preside at all meetings of the Board of Directors and shall have the general powers and duties of management usually vested in the office of President of a corporation and shall have such other powers and duties as may be prescribed by the Board or these Bylaws.

Section 7.    Secretary.    The Secretary shall supervise the keeping of a full and complete record of the proceedings of the Board of Directors, its committees and the membership of this corporation, shall supervise the giving of such notices as may be proper or necessary, shall supervise the keeping of the minute books of this corporation, and shall have such other powers and duties as may be prescribed by the Board or these Bylaws.

Section 8.    Treasurer.    The Treasurer shall supervise the charge and custody of all funds of this corporation, the deposit of such funds in the manner prescribed by the Board of Directors, and the keeping and maintaining of adequate and correct accounts of this corporation's properties and business transactions, shall render reports and accountings as required, and shall have such other powers and duties as may be prescribed by the Board or these Bylaws.

## ARTICLE VII
## INTERESTED DIRECTOR OR OFFICER TRANSACTIONS

Section 1.    Voidability of Transactions.    No contract or transaction between this corporation and:

(a) any of its directors or officers,

(b) any organization in which one or more of this corporation's directors or officers has or have a financial interest, or

(c) any organization for which a director or officer of this corporation also serves as a director or officer,

shall be void or voidable solely for that reason, or solely because the director or officer is present at or participates in the meeting of the Board or committee of the Board which authorizes the contract or transaction, or solely because any such director's or officer's vote was counted for such purpose, if:

(i) The material facts as to the director's or officer's relationship or interest, and as to the contract or transaction, are disclosed or are known to the Board or the committee, and the Board or committee in good faith authorizes the contract or transaction by the affirmative votes of a majority of the disinterested directors, even though the disinterested directors be less than a quorum; or

- 8 -

HIGHLY CONFIDENTIAL                                                                                    MSFT_MUSK000036551

OPENAI, INC.
EIN: 81-0861541

(ii) The contract or transaction is fair to this corporation as of the time it is authorized, approved, or ratified by the Board or committee.

Section 2.    Quorum.    Common or interested directors may be counted in determining the presence of a quorum at a meeting of the Board or of a committee which authorizes a contract or transaction described in Section 1 of this Article.

Section 3.    Conflict of Interest Policy.    Each director and officer  of this corporation shall comply with any policies of this corporation regarding conflicts of interest.

## ARTICLE VIII
## INDEMNIFICATION AND INSURANCE

Section 1.    Indemnification. To the fullest extent permitted by law:

(a)    This corporation may indemnify any Indemnified Person, for and against all expenses (including attorneys' fees), judgments, Fines and amounts paid in settlement actually and reasonably incurred by that Indemnified Person in connection with that Action. Notwithstanding the foregoing, this corporation may indemnify any Indemnified Person seeking indemnification in connection with an Action (or part of an Action) initiated by that person only if that Action (or part of that Action) was authorized by the Board.

(b)    This corporation may pay expenses as incurred by any Indemnified Person in connection with any Action; *provided, that,* if these expenses are to be paid in advance of the final disposition of an Action, then the payment of expenses will be made only upon delivery to this corporation of an undertaking, by or on behalf of the person, to repay all amounts so advanced if it is ultimately determined that the person is not entitled to be an Indemnified Person or otherwise.

(c)    This corporation may purchase and maintain insurance on behalf of any Indemnified Person against any liability asserted against that person, whether or not this corporation would have the power to indemnify the person against that liability under the provisions of this Article VIII or otherwise.

(d)    The provisions of this Article VIII will be applicable to all Actions made or commenced after the adoption of this Article VIII, whether arising from acts or omissions occurring before or after its adoption. The provisions of this Article VIII will be deemed to be a contract between this corporation and each director or officer who serves in that capacity at any time while this Article and the relevant provisions of the laws of the State of Delaware and other applicable law, if any, are in effect, and any repeal or modification of this Article VIII will not adversely affect any right or protection of any Indemnified Person in respect of any act or omission occurring prior to the time of the repeal or modification.

(e)    If any provision of this Article VIII will be found to be invalid or limited in application by reason of any law or regulation, that finding will not affect the validity of the remaining provisions of this Article VIII. The rights of indemnification provided in this Article

- 9 -

HIGHLY CONFIDENTIAL

MSFT_MUSK000036552

OPENAI, INC.
EIN: 81-0861541

VIII will neither be exclusive of, nor be deemed in limitation of, any rights to which any person described in subsection (a) of this Article VIII may otherwise be entitled or permitted by contract, the Certificate of Incorporation, vote of the Board, or otherwise, or as a matter of law, both as to actions in the person's official capacity and actions in any other capacity while holding that office, it being the policy of this corporation that indemnification of any Indemnified Person will be made to the fullest extent permitted by law.

(f)    This corporation may, by vote of the Board, provide indemnification and advancement of expenses to employees and agents of this corporation with the same scope and effect as the foregoing indemnification of and advancement of expenses to directors and officers.

(g)    Definitions.  As used in this Article VIII, the following terms will have the following meanings:

"Action" means any threatened, pending, or completed action, suit, proceeding or inquiry (brought in the right of this corporation or otherwise), whether civil, criminal, administrative, or investigative, and whether formal or informal, including appeals.

"Eligible Person" means: (1) any individual who is a former or current director or officer of this corporation; (2) any former or current director or officer of this corporation, who while a director or officer of this corporation, is or was serving at the request of this corporation as a director, officer, partner, trustee, employee, or agent of another corporation, partnership, joint venture, trust, or other enterprise, which includes, without limitation, employee benefit plans; and (3) the foregoing persons' heirs, executors, guardians, administrators, assigns, and any other legal representatives.

"Fines" includes, without limitation, any excise taxes assessed on a person with respect to an employee benefit plan.

"Indemnified Person" means: any Eligible Person who was, or is, a party, or is threatened to be made a party to, or is involved in (including as a witness), any Action by reason of the fact that the person is an Eligible Person.

## ARTICLE IX
## GRANTS ADMINISTRATION

Section 1.    Purpose of Grants.  This corporation shall have the power to make grants and contributions and to render other financial assistance for the purposes expressed in this corporation's Certificate.

Section 2.    Board of Directors Oversight.    The Board, or any person or persons on whom such power may be conferred by the Board, shall make policy with regard to grants.  The Board shall retain ultimate control over all grants, contributions, and other financial assistance given by this corporation.

- 10 -

HIGHLY CONFIDENTIAL

OPENAI, INC.
EIN: 81-0861541

Section 3.    Refusal; Withdrawal.  The Board, in its absolute discretion, shall have the right to refuse to make any grants or contributions, or to render other financial assistance, for any or all of the purposes for which the funds are requested.  In addition, the Board, in its absolute discretion, shall have the right to withdraw its approval of any grant at any time and use the funds for other purposes within the scope of the purposes expressed in the Certificate, subject to any charitable trust imposed on such funds and any rights of third parties under any contract relating to such grant.

Section 4.    Accounting.  The Board shall determine under what circumstances to require that grantees furnish a periodic accounting to show that the funds granted by this corporation were expended for the purposes that were approved by the Board.

Section 5.    Restrictions on Contributions.  Unless otherwise determined by resolution of the Board in particular cases, this corporation shall retain complete control and discretion over the use of all contributions it receives, and all contributions received by this corporation from solicitations for specific grants shall be regarded as for the use of this corporation and not for any particular organization or individual mentioned in the solicitation.  This corporation may accept contributions earmarked by the donor exclusively for allocation to one or more foreign organizations or individuals only if the Board of this corporation:  (a) has determined that the specific charitable activity for which the donation was made furthers this corporation's exempt purposes; (b) has approved in advance disbursements of funds to support such charitable activity; (c) retains discretion and control as to the use of the contributions received by this corporation; and (d) exercises appropriate supervision to ensure funds are actually spent for the intended purposes.

## ARTICLE IX
## MISCELLANEOUS

Section 1.    Fiscal Year.  The fiscal year of this corporation shall end each year on December 31.

Section 2.    Contracts, Notes, and Checks.  All contracts entered into on behalf of this corporation must be authorized by the Board of Directors or any person or persons on whom such power may be conferred by the Board, and, except as otherwise provided by law, every check, draft, promissory note, money order, or other evidence of indebtedness of this corporation shall be signed by any person or person on whom such power may be conferred by the Board.

Section 3.    Amendments.  Only the members may amend or repeal the Bylaws of this corporation.

Section 4.    Governing Law.  These Bylaws shall be construed and interpreted in accordance with the laws of the State of Delaware as amended from time to time, so as to give full effect and validity to the intent and meaning of these Bylaws.

- 11 -

HIGHLY CONFIDENTIAL

MSFT_MUSK000036554

**OpenAI**
**EIN: 81-0861541**
335 Pioneer Way
Mountain View, CA 94041

## PROPOSED BUDGET

| | Notes | 2015 | 2016 | 2017 | 2018 | Total |
|---|---|---|---|---|---|---|
| **INCOME** | | | | | | |
| Gifts, grants, and contributions: | | | | | | |
| | | - | 12,000,000 | 25,000,000 | 25,000,000 | 62,000,000 |
| **Total Income** | | - | 12,000,000 | 25,000,000 | 25,000,000 | 62,000,000 |
| | | | | | | |
| **EXPENSES** | | | | | | |
| Salaries and wages: | | - | - | - | - | - |
| Directors and officers | | - | 110,000 | 225,000 | 225,000 | 560,000 |
| Other employees | | - | 7,000,000 | 15,000,000 | 15,000,000 | 37,000,000 |
| *Subtotal salary and wages* | | - | 7,110,000 | 15,225,000 | 15,225,000 | 37,560,000 |
| Payroll taxes and benefits (20%) | | - | 1,422,000 | 3,045,000 | 3,045,000 | 7,512,000 |
| Occupancy | | - | 650,000 | 650,000 | 650,000 | 1,950,000 |
| Supplies and Equipment | | - | 400,000 | 800,000 | 800,000 | 2,000,000 |
| Meals | | - | 150,000 | 300,000 | 300,000 | 750,000 |
| IT Expenses | | - | 100,000 | 1,000,000 | 1,000,000 | 2,100,000 |
| Professional Services | | - | 50,000 | 100,000 | 100,000 | 250,000 |
| Travel | | - | 50,000 | 100,000 | 100,000 | 250,000 |
| Insurance | | - | 30,000 | 50,000 | 50,000 | 130,000 |
| Other / Management Reserve | | - | 1,200,000 | 2,500,000 | 2,500,000 | 6,200,000 |
| **Total Expenses** | | - | 11,162,000 | 23,770,000 | 23,770,000 | 58,702,000 |
| | | | | | | |
| **NET INCOME** | | $ - | $ 838,000 | $ 1,230,000 | $ 1,230,000 | $ 3,298,000 |

00816892.XLSX

HIGHLY CONFIDENTIAL

MSFT_MUSK000036555

**OpenAI, Inc.**
335 Pioneer Way
Mountain View, California 94041
**EIN: 81-0861541**

## SUPPLEMENTAL RESPONSES TO FORM 1023

### Part I: Identification of Applicant.

     *Question 7: Authorized Representative.* The names, firm, and address of the authorized representatives of OpenAI, Inc. ("OpenAI") are:

          Ingrid Mittermaier and Jorge Lopez
          Adler & Colvin
          235 Montgomery Street, Suite 1220
          San Francisco, California 94104

We attach a completed **Form 2848**.

### Part II: Organizational Structure.

     *Question 1: Corporation.* We attach a certified copy of the Certificate of Incorporation of OpenAI, filed with the Secretary of State of Delaware on December 8, 2015.

     *Question 5: Bylaws.* We attach a copy of the Bylaws of OpenAI, as adopted on January 3, 2016.

### Part IV: Narrative Description of Past, Present, and Planned Activities.

     **Background and Purposes.**

     OpenAI is a nonprofit artificial intelligence ("AI") scientific research organization. Its goal is to engage in research activities that advance digital intelligence in the way that is most likely to benefit humanity as a whole, unconstrained by a need to generate financial return. AI technology will help shape the 21st century, and OpenAI wants to help the world build safe AI technology and ensure that AI's benefits are as widely and evenly distributed as possible. To that end, OpenAI hopes to build AI as part of a larger community, and wants to openly share its plans and capabilities along the way.

     OpenAI is working on several research projects and fundamental research that all have shared cores, so progress on any is likely to benefit the others. Below is a list of several of OpenAI's current research projects. Each project captures a different aspect of goal-solving and is intended to advance the state of the art of AI technology. These projects are still in the initial stages, and the details may change as OpenAI obtains additional data. OpenAI also expects to add new research projects over time. OpenAI does not plan to play any role in developing commercial products or equipment. It intends to make its research freely available to the public on a nondiscriminatory basis.

{00827757.DOCX; 4}

HIGHLY CONFIDENTIAL                                       MSFT_MUSK000036556

**OpenAI**
**EIN: 81-0861541**
Supplemental Responses to Form 1023
Page 2

## Current Scientific Research Projects.

     ***Goal: Build an agent with useful natural language understanding.*** OpenAI plans to build an agent that can perform a complex task specified by language, and ask for clarification about the task if it is ambiguous. Today, there are promising algorithms for supervised language tasks such as question answering, syntactic parsing and machine translation but there are no algorithms for more advanced linguistic goals, such as the ability to carry on a conversation, the ability to fully understand a document, and the ability to follow complex instructions in natural language. OpenAI expects to develop new learning algorithms and paradigms to tackle these problems.

     ***Goal: Solve a wide variety of games using a single agent.*** OpenAI aims to train an agent capable enough to solve any game in the initial metric. Games are virtual mini-worlds that are very diverse, and learning to play games quickly and well will require significant advances in generative models and reinforcement learning. (OpenAI is inspired by the pioneering work of DeepMind, which has produced impressive results in this area in the past few years.)

     ***Goal: Build a household robot.*** OpenAI is working to enable a physical robot (off-the-shelf; not manufactured by OpenAI) to perform basic housework. There are existing techniques for specific tasks, but OpenAI believes that learning algorithms can eventually be made reliable enough to create a general-purpose robot. More generally, robotics is a good testbed for many challenges in AI.

---

**Part V: Compensation and Other Financial Arrangements with Key Personnel.**

---

     *Question 1a: Compensation and Other Information Regarding Officers and Directors.*

| Name of Director/Officer | Title | Compensation |
|---|---|---|
| Elon Musk | Director | None |
| Sam Altman | Director | None |
| Chris Clark | Director/President/COO | $50,000 |
| Jonathan Levy | Secretary/Treasurer | None |

     The mailing address for all officers and directors is: 335 Pioneer Way, Mountain View, California 94041.

{00827757.DOCX; 4}

           MSFT_MUSK000036557

OpenAI
EIN: 81-0861541
Supplemental Responses to Form 1023
Page 3

### *Question 1b: Compensation and Other Information Regarding Employees.*

| Name of Employee | Title | Compensation |
|---|---|---|
| Ilya Sutskever | Research Director | $1,945,967 |
| Ian Goodfellow | Technical Staff | $875,000 |
| Pieter Abbeel | Technical Staff | $550,000 |
| Man Wai Vicki Cheung | Technical Staff | $307,526 |
| John Schulman | Technical Staff | $284,610 |

Note the compensation listed above for each employee includes a fixed bonus payment. Fixed bonuses were negotiated at arm's length and paid to recruit these top scientific researchers from other, more lucrative positions at prominent technology companies.

The mailing address for all employees is: 335 Pioneer Way, Mountain View, California 94041.

### *Question 2a/c: Family/Business Relationships with/among Key Personnel.*

Mr. Altman, director, and Mr. Levy, Secretary and Treasurer, are both employed by Y Combinator. Mr. Sutskever, Research Director, has a business interest in Y Combinator.

### *Question 3a: Qualifications and Duties of Directors and Officers.*

#### *i.    Chris Clark, President, Director, and Chief Operating Officer.*

*Duties and Hours.* As President, Mr. Clark presides at all meetings of the Board of Directors and, subject to control of the Board, generally supervises, directs, and controls the business and other officers of the corporation. Mr. Clark has the general powers and duties of management usually vested in the office of president of a corporation and has such other powers and duties as may be prescribed by the Board or the Bylaws. He serves as many hours as are necessary to complete his responsibilities. As Chief Operating Officer ("COO"), Mr. Clark oversees the day-to-day operations of OpenAI and is responsible for all non-technical activities. Mr. Clark is compensated for his services as COO and spends 20 hours a week to accomplish his duties as COO.

*Qualifications.* Chris Clark was Vice President of North America at Canonical, maker of the world's most popular open source operating system (Ubuntu). More recently, he was Mayor of Mountain View and still serves on the city council. Mr. Clark has a BA in Political Science from Stanford University.

For duties and hours of directors, see paragraph v below.

{00827757.DOCX; 4}

HIGHLY CONFIDENTIAL

MSFT_MUSK000036558

**OpenAI**
**EIN: 81-0861541**
Supplemental Responses to Form 1023
Page 4

### ii.    *Jonathan Levy, Secretary and Treasurer.*

*Duties and Hours.* As Secretary, Mr. Levy supervises the keeping of a full and complete record of the proceedings of the Board and its committees, the giving of such notices as may be proper or necessary, and the keeping of the minute books of the corporation, among other duties as are usually vested in the office of Secretary. He has such other powers and duties as may be prescribed by the Board or the Bylaws. Mr. Levy serves as many hours as necessary to complete his responsibilities as Secretary. As Treasurer, Mr. Levy supervises the charge and custody of all funds of the corporation, the deposit of such funds in the manner prescribed by the Board of Directors, and the keeping and maintaining of adequate and correct accounts of the corporation's properties and business transactions. He renders reports and accountings as required, and has such other powers and duties as may be prescribed by the Board or the Bylaws. Mr. Levy serves as many hours as necessary to complete his responsibilities as Treasurer.

*Qualifications.* Mr. Levy previously counseled public and private technology companies as an attorney for Wilson Sonsini Goodrich and Rosati. He also ran ThinkEquity's private placement department and worked as a Managing Director at Merriman Curhan & Ford. Mr. Levy earned a JD from the University of Michigan Law School, and a BA in English Literature and Religious Studies from Wesleyan University.

### iii.    *Elon Musk, Director.*

*Duties and Hours.* Please see paragraph v below.

*Qualifications.* Mr. Musk is a South African-born Canadian-American business magnate, engineer and inventor. He is the founder, CEO and CTO of SpaceX; co-founder, CEO and product architect of Tesla Motors; co-founder and chairman of SolarCity, co-founder of Zip2; and co-founder of PayPal.

### iv.    *Sam Altman, Director.*

*Duties and Hours.* Please see paragraph v below.

*Qualifications.* Mr. Altman is an American entrepreneur, programmer, venture capitalist and blogger. He is the president of Y Combinator and was cofounder and CEO of Loopt, which was funded by Y Combinator in 2005 and acquired by Green Dot in 2012. At Green Dot, he was the CTO and is now on the Board of Directors. Mr. Altman also founded Hydrazine Capital. He studied computer science at Stanford, and while there worked in the AI lab.

**OpenAI**
**EIN: 81-0861541**
Supplemental Responses to Form 1023
Page 5

### v.    *Duties and Hours of Directors.*

Directors of OpenAI are expected to meet at least once per year and as often as additionally necessary to manage the corporation and fulfill their fiduciary duties. Under Delaware corporate law governing nonprofit corporations like OpenAI, the Board is responsible for overall direction and management of OpenAI's activities and affairs, although the Board is permitted to delegate with supervision. Each individual director owes fiduciary duties to OpenAI to act in good faith in what the director believes to be OpenAI's best interests, with such care, including reasonable inquiry, as an ordinarily prudent person in a like position would use under similar circumstances. Directors generally work as many hours as necessary to accomplish their duties.

### *Question 3a (cont): Qualifications and duties of Key Personnel.*

Note paragraphs vi through xi list OpenAI's key personnel and describe the responsibilities and qualifications of each. OpenAI's research team consists of preeminent scientists who are uniquely qualified to oversee and conduct OpenAI's scientific research activities. AI experts are in extremely high demand, so that OpenAI has to compete with top technology companies such as Google, Amazon, and Facebook to retain their services. One of the reasons OpenAI was successful in competing with these technology companies is that OpenAI's experts are committed to OpenAI's nonprofit model and mission-driven research efforts.

### vi.    *Ilya Sutskever, Research Director.*

*Duties and Hours.* As Research Director, Mr. Sutskever oversees all of OpenAI's research activities and manages OpenAI's team of scientists. Mr. Sutskever is a full-time employee.

*Qualifications.* Mr. Sutskever is one of the world experts in machine learning. He holds a PhD from the University of Toronto and has authored more than 40 research papers on machine learning. He co-founded DNNresearch and spent three years working on artificial intelligence at the Google Brain team.

### vii.    *Ian Goodfellow, Technical Staff.*

*Duties and Hours.* Please see paragraph xi below.

*Qualifications.* Mr. Goodfellow received a BS and MS in Computer Science from Stanford and a PhD specializing in machine learning from the Universite de Montreal. He has received various awards, including a 2013 Google PhD Fellowship in Deep Learning. He previously worked on artificial intelligence as a member of the Google Brain team.

{00827757.DOCX; 4}

HIGHLY CONFIDENTIAL                                    MSFT_MUSK000036560

**OpenAI**
**EIN: 81-0861541**
Supplemental Responses to Form 1023
Page 6

#### viii.    *Pieter Abbeel, Technical Staff.*

*Duties and Hours.* Please see paragraph xi below.

*Qualifications.* Mr. Abbeel is a professor of computer science at the University of California Berkeley and an expert on machine learning. He has taken a leave of absence from Berkeley to contribute at OpenAI. Mr. Abbeel received a BS/MS in Electrical Engineering from KU Leuven (Belgium) and received his PhD in Computer Science from Stanford University in 2008.

#### ix.    *Man Wai Vicki Cheung, Technical Staff.*

*Duties and Hours.* Please see paragraph xi below.

*Qualifications.* Ms. Cheung was a staff software engineer and engineering lead at TrueVault and a senior software engineer at Duolingo. She holds a BS in Computer Science from Carnegie Mellon University.

#### x.    *John Schulman, Technical Staff.*

*Duties and Hours.* Please see paragraph xi below.

*Qualifications.* Mr. Schulman received a PhD from the University of California Berkeley, specializing in deep reinforcement learning. He has authored more than 10 research papers on machine learning.

#### xi.    *Duties and Hours of Technical Staff.*

Members of the technical staff at OpenAI work on advancing the state of the art of artificial intelligence technology by supporting and performing computer science research and development, particularly in the field of machine learning. The goal of the position is to support the creation of research papers and software that benefit society by improving the state of the art of what is possible with artificial intelligence. This work is conducted under the oversight of OpenAI's Research Director and other staff and generally requires collaborating with other research scientists and software engineers at OpenAI and around the world. Technical staff are full-time employees.

**Question 5a:  Conflict of Interest Policy.** The Board of Directors has adopted the attached Conflict of Interest Policy.

**Question 6a/b:  Non-fixed Payments of Compensation.** To recruit and retain leadership and research staff that might otherwise be unavailable, OpenAI has plans for payment

{00827757.DOCX; 4}

HIGHLY CONFIDENTIAL

**OpenAI**
**EIN: 81-0861541**
Supplemental Responses to Form 1023
Page 7

of non-fixed compensation in the form of a performance-based bonus plan. To ensure that any such arrangement, if approved by the Board of Directors, will not result in unreasonably high compensation, OpenAI plans to conduct compensation studies, include safeguards such as a ceiling or reasonable maximum to protect against substantial windfalls or projection errors, and establish performance metrics that ensure employees are compensated based on services they perform for the benefit of OpenAI. Details of such a bonus plan have not yet been developed. (Note: currently, OpenAI pays fixed bonuses as a recruiting mechanism in the highly-competitive field of AI research).

*Question 8a-f: Agreements with Officers/Directors.* To pay for initial operating costs and expenses, OpenAI entered into an arms-length line of credit agreement (the "Agreement") with its director, Sam Altman. The Board of Directors (excluding Mr. Altman) approved the terms of the loan as being in the best interests of OpenAI. The independent members of the Board of Directors relied on their personal and professional expertise to determine that the interest rate and terms of the loan were very favorable to OpenAI. We attach an executed copy of the Agreement.

---

**Part VIII: Specific Activities.**

*Question 2a: Influencing Legislation.* Although OpenAI has no immediate plans to do so, it may in the future engage in legislative lobbying, as permitted by law, in order to further its exempt purposes. If OpenAI engages in legislative lobbying, OpenAI will spend no more than the ceiling amounts permitted under Code Section 501(h) and regulations thereunder on direct lobbying and grassroots lobbying.

*Question 2b: Section 501(h) Election.* We attach a completed **Form 5768** for filing with this application.

*Question 4a: Fundraising Programs.* OpenAI is currently in the initial stages of developing a fundraising plan. OpenAI anticipates being supported by a broad variety of individual donors and governmental and institutional grantors in the United States that support OpenAI's scientific research activities. Initially, the directors of OpenAI intend to make use of their extensive personal networks to solicit charitable contributions face-to-face, or by individualized mail, email, or telephone. As OpenAI grows, the fundraising tasks will likely be taken over by staff.

{00827757.DOCX; 4}

HIGHLY CONFIDENTIAL                                    MSFT_MUSK000036562

**OpenAI**
**EIN: 81-0861541**
Supplemental Responses to Form 1023
Page 8

*Question 4d: Locales Where Fundraising Conducted.* OpenAI has no plans to limit its fundraising activities by geographic area. OpenAI will in all cases comply with applicable laws governing charitable solicitations. OpenAI has no plans either to fundraise for other organizations, or to allow other organizations to fundraise on its behalf, in its name. OpenAI may, however, receive donations from individuals via the websites of other organizations, including through online giving sites or online workplace giving programs.

*Question 10: Intellectual Property.* Regularly sharing the results of its research with the general public is central to the mission of OpenAI. OpenAI will regularly release its research results on its website and share software it has developed with the world under open source software licenses. OpenAI intends to retain the ownership of any intellectual property it develops. OpenAI might apply for patents on some of the technology it develops and make the intellectual property available only to parties that agree to make AI-related patents they may have available for the general public.

*Question 11: Non-cash Contributions Accepted.* OpenAI has no current plans to solicit or accept contributions of closely-held securities, real property, intellectual property, licenses, royalties, vehicles, or collectibles. If offered such assets, however, the Board of Directors would evaluate the possible use to the organization's mission of any proffered in-kind gift, the risks and difficulties associated with holding or liquidating it, and any donor restrictions associated with the gift, on a case-by-case basis before deciding to accept any such gift. OpenAI would expect to liquidate all in-kind gifts promptly, unless they are useful in its operations or unless liquidation is prohibited by the donor. Should OpenAI decide to accept any such gift, OpenAI will ensure that the gift is properly documented, including any donor-imposed conditions or restrictions. OpenAI will not accept any in-kind gift subject to donor-imposed conditions or restrictions unless the Board of Directors determines that such conditions or restrictions are consistent with OpenAI's charitable purposes and programs.

*Question 12a: Operations in Foreign Countries.* At this time, OpenAI has no foreign operations; however, it may from time to time work with researchers located outside of the United States. If it works with foreign researchers, OpenAI will comply with all tax and other requirements relevant to working with foreign staff.

---

**Part IX:  Financial Data.**

---

*Question 19: Substantial changes in assets.* OpenAI's most recently completed tax year was 2015; however, it had no assets at the end of the 2015. Since then, OpenAI has received assets to begin its operations.

HIGHLY CONFIDENTIAL                                                          MSFT_MUSK000036563

OPENAI, INC.
EIN: 81-0861541

## OPENAI
## CONFLICT OF INTEREST POLICY

### Article I: Purpose

This conflict of interest policy is designed to foster public confidence in the integrity of OpenAI, Inc. (the "Charity") and to protect the Charity's interests when it is contemplating entering a transaction that might benefit certain Charity insiders and related persons.

### Article II: Definitions

Insider. "Insider" means a person with substantial influence over the Charity. The following persons are "Insiders" for purposes of this policy:

1. Each member of the Board of Directors

2. Corporate officers (including the President, Secretary, and Treasurer) and any person with equivalent responsibilities (whether or not the person is an officer of the Charity under the Charity's Bylaws or the Delaware General Corporation Law ("DCGL")).

3. Any other person whom the Board, based on facts and circumstances, determines has substantial influence over the Charity. Such persons may include a founder of or a substantial contributor to the Charity, a person with managerial authority over the Charity, or a person with control over a significant portion of the Charity's budget.

4. Any person who met any of the above definitions at any time during the five years before the proposed transaction.

Disqualified Person. "Disqualified Person" includes Insiders and any person described in either of the following two categories:

5. Spouses, siblings, ancestors, children, grandchildren, great-grandchildren, and the spouses of siblings, children, grandchildren, and great-grandchildren of any Insider.

6. An entity in which any combination of persons listed in categories 1 – 5 above holds more than 35 percent of the combined voting power, if a business corporation; profits interests, if a partnership; or beneficial interest, if a trust or estate.

Interest. Any *financial* commitment, investment, obligation, or relationship, or economic benefit, between a Disqualified Person and the Charity.

Conflict of Interest. Where a Disqualified Person's Interest reduces the likelihood that an Insider may act impartially and in the best interests of the Charity.

Person. An individual or entity, including a trust, estate, partnership, association, company, or corporation.

{00822661.DOCX; 1}

MSFT_MUSK000036564

OPENAI, INC.
EIN: 81-0861541

### Article III: Procedures

*1.    Duty to Disclose*

Each Disqualified Person shall disclose to the Board, or to a Board Committee empowered to approve the transaction ("Committee"), all material facts regarding an Interest relevant to a transaction. The Disqualified Person shall make disclosures promptly upon learning of the proposed transaction. Insiders may make disclosures on behalf of Disqualified Persons related to them.

*2.    Procedures to Address Possible Conflicts of Interest*

Fact Gathering. The Board or Committee shall ascertain that all material facts regarding the transaction and the disqualified person's Interest have been disclosed to the Board or Committee. The Board or Committee shall compile appropriate data to evaluate whether the transaction is fair and reasonable to the Charity and in its best interests, which may include investigating alternatives.

Meeting. At a meeting, the Board or Committee may ask questions of and receive presentation(s) from the Insider(s) and any other Disqualified Person(s). The Board or Committee shall deliberate and vote on the transaction in the absence of the Insider(s) and Disqualified Person(s).

Determination. The Board or Committee, in the absence of the Disqualified Person(s), shall determine whether the Interest constitutes a Conflict of Interest, and if so, whether the transaction is nevertheless in the Charity's best interest, for its own benefit, and fair and reasonable to the Charity taking into account the relevant information and facts. Following such determination, a majority of disinterested members of the Board or Committee then in office may approve the transaction.

### Article IV: Records of Proceedings

The minutes of any meeting of the Board and any Committee pursuant to this policy shall contain the name of each Disqualified Person who disclosed or was otherwise determined to have an Interest in a transaction; the nature of the Interest and whether it was determined to constitute a Conflict of Interest; any alternative transactions considered; the members of the Board or Committee who were present during the debate on the transaction, those who voted on it, and to what extent Disqualified Persons were excluded from the deliberations; any comparability data or other information obtained and relied upon by the Board or Committee and how the information was obtained; and the result of the vote, including, if applicable, the terms of the transaction that was approved and the date it was approved.

The records must be prepared by the later of the next meeting of the Board or Committee or 60 days after the final action of the Board or Committee with respect to the transaction, and must be approved by the Board or Committee within a reasonable time afterwards.

{00822661.DOCX; 1}

- 2 -

HIGHLY CONFIDENTIAL

MSFT_MUSK000036565

OPENAI, INC.
EIN: 81-0861541

## Article V: Annual Disclosure and Compliance Statements

Each director, each officer, the top management official, the top financial official, and each key employee of the Charity, and others that the Charity may identify, shall annually sign a statement in the form attached to this policy that:

- affirms that the person has received a copy of this conflict of interest policy, has read and understood the policy, and has agreed to comply with the policy; and

- for certain individuals, discloses the person's financial interests and family relationships that could give rise to conflicts of interest.

## Article VI: Past Transactions; Violations

If the Board has reasonable cause to believe that an Insider failed to disclose an actual or possible Conflict of Interest, including one arising from a transaction with a related Disqualified Person, it shall inform the Insider of the basis for this belief and give the Insider an opportunity to explain. If, after hearing the Insider's response and further investigating as the circumstances warrant, the Board or Committee determines that the Insider has failed to disclose an actual or possible Conflict of Interest, the Board or Committee shall take appropriate disciplinary and corrective action.

Where a transaction involving a Conflict of Interest is discovered after it has already occurred or begun (because, for example, the interest was inadvertently not disclosed prior to the transaction, or the Charity's leadership did not realize that a review was necessary or advantageous), the Board or Committee shall conduct a review as described above, and determine whether disciplinary or corrective action is possible or warranted. In appropriate cases, the Board or Committee may determine, upon completion of the review, that ratification of the transaction is in the Charity's best interest, for its own benefit, and is fair and reasonable to the Charity.

## Article VII: Annual Reviews

The Board shall authorize and oversee an annual review of the administration of this conflict of interest policy. The review may be written or oral. The review shall consider the level of compliance with the policy, the continuing suitability of the policy, and whether the policy should be modified and improved.

Version dated _____

{00822661.DOCX; 1}

- 3 -

HIGHLY CONFIDENTIAL

MSFT_MUSK000036566

OPENAI, INC.
EIN: 81-0861541

## OpenAI

### CONFLICT OF INTEREST POLICY:
### ACKNOWLEDGMENT AND FINANCIAL INTEREST DISCLOSURE STATEMENT

OpenAI (the "Charity") follows a conflict of interest policy designed to foster public confidence in our integrity and to protect our interest when we are contemplating entering a transaction or arrangement that might benefit a director, a corporate officer, our top management official and top financial official, any of our key employees, any person with substantial influence over the Charity, or other disqualified persons.

### Part I.   Acknowledgment of Receipt

I hereby acknowledge that I have received a copy of the conflict of interest policy of the Charity, have read and understood it, and agree to comply with its terms.

_____                          _____

Signature                                                                Date

_____

Printed Name

### Part II.  Disclosure of Financial Interests (directors, corporate officers, top management official, top financial official, and key employees only)

We are required annually to file Form 990 with the Internal Revenue Service, and the form we file is available to the public. In order to complete Form 990 fully and accurately, we need each officer, director, and key employee to disclose the information requested in this Part II. If you are not an officer or director of the Charity, we have determined that you qualify as a key employee under IRS definitions.

A "conflict of interest," for purposes of Form 990, arises when a person in a position of authority over an organization, such as an officer, director, or key employee, may benefit financially from a decision he or she could make in that capacity, including indirect benefits such as to family members or businesses with which the person is closely associated. Only financial interests must be listed on this disclosure form.

The purpose of this disclosure is to provide the Board of Directors or other governing body with a meaningful opportunity to determine whether a conflict of interest exists, by disclosing any interest that could give rise to a conflict of interest. Complete, accurate disclosure gives the governing body information it needs to fulfill its fiduciary obligations and to make decisions that are in the best interest of the organization.

{00822661.DOCX; 1}

- 4 -

HIGHLY CONFIDENTIAL

MSFT_MUSK000036567

OPENAI, INC.
EIN: 81-0861541

Part II  Please check ONE of the following boxes:

☐    My interests and relationships have not changed since my last disclosure of interests. [Proceed to signature block below.  Do not complete the tables.]

**OR**

☐    I hereby disclose or update my interests and relationships that could give rise to a conflict of interest:  [Complete the table below.  Use additional pages as needed.]

| Family Relationships | Names of those presenting a potential conflict of interest |
|---|---|
| Include spouse/domestic partner, living ancestors, brothers and sisters (whether whole or half blood), children (whether natural or adopted), grandchildren, great grandchildren, and spouses/domestic partners of brothers, sisters, children, grandchildren, and great grandchildren | |

| Type of interest | Description of interest that could lead to a conflict of interest |
|---|---|
| Transactions or arrangements with the Charity | |
| Transactions or affiliations with other organizations | |
| Substantial business or investment holdings | |
| Transactions or affiliations with businesses | |

I am not aware of any financial interest involving me or a family member that could present a conflict of interest that I have not disclosed either above or in a previous disclosure statement.

_____          _____
Signature                                             Date

_____
Printed Name

{00822661.DOCX; 1}

- 5 -

HIGHLY CONFIDENTIAL                    MSFT_MUSK000036568

OPENAI, INC.
EIN: 81-0861541

### LINE OF CREDIT AGREEMENT

This Line of Credit Agreement (hereinafter referred to as the "Agreement") is made effective as of January 7, 2016, by and between OpenAI, Inc., a non-profit company formed under the laws of the state of Delaware ("OpenAI"), and Samuel Altman ("Payee"), or his registered assigns.

In consideration of the mutual covenants contained herein, and for valuable consideration, receipt of which is hereby acknowledged, the parties hereto agree as follows:

1.   **Line of Credit**.   Payee hereby grants a line of credit to OpenAI in an amount not to exceed ten million dollars ($10,000,000), upon the terms and conditions contained herein. The line of credit may be accessed by checks written directly from Payee to OpenAI or by the payment of any corporate expenses by Payee, as may be necessary from time to time during the term of this Agreement (each such check or payment, an "Advance"). OpenAI shall maintain a ledger of Advances that records the dates, original principal amounts, outstanding principal and unpaid interest amounts, applicable interest rates and repayment dates for all Advances.

2.   **Term**.   This Agreement shall commence on the date hereof and shall terminate when OpenAI has fully paid all principal and interest under this Agreement.

3.   **Interest.**   All Advances made by Payee to OpenAI pursuant to this Agreement shall bear interest at the rate of the greater of: (a) one (1%) per annum, or (b) the minimum amount of interest allowed in accordance with the Applicable Federal Rates as determined by the Internal Revenue Service (as set forth in Section 1274(d) of the Internal Revenue Code). Interest shall be computed on the basis of the actual number of days elapsed and a year of 365 days.

4.   **Maturity Date: Repayment.**   All unpaid principal, together with any unpaid and accrued interest and other amounts payable hereunder, shall be due and payable on December 31, 2019. There shall be no penalty for prepayment of principal or interest. Payments made shall be applied first to interest and the remainder to principal. Principal and interest are payable in lawful money of the United States of America.

5.   **Miscellaneous.**   This Agreement shall be construed in accordance with the laws of the State of California. This Agreement may be executed in one or more counterparts, each of which will be deemed an original, but all of which together will constitute one and the same agreement. Facsimile copies of signed signature pages shall be binding originals. In the event of commencement of suit to enforce payment, the prevailing party shall be entitled to receive the costs of collection including reasonable attorneys' fees and costs. This Agreement may not be changed or terminated orally. Any

{00828208.DOC; 2}

HIGHLY CONFIDENTIAL

OPENAI, INC.
EIN: 81-0861541

provision of this Agreement may be amended, waived or modified upon the written consent of the Payee and the majority of the disinterested Board of OpenAI.

**OpenAI, Inc.**

By: _Chris Clark_

Name: Chris Clark
Title: President

**Sam Altman**

By: _____

Name: Sam Altman

{00828208.DOC; 2}

HIGHLY CONFIDENTIAL

MSFT_MUSK000036570

9/1/2016                                    FedEx Ship Manager - Print Your Label(s)



After printing this label:
1. Use the 'Print' button on this page to print your label to your laser or inkjet printer.
2. Fold the printed page along the horizontal line.
3. Place label in shipping pouch and affix it to your shipment so that the barcode portion of the label can be read and scanned.

Warning: Use only the printed original label for shipping. Using a photocopy of this label for shipping purposes is fraudulent and could result in additional billing charges, along with the cancellation of your FedEx account number.
Use of this system constitutes your agreement to the service conditions in the current FedEx Service Guide, available on fedex.com.FedEx will not be responsible for any claim in excess of $100 per package, whether the result of loss, damage, delay, non-delivery,misdelivery,or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim.Limitations found in the current FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic value of the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental,consequential, or special is limited to the greater of $100 or the authorized declared value. Recovery cannot exceed actual documented loss.Maximum for items of extraordinary value is $1,000, e.g. jewelry, precious metals, negotiable instruments and other items listed in our ServiceGuide. Written claims must be filed within strict time limits, see current FedEx Service Guide.

HIGHLY CONFIDENTIAL                                    MSFT_MUSK000036571