EXHIBIT 38

**CONFIDENTIAL**

JORDAN ETH (CA SBN 121617)
JEth@mofo.com
WILLIAM FRENTZEN (CA SBN 343918)
WFrentzen@mofo.com
DAVID J. WIENER (CA SBN 291659)
DWiener@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105
Telephone: (415) 268-7000
Facsimile: (415) 268-7522

WILLIAM SAVITT (admitted *pro hac vice*)
WDSavitt@wlrk.com
BRADLEY R. WILSON (admitted *pro hac vice*)
BRWilson@wlrk.com
SARAH K. EDDY (admitted *pro hac vice*)
SKEddy@wlrk.com
NATHANIEL CULLERTON (admitted *pro hac vice*)
NDCullerton@wlrk.com
WACHTELL, LIPTON, ROSEN & KATZ
51 West 52nd Street
New York, NY 10019
Telephone: (212) 403-1000
Facsimile: (212) 403-2000

*Attorneys for Defendants Samuel Altman, Gregory Brockman,*
*OpenAI, Inc., OpenAI L.P., OpenAI, L.L.C., OpenAI GP, L.L.C.,*
*OpenAI OpCo, LLC, OpenAI Global, LLC, OAI Corporation, LLC,*
*OpenAI Holdings, LLC, OpenAI Startup Fund Management, LLC,*
*OpenAI Startup Fund GP I, L.L.C., OpenAI Startup Fund I, L.P.,*
*OpenAI Startup Fund SPV GP I, L.L.C., OpenAI Startup Fund SPV GP II, L.L.C.,*
*OpenAI Startup Fund SPV GP III, L.L.C., OpenAI Startup Fund SPV GP IV, L.L.C.,*
*OpenAI Startup Fund SPV I, L.P., OpenAI Startup Fund SPV II, L.P.,*
*OpenAI Startup Fund SPV III, L.P., OpenAI Startup Fund SPV IV, L.P.,*
*Aestas Management Company, LLC, and Aestas LLC*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| ELON MUSK, et al., | Case No.: 4:24-cv-04722-YGR |
| Plaintiffs, | **OPENAI, INC.'S RESPONSES AND OBJECTIONS TO PLAINTIFF MUSK'S FIRST SET OF INTERROGATORIES** |
| v. | |
| SAMUEL ALTMAN, et al., | Date Action Filed: August 5, 2024 |
| Defendants. | Trial Date: March 30, 2026 |

**CONFIDENTIAL**

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Defendant OpenAI, Inc., by and through its attorneys, hereby responds to Plaintiff Musk's First Set of Interrogatories to Defendant OpenAI, Inc., dated April 16, 2025 (collectively the "Interrogatories" and each an "Interrogatory").

<u>**GENERAL OBJECTIONS**</u>

OpenAI, Inc. makes the following General Objections to the Interrogatories and incorporates them, as well as the Objections to Definitions and Instructions below, into its response to each and every Interrogatory, whether or not specifically so stated in the individual response. An assertion of the same, similar, or additional objections in response to a specific Interrogatory does not waive any of these General Objections as to that or any other Interrogatory.

1. OpenAI, Inc. objects to the Interrogatories to the extent they, individually or cumulatively, impose burdens on OpenAI, Inc. that are not proportional to the needs of these expedited proceedings.

2. OpenAI, Inc. objects to the Interrogatories to the extent they call for the disclosure of information that is privileged or otherwise protected from discovery or disclosure on any ground, including but not limited to the attorney-client privilege, the attorney work-product protection, the business strategy immunity, and any other recognized privileges, immunities, protections, or exceptions (collectively, "Privileged Information"). OpenAI, Inc. does not intend to provide Privileged Information in response to any of the Interrogatories, and any inadvertent disclosure of Privileged Information shall not be deemed, nor is it intended, to constitute a waiver of the attorney-client privilege, attorney work-product protection, business strategy immunity, or any other applicable privilege, immunity, protection, or exception.

3. OpenAI, Inc. objects to the Interrogatories insofar as they incorporate or rely on purported facts. Nothing in these Responses and Objections is intended to be, nor shall anything contained in these Responses and Objections be construed as, an express or implied acknowledgment or concession that OpenAI, Inc. admits, adopts, acquiesces in, or otherwise accepts the manner in which the Interrogatories describe or characterize the purported facts, circumstances, subject matter, events, documents, or communications referred to in the

1

**CONFIDENTIAL**

Interrogatories.  To the extent that OpenAI, Inc. utilizes in its Responses and Objections any of the Interrogatories' defined terms, such usage is solely for convenience and does not constitute an endorsement of or agreement to any purported facts or characterizations stated or implied by such defined terms.

4.    OpenAI, Inc. objects to the Interrogatories insofar as they require OpenAI, Inc. to form a legal conclusion to provide a response.

5.    OpenAI, Inc. objects to the Interrogatories to the extent that they seek information outside of its possession, custody, or control.  In responding to the Interrogatories, OpenAI, Inc. will provide only information within its possession, custody, or control.

6.    OpenAI, Inc. objects to the Interrogatories on the ground that Plaintiffs have cumulatively served "more than 25 written interrogatories, including all discrete subparts" in violation of Rule 33(a)(1) of the Federal Rules of Civil Procedure.

7.    OpenAI, Inc. objects to the Interrogatories on the grounds that they are overly broad, unduly burdensome, unreasonable, and improper in that they: (a) seek the disclosure of information that could be more properly obtained through some other discovery device, such as a deposition, that would be more convenient and more efficient in the context of this expedited litigation, as well as less burdensome and less expensive and (b) are cumulative and duplicative of already pending written discovery, including Plaintiff Musk's First Set of Requests for Production of Documents to the OpenAI Defendants (the "RFPs").

8.    OpenAI, Inc. objects to the Interrogatories to the extent they purport to obligate OpenAI, Inc. to conduct an extensive investigation of facts that are publicly available, already in the possession of Plaintiff Musk, or equally obtainable from third parties or some source other than OpenAI, Inc. that is more convenient, more efficient, less burdensome, or less expensive.

9.    The Responses and Objections set forth below are based upon information presently known to OpenAI, Inc., and OpenAI, Inc. reserves the right at any time to supplement, amend, revise, correct, or clarify these Responses and Objections.  Should OpenAI, Inc. at any time supplement or amend its Responses and Objections to these Interrogatories, OpenAI, Inc. expressly

2

**CONFIDENTIAL**

1    reserves the right to assert any applicable objection, privilege, or other protection in connection

2    with such supplement or amendment.

3          10.     Nothing in these Responses and Objections is intended as a waiver or limitation of

4    OpenAI, Inc.'s right to object, on any ground, in any proceeding, at any time, and for any purpose,

5    to the use of any information produced in response to these Responses and Objections.

6          11.     On March 4, 2025, the Court issued a decision denying Plaintiffs' Motion for a

7    Preliminary Injunction and at the same time dismissed several of Plaintiffs' claims in the First

8    Amended Complaint.  At a case management conference held on April 4, 2025, the Court directed

9    that several of Plaintiffs' other claims would be stayed pending completion of the ongoing

10   expedited proceedings.  Finally, on May 1, 2025, the Court granted in part the motions to dismiss

11   filed by Defendants and dismissed certain other claims asserted in the First Amended Complaint.

12   OpenAI, Inc. objects to the Interrogatories to the extent they seek information that would only be

13   relevant to claims or related defenses that the Court has dismissed or stayed.  Such discovery is

14   neither relevant nor proportional to the needs of this phase of the litigation.

15         12.     OpenAI, Inc. objects to the Interrogatories to the extent they seek information

16   protected from disclosure as being competitively sensitive, a trade secret, other confidential

17   business or proprietary information, or information that, if produced or disclosed, would result in

18   the violation of any contractual obligation to third parties.  OpenAI, Inc. will only produce such

19   information to the extent that it is relevant to one of the claims or defenses to be tried in this phase

20   of the litigation and proportional to the needs of these expedited proceedings, and OpenAI, Inc.

21   will not disclose any such information unless that disclosure is subject to an acceptable

22   confidentiality stipulation and order in this Action.

23           **<u>OBJECTIONS TO DEFINITIONS AND INSTRUCTIONS</u>**

24         Included within each of the Responses and Objections to specific Interrogatories are the

25   following Objections to Definitions and Instructions, whether or not specifically stated in the

26   individual response.  An assertion of the same, similar, or additional objections in response to a

27   specific Interrogatory does not waive any of these Objections to Definitions and Instructions as to

28   that or any other Interrogatory.

**CONFIDENTIAL**

1. OpenAI, Inc. objects to Definition No. 12 to the extent it defines the "For-Profit Entities" to include each of the named entities and their respective "present and former officers, directors, employees, members, representatives, agents, and partners" on the grounds that such a construction is vague, overly broad, and unduly burdensome and would require OpenAI, Inc. to provide information outside its possession, custody, or control.  OpenAI, Inc. further objects to Definition No. 12 on the ground that OpenAI Startup Fund Management, LLC, OpenAI Startup Fund GP I, L.L.C., OpenAI Startup Fund I, L.P., OpenAI Startup Fund SPV GP I, L.L.C., OpenAI Startup Fund SPV GP II, L.L.C., OpenAI Startup Fund SPV GP III, L.L.C., OpenAI Startup Fund SPV GP IV, L.L.C., OpenAI Startup Fund SPV I, L.P., OpenAI Startup Fund SPV II, L.P., OpenAI Startup Fund SPV III, L.P., and OpenAI Startup Fund SPV IV, L.P. are not affiliates of OpenAI, Inc.  Subject to General Objection No. 3, solely for purposes of responding to the Interrogatories, OpenAI, Inc. will interpret the "For-Profit Entities" to include each of the named entities and their respective officers, directors, and employees.

2. OpenAI, Inc. objects to Definition No. 14 as vague, ambiguous, overly broad, and unduly burdensome to the extent it defines "Identify" in a manner that would require OpenAI, Inc. to produce information beyond the scope of discovery permitted under the Federal Rules of Civil Procedure.

3. OpenAI, Inc. objects to Definition No. 15 to the extent it defines "Microsoft" to include "any predecessors, subsidiaries, and related or affiliated entities, and, where applicable, their present and former officers, directors, employees, members, representatives, agents, and partners" on the grounds that such a construction is vague, overly broad, and unduly burdensome and seeks information that is neither relevant to the issues to be tried at this stage nor proportional to the needs of these expedited proceedings.  OpenAI, Inc. will interpret "Microsoft" to mean Microsoft Corporation and its directors, officers, and employees.

4. OpenAI, Inc. objects to Definition No. 18 to the extent it defines "OpenAI Board" to include "each . . . observer, or other Person privy to any part of the proceedings thereof" on the grounds that such a construction is vague, overly broad, and unduly burdensome and would require

4

**CONFIDENTIAL**

OpenAI, Inc. to provide information outside its possession, custody, or control.  OpenAI, Inc. will interpret "OpenAI Board" to mean the Board of Directors of OpenAI, Inc.

     5.    OpenAI, Inc. objects to Definition No. 23 to the extent it defines "You" and "Your" to include each of OpenAI, Inc.'s unspecified "partners, corporate parent, subsidiaries, related or affiliated entities" on the grounds that such construction is vague, overly broad, and unduly burdensome and would require OpenAI, Inc. to produce information outside its possession, custody, or control.  OpenAI, Inc. will interpret "You" and "Your" to mean OpenAI, Inc. and, where applicable, its respective officers, directors, and employees.

     6.    OpenAI, Inc. objects to Instruction Nos. 1 and 5 as vague, overly broad, unduly burdensome, and improper to the extent they purport to require OpenAI, Inc. to search for, and produce, information outside OpenAI, Inc.'s possession, custody, or control.

## RESPONSES AND OBJECTIONS TO SPECIFIC INTERROGATORIES

Without waiving or limiting in any manner any of the foregoing General Objections or Objections to Definitions and Instructions, OpenAI, Inc. responds to the specific Interrogatories as follows:

**INTERROGATORY NO. 1:**  Identify every Communication made by You to Musk Concerning OpenAI, Inc.'s mission, purpose, or structure from January 1, 2015 to December 31, 2020, Including the date, location, medium (e.g., email, in-person meeting), content of the Communication, and all Persons present or copied on the Communication.

**RESPONSE TO INTERROGATORY NO. 1:**

OpenAI, Inc. incorporates each of its General Objections and Objections to Definitions and Instructions as though fully set forth herein.  OpenAI, Inc. specifically objects to Interrogatory No. 1 on the grounds that it is overly broad, unduly burdensome, and seeks information that is neither relevant to the claims and defenses to be tried at this stage nor proportional to the needs of these expedited proceedings to the extent it asks OpenAI, Inc. to identify, for a more than five-year period, every "Communication made by [OpenAI, Inc.] to Musk," concerning OpenAI, Inc.'s "mission, purpose, or structure," which could conceivably require OpenAI, Inc. to identify every communication with Musk related to OpenAI during that period.  OpenAI, Inc. also objects to Interrogatory No. 1 on the ground that it calls for information that is already in the possession of

5

CONFIDENTIAL

1  Musk insofar as it seeks the identification of communications made to Musk. OpenAI, Inc. also

2  objects to Interrogatory No. 1 on the ground that it is vague and ambiguous because it employs

3  numerous undefined terms and phrases that are subject to multiple interpretations, including, but

4  not limited to, "purpose" and "structure."

5      OpenAI, Inc. further objects to Interrogatory No. 1 on the ground that it seeks information

6  that is cumulative and duplicative of the RFPs.

7      Subject to and without waiving the foregoing objections, in response to Interrogatory No. 1,

8  pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, OpenAI, Inc. refers to its

9  forthcoming document production in response to the RFPs, including RFP Nos. 1, 2, 35, 36, and

10  37, from which the answer to this Interrogatory may be derived or ascertained.

11  **INTERROGATORY NO. 2:** Describe in detail all Communications between January 1, 2017

12  and the present Concerning the formation of any of the For-Profit Entities, Including the dates, participants, and content of the Communications.

13      **RESPONSE TO INTERROGATORY NO. 2:**

14  OpenAI, Inc. incorporates each of its General Objections and Objections to Definitions and

15  Instructions as though fully set forth herein. OpenAI, Inc. specifically objects to Interrogatory

16  No. 2 on the grounds that it is overly broad, unduly burdensome, and seeks information that is

17  neither relevant to the claims and defenses to be tried at this stage nor proportional to the needs of

18  these expedited proceedings to the extent it asks OpenAI, Inc. to "[d]escribe in detail" "all

19  Communications" concerning the "formation of . . . the For-Profit Entities" for a more than eight-

20  year period without regard to any connection between the subject matter of such communications

21  and the claims and defenses to be tried in this phase of the litigation.

22      OpenAI, Inc. further objects to Interrogatory No. 2 on the ground that it seeks information

23  that is cumulative and duplicative of the RFPs.

24      Subject to and without waiving the foregoing objections, in response to Interrogatory No. 2,

25  pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, OpenAI, Inc. refers to its

26  forthcoming document production in response to the RFPs, including RFP Nos. 1, 2, 35, 36, and

27  37, from which the answer to this Interrogatory may be derived or ascertained.

28

6

**CONFIDENTIAL**

**INTERROGATORY NO. 3:** Identify all steps taken by You to ensure that OpenAI's technology remains dedicated to OpenAI, Inc.'s charitable purposes, Including any specific safeguards or controls implemented to prevent such technology from benefiting private interests.

**RESPONSE TO INTERROGATORY NO. 3:**

OpenAI, Inc. incorporates each of its General Objections and Objections to Definitions and Instructions as though fully set forth herein. OpenAI, Inc. specifically objects to Interrogatory No. 3 on the grounds that it seeks information that is neither relevant to the claims and defenses to be tried at this stage nor proportional to the needs of these expedited proceedings to the extent it asks OpenAI, Inc. to identify "all steps taken . . . to ensure that OpenAI's technology remains dedicated to OpenAI, Inc.'s charitable purposes" and to "prevent such technology from benefiting private interests" without regard to the distinction between OpenAI, Inc.'s charitable assets and OpenAI's technology. OpenAI, Inc. also objects to Interrogatory No. 3 on the ground that it is overly broad and unduly burdensome to the extent that it seeks information about steps taken by OpenAI, Inc. without regard to the date on which any such steps were taken. OpenAI, Inc. also objects to Interrogatory No. 3 on the ground that it is vague and ambiguous because it employs numerous undefined terms and phrases that are subject to multiple interpretations, including, but not limited to, "steps," "safeguards," and "controls." OpenAI, Inc. also objects to Interrogatory No. 3 to the extent that it calls for legal conclusions and legal argument.

Subject to and without waiving the foregoing objections, in response to Interrogatory No. 3, OpenAI, Inc. states that, since its founding in 2015, OpenAI, Inc. has been organized and operated exclusively for charitable purposes, has remained committed to its charitable mission of ensuring that artificial general intelligence benefits all of humanity, and has dedicated all of its assets to advancing that charitable mission. OpenAI, Inc. further states that since its founding, responsibility for OpenAI, Inc.'s governance and adherence to the charitable mission has been vested in the OpenAI, Inc. Board of Directors.

**INTERROGATORY NO. 4:** Identify each Transfer of intellectual property, Employees, or assets (or Transfer of any interest therein (e.g., a license)) from OpenAI, Inc. to any of the For-Profit Entities, Including the nature of the intellectual property, Employees, or assets Transferred, the date of Transfer, the transferee, the consideration provided for such Transfer, if any, and all Persons who approved such Transfer.

7

**CONFIDENTIAL**

### RESPONSE TO INTERROGATORY NO. 4:

OpenAI, Inc. incorporates each of its General Objections and Objections to Definitions and Instructions as though fully set forth herein. OpenAI, Inc. specifically objects to Interrogatory No. 4 on the grounds that it is overly broad, unduly burdensome, and seeks information that is neither relevant to the claims and defenses to be tried at this stage nor proportional to the needs of these expedited proceedings to the extent it asks OpenAI, Inc. to identify "each Transfer of . . . assets . . . from OpenAI, Inc. to any of the For-Profit Entities" without regard to the date of any such transfer or any connection between the requested information and the claims and defenses to be tried in this phase of the litigation. OpenAI, Inc. also objects to Interrogatory No. 4 on the ground that it is vague and ambiguous because it employs numerous undefined terms and phrases that are subject to multiple interpretations, including, but not limited to, "intellectual property." OpenAI, Inc. also objects to Interrogatory No. 4 on the ground that it contains several discrete subparts, in circumstances in which Plaintiffs have served 25 separately numbered interrogatories in the aggregate, to the extent it asks OpenAI, Inc. to identify each "Transfer of intellectual property, Employees, or assets," and separately to describe in detail, for each such transfer, the "nature of the intellectual property, Employees, or assets" transferred, the date of the transfer, the transferee, the consideration provided for the transfer, and the persons who approved the transfer.

Subject to and without waiving the foregoing objections, in response to Interrogatory No. 4, OpenAI, Inc. states that in 2019, it transferred substantially all of its intellectual property and certain other assets to OpenAI, L.P. (now OpenAI OpCo, LLC) in exchange for a capped-profit interest in OpenAI, L.P, an entity in which OpenAI, Inc. retained the entire, uncapped residual interest. OpenAI, Inc. received fair-market value for the assets that it transferred to OpenAI, L.P. in 2019, as confirmed by an independent valuation report received from the outside accounting firm, Hemming Morse, LLP. The exchange was approved by the Valuation and Contribution Committee of the OpenAI, Inc. Board of Directors, consisting of board members Sam Altman, Adam D'Angelo, Tasha McCauley, Sue Yoon, and Holden Karnofsky, with such Committee having been empowered to take action with respect to the exchange by the OpenAI, Inc. Board of Directors. Mr. Karnofsky abstained from the Valuation and Contribution Committee's determination

8

CONFIDENTIAL

regarding the exchange.  The OpenAI, Inc. Board of Directors ratified the exchange on August 3, 2022.

In addition, in connection with the exchange described in the preceding paragraph, substantially all employees of OpenAI, Inc. became employees of OpenAI, L.P.

**INTERROGATORY NO. 5:**  Describe in detail the decision-making process and criteria used to determine whether or when OpenAI's technology would be Open Source or not, Including the Identity of those who participated in such decisions, the factors considered, and how this process evolved from December 2015 to the present.

**RESPONSE TO INTERROGATORY NO. 5:**

OpenAI, Inc. incorporates each of its General Objections and Objections to Definitions and Instructions as though fully set forth herein.  OpenAI, Inc. specifically objects to Interrogatory No. 5 on the grounds that it is overly broad, unduly burdensome, and seeks information that is neither relevant to the claims and defenses to be tried at this stage nor proportional to the needs of these expedited proceedings to the extent it asks OpenAI, Inc. to describe in detail OpenAI, Inc.'s "decision-making process" regarding "when OpenAI's technology would be Open Source" over the course of a nearly 10-year period without regard to any connection between the requested information and the claims and defenses to be tried in this phase of the litigation. OpenAI, Inc. also objects to this Interrogatory on the ground that it is vague and ambiguous because it employs numerous undefined terms and phrases that are subject to multiple interpretations, including, but not limited to, "decision-making process and criteria," "technology," and "factors."  OpenAI, Inc. also objects to this Interrogatory on the ground that it contains several discrete subparts, in circumstances in which Plaintiffs have served 25 separately numbered interrogatories in the aggregate, to the extent it asks OpenAI, Inc. to describe in detail OpenAI, Inc.'s "decision-making process" concerning open sourcing, and separately to identify each person who participated in those decisions, and the factors considered, and to describe how that decision-making process evolved.

OpenAI, Inc. further objects to Interrogatory No. 5 on the ground that it is cumulative and duplicative of the RFPs.

Subject to and without waiving the foregoing objections, in response to Interrogatory No. 5, OpenAI, Inc. states that disclosing research concerning advanced artificial intelligence models may

**CONFIDENTIAL**

give rise to significant risks, and that OpenAI, Inc. considers those risks when determining whether a given technology should be open-sourced. The importance that OpenAI, Inc. places on considering competing risks and benefits of open-sourcing is reflected in its founding Certificate of Incorporation, filed on December 8, 2015 with the Delaware Secretary of State, which provides that OpenAI will "seek to open source technology for the public benefit when applicable," as well as in the OpenAI Charter, which was adopted in 2018 and states that OpenAI is "committed to providing public goods that help society navigate the path to AGI," but also cautions that OpenAI, Inc. "expect[s] that safety and security concerns will reduce our traditional publishing in the future, while increasing the importance of sharing safety, policy, and standards research." *See OpenAI Charter*, OpenAI, https://openai.com/charter/.

By way of further response to Interrogatory No. 5, pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, OpenAI, Inc. refers to its forthcoming document production in response to the RFPs, including RFP No. 44, from which the answer to this Interrogatory may be derived or ascertained in whole or in part.

**INTERROGATORY NO. 6:** Identify and describe in detail all safety protocols, practices, or policies implemented by OpenAI from December 8, 2015 to the present, Including when each was adopted, modified, or abandoned, and the reasons for any modifications or abandonment, along with any deviations from such protocols, practices, or policies (such as instances where safety concerns were raised but an OpenAI product was released anyway).

**RESPONSE TO INTERROGATORY NO. 6:**

OpenAI, Inc. incorporates each of its General Objections and Objections to Definitions and Instructions as though fully set forth herein. OpenAI, Inc. specifically objects to Interrogatory No. 6 on the grounds that it is overly broad, unduly burdensome, and seeks information that is neither relevant to the claims and defenses to be tried at this stage nor proportional to the needs of these expedited proceedings. OpenAI, Inc. also objects to Interrogatory No. 6 on the ground that it is not proportional to the needs of the litigation to the extent that it seeks highly competitively sensitive information regarding OpenAI's technology and products, the disclosure of which would be harmful to OpenAI, in circumstances where Plaintiffs are direct competitors of OpenAI. OpenAI, Inc. also objects to Interrogatory No. 6 on the ground that it is vague and ambiguous because it employs numerous undefined terms and phrases that are subject to multiple

10

**CONFIDENTIAL**

interpretations, including, but not limited to, "protocols," "practices," and "policies." OpenAI, Inc. also objects to Interrogatory No. 6 on the ground that it contains several discrete subparts, in circumstances in which Plaintiffs have served 25 separately numbered interrogatories in the aggregate, to the extent it asks OpenAI, Inc. to identify all safety protocols, practices, or policies implemented by OpenAI from December 8, 2015 to the present and describe them in detail, and separately to describe the reasons for any modifications or abandonment of any such protocols, practices, or policies and any deviations from such protocols, practices, or policies.

OpenAI, Inc. will not respond to this Interrogatory at this time.

**INTERROGATORY NO. 7:**   Identify all Persons who served on the OpenAI Board from December 8, 2015 to the present, Including their dates of service, positions held, the process by which each was selected, and the reasons for and circumstances of their departure, as applicable.

**RESPONSE TO INTERROGATORY NO. 7:**

OpenAI, Inc. incorporates each of its General Objections and Objections to Definitions and Instructions as though fully set forth herein. OpenAI, Inc. specifically objects to Interrogatory No. 7 on the grounds that it is overly broad, unduly burdensome, and seeks information that is neither relevant to the claims and defenses to be tried at this stage nor proportional to the needs of these expedited proceedings. OpenAI, Inc. also objects to Interrogatory No. 7 on the ground that it is vague and ambiguous because it employs numerous undefined terms and phrases that are subject to multiple interpretations, including, but not limited to, "process by which each [member of OpenAI's Board] was selected," and "the reasons for and circumstances of their departure."

OpenAI, Inc. also objects to Interrogatory No. 7 as unduly burdensome and disproportionate to the needs of these expedited proceedings to the extent it seeks information concerning the reasons for, and circumstances of, the departure from OpenAI Inc.'s Board of individuals no longer affiliated with OpenAI, Inc. that is not within OpenAI, Inc.'s possession, custody, and control and that may be obtained from sources other than OpenAI, Inc. that are more convenient, less burdensome, or less expensive.

Subject to and without waiving the foregoing objections, in response to Interrogatory No. 7, OpenAI, Inc. states that the following individuals have served on OpenAI, Inc.'s Board:

**CONFIDENTIAL**

| Director | Dates of Service on Board |
|---|---|
| Samuel Altman | 1/3/2016 to 11/16/2023; 3/8/2024 to Present |
| Greg Brockman | 6/30/2017 to 11/16/2023 |
| Chris Clark | 1/3/2016 to 9/1/2017 |
| Adam D'Angelo | 9/21/2018 to Present |
| Sue Desmond-Hellman | 3/8/2024 to Present |
| Reid Hoffman | 3/11/2019 to 2/6/2023 |
| Will Hurd | 4/30/2021 to 5/31/2023 |
| Holden Karnofsky | 6/30/2017 to 6/30/2021 |
| Zico Kolter | 8/8/2024 to Present |
| Tasha McCauley | 11/30/2018 to 11/29/2023 |
| Elon Musk | 6/30/2017 to 2/21/2018 |
| Paul Nakasone | 6/13/2024 to Present |
| Adebayo Ogunlesi | 1/14/2025 to Present |
| Patrick Scaglia | 1/3/2016 to 6/30/2017 |
| Nicole Seligman | 3/8/2024 to Present |
| Lawrence Summers | 11/29/2023 to Present |
| Fidji Simo | 3/8/2024 to Present |
| Ilya Sutskever | 6/30/2017 to 11/29/2023 |
| Bret Taylor | 11/29/2023 to Present |
| Helen Toner | 7/9/2021 to 11/29/2023 |
| Sue Yoon | 9/21/2018 to 9/30/2019 |
| Shivon Zilis | 1/10/2020 to 2/25/2023 |

OpenAI, Inc. further states that—with the exception of Messrs. Altman, Clark, and Scaglia, who served on OpenAI, Inc.'s Board of Directors at its founding—each of these

individuals was nominated for service on OpenAI, Inc.'s Board by the directors then serving on the Board.

**INTERROGATORY NO. 8:** Identify and describe all Agreements between any OpenAI entity and Microsoft, Including the date, parties, subject matter, value, duration, and whether such Agreement grants Microsoft any form of exclusive rights.

### RESPONSE TO INTERROGATORY NO. 8:

OpenAI, Inc. incorporates each of its General Objections and Objections to Definitions and Instructions as though fully set forth herein. OpenAI, Inc. specifically objects to Interrogatory No. 8 on the grounds that it is overly broad, unduly burdensome, and seeks information that is neither relevant to the claims and defenses to be tried at this stage nor proportional to the needs of these expedited proceedings to the extent it asks OpenAI, Inc. to identify and describe "all Agreements between any OpenAI entity and Microsoft" without regard to the date of such agreements or any connection between the subject matter of such agreements and the claims and defenses to be tried in this phase of the litigation. OpenAI, Inc. also objects to Interrogatory No. 8 on the ground that it is not proportional to the needs of the litigation to the extent that it seeks highly competitively sensitive information regarding OpenAI's business partnerships, the disclosure of which would be harmful to OpenAI, in circumstances where Plaintiffs are direct competitors of OpenAI. OpenAI, Inc. also objects to Interrogatory No. 8 on the ground that it is vague and ambiguous because it employs numerous undefined terms and phrases that are subject to multiple interpretations, including, but not limited to, "exclusive rights."

OpenAI, Inc. further objects to Interrogatory No. 8 on the ground that it is cumulative and duplicative of the RFPs.

Subject to and without waiving the foregoing objections, in response to Interrogatory No. 8, pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, OpenAI, Inc. refers to its forthcoming document production in response to the RFPs, including RFP No. 39, from which the answer to this Interrogatory may be derived or ascertained.

**INTERROGATORY NO. 9:** Describe in detail the current corporate structure of each of the For-Profit Entities, Including its affiliation with OpenAI, Inc. and/or any of the other For-Profit Entities, the Identity of all Persons holding any ownership or equity interest in such For-Profit Entity, the percentage interest held by such Person, the value of the interest, and how, when, and for what consideration it was acquired.

13

**CONFIDENTIAL**

**RESPONSE TO INTERROGATORY NO. 9:**

OpenAI, Inc. incorporates each of its General Objections and Objections to Definitions and Instructions as though fully set forth herein. OpenAI, Inc. specifically objects to Interrogatory No. 9 on the grounds that it is overly broad, unduly burdensome, and seeks information that is neither relevant to the claims and defenses to be tried at this stage nor proportional to the needs of these expedited proceedings to the extent it asks OpenAI, Inc. to identify "all Persons holding any ownership or equity interest in [the For-Profit Entities]," as well as the percentage interest, value, and consideration exchanged for that interest for each such Person, which could conceivably require the identification of every OpenAI employee or other entity or individual that has acquired a financial interest in any For-Profit Entity over the course of several years and the valuation of each such interest. OpenAI, Inc. also objects to Interrogatory No. 9 on the ground that it is vague and ambiguous because it employs numerous undefined terms and phrases that are subject to multiple interpretations, including, but not limited to, "affiliation," "ownership or equity interest," "percentage interest," "value," and "consideration." OpenAI, Inc. also objects to Interrogatory No. 9 on the ground that it contains several discrete subparts, in circumstances in which Plaintiffs have served 25 separately numbered interrogatories in the aggregate, to the extent it asks OpenAI, Inc. to describe the current corporate structure of each of the many For-Profit Entities and separately to identify all persons holding any ownership or equity interest therein, and the percentage interest and value of each such interest, and to describe in detail the circumstances of each person's acquisition of each such interest.

OpenAI, Inc. further objects to Interrogatory No. 9 on the ground that it is cumulative and duplicative of the RFPs.

Subject to and without waiving the foregoing objections, in response to Interrogatory No. 9, pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, OpenAI, Inc. refers to its forthcoming document production in response to the RFPs, including RFP No. 38, from which the answer to this Interrogatory may be derived or ascertained.

**INTERROGATORY NO. 10:** Identify all business transactions between any OpenAI entity and any company in which any OpenAI director, officer, or executive has or had any financial interest, Including the parties, date, nature, value, and approval process for each such transaction.

**RESPONSE TO INTERROGATORY NO. 10:**

OpenAI, Inc. incorporates each of its General Objections and Objections to Definitions and Instructions as though fully set forth herein. OpenAI, Inc. specifically objects to Interrogatory No. 10 on the grounds that it is overly broad, unduly burdensome, and seeks information that is neither relevant to the claims and defenses to be tried at this stage nor proportional to the needs of these expedited proceedings. OpenAI, Inc. also objects to Interrogatory No. 10 on the ground that it is vague and ambiguous because it employs numerous undefined terms and phrases that are subject to multiple interpretations, including, but not limited to, "business transactions," "nature," "value," and "approval process."

OpenAI, Inc. further objects to Interrogatory No. 10 on the ground that it is cumulative and duplicative of the RFPs.

OpenAI, Inc. will not respond to this Interrogatory at this time.

**INTERROGATORY NO. 11:** Describe in detail the plans for converting OpenAI into a public benefit corporation or other for-profit enterprise, Including the timeline, steps to be taken, investment banks involved, the names of all Persons who will hold equity therein, and the percentage amount of such Person's equity.

**RESPONSE TO INTERROGATORY NO. 11:**

OpenAI, Inc. incorporates each of its General Objections and Objections to Definitions and Instructions as though fully set forth herein. OpenAI, Inc. specifically objects to Interrogatory No. 11 on the grounds that it is overly broad, unduly burdensome, and seeks information that is neither relevant to the claims and defenses to be tried at this stage nor proportional to the needs of these expedited proceedings. OpenAI, Inc. also objects to Interrogatory No. 11 on the ground that it is vague and ambiguous because it employs numerous undefined terms and phrases that are subject to multiple interpretations, including, but not limited to, "other for-profit enterprise."

OpenAI, Inc. also objects to Interrogatory No. 11 on the ground that it incorrectly assumes that OpenAI, Inc. is considering "converting OpenAI[, Inc.] into a public benefit corporation or other for-profit enterprise." No such conversion is under contemplation. OpenAI, Inc.'s Board is instead planning to recapitalize OpenAI, Inc.'s for-profit subsidiaries into a Delaware public benefit

CONFIDENTIAL

corporation ("PBC"), with the nonprofit OpenAI, Inc. maintaining its control over the newly formed PBC.

OpenAI, Inc. also objects to Interrogatory No. 11 on the ground that it contains several discrete subparts, in circumstances in which Plaintiffs have served 25 separately numbered interrogatories in the aggregate, to the extent it asks OpenAI, Inc. to describe purported "plans for converting OpenAI into a public benefit corporation or other for-profit enterprise," and separately to identify "all Persons" who would "hold equity therein, and the percentage amount of such person's equity."

Subject to and without waiving the foregoing objections, in response to Interrogatory No. 11, OpenAI, Inc. refers to its public statements dated December 27, 2024 and May 5, 2025, which describe the recapitalization that the OpenAI, Inc. Board of Directors is presently considering, available at https://openai.com/index/why-our-structure-must-evolve-to-advance-our-mission/ and https://openai.com/index/evolving-our-structure/.

**INTERROGATORY NO. 12:**  Describe in detail any promise, commitment, or statement You made to Musk, or Musk made to You, Concerning OpenAI, Inc.'s non-profit status, open-sourcing of technology, or safety priorities.

**RESPONSE TO INTERROGATORY NO. 12:**

OpenAI, Inc. incorporates each of its General Objections and Objections to Definitions and Instructions as though fully set forth herein.  OpenAI, Inc. specifically objects to Interrogatory No. 12 on the grounds that it is overly broad, unduly burdensome, and seeks information that is neither relevant to the claims and defenses to be tried at this stage nor proportional to the needs of these expedited proceedings to the extent it asks OpenAI, Inc. to describe in detail every "statement [OpenAI, Inc.] made to Musk, or Musk made to [OpenAI, Inc.], Concerning OpenAI, Inc.'s non-profit status, open-sourcing of technology, or safety priorities" without regard to the date on which any such statements were made or any connection between the subject matter of such statements and the claims and defenses to be tried in this phase of the litigation.  OpenAI, Inc. also objects to Interrogatory No. 12 on the ground that it calls for the production of information that is already in the possession of Musk insofar as it asks OpenAI, Inc. to identify statements, commitments, or promises made by Musk, or to Musk.  OpenAI, Inc. also objects to Interrogatory No. 12 on the

16

HIGHLY CONFIDENTIAL

ground that it is vague and ambiguous because it employs numerous undefined terms and phrases that are subject to multiple interpretations, including, but not limited to, "promise," "commitment," "non-profit status," "open-sourcing of technology," and "safety priorities."

Subject to and without waiving the foregoing objections, in response to Interrogatory No. 12, OpenAI, Inc. states that it has made no promise or commitment to Musk concerning OpenAI, Inc.'s non-profit status, open-sourcing of technology, or safety priorities.

**INTERROGATORY NO. 13:** Describe in detail the process by which Altman was removed as CEO and from the OpenAI Board in November 2023 and subsequently reinstated, Including the reasons for his removal, all Communications between any board members Concerning his removal or reinstatement, and any involvement of Microsoft in his reinstatement.

**RESPONSE TO INTERROGATORY NO. 13:**

OpenAI, Inc. incorporates each of its General Objections and Objections to Definitions and Instructions as though fully set forth herein. OpenAI, Inc. specifically objects to this Interrogatory No. 13 on the grounds that it is overly broad, unduly burdensome, and seeks information that is neither relevant to the claims and defenses to be tried at this stage nor proportional to the needs of these expedited proceedings.

OpenAI, Inc. will not respond to this Interrogatory at this time.

**INTERROGATORY NO. 14:** Describe all Agreements or other arrangements pursuant to which profits, revenues, or value generated by any of the For-Profit Entities were distributed or are to be distributed, Including any limits, caps, profit-sharing formulas, or restrictions on any such distributions.

**RESPONSE TO INTERROGATORY NO. 14:**

OpenAI, Inc. incorporates each of its General Objections and Objections to Definitions and Instructions as though fully set forth herein. OpenAI, Inc. specifically objects to Interrogatory No. 14 on the grounds that it is overly broad, unduly burdensome, and seeks information that is neither relevant to the claims and defenses to be tried at this stage nor proportional to the needs of these expedited proceedings to the extent it asks that OpenAI, Inc. describe "all Agreements or other arrangements pursuant to which profits, revenues, or value generated by any of the For-Profit Entities were distributed or are to be distributed" without regard to any connection between the subject matter of such agreements or arrangements and the claims and defenses to be tried in this phase of the litigation. OpenAI, Inc. also objects to this Interrogatory on the ground that it is vague

**HIGHLY CONFIDENTIAL**

and ambiguous because it employs numerous undefined terms and phrases that are subject to multiple interpretations, including, but not limited to, "value generated," "limits," "profit-sharing formulas," and "restrictions on . . . distributions."

OpenAI, Inc. further objects to this Interrogatory on the grounds that it seeks information more efficiently obtained through other means of discovery, such as RFP Nos. 37, 38, 42, 43, 59, and 64.

Subject to and without waiving the foregoing objections, in response to Interrogatory No. 14, OpenAI, Inc. states that it created a capped-profit subsidiary, OpenAI, L.P. (now OpenAI OpCo, LLC, and together with its successors and affiliates, the "Capped-Profit Enterprise") in 2019, which was and remains subject to OpenAI, Inc.'s control. From its founding in 2019 through October 2024, there were four main categories of investors with economic rights in the Capped-Profit Enterprise: (1) OpenAI, Inc.; (2) Microsoft Corp.; (3) early-stage investors, referred to as First Close Limited Partners ("FCLPs"); and (4) current and former employees and tender-offer investors.

Equity interests for employees are contained in an employee vehicle, which currently consists of Aestas, LLC and its related entities (the "Employee Vehicle"). Employees receive partnership profits interests in the employee vehicle and have the opportunity to monetize their interests through periodic tender offers in which private investors can purchase the units.

Investments in the Capped-Profit Enterprise are subject to caps applicable to all equity holders with the exception of OpenAI, Inc., which holds an uncapped residual interest in the value of the Capped-Profit Enterprise. These caps are called Target Redemption Amounts and are calculated based on multiples of each investor's original investment. Each of these caps is subject to an annual increase of 20%, starting at the end of fiscal year 2025, as well as yearly adjustments for inflation. Microsoft's unadjusted returns are capped at roughly $92 billion, based on its three rounds of investments to date in the amounts of $1 billion, $2 billion, and $10 billion, respectively. The Employee Vehicle's unadjusted returns are capped at roughly $150 billion. The FCLPs' unadjusted returns are capped at roughly $19.3 billion in the aggregate.

**HIGHLY CONFIDENTIAL**

In October 2024, OpenAI completed a $6.7 billion fundraising. The investors in this funding round received "convertible interest rights agreements" ("CIRAs") that will convert into preferred stock in a reorganized for-profit entity if a reorganization of the Capped-Profit Enterprise is completed. By agreement with the October 2024 investors, OpenAI has a two-year window, running from September 2024, in which to complete a reorganization. If a reorganization is not completed within that two-year period, the October 2024 investors would, as a group, have the right to require the Capped-Profit Enterprise to redeem the CIRAs in exchange for cash equal to each of the October 2024 investors' initial investment amounts plus a fixed 9% coupon, with individual CIRA holders able to elect to redeem on an individual basis if a reorganization is not completed by December 2027.

In March 2025, OpenAI signed a $40 billion funding round led by Softbank of which $10 billion was funded in April 2025. Pursuant to the terms of that fundraising round, if a reorganization of the Capped-Profit Enterprise has not been completed by the end of 2025, SoftBank would have the right to reduce its remaining unfunded investment commitment to $10 billion.

**INTERROGATORY NO. 15:** Identify all investors in any of the For-Profit Entities, Including the Identity of each investor, the date and amount of each investment and corresponding profit share, any restrictions, rights, or privileges applicable to such investment or investor, and any Communications with such investor Concerning investing in competing companies.

**RESPONSE TO INTERROGATORY NO. 15:**

OpenAI, Inc. incorporates each of its General Objections and Objections to Definitions and Instructions as though fully set forth herein. OpenAI, Inc. specifically objects to Interrogatory No. 15 on the grounds that it is overly broad, unduly burdensome, and seeks information that is neither relevant to the claims and defenses to be tried at this stage nor proportional to the needs of these expedited proceedings. OpenAI, Inc. also objects to Interrogatory No. 15 on the ground that it is vague and ambiguous because it employs numerous undefined terms and phrases that are subject to multiple interpretations, including, but not limited to, "profit share" and "restrictions, rights, or privileges." OpenAI, Inc. also objects to Interrogatory No. 15 on the ground that it is cumulative and duplicative of the RFPs. OpenAI, Inc. also objects to Interrogatory No. 15 to the extent it seeks communications with "investor[s] Concerning investing in competing companies"

**CONFIDENTIAL**

on the ground that this information would only be relevant to claims or related defenses that the Court has stayed.  OpenAI, Inc. also objects to Interrogatory No. 15 on the ground that it is not proportional to the needs of the litigation to the extent that it seeks highly competitively sensitive information regarding the identity of OpenAI's investors and the terms of their investments, the disclosure of which would be harmful to OpenAI, in circumstances where Plaintiffs are direct competitors of OpenAI.

OpenAI, Inc. also objects to this Interrogatory on the ground that it contains several discrete subparts, in circumstances in which Plaintiffs have served 25 separately numbered interrogatories in the aggregate, to the extent it asks OpenAI, Inc. to identify "all investors in any of the For-Profit Entities" and separately to identify the "date and amount of each investment and corresponding profit share," "any restrictions, rights, or privileges applicable to such investment or investor," and any "Communications with such investor Concerning investing in competing companies."

OpenAI, Inc. will not respond to this Interrogatory at this time.

CONFIDENTIAL

1  | Date: May 7, 2025                           MORRISON & FOERSTER LLP

2

3  | /s/ Jordan Eth
   | JORDAN ETH (CA SBN 121617)
4  | JEth@mofo.com
   | WILLIAM FRENTZEN (CA SBN 343918)
5  | WFrentzen@mofo.com
   | DAVID J. WIENER (CA SBN 291659)
6  | DWiener@mofo.com
   | MORRISON & FOERSTER LLP
7  | 425 Market Street
   | San Francisco, CA  94105
8  | Telephone:    (415) 268-7000
   | Facsimile:    (415) 268-7522
9

10 | WILLIAM SAVITT (admitted *pro hac vice*)
   | WDSavitt@wlrk.com
11 | BRADLEY R. WILSON (admitted *pro hac vice*)
   | BRWilson@wlrk.com
12 | SARAH K. EDDY (admitted *pro hac vice*)
   | SKEddy@wlrk.com
13 | NATHANIEL CULLERTON (admitted *pro hac vice*)
   | NDCullerton@wlrk.com
14 | WACHTELL, LIPTON, ROSEN & KATZ
   | 51 West 52nd Street
15 | New York, NY  10019
   | Telephone:    (212) 403-1000
16 | Facsimile:    (212) 403-2000

17 | *Attorneys for Defendants Samuel Altman, Gregory
   | Brockman, OpenAI, Inc., OpenAI L.P., OpenAI,
   | L.L.C., OpenAI GP, L.L.C., OpenAI OpCo, LLC,*
18 | *OpenAI Global, LLC, OAI Corporation, LLC, OpenAI
   | Holdings, LLC, OpenAI Startup Fund Management,
19 | LLC, OpenAI Startup Fund GP I, L.L.C., OpenAI
   | Startup Fund I, L.P., OpenAI Startup Fund SPV GP I,
20 | L.L.C., OpenAI Startup Fund SPV GP II, L.L.C.,
   | OpenAI Startup Fund SPV GP III, L.L.C., OpenAI
21 | Startup Fund SPV GP IV, L.L.C., OpenAI Startup
   | Fund SPV I, L.P., OpenAI Startup Fund SPV II, L.P.,
22 | OpenAI Startup Fund SPV III, L.P., OpenAI Startup
   | Fund SPV IV, L.P., Aestas Management Company,
23 | LLC, and Aestas LLC*

24

25

26

27

28

1

**CERTIFICATE OF SERVICE**

2

3

    I, Camila A. Tapernoux, hereby certify that on May 7, 2025, I caused the foregoing to be

served via electronic mail upon all counsel of record in the above-captioned action.

4

5

6

_____

Camila A. Tapernoux

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28