# EXHIBIT 61

CONFIDENTIAL

MINUTES OF MEETING OF
THE MEMBERS AND DIRECTORS OF
OPENAI, INC.

**March 8, 2024**

A joint special meeting of the members (the "***Members***") and the directors (the "***Directors***") of OpenAI, Inc., a Delaware nonstock corporation (the "***Company***"), was held by videoconference on March 8, 2024 at 8:00 a.m. Pacific Time, in accordance with the Bylaws of the Company (the "***Bylaws***").

Participating in the meeting were Members and Directors Adam D'Angelo, Larry Summers, and Bret Taylor. The Members and Directors participating in the meeting constituted all of the Members and Directors and a quorum for the conduct of business.

Also participating in the meeting was David Shevlin of Simpson Thacher & Bartlett LLP, outside counsel to the Company.

All participants in the meeting could hear and be heard by one another. Mr. Taylor chaired the meeting and Mr. Shevlin kept the minutes.

### 1. Review, Recommendations, and Actions of Special Committee

Mr. Shevlin presented for approval by the Directors (i) the actions of the Board of Directors of the Company (the "***Board***") based on the recommendations of the special committee formed, authorized, and established by the Board (the "***Special Committee***") and (ii) confirmation that the Special Committee fulfilled its mandate.

Upon motion duly made and seconded, the Directors approved the resolutions with respect to the review, recommendations, and actions of the Special Committee as set forth in Annex A attached to these minutes.

### 2. Preliminary Governance Review and Administrative Items

Mr. Shevlin presented certain items for approval by the Members and the Directors, as applicable, including (i) the preliminary governance review, (ii) the lack of meeting notice and authorization of the meeting, (iii) the amendment and restatement of the Bylaws, (iv) the election of the Board, (v) the appointment of the Chair of the Board, (vi) the appointment of the Chief Executive Officer of the Company, (vii) the adoption of the Corporate Governance Guidelines of the Company, (viii) the amendment and restatement of the Conflict of Interest Policy of the Company, (ix) **Redacted** **Redacted** (x) the establishment and composition of the Nominating and Governance Committee of the Board, and (xi) the establishment of the Mission & Strategy Committee of the Board.

Upon motion duly made and seconded, the Members and the Directors, as applicable, approved the resolutions with respect to the foregoing items as set forth in Annex B attached to these minutes.

CONFIDENTIAL

### 3.  Adjournment

The meeting was adjourned at approximately 9:00 a.m Pacific Time.

_____

David Shevlin

Secretary of the Meeting

HIGHLY CONFIDENTIAL

OPENAI_MUSK00027798

CONFIDENTIAL

## Annex A

[*See attached*]

HIGHLY CONFIDENTIAL

OPENAI_MUSK00027799

PRIVILEGED AND CONFIDENTIAL

## RESOLUTIONS TO BE ADOPTED
## AT A JOINT MEETING OF THE MEMBERS AND DIRECTORS
## OF
## OPENAI, INC.

To Be Held on March 8, 2024

### REVIEW, RECOMMENDATIONS, AND ACTIONS OF SPECIAL COMMITTEE

**WHEREAS,** the Board of Directors (the "***Board***") of OpenAI, Inc. (the "***Corporation***") on December 11, 2023 formed, authorized, and established a special committee (the "***Special Committee***") to review events relating to the November 17, 2023 termination of Sam Altman and the governance relationship between the Corporation and its affiliates, including, in each instance, legal and regulatory risks arising therefrom (the "***Review***"); and

**WHEREAS,** the Board appointed Bret Taylor and Lawrence H. Summers to the Special Committee; and

**WHEREAS,** the Special Committee was vested with the full power and authority of the Board with respect to conducting the Review and assessing the Corporation's various alternatives with respect to governance relationships; and

**WHEREAS,** upon completion of the Review and determination of any recommended course of action based on the findings of the Review, the Special Committee was authorized to take any actions it deemed advisable and appropriate with respect to the Review, including, but not limited to, making its recommendation to the full Board, including with respect to governance changes, with the Board considering and approving any governance changes with respect to the Corporation or its for-profit affiliates, excluding from the discussion of and vote on any proposed change any member of the Board with a conflict of interest with respect to such proposed change; and

**WHEREAS,** the Special Committee was authorized to retain, and did so retain, for the benefit of the Corporation and at the Corporation's sole expense, Wilmer Cutler Pickering Hale and Dorr LLP ("WilmerHale") as outside counsel to the Special Committee; and

**WHEREAS,** the Special Committee has completed its Review and has reported its findings to the Board.

**NOW, THEREFORE, BE IT RESOLVED,** that the Board hereby acknowledges the findings of the Review and the actions taken in connection therewith; and **BE IT FURTHER**

**RESOLVED,** based on the recommendation of the Special Committee, the Board endorses the actions of the Board, including former members of the Board and including as reflected in the Board resolutions adopted on November 29, 2023, reappointing Sam Altman as Chief Executive Officer of OpenAI OpCo, LLC and Greg Brockman as President of OpenAI OpCo, LLC; and **BE IT FURTHER**

OPENAI_MUSK00027800

**RESOLVED,** that the Board hereby determines that the Special Committee has fulfilled its mandate as set forth in the resolutions of the Board, effective as of December 11, 2023.

HIGHLY CONFIDENTIAL

OPENAI_MUSK00027801

CONFIDENTIAL

## Annex B

[*See attached*]

HIGHLY CONFIDENTIAL

PRIVILEGED AND CONFIDENTIAL

**RESOLUTIONS TO BE ADOPTED**
**AT A JOINT MEETING OF THE MEMBERS AND DIRECTORS**
**OF**
**OPENAI, INC.**

To Be Held on March 8, 2024

## PRELIMINARY GOVERNANCE REVIEW PROCESS

**WHEREAS,** since December 2023, the individuals presently serving as members (the "***Members***") and directors (the "***Directors***") of OpenAI, Inc. (the "***Corporation***") have undertaken to comprehensively review and evaluate the Corporation's governance documents and practices (the "***Preliminary Governance Review***"); and

**WHEREAS,** the Members and Directors of the Corporation have engaged extensively with outside legal counsel expert in the areas of not-for-profit and tax-exempt organizations, public companies, and technology companies, among other areas, as well as with employees and representatives of entities directly or indirectly controlled by the Corporation (collectively, "***OpenAI***") in connection with the Preliminary Governance Review; and

**WHEREAS,** the actions to be approved by the Members or Directors, as applicable, at this meeting represent the output to date of the Preliminary Governance Review.

**NOW, THEREFORE, BE IT RESOLVED,** that the Members and Directors hereby acknowledge the efforts of the Preliminary Governance Review and reiterate their commitment to continuously reviewing and evaluating the Corporation's governance documents and practices in order to ensure they align with best-in-class governance documents and practices for similar corporations engaging in similar activities, in each case, in furtherance of the Corporation's charitable purposes.

## ACKNOWLEDGMENT OF LACK OF MEETING NOTICE

**WHEREAS,** pursuant to Article II, Section 2.2(b) and Article IV, Section 4.8 of the Amended and Restated Bylaws of the Corporation, effective as of November 29, 2023, as amended through the date hereof (the "***Existing Bylaws***"), notice of meetings of the Members or Directors shall state the date, place, and time of the meeting and shall be given to each Member or Director at least four days before any such meeting if given by first-class mail or forty-eight hours before any such meeting if given personally, by telephone, including a voice messaging system, or by other system of technology designed to record and communicate messages, by facsimile, or by electronic transmission; and

**WHEREAS,** pursuant to Article II, Section 2.2(b) and Article IV, Section 4.9 of the Existing Bylaws, attendance of a person at a meeting shall constitute a waiver of notice of such meeting, except when the person attends a meeting for the express purpose of objecting, at the beginning of the meeting, to the transaction of any business because the meeting is not lawfully called or convened; and

HIGHLY CONFIDENTIAL

**WHEREAS,** notice of this meeting was not timely given pursuant to the Existing Bylaws; and

**WHEREAS,** no Member or Director objected to the transaction of business at this meeting.

**NOW, THEREFORE, BE IT RESOLVED,** that the Members and Directors hereby acknowledge that notice of this meeting was not timely given pursuant to the Existing Bylaws, and that all Members and Directors attended this meeting without objecting to the transaction of business at this meeting; and **BE IT FURTHER**

**RESOLVED,** that the Members and Directors hereby confirm that the transaction of business at this meeting is duly authorized in accordance with the Existing Bylaws.

## AMENDMENT AND RESTATEMENT OF EXISTING BYLAWS

**WHEREAS,** pursuant to Article X, Section 10.3 of the Existing Bylaws, only the Members may amend or repeal the Existing Bylaws; and

**WHEREAS,** the Members have determined that it is in the best interest of the Corporation to amend and restate the Existing Bylaws.

**NOW, THEREFORE, BE IT RESOLVED,** that the Members hereby amend and restate the Existing Bylaws in the form attached hereto as Exhibit A (as so amended and restated, the "***Bylaws***").

## ELECTION OF BOARD

**WHEREAS,** pursuant to Article IV, Section 4.2 of the Bylaws, the exact authorized number of Directors is determined by the Members; and

**WHEREAS,** pursuant to Article IV, Section 4.4 of the Bylaws, any vacancy on the Board of Directors of the Corporation (the "***Board***") may be filled by the Members for the unexpired portion of the term.

**NOW, THEREFORE, BE IT RESOLVED,** that the authorized number of Directors of the Corporation be, and hereby is, increased from three to seven, including any ex officio director; and **BE IT FURTHER**

**RESOLVED,** that each of the following individuals is hereby elected as a Director, to hold such office until the next annual meeting of the Members and the election and qualification of his or her successor, or until his or her earlier death, resignation, or removal:

> Sue Desmond-Hellmann
> Nicole Seligman
> Fidji Simo

## APPOINTMENT OF CHAIR OF BOARD

**WHEREAS,** pursuant to Article VI, Section 6.2 of the Bylaws, the Board may elect the officers of the Corporation.

**NOW, THEREFORE, BE IT RESOLVED,** that the Board hereby elects Bret Taylor to the office of Chair of the Board of the Corporation, to hold such office until the next annual meeting of the Board and the election and qualification of his successor, or until his earlier death, resignation, or removal; and **BE IT FURTHER**

**RESOLVED,** that the prior appointment of Bret Taylor as President of the Corporation will end upon his appointment as Chair of the Board of the Corporation as of the date hereof. For the avoidance of doubt, the Corporation shall not have a President as of the date hereof.

## APPOINTMENT OF THE CHIEF EXECUTIVE OFFICER OF THE CORPORATION

**WHEREAS,** Article IV, Section 4.5 of the Bylaws, the individual serving as the chief executive officer of the corporation from time to time will serve as an ex officio director.

**WHEREAS,** pursuant to Article VI, Section 6.2 of the Bylaws, the Board may elect the officers of the Corporation.

**NOW, THEREFORE, BE IT RESOLVED,** that the Board hereby elects Sam Altman to the office of chief executive officer of the Corporation, to hold such office until the next annual meeting of the Board and the election and qualification of his successor, or until his earlier death, resignation, or removal; and **BE IT FURTHER**

**RESOLVED,** that, in accordance with Article IV, Section 4.5 of the Bylaws, Sam Altman will serve as an ex officio director for so long as he serves as chief executive officer of the Corporation.

## ADOPTION OF CORPORATE GOVERNANCE GUIDELINES

**WHEREAS,** pursuant to Article IV, Section 4.1 of the Bylaws, all powers and activities of the corporation shall be exercised and managed by the Board; and

**WHEREAS,** the Board has determined that it is in the best interest of the Corporation to adopt a set of corporate governance guidelines reflecting the Board's commitment to best-in-class governance practices in furtherance of the Corporation's charitable purposes.

**NOW, THEREFORE, BE IT RESOLVED,** that the Board hereby adopts the Corporate Governance Guidelines in the form attached hereto as Exhibit B.

## AMENDMENT AND RESTATEMENT OF CONFLICT OF INTEREST POLICY

**WHEREAS,** pursuant to Article VII, Section 7.3 of the Bylaws, each director and officer of the Corporation shall comply with any policies of the Corporation regarding conflicts of interest; and

OPENAI_MUSK00027805

**WHEREAS,** the Board has previously adopted an Amended and Restated Conflict of Interest Policy of the Corporation, effective as of February 19, 2019 (the "**Conflict of Interest Policy**"); and

**WHEREAS,** the Board has determined that it is in the best interest of the Corporation to amend and restate the Conflict of Interest Policy; and

**WHEREAS,** the Board has determined that it is in the best interest of the Corporation to delegate responsibility for oversight and administration of the Conflict of Interest Policy to the Audit Committee of the Board (the "**Audit Committee**").

**NOW, THEREFORE, BE IT RESOLVED,** that the Board hereby amends and restates the Conflict of Interest Policy in the form attached hereto as Exhibit C; and **BE IT FURTHER**

**RESOLVED,** that the Board hereby resolves to delegate responsibility for oversight and administration of the Conflict of Interest Policy to the Audit Committee.

# Redacted

**ESTABLISHMENT AND COMPOSITION OF NOMINATING AND GOVERNANCE COMMITTEE**

**WHEREAS,** pursuant to Article V, Section 5.1 of the Bylaws, the Board may, by resolution adopted by a majority of the directors then in office, create any number of Board committees, each consisting of one or more directors; and

**WHEREAS,** the Board has determined that it is in the best interest of the Corporation to create a Nominating and Governance Committee of the Board; and

**WHEREAS,** the Board has determined that it is in the best interest of the Corporation for the Nominating and Governance Committee to consist solely of Independent Directors (as defined in Article IV, Section 4.2 of the Bylaws).

**NOW, THEREFORE, BE IT RESOLVED,** that the Board hereby creates a Nominating and Governance Committee of the Board to have the duties and responsibilities as shall be set forth in a Nominating and Governance Committee Charter and to consist of such persons who qualify as Independent Directors as shall be elected to such committee, in each case, pursuant to a future resolution duly adopted by the Board.

## ESTABLISHMENT OF MISSION & STRATEGY COMMITTEE

**WHEREAS,** pursuant to Article V, Section 5.1 of the Bylaws, the Board may, by resolution adopted by a majority of the directors then in office, create any number of Board committees, each consisting of one or more directors; and

**WHEREAS,** the Board has determined that it is in the best interest of the Corporation to create a Mission & Strategy Committee of the Board responsible for the ongoing evaluation and strengthening of the strategy of the Corporation and other OpenAI entities for advancing the mission of OpenAI.

**NOW, THEREFORE, BE IT RESOLVED,** that the Board hereby creates a Mission & Strategy Committee of the Board to have the duties and responsibilities as shall be set forth in a Mission & Strategy Committee Charter and to consist of such persons as shall be elected to such committee, in each case, pursuant to a future resolution duly adopted by the Board.

HIGHLY CONFIDENTIAL

PRIVILEGED AND CONFIDENTIAL

**Exhibit A**

HIGHLY CONFIDENTIAL

OPENAI_MUSK00027808

PRIVILEGED AND STRICTLY CONFIDENTIAL

**AMENDED AND RESTATED BYLAWS**

**of**

**OpenAI, INC.**

**(_____, 2024)**

# TABLE OF CONTENTS

**Page**

ARTICLE I REGISTERED OFFICE AND PRINCIPAL PLACE OF BUSINESS ...................... 1

ARTICLE II MEMBERSHIP ........................................................................................................ 1

Section 2.1.  Conditions of Membership......................................................................... 1

Section 2.2.  Meetings and Actions of Members ............................................................ 1

Section 2.3.  Nonliability................................................................................................. 2

Section 2.4.  Nontransferability....................................................................................... 2

ARTICLE III MEMBERSHIP RIGHTS ...................................................................................... 2

Section 3.1.  Voting Rights ............................................................................................. 2

Section 3.2.  Inspection Rights........................................................................................ 2

Section 3.3.  Other Rights ............................................................................................... 2

ARTICLE IV BOARD OF DIRECTORS ..................................................................................... 3

Section 4.1.  Powers ........................................................................................................ 3

Section 4.2.  Number and Qualifications of Directors .................................................... 3

Section 4.3.  Election and Term of Office of Directors .................................................. 3

Section 4.4.  Vacancies ................................................................................................... 3

Section 4.5.  Ex Officio Director..................................................................................... 3

Section 4.6.  Resignation and Removal........................................................................... 3

Section 4.7.  Annual Board Meetings ............................................................................. 4

Section 4.8.  Special Meetings ........................................................................................ 4

Section 4.9.  Place of Meetings; Notice ......................................................................... 4

Section 4.10.  Waiver of Notice ....................................................................................... 4

Section 4.11.  Quorum....................................................................................................... 4

Section 4.12.  Action Without a Meeting.......................................................................... 4

Section 4.13.  Telephone or Electronic Meetings ............................................................ 5

Section 4.14.  Reliance ..................................................................................................... 5

Section 4.15.  Inspection .................................................................................................. 5

Section 4.16.  Board Compensation ................................................................................. 5

Section 4.17.  Executive Compensation............................................................................ 5

ARTICLE V COMMITTEES......................................................................................................... 5

Section 5.1.  Board Committees....................................................................................... 5

HIGHLY CONFIDENTIAL

Section 5.2.   Subcommittees ................................................................................................ 6

Section 5.3.   Advisory Committees ....................................................................................... 6

Section 5.4.   Audit Committee .............................................................................................. 6

Section 5.5.   Meetings .......................................................................................................... 7

ARTICLE VI OFFICERS .......................................................................................................... 7

Section 6.1.   Officers ........................................................................................................... 7

Section 6.2.   Election ........................................................................................................... 7

Section 6.3.   Removal .......................................................................................................... 7

Section 6.4.   Resignation ..................................................................................................... 8

Section 6.5.   Vacancies ....................................................................................................... 8

Section 6.6.   Chair .............................................................................................................. 8

Section 6.7.   Secretary ........................................................................................................ 8

Section 6.8.   Treasurer ........................................................................................................ 8

ARTICLE VII INTERESTED DIRECTOR OR OFFICER TRANSACTIONS ........................... 8

Section 7.1.   Voidability of Transactions .............................................................................. 8

Section 7.2.   Quorum ........................................................................................................... 9

Section 7.3.   Conflict of Interest Policy ................................................................................ 9

ARTICLE VIII INDEMNIFICATION AND INSURANCE ......................................................... 9

Section 8.1.   Indemnification ............................................................................................... 9

ARTICLE IX GRANTS ADMINISTRATION ........................................................................... 11

Section 9.1.   Purpose of Grants .......................................................................................... 11

Section 9.2.   Board of Directors Oversight .......................................................................... 11

Section 9.3.   Refusal; Withdrawal ....................................................................................... 11

Section 9.4.   Accounting ..................................................................................................... 11

Section 9.5.   Restrictions on Contributions ......................................................................... 11

ARTICLE X MISCELLANEOUS ............................................................................................ 11

Section 10.1.   Fiscal Year .................................................................................................... 11

Section 10.2.   Contracts, Notes, and Checks ....................................................................... 11

Section 10.3.   Amendments ................................................................................................. 12

Section 10.4.   Governing Law .............................................................................................. 12

HIGHLY CONFIDENTIAL                                                      OPENAI_MUSK00027811

AMENDED AND RESTATED BYLAWS
of
OpenAI, INC.


ARTICLE I
REGISTERED OFFICE AND PRINCIPAL PLACE OF BUSINESS

This corporation shall have and maintain at all times within the State of Delaware a registered office at such place as may be specified in the Certificate of Incorporation or subsequently designated by the Board. Notwithstanding the foregoing, this corporation's principal place of business may be different from its registered office, and may be located from time to time at any place as may be designated by the Board of Directors of this corporation, including a place outside of the State of Delaware. This corporation shall keep at its principal place of business current copies of the Certificate of Incorporation and Amended and Restated Bylaws (the "Bylaws") of this corporation, and in accordance with these Bylaws, the Secretary shall furnish copies of the Certificate of Incorporation and Bylaws to the members or directors requesting to inspect them.


ARTICLE II
MEMBERSHIP

Section 2.1.  Conditions of Membership. The conditions of membership shall be as follows: (1) the directors of this corporation then serving shall serve as the members of this corporation; (2) election to the Board shall constitute election to the membership of this corporation; and (3) the membership status of any director shall terminate immediately and without further corporate action upon such person's ceasing to be a director for any reason.

Section 2.2.  Meetings and Actions of Members.

(a)    Any action which may be taken at a meeting of the members, may be taken without a meeting, without prior notice, and without a vote if a consent or consents in writing, setting forth the action so taken, shall be dated and signed by all members entitled to vote on the action, and shall be delivered to this corporation by delivery to its registered office in this State, its principal place of business, or its Secretary. Any such writing may be signed in counterparts. Notwithstanding the foregoing, members may demonstrate their consent to actions through an electronic transmission, provided that the electronic transmission is delivered with information from which this corporation can determine: (A) that the electronic transmission was transmitted by the member (or by a person or persons authorized to act for the member); and (B) the date on which such member or authorized person or persons transmitted such electronic transmission. Such electronic transmissions may be delivered to the principal place of business of this corporation or to this corporation's Secretary if either such delivery has been approved by resolution of the Board of Directors and is made in the manner provided in the resolution.

(b)    Except as otherwise expressly provided in the Certificate of Incorporation or Bylaws or in the Delaware General Corporation Law, meetings and actions of the members shall be governed by and held and taken in accordance with the provisions of Article IV of these

Bylaws concerning meetings and actions of the Board of Directors, with such changes in content as are necessary to substitute the members for the Board of Directors.

Section 2.3.  <u>Nonliability</u>.  The members shall not be liable for the debts, liabilities, or obligations of this corporation.

Section 2.4.  <u>Nontransferability</u>. No member may transfer for value or otherwise his or her membership or any right arising therefrom. Appointing successor members shall not be deemed to be a transfer.

ARTICLE III
MEMBERSHIP RIGHTS

Section 3.1.  <u>Voting Rights</u>. Subject to these Bylaws, the members of this corporation shall have the following rights, as set forth in these Bylaws:

(a)     the exclusive right to elect any director and to set the number of authorized directors;

(b)     the exclusive right to remove a director;

(c)     the right to vote on any sale, lease, transfer, or other disposition of all or substantially all of the assets or properties of this corporation;

(d)     the right to vote on any merger of this corporation, but only to the extent required by the Delaware General Corporation Law;

(e)     the right to vote on dissolution of this corporation;

(f)     the exclusive right to vote on the amendment or repeal of these Bylaws, subject to and in accordance with Section 10.3 of these Bylaws; and

(g)     the right to vote on any other matters that may properly be presented to the members for a vote, pursuant to this corporation's Certificate of Incorporation, Bylaws, or action of the Board of Directors, or by operation of law.

Section 3.2.  <u>Inspection Rights</u>. The right of the members to have access to the membership list of this corporation or its other books and records shall be governed by Section 220 of the Delaware General Corporation Law.

Section 3.3.  <u>Other Rights</u>. In addition to the rights described in these Bylaws, the members of this corporation shall have any other rights afforded voting members under the Delaware General Corporation Law.

2

HIGHLY CONFIDENTIAL                                                                 OPENAI_MUSK00027813

ARTICLE IV
BOARD OF DIRECTORS

Section 4.1.  <u>Powers</u>. This corporation shall have powers to the full extent allowed by law. All powers and activities of this corporation shall be exercised and managed by the Board of Directors of this corporation directly or, if delegated, under the ultimate direction of the Board.

Section 4.2.  <u>Number and Qualifications of Directors</u>. The number of directors, including any ex officio director, shall be not less than one, with the exact authorized number of directors to be fixed from time to time by the members. A majority of the directors shall be Independent Directors. An "Independent Director" is a director who, at the relevant time, (i) is not, and during the prior three years was not, an officer or employee of the corporation, OAI Corporation, OpenAI Global, LLC, OpenAI GP, L.L.C., OpenAI Holdings, LLC, or OpenAI OpCo, LLC or their respective subsidiaries and (ii) in the determination of the Board, has no, and during the prior three years had no, material relationship with any of the foregoing entities that would interfere with the exercise of independent judgment in carrying out the responsibilities of a director of the corporation.

Section 4.3.  <u>Election and Term of Office of Directors</u>. Except for the initial directors appointed by the incorporator and any ex officio director, directors shall be elected from time to time by a majority of the votes of the members of this corporation present in person at the meeting and entitled to vote thereon. The effective date of any election shall be as provided in the action of the members. Directors, other than any ex officio director, shall be elected annually. Each director, other than any ex officio director, shall hold office until such director's successor is elected and qualified or until such director's earlier death, resignation or removal.

Section 4.4.  <u>Vacancies</u>. A vacancy shall be deemed to exist on the Board in the event that the actual number of directors is less than the authorized number for any reason. Vacancies may be filled by the members for the unexpired portion of the term. No reduction in the number of directors shall have the effect of removing any director prior to the expiration of his or her term of office.

Section 4.5.  <u>Ex Officio Director</u>. The individual serving as the chief executive officer of the corporation from time to time will serve as an ex officio director. The ex officio director will not qualify as an Independent Director. The ex officio director will be counted in determining the presence of a quorum and will be entitled to vote. Once a person ceases to be the chief executive officer of the corporation, such person shall cease to be a director of the corporation as an ex officio director. For the avoidance of doubt, no individual serving as chief executive officer of the corporation on an interim or acting basis will serve as an ex officio director, unless otherwise designated by the members.

Section 4.6.  <u>Resignation and Removal</u>. Any director may resign at any time upon notice given in writing addressed to any director or officer of this corporation other than himself or herself or by electronic transmission addressed to any member of the Board or officer of this corporation other than himself or herself. A resignation is effective when the resignation is delivered unless the resignation specifies a later effective date or an effective date determined

3

upon the happening of an event or events. Unless otherwise specified in that notice, the acceptance of the resignation shall not be necessary to make it effective. Any director may be removed at any time by the members, with or without cause.

Section 4.7.  <u>Annual Board Meetings</u>. A meeting of the Board of Directors shall be held at least once a year. Annual meetings shall be called by the Chair, the Secretary, or any two directors; or, if only one director is serving, by the sole director, and noticed in accordance with Section 4.9 of this Article.

Section 4.8.  <u>Special Meetings</u>. Special meetings of the Board may be called by the Chair, the Secretary, or any two directors; or, if only one director is serving, by the sole director, and noticed in accordance with Section 4.9 of this Article.

Section 4.9.  <u>Place of Meetings; Notice</u>. Meetings of the Board of Directors or any committee thereof may be held at a location inside or outside of the state of Delaware, or by means of remote communication, which is fixed by the Board of Directors or, in the case of a special meeting, by the person or persons calling the special meeting. Notice of the annual meeting and any special meetings of the Board of Directors shall state the date, place, and time of the meeting and shall be given to each director at least four days before any such meeting if given by first-class mail or forty-eight hours before any such meeting if given personally, by telephone, including a voice messaging system, or by other system of technology designed to record and communicate messages, by facsimile, or by electronic transmission.

Section 4.10.  <u>Waiver of Notice</u>. Whenever notice is required to be given under any provision of these Bylaws, a written waiver, signed by the person entitled to notice, or a waiver by electronic transmission by the person entitled to notice, whether before or after the time stated therein, shall be deemed equivalent to notice. Attendance of a person at a meeting shall constitute a waiver of notice of such meeting, except when the person attends a meeting for the express purpose of objecting, at the beginning of the meeting, to the transaction of any business because the meeting is not lawfully called or convened. Neither the business to be transacted at, nor the purpose of, any regular or special meeting of the Board of Directors or committee of the Board of Directors need be specified in any written waiver of notice or any waiver by electronic transmission. All waivers, consents, and approvals shall be filed with the corporate records or made a part of the minutes of the meeting. Such filing shall be in paper form if the minutes are maintained in paper form and shall be in electronic form if the minutes are maintained in electronic form.

Section 4.11.  <u>Quorum</u>. A majority of the total number of directors then in office shall constitute a quorum of the Board. Except as otherwise required by the Certificate of Incorporation, these Bylaws or the Delaware General Corporation Law, the act of a majority of the directors present at a meeting at which a quorum is present shall be the act of the Board. Each director shall be entitled to one vote.

Section 4.12.  <u>Action Without a Meeting</u>. Any action required or permitted to be taken at any meeting of the Board of Directors may be taken without a meeting if all members of the Board eligible to vote on such action pursuant to these Bylaws consent thereto in writing or by electronic transmission, and if the writing or writings or electronic transmission or

HIGHLY CONFIDENTIAL

OPENAI_MUSK00027815

transmissions are filed with the minutes of proceedings of the Board. Such filing shall be in paper form if the minutes are maintained in paper form and shall be in electronic form if the minutes are maintained in electronic form.

Section 4.13.    Telephone or Electronic Meetings. Directors may participate in a meeting through use of conference telephones, electronic video screen, or similar communications equipment so long as all directors participating in such meeting can hear one another. Participation in a meeting pursuant to this Section constitutes presence in person at such meeting.

Section 4.14.    Reliance. Any director or member of a committee of the Board shall, in the performance of his or her duties, be fully protected in relying in good faith upon the records of this corporation and upon such information, opinions, reports, or statements presented to this corporation by any of this corporation's officers or employees, or committees of the Board of Directors, or by any other person as to matters the director reasonably believes are within such other person's professional or expert competence and who has been selected with reasonable care by or on behalf of this corporation.

Section 4.15.    Inspection. Every director shall have the right to examine this corporation's list of members and its other books and records for a purpose reasonably related to the director's position as a director.

Section 4.16.    Board Compensation. The Board of Directors may authorize, by resolution, the payment to a director of a reasonable fee for services and expenses as a director and for attending meetings of the Board and Board Committees. The Board may authorize the advance or reimbursement of actual reasonable expenses incurred by a director in carrying out his or her duties as a director.

Section 4.17.    Executive Compensation. For any tax year in which this corporation is required to register and file reports with the Attorney General of the State of California, the Board of Directors (or a Board Committee) shall review any compensation packages (including all benefits) of the chief executive officer and the chief financial officer, regardless of job title, and shall approve such compensation only after determining that the compensation is just and reasonable. This review and approval shall occur when such officer is hired, when the term of employment of such officer is renewed or extended, and when the compensation of such officer is modified, unless the modification applies to substantially all of the employees of this corporation.

ARTICLE V
COMMITTEES

Section 5.1.    Board Committees. The Board of Directors may, by resolution adopted by a majority of the directors then in office, create any number of Board Committees, each consisting of one or more directors. The Board may designate one or more directors as alternate members of any committee, who may replace any absent or disqualified member at any meeting of the committee. Appointments to and removals from any Board Committee shall be made by any method determined by a majority of the directors then in office. Any such

5

committee, to the extent provided in the resolution of the Board of Directors, shall have and may exercise all the powers and authority of the Board of Directors in the management of the business and affairs of this corporation except that no such committee shall have the power or authority to:

       (a)    approve or adopt, or recommend to the members, any action or matter (other than the election or removal of directors) expressly required by these Bylaws, the Certificate of Incorporation, or the Delaware General Corporation Law to be submitted to members for approval;

       (b)    amend or repeal any resolution of the Board of Directors which by its express terms is not so amendable or repealable;

       (c)    adopt, amend, or repeal any bylaw of this corporation; or

       (d)    adopt amendments to the Certificate of Incorporation of this corporation.

       Section 5.2.   Subcommittees. Unless otherwise provided in the resolution of the Board of Directors designating the Board committee, such committee may create one or more subcommittees, each subcommittee to consist of one or more members of the committee, and delegate to a subcommittee any or all of the powers and authority of the committee.

       Section 5.3.   Advisory Committees. The Board of Directors may establish one or more Advisory Committees to the Board. The members of any Advisory Committee may consist of directors or non-directors and may be appointed as the Board determines. Advisory committees may not exercise the authority of the Board to make decisions on behalf of this corporation, but shall be restricted to making recommendations to the Board or Board Committees, and implementing Board or Board Committee decisions and policies under the supervision and control of the Board or Board Committee.

       Section 5.4.   Audit Committee. For any tax year in which this corporation is required to register and file reports with the Attorney General of the State of California and has gross revenues of $2 million or more, this corporation shall have an Audit Committee whose members shall be appointed by the Board of Directors, and who may include both directors and non-directors, subject to the following limitations: (a) members of any finance committee, shall constitute less than one-half of the membership of the Audit Committee; (b) the chair of the Audit Committee may not be a member of any finance committee; (c) the Audit Committee may not include any member of the staff, including the chief executive officer and the chief financial officer; (d) the Audit Committee may not include any person who has a material financial interest in any entity doing business with this corporation; and (e) Audit Committee members who are not directors may not receive compensation greater than the compensation paid to directors for their Board service. The Audit Committee shall: (1) recommend to the full Board of Directors for approval the retention and, when appropriate, the termination of an independent certified public accountant to serve as auditor, (2) subject to the approval of the full Board, negotiate the compensation of the auditor on behalf of the Board, (3) confer with the auditor to satisfy the Audit Committee members that the financial affairs of this corporation are in order,

HIGHLY CONFIDENTIAL                  OPENAI_MUSK00027817

(4) review and determine whether to accept the audit, and (5) approve performance of any non-audit services provided to this corporation by the auditor's firm.

Section 5.5.   <u>Meetings</u>.

(A)   <u>Of Board Committees</u>. Meetings and actions of Board Committees or subcommittees thereof shall be governed by and held and taken in accordance with the provisions of Article IV of these Bylaws concerning meetings and actions of the Board of Directors, with such changes in the content of those Bylaws as are necessary to substitute the Board Committee and its members for the Board of Directors. Minutes shall be kept of each meeting of any Board Committee and shall be filed with the corporate records.

(B)   <u>Of Advisory Committees</u>. Subject to the authority of the Board of Directors, Advisory Committees shall determine their own meeting rules and whether minutes shall be kept.

The Board of Directors may adopt rules for the governance of any Board or Advisory Committee not inconsistent with the provisions of these Bylaws.

ARTICLE VI
OFFICERS

Section 6.1.   <u>Officers</u>. The officers of this corporation shall be a Chair, a Secretary, and a Treasurer. This corporation may also have, at the discretion of the Board of Directors, such other officers as may be appointed by the Board of Directors with such titles as the Board will determine, including with respect to the individual serving as the chief executive officer, each charged with duties related to the administrative and executive management of the affairs of this corporation and such other powers and the performance of such duties as the Board may delegate from time to time. Any number of offices may be held by the same person, except that no person serving as the Secretary or the Treasurer may serve concurrently as the Chair; provided that any director who is not an Independent Director will be recused from voting on the election of any chief executive officer (or equivalent).

Section 6.2.   <u>Election</u>. The officers of this corporation shall be elected annually by the Board of Directors, and each shall serve at the pleasure of the Board, subject to the rights, if any, of an officer under any contract of employment; provided that any director who is not an Independent Director will be recused from voting on the election of any chief executive officer (or equivalent). Each officer shall hold office until his or her successor is elected and qualified or until his or her earlier death, resignation or removal.

Section 6.3.   <u>Removal</u>. Subject to the rights, if any, of an officer under any contract of employment, any officer may be removed, with or without cause, by the Board of Directors or by an officer on whom such power of removal may be conferred by the Board of Directors; provided that any director who is not an Independent Director will be recused from voting on the removal of any chief executive officer (or equivalent).

HIGHLY CONFIDENTIAL                                                          OPENAI_MUSK00027818

Section 6.4.   Resignation. Any officer may resign at any time by giving written notice to any member of the Board or officer of this corporation other than himself or herself or by electronic transmission addressed to any member of the Board or officer of this corporation other than himself or herself. A resignation is effective when delivered unless the resignation specifies a later effective date or an effective date determined upon the happening of an event or events, and unless otherwise specified in that notice, the acceptance of the resignation shall not be necessary to make it effective. Any resignation is without prejudice to the rights, if any, of this corporation under any contract to which the officer is a party.

Section 6.5.   Vacancies. A vacancy in any office for any reason shall be filled in the same manner as these Bylaws provide for election to that office.

Section 6.6.   Chair. The Chair shall preside at all meetings of the Board of Directors and shall have and exercise general charge and supervision of the affairs of this corporation and shall have such other powers and duties as may be prescribed by the Board or these Bylaws.

Section 6.7.   Secretary. The Secretary shall supervise the keeping of a full and complete record of the proceedings of the Board of Directors, its committees and the membership of this corporation, shall supervise the giving of such notices as may be proper or necessary, shall supervise the keeping of the minute books of this corporation, and shall have such other powers and duties as may be prescribed by the Board or these Bylaws.

Section 6.8.   Treasurer. The Treasurer shall supervise the charge and custody of all funds of this corporation, the deposit of such funds in the manner prescribed by the Board of Directors, and the keeping and maintaining of adequate and correct accounts of this corporation's properties and business transactions, shall render reports and accountings as required, and shall have such other powers and duties as may be prescribed by the Board or these Bylaws.

ARTICLE VII
INTERESTED DIRECTOR OR OFFICER TRANSACTIONS

Section 7.1.   Voidability of Transactions. No contract or transaction between this corporation and:

(a)     any of its directors or officers,

(b)     any organization in which one or more of this corporation's directors or officers has or have a financial interest, or

(c)     any organization for which a director or officer of this corporation also serves as a director or officer,

shall be void or voidable solely for that reason, or solely because the director or officer is present at or participates in the meeting of the Board or committee of the Board which authorizes the contract or transaction, or solely because any such director's or officer's vote was counted for such purpose, if:

HIGHLY CONFIDENTIAL

OPENAI_MUSK00027819

(i)     The material facts as to the director's or officer's relationship or interest, and as to the contract or transaction, are disclosed or are known to the Board or the committee, and the Board or committee in good faith authorizes the contract or transaction by the affirmative votes of a majority of the disinterested directors, even though the disinterested directors be less than a quorum; or

(ii)     The contract or transaction is fair to this corporation as of the time it is authorized, approved, or ratified by the Board or committee.

Section 7.2.  <u>Quorum</u>. Common or interested directors may be counted in determining the presence of a quorum at a meeting of the Board or of a committee which authorizes a contract or transaction described in Section 1 of this Article.

Section 7.3.  <u>Conflict of Interest Policy</u>. Each director and officer of this corporation shall comply with any policies of this corporation regarding conflicts of interest.

## ARTICLE VIII
## INDEMNIFICATION AND INSURANCE

Section 8.1.   <u>Indemnification</u>. To the fullest extent permitted by law:

(a)     This corporation shall indemnify any Indemnified Person, for and against all expenses (including attorneys' fees), judgments, Fines and amounts paid in settlement actually and reasonably incurred by that Indemnified Person in connection with any Action to the fullest extent permitted by law. Notwithstanding the foregoing, this corporation may indemnify any Indemnified Person seeking indemnification in connection with an Action (or part of an Action) initiated by that person only if that Action (or part of that Action) was authorized by the Board or initiated to enforce a right granted under this Article VIII.

(b)     This corporation shall advance expenses as incurred by any Indemnified Person in connection with the defense of any Action (or part of an Action) prior to its final disposition upon delivery to this corporation of an undertaking, by or on behalf of the person, to repay all amounts so advanced, if it shall ultimately be determined by final judicial decision from which there is no further right to appeal that such Indemnified Person is not entitled to be indemnified for such expenses under this Article VIII or otherwise.

(c)     This corporation may purchase and maintain insurance on behalf of any

Indemnified Person against any liability asserted against that person, whether or not this corporation would have the power to indemnify the person against that liability under the provisions of this Article VIII or otherwise.

(d)     This corporation's obligation, if any, to indemnify any Indemnified Person who was or is serving at the request of this corporation as a director, officer, partner, trustee, employee, or agent of another corporation, partnership, joint venture, trust, or other enterprise shall be reduced by any amount such Indemnified Person may collect as indemnification from such other corporation, partnership, joint venture, trust, or other enterprise.

9

(e)     The provisions of this Article VIII will be applicable to all Actions made or commenced after the adoption of this Article VIII, whether arising from acts or omissions occurring before or after its adoption. The provisions of this Article VIII will be deemed to be a contract between this corporation and each Eligible Person, and any repeal or modification of this Article VIII will not adversely affect any right or protection of any Indemnified Person in respect of any act or omission occurring prior to the time of the repeal or modification.

(f)     If any provision of this Article VIII will be found to be invalid or limited in application by reason of any law or regulation, that finding will not affect the validity of the remaining provisions of this Article VIII. The rights of indemnification and advancement provided in this Article VIII will neither be exclusive of, nor be deemed in limitation of, any rights to which any person described in Section l(a) or Section 1(b) of this Article VIII may otherwise be entitled or permitted by contract, the Certificate of Incorporation, vote of the Board, or otherwise, or as a matter of law, both as to actions in the person's official capacity and actions in any other capacity while holding that office.

(g)     This corporation may, by vote of the Board, provide indemnification and advancement of expenses to employees and agents of this corporation.

(h)     Definitions. As used in this Article VIII, the following terms will have the following meanings:

"Action" means any threatened, pending, or completed action, suit, proceeding or inquiry (brought in the right of this corporation or otherwise), whether civil, criminal, administrative, or investigative, and whether formal or informal, including appeals.

"Eligible Person" means: (1) as set forth in Section l(e) of this Article VIII, each director or officer of this corporation who serves or has served in that capacity at any time while the provisions of this Article and the relevant provisions of the laws of the State of Delaware and other applicable law, if any, are in effect; (2) any such individual who is a former or current director or officer of this corporation, who is serving or has served in that capacity at any time while the provisions of this Article Vill are in effect, and who while a director or officer of this corporation, is or was serving at the request of this corporation as a director, officer, partner, trustee, employee, or agent of another corporation, partnership, joint venture, trust, or other enterprise, which includes, without limitation, employee benefit plans; and (3) the foregoing persons' heirs, executors, guardians, administrators, assigns, and any other legal representatives in their capacity as such.

"Fines" includes, without limitation, any excise taxes assessed on a person with respect to an employee benefit plan.

"Indemnified Person" means: any Eligible Person who was, or is, a party, or is threatened to be made a party to, or is involved in (including as a witness), any Action by reason of the fact that the person is an Eligible Person.

10

OPENAI_MUSK00027821

## ARTICLE IX
## GRANTS ADMINISTRATION

Section 9.1.  <u>Purpose of Grants</u>. This corporation shall have the power to make grants and contributions and to render other financial assistance for the purposes expressed in this corporation's Certificate.

Section 9.2.  <u>Board of Directors Oversight</u>. The Board, or any person or persons on whom such power may be conferred by the Board, shall make policy with regard to grants. The Board shall retain ultimate control over all grants, contributions, and other financial assistance given by this corporation.

Section 9.3.  <u>Refusal; Withdrawal</u>. The Board, in its absolute discretion, shall have the right to refuse to make any grants or contributions, or to render other financial assistance, for any or all of the purposes for which the funds are requested. In addition, the Board, in its absolute discretion, shall have the right to withdraw its approval of any grant at any time and use the funds for other purposes within the scope of the purposes expressed in the Certificate, subject to any charitable trust imposed on such funds and any rights of third parties under any contract relating to such grant.

Section 9.4.  <u>Accounting</u>. The Board shall determine under what circumstances to require that grantees furnish a periodic accounting to show that the funds granted by this corporation were expended for the purposes that were approved by the Board.

Section 9.5.  <u>Restrictions on Contributions</u>. Unless otherwise determined by resolution of the Board in particular cases, this corporation shall retain complete control and discretion over the use of all contributions it receives, and all contributions received by this corporation from solicitations for specific grants shall be regarded as for the use of this corporation and not for any particular organization or individual mentioned in the solicitation. This corporation may accept contributions earmarked by the donor exclusively for allocation to one or more foreign organizations or individuals only if the Board of this corporation: (a) has determined that the specific charitable activity for which the donation was made furthers this corporation's exempt purposes; (b) has approved in advance disbursements of funds to support such charitable activity; (c) retains discretion and control as to the use of the contributions received by this corporation; and (d) exercises appropriate supervision to ensure funds are actually spent for the intended purposes.

## ARTICLE X
## MISCELLANEOUS

Section 10.1.  <u>Fiscal Year</u>. The fiscal year of this corporation shall end each year on December 31.

Section 10.2.  <u>Contracts, Notes, and Checks</u>. All contracts entered into on behalf of this corporation must be authorized by the Board of Directors or any person or persons on whom such power may be conferred by the Board, and, except as otherwise provided by law, every check, draft, promissory note, money order, or other evidence of indebtedness of this

11

OPENAI_MUSK00027822

corporation shall be signed by any person or person on whom such power may be conferred by the Board.

Section 10.3. <u>Amendments</u>. Only the members may amend or repeal the Bylaws of this corporation.

Section 10.4. <u>Governing Law</u>. These Bylaws shall be construed and interpreted in accordance with the laws of the State of Delaware as amended from time to time, so as to give full effect and validity to the intent and meaning of these Bylaws.

HIGHLY CONFIDENTIAL

OPENAI_MUSK00027823

## CERTIFICATE OF SECRETARY

I, Chris Clark, certify that I am Secretary of OpenAI, Inc., a Delaware nonstock corporation, and that the above Amended and Restated Bylaws, consisting of 12 pages, are the Amended and Restated Bylaws of this corporation as amended and restated by unanimous written consent of the members, effective as of _____, 2024.

DATED: _____

_____
Chris Clark, Secretary

HIGHLY CONFIDENTIAL

PRIVILEGED AND CONFIDENTIAL

**Exhibit B**

HIGHLY CONFIDENTIAL

OPENAI_MUSK00027825

## OPENAI CORPORATE GOVERNANCE GUIDELINES[1]

### I.    Role of the Board and Management

The board of directors (the "Board") of OpenAI, Inc. (the "Company") has ultimate responsibility for overseeing the management of the Company, the entities directly or indirectly controlled by the Company, including OpenAI GP, L.L.C., OpenAI Holdings, LLC, OpenAI Corporation, OpenAI Global, LLC and their respective subsidiaries (collectively, "OpenAI"). The fundamental role of the Board is to exercise its business judgment to advance the mission of OpenAI, which is to ensure that artificial general intelligence benefits all of humanity, including by conducting and/or funding artificial intelligence research, as further articulated by the Board from time to time (the "Mission").

In furtherance of its role, the Board oversees and advises the management team of OpenAI. The management team is charged with the day-to-day conduct of OpenAI's operations.

### II.    Board Composition, Selection and Independence

At all times, a majority of the directors will be Independent Directors. An Independent Director is a director who (i) is not an officer or employee of OpenAI and (ii) in the determination of the Board, has no material relationship with OpenAI that would interfere with the exercise of independent judgment in carrying out the responsibilities of a director of the Company. The Independent Directors may periodically meet in executive sessions without management or non-independent directors present, including at any time requested by an Independent Director. Such meetings shall not include the adoption of any resolutions binding on the Board.

The Board seeks to reflect a variety of perspectives and skills derived from high quality business and professional experience to advance the Mission. In assessing the composition of the Board, the specific needs of the Board will be considered together with the knowledge, skills, backgrounds, experience, tenure and performance of the current directors. Prospective directors will be evaluated on the basis of (a) minimum individual qualifications, including strength of character, sound judgment, familiarity with OpenAI's business, industry and Mission, independence of thought and an ability to work collegially, and (b) any other factors they consider appropriate, which may include age, gender and ethnic and racial background, existing commitments to other businesses, potential conflicts of interest with other pursuits, career experience, relevant technical skills, relevant business, policy or government expertise and financial and accounting background. All directors are expected to possess the highest personal and professional ethics, integrity and values, and to be aligned with the Mission.

---

[1] These Corporate Governance Guidelines (the "Guidelines") have been adopted by the Board to reflect the Board's strong commitment to sound corporate governance practices and to provide a structure within which the Board and OpenAI management can effectively pursue the Mission. These Guidelines are intended to serve as a flexible framework within which the Board may operate, not as a set of binding legal obligations, and should be interpreted in the context of all applicable laws and the Company's governing documents and other policies. The Guidelines will be reviewed by the Board from time to time to ensure that they effectively promote the Company's ability to pursue the Mission.

### III.  Expectations of Directors

- *Commitment and Attendance.*  Directors must have sufficient time available to perform all Board responsibilities, and all directors are expected to use best efforts to attend all meetings of the Board and applicable Committee meetings.  Directors are encouraged to attend meetings in person, but may also attend by telephone or video conference.

- *Participation in Meetings.*  Each director should be sufficiently familiar with OpenAI, including its financial statements and capital structure, its Mission and the risks it faces, to facilitate active and effective participation in the deliberations of the Board.  Directors should also review the materials provided by management and advisors in advance of meetings and should arrive prepared to discuss the issues presented.

- *Loyalty and Conflicts.*  All directors owe a duty of loyalty to the Company.  Directors are expected to at all times comply with the Company's Amended and Restated Conflict of Interest Policy.

- *Outside Activities.*  Serving on the Board requires significant time and attention.  Each director is expected to ensure that other commitments do not conflict with or materially interfere with his or her service as a director.

- *Confidentiality.*  The proceedings and deliberations of the Board and its Committees are confidential.  Each director will maintain the confidentiality of information received in connection with his or her service as a director, including Board and Committee communications, discussions and materials.

### IV.  Director Orientation and Continuing Education

Management, working with the Board, will provide an orientation process for new directors and coordinate director continuing education programs.  The orientation programs are designed to familiarize new directors with the Mission and OpenAI's operations and assist new directors in developing and maintaining the skills necessary or appropriate for the performance of their responsibilities.  Management may prepare additional continuing education sessions for directors on relevant matters.

### V.  Board Meetings

The Board currently plans at least four (4) meetings each year, with further meetings to occur at the discretion of the Board.  The Chair of the Board of the Company (the "Chair"), in consultation with management, sets the agenda for Board meetings with the understanding that other members of the Board may provide suggestions for agenda items that are aligned with the advisory and monitoring functions of the Board.  Any director may request that an item be included on the agenda.

HIGHLY CONFIDENTIAL                                                      OPENAI_MUSK00027827

## VI.    Board Committees

The Board will establish committees from time to time as necessary or appropriate, which may include standing committees such as an Audit Committee, a Compensation Committee, or a Budget and Finance Committee and other new committees as it deems appropriate (each, a "Committee"). Committee members will be appointed by the Board, with consideration given to rotating Committee members periodically. Each standing Committee shall have its own charter setting forth the purpose and duties of such Committee and the authority granted to such Committee by the Board. The chair of each Committee, in consultation with the Committee members and management, will determine the frequency and length of the Committee meetings consistent with any requirements set forth in the Committee's charter and will develop each committee meeting's agenda.

## VII.    Board and Committee Evaluations

The Board and each Committee will perform annual self-evaluations, and in connection therewith, the directors will provide their assessments of the effectiveness of the Board and the Committees on which they serve. The individual assessments will be summarized and reported for discussion to the full Board and the Committees.

## VIII.    Board Access to Management and Advisors

The Independent Directors should have access to OpenAI employees to obtain the information necessary to fulfill their duties. Inquiries should generally be directed to the Chair and the Chief Executive Officer of the Company and of OpenAI (the "CEO"), for further action, but may also be directed to senior executives of the Company, with a copy to the Company Secretary, unless such copy is considered inappropriate or unnecessary under the circumstances. Management is encouraged to, in consultation with the Board, invite OpenAI employees to Board meetings where employee participation would provide the Board with additional insight into the matters being considered. The Board and each Committee has the authority to retain outside financial, legal or other advisors as they deem appropriate, and the authority to obtain advice, reports or opinions from internal and external counsel and advisors without consulting with or obtaining approval from management.

## IX.    CEO Evaluation and Succession Planning

The Board will, either directly or through a committee of the Board, conduct a review at least annually of the performance of the CEO and establish the specific performance goals and objectives as to which the performance of the CEO is evaluated. The Board also shall, either directly or through a committee of the Board, conduct a periodic review of succession planning, including policies and principles for CEO selection and succession in the event of an emergency or the retirement of the CEO. The Committee shall report its recommendations to the Board.

## X.    Communication with External Parties

The CEO is responsible for establishing effective communications with all interested parties, including members of OpenAI. It is the policy of OpenAI that management speaks for

HIGHLY CONFIDENTIAL                                                    OPENAI_MUSK00027828

OpenAI, or, where appropriate, that the Chair speaks on behalf of the Board.  From time to time, other Independent Directors may engage with third parties, including the media, on behalf of the Company; such events or contacts should be coordinated in advance with the appropriate member of management (e.g., for media contacts, the member of management responsible for public relations; for investor contacts, the member of management responsible for investor relations) and the Chair, with copy to the Company Secretary, unless such copy is considered inappropriate or unnecessary under the circumstances.  Directors generally should refer any inquiry from the media, or other third parties, to the Chair and CEO, with a copy to the Company Secretary, again unless such copy is considered inappropriate or unnecessary under the circumstances.  Although directors may believe it necessary or desirable to make statements relating to OpenAI under certain circumstances, directors are expected to recognize that in general, and in view of the profile of OpenAI, statements by directors relating to OpenAI should be coordinated with the Company and take into account the potential effect on the Mission. Directors are urged to consult either internal or external counsel to the Company with any questions.  This policy is not intended to, and does not, restrict the directors' or any employee's ability to communicate in the context of a whistleblower, pursuant to the Company's policies.

<p style="text-align:center">*     *     *     *     *</p>

HIGHLY CONFIDENTIAL                                                                OPENAI_MUSK00027829

PRIVILEGED AND CONFIDENTIAL

**Exhibit C**

HIGHLY CONFIDENTIAL

OPENAI_MUSK00027830

# OPENAI
# AMENDED AND RESTATED CONFLICT OF INTEREST POLICY

## Article I:    Purpose

As a charitable organization, OpenAI, Inc. (the "Charity") seeks to comply with the law and adhere to the highest ethical standards. This conflict of interest policy is designed to foster public confidence in the integrity of the Charity and to protect the Charity's interests when the Charity and/or any of its affiliates, including, for the purposes of this policy, OpenAI GP, L.L.C., OpenAI Holdings, LLC, OpenAI Corporation, OpenAI Global, LLC, OpenAI OpCo, LLC, and their affiliates and successors (collectively with the Charity, "OpenAI"), is contemplating entering a transaction that might benefit certain insiders and related persons of OpenAI.

The purpose of this policy is not to prohibit all transactions that may present a conflict of interest. This policy provides procedures to permit OpenAI to analyze and manage conflicts of interest.

This policy is intended to supplement but not replace any applicable state and federal laws governing conflicts of interest. In particular, the procedures in this policy supplement but do not replace the "Excess Benefit Transaction Rules" of section 4958 of the Internal Revenue Code of 1986, as amended (the "Code").[1]

The Audit Committee (the "Audit Committee") of the Board of Directors (the "Board") of the Charity, supported by and in coordination with OpenAI's General Counsel (the "Compliance Officer"), shall be responsible for overseeing the administration of this conflict of interest policy.

## Article II:    Definitions

Insider. "Insider" means a person with substantial influence over the Charity. The following persons are "Insiders" for purposes of this policy:

1.   Each member of the Board.

2.   Corporate officers of the Charity (including the Chair of the Board, Secretary, and Treasurer) and any executive officers, such as the Chief Executive Officer, and any person with equivalent responsibilities (whether or not the person is an officer of the Charity under the Charity's Bylaws or the Delaware General Corporation Law).

3.   Any other person whom the Board, based on facts and circumstances, determines has substantial influence over the Charity. Such persons may include a founder of or a substantial contributor to the Charity, a person with managerial authority over the Charity, or a person with control over a significant portion of the budget of the Charity, and/or OpenAI.

4.   All Key Employees (as defined below).

---

[1] Under the Excess Benefit Transaction Rules, if a direct or indirect transaction of the Charity results in an excess economic benefit to a Disqualified Person, the Disqualified Person is subject to a penalty excise tax. If the transaction is not timely undone, the Disqualified Person is subject to an additional penalty excise tax. Penalty excise taxes are imposed on Disqualified Persons regardless of whether they knowingly participated in an excess benefit transaction. Directors and officers of the Charity who knowingly participate in an excess benefit transaction are also subject to penalty excise taxes. Repeated or material violations of the Excess Benefit Transaction Rules could cause the Charity to lose its tax exemption.

5.   Any person who met any of the above definitions at any time during the five years before the relevant transaction.

<u>Disqualified Person</u>.  "Disqualified Person" means Insiders and any person described in either of the following two categories:

(a)  Family Members (as defined below) of any Insider.

(b)  An entity in which any combination of Insiders and/or Family Members of Insiders holds more than 35 percent of the combined voting power, if a business corporation; profits interests, if a partnership; or beneficial interest, if a trust or estate.

<u>Family Members</u>.  "Family Member" means spouses, siblings, ancestors, children, grandchildren, great-grandchildren, and the spouses of siblings, children, grandchildren, and great-grandchildren.

<u>Key Employee</u>.  "Key Employee" means an employee of the Charity whose total annual compensation (including benefits) from the Charity and its affiliates is more than $150,000 **and** (i) who has responsibilities or substantial influence over the Charity similar to that of directors or officers; **or** (ii) manages a program that represents 10% or more of the activities, assets, income, or expenses of the Charity; **or** (iii) has or shares authority to control 10% or more of the Charity's capital expenditures, operating budget, or compensation for employees.  The Board shall annually review and confirm the list of Key Employees.

<u>Named Executive Officer</u>.  "Named Executive Officer" means the employees of OpenAI from time to time serving as (x) the Chief Executive Officer, Chief Operating Officer, Chief Technology Officer, Chief Strategy Officer, and President of OpenAI, if any, and (y) any other officer(s) of OpenAI so designated by the Board. For the avoidance of doubt, an individual serving as a corporate officer of the Charity who is not employed by OpenAI will not be deemed to be a Named Executive Officer unless otherwise determined by the Board.

<u>Interest</u>.  "Interest" means any material financial commitment, investment, obligation, relationship, or economic or other benefits or interests.  For this purpose, "Interest" shall not include any Passive Investment (as defined below) or any ownership or beneficial interests below 5%.  Examples of other interests include, for example, service on the board of an entity other than OpenAI.

<u>Passive Investments</u>.  "Passive Investments" means passive investments in mutual funds, index funds, venture funds, or similar pooled investment vehicles which hold a diversified portfolio of investments that do not involve active management or decision-making by any applicable Disqualified Person (and any investments by such vehicles).

<u>Conflict of Interest</u>.  A "Conflict of Interest" exists in any instance in which a Disqualified Person's Interest reduces the likelihood that an Insider may act impartially and in the best interests of the Charity.

<u>OpenAI Transaction</u>.  An "OpenAI Transaction" means any Transaction (i) between OpenAI and a Disqualified Person or (ii) between OpenAI and a third party in which a Disqualified Person has an Interest. For this purpose, "OpenAI Transaction" shall not include either (a) compensation paid by OpenAI in connection with the employment of any Disqualified Person that is otherwise approved in accordance with OpenAI's standard employment practices, including compensation approved by the Board or a duly authorized committee thereof; or (b) transactions between OpenAI and a broad base of employees that includes one or more Disqualified Persons, and in which the Disqualified Persons receive the same terms as employees who are not Disqualified Persons.

HIGHLY CONFIDENTIAL                                                    OPENAI_MUSK00027832

<u>Pre-Approval Transaction</u>.  "Pre-Approval Transaction" means any of the following transactions:

1.   Acceptance by a Named Executive Officer of a role as an officer, director, employee, or consultant to any person (other than OpenAI), whether non-profit or for-profit, whether on a compensated or non-compensated basis.

2.   Acceptance by a member of the Board or a Named Executive Officer of a gift of more than $200 from any person who is, or is seeking to become, party to any transaction with OpenAI. For this purpose, "gifts" shall not include customary events relating to such member of the Board's or Named Executive Officer's role as a director or employment by OpenAI, as applicable, in the performance of his or her duties, such as business meals and appearances at conferences or similar events.

3.   Pursuit by a member of the Board or a Named Executive Officer of an investment opportunity in his or her personal capacity in a company (i) that is reasonably perceived to be in competition with OpenAI or (ii) that OpenAI is considering, or would reasonably be expected to consider, an investment in or similar strategic partnership with, other than in each case (a) Passive Investments and (b) investments in companies where the aggregate ownership does not exceed 1%. Pursuit of opportunities by (x) any Disqualified Person living in the same household as a member of the Board or a Named Executive Officer, (y) any entity controlled by a member of the Board or a Named Executive Officer or any of its Disqualified Persons living in the same household as such member of the Board or Named Executive Officer, as applicable, or (z) any Disqualified Persons of a member of the Board or a Named Executive Officer if the investment is for the benefit of the member of the Board or Named Executive Officer, as applicable, and such benefit is known or should reasonably be known by such member of the Board or Named Executive Officer, as applicable, will also be considered a Pre-Approval Transaction.

<u>Reportable Transaction</u>.  "Reportable Transaction" means acceptance by any Insider (other than a member of the Board or a Named Executive Officer) of a role as an officer, director, employee, or consultant to any person (other than OpenAI), whether non-profit or for-profit, whether on a compensated or non-compensated basis.

<u>Person</u>.  "Person" means an individual or entity, including a trust, estate, partnership, association, company, or corporation.

<u>Transaction</u>.  "Transaction" means any transaction, agreement, or other arrangement, which terms will be construed broadly for the purposes of this policy.

<div align="center"><b>Article III:        Procedures</b></div>

1.   *Duty to Disclose*

Each Insider shall disclose to the Audit Committee all material facts regarding any and all (i) Interests of the Insider and of any of their Disqualified Persons relevant to any OpenAI Transaction, (ii) any Pre-Approval Transaction, and (iii) any Reportable Transaction.  The Insider shall make disclosures promptly upon learning of the proposed transaction.  Disclosures on behalf of Disqualified Persons who are not themselves Insiders shall be made by their related Insiders.  Each Insider shall discharge their obligations pursuant to this article by disclosing the applicable facts to the Compliance Officer, who shall report such disclosures to the Audit Committee, including, where applicable, a recommendation with respect to whether a Conflict of Interest may exist.

Insiders shall use reasonable efforts (i) to determine whether an Interest exists with respect to a transaction and (ii) to remain current on the activities of their Disqualified Persons, and are encouraged to

HIGHLY CONFIDENTIAL                                                      OPENAI_MUSK00027833

err on the side of disclosing when there is any reasonable doubt as to whether an Interest exists. It is possible that an Insider either will not be aware of an Interest or the relationship between a personal investment and an OpenAI Transaction. Insiders shall not be held responsible under this policy for Conflicts of Interest about which they either did not have knowledge or, acting reasonably, did not recognize that an Interest existed. However, Insiders must be aware that the Excess Benefit Transaction Rules do not excuse Disqualified Persons from penalty excise taxes due to lack of awareness of either the Excess Benefit Transaction Rules or any particular excess benefit transaction.

2.  *Procedures to Address Possible Conflicts of Interest*

The Audit Committee, in coordination with the Compliance Officer, shall follow the following procedures with respect to each disclosure made regarding any OpenAI Transaction or any Pre-Approval Transaction.

Fact Gathering.  The Audit Committee, in consultation with the Compliance Officer, shall ascertain that all material facts regarding such transaction and any Disqualified Person's Interests known to the Insider have been disclosed to the Audit Committee.  The Audit Committee shall compile appropriate data to evaluate whether such transaction is fair and reasonable to the Charity and in its best interests, which may include investigating alternatives that present no Conflict of Interest.

Meeting.  If a meeting is requested by the Audit Committee regarding such transaction, the Audit Committee may ask questions of and receive presentation(s) from the Insider(s) and any other Disqualified Person(s) with an Interest during such meeting.  The Audit Committee shall deliberate and vote on the transaction in the absence of all such Insider(s) and other Disqualified Person(s).

Determination.  The Audit Committee, in the absence of the Insider(s) and Disqualified Person(s), shall determine whether the Interest constitutes a Conflict of Interest, and if so, whether the such transaction is nevertheless in the Charity's best interest, for its own benefit, and fair and reasonable to the Charity taking into account the relevant information and facts.  In the case of a Pre-Approval Transaction involving a potential investment by a member of the Board or a Named Executive Officer, the Audit Committee may determine that the investment opportunity should be evaluated on behalf of OpenAI before authorizing the member of the Board or Named Executive Officer to proceed.  Following such determination, a majority of the disinterested members of the Audit Committee then in office may approve the transaction by an affirmative vote.

## Article IV:    Records of Proceedings

The minutes of any meeting and/or any action by the Audit Committee pursuant to this policy shall contain the name of each Disqualified Person who disclosed or was otherwise determined to have an Interest in a transaction; the nature of the Interest and whether it was determined to constitute a Conflict of Interest; any alternative transactions considered; the members of the Audit Committee who were present during the debate on the transaction, those who voted on it, and to what extent Disqualified Persons were excluded from the deliberations; any comparability data or other information obtained and relied upon by the Audit Committee and how the information was obtained; and the result of the vote, including, if applicable, the terms of the transaction that was approved and the date it was approved.

The records must be prepared by the later of the next meeting of the Audit Committee or 60 days after the final action of the Audit Committee with respect to the transaction, and must be approved by the Audit Committee within a reasonable time afterwards.

HIGHLY CONFIDENTIAL                                                                    OPENAI_MUSK00027834

### Article V:    Annual Disclosure and Compliance Statements

Each director, each officer, the top management official, the top financial official, and each Key Employee of the Charity, and others that the Charity may identify, shall annually sign a statement (in the form attached to this policy as Exhibit A) that:

● affirms that the person has received a copy of this conflict of interest policy, has read and understood the policy, and has agreed to comply with the policy; and

● for certain individuals, provides disclosures as required by the policy.

A summary of all such statements and supplements shall be reviewed by the Audit Committee at its next meeting.

All such statements by directors and officers shall be filed with the corporate records of the Charity, which may be jointly managed by the Compliance Officer and/or Corporate Secretary, and retained in accordance with the Charity's document retention policies.

### Article VI:    Past Transactions; Violations

If the Audit Committee has reasonable cause to believe that an Insider failed to disclose an actual or possible Conflict of Interest, including one arising from a transaction with a related Disqualified Person known to the Insider, it shall inform the Insider of the basis for this belief and give the Insider an opportunity to explain. If, after hearing the Insider's response and further investigating as the circumstances warrant, the Audit Committee determines that a Conflict of Interest exists, it may take such action as it deems appropriate to address the Conflict of Interest and/or the Insider's failure to disclose such matter.

Where a transaction involving a Conflict of Interest is discovered after it has already occurred or begun (because, for example, the Interest was not disclosed prior to the transaction, an Insider was not aware that an Interest existed, or the Charity's leadership did not realize that a review was necessary), the Audit Committee shall conduct a review as described above, and determine whether further action is possible or warranted, including under the Excess Benefit Transaction Rules. In appropriate cases, the Audit Committee may determine, upon completion of the review, that ratification of the transaction is in the Charity's best interest, for its own benefit, and is fair and reasonable to the Charity. Records with respect to any such review and/or determination shall be maintained in accordance with the policies described above. In cases of failure by an Insider to comply in any material respect with the terms of this policy, the Audit Committee may consider disciplinary action. Such consideration shall include an opportunity for the Insider to discuss the facts and circumstances relating to the alleged noncompliance. In considering whether to take any such disciplinary action, the Audit Committee shall take into account, among any other matters it deems relevant, the relative significance of the noncompliance to the Charity and OpenAI, whether the Insider has failed more than once to comply with this policy, the nature of the noncompliance, including the materiality of any related transaction to the Charity and OpenAI or whether such noncompliance has otherwise caused harm to the Charity and OpenAI, whether the Insider knew or should have known of the facts giving rise to the Interest and potential Conflict of Interest, and the Insider's position at the Charity or OpenAI, as the case may be.

### Article VII:    Political Campaigns

As an organization exempt from federal income tax under Code section 501(c)(3), the Charity is prohibited from participating or intervening in any political campaign on behalf of or in opposition to any

HIGHLY CONFIDENTIAL

OPENAI_MUSK00027835

candidate for public office.  Accordingly, the Charity will not publish or distribute statements or provide funds, goods or services to any candidate for public office.  Insiders are not permitted to act, or purport to act, on behalf of the Charity in violation of the prohibition on political campaign intervention.

### Article VIII:    Annual Reviews

The Audit Committee shall authorize and oversee an annual review of the administration of this conflict of interest policy.  The review may be written or oral.  The review shall consider the level of compliance with the policy, the continuing suitability of the policy, and whether the policy should be modified and improved.

Version dated [DATE, 2024]

HIGHLY CONFIDENTIAL                                                      OPENAI_MUSK00027836

<u>Exhibit A</u>

**OpenAI, Inc.**

**CONFLICT OF INTEREST POLICY:**
**ACKNOWLEDGMENT AND DISCLOSURE STATEMENT**

OpenAI, Inc. (the "Charity") follows a conflict of interest policy designed to foster public confidence in our integrity and to protect our interest when we are contemplating entering a transaction or arrangement that might benefit a director, a corporate officer, an executive officer, any of our key employees, any person with substantial influence over the Charity, or other Disqualified Persons. Any capitalized terms not otherwise defined in this Acknowledgment and Disclosure Statement have the respective meanings given to them in the Charity's conflict of interest policy.

**Part I.  Acknowledgment of Receipt**

<div style="border:1px solid black; padding:10px;">

I hereby acknowledge that I have received a copy of the conflict of interest policy of the Charity, have read and understood it, and agree to comply with its terms. I agree to promptly report any actual or potential Interest as and when it arises in accordance with the conflict of interest policy.

_____

Signature                                                                    Date

_____

Printed Name

</div>

**Part II. Disclosure of Interests and Relationships (directors, corporate officers, executive officers, persons determined to have substantial influence over the Charity, and key employees <u>only</u>)**

We are required annually to file Form 990 with the Internal Revenue Service (the "IRS"), and the form we file is available to the public. In order to complete Form 990 fully and accurately, we need each officer, director, and key employee to disclose the information requested in this Part II. If you are not a director, corporate officer, or executive officer of the Charity, we have determined that you qualify as a key employee under IRS definitions or otherwise are in a position to exercise substantial influence over the Charity.

A "conflict of interest," for purposes of Form 990, arises when a person in a position of authority over an organization, such as an officer, director, or key employee, may benefit financially from a decision he or she could make in that capacity, including indirect benefits such as to family members or businesses with which the person is closely associated.

The purpose of this disclosure is to provide the Audit Committee of the Board of Directors of the Charity with a meaningful opportunity to determine whether a conflict of interest exists by disclosing any interest that could give rise to a conflict of interest. Complete, accurate disclosure gives the governing body information it needs to fulfill its fiduciary obligations and to make decisions that are in the best interest of the Charity.

HIGHLY CONFIDENTIAL                                                                    OPENAI_MUSK00027837

<u>Part II</u> Please check ONE of the following boxes:

☐     My interests and relationships have not changed since my last disclosure of interests.  [***Proceed to signature block below.  Do not complete the tables.***]

<p align="center">**OR**</p>

☐     I hereby disclose or update my interests and relationships that could give rise to a conflict of interest: [***Complete the table below.  Use additional pages as needed.***]

| Relationships | Names of those presenting a potential conflict of interest |
|---|---|
| Spouse/domestic partner, living ancestors, brothers and sisters (whether whole or half-blood), children (whether natural or adopted), grandchildren, great-grandchildren, and spouses/domestic partners of brothers, sisters, children, grandchildren, and great grand-children | |
| An entity in which I and any combination of the persons listed above holds more than 35 percent of the combined voting power, if a business corporation; profits interests, if a partnership; or beneficial interest, if a trust or estate | |

| Type of interest | Description of interest that could lead to a conflict of interest |
|---|---|
| Transactions or arrangements with OpenAI | |
| Transactions or arrangements with any person, business, or company having business dealings or a relationship with OpenAI | |
| Affiliations with other organizations (including, without limitation, any roles as | |

HIGHLY CONFIDENTIAL

OPENAI_MUSK00027838

| an officer, director, employee, or consultant) | |
|---|---|
| | |

I am not aware of any interest involving me or a family member that could present a conflict of interest that I have not disclosed either above or in a previous disclosure statement.

_____

Signature                                            Date

HIGHLY CONFIDENTIAL

OPENAI_MUSK00027839

**Part III.     Disclosure of Personal Investments (Members of the Board and Named Executive Officers (as defined in the conflict of interest policy) <u>only</u>)**

<u>Part III</u> Please check ONE of the following boxes:

☐      My personal investments have not changed since my last disclosure.  [***Proceed to signature block below.  Do not complete the tables.***]

<div align="center">**OR**</div>

☐      I hereby disclose or update my personal investments that could give rise to a conflict of interest: [***Complete the table below.  Use additional pages as needed.***]

| Type of interest | Description of interest that could lead to a conflict of interest | | |
|---|---|---|---|
| Personal investment holdings (subject to the exceptions set forth in the conflict of interest policy), in companies (i) that are reasonably perceived to be in competition with OpenAI or (ii) that OpenAI is considering, or would reasonably be expected to consider, investments in or similar strategic partnerships with (include name of the company, most current investment value, and most current percentage ownership) | *Company* | *Investment Value* | *Percentage Ownership* |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

I am not aware of any personal investment involving me or a family member of my household that could present a conflict of interest that I have not disclosed either above or in a previous disclosure statement.

_____

Signature                                               Date

HIGHLY CONFIDENTIAL                                            OPENAI_MUSK00027840