JORDAN ETH (CA SBN 121617)
JEth@mofo.com
WILLIAM FRENTZEN (CA SBN 343918)
WFrentzen@mofo.com
DAVID J. WIENER (CA SBN 291659)
DWiener@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105
Telephone:    (415) 268-7000
Facsimile:    (415) 268-7522

WILLIAM SAVITT (admitted *pro hac vice*)
WDSavitt@wlrk.com
BRADLEY R. WILSON (admitted *pro hac vice*)
BRWilson@wlrk.com
SARAH K. EDDY (admitted *pro hac vice*)
SKEddy@wlrk.com
STEVEN WINTER (admitted *pro hac vice*)
SWinter@wlrk.com
NATHANIEL CULLERTON (admitted *pro hac vice*)
NDCullerton@wlrk.com
WACHTELL, LIPTON, ROSEN & KATZ
51 West 52nd Street
New York, NY 10019
Telephone:    (212) 403-1000
Facsimile:    (212) 403-2000

*Attorneys for Defendants Samuel Altman, Gregory Brockman,
OpenAI, Inc., OpenAI L.P., OpenAI, L.L.C., OpenAI GP, L.L.C.,
OpenAI OpCo, LLC, OpenAI Global, LLC, OAI Corporation, LLC,
OpenAI Holdings, LLC, OpenAI Startup Fund Management, LLC,
OpenAI Startup Fund GP I, L.L.C., OpenAI Startup Fund I, L.P.,
OpenAI Startup Fund SPV GP I, L.L.C., OpenAI Startup Fund SPV GP II, L.L.C.,
OpenAI Startup Fund SPV GP III, L.L.C., OpenAI Startup Fund SPV GP IV, L.L.C.,
OpenAI Startup Fund SPV I, L.P., OpenAI Startup Fund SPV II, L.P.,
OpenAI Startup Fund SPV III, L.P., OpenAI Startup Fund SPV IV, L.P.,
Aestas Management Company, LLC, and Aestas LLC*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

| | |
|---|---|
| ELON MUSK, et al., | Case No. 4:24-cv-04722-YGR |
| Plaintiffs, | **OPENAI DEFENDANTS' REPLY STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| SAMUEL ALTMAN, et al., | |
| Defendants. | Date:  January 7, 2026 |
| | Time:  2:00 p.m. |
| | Courtroom:  1 – 4th Floor |
| | Judge:  Hon. Yvonne Gonzalez Rogers |

Pursuant to the Court's Standing Order, the OpenAI Defendants submit the

following Reply Separate Statement of Undisputed Material Facts in support of their Motion for

Summary Judgment.

| Issue No. | OpenAI Defendants' Undisputed Material Facts and Supporting Evidence | Plaintiff's Response and Supporting Evidence |
|---|---|---|
| Issue 1 (Summary judgment is required on Musk's claim for breach of charitable trust) | <u>Fact 1</u>.  OpenAI, Inc. ("OpenAI") is a nonprofit corporation incorporated in Delaware and headquartered in California.<br><br>Ex. 1; Ex. 2; Ex. 15. | Undisputed. |
| Issue 1 | <u>Fact 2</u>.  OpenAI filed its original certificate of incorporation with the Delaware Secretary of State on December 8, 2015.<br><br>Ex. 1. | Undisputed. |
| Issue 1 | <u>Fact 3</u>.  OpenAI filed an amended certificate of incorporation with the Delaware Secretary of State on April 23, 2020.<br><br>Ex. 2. | Undisputed. |
| Issue 1 | <u>Fact 4</u>.  OpenAI's mission "is to ensure that artificial general intelligence … benefits all of humanity."<br><br>Ex. 3 at 1; Ex. 2 at 2; Ex. 15 at 2. | Disputed.  OpenAI's mission includes the commitments made in its original Delaware certificate of incorporation, its California charitable registration form, and the OpenAI Charter.<br><br>Ex. 8 at 2; Ex. 7 at 1; OpenAI Ex. 3. |
| Issue 1 | <u>Fact 5</u>.  As reflected in its IRS Form 990s, OpenAI received approximately $133.2 million in charitable contributions between 2016 and 2020.  That included $10 million from Aphorism Foundation; $20 million from Gabe Newell; $30 million from Good Ventures Foundation; and $30 million from Silicon Valley Community Foundation. | Undisputed. |

| | | | |
|---|---|---|---|
| | | Ex. 41 at 1; Ex. 42 at 1, 22; Ex. 43 at 1, 22; Ex. 44 at 1, 22; Ex. 45 at 1. | |
| | Issue 1 | Fact 6.  All of Musk's[1] claimed "financial contributions" to OpenAI, including cash and non-cash property, are reflected in Exhibit 4.  Ex. 4; Ex. 13 at 17-19. | Disputed.  Exhibit 4 excludes a $141,666.67 payment on 6/15/2016 made by Musk via Musk Industries LLC for the first month's rent for OpenAI's office space.  Exhibit 4 also excludes a $250,000 payment on 7/19/2017 for a UBI project by OpenAI's fiscal sponsor, YC.org, that related to OpenAI's work.  Ex. 11 at 29-31; Exs. 70 & 71 (Musk Industries rent payment); Ex. 72 (UBI project payment). |
| | Issue 1 | Fact 7.  As reflected in Exhibit 4, Musk's claimed cash contributions to OpenAI totaled $37,537,000 between 2016 and 2020.  Ex. 4. | Disputed.  Exhibit 4 excludes a $141,666.6 7 payment on 6/15/2016 and a $250,000 payment on 7/19/2017.  Including those amounts, Musk's claimed cash contributions totaled $37,928,666.67.  Ex. 11 at 29-31; Exs. 70-72. |
| | Issue 1 | Fact 8.  As reflected in Exhibit 4, all of Musk's claimed cash contributions were granted to OpenAI by the Vanguard Charitable Endowment Program ("Vanguard"), Fidelity Investments Charitable Gift Fund ("Fidelity"), or YC.org ("YC Org.").  Ex. 4. | Disputed.  Musk's contributions to OpenAI were not "granted" by Vanguard, Fidelity, or YC.org.  Musk granted all of his claimed contributions to OpenAI, even when YC.org or the Vanguard or Fidelity DAFs acted as an intermediary.  OpenAI recognized that all these contributions were "granted" by Musk in its tax filings.  Ex. 14 (Birchall Tr.) at 175:3-176:7 (OpenAI told Musk to make contributions through YC.org and assured Musk that all payments would be passed on to OpenAI); Ex. 17 at -120-22, -131 ("YC.org . . . will be the entity to which the donations are made, and YC.org will then be able to issue project grants to OpenAI."); Ex. 18; Ex. 69; |

---

[1] Unless otherwise specified, "Musk" includes Elon Musk, the Elon Musk Revocable Trust, and the Musk Foundation.

| | | | |
|---|---|---|---|
| | | | Ex. 12 at -4698, -6061 (describing contributions as "Elon Musk granted via YC ORG"; "Musk Foundation via YC ORG"). |
| | | | Ex. 14 (Birchall Tr.) at 170:24-174:24 (Musk directed all payments through the DAFs and no payment was made without Musk's direction); Ex. 20 (directing quarterly contributions); Ex. 21 (directing rent payments); Ex. 22; Ex. 23; Ex. 12 at -6061 (describing contributions as "Elon Musk granted via Fidelity"; "Elon Musk Via Vanguard Charitable"). |
| Issue 1 | **Fact 9**. As reflected in Exhibit 4, of Musk's claimed cash contributions of $37,537,000:<br><br>• $16,052,000 was granted to OpenAI or YC Org. by Vanguard.<br>• $10,985,000 was granted to OpenAI by Fidelity.<br>• $26,027,000 was granted to OpenAI by YC Org. (of which $10,500,000 was previously granted to YC Org. by Musk and of which $15,527,000 was previously granted to YC Org. by Vanguard).<br><br>Ex. 4. | | Disputed. Musk's contributions to OpenAI were not "granted" by Vanguard, Fidelity, or YC.org. Musk granted all of his claimed contributions to OpenAI, even when YC.org or the Vanguard or Fidelity DAFs acted as an intermediary.<br><br>As reflected in Ex. 11, the amount Musk granted via YC.org, including the $250,000 payment for the UBI project, was $26,277,000.<br><br>Ex. 14 (Birchall Tr.) at 170:24-174:24; Exs. 20-23; Ex. 12 at -6061; Ex. 11. |
| Issue 1 | **Fact 10**. Musk's contributions to Vanguard were subject to the terms specified in Vanguard's *Policies and Guidelines*.<br>Ex. 16 at 7. | | Disputed. The parties' course of dealing and communications established that Vanguard would ensure that any contribution Musk made through the DAF was made to the recipient Musk directed, despite the *Policies and Guidelines*.<br><br>Ex. 14 (Birchall Tr.) at 170:24-174:24; Exs. 20-23; Ex. 12 at -6061. |

3

| | | | |
|---|---|---|---|
| 1 | Issue 1 | <u>Fact 11</u>.  Pursuant to Vanguard's *Policies and Guidelines*: | Disputed.  The parties' course of dealing and communications established that Vanguard would ensure that any contribution Musk made through the DAF was made to the recipient Musk directed, despite the *Policies and Guidelines*. |
| 2 | | | |
| 3 | | | |
| 4 | | • The recommending donor "no longer has control over the assets" once contributed to Vanguard; | |
| 5 | | • Contributions "are no longer the property of the donor; they are owned by Vanguard"; | |
| 6 | | • Contributions to Vanguard are "unconditional," "irrevocable," and immediately tax deductible; | Ex. 14 (Birchall Tr.) at 170:24-174:24; Exs. 20-23; Ex. 12 at -6061. |
| 7 | | | |
| 8 | | • Subsequent grants made by Vanguard are "[g]rants from Vanguard," not from the recommending donor; | |
| 9 | | | |
| 10 | | • The recommending donor may not take additional tax deductions for subsequent grants made by Vanguard; | |
| 11 | | | |
| 12 | | • The recommending donor "cannot impose any restrictions or conditions" on subsequent donations "that prevent [Vanguard] from freely and effectively using the gift to further its mission"; | |
| 13 | | | |
| 14 | | | |
| 15 | | • "Generally, grants from [Vanguard] cannot be used to fulfill any obligation associated with an existing grant agreement or legally binding pledge between a donor and a charity," and "satisfying a pledge through a grant from a [Vanguard] account constitutes impermissible benefit to" the recommending donor. | |
| 16 | | | |
| 17 | | | |
| 18 | | | |
| 19 | | | |
| 20 | | | |
| 21 | | Ex. 17 (2014) at 6, 10, 17, 24, 29; Ex. 18 (2015) at 6, 10, 17, 24, 28-29; Ex. 19 (2016) at 6, 10, 17, 24, 28-29; Ex. 20 (2017) at 6, 10, 17, 24, 28-29. | |
| 22 | | | |
| 23 | | | |
| 24 | Issue 1 | <u>Fact 12</u>.  Musk's contributions to Fidelity were subject to the terms specified in the *Fidelity Charitable Policy Guidelines: Program Circular*. | Disputed.  The parties' course of dealing and communications established that Fidelity would ensure that any contribution Musk made through the DAF was made to the recipient Musk directed, despite the *Fidelity Charitable Policy* |
| 25 | | | |
| 26 | | Ex. 21 at 7; Ex. 22 at 4. | |
| 27 | | | |
| 28 | | | |

4

| | | | |
|---|---|---|---|
| | | | *Guidelines: Program Circular*.<br><br>Ex. 14 (Birchall Tr.) at 170:24-174:24; Exs. 20-23; Ex. 12 at -6061. |
| | Issue 1 | <u>Fact 13</u>.  Pursuant to Fidelity's *Program Circular*:<br><br>&bull; Once Fidelity accepts a contribution, it takes "exclusive legal control over all contributed assets";<br>&bull; Contributions to Fidelity are "irrevocable and are immediately tax deductible to the fullest extent allowed by law";<br>&bull; The recommending donor is "not eligible for additional charitable deductions for" "grants to charities based on recommendations";<br>&bull; Subsequent grants made by Fidelity are "grant[s] from Fidelity," which "is granting its own assets";<br>&bull; The recommending donor's grant recommendations "are not binding, and are subject to review and approval by [Fidelity] in [its] sole discretion";<br>&bull; Subsequent donations made by Fidelity cannot provide "more than incidental benefits" to the recommending donor, including "[s]upport for" the recommending donor's "own fundraising commitment" or the fulfillment of "[a] financial obligation, such as an enforceable pledge … made as a legally binding obligation."<br><br>Ex. 23 (July 2017) at 3, 6, 11, 17-19;<br>Ex. 24 (Mar. 2018) at 3, 6, 11, 18-20;<br>Ex. 25 (June 2018) at 3, 6, 11, 18-20;<br>Ex. 26 (July 2018) at 3, 6, 11, 18-20;<br>Ex. 27 (Oct. 2018) at 3, 6, 11-12, 18-20;<br>Ex. 28 (Aug. 2019) at 6, 12, 15-17;<br>Ex. 29 (Mar. 2020) at 6, 12, 15-17;<br>Ex. 30 (Aug. 2020) at 6, 12, 15-17;<br>*see also* Ex. 31 at 22; Ex. 32 at 17. | Disputed.  The parties' course of dealing and communications established that Fidelity would ensure that any contribution Musk made through the DAF was made to the recipient Musk directed, despite the *Fidelity Charitable Policy Guidelines: Program Circular*.<br><br>Ex. 14 (Birchall Tr.) at 170:24-174:24; Exs. 20-23; Ex. 12 at -6061. |

| Issue 1 | Fact 14. YC Org. served as OpenAI's tax-exempt fiscal sponsor before OpenAI attained its own tax-exempt status.<br><br>Ex. 34 at 1; Ex. 35 (Birchall Tr.) at 35:8-13. | Undisputed. |
|---|---|---|
| Issue 1 | Fact 15. YC Org.'s grants to OpenAI were governed by the Fiscal Sponsorship Grant Agreement ("FSA") between YC Org. and OpenAI.<br><br>Ex. 34; Ex. 36; *see also* Ex. 6. | Disputed. YC.org and OpenAI assured Musk that YC.org would pass on to OpenAI any contributions that Musk made to OpenAI via YC.org, despite any language in the FSA.<br><br>Ex. 14 (Birchall Tr.) at 175:3-176:7; Ex. 17 at -120-22, -131; Ex. 18; Ex. 69; Ex. 12 at -4698, -6061. |
| Issue 1 | Fact 16. Pursuant to the FSA, YC Org. exercised and retained "full discretion and control over the selection [of grantees], acting completely independently of … any funding source."<br><br>Ex. 34; Ex. 74 at 12. | Disputed. YC.org and OpenAI assured Musk that YC.org would pass on to OpenAI any contributions that Musk made to OpenAI via YC.org, despite any language in the FSA.<br><br>Ex. 14 (Birchall Tr.) at 175:3-176:7; Ex. 17 at -120-22, -131; Ex. 18; Ex. 69; Ex. 12 at -4698, -6061. |
| Issue 1 | Fact 17. Vanguard's grant confirmations sent to YC Org. specified that "[b]y accepting this grant from Vanguard Charitable, you certify that your organization maintains discretion and control over any grant funds used to support the fiscal sponsorship of another organization."<br><br>Ex. 9 at 5, 9, 13, 17, 21, 25, 29, 33, 37, 41, 45. | Undisputed that the grant confirmations contained that language, but disputed that the language accurately describes YC.org's role. YC.org and OpenAI assured Musk that YC.org would pass on to OpenAI any contributions that Musk made to OpenAI via YC.org, despite any language in the FSA.<br><br>Ex. 14 (Birchall Tr.) at 175:3-176:7; Ex. 17 at -120-22, -131; Ex. 18; Ex. 69; Ex. 12 at -4698, -6061. |
| Issue 1 | Fact 18. Musk claimed present-year tax deductions for assets he donated to Vanguard, Fidelity, and YC Org.<br><br>Ex. 37 at 3, 7, 11; *see also* Exs. 33, 38. | Undisputed that, in certain years, Musk claimed tax deductions for assets he contributed to OpenAI via Vanguard, Fidelity, and YC.org. Disputed that Musk donated those assets to Vanguard, Fidelity, or YC.org. Musk contributed to |

| | | | |
|---|---|---|---|
| 1 2 | | | OpenAI via Vanguard, Fidelity, and YC.org.<br><br>Ex. 11 at 29-31. |
| 3 4 5 6 | Issue 1 | Fact 19.  Musk did not claim additional tax deductions for any assets donated to OpenAI by Vanguard, Fidelity, or YC Org.<br><br>Ex. 33; Ex. 37. | Undisputed that Musk did not claim multiple tax deductions for his contributions to OpenAI.  Disputed that Vanguard, Fidelity, or YC.org donated assets to OpenAI.<br><br>Ex. 11 at 29-31. |
| 7 8 9 10 11 12 13 | Issue 1 | Fact 20.  The Musk Foundation used the donations it made to Vanguard, Fidelity, and YC Org. as "qualifying distributions" to satisfy its annual distribution requirements.<br><br>Ex. 31 at 21-22 (Fidelity);<br>Ex. 39 at 6, 8 (Vanguard and YC Org.);<br>Ex. 35 (Birchall Tr.) at 48:2-12 (acknowledging that contributions to donor advised funds count towards satisfying the requirement). | Undisputed that, in certain years, the Musk Foundation relied on contributions made to OpenAI via Vanguard, Fidelity, and YC.org to satisfy its annual distribution requirements.  Disputed that the Musk Foundation ever donated any assets to Vanguard, Fidelity, or YC.org.<br><br>Ex. 11 at 29-31. |
| 14 15 16 17 18 19 20 21 | Issue 1 | Fact 21.  Musk testified that there were only "two fundamental things that were agreed to" with respect to his alleged contract and the alleged terms attached to his donations: "[t]hat [OpenAI] would be open source and a nonprofit."<br><br>Ex. 12 (Musk Tr.) at 285:19-286:24. | Disputed.  Musk testified that he was not specifying the "legal" terms applicable to his contributions.  Musk also identified applicable conditions.<br><br>Ex. 1 (Musk Tr.) at 286:12-16 ("I leave that up to my lawyers to say . . . how this should be characterized."); Ex. 11 at 13-16 (enumerating promises and statements relied on in contributing to OpenAI). |
| 22 23 24 25 26 27 | Issue 1 | Fact 22.  Musk testified that those alleged terms were "consistent publicly and privately," and that the alleged "promises that were made to" Musk personally were no "different than the promises that were made to the public."<br><br>Ex. 12 (Musk Tr.) at 184:13-185:7. | Disputed.  Musk testified that the "promise of [OpenAI] being a nonprofit and open source" was "consistent publicly and privately in the beginning."  Musk also identified numerous terms applicable to his contributions that were not applicable to the public.<br><br>Ex. 1 (Musk Tr.) at 184:13-185:7; Ex. 11 at 13-16. |

| | Issue 1 | Fact 23. OpenAI's original certificate of incorporation filed with the Delaware Secretary of State on December 8, 2015 states, among other things, that:<br><br>"THIRD: This Corporation shall be a nonprofit corporation organized exclusively for charitable and/or educational purposes within the meaning of section 501(c)(3) of the Internal Revenue Code of 1986, as amended, or the corresponding provision of any future United States Internal Revenue law.  The specific purpose of this corporation is to provide funding for research, development and distribution of technology related to artificial intelligence.  The resulting technology will benefit the public and the corporation will seek to open source technology for the public benefit when applicable.  The corporation is not organized for the private gain of any person. …<br><br>FIFTH: The property of this corporation is irrevocably dedicated to the purposes in Article THREE hereof and no part of the net income or assets of this corporation shall ever inure to the benefit of any director, officer or member thereof or to the benefit of any private person."<br><br>Ex. 1 at 2. | Undisputed. |
| | Issue 1 | Fact 24. OpenAI's amended certificate of incorporation filed with the Delaware Secretary of State on April 23, 2020 states, among other things, that:<br><br>"THIRD: This Corporation shall be a nonprofit corporation organized exclusively for charitable purposes within the meaning of section 501(c)(3) of the Internal Revenue Code of 1986, as amended, or the corresponding provision of any future United States Internal Revenue law.  The specific purpose of this corporation is to ensure that artificial general intelligence benefits all of humanity, including by conducting and/or | Undisputed. |

8

| | | | |
|---|---|---|---|
| | | funding artificial intelligence research. The corporation may also research and/or otherwise support efforts to safely develop and distribute such technology and its associated benefits, including analyzing the societal impacts of the technology and supporting related educational, economic, and safety policy research and initiatives. The resulting technology will benefit the public and the corporation will seek to distribute it for the public benefit when applicable.  The corporation is not organized for the private gain of any person. … FIFTH: The property of this corporation is irrevocably dedicated to the purposes in Article THREE hereof and no part of the net income or assets of this corporation shall ever inure to the benefit of any director, officer or member thereof or to the benefit of any private person." Ex. 2 at 2. | |
| Issue 1 | | <u>Fact 25</u>.  Musk did not attempt to impose specific restrictions on Musk's claimed cash contributions that were granted to OpenAI by Vanguard, Fidelity, or YC Org. Ex. 35 (Birchall Tr.) at 28:15-29:11 (Birchall "help[ed] to manage Mr. Musk's donations in connection with OpenAI"); 55:2-17 ("ultimately, [OpenAI] could have decided what they did with the money [from Fidelity]"), 56:3-25 (Birchall did not "have any communications with Fidelity … direct[ing] the grants be used for anything more specific than general support"); 57:1-12 (Birchall was not aware of "any communications" to OpenAI in which Fidelity or Vanguard "direct[ed] that grants … be used for a specific purpose"); 57:13-25 (Birchall was not aware of "anyone having communicated to anyone at" Fidelity or Vanguard "that grants from Fidelity to OpenAI should be used for a specific purpose"); 58:1-8 | Disputed.  Musk repeatedly expressed that his contributions were conditioned on OpenAI remaining an open-source nonprofit and continuing to pursue the nonprofit mission. Ex. 1 (Musk Tr.) at 54:5-15 ("[T]he reason my time, my credibility, my recruiting help was given was to create a nonprofit, open-source organization."); *id.* at 266:15-20 ("It was a premise of the contribution of time, money, and everything else. Obviously, I would only do so if they're maximizing safety."); *id.* at 285:14-286:24 ("[T]hey're two fundamental things that were agreed to.  That [OpenAI] would be open source and a nonprofit. That's why I donated the money."); Ex. 11 at 13-16. |

| | | | |
|---|---|---|---|
| | | (Birchall did not recall "ever hav[ing] any communications … with Mr. Musk in which he [Musk] directed that … donations to OpenAI should be used for any purpose more specific than general support"), 59:19-60:6 (Birchall did not recall "ever communicat[ing] to anyone at YC org that the grants should be used for a specific purpose by OpenAI" and was not aware of any such communications by Musk); Exs. 9-11 (grant receipts). | |
| | Issue 1 | Fact 26.  Vanguard did not impose specific restrictions on its donations to YC Org. To the extent that any of Vanguard's contributions to YC Org. can be deemed restricted gifts, they were restricted at most insofar as they were "[t]o be used for" OpenAI or, in one case, OpenAI building expenses.<br><br>Ex. 9 at 2, 7, 11, 15, 19, 23, 27, 31, 35, 39, 43; Ex. 35 (Birchall Tr.) at 57:1-25, 58:1-8, 59:19-60:6. | Disputed.  Musk imposed specific restrictions on funds he contributed to OpenAI via Vanguard and YC.org.<br><br>Ex. 1 (Musk Tr.) at 54:5-15, 266:15-20, 285:14-286:24; Ex. 11 at 13-16. |
| | Issue 1 | Fact 27.  Vanguard did not impose specific restrictions on its donations to OpenAI. To the extent that any of Vanguard's contributions to OpenAI can be deemed restricted gifts, they were restricted at most insofar as they were "[t]o be used for" OpenAI building expenses.<br><br>Ex. 10 at 2, 6, 10; Ex. 35 (Birchall Tr.) at 57:1-25, 58:1-8. | Disputed.  Musk imposed specific restrictions on funds he contributed to OpenAI via Vanguard.<br><br>Ex. 1 (Musk Tr.) at 54:5-15, 266:15-20, 285:14-286:24; Ex. 11 at 13-16. |
| | Issue 1 | Fact 28.  Fidelity did not impose specific restrictions on its donations to OpenAI. All of Fidelity's contributions to OpenAI were designated as to be used for OpenAI's "general support."<br><br>Ex. 11; Ex. 40; Ex. 35 (Birchall Tr.) at 55:19-56:1, 57:1-25, 58:1-8. | Disputed.  Musk imposed specific restrictions on funds he contributed to OpenAI via Fidelity.<br><br>Ex. 1 (Musk Tr.) at 54:5-15, 266:15-20, 285:14-286:24; Ex. 11 at 13-16. |
| | Issue 1 | Fact 29.  For the years 2016 through 2020, OpenAI's IRS Form 990s state that all of OpenAI's net assets were "unrestricted" and "without donor restrictions." | Undisputed. |

| | | | |
|---|---|---|---|
| | | Ex. 41 at 11 (2016: "unrestricted"); Ex. 42 at 11 (2017: "unrestricted"); Ex. 43 at 11 (2018: "unrestricted"); Ex. 44 at 11 (2019: "without donor restrictions"); Ex. 45 at 11 (2020: "without donor restrictions"). | |
| | Issue 1 | <u>Fact 30</u>.  For the years 2016 through 2020, OpenAI's audited financial statements state that all of OpenAI's net assets were "without donor restrictions." <br><br> Ex. 46 at 4; Ex. 47 at 4; Ex. 48 at 5; Ex. 49 at 6; Ex. 50 at 6. | Undisputed. |
| | Issue 1 | <u>Fact 31</u>.  OpenAI's Form 990s are publicly available, and were available to Musk and his representatives, including before they were filed. <br><br> Ex. 41 at 6; Ex. 42 at 6; Ex. 43 at 6; *see also* Ex. 35 (Birchall Tr.) at 72:13-15 (Birchall had access to OpenAI's Form 990s). | Disputed.  Only OpenAI's Form 990s for 2016 - 2018 were shared with Musk, and not all the information in Form 990s is publicly available. <br><br> OpenAI Exs. 41-43; OpenAI Ex. 35 (Birchall Tr.) at 71:25-72:15. |
| | Issue 1 | <u>Fact 32</u>.  Musk never objected to OpenAI's classification of its assets as "unrestricted" and "without donor restrictions" on its Form 990s. | Disputed.  Musk repeatedly expressed to Altman, Brockman, and OpenAI that his contributions were conditioned on OpenAI remaining an open-source nonprofit and continuing to pursue the nonprofit mission. <br><br> Ex. 1 (Musk Tr.) at 54:5-15, 285:14-286:24. |
| | Issue 1 | <u>Fact 33</u>.  Musk does not recall ever having discussed with anyone, including at OpenAI, "the possibility of retaining the right to reclaim [his] donations"; "a right to direct that [his] donations be transferred to another party"; or "the possibility" of them "one day reverting to [him]." <br><br> Ex. 12 (Musk Tr.) at 42:21-43:16; Dkt. 73 at 3, 18 (disclaiming any "reversionary interest"). | Disputed.  Musk testified he was "not sure what you're referring to." Musk also repeatedly expressed to Altman, Brockman, and OpenAI that his contributions were conditioned on OpenAI remaining an open-source nonprofit and continuing to pursue the nonprofit mission. <br><br> Ex. 1 (Musk Tr.) at 43:3-8, 54:5-15, 285:14-286:24. |

| | | | |
|---|---|---|---|
| 1 2 3 | Issue 1 | <u>Fact 34</u>.  Musk's only direct donations to OpenAI are comprised of four vehicles with a total fair market value of $262,400.<br><br>Ex. 4. | Undisputed. |
| 4 5 6 7 | Issue 1 | <u>Fact 35</u>.  Musk donated those four vehicles to OpenAI to be given to four specific employees as bonuses.<br><br>Ex. 51; *see also* Ex. 35 (Birchall Tr.) at 51:5-53:7. | Disputed.  Musk contributed the cars to OpenAI employees "in appreciation for what [they've] done to get OpenAI to where it is today."<br><br>Ex. 16. |
| 8 9 10 11 12 13 | Issue 1 | <u>Fact 36</u>.  The vehicles were given as bonuses to the four specific employees Musk identified.<br><br>Ex. 52. | Disputed.  Musk contributed the cars to OpenAI employees "in appreciation for what [they've] done to get OpenAI to where it is today."  Musk would not have contributed the cars to those four employees had he known the information Defendants concealed.<br><br>Ex. 16. |
| 14 | Issue 1 | <u>Fact 37</u>.  Musk is not the Attorney General of California. | Undisputed. |
| 15 16 17 | Issue 1 | <u>Fact 38</u>.  Musk has not been granted relator status by the Attorney General of California.<br><br>Dkt. 157. | Undisputed. |
| 18 19 20 21 22 23 24 | Issues 1 & 2 (Cal. Bus. & Prof. Code § 17510.8 does not apply) | <u>Fact 39</u>.  Musk was a member of OpenAI from its founding through his departure from the board on February 21, 2018.<br><br>Dkt. 170 (SAC) ¶ 229;<br>Ex. 53 at 26-27 (admitting that Musk was a "member of OpenAI, Inc. from the time of its founding until [his] resignation from the Board on February 21, 2018");<br><br>Ex. 54 (Musk confirming his resignation from OpenAI's board effective February 21, 2018). | Undisputed. |
| 25 26 27 | Issues 1 & 2 | <u>Fact 40</u>.  OpenAI did not solicit donations from Musk or the Musk Foundation after Musk's departure from the board on February 21, 2018. | Disputed.  OpenAI sought contributions from Musk after February 21, 2018, including by explicitly asking him for "a final one-time donation" of $570,000 and |

| | | |
|---|---|---|
| | | by publicly stating that he would "continue to donate."<br><br>Ex. 68; Ex. 47. |
| Issues 3 (Musk's fraud claim fails because there is no justifiable reliance), 6 (Musk's fraud and constructive fraud claims are time-barred), & 7 (Musk's unjust enrichment claim is time-barred) | <u>Fact 41</u>.  On February 25, 2016, Musk pledged to donate $20 million per year to OpenAI through $5 million quarterly donations, for a total of $60 million over three years.<br><br><br><br><br><br>Ex. 55 at 3; Ex. 12 (Musk Tr.) at 287:15-22. | Disputed.  Musk's commitment was made in conjunction with Altman's offer to contribute "$10MM/year" over three years, a promise Altman never fulfilled.  Musk's contributions were also conditioned on OpenAI remaining an open-source nonprofit and continuing to pursue the nonprofit mission.<br><br>Ex. 1 (Musk Tr.) at 54:5-15, 266:15-20, 285:14-286:24; Ex. 13. |
| Issues 3, 6, & 7 | <u>Fact 42</u>.  Musk's final claimed $5 million quarterly donation was made in May 2017.<br><br>Ex. 4; *see also* Ex. 78. | Undisputed. |
| Issues 3, 6, & 7 | <u>Fact 43</u>.  After May 2017, the remainder of Musk's claimed cash contributions were monthly donations for payment of rent and building expenses for OpenAI and Neuralink.<br><br>Ex. 4; Ex. 12 (Musk Tr.) at 94:5-19; Ex. 35 (Birchall Tr.) at 66:24-68:1; Ex. 56 at 3. | Disputed.  Musk's contributions to OpenAI did not cover Neuralink's rent or expenses.  Neuralink reimbursed OpenAI for its portion of those costs under a cost-sharing agreement.<br><br>Ex. 19; OpenAI Ex. 56 at 3. |
| Issue 3 | <u>Fact 44</u>.  Musk testified that at the time Altman and Brockman expressed enthusiasm "about the non-profit structure" and with "keeping [OpenAI] non-profit," in September 2017, Musk believed they "were being deceptive."<br><br>Ex. 12 (Musk Tr.) at 84:14-85:1, 84:8-13 ("what they were saying was not honest" and "they just intended to create a for-profit entity to enrich themselves"), 87:15-20 ("no longer trusted them"), 91:17-92:7 | Disputed.  Musk testified that he "became uncomfortable by degrees" and did not discover Altman and Brockman's misconduct until 2023.  Musk was "prepared to continue to fund" OpenAI so long as he "underst[ood] what [OpenAI's] forward structure [would be]" to make sure that the fundamental mission of being a nonprofit open-source company continued." |

| | | | |
|---|---|---|---|
| | | ("had already concluded [he] couldn't trust [Altman]"). | Ex. 1 (Musk Tr.) at 76:16-77:5, 86:6-13, 183:22-184:12, 288:14-15. |
| | Issue 3 | Fact 45.  In August 2017, Musk directed his team to stop the $5 million quarterly donations.<br><br>Ex. 71; Ex. 78; Ex. 12 (Musk Tr.) at 288:3-10. | Disputed.  In August 2017, Musk directed his team to "pause" the quarterly donations.  He was willing to resume funding if defendants assured him "that the fundamental mission of being a nonprofit open-source company continued."<br><br>Ex. 1 (Musk Tr.) at 86:9-13; OpenAI Ex. 78 (discussing "pause" in funding). |
| | Issue 3 | Fact 46.  Musk testified that, by September 2017, he did not "want to be associated with" Altman and Greg Brockman, was "done with" them, and "declined to provide significant further funding."<br><br>Ex. 12 (Musk Tr.) at 90:17-91:16, 94:5-95:7; see also id. 287:20-288:10; 289:20-291:6 (testifying that he "supend[ed] [his quarterly] contributions" when he "lost confidence that they were going to be a nonprofit, open source"). | Disputed.  Musk testified that he "became uncomfortable by degrees" and did not discover Altman and Brockman's misconduct until 2023. Musk was "prepared to continue to fund" OpenAI so long as he "underst[ood] what [OpenAI's] forward structure [would be]" to make sure that the fundamental mission of being a nonprofit open-source company continued."  Musk provided over $10.3 million in funding to OpenAI after September 2017.<br><br>Ex. 1 (Musk Tr.) at 76:16-77:5, 86:6-13, 183:22-184:12, 288:14-15; Ex. 11 at 29-31. |
| | Issue 4 (Musk's quasi-contract theory of unjust enrichment fails) | Fact 47.  Musk testified that he contributed to OpenAI "to create a nonprofit open-source organization" and there were "[n]o" other terms of the deal.<br><br>Ex. 12 (Musk Tr.) at 52:11-54:23. | Disputed.  Musk testified that remaining open-sourced and nonprofit were the "major parts" of the agreement.  He identified numerous additional terms.  He was not trying to define how the agreement would be construed in a "legal document."<br><br>Ex. 1 (Musk Tr.) at 52:11-53:19, 286:12-16; Ex. 11 at 13-16. |

14

| Issue 5 (Musk's fraud claim fails for lack of actionable misrepresentation) | Fact 48. In October 2017, Musk conveyed to Sutskever and Brockman requirements for resuming quarterly donations to OpenAI, Inc. that included assigning Musk more "board seats on the nonprofit OpenAI [board]." Ex. 12 (Musk Tr.) at 93:7-16; Ex. 79. | Disputed. Musk also would have required Sutskever and Brockman to commit to stay at OpenAI and "stay true to the mission of OpenAI being an open-sourced non-profit." Ex. 1 (Musk Tr.) at 93:1-6. |
|---|---|---|
| Issue 5 | Fact 49. Brockman and Sutskever never acceded to the requirements for resuming quarterly donations that Musk conveyed. Ex. 12 (Musk Tr.) at 94:2-4. | Undisputed. |
| Issues 6 & 7 | Fact 50. This action was filed in August 2024. Dkt. 1. | Undisputed. |
| Issue 6 | Fact 51. Musk testified that he "started to suspect that [he] was being swindled" by Altman and Brockman in 2017. Ex. 12 (Musk Tr.) at 76:20:77:5; see also id. at 83:10-85:1 (as of September 20, 2017, Musk "felt that [he] was being deceived by Sam and Greg" and his "conclusion was that [he] was being swindled"), 87:15-88:5 (as of September 2017, Musk's "suspicions were sufficient to – that [he] no longer trusted" Altman and Brockman). | Disputed. Musk testified that he "became uncomfortable by degrees," did not discover Altman and Brockman's misconduct until 2023, and was "prepared to continue to fund" OpenAI so long as it remained an open-source nonprofit. Ex. 1 (Musk Tr.) at 76:16-77:5, 86:6-13, 183:22-184:12, 288:14-15; Ex. 40; Ex. 41 at 1. |
| Issue 6 | Fact 52. In 2017, Musk participated in discussions regarding the possibility that OpenAI would create a for-profit entity. Ex. 12 (Musk Tr.) at 78:18-80:8; Ex. 51; Ex. 58; Ex. 76; Ex. 77. | Undisputed that Musk participated in discussions, but disputed that Musk imposed no limits on the nature or role of the entity. Musk was willing to create a for-profit entity only if it would "support[] the nonprofit's mission" and ensure that OpenAI would remain "essentially [a] philanthropic endeavor." Ex. 1 (Musk Tr.) at 71:3-15; Ex. 39 at 3. |
| Issue 6 | Fact 53. Musk proposed that OpenAI "attach to Tesla." Ex. 59 at 1-2; Ex. 12 (Musk Tr.) at 107:16-24. | Disputed. Musk testified that "[s]ome association with Tesla" was one of "many ideas that were discussed." But those discussions "didn't go very far." Musk would |

| | | | |
|---|---|---|---|
| | | | have accepted an association with Tesla only if it "support[ed] the nonprofit's mission" and ensured that OpenAI would remain "essentially [a] philanthropic endeavor."<br><br>Ex. 1 (Musk Tr.) at 71:3-15, 95:8-21; Ex. 39 at 3. |
| Issue 6 | | Fact 54.  Musk was aware that OpenAI was contemplating forming a for-profit subsidiary no later than April 2018.<br><br>Ex. 60 (Apr. 2018); Ex. 61 (Aug. 2018); Ex. 62 (Sept. 2018); Ex. 63 (Nov. 2018). | Disputed.  In April 2018, Shivon Zilis relayed only vague plans regarding "equity that has a fixed maximum."  Altman downplayed the entity's commercial nature.<br><br>Ex. 62 (Zilis relaying Altman's statement about "equity that has a fixed maximum"); Ex. 64 (Altman assuring Musk that "[w]e did this in a way where all investors are clear that they should never expect a profit"). |
| Issue 6 | | Fact 55.  Musk received a term sheet for a proposed investment in the for-profit subsidiary, OpenAI L.P. ("LP"), which specified, among other things, that: (i) LP would "initially be capitalized by a contribution of assets from [OpenAI]"; and (ii) LP might "seek[] to commercialize technology in a way that will generate significant revenue … ."<br><br>Ex. 61 at 2, 4. | Undisputed that Altman sent Musk a term sheet, but disputed that Musk read it.  The term sheet implies that revenue generated by OpenAI LP would serve the non-profit mission.<br><br>Ex. 1 (Musk Tr.) at 151:18-23; Ex. 63. |
| Issue 6 | | Fact 56.  Musk was offered, and declined, equity in LP.<br><br>Ex. 64 at 4; Ex. 65. | Undisputed. |
| Issue 6 | | Fact 57.  Musk was provided a draft press release in March 2019 regarding LP.<br><br>Ex. 66. | Undisputed that Altman sent Musk a draft press release, but disputed that the press release fully or fairly described the new entity.  The draft press release did not disclose all the terms of investments in OpenAI LP. Altman also downplayed the commercial nature of the new entity.<br><br>Ex. 64 ("We did this in a way where |

| | | | |
|---|---|---|---|
| | | | all investors are clear that they should never expect a profit."). |
| Issue 6 | Fact 58. In March 2019, Altman sought to schedule a call with Musk to discuss "the new openai structure," and that call was scheduled for March 11, 2019.<br><br>Ex. 67. | | Disputed. Altman described the primary purpose of the call as to discuss how to "describe" Musk's "past involvement" with OpenAI.<br><br>OpenAI Ex. 67. |
| Issue 6 | Fact 59. Musk raised no contemporaneous objection to the formation of LP.<br><br>Ex. 63; Ex. 65 (Musk "decided to be supportive in spirit of OpenAI but not participate in the new instrument"); Ex. 68 (Musk to Altman: "Please be explicit that I have no financial interest in the for-profit arm of OpenAI"). | | Disputed. Musk was not supportive of OpenAI's launch of OpenAI LP. He testified that Zilis's statement that he "decided to be supportive" of OpenAI was inaccurate, and that it was "unlikely" he would have told Altman that he "had no objection" to the formation of Open AI LP.<br><br>Ex. 1 (Musk Tr.) at 157:17-23, 159:21-160:4, 161:2-10. |
| Issue 6 | Fact 60. In July 2019, Microsoft made a $1 billion investment in LP, which OpenAI publicly announced.<br><br>Ex. 69. | | Undisputed. |
| Issue 7 | Fact 61. None of Musk's alleged contributions to OpenAI were made after September 14, 2020.<br><br>Ex. 4; Ex. 57; see also Ex. 13 at 17-19. | | Undisputed. |
| Issue 7 | Fact 62. Musk testified that he did not recall providing "significant further funding" or any "support of any kind to OpenAI other than providing the rent" after 2017.<br><br>Ex. 12 (Musk Tr.) at 94:5-11, 95:2-5. | | Disputed. Musk testified that his financial contributions, which averaged about $3 million per year between 2018 and 2020, continued through 2020.<br><br>Ex. 1 (Musk Tr.) at 218:12-20, 288:14-19; Ex. 11 at 29-31; Ex. 12 at -5433, -5483, -5638. |
| Issue 6 | Fact 59. Musk raised no contemporaneous objection to the formation of LP.<br><br>Ex. 63; Ex. 65 (Musk "decided to be supportive in spirit of OpenAI but not participate in the new instrument"); Ex. 68 (Musk to Altman: "Please be explicit that I have no financial interest in the for-profit | | Disputed. Musk was not supportive of OpenAI's launch of OpenAI LP. He testified that Zilis's statement that he "decided to be supportive" of OpenAI was inaccurate, and that it was "unlikely" he would have told Altman that he "had no objection" to the formation of Open |

| | | arm of OpenAI"). | AI LP. |
| | | | Ex. 1 (Musk Tr.) at 157:17-23, 159:21-160:4, 161:2-10. |

### PLAINTIFF'S ADDITIONAL MATERIAL FACTS

| Issue 1 | Additional Fact 63. Musk's financial contributions to OpenAI accounted for approximately 60% of OpenAI's funding through the end of 2017.<br><br>Ex. 12 (OpenAI Form 990s) at -4698, -6061-62. | Undisputed that Musk's claimed financial contributions to OpenAI accounted for approximately 60% of OpenAI's funding through the end of 2017, and immaterial.<br><br>Ex. 41 at 1; Ex. 42 at 1; Musk Ex. 12. |
|---|---|---|
| Issue 1 | Additional Fact 64. Altman recognized that Musk's early contributions to OpenAI were "critical" and did not think "[OpenAI] would have happened without [Musk]."<br><br>Ex. 35; Ex. 36; Ex. 37 (Altman Tr.) at 163:1-5. | Undisputed that the quoted language appears in Plaintiff's exhibits, and immaterial. |
| Issues 3, 6, & 7 | Additional Fact 65. In or around November 2017, Brockman and Sutskever delivered a presentation to Musk and reaffirmed their commitment to OpenAI's nonprofit structure.<br><br>Ex. 43 at 8-9; Ex. 24 (Brockman Tr.) at 237:14-245:9. | Incomplete and immaterial. Undisputed that Brockman testified that he delivered a presentation to Musk in or around November 2017, that he believed Sutskever was present, and that in the meeting, the two "said that [they] wanted to try fundraising further in the nonprofit." Musk Ex. 24 (Brockman Tr.) at 237:14-25, 245:4-9. Disputed that the two "reaffirmed their commitment to OpenAI's nonprofit structure" in that meeting. *Id.* at 244:15-245:2. Brockman testified that the "central thrust" of the presentation was "about establishing that AGI was coming" and that "AGI progress was rapid." *Id.* at 239:9-18. |

| | | |
|---|---|---|
| Issues 3, 6, & 7 | Additional Fact 66.  In January 2018, Brockman represented to Musk that OpenAI should "[t]ry our best to remain a non-profit."<br><br>Ex. 44 at 2. | Incomplete and immaterial.  Undisputed that the quoted language appears in Plaintiff's exhibit.  Disputed that the language constitutes a representation. |
| Issues 6 & 7 | Additional Fact 67.  In 2019, OpenAI intentionally did not publicly disclose the terms of Microsoft's $1 billion investment in OpenAI, including the cap applicable to Microsoft's return.<br><br>Ex. 50. | Undisputed that OpenAI did not publicly disclose every term of Microsoft's investment, and that OpenAI did not publicly disclose the cap applicable to Microsoft's return, and immaterial.  Disputed and immaterial as to any implication regarding OpenAI's "intention[]." |
| Issues 6 & 7 | Additional Fact 68.  In March 2021, Microsoft invested an additional $2 billion in OpenAI.<br><br>Ex. 51 (OpenAI Tr.) at 135:19-136:6; Ex. 52. | Disputed and immaterial.  In March 2021, Microsoft agreed to an additional $2 billion worth of capital commitments, including credit for compute spend.  Microsoft did not actually invest $2 billion in OpenAI in March 2021.  Musk Ex. 51 (OpenAI Tr.) at 172:2-173:4. |
| Issues 6 & 7 | Additional Fact 69.  In January 2023, Microsoft invested another $10 billion in OpenAI.<br><br>Ex. 51 (OpenAI Tr.) at 170:13-173:4; Ex. 52. | Disputed and immaterial.  In January 2023, Microsoft agreed to an additional $10 billion worth of capital commitments, including credit for compute spend.  Microsoft did not actually invest $10 billion in OpenAI in January 2023.  Musk Ex. 51 (OpenAI Tr.) at 172:2-173:4. |
| Issues 6 & 7 | Additional Fact 70.  OpenAI intentionally did not publicly disclose the terms of Microsoft's 2021 and 2023 investments, including the caps applicable to Microsoft's returns.<br><br>Ex. 51 (OpenAI Tr.) at 135:19-137:13, 170:13-173:4; Ex. 52. | Undisputed that OpenAI did not publicly disclose every term of Microsoft's investments, and that OpenAI did not publicly disclose the caps applicable to Microsoft's returns, and immaterial.  Disputed and immaterial as to any implication regarding OpenAI's "intention[]." |

| Issues 6 & 7 | Additional Fact 71. OpenAI set the caps applicable to its limited partners' returns so high that, as of April 2023, OpenAI would have to generate more than $250 billion for its investors and employees before the nonprofit would receive any residual.<br><br>Ex. 53 (Schizer Rep.) ¶¶ 97-122; Ex. 51 (OpenAI Tr.) at 176:22-177:9. | Disputed and immaterial. Undisputed that, as of April 2023, OpenAI would have had to generate more than $250 billion in returns before the nonprofit would receive any residual. Disputed that OpenAI "set [those] caps" itself; the caps were negotiated between OpenAI and the limited partners. Also disputed as to the characterization of these caps as "so high"; in the completed recapitalization, the OpenAI nonprofit received equity that Musk claims is valued at $130 billion. Musk Ex. 51 (OpenAI Tr.) at 137:8-19; Musk Ex. 10 (Wazzan Rep.) ¶ 28. |
| Issues 6 & 7 | Additional Fact 72. Beginning in 2019, OpenAI transferred "substantially all" of its intellectual property, and all of its full-time employees, to its for-profit entity.<br><br>Ex. 51 (OpenAI Tr.) at 102:12-17, 195:12-16; Ex. 53 (Schizer Rep.) ¶¶ 155-62. | Disputed and immaterial. Undisputed that in 2019, OpenAI transferred substantially all of its intellectual property to its for-profit entity. Disputed that OpenAI transferred all of its full-time employees. Musk Ex. 51 (OpenAI Tr.) at 103:3-12, 104:16-25 ("certain employees remained at [the nonprofit]."). |

1    I attest that the evidence cited herein fairly and accurately supports the facts as asserted.

2

3    Date:  November 21, 2025

4                                                    */s/ William Savitt*

5                                            JORDAN ETH (CA SBN 121617)
                                             JEth@mofo.com
6                                            WILLIAM FRENTZEN (CA SBN 343918)
                                             WFrentzen@mofo.com
7                                            DAVID J. WIENER (CA SBN 291659)
                                             DWiener@mofo.com
8                                            MORRISON & FOERSTER LLP
                                             425 Market Street
9                                            San Francisco, CA 94105
                                             Telephone:    (415) 268-7000
10                                           Facsimile:    (415) 268-7522

11                                           WILLIAM SAVITT (admitted *pro hac vice*)
                                             WDSavitt@wlrk.com
12                                           BRADLEY R. WILSON (admitted *pro hac
                                             vice*)
13                                           BRWilson@wlrk.com
                                             SARAH K. EDDY (admitted *pro hac vice*)
14                                           SKEddy@wlrk.com
                                             STEVEN WINTER (admitted *pro hac vice*)
15                                           SWinter@wlrk.com
                                             NATHANIEL CULLERTON (admitted *pro
16                                           hac vice*)
                                             NDCullerton@wlrk.com
17                                           WACHTELL, LIPTON, ROSEN & KATZ
                                             51 West 52nd Street
18                                           New York, NY 10019
                                             Telephone:    (212) 403-1000
19                                           Facsimile:    (212) 403-2000

20                                           *Attorneys for OpenAI Defendants*

21

22

23

24

25

26

27

28
                                             21