# EXHIBIT 6
# PUBLIC REDACTED VERSION

Marc Toberoff (S.B. #188547)
*mtoberoff@toberoffandassociates.com*
Jaymie Parkkinen (S.B. #318394)
*jparkkinen@toberoffandassociates.com*
TOBEROFF & ASSOCIATES, P.C.
23823 Malibu Road, Suite 50-363
Malibu, CA 90265
Telephone: (310) 246-3333
Facsimile: (310) 246-3101

*Attorneys for Plaintiffs Elon Musk
and X.AI Corp.*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| ELON MUSK, et al., | Case No. 4:24-cv-04722-YGR |
| Plaintiffs, | Assigned to Hon. Yvonne Gonzalez Rogers |
| v. | **PLAINTIFF MUSK'S SUPPLEMENTAL RESPONSES AND OBJECTIONS TO MICROSOFT'S FIRST SET OF INTERROGATORIES** |
| SAMUEL ALTMAN, et al., | |
| Defendants. | |

1  Propounding Party:          Microsoft

2  Responding Party:           Elon Musk

3  Set No.:                    One

4          Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Plaintiff Elon Musk

5  ("Plaintiff") hereby serves these supplemental responses and objections ("Responses") to

6  Microsoft's First Set of Interrogatories ("Interrogatories"), as follows:

7                          **PRELIMINARY STATEMENT**

8          These Responses are made solely for purposes of this action and are subject to all objections

9  as to competence, relevance, materiality, privilege, and admissibility, and any and all objections and

10 grounds that would require exclusion of any statement made herein if such statement were made by

11 a witness present and testifying in court, all of which objections and grounds are reserved and may

12 be interposed at the time of trial. These Responses shall not be used in connection with any other

13 proceeding.

14         No incidental or implied admissions are intended by these Responses. The fact that Plaintiff

15 responds or objects to any of the Interrogatories should not be construed as an admission that

16 Plaintiff accepts or admits the existence of any facts assumed by such Interrogatory, or that such

17 Response constitutes admissible evidence as to any such assumed facts. The fact that Plaintiff

18 responds to part or all of any of the Interrogatories is not intended to be and shall not be construed

19 as a waiver of any part of any objection to any Interrogatory.

20         Plaintiff is still in the process of investigating the facts of this case and searching for

21 responsive information and documents and has not completed discovery nor concluded preparation

22 for summary judgment or trial. As a result, Plaintiff's Responses herein are preliminary and based

23 on information and documents that are presently available and specifically known to Plaintiff after

24 having made a diligent search and reasonable and good faith inquiry, and are made without

25 prejudice to Plaintiff's right to: (1) amend, alter, supplement, clarify or otherwise modify these

26 Responses as this matter proceeds; (2) make use of, or introduce at any hearing or trial, any

27 documents, information, facts, evidence, and legal theories which are subsequently discovered or

28 which are now known but whose relevance, significance, or applicability has not yet been

ascertained; and (3) offer expert witness opinions on any relevant matter, which opinions may be at variance with these Responses or the information and documents referenced in response to Microsoft's Interrogatories.

Furthermore, Plaintiff's Responses are made without in any way intending to waive, but on the contrary, intending to preserve:

1.      The right to raise—as part of any subsequent proceeding in, or the trial of, this or any other action—all questions of authenticity, foundation, relevancy, materiality, privilege, and admissibility as evidence for any purpose of any information or documents produced or identified in support of any of the Responses to any portion of Microsoft's Interrogatories;

2.      The right to object on any ground—as part of any subsequent proceeding in, or the trial of, this or any other action—to the use of any information or documents produced or identified in support of any of the Responses to any portion of Microsoft's Interrogatories;

3.      The right to object to introduction into evidence of any of these Responses; and

4.      The right to object on any ground at any time to other discovery involving the subject thereof.

## **GENERAL OBJECTIONS**

Plaintiff objects to each particular Interrogatory on the following grounds, which are hereby incorporated within each Response set forth below:

1.      Plaintiff objects to each and every Interrogatory, definition, and instruction that purports to impose obligations beyond those required or permitted by the Federal Rules of Civil Procedure. Plaintiff interprets each and every Interrogatory, definition, and instruction to be consistent with the Federal Rules of Civil Procedure.

2.      Plaintiff objects to each and every Interrogatory, definition, and instruction to the extent it contains argumentative, inaccurate, incomplete, or misleading descriptions of the facts, persons, relationships, events, and pleadings underlying this action. Any Response to any Interrogatory shall not constitute Plaintiff's agreement with or acquiescence to any such description.

3.      Plaintiff objects to each and every Interrogatory, definition, and instruction to the extent it seeks information that is neither relevant to any claim or defense in this action, nor

reasonably calculated to lead to the discovery of admissible evidence. Plaintiff will only disclose information consistent with Plaintiff's Responses below.

4.    Plaintiff objects to each and every Interrogatory, definition, and instruction to the extent it is vague, ambiguous, unclear, or fails to identify the requested information with reasonable particularity. To the extent that an Interrogatory requires subjective judgment on the part of Plaintiff as to what information is requested, Plaintiff will disclose responsive, non-privileged information according to Plaintiff's understanding of the Interrogatory.

5.    Plaintiff objects to each and every Interrogatory, definition, and instruction to the extent it is overbroad, onerous, and unduly burdensome and, thus, outside the scope of permissible discovery. Plaintiff will only disclose information consistent with Plaintiff's Responses below.

6.    Plaintiff objects to each and every Interrogatory to the extent it seeks information that is a matter of public record, already in the possession of Microsoft, or otherwise equally available to the public and Microsoft. That said, without committing to undertake a search specifically for information in the public record, Plaintiff will not withhold any responsive information that Plaintiff identifies in Plaintiff's files through a reasonably diligent search because it may also be available in the public record, but Plaintiff will not undertake a search of the public record for Microsoft.

7.    Plaintiff objects to each and every Interrogatory to the extent that it seeks disclosure of information that is unreasonably cumulative or duplicative of other discovery served in this action, or is obtainable from sources that are more convenient, less burdensome, or less expensive.

8.    Plaintiff objects to each and every Interrogatory to the extent that it seeks to require Plaintiff to use more than reasonable diligence to locate and identify responsive information. Consistent with Plaintiff's obligations, Plaintiff will conduct a reasonably diligent inquiry for responsive information and documents.

9.    Plaintiff objects to each and every Interrogatory, definition, and instruction to the extent it seeks information that is not within Plaintiff's possession, custody, or control.

10.    Plaintiff objects to each and every Interrogatory, definition, and instruction to the extent it seeks information protected by the attorney-client privilege, the attorney work product

doctrine, communications made in anticipation of litigation, the common interest or joint defense privileges, including any communications made for the purpose of facilitating the rendition of legal services to parties with common interests, rules and agreements governing privacy or confidentiality, or any other applicable privilege or protection recognized under statute or applicable case law. Inadvertent disclosure by Plaintiff of any information protected by any applicable privilege or protection shall not constitute a waiver, in whole or in part, of the privilege or protection.

11.     Plaintiff objects to each and every Request, definition, and instruction to the extent it calls for a response that would infringe upon the legitimate privacy rights of current or former employees, officers, or directors of Plaintiff, current or former affiliates, related companies, subsidiaries, or other individuals, to the full extent such privacy rights and expectations are protected by constitution, statute, contract, court order, or public policy. Plaintiff reserves the right to exclude information to protect unnecessary disclosure of nonresponsive or irrelevant sensitive, confidential, or proprietary business information.

12.     Plaintiff objects to each and every Interrogatory, definition, and instruction to the extent it seeks Plaintiff's sensitive, confidential, or proprietary business information. Plaintiff objects to the production of any and all information before an applicable ESI protocol has been entered in this case. To the extent information is responsive, relevant, and not privileged, Plaintiff will disclose such confidential information pursuant to the protective order, and any subsequent revisions to that protective order upon which the parties may agree.

13.     Plaintiff objects to each and every Interrogatory, definition, and instruction to the extent it seeks information protected by any governmental privilege, including but not limited to the official information privilege and identity of informer privilege, or similar protections under federal and California law, without such objection suggesting or intending to suggest the existence of any such information.

14.     Plaintiff objects to each Interrogatory, definition, and instruction to the extent that it prematurely requests discovery of expert materials and information in advance of their respective deadlines under the Scheduling Order governing this case and/or the Federal Rules of Civil

Procedure. Plaintiff will not disclose any expert materials or information before such deadlines.

15.    Plaintiff objects to each and every Interrogatory to the extent it seeks information the disclosure of which would be prohibited by applicable law, rule, regulation, or contractual obligation. In particular, Plaintiff objects to each and every Interrogatory to the extent it seeks information subject to confidentiality obligations or protective orders. Plaintiff cannot, and will not, identify any such information unless and until Plaintiff is relieved of Plaintiff's confidentiality obligations with respect to such information, and nothing contained in any Response to any Interrogatory should be considered an agreement to identify such information.

16.    Nothing contained in any Response herein shall be deemed an admission, concession, or waiver by Plaintiff as to the validity of any claim or defense asserted by Microsoft.

17.    All objections as to the relevance, authenticity, or admissibility of these Responses and any information referenced therein are expressly reserved by Plaintiff.

18.    To the extent that Plaintiff responds to any of the Interrogatories, Plaintiff reserves the right to object on any grounds, at any time, to other discovery requests involving or relating to the subject matter of the Interrogatories that Plaintiff has responded to herein.

19.    Plaintiff reserves all objections to the use of these Responses. All such objections may be interposed by Plaintiff at the time of trial or as otherwise required by the rules or order of the Court.

20.    Plaintiff's Responses herein shall not in any way constitute an adoption of Microsoft's purported "Definitions" of words or phrases or "Instructions" contained in the Interrogatories. Plaintiff objects to the Definitions, Instructions, and Interrogatories to the extent they: (i) are vague, ambiguous, compound, overbroad, unduly burdensome, and not reasonably tailored to avoid imposing undue burden and expense on Plaintiff; (ii) seek information for an undefined period of time or, if defined, cover and span an unreasonably long or burdensome time period, and therefore are burdensome and oppressive; (iii) are inconsistent with the ordinary and customary meaning of the words or phrases they purport to define; (iv) seek to impose obligations different from, or in excess of, those created by the Federal Rules of Civil Procedure; (v) include assertions of purported fact that are inaccurate or disputed by the parties to this action; and/or (vi)

incorporate other purported defined terms that suffer from such defects. In responding to the Interrogatories, Plaintiff has, where possible, employed what Plaintiff regards as the reasonable, common-sense interpretation of the Interrogatory in light of the relevant issues in the case.

21.     Plaintiff objects to each Interrogatory to the extent that it assumes the existence, relevance, materiality, truth, admissibility, or authenticity of any particular information, or assumes the validity of any claim or defense. In responding to these Interrogatories, Plaintiff does not make any admissions or waive any rights or objections, all of which are expressly preserved.

22.     Plaintiff objects to each Interrogatory to the extent that it requires Plaintiff to draw a legal conclusion.

23.     Plaintiff reserves the right to revise, amend, or supplement Plaintiff's Responses and/or production, and to use in discovery and at trial any information that is omitted as a result of mistake, inadvertence, or oversight. Plaintiff notes that discovery is ongoing and that Plaintiff's Responses are thus based on the information that is presently available and specifically known to Plaintiff.

24.     Plaintiff objects to the definition of "Microsoft" as overbroad, unduly burdensome, and vague, as the definition includes "any of its predecessors, successors, parents, divisions, subsidiaries, or affiliates." Plaintiff interprets "Microsoft" to mean Microsoft Corp. itself.

25.     Plaintiff objects to the definition of "You" and "Your" as overbroad, unduly burdensome, and vague, as the definition includes "current and former affiliates, agents, employees, partners, representatives, or anyone acting on his behalf, both individually and collectively." Plaintiff interprets "You" and "Your" to refer to Elon Musk himself.

26.     Plaintiff objects to Instruction Nos. 2-3 to the extent they purport to impose obligations beyond those required or permitted by the Federal Rules of Civil Procedure.

27.     The fact that Plaintiff may reassert particular objections in responding to individual Interrogatories should not be construed as limiting the generality of the foregoing objections. The General Objections set forth herein are asserted with respect to each and every Interrogatory.

28.     Plaintiff further objects that many of Microsoft's Interrogatories contain discrete subparts in contravention of Federal Rule of Civil Procedure 33. Plaintiff counts each of these

discrete subparts toward Microsoft's twenty-five interrogatory limit.

**SPECIFIC OBJECTIONS AND RESPONSES**

**INTERROGATORY NO. 1.**

State the earliest date (including the month, day, and year) when You first became aware of the 2019 OpenAI-Microsoft Transaction.

**RESPONSE TO INTERROGATORY NO. 1.**

Plaintiff incorporates the Preliminary Statement and General Objections above as if fully set forth herein. Plaintiff objects that this Request is compound, overbroad, and unduly burdensome given that "You" is defined as Plaintiff Elon Musk and thousands of his "current and former affiliates, agents, employees, partners, representatives, or anyone acting on his behalf." Plaintiff objects that this Interrogatory is cumulative of already pending written discovery including the Musk RFPs and objects on the ground that this Interrogatory purports to propound a single interrogatory but contains multiple discrete subparts. *See* Fed. R. Civ. P. 33(a)(1). Plaintiff further objects to the production of any and all information before an applicable ESI protocol has been entered in this case.

Subject to and without waiving any of the foregoing General and specific objections, Plaintiff responds as follows based on Plaintiff's present knowledge, information, and belief and without limitation: Sometime between March and July 2019, Plaintiff became aware that Microsoft might provide compute resources to OpenAI, though Plaintiff was not made aware of the details or specifics of the so-called "2019 OpenAI-Microsoft Transaction." Discovery is still ongoing, and as such, Plaintiff expressly reserves the right to supplement or amend this Response.

**INTERROGATORY NO. 2.**

State the earliest date (including the month, day, and year) when You first became aware of the formation of each of the OpenAI For-Profit Entities.

**RESPONSE TO INTERROGATORY NO. 2.**

Plaintiff incorporates the Preliminary Statement and General Objections above as if fully set forth herein. Plaintiff objects that this Request is compound, overbroad, and unduly burdensome given that "You" is defined as Plaintiff Elon Musk and thousands of his "current and former

affiliates, agents, employees, partners, representatives, or anyone acting on his behalf." Plaintiff objects that this Interrogatory is cumulative of already pending written discovery including the Musk RFPs and objects on the ground that this Interrogatory purports to propound a single interrogatory but contains multiple discrete subparts. *See* Fed. R. Civ. P. 33(a)(1). Plaintiff further objects to the production of any and all information before an applicable ESI protocol has been entered in this case.

Subject to and without waiving any of the foregoing General and specific objections, Plaintiff responds as follows based on Plaintiff's present knowledge, information, and belief and without limitation: On or around March 6, 2019, Sam Altman informed Plaintiff of Altman's intention to publish a blog post on OpenAI's website announcing the creation of a capped-profit entity, OpenAI, L.P. Altman represented that this structure was designed so that investors should not anticipate profits, emphasizing that "The mission comes first." According to Altman, OpenAI, L.P. was structured to prioritize OpenAI's mission of "ensuring the creation and adoption of safe and beneficial AGI" above investor returns. He further explained that to avoid conflicts of interest with OpenAI, Inc.'s mission, OpenAI, L.P.'s primary fiduciary duty would be advancing the OpenAI non-profit Charter's objectives, with the non-profit board maintaining control of OpenAI, L.P., and all stakeholders agreeing that Charter obligations supersede OpenAI, L.P.'s financial interests. Discovery is still ongoing, and as such, Plaintiff expressly reserves the right to supplement or amend this Response.

**INTERROGATORY NO. 3.**

State the earliest date (including the month, day, and year) when you first suspected that the 2019 OpenAI-Microsoft Transaction was inconsistent with the Alleged Contract and/or Alleged Fiduciary duty owed by Sam Altman, Greg Brockman and/or OpenAI to Elon Musk.

**RESPONSE TO INTERROGATORY NO. 3.**

Plaintiff incorporates the Preliminary Statement and General Objections above as if fully set forth herein. Plaintiff objects that this Request is compound, overbroad, and unduly burdensome given that "You" is defined as Plaintiff Elon Musk and thousands of his "current and former affiliates, agents, employees, partners, representatives, or anyone acting on his behalf." Plaintiff

objects that this Interrogatory is cumulative of already pending written discovery including the Musk RFPs and objects on the ground that this Interrogatory purports to propound a single interrogatory but contains multiple discrete subparts. *See* Fed. R. Civ. P. 33(a)(1). Plaintiff further objects to the production of any and all information before an applicable ESI protocol has been entered in this case.

Subject to and without waiving any of the foregoing General and specific objections, Plaintiff responds as follows based on Plaintiff's present knowledge, information, and belief and without limitation: On or around November 22, 2023, it began to become apparent that Microsoft had de facto control over OpenAI and that this was inconsistent with the contractual commitments made by Altman and OpenAI to Plaintiff, and the fiduciary duties that Altman, Brockman, and OpenAI owed to Plaintiff. Discovery is still ongoing, and as such, Plaintiff expressly reserves the right to supplement or amend this Response.

**INTERROGATORY NO. 4.**

Identify all factual bases, including all evidence in support, You contend demonstrate Microsoft's knowledge of the Alleged Contract and/or Alleged Fiduciary duty owed by Sam Altman, Greg Brockman and/or OpenAI to Elon Musk.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 4.**

Plaintiff incorporates the Preliminary Statement and General Objections above as if fully set forth herein. Plaintiff objects that this Request is compound, overbroad, and unduly burdensome given that "You" is defined as Plaintiff Elon Musk and thousands of his "current and former affiliates, agents, employees, partners, representatives, or anyone acting on his behalf." Plaintiff objects that this Interrogatory is cumulative of already pending written discovery including the Musk RFPs and objects on the ground that this Interrogatory purports to propound a single interrogatory but contains multiple discrete subparts. *See* Fed. R. Civ. P. 33(a)(1). Plaintiff further objects to the production of any and all information before an applicable ESI protocol has been entered in this case.

Subject to and without waiving any of the foregoing General and specific objections, Plaintiff responds as follows based on Plaintiff's present knowledge, information, and belief and

without limitation:

Microsoft's knowledge is primarily established through its intimate involvement in OpenAI's governance and operations. For example, Microsoft obtained an influential non-voting director seat on OpenAI's Board from approximately November 29, 2023 until July 9, 2024, which provided Microsoft with open access to all internal OpenAI materials as a matter of right under OpenAI's Bylaws. Additionally, Reid Hoffman's simultaneous service on the boards of both OpenAI and Microsoft created an interlocking directorate that gave Microsoft direct access to OpenAI's internal affairs and decision-making processes.

Further, Microsoft's substantial $13.75 billion investment in OpenAI required extensive due diligence that would have revealed the contractual obligations and fiduciary duties at issue. Microsoft's due diligence process would have required review of OpenAI's corporate documents and regulatory filings with the Attorney General of California, which would have revealed the conditions to Musk's substantial financial and other contributions. Through this due diligence, Microsoft would have discovered OpenAI's charitable purposes as set forth in its Certificate of Incorporation, including requirements that the technology benefit the public, that OpenAI seek to open source technology, and that the corporation not be used for private gain. Microsoft also had knowledge of OpenAI's charitable purpose because the formation documents and investment term sheets of the OpenAI For-Profit Entities included recitations of the non-profit's charitable purpose.

Microsoft's knowledge is further evidenced by OpenAI's public representations and the OpenAI name itself, which was shared by the For-Profit Entities and signified the open-source, public benefit mission that formed the basis of Musk's contributions.

Microsoft CEO Satya Nadella's own public statements demonstrate Microsoft's intimate knowledge of OpenAI's operations and governance structure. Microsoft had knowledge that OpenAI, Altman, and Brockman each owed fiduciary duties to Musk under California charitable solicitation laws. The very purpose of Microsoft's relationship with the For-Profit Entities was to enable Altman, Brockman, and Microsoft to operate for non-charitable purposes and to circumvent the fiduciary duties they owed. Finally, Microsoft's hiring of Altman and Brockman at senior levels during the period of their dismissal imputes all their knowledge to Microsoft.

1    In addition, Plaintiff refers Microsoft to his ongoing document productions, including

2    documents specifically produced in response to Musk RFP Nos. 1-3, 5, and 7, from which

3    Microsoft may derive or ascertain the answer to this Interrogatory with substantially the same

4    burden as for Plaintiff. *See* Fed. R. Civ. P. 33(d). Discovery is still ongoing, and as such, Plaintiff

5    expressly reserves the right to supplement or amend this Response.

6    **INTERROGATORY NO. 5.**

7    Identify all factual bases, including all evidence in support, You contend demonstrate

8    Microsoft's knowledge of any breach of the Alleged Contract and/or Alleged Fiduciary Duty owed

9    by Sam Altman, Greg Brockman and/or OpenAI to Elon Musk.

10    **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 5.**

11    Plaintiff incorporates the Preliminary Statement and General Objections above as if fully set

12    forth herein. Plaintiff objects that this Request is compound, overbroad, and unduly burdensome

13    given that "You" is defined as Plaintiff Elon Musk and thousands of his "current and former

14    affiliates, agents, employees, partners, representatives, or anyone acting on his behalf." Plaintiff

15    objects that this Interrogatory is cumulative of already pending written discovery including the

16    Musk RFPs and objects on the ground that this Interrogatory purports to propound a single

17    interrogatory but contains multiple discrete subparts. *See* Fed. R. Civ. P. 33(a)(1). Plaintiff further

18    objects to the production of any and all information before an applicable ESI protocol has been

19    entered in this case.

20    Subject to and without waiving any of the foregoing General and specific objections,

21    Plaintiff responds as follows based on Plaintiff's present knowledge, information, and belief and

22    without limitation: Microsoft's knowledge of breaches is demonstrated through its role as the

23    exclusive licensee and beneficiary of OpenAI's technology in violation of OpenAI's open-source

24    distribution obligations. In retrospect, it is clear that this exclusive licensing arrangement prevented

25    the wide distribution of AI benefits and created the undue concentration of power that OpenAI's

26    existence was designed to prevent. Microsoft's participation in this exclusive arrangement

27    demonstrates its knowledge that OpenAI was undermining its fundamental obligation to openly

28    share technology for the public good.

1    Microsoft's knowledge of breaches is further evidenced by its direct involvement in

2   converting OpenAI away from its charitable mission to a for-profit enterprise. Microsoft and

3   OpenAI hired investment banks to negotiate Microsoft's enormous stake in OpenAI's conversion to

4   a fully for-profit entity. Microsoft's participation in structuring deals that would give it 75% of

5   OpenAI's profits after the first $194 million, dropping to 49% until reaching 100 times its original

6   investment, demonstrates Microsoft's knowledge that OpenAI was abandoning its non-profit

7   structure and charitable obligations.

8    Microsoft demonstrated knowledge of breaches through its forceful intervention during the

9   November 2023 Board crisis. When OpenAI's Board fired Altman for being "not consistently

10   candid in his communications with the board," Microsoft immediately hired Altman and Brockman

11   and pressured the Board to reinstate them. Microsoft CEO Nadella's statements during this period,

12   including his assertion that Microsoft would "definitely take care of all of the governance issues"

13   and "make sure that the governance gets fixed," demonstrate Microsoft's knowledge that OpenAI's

14   governance had been compromised and that fiduciary duties were being breached.

15    Microsoft had knowledge of self-dealing breaches through its direct participation in

16   Altman's conflicts of interest. Microsoft was aware of and participated in Altman's self-dealing

17   arrangements, including by enriching Altman through its deal with Helion Energy in May 2023,

18   knowing that Altman owned a massive stake in that company.

19    Microsoft was aware that OpenAI transferred most of its intellectual property to the For-

20   Profit Entities in 2019 and 2020, and that OpenAI drained its non-profit staff and transferred them

21   to the for-profit companies where Microsoft held significant stakes.

22    Microsoft demonstrated knowledge of breaches of transparency commitments through its

23   participation in OpenAI's shift from open-source to closed development. Microsoft was aware that

24   OpenAI released detailed reports and open-source code for GPT-2 and GPT-3, but then kept GPT-4

25   and subsequent models entirely closed after Microsoft's exclusive licensing arrangement began.

26    In addition, Microsoft's hiring of Altman and Brockman at senior levels during the period of

27   their dismissal imputes all their knowledge to Microsoft. Plaintiff refers Microsoft to his ongoing

28   document productions, including documents specifically produced in response to Musk RFP Nos. 2,

5, and 7, from which Microsoft may derive or ascertain the answer to this Interrogatory with substantially the same burden as for Plaintiff. *See* Fed. R. Civ. P. 33(d). Discovery is still ongoing, and as such, Plaintiff expressly reserves the right to supplement or amend this Response.

**INTERROGATORY NO. 6.**

Identify the earliest date (including the month, day, and year) on which You contend Microsoft became aware of the existence of the Alleged Contract and/or the Alleged Fiduciary Duty owed by Sam Altman, Greg Brockman and/or OpenAI to Elon Musk.

**RESPONSE TO INTERROGATORY NO. 6.**

Plaintiff incorporates the Preliminary Statement and General Objections above as if fully set forth herein. Plaintiff objects that this Request is compound, overbroad, and unduly burdensome given that "You" is defined as Plaintiff Elon Musk and thousands of his "current and former affiliates, agents, employees, partners, representatives, or anyone acting on his behalf." Plaintiff objects that this Interrogatory is cumulative of already pending written discovery including the Musk RFPs and objects on the ground that this Interrogatory purports to propound a single interrogatory but contains multiple discrete subparts. *See* Fed. R. Civ. P. 33(a)(1). Plaintiff further objects to the production of any and all information before an applicable ESI protocol has been entered in this case.

Subject to and without waiving any of the foregoing General and specific objections, Plaintiff responds as follows based on Plaintiff's present knowledge, information, and belief and without limitation: Microsoft became aware of the existence of the Altman and OpenAI's contract with Plaintiff and/or Altman, Brockman, and OpenAI's fiduciary duties to Plaintiff as early as December 2015, but by no later than September 2016. Discovery is still ongoing, and as such, Plaintiff expressly reserves the right to supplement or amend this Response.

**INTERROGATORY NO. 7.**

Identify all factual bases, including all evidence in support, that You contend show Microsoft caused or induced any breach or disruption of, or otherwise interfered with, the Alleged Contract and/or provided substantial assistance and/or encouragement to any person concerning any alleged breach of the Alleged Fiduciary Duty owed by Sam Altman, Greg Brockman, and/or

1 OpenAI to Elon Musk.

2 **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 7.**

3     Plaintiff incorporates the Preliminary Statement and General Objections above as if fully set

4 forth herein. Plaintiff objects that this Request is compound, overbroad, and unduly burdensome

5 given that "You" is defined as Plaintiff Elon Musk and thousands of his "current and former

6 affiliates, agents, employees, partners, representatives, or anyone acting on his behalf." Plaintiff

7 objects that this Interrogatory is cumulative of already pending written discovery including the

8 Musk RFPs and objects on the ground that this Interrogatory purports to propound a single

9 interrogatory but contains multiple discrete subparts. *See* Fed. R. Civ. P. 33(a)(1). Plaintiff further

10 objects to the production of any and all information before an applicable ESI protocol has been

11 entered in this case.

12     Subject to and without waiving any of the foregoing General and specific objections,

13 Plaintiff responds as follows based on Plaintiff's present knowledge, information, and belief and

14 without limitation: Microsoft caused breaches by demanding and obtaining exclusive licensing

15 arrangements that violated OpenAI's fundamental obligation to make its technology open source for

16 public benefit. Microsoft leveraged its position as OpenAI's exclusive compute supplier to extract

17 this exclusive licensing arrangement, using its stranglehold on OpenAI's most important raw

18 material to force compliance with its demands.

19     Microsoft induced the conversion of OpenAI from its charitable mission by providing the

20 financial incentives and corporate structure necessary to abandon the non-profit model. Microsoft

21 and OpenAI hired investment banks to negotiate Microsoft's enormous stake in OpenAI's

22 conversion to a fully for-profit entity. Microsoft structured deals that would give it 75% of

23 OpenAI's profits after the first $194 million, creating powerful financial incentives for OpenAI to

24 abandon its charitable obligations and maximize profits instead. This profit-sharing arrangement

25 directly induced OpenAI to breach its contractual obligation to operate "unconstrained by a need to

26 generate financial return."

27     Microsoft provided substantial assistance in governance breaches by forcefully intervening

28 to remove independent board members and install compliant allies. When OpenAI's Board fired

Altman in November 2023 for being "not consistently candid," Microsoft immediately hired Altman and Brockman and actively solicited OpenAI employees to leave and join Microsoft's new lab. Microsoft leveraged its financial control over OpenAI by threatening to withhold compute services and the remainder of its unpaid $13 billion commitment, effectively incapacitating OpenAI if it did not comply with Microsoft's demands. Microsoft CEO Nadella publicly stated that Microsoft would "definitely take care of all of the governance issues" and purged the independent board members who had attempted to fulfill their fiduciary duties.

Microsoft encouraged and facilitated Altman's self-dealing by participating directly in his conflicts of interest. Microsoft enriched Altman through its deal with Helion Energy in May 2023, knowing that Altman owned a massive stake in that company. Microsoft's participation in these self-dealing arrangements provided substantial encouragement for Altman to continue prioritizing his personal financial interests over his fiduciary duties to OpenAI and its donors.

Microsoft caused breaches of safety obligations by pressuring OpenAI to prioritize commercial deployment over safety considerations. Microsoft's profit-sharing arrangements and exclusive licensing deals created financial pressures that induced OpenAI to abandon safety as a "first-class requirement." Microsoft provided substantial assistance in these breaches by offering the financial incentives and market pressures that made safety considerations secondary to profit maximization.

Microsoft provided substantial assistance in asset stripping by creating and participating in the complex web of For-Profit Entities designed to loot OpenAI's charitable assets. Microsoft holds significant stakes in certain of the OpenAI For-Profit Entities. Microsoft's participation in this opaque web of for-profit OpenAI affiliates provided the corporate structure necessary to systematically transfer OpenAI's assets away from its charitable purposes.

Microsoft encouraged breaches of transparency commitments by encouraging and benefiting from OpenAI's shift to closed-source development. Microsoft was aware that OpenAI had previously released detailed reports and open-source code for GPT-2 and GPT-3, but Microsoft's exclusive licensing arrangement coincided with OpenAI's decision to keep GPT-4 and subsequent models entirely closed. Microsoft's exclusive licensing deals created financial incentives for

secrecy rather than the open sharing of technology that was fundamental to OpenAI's mission.

Microsoft's substantial assistance is demonstrated through its operational integration with OpenAI, including providing co-working space for OpenAI employees, facilitating the exchange of executives and engineers between companies, and creating the de facto merger that allowed Microsoft to exercise effective control over OpenAI while maintaining the pretense of separate entities. This level of integration provided Microsoft with the means to influence and direct OpenAI's decisions in ways that systematically breached both the contract and fiduciary duties owed to Musk.

Plaintiff refers Microsoft to his ongoing document productions, including documents specifically produced in response to Musk RFP Nos. 3 and 5-8, from which Microsoft may derive or ascertain the answer to this Interrogatory with substantially the same burden as for Plaintiff. *See* Fed. R. Civ. P. 33(d). Discovery is still ongoing, and as such, Plaintiff expressly reserves the right to supplement or amend this Response.

**INTERROGATORY NO. 8.**

With respect to Count IV of the Second Amended Complaint (Unjust Enrichment), identify each and every benefit that you allege Microsoft received, including a detailed description of the benefit, the name of the person or entity who conferred the benefit, the date or time period when the benefit was conferred, and the monetary value or other quantification of the benefit.

**RESPONSE TO INTERROGATORY NO. 8.**

Plaintiff incorporates the Preliminary Statement and General Objections above as if fully set forth herein. Plaintiff objects that this Request is compound, overbroad, and unduly burdensome given that "You" is defined as Plaintiff Elon Musk and thousands of his "current and former affiliates, agents, employees, partners, representatives, or anyone acting on his behalf." Plaintiff objects that this Interrogatory is cumulative of already pending written discovery including the Musk RFPs and objects on the ground that this Interrogatory purports to propound a single interrogatory but contains multiple discrete subparts. *See* Fed. R. Civ. P. 33(a)(1). Plaintiff further objects to the production of any and all information before an applicable ESI protocol has been entered in this case.

Subject to and without waiving any of the foregoing General and specific objections, Plaintiff responds as follows based on Plaintiff's present knowledge, information, and belief and without limitation: Microsoft has received approximately $ ██████ in total revenue from OpenAI entities for all services from 2019 to the near present, which includes approximately ████████ ████████████████████████████████████████████████████████████ ████████████████████████████████. In addition, Plaintiff refers Microsoft to his ongoing document productions, including documents specifically produced in response to Musk RFP No. 6, from which Microsoft may derive or ascertain the answer to this Interrogatory with substantially the same burden as for Plaintiff. *See* Fed. R. Civ. P. 33(d). Discovery is still ongoing, and as such, Plaintiff expressly reserves the right to supplement or amend this Response.

**INTERROGATORY NO. 9.**

For any benefit You identify in Your response to Interrogatory No. 8, identify all factual bases, including all evidence in support, that You contend show that it was unjust for Microsoft to retain such benefit.

**RESPONSE TO INTERROGATORY NO. 9.**

Plaintiff incorporates the Preliminary Statement and General Objections above as if fully set forth herein. Plaintiff objects that this Request is compound, overbroad, and unduly burdensome given that "You" is defined as Plaintiff Elon Musk and thousands of his "current and former affiliates, agents, employees, partners, representatives, or anyone acting on his behalf." Plaintiff objects that this Interrogatory is cumulative of already pending written discovery including the Musk RFPs and objects on the ground that this Interrogatory purports to propound a single interrogatory but contains multiple discrete subparts. *See* Fed. R. Civ. P. 33(a)(1). Plaintiff further objects to the production of any and all information before an applicable ESI protocol has been entered in this case.

Subject to and without waiving any of the foregoing General and specific objections, Plaintiff responds as follows based on Plaintiff's present knowledge, information, and belief and without limitation: Plaintiff identifies Microsoft's responses to Plaintiff's First Set of Interrogatories. These and other evidence show it is unjust for Microsoft to retain the benefits it is

receiving because: (1) the technology generating the revenue Microsoft retains was developed using Plaintiff's $44,563,500 in charitable contributions made specifically for a 501(c)(3) non-profit with explicit commitments that the technology would be used "for the good of the world," would "benefit humanity as a whole," and would not be used "for the private gain of any person"; (2) Microsoft knew of these charitable conditions when it induced OpenAI to breach them; (3) Microsoft required OpenAI to transfer IP from the non-profit to the for-profit entity as a condition of investment, stating it sought to confirm that OpenAI, L.P. had the requisite rights, including IP rights; and (4) the technology from which Microsoft is deriving revenue was also promised to be open sourced for public benefit, with safety as a first-class requirement, which conditions have been subordinated by and at the direction of Microsoft in service of its desire for financial gain. In addition, Plaintiff refers Microsoft to his ongoing document productions, including documents specifically produced in response to Musk RFP No. 6, from which Microsoft may derive or ascertain the answer to this Interrogatory with substantially the same burden as for Plaintiff. *See* Fed. R. Civ. P. 33(d). Discovery is still ongoing, and as such, Plaintiff expressly reserves the right to supplement or amend this Response.

## INTERROGATORY NO. 10.

For any benefit You identify in Your response to Interrogatory No. 8, identify all factual bases, including all evidence in support, that You contend show how the retention of any such benefit came at the expense of Elon Musk.

## RESPONSE TO INTERROGATORY NO. 10.

Plaintiff incorporates the Preliminary Statement and General Objections above as if fully set forth herein. Plaintiff objects that this Request is compound, overbroad, and unduly burdensome given that "You" is defined as Plaintiff Elon Musk and thousands of his "current and former affiliates, agents, employees, partners, representatives, or anyone acting on his behalf." Plaintiff objects that this Interrogatory is cumulative of already pending written discovery including the Musk RFPs and objects on the ground that this Interrogatory purports to propound a single interrogatory but contains multiple discrete subparts. See Fed. R. Civ. P. 33(a)(1). Plaintiff further objects to the production of any and all information before an applicable ESI protocol has been

1  entered in this case.

2        Subject to and without waiving any of the foregoing General and specific objections,

3  Plaintiff responds as follows based on Plaintiff's present knowledge, information, and belief and

4  without limitation: Microsoft's retention of benefits came at Plaintiff's expense because: (1)

5  Microsoft admits receiving billions in revenue from OpenAI entities, which is revenue generated

6  from technology developed using Plaintiff's financial contributions to and Plaintiff's substantial

7  operational support of the non-profit in pursuit of its charitable mission; (2) this commercialization

8  violated express promises that OpenAI's technology would be used "for the good of the world" and

9  would not be used "for the private gain of any person," with safety a first-class requirement; (3)

10 Microsoft's admitted exclusive licensing prevented the promised open sourcing of technology

11 intended for humanity's benefit; and (4) the value extracted by Microsoft represents a direct

12 conversion of charitable contributions intended for the public's benefit into Microsoft's private

13 profit, undermining the express charitable purposes for which Plaintiff's contributions were made.

14 Discovery is still ongoing, and as such, Plaintiff expressly reserves the right to supplement or

15 amend this Response.

16 **INTERROGATORY NO. 11.**

17        Identify all factual bases, including all evidence in support, that You contend show

18 Microsoft exercised de facto control of OpenAI. *See* SAC at ¶¶ 145, 444.

19 **RESPONSE TO INTERROGATORY NO. 11.**

20        Plaintiff incorporates the Preliminary Statement and General Objections above as if fully set

21 forth herein. Plaintiff objects that this Request is compound, overbroad, and unduly burdensome

22 given that "You" is defined as Plaintiff Elon Musk and thousands of his "current and former

23 affiliates, agents, employees, partners, representatives, or anyone acting on his behalf." Plaintiff

24 objects that this Interrogatory is cumulative of already pending written discovery including the

25 Musk RFPs. Plaintiff further objects to the production of any and all information before an

26 applicable ESI protocol has been entered in this case.

27        Subject to and without waiving any of the foregoing General and specific objections,

28 Plaintiff responds as follows based on Plaintiff's present knowledge, information, and belief and

without limitation. Microsoft exercised de facto control over OpenAI through: (1) fostering financial and supply dependency through Microsoft's admitted multi-billion-dollar investments in OpenAI and exclusive provision to OpenAI of computing infrastructure; (2) possessing contractual control via approval rights over "Major Decisions"; (3) exercising influence over OpenAI's board of directors through Microsoft's installation of Deannah Templeton as board observer, the interlocking director service of Reid Hoffman, and Microsoft's participation in OpenAI's November 2023 board reconstitution; (4) utilizing economic leverage in its strategic partnership with OpenAI, including that resulting from the fact OpenAI can only commercialize its technology through Microsoft's platform; (5) Microsoft CEO Nadella's public statements that Microsoft has "all the IP rights and all the capability" of OpenAI and is "below them, above them, around them"; and (6) Microsoft's contractual power to block OpenAI's restructuring. In addition, Plaintiff refers Microsoft to his ongoing document productions, including documents specifically produced in response to Musk RFP No. 8, from which Microsoft may derive or ascertain the answer to this Interrogatory with substantially the same burden as for Plaintiff. *See* Fed. R. Civ. P. 33(d). Discovery is still ongoing, and as such, Plaintiff expressly reserves the right to supplement or amend this Response.

**INTERROGATORY NO. 12.**

Identify all factual bases, including all evidence in support, that You contend show Microsoft's alleged involvement in OpenAI's decision to form and/or the formation of the OpenAI For-Profit Entities.

**RESPONSE TO INTERROGATORY NO. 12.**

Plaintiff incorporates the Preliminary Statement and General Objections above as if fully set forth herein. Plaintiff objects that this Request is compound, overbroad, and unduly burdensome given that "You" is defined as Plaintiff Elon Musk and thousands of his "current and former affiliates, agents, employees, partners, representatives, or anyone acting on his behalf." Plaintiff objects that this Interrogatory is cumulative of already pending written discovery including the Musk RFPs. Plaintiff further objects to the production of any and all information before an applicable ESI protocol has been entered in this case.

Subject to and without waiving any of the foregoing General and specific objections, Plaintiff responds as follows based on Plaintiff's present knowledge, information, and belief and without limitation: Microsoft was directly involved in the formation of OpenAI's for-profit entities as evidenced by the fact that: (1) Microsoft was informed on or about June 28, 2019 that the transfer of IP from the non-profit to the for-profit entity, OpenAI, L.P. was purportedly approved by the OpenAI, Inc. board of directors; (2) Microsoft required this IP transfer as a condition before signing the Investment Agreement with OpenAI; (3) without limitation, the for-profit structure was specifically created to accommodate Microsoft's investment; (4) Microsoft admitted its approval is required to complete OpenAI's for-profit restructuring and that negotiations over Microsoft's financial interest in the proposed restructured company are ongoing; (5) Microsoft's current demand that the limiting AGI clause in its agreement with OpenAI be removed and that its ownership stake in OpenAI be increased; and (6) Microsoft's partnership with OpenAI necessitated OpenAI's abandonment of its non-profit structure. In addition, Plaintiff refers Microsoft to his ongoing document productions. *See* Fed. R. Civ. P. 33(d). Discovery is still ongoing, and as such, Plaintiff expressly reserves the right to supplement or amend this Response.

**INTERROGATORY NO. 13.**

Identify any act taken by Microsoft, including any agreement with OpenAI and each term thereof, that You contend is inconsistent with any obligation owed by Microsoft, OpenAI, Sam Altman, Greg Brockman, and/or any other person to Elon Musk.

**RESPONSE TO INTERROGATORY NO. 13.**

Plaintiff incorporates the Preliminary Statement and General Objections above as if fully set forth herein. Plaintiff objects that this Request is compound, overbroad, and unduly burdensome given that "You" is defined as Plaintiff Elon Musk and thousands of his "current and former affiliates, agents, employees, partners, representatives, or anyone acting on his behalf," and is vague as it requests information concerning obligations owed by "any [] person to Elon Musk." Plaintiff objects that this Interrogatory is cumulative of already pending written discovery including the Musk RFPs and objects on the ground that this Interrogatory purports to propound a single interrogatory but contains multiple discrete subparts. *See* Fed. R. Civ. P. 33(a)(1). Plaintiff further

1  objects to the production of any and all information before an applicable ESI protocol has been

2  entered in this case.

3        Subject to and without waiving any of the foregoing General and specific objections,

4  Plaintiff responds as follows based on Plaintiff's present knowledge, information, and belief and

5  without limitation: Microsoft's acts inconsistent with obligations owed to Plaintiff include: (1) the

6  Joint Development and Collaboration Agreement that Microsoft admits grants it exclusive rights to

7  OpenAI's models in violation of Defendants' commitment to open source OpenAI's technology; (2)

8  Microsoft's admitted exclusive commercialization of OpenAI's technology, generating billions of

9  dollars in revenue, in violation of Defendants' commitment that OpenAI's technology would not be

10 used for private gain; (3) Microsoft's "Major Decisions" approval rights, undermining the authority

11 of OpenAI's board of directors to pursue OpenAI's charitable mission and ability to act

12 independently in service of its charter; (4) Microsoft's admitted ongoing negotiations to restructure

13 OpenAI as a for-profit corporation; and (5) Microsoft's contractual restrictions preventing OpenAI

14 from using other cloud providers or developing competing products. In addition, Plaintiff refers

15 Microsoft to his ongoing document productions, including documents specifically produced in

16 response to Musk RFP Nos. 3, 5, and 7-8, from which Microsoft may derive or ascertain the answer

17 to this Interrogatory with substantially the same burden as for Plaintiff. *See* Fed. R. Civ. P. 33(d).

18 Discovery is still ongoing, and as such, Plaintiff expressly reserves the right to supplement or

19 amend this Response.

20 **INTERROGATORY NO. 14.**

21        For each and every agreement between Microsoft and OpenAI entered into prior to 2019,

22 describe all bases for Your contention that the agreement was inconsistent with any obligation owed

23 by Microsoft, OpenAI, Sam Altman, Greg Brockman, and/or any other person to Elon Musk.

24 **RESPONSE TO INTERROGATORY NO. 14.**

25        Plaintiff incorporates the Preliminary Statement and General Objections above as if fully set

26 forth herein. Plaintiff objects that this Request is compound, overbroad, and unduly burdensome

27 given that "You" is defined as Plaintiff Elon Musk and thousands of his "current and former

28 affiliates, agents, employees, partners, representatives, or anyone acting on his behalf," and is vague

as it requests information concerning obligations owed by "any [] person to Elon Musk." Plaintiff objects that this Interrogatory is cumulative of already pending written discovery including the Musk RFPs, as well as needlessly duplicative of Interrogatory No. 13. Plaintiff further objects to the production of any and all information before an applicable ESI protocol has been entered in this case.

Subject to and without waiving any of the foregoing General and specific objections, Plaintiff responds as follows based on Plaintiff's present knowledge, information, and belief and without limitation: While Plaintiff's investigation of both pre-2019 agreements is ongoing, Microsoft's admitted strategic partnership with OpenAI beginning in 2019 and prior collaborations were inconsistent with obligations owed to Plaintiff because: (1) they initiated commercial arrangements contradicting OpenAI's non-profit commitments; (2) created infrastructure dependencies that enabled Microsoft's subsequent control of OpenAI; (3) occurred without disclosure to Plaintiff, despite his role as a co-founder and key contributor to OpenAI and his ongoing support; and (4) laid the groundwork for the exclusive arrangements that would prevent both the open sourcing and transparent development of AI technology for the public's benefit, with safety as a first-class requirement. In addition, Plaintiff refers Microsoft to his ongoing document productions, including documents specifically produced in response to Musk RFP Nos. 3, 5, and 7-8, from which Microsoft may derive or ascertain the answer to this Interrogatory with substantially the same burden as for Plaintiff. *See* Fed. R. Civ. P. 33(d). Discovery is still ongoing, and as such, Plaintiff expressly reserves the right to supplement or amend this Response.

## INTERROGATORY NO. 15.

If You contend that any alleged licensing of OpenAI's pre-AGI technology by Microsoft constitutes a breach of the Alleged Contract or caused and/or induced a breach of the Alleged Fiduciary Duty, describe all factual bases for Your contention, including all evidence in support.

## RESPONSE TO INTERROGATORY NO. 15.

Plaintiff incorporates the Preliminary Statement and General Objections above as if fully set forth herein. Plaintiff objects that this Request is compound, overbroad, and unduly burdensome given that "You" is defined as Plaintiff Elon Musk and thousands of his "current and former

affiliates, agents, employees, partners, representatives, or anyone acting on his behalf." Plaintiff objects that this Interrogatory is cumulative of already pending written discovery including the Musk RFPs. Plaintiff further objects to the production of any and all information before an applicable ESI protocol has been entered in this case.

Subject to and without waiving any of the foregoing General and specific objections, Plaintiff responds as follows based on Plaintiff's present knowledge, information, and belief and without limitation: It has recently become clear to Plaintiff that Microsoft's exclusive licensing of OpenAI's pre-AGI technology constitutes breach and inducement of breach of Defendants' contractual and fiduciary duties to him because: (1) Plaintiff's agreement with Sam Altman and OpenAI was, without limitation, that OpenAI would openly share its capabilities and seek to open source its technology for the advancement of science and the public's benefit ; (2) Microsoft admits having exclusive rights through which it deploys and monetizes OpenAI's models across its consumer and enterprise services; (3) Microsoft admits this generated billions of dollars in revenue from technology developed with Plaintiff's charitable contributions; (4) Microsoft's exclusive rights prevent transparency and any open sourcing of OpenAI's technology, directly breaching OpenAI's commitments to Plaintiff; (5) the commercial pressures of OpenAI's partnership with Microsoft prevented OpenAI's commitment to make safety a first-class requirement and to develop AI technology for the benefit of humanity rather than private gain; (6) Microsoft knew of these commitments, having conducted due diligence on OpenAI before its investments; and (7) the structure of Microsoft's exclusive license to pre-AGI technology, incentivizes the mis-labelling of dangerous AGI technology as non-AGI to maintain Microsoft's exclusive access, compromising safety and contravening OpenAI's foundational mission. In addition, Plaintiff refers Microsoft to his ongoing document productions. *See* Fed. R. Civ. P. 33(d). Discovery is still ongoing, and as such, Plaintiff expressly reserves the right to supplement or amend this Response.

**INTERROGATORY NO. 16.**

Identify all persons who have knowledge, information, or documents concerning the factual bases for Your allegation that Microsoft caused or induced any breach or disruption of, or otherwise interfered with, the Alleged Contract and/or provided substantial assistance and/or encouragement

to any person regarding any alleged breach of the Alleged Fiduciary Duty owed by Sam Altman, Greg Brockman, and/or OpenAI to Elon Musk. In Your answer, specify each such person's full name, employer and job title, last known address, relationship to the events and/or parties at issue, and a summary of the knowledge, information, or documents that person possesses relating to such allegations.

**RESPONSE TO INTERROGATORY NO. 16.**

Plaintiff incorporates the Preliminary Statement and General Objections above as if fully set forth herein. Plaintiff objects that this Request is compound, overbroad, and unduly burdensome. Plaintiff objects that this Interrogatory is cumulative of already pending written discovery including the Musk RFPs and objects on the ground that this Interrogatory purports to propound a single interrogatory but contains multiple discrete subparts. *See* Fed. R. Civ. P. 33(a)(1). Plaintiff further objects to the production of any and all information before an applicable ESI protocol has been entered in this case.

Subject to and without waiving any of the foregoing General and specific objections, Plaintiff responds as follows based on Plaintiff's present knowledge, information, and belief and without limitation: Persons with knowledge include: (1) Satya Nadella, CEO, Microsoft, whom Microsoft admits communicated with Altman regarding OpenAI's contemplated restructuring; (2) Amy Hood, CFO, Microsoft; (3) Jon Tinter, Microsoft; (4) Deannah Templeton, Microsoft; (5) Kevin Scott, CTO, Microsoft; (6) Reid Hoffman, Microsoft; (7) Sam Altman, OpenAI; (8) Greg Brockman, OpenAI; (9) Elon Musk; and (10) Shivon Zilis. In addition, Plaintiff refers Microsoft to his ongoing document productions. *See* Fed. R. Civ. P. 33(d). Discovery is still ongoing, and as such, Plaintiff expressly reserves the right to supplement or amend this Response.

DATED: August 20, 2025                    TOBEROFF & ASSOCIATES, P.C.

                                          */s/ Marc Toberoff*
                                          Marc Toberoff

                                          *Attorneys for Plaintiffs Elon Musk
                                          and X.AI Corp.*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **VERIFICATION**

I, Elon Musk, hereby verify that the facts set forth in the answers to the Interrogatories are true to the best of my present knowledge, information, and belief.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on August 20, 2025.

_____
Elon Musk

1

## PROOF OF SERVICE

2  I, Jaymie Parkkinen, declare:

3          I am over the age of eighteen years and not a party to the within action. I am a resident of or

4  employed in the county where the service described below occurred. My business address is 23823

5  Malibu Road, Suite 50-363, Malibu, CA 90265. On the date indicated below, I caused the following:

6  **PLAINTIFF MUSK'S SUPPLEMENTAL RESPONSES AND OBJECTIONS TO**
7  **MICROSOFT'S FIRST SET OF INTERROGATORIES**

8  to be served as follows:

9          [X]    **BY ELECTRONIC MAIL** -  I caused the above-described document to be served by

10  electronic mail transmission on the interested parties noted below, where an electronic mail address

11  is indicated.

12  William Savitt                                    Russell Cohen
    *wdsavitt@wlrk.com*                         *russ.cohen@dechert.com*
13  Bradley R Wilson                               Nisha Patel Gupta
    *brwilson@wlrk.com*                          *nisha.patelgupta@dechert.com*
14  Sarah Eddy                                        Howard Ullman
15  *skeddy@wlrk.com*                           *howard.ullman@dechert.com*
    Nathaniel Cullerton                           Jay Jurata
16  *ndcullerton@wlrk.com*                      *jay.jurata@dechert.com*
    Ioannis Drivas                                  Andrew Levander
17  *iddrivas@wlrk.com*                          *andrew.levander@dechert.com*
    Kelsey Borenzweig                            DECHERT LLP
18  *kaborenzweig@wlrk.com*
19  WACHTELL, LIPTON, ROSEN & KATZ

20  Jordan Eth
    *jeth@mofo.com*
21  William Frentzen
22  *wfrentzen@mofo.com*
    David Wiener
23  *dwiener@mofo.com*
    MORRISON & FOERSTER LLP

24

25          I declare under penalty of perjury that the foregoing is true and correct. Executed on

26  August 21, 2025, at Beverly Hills, California.

27                                                          */s/ Jaymie Parkkinen*
                                                            Jaymie Parkkinen

28