# EXHIBIT 25
# PUBLIC REDACTED VERSION

# AMENDED AND RESTATED

# LIMITED PARTNERSHIP AGREEMENT OF

# OPENAI, L.P.

# A DELAWARE LIMITED PARTNERSHIP

# July 2, 2019

---

### IMPORTANT

**\*\*Investing in OpenAI, L.P. is a *high-risk investment*\*\***
**\*\*Investors could lose their capital contribution and not see any return\*\***
**\*\*It would be wise to view any investment in OpenAI, L.P. in the spirit of a
donation, with the understanding that it may be difficult to know what
role money will play in a post-AGI world\*\***

The Partnership exists to advance OpenAI, Inc.'s mission of ensuring that safe artificial general intelligence is developed and benefits all of humanity. The General Partner's duty to this mission and the principles advanced in the OpenAI, Inc. Charter take precedence over any obligation to generate a profit. The Partnership may never make a profit, and the General Partner is under no obligation to do so. The General Partner is free to re-invest any or all of the Partnership's cash flow into research and development activities and/or related expenses without any obligation to the Limited Partners. See Section 6.4 for additional details.

NEITHER THE UNITED STATES SECURITIES AND EXCHANGE COMMISSION NOR ANY STATE REGULATORY AUTHORITY NOR THE REGULATORY AUTHORITY OF ANY OTHER COUNTRY HAS APPROVED OR DISAPPROVED THIS LIMITED PARTNERSHIP AGREEMENT OR THE LIMITED PARTNERSHIP INTERESTS ("INTERESTS") PROVIDED FOR HEREIN.  ANY REPRESENTATION TO THE CONTRARY IS UNLAWFUL.

THE INTERESTS HAVE NOT BEEN REGISTERED UNDER THE UNITED STATES SECURITIES ACT OF 1933 (THE "SECURITIES ACT"), NOR UNDER THE SECURITIES LAWS OF ANY OTHER COUNTRY, AND THE PARTNERSHIP IS UNDER NO OBLIGATION TO REGISTER THE INTERESTS UNDER THE SECURITIES ACT OR ANY OTHER SUCH LAWS IN THE FUTURE.

AN INTEREST MAY NOT BE SOLD, PLEDGED, HYPOTHECATED OR OTHERWISE TRANSFERRED WITHIN THE UNITED STATES OR TO A "U.S. PERSON," WITHIN THE MEANING OF REGULATION S UNDER THE SECURITIES ACT, IN THE ABSENCE OF AN EFFECTIVE REGISTRATION UNDER THE SECURITIES ACT OR AN OPINION OF COUNSEL SATISFACTORY TO THE GENERAL PARTNER THAT SUCH REGISTRATION IS NOT REQUIRED.  HEDGING TRANSACTIONS INVOLVING AN INTEREST MAY NOT BE CONDUCTED UNLESS IN COMPLIANCE WITH THE SECURITIES ACT.  ADDITIONAL RESTRICTIONS ON THE TRANSFER OF INTERESTS ARE CONTAINED IN SECTION 7 OF THIS AGREEMENT.  BASED UPON THE FOREGOING, EACH ACQUIROR OF AN INTEREST MUST BE PREPARED TO BEAR THE ECONOMIC RISK OF INVESTMENT THEREIN FOR AN INDEFINITE PERIOD OF TIME.

HIGHLY CONFIDENTIAL



**_Converted Second Close Limited Partner_** means Microsoft Corporation.



HIGHLY CONFIDENTIAL

MSFT_MUSK000059958



**GP Change in Control** shall mean, with respect to the General Partner, any transaction or series of related transactions that constitute a direct or indirect Transfer or any change in the ownership of the General Partner resulting in a change of more than 50 percent of the effective voting control over or beneficial ownership of such General Partner; provided, however, that a GP Change in Control shall not be deemed to occur with respect to General Partner solely in consequence of (i) a restructuring of such General Partner that does not include a Transfer of the ultimate effective voting control or beneficial ownership of such General Partner or (ii) ordinary course replacements of the members of the board of directors of the Non-Profit.





*Lead Investor* shall mean the Aphorism Foundation.

MSFT_MUSK000059962

████████████████████████████████████
████████████████████████████████████
███████

***Major Decisions*** shall include the following:

(i)      increase the Target Redemption Amount of the Employee Vehicle above $150 billion;

(ii)      an adverse change in the timing, amount, or priority of distributions to the Limited Partners;

(iii)      make any distribution to any Partner in respect of its interest in the Partnership except as otherwise provided under this Agreement;

(iv)      approve any transaction, pay any amounts or transfer any assets between the Partnership and a GP Related Person except as expressly contemplated by this Agreement;

(v)      call for contributions to capital from a Limited Partner in excess of its Capital Commitment;

(vi)      dissolve, liquidate, or otherwise terminate the Partnership;

(vii)      effect or permit a merger, division, or consolidation of the Partnership with or into another Person that would have a material adverse effect on the Partnership or result in a conversion, division, transfer or domestication of the Partnership to another form or jurisdiction, or knowingly take or permit any other action to occur that would adversely affect or otherwise alter the structure of the Partnership; provided that if the General Partner reasonably determines in good faith that a value-aligned safety-conscious project (the "Project") will within a two year period build AGI which would be before the Partnership is able to do so, the General Partner can proceed (and such action shall not be treated as a Major Decision) to effect or permit a merger or consolidation of the Partnership with or into such Person ("Merger Transaction") only if such Person is running the Project and is, or is controlled by, a U.S. federal governmental entity or a non-profit entity whose board of directors is not majority controlled by Persons who are employed by, serve as an officer and/ or director of, or own a material interest in, a competitor (or its affiliate) of the Converted Second Close Limited Partner; provided further that the General Partner shall provide the Converted Second Close Limited Partner with written notice immediately following its determination that the Project will within a two year period build AGI, shall cause such Merger Transaction to be consummated within one year of such written notice to the Converted Second Close Limited Partner, and shall also provide notice and information regarding the terms and conditions of any such Merger Transaction at least thirty days prior to the consummation of such Merger Transaction;

(viii)      confess a judgment against the Partnership in an amount exceeding $5,000,000 if, at the time of payment of any such judgment the Partnership does not have sufficient unrestricted cash to make such payment, or join in, initiate, or take any action for foreclosure, bankruptcy or any other insolvency proceedings of the Partnership;

(ix)      any transaction with a GP Related Person involving the purchase of Securities of a company that is, or is reasonably expected as of the time of the transaction to become, a portfolio company of a GP Related Person and more generally to co-invest or cross invest in the same portfolio company with a GP Related Person;

8

(x)      engagement of (a) a First Close Limited Partner or its Affiliate, to provide services to the Partnership in exchange for consideration exceeding $2,000,000 annually, or (b) except as contemplated by this Agreement, any other Limited Partner or its Affiliate, to provide services to the Partnership in exchange for consideration exceeding $20,000,000 annually; provided, in each case, that this clause (xi) shall not apply to the engagement of the Non-Profit pursuant to the "Collaboration Agreement" as set forth in Section 6.6(b);

(xi)      the Partnership incurring any indebtedness or entering into any loans for amounts in excess of $100,000,000 (including any modifications, extensions, renewals or amendments thereof) or pledging any assets of the Partnership as security for indebtedness or loans;

(xii)      any transfer of the interest of the General Partner in the Partnership including a GP Change in Control; and

(xiii)      any actions or activities taken by the General Partner or any of the GP Related Persons that would otherwise be prohibited by Section 6.4(j).



HIGHLY CONFIDENTIAL



**Target Redemption Amount** shall mean, for each Partner and the Converted Second Close Limited Partner, the dollar amount specified for such Person under the heading "Target Redemption Amount" on Schedule A,

MSFT_MUSK000059967



Except as specifically provided in this Agreement, the Capital Commitment of a Partner: (i) shall represent the maximum aggregate amount of cash and property that such Partner shall be required to contribute to the capital of the Partnership; and (ii) shall not be changed during the term of the Partnership. In no event shall the initial Target Redemption Amount of a First Close Limited Partner be more than 100 times its Capital Commitment; provided, however, that the inflation adjustment included in the definition of "Target Redemption Amount" in Section 1.1 will cause such Target Redemption Amounts to exceed such multiple over time. Notwithstanding anything to the contrary in this Agreement, the Target Redemption Amount of a Defaulter whose Capital Commitment has been reduced shall be reduced such that the ratio that the reduced Target Redemption Amount bears to the original Target Redemption Amount is equal to the ratio that the reduced Capital Commitment amount bears to the Defaulter's original Capital Commitment.





(b)     Notwithstanding any other provision of this Agreement to the contrary, no Capital Contribution by the Converted Second Close Limited Partner shall be made until such time as the License Agreement between the Partnership and the Non-Profit dated March 1, 2019 has been amended and restated to provide for the grant to the Partnership of an exclusive, worldwide, royalty-free, fully paid-up, nontransferable right and license to use, reproduce, distribute, modify and create derivative works of the Licensed IP (as defined therein), in a form acceptable to the Converted Second Close Limited Partner.

MSFT_MUSK000059973







**4.1**   ***Allocation of Partnership Profit and Loss.***

(a)   ***General.*** Except as otherwise provided in this Agreement, items of Profit or Loss for each fiscal quarter (or shorter period selected by the General Partner) shall be allocated as set forth in this Section 4.1(a).



(b)   ***Non-Liquidating Distributions***.   In addition to the distributions described in Section 5.1(a), the General Partner may cause the Partnership to distribute cash or property to the Partners, at such times and in such amounts as it shall determine in its Sole Discretion.   Subject to the Convertible LP Reserve, distributions pursuant to this Section 5.1(b) shall be made to the Limited Partners as follows.

HIGHLY CONFIDENTIAL

MSFT_MUSK000059980

(i) **_Prior to Commencement of the Redemption Period_**. Prior to Commencement of the Redemption Period, all items of cash or property comprising such distribution shall be apportioned and distributed among the Partners in proportion to their respective Target Redemption Amounts.

(ii) **_From and After Commencement of the Redemption Period_**. From and after Commencement of the Redemption Period, all items of cash or property comprising such distribution shall be apportioned and distributed among the Partners as follows:

(A) First, to the First Close Limited Partners (including the Non-Profit with respect to its Limited Partner Investment Interest) until each such Partner has received aggregate distributions pursuant to this Section 5.1(b)(ii)(A) equal to its Capital Contributions.

(B) Next, any remaining items of cash or property comprising such distribution shall be apportioned and distributed (1) 25 percent, in proportion to each Partner's Target Redemption Amount, to the First Close Limited Partners (including the Non-Profit with respect to its Limited Partner Investment Interest), and to the Employee Vehicle; and (2) 75 percent, in proportion to their respective amounts remaining to be distributed pursuant to this Section 5.1(b)(ii)(B), to the Second Close Limited Partners, until each such Second Close Limited Partner has received aggregate distributions pursuant to this Section 5.1(b)(ii)(B) equal to its Capital Contributions.

(C) Next, to the First Close Limited Partners (including the Non-Profit with respect to its Limited Partner Investment Interest), and to the Second Close Limited Partners, until the time that each has received aggregate distributions pursuant to Section 5.1(b)(ii)(B)(1) and this Section 5.1(b)(ii)(C) equal to its respective Target Redemption Amount (with distributions made pursuant to this Section 5.1(b)(ii)(C) apportioned among such Partners in proportion to their respective amounts remaining to be distributed pursuant to this Section 5.1(b)(ii)(C)).

(D) Next, all remaining items of cash and property shall be distributed to the Non-Profit in its capacity as a Limited Partner.

Notwithstanding the foregoing, the General Partner may distribute any amounts attributable to net allocations of Profit in excess of Loss made pursuant to Section 4.1(a)(i) in accordance with the manner in which the Capital Accounts of the Partners have been increased by such allocations.





**■** *Management by the General Partner.*

    (a)    Notwithstanding any other provisions of this Agreement to the contrary, the General Partner shall not, in the exercise of its general control and decision making authority as more particularly described in this Section 6, take or cause the Partnership to take any of the actions described as a Major Decision without in each instance first obtaining the approval of a majority in interest of the Limited Partners based on their Capital Contributions; provided, that for purposes of this Section 6.2, the Converted Second Close Limited Partner shall, as of the time of determination, be treated (i) as a Second Close Limited Partner with respect to the Convertible Limited Partnership Interest and (ii) as if it has made aggregate Capital Contributions with respect to the Convertible Limited Partnership Interest equal to the aggregate amount contributed (or deemed contributed) by the Converted Second Close Limited Partner in respect of the Convertible Limited Partnership Interest as of such time of determination ("Limited Partner Approval"). Notwithstanding the prior sentence to the contrary, the Converted Second Close Limited Partner's approval shall be required in addition to the Limited Partner Approval with respect to all Major Decisions referenced in clause (xiii) of the definition of "Major Decisions". The General Partner shall promptly implement any Major Decision made in accordance the terms of this Agreement (subject to the terms of this Agreement).

MSFT_MUSK000059982



| Name and Contact Information | Capital Commitment | Target Redemption Amount |
|---|---|---|
|  | | |
| OpenAI, Inc., a Delaware nonprofit nonstock corporation 3180 18th Street, San Francisco, CA 94110 Attn:    Mr. David Lansky, General Counsel Telephone: 415-659-7139 E-mail: david@openai.com | $47,785,080 | $4,778,508,000 |

MSFT_MUSK000060024



Microsoft Corporation                    $1,000,000,000*        $20,000,000,000
One Microsoft Way
Redmond, Washington  98052
Attn: Keith Dolliver,
Vice President and Deputy General Counsel
E-mail: keith.dolliver@microsoft.com

HIGHLY CONFIDENTIAL                    MSFT_MUSK000060025