# EXHIBIT 34
# PUBLIC REDACTED VERSION

# SECOND AMENDED AND RESTATED

# LIMITED PARTNERSHIP AGREEMENT OF

# OPENAI, L.P.

# A DELAWARE LIMITED PARTNERSHIP

## March 6, 2021

---

### IMPORTANT

**Investing in OpenAI, L.P. is a *high-risk investment***

**Investors could lose their capital contribution and not see any return**

**It would be wise to view any investment in OpenAI, L.P. in the spirit of a donation, with the understanding that it may be difficult to know what role money will play in a post-AGI world**

**The Partnership exists to advance OpenAI, Inc.'s mission of ensuring that safe artificial general intelligence is developed and benefits all of humanity. The General Partner's duty to this mission and the principles advanced in the OpenAI, Inc. Charter take precedence over any obligation to generate a profit. The Partnership may never make a profit, and the General Partner is under no obligation to do so. The General Partner is free to re-invest any or all of the Partnership's cash flow into research and development activities and/or related expenses without any obligation to the Limited Partners. See Section 6.4 for additional details.**

NEITHER THE UNITED STATES SECURITIES AND EXCHANGE COMMISSION NOR ANY STATE REGULATORY AUTHORITY NOR THE REGULATORY AUTHORITY OF ANY OTHER COUNTRY HAS APPROVED OR DISAPPROVED THIS LIMITED PARTNERSHIP AGREEMENT OR THE LIMITED PARTNERSHIP INTERESTS ("INTERESTS") PROVIDED FOR HEREIN.  ANY REPRESENTATION TO THE CONTRARY IS UNLAWFUL.

THE INTERESTS HAVE NOT BEEN REGISTERED UNDER THE UNITED STATES SECURITIES ACT OF 1933 (THE "SECURITIES ACT"), NOR UNDER THE SECURITIES LAWS OF ANY OTHER COUNTRY, AND THE PARTNERSHIP IS UNDER NO OBLIGATION TO REGISTER THE INTERESTS UNDER THE SECURITIES ACT OR ANY OTHER SUCH LAWS IN THE FUTURE.

AN INTEREST MAY NOT BE SOLD, PLEDGED, HYPOTHECATED OR OTHERWISE TRANSFERRED WITHIN THE UNITED STATES OR TO A "U.S. PERSON," WITHIN THE MEANING OF REGULATION S UNDER THE SECURITIES ACT, IN THE ABSENCE OF AN EFFECTIVE REGISTRATION UNDER THE SECURITIES ACT OR AN OPINION OF COUNSEL SATISFACTORY TO THE GENERAL PARTNER THAT SUCH REGISTRATION IS NOT REQUIRED.  HEDGING TRANSACTIONS INVOLVING AN INTEREST MAY NOT BE CONDUCTED UNLESS IN COMPLIANCE WITH THE SECURITIES ACT. ADDITIONAL RESTRICTIONS ON THE TRANSFER OF INTERESTS ARE CONTAINED IN SECTION 7 OF THIS AGREEMENT.  BASED UPON THE FOREGOING, EACH ACQUIROR OF AN INTEREST MUST BE PREPARED TO BEAR THE ECONOMIC RISK OF INVESTMENT THEREIN FOR AN INDEFINITE PERIOD OF TIME.

MSFT_MUSK000064574



*GP Change in Control* shall mean, with respect to the General Partner, any transaction or series of related transactions that constitute a direct or indirect Transfer or any change in the ownership of the General Partner resulting in a change of more than 50 percent of the effective voting control over or beneficial ownership of such General Partner; provided, however, that a GP Change in Control shall not be deemed to occur with respect to General Partner solely in

6

consequence of (i) a restructuring of such General Partner that does not include a Transfer of the ultimate effective voting control or beneficial ownership of such General Partner or (ii) ordinary course replacements of the members of the board of directors of the Non-Profit.



7

MSFT_MUSK000064585



***Major Decisions*** shall include the following:

(i)     increase the Target Redemption Amount of the Employee Vehicle above $150 billion;

(ii)     an adverse change in the timing, amount, or priority of distributions to the Limited Partners;

(iii)     make any distribution to any Partner in respect of its interest in the Partnership except as otherwise provided under this Agreement;

(iv)     approve any transaction, pay any amounts or transfer any assets between the Partnership and a GP Related Person except as expressly contemplated by this Agreement;

(v)     call for contributions to capital from a Limited Partner in excess of its Capital Commitment;

(vi)     dissolve, liquidate, or otherwise terminate the Partnership;

(vii)     effect or permit a merger, division, or consolidation of the Partnership with or into another Person that would have a material adverse effect on the Partnership or result in a conversion, division, transfer or domestication of the Partnership to another form or jurisdiction, or knowingly take or permit any other action to occur that would adversely affect or otherwise alter the structure of the Partnership; provided that if the General Partner reasonably determines in good faith that a value- aligned safety-conscious project (the "Project") will within a two year period build AGI which would be before the Partnership is able to do so, the General Partner can proceed (and such action shall not be treated as a Major Decision) to effect or permit a merger or consolidation of the Partnership with or into such Person ("Merger Transaction") only if such Person is running the Project and is, or is controlled by, a U.S. federal governmental entity or a non-profit entity whose board of directors is not majority controlled by Persons who are employed by, serve as an officer and/ or director of, or own a material interest in, a competitor (or its affiliate) of the Converted Limited Partner; provided further that the General Partner shall provide the Converted Limited Partner with written notice immediately following its determination that the Project will within a two year period build AGI, shall cause such Merger Transaction to be consummated within one year of such written notice to the Converted Limited Partner, and shall also provide notice and information regarding the terms and conditions of any such Merger Transaction at least thirty days prior to the consummation of such Merger Transaction;

9

(viii)    confess a judgment against the Partnership in an amount exceeding $5,000,000 if, at the time of payment of any such judgment the Partnership does not have sufficient unrestricted cash to make such payment, or join in, initiate, or take any action for foreclosure, bankruptcy or any other insolvency proceedings of the Partnership;

(ix)    any transaction with a GP Related Person involving the purchase of Securities of a company that is, or is reasonably expected as of the time of the transaction to become, a portfolio company of a GP Related Person and more generally to co-invest or cross invest in the same portfolio company with a GP Related Person;

(x)    engagement of (a) a First Close Limited Partner or its Affiliate, to provide services to the Partnership in exchange for consideration exceeding $2,000,000 annually, or (b) except as contemplated by this Agreement, any other Limited Partner or its Affiliate, to provide services to the Partnership in exchange for consideration exceeding $20,000,000 annually; provided, in each case, that this clause (xi) shall not apply to the engagement of the Non-Profit pursuant to the "Collaboration Agreement" as set forth in Section 6.6(b);

(xi)    the Partnership incurring any indebtedness or entering into any loans for amounts in excess of $100,000,000 (including any modifications, extensions, renewals or amendments thereof) or pledging any assets of the Partnership as security for indebtedness or loans;

(xii)    any transfer of the interest of the General Partner in the Partnership including a GP Change in Control; and

(xiii)    any actions or activities taken by the General Partner or any of the GP Related Persons that would otherwise be prohibited by Section 6.4(j).



HIGHLY CONFIDENTIAL                                                                                MSFT_MUSK000064588



**Target Redemption Amount** shall mean, for each Partner and the Converted Limited Partner, the dollar amount specified for such Person under the heading "Target Redemption Amount" on Schedule A,

14

HIGHLY CONFIDENTIAL

MSFT_MUSK000064592

| | | |
|---|---|---|
| Gregory S. Jensen, as Trustee of the Gregory S. Jensen Revocable Trust, dated December 24, 2009<br>116 Jones Road<br>Chestertown, NY 12817<br>Attn:  Mr. Gregory S. Jensen<br>Telephone: 914-329-2373<br>E-mail: greg70329@gmail.com<br>        rciota@ciotalegal.com | $20,000,000 | $2,000,000,000 |
| The Buchheit Revocable Trust dated August 26, 2015<br>1540 Hillview Drive<br>Los Altos, CA 94024<br>Attn:   Mr. Paul Buchheit<br>Telephone: 650-248-4045<br>E-mail: paul.buchheit@gmail.com | $3,000,000 | $300,000,000 |
| Khosla Ventures VI (AIV), L.P.<br>2128 Sand Hill Road<br>Menlo Park, CA 94025<br>Attn:   Mr. Keith Janosky<br>Telephone: 650-376-8500<br>E-mail: kvfinace@khoslaventures.com;<br>        kvlegal@khoslaventures.com | $50,000,000 | $5,000,000,000 |
| YC Holdings II AIV, LLC<br>335 Pioneer Way<br>Mountain View, CA 94041<br>Attn:   Ms. Kirsty Nathoo<br>E-mail: finance@ycombinator.com | $10,000,000 | $1,000,000,000 |
| Microsoft Corporation<br>One Microsoft Way<br>Redmond, Washington 98052<br>Attn: Keith Dolliver,<br>Vice President and Deputy General Counsel<br>E-mail: keith.dolliver@microsoft.com | $1,000,000,000* | $20,000,000,000 |
| Microsoft Corporation<br>One Microsoft Way<br>Redmond, Washington 98052<br>Attn: Keith Dolliver,<br>Vice President and Deputy General Counsel<br>E-mail: ███████@microsoft.com | $2,000,000,000** | $12,000,000,000 |

HIGHLY CONFIDENTIAL

MSFT_MUSK000064659

**EXHIBIT A**

**OPENAI, INC. CHARTER**

[to be attached]

HIGHLY CONFIDENTIAL



# OpenAI

---

**OpenAI Charter**

OpenAI's mission is to ensure that artificial general intelligence (AGI)—by which we mean highly autonomous systems that outperform humans at most economically valuable work—benefits all of humanity. We will attempt to directly build safe and beneficial AGI, but will also consider our mission fulfilled if our work aids others to achieve this outcome. To that end, we commit to the following principles:

---

**Broadly Distributed Benefits**

We commit to use any influence we obtain over AGI's deployment to ensure it is used for the benefit of all, and to avoid enabling uses of AI or AGI that harm humanity or unduly concentrate power.

Our primary fiduciary duty is to humanity. We anticipate needing to marshal substantial resources to fulfill our mission, but will always diligently act to minimize conflicts of interest among our employees and stakeholders that could compromise broad benefit.

---

**Long-Term Safety**

We are committed to doing the research required to make AGI safe, and to driving the broad adoption of such research across the AI community.

We are concerned about late-stage AGI development becoming a competitive race without time for adequate safety precautions. Therefore, if a value-aligned, safety-conscious project comes close to building AGI before we do, we commit to stop competing with and start assisting this project. We will work out specifics in case-by-case agreements, but a typical triggering condition might be "a better-than-even chance of success in the next two years."

---

**Technical Leadership**

To be effective at addressing AGI's impact on society, OpenAI must be on the cutting edge of AI capabilities—policy and safety advocacy alone would be insufficient.

We believe that AI will have broad societal impact before AGI, and we'll strive to lead in those areas that are directly aligned with our mission and expertise.

---

**Cooperative Orientation**

We will actively cooperate with other research and policy institutions; we seek to create a global community working together to address AGI's global challenges.

We are committed to providing public goods that help society navigate the path to AGI. Today this includes publishing most of our AI research, but we expect that safety and security concerns will reduce our traditional publishing in the future, while increasing the importance of sharing safety, policy, and standards research.

---

HIGHLY CONFIDENTIAL

MSFT_MUSK000064662