1  MARC TOBEROFF (CA SBN 188547)
   MToberoff@toberoffandassociates.com
2  TOBEROFF & ASSOCIATES, P.C.
   23823 Malibu Road, Suite 50-363
3  Malibu, CA  90265
   Telephone: (310) 246-3333
4
5  STEVEN F. MOLO (*pro hac vice*)
   ROBERT K. KRY (*pro hac vice*)
   JENNIFER M. SCHUBERT (*pro hac vice*)
6  MOLOLAMKEN LLP
   430 Park Avenue
7  New York, NY  10022
   Telephone: (212) 607-8160
8
   *Attorneys for Plaintiffs Elon Musk
9  and X.AI Corp.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

| | |
|---|---|
| ELON MUSK, et al., | Case No. 4:24-cv-04722-YGR |
| Plaintiffs, | **PLAINTIFF'S NOTICE OF REMEDIES** |
| v. | |
| SAMUEL ALTMAN, et al., | |
| Defendants. | |

Pursuant to this Court's direction following the January 7, 2026 summary judgment hearing, Plaintiff Elon Musk respectfully submits this notice to set forth the principal remedies he seeks on each of his claims.

The primary monetary remedy that Plaintiff seeks is disgorgement of wrongful gains, which are substantial in this case. Under California law, disgorgement of wrongful gains is available for each of the claims Plaintiff asserts. *See* Restatement (Third) of Restitution § 51(2), (4) (2011) (all claims); *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 600 (9th Cir. 2020) (unjust enrichment); *Ward v. Taggart*, 51 Cal. 2d 736, 741-42 (1959) (fraud); *Am. Master Lease LLC v. Idanta Partners, Ltd.*, 225 Cal. App. 4th 1451, 1483 (2014) (aiding and abetting); *County of San Bernardino v. Walsh*, 158 Cal. App. 4th 533, 543 (2007) (breach of fiduciary duty). Wrongful gains

include unrealized appreciation in value, such as the increased value of OpenAI and the increased value of Microsoft's investments in OpenAI. Restatement (Third) of Restitution § 51 cmt. e & illus. 2; *Am. Master Lease*, 225 Cal. App. 4th at 1486.

Plaintiff's expert on this topic is Dr. C. Paul Wazzan. Dr. Wazzan is a financial economist with decades of professional and academic experience who has managed his own successful venture capital firm that provided seed-level funding to technology startups. Dr. Wazzan analyzes the wrongful gains that OpenAI and Microsoft earned as a result of Mr. Musk's critical contributions to OpenAI from the time that Mr. Musk helped found it. Those contributions include the $38 million that Mr. Musk contributed during OpenAI's early years: roughly 60% of the nonprofit's seed funding. They also include Mr. Musk's numerous nonmonetary contributions: recruiting key employees, introducing business contacts, teaching his cofounders everything he knew about running a successful startup, and lending his prestige and reputation to the venture.

Canvassing the finance literature and his own professional experience, Dr. Wazzan explains that Mr. Musk's early contributions were critical to OpenAI's success and ability to achieve the $500 billion valuation that it reached this past year. As a result, just as an early investor in a startup company may realize gains many orders of magnitude greater than the investor's initial investment, the wrongful gains that OpenAI and Microsoft have earned – and which Mr. Musk is now entitled to disgorge – are much larger than Mr. Musk's initial contributions.

Dr. Wazzan calculates the amount of OpenAI's wrongful gains as the product of three numbers: (1) the current value of the OpenAI for-profit entity, times (2) the OpenAI nonprofit's share of the for-profit, times (3) the portion of the nonprofit's value that is fairly attributable to Mr. Musk's monetary and nonmonetary contributions (which Dr. Wazzan estimates at 50% to 75%). As stated in Dr. Wazzan's supplemental report, this equates to $65.50 billion to $109.43 billion in wrongful gains for OpenAI. Dr. Wazzan makes a similar calculation for Microsoft's wrongful gains, although Microsoft's gains are adjusted to deduct the costs of its investments and to adjust for Microsoft's ownership stake. This equates to $13.30 billion to $25.06 billion in wrongful gains for Microsoft.

Although Plaintiff seeks the same basic measure of wrongful gains on each count, the jury may need to adjust its award for certain claims depending in part on its findings concerning the statute of limitations, as discussed below. In addition, the jury should be instructed that it may award an amount different from what Dr. Wazzan calculates if it determines that Mr. Musk's contributions to OpenAI were something other than 50% to 75% of the nonprofit's value.

The claim-by-claim analysis of Plaintiff's claims is as follows:

**1. Breach of Trust Against OpenAI.** Plaintiff seeks disgorgement of wrongful gains in the full amount calculated by Dr. Wazzan for OpenAI as set forth above. In the event the jury finds that Mr. Musk discovered or should have discovered the breach of trust more than four years before filing suit, the jury should be instructed to limit its award to any wrongful gains that resulted from OpenAI's ongoing or additional breaches of trust within four years of filing. Cal. Code Civ. Proc. § 343; *Aryeh v. Canon Bus. Sols., Inc.*, 55 Cal. 4th 1185, 1198-99 (2013).

**2. Unjust Enrichment Against OpenAI.** Plaintiff seeks disgorgement of wrongful gains in the full amount calculated by Dr. Wazzan for OpenAI as set forth above. In the event the jury finds that Mr. Musk discovered or should have discovered the unjust enrichment more than two years before filing suit, the jury should be instructed to limit its award to any wrongful gains that resulted from OpenAI's ongoing unjust retention of benefits within two years of filing. Cal. Code Civ. Proc. § 339 (per Dkt. 390 at 22-23); *Aryeh*, 55 Cal. 4th at 1198-99.

**3. Fraud or Constructive Fraud Against OpenAI.** Plaintiff seeks disgorgement of wrongful gains. The jury should be instructed to award wrongful gains on this claim with respect to the portion of contributions that Mr. Musk was induced to make following the date of the fraud. In the event the jury finds that Mr. Musk discovered or should have discovered the fraud more than three years before filing suit, the jury may be instructed to return a verdict on liability consistent with that finding. Cal. Code Civ. Proc. § 338(d).

**4. Aiding and Abetting Against Microsoft.** Plaintiff seeks disgorgement of wrongful gains in the full amount calculated by Dr. Wazzan for Microsoft as set forth above. In the event the jury finds that Mr. Musk discovered or should have discovered the aiding and abetting more than four years before filing suit, the jury should be instructed to limit its award to any wrongful gains

3
PLAINTIFF'S NOTICE OF REMEDIES
CASE NO.: 4:24-CV-04722-YGR

that resulted from Microsoft's or OpenAI's wrongful conduct within four years of filing. Cal. Code Civ. Proc. § 343; *Aryeh*, 55 Cal. 4th at 1198-99; *Am. Master Lease*, 225 Cal. App. 4th at 1478.

    To avoid any duplication of recovery, the jury should be instructed to return an award on each claim, and the Court should then enter judgment for the largest amount for each of OpenAI and Microsoft. Plaintiff intends to seek other monetary remedies at trial as well, including punitive damages. In addition, if the jury finds either Defendant liable, Plaintiff plans to seek appropriate equitable relief from the Court, including an injunction. Those equitable remedies would be addressed by the Court after trial.

Dated: January 16, 2026                            MOLOLAMKEN LLP

                                        By:    */s/ Steven F. Molo*
                                                 Steven F. Molo (*pro hac vice*)