# EXHIBIT B

1

```
 1              UNITED STATES DISTRICT COURT

 2               NORTHERN OF CALIFORNIA

 3                  OAKLAND DIVISION
     _____
 4   ELON MUSK, et al.,          )
                                 )
 5           Plaintiffs,         )
                                 )
 6   v.                          )   Case No. 4:24-cv-04722-YGR
                                 )
 7   SAMUEL ALTMAN, et al.,      )
                                 )
 8           Defendants.         )
     _____)
 9

10

11

12           ** HIGHLY CONFIDENTIAL **

13      ** PURSUANT TO PROTECTIVE ORDER **

14

15   Videotaped Deposition of ILYA STREBULAEV

16           San Francisco, California

17          Tuesday, December 16, 2025

18

19

20

21

22

23          Reported Stenographically by

24   Michael P. Hensley, RDR, CSR No. 14114

25
```

ELON MUSK, et al v.
SAMUEL ALTMAN
Case 4:24-cv-04722-YGR     Document 396-3     Filed 01/30/26     Page 3 of 4
Highly Confidential
Ilya Strebulaev
December 16, 2025

Page 262

1          research team.
2          And that is based on paragraph 86 of
3    Dr. Wazzan's report.
4          Q.   Is it your opinion that analytical methods
5    exist that would permit the quantification of each
6    of Mr. Musk's nonmonetary contributions to OpenAI?
7          A.   I believe that analytical methods do
8    exist, more importantly the overall.  And I believe
9    that it's very important for credible expert
10   analysis to consider the allocation of -- yeah,
11   sorry, no.  Let me step back.
12         For credible -- it is important for
13   credible expert analysis that attempts to quantify
14   contribution in any way.  It's important to compare
15   the contribution of any one individual in question
16   or an organization more generically to the
17   contribution of others.
18         And I think that is where definitely
19   Dr. Wazzan doesn't do any analysis of any kind.
20         Q.   So a few moments ago you mentioned the
21   approach of creating a chart and listing the various
22   things that people contributed, and then, I gather,
23   assigning some sorts of percentages to those that
24   add up to 100 percent.
25         Are you including that among the

Page 263

1    analytical tools an expert could use to quantify
2    Mr. Musk's nonmonetary contributions?
3          ATTORNEY WILSON:  Object to the form.
4          THE WITNESS:  Well, first of all, Counsel,
5    I think just to make sure that we're on the same
6    page, Dr. Wazzan kind of did this without, of
7    course, creating a table which is when he claims
8    that Mr. Musk kind of has a claim to 50 to
9    75 percent in terms of contribution of, for whatever
10   reason, monetary or nonmonetary, he assigns
11   everybody else -- everybody else, I repeat and
12   emphasize that -- to the rest.
13         And so in fact, he has this table kind of.
14   So if you think about his example 75 percent, we can
15   think of the table, contribution of Mr. Musk,
16   however you define it, Mr. -- sorry, no, no.  Let me
17   restate.
18         You can think of a table where you have
19   contribution of everybody to OpenAI nonprofit, and
20   Mr. Musk will be at 75 percent in that scenario, and
21   everybody else 25 percent.  So actually he did that.
22         Now, but he never explained that, and he,
23   of course, never allocated 25 percent to other
24   individuals.  He never explained why Mr. Musk was so
25   much more important in his view that everybody else,

Page 264

1    and again I don't think I'm -- I need to mention all
2    those names again, Counsel, and I'm sure there are
3    many other names.
4    BY ATTORNEY KRY:
5          Q.   But other than the method that you
6    apparently concede Dr. Wazzan undertook of making a
7    chart and allocating percentages, is there any other
8    analytical method you're aware of that an expert
9    could use to quantify the value of nonmonetary
10   contributions in a start up?
11         ATTORNEY WILSON:  Objection.  Misstates
12   the testimony.
13         THE WITNESS:  Well, first of all, Counsel,
14   it's not just about -- I don't believe, maybe I'm --
15   correct me if I'm mistaken.  I don't believe that
16   Dr. Wazzan's claims that 50 to 75 percent economic
17   interest, as he defines of Mr. Musk, is just the
18   nonmonetary contribution.
19         I think he kind of seemed to combine
20   monetary and nonmonetary contribution.
21         And whatever analytical method he used or
22   did not use, he did come up with that value.
23         So therefore I think that he should have,
24   also for fairness at the very least, to list the
25   same about other people.

Page 265

1          I was not asked to opine, Counsel, on how
2    exactly this should've been done, but I think that
3    it's pretty clear -- I don't think -- I don't
4    believe it's controversial from the analysis that
5    Dr. Wazzan real concentrates only on qualitative
6    aspects of Mr. Musk's nonmonetary contributions.  He
7    ignores nonmonetary contributions of every single
8    individual because I didn't -- I failed to see this,
9    really, in his report anywhere.  And also he seems
10   to overstate the importance of Mr. Musk's monetary
11   contributions or at the very least he, for whatever
12   reason, believes that his early contributions were
13   much more important than later contributions without
14   much justification.
15   BY ATTORNEY KRY:
16         Q.   Okay.
17         But just to be clear, apart from what you
18   describe as Dr. Wazzan's failure to create a chart
19   that lists other people's contributions, you're not
20   aware of any particular quantitative method that
21   exists for quantifying the value of those monetary
22   contributions; is that correct?
23         ATTORNEY WILSON:  Object to the form.
24         THE WITNESS:  I am not saying this,
25   Counsel.  First of all my criticism of Dr. Wazzan is

Page 266

1    not, of course, confined to his inability -- his
2    failure just to create a chart.  That is not -- I
3    don't think his problem is with a visualization of
4    whatever his opinions are.  Just to make sure,
5    Counsel, that we're on the same page.
6                I believe -- I believe to the extent that
7    Mr. -- Dr. Wazzan claims -- Dr. -- this is
8    Dr. Wazzan, not me, who claims that he can quantify
9    Mr. Musk's nonmonetary contributions, whatever they
10   are.  And he does not use any methods and -- I think
11   of any reason.
12               So -- so he he -- should have used a
13   reasonable method.  If he failed to find any
14   reasonable method, he should not have included those
15   contributions of Mr. Musk because, again, he does
16   not distinguish between the importance of Mr. Musk's
17   contributions, nonmonetary contributions, relative
18   to everybody else's.
19   BY ATTORNEY KRY:
20        Q.  Again, I apologize for keeping on asking
21   this, but I just want to make sure we get a clear
22   record on it.
23               Apart from creating a chart and listing
24   people's contributions, sitting here today, you are
25   not able to identify any particular quantitative

Page 267

1    method that you think Dr. Wazzan should've used to
2    quantify Mr. Musk's nonmonetary contributions to
3    OpenAI; is that correct?
4         A.  Well, that is not really correct, Counsel,
5    because it is not my -- it was not my scope of
6    retention to estimate Mr. Musk's, or anybody else's
7    for that matter, contribution.  That was, as I
8    understand, Dr. Wazzan's scope of retention or
9    whatever, the assignment that he took on himself,
10   and he failed to do so.  So I think that --
11        Q.  Okay.
12               But you're -- you're not -- sitting here
13   today, you can't --
14               ATTORNEY WILSON:  Hold on a second.
15               Were you finished with your answer?
16               THE WITNESS:  I am not.
17               ATTORNEY WILSON:  Please finish your
18   answer.
19               THE WITNESS:  So -- so I think it is on
20   Dr. Wazzan to come up with a credible method to --
21   to support the foundations for his analysis and he
22   did not.
23   BY ATTORNEY KRY:
24        Q.  I know you think that it was Dr. Wazzan's
25   job to do that, but my question is a little

Page 268

1    different.
2                Sitting here today, are you aware of some
3    particular quantitative method that would enable
4    Dr. Wazzan to do it?  Or is your position just you
5    don't know, you haven't thought about it, it was his
6    job to figure it out?
7                ATTORNEY WILSON:  Object to the form.
8                THE WITNESS:  Counsel, I have not -- I
9    haven't thought about how I would -- if my retaining
10   counsel were to ask me whether -- what is the
11   contribution of Mr. Musk to OpenAI, I would have
12   given some thought, whether I'm able to answer that
13   question affirmatively.  But I can tell you
14   confidently that I definitely would not have used
15   the -- the -- the unreliable method that Dr. Wazzan
16   used.  I don't think they are supportable in -- in
17   any way.
18   BY ATTORNEY KRY:
19        Q.  Paragraph 54 of your report, you state
20   that Dr. Wazzan's conclusion that 50 to 75 percent
21   of OpenAI nonprofit's value is attributable to
22   Mr. Musk donations is primarily based on the
23   hypothetical ownership stakes that were reflected in
24   this pro forma cap table from 2017.
25               Dr. Strebulaev, what's your basis for

Page 269

1    saying that Dr. Wazzan's opinion was primarily based
2    on that pro forma cap table?
3         A.  Just give me a second, Counsel.
4                Well, let me refer to paragraph 97 of
5    Dr. Wazzan's report, and I'm going to quote "The
6    proposed capitalization tables."
7                And I believe this is what I refer to in
8    my paragraph 53:
9                [As Read]  The proposed capitalization
10                   tables provide important insights into the
11                   values that the founding team themselves
12                   ascribed to their relative contribution to
13                   OpenAI.  Exhibit 9 provides the
14                   capitalization table based on my
15                   understanding of the agreement in
16                   principle under which Mr. Musk would
17                   receive a 52.41 percent share in the
18                   proposed for-profit entity.
19               I can continue reading up to the end of
20   that paragraph, but I believe this paragraph and
21   maybe the subsequent paragraph 98 is the foundation
22   of Dr. Wazzan's opinion and why I mention this in
23   paragraph 53 and 54.
24        Q.  So you mentioned paragraph 98.  If we look
25   at that, that does mention the pro forma cap table,