# EXHIBIT K

# The Market Approach to Valuing Businesses

## Second Edition

**Shannon P. Pratt, CFA, FASA, MCBA, MCBC, CM&A**



**John Wiley & Sons, Inc.**

This book is printed on acid-free paper. ∞

Copyright © 2005 by John Wiley & Sons, Inc. All rights reserved.

Published by John Wiley & Sons, Inc., Hoboken, New Jersey

Published simultaneously in Canada.

No part of this publication may be reproduced, stored in a retrieval system, or transmitted in any form or by any means, electronic, mechanical, photocopying, recording, scanning or otherwise, except as permitted under Sections 107 or 108 of the 1976 United States Copyright Act, without either the prior written permission of the Publisher, or authorization through payment of the appropriate per-copy fee to the Copyright Clearance Center, Inc., 222 Rosewood Drive, Danvers, MA 01923, 978-750-8400, fax 978-646-8600, or on the Web at www.copyright.com. Requests to the Publisher for permission should be addressed to the Permissions Department, John Wiley & Sons, Inc., 111 River Street, Hoboken, NJ 07030, 201-748-6011, fax 201-748-6008, or online at http://www.wiley.com/go/permissions.

Limit of Liability/Disclaimer of Warranty: While the publisher and author have used their best efforts in preparing this book, they make no representations or warranties with respect to the accuracy or completeness of the contents of this book and specifically disclaim any implied warranties of merchantability or fitness for a particular purpose. No warranty may be created or extended by sales representatives or written sales materials. The advice and strategies contained herein may not be suitable for your situation. You should consult with a professional where appropriate. Neither the publisher nor author shall be liable for any loss of profit or any other commercial damages, including but not limited to special, incidental, consequential, or other damages.

For general information on our other products and services, or technical support, please contact our Customer Care Department within the United States at 800-762-2974, outside the United States at 317-572-3993 or fax 317-572-4002.

Wiley also publishes its books in a variety of electronic formats. Some content that appears in print may not be available in electronic books.

For more information about Wiley products, visit our Web site at http://www.wiley.com.

Library of Congress Cataloging-in-Publication Data

Pratt, Shannon P.
  The market approach to valuing businesses / Shannon P. Pratt.—2nd ed.
    p. cm.
  Includes bibliographical references and index.
  ISBN-13: 978-0-471-69654-4 (cloth)
  ISBN-10: 0-471-69654-4 (cloth)
  1. Corporations—Valuation.   2. Corporations—Valuation—Law and legislation—United States.   I. Title
  HG4028.V3P69 2005
  658.15—dc22       2005050193

Printed in the United States of America.

10 9 8 7 6 5 4 3 2 1

# Chapter 4

# Other Market Methods

Past Transactions
    Past Control Transactions
    Past Minority Transactions
    Past Acquisitions
Offers to Buy
Rules of Thumb
    Nature of Rules of Thumb
    Proper Use of Rules of Thumb
    Problems with Rules of Thumb
        Not Knowing What Was Transacted
        Not Knowing Assumed Terms of the Transactions
        Not Knowing the Assumed Level of Profitability
        Uniqueness of Each Entity
        Multiples Change over Time
    Sources for Rules of Thumb
Buy-Sell Agreements
Summary

Besides guideline public companies and guideline independent mergers and acquisitions, there are a few other categories of evidence of value that we can properly consider under the broad umbrella of the market approach:

- Past transactions involving the subject company
- Bona fide offers to buy
- Rules of thumb
- Buy-sell agreements

**PAST TRANSACTIONS**

One of the most useful but often overlooked market approach methods is analysis of past transactions involving the subject company. These transactions can be classified into three groups:

**Other Market Methods** 45

1. Past changes of control ownership of the subject company
2. Past transactions in minority ownership interests in the subject company
3. Acquisitions made by the subject company

As with other transactions, it is important to determine that they were conducted on an arm's-length basis. The question of whether transactions were on an arm's-length basis is often an issue in this respect; the definitions shown in Exhibit 4.1 may prove helpful.

## Past Control Transactions

If the subject company itself has changed hands on an arm's-length basis in the recent past, that transaction might provide a good basis for valuation. The transaction should be handled basically like any other guideline merged and acquired company transaction, that is, multiples derived from the transaction applied to the same financial fundamentals as of the new valuation date, with multiples adjusted for changes in economic and industry conditions, if appropriate. The Standard & Poor's industry price index may be a good source for this adjustment.

**Exhibit 4.1**   Definitions of Arm's-length Transactions

**Black's Law Dictionary**

**Arm's length transaction.**  Said of a transaction negotiated by unrelated parties, each acting in his or her own self interest; the basis for a fair market value determination.  A transaction in good faith in the ordinary course of business by parties with independent interests.  Commonly applied in areas of taxation when there are dealings between related corporations, *e.g.*, parent and subsidiary.  Inecto, Inc. v. Higgins, D.C.N.Y., 21 F. Supp. 418.  The standard under which unrelated parties, each acting in his or her own best interest, would carry out a particular transaction.  For example, if a corporation sells property to its sole shareholder for $10,000, in testing whether $10,000 is an "arm's length" price it must be ascertained for how much the corporation could have sold the property to a disinterested third party in a bargained transaction.[a]

**Barron's Dictionary of Finance and Investment Terms**

Arm's Length Transaction.  Transaction that is conducted as though the parties were unrelated, thus avoiding any semblance of conflict of interest.  For example, under current law parents may rent real estate to their children and still claim business deductions such as depreciation as long as the parents charge their children what they would charge if someone who is not a relative were to rent the same property.[b]

[a] Henry Campbell Black, Joseph R. Nolan, Jacqueline M. Nolan-Haley, et al., *Black's Law Dictionary* 6th ed. (St. Paul, MN: West Publishing, 1990), 109.
[b] John Downes and Jordan Elliot Goodman, *Barron's Dictionary of Finance and Investment Terms,* 4th ed. (Hauppauge, NY: Barron's Educational Series, 1995), 26.

**Past Minority Transactions**

If there have been past minority transactions in the subject company's stock or partnership interests, they may provide worthwhile evidence of market value. It is important to know whether they are on an arm's-length basis and between knowledgeable buyers and sellers. These last two points require careful investigation by the analyst to determine whether, or the extent to which, they should be given weight as evidence of value. For example, care should be taken in evaluating prices paid to buy out trouble-making shareholders or partners, as the implied value of 100% interests may be higher than reasonable FMV.

**Past Acquisitions**

Past acquisitions by the subject company are often a fertile field for very valid guideline market transaction data and are a source often overlooked. We would suggest, "Have you made any acquisitions?" as a standard question in management interviews.

Such acquisitions almost always are in the subject company's line of business. They can be treated just as other guideline merger and acquisition transactions. Particularly in FASB 142 engagements, these are a valuable reference source.

During the management interviews, three questions that the analyst might ask are:

1. Have you made any acquisitions?
2. Have you received any offers to be purchased?
3. Have you made any offers to be acquired?

## OFFERS TO BUY

Usually, for offers to buy to be probative evidence of value, they must be firm, arm's length, with sufficient detail of terms to be able to estimate the cash equivalent value, and from a source with the financial ability to consummate the offer. All of these requirements rarely are met.

If the requirements are met, then the offer to buy could be handled in the same way that past transactions were to arrive at one indication of value as of the valuation date. Even so, however, because the offer did not conclude in a consummated transaction, the weight accorded its indication of value may be limited.

## RULES OF THUMB

Many industries, especially those characterized by very small businesses, have valuation rules of thumb, some more valid than others. If they exist, they should be

**Other Market Methods** 47

considered if they have a wide industry following. However, they should never be relied on as the only valuation method.

### Nature of Rules of Thumb

Rules of thumb come in many varieties, but the most common are

- Multiple of sales
- Multiple of some physical measure of activity
- Multiples of discretionary earnings (also called seller's discretionary cash flow [SDCF] or owner's cash flow [OCF])
- Assets plus any of the above

### Proper Use of Rules of Thumb

Rules of thumb are best used as a check on the reasonableness of the conclusions reached by other valuation methods, such as capitalization of earnings or a market multiple method. A good source for guidance on when to use rules of thumb is in the American Society of Appraisers Business Valuation Standards:

> Rules of thumb may provide insight on the value of a business, business ownership interest, or security. However, value indications derived from the use of rules of thumb should not be given substantial weight unless supported by other valuation methods and it can be established that knowledgeable buyers and sellers place substantial reliance on them.[1]

### Problems with Rules of Thumb

One problem with rules of thumb is the lack of knowledge about the derivation of the "rules." Several other problems are discussed next.

**Not Knowing What Was Transacted.**   Most, but not all, rules of thumb presume that the valuation rule applies to an asset sale. Few of them, however, specify what assets are assumed to be transferred. The asset composition may vary substantially from one transaction to another.

It is also important to remember that the rules of thumb almost never specify whether they assume a noncompete agreement or an employment agreement, even though such types of agreements are very common for the kinds of businesses for which rules of thumb exist.

**Not Knowing Assumed Terms of the Transactions.**   Most transactions for which there are rules of thumb are not all-cash transactions, but involve some degree of seller financing. The financing terms vary greatly from one transaction to

another and affect both the face value and also the fair market value (which, by definition, assumes a cash or cash-equivalent value).

**Not Knowing the Assumed Level of Profitability.**   The level of profitability impacts almost all real-world valuations. However, for rules of thumb that are based on either gross revenue or some measure of physical volume, there is no indication of the average level of profitability that the rule of thumb implies.

**Uniqueness of Each Entity.**   Every business is, to some extent, different from every other business. Rules of thumb give no guidance for taking the unique characteristics of any particular business into account.

**Multiples Change over Time.**   Rules of thumb are basically timeless, but in the real world, market valuation multiples do change over time. Some industries are more susceptible than others to changes in economic and industry conditions. Changes occur in the supply/demand relationship for valuing various kinds of businesses and professional practices because of many factors, sometimes including legal/regulatory changes. When using market transaction multiples, adjustments can be made for changes in conditions from the time of the guideline transaction to the subject valuation date, but there is no base date for rules of thumb.

### Sources for Rules of Thumb

Two popular sources for rules of thumb are Glenn Desmond's *Handbook of Small Business Valuation Formulas and Rules of Thumb*[2] and Tom West's annual *Business Reference Guide.*[3] The rules of thumb section in West's reference guide has expanded every year in recent years. For example, the 2005 Guide contains over 500 pages of rules of thumb, covering a wide variety of industries, including many specific franchises.

For some industries, articles or trade publications may provide some industry rules of thumb. The appraiser may also make some phone calls to people in the industry locally to get a feel for local rules of thumb which, for some businesses, may vary widely from one locale to another. For example, analysts may call local business brokers to help evaluate local rules of thumb.

### BUY-SELL AGREEMENTS

Buy-sell agreements are included here as a market approach category on the assumption that they represent parties' agreements on pricing potential subsequent transactions. The pricing mechanism set forth in the buy-sell agreement may be determinative of value in certain circumstances, such as where it is legally binding for the purposes of the valuation. In other cases, the buy-sell agreement price might be one method of estimating value, but not determinative. In still other

instances, the buy-sell agreement might be ignored because it does not represent a bona fide arm's-length sale agreement.

For estate tax purposes, for example, a buy-sell agreement price is binding for estate tax determination only if it meets *all* of these conditions:

- The agreement is binding during life as well as at death.
- The agreement creates a determinable value as of a specifically determinable date.
- The agreement has at least some bona fide business purpose (this could include the promotion of orderly family ownership and management succession, so this is an easy test to meet).
- The agreement results in a fair market value for the subject business interest, when executed. Often buy-sell agreement values will generate future date of death or gift date values substantially above or below what the fair market value otherwise would have been for the subject interest—even though the value was reasonable when the agreement was made.
- Its terms are comparable to similar arrangements entered into by persons in arm's-length transactions.[4]

If a buy-sell agreement does not meet these conditions, it is entirely possible to have a buy-sell value that is legally binding on an estate for transaction purposes that does not even provide enough money for the estate taxes on the value of the business or business interest.

Marital dissolution is a valuation context where the applicability of buy-sell agreements as evidence of value often is hotly contested. Analysts who find themselves in that situation should both consult the relevant case law and seek advice of counsel.

**SUMMARY**

This chapter has briefly discussed four valuation methods that sometimes are classified under the general grouping of the market approach:

- Past subject company transactions
- Bona fide offers to buy
- Rules of thumb
- Buy-sell agreements

Of these, past transactions may be the most useful, yet are often overlooked. Offers to buy rarely reach the point of negotiation or commitment to be considered viable indications of value. Rules of thumb should never be used alone, but

may provide a check on valuations reached by other methods. Buy-sell agreements can range all the way from a binding determination of value to no weight at all, depending on the purpose of the valuation and the facts and circumstances surrounding the buy-sell agreement.

### Notes

1. American Society of Appraisers, Business Valuation Standards, BVS-V.
2. Glenn Desmond, *Handbook of Small Business Valuation Formulas and Rules of Thumb,* 3rd ed. (Camden, ME: Valuation Press, 1993).
3. Tom West, *The Business Reference Guide* (Concord, MA: Business Brokerage Press), published annually.
4. This requirement was added as part of Section 2703 of Internal Revenue Code Chapter 14 and is mandatory only for buy-sell agreements entered into or amended after October 8, 1990. For an extensive discussion of buy-sell agreements, see "Buy-Sell Agreements" in Shannon P. Pratt, Robert F. Reilly, and Robert P. Schweihs, *Valuing a Business,* 4th ed. (New York: McGraw-Hill, 2000).