MARC TOBEROFF (CA SBN 188547)
MToberoff@toberoffandassociates.com
TOBEROFF & ASSOCIATES, P.C.
23823 Malibu Road, Suite 50-363
Malibu, CA 90265
Telephone: (310) 246-3333

STEVEN F. MOLO (*pro hac vice*)
ROBERT K. KRY (*pro hac vice*)
JENNIFER M. SCHUBERT (*pro hac vice*)
MOLOLAMKEN LLP
430 Park Avenue
New York, NY 10022
Telephone: (212) 607-8160

*Attorneys for Plaintiffs Elon Musk and X.AI Corp.*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# OAKLAND DIVISION

| | |
|---|---|
| ELON MUSK et al.,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>SAMUEL ALTMAN et al.,<br><br>　　　　Defendants. | Case No. 4:24-cv-04722-YGR<br><br>**PLAINTIFF'S MOTION *IN LIMINE* NO. 1 TO EXCLUDE EVIDENCE OF ATTORNEY GENERAL DECISIONS**<br><br>Date:　March 13, 2026<br>Time:　9:00 AM<br>Courtroom:　1 – 4th Floor<br>Judge:　Hon. Yvonne Gonzalez Rogers |

**INTRODUCTION**

The OpenAI Defendants ("OpenAI") seek to introduce evidence that the California and Delaware Attorneys General investigated and ultimately did not oppose OpenAI's October 2025 conversion into a for-profit public benefit corporation. Those decisions are not relevant to this case. The attorneys general applied different standards that do not govern Musk's claims. They assumed, rather than decided, that OpenAI would comply with various representations about how it would operate. And they relied solely on information provided by OpenAI.

That evidence is also severely prejudicial. It would invite the jury to defer to the state attorneys general rather than reaching their own conclusions based on the law and evidence at trial. It also fails the standards for admitting a public record over a hearsay objection. The evidence should be excluded under Federal Rules of Evidence 402, 403, and 802.

**BACKGROUND**

On October 28, 2025, the California and Delaware Attorneys General both issued press releases announcing that they would not object to OpenAI's proposed conversion into a for-profit public benefit corporation. Ex. 1; Ex. 2. The California Attorney General's decision was reflected in a memorandum of understanding entered into with OpenAI the previous day. Ex. 3. The Delaware decision was reflected in a formal statement of non-objection. Ex. 4. Both press releases indicate that the attorneys general had been investigating the proposed conversion for over a year. Ex. 1; Ex. 2 at 1.

The attorney general decisions invoke those public officials' broad supervisory authority and do not purport to apply the specific legal standards that govern Musk's claims. *See* Ex. 2; Ex. 3 at 1. They rely prominently on factors that are plainly irrelevant to this case. For example, the California decision recites that "OpenAI is committed to creating jobs, economic stimulus, and problem-solving that Californians need," that OpenAI "generates thousands of jobs and over a billion dollars of positive economic impact for California annually," and that OpenAI "will continue to increase its hiring of employees in the state, expand its office presence in its home state of California, and generate material local and state tax revenue for the state." Ex. 3 at 1. The California Attorney General declined to object to the conversion in part because OpenAI agreed to "maintain

1

its NFP headquarters and have its PBC headquarters in California." Ex. 3 at 2 ¶1; *see also* Ex. 1 (highlighting "commitment that OpenAI will remain right here in California").

Both decisions were conditioned on long lists of forward-looking representations that OpenAI made about how the for-profit would operate. Ex. 3 at 2-5; Ex. 4 at 2-6. For example, OpenAI promised that it would "continue to undertake measures to mitigate risks to teens and others in connection with the development and deployment of AI and of AGI." Ex. 3 at 3 ¶12.

The attorneys general relied solely on information provided by OpenAI. Ex. 3 at 6 ¶28 ("The Attorney General . . . is expressly and solely relying upon the Information and the Representations, which OpenAI has asserted to be true and accurate in all material respects."); Ex. 4 at 6 (same). Musk was not a party to either investigation and had no meaningful opportunity to submit evidence or otherwise participate.[1]

Finally, the California decision expressly states that "[t]he terms of this MOU shall apply only to the Parties that are expressly made the subject of this MOU, and shall not determine the past or future rights of any Party with respect to any other transaction or litigation." Ex. 3 at 5 ¶23.

OpenAI has included both press releases, the memorandum of understanding, and the statement of non-objection on its trial exhibit list. OpenAI Trial Exs. 1046 (Ex. 1), 1048 (Ex. 2), 1037 (Ex. 3), 1047 (Ex. 4).

## ARGUMENT

### I.  THE ATTORNEY GENERAL DECISIONS ARE IRRELEVANT

The attorney general decisions should be excluded as irrelevant under Rule 402. The investigations were conducted under a different standard, for a different purpose, and are not probative of Musk's claims against OpenAI. The attorneys general decided not to object to OpenAI's conversion based on factors that clearly are not relevant to this case. The California Attorney General, for example, expected that OpenAI would generate "thousands of jobs," "over a

---

[1] In late 2024, Plaintiffs sought the California Attorney General's permission to prosecute this lawsuit as relator on behalf of the attorney general, but that request was denied. Dkt. 157-1. The denial letter states that the case was a matter of "private concern" and that Plaintiffs "have an adequate legal remedy available without relator status." Dkt. 157-1 at 3.

billion dollars of positive economic impact," and "local and state tax revenue." Ex. 3 at 1. Those factors have no relation whatsoever to the specific elements of Musk's legal claims.

The attorney general decisions also relied on ***representations*** that OpenAI made about how the for-profit would operate, rather than ***findings*** about OpenAI's conduct. Ex. 3 at 2-5; Ex. 4 at 2-6. And the California decision expressly states that it "appl[ies] only to the Parties that are expressly made the subject of this MOU" and shall not "determine the past or future rights of any Party with respect to any other transaction or litigation." Ex. 3 at 5 ¶ 23. By their terms, the decisions have no bearing on the legal issues the jury must decide in this case.

## II.  THE ATTORNEY GENERAL DECISIONS THREATEN UNDUE PREJUDICE

The attorney general decisions also threaten jury confusion and other prejudice under Rule 403. Government investigations and non-enforcement decisions pose substantial risks of jury confusion because they "invite[ ] the jury to improperly substitute [the government's] findings . . . for its own." *United States v. Pac. Gas & Elec. Co.*, 178 F. Supp. 3d 927, 948 (N.D. Cal. 2016). The jury may rely on speculation about "whatever evidence the agency did or did not consider" rather than "the jury's reasoned decision based on the evidence presented at trial." *BoDeans Cone Co. v. Norse Dairy Sys., L.L.C.*, 678 F. Supp. 2d 883, 898 (N.D. Iowa 2009). The jury will also likely give "undue weight or deference" to the government's actions. *Sanders v. Univ. of Idaho, Coll. of Law*, 634 F. Supp. 3d 923, 932-33 (D. Idaho 2022) (EEOC determination not to continue investigation was of "little probative value" but "create[d] significant risk of undue prejudice"); *see also N.W. v. City of Long Beach*, No. 14-cv-1569, 2016 WL 9021966, at *3 (C.D. Cal. June 7, 2016) (similar).

Those risks are acute here. The attorneys general are the chief law enforcement officers of their states. They are often embroiled in high-profile litigation on behalf of the citizens of those states, including the Californians that will comprise the jury pool. Even mentioning their investigations or decisions creates a severe risk that the jury will simply defer to their decisions over the jury's own assessment of the evidence at trial. That is precisely the type of "improper basis that renders evidence unfairly prejudicial." *Pac. Gas & Elec.*, 178 F. Supp. 3d at 948.

The attorneys general decided not to object to OpenAI's for-profit conversion based on

policy-driven concerns that do not resemble the legal standards governing Musk's claims. *See id.* at 947-48 (excluding conclusions of investigation conducted under "different evidentiary and legal standards" and "for a different purpose"). They relied on OpenAI's representations about what the for-profit entity *would* do rather than factual findings about what it *had* done. And they relied solely on information that *OpenAI itself* provided. The evidence accordingly offers little probative value, yet threatens severe prejudice. The Court should exclude it under Rule 403.

### III.    THE ATTORNEY GENERAL DECISIONS ARE HEARSAY

Finally, the attorney general decisions are inadmissible hearsay under Rule 802. Rule 803(8) provides a hearsay exception for public records that reflect an agency's "factual findings from a legally authorized investigation." Fed. R. Evid. 803(8)(A)(iii). But that exception does not apply when the "circumstances indicate a lack of trustworthiness." Fed. R. Evid. 803(8)(B). OpenAI's evidence fails those standards on multiple grounds.

First, the attorney general decisions are not "factual findings." The attorneys general relied on OpenAI's representations about what it *would* do, not factual findings about what it *had* done. Ex. 3 at 2-5; Ex. 4 at 2-6. Moreover, the decisions primarily consist of *legal* conclusions rather than factual findings admissible under Rule 803(8). Ex. 3 at 2-5; Ex. 4 at 2-7.

Second, there are plenty of reasons to doubt the trustworthiness of the decisions. The attorneys general – elected officials in both California and Delaware – relied on overtly political factors like promoting job growth for Californians. *See, e.g.*, Ex. 3 at 1; Ex. 1. They also followed an entirely one-sided process, relying solely on information provided by OpenAI (a party with overwhelming incentives to secure its desired result) while denying other parties like Musk any opportunity to participate. Ex. 3 at 6 ¶28; Ex. 4 at 6. Those factors are more than sufficient to justify exclusion of the decisions. *See, e.g.*, *Sullivan v. Dollar Tree Stores, Inc.*, 623 F.3d 770, 778 (9th Cir. 2010) (affirming exclusion of Department of Labor report because, among other things, "[n]o hearing was held").

### CONCLUSION

The Court should exclude OpenAI's proposed trial exhibits concerning the California and Delaware Attorney General decisions as well as all related testimony and argument.

| | | |
|---|---|---|
| Dated: February 24, 2026 | | MOLOLAMKEN LLP |
| | By: | */s/ Steven F. Molo* |
| | | Steven F. Molo (*pro hac vice*) |
| | | Marc Toberoff (CA SBN 188547) |
| | | MToberoff@toberoffandassociates.com |
| | | TOBEROFF & ASSOCIATES, P.C. |
| | | 23823 Malibu Road, Suite 50-363 |
| | | Malibu, CA 90265 |
| | | Telephone: (310) 246-3333 |
| | | Robert K. Kry (*pro hac vice*) |
| | | Jennifer M. Schubert (*pro hac vice*) |
| | | MOLOLAMKEN LLP |
| | | 430 Park Avenue |
| | | New York, NY 10022 |
| | | Telephone: (212) 607-8160 |
| | | *Attorneys for Plaintiffs Elon Musk and X.AI Corp.* |