MARC TOBEROFF (CA SBN 188547)
MToberoff@toberoffandassociates.com
TOBEROFF & ASSOCIATES, P.C.
23823 Malibu Road, Suite 50-363
Malibu, CA 90265
Telephone: (310) 246-3333

STEVEN F. MOLO (*pro hac vice*)
ROBERT K. KRY (*pro hac vice*)
JENNIFER M. SCHUBERT (*pro hac vice*)
MOLOLAMKEN LLP
430 Park Avenue
New York, NY  10022
Telephone: (212) 607-8160

*Attorneys for Plaintiffs Elon Musk
and X.AI Corp.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| ELON MUSK et al.,<br><br>           Plaintiffs,<br><br>     v.<br><br>SAMUEL ALTMAN et al.,<br><br>           Defendants. | Case No. 4:24-cv-04722-YGR<br><br>**PLAINTIFF'S MOTION *IN LIMINE* NO. 2 TO EXCLUDE WILMERHALE'S INVESTIGATION AND FINDINGS CONCERNING ALTMAN'S DISMISSAL**<br><br>Date:  March 13, 2026<br>Time:  9:00 AM<br>Courtroom:  1 – 4th Floor<br>Judge:  Hon. Yvonne Gonzalez Rogers |

# INTRODUCTION

After OpenAI's nonprofit board fired CEO Sam Altman for repeatedly lying to them about safety process failures and other misconduct related to OpenAI's charitable mission, Altman and Microsoft conspired to get Altman reinstated and replace most of the independent board members who had voted to fire him. OpenAI then commissioned WilmerHale to conduct an investigation into the circumstances of Altman's firing in an effort to justify his reinstatement. OpenAI never released the results of that investigation. Instead, it published a blog post with selective and one-sided characterizations of WilmerHale's findings.

OpenAI now seeks to introduce that blog post and other evidence of WilmerHale's investigation and findings at trial. That evidence would improperly invite the jury to substitute WilmerHale's purported findings for its own. Having asserted privilege over the details of the investigation, moreover, OpenAI should not now be permitted to show the jury only its own self-serving characterizations. The Court should exclude the evidence from trial.

# BACKGROUND

In November 2023, OpenAI's nonprofit board fired Altman for a pattern of dishonesty that stretched back years. Days later, Microsoft announced that it would hire Altman and Brockman to run Microsoft's own AI division. Microsoft also offered to hire away OpenAI's entire workforce and match their existing compensation – an offer worth billions of dollars. In response, OpenAI's board agreed to reinstate Altman, and three of its four independent directors were forced to resign.

As soon as Altman was reinstated as CEO, the reconstituted board formed a Special Committee to investigate the circumstances of his firing. At Altman's insistence, the Committee comprised two new directors whom Altman had just vetted and approved. *See* Ex. 1. That Committee then hired WilmerHale to "review events relating to [Altman's] termination." *Id.* WilmerHale's investigation concluded in March 2024 when the Committee reported its findings to the board. *Id.*

To date, almost no details are public. OpenAI disclosed nothing regarding the specific topics WilmerHale investigated, the specific documents reviewed, or even the relevant time period under investigation. OpenAI never disclosed how WilmerHale reached its findings or any conflicting

1

1  evidence. No final report was ever released.

2  Instead, on March 8, 2024, OpenAI published a blog post on its website titled "Review
3  Completed & Altman, Brockman To Continue To Lead OpenAI" that contained a purported
4  "summary" of the investigation's findings. Ex. 2. Touting the investigation as "a comprehensive
5  review," that summary states:

> WilmerHale found that the prior Board believed at the time that its actions would mitigate internal management challenges and did not anticipate that its actions would destabilize the Company. WilmerHale also found that the prior Board's decision did not arise out of concerns regarding product safety or security, the pace of development, OpenAI's finances, or its statements to investors, customers, or business partners. Instead, it was a consequence of a breakdown in the relationship and loss of trust between the prior Board and Mr. Altman. WilmerHale found the prior Board implemented its decision on an abridged timeframe, without advance notice to key stakeholders, and without a full inquiry or an opportunity for Mr. Altman to address the prior Board's concerns. WilmerHale found that the prior Board acted within its broad discretion to terminate Mr. Altman, but also found that his conduct did not mandate removal.

Ex. 2. OpenAI described the blog post internally as part of a public relations strategy to "control the narrative" around Altman's reinstatement to the board. Ex. 3. OpenAI planned his reinstatement to the board to coincide with the investigation's conclusion to generate "one high impact news moment," with coverage subsequently subsiding so the company could "turn the page" with a "steady drumbeat" of unrelated announcements. *Id.*

OpenAI claimed privilege over the details of the investigation in discovery. *See* Ex. 4. Yet now, OpenAI has listed the March 8, 2024, blog post on its trial exhibit list, along with other materials discussing the investigation. *See, e.g.*, OpenAI Trial Exs. 991 & 989 (Exs. 1 & 2); OpenAI Trial Ex. 992 (Ex. 5) (Mira Murati's post on X discussing investigation).

## I. THE COURT SHOULD EXCLUDE WILMERHALE'S INVESTIGATION AND FINDINGS UNDER RULE 403

Under Federal Rule of Evidence 403, the Court has broad discretion to exclude evidence that poses a danger of "unfair prejudice, confusing the issues, [or] misleading the jury." Fed. R. Evid. 403. WilmerHale's investigation and findings pose all three risks, and those dangers substantially outweigh any marginal relevance the evidence may have.

Brandishing an investigation by a prominent law firm like WilmerHale inevitably "invites

the jury to improperly substitute the [investigation's] findings . . . for its own." *United States v. Pac. Gas & Elec. Co.*, 178 F. Supp. 3d 927, 947-48 (N.D. Cal. 2016) (excluding conclusions of NTSB investigation conducted under "different evidentiary and legal standards" and "for a different purpose"). For that reason, courts routinely exclude such investigations under Rule 403. *See, e.g.*, *Lewis v. Chicago*, 563 F. Supp. 2d 905, 919-20 (N.D. Ill. 2008) (excluding internal investigation based on "undue risk . . . that the jury might simply adopt the result of the internal investigation"); *Free v. Fed. Express Corp.*, No. 2:15-cv-2404, 2019 WL 332810, at *2 (W.D. Tenn. Jan. 25, 2019) (excluding investigation because it "risk[ed] biasing a jury's perception of the evidence" and "could lead jurors to second guess their independent assessment of the proof"); *EEOC v. Evans Fruit Co.*, No. 10-cv-3033, 2013 WL 3817372, at *4 (E.D. Wash. July 22, 2013) (similar).

Those risks are particularly serious here because WilmerHale's investigation covered critical issues in this case. WilmerHale's purported findings addressed whether the board's actions – as opposed to actions by Microsoft, Altman, or others – "destabilize[d]" OpenAI; whether the board's decision to fire Altman related to AI safety concerns; whether the board's process for deciding to fire Altman was adequate; and whether Altman's misconduct warranted removal. Ex. 2. Those issues all relate to key elements of Musk's claims. Musk will present evidence at trial on those same topics – including testimony of independent board members who voted to remove Altman. The risk that the jurors might uncritically adopt WilmerHale's findings as their own is acute.

Those risks substantially outweigh any scant probative value the evidence may have. OpenAI's self-serving descriptions of the investigation's findings provide only a selective, one-sided version of events as part of a curated public relations campaign. Ex. 3. Given that slight relevance and the serious potential for misleading the jury, the Court should exclude the evidence.

## II.     OPENAI'S SELECTIVE DISCLOSURE WARRANTS EXCLUSION

The selective nature of OpenAI's blog post independently warrants exclusion. Basic fairness "prevent[s] a party from using the privilege as both a shield and a sword." *Bittaker v. Woodford*, 331 F.3d 715, 719 (9th Cir. 2003). A party cannot introduce advantageous portions of legal advice while shielding the harmful portions. *See Columbia Pictures Television, Inc. v. Krypton Broadcasting of Birmingham, Inc.*, 259 F.3d 1186, 1196 (9th Cir. 2001) (upholding exclusion where

3

party "claim[ed] privilege during discovery"); *Dong Ah Tire & Rubber Co. v. Glasforms, Inc.*, No. 06-cv-3359, 2009 WL 10696044, at *2 (N.D. Cal. June 23, 2009) (similar).

OpenAI has maintained privilege over the details of the WilmerHale investigation. Ex. 4. Musk thus has had no opportunity to test the thoroughness or independence of the investigation. Permitting OpenAI to reference the investigation despite having withheld those details would improperly "suggest to the jury that the investigation was adequate, notwithstanding that Plaintiffs have had no opportunity to probe its accuracy." *Evans Fruit*, 2013 WL 3817372, at *4.

### III.  THE INVESTIGATION AND FINDINGS ARE HEARSAY

OpenAI's blog post and other documents or testimony purporting to summarize the investigation or its findings are also hearsay. *See Paddack v. Dave Christensen, Inc.*, 745 F.2d 1254, 1258-59 & n.7 (9th Cir. 1984) (holding that "special audit" investigation materials and findings were inadmissible hearsay); *United States v. Reyes*, 239 F.R.D. 591, 600 (N.D. Cal. 2006) (Breyer, J.) (holding internal investigation materials inadmissible); *In re Homestore.com, Inc.*, No. 01-cv-11115, 2011 WL 291176, at *6-7 (C.D. Cal. Jan. 25, 2011) (similar).

OpenAI's blog post, for example, is a public relations document that purports to summarize what the Special Committee was told by WilmerHale about what the law firm learned from unknown documents or interviews. OpenAI offers no basis for overcoming **even a single layer** of that hearsay, much less all of them.

### CONCLUSION

The Court should exclude all evidence and argument concerning WilmerHale's investigation and purported findings.

Dated: February 24, 2026

MOLOLAMKEN LLP

By:    */s/ Steven F. Molo*
Steven F. Molo (*pro hac vice*)

Marc Toberoff (CA SBN 188547)
MToberoff@toberoffandassociates.com
TOBEROFF & ASSOCIATES, P.C.
23823 Malibu Road, Suite 50-363
Malibu, CA 90265
Telephone: (310) 246-3333

Robert K. Kry (*pro hac vice*)
Jennifer M. Schubert (*pro hac vice*)
MOLOLAMKEN LLP
430 Park Avenue
New York, NY 10022
Telephone: (212) 607-8160

*Attorneys for Plaintiffs Elon Musk and X.AI Corp.*