1  JORDAN ETH (CA SBN 121617)
   JEth@mofo.com
2  WILLIAM FRENTZEN (CA SBN 343918)
   WFrentzen@mofo.com
3  DAVID J. WIENER (CA SBN 291659)
   DWiener@mofo.com
4  MORRISON & FOERSTER LLP
   425 Market Street
5  San Francisco, CA 94105
   Telephone:   (415) 268-7000
6  Facsimile:   (415) 268-7522

7  WILLIAM SAVITT (admitted *pro hac vice*)
   WDSavitt@wlrk.com
8  BRADLEY R. WILSON (admitted *pro hac vice*)
   BRWilson@wlrk.com
9  SARAH K. EDDY (admitted *pro hac vice*)
   SKEddy@wlrk.com
10 STEVEN WINTER (admitted *pro hac vice*)
   SWinter@wlrk.com
11 NATHANIEL CULLERTON (admitted *pro hac vice*)
   NDCullerton@wlrk.com
12 WACHTELL, LIPTON, ROSEN & KATZ
   51 West 52nd Street
13 New York, NY 10019
   Telephone:   (212) 403-1000
14 Facsimile:   (212) 403-2000

15 *Attorneys for Defendants Samuel Altman, Gregory Brockman,*
   *OpenAI, Inc., OpenAI L.P., OpenAI, L.L.C., OpenAI GP, L.L.C.,*
16 *OpenAI OpCo, LLC, OpenAI Global, LLC, OAI Corporation, LLC,*
   *OpenAI Holdings, LLC, OpenAI Startup Fund Management, LLC,*
17 *OpenAI Startup Fund GP I, L.L.C., OpenAI Startup Fund I, L.P.,*
   *OpenAI Startup Fund SPV GP I, L.L.C., OpenAI Startup Fund SPV GP II, L.L.C.,*
18 *OpenAI Startup Fund SPV GP III, L.L.C., OpenAI Startup Fund SPV GP IV, L.L.C.,*
   *OpenAI Startup Fund SPV I, L.P., OpenAI Startup Fund SPV II, L.P.,*
19 *OpenAI Startup Fund SPV III, L.P., OpenAI Startup Fund SPV IV, L.P.,*
   *Aestas Management Company, LLC, and Aestas LLC*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

| | |
|---|---|
| ELON MUSK, et al., | Case No. 4:24-cv-04722-YGR |
| Plaintiffs, | **OPENAI DEFENDANTS' MOTION IN LIMINE #1: TO EXCLUDE EXPERT TESTIMONY OF DR. STUART RUSSELL** |
| v. | |
| SAMUEL ALTMAN, et al., | |
| Defendants. | Date: March 13, 2026<br>Time: 9:00 AM<br>Courtroom: 1 – 4th Floor<br>Judge: Hon. Yvonne Gonzalez Rogers |

Plaintiff's proffered expert testimony from Dr. Stuart Russell should be excluded under *Daubert* and Rules 702 and 403. Russell, a computer scientist and prominent AI "doomer," has made a career giving public lectures warning that AI may one day kill off humanity. In 2017, Russell went viral by releasing a short film on YouTube called "Slaughterbots" that dramatized speculative scenarios in which swarms of miniature AI-enabled drones—the "slaughterbots"—could attack large population centers and carry out targeted assassinations.

Plaintiff wants Russell to present similar dystopian scenarios to the jury. If permitted to testify, Russell will tell the jury that AI might in the future drive mass unemployment; immiserate workers; develop novel weapons of mass destruction; foment nuclear war; kill millions of people; and ultimately cause human extinction. Ex. A (Russell Rpt. ¶¶ 78-80,75,77,99-101,102-104). Russell will do this without reference to the facts of this case (which he hasn't reviewed), or the legal claims at issue (with which he is unfamiliar). The sole purpose of his testimony is to encourage the jury to believe that AI is likely to harm them personally. That is improper.

## BACKGROUND

According to Musk, his claims are "not super complicated." Ex. B (Musk Tr. 52:23). He says he supported OpenAI years ago on the understanding that it would be "non-profit" and "open source"—"that's it." *Id.* 52:14-19; 53:4-13; Dkt. 350 at 15. Musk identifies no specific safety commitments made to him by OpenAI. And at deposition, Musk could identify no OpenAI practices or products he believed had breached any purported safety commitments. Ex. B 261:13-21; 263:11-16. Musk also chose not to pursue discovery into OpenAI's safety practices: To shield himself from reciprocal discovery probing xAI's abysmal safety record, Musk largely abandoned his safety-related document requests and withdrew his request that OpenAI's 30(b)(6) witness testify on AI safety.

Russell, for his part, is not offering opinions on "any alleged safety commitments made by OpenAI to Mr. Musk" (Ex. C (Russell Tr. 44:11-15)); "whether OpenAI's current or past safety practices are consistent with any [such] alleged commitments" (*id.* 44:16-21); "whether any historical OpenAI product is safe or unsafe" (*id.* 47:21-48:2); or "whether OpenAI's safety practices" are "better or worse than the safety practices of other AI companies." *Id.* 45:6-11.

Instead, Russell offers one "principal thesis" (presented in Opinions 1-4): that "further substantial progress in AI capabilities . . . represents a very substantial risk to humanity." Ex. A ¶43. Russell predicts that, among other things, "harms from the misuse of AI systems…can be expected to increase dramatically" (¶59); AI discrimination "will have increasingly harmful effects" (¶63); "misuse risk [of AI] for cyberattacks [will] become severe" (¶68); and "humans will be employed only to the extent that intrinsic human-ness remains valuable to employers" (¶79). Russell concludes with dire warnings of human extinction, including from AI generated "'mirror life' pathogens" or "electromagnetic waves" that "cause all solar radiation to bypass Earth's orbit" and freeze the atmosphere. *Id.* ¶¶102-104. None of this is tethered to the issues disputed in this case.

Russell agrees there are "serious AI experts" who dispute his doomsday views. Ex. C 190:13-16. He does not discuss these critiques, however, because his "job" was "to give arguments for the propositions rather than against [his] own propositions." *Id.* 190:17-21. Russell also agrees there is no "methodologically rigorous" way to determine the risk of human extinction from AI, that no "scientifically rigorous" studies have even tried, and that it is "reasonable" to consider extinction probabilities "just guesses." *Id.* 219:18-24; 217:20-218:1. Nevertheless, Russell intends to tell the jury that AI poses a "roughly 1% to 3% per year" risk of human extinction. Ex. A ¶110.

## ARGUMENT

"[E]xpert testimony carries special dangers to the fact-finding process because it 'can be both powerful and quite misleading.'" *Daubert* v. *Merrell Dow Pharms., Inc.*, 43 F.3d 1311, 1321 n.17 (9th Cir. 1995), *quoting Daubert* v. *Merrell Dow Pharms., Inc*., 509 U.S. 579 (1993). The proponent of the testimony must therefore demonstrate by a preponderance of the evidence that it satisfies the requirements of Rule 702. *Engilis* v. *Monsanto Co.*, 151 F.4th 1040, 1049 (9th Cir. 2025). To be admitted under Rule 702(a), expert opinions must "help the trier of fact to understand the evidence or to determine a fact in issue." FRE 702(a). This "fit" requirement is more stringent than "the general relevancy requirement of Rule 402": "Federal judges must . . . exclude proffered scientific evidence under Rules 702 and 403 unless they are convinced that it speaks clearly and directly to an issue in dispute in the case, and that it will not mislead the jury." *Daubert*, 43 F.3d 1311 at 1321 n.17. Russell's opinions do not satisfy this standard.

***Opinions 1-4 should be excluded.*** Whether and to what extent AI might one day pose "a very substantial risk to humanity" (Ex. A ¶43) are not "fact[s] in issue" that the jury must "determine" to resolve Musk's claims. Musk alleges that OpenAI abandoned purported commitments—that OpenAI remain "nonprofit" and "open source"—made to him more than ten years ago. Determining whether OpenAI made those commitments, or abided by them, does not turn on conjecture about whether AI may one day take away jobs, or eliminate wages, or kill millions of people. Nor will Russell's opinions help the jury "understand the evidence" specific to OpenAI. Musk didn't pursue discovery into OpenAI's safety practices, and Russell does not purport to opine on any such practices now. Russell has no opinion on whether anything OpenAI has done, is doing, or may do makes it more or less likely that his alarmist vision of the future will come to pass. Instead, Russell appears to believe that the entire AI industry is irredeemable, and that advanced AI can *never* be developed safely. Ex. C 51:8-11; Ex. A ¶32.

Russell's opinions likewise cannot be admitted "to educate the factfinder about general principles." FRE 702 (2000 Comm. Notes). Generalized opinions remain subject to Rule 702's "fit" requirement. *Id.*; *see also Brown* v. *Google, LLC*, 2022 WL 17961497, at *10 (N.D. Cal. Dec. 12, 2022) ("generalized testimony" must "logically advance a material aspect of the proposing party's case") (cleaned up). In *Brown*, for example, this Court admitted generalized expert testimony on data privacy, but only because the testimony "fit" the elements of plaintiffs' data privacy claims, which required a determination that Google's data practices would be "highly offensive." *Id.* Because Russell's opinions bear no similar relation to Musk's claims, they should be excluded. *See Rovid* v. *Graco Children's Prods. Inc.*, 2018 WL 5906075, at *13 (N.D. Cal. Nov. 9, 2018) (excluding expert testimony where "no attempt to tie [] general background to the facts of th[e] action or to any relevant issue"); *Rolls-Royce Corp.* v. *Heros, Inc.*, 2010 WL 184313, at *6 (N.D. Tex. Jan. 14, 2010) (excluding testimony about safety of civil aviation industry).

Even if Russell's opinions were minimally probative, they should still be excluded under Rule 403. Russell's testimony risks misleading the jurors and prompting them to act on fear for their personal safety and livelihoods rather than on an assessment of the evidence. Courts have rejected similar "reptile" tactics, *Griffin* v. *Pet Sense, LLC*, 2024 WL 1604605, at *4 (E.D. Ark.

Apr. 12, 2024), which seek to "inspire strong feelings by showing the jury that the defendant's conduct represents a danger to the survival of the jurors and their families." *Hardesty* v. *Sacramento Metro. Air Quality Mgmt. Dist.*, 2023 WL 4564748, at *4 (E.D. Cal. July 17, 2023).

***Opinion 3 should be excluded for additional reasons.*** Central to Russell's thesis is his claim in Opinion 3 that AI companies and governments are in a "race" to develop AI that "may lead to safety being a secondary consideration." Ex. A ¶45. In addition to being irrelevant, that opinion should be excluded because it is based on nothing more than Russell's say-so. Russell's only support for the proposition was an anonymous news article. *Id.* Russell disclaimed reliance on that article at deposition, before insisting that the "race" was "well known" and did not "need detailed arguments in support," but had been confirmed to him through "a lot of conversations with a lot of people." Ex. C 184:13-19;185:13-186:5. To the extent this purported "race" is so "well known" as to need no support, Russell can't testify to it. *See United States* v. *Hanna*, 293 F.3d 1080, 1086 (9th Cir. 2002) (experts cannot testify to "common knowledge"). Regardless, an opinion backed by undisclosed "conversations"—and no methodology—is not "based on sufficient facts or data" or "reliable principles and methods," FRE 702(b)-(c), and runs afoul of FRCP 26(a)(2)(B).

***Opinion 4 should be excluded for additional reasons.*** Russell's opinions about potential risks should also be excluded as speculative and unreliable. For example, citing nothing, Russell speculates that AI could replace human labor, leaving humanity "enfeebled passengers in a cruise ship run by machines." Ex. A ¶82. Russell likewise acknowledges his extinction risk scenarios are speculative—he says one could "imagine" them, or that they could "conceivably" occur, citing no source or methodology. *Id.* ¶¶104;102. Russell admits that there is no "methodologically rigorous" way to determine extinction risk, and that it is "reasonable" to consider extinction probabilities "just guesses." Ex. C 219:18-24; 217:20-218:1. And Russell based his extinction probabilities entirely on unsourced hearsay that he hasn't analyzed himself. Ex. A ¶110. Opinion 4 is advocacy, not science. It should be excluded for that reason, too.

| | |
|---|---|
| Date: February 24, 2026 | MORRISON & FOERSTER LLP |

                                             */s/ Jordan Eth*
                                         JORDAN ETH (CA SBN 121617)
                                         JEth@mofo.com
                                         WILLIAM FRENTZEN (CA SBN 343918)
                                         WFrentzen@mofo.com
                                         DAVID J. WIENER (CA SBN 291659)
                                         DWiener@mofo.com
                                         MORRISON & FOERSTER LLP
                                         425 Market Street
                                         San Francisco, CA 94105
                                         Telephone:   (415) 268-7000
                                         Facsimile:    (415) 268-7522

                                         WILLIAM SAVITT (admitted *pro hac vice*)
                                         WDSavitt@wlrk.com
                                         BRADLEY R. WILSON (admitted *pro hac vice*)
                                         BRWilson@wlrk.com
                                         SARAH K. EDDY (admitted *pro hac vice*)
                                         SKEddy@wlrk.com
                                         STEVEN WINTER (admitted *pro hac vice*)
                                         SWinter@wlrk.com
                                         NATHANIEL CULLERTON (admitted *pro hac vice*)
                                         NDCullerton@wlrk.com
                                         WACHTELL, LIPTON, ROSEN & KATZ
                                         51 West 52nd Street
                                         New York, NY 10019
                                         Telephone:   (212) 403-1000
                                         Facsimile:    (212) 403-2000

                                         *Attorneys for the OpenAI Defendants*