JORDAN ETH (CA SBN 121617)
JEth@mofo.com
WILLIAM FRENTZEN (CA SBN 343918)
WFrentzen@mofo.com
DAVID J. WIENER (CA SBN 291659)
DWiener@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105
Telephone:   (415) 268-7000
Facsimile:    (415) 268-7522

WILLIAM SAVITT (admitted *pro hac vice*)
WDSavitt@wlrk.com
BRADLEY R. WILSON (admitted *pro hac vice*)
BRWilson@wlrk.com
SARAH K. EDDY (admitted *pro hac vice*)
SKEddy@wlrk.com
STEVEN WINTER (admitted *pro hac vice*)
SWinter@wlrk.com
NATHANIEL CULLERTON (admitted *pro hac vice*)
NDCullerton@wlrk.com
WACHTELL, LIPTON, ROSEN & KATZ
51 West 52nd Street
New York, NY 10019
Telephone:   (212) 403-1000
Facsimile:    (212) 403-2000

*Attorneys for Defendants Samuel Altman, Gregory Brockman,
OpenAI, Inc., OpenAI L.P., OpenAI, L.L.C., OpenAI GP, L.L.C.,
OpenAI OpCo, LLC, OpenAI Global, LLC, OAI Corporation, LLC,
OpenAI Holdings, LLC, OpenAI Startup Fund Management, LLC,
OpenAI Startup Fund GP I, L.L.C., OpenAI Startup Fund I, L.P.,
OpenAI Startup Fund SPV GP I, L.L.C., OpenAI Startup Fund SPV GP II, L.L.C.,
OpenAI Startup Fund SPV GP III, L.L.C., OpenAI Startup Fund SPV GP IV, L.L.C.,
OpenAI Startup Fund SPV I, L.P., OpenAI Startup Fund SPV II, L.P.,
OpenAI Startup Fund SPV III, L.P., OpenAI Startup Fund SPV IV, L.P.,
Aestas Management Company, LLC, and Aestas LLC*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

| | |
|---|---|
| ELON MUSK, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>SAMUEL ALTMAN, et al.,<br><br>Defendants. | Case No. 4:24-cv-04722-YGR<br><br>**OPENAI DEFENDANTS' MOTION IN LIMINE #2: TO EXCLUDE NEWS ARTICLES AND RELATED HEARSAY**<br><br>Date:  March 13, 2026<br>Time:  9:00 AM<br>Courtroom:  1 – 4th Floor<br>Judge:  Hon. Yvonne Gonzalez Rogers |

The OpenAI Defendants move to exclude Plaintiff's Trial Exhibits ("PX") 324, 362, and 363 (Exs. A-C of this motion), and to preclude testimony concerning the same. These exhibits are third party news articles and social media posts relating to (1) the removal and reinstatement of Sam Altman as CEO of OpenAI, and (2) OpenAI's safety practices. They are hearsay barred by Federal Rule of Evidence 802.

**BACKGROUND**

Plaintiff Elon Musk's claim rests on the (false) contention that OpenAI, Altman, and Greg Brockman made two "fundamental promises" to him a decade ago: that OpenAI would be "open-source" and "nonprofit." Ex. D (Musk Tr. 286:17-24). Plaintiff claims these supposed promises were "broken" when OpenAI purportedly transformed into a "closed source for-profit." *Id*. Musk testified that the "boiling point" for him was reached in January 2023 when OpenAI's nonprofit board of directors approved a $10 billion investment from Microsoft, which Musk says revealed to him that OpenAI wasn't what he thought it was. *Id.* 287:12-14. The directors who approved that transaction—confident they were acting in accordance with their fiduciary duties to the nonprofit and its mission—included Tasha McCauley, Helen Toner, and Shivon Zilis. Ex. E (McCauley Tr. 195:25-196:10); Ex. F (Zilis Tr. 264:15-18).

Alongside these claims, however, Musk appears intent on introducing evidence on collateral matters with little or no relevance to the issues to be tried. Musk plans to introduce evidence about certain now-departed directors' decision to remove (and immediately reinstate) Altman as CEO in November 2023, nearly a year after those same directors approved the Microsoft deal, and for purported reasons having nothing to do with that transaction. Musk also appears determined to paint artificial intelligence as a whole as a dangerous technology that is likely to harm jurors and their families. *See* MIL # 1.

To prop up these irrelevant collateral issues, Musk proposes to put in front of the jury news articles, op-eds, and social media posts that constitute inadmissible and prejudicial hearsay:

- Ex. A (PX 324) is an anonymously sourced *Wall Street Journal* article published March 28, 2025 that purports to recount the events surrounding Mr. Altman's dismissal and reinstatement as

CEO in November 2023, sensationally billed as "one of the wildest business stories of all time…" Ex. A at 3;

- Ex. B (PX 363) is a May 26, 2024 opinion piece in the *Economist* written by McCauley and Toner in which they seek to justify their removal and prompt reinstatement of Altman six months earlier (while also disclosing further hearsay from unnamed OpenAI employees); and

- Ex. C (PX 362) is a series of May 2024 tweets by Jan Leike, a former OpenAI employee, supplying his views on certain of OpenAI's safety practices. Leike is one of the few former OpenAI employees Musk *did not* subpoena during discovery—despite seeking documents from *61* other third parties. Leike was not deposed and will not be a trial witness.

## ARGUMENT

Hearsay is a statement "the declarant does not make while testifying at the current trial or hearing," and that "a party offers in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c). As this Court has recognized, "newspaper articles are classic hearsay and, in a court of law, cannot be relied upon for the truth of statements made therein." *Musk v. OpenAI, Inc.*, 769 F. Supp. 3d 1017, 1026 (N.D. Cal. 2025). That is precisely what Musk wishes to do with Exs. A-C. All are inadmissible under Rule 802.

***Hearsay related to Altman's removal and reinstatement should be excluded.*** The 2025 *Wall Street Journal* article concerning Altman's removal and reinstatement (Ex. A) is hearsay and should be excluded. An excerpt from the writer's book, the article relies on "dozens" of anonymous sources to sensationalize events that occurred sixteen months before the article was published. Toner's and McCauley's after-the-fact recounting of their perspectives on these same events in the *Economist* (Ex. B)—published long after Toner and McCauley had resigned from OpenAI's board—is likewise patent hearsay; an out-of-court statement offered to establish the truth of the facts it describes. Fed. R. Evid. 801(c).

Musk now seeks to backdoor this hearsay into the trial record through his deposition designations. During McCauley's and Toner's depositions, Musk's counsel introduced both articles as exhibits, then incorporated the substance of the articles into leading questions, asking the witnesses to confirm whether the portions read were accurate, then using the articles to guide the

1  witnesses' testimony about the events in question. For example, during McCauley's deposition,
2  counsel repeatedly read lengthy excerpts from the *Wall Street Journal*, relaying the reporter's
3  account of the events, and then merely asking McCauley: "Is that description accurate?" *See, e.g.*
4  Ex. E 81:21-82:8. Counsel used the same tactic when questioning Toner, introducing the *Economist*
5  article as an exhibit, reading lengthy portions of it into the record, and then using those excerpts as
6  a springboard for further leading questions that incorporated the substance of the hearsay. *See* Ex.
7  G at 155:5-157:14.

8  None of this permissible. As the Ninth Circuit has emphasized, "a line of questioning that
9  repeatedly incorporates inadmissible evidence can be just as improper as the direct admission of
10 such evidence." *United States* v. *Sine*, 493 F.3d 1021, 1031–32 (9th Cir. 2007) (collecting
11 authorities and rejecting "suggestive shortcut" of introducing hearsay through witness questioning);
12 *United States* v. *Rusnak*, 981 F.3d 697, 707 (9th Cir. 2020) (improper to introduce "hearsay
13 statements" on direct "in the guise of speaking questions"); *Thomas* v. *Stephens-Lyman, Denny,*
14 *Caetana, & Turner*, 2007 WL 2669497, at *5 (E.D. Cal. Sept. 7, 2007) (striking deposition
15 questions and testimony that "contain hearsay"); *United States* v. *Check*, 582 F.2d 668, 678 (2d
16 Cir. 1978) (rejecting questioning and testimony that served "as a transparent conduit for the
17 introduction of inadmissible hearsay"). Questions and answers from the McCauley and Toner
18 depositions premised on the inadmissible hearsay in Exs. E and G to this motion should be stricken.
19 Pursuant to the Court's pre-trial procedures, additional examples of objectionable questions and
20 answers from these depositions will be submitted to the Court in the parties' forthcoming joint
21 submission of disputes over designations and excerpts from discovery material.

22 ***Hearsay statements of former OpenAI employee should be excluded.*** Social media posts
23 from May 2024 (Ex. C) by Jan Leike, a former OpenAI employee who left to join a competitor,
24 made after he had left the company, should be excluded. *See United States* v. *Lindsay,* 931 F.3d
25 852, 867 (9th Cir. 2019) (affirming exclusion of Facebook messages as hearsay). Here again, Musk
26 seeks to rely on out-of-court statements to prove the truth of matters collateral to the issues to be
27 tried—to present unfounded criticism of OpenAI's approach to AI risks in 2024, nearly a decade
28 after the two "fundamental promises" Musk alleges were made to him. Musk did not subpoena

1  Leike, receive any documents from him, seek his deposition, or name him as a trial witness. Musk
2  should not be permitted to present Leike's views through social media posts that the OpenAI
3  Defendants have had no opportunity to test and that qualify under no hearsay exception.
4      During the parties' meet and confer on this motion, Musk's counsel argued that Leike's
5  posts were admissible for the non-hearsay purpose of demonstrating "notice" for statute of
6  limitations purposes. That argument is unavailing. Musk contends that he was on notice of his
7  claims in January *2023*, more than a year before Leike's posts. Dkt. 350 at 9 (Musk SJ Brief). He
8  further contends that he hired counsel to begin investigating his claims in May 2023, still a year
9  before Leike's posts. *Id.* Musk even sued OpenAI in state court before Leike's posts. *See* Complaint
10 & Demand for Jury Trial, *Musk* v. *Altman*, CGC-24-612746 (Cal. Super. Ct. Feb. 29, 2024 ). The
11 posts are irrelevant to Musk's purported "notice."

| | |
|---|---|
| Date: February 24, 2026 | MORRISON & FOERSTER LLP |

        /s/ Jordan Eth
JORDAN ETH (CA SBN 121617)
JEth@mofo.com
WILLIAM FRENTZEN (CA SBN 343918)
WFrentzen@mofo.com
DAVID J. WIENER (CA SBN 291659)
DWiener@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105
Telephone:   (415) 268-7000
Facsimile:    (415) 268-7522

WILLIAM SAVITT (admitted *pro hac vice*)
WDSavitt@wlrk.com
BRADLEY R. WILSON (admitted *pro hac vice*)
BRWilson@wlrk.com
SARAH K. EDDY (admitted *pro hac vice*)
SKEddy@wlrk.com
STEVEN WINTER (admitted *pro hac vice*)
SWinter@wlrk.com
NATHANIEL CULLERTON (admitted *pro hac vice*)
NDCullerton@wlrk.com
WACHTELL, LIPTON, ROSEN & KATZ
51 West 52nd Street
New York, NY 10019
Telephone:   (212) 403-1000
Facsimile:    (212) 403-2000

*Attorneys for the OpenAI Defendants*