# EXHIBIT D

```
IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
-----------------------------------
ELON MUSK, et al.,
     Plaintiffs,
v.
SAMUEL ALTMAN, et al.,
     Defendants.


Case No. 4:24-cv-04722-YGR
-----------------------------------


VIDEO DEPOSITION OF
Elon Musk
September 26, 2025
San Francisco, California
LEAD: William Savitt, Esquire
FIRM: Wachtell Lipton Rosen & Katz




FINAL COPY - CONFIDENTIAL
JANE ROSE REPORTING - 1-800-825-3341
```

```
APPEARANCES:


ATTORNEY(S) FOR PLAINTIFFS AND THE WITNESS:
    STEVEN F. MOLO, ESQ.
    smolo@mololamken.com
    ROBERT K. KRY, ESQ.
    rkry@mololamken.com
    WALTER HAWES, ESQ.
    whawes@mololamken.com
    JENNIFER SCHUBERT, ESQ.
    jschubert@mololamken.com
    SARA TOFIGHBAKHSH, ESQ. (Via Zoom)
    stofighbakhsh@mololamken.com
    ALEXANDRA EYNON, ESQ.  (Via Zoom)
    aeynon@mololamken.com
       MOLOLAMKEN LLP
       600 New Hampshire Avenue, NW, Suite 660
       Washington, D.C. 20037
       202.556.2011
```

```
APPEARANCES (Cont'd):


ATTORNEY(S) FOR PLAINTIFFS AND THE WITNESS:
    MARC TOBEROFF, ESQ.
    mtoberoff@toberoffandassociates.com
    JAYMIE PARKKINEN, ESQ.
    jparkkinen@toberoffandassociates.com
        TOBEROFF & ASSOCIATES PC
        23823 Malibu Road, Suite 50-36
        Malibu, California 90265
        310.246.3333


ATTORNEY(S) FOR ALL DEFENDANTS EXCEPT MICROSOFT:
    WILLIAM FRENTZEN, ESQ.
    wfrentzen@mofo.com
        MORRISON & FOERSTER LLP
        425 Market Street
        San Francisco, California 94105
        415.268.6413
```

APPEARANCES (Cont'd):

ATTORNEY(S) FOR ALL DEFENDANTS EXCEPT MICROSOFT:

   WILLIAM S. SAVITT, ESQ.

   wdsavitt@wlrk.com

   NATHANIEL D. CULLERTON, ESQ.

   ndcullerton@wlrk.com

   IOANNIS DRIVAS, ESQ.

   iddrives@wlrk.com

   SARAH EDDY, ESQ.

   skeddy@wlrk.com

   BRADLEY R. WILSON, ESQ.   (Via Zoom)

   brwilson@wlrk.com

      WACHTELL, LIPTON, ROSEN & KATZ

      51 West 52nd Street

      New York, New York 10019

      212.403.1329

```
APPEARANCES (Cont'd):
ATTORNEY(S) FOR DEFENDANT MICROSOFT:
    RUSSELL P. COHEN, ESQ.
    russ.cohen@dechert.com
    HOWARD ULLMAN, ESQ.  (Via Zoom)
    howard.ullman@dechert.com
        DECHERT LP
        45 Fremont Street, 26th Floor
        San Francisco, California 94105
        415.262.4506


    NISHA PATEL GUPTA, ESQ. (Via Zoom)
    nisha.patelgupta@dechert.com
        DECHERT LLP
        US Bank Tower
        633 West 5th Street, Suite 4900
        Los Angeles, California 90071-2032
        213.808.5735


    JOHN A. JURATA, JR., ESQ.
    jay.jurata@dechert.com
        DECHERT
        1775 Eye Street, Northwest
        Washington, D.C.  20006
        202.261.3326
```

```
APPEARANCES (Cont'd):


   YOSEF WEITZMAN, ESQ. (Via Zoom)
   yosi.weitzman@dechert.com
       DECHERT
       CIRA Center 2929 Arch Street
       Philadelphia, Pennsylvania 19104
       215.994.4000




JANE ROSE REPORTING
           74 Fifth Avenue
           New York, New York 10011
           1-800-825-3341
           GAIL L. INGHRAM, Court Reporter
           BA, CRR, CLR, RDR, CSR-CA (No. 8635)
           JASON BUTKO, Videographer
```

```
              TABLE OF CONTENTS


EXAMINATION OF:                            PAGE
ELON MUSK
         By Attorney Savitt ..............10
         By Attorney Cohen ..............343
         By Attorney Molo ..............359




Reporter Certificate ................. Page 364
Notice to Read and Sign ............. Page 366
Index of Exhibits ................... Page 368
```

1    A.  Is it true?  I bet it is true.
2    Q.  Are you going to answer my question?
3        I'll talk to you -- after my time is
4    over, I'm happy to chat.  Let me try to get
5    through my questions.
6        Has any net income inured to the Benefit
7    in OpenAI inured to the benefits of a private
8    person?
9    A.  That seems to be the case.
10   Q.  Do you know whether OpenAI has any net
11   income?
12   A.  I can't remember what the financials
13   look like.
14   Q.  In your complaint, you allege that
15   OpenAI violated the terms of your donations and,
16   therefore, breached a charitable trust.
17       Do you recall that, sir?
18   A.  Yes.
19   Q.  I just want to get your whole position
20   here.  Are the contractual terms that we just
21   spent a long time talking about any different
22   than the terms that were attached to your
23   donations?
24       ATTORNEY MOLO:  Object to the form of
25   the question.

1    A.   From my perspective, there are really
2    just -- they're two fundamental things that were
3    agreed to.  That would be open source and a
4    nonprofit.
5         That's why I donated the money.  That's
6    why I donated the time, reputation, everything
7    else.  And -- and instead of it being an
8    open-source nonprofit, it is now become and --
9    it's now become substantially a closed-source
10   profit-maximizing entity directly contrary to what
11   was agreed to.
12        Now, that -- that may just boil down to
13   the series of legal points.  I leave that up to my
14   lawyers to say what -- what specific -- how this
15   should be characterized from -- in a legal
16   document.
17        But if you say, like, just common sense,
18   what was the fundamental problem -- what are the
19   fundamental promises that have been broken, and
20   that is that it was meant to be an open-source,
21   nonprofit, and it is become, by degrees, a
22   closed-source for-profit, and they are attempting
23   to, essentially, make it fully a profit-maximizing
24   corporation.
25   ///

Page 287

1   BY ATTORNEY SAVITT:
2       Q.  Did these -- did the things you have
3   just described happen after you stopped being
4   involved in OpenAI?
5       A.  The process -- seems like the process
6   began several years ago.  Just like the water
7   heating up reaching a boiling point, it doesn't
8   get to boiling point immediately.  The water heats
9   up and, eventually, it gets to a boiling point.
10      Q.  And that all happened after you left
11  OpenAI; right?
12      A.  The boiling point was the $10 billion
13  deal with Microsoft.  For me, that was my
14  perception.
15      Q.  Were you obligated -- did you ever have
16  an obligation to contribute money to OpenAI?
17      A.  An obligation?
18      Q.  Yeah.
19      A.  I agreed to donate money, and I did.
20      Q.  You promised to contribute $20 million
21  in quarterly grants, didn't you?
22      A.  So long as the -- yeah, I did.
23      Q.  And you promised to donate up to a
24  billion dollars to OpenAI to the extent that
25  amount could not be raised from other sources.