# EXHIBIT E

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

```
IN RE MATTER OF:              )
                              )
ELON MUSK, et al.,            )
                              )
         Plaintiffs,          )
                              )
    vs.                       )   CASE NO.
                              )   4:24-CV-04722-YGR
SAMUEL ALTMAN, et al.,        )
                              )
         Defendants.          )
                              )
```

** CONFIDENTIAL **

VIDEOTAPED DEPOSITION OF TASHA McCAULEY

LOS ANGELES, CALIFORNIA

Tuesday, September 30, 2025

Stenographically Reported by:
HEATHER J. BAUTISTA, CSR, CRR, RPR, CLR
Realtime Systems Administrator
California CSR License #11600
Oregon CSR License #21-0005

```
 Washington License #21009491
Texas CSR License #10725
```

```
           UNITED STATES DISTRICT COURT
         NORTHERN DISTRICT OF CALIFORNIA
                 OAKLAND DIVISION


IN RE MATTER OF:              )
                              )
ELON MUSK, et al.,            )
                              )
        Plaintiffs,           )
                              )
    vs.                       )  CASE NO.
                              )  4:24-CV-04722-YGR
SAMUEL ALTMAN, et al.,        )
                              )
        Defendants.           )
                              )
```

        VIDEOTAPED DEPOSITION of TASHA McCAULEY, taken before Heather J. Bautista, CSR No. 11600, a Certified Shorthand Reporter for the state of California, with principal office in the county of Santa Clara, commencing on Tuesday, September 30, 2025, 9:17 a.m., at 2121 Avenue of the Stars, Los Angeles, California 90067.

```
APPEARANCES OF COUNSEL:


    For Plaintiffs:
         MoloLamken
      BY:   WALTER HAWES, ESQ.
            ROBERT KRY, ESQ.
      600 New Hampshire Avenue, N.W.
       Washington, D.C. 20037
      Phone:   (202) 556-2013
       whawes@mololamken.com
      rkry@mololamken.com


    For OpenAI Defendants:
         Wachtell Lipton Rosen & Katz
      BY:   WILLIAM SAVITT, ESQ.
             NATHANIEL CULLERTON, ESQ.
            ADAM TANNE, ESQ.
       51 West 52nd Street
      New York, New York 10019
       Phone:   (212) 403-1000
      wdsavitt@wlrk.com
       ndcullerton@wlrk.com
      aptanne@wlrk.com


    For Defendant Microsoft Corporation:
         Dechert LLP
      BY:   NISHA PATEL, ESQ.
       633 W. 5th Street, Suite 4900
      Los Angeles, California 90071
       Phone:   (213) 808-5735
      nisha.patelgupta@dechert.com
```

For TASHA McCAULEY:

    Ellis George LLP

   BY:  KATHERINE PETTI, ESQ.

    2121 Avenue of the Stars, 30th Floor

   Los Angeles, California 90067

    Phone:  (310) 274-7100

   kpetti@ellisgeorge.com

APPEARANCES OF COUNSEL (CONTINUED):

      MARC TOBEROFF, ESQ.

(Remote) JENNIFER SCHUBERT, ESQ. - MoloLamken

(Remote) SARA TOFIGHBAKHSH, ESQ. - MoloLamken

(Remote) ETHAN COHEN, ESQ. - Wachtell Lipton Rosen & Katz

(Remote) DANIEL CONTRERAS, ESQ. - Ellis George

(Remote) CHRISTOPHER BERG, ESQ. - Ellis George


ALSO PRESENT:  Kevin Crowly, Videographer

INDEX OF EXAMINATION

|  | PAGE |
|---|---|
| TASHA McCAULEY | |
| EXAMINATION BY MR. HAWES | 10 |
| EXAMINATION BY MR. SAVITT | 143 |
| EXAMINATION BY MS. PATEL | 278 |
| EXAMINATION BY MR. HAWES | 286 |
| EXAMINATION BY MR. SAVITT | 291 |

```
                    INDEX OF EXHIBITS
 Exhibit No.   Description                              Page
 Exhibit 1     OpenAI Charter - Bates No.                 23
               OPENAI_MUSK00012044

 Exhibit 2     Unanimous Written Consent of the           58
                board of directors of OpenAI, Inc. -
               Bates No. OPENAI_MUSK00027400

 Exhibit 3     3/28/2025 Wall Street Journal             62
                Article, "The Secrets and
               Misdirection behind Sam Altman's
                firing from OpenAI" - Bates No.
               2024MUSK-0011437

 Exhibit 4     11/17/2023 Sutskever e-mail to S.          93
                Altman and others - Bates No.
               SUTSKEVER_MUSKSUB_00000527

 Exhibit 5     11/17/2023 "OpenAI announces              97
                leadership transition" - Bates No.
               2024MUSK-0014150

 Exhibit 6     11/29/2023 text message - Bates No.      103
                OPENAI_MUSK00027423

  Exhibit 7    11/19/2023 minutes from special          110
               meeting of board of directors of
                OpenAI, Inc. - Bates No.
               OPENAI_MUSK00027411

 Exhibit 8     11/20/2023 Toner e-mail to D'Angelo     113
```

|  |  |  |
|---|---|---|
|  | and others – Bates No. SUTSKEVER_MUSKSUB_00000525 |  |
| Exhibit 9 | 5/26/2024 article "AI firms mustn't govern themselves say ex-members of OpenAI's board" – Bates No. MSFT_MUSK000056581 | 128 |
| Exhibit 10 | 10/6/2022 McCauley e-mail to Toner, cc'g others – Bates No. OPENAI_MUSK00015245 | 192 |
| Exhibit 11 | 2015 Certificate of Incorporation of OpenAI, Inc. – Bates No. OPENAI_MUSK00000416 | 200 |

INDEX OF EXHIBITS - CONTINUED

| Exhibit No. | Description | Page |
|---|---|---|
| Exhibit 12 | January 14, 2020, Amended and Restated Certificate of Incorporation of OpenAI, Inc. - Bates No. OPENAI_MUSK00000470 | 202 |

1    Q.  Okay.

2        Now, if you flip to the next page.  This is

3    Page 6 of 9.

4    A.  Okay.

5    Q.  In the second full paragraph, do you see where

6    it reads, "To the independent board members, the

7    administrative oversight defied belief and cast previous

8    oversights as part of a possible pattern of deliberate

9    deception.  For instance, they also hadn't been alerted

10   to the previous fall when OpenAI released ChatGPT, at

11   the time considered a research preview that used

12   existing technology that ended up taking the world by

13   storm."

14       Is that description accurate, to the best of

15   your knowledge?

16   A.  Um-hum.  Yes.

17   Q.  Was Mr. Altman's handling of that situation

18   also one of the factors that you considered in

19   dismissing him?

20   A.  Yes.

21   Q.  Flip to the next page.  Right under the

22   photograph, it says, "Toner had published a paper in

23   October that repeated criticisms of OpenAI's approach to

24   safety.  Altman was livid.  He told Sutskever and

25   McCauley" -- apologies.

1       "He said" -- "He told Sutskever that McCauley

2   had said Toner should obviously leave the board over the

3   article. McCauley was taken aback when she heard this

4   account from Sutskever. She knew she had said no such

5   thing."

6       A. Um-hum.

7       Q. Is that description accurate?

8       A. Yes.

9       Q. Do you recall the paper Ms. Toner published?

10      A. Um-hum. Yes. Sorry. I know I sometimes nod.

11      Q. Thank you.

12      A. Yes.

13      Q. What concerns did that paper raise?

14      A. I think it was quite an academic paper, and the

15  organization --

16          (Stenographer clarification.)

17          THE WITNESS: -- the organization that Helen

18  works for sometimes puts out these -- these kind of

19  academic papers, and I think they were talking -- you

20  know, I don't recall the bulk of the paper of -- of what

21  it was talking about, but I believe it was, you know,

22  addressing some, you know, maybe, you know, safety

23  approaches by -- by various labs, and I think Sam was

24  unhappy with the way that the paper discussed something

25  about OpenAI's handling of safety. And -- and I think

Page 195

1    A.  Yes.  And -- and just to clarify, there were a
2    couple parts to this originally which are referenced
3    here that there was kind of a restructure and -- and the
4    terms around the investment, and these were at some
5    point after this decoupled, and I was wanting to make
6    sure that anything I was saying about it wasn't
7    implicating privilege here.
8         And so I actually think some of the discussions
9    do involve, kind of like -- anyway, the very simple
10   answer to your question is:  Yes, peeling out the
11   restructured part, I -- you know, like Argos 2
12   deal or -- or the -- this piece of the Microsoft
13   investment was -- was approved -- when was this
14   e-mail -- like, within a few months of that, I want to
15   say, maybe.  Not 100 percent sure exactly when.
16   Q.  And here, again, I'm not giving you all these
17   documents to save a little time.
18   A.  Okay.
19   Q.  It sounds -- we -- we -- it appears to us that
20   there was a unanimous written consent executed in
21   January 20th --
22   A.  Makes sense.
23   Q.  -- of 2023.  Does that sound about right?
24   A.  Yeah, that sounds right, yeah.
25   Q.  And do you recall approving the Argos 2 2023

1  investment by unanimous consent in January 2023?

2     A.  I do, yes.

3     Q.  And the rest of the directors also supported

4  the written consent, was unanimous, as it had to be;

5  right?

6     A.  Yes.  Um-hum.

7     Q.  And you ultimately determined that -- that the

8  2023 Microsoft transaction was in the best interest of

9  the organization.

10    A.  I did.

11    Q.  What's your view, generally, as to OpenAI and

12  open sourcing and the degree to which OpenAI has to open

13  source things to comply with its mission?

14        MR. HAWES:  Objection to form.

15        THE WITNESS:  Well, as you can see here, I -- I

16  was, you know, supportive of -- of open sourcing

17  certain -- certain levels of model.  At this time, it

18  was -- I was talking about open sourcing GPT-3 level

19  model at that time, and I believe that -- you know,

20  that's consistent with the view that I held at that

21  time, and that was relatively close to the end of the

22  time that I was on the board, so I was supportive of

23  open sourcing in -- in -- in the way described here, I

24  guess.

25    Q.  (By Mr. Savitt)  Let's take a look -- I think