EXHIBIT A
PUBLIC REDACTED VERSION



```
                                                                       1
 1         IN THE UNITED STATES DISTRICT COURT
         FOR THE NORTHERN DISTRICT OF CALIFORNIA
 2                       - - -

 3   ELON MUSK, et al.,            :   CASE NO.
                                   :   4:24-CV-04722-
 4            Plaintiffs           :   YGR
                                   :
 5       v.                        :
                                   :
 6   SAMUEL ALTMAN, et al.,        :
                                   :
 7            Defendants.          :

 8
                 - HIGHLY CONFIDENTIAL -
 9
                 - ATTORNEYS' EYES ONLY -
10
                         - - -
11
                    December 22, 2025
12
                         - - -
13

14           Videotaped hybrid deposition of

15   JONATHAN I. ARNOLD, Ph.D., taken pursuant to

16   notice, was held at the law offices of Dechert LLP,

17   1900 K Street, Washington, D.C., beginning at 9:01

18   a.m., on the above date, before Michelle L.

19   Ridgway, a Registered Professional Reporter,

20   Certified Court Reporter (NJ-CCR # XI02126),

21   Certified Realtime Reporter, Certified Shorthand

22   Reporter (CA-CSR # 14592), and Notary Public.

23

24

25
```

2

1  APPEARANCES:

2

3            MOLOLAMKEN LLP
             BY:  JOSHUA D. BLOOM, ESQ.
4            (In person)
             430 Park Avenue
5            New York, New York 10022
             212.607.8160
6            jbloom@mololamken.com

7               - and -

8            MOLOLAMKEN LLP
             BY:  ROBERT K. KRY, ESQ.
9            (In person)
             600 New Hampshire Avenue, N.W.
10           Washington, D.C. 20037
             202.556.2000
11           rkry@mololamken.com
             Representing the Plaintiffs,
12           Elon Musk and xAI

13
             WACHTELL, LIPTON, ROSEN & KATZ
14           BY:  BRADLEY R. WILSON, ESQ.
             (Zoom)
15           51 West 52nd Street
             New York, New York 10019
16           212.403.1000
             brwilson@wlrk.com
17           Representing the Defendant, Samuel Altman
             and OpenAI
18

19           DECHERT LLP
             BY:  JOHN "JAY" JURATA, JR., ESQ.
20           (In person)
             1900 K Street, NW
21           Washington, D.C. 20006
             202.261.3300
22           jay.jurata@dechert.com
             Representing the Defendant, Microsoft
23           Corporation

24

25

```
                                                               3
 1   APPEARANCES:  (Cont'd.)

 2


 3   DECHERT LLP
     BY:  ELISA BENEZE, ESQ.
 4   (Zoom)
     Cira Centre
 5   2929 Arch Street
     Philadelphia, Pennsylvania 19104
 6   215.994.4000
     elisa.beneze@dechert.com
 7   Representing the Defendant, Microsoft
     Corporation
 8


 9
     ADDITIONAL APPEARANCES:  (Cont'd.)
10


11
     VIDEOTAPE TECHNICIAN:
12
        Glen Fortner - in person
13      (Lexitas)


14


15   ALSO PRESENT:

16
     Jazlene Torres - Zoom Monitor
17      (Lexitas)


18


19   Laurel C. Van Allen - in person
     (Coherent Economics)
20


21


22              -  -  -


23


24


25
```

```
                                                          4
 1                       -  -  -
 2                      I N D E X
 3                       -  -  -
 4
   Testimony of:
 5
                    JONATHAN I. ARNOLD, Ph.D.
 6
 7        By Mr. Bloom                              10
 8
 9
10                       -  -  -
```

48

1        THE VIDEOGRAPHER: Going back on
2    the record. The time is 10:19.
3    BY MR. BLOOM:
4        Q.    Dr. Arnold, have you ever been a
5    plaintiff in a lawsuit?
6        A.    Yes.
7        Q.    Was that law -- was that lawsuit
8    against a Ms. Leticia Villarreal?
9        A.    Yes.
10       Q.    And was that filed in the Northern
11   District of Illinois?
12       A.    Yes.
13       Q.    In that case, did you allege that
14   Ms. Villarreal defrauded you?
15       A.    Yes.
16       Q.    And the court dismissed your claims
17   as frivolous, correct?
18       A.    It did, yes.
19       Q.    With respect to the fraud claims,
20   is it correct that the court held your purported
21   reliance on Ms. Villarreal's representations were
22   preposterous?
23       A.    I don't remember the words. In
24   retrospect, I wish I had been represented by one of
25   the attorneys in this room, rather than the man who

49

1  did, but it was an unfavorable result, yes.
2       Q.      Do you recall the court also held
3  that no amount of discovery would remedy the flaws
4  in Arnold's frivolous theory?
5       A.      No.
6       Q.      Why don't we take a look at the
7  opinion.
8               (Document marked for identification
9          as Arnold Exhibit 5.)
10 BY MR. BLOOM:
11      Q.      So showing you, Dr. Arnold, what's
12 been marked as Exhibit 5, and this is -- I
13 apologize.  I'm on the wrong page.
14              This is a decision and order of --
15 sorry -- memorandum opinion of the U.S. District
16 Court for the Northern District of Illinois in
17 Jonathan Arnold v. Leticia Villarreal, Case Number
18 09-C-7399, dated June 26, 2024.
19              Is this the case that you and I
20 were just discussing?
21      A.      Yes.
22      Q.      Okay.  If I could refer you to
23 Page 9.  I'll just note -- bottom of Page 8, top of
24 Page 9, my previous question.  The court writes,
25 "But the actual facts of this case demonstrate that

50

1   Arnold's purported reliance is preposterous."
2              Did I read that correctly?
3       A.     Yes.
4       Q.     And at the bottom of that
5   paragraph, I guess the penultimate sentence to the
6   question I had asked before, showing you the
7   exhibit, the court wrote, "No amount of discovery
8   would remedy the flaws in Arnold's frivolous
9   theory"; is that right?
10      A.     Yes.
11      Q.     If we turn to Page 13 of the
12  opinion, right under the indented text, it says,
13  "The federal courts are not a proper venue for
14  petty score-settling"; is that right?
15      A.     Yes.
16      Q.     And if we look at the bottom, this
17  was signed by a Judge Grady?
18      A.     Yes.
19      Q.     After Judge Grady dismissed your
20  claims as frivolous, did you pursue your fraud
21  claims further in the district court?
22      A.     I -- and I conferred with the
23  counsel representing me.  And without getting into
24  privileged communications or skipping over them,
25  the -- there were subsequent actions in the court

51

1  system.
2              I don't remember whether it was at
3  the district court level or the appellate level,
4  but there were -- I don't remember whether it was
5  at the district level, but there was additional
6  litigation.
7       Q.     Okay.
8              (Document marked for identification
9         as Arnold Exhibit 6.)
10 BY MR. BLOOM:
11      Q.     I'll show you what's been marked as
12 Exhibit 6.
13             Dr. Arnold, Exhibit 6 is another
14 memorandum opinion of the U.S. District Court for
15 the Northern District of Illinois, in Jonathan
16 Arnold v. Leticia Villarreal, Case Number
17 09-C-7399.  This one is dated September 9, 2014.
18             So it says -- under "Memorandum
19 Opinion," it says, "Arnold has moved to vacate or
20 amend the judgment."
21             And I don't want you to reveal any
22 sort of privileged information, but that is a
23 decision you made with counsel?
24      A.     That is a decision that I
25 authorized, based on the advice that I received

52

1  from my counsel at that time, yes.
2       Q.    If we turn to the last page of the
3  opinion -- actually, the very last line before the
4  conclusion.  It says, "The undisputed facts amply
5  demonstrate that Arnold's claims are frivolous"; is
6  that right?
7       A.    Yes.  My counsel kept on
8  compounding his bad judgment, that's for sure.
9       Q.    Which you authorized.
10            MR. JURATA:  Object to form.
11            THE WITNESS:  Well, I'm not a
12    lawyer, but, yes, as his -- as his -- I guess I
13    could say "customer," given that he was the only
14    person who benefited from this process, I did
15    authorize it.
16  BY MR. BLOOM:
17       Q.    And this opinion is signed by Judge
18  Amy -- Amy J. St. Eve?
19       A.    Yes.
20       Q.    So that is a different judge from
21  Exhibit 5, correct?
22       A.    Yes.
23       Q.    So it's the second judge that
24  called the claims frivolous?
25       A.    That's how it reads to me.

53

1  Q. And after the court's second
2  decision stating your claims were frivolous, did
3  you pursue this litigation any further?
4  A. Yes. On the advice of counsel, I
5  continued to pursue it.
6  Q. And you appealed to the -- you
7  appealed to the United States Court of Appeals for
8  the Seventh Circuit?
9  A. Yes.
10 Q. And did the -- and the Seventh
11 Circuit agreed that your claims were frivolous?
12 A. That's my recollection, yes.
13 Q. And it ordered Rule 38 sanctions
14 against you?
15 A. I have no idea what rule it was
16 under, but there was a payment that I was required
17 to make, yes.
18 Q. Do you recall the court saying that
19 your case -- your appeal is precisely the kind for
20 which an award of sanctions is most appropriate?
21 A. I don't remember the words, but the
22 substance sounds right and reaffirms the view of
23 the counsel that I had retained.
24 Q. The Seventh Circuit also said --
25             (Document marked for identification

1            as Arnold Exhibit 7.)
2   BY MR. BLOOM:
3        Q.        I'll show you Exhibit 7.
4                  Dr. Arnold, Exhibit 7 is a decision
5   of the United States Court of Appeals for the
6   Seventh Circuit, in Jonathan Arnold v. Leticia
7   Villarreal, Case Number 14-3204, dated April 6,
8   2017.
9                  If I direct your attention to
10  Page 10.  Towards the bottom of -- it's the middle
11  paragraph of the page -- reads:  "Arnold has
12  utterly failed to confront what two district judges
13  recognized: that his fraud claims were not really
14  meritless but are frivolous.  We are left with the
15  distinct impression that he prosecuted this appeal
16  simply to harass Villarreal.  As Judge Grady drily
17  noted, the courts 'are not the proper score for
18  petty score-settling.'"
19                 Did I read that correctly?
20       A.        Yes.
21       Q.        You mentioned a payment.  Did you
22  pay that -- did you -- did you pay the sanction
23  ordered by the Seventh Circuit?
24       A.        Yes.
25       Q.        Have you been a party to any other

55

| | |
|---|---|
| 1 | proceeding in which a court has found your |
| 2 | submission to be frivolous? |
| 3 |     A.    No. |
| 4 |     Q.    As an expert, has any other -- has |
| 5 | a court found anything that you've submitted to be |
| 6 | frivolous? |
| 7 |     A.    No. |
| 8 |     Q.    Are there any other cases in which |
| 9 | you were a plaintiff? |
| 10 |     A.    No. |
| 11 |     Q.    Have you ever been a defendant in a |
| 12 | lawsuit? |
| 13 |     A.    I've been a respondent. |
| 14 |     Q.    In what matter were you a |
| 15 | respondent? |
| 16 |     A.    In an action that was brought by |
| 17 | Ms. Villarreal against me in family court in |
| 18 | California. |
| 19 |     Q.    Did Ms. Villarreal also bring a |
| 20 | suit against you in the Northern District of |
| 21 | Illinois for malicious prosecution? |
| 22 |     A.    Yes, she did. |
| 23 | ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ |

56

1  ████████████████████████████████
████████████████
████████████████████████████
██████████████████████████████████
████████████████████████████████
██████████████████  ████████████████
████████████████████████████
██████████████████████████████████
████████████████████████████
████████████████████████████████
████████████████████████████████████
██████████████████████████████████
██████████████████████████████
████████████████████████
16       ████████████████████████████
██████████████████████████████
██████████████████████████████████
████████████████████████████████
██████████████████████████████████
████████████████████████████
22   A.     ████████████████████████████
████████████████████████████████
██████████████████████████████
████████████████████ As you might imagine, family law

57

1  matters with those sorts of issues are fraught, and
2  the critical approach that I might have otherwise
3  taken to my lawyer's recommendations was affected
4  by the circumstances.
5          Q.      Other than litigation involving
6  Ms. Villarreal, have you ever been a defendant in a
7  lawsuit?
8          A.      No.
9          Q.      Have you ever been accused of
10 professional misconduct?
11         A.      No.
12         Q.      Ever been charged with a crime?
13         A.      No.
14         Q.      Why don't we turn back to your
15 report, if we could, the list of cases on
16 Appendix A.
17         A.      Yes.
18         Q.      In any of those cases listed on
19 Appendix A, did you offer an opinion about the
20 amount of unjust enrichment that should be awarded
21 to a plaintiff?
22         A.      I believe I addressed that issue in
23 Energyplex Capital Partners versus Hannibal
24 Development and FTAI Investments.
25                 I don't see anything else on this

249

1           THE VIDEOGRAPHER:  Going back on
2    the record.  The time is 1726.
3           MR. BLOOM:  Dr. Arnold, we have
4    no further questions at this point but reserve
5    our remaining time for rebuttal in the event
6    there's redirect.
7           MR. JURATA:  I don't have any
8    redirect, although I do want to make a statement
9    on the record, that the questioning associated
10   with Arnold Exhibits 5, 6, and 7, in addition to
11   being in bad taste, is not related to any issue
12   in this case, and we reserve all rights to
13   strike all of that testimony, both from the
14   deposition transcript and at trial.
15          MR. KRY:  On that topic, just to
16   be clear, the purpose of the questioning was
17   that this witness had been found to have
18   repeatedly made frivolous arguments to a court,
19   and we do think that has a relevant bearing.
20          We definitely were not
21   anticipating the response that was given to the
22   later question.  That should clearly be
23   designated confidential under the protective
24   order, and we apologize for anything that was
25   brought up in that regard.  It was not

250

1  intentional, sir.
2             THE WITNESS:  Thank you.
3             MR. JURATA:  I stand on my
4  statement, and we reserve all rights.
5             THE VIDEOGRAPHER:  Anything from
6  anyone on Zoom?
7             MR. WILSON:  This is Brad Wilson
8  on behalf of OpenAI.  We do not have any
9  questions for this witness at this time.
10            Has the transcript been
11 designated confidential to this point?
12            MR. JURATA:  Thank you very much,
13 Mr. Wilson.  We have not designated it.
14            And I actually believe we have
15 multiple exhibits in the transcript which are
16 designated highly confidential.
17            So, provisionally, we will
18 designate the entire transcript as highly
19 confidential, and we'll deal with
20 de-designations after all parties have had a
21 chance to analyze what highly confidential
22 information was and was not used.
23            MR. WILSON:  Fair enough.  As I
24 said, we have no questions.  I wish everyone a
25 happy holiday season.

254

```
                    - - - - -
 1                 E R R A T A
 2                  - - - - -
 3

 4  PAGE    LINE    CHANGE
 5   64      15     "tortuous" to "tortious"
 6      REASON:     Typographical error
 7   125     15     "Reliability" to "Liability"
 8      REASON:     Typographical error
 9   125     25     "NFT" to "NFP"
10      REASON:     Clarification
11   126    5; 11   "NFT" to "NFP"
12      REASON:     Clarification
13   229     21     "his" to "its"
14      REASON:     Typographical error
15   41      23     "educed" to "adduced"
16      REASON:     Typographical error
17   70      18     "defensive trade secrets act" to "Defend Trade
                    Secrets Act"
18      REASON:     ~~Typographical error~~
19   113      9     "conversion" to "corporation
20      REASON:     Transcription error
21   ____   ____    _____
22      REASON:     _____
23   ____   ____    _____
24      REASON:     _____
25   ____   ____    _____
```

255

ACKNOWLEDGMENT OF DEPONENT

I, Jonathan I. Arnold, Ph.D., do hereby certify that I have read the foregoing pages, 1 - 256, and that the same is a correct transcription of the answers given by me to the questions therein propounded, except for the corrections or changes in form or substance, if any, noted in the attached Errata Sheet.

_____  22Jan2026
JONATHAN I. ARNOLD, Ph.D.            DATE

Subscribed and sworn
to before me this
_____ day of _____, 20____.

My commission expires:_____

Notary Public