RUSSELL P. COHEN (SBN 213105)
Russ.cohen@dechert.com
HOWARD M. ULLMAN (SBN 206760)
Howard.ullman@dechert.com
DECHERT LLP
45 Fremont Street, 26th Floor
San Francisco, CA 94105
Telephone: (415) 262-4500
Facsimile: (415) 262-4555

NISHA PATEL (SBN 281628)
Nisha.patelgupta@dechert.com
DECHERT LLP
633 West 5th Street, Suite 4900
Los Angeles, CA 90071
Telephone: (213) 808-5700
Facsimile: (213) 808-5760

ANDREW J. LEVANDER (admitted *pro hac vice*)
Andrew.levander@dechert.com
DECHERT LLP
Three Bryant Park
1095 Avenue of the Americas
New York, NY 10036
Telephone: (212) 698-3500
Facsimile: (212) 698-3599

JOHN (JAY) JURATA, JR. (admitted *pro hac vice*)
Jay.jurata@dechert.com
DECHERT LLP
1900 K Street, N.W.
Washington, DC 20006
Telephone: (202) 261-3300
Facsimile: (202) 261-3333

*Attorneys for Defendant Microsoft Corporation*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# OAKLAND DIVISION

| | |
|---|---|
| ELON MUSK et al., <br><br> Plaintiffs, <br><br> v. <br><br> SAMUEL ALTMAN, et al., <br><br> Defendants. | Case No. 4:24-cv-04722-YGR <br><br> **DEFENDANT MICROSOFT CORPORATION'S MOTION *IN LIMINE* NO. 3 TO EXCLUDE EXPERT TESTIMONY OF DR. PAUL WAZZAN** <br><br> Date:  March 13, 2026 <br> Time:  9:00 AM <br> Courtroom: 1 – 4th Floor <br> Judge: Hon. Yvonne Gonzalez Rogers |

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Pursuant to Federal Rules of Evidence 702 and 403, Defendant Microsoft respectfully moves the Court for an order excluding Opinion 5 and related testimony of Plaintiff's proffered expert on wrongful gains, Dr. Paul Wazzan. In addition to the fact that Wazzan's overall methodology is not reliable under *Daubert*, his opinion as to Microsoft's wrongful gains should be excluded for the additional reason that it does not fit the theory of liability against Microsoft.

The only remaining claim against Microsoft in this case is alleged aiding and abetting OpenAI's breach of a fiduciary duty stemming from the existence of a charitable trust. Yet, Wazzan's expert opinion purports to calculate "the amount by which . . . Microsoft wrongly profited or w[as] unjustly enriched by operating OpenAI as a commercial venture despite having received charitable contributions from Elon Musk on the understanding that OpenAI would remain a nonprofit dedicated to the public good." Ex. A (Wazzan Rpt. ¶ 8). Musk takes the position that "all of Microsoft's gains on its investments in OpenAI for-profit derive from that entity's unauthorized commercial operations" and, as such, Wazzan need only calculate "what portion of those gains is attributable to Mr. Musk's contributions." (Dkt. 396 at 12-13). Because Wazzan fails to present a methodology that calculates what amount of Microsoft's gains were the result of the allegedly wrongful conduct ***engaged in by Microsoft in substantial assistance*** of OpenAI's alleged breach, Opinion 5 of Wazzan's report should be excluded under Rule 702 and 403.

## II. BACKGROUND

Dr. Wazzan submitted an expert report on October 29, 2025. He filed a supplemental report on December 2, 2025, following OpenAI's announced recapitalization. Wazzan calculates the wrongful gains attributable to Microsoft at $13.30 billion to $25.06 billion. Ex. B (Wazzan Supp. Rpt. Ex. 20). At the time of Wazzan's reports, there were two remaining claims against Microsoft: (1) quasi-contract/unjust enrichment, and (2) aiding and abetting breach of fiduciary duty. Despite there being two distinct claims, Wazzan developed a single methodology to measure Microsoft's wrongful gains—regardless of which might lead to

Microsoft's liability.

During his deposition, Wazzan repeatedly indicated that counsel instructed him to assume liability and that, because the creation of the for-profit was the "predicate act," all gains after its creation were wrongful. Ex. C (Wazzan Dep. at 53:17-25; 228:5-13). Wazzan further admitted that he "couldn't say" what legal claims remained against Microsoft (*Id.* at 227:1-4), and he does not "have a strong understanding" of the conduct that Microsoft is alleged to have wrongfully engaged in. (*Id.* at 228:14-22). Nonetheless, Wazzan calculates Microsoft's "wrongful gains" by (a) measuring its negotiated percentage of the current value of the OpenAI for-profit entity, then (b) allocating a portion of that value (based on the nonprofit's negotiated stake in the for-profit entity) to the nonprofit, and then (c) allocating 50-75% of that amount to Musk. Ex. A (Wazzan Rpt. ¶ 105).

On summary judgment, the Court dismissed Musk's quasi-contract/unjust enrichment claim against Microsoft. (Dkt. 390). The Court found that there was no quasi-contract between the parties, and "Musk failed to cite any evidence or even allege that Microsoft 'obtained any benefit directly' from him." (*Id.* at 27). Only aiding and abetting remains against Microsoft.

Microsoft and OpenAI filed a motion to exclude Wazzan's opinions 3-6 pursuant to Rule 702, for a variety of reasons including that Wazzan's methodology does not tie the purported enrichment to the alleged wrongdoing. (Dkt. 393). In that motion, Microsoft indicated it would bring a related motion in limine to exclude testimony regarding Microsoft's enrichment, which is the subject of this motion.

### III. LEGAL STANDARD

Federal Rule of Evidence 702 requires that any expert testimony "will help the trier of fact to understand the evidence or to determine a fact in issue," Fed. R. Evid. 702(a). This standard requires that where "a model purporting to serve as evidence of damages . . . must measure only those damages attributable to th[e] theory [of liability]." *Comcast Corp. v. Behrend*, 569 U.S. 27, 35 (2013).

"Federal judges must . . . exclude proffered scientific evidence under Rules 702 and 403 unless they are convinced that it speaks clearly and directly to an issue in dispute in the

case, and that it will not mislead the jury." *Daubert*, 43 F.3d at 1321. And evidence is inadmissible "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

## IV.  ARGUMENT

Dr. Wazzan's calculation of Microsoft's wrongful gains does not fit the theory of liability in this case. Because Wazzan calculated the "wrongful gains that OpenAI and Microsoft reaped from ***their unauthorized commercial use of [Musk's] charitable contributions***" (Dkt. 396, Pl. *Daubert* Opp., at 1) (emphasis added), Wazzan is treating Microsoft as if it had the same quasi-contractual relationship with Musk that OpenAI is alleged to have had. But as this Court already has found, Microsoft was never in a quasi-contractual relationship with Musk. By utilizing the exact same methodology for Microsoft as he has for OpenAI—taking Microsoft's total stake in OpenAI's current value and calculating what portion of that is attributable to Musk's contributions—Wazzan has only presented a methodology potentially relevant to the dismissed quasi-contract/unjust enrichment claim, not to the aiding and abetting claim. At the same time, Wazzan has failed to analyze how the alleged conduct by Microsoft substantially assisted OpenAI's alleged breach of fiduciary duty—a necessary step in determining Microsoft's wrongful gain stemming from aiding and abetting. As such, his testimony will not assist the trier of fact. Fed. R. Evid. 702(a). It also risks confusing the issues, misleading the jury, and would result in unfair prejudice to Microsoft. Fed. R. Evid. 403.

Contrary to Musk's assertion that Microsoft is liable for gains "derived from the ***primary violator's*** misconduct" (Dkt. 396 at 12-13), an aiding-and-abetting defendant is liable "only for harm to which the aiding and abetting ***made a contribution***." Restatement (Third) of Torts: Liab. for Econ. Harm § 28 cmt. e (2020) (emphasis added). Musk asserts, however, that Wazzan need not examine Microsoft's own conduct in his analysis. (Dkt. 396 at 12-13). But by measuring Microsoft's disgorgement solely by reference to OpenAI's conduct and Musk's contributions, Wazzan's methodology does not and cannot measure what amount of

Microsoft's purportedly wrongful gains are the result of *Microsoft's* conduct. As a result, Wazzan's calculation of wrongful gains is "contrary to law" and thus "unreliable under FRE 702 and *Daubert.*" *Apple, Inc. v. Samsung Elecs. Co.*, No. 11-CV-01846-LHK, 2012 WL 2571332, at *6 (N.D. Cal. June 30, 2012) (excluding expert opinion where the damages calculations were inconsistent with the requirements of the law).

The fact that Wazzan was directed by counsel to assume that all gains after formation of the OAI for-profit entity are unlawful does not save his analysis. Even when so instructed, Wazzan's expert testimony "lacks relevance unless one can show that the damages ***resulted from*** the defendant's wrongful acts." *See* Ex. D (Weil, Roman L, et al. *Litigation Services Handbook: The Role of the Financial Expert*, at 4.7, Hoboken, New Jersey, Wiley, 2017) (discussing the standards for expert testimony on remedies including disgorgement) (emphasis added).

As admitted during his deposition, none of the steps in Wazzan's methodology look to how the conduct Microsoft is alleged to have engaged in provided substantial assistance to OpenAI's purported breach of charitable trust. Thus, his methodology provides no assistance to the jury in determining what portion of Microsoft's gains are attributable to Microsoft's allegedly wrongful conduct, as opposed to some other cause. *See* Fed. R. Evid. 702(a). Worse, presenting a Microsoft disgorgement figure pegged to a dismissed "unauthorized use" theory would be highly prejudicial and further risks misleading and confusing the jury. *See* Fed. R. Evid. 403.

V. **CONCLUSION**

For the foregoing reasons, Microsoft respectfully moves this Court to exclude Opinion 5 of Wazzan's report regarding Microsoft's wrongful gains under Rules 702 and 403.

| | | |
|---|---|---|
| Dated: February 24, 2026 | | DECHERT LLP |

*/s/ Russell P. Cohen*
RUSSELL P. COHEN (SBN 213105)
Russ.cohen@dechert.com
HOWARD M. ULLMAN (SBN 206760)
Howard.ullman@dechert.com
45 Fremont Street, 26th Floor
San Francisco, CA 94105
Telephone: (415) 262-4500
Facsimile: (415) 262-4555

NISHA PATEL (SBN 281628)
Nisha.patelgupta@dechert.com
DECHERT LLP
633 West 5th Street, Suite 4900
Los Angeles, CA 90071
Telephone: (213) 808-5700
Facsimile: (213) 808-5760

ANDREW J. LEVANDER (admitted *pro hac vice*)
Andrew.levander@dechert.com
DECHERT LLP
Three Bryant Park
1095 Avenue of the Americas
New York, NY 10036
Telephone: (212) 698-3500
Facsimile: (212) 698-3599

JOHN (JAY) JURATA, JR. (admitted *pro hac vice*)
Jay.jurata@dechert.com
DECHERT LLP1900 K Street, N.W.
Washington, DC 20006
Telephone: (202) 261-3300
Facsimile: (202) 261-3333

*Attorneys for Defendant Microsoft Corporation*

DEFENDANT MICROSOFT CORPORATION'S MOTION IN LIMINE NO. 3 TO
EXCLUDE EXPERT TESTIMONY OF DR. PAUL WAZZAN

## CERTIFICATE OF SERVICE

The undersigned, counsel of record for Defendant Microsoft Corporation, certifies that on February 24, 2026, a copy of the foregoing document(s) was electronically filed with the Clerk of the Court using CM/ECF which will send electronic notification of such filing to all registered counsel of record.

/s/ Russell P. Cohen
RUSSELL P. COHEN