1  MARC TOBEROFF (CA SBN 188547)
   MToberoff@toberoffandassociates.com
2  TOBEROFF & ASSOCIATES, P.C.
   23823 Malibu Road, Suite 50-363
3  Malibu, CA  90265
   Telephone: (310) 246-3333
4
5  STEVEN F. MOLO (*pro hac vice*)
   ROBERT K. KRY (*pro hac vice*)
   JENNIFER M. SCHUBERT (*pro hac vice*)
6  MOLOLAMKEN LLP
   430 Park Avenue
7  New York, NY  10022
   Telephone: (212) 607-8160
8
   *Attorneys for Plaintiffs Elon Musk*
9  *and X.AI Corp.*

10                  UNITED STATES DISTRICT COURT
11                  NORTHERN DISTRICT OF CALIFORNIA
12                          OAKLAND DIVISION

13  ELON MUSK et al.,                    Case No. 4:24-cv-04722-YGR
14          Plaintiffs,                  **PLAINTIFF'S OPPOSITION TO OPENAI DEFENDANTS' MOTION *IN LIMINE* NO. 1 TO EXCLUDE EXPERT TESTIMONY OF PROFESSOR STUART RUSSELL**
15      v.
16  SAMUEL ALTMAN et al.,
                                         Date:  March 13, 2026
17          Defendants.                  Time:  9:00 AM
                                         Courtroom:  1 – 4th Floor
18                                       Judge:  Hon. Yvonne Gonzalez Rogers
19

# INTRODUCTION

The OpenAI Defendants seek to exclude the testimony of Professor Stuart Russell, Plaintiff's expert on AI safety, arguing that he does not address the specific facts of this case and has "no opinion on . . . anything OpenAI has done." Mot. at 3. But generalized expert testimony is permissible, as is clear from the Advisory Committee Notes to Rule 702 and this Court's prior decisions. OpenAI's other bases for exclusion fail, too. The Court should deny the motion.

# BACKGROUND

Prof. Russell, a professor of computer science at the University of California, Berkeley, has studied AI for nearly five decades. Mot. Ex. A ("Russell Rpt.") ¶1. He authored the leading textbook on AI, *Artificial Intelligence: A Modern Approach*. *Id.* ¶2. For over ten years, Prof. Russell's research has focused on "ensur[ing] that AI systems are beneficial to humans rather than harmful." *Id.* ¶3. In 2019, Prof. Russell published *Human Compatible: AI and the Problem of Control*, which describes an approach for developing AI safely. *Id.* Prof. Russell has testified before Congress about AI safety, and he has advised the UN Secretary-General and international leaders on AI policy and safety. *Id.* ¶4.

Drawing on his expertise, Prof. Russell will offer four opinions at trial: (1) AI is a powerful and transformative technology, Russell Rpt. ¶¶8-58; (2) AI presents substantial risks, *id.* ¶¶59-104; (3) AI companies have strong incentives to pursue artificial general intelligence notwithstanding those risks, *id.* ¶¶44-58; and (4) those risks could be potentially catastrophic if not sufficiently addressed, *see, e.g., id.* ¶¶105-111.

# ARGUMENT

**I.      OPINIONS 1-4 ARE PERMISSIBLE AND NOT UNFAIRLY PREJUDICIAL**

"Rule 702 permits general principles testimony without substantive connection to the facts of a case." *Emblaze Ltd. v. Apple Inc.*, 52 F. Supp. 3d 949, 961 (N.D. Cal. 2014). "[I]n complex cases, having an expert provide general information can be helpful for the jury," *In re HIV Antitrust Litig.*, No. 19-cv-2573, 2023 WL 3090619, at *14 (N.D. Cal. Mar. 13, 2023), and courts "regularly admit" that "kind of general background information," *Sci. Applications & Res. Assocs., Inc. v. Zipline Int'l, Inc.*, No. 22-cv-4480, 2025 WL 4108875, at *4 (N.D. Cal. Apr. 11, 2025). Prof.

Russell's opinions conform to that "venerable practice." Fed. R. Evid. 702 adv. comm. note (2000); *see Brown v. Google, LLC*, No. 20-cv-3664, 2022 WL 17961497, at *10 (N.D. Cal. Dec. 12, 2022) (Gonzalez Rogers, J.) (declining to exclude testimony). Such generalized opinion testimony must "address a subject matter on which the factfinder can be assisted by an expert," "be reliable," and "'fit' the facts of the case." Fed. R. Evid. 702 adv. comm. note (2000).

Prof. Russell's testimony meets Rule 702's requirements, as it will reliably assist the jury in understanding the goals of AI systems, types of AI, and the associated safety risks. OpenAI claims Prof. Russell's opinions do not "fit" the case because determining whether OpenAI breached its charitable commitments does not turn on issues of AI safety and because Plaintiff did not "pursue discovery into OpenAI's safety practices." Mot. at 3. But AI safety is central to this case.

Musk's commitment to AI safety was what motivated him to found OpenAI. Musk testified that safety was **the very reason** he was driven to found OpenAI as an "open source nonprofit" – to "counterbalance . . . Google," which "did not seem to be taking AI safety seriously." Ex. 1 (Musk Tr.) at 22:5-23:3. "[T]he overall idea of [the] mission to create a general AI maximizing safety was [Musk's] idea." *Id.* at 26:11-13. Prof. Russell's opinions will help the jury understand why Musk considered it so important that AI be developed safely through a nonprofit dedicated to the public good rather than through a for-profit corporation.

The OpenAI Defendants purported to agree that "safety should be a first-class requirement of OpenAI Inc.'s research and development of AI." Ex. 1 (Musk Tr.) at 260:6-11; Ex. 2 (OpenAI Charter). But OpenAI then breached those commitments by "putting profit before safety." Ex. 1 (Musk Tr.) at 261:13-25; *see also id.* at 263:11-265:1. During discovery, numerous witnesses testified about how OpenAI pursued profits at the expense of safety. *See, e.g.*, Ex. 3 (Toner Tr.) at 38:16-39:1, 40:16-41:13; Ex. 4 (McCauley Tr.) at 24:20-25:18, 131:16-132:20. Prof. Russell's opinions will provide crucial context for why OpenAI's subordination of its mission to for-profit goals was such a sharp departure from Musk's founding intentions.

Prof. Russell's opinions thus provide important "background and context information" about AI systems, describe AI's safety risks, and explain why AI presents those risks. *Brown*, 2022 WL 17961497, at *10. Prof. Russell's opinions will help the jury understand the incentive structure that

later led OpenAI to prioritize profits over safety, in breach of the charitable trust. Prof. Russell's opinions "logically advance[] a material aspect of" Plaintiff's case. *In re Roundup Prods. Liab. Litig.*, 713 F. Supp. 3d 681, 690-91 (N.D. Cal. 2024).

OpenAI contends Prof. Russell's opinions are inadmissible under Rule 403. Not so. Although Prof. Russell's opinions "focus[] the jury's attention to the safety issues implicated in the case," they are "**not specially designed** to inflame the jury." *Lucero v. STI Trucking Inc.*, No. 22-cv-8035, 2025 WL 218807, at *4 (D. Ariz. Jan. 16, 2025) (emphasis added) (refusing to exclude evidence). Rather, the opinions provide critical information that will assist the jury in understanding the issues in the case.

## II.     OPINION 3 SATISIFIES RULE 702

Contrary to OpenAI's assertions, Prof. Russell's third opinion – that AI companies and governments have strong incentives to pursue artificial general intelligence ("AGI") notwithstanding the safety risks – satisfies Rule 702. Prof. Russell's "knowledge and experience obtained from work" in the artificial intelligence field are sufficient to support that opinion. *Proofpoint, Inc. v. Vade Secure, Inc.*, No. 19-cv-4238, 2021 WL 2588974, at *6 (citing *Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*, 618 F. 3d 1025, 1034 (9th Cir. 2010)).

Far from relying only on his own "say-so" and an "anonymous" article from *The Economist* (Mot. at 4), Prof. Russell offers sufficient support and methodology, satisfying Rule 702. He will describe the potential economic value of AGI, Russell Rpt. ¶44, and explain how that value incentivizes AI companies "to push forward as fast as possible," including because "the self-reinforcing nature of progress in AI capabilities" imparts a "very substantial" first-mover advantage, *id.* ¶45; *see also id.* ¶¶57-58. As evidence of those incentives, Prof. Russell points to the astronomical investments AI companies have made pursuing AGI. *Id.* ¶46; *see also* Russell Tr. (Mot. Ex. C) at 187:16-22 (noting Meta's $100-million signing bonuses for AI researchers). Prof. Russell also relies on countless conversations with others in the AI industry, including AI company CEOs. Russell Tr. 185:24-186:15.

### III. OPINION 4 IS NOT IMPERISSIBLY SPECULATIVE

Finally, OpenAI seeks to exclude Prof. Russell's fourth opinion concerning the risks related to AI as "speculative and unreliable" because Prof. Russell purportedly cannot calculate the exact probability that such risks will occur. Mot. at 4. That is not the point of his testimony. Prof. Russell is being called to testify simply that the risks **exist**, not to quantify the likelihood they will materialize. "Lack of certainty is not, for a qualified expert, the same thing as guesswork." *Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010).

An expert opinion is "reliable if the knowledge underlying it has a reliable basis in the knowledge and experience of the relevant discipline." *Primiano*, 598 F.3d at 565. Prof. Russell has a reliable basis for his opinions. That conclusion is underscored by the fact that OpenAI's own AI Safety expert, Prof. Somesh Jha, agrees with Prof. Russell. Prof. Jha conceded that "some of the risks that Professor Russell discusses . . . **are possible**." Ex. 5 (Jha Rpt.) ¶ 58 (emphasis added). He agrees that possible risks include disinformation and cybersecurity, Ex. 6 (Jha Tr.) at 196:7-9, 199:6-23; racial, gender, and other forms of discrimination, *id.* at 198:12-22; dual-use risks, *id.* at 103:7-15; misalignment risk, *id.* at 113:2-14; and weapons of mass destruction risks, *id.* at 105:4-18. Prof. Jha even agrees with Prof. Russell that AI presents a risk of human extinction and that mitigating that risk should be a global priority. *Id.* at 95:1-16. OpenAI cannot seek to exclude Prof. Russell's opinions when its own expert has agreed with them. *See Garcia v. Columbia Med. Ctr. of Sherman*, 996 F. Supp. 617, 623 (E.D. Tex. 1998) (denying *Daubert* motion where moving party's "own expert . . . used the same methodology"); *Groobert v. Pres. & Dirs. of Georgetown Coll.*, 219 F. Supp. 2d 1, 9 (D.D.C. 2002). Prof. Russell should be permitted to offer Opinion 4 at trial.

### CONCLUSION

The Court should deny OpenAI's motion.

| | |
|---|---|
| Dated: February 25, 2026 | MOLOLAMKEN LLP |
| | By:    */s/ Steven F. Molo*<br>Steven F. Molo (*pro hac vice*) |
| | Marc Toberoff (CA SBN 188547)<br>MToberoff@toberoffandassociates.com<br>TOBEROFF & ASSOCIATES, P.C.<br>23823 Malibu Road, Suite 50-363<br>Malibu, CA 90265<br>Telephone: (310) 246-3333 |
| | Robert K. Kry (*pro hac vice*)<br>Jennifer M. Schubert (*pro hac vice*)<br>MOLOLAMKEN LLP<br>430 Park Avenue<br>New York, NY 10022<br>Telephone: (212) 607-8160 |
| | *Attorneys for Plaintiffs Elon Musk and X.AI Corp.* |