1  MARC TOBEROFF (CA SBN 188547)
   MToberoff@toberoffandassociates.com
2  TOBEROFF & ASSOCIATES, P.C.
   23823 Malibu Road, Suite 50-363
3  Malibu, CA  90265
   Telephone: (310) 246-3333
4
5  STEVEN F. MOLO (*pro hac vice*)
   ROBERT K. KRY (*pro hac vice*)
   JENNIFER M. SCHUBERT (*pro hac vice*)
6  MOLOLAMKEN LLP
   430 Park Avenue
7  New York, NY  10022
   Telephone: (212) 607-8160
8
   *Attorneys for Plaintiffs Elon Musk
9  and X.AI Corp.*

10                UNITED STATES DISTRICT COURT
11                NORTHERN DISTRICT OF CALIFORNIA
12                       OAKLAND DIVISION

13  ELON MUSK et al.,                  | Case No. 4:24-cv-04722-YGR
14         Plaintiffs,                 | **PLAINTIFF'S OPPOSITION TO OPENAI'S MOTION *IN LIMINE* NO. 2 TO EXCLUDE NEWS ARTICLES**
15     v.                              |
16  SAMUEL ALTMAN et al.,              | Date: March 13, 2026
                                       | Time: 9:00 AM
17         Defendants.                 | Courtroom: 1 – 4th Floor
                                       | Judge: Hon. Yvonne Gonzalez Rogers

**INTRODUCTION**

The OpenAI Defendants ("OpenAI") seek to exclude evidence that they contend bears on "collateral matters with little or no relevance to the issues to be tried." Mot. at 1. Not so. The evidence OpenAI wants to keep out relates to central, contested issues in the case: whether and how OpenAI subordinated its nonprofit mission to commercial ends and when that transformation became publicly known. Nor will Musk use the three exhibits for impermissible hearsay purposes. Instead, Musk will introduce the 2024 departure announcement of one of OpenAI's key safety executives to show when OpenAI's prioritization of commercial ends over its mission became publicly known. Mot. Ex. C. And Musk does not intend to introduce the other two exhibits into evidence at all. Mot. Exs. A & B. Instead, those articles will be referenced only for the permissible purpose of providing necessary context for deposition testimony.

**ARGUMENT**

**I.     JAN LEIKE'S TWEETS ARE ADMISSIBLE TO SHOW PUBLIC NOTICE**

In May 2024, OpenAI safety executive Jan Leike announced his departure from OpenAI and tweeted that he "ha[d] been disagreeing with OpenAI leadership about the company's core priorities for some time, until we finally reached a breaking point." Mot. Ex. C at -13710. He went on to write that, "over the past years, safety culture and processes have taken a backseat to shiny products." *Id.* at -13711. OpenAI's argument that those tweets are inadmissible hearsay is misplaced, because Musk does not offer them for their truth.

Rather, the timing of Leike's 2024 departure and accompanying public statements are relevant to proving that Musk brought his claims within the applicable statutes of limitations. *See Burgess v. Premier Corp.*, 727 F.2d 826, 835 (9th Cir. 1984) (affirming admission of newspaper articles to show notice where timeliness of claims was disputed). Musk contends that he first discovered OpenAI's breaches of charitable trust in 2023, after Microsoft announced its whopping $10 billion investment in OpenAI. OpenAI will contend that Musk knew about OpenAI's commercial transformation much sooner, in part based on public disclosures. The timing of Leike's statements in 2024 provides crucial support to Musk's position. That an OpenAI insider – a key safety executive – first publicly shared his concerns about OpenAI's prioritization of profits over

1

1  safety in 2024 tends to show that Musk had no reason to discover OpenAI's transformation into a
2  commercial venture any sooner.
3        Leike's public statements should be admitted for this permissible non-hearsay purpose. If
4  the Court considers it appropriate, it may provide a limiting instruction to clarify that the exhibit is
5  not being admitted for its truth. *See, e.g.*, *Burgess*, 727 F.2d at 835; *Hiram v. United States*, 354
6  F.2d 4, 7 (9th Cir. 1965).

7  **II.  TESTIMONY REFERENCING THE NEWS ARTICLES IS ADMISSIBLE**

8        OpenAI also seeks to exclude two articles from the *Wall Street Journal* and *The Economist*
9  that describe the events surrounding Altman's firing and reinstatement by OpenAI's former
10 nonprofit board in November 2023. Mot. Exs. A & B. But Plaintiff no longer seeks to admit those
11 articles at all. Instead, Plaintiff seeks to admit only testimony from two former board members
12 about the events described in the articles. That testimony references those articles only because the
13 articles provided context for questioning at the witnesses' depositions.

14     **A.  Evidence About Altman's and Brockman's Firing Is Highly Relevant**

15       OpenAI's contention that evidence related to the firing and reinstatement has "little or no
16 relevance" to the case strains credulity. Mot. at 1. The firing and reinstatement are directly
17 probative of Musk's allegation that OpenAI transformed into a commercial venture with Microsoft's
18 help – at the expense of OpenAI's mission and commitment to safety. Altman repeatedly concealed
19 safety-process failures from the board in order to advance OpenAI's commercial objectives. Ex. 1
20 (Toner Tr.) at 45:11-65:9, 156:19-157:13. That lack of candor – and the threat to AI safety that it
21 created – led board members to fire Altman and Brockman. *Id.* at 102:25-106:11. Microsoft
22 immediately sprang into action, offering to hire Altman and Brockman to lead a new AI division at
23 Microsoft and making a public offer to hire all of OpenAI's employees. *Id.* at 146:18-147:22. The
24 pressure campaign was successful. Faced with the prospect that OpenAI would disintegrate,
25 OpenAI's board had no choice but to reinstate Altman and Brockman, and safety-focused
26 independent board members like Helen Toner and Tasha McCauley were forced to resign. *Id.*
27 at 147:23-149:17.
28

Altman's firing and reinstatement are thus plainly relevant.  Indeed, OpenAI has included over a dozen documents relating to the firing and reinstatement on its own exhibit list.  DX1040-1057.

### B. References to the News Articles Will Not Be Offered for Their Truth

Plaintiff never sought to introduce the *Wall Street Journal* and *The Economist* articles for their truth.  And Plaintiff no longer seeks to introduce the articles as exhibits *at all*.  Instead, in a good-faith effort to narrow the dispute, Plaintiff now seeks to introduce only testimony from Helen Toner and Tasha McCauley that incidentally references the articles in the course of questioning.

That is a permissible non-hearsay use of the documents.  Out-of-court statements may be admitted when they aren't offered for their truth, but rather "only to give context to other statements."  *United States v. Barragan*, 871 F.3d 689, 704 (9th Cir. 2017); *see also United States v. Valerio*, 441 F.3d 837, 844 (9th Cir. 2006) (similar).  That is logical, "because it doesn't make sense to play conversations and take one side out of it."  *Barragan*, 871 F.3d at 704 (internal quotation marks omitted).

At trial, Plaintiff intends to present portions of Toner's and McCauley's deposition testimony.  When asking Toner and McCauley about the events surrounding Altman's firing and reinstatement, Plaintiff's counsel sometimes referred to or quoted from the *Wall Street Journal* and *The Economist* articles to provide context for the questions.  Toner and McCauley responded with admissible first-hand testimony discussing their own views and experiences.  *See* Mot. Ex. G at 155:5-156:18; Mot. Ex. E at 81:21-82:25.  Attorney questions, of course, are not evidence at all.  The references to the articles in those questions merely contextualize Toner's and McCauley's testimony about the firing and reinstatement.

OpenAI has not asserted that mere references to the articles in attorney questions would be unduly prejudicial under Rule 403.  That fact distinguishes this case from *United States v. Sine*, 493 F.3d 1021 (9th Cir. 2007), where the Ninth Circuit concluded that a prosecutor's use of a court order during cross-examination was unfairly prejudicial to a criminal defendant.  *Id.* at 1031.  By contrast, omitting the questions as OpenAI suggests would confuse the jury by removing the context necessary to understand Toner's or McCauley's responses – effectively presenting only one side of

a conversation.  The non-hearsay use of the articles to provide context should be permitted, with a limiting instruction if appropriate.[1]

**CONCLUSION**

The Court should deny OpenAI's motion.

Dated:  February 25, 2026                              MOLOLAMKEN LLP

By:     /s/  Steven F. Molo
Steven F. Molo (*pro hac vice*)

Marc Toberoff (CA SBN 188547)
MToberoff@toberoffandassociates.com
TOBEROFF & ASSOCIATES, P.C.
23823 Malibu Road, Suite 50-363
Malibu, CA  90265
Telephone: (310) 246-3333

Robert K. Kry (*pro hac vice*)
Jennifer M. Schubert (*pro hac vice*)
MOLOLAMKEN LLP
430 Park Avenue
New York, NY  10022
Telephone: (212) 607-8160

*Attorneys for Plaintiffs Elon Musk and X.AI Corp.*

---

[1] At a minimum, the Court should tailor any relief to exclude only explicit references to the articles. Toner's and McCauley's deposition testimony may be Plaintiff's only opportunity to present their accounts to the jury.  Accordingly, the Court should strike only the bare minimum necessary to address any concerns.  *See* Mot. Ex. E at 81:5-16, 81:21-82:8 (explicit quotations from *Wall Street Journal* article); Mot. Ex. G at 155:5-14 (explicit quotation from *The Economist* article).