1  JORDAN ETH (CA SBN 121617)
   JEth@mofo.com
2  WILLIAM FRENTZEN (CA SBN 343918)
   WFrentzen@mofo.com
3  DAVID J. WIENER (CA SBN 291659)
   DWiener@mofo.com
4  MORRISON & FOERSTER LLP
   425 Market Street
5  San Francisco, CA 94105
   Telephone:   (415) 268-7000
6  Facsimile:   (415) 268-7522

7  WILLIAM SAVITT (admitted *pro hac vice*)
   WDSavitt@wlrk.com
8  BRADLEY R. WILSON (admitted *pro hac vice*)
   BRWilson@wlrk.com
9  SARAH K. EDDY (admitted *pro hac vice*)
   SKEddy@wlrk.com
10 STEVEN WINTER (admitted *pro hac vice*)
   SWinter@wlrk.com
11 NATHANIEL CULLERTON (admitted *pro hac vice*)
   NDCullerton@wlrk.com
12 WACHTELL, LIPTON, ROSEN & KATZ
   51 West 52nd Street
13 New York, NY 10019
   Telephone:   (212) 403-1000
14 Facsimile:   (212) 403-2000

15 *Attorneys for Defendants Samuel Altman, Gregory Brockman,
   OpenAI, Inc., OpenAI L.P., OpenAI, L.L.C., OpenAI GP, L.L.C.,*
16 *OpenAI OpCo, LLC, OpenAI Global, LLC, OAI Corporation, LLC,
   OpenAI Holdings, LLC, OpenAI Startup Fund Management, LLC,*
17 *OpenAI Startup Fund GP I, L.L.C., OpenAI Startup Fund I, L.P.,
   OpenAI Startup Fund SPV GP I, L.L.C., OpenAI Startup Fund SPV GP II, L.L.C.,*
18 *OpenAI Startup Fund SPV GP III, L.L.C., OpenAI Startup Fund SPV GP IV, L.L.C.,
   OpenAI Startup Fund SPV I, L.P., OpenAI Startup Fund SPV II, L.P.,*
19 *OpenAI Startup Fund SPV III, L.P., OpenAI Startup Fund SPV IV, L.P.,
   Aestas Management Company, LLC, and Aestas LLC*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

| | |
|---|---|
| ELON MUSK, et al.,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>SAMUEL ALTMAN, et al.,<br><br>　　　　　Defendants. | Case No. 4:24-cv-04722-YGR<br><br>**OPENAI DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE NO. 1**<br><br>Date:  March 13, 2026<br>Time:  9:00 AM<br>Courtroom:  1 – 4th Floor<br>Judge:  Hon. Yvonne Gonzalez Rogers |

At trial, Musk plans to impugn OpenAI's October 2025 recapitalization transaction as an abandonment of its mission, a "conversion" into a for-profit enterprise, and a breach of commitments to the public. He will attack the nonprofit directors who approved the transaction as beholden to for-profit investors and corrupted by for-profit motives. He will assail the process that led to the transaction, and claim that the nonprofit got a raw deal. And he will portray *himself* as a public champion suing to stop the "conversion" "in the name of the People." Dkt. 64-20 at 2.

Musk wants to do this without allowing the jury to consider the full picture. As OpenAI's nonprofit directors will testify, the structure and terms of the recapitalization embody commitments by OpenAI to the Attorneys General of California and Delaware, the principal regulators of charitable trusts in their respective states, and the principal representatives of the public Musk claims to represent. Those terms and commitments—designed to ensure the continued primacy of OpenAI's nonprofit mission and governance and to create one of the most well-resourced nonprofits in history—were reached after nearly a year of intensive negotiation with the AGs, are memorialized in written agreements with the AGs that were a central focus of the board's deliberations, and form an integral part of the final transaction.

Musk does not want the jury to hear this. He now moves to exclude the agreements between OpenAI and the AGs (Musk Exs. 3-4); the AGs' official releases announcing the same (Musk Exs. 1-2); and all testimony about OpenAI's engagement with the AGs respecting the very transaction he attacks. Musk's motion should be denied. The recapitalization cannot be separated from the AG process that shaped it. And if Musk attacks the recapitalization, its terms, and the process by which it was approved, basic fairness requires that the jury consider evidence of what the terms actually are, how they were reached, and why. Anything less would prejudice OpenAI by allowing Musk to present a one-sided and incomplete narrative to the jury.

## BACKGROUND

From the beginning of this suit, Musk has claimed that OpenAI, Inc.—a Delaware incorporated nonprofit corporation—sought to "convert" itself into a for-profit, in purported breach of "commitments to Musk, regulators, and the public." Dkt. 46 at 15, 28; *id.* at 35. In November 2024, Musk sought to enjoin what he deemed "OpenAI's imminent conversion to a for-profit

entity." Dkt. 46 at 28. What Musk calls a "conversion" is not a "conversion" at all, but rather a recapitalization transaction in which the *existing* for-profit affiliate (previously an LLC) became a public benefit corporation ("PBC"), with the OpenAI nonprofit continuing to control all of OpenAI with continuing commitment to the mission, the same mission shared by the PBC.

In parallel with this litigation and over the course of nearly a year, the Delaware and California AGs intensively reviewed and helped shape the final terms of that transaction. Musk Ex. 1 ("robust investigation"); Musk Ex. 2 at 2 ("rigorous review"). They did so in their capacities as the representatives of the nonprofit's beneficiaries and the primary enforcers of its charitable mission. Musk Ex. 2 at 2; Musk Ex. 3 at 1. The Delaware AG informed this Court of her "concurrent review" while Musk's PI motion was pending. Dkt. 77-1 at 2. That review encompassed (i) whether "OpenAI is adhering to its specific charitable purposes for the benefit of the public beneficiaries, as opposed to [] commercial or private interests"; (ii) "whether the charitable purpose of Open AI's charitable assets would be lost or impaired" in the restructuring; and (iii) "whether the OpenAI board members are satisfying their fiduciary duties to OpenAI's beneficiaries." *Id.* at 3-5. The Delaware AG retained an independent financial advisor and counsel to "fully analyze" the proposed transaction, and closely coordinated with the California AG's parallel review. Musk Ex. 2 at 2.

Based on its discussions with both AGs, as well as ongoing deliberation and engagement with the public, OpenAI amended the structure and terms of the transaction over time. Ultimately, the recapitalization granted the nonprofit a 26% equity stake in the PBC valued at approximately $130 billion, to be used to further its charitable purpose, and included terms to ensure the ongoing primacy of OpenAI's nonprofit mission. Among other things:

- The nonprofit retains control and oversight of the PBC, with the sole right to appoint the PBC's directors, and the right to remove them at any time for any reason;
- The PBC's mission is the same as the nonprofit's mission and cannot be changed without the nonprofit's consent;
- When making safety or security determinations, the PBC's directors must consider only the mission, and not the pecuniary interests of stockholders; and

- The nonprofit's Safety and Security Committee has oversight rights over certain PBC actions, including the ability to halt the release of AI models or products for safety reasons.

These terms are memorialized in the agreements between OpenAI and the AGs that Musk seeks to exclude. Musk Exs. 3-4. Those agreements also mandate ongoing collaboration between OpenAI and the AGs—including regularly scheduled briefings and advance notice of certain material changes to the enterprise—to enable OpenAI to continue to further its mission. *Id*. OpenAI's current structure cannot be understood separately from these agreements.

On October 27, 2025, OpenAI's board of directors approved the recapitalization, incorporating the terms agreed with the AGs. The next day, the AGs each released statements describing their respective reviews and the resulting agreements. Musk Exs. 1-2.

## ARGUMENT

***The AG evidence is relevant.*** Musk asserts without explanation that the AG evidence is irrelevant because the AGs purportedly reviewed OpenAI's restructuring "under a different standard" and "for a different purpose." MIL at 2. That is both wrong and beside the point. Regardless of the circumstances of the AGs' review, the jury cannot fairly consider the recapitalization without understanding how it was negotiated, how and why it evolved over time, what the directors considered when approving it, and the substantial role of regulators in shaping it, all of which requires presentation of the AG evidence. The jury is also entitled to understand that core aspects of OpenAI's structure are enshrined in binding agreements with and commitments to the AGs that cannot be unilaterally altered. And it would be impossible for OpenAI's witnesses to describe the nonprofit's adherence to its charitable purpose without reference to its work, undertaken in consultation with the AGs, to determine a structure that would protect its mission. That discussion, inconsistent with Musk's narrative that OpenAI absconded with charitable assets, is plainly relevant and inextricable from the narrative.

Moreover, the AG evidence satisfies even Musk's standard of relevance. Where, as here, the AGs reviewed "the same conduct" to be tried "and for the same reason," the evidence is "undoubtedly probative." *Microsoft Corp.* v. *Motorola, Inc.*, 795 F.3d 1024, 1056 (9th Cir. 2015). The AGs evaluated the same transaction that Musk challenges, and examined precisely the same

issues. *See* Musk Ex. 2 at 2 (Delaware AG review); Musk Ex. 3 at 1 (CA AG). And the AGs applied the same legal principles as will be applied in this case. *See* Restatement (Third) of Trusts § 93 (2012) (defining breach of trust).

***The AG evidence is not unduly prejudicial.*** Musk argues he will be prejudiced because the jury will "substitute" the AGs' "findings for its own." MIL at 3. But the AGs did not make any "findings" (as Musk agrees)—they negotiated agreements with OpenAI to structure the recapitalization in the public interest. In any event, as Musk's cases make clear, his concern warrants exclusion under Rule 403 only when the sole purpose of the proffered evidence is to establish liability or its absence. In *PG&E*, for example, the government sought to admit findings from a civil proceeding to support its criminal prosecution. *United States* v. *Pac. Gas & Elec. Co.*, 178 F. Supp. 3d 927, 948 (N.D. Cal. 2016). And in *Long Beach*, defendants in a civil wrongful death suit sought to escape liability by introducing the district attorney's determination not to bring criminal charges. *N.W.* v. *City of Long Beach*, 2016 WL 9021966, at *3 (C.D. Cal. June 7, 2016). Here, however, the AG evidence is intertwined with the very transaction Musk challenges—which cannot be understood without accounting for the involvement of the AGs, the undertakings reached, and OpenAI's binding obligations to its primary regulators. Musk can offer his own evidence to attack the recapitalization but should not be permitted to present an account excluding vital facts.

***The AG evidence is not inadmissible hearsay.*** The AG agreements are "legally operative document[s]" with "independent legal significance," and thus "do not constitute hearsay." *Forreststream Holdings Ltd.* v. *Shenkman*, 2017 WL 1112963, at *4 (N.D. Cal. Mar. 24, 2017). All of the AG exhibits are independently admissible "public records" under Rule 803(8)(A)(i)—which Musk ignores—because they "set[] out" "the office's activities." *Phillips* v. *Oosterbaan*, 508 F. Supp. 3d 1103, 1114-15 (D. Utah 2020); *Terry* v. *Wasatch Advantage Grp., LLC*, 2024 WL 3471297, at *4 (E.D. Cal. July 18, 2024) (admitting DOJ press release). Musk has not met his burden under Rule 803(8)(B) of showing that the AG evidence is untrustworthy. The case he cites involved an "incomplete" draft report from an "unknown" author. *Sullivan* v. *Dollar Tree Stores, Inc.*, 623 F.3d 770, 778 (9th Cir. 2010). The AG exhibits are signed agreements and statements from the chief law enforcement officers of California and Delaware.

| | |
|---|---|
| Date: February 25, 2026 | MORRISON & FOERSTER LLP |

                                                 */s/ Jordan Eth*
                                            JORDAN ETH (CA SBN 121617)
JEth@mofo.com
WILLIAM FRENTZEN (CA SBN 343918)
WFrentzen@mofo.com
DAVID J. WIENER (CA SBN 291659)
DWiener@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105
Telephone:  (415) 268-7000
Facsimile:   (415) 268-7522

WILLIAM SAVITT (admitted *pro hac vice*)
WDSavitt@wlrk.com
BRADLEY R. WILSON (admitted *pro hac vice*)
BRWilson@wlrk.com
SARAH K. EDDY (admitted *pro hac vice*)
SKEddy@wlrk.com
STEVEN WINTER (admitted *pro hac vice*)
SWinter@wlrk.com
NATHANIEL CULLERTON (admitted *pro hac vice*)
NDCullerton@wlrk.com
WACHTELL, LIPTON, ROSEN & KATZ
51 West 52nd Street
New York, NY 10019
Telephone:  (212) 403-1000
Facsimile:   (212) 403-2000

*Attorneys for the OpenAI Defendants*

5

OPENAI DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE NO. 1
CASE NO. 4:24-CV-04722-YGR