1  JORDAN ETH (CA SBN 121617)
   JEth@mofo.com
2  WILLIAM FRENTZEN (CA SBN 343918)
   WFrentzen@mofo.com
3  DAVID J. WIENER (CA SBN 291659)
   DWiener@mofo.com
4  MORRISON & FOERSTER LLP
   425 Market Street
5  San Francisco, CA 94105
   Telephone:   (415) 268-7000
6  Facsimile:   (415) 268-7522

7  WILLIAM SAVITT (admitted *pro hac vice*)
   WDSavitt@wlrk.com
8  BRADLEY R. WILSON (admitted *pro hac vice*)
   BRWilson@wlrk.com
9  SARAH K. EDDY (admitted *pro hac vice*)
   SKEddy@wlrk.com
10 STEVEN WINTER (admitted *pro hac vice*)
   SWinter@wlrk.com
11 NATHANIEL CULLERTON (admitted *pro hac vice*)
   NDCullerton@wlrk.com
12 WACHTELL, LIPTON, ROSEN & KATZ
   51 West 52nd Street
13 New York, NY 10019
   Telephone:   (212) 403-1000
14 Facsimile:   (212) 403-2000

*Attorneys for Defendants Samuel Altman, Gregory Brockman, OpenAI, Inc., OpenAI L.P., OpenAI, L.L.C., OpenAI GP, L.L.C., OpenAI OpCo, LLC, OpenAI Global, LLC, OAI Corporation, LLC, OpenAI Holdings, LLC, OpenAI Startup Fund Management, LLC, OpenAI Startup Fund GP I, L.L.C., OpenAI Startup Fund I, L.P., OpenAI Startup Fund SPV GP I, L.L.C., OpenAI Startup Fund SPV GP II, L.L.C., OpenAI Startup Fund SPV GP III, L.L.C., OpenAI Startup Fund SPV GP IV, L.L.C., OpenAI Startup Fund SPV I, L.P., OpenAI Startup Fund SPV II, L.P., OpenAI Startup Fund SPV III, L.P., OpenAI Startup Fund SPV IV, L.P., Aestas Management Company, LLC, and Aestas LLC*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

| | |
|---|---|
| ELON MUSK, et al., | Case No. 4:24-cv-04722-YGR |
| Plaintiffs, | **OPENAI DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE NO. 3** |
| v. | |
| SAMUEL ALTMAN, et al., | Date: March 13, 2026 |
| Defendants. | Time: 9:00 AM<br>Courtroom: 1 – 4th Floor<br>Judge: Hon. Yvonne Gonzalez Rogers |

**INTRODUCTION**

Through his complaint and his X account, Musk has been selling a simple story about this case. As he tells it, he sued the OpenAI Defendants out of principle—to enforce alleged promises that OpenAI would remain a nonprofit and keep its technology open source. Even as he seeks more than $100 billion from the OpenAI nonprofit, Musk insists that this case is not about money, but purportedly about benefitting humanity and promoting AI safety.

Musk now moves to exclude three categories of evidence bearing directly on the credibility of this narrative, including (1) evidence of his unsolicited $97 billion bid to buy the same OpenAI assets he claims must forever remain open source and with the nonprofit; (2) evidence of his hostility toward OpenAI while quietly launching a direct rival, xAI; and (3) rebuttal and impeachment evidence concerning xAI's safety record.

The motion should be denied. Musk cannot present his preferred narrative to the jury while excluding highly probative evidence of his bias and financial motive. At trial, Musk will argue that the OpenAI Defendants have commercialized the nonprofit's charitable assets in breach of purported commitments made to him. Yet he seeks to exclude evidence that he tried last year to acquire and commercialize those same assets for his own benefit, as well as evidence that his claims are part of a broader effort to interfere with OpenAI's operations for the benefit of his competing AI venture, xAI. Musk attempts to confine this evidence to Rules 404(b) and 608. But this is classic bias impeachment, governed by neither rule and admissible because it bears directly on credibility.

Nor may Musk profess to care about AI safety at trial, while simultaneously shielding the safety conduct of the AI company he controls from scrutiny. Musk has put his views on AI safety squarely at issue, and nothing could be more probative of those views than what Musk and xAI actually do in the real world. Similarly, Musk cannot attack OpenAI's safety practices—claiming they fail to satisfy his own standard of safety, or fall beneath an appropriate industry safety standard, or are too influenced by commercial interests for his liking—without opening the door to evidence that is directly relevant to those contentions, including how OpenAI's safety practices compare to those Musk has implemented at xAI. Any resulting prejudice to Musk's narrative would flow from the probative force of that rebuttal and impeachment evidence, not from unfairness.

# ARGUMENT

"Proof of bias is almost always relevant because the jury, as finder of fact and weigher of credibility, has historically been entitled to assess all evidence which might bear on the accuracy and truth of a witness's testimony." *United States* v. *Abel*, 469 U.S. 45, 52 (1984). Bias evidence thus satisfies Rule 401, as "[a] successful showing of bias on the part of a witness would have a tendency to make the facts to which he testified less probable in the eyes of the jury." *Id.* at 50-51.

Contrary to Musk's suggestions (MIL at 3-4), bias impeachment is governed neither by Rule 404(b), which addresses propensity evidence, nor Rule 608, which governs character for truthfulness. Rather, "the point of a bias inquiry is to expose to the jury the witness' special motive to lie, by revealing facts such as interest in the outcome of the trial, or personal animosity or favoritism toward the defendant." *United States* v. *Hankey*, 203 F.3d 1160, 1171 (9th Cir. 2000) (citations omitted). And proof of bias, including "financial interest," is among "the most common and favored form[s] of impeachment" because "money and greed are powerful motivators." 30 *Wright & Miller's Federal Practice and Procedure* § 6426 (2d ed.).

## I. Musk's $97 billion bid to acquire OpenAI is relevant evidence of his financial motive.

In February 2025, Musk and a consortium of other wealthy private investors sent OpenAI's board a letter of intent to acquire all of OpenAI's assets for $97.375 billion—the very assets he now claims were required to remain nonprofit and open-source. Dkt. 118-1. That unsolicited bid bears directly on Musk's credibility and motive for bringing this suit: In this lawsuit, Musk claims that all of OpenAI's assets were required to remain locked in a nonprofit structure. Yet he personally sought to purchase those same assets. The jury is entitled to consider whether the disconnect between Musk's words and his actions undermines his trial narrative. *Hankey*, 203 F.3d at 1171. This Court has already found that a witness's financial interest in this case is "directly relevant to bias." *Musk* v. *Altman*, 2025 WL 3907740, at *1 (N.D. Cal. Oct. 31, 2025).

Musk claims (MIL at 3) that the Court's prior rulings "squarely preclude" evidence of his takeover bid. That is not what the rulings said. The Court held only that OpenAI's bid-related counterclaim should be tried in Phase Two, Dkt. 228 at 9, which led Magistrate Hixson to accordingly limit discovery during Phase One, Dkt. 237 at 2-3. Those case-management rulings do

not operate as blanket exclusions of otherwise admissible impeachment evidence. To the contrary, as Judge Hixson observed, Musk's bid is "a matter of credibility" and thus relevant. Dkt. 237 at 2. This Court observed the same in concluding that the bid "undermine[d]" Musk's claim for a preliminary injunction. Dkt. 121 at 14 n.10; *see also Actuate Corp.* v. *Aon Corp.*, 2012 WL 2285187, at *1 (N.D. Cal. June 18, 2012) (denying motion to preclude evidence of "financial bias").

Nor does Rule 403 justify exclusion. The jury need not resolve any collateral issues about the bid or its anticompetitive effects: its existence, size, timing, and claimed purpose sufficiently illuminate Musk's motive. That the evidence may "prejudice" the jury against his narrative is not "unfair"—that is the point of impeachment. *See United States* v. *Dees*, 34 F.3d 838, 844 (9th Cir. 1994) (abuse of discretion to preclude testimony regarding witness's financial interest, which was "only prejudicial in so much as it revealed a potential reason . . . to distort the truth").

## II. Evidence concerning xAI's formation and structure further reflects Musk's motives.

Musk's effort to exclude evidence concerning xAI's formation and corporate structure likewise fails. *See* MIL at 3. xAI's genesis underscores Musk's motives. In March 2023, Musk secretly incorporated xAI to pursue his own commercial AI project. Days later, he publicly called for a six-month "moratorium" on development of AI systems more advanced than OpenAI's latest product. Within weeks, he demanded access to OpenAI's confidential information—without disclosing that he had already formed a competing enterprise. Two weeks after receiving that information, he attacked OpenAI on television, still keeping xAI's existence secret. He continued that campaign of disparagement for months before filing suit in February 2025. Dkt. 229 ¶¶ 55-72.

This sequence bears directly on Musk's "special motive to lie." *Hankey*, 203 F.3d at 1171. It shows that this lawsuit is about a desire for competitive advantage and pecuniary gain, not about alleged broken promises. The evidence is thus relevant to whether Musk's "willingness . . . to lie or shade testimony" may be influenced by his potential financial and competitive benefit. *Conan* v. *City of Fontana*, 2017 WL 7795953, at *1 (C.D. Cal. Oct. 16, 2017). Musk's contention (MIL at 2-3) that this evidence must relate to an affirmative defense finds no support in the law. *See Abel*, 469 U.S. at 56 ("[T]here is no rule of evidence which provides that testimony admissible for one purpose and inadmissible for another purpose is thereby rendered inadmissible.").

Evidence concerning xAI's corporate reorganization provides additional grounds for impeachment. Musk seeks to prevent the jury from learning that, although he publicly touted xAI as a "public benefit corporation," it ceased being a public benefit corporation months before he represented—under penalty of perjury—that it was one. *Compare* Dkt. 32 ¶¶ 9, 76 & n.4, *with* Musk Ex. 1 (Musk Tr.) at 11:4-12:7; Musk Ex. 2 (Birchall Tr.) at 150:22-25, 151:11-153:15, 154:8-25. Nor does he want the jury to learn that he actively recruited OpenAI employees to xAI while publicly urging xAI's competitors to pause their research over purported safety concerns. *See* Musk Ex. 1 at 302:10-303:7. These facts bear directly on credibility and are admissible for such purpose.

### III.    OpenAI may offer rebuttal and impeachment evidence about xAI's safety record.

Finally, Musk's attempt to stage a one-sided referendum on AI safety should fail. OpenAI's position has been consistent and tracks Musk's sworn testimony. This case is about two issues only: Musk's purported understanding that OpenAI would always remain "open source" and "nonprofit." Dkt. 409 at 2. Yet *Musk* now contends that "AI safety is central to this case." Dkt. 417 at 3. He plans to testify about his purported "commitment to AI safety," *id.*, offer expert testimony on "AI's safety risks" generally, *id.*, and show the jury hearsay-ridden materials concerning OpenAI's safety record specifically, *see* Dkts. 409, 410 (OpenAI MIL Nos. 1 and 2).

OpenAI is entitled to rebut and impeach his narrative, including with evidence of xAI's safety record, as "[t]he range of evidence that may be elicited for the purpose of discrediting a witness is very liberal" and includes "testing his sincerity." *Hynix Semiconductor Inc.* v. *Rambus Inc.*, 2008 WL 397350, at *1 (N.D. Cal. Feb. 10, 2008). Understandably, Musk would prefer to avoid that record; the press release he cites (MIL at 4 n. 1) demonstrates well just how indifferent Musk's company has been to safety considerations. But Musk cannot prevent the jury from considering xAI's record, because it casts doubt on the sincerity of his claimed safety motivation and bears directly on the adequacy of OpenAI's safety practices. That such evidence may be prejudicial to Musk's litigating position is beside the point. "Relevant evidence is inherently prejudicial; but it is only unfair prejudice, substantially outweighing probative value, which permits exclusion of relevant matter under Rule 403." *Hankey*, 203 F.3d at 1172 (citation omitted).

| | |
|---|---|
| Date: February 25, 2026 | MORRISON & FOERSTER LLP<br><br>*/s/ Jordan Eth*<br>JORDAN ETH (CA SBN 121617)<br>JEth@mofo.com<br>WILLIAM FRENTZEN (CA SBN 343918)<br>WFrentzen@mofo.com<br>DAVID J. WIENER (CA SBN 291659)<br>DWiener@mofo.com<br>MORRISON & FOERSTER LLP<br>425 Market Street<br>San Francisco, CA 94105<br>Telephone:  (415) 268-7000<br>Facsimile:  (415) 268-7522<br><br>WILLIAM SAVITT (admitted *pro hac vice*)<br>WDSavitt@wlrk.com<br>BRADLEY R. WILSON (admitted *pro hac vice*)<br>BRWilson@wlrk.com<br>SARAH K. EDDY (admitted *pro hac vice*)<br>SKEddy@wlrk.com<br>STEVEN WINTER (admitted *pro hac vice*)<br>SWinter@wlrk.com<br>NATHANIEL CULLERTON (admitted *pro hac vice*)<br>NDCullerton@wlrk.com<br>WACHTELL, LIPTON, ROSEN & KATZ<br>51 West 52nd Street<br>New York, NY 10019<br>Telephone:  (212) 403-1000<br>Facsimile:  (212) 403-2000<br><br>*Attorneys for the OpenAI Defendants* |