JORDAN ETH (CA SBN 121617)
JEth@mofo.com
WILLIAM FRENTZEN (CA SBN 343918)
WFrentzen@mofo.com
DAVID J. WIENER (CA SBN 291659)
DWiener@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105
Telephone:    (415) 268-7000
Facsimile:    (415) 268-7522

WILLIAM SAVITT (admitted *pro hac vice*)
WDSavitt@wlrk.com
BRADLEY R. WILSON (admitted *pro hac vice*)
BRWilson@wlrk.com
SARAH K. EDDY (admitted *pro hac vice*)
SKEddy@wlrk.com
STEVEN WINTER (admitted *pro hac vice*)
SWinter@wlrk.com
NATHANIEL CULLERTON (admitted *pro hac vice*)
NDCullerton@wlrk.com
WACHTELL, LIPTON, ROSEN & KATZ
51 West 52nd Street
New York, NY 10019
Telephone:    (212) 403-1000
Facsimile:    (212) 403-2000

*Attorneys for Defendants Samuel Altman, Gregory Brockman,
OpenAI, Inc., OpenAI L.P., OpenAI, L.L.C., OpenAI GP, L.L.C.,
OpenAI OpCo, LLC, OpenAI Global, LLC, OAI Corporation, LLC,
OpenAI Holdings, LLC, OpenAI Startup Fund Management, LLC,
OpenAI Startup Fund GP I, L.L.C., OpenAI Startup Fund I, L.P.,
OpenAI Startup Fund SPV GP I, L.L.C., OpenAI Startup Fund SPV GP II, L.L.C.,
OpenAI Startup Fund SPV GP III, L.L.C., OpenAI Startup Fund SPV GP IV, L.L.C.,
OpenAI Startup Fund SPV I, L.P., OpenAI Startup Fund SPV II, L.P.,
OpenAI Startup Fund SPV III, L.P., OpenAI Startup Fund SPV IV, L.P.,
Aestas Management Company, LLC, and Aestas LLC*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

| | |
|---|---|
| ELON MUSK, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>SAMUEL ALTMAN, et al.,<br><br>Defendants. | Case No. 4:24-cv-04722-YGR<br><br>**OPENAI DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE NO. 2**<br><br>Date:  March 13, 2026<br>Time:  9:00 AM<br>Courtroom:  1 – 4th Floor<br>Judge:  Hon. Yvonne Gonzalez Rogers |

## INTRODUCTION

Musk intends to turn this trial into a referendum on the circumstances of Sam Altman's removal and reinstatement as director and CEO of OpenAI in November 2023. Those events are a sideshow. Musk's claims concern alleged promises made to him nearly a decade earlier, which he alleges were breached when OpenAI accepted investments from Microsoft long before Altman's removal and reinstatement. Musk's only theory of relevance is his contention that OpenAI's nonprofit directors reinstated Altman because of commercial pressure to do so.

Having injected this collateral issue into the case, Musk now seeks to bar the jury from hearing the full story. As multiple witnesses will testify, in the days following Altman's removal, OpenAI's employees revolted and threatened to resign en masse unless the board reversed course. Two of the directors who voted to remove Altman (whom Musk intends to call as witnesses) then voted to reinstate Altman as CEO, resign, and appoint new independent directors in their stead. The new directors formed a special committee and hired a leading law firm, WilmerHale, to conduct an independent review of the circumstances surrounding Altman's removal. Only after that review concluded did the directors authorize Altman's return to the board and ratify the prior board's decision to reinstate him as CEO.

Musk now seeks to exclude all testimony and evidence of WilmerHale's independent review. There is no basis to do so. The existence of the review is not privileged; it's a fact directly relevant to the issue Musk seeks to litigate: whether the board reinstated Altman, and kept him on as CEO, to placate Microsoft. Testimony and evidence offered to establish the fact of the review is thus admissible. If Musk doesn't want the jury to hear this evidence, he need not raise the collateral issue of Altman's removal and reinstatement at trial.

WilmerHale's conclusions are also admissible for the limited purpose of establishing the effect they had on the directors' state of mind and decision-making. Musk contends that Altman's reinstatement was the product of improper influence on OpenAI's directors. OpenAI's witnesses are entitled to rebut this narrative by referencing the nonprivileged information that factored into their decision-making. Any risk that the jury may improperly rely on those conclusions for a different purpose can be abated by an appropriate limiting instruction.

1

# ARGUMENT

***Evidence establishing the fact of the independent review is relevant and admissible.***
OpenAI's board authorized an independent review of the circumstances of Altman's removal before reinstating him to the board and determining to retain him as CEO. That fact is indisputably relevant to the case Musk intends to litigate, as he has placed the board's motives at issue. The directors Musk attacks cannot explain their decisions at trial without acknowledging their deliberative process, which ordered an independent review into the circumstances of Altman's dismissal. Two of Musk's own witnesses—directors who voted to remove and then reinstate Altman as CEO—testified that they insisted on an independent review, and Musk has designated their testimony for use in his case-in-chief. *See* Ex. A (McCauley Tr.) at 123:4-124:22. Musk's sweeping order would prohibit these witnesses even from testifying as to what they say they wanted as a condition to reinstating Altman, or whether and how their claimed demands were met.

Depriving the jury of these facts would allow Musk to present a misleading and one-sided narrative to the jury, to OpenAI's prejudice. Musk seeks to conduct a mini-trial on an issue untethered to his claims (which center on events from years earlier); not driven by product safety concerns (as his own witnesses will testify); and offered primarily to impugn the credibility of OpenAI's CEO and the motives of its board. At the same time, he seeks to bar OpenAI's witnesses from responding to his accusations by explaining why they did what they did. None of Musk's arguments support that unjust result.

1.      Musk's hearsay objection (MIL at 4) is meritless. In each case he cites, a party sought to admit the *results* of an investigation—not its existence—for their truth. *See Paddack* v. *Dave Christensen, Inc.*, 745 F.2d 1254,1258-59 (9th Cir. 1984) (proponent sought to admit pension fund audit "as evidence of the amount of the [contribution] deficiencies"); *United States* v. *Reyes*, 239 F.R.D. 591, 600 (N.D. Cal. 2006) (proponent sought to establish "lack of culpability" via investigation that purportedly "exonerate[d]" him); *In re Homestore.com, Inc.*, 2011 WL 291176, at *6-7 (C.D. Cal. Jan. 25, 2011) (plaintiff sought to use investigative report "to prove" defendant's "past fraudulent practices"). That is not the case here. The fact that an independent review was

conducted and formed part of the board's deliberative process does not turn on the truth of any out-of-court statements. The challenged evidence is offered only to establish that fact.

2. Rule 403 does not justify exclusion. Musk does not deny that the challenged evidence is relevant—because of *his* litigating position—and therefore admissible under Rule 401. Musk argues instead (MIL at 2) that evidence of WilmerHale's review may invite the jury to substitute WilmerHale's findings for its own, a risk he says justifies wholesale exclusion of the evidence. That is not the law. Any risk of unfair prejudice can be abated by an appropriate limiting instruction. *See Aghmane v. Bank of Am.*, 2018 WL 558886, at *2 (N.D. Cal. Jan. 25, 2018) (admitting statements offered to show knowledge and state of mind); *United States* v. *Gieniec*, 993 F.2d 885 (9th Cir. 1993) (affirming court's admission of statements offered for their "effect on the hearer"). Musk's cases again provide no support for his argument, as each involved the risk of a jury adopting an investigator's findings on an ultimate issue in the case. *See* MIL at 2-3. That isn't a concern here because Musk's probe of Altman's reinstatement is (at most) a collateral issue.

3. Musk's contention (MIL at 3-4) that OpenAI seeks to use the independent review as both "a sword and a shield" is also unfounded. *First*, the mere fact of the review implicates no claim of privilege. *Second*, as Musk's own authority confirms, the doctrine applies only when a party attempts to use privileged information (which the review's existence is not) as a "sword"— that is, by affirmatively placing the information "at issue." *Bittaker* v. *Woodford*, 331 F.3d 715, 718-19 (9th Cir. 2003). Here, it is *Musk* who wields the figurative sword, because it is Musk who seeks to attack the circumstances of Altman's removal instead of focusing on the actual claims and defenses before the jury. The law does not require OpenAI to waive privilege or accede to Musk's one-sided narrative. *See Lyons* v. *NBCUniversal Media*, 2021 WL 4777143, at *4 (C.D. Cal. July 1, 2021) ("[I]t is *Plaintiffs*, not Defendant, who put the adequacy of the investigation at issue. . . . It would be extraordinary if a party, by interjecting an issue in a case that the opposing party is not asserting as a defense, could obtain a waiver for any response at all by Defendant[.]").

*Finally*, Musk has never before contended that the challenged evidence constitutes "selective disclosure" of privileged information, as he does now (MIL at 3-4). To the contrary, Musk accepted OpenAI's comprehensive response to his interrogatory asking for details on the

"process by which Altman was removed as CEO and from the OpenAI Board in November 2023 and subsequently reinstated." OpenAI's response included a detailed explanation of WilmerHale's independent review. Ex. B (OpenAI's Resp. to Interrog. 13). Musk did not claim waiver, propound additional discovery, or seek further discovery into the matter at that time. To the extent his motion now "is really a disguised, but untimely, motion to compel discovery," it should be denied. *Barclay* v. *Mercy Health Servs.-Iowa Corp.*, 2009 WL 939846, at *6 (N.D. Iowa Apr. 6, 2009) (denying motion in limine where party did not advance sword/shield arguments in discovery).

***The independent review's conclusions are relevant and admissible.*** Musk argues that the investigative conclusions are also inadmissible hearsay. MIL at 4. That is incorrect. OpenAI is not offering these conclusions for their *truth*. Rather, testimony and evidence are being offered to explain the *effect* of the conclusions on the directors' state of mind and decision-making, an issue that Musk has injected into this case. *See Sanders* v. *Arnold*, 2017 WL 3168521, at *14-15 (N.D. Cal. July 26, 2017) (concluding state appellate court did not err in admitting evidence containing hearsay where such evidence was offered to show "why the witness did what he did"); *Montoya* v. *Orange Cnty. Sheriff's Dep't*, 987 F. Supp. 2d 981, 993 (C.D. Cal. 2013) (denying motion to exclude prior investigations because they were "not offered to prove the truth of the matter asserted, but rather . . . to demonstrate the effect the investigations had on [defendant]").

Following an independent review, WilmerHale concluded that Altman's conduct "did not mandate removal" and that the prior board's actions "did not arise out of concerns regarding product safety or security, the pace of development, OpenAI's finances, or its statements to investors, customers, or business partners." Musk Ex. 2 at -733. The OpenAI board considered those conclusions when deciding whether to endorse the previous board's decision to rehire Altman. *Id.* Regardless of whether those conclusions were correct, that the reconstituted board considered them directly rebuts Musk's attacks on the board's motivations and deliberative process. And here again, there is no "sword/shield" concern for the reasons above—OpenAI has not "selectively disclosed" any privileged advice, has not put any privileged advice at issue, and is not wielding the conclusions as proof that Altman did or did not do any of the things Musk will accuse him of. Any risk of unfair prejudice does not substantially outweigh the highly probative nature of this evidence.

1    Date:  February 25, 2026                MORRISON & FOERSTER LLP

2

3                                         */s/ Jordan Eth*

                                       JORDAN ETH (CA SBN 121617)
4                                         JEth@mofo.com
                                       WILLIAM FRENTZEN (CA SBN 343918)
5                                         WFrentzen@mofo.com
                                       DAVID J. WIENER (CA SBN 291659)
6                                         DWiener@mofo.com
                                       MORRISON & FOERSTER LLP
7                                         425 Market Street
                                       San Francisco, CA 94105
8                                         Telephone:   (415) 268-7000
                                       Facsimile:   (415) 268-7522

9                                         WILLIAM SAVITT (admitted *pro hac vice*)
                                       WDSavitt@wlrk.com
10                                        BRADLEY R. WILSON (admitted *pro hac vice*)
                                       BRWilson@wlrk.com
11                                        SARAH K. EDDY (admitted *pro hac vice*)
                                       SKEddy@wlrk.com
12                                        STEVEN WINTER (admitted *pro hac vice*)
                                       SWinter@wlrk.com
13                                        NATHANIEL CULLERTON (admitted *pro hac vice*)
                                       NDCullerton@wlrk.com
14                                        WACHTELL, LIPTON, ROSEN & KATZ
                                       51 West 52nd Street
15                                        New York, NY 10019
                                       Telephone:   (212) 403-1000
16                                        Facsimile:   (212) 403-2000
17

18                                        *Attorneys for the OpenAI Defendants*

19

20

21

22

23

24

25

26

27

28