# EXHIBIT A

```
                                                  Pages 1 - 65

               UNITED STATES DISTRICT COURT

             NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Yvonne Gonzalez Rogers, Judge

ELON MUSK, et al.,              )
                                )
          Plaintiffs,           )
                                )
   VS.                          )    NO. C 24-04722 YGR
                                )
SAMUEL ALTMAN, et al.,          )
                                )
          Defendants.           )
                                )

                              Oakland, California
                              Wednesday, January 7, 2026
```

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES**:

For Plaintiffs:
                    TOBEROFF AND ASSOCIATES, P.C.
                    23823 Malibu Road - Suite 50-363
                    Malibu, California  90265
               **BY: MARC TOBEROFF, ATTORNEY AT LAW**

                    MOLOLAMKEN LLP
                    430 Park Avenue - 6th Floor
                    New York, New York  10022
               **BY: JENNIFER SCHUBERT, ATTORNEY AT LAW
                    ALEXANDRA C. EYNON, ATTORNEY AT LAW
                    SARA TOFIGHBAKHSH, ATTORNEY AT LAW
                    STEVEN F. MOLO, ATTORNEY AT LAW**

                    MOLOLAMKEN LLP
                    600 New Hampshire Avenue - Suite 500
                    Washington, D.C.  20037
               **BY: WALTER H. HAWES, IV, ATTORNEY AT LAW
                    ROBERT KRY, ATTORNEY AT LAW**


Remotely Reported:  Marla F. Knox, CSR No. 14421, RPR, CRR, RMR
                    U.S. District Court - Official Reporter

**APPEARANCES:** (continued)

For Defendant:
    MORRISON & FOERSTER LLP
    425 Market Street
    San Francisco, California 94105
    BY: **WILLIAM FRENTZEN, ATTORNEY AT LAW**
        **JORDAN ETH, ATTORNEY AT LAW**

    WACHTELL LIPTON ROSEN & KATZ
    51 West 52nd Street
    New York, New York 10019
    BY: **SARA K. EDDY, ATTORNEY AT LAW**
        **WILLIAM SAVITT, ATTORNEY AT LAW**
        **STEVEN P. WINTER, ATTORNEY AT LAW**

    DECHERT, LLP
    45 Fremont Street - 26th Floor
    San Francisco, California 94105
    BY: **RUSSELL P. COHEN, ATTORNEY AT LAW**
        **HOWARD M. ULLMAN, ATTORNEY AT LAW**
        **HANNAH LEONE, ATTORNEY AT LAW**

    DECHERT, LLP
    633 West 5th Street - Suite 4900
    Los Angeles, California 90071
    BY: **NISHA PATEL, ATTORNEY AT LAW**

    DECHERT, LLP
    1900 K Street, N.W.
    Washington, D.C, 20006
    BY: **JOHN A. JURATA, JR., ATTORNEY AT LAW**

1  or the representations at issue are not actionable as a matter
2  of law; two, that there is no reliance as a matter of law; and
3  that, three, the claim in any event fails for statute of
4  limitations grounds.  Is that correct?
5          **MR. SAVITT:**  Yes, Your Honor.
6          **THE COURT:**  Okay.  Go ahead.  Let's start -- focus on
7  whether or not the representations at issue are actionable.
8          **MR. SAVITT:**  Okay, thank you, Your Honor.  Excuse me,
9  I think I will maybe -- with Mr. Molo's permission -- ask you
10 to take a look at his slide because it helps isolate the
11 matters that are stated.
12         **THE COURT:**  That's fine.  What page do you want to go
13 to?
14         **MR. SAVITT:**  Let's begin with slide 12.
15         **THE COURT:**  All right.  Could you all bring up 12,
16 please.
17         **MR. SAVITT:**  This slide is styled fraud, Altman's
18 false promises.  And Plaintiffs have identified two alleged
19 false promises from the 21st and 22nd of September attributable
20 to Mr. Altman.
21     The first is an e-mail disembodied from the rest of the
22 chain that says, "I remain enthusiastic about the nonprofit
23 structure."
24     And the second -- you wouldn't know this from looking at
25 it -- but this is not an e-mail that Mr. Altman sent or

1  received.  It was an e-mail sent by Ms. Zilis to Mr. Musk
2  purporting to recite something that Mr. Altman purportedly said
3  to her.  Structure great with keeping nonprofit and continuing
4  to support.
5      Now, you will see, Your Honor, the caption is about false
6  promises.  To begin, we would submit that it is manifest just
7  from the words on the page that there are no promises here.
8  Saying "I remain enthusiastic about the nonprofit structure"
9  does not constitute a promise.  And having someone say that you
10 said you were great with keeping nonprofit and continuing to
11 support it does not constitute a promise either.
12         **THE COURT:**  I'm focusing on the second; that Zilis is
13 going to testify as to the promise.  I mean, these --
14 PowerPoints are not evidence.  Am I wrong about the evidence?
15         **MR. MOLO:**  No, you are not wrong about the evidence,
16 Your Honor.
17         **THE COURT:**  Okay.  So, let's focus on the evidence,
18 not on just the PowerPoint.  I'm assuming Zilis is going to
19 testify that Altman told her -- told him that.
20         **MR. SAVITT:**  Yes, Your Honor, I apologize.  I assume
21 as well that Ms. Zilis will be testifying and we look forward
22 to examining her.  I wasn't trying to make it evidentiary.  I
23 apologize.  I was simply saying that these statements -- even
24 accepting them and putting that matter to the side -- do not
25 constitute promises.  No one is saying what they are going to

1  do.  No one is making a representation about what they are
2  going to do in the future, and we think that these statements
3  do not reassure Musk that OpenAI would remain a nonprofit and
4  open source, which is the argument that he advances in his
5  papers.
6       They are statements that express enthusiasm for the
7  nonprofit structure in September 2017.  The evidence in the
8  record -- and the Court has, of course, seen it -- is clear;
9  that before this period, there have been weeks upon months of
10 conversation as amongst the parties involved about whether the
11 company should develop a for-profit arm.  Mr. Musk was heavily
12 involved in those discussions.
13      This was at a point in those discussions where they had
14 reached a head.  And Altman said, "I remain enthusiastic about
15 the nonprofit structure" and is purported to have said "great
16 with keeping the nonprofit, continuing to support it."
17      What Musk doesn't produce is a statement where anyone ever
18 assures Mr. Musk that OpenAI will not have or ever have a
19 nonprofit arm.  That statement was never made.  It couldn't
20 have been made.  Musk was a part of the very discussions that
21 anticipated such a nonprofit arm.
22           **THE COURT:**  Okay.  So, what evidence are you going to
23 submit?  Give me your opening statement in a minute with
24 respect to the evidence on this topic.
25           **MR. MOLO:**  Your Honor, in 2017 leading up to the

1   representations that are cited in the slide, Musk, on the one
2   hand, Altman and Brockman, on the other hand, had been having
3   these discussions about how to fund the charity.
4       And Altman and Brockman made false statements to Elon Musk
5   to get him to continue funding the operation.
6       **THE COURT:** What are the statements?
7       **MR. MOLO:** The statements were -- well, leading up to
8   the statements on the slide in Exhibit 41, which is not on a
9   slide, was an e-mail from Mr. Mr. Musk where he says, "I have
10  had it.  I'm not going to give you free capital, start-up
11  capital and fund you myself."
12      And immediately following that, Altman sends an e-mail
13  where he says, "I remain enthusiastic about the non-for-profit"
14  and then he has the conversation or the e-mail to Zilis -- who
15  is representing or working with Musk on this as an advisor to
16  him -- and says what he says there; that it is great with
17  keeping the non-for-profit status and continuing to support it.
18      And then Brockman -- shortly thereafter on
19  September 22nd -- has a meeting with Zilis.  And in there he
20  says that they would like to continue -- he and Sutskever --
21  another -- not a party to the case but another key player --
22  say they would like to continue with a non-for-profit
23  structure.
24      Then a couple of months later Brockman directly e-mails
25  Musk and says that we must try our best to remain a

```
 1  non-for-profit.  Now, it turns out that those representations
 2  at the time they made were false.  Now, it's not common in a
 3  fraud case that you would have this kind of evidence; but we
 4  have extraordinary evidence of the falsity in the diary of
 5  Mr. Brockman, which is at slide 14, if we can bring that up.
 6      While these statements were being made to Mr. Musk and
 7  while these assurances were given and while they continued to
 8  take his money, Brockman is writing to himself in his diary
 9  "what will take me to one billion?  It would be nice to make
10  the billions.  We should just flip for profit."
11          **THE COURT:**  Okay.  I'm going to stop you.
12          **MR. MOLO:**  So, he is making these -- and at the same
13  time --
14          **THE COURT:**  So, Mr. Molo, when I say I'm going to stop
15  you, I am trying to be nice as opposed to --
16          **MR. MOLO:**  Take yes as an answer.
17          **THE COURT:**  Yeah.  I think there is plenty of
18  evidence.  It is circumstantial but that's how these cases
19  work.  As I look at it, I have a huge number of exhibits on
20  this topic that outline the back-and-forth.  And certainly
21  there's an argument to be made that in these conversations
22  there were assurances made and promises made that this
23  structure was going to be maintained especially Exhibit 40
24  which is directly responsive to Exhibit 41 where, you know --
25  Counsel just articulated what Musk said and Altman's
```