JORDAN ETH (CA SBN 121617)
JEth@mofo.com
WILLIAM FRENTZEN (CA SBN 343918)
WFrentzen@mofo.com
DAVID J. WIENER (CA SBN 291659)
DWiener@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA  94105
Telephone: (415) 268-7000
Facsimile: (415) 268-7522

WILLIAM SAVITT (*pro hac vice*)
WDSavitt@wlrk.com
BRADLEY R. WILSON (*pro hac vice*)
BRWilson@wlrk.com
SARAH K. EDDY (*pro hac vice*)
SKEddy@wlrk.com
STEVEN WINTER (*pro hac vice*)
SWinter@wlrk.com
NATHANIEL CULLERTON (*pro hac vice*)
NDCullerton@wlrk.com
WACHTELL, LIPTON, ROSEN & KATZ
51 West 52nd Street
New York, NY  10019
Telephone: (212) 403-1000
Facsimile:  (212) 403-2000

*Attorneys for the OpenAI Defendants*

*(Additional counsel listed on next page)*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| ELON MUSK et al., | Case No. 4:24-cv-04722-YGR |
| Plaintiffs, | **[PROPOSED] JOINT JURY INSTRUCTIONS** |
| v. | Judge:  Hon. Yvonne Gonzalez Rogers |
| SAMUEL ALTMAN et al., | |
| Defendants. | |

1  MARC TOBEROFF (CA SBN 188547)
   MToberoff@toberoffandassociates.com
2  TOBEROFF & ASSOCIATES, P.C.
   23823 Malibu Road, Suite 50-363
3  Malibu, CA 90265
   Telephone: (310) 246-3333
4
   STEVEN F. MOLO (*pro hac vice*)
5  ROBERT K. KRY (*pro hac vice*)
   JENNIFER M. SCHUBERT (*pro hac vice*)
6  MOLOLAMKEN LLP
   430 Park Avenue
7  New York, NY 10022
   Telephone: (212) 607-8160
8
   *Attorneys for Plaintiffs Elon Musk*
9  *and X.AI Corp.*

   RUSSELL P. COHEN (CA SBN 213105)
   Russ.cohen@dechert.com
   HOWARD M. ULLMAN (CA SBN 206760)
   Howard.ullman@dechert.com
   DECHERT LLP
   45 Fremont Street, 26th Floor
   San Francisco, CA 94105
   Telephone: (415) 262-4500
   Facsimile: (415) 262-4555

   NISHA PATEL (CA SBN 281628)
   Nisha.patelgupta@dechert.com
   DECHERT LLP
   633 West 5th Street, Suite 4900
   Los Angeles, CA 90071
   Telephone: (213) 808-5700
   Facsimile: (213) 808-5760

   ANDREW J. LEVANDER (*pro hac vice*)
   Andrew.levander@dechert.com
   DECHERT LLP
   Three Bryant Park
   1095 Avenue of the Americas
   New York, NY 10036
   Telephone: (212) 698-3500
   Facsimile: (212) 698-3599

   JAY JURATA (*pro hac vice*)
   Jay.jurata@dechert.com
   DECHERT LLP
   1900 K Street, N.W.
   Washington, DC 20006
   Telephone: (202) 261-3300
   Facsimile: (202) 261-3333

   *Attorneys for Defendant Microsoft Corporation*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Plaintiff Elon Musk; Defendants Samuel Altman, Gregory Brockman, OpenAI, Inc., OpenAI L.P., OpenAI, L.L.C., OpenAI GP, L.L.C., OpenAI OpCo, LLC, OpenAI Global, LLC, OAI Corporation, LLC, OpenAI Holdings, LLC, OpenAI Startup Fund Management, LLC, OpenAI Startup Fund GP I, L.L.C., OpenAI Startup Fund I, L.P., OpenAI Startup Fund SPV GP I, L.L.C., OpenAI Startup Fund SPV GP II, L.L.C., OpenAI Startup Fund SPV GP III, L.L.C., OpenAI Startup Fund SPV GP IV, L.L.C., OpenAI Startup Fund SPV I, L.P., OpenAI Startup Fund SPV II, L.P., OpenAI Startup Fund SPV III, L.P., OpenAI Startup Fund SPV IV, L.P., Aestas Management Company, LLC, and Aestas LLC (collectively, the "OpenAI Defendants"); and Defendant Microsoft Corporation (together with the OpenAI Defendants, "Defendants," and collectively with Plaintiff and the OpenAI Defendants, the "Parties"), hereby submit these Joint Proposed Jury Instructions pursuant to Paragraph 3(g) of the Court's Standing Order Re: Pretrial Instructions in Civil Cases (last updated March 17, 2025).

| No. | Description | Whether Parties Stipulate or Object |
|---|---|---|
| **General Instructions** | | |
| 1. | Duty of the Jury | Stipulate |
| 2. | Claims and Defenses | Stipulate |
| 3. | Burden of Proof – Preponderance of the Evidence | Stipulate |
| 4. | Burden of Proof – Clear and Convincing Evidence | Stipulate |
| 5. | Two or More Parties – Different Legal Rights | Stipulate |
| 6. | What is Evidence | Stipulate |
| 7. | What is Not Evidence | Stipulate |
| 8. | Evidence for Limited Purpose | Stipulate |
| 9. | Direct and Circumstantial Evidence | Stipulate |
| 10. | Ruling on Objections | Stipulate |
| 11. | Credibility of Witnesses | Stipulate |
| 12. | Expert Opinion Testimony | Stipulate |
| 13. | Deposition in Lieu of Live Testimony | Stipulate |
| 14. | Liability of Corporations | Stipulate |
| 15. | Bifurcation | Stipulate |
| 16. | List of Claims | Stipulate |
| **First Claim:  Breach of Charitable Trust** | | |
| 17. | Breach of Charitable Trust – Elements | Partial Dispute |
| 18-P. | Existence of a Charitable Trust | Competing Instruction |
| 18-D. | Creation of a Charitable Trust | Competing Instruction |
| 19-D. | Continued Existence of a Charitable Trust | Competing Instruction |
| 20. | Breach of Charitable Trust | Partial Dispute |

ii

| Second Claim:  Unjust Enrichment | | |
|---|---|---|
| 21-P. | Unjust Enrichment – Elements | Competing Instruction |
| 21-D. | Unjust Enrichment – Elements | Competing Instruction |
| **Third Claim:  Fraud** | | |
| 22. | False Promises – Elements | Partial Dispute |
| 23. | Reliance | Stipulate |
| 24. | Reasonable Reliance | Stipulate |
| **Fourth Claim:  Constructive Fraud** | | |
| 25. | Constructive Fraud – Elements | Partial Dispute |
| **Fifth Claim:  Aiding and Abetting Breach of Charitable Trust** | | |
| 26-P. | Aiding and Abetting Breach of Charitable Trust – Elements | Competing Instruction |
| 26-D. | Aiding and Abetting Breach of Charitable Trust – Elements | Competing Instruction |
| 27-P. | Aiding and Abetting Breach of Charitable Trust – Knowledge | Competing Instruction |
| 27-D. | Aiding and Abetting Breach of Charitable Trust – Knowledge | Competing Instruction |
| 28-D. | Aiding and Abetting Breach of Charitable Trust – Substantial Factor | Competing Instruction |
| 29-D. | Aiding and Abetting Breach of Charitable Trust – Reliance | Competing Instruction |
| **Affirmative Defenses** | | |
| 30-P, | Statute of Limitations | Competing Instruction |
| 31-D. | Statute of Limitations – Breach of Charitable Trust | Competing Instruction |
| 32-D. | Statute of Limitations – Unjust Enrichment | Competing Instruction |
| 33-D. | Statute of Limitations – Fraud | Competing Instruction |

| 34-D. | Statute of Limitations – Constructive Fraud | Competing Instruction |
|---|---|---|
| 35-D. | Statute of Limitations – Aiding and Abetting Breach of Charitable Trust | Competing Instruction |
| 36-D. | Laches | Competing Instruction |
| 37. | Unclean Hands | Partial Dispute |
| **Closing Instructions** | | |
| 38. | Duty to Deliberate | Stipulate |
| 39. | Consideration of Evidence – Conduct of the Jury | Stipulate |
| 40. | Communication with Court | Stipulate |
| 41. | Return of Verdict | Partial Dispute |
| **Stage 2 – Remedy Instructions** | | |
| 42-P. | Disgorgement of Wrongful Gains | Competing Instruction |
| 43-P. | Disgorgement – Requirements | Competing Instruction |
| 44-P. | Disgorgement – Amount | Competing Instruction |
| 45-P. | Disgorgement – Increases in Value | Competing Instruction |
| 46-D | Disgorgement | Competing Instruction |
| 47. | Punitive Damages | Stipulate |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## GENERAL INSTRUCTIONS

**1.    DUTY OF THE JURY**

Members of the Jury: Now that you have heard all of the evidence, it is my duty to instruct you on the law that applies to this case.

A copy of these instructions will be sent to the jury room for you to consult during your deliberations.

It is your duty to find the facts from all the evidence in the case.  To those facts you will apply the law as I give it to you.  You must follow the law as I give it to you whether you agree with it or not.  And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy.  That means that you must decide the case solely on the evidence before you.  You will recall that you took an oath to do so.

Please do not read into these instructions or anything that I may say or do or have said or done that I have an opinion regarding the evidence or what your verdict should be.


**AUTHORITY**

Jury charge in *Genentech v. Biogen MA, Inc.*, No. 4:23-cv-00909, Dkt. 202 (N.D. Cal. July 2, 2025) (Gonzalez Rogers, J.); Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit No. 1.4 (Dec. 2025).


Date submitted: February 26, 2026.

## 2.    CLAIMS AND DEFENSES

To help you follow the evidence, I will give you a brief summary of the positions of the parties:

Plaintiff Elon Musk claims that he provided his money, reputation, guidance, and other resources to enable OpenAI to develop artificial intelligence technology on a non-profit basis for the public good. Plaintiff contends that Sam Altman, Greg Brockman, and OpenAI, Inc. broke their promises to use his contributions and resources to maintain OpenAI as a nonprofit and instead operated OpenAI as a for-profit venture. Plaintiff contends that these actions constituted breach of charitable trust, unjust enrichment, fraud, and constructive fraud. Plaintiff alleges all four of those claims against Altman, Brockman, and OpenAI, Inc., and also alleges unjust enrichment against other OpenAI entities. I will sometimes refer to all those Defendants together as the "OpenAI Defendants." In addition to his claims against the OpenAI Defendants, Plaintiff contends that Microsoft aided and abetted OpenAI's wrongful conduct by knowingly providing substantial assistance to Altman, Brockman, or OpenAI, Inc.'s breach of charitable trust. Plaintiff has the burden of proving his claims by a preponderance of the evidence unless I instruct you that a different standard of proof applies to a particular element of his claims.

The Defendants deny those claims. The OpenAI Defendants contend that they made no false promises to Musk, that Musk's contributions to OpenAI, Inc. did not carry the restrictions Musk claims, and that OpenAI, Inc. has always been, and remains to this day, a nonprofit organization. Microsoft contends that it did not know that Musk made donations for specific charitable purposes or that OpenAI, Inc., Altman, or Brockman committed a breach of charitable trust. Microsoft also contends that it did not intend to assist any breach of charitable trust, that it did not give substantial assistance to OpenAI, Inc., Altman, or Brockman in breaching a charitable trust, and that its actions were not a substantial factor in causing harm to Musk.

The Defendants also assert affirmative defenses: that each of Plaintiff's claims is barred by the relevant statute of limitations, that Plaintiff unreasonably delayed in bringing this lawsuit, and that Musk's own misconduct bars his claims. The Defendants generally have the burden of proof on these affirmative defenses, but Musk has the burden of proof on a portion of the statute of

1    limitations defense as I will instruct.

2         Plaintiff denies the Defendants' affirmative defenses.

3

4    **AUTHORITY**

5         Jury charge in *Genentech v. Biogen MA, Inc.*, No. 4:23-cv-00909, Dkt. 202 (N.D. Cal. July

6    2, 2025) (Gonzalez Rogers, J.) (adapted); Manual of Model Civil Jury Instructions for the District

7    Courts of the Ninth Circuit No. 1.5 (Dec. 2025).

8

9    Date submitted: February 26, 2026.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## 3.    BURDEN OF PROOF – PREPONDERANCE OF THE EVIDENCE

When a party has the burden of proving any claim or affirmative defense by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim or affirmative defense is more probably true than not true.

You should base your decision on all of the evidence, regardless of which party presented it.

**AUTHORITY**

Jury charge in *Genentech v. Biogen MA, Inc.*, No. 4:23-cv-00909, Dkt. 202 (N.D. Cal. July 2, 2025) (Gonzalez Rogers, J.); Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit No. 1.6 (Dec. 2025).

Date submitted: February 26, 2026.

1  **4.    BURDEN OF PROOF – CLEAR AND CONVINCING EVIDENCE**

2      When a party has the burden of proving any claim or defense by clear and convincing

3  evidence, it means that the party must present evidence that leaves you with a firm belief or

4  conviction that it is highly probable that the factual contentions of the claim or defense are true.

5  This is a higher standard of proof than proof by a preponderance of the evidence, but it does not

6  require proof beyond a reasonable doubt.

7

8  **AUTHORITY**

9      Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit No. 1.7

10  (Dec. 2025); Jury Charge in *Hart v. Gomez*, No. 4:21-cv-02653, Dkt. 186 at 2 (N.D. Cal. Nov. 6,

11  2025) (Gonzalez Rogers, J.).

12

13  Date submitted: February 26, 2026.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    **5.      TWO OR MORE PARTIES – DIFFERENT LEGAL RIGHTS**

2        You should decide the case as to each defendant separately.  Unless otherwise stated, the

3    instructions apply to all parties.

4

5    **AUTHORITY**

6        Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit No. 1.8

7    (Dec. 2025); Jury Charge in *Trulove v. D'Amico*, No. 4:16-cv-00050, Dkt. 508 at 6 (N.D. Cal. Apr.

8    4, 2018) (Gonzalez Rogers, J.).

9

10    Date submitted: February 26, 2026.

**6.    WHAT IS EVIDENCE**

The evidence you are to consider in deciding what the facts are consists of:

     1.  the sworn testimony of any witness;

     2.  the exhibits that are admitted into evidence;

     3.  any facts to which the lawyers have agreed; and

     4.  any facts that I have instructed you to accept as proved.


**AUTHORITY**

Jury charge in *Genentech v. Biogen MA, Inc.*, No. 4:23-cv-00909, Dkt. 202 (N.D. Cal. July 2, 2025) (Gonzalez Rogers, J.); Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit No. 1.9 (Dec. 2025).


Date submitted: February 26, 2026.

1

**7.      WHAT IS NOT EVIDENCE**

2      In reaching your verdict, you may consider only the testimony and exhibits received into

3  evidence.  Certain things are not evidence, and you may not consider them in deciding what the

4  facts are.  I will list them for you:

5      1. Arguments and statements by lawyers are not evidence.  The lawyers are not

6  witnesses.  What they say in their opening statements, closing arguments and at other times

7  is intended to help you interpret the evidence, but it is not evidence.  If the facts as you

8  remember them differ from the way the lawyers have stated them, your memory of them

9  controls.

10      2. Questions and objections by lawyers are not evidence.  Attorneys have a duty to their

11  clients to object when they believe a question is improper under the rules of evidence.  You

12  should not be influenced by the objection or by the court's ruling on it.

13      3. Testimony that is excluded or stricken, or that you have been instructed to disregard,

14  is not evidence and must not be considered.

15      4. Anything you may have seen or heard when the court was not in session is not

16  evidence.  You are to decide the case solely on the evidence received at the trial.

17

18  **AUTHORITY**

19      Jury charge in *Genentech v. Biogen MA, Inc.*, No. 4:23-cv-00909, Dkt. 202 (N.D. Cal. July

20  2, 2025) (Gonzalez Rogers, J.); Manual of Model Civil Jury Instructions for the District Courts of

21  the Ninth Circuit No. 1.10 (Dec. 2025).

22

23  Date submitted: February 26, 2026.

24

25

26

27

28

1

**8.    EVIDENCE FOR LIMITED PURPOSE**

2

Some evidence was admitted only for a limited purpose.

3

If I instructed you that an item of evidence was admitted only for a limited purpose, you

4

must consider it only for that limited purpose and not for any other purpose.

5

6

**AUTHORITY**

7

Jury charge in *Genentech v. Biogen MA, Inc.*, No. 4:23-cv-00909, Dkt. 202 (N.D. Cal. July

8

2, 2025) (Gonzalez Rogers, J.); Manual of Model Civil Jury Instructions for the District Courts of

9

the Ninth Circuit No. 1.11 (Dec. 2025).

10

11

Date submitted: February 26, 2026.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## 9.    DIRECT AND CIRCUMSTANTIAL EVIDENCE

Evidence may be direct or circumstantial. Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did.  Circumstantial evidence is proof of one or more facts from which you could find another fact.  By way of example, if you wake up in the morning and see that the sidewalk is wet, you may find from that fact that it rained during the night.  However, other evidence, such as a turned-on garden hose, may provide a different explanation for the presence of water on the sidewalk.  Therefore, before you decide that a fact has been proved by circumstantial evidence, you must consider all the evidence in the light of reason, experience, and common sense.

You should consider both kinds of evidence.  The law makes no distinction between the weight to be given to either direct or circumstantial evidence.  It is for you to decide how much weight to give to any evidence.

**AUTHORITY**

Jury charge in *Genentech v. Biogen MA, Inc.*, No. 4:23-cv-00909, Dkt. 202 (N.D. Cal. July 2, 2025) (Gonzalez Rogers, J.); Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit No. 1.12 (Dec. 2025).

Date submitted: February 26, 2026.

1   **10.   RULING ON OBJECTIONS**

2       There are rules of evidence that control what can be received into evidence.  When a lawyer

3   asked a question or offered an exhibit into evidence and a lawyer on the other side thought that it

4   was not permitted by the rules of evidence, that lawyer may have objected.

5       If I overruled the objection, the question could be answered, or the exhibit was received.  If

6   I sustained the objection, the question could not be answered, or the exhibit was not received.  If I

7   sustained an objection to a question, you must ignore the question and must not guess what the

8   answer might have been.

9       I may have ordered that evidence be stricken from the record and that you disregard or ignore

10  that evidence.  That means when you are deciding the case, you must not consider the stricken

11  evidence for any purpose.

12

13  **AUTHORITY**

14      Jury charge in *Genentech v. Biogen MA, Inc.*, No. 4:23-cv-00909, Dkt. 202 (N.D. Cal. July

15  2, 2025) (Gonzalez Rogers, J.); Manual of Model Civil Jury Instructions for the District Courts of

16  the Ninth Circuit No. 1.13 (Dec. 2025).

17

18  Date submitted: February 26, 2026.

19

20

21

22

23

24

25

26

27

28

## 11.    CREDIBILITY OF WITNESSES

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe.  You may believe everything a witness says, or part of it, or none of it.

In considering the testimony of any witness, you may take into account:

    1.  the opportunity and ability of the witness to see or hear or know the things testified to;

    2.  the witness's memory;

    3.  the witness's manner while testifying;

    4.  the witness's interest in the outcome of the case, if any;

    5.  the witness's bias or prejudice, if any;

    6.  whether other evidence contradicted the witness's testimony;

    7.  the reasonableness of the witness's testimony in light of all the evidence; and

    8.  any other factors that bear on believability.

Sometimes a witness may say something that is not consistent with something else he or she said.  Sometimes different witnesses will give different versions of what happened.  People often forget things or make mistakes in what they remember.  Also, two people may see the same event but remember it differently.  You may consider these differences, but do not decide that testimony is untrue just because it differs from other testimony.

However, if you decide that a witness has deliberately testified untruthfully about something important, you may choose not to believe anything that witness said.  On the other hand, if you think the witness testified untruthfully about some things but told the truth about others, you may accept the part you think is true and ignore the rest.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify.  What is important is how believable the witnesses were, and how much weight you think their testimony deserves.

**AUTHORITY**

Jury charge in *Genentech v. Biogen MA, Inc.*, No. 4:23-cv-00909, Dkt. 202 (N.D. Cal. July 2, 2025) (Gonzalez Rogers, J.); Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit No. 1.14 (Dec. 2025).

Date submitted: February 26, 2026.

## 12.    EXPERT OPINION TESTIMONY

You have heard testimony from experts who testified about their opinions and the reasons for those opinions.  This opinion testimony is allowed, because of the specialized knowledge, skill, experience, training, or education of these witnesses.

Such opinion testimony should be judged like any other testimony.  You may accept it or reject it and give it as much weight as you think it deserves, considering the witness's specialized knowledge, skill, experience, training, or education, the reasons given for the opinion, and all the other evidence in the case.

**AUTHORITY**

Jury charge in *Genentech v. Biogen MA, Inc.*, No. 4:23-cv-00909, Dkt. 202 (N.D. Cal. July 2, 2025) (Gonzalez Rogers, J.); Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit No. 2.14 (Dec. 2025).

Date submitted: February 26, 2026.

**13.    DEPOSITION IN LIEU OF LIVE TESTIMONY**

You heard deposition testimony from one or more witnesses.  A deposition is the sworn testimony of a witness taken before trial.  The witness is placed under oath to tell the truth and lawyers for each party may ask questions.  The questions and answers are recorded.  When a person is unavailable to testify at trial, the deposition of that person may be used at trial.  You should not give more or less weight to testimony merely because it is presented by deposition rather than live in court.

**AUTHORITY**

Jury charge in *Washington v. CVS Pharmacy, Inc.*, No. 4:15-cv-03504, Dkt. 610 (N.D. Cal. June 24, 2021) (Gonzalez Rogers, J.) (modified); Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit No. 2.5 (Dec. 2025) (modified).

Date submitted: February 26, 2026.

## 14.    LIABILITY OF CORPORATIONS

Under the law, a corporation is considered to be a person.  It can only act through its employees, agents, directors, or officers.  Therefore, a corporation is responsible for the acts of its employees, agents, directors, and officers performed within the scope of their authority.

**AUTHORITY**

Jury charge in *Washington v. CVS Pharmacy, Inc.*, No. 4:15-cv-03504, Dkt. 610 (N.D. Cal. June 24, 2021) (Gonzalez Rogers, J ); Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit No. 4.2 (Dec. 2025).

Date submitted: February 26, 2026.

1    **15.    BIFURCATION**

2        I have bifurcated this trial into two stages: liability and remedies.  At the liability stage, you

3    will decide whether each of Plaintiff's claims is barred by the relevant statute of limitations, and if

4    not, whether Plaintiff has proved that Defendants are liable for the claim.

5        If you find that Plaintiff has proved liability on any claim, the trial will proceed to a second

6    stage at which the parties will present additional evidence about the remedies Plaintiff seeks.  You

7    will then decide what remedies, if any, are appropriate for each claim.

8

9    Date submitted: February 26, 2026.

1  **16.    LIST OF CLAIMS**

2    The Court will now explain the substantive law applicable to the claims brought in this

3  Action.  Plaintiff asserts the following claims:

4    First Claim:  Breach of Charitable Trust against Altman, Brockman, and OpenAI, Inc.

5    Second Claim:  Unjust Enrichment against Altman, Brockman, OpenAI, Inc., and other

6    OpenAI entities.

7    Third Claim:  Fraud against Altman, Brockman, and OpenAI, Inc.

8    Fourth Claim:  Constructive Fraud against Altman, Brockman, and OpenAI, Inc.

9    Fifth Claim:  Aiding and Abetting Breach of Charitable Trust Against Microsoft.

10

11  **AUTHORITY**

12    Judge Gonzalez Rogers' Standing Order Re: Pretrial Instructions in Civil Cases § 3(g)(ii)(B)

13  (Mar. 17, 2025) ("After preliminary instructions, a transition instruction shall be included to the

14  effect:  'The Court will now explain the substantive law applicable to the Claims/Counts brought in

15  this action.'  The Instruction shall then LIST each of the claims."); Jury charge in *Genentech v.*

16  *Biogen MA, Inc.*, No. 4:23-cv-00909, Dkt. 202 (N.D. Cal. July 2, 2025) (Gonzalez Rogers, J.).

17    The parties propose that the Fifth Claim be redesignated "Aiding and Abetting Breach of

18  Charitable Trust" because that label more clearly describes the substance of the claim and its

19  relationship to the First Claim.

20

21  Date submitted: February 26, 2026.

22

23

24

25

26

27

28

1

**FIRST CLAIM:  BREACH OF CHARITABLE TRUST**
**(Against Altman, Brockman, and OpenAI, Inc.)**

2

3    **17.    BREACH OF CHARITABLE TRUST – ELEMENTS[1]**

4        Plaintiff claims that he was harmed because Altman, Brockman, and OpenAI, Inc. are liable

5    for breach of a charitable trust with respect to certain donations to OpenAI, Inc.  To establish that

6    claim against one of these Defendants for a particular alleged donation, Plaintiff must prove both of

7    the following:

8            1.  that [Musk / Musk's contributions to Altman, Brockman, or OpenAI, Inc.] created a

9        charitable trust with respect to that donation; and

10           2.  that the Defendant breached the terms of the charitable trust.

11

12   * The OpenAI Defendants' proposal in blue text; Musk's proposal in red text.

13

14   **PLAINTIFF'S AUTHORITY AND POSITION**

15       Restatement (Third) of Trusts § 93 (2012) ("A breach of trust is a failure by the trustee to

16   comply with any duty that the trustee owes, as trustee, . . . to further the charitable purpose, of the

17   trust."); 1/7/2026 Hr'g Tr. 8:17-25 (Dkt. 385) ("There are two elements in order to prove breach of

18   charitable trust.").

19       Plaintiff objects to the prefatory phrase "he was harmed because" as unnecessary, confusing,

20   and a misstatement of the law.  A plaintiff claiming breach of charitable trust is not required to show

21   some out-of-pocket loss or personal harm above and beyond the defendants' wrongful use of the

22   entrusted contributions to enrich themselves at the plaintiff's expense.  *See, e.g.*, *County of San*

23   *Bernardino v. Walsh*, 158 Cal. App. 4th 533, 542-43 (2007) ("Where 'a benefit has been received

24   _____

25   [1] The OpenAI Defendants maintain that the breach of charitable trust claim should not be submitted
     to the jury because Musk lacks standing to assert the claim, and expressly preserve their arguments
26   on the issue. The OpenAI Defendants also maintain that there is no right to a jury determination of
     this claim because it is equitable rather than legal.  In light of the Court's denial of their summary
27   judgment motion, and because the Court can submit the claim to the jury on an advisory basis, the
     OpenAI Defendants join in the proposed breach of charitable trust instructions herein. *See* Joint
28   Pretrial Conference Statement (Disputed Legal Issues Pt. 3).

19

1   by the defendant but the plaintiff has not suffered a corresponding loss or, in some cases, any loss

2   . . . [t]he defendant may be under a duty to give to the plaintiff the amount by which [the defendant]

3   has been enriched.' ").

4          Plaintiff objects to the requirement that the jury determine liability on the basis of "certain

5   donations," "a particular alleged donation," or "that donation."  To establish liability, Plaintiff need

6   only prove that Defendants used some or all of Musk's donations for unauthorized purposes.  The

7   donation-by-donation analysis is only relevant, if at all, at the remedy stage in determining the

8   amount of wrongful gains.

9

10  **OPENAI DEFENDANTS' AUTHORITY AND POSITION**

11         There is no CACI instruction for breach of charitable trust.  These elements are adapted from

12  Judicial Council of California Civil Jury Instructions No. 4102 (2025 ed.) (Duty of Undivided

13  Loyalty – Essential Factual Elements), and the requirements of a charitable trust, *see generally*

14  Dkt. 390 at 9 (SJ Order) ("A charitable trust requires 'a proper manifestation by the settlor of an

15  intention to create a trust, a trust res, and a charitable purpose' ") (quoting *City of Palm Springs v.*

16  *Living Desert Reserve*, 70 Cal. App. 4th 613, 620 (1999) (cleaned up)).

17         Musk objects to the phrase "Musk claims that he was harmed" in the first sentence. But that

18  is the standard prefatory phrase in CACI instructions on the elements of claims. *E.g.*, CACI 4102.

19  The language is also warranted because Musk is seeking personal recovery for this claim in the form

20  of disgorgement and exemplary damages.

21         The first element – creation of a charitable trust – substitutes for CACI 4102's fiduciary

22  relationship element because a charitable trust is a fiduciary relationship.  *L.B. Rsch. & Educ. Found.*

23  *v. UCLA Found.*, 130 Cal. App. 4th 171, 177 (2005) (defining a charitable trust as "a fiduciary

24  relationship with respect to property arising as a result of a manifestation of an intention to create

25  it, and subjecting the person by whom the property is held to equitable duties to deal with the

26  property for a charitable purpose").

27         Musk objects to the language describing the claim as being "with respect to certain

28  donations" and directing the jury to apply the elements to each "particular alleged donation,"

including by determining whether Musk created a charitable trust "with respect to that donation." But a charitable trust is a fiduciary relationship "with respect to property" arising as a result of a manifestation of an intention to create it. *L.B. Rsch. & Educ. Found.*, 130 Cal. App. 4th at 177. Musk's claim is based on donations given at different times and in different circumstances. Thus, whether Musk created "a fiduciary relationship with respect to property" would not necessarily be the same for different donations. *Id.* Furthermore, the OpenAI Defendants are not seeking a special verdict on each donation, so there will be no undue burden on the jury.

Date submitted: February 26, 2026.

1    **18-P.   EXISTENCE OF A CHARITABLE TRUST (Plaintiff's Version)**

2         Plaintiff may prove the first element – the existence of a charitable trust – in two ways.

3         First, Plaintiff may show that he made contributions to OpenAI for a charitable purpose and

4    that he manifested an intention that OpenAI use the contributions for that charitable purpose.

5    Charitable purposes may be broad and may include such purposes as the development of artificial

6    intelligence on a nonprofit or open-source basis.

7         Second, Plaintiff may show that Altman, Brockman, or OpenAI, Inc. solicited charitable

8    donations from him and then accepted his charitable donations.  The solicitation and acceptance of

9    charitable donations gives rise to an obligation to use the donations for the charitable purpose for

10   which they were sought.

11

12   **PLAINTIFF'S AUTHORITY**

13        Order Denying in part Defendants' Motions for Summary Judgment at 9 (Jan. 15, 2026)

14   (Dkt. 390) ("A charitable trust requires 'a proper manifestation by the settlor of an intention to create

15   a trust, a trust res, and a charitable purpose.'" (quoting *City of Palm Springs v. Living Desert Rsrv.*,

16   70 Cal. App. 4th 613, 620 (1999))); *id.* at 17 ("[T]he Third Restatement permits broad charitable

17   purposes.  For example, a donation to a hospital or university 'to support medical research' was

18   sufficient to create a charitable trust under the Restatement even though 'medical research' is

19   intertwined in the fabric of a research hospital or university.  The same is true for Musk's alleged

20   condition that OpenAI, a nonprofit and open-source organization, remain that way."); Restatement

21   (Third) of Trusts § 28 (2003) ("Charitable trust purposes include . . . the advancement of knowledge

22   or education . . . [and] other purposes that are beneficial to the community."); *id.* cmt. h ("A trust to

23   promote knowledge or education generally, without specifying the method to be employed, is valid

24   as a charitable trust."); Cal. Bus. & Prof. Code § 17510.8 ("[T]here exists a fiduciary relationship

25   between a charity or any person soliciting on behalf of a charity, and the person from whom a

26   charitable contribution is being solicited.  The acceptance of charitable contributions by a charity or

27   any person soliciting on behalf of a charity establishes a charitable trust and a duty on the part of

28

the charity and the person soliciting on behalf of the charity to use those charitable contributions for the declared charitable purposes for which they are sought.").

**OPENAI DEFENDANTS' OBJECTIONS**

The OpenAI Defendants object to this instruction in full and offer two competing instructions, No. 18-D and No. 19-D. The Parties' positions with respect these instructions are set forth in brief statements following No. 18-D and No. 19-D.

Date submitted: February 26, 2026.

**18-D.  CREATION OF A CHARITABLE TRUST (OpenAI Defendants' Version)**

To establish the creation of a charitable trust with respect to an alleged donation, Plaintiff must prove, with respect to that donation, all of the following:

    1.  that the donation consisted of money or property, not a person's knowledge, skill, or labor;

    2.  that Musk owned a definite interest in the money or property at the time it was donated to OpenAI, Inc.;

    3.  that Musk made the donation to OpenAI, Inc. for a specific charitable purpose, and not for OpenAI, Inc.'s general purposes; and

    4.  that a charitable trust was created in one of two ways:

        i.   that Musk properly manifested to OpenAI, Inc. an intention to require it to use the donation for the specific charitable purpose; or

        ii.  that Musk made the donation as a result of a solicitation by Altman, Brockman, or OpenAI, Inc. on behalf of OpenAI, Inc.  This method of creating a charitable trust applies only if the solicitation occurred when Musk was not a member of OpenAI, Inc. and the solicitation occurred at a place other than the premises of OpenAI, Inc.

If you find that Musk created a written trust, Plaintiff must prove all of the above requirements by a preponderance of the evidence.  If you instead find that Musk created an oral trust, Plaintiff must prove all of the above requirements by clear and convincing evidence.

**OPENAI DEFENDANTS' AUTHORITY**

For the requirements of a charitable trust, see generally Dkt. 390 at 9 (SJ Order) ("A charitable trust requires 'a proper manifestation by the settlor of an intention to create a trust, a trust res, and a charitable purpose.'") (quoting *City of Palm Springs v. Living Desert Reserve*, 70 Cal. App. 4th 613, 620 (1999) (cleaned up)).

For the first requirement, see Restatement (Third) of Trusts § 2 cmt. i (2003) ("A trust cannot be created unless there is trust property in existence and ascertainable at the time of the creation of the trust."); Cal. Prob. Code § 15202 ("A trust is created only if there is trust property.");

1   Restatement (Second) of Trusts § 74 cmt. b (1935) ("The knowledge or skill which a man possesses

2   is not property."); 60 Cal. Jur. 3d Trusts § 24 (contributions of "knowledge[,] skill, and [ ] labor . . .

3   do not constitute property that may be held in trust").

4       For the second requirement, see Restatement (Third) of Trusts § 3(1) (2003) ("The person

5   who creates a trust is the settlor."); Bogert, The Law of Trusts and Trustees § 113 ("[T]he property

6   interest must be owned by the person conveying it to the trust. A trust may fail, therefore, either if

7   the property interest does not exist or if the property interest is not owned by the settlor at the time

8   the trust is created."), *id.* § 323 ("The settlor of a charitable trust must have the power to contract or

9   convey. . . .  The necessity for a definite interest in described property as a trust res exists as it does

10  with private trusts.").

11      For the third requirement, see Dkt. 390 at 16 (SJ Order) ("The Restatement does include

12  some limitations on trust purpose: an 'outright devise' to a charitable institution, or a gift to be used

13  for 'general purposes,' does not create a trust, while a 'disposition to such an institution for a specific

14  purpose, such as to support medical research' does create a charitable trust.") (quoting § 28 cmt. a);

15  Restatement (Third) of Trusts § 28 cmt. a (2003) ("An outright devisee or donation to a

16  nonproprietary hospital or university or other charitable institution, expressly or impliedly to be used

17  for its general purposes, is charitable but does not create a trust as that term is used in this

18  Restatement.  A disposition to such an institution for a specific purpose, however, such as to support

19  medical research, perhaps on a particular disease, or to establish a scholarship fund in a certain field

20  of study, creates a charitable trust of which the institution is the trustee for purposes of the

21  terminology and rules of this Restatement.").

22      For the fourth requirement, see Restatement (Third) of Trusts § 13 (2003) ("A trust is created

23  only if the settlor properly manifests an intention to create a trust relationship."); Cal. Prob. Code

24  § 15201 ("A trust is created only if the settlor properly manifests an intention to create a trust.");

25  *City of Palm Springs*, 70 Cal. App. 4th at 620 (the question is whether "the donor intended to impose

26  an enforceable obligation on the donees to devote it to those purposes"); Cal. Bus. & Prof. Code

27  § 17510.8 ("The acceptance of charitable contributions by a charity or any person soliciting on

28  behalf of a charity establishes a charitable trust and a duty on the part of the charity and the person

soliciting on behalf of the charity to use those charitable contributions for the declared charitable purposes for which they are sought."); *id.* § 17510.6 ("The provisions of this article shall not apply to solicitations . . . within the membership of a charitable organization or upon its regular occupied premises").

For the burden of proof, see Cal. Prob. Code § 15207(a) (the existence and terms of an oral trust, rather than a written trust, "may be established only by clear and convincing evidence"); *In re Doolittle*, 2007 WL 7535062, at *3 (B.A.P. 9th Cir. July 24, 2007) (applying § 15207(a) to money).

**PLAINTIFF'S OBJECTIONS**

Plaintiff objects to this instruction in full and offers a competing instruction, No. 18-P. The Parties' positions with respect these instructions are set forth in brief statements following No. 19-D.

Date submitted: February 26, 2026.

1    **PLAINTIFF'S POSITION**

2    Plaintiff objects to Proposed Instruction No. 18-D's language that he must establish these

3    requirements "with respect to [each] alleged donation." To establish liability, Plaintiff need only

4    prove that he established a charitable trust with respect to at least some of his donations. The

5    donation-by-donation analysis is only relevant, if at all, at the remedy stage in determining the

6    amount of wrongful gains.

7    Plaintiff objects to the language requiring him to show that he "owned a definite interest in

8    the money or property at the time it was donated to OpenAI, Inc." as vague, confusing, and a

9    misstatement of the law in light of the Court's summary judgment ruling. This language implies

10   that Musk's donations to OpenAI do not qualify if he made them through his donor advised funds

11   or through OpenAI's fiscal sponsor, YC Org. This Court rejected that argument in its summary

12   judgment order. Order Denying in part Defendants' Motions for Summary Judgment at 14-16 (Jan.

13   15, 2026) (Dkt. 390). To establish settlor standing, Musk need only show that he was the source of

14   the funds contributed to the trust, even if they were contributed through an intermediary. *See Ruocco*

15   *v. Bateman, Eichler, Hill, Richards, Inc.*, 903 F.2d 1232, 1239 (9th Cir. 1990) ("settlor" of a trust is

16   the "one who furnishes the consideration for [the] trust"); *Security-First Nat'l Bank of Los Angeles*

17   *v. Wright*, 47 Cal. App. 2d 787, 793 (1941) (decedent wife was settlor because she supplied the trust

18   funds, even though her husband transferred them to the trustee); *In re Brooks*, 844 F.2d 258, 263

19   (5th Cir. 1988) ("The person who provides the consideration for a trust is the settlor even if another

20   person or entity nominally creates the trust."); *Lehman v. Commissioner*, 109 F.2d 99, 100 (2d Cir.

21   1940) (similar); Bogert et al., *Law of Trusts and Trustees* § 41 (3d ed. rev. 2025) ("The settlor of an

22   express private trust is the person who, directly or indirectly, causes the trust relationship to come

23   into existence." (footnotes omitted)).

24   Plaintiff objects to the requirement that he show that "Musk made the donation to OpenAI,

25   Inc. for a specific charitable purpose, and not for OpenAI, Inc.'s 'general purposes.'" This phrasing

26   incorrectly implies that Musk's specific charitable purpose must be different from and narrower than

27   OpenAI, Inc.'s charitable purposes. That is not the law. "The argument that a settlor must attach

28   specific, additional conditions to a trust where a charitable donation already aligns with the mission

1    of an organization is not supported by [the] caselaw."  Order Denying in part Defendants' Motions

2    for Summary Judgment at 17 (Jan. 15, 2026) (Dkt. 390); *see also* Restatement (Third) of Trusts § 28

3    cmt. g (2003) ("A trust for the relief of poverty generally, with no specification of the means to be

4    employed, is valid as a charitable trust."); *id.* cmt. h ("A trust to promote knowledge or education

5    generally, without specifying the method to be employed, is valid as a charitable trust.").

6        Plaintiff objects to the sentence "This method of creating a charitable trust applies only if

7    the solicitation occurred when Musk was not a member of OpenAI, Inc. and the solicitation occurred

8    at a place other than the premises of OpenAI, Inc."  Those limitations from Cal. Bus. & Prof. Code

9    § 17510.6 are inapplicable because Section 17510.8 applies "[n]otwithstanding any other provision

10   of this article."  Cal. Bus. & Prof. Code § 17510.8; *see Arias v. Superior Court*, 46 Cal. 4th 969, 983

11   (2009) ("notwithstanding" clause signals "legislative intent to override all contrary law").

12       Plaintiff objects to the last paragraph because there is no evidence that Musk created an "oral

13   trust."  The trust and its charitable purposes are reflected in written documents, namely, the parties'

14   founding-era email correspondence and OpenAI's founding documents memorializing those

15   purposes.  Any oral communications merely confirmed those written terms.

16

17

18

19

20

21

22

23

24

25

26

27

28

1    **OPENAI DEFENDANTS' POSITION**

2        The OpenAI Defendants object to Musk's Proposed Instruction No. 18-P because it omits

3    several essential requirements for the creation of a charitable trust. The OpenAI Defendants have

4    proposed an instruction (No. 18-D) that includes those requirements under applicable law.

5        1. Musk does not object to the requirement that "the donation consisted of money or

6    property, not a person's knowledge, skill or labor." This is blackletter law and should be included

7    in the instruction. *See* Restatement (Second) of Trusts § 74 cmt. b (1935) ("The knowledge or skill

8    which a man possesses is not property."); 60 Cal. Jur. 3d Trusts § 24 (contributions of "knowledge[,]

9    skill, and [] labor … do not constitute property that may be held in trust").

10        2. Musk objects to the requirement that he "owned a definite interest in the money or

11    property at the time it was donated to OpenAI, Inc," and asserts that the Court rejected this

12    requirement at summary judgment. That is not correct, and the Court did not grant summary

13    judgment to Musk. He must still prove at trial that he was "[t]he person who create[d] [the] trust."

14    Dkt. 390 at 10 n.6 (SJ Order). The evidence will show that Musk could not have created a trust with

15    respect to his indirect cash contributions—as distinct from his direct donation of four vehicles—

16    because he did not "own[]" a "property interest" in those funds "at the time the trust [was]" allegedly

17    "created." Bogert, *The Law of Trusts and Trustees* §§ 113 ("A trust may fail … if the property

18    interest is not owned by the settlor at the time the trust is created."), 323 (similar). Musk's authority

19    does not support that one can be a settlor without a property interest in the funds given in trust, and

20    instead confirms that essential requirement of trust law. *See* Dkt. 379.118 at 7.

21        3. Musk objects to the requirement that he "made the donation to OpenAI, Inc. for a specific

22    charitable purpose, and not for OpenAI, Inc.'s general purposes." Musk suggests that this Court has

23    already determined that this requirement "is not supported by the caselaw." But the proposed

24    language is supported by the Court's summary judgment ruling, which recognized a gift to a

25    charitable institution "to be used for general purposes does not create a trust," while a gift "for a

26    specific purpose" does. Dkt. 390 at 16 (SJ Order) (discussing Restatement's "limitations on trust

27    purpose"). As the Court held, there is a factual dispute regarding whether the donations in this case

28    were "to be used for OpenAI's general purposes" or instead "had a specific charitable purpose." *Id.*

29

1    4. Musk objects to the language reflecting that the method of creating a charitable trust under

2    Cal. Bus. & Prof. Code § 17510.8 "applies only if the solicitation occurred when Musk was not a

3    member of OpenAI, Inc. and the solicitation occurred at a place other than the premises of OpenAI,

4    Inc.," as set forth in § 17510.6. It is undisputed that Musk was a member of OpenAI, Inc. from its

5    founding until February 21, 2018. Dkt. 360-3 at 39. Courts have rejected Musk's argument that

6    § 17510.6 does not apply because of § 17510.8's "notwithstanding" clause. *Cohen* v. *Kabbalah*

7    *Centre Int'l., Inc.*, 35 Cal. App. 5th 13, 23 (2019) (rejecting argument that § 17510.8 trumps

8    § 17510.6); *Buck* v. *Peace Apostolic Church, Inc.*, 2023 WL 9064440, at *6 (Cal. Sup. Ct. Oct. 31,

9    2023) (holding that § 17510.6 is "an exception" to § 17510.8).

10    5. Musk objects to the language reflecting the requirement that a party prove "[t]he existence

11    and terms of an oral trust"—as distinct from a written trust—"by clear and convincing evidence."

12    Cal. Prob. Code § 15207(a). Musk argues that the provision does not apply because any trust here

13    was written, as reflected in emails and other documents. The Court rejected a similar argument in

14    dismissing Musk's express contract claim, and the same logic applies here. Dkt. 163 at 2. The jury

15    should make the determination whether any trust here was written or oral, as the instruction

16    provides, and then apply the corresponding burden of proof.

17    6. Musk objects to the language directing the jury to apply the requirements "with respect to

18    that donation." But a charitable trust is a fiduciary relationship "with respect to property" arising as

19    a result of a manifestation of an intention to create it. *L.B. Rsch. & Educ. Found. v. UCLA Found.*,

20    130 Cal. App. 4th 171, 177 (2005). Musk's claim is based on donations given at different times and

21    in different circumstances. Thus, whether Musk created "a fiduciary relationship with respect to

22    property" would not necessarily be the same for different donations. *Id.* Furthermore, the OpenAI

23    Defendants are not seeking a special verdict on each donation, so there will be no undue burden on

24    the jury.

25

26

27

28

**19-D.  CONTINUED EXISTENCE OF CHARITABLE TRUST (OpenAI Defendants' Version)**

With respect to an alleged donation, if you find that Plaintiff has proved the creation of a charitable trust, you must also decide whether Plaintiff has proved that the charitable trust continued to exist at the time of the alleged breach.  Once a donation is exhausted or otherwise ceases to exist, any charitable trust created with respect to that donation no longer exists.

If you find that Musk created a written trust, Plaintiff must prove this requirement by a preponderance of the evidence.  If you instead find that Musk created an oral trust, Plaintiff must prove this requirement by clear and convincing evidence.

**OPENAI DEFENDANTS' AUTHORITY**

Restatement (Third) of Trusts § 2 cmt. i (2003) ("If a trust is created and subsequently the whole of the trust property ceases to exist, the trust is terminated because the trustee no longer holds anything in trust.  If, however, there remains so much as a claim against the trustee or another on behalf of the beneficiaries, the claim constitutes trust property that continues to be held in trust for the beneficiaries."); *Estate of Coleman*, 129 Cal. App. 4th 380, 388 (2005) ("Where the property of the trust ceases to exist, there is nothing to which the trustee may hold legal title, nothing in which the beneficiaries may hold a legal interest, and there is no longer a trust. It follows that the complete withdrawal of the trust property terminates the entire trust."); Iris J. Goodwin, *Ask Not What Your Charity Can Do For You*, 51 Ariz. L. Rev. 75, 99 (2009) (charitable trust restriction persists "until the subject funds are exhausted").

For the burden of proof, see Cal. Prob. Code § 15207(a) (the existence and terms of an oral trust, rather than a written trust, "may be established only by clear and convincing evidence"); *In re Doolittle*, 2007 WL 7535062, at *3 (B.A.P. 9th Cir. July 24, 2007) (applying § 15207(a) to money).

**PLAINTIFF'S OBJECTIONS**

Plaintiff objects to this instruction in full and offers a competing instruction, No. 18-P.  The Parties' positions with respect these instructions are set forth in brief statements following Nos. 18-D and 19-D.

Date submitted: February 26, 2026.

**PLAINTIFF'S POSITION**

Plaintiff objects to Proposed Instruction No. 19-D's  sentence that "[o]nce a donation is exhausted or otherwise ceases to exist, any charitable trust created with respect to that donation no longer exists" as a misstatement of the law.  The authorities that Defendants cite address situations where the trust corpus has been exhausted and the trust no longer holds any assets at all.  *See* Restatement (Third) of Trusts § 2 cmt. i (2003) ("If a trust is created and subsequently the whole of the trust property ceases to exist, the trust is terminated because the trustee no longer holds anything in trust.  If, however, there remains so much as a claim against the trustee or another on behalf of the beneficiaries, the claim constitutes trust property that continues to be held in trust for the beneficiaries."); *Estate of Coleman*, 129 Cal. App. 4th 380, 388 (2005) (addressing "the complete withdrawal of the trust property").  Defendants cite no authority suggesting that those trust exhaustion principles apply merely because a charity uses the particular dollar bills a donor contributed to acquire other productive and valuable assets for the trust.

Relatedly, Plaintiff objects to this instruction as a whole on the ground that it is unsupported by the evidence.  There is no evidence that the OpenAI nonprofit ever exhausted all of its charitable assets or otherwise ceased to exist.

Plaintiff objects to the last paragraph because there is no evidence that Musk created an "oral trust."  The trust and its charitable purposes are reflected in written documents, namely, the parties' founding-era email correspondence and OpenAI's founding documents memorializing those purposes.  Any oral communications merely confirmed those written terms.

1    **OPENAI DEFENDANTS' POSITION**

2         Musk's Proposed Instruction No. 18-P entirely omits the issue of the continued existence of

3    a charitable trust at the time of the alleged breach. The OpenAI Defendants have proposed an

4    instruction (No. 19-D) addressing that necessary requirement.

5         1. Musk objects to the requirement that a charitable trust continued to exist at the time of the

6    alleged breach. But it is blackletter law that even if a trust was created, if "subsequently the whole

7    of the trust property ceases to exist, the trust is terminated because the trustee no longer holds

8    anything in trust." Restatement (Third) of Trusts § 2 cmt. i (2003); *see also Estate of Coleman*, 129

9    Cal. App. 4th 380, 388 (2005) (in such cases, "there is no longer a trust"). Under the Third

10   Restatement, a settlor's standing is limited to "enforc[ing] the restriction" placed on the donated

11   funds, § 94 cmt. g(3), and any such restrictions persist only "until the subject funds are exhausted."

12   Iris J. Goodwin, *Ask Not What Your Charity Can Do For You*, 51 Ariz. L. Rev. 75, 99 (2009). That

13   rule would be meaningless if a donation to a charity created perpetual restrictions for as long as the

14   charity survives or has any assets, even if the donated funds that were the subject of the alleged

15   charitable trust have long since been exhausted, as Defendants will show at trial.

16        2. Musk objects to the language in No. 19-D reflecting the requirement that a party prove

17   "[t]he existence and terms of an oral trust"—as distinct from a written trust—"by clear and

18   convincing evidence." Cal. Prob. Code § 15207(a). Musk argues that the provision does not apply

19   because any trust here was written, as reflected in emails and other documents. The Court rejected

20   a similar argument in dismissing Musk's express contract claim, and the same logic applies here.

21   Dkt. 163 at 2. The jury should make the determination whether any trust here was written or oral,

22   as the instruction provides, and then apply the corresponding burden of proof.

23        3. Musk objects to the language directing the jury to apply the requirements "with respect to

24   an alleged donation." But a charitable trust is a fiduciary relationship "with respect to property"

25   arising as a result of a manifestation of an intention to create it. *L.B. Rsch. & Educ. Found. v. UCLA*

26   *Found.*, 130 Cal. App. 4th 171, 177 (2005). Musk's claim is based on donations given at different

27   times and in different circumstances. Thus, whether Musk created "a fiduciary relationship with

28   respect to property" would not necessarily be the same for different donations. *Id.* Furthermore, the

1   OpenAI Defendants are not seeking a special verdict on each donation, so there will be no undue

2   burden on the jury.

20.    **BREACH OF CHARITABLE TRUST**

[With respect to each alleged donation, if / If] you find that Plaintiff has proved the creation of a charitable trust that continued to exist at the time of the alleged breach, you must also decide whether Plaintiff has proved that Altman, Brockman, or OpenAI, Inc. breached the terms of that charitable trust by using Musk's contributions for purposes different from the charitable purposes for which they were contributed.

\* The OpenAI Defendants' proposal in blue text; Musk's proposal in red text.

**PLAINTIFF'S AUTHORITY AND POSITION**

Restatement (Third) of Trusts § 93 (2012) ("A breach of trust is a failure by the trustee to comply with any duty that the trustee owes, as trustee, . . . to further the charitable purpose of the trust."); Cal. Bus. & Prof. Code § 17510.8 (describing "duty on the part of the charity and the person soliciting on behalf of the charity to use th[e] charitable contributions for the declared charitable purposes for which they are sought").

If the Court gives Defendants' Requested Instruction No. 19-D on Continued Existence of Charitable Trust, the Court should include the corresponding language in this instruction. Otherwise, the Court should omit the corresponding language.

Plaintiff objects to the requirement that the jury determine liability with respect to each "alleged donation." To establish liability, Plaintiff need only prove that Defendants used some or all of Musk's donations for unauthorized purposes. The donation-by-donation analysis is only relevant, if at all, at the remedy stage in determining the amount of wrongful gains.

**OPENAI DEFENDANTS' AUTHORITY AND POSITION**

The OpenAI Defendants contend that the instruction should begin with "With respect to an alleged donation." A charitable trust is a fiduciary relationship "with respect to property" arising as a result of a manifestation of an intention to create it. *L.B. Rsch. & Educ. Found. v. UCLA Found.*, 130 Cal. App. 4th 171, 177 (2005). Musk's claim is based on donations given at different times and

36

in different circumstances. Thus, whether Musk created "a fiduciary relationship with respect to property" would not necessarily be the same for different donations. *Id.* Furthermore, the OpenAI Defendants are not seeking a special verdict on each donation, so there will be no undue burden on the jury.

Date submitted: February 26, 2026.

**SECOND CLAIM:  UNJUST ENRICHMENT**
**(Against the OpenAI Defendants)**

**21-P.  UNJUST ENRICHMENT – ELEMENTS (Plaintiff's Version)**

Plaintiff asserts a claim for unjust enrichment against Altman, Brockman, OpenAI, Inc., and the other OpenAI Defendants.  To establish this claim, Plaintiff must show (1) that he conferred one or more benefits on the OpenAI Defendants; and (2) that the OpenAI Defendants retained those benefits unjustly.  With respect to the first element, Plaintiff claims that he gave his money, reputation, guidance, and other resources to OpenAI on the understanding that those resources would be used for charitable purposes.  As to the second element, Plaintiff claims that the OpenAI Defendants were unjustly enriched when they instead used Musk's contributions for purposes different from the charitable purposes for which he gave them.  To prove this claim, Plaintiff must show that the OpenAI Defendants knew or had reason to know that he provided contributions to OpenAI on the understanding that they would be used for charitable purposes.

**PLAINTIFF'S AUTHORITY**

Judicial Council of California Civil Jury Instructions No. 375 (2025 ed.) (modified); *Prakashpalan v. Engstrom, Lipscomb & Lack*, 223 Cal. App. 4th 1105, 1132 (2014) ("The elements for a claim of unjust enrichment are 'receipt of a benefit and unjust retention of the benefit at the expense of another.'" (quoting *Lectrodryer v. SeoulBank*, 77 Cal. App. 4th 723, 726 (2000)).

**OPENAI DEFENDANTS' OBJECTIONS**

The OpenAI Defendants object to this instruction in full and offer a competing instruction, No. 21-D. The Parties' positions with respect these instructions are set forth in brief statements following No. 21-D.

Date submitted: February 26, 2026.

**21-D.  UNJUST ENRICHMENT – ELEMENTS (OpenAI Defendants' Version)[2]**

Plaintiff claims that Altman, Brockman, OpenAI, Inc., and other OpenAI entities must restore to Musk the benefit of money and vehicles that he contributed to OpenAI, Inc.  To establish this claim against one of these Defendants, Plaintiff must prove all of the following:

     1.  That the Defendant received a benefit; and

     2.  That the Defendant unjustly retained the benefit at Musk's expense.

To prove that a Defendant's retention of the benefit of Musk's contributions was unjust, Plaintiff must prove that the Defendant knew or had reason to know that Musk contributed the money and vehicles pursuant to an implied agreement with the OpenAI Defendants that the money or property would be used for an agreed-upon charitable purpose, and knew or had reason to know that they failed to comply with the agreement's terms by using the money or property for purposes different from the agreed-upon charitable purpose.


**OPENAI DEFENDANTS' AUTHORITY**

Judicial Council of California Civil Jury Instructions No. 375 (2025 ed.) (Restitution From Transferee Based on Quasi-Contract or Unjust Enrichment) ("[Plaintiff] claims that [defendant] must restore to [plaintiff] [*specify, e.g., money*] that [defendant] received from [third party], but that really should belong to [plaintiff].  [Plaintiff] is entitled to restitution if [he] proves that [defendant] knew or had reason to know that [third party] [*specify act constituting unjust enrichment, e.g., embezzled money from* [plaintiff]]."); Dkt. 390 at 21 (SJ Order: elements of unjust enrichment are "receipt of a benefit and unjust retention of the benefit at the expense of another" (quoting Dkt. 30

---

[2] The OpenAI Defendants maintain that the unjust enrichment claim should not be submitted to the jury because the claim is barred under *McBride* v. *Boughton*, 123 Cal. App. 4th 279 (2004), and is not tethered to an actionable wrong, and expressly preserve their arguments on these issues. The OpenAI Defendants also maintain that there is no right to a jury determination of this claim because the only remedies Musk seeks are equitable. In light of the Court's denial of their summary judgment motion, and because the Court can submit the claim to the jury on an advisory basis, the OpenAI Defendants propose the unjust enrichment instructions herein. *See* Joint Pretrial Conference Statement (Disputed Legal Issues Pt. 3).

1  at 1 (Joint Statement Outlining Elements of Claims) (quoting *Prakashpalan v. Engstrom, Lipscomb*

2  *& Lack*, 223 Cal. App. 4th 1105, 1132 (2014))).

3      The first paragraph identifies the alleged benefit as Musk's contribution of money and

4  vehicles because the Court held that the unjust enrichment claim is "a quasi-contract claim seeking

5  restitution" and that "Musk's quasi-contract theory does not relate to the provision of Musk's

6  services."  Dkt. 390 at 21-22 (SJ Order); see also CACI 375 (calling for the instruction to identify

7  the alleged benefit: "[*specify, e.g., money*]").

8      The two numbered elements are taken from the Court's recitation of the elements of unjust

9  enrichment.  Dkt. 390 at 21 (SJ Order: elements of unjust enrichment are "receipt of a benefit and

10  unjust retention of the benefit at the expense of another" (quoting Dkt. 30 at 1 (Joint Statement

11  Outlining Elements of Claims) (quoting *Prakashpalan v. Engstrom, Lipscomb & Lack*, 223 Cal.

12  App. 4th 1105, 1132 (2014))).

13      The concluding paragraph is based on CACI 375 and the Court's summary judgment ruling.

14  CACI 375 requires proof that the defendant "knew or had reason to know" of a "specif[ied] act

15  constituting unjust enrichment," such as "embezzl[ing] money from [plaintiff]."  The specified act

16  in the proposed instruction is based on the Court's holding that "Musk's quasi-contract theory is

17  based on allegations that Musk and OpenAI defendants had an implied agreement, and that OpenAI

18  defendants failed to comply with the agreement's terms."  Dkt. 390 at 21-22 (SJ Order).

19

20  **PLAINTIFF'S OBJECTIONS**

21      Plaintiff objects to this instruction in full and offers a competing instruction, No. 21-P.  The

22  Parties' positions with respect these instructions are set forth in brief statements following No. 21-D.

23

24  Date submitted: February 26, 2026.

25

26

27

28

40

1    **PLAINTIFF'S POSITION**

2          Plaintiff objects to the instruction's limitation of the unjust enrichment claim to "money and

3    vehicles" to the exclusion of the many non-monetary benefits that Musk provided to OpenAI.

4    California law recognizes unjust enrichment claims for the receipt and unjust retention of

5    "benefit[s]" generally, not just money or other tangible property.  *See Ghirardo v. Antonioli*, 14 Cal.

6    4th 39, 51 (1996) ("[A]n individual may be required to make restitution if he is unjustly enriched at

7    the expense of another.  A person is enriched if he receives a benefit at another's expense.  ***The term***

8    ***'benefit' 'denotes any form of advantage.'***" (emphasis added)); *Pro. Tax Appeal v. Kennedy-*

9    *Wilson Holdings, Inc.*, 29 Cal. App. 5th 230, 238 (2018) (plaintiff's labor "prosecut[ing] two

10   property tax refund claims . . . that resulted in a reduction in the assessed value of the vacant land

11   by millions of dollars" constituted benefit to current owner).  Defendants quote out of context this

12   Court's statement in the summary judgment order that "Musk's quasi-contract theory does not relate

13   to the provision of Musk's services."  Order Denying in part Defendants' Motions for Summary

14   Judgment at 21-22 (Jan. 15, 2026) (Dkt. 390).  The Court was addressing whether "the 'expectation

15   of compensation' requirement [should] apply" based on Musk's provision of services for which he

16   expected compensation, not the types of benefits that could give rise to an unjust enrichment claim.

17   *See id.*

18         Plaintiff objects to the language stating that he may recover only "pursuant to an implied

19   agreement with the OpenAI Defendants" or their "fail[ure] to comply with the agreement's terms."

20   California law does not require a plaintiff claiming unjust enrichment to prove the existence of an

21   implied contract.  *See Prakashpalan v. Engstrom, Lipscomb & Lack*, 223 Cal. App. 4th 1105, 1132

22   (2014) ("The elements for a claim of unjust enrichment are 'receipt of a benefit and unjust retention

23   of the benefit at the expense of another.'" (quoting *Lectrodryer v. SeoulBank*, 77 Cal. App. 4th 723,

24   726 (2000)).  This Court previously required Musk to elect between his unjust enrichment and

25   implied contract claims on the ground that those claims are inconsistent.  Order Requiring Further

26   Election (Oct. 7, 2025) (Dkt. 298).

27

28

**OPENAI DEFENDANTS' POSITION**

The OpenAI Defendants object to Musk's proposed instruction on the elements of unjust enrichment because it disregards the Court's order on the OpenAI Defendants' summary judgment motion and ignores other applicable law. The OpenAI Defendants' proposed instruction No. 21-D, in contrast, is consistent with the Court's summary judgment ruling, CACI 375, and applicable case law.

1.     The OpenAI Defendants' proposal instructs the jury on Musk's theory of what makes retention of the benefits "unjust": "that the Defendant knew or had reason to know that Musk contributed the money and vehicles pursuant to an implied agreement with the OpenAI Defendants that the money or property would be used for an agreed-upon charitable purpose, and knew or had reason to know that they failed to comply with the agreement's terms by using the money or property for purposes different from the agreed-upon charitable purpose." *See* Dkt. 390 at 21-22 (SJ Order).

a.     Musk objects to this language, arguing that it is "not require[d]." But this approach is consistent with CACI 375, which requires proof that the defendant "knew or had reason to know" of a "specif[ied] act constituting unjust enrichment," such as "embezzl[ing] money from [plaintiff]."

b.     Moreover, the specified act in the proposed instruction incorporates the Court's holding that "Musk's quasi-contract theory is based on allegations that Musk and OpenAI defendants had an implied agreement, and that OpenAI defendants failed to comply with the agreement's terms." Dkt. 390 at 21-22 (SJ Order). In contrast, Musk's proposed instruction ignores the Court's holding by failing to make any mention of an implied agreement or the failure to comply with the agreement's terms. Again, Musk cannot now pivot away from the quasi-contract theory that he used to defeat summary judgment.

c.     The OpenAI Defendants' proposal describes the alleged implied agreement as one in which "the money or property would be used for an agreed-upon charitable purpose" and describes the failure to comply with the agreement's terms as "using the money or property for purposes different from the agreed-upon charitable purpose." This is consistent with Musk's proposed instruction to the extent it refers to the "understanding" that Musk's contributions "would be used for charitable purposes."

2.     Musk's proposed instruction improperly premises the claim in part on Musk's contributions of "reputation, guidance, and other resources." But the Court has already held in this case that "Musk's quasi-contract theory *does not relate to the provision of Musk's services*." Dkt. 390 at 22 (SJ Order) (emphasis added). Musk contends that this quote is taken out of context. But the Court's holding relied on Musk's own representation regarding the scope of his unjust enrichment claim, after the OpenAI Defendants moved for summary judgment on the ground that there was no evidence of any expectation that Musk would be compensated for his contributions to OpenAI, Inc. Dkt. 328 at 21-22. In opposing that argument, Musk contended that the expectation of compensation requirement did not apply because he was not making a quantum meruit claim, Dkt. 351 at 21, and the Court accepted that representation, holding that "the 'expectation of compensation' requirement does not apply" because "Musk's quasi-contract theory does not relate to the provision of Musk's services." Dkt. 390 at 22 (SJ Order). Musk cannot expand his theory now, after using the narrower theory to defeat summary judgment. The instruction accordingly should reflect that Musk's unjust enrichment claim is limited to his contributions of property, *i.e.*, money and vehicles.

The opening sentence of the OpenAI Defendants' proposed instruction is consistent with the Court's holding, as it identifies the benefit at issue as Musk's contribution of "money and vehicles" to OpenAI, Inc. This is also consistent with CACI 375, which calls for the instruction to identify the alleged benefit: "[*specify, e.g., money*]."

1

**THIRD CLAIM: FRAUD**
**(Against Altman, Brockman, and OpenAI, Inc.)**

2

3      **22.     FALSE PROMISES – ELEMENTS**[3]

4          Plaintiff claims that he was harmed because Altman, Brockman, and OpenAI, Inc. made

5  false promises to him. To establish this claim against one of these Defendants for a particular alleged

6  promise, Plaintiff must prove all of the following:

7               1. that the Defendant made a promise to Musk;

8               2. that the Defendant did not intend to perform the promise when it was made;

9               3. that the Defendant intended that Musk rely on the promise;

10              4. that Musk relied on the promise;

11              5. that any reliance by Musk on the promise was reasonable;

12              6. that the Defendant did not perform the promised act(s);

13              7. that Musk was harmed; and

14              8. that Musk's reliance on the promise was a substantial factor in causing his harm.

15      Musk's claim is based on the following specific alleged false promises:

16      • Altman's statement, "i remain enthusiastic about the non-profit structure," in a

17        September 21, 2017 email from Altman to Musk and others.

18      • Altman's alleged statement, "Great with keeping non-profit and continuing to

19        support it," in a September 22, 2017 email from Zilis to Musk and Teller.

20      • Brockman's alleged statement, "would like to continue with the non-profit

21        structure," in a September 22, 2017 email from Zilis to Musk and Teller.

22      • Brockman's statement, "we want to get more results in the non-profit and to

23        fundraise there," reflected in Brockman's personal files from November 6, 2017.

24      • Brockman's statement, "we must: - Try our best to remain a non-profit," in a January

25

26      _____

27  [3] The OpenAI Defendants maintain that there is no right to a jury determination of this claim because
    the only remedies Musk seeks are equitable. Because the Court can submit the claim to the jury on
    an advisory basis, the OpenAI Defendants join in the proposed fraud instruction herein. *See* Joint
28  Pretrial Conference Statement (Disputed Legal Issues Pt. 3).

44

1  31, 2018 email from Brockman to Musk and others.

2

3  * The OpenAI Defendants' proposal in blue text.

4

5  **PLAINTIFF'S AUTHORITY AND POSITION**

6      Judicial Council of California Civil Jury Instructions No. 1902 (2025 ed.) (modified);

7  *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, No. 16-cv-00236, Dkt. 993 at 51-

8  52 (N.D. Cal. Nov. 11, 2019).

9      Plaintiff objects to the prefatory phrase "he was harmed because" and the element "that

10 Musk was harmed" as unnecessary, confusing, and a misstatement of the law.  A plaintiff alleging

11 fraud may seek disgorgement of wrongful gains even absent any showing of out-of-pocket loss or

12 other personal harm.  *See Ward v. Taggart*, 51 Cal. 2d 736, 742-43 (1959).

13     Plaintiff objects to the OpenAI Defendants' inclusion of the phrase "for a particular alleged

14 promise" as well as defendant's listing of the false promises purportedly at issue.  CACI 1902 does

15 not include that language or suggest specifying each of the promises at issue.  Rather, Defendants

16 base their proposal on a model verdict form rather than the model instruction.  But the case cited in

17 that verdict form counsels ***against*** "the advisability of employing a special verdict" enumerating

18 each false promise.  *Ryan v. Crown Castle NG Networks, Inc.*, 6 Cal. App. 5th 775, 795 (2016); *see*

19 *id.* at 795-96 (explaining "recognized pitfalls" of forcing the jury to identify specific false promises).

20     Defendants contend that Federal Rule of Civil Procedure 9(b) requires that the jury

21 instruction identify each fraudulent statement.  But that rule is a pleading standard that governs only

22 the sufficiency of the complaint.  It is irrelevant at this stage of the case.

23

24 **OPENAI DEFENDANTS' AUTHORITY AND POSITION**

25     Judicial Council of California Civil Jury Instructions No. 1902 (2025 ed.) (False Promise);

26 CACI VF-1902 (False Promise); *Planned Parenthood Fed'n of Am., Inc.* v. *Ctr. for Med. Progress*,

27 No. 16-cv-00236-WHO, Dkt. 993 at 51-52 (N.D. Cal. Nov. 11, 2019).

28     Musk objects to the phrase "Musk claims that he was harmed" in the first sentence. But that

45

1   is the standard prefatory phrase in CACI instructions on the elements of claims, including CACI

2   1902 for promissory fraud. Musk likewise objects to including as elements of the claim "that Musk

3   was harmed" and "that Musk's reliance on the promise was a substantial factor in causing his harm."

4   But those elements are taken directly from CACI 1902 for promissory fraud. Furthermore, this Court

5   has repeatedly recognized that causation of harm ("resulting damage") is essential to proving fraud.

6   Dkt. 390 at 17-18 (SJ Order) ("The elements of fraud under California law are '(a) misrepresentation

7   (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c)

8   intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." (quoting

9   *Small* v. *Fritz Cos, Inc.*, 30 Cal.4th 167, 173 (2003)); Dkt. 163 at 5 (MTD Order) (reciting same

10  elements). And Musk previously agreed that causation of harm is required to prove his promissory

11  fraud claim. Dkt. 30 at 1 (Joint Statement Outlining Elements of Claims) (reciting elements

12  including "resulting damage to the promisee"). The prefatory language and harm elements are also

13  warranted because Musk is seeking personal recovery for this claim in the form of disgorgement

14  and exemplary damages. That Musk has made a tactical decision to abandon his request for

15  compensatory damages does not relieve him of proving the essential elements of his claim.

16        The OpenAI Defendants propose to include the phrase "for a particular alleged promise" in

17  the opening paragraph and also to identify, after the recitation of the elements, the specific alleged

18  false promises on which Musk's fraud claim is based. This approach is supported by California law

19  and CACI, which contemplates the use of a verdict form in which the jury is directed to assess the

20  elements of promissory fraud on a statement-by-statement basis. *See* CACI VF-1902 (False

21  Promise) (Directions for Use recognizing that "[i]f multiple promises are at issue," jury will need to

22  answer special verdict questions "for each promise"); *Ryan* v. *Crown Castle NG Networks Inc.*, 6

23  Cal. App. 5th 775, 794 (2016) (observing that "the failure to identify what promise was being

24  referred to injected an intolerable ambiguity into the jury's" verdict); *Planned Parenthood Fed'n of

25  Am., Inc.* v. *Ctr. for Med. Progress*, No. 16-cv-00236-WHO, Dkt. 993 at 51-52 (N.D. Cal. Nov. 11,

26  2019) (jury instruction: enumerating specific alleged false promises in same instruction listing

27

28

1  elements of promissory fraud). [4] The specific statements set forth in the proposed instruction are the

2  five statements that the Court considered on summary judgment: the three included in Musk's

3  complaint and the two additional statements raised for the first time in Musk's summary judgment

4  brief.

5        Identifying the five specific alleged false promises in this instruction is also necessary to

6  prevent Musk from impermissibly attempting to base his fraud claim on additional statements that

7  were not previously identified in his complaint or summary judgment briefing. Musk has now

8  threatened, in the Disputed Factual Issues portion of the Joint Pretrial Conference Statement, to rely

9  on "[a]ny other statement proven at trial that may be found to constitute a promise to Musk about

10  OpenAI's nonprofit mission or structure." Joint Pretrial Conference Statement (Disputed Factual

11  Issues). The Court should not permit Musk's belated reliance on yet more statements that he failed

12  to identify in his complaint. *See Lowery* v. *Blue Steel Releasing, Inc.*, 2005 WL 6215612, at *4 n.4

13  (C.D. Cal. Nov. 23, 2005) (rejecting reliance on a "further alleged misrepresentation" not in

14  complaint), *aff'd*, 261 F. App'x 17, 19-20 (9th Cir. 2007) (statement that "does not appear in [the]

15  complaint" was "waived as a basis for [the] fraud claim"). To permit Musk to rely on additional

16  statements would sanction an evasion of Rule 9, as the particularity of any new statements will not

17  have been tested. It would also permit Musk to evade the requirements for a motion for leave to

18  amend the complaint—a motion that would be denied if it were made at this late stage in the

19  litigation, after the conclusion of voluminous discovery, with trial just two months away, and after

20  Musk has already had the opportunity to amend the complaint twice. *See Kaplan* v. *Rose*, 49 F.3d

21  1363, 1370 (9th Cir. 1994) (affirming district court's refusal to consider additional statements);

22  *Lowery*, 261 F. App'x at 20 (affirming district court's decision not to grant sua sponte leave to

23  amend with new alleged misrepresentation).

24

25  _____

26  [4] Musk responds that a special verdict is inadvisable. But that is a strawman: the OpenAI Defendants are not proposing to use a special verdict form, but simply to list in the jury instruction the specific alleged false promises on which Musk's fraud claim is based. On that point, Musk offers no substantive response. The OpenAI Defendants' proposed verdict form follows this Court's standing order in asking, "On the Third Cause of Action for Fraud, did Musk prove the claim by a preponderance of the evidence against any of these Defendants?"

27

28

47

Date submitted: February 26, 2026.

1    **23.    RELIANCE**

2        To establish that Plaintiff relied on a false promise, Plaintiff must prove both of the

3    following:

4            1.  that the false promise substantially influenced Plaintiff to provide money or other

5        benefits to OpenAI, Inc.; and

6            2.  that Plaintiff probably would not have provided the money or other benefits without

7        the false promise.

8        It is not necessary for the false promise to be the only reason for Plaintiff's conduct.

9

10    **AUTHORITY**

11        Judicial Council of California Civil Jury Instructions No. 1902 (2025 ed.).

12

13    Date submitted: February 26, 2026.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**24.    REASONABLE RELIANCE**

To establish that Plaintiff's reliance on the false promise was reasonable, Plaintiff must first prove that the matter was material.  A matter is material if a reasonable person would find it important in deciding what to do.

If you decide that the matter is material, you must then decide whether it was reasonable for Plaintiff to rely on the false promise.  In making this decision, take into consideration Plaintiff's intelligence, knowledge, education, and experience.

However, it is not reasonable for anyone to rely on a false promise that is preposterous.  It also is not reasonable for anyone to rely on a false promise if facts that are within his observation show that it is obviously false.

**AUTHORITY**

Judicial Council of California Civil Jury Instructions No. 1908 (2025 ed.) (modified).

Date submitted: February 26, 2026.

## FOURTH CLAIM:  CONSTRUCTIVE FRAUD
### (Against Altman, Brockman, and OpenAI, Inc.)

**25.    CONSTRUCTIVE FRAUD – ELEMENTS[5]**

Plaintiff claims that he was harmed because Altman, Brockman, and OpenAI, Inc. misled him by failing to provide Musk with complete and accurate information regarding his charitable contributions to OpenAI, Inc.  To establish this claim against one of these Defendants, Musk must prove all of the following subject to the presumption explained below:

1.   that the Defendant had a fiduciary relationship with Musk at the time charitable contributions were received from Musk;

2.   that the Defendant had a fiduciary obligation to use Musk's contributions for the charitable purpose for which they were sought;

3.   that the Defendant knew, or should have known, that the contributions would not be used for the charitable purposes for which they were sought;

4.   that the Defendant misled Musk by providing Musk with information that was inaccurate or incomplete;

5.   that Musk relied on the Defendant's inaccurate or incomplete information;

6.   that any reliance by Musk on the Defendant's inaccurate or incomplete information was reasonable;

7.   that Musk was harmed; and

8.   that the Defendant's conduct was a substantial factor in causing Musk's harm.

Constructive fraud differs from actual fraud in that no fraudulent intent is required. In determining whether Plaintiff has proved the first and second elements of constructive fraud, you should follow my prior instructions regarding the creation and existence of a charitable trust.  [A

---

[5] The OpenAI Defendants maintain that the constructive fraud claim should not be submitted to the jury because Musk lacks standing to assert the claim, and expressly preserve their arguments on the issue. The OpenAI Defendants also maintain that there is no right to a jury determination of this claim because the only remedies Musk seeks are equitable. In light of the Court's denial of their summary judgment motion, and because the Court can submit the claim to the jury on an advisory basis, the OpenAI Defendants join in the proposed constructive fraud instruction herein. *See* Joint Pretrial Conference Statement (Disputed Legal Issues Pt. 3).

51

fiduciary relationship and fiduciary obligation to use Musk's contributions for a charitable purpose exists if Musk's contributions resulted in the creation and existence of a charitable trust. / A fiduciary relationship and fiduciary obligation existed if Musk made a donation as a result of a solicitation by a Defendant on behalf of OpenAI, Inc., unless Musk was a member of OpenAI, Inc. at the time or the solicitation occurred on OpenAI, Inc.'s premises.]

In determining whether Plaintiff has proved the fifth and sixth elements of constructive fraud, you should follow my prior instructions regarding reliance and reasonable reliance. But if you find that a fiduciary relationship exists between Plaintiff and a Defendant, Plaintiff is entitled for this claim only to a rebuttable presumption that he reasonably relied on the Defendant's inaccurate or incomplete information. The presumption can be rebutted by substantial evidence that Musk could not have reasonably relied on the inaccurate or incomplete information.

\* The OpenAI Defendants' proposal in blue text; Musk's proposal in red text.

**PLAINTIFF'S AUTHORITY AND POSITION**

Judicial Council of California Civil Jury Instructions No. 4111 (2025 ed.) (Constructive Fraud (Civ. Code § 1573)) (modified).

Plaintiff objects to the prefatory phrase "he was harmed because" and the element "that Musk was harmed" as unnecessary, confusing, and a misstatement of the law. A plaintiff alleging fraud may seek disgorgement of wrongful gains even absent any showing of out-of-pocket loss or other personal harm. *See Ward v. Taggart*, 51 Cal. 2d 736, 742-43 (1959).

With respect to the absence of a fraudulent intent requirement, see Judicial Council of California Civil Jury Instructions No. 4111 Directions for Use (2025 ed.) (Constructive Fraud (Civ. Code § 1573)) ("Constructive fraud differs from actual fraud . . . in that no fraudulent intent is required."). Inclusion of this explicit language is necessary to avoid jury confusion over the difference in mental states that apply to these two claims.

With respect to the rebuttable presumption of reasonable reliance, see Judicial Council of California Civil Jury Instructions No. 4111 Directions for Use (2025 ed.) (Constructive Fraud

(Civ. Code § 1573)) ("In a fiduciary relationship, there is a rebuttable presumption of reasonable reliance."); *Edmunds v. Valley Circle Estates*, 16 Cal. App. 4th 1290, 1301-02 (1993) ("[C]onstructive fraud not only expands the range of conduct which may be characterized as fraudulent, it also presumes the element of reliance absent substantial evidence to the contrary."). Inclusion of the phrase "subject to the presumption explained below" is necessary because otherwise the statement "Musk must prove all of the following" is inaccurate. Due to the presumption, Plaintiff does not bear the burden of proof on the reliance element.

The phrase "A fiduciary relationship and fiduciary obligation to use Musk's contributions for a charitable purpose exists if Musk's contributions resulted in the creation and existence of a charitable trust" should be included because the instruction elsewhere uses the terms "fiduciary obligation" and "fiduciary relationship" without defining them, and jurors are unlikely to know what those terms mean. In this case, the fiduciary relationship and obligation arises out of the claimed charitable trust. *See, e.g.*, Cal. Bus. & Prof. Code § 17510.8 (2024) ("[T]here exists a fiduciary relationship between a charity or any person soliciting on behalf of a charity, and the person from whom a charitable contribution is being solicited.").

**OPENAI DEFENDANTS' AUTHORITY AND POSITION**

Judicial Council of California Civil Jury Instructions No. 4111 (2025 ed.) (Constructive Fraud (Civ. Code, § 1573)).

Musk objects to the phrase "Musk claims that he was harmed" in the first sentence. But that is the standard prefatory phrase in CACI instructions on the elements of claims, including CACI 4111 for constructive fraud. Musk likewise objects to including as elements of the claim "that Musk was harmed" and "that the Defendant's conduct was a substantial factor in causing Musk's harm." But those element are taken directly from CACI 4111 for constructive fraud. Furthermore, this Court has repeatedly recognized that causation of harm ("resulting damage") is essential to proving constructive fraud. Dkt. 390 at 17 (SJ Order elements of constructive fraud are "(1) a fiduciary or confidential relationship; (2) an act, omission or concealment involving a breach of that duty; (3) reliance; and (4) resulting damage" (quoting Dkt. 30 at 1 (Joint Statement Outlining Elements of

Claims) (quoting *Fabian* v. *LeMahieu*, 2019 WL 4918431, at *14 (N.D. Cal. Oct. 4, 2019))); Dkt. 163 at 5 (MTD Order) (reciting same elements). And Musk previously agreed that causation of harm is required to prove his constructive fraud claim. Dkt. 30 at 1 (Joint Statement Outlining Elements of Claims) (reciting elements including "resulting damage"). The prefatory language and harm elements are also warranted because Musk is seeking personal recovery for this claim in the form of disgorgement and exemplary damages. That Musk has made a tactical decision to abandon his request for compensatory damages does not relieve him of proving the essential elements of his claim.

Musk proposes to include the phrase "subject to the presumption explained below" prior to listing the elements. The OpenAI Defendants object to that language, which is likely to confuse the jury by suggesting that an unidentified presumption could apply to any of the following elements. It is also unnecessary because the paragraph at the end of the instruction explains the rebuttable presumption in the context of reasonable reliance, which is where it belongs.

Musk proposes to instruct the jury that "Constructive fraud differs from actual fraud in that no fraudulent intent is required." The OpenAI Defendants object to that language, which CACI 4111 does not include, as unnecessary because the elements never suggest that intent is required.

The OpenAI Defendants object to Musk's instruction that "A fiduciary relationship and fiduciary obligation to use Musk's contributions for a charitable purpose exists if Musk's contributions resulted in the creation and existence of a charitable trust," because the creation of a charitable trust under the common law results in a fiduciary duty from the trustee to the beneficiaries, not the donor. Restatement (Third) of Trusts § 2 cmt. f (2003) ("beneficiaries" are the ones "to whom and for whose benefit the trustee owes duties with respect to the trust property"); *id.* § 70 cmt. d (2007) (trustee "has a duty *to the beneficiaries*").

In contrast, a donation made under Cal. Bus. & Prof. Code §§ 17510.8 and 17510.6 creates a fiduciary duty between the charity and the donor. Cal. Bus. & Prof. Code § 17510.8 ("[T]here exists a fiduciary relationship between a charity or any person soliciting on behalf of a charity, and the person from whom a charitable contribution is being solicited."); *id.* § 17510.6 ("The provisions of this article shall not apply to solicitations . . . within the membership of a charitable organization

1  or upon its regular occupied premises"). Thus, the OpenAI Defendants propose the following

2  language: "A fiduciary relationship and fiduciary obligation existed if Musk made a donation as a

3  result of a solicitation by a Defendant on behalf of OpenAI, Inc., unless Musk was a member of

4  OpenAI, Inc. at the time or the solicitation occurred on OpenAI, Inc.'s premises."

5         If the Court includes the proposed sentence on the rebuttable presumption of reasonable

6  reliance, it should also include the following sentence: "The presumption can be rebutted by

7  substantial evidence that Musk could not have reasonably relied on the inaccurate or incomplete

8  information." Both sentences are supported by the same authorities: CACI 4111 Directions for Use

9  and *Edmunds* v. *Valley Circle Estates*, 16 Cal. App. 4th 1290, 1301-02 (1993).

10

11  Date submitted: February 26, 2026.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## FIFTH CLAIM:  AIDING AND ABETTING BREACH OF CHARITABLE TRUST
### (Against Microsoft)

**26-P.  AIDING AND ABETTING BREACH OF CHARITABLE TRUST – ELEMENTS (Plaintiff's Version)**

Plaintiff claims that Microsoft is liable for Altman, Brockman, or OpenAI, Inc.'s breach of charitable trust because Microsoft aided and abetted that breach.

If you find that Altman, Brockman, or OpenAI, Inc. is liable for breach of charitable trust, you must determine whether Microsoft is responsible for aiding and abetting that breach.  Microsoft is responsible as an aider and abettor if Plaintiff proves the following:

1.  that Microsoft knew that, by using charitable contributions for purposes different from the charitable purposes for which they were given, Altman, Brockman, or OpenAI, Inc. would breach their obligations to donors; and

2.  that Microsoft gave substantial assistance or encouragement to Altman, Brockman, or OpenAI, Inc.

Mere knowledge that a breach of charitable trust was being committed and failure to prevent that breach does not constitute aiding and abetting.

**PLAINTIFF'S AUTHORITY**

Judicial Council of California Civil Jury Instructions No. 3610 (2025 ed.) (modified).

**MICROSOFT'S OBJECTIONS**

Microsoft objects to this Proposed Instruction in full and offers a competing instruction, No. 26-D.  The Parties' positions with respect to these instructions are set forth in brief statements following 26-D.

Date submitted: February 26, 2026.

**26-D.  AIDING AND ABETTING BREACH OF CHARITABLE TRUST – ELEMENTS (Microsoft's Version)**

Plaintiff claims that he was harmed by OpenAI, Altman, or Brockman's breach of a specific charitable trust and that Microsoft is also responsible for the harm because it aided and abetted OpenAI, Altman, or Brockman in committing the breach of charitable trust.

If you find that OpenAI, Altman, or Brockman did not commit a breach of charitable trust, you must find that Microsoft is not liable.  That is because Plaintiff's claim against Microsoft is limited to aiding and abetting a breach of charitable trust; he does not contend that Microsoft aided and abetted any of his other claims against OpenAI, Altman, or Brockman.

If you find that OpenAI, Altman, or Brockman committed a breach of charitable trust that harmed Musk, then you must determine whether Microsoft is also responsible for the harm. Microsoft is responsible as an aider and abettor if Musk proves all of the following:

1.  that Microsoft knew that Musk made his donations for specific charitable purposes, and that OpenAI, Altman, or Brockman committed a breach of charitable trust by using the donations for other inconsistent purposes;

2.  that Microsoft intended to assist the breach of charitable trust;

3.  that Microsoft gave substantial assistance or encouragement to OpenAI, Altman, or Brockman in breaching the charitable trust created by Musk; and

4.  that Microsoft's conduct was a substantial factor in causing harm to Musk.

Mere knowledge that OpenAI, Inc., Altman, or Brockman committed a breach of trust by using the donations for purposes other than Musk's specific purposes, and the failure to prevent it, do not constitute aiding and abetting.


**MICROSOFT'S AUTHORITY**

Judicial Council of California Civil Jury Instructions No. 3610 (Oct. 2025) (Aiding and Abetting Tort – Essential Factual Elements) (adapted to reflect the parties' names and the nature of the underlying claim).

1    Element 1, knowledge: *see infra* Microsoft's objections to Plaintiff's Proposed Instruction

2    26-P.

3    Element 2, intent:  Microsoft submits that inclusion of this element of the instruction is

4    supported under California law and necessary given the facts at issue in the case.

5    Under California law, as explained in CACI No. 3610, Sources and Authority at 721, "The

6    fact the instruction [CACI No. 3610] does not use the word 'intent' is not determinative.  'California

7    courts have long held that liability for aiding and abetting depends on proof the defendant had actual

8    knowledge of the specific primary wrong the defendant substantially assisted. . . . "The words 'aid

9    and abet' as thus used have a well understood meaning, and may fairly be construed to imply <u>an</u>

10   <u>intentional participation</u> *with knowledge of the object to be attained*." ' " (citing *Upasani v. State*

11   *Farm General Ins. Co*., 227 Cal. App. 4th 509, 519 (2014) (italics in original, citation omitted,

12   underline added)).  As further explained, "while aiding and abetting may not require a defendant to

13   join the wrongful conduct, it necessarily requires a defendant to reach a conscious decision to

14   participate in tortious activity for the purpose of assisting another in performing a wrongful act . . . ."

15   *Id*. at 723 (citing *American Master Lease LLC v. Idanta Partners, Ltd.*, 225 Cal. App. 4th 1451,

16   1475-76 (2014)); *see also Hough v. Carroll*, 2025 WL 1674425, at *8 (C.D. Cal. May 5, 2025) (an

17   alleged aider and abettor must have "acted with the intent of facilitating the commission of [the

18   underlying] tort"); *Neilson v. Union Bank of Cal., N.A*., 290 F. Supp. 2d 1101, 1119 (N.D. Cal.

19   2003) (conscious decision to participate in tortious activity required).

20   The facts at issue in the case warrant such an instruction here.  Because the OpenAI nonprofit

21   board approved the agreements with Microsoft, and because OpenAI repeatedly represented and

22   warranted to Microsoft that the parties' agreements would not impinge any third party's rights,

23   Microsoft could be found to lack the intent (as well as knowledge) to assist any alleged underlying

24   breach of charitable trust even if it had knowledge of underlying duties.  *See* Microsoft's Motion for

25   Summary Judgment at 19-20 (Dkt. 330-1).

26   Microsoft recognizes that the Court, in its January 15, 2026 Summary Judgment Order

27   (Dkt. 390), wrote that "there is no separate intent requirement for aiding and abetting liability."  *Id*.

28   at 24 n.16.  However, the Court also recognized that, as an intentional tort, aiding and abetting

requires intent "to take the actions that aid and abet." *Id.* (citation omitted).  In other words, while specific intent to agree to commit the underlying tort is not required, Microsoft respectfully submits that intent to commit acts to facilitate the underlying tort is required and the jury should be so instructed.  At a minimum, Microsoft intends to preserve the issue for review.

Element 3, substantial factor: This element is expressly set forth in CACI No. 3610.  Plaintiff offers no justification for removing it from his Proposed Instruction 26-P.  The element is especially relevant here because the evidence from OpenAI, as acknowledged by Plaintiff himself, is that by 2018 OpenAI needed compute and capital to continue to pursue its mission.  Thus, whether OpenAI would have received compute and capital regardless of Microsoft's involvement, and whether Plaintiff was harmed because of Microsoft's substantial assistance, are necessary and relevant factual issues for the jury to resolve.

Harm: Under black-letter law, Plaintiff must show harm from Microsoft's conduct in connection with his aiding-and-abetting claim against Microsoft.  *See* CACI element 3.  If Plaintiff did not suffer such harm, he would have no standing to sue Microsoft under Article III or otherwise.  Moreover, the Court dismissed the unjust enrichment claim against Microsoft because it had no quasi-contractual relationship with Plaintiff, *see* Jan. 15, 2026 MSJ Order at p. 27 [ECF No. 390].  That ruling confirms that any remedy for aiding-and-abetting must relate, if at all, to Microsoft's alleged substantial assistance of an underlying wrong and its resulting harm.  *County of San Bernardino v. Walsh*, 158 Cal. App. 4th 533, 543 (2007), which merely holds that a fiduciary breach defendant sometimes must return the fruits of unjust enrichment, was not an aiding-and-abetting case and thus did not deal with the special derivative nature of aiding-and-abetting liability.  For these reasons, the jury should be instructed that harm to Plaintiff is necessary to establish aiding-and-abetting liability.

**PLAINTIFF'S OBJECTIONS**

Plaintiff objects to this instruction in full and offers a competing instruction, No. 26-P.  The Parties' positions with respect these instructions are set forth in brief statements following No. 26-D.

Date submitted: February 26, 2026.

1    **PLAINTIFF'S POSITION**

2    Plaintiff objects to Proposed Instruction 26-D's prefatory phrase that "he was harmed by"

3    and the element "that Microsoft's conduct was a substantial factor in causing harm to Musk" as

4    unnecessary, confusing, and a misstatement of the law.  A plaintiff claiming aiding and abetting

5    breach of charitable trust is not required to show some out-of-pocket loss or personal harm above

6    and beyond the defendants' wrongful use of the entrusted contributions to enrich themselves at the

7    plaintiff's expense.  *See, e.g.*, *County of San Bernardino v. Walsh*, 158 Cal. App. 4th 533, 542-43

8    (2007) ("Where 'a benefit has been received by the defendant but the plaintiff has not suffered a

9    corresponding loss or, in some cases, any loss . . . [the] defendant may be under a duty to give to the

10   plaintiff the amount by which [the defendant] has been enriched.' ").

11   Plaintiff objects to the language requiring that "Microsoft intended to assist the breach of

12   charitable trust" as a misstatement of law and as contrary to this Court's summary judgment opinion.

13   *See* Order Denying in part Defendants' Motions for Summary Judgment at 24 n.16 (Jan. 15, 2026)

14   (Dkt. 390) ("[T]here is no separate intent requirement for aiding and abetting liability."); *In re First*

15   *All. Mortg. Co.*, 471 F.3d 977, 1005 (9th Cir. 2006) (aiding and abetting "is only intentional in the

16   sense that the aider and abettor intends to take the actions that aid and abet").  Microsoft's authorities

17   provide no reason to reconsider that order.  Those authorities merely state that the aider and abettor

18   must act with ***knowledge*** of the underlying wrong and must intend to engage in the ***acts that render***

19   ***substantial assistance,*** not that the aider and abettor must ***intend*** the underlying breach.

20   Plaintiff further objects to the language requiring that "Microsoft knew that ***Musk*** made his

21   donations for specific charitable purposes."  For aiding and abetting, it is sufficient that Microsoft

22   knew that OpenAI owed charitable obligations to its donors generally, whether or not it knew about

23   OpenAI's specific obligations to Musk.  *See, e.g.*, *In re First Alliance Mortg. Co.*, 471 F.3d 977,

24   994 (9th Cir. 2006) (sustaining a verdict for aiding and abetting fraud based on "reports that detailed

25   the fraudulent practices in which First Alliance was engaged" but without any evidence of

26   knowledge of duties owed to specifically identified class members).

27   Plaintiff finally objects to Microsoft's instruction on the ground that it departs substantially

28   from the applicable model instruction, including by adding gratuitous language that emphasizes

1   grounds on which Microsoft could be found not liable ("If you find that OpenAI, Altman, or

2   Brockman did not commit a breach of charitable trust, you must find that Microsoft is not liable.

3   That is because Plaintiff's claim against Microsoft is limited to aiding and abetting a breach of

4   charitable trust; he does not contend that Microsoft aided and abetted any of his other claims against

5   OpenAI, Altman, or Brockman.").  Plaintiff's proposed instruction more closely tracks the model

6   instruction and is sufficient to convey the relevant legal principles to the jury.

7

8   **MICROSOFT'S POSITION**

9       Microsoft objects that Plaintiff's instruction does not make clear that (i) if the jury finds that

10  there was no breach of charitable trust, Microsoft cannot be liable, and (ii) Plaintiff's aiding-and-

11  abetting claim is limited to aiding and abetting the alleged breach of charitable trust.

12      Plaintiff asserts that "[f]or aiding and abetting, it is sufficient that Microsoft knew that

13  OpenAI owed charitable obligations to its donors generally, whether or not it knew about OpenAI's

14  specific obligations to Musk."  Pltf. Objections to Proposed Jury Instr. 26-D.  This is wrong, and

15  inconsistent with California law as well as the law on the allegedly underlying breach of charitable

16  trust, which requires that to create a charitable trust, donations must be provided for "a specific

17  purpose."  *See* January 15, 2026 Summary Judgment Order [Dkt. 390] at 16 ("MSJ Order") (outright

18  devise or a gift to be used for "general purposes" does not create a trust whereas a "disposition . . .

19  for a specific purpose . . . does") (citing Restatement (Third) of Trusts § 28, cmt. a.)  Plaintiff reads

20  out that requirement entirely.

21      Under *Casey,* Plaintiff must prove Microsoft's "actual knowledge of the specific primary

22  wrong the defendant substantially assisted," such that the defendant had "intentional participation

23  ***with knowledge of the object to be attained***."  MSJ Order at 24, quoting *Casey v. U.S. Bank Nat'l*

24  *Ass'n*, 127 Cal. App. 4th 1138, 1147 (2005) (emphasis in original).  Here, that "specific primary

25  wrong" encompasses (i) the ***specific purpose*** for which Musk's specific charitable contributions

26  were made and (ii) the alleged breach of the charitable trust created by Musk.  *See* SAC [Dkt. 170]

27  ¶¶ 397, 408 (claiming the duties arose from Musk's donations to OpenAI in connection with

28  OpenAI, Altman, and Brockman's solicitations of Musk).

1    Plaintiff's instruction suggests that it is enough that Microsoft "knew that Altman,

2  Brockman, or OpenAI would breach their obligations "***by using charitable contributions for***

3  ***purposes different from the charitable purposes for which they were given***." (emphasis added).

4  That is insufficient and potentially confusing for at least two reasons.  First, Plaintiff's instruction

5  does not require knowledge of ***Musk's*** charitable donations, let alone the ***specific purpose*** for which

6  they were made.  *See* MSJ Order at 16.  Second, it suggests it is enough that Microsoft knew that

7  OpenAI, Altman, or Brockman would generally use charitable contributions donated by anyone for

8  purposes different than the charitable purposes for which they were given—without any requirement

9  that those donations were given for a specific purpose.

10    Plaintiff instead seeks to substitute impermissible constructive knowledge—that Microsoft

11  knew OpenAI was a charity with donors and therefore should have known about Musk's specific

12  charitable contributions and specific purposes.  *In re Columbia Pipeline Grp., Inc. Merger. Litig.*,

13  342 A.3d 324, 356 (Del. 2025) (rejecting constructive knowledge for aiding and abetting).  For the

14  same reason, Plaintiff's suggestion that "must have known" is sufficient is also incorrect.  *See* Pltf.

15  Proposed Jury Instr. 27-P.[6]

16    A "knowledge" instruction that fails to even identify Musk's donations and the specific

17  purpose for which they were made does not follow the law, and risks confusing the jury on the

18  requisite standard.  Accordingly, Microsoft urges the Court to adopt its "knowledge" instruction,

19  which requires proof "that Microsoft knew that Musk made his donations for specific charitable

20  purposes, and that OpenAI, Altman, or Brockman committed a breach of charitable trust by using

21  the donations for other inconsistent purposes."  Microsoft Proposed Jury Instr. 26-D.

22    Microsoft also objects that Plaintiff's first element omits that Microsoft knew that OpenAI,

23  Altman, or Brockman committed a breach of charitable trust by using the donations for other

---

[6] Plaintiff relies on *In re First Alliance Mortgage Co.*, to shortcut "actual knowledge."  471 F.3d 977, 994 (9th Cir. 2006).  But that case was a class action, which presents entirely different issues regarding what the defendant may have known about each class member.  It was also a case in which the court found that Lehman's knowledge was beyond dispute.  *Id.* ("Lehman received reports that detailed the fraudulent practices in which First Alliance was engaged, and that in one report, a Lehman officer noted his concern that if First Alliance 'does not change its business practices, it will not survive scrutiny.'").

1    "inconsistent" purposes.    Use of donations for other purposes consistent with Musk's alleged

2    purposes would not be a breach and would not constitute knowledge of a breach.

3        Microsoft objects that Plaintiff's instruction omits the element that Microsoft intended to

4    assist the breach of charitable trust.  *See* Microsoft's Authorities for its Proposed Instruction 26-D.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1   **27-P.  AIDING AND ABETTING BREACH OF CHARITABLE TRUST –
2           KNOWLEDGE (Plaintiff's Version)**

3       Plaintiff may prove Microsoft's knowledge through inference or circumstantial evidence.

4   This includes circumstantial evidence that Microsoft must have known the relevant facts.  However,

5   a mere vague suspicion of wrongdoing is not sufficient.

6

7   **PLAINTIFF'S AUTHORITY**

8       Order Denying in part Defendants' Motions for Summary Judgment at 24 (Jan. 15, 2026)

9   (Dkt. 390) ("Although it 'is not sufficient merely to have a vague suspicion of wrongdoing, in the

10  nature of a hunch that something fishy was going on, a plaintiff may prove actual knowledge through

11  inference or circumstantial evidence.'  This includes 'circumstantial evidence that the defendant

12  must have known' the relevant facts." (quoting *AngioScore, Inc. v. TriReme Med., LLC*, 70 F. Supp.

13  3d 951, 957 (N.D. Cal. 2014), and *Martinez v. Bank of Am. Nat'l Tr. & Sav. Ass'n*, 82 Cal. App. 4th

14  883, 891 (2000)) (alterations omitted)).

15

16  **MICROSOFT'S OBJECTIONS**

17      Microsoft objects to this Proposed Instruction in full and offers a competing instruction, No.

18  27-D. The Parties' positions with respect to these instructions are set forth in brief statements

19  following 27-D.

20

21  Date submitted: February 26, 2026.

22

23

24

25

26

27

28

1    **27-D.  AIDING AND ABETTING BREACH OF CHARITABLE TRUST –**
2    **KNOWLEDGE (Microsoft's Version)**

3    To prove Microsoft's knowledge for aiding and abetting, Plaintiff must establish that

4    Microsoft actually knew that Musk made his donations for specific charitable purposes, and that

5    Microsoft also actually knew that OpenAI, Altman, or Brockman committed a breach of trust by

6    using the donations for other inconsistent purposes.

7    Actual knowledge can be shown by direct or circumstantial evidence, which I have already

8    defined.  A vague suspicion of wrongdoing or a hunch is not actual knowledge.  Actual knowledge

9    is not the same as "constructive" knowledge, which is when a party should have known a fact.  If

10   Microsoft should have known but did not actually know that Musk made his donations for specific

11   charitable purposes, and that OpenAI, Altman, or Brockman committed a breach of trust by using

12   the donations for other inconsistent purposes, that is not sufficient.  It is also not sufficient for Musk

13   to show that Microsoft knew that OpenAI was a charity and generally had donors.

14

15   **MICROSOFT'S AUTHORITY**

16   Inclusion of this definition is supported by California law.  As CACI No. 3610 explains,

17   "'California courts have long held that liability for aiding and abetting depends on proof the

18   defendant had actual knowledge of the specific primary wrong the defendant substantially

19   assisted . . . .  [There must be] an intentional participation *with knowledge of the object to be*

20   *attained*.'"  *Id*. at 722 (quoting *Casey v. U.S. Bank Nat'l Ass'n*, 127 Cal.App.4th 1138, 1145-46

21   (2005)) (italics in original, citation omitted); *id*. at 1147 ("suspicion and surmise do not constitute

22   actual knowledge").   "[A]ctual knowledge" of the specific primary wrong the defendant

23   substantially assisted is required; "a vague suspicion of wrongdoing" or a hunch that "something

24   fishy was going on" is insufficient.  *AngioScore, Inc. v. TriReme Med., LLC*, 70 F. Supp. 3d 951,

25   957 (N.D. Cal. 2014) (Gonzalez Rogers, J.) (citation omitted); *see also Hough*, 2025 WL 1674425

26   at *8 (allegations must plausibly suggest that the aider and abettor knew of the "*specific*" fraud

27   perpetrated by the primary tortfeasor); Cal. Prob. Code § 18100 (third person with no "actual"

28   knowledge of charitable trust restrictions "fully protected").  Constructive knowledge – knowledge

66

1  that the defendant should have known about underlying tortious activity – is not enough to establish

2  liability for aiding and abetting.  *See AngioScore*, 70 F. Supp. 3d at 957; *In re Columbia Pipeline*

3  *Group, Inc. Merger Litig.*, 2025 WL 1693491, at *23 (Del. June 17, 2025).  *See also* the discussion

4  of knowledge in Microsoft's position in Proposed Instruction 26-D.

5

6  **PLAINTIFF'S OBJECTIONS**

7        Plaintiff objects to this instruction in full and offers a competing instruction, No. 27-P.  The

8  Parties' positions with respect these instructions are set forth in brief statements following No. 27-D.

9

10  Date submitted: February 26, 2026.

67

1   **PLAINTIFF'S POSITION**

2   Plaintiff objects to Proposed Instruction 27-D's language that "[i]t is also not sufficient for

3   Musk to show that Microsoft knew that OpenAI was a charity and generally had donors" as

4   confusing and a misstatement of the law.  For aiding and abetting, it is sufficient that Microsoft

5   knew that OpenAI owed charitable obligations to its donors generally, whether or not it knew about

6   OpenAI's specific obligations to Musk.  *See, e.g.*, *In re First Alliance Mortg. Co.*, 471 F.3d 977,

7   994 (9th Cir. 2006) (sustaining a verdict for aiding and abetting fraud based on "reports that detailed

8   the fraudulent practices in which First Alliance was engaged" but without any evidence of

9   knowledge of duties owed to specifically identified class members).

10  Plaintiff further objects to this instruction on the ground that it is too long and gives undue

11  emphasis to this specific element of the claim.  Although Plaintiff agrees that an instruction

12  clarifying the knowledge requirement for aiding and abetting should be given, Plaintiff's instruction

13  better accomplishes that objective without unduly belaboring the issue.

14

15  **MICROSOFT'S POSITION**

16  Proposed Instruction 9 defines circumstantial evidence; there is no need to repeat the concept

17  here.  Calling it out here in this way unnecessarily and inappropriately elevates the concept for this

18  single claim.  Plaintiff's instruction 27-P also erroneously defines circumstantial evidence as

19  constructive knowledge (*i.e.*, "must have known"), but they are not the same.  Circumstantial

20  evidence can sometimes be evidence of actual knowledge, but constructive knowledge is knowledge

21  imputed by law.  *See* Microsoft's Authorities for Proposed Instruction 27-D.  Microsoft also objects

22  to "inference" because it confusingly suggests something other or different than circumstantial

23  evidence.

24

25  Date submitted: February 26, 2026.

26

27

28

1  **28-D.  AIDING AND ABETTING BREACH OF CHARITABLE TRUST –**
   **SUBSTANTIAL FACTOR (Microsoft Only)**
2

3      If you find there was a charitable trust that was breached by OpenAI, Inc., Altman, or

4  Brockman, and if you find that breach caused Musk harm, then you must consider whether

5  Microsoft's conduct was a "substantial factor" in causing harm to Musk.  For Microsoft's conduct

6  to be a "substantial factor," it must have been a factor of significance.  If the same harm would have

7  occurred without Microsoft's conduct, then that conduct was not a substantial factor.

8

9  **MICROSOFT'S AUTHORITY AND POSITION**

10     "Mere knowledge" and failure to prevent:  Taken from CACI No. 3610.

11     Substantial factor: California law supports including this definition.  "Substantial assistance

12 requires the plaintiff to allege that the actions of the aider/abettor proximately caused the harm on

13 which the primary liability is predicated."  *Neilson*, 290 F. Supp. 2d at 1129.  Further, assistance

14 must be a "substantial factor" that proximately caused the harm.  *Id.* (citation omitted); *see also*

15 CACI No. 430 (Causation: Substantial Factor) ("A substantial factor in causing harm is a factor that

16 a reasonable person would consider to have contributed to the harm.  It must be more than a remote

17 or trivial factor.  It does not have to be the only cause of the harm.  [Conduct is not a substantial

18 factor in causing harm if the same harm would have occurred without that conduct.]").  As the

19 Directions for Use of CACI No. 430 at 296 explain, "As phrased, this definition of 'substantial

20 factor' subsumes the 'but for test' of causation, that is, 'but for' the defendant's conduct, the

21 plaintiff's harm would not have occurred.  The optional last sentence makes this explicit, and in

22 some cases it may be error not to give this sentence."  (citation omitted).

23     Because substantial factor is an element of the CACI aiding-and-abetting instruction, the

24 element should be provided in that instruction (26-D), and the concept of "substantial factor" should

25 also be briefly explained to the jury.  That is especially true here given the evidence, acknowledged

26 by Plaintiff, that OpenAI needed compute and capital to continue to pursue its mission, and thus the

27 jury should resolve whether OpenAI would have received similar support regardless of Microsoft's

28 involvement.  *See* Microsoft's discussion of this issue and the harm requirement of aiding-and-

69

1  abetting law in connection with Proposed Instruction 26-D, *supra*.

2

3  **PLAINTIFF'S OBJECTIONS**

4         Plaintiff objects to this instruction in its entirety as unnecessary, confusing, and a

5  misstatement of the law.  A plaintiff claiming aiding and abetting breach of charitable trust is not

6  required to show some out-of-pocket loss or personal harm above and beyond the defendants'

7  wrongful use of the entrusted contributions to enrich themselves at the plaintiff's expense.  *See,*

8  *e.g.*, *County of San Bernardino v. Walsh*, 158 Cal. App. 4th 533, 542-43 (2007) ("Where 'a benefit

9  has been received by the defendant but the plaintiff has not suffered a corresponding loss or, in some

10 cases, any loss . . . [the] defendant may be under a duty to give to the plaintiff the amount by which

11 [the defendant] has been enriched.' ").

12        Plaintiff further objects to the statement "If the same harm would have occurred without

13 Microsoft's conduct, then that conduct was not a substantial factor" as a misstatement of law.  *See*

14 *Rutherford v. Owens-Illinois, Inc.*, 16 Cal. 4th 953, 969 (1997) ("The substantial factor standard . . .

15 subsumes the 'but for' test ***while reaching beyond it*** to satisfactorily address other situations, such

16 as those involving independent or concurrent causes in fact. . . .  [T]he substantial factor standard

17 [was] formulated to aid plaintiffs ***as a broader rule of causality than the 'but for'***

18 ***test*** . . . ."  (emphasis added)).  The model instruction that Microsoft cites describes this sentence as

19 "optional."  Judicial Council of California Civil Jury Instructions No. 430 Directions for Use (Oct.

20 2025).

21

22 Date submitted: February 26, 2026.

23

24

25

26

27

28

1   **29-D.  AIDING AND ABETTING BREACH OF CHARITABLE TRUST – RELIANCE**
2           **(Microsoft Only)**

3       Microsoft is entitled to rely on OpenAI's statements or representations regarding matters

4   that OpenAI was in a position to know.  You may consider such reliance in assessing whether

5   Microsoft had actual knowledge of such a trust and its breach or intended to aid and abet a breach

6   of a specific charitable trust created by Musk.  If Microsoft otherwise actually knew that such

7   statements or representations were false or inaccurate, its reliance on OpenAI's statements or

8   representations would not establish its lack of intent or knowledge.

9

10  **MICROSOFT'S AUTHORITY**

11      *See Thomas v. Thomas*, 2014 WL 12577078, at *2 (C.D. Cal. Dec. 11, 2014) (citing Cal.

12  Prob. Code § 18100, which provides that a third person with no knowledge that a trustee is exceeding

13  her powers or improperly exercising them is "fully protected," has no duty to inquire whether the

14  trustee has power to act or is properly exercising power, and "may assume without inquiry the

15  existence of a trust power and its proper exercise"); *Schroeder v. James B. Nutter & Co.*, 2013 WL

16  12114824, at *2-*3 (C.D. Cal. Jan. 29, 2013) (same); *Adler v. Manor Healthcare Corp.*, 7 Cal. App.

17  4th 1110, 1119 (1992) (third party has "absolute right" to rely on trustee's representations); *In re*

18  *Radnor Holdings Corp.*, 353 B.R. 820, 844 (Bankr. D. Del. 2006) (representations and warranties

19  preclude a finding that there was reason to know of fiduciary duties); *see also Oakley, Inc. v. Nike,*

20  *Inc.*, 988 F. Supp. 2d 1130, 1136 (C.D. Cal. 2013) ("[A] party accused of intentional interference is

21  entitled to have relied on factual representations from a person in a position to know those facts.").

22

23  **PLAINTIFF'S OBJECTIONS**

24      Plaintiff objects to this instruction in its entirety as a misstatement of law and as inconsistent

25  with this Court's summary judgment order.  *See* Order Denying in part Defendants' Motions for

26  Summary Judgment at 25 (Jan. 15, 2026) (Dkt. 390) ("OpenAI's . . . written agreements with

27  Microsoft . . . only contradict[] Musk's articulation.  [They do] not vitiate the facts identified

28  above."); *River Colony Estates Gen. P'ship v. Bayview Fin. Trading Grp., Inc.*, 287 F. Supp. 2d

71

1213, 1226 (S.D. Cal. 2003) (finding triable issue of fact as to whether mortgage brokers aided and abetted a fraud when an "officer's certificate" supposedly confirmed there was investor approval, but "plaintiffs present[ed] evidence that suggest[ed] that there was no reasonable basis for [the defendant] to rely on the officer's certificate and that [the mortgage brokers] may have known that the officer's certificate was false").

Date submitted: February 26, 2026.

## **FIRST AFFIRMATIVE DEFENSE**

## **30-P.  STATUTE OF LIMITATIONS (Plaintiff Only)**

The Defendants contend that Plaintiff's claims were not filed within the time set by law.  To succeed on this defense for any claim, the Defendants must prove by a preponderance of the evidence that Plaintiff's claim accrued before the applicable date for that claim.  A claim "accrues" when it is complete with all of its elements.  The applicable date for each of Plaintiff's claims is as follows:

| | |
|---|---|
| Breach of Charitable Trust | August 5, 2021 |
| Unjust Enrichment | August 5, 2022 |
| Fraud | August 5, 2021 |
| Constructive Fraud | August 5, 2021 |
| Aiding and Abetting | November 14, 2021 |

If the Defendants prove that Plaintiff's claim accrued before the applicable date for that claim, Plaintiff's claim was still filed on time if Plaintiff proves by a preponderance of the evidence either that (1) before that date, he did not discover or have reason to discover the claim; or (2) the Defendants were under a continuing or recurring obligation and continued to engage in the wrongful acts after the applicable date.

**PLAINTIFF'S AUTHORITY**

With respect to claim accrual, see *Aryeh v. Canon Bus. Sols., Inc.*, 55 Cal. 4th 1185, 1191 (2013) ("Traditionally at common law, a 'cause of action accrues "when [it] is complete with all of its elements"—those elements being wrongdoing, harm, and causation.' ").  Use of the term "harm" is confusing in a case like this where the plaintiff is seeking disgorgement of wrongful gains rather than compensatory damages.

With respect to the applicable limitations periods, see Judicial Council of California Civil Jury Instructions Nos. 338, 455, 1925, 4120 (2025 ed.) (modified); Order Denying in part Defendants' Motions for Summary Judgment at 22 (Jan. 15, 2026) (Dkt. 390) ("Musk's quasi-contract based unjust enrichment claim is subject to a two-year limitations period."); Cal. Civ. Code § 338(d) (three years for fraud); Cal. Prob. Code § 16460(a) (three years for breach of trust);  *Am.*

73

1   *Master Lease LLC v. Idanta Partners, Ltd.*, 225 Cal. App. 4th 1451, 1478 (2014) (limitations period

2   of aiding and abetting same as underlying claim).

3       With respect to the discovery rule, see *Aryeh v. Canon Bus. Sols., Inc.*, 55 Cal. 4th 1185,

4   1192 (2013) ("[T]he discovery rule, where applicable, 'postpones accrual of a cause of action until

5   the plaintiff discovers, or has reason to discover, the cause of action.'"); *Fox v. Ethicon Endo-*

6   *Surgery, Inc.*, 35 Cal. 4th 797, 807 (2005) ("An important exception to the general rule of accrual

7   is the 'discovery rule,' which postpones accrual of a cause of action until the plaintiff discovers, or

8   has reason to discover, the cause of action."); *Media Rights Techs., Inc. v. Microsoft Corp.*, 922 F.3d

9   1014, 1026 (9th Cir. 2019) ("Under California law, a cause of action . . . does not accrue 'until the

10  plaintiff discovers, or has reason to discover, the cause of action.'").

11      With respect to the continuous accrual doctrine, see *Aryeh v. Canon Bus. Sols., Inc.*, 55 Cal.

12  4th 1185, 1198-99 (2013) ("[C]ontinuous accrual applies whenever there is a continuing or recurring

13  obligation:  'When an obligation or liability arises on a recurring basis, a cause of action accrues

14  each time a wrongful act occurs, triggering a new limitations period.'  Because each new breach of

15  such an obligation provides all the elements of a claim – wrongdoing, harm, and causation – each

16  may be treated as an independently actionable wrong with its own time limit for recovery." (citations

17  omitted)); *Water Audit Cal. v. Merced Irrig. Dist.*, 111 Cal. App. 5th 1147, 1191-92 (2025)

18  (continuous accrual doctrine applies where "a continuing duty is breached on a recurring or ongoing

19  basis"); *Gilkyson v. Disney Enters.*, 244 Cal. App. 4th 1336, 1341-42 (2016) ("Under the continuous

20  accrual doctrine each breach of a recurring obligation is independently actionable."); *J.B. Painting*

21  *& Waterproofing, Inc. v. RGB Holdings, LLC*, 650 Fed. App'x 450, 453-54 (9th Cir. 2016) (under

22  the continuous accrual doctrine, "each delivery . . . in a series of orders . . . triggers its own

23  limitations period").

24

25  **DEFENDANTS' OBJECTIONS**

26      The OpenAI Defendants object to this instruction in full and offer competing statute of

27  limitations instructions for each claim, Nos. 31-D, 32-D, 33-D, and 34-D. The Parties' positions

28  with respect these instructions are set forth in brief statements within Nos. 31-D, 32-D, 33-D, and

74

34-D.  As reflected in those statements, the Parties' positions regarding the applicability of the continuous accrual doctrine and Plaintiff's proposed continuous accrual instruction are set forth in the Disputed Legal Issues section of the Joint Pretrial Conference Statement (Pt. 5).

The OpenAI Defendants object to the use of a single statute of limitations instruction; separate instructions are warranted given the different relevant dates and different elements of each claim.

The OpenAI Defendants also object to Musk's proposal to strip out the phrase "claimed harm" and instead refer to "accrual." "Claimed harm" is a standard phrase used in CACI instructions on statutes of limitations and will not confuse the jury, as Musk contends. *E.g.*, CACI 338, 455, 1925. The language is also warranted because Musk is seeking personal recovery for this claim in the form of disgorgement and exemplary damages. It is Musk's proposal, using the legal term of art "accrual," that will needlessly confuse the jury.

Microsoft also objects to this instruction in full and offers a competing statute of limitations instruction, No. 35-D.  The Parties' positions with respect to that instruction are set forth therein.

Date submitted: February 26, 2026.

1  **31-D.  STATUTE OF LIMITATIONS – BREACH OF CHARITABLE TRUST**
2  **(Defendants Only)**

3  The Defendants contend that Plaintiff's breach of charitable trust claim was not filed within
4  the time set by law.  To succeed on this defense, the Defendants must prove by a preponderance of
5  the evidence that Musk's claimed harm occurred before August 5, 2021.

6  If the Defendants prove that Musk's claimed harm occurred before August 5, 2021,
7  Plaintiff's claim was still filed on time if Plaintiff proves by a preponderance of the evidence that
8  before that date, he did not discover, and did not know of facts that would have caused a reasonable
9  person to suspect, that he had suffered the claimed harm, and with reasonable diligence could not
10  have discovered those facts.

11

12  **OPENAI DEFENDANTS' AUTHORITY AND POSITION**

13  Judicial Council of California Civil Jury Instructions No. 338 (2025 ed.) (Affirmative-
14  Defense – Statute of Limitations); CACI 455 (Statute of Limitations—Delayed Discovery).

15  Musk agrees that the applicable statute of limitations is the three-year period for claims
16  against trustees for breach of trust. Cal. Prob. Code § 16460(a)(2) ("If an interim or final account in
17  writing or other written report does not adequately disclose the existence of a claim against the
18  trustee for breach of trust or if a beneficiary does not receive any written account or report, the claim
19  is barred as to that beneficiary unless a proceeding to assert the claim is commenced within three
20  years after the beneficiary discovered, or reasonably should have discovered, the subject of the
21  claim."). This provision "applies to charitable trusts." *Id.* § 15004; *Noggle v. Bank of Am.*, 70 Cal.
22  App. 4th 853, 859 (1999) (three-year period under § 16460(a) is "applicable to all claims for breach
23  of trust"); *Mosier v. Erwin & Johnson, LLP*, 2013 WL 12122421, at *5 (C.D. Cal. May 29, 2013)
24  (applying § 16460(a)(2) to breach of trust claim).

25  Musk agrees that Section 16460(a)(2) incorporates the discovery rule.  *Britton v. Girardi*,
26  235 Cal. App. 4th 721, 734 (2015) ("Under [§ 16460], the duty of inquiry is triggered where there
27  is sufficient information . . . to put the beneficiary on notice to take action," and "a duty of inquiry
28  exists even where the alleged wrongdoer is a fiduciary."); *Kranich v. Girardi*, 2016 WL 11772428,

76

1    at *5 n.4 (C.D. Cal. June 6, 2016) ("In other words, when the beneficiary has received no accounting,

2    section 16460 simply incorporates the delayed discovery rule.").

3        Musk objects to the phrase "claimed harm" and would instead refer to "accrual." "Claimed

4    harm" is a standard phrase used in CACI instructions on statutes of limitations and will not confuse

5    the jury, as Musk contends. *E.g.*, CACI 338, 455, 1925. The language is also warranted because

6    Musk is seeking personal recovery for this claim in the form of disgorgement and exemplary

7    damages. It is Musk's proposal, using the legal term of art "accrual," that will needlessly confuse

8    the jury.

9        Musk argues that he can satisfy the discovery rule by proving that he either "did not discover,

10    and did not know of facts that would have caused a reasonable person to suspect, that he had suffered

11    the claimed harm," *or* "with reasonable diligence could not have discovered those facts"[7]—and that

12    he does not have to prove both. That is not consistent with CACI or California law. While CACI

13    455 includes language on the two issues in the disjunctive, the CACI verdict form that implements

14    CACI 455 explains that "[i]f both delayed discovery and nondiscovery despite reasonable

15    investigation are at issue, use both options." CACI VF-410 (Statute of Limitations—Delayed

16    Discovery—Reasonable Investigation Would Not Have Disclosed Pertinent Facts) (Directions for

17    Use). Other CACI delayed discovery instructions also include both options in the conjunctive. CACI

18    1722, 1925. Furthermore, as the case cited by Musk explains, a plaintiff invoking the discovery rule

19    must show both "(1) the time and manner of discovery *and* (2) the inability to have made earlier

20    discovery despite reasonable diligence." *Fox* v. *Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 808

21    (2005) (emphasis in original).

22        Finally, the OpenAI Defendants object to Musk's proposal to include an instruction

23    regarding the continuous accrual theory within each statute of limitations instruction. For the Court's

24    convenience, the OpenAI Defendants set forth their opposition to such an instruction in the Joint

---

26    [7] Musk proposes to replace "those facts" at the end of the sentence with "the claimed harm." Musk's
27    proposal should be rejected because it would incorrectly suggest to the jury that the reasonable
     diligence requirement is tied to discovery of the entire claim. The reasonable diligence requirement
     is tied to "facts" that would give a reasonably prudent person "at least some suspicion of possible
28    wrongdoing." *Wu* v. *Sunrider Corp.*, 793 F. App'x 507, 511 (9th Cir. 2019).

1 Pretrial Conference Statement (Disputed Legal Issues Pt. 5) and incorporate it here by reference. If

2 a continuous accrual instruction is used, however, it should be given as follows:

3       Alternatively, Musk's claim was still filed on time if Musk proves by a preponderance of the

4 evidence both of the following:

5         1. That the OpenAI Defendants' duties under any charitable trust created by Musk were

6 divided into separate intervals of time; and

7         2. That at least one instance of all the elements of the claim occurred after August 5,

8 2021.

9

10 **PLAINTIFF'S OBJECTIONS**

11       The proposed instruction improperly omits any reference to the continuous accrual doctrine.

12 *See Aryeh v. Canon Bus. Sols., Inc.*, 55 Cal. 4th 1185, 1198-99 (2013) ("[C]ontinuous accrual applies

13 whenever there is a continuing or recurring obligation: 'When an obligation or liability arises on a

14 recurring basis, a cause of action accrues each time a wrongful act occurs, triggering a new

15 limitations period.' Because each new breach of such an obligation provides all the elements of a

16 claim – wrongdoing, harm, and causation – each may be treated as an independently actionable

17 wrong with its own time limit for recovery." (citations omitted)); *Water Audit Cal. v. Merced Irrig.*

18 *Dist.*, 111 Cal. App. 5th 1147, 1191-92 (2025) (continuous accrual doctrine applies where "a

19 continuing duty is breached on a recurring or ongoing basis"); *Gilkyson v. Disney Enters.*, 244 Cal.

20 App. 4th 1336, 1341-42 (2016) ("Under the continuous accrual doctrine each breach of a recurring

21 obligation is independently actionable."); *J.B. Painting & Waterproofing, Inc. v. RGB Holdings,*

22 *LLC*, 650 Fed. App'x 450, 453-54 (9th Cir. 2016) (under the continuous accrual doctrine, "each

23 delivery . . . in a series of orders . . . triggers its own limitations period"). The alternative instruction

24 that the continuous accrual doctrine applies only to duties "divided into separate intervals of time"

25 is also flatly contrary to binding California law. *See Aryeh*, 55 Cal. 4th at 1198-99; *Water Audit*,

26 111 Cal. App. 5th at 1191-92. Plaintiff's position is set forth at greater length in the Joint Pretrial

27 Conference Statement (Disputed Legal Issues Pt. 5) and is incorporated here by reference.

28

1    In addition, the proposed instruction erroneously states that Musk must prove that "before

2  that date, he did not discover . . . facts that would have caused a reasonable person to suspect[] the

3  claimed fraud, **and** with reasonable diligence could not have discovered those facts," when those

4  are alternative bases for invoking the discovery rule.  *See* Judicial Council of California Civil Jury

5  Instructions No. 455 (2025 ed.) (listing these two prongs as alternative instructions); *Fox v. Ethicon*

6  *Endo-Surgery*, 35 Cal. 4th 797, 814 (2005) (discovery rule "presuppose[s] a situation in which the

7  factual basis for a claim was reasonably discoverable through diligent investigation").

8    Plaintiff further objects to the phrase "claimed harm" as confusing and a misstatement of the

9  law in a case where the Plaintiff is seeking disgorgement of wrongful gains rather than compensatory

10  damages.  *See, e.g.*, *County of San Bernardino v. Walsh*, 158 Cal. App. 4th 533, 542-43 (2007)

11  ("Where 'a benefit has been received by the defendant but the plaintiff has not suffered a

12  corresponding loss or, in some cases, any loss . . . [the] defendant may be under a duty to give to the

13  plaintiff the amount by which [the defendant] has been enriched.' ").

14    To address these issues, the Court should give Musk's proposed instruction instead.

15  Alternatively, the Court should modify the second paragraph of Defendants' proposed instruction

16  to state:  "If the Defendants prove that Musk's claim accrued before August 5, 2021, Musk's claim

17  was still filed on time if Musk proves by a preponderance of the evidence either that (1) before that

18  date, he did not discover, and did not know of facts that would have caused a reasonable person to

19  suspect, the claim, or with reasonable diligence could not have discovered the claim; or (2) the

20  Defendants were under a continuing or recurring obligation and continued to engage in the wrongful

21  acts after August 5, 2021."

22

23  Date submitted: February 26, 2026.

24

25

26

27

28

**32-D.  STATUTE OF LIMITATIONS – UNJUST ENRICHMENT (OpenAI Defendants Only)**

The OpenAI Defendants contend that Plaintiff's unjust enrichment claim was not filed within the time set by law.  To succeed on this defense, the OpenAI Defendants must prove by a preponderance of the evidence that Musk's claimed harm occurred before August 5, 2022.

If the OpenAI Defendants prove that Musk's claimed harm occurred before August 5, 2022, Plaintiff's claim was still filed on time if Plaintiff proves by a preponderance of the evidence that before that date, he did not discover, and did not know of facts that would have caused a reasonable person to suspect, that he had suffered the claimed harm, and with reasonable diligence could not have discovered those facts.

**OPENAI DEFENDANTS' AUTHORITY AND POSITION**

Judicial Council of California Civil Jury Instructions No. 338 (2025 ed.) (Affirmative-Defense – Statute of Limitations); *id.* No. 455 (Statute of Limitations – Delayed Discovery).  The Court held that "Musk's quasi-contract based unjust enrichment claim is subject to a two-year limitations period" under Cal. Civ. Proc. Code § 339(1). Summary Judgment Order at 22-23 (Dkt. 390).  CACI 338 is the statute of limitations instruction for claims governed by § 339(1) for "[a]n action upon a contract, obligation or liability not founded upon an instrument of writing."

The second paragraph is based on CACI 455, to which CACI 338's Directions for Use refer "[i]f the plaintiff alleges that the delayed-discovery rule applies to avoid the limitation defense."

Musk objects to the phrase "claimed harm" and would instead refer to "accrual." "Claimed harm" is a standard phrase used in CACI instructions on statutes of limitations and will not confuse the jury, as Musk contends. *E.g.*, CACI 338, 455, 1925. The language is also warranted because Musk is seeking personal recovery for this claim in the form of disgorgement and exemplary damages. It is Musk's proposal, using the legal term of art "accrual," that will needlessly confuse the jury.

Musk argues that he can satisfy the discovery rule by proving that he either "did not discover, and did not know of facts that would have caused a reasonable person to suspect, that he had suffered

1   the claimed harm," or "with reasonable diligence could not have discovered those facts"[8]—and that

2   he does not have to prove both. That is not consistent with CACI or California law. While CACI

3   455 includes language on the two issues in the disjunctive, the CACI verdict form that implements

4   CACI 455 explains that "[i]f both delayed discovery and nondiscovery despite reasonable

5   investigation are at issue, use both options." CACI VF-410 (Statute of Limitations—Delayed

6   Discovery—Reasonable Investigation Would Not Have Disclosed Pertinent Facts) (Directions for

7   Use). Other CACI delayed discovery instructions also include both options in the conjunctive. CACI

8   1722, 1925. Furthermore, as the case cited by Musk explains, a plaintiff invoking the discovery rule

9   must show both "(1) the time and manner of discovery *and* (2) the inability to have made earlier

10  discovery despite reasonable diligence." *Fox* v. *Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 808

11  (2005) (emphasis in original).

12      Finally, the OpenAI Defendants object to Musk's proposal to include an instruction

13  regarding the continuous accrual theory within each statute of limitations instruction. For the Court's

14  convenience, the OpenAI Defendants set forth their opposition to such an instruction in the Joint

15  Pretrial Conference Statement (Disputed Legal Issues Pt. 5) and incorporate it here by reference. If

16  a continuous accrual instruction is used, however, it should be given as follows:

17      Alternatively, Musk's claim was still filed on time if Musk proves by a preponderance of the

18  evidence both of the following:

19      1. That the OpenAI Defendants' duties under any implied agreement with Musk were

20  divided into separate intervals of time; and

21      2. That at least one instance of all the elements of the claim occurred after August 5, 2022.

22

23

24

25

_____

26  [8] Musk proposes to replace "those facts" at the end of the sentence with "the claimed harm." Musk's
    proposal should be rejected because it would incorrectly suggest to the jury that the reasonable

27  diligence requirement is tied to discovery of the entire claim. The reasonable diligence requirement
    is tied to "facts" that would give a reasonably prudent person "at least some suspicion of possible

28  wrongdoing." *Wu* v. *Sunrider Corp.*, 793 F. App'x 507, 511 (9th Cir. 2019).

1  **PLAINTIFF'S OBJECTIONS**

2      The proposed instruction improperly omits any reference to the continuous accrual doctrine.

3  *See Aryeh v. Canon Bus. Sols., Inc.*, 55 Cal. 4th 1185, 1198-99 (2013) ("[C]ontinuous accrual applies

4  whenever there is a continuing or recurring obligation: 'When an obligation or liability arises on a

5  recurring basis, a cause of action accrues each time a wrongful act occurs, triggering a new

6  limitations period.' Because each new breach of such an obligation provides all the elements of a

7  claim – wrongdoing, harm, and causation – each may be treated as an independently actionable

8  wrong with its own time limit for recovery." (citations omitted)); *Water Audit Cal. v. Merced Irrig.*

9  *Dist.*, 111 Cal. App. 5th 1147, 1191-92 (2025) (continuous accrual doctrine applies where "a

10 continuing duty is breached on a recurring or ongoing basis"); *Gilkyson v. Disney Enters.*, 244 Cal.

11 App. 4th 1336, 1341-42 (2016) ("Under the continuous accrual doctrine each breach of a recurring

12 obligation is independently actionable."); *J.B. Painting & Waterproofing, Inc. v. RGB Holdings,*

13 *LLC*, 650 Fed. App'x 450, 453-54 (9th Cir. 2016) (under the continuous accrual doctrine, "each

14 delivery . . . in a series of orders . . . triggers its own limitations period"). The alternative instruction

15 that the continuous accrual doctrine applies only to duties "divided into separate intervals of time"

16 is also flatly contrary to binding California law. *See Aryeh*, 55 Cal. 4th at 1198-99; *Water Audit*,

17 111 Cal. App. 5th at 1191-92. Plaintiff's position is set forth at greater length in the Joint Pretrial

18 Conference Statement (Disputed Legal Issues Pt. 5) and is incorporated here by reference.

19      In addition, the proposed instruction erroneously states that Musk must prove that "before

20 that date, he did not discover . . . facts that would have caused a reasonable person to suspect[] the

21 claimed fraud, ***and*** with reasonable diligence could not have discovered those facts," when those

22 are alternative bases for invoking the discovery rule. *See* Judicial Council of California Civil Jury

23 Instructions No. 455 (2025 ed.) (listing these two prongs as alternative instructions); *Fox v. Ethicon*

24 *Endo-Surgery*, 35 Cal. 4th 797, 814 (2005) (discovery rule "presuppose[s] a situation in which the

25 factual basis for a claim was reasonably discoverable through diligent investigation").

26      Plaintiff further objects to the phrase "claimed harm" as confusing and a misstatement of the

27 law in a case where the Plaintiff is seeking disgorgement of wrongful gains rather than compensatory

28

damages.  *See, e.g.*, *Prakashpalan v. Engstrom, Lipscomb & Lack*, 223 Cal. App. 4th 1105, 1132 (2014).

To address these issues, the Court should give Musk's proposed instruction instead. Alternatively, the Court should modify the second paragraph of Defendants' proposed instruction to state: "If the Defendants prove that Musk's claim accrued before August 5, 2022, Musk's claim was still filed on time if Musk proves by a preponderance of the evidence either that (1) before that date, he did not discover facts that would have caused a reasonable person to suspect the claim, or with reasonable diligence could not have discovered the claim; or (2) the Defendants were under a continuing or recurring obligation and continued to engage in the wrongful acts after August 5, 2022."

Date submitted: February 26, 2026.

### 33-D.  STATUTE OF LIMITATIONS – FRAUD (OpenAI Defendants Only)

The OpenAI Defendants contend that Plaintiff's fraud claim was not filed within the time set by law.  To succeed on this defense, the OpenAI Defendants must prove by a preponderance of the evidence that Musk's claimed harm occurred before August 5, 2021.

If the OpenAI Defendants prove that Musk's claimed harm occurred before August 5, 2021, Plaintiff's claim was still filed on time if Plaintiff proves by a preponderance of the evidence that before that date, he did not discover facts that would have caused a reasonable person to suspect the claimed fraud, and with reasonable diligence could not have discovered those facts.

### OPENAI DEFENDANTS' AUTHORITY AND POSITION

Judicial Council of California Civil Jury Instructions No. 1925 (2025 ed.) (Affirmative Defense – Statute of Limitations – Fraud or Mistake).

Musk objects to the phrase "claimed harm" and would instead refer to "accrual." "Claimed harm" is a standard phrase used in CACI instructions on statutes of limitations and will not confuse the jury, as Musk contends. *E.g.*, CACI 338, 455, 1925. The language is also warranted because Musk is seeking personal recovery for this claim in the form of disgorgement and exemplary damages. Harm is, moreover, an essential element of Musk's fraud claim. It is Musk's proposal, using the legal term of art "accrual," that will needlessly confuse the jury.

While the second paragraph of CACI 1925 uses the phrase "discover facts constituting the fraud," the proposed instruction uses the phrase "discover facts that would have caused a reasonable person to suspect the claimed fraud."  The commentary to CACI 1925 recognizes that the "discovery element has been interpreted to mean the discovery by the aggrieved party of the fraud or facts that would lead a reasonably prudent person to *suspect* fraud."  CACI 1925 Sources and Authority (quoting *Doe* v. *Roman Catholic Bishop of Sacramento*, 189 Cal. App. 4th 1423, 1430 (2010)) (emphasis in *Doe*).  Furthermore, the applicable statute of limitations is Cal. Civ. Proc. Code § 338(d), Summary Judgment Order at 19 (Dkt. 390), and controlling case law makes clear that the "suspect" standard governs.  *E.g.*, *Hamilton Materials, Inc.* v. *Dow Chem. Corp.*, 494 F.3d 1203, 1206 (9th Cir. 2007) (fraud claim accrued when plaintiff "knew enough about the controversy to be

84

1   suspicious that the position taken by [defendants] was false"); *Vera* v. *REL-BC, LLC*, 66 Cal. App.

2   5th 57, 69 (2021) (fraud claim accrued when plaintiff had "reason to be suspicious and should have

3   investigated [defendants'] fraud").  Finally, other CACI statute of limitations instructions use the

4   "suspect" standard when instructing on the discovery rule. *See* CACI 455, 555, 4120, 4421.

5        Musk argues that he can satisfy the discovery rule by proving that he either "did not discover

6   facts that would have caused a reasonable person to suspect the claimed fraud," or "with reasonable

7   diligence could not have discovered those facts"[9]—and that he does not have to prove both. That is

8   not consistent with CACI or California law. While CACI 455 includes language on the two issues

9   in the disjunctive, the CACI verdict form that implements CACI 455 explains that "[i]f both delayed

10   discovery and nondiscovery despite reasonable investigation are at issue, use both options." CACI

11   VF-410 (Statute of Limitations—Delayed Discovery—Reasonable Investigation Would Not Have

12   Disclosed Pertinent Facts) (Directions for Use). In any event, the instruction here is based on CACI

13   1925, which lists both requirements in the conjunctive. Furthermore, as the case cited by Musk

14   explains, a plaintiff invoking the discovery rule must show both "(1) the time and manner of

15   discovery *and* (2) the inability to have made earlier discovery despite reasonable diligence." *Fox* v.

16   *Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 808 (2005) (emphasis in original).

17

18   **PLAINTIFF'S OBJECTIONS**

19        The proposed instruction erroneously states that Musk must prove that "before that date, he

20   did not discover . . . facts that would have caused a reasonable person to suspect[ ] the claimed fraud,

21   ***and*** with reasonable diligence could not have discovered those facts," when those are alternative

22   bases for invoking the discovery rule.  *See* Judicial Council of California Civil Jury Instructions No.

23   455 (2025 ed.) (listing these two prongs as alternative instructions); *Fox v. Ethicon Endo-Surgery*,

24

25

26   [9] Musk proposes to replace "those facts" at the end of the sentence with "the claimed fraud." Musk's proposal should be rejected because it would incorrectly suggest to the jury that the reasonable diligence requirement is tied to discovery of the entire claim. The reasonable

27   diligence requirement is tied to "facts" that would give a reasonably prudent person "at least some suspicion of possible

28   wrongdoing." *Wu* v. *Sunrider Corp.*, 793 F. App'x 507, 511 (9th Cir. 2019).

35 Cal. 4th 797, 814 (2005) (discovery rule "presuppose[s] a situation in which the factual basis for a claim was reasonably discoverable through diligent investigation").

Plaintiff further objects to the phrase "claimed harm" as confusing and a misstatement of the law in a case where the Plaintiff is seeking disgorgement of wrongful gains rather than compensatory damages. *See, e.g.*, *Ward v. Taggart*, 51 Cal. 2d 736, 742-43 (1959).

To address these issues, the Court should give Musk's proposed instruction instead. Alternatively, the Court should modify the second paragraph of Defendants' proposed instruction to state: "If the Defendants prove that the fraud occurred before August 5, 2021, Musk's claim was still filed on time if Musk proves by a preponderance of the evidence that before that date, he did not discover facts that would have caused a reasonable person to suspect the claimed fraud, or with reasonable diligence could not have discovered the claimed fraud.

Date submitted: February 26, 2026.

### 34-D.  STATUTE OF LIMITATIONS – CONSTRUCTIVE FRAUD (OpenAI Defendants Only)

The OpenAI Defendants contend that Plaintiff's constructive fraud claim was not filed within the time set by law.  To succeed on this defense, the OpenAI Defendants must prove by a preponderance of the evidence that Musk's claimed harm occurred before August 5, 2021.

If the OpenAI Defendants prove that Musk's claimed harm occurred before August 5, 2021, Plaintiff's claim was still filed on time if Plaintiff proves by a preponderance of the evidence that before that date, he did not discover facts that would have caused a reasonable person to suspect the claimed constructive fraud, and with reasonable diligence could not have discovered those facts.


**OPENAI DEFENDANTS' AUTHORITY AND POSITION**

Judicial Council of California Civil Jury Instructions No. 1925 (2025 ed.) (Affirmative Defense – Statute of Limitations – Fraud or Mistake); *id.* No. 4120 (Directions for Use recognizing that the three-year limitations period under Cal. Civ. Proc. Code § 338(d) applies to constructive fraud claims; *Isaacs v. USC Keck Sch. of Med.*, 853 F. App'x 114, 116 (9th Cir. 2021) (applying § 338(d) to constructive fraud claim).

Musk objects to the phrase "claimed harm" and would instead refer to "accrual." "Claimed harm" is a standard phrase used in CACI instructions on statutes of limitations and will not confuse the jury, as Musk contends. *E.g.*, CACI 338, 455, 1925. The language is also warranted because Musk is seeking personal recovery for this claim in the form of disgorgement and exemplary damages. Harm is, moreover, an essential element of Musk's constructive fraud claim. It is Musk's proposal, using the legal term of art "accrual," that will needlessly confuse the jury.

While the second paragraph of CACI 1925 uses the phrase "discover facts constituting the fraud," the proposed instruction uses the phrase "discover facts that would have caused a reasonable person to suspect the claimed constructive fraud."  The commentary to CACI 1925 recognizes that the "discovery element has been interpreted to mean the discovery by the aggrieved party of the fraud or facts that would lead a reasonably prudent person to *suspect* fraud."  CACI 1925 Sources and Authority (quoting *Doe* v. *Roman Catholic Bishop of Sacramento*, 189 Cal. App. 4th 1423,

1   1430 (2010)) (emphasis in *Doe*).  Furthermore, the applicable statute of limitations is Cal. Civ. Proc.

2   Code § 338(d), *Isaacs*, 853 F. App'x at 116, and controlling case law makes clear that the "suspect"

3   standard governs.  *E.g.*, *Hamilton Materials, Inc.* v. *Dow Chem. Corp.*, 494 F.3d 1203, 1206 (9th

4   Cir. 2007) (fraud claim accrued when plaintiff "knew enough about the controversy to be suspicious

5   that the position taken by [defendants] was false"); *Vera* v. *REL-BC, LLC*, 66 Cal. App. 5th 57, 69

6   (2021) (fraud claim accrued when plaintiff had "reason to be suspicious and should have

7   investigated [defendants'] fraud").  The "suspect" standard also applies to constructive fraud claims.

8   *Isaacs*, 853 F. App'x at 116 (holding that limitations period for constructive fraud claim "begins to

9   run when the plaintiff suspects or should have suspected that an injury was caused by wrongdoing").

10  Finally, other CACI statute of limitations instructions use the "suspect" standard when instructing

11  on the discovery rule.  *See* CACI 455, 555, 4120, 4421.

12          Musk argues that he can satisfy the discovery rule by proving that he either "did not discover

13  facts that would have caused a reasonable person to suspect the claimed constructive fraud," or

14  "with reasonable diligence could not have discovered those facts"[10]—and that he does not have to

15  prove both. That is not consistent with CACI or California law. While CACI 455 includes language

16  on the two issues in the disjunctive, the CACI verdict form that implements CACI 455 explains that

17  "[i]f both delayed discovery and nondiscovery despite reasonable investigation are at issue, use both

18  options." CACI VF-410 (Statute of Limitations—Delayed Discovery—Reasonable Investigation

19  Would Not Have Disclosed Pertinent Facts) (Directions for Use). In any event, the instruction here

20  is based on CACI 1925, which lists both requirements in the conjunctive. Furthermore, as the case

21  cited by Musk explains, a plaintiff invoking the discovery rule must show both "(1) the time and

22  manner of discovery *and* (2) the inability to have made earlier discovery despite reasonable

23  diligence." *Fox* v. *Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 808 (2005) (emphasis in original).

24

25

---

26  [10] Musk proposes to replace "those facts" at the end of the sentence with "the claimed constructive
    fraud." Musk's proposal should be rejected because it would incorrectly suggest to the jury that the
27  reasonable diligence requirement is tied to discovery of the entire claim. The reasonable diligence
    requirement is tied to "facts" that would give a reasonably prudent person "at least some suspicion
28  of possible wrongdoing." *Wu* v. *Sunrider Corp.*, 793 F. App'x 507, 511 (9th Cir. 2019).

1    **PLAINTIFF'S OBJECTIONS**

2        The proposed instruction erroneously states that Musk must prove that "before that date, he

3    did not discover . . . facts that would have caused a reasonable person to suspect[ ] the claimed fraud,

4    ***and*** with reasonable diligence could not have discovered those facts," when those are alternative

5    bases for invoking the discovery rule.  *See* Judicial Council of California Civil Jury Instructions No.

6    455 (2025 ed.) (listing these two prongs as alternative instructions); *Fox v. Ethicon Endo-Surgery*,

7    35 Cal. 4th 797, 814 (2005) (discovery rule "presuppose[s] a situation in which the factual basis for

8    a claim was reasonably discoverable through diligent investigation").

9        Plaintiff further objects to the phrase "claimed harm" as confusing and a misstatement of the

10    law in a case where the Plaintiff is seeking disgorgement of wrongful gains rather than compensatory

11    damages.  *See, e.g.*, *Ward v. Taggart*, 51 Cal. 2d 736, 742-43 (1959).

12        To address these issues, the Court should give Musk's proposed instruction instead.

13    Alternatively, the Court should modify the second paragraph of Defendants' proposed instruction

14    to state:  "If the Defendants prove that Musk's claim accrued before August 5, 2021, Musk's claim

15    was still filed on time if Musk proves by a preponderance of the evidence that before that date, he

16    did not discover facts that would have caused a reasonable person to suspect the claimed

17    constructive fraud, or with reasonable diligence could not have discovered the claimed constructive

18    fraud.

19

20    Date submitted: February 26, 2026.

21

22

23

24

25

26

27

28

89

1  **35-D.  STATUTE OF LIMITATIONS – AIDING AND ABETTING BREACH OF CHARITABLE TRUST (Microsoft Only)**

2

3      Microsoft contends that Plaintiff's aiding-and-abetting claim was not filed within the time

4  set by law.  To succeed on this defense, Microsoft must prove that any of the claimed harm to Musk

5  as a result of Microsoft's conduct occurred before November 14, 2021.

6      If Microsoft proves that any claimed harm from Microsoft's conduct occurred before

7  November 14, 2021, Plaintiff's claim was still filed on time if Plaintiff proves that before that date,

8  he did not discover facts that would have caused a reasonable person to suspect that Microsoft

9  participated in causing his harm, and he could not have discovered those facts with reasonable

10  diligence.

11

12  **MICROSOFT'S AUTHORITY**

13      Judicial Council of California Civil Jury Instructions No. 338 (2025 ed.) (Affirmative

14  Defense – Statute of Limitations); *American Master Lease LLC v. Idanta Partners, Ltd.*, 225 Cal.

15  App. 4th 1451, 1478 (2014) ("The statute of limitations for a cause of action for aiding and abetting

16  a tort generally is the same as the underlying tort."); *see also* OpenAI's discussion of the statute of

17  limitations for breach of charitable trust and the applicable delayed discovery rule, Proposed

18  Instruction No. 31-D, which Microsoft incorporates herein by reference.

19

20  **PLAINTIFF'S OBJECTIONS**

21      The proposed instruction improperly omits any reference to the continuous accrual doctrine.

22  *See Aryeh v. Canon Bus. Sols., Inc.*, 55 Cal. 4th 1185, 1198-99 (2013) ("[C]ontinuous accrual applies

23  whenever there is a continuing or recurring obligation:  'When an obligation or liability arises on a

24  recurring basis, a cause of action accrues each time a wrongful act occurs, triggering a new

25  limitations period.'  Because each new breach of such an obligation provides all the elements of a

26  claim – wrongdoing, harm, and causation – each may be treated as an independently actionable

27  wrong with its own time limit for recovery."); *Water Audit Cal. v. Merced Irrig. Dist.*, 111 Cal. App.

28  5th 1147, 1191-92 (2025) (continuous accrual doctrine applies where "a continuing duty is breached

90

1  on a recurring or ongoing basis"); *Gilkyson v. Disney Enters.*, 244 Cal. App. 4th 1336, 1341-42

2  (2016) ("Under the continuous accrual doctrine each breach of a recurring obligation is

3  independently actionable."); *J.B. Painting & Waterproofing, Inc. v. RGB Holdings, LLC*, 650 Fed.

4  App'x 450, 453-54 (9th Cir. 2016) (under the continuous accrual doctrine, "each delivery . . . in a

5  series of orders . . . triggers its own limitations period").  The alternative instruction that the

6  continuous accrual doctrine applies only to duties "divided into separate intervals of time" is also

7  flatly contrary to binding California law.  *See Aryeh*, 55 Cal. 4th at 1198-99; *Water Audit*, 111 Cal.

8  App. 5th at 1191-92.  Plaintiff's position is set forth at greater length in the Joint Pretrial Conference

9  Statement (Disputed Legal Issues Pt. 5) and is incorporated here by reference.

10      In addition, the proposed instruction erroneously states that Musk must prove that "before

11  that date, he did not discover facts that would have caused a reasonable person to suspect the claimed

12  fraud, **and** with reasonable diligence could not have discovered those facts," when those are

13  alternative bases for invoking the discovery rule.  *See* Judicial Council of California Civil Jury

14  Instructions Nos. 455 (2025 ed.) (listing these two prongs as alternative instructions); *Fox v. Ethicon

15  Endo-Surgery*, 35 Cal. 4th 797, 814 (2005) (discovery rule "presuppose[s] a situation in which the

16  factual basis for a claim was reasonably discoverable through diligent investigation").

17      Plaintiff further objects to the phrase "claimed harm" as confusing and a misstatement of the

18  law in a case where the Plaintiff is seeking disgorgement of wrongful gains rather than compensatory

19  damages.  *See, e.g.*, *County of San Bernardino v. Walsh*, 158 Cal. App. 4th 533, 542-43 (2007)

20  ("Where 'a benefit has been received by the defendant but the plaintiff has not suffered a

21  corresponding loss or, in some cases, any loss . . . [the] defendant may be under a duty to give to the

22  plaintiff the amount by which [the defendant] has been enriched.' ").

23      To address these issues, the Court should give Musk's proposed instruction instead.

24  Alternatively, the Court should modify the second paragraph of Microsoft's proposed instruction to

25  state: "If the Defendants prove that Musk's claim accrued before November 14, 2021, Musk's claim

26  was still filed on time if Musk proves by a preponderance of the evidence either that (1) before that

27  date, he did not discover, and did not know of facts that would have caused a reasonable person to

28  suspect, the claim, or with reasonable diligence could not have discovered the claim; or (2) the

91

Defendants were under a continuing or recurring obligation and continued to engage in the wrongful acts after November 14, 2021."

Date submitted: February 26, 2026.

## SECOND AFFIRMATIVE DEFENSE

**36-D. LACHES (Defendants Only)**

The Defendants contend that Plaintiff unreasonably delayed in bringing this lawsuit. To succeed on this defense, the Defendants must prove all of the following by a preponderance of the evidence:

1. that Plaintiff failed to bring this lawsuit for a period of time that amounts to an unreasonable delay; and

2. that Plaintiff's delay resulted in prejudice to the Defendants.

Prejudice means something harmful. For example, prejudice can result from a Defendant taking actions or suffering consequences that it would not have, had Musk brought the suit promptly. Likewise, if there was evidence that might have been available had the suit been filed earlier that is no longer available, that could prejudice the Defendants.

**DEFENDANTS' AUTHORITY AND POSITION**

There is no CACI instruction on laches. This proposed instruction is based on the laches instructions in *Li* v. *Arcsoft, Inc.*, No. 4:19-cv-05836-JSW, Dkt. 362 at 44 (N.D. Cal. Feb. 1, 2024), and *S.F. Bay Area Rapid Transit Dist.* v. *Spencer*, No. 3:04-cv-04632-SI, Dkt. 330 at 26 (N.D. Cal. Feb. 14, 2007).

Musk argues that a laches instruction should not be given because his claims are legal rather than equitable. But Musk's claims in this case are equitable, not legal. The primary remedy Musk seeks, disgorgement of profits, is a quintessentially equitable remedy. *See* Joint Pretrial Conference Statement (Disputed Legal Issues Pt. 1). The only other monetary remedy Musk seeks is an award of exemplary damages, which is likewise equitable because, in the absence of compensatory damages, it necessarily rests on disgorgement of profits. Because Musk seeks only equitable remedies in this case, his claims are equitable. *Id.* Pt. 3. Furthermore, breach of charitable trust is an equitable cause of action, and unjust enrichment is an equitable theory. *Id.* Pt. 3. Thus, the jury should be given a laches instruction.

Musk proposes to modify the prejudice element as "that Musk's delay resulted in prejudice to the Defendants *by causing them to change their position in reliance on Musk's forbearance*." The Defendants object to Musk's proposal because it offers an incomplete definition of prejudice. The Defendants propose a definition that is consistent with California law. *See Saul Zaentz Co.* v. *Wozniak Travel, Inc.*, 627 F. Supp. 2d 1096, 1117-18 (N.D. Cal. 2008) (describing "two chief forms of prejudice in the laches context—evidentiary and expectations-based. Evidentiary prejudice includes such things as lost, stale, or degraded evidence, or witnesses whose memories have faded or who have died. Expectations-based prejudice derives from a defendant taking actions or suffering consequences that it would not have, had the plaintiff brought suit promptly. For example, a defendant suffers prejudice if, in reliance on plaintiff's delay, she invests labor and capital to build a trademark's goodwill and future value. Similarly, a defendant may establish prejudice by showing that during the delay, it invested money to expand its business or entered into business transactions based on his presumed rights."); *S.F. Bay Area Rapid Transit Dist.* v. *Spencer*, 2007 WL 1450350, at *10 (N.D. Cal. May 14, 2007) (quoting supplemental laches instruction: "The prejudice that they are talking about is it's intended in the lay sense of something harmful. And an example might be if there was evidence that might have been available at one time that wasn't available at another time, and if the defendants proved that because too much time had gone by evidence wasn't available, why, that would be an example of the kind of prejudice that the cases talk about.").

**PLAINTIFF'S OBJECTIONS**

No laches instruction should be given because Plaintiff's claims are legal rather than equitable. *County of Los Angeles v. City of Alhambra*, 27 Cal. 3d 184, 195 (1980) ("The defense of laches, however, is not available at law, only in equity."); *cf. SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods.*, 580 U.S. 328, 331 (2017) ("Laches . . . cannot be invoked to bar legal relief" "in the face of a statute of limitations enacted by Congress."); *Petrella v. Metro-Goldwyn Mayer, Inc.*, 572 U.S. 663, 671 (2014) (reversing Ninth Circuit decision applying laches on top of Copyright Act's statute of limitations).

1    At a minimum, to avoid confusion, the Court should clarify the meaning of "prejudice" by

2 amending the last clause to state: "that Musk's delay resulted in prejudice to the Defendants by

3 causing them to change their position in reliance on Musk's forbearance."   *See Julian Volunteer*

4 *Fire Co. v. Julian-Cuyamaca Fire Prot. Dist.*, 62 Cal. App. 5th 583, 605 (2021) (prejudice occurs

5 where the "defendant has changed his position in a way that would not have occurred if the plaintiff

6 had not delayed").

7

8 Date submitted: February 26, 2026.

**THIRD AFFIRMATIVE DEFENSE**

**37.    UNCLEAN HANDS**

The Defendants contend that Musk's misconduct [precludes his claims / precludes his claims for fraud, constructive fraud, and unjust enrichment].  To succeed on this defense, the Defendants must prove all of the following by [a preponderance of the evidence / clear and convincing evidence]:

> 1.   that Musk engaged in conduct that was unconscionable;
>
> 2.   that Musk's conduct was intimately related to his claims; and
>
> 3.   that Musk's conduct resulted in such prejudice to Defendants that it would be unfair to allow Musk to assert his claims.

\* The OpenAI Defendants' proposal in blue text; Musk's proposal in red text.

**DEFENDANTS' AUTHORITY AND POSITION**

There is no CACI instruction on unclean hands.  This proposed instruction is based on the unclean hands instructions in *Zhu* v. *Li*, No. 4:19-cv-02534-JSW, Dkt. 205 at 45 (N.D. Cal. Apr. 3, 2023), and *GSI Tech., Inc.* v. *United Memories, Inc.*, No. 5:13-cv-01081-PSG, Dkt. 1043 at 54 (N.D. Cal. Nov. 22, 2015), and case law on the unclean hands defense, *e.g.*, *Kendall-Jackson Winery, Ltd.* v. *Sup. Ct.*, 76 Cal. App. 4th 970, 979 (1999) ("Any conduct that violates conscience, or good faith, or equitable standards of conduct is sufficient cause to invoke the doctrine."); *id.* ("The misconduct that brings the clean hands doctrine into play must relate directly to the cause at issue," *i.e.*, "to the transaction concerning which the complaint is made"); *id.* ("The misconduct must prejudicially affect the rights of the person against whom the relief is sought so that it would be inequitable to grant such relief.").

Under California law, the unclean hands defense need only be proved by a preponderance of the evidence. *Mattco Forge, Inc.* v. *Arthur Young & Co.*, 52 Cal. App. 4th 820, 846 (1997) (affirming unclean hands jury instruction requiring proof by a preponderance of the evidence); *Ajaxo, Inc.* v. *E\*Trade Fin. Corp.*, 48 Cal. App. 5th 129, 171-72 (2020) (noting use of

96

preponderance standard for unclean hands defense in prior trial). Musk erroneously relies on the clear-and-convincing evidence standard applied to the unclean hands defense in Lanham Act cases. *Pinkette Clothing, Inc. v. Cosmetic Warriors Ltd.*, 894 F.3d 1015, 1018, 1029 (9th Cir. 2018) (Lanham Act trademark litigation); *see Vineyard House, LLC* v. *Constellation Brands U.S. Operations, Inc.*, 515 F. Supp. 3d 1061, 1078 (N.D. Cal. 2021) (Gonzalez Rogers, J.) ("A party must demonstrate unclean hands *in a trademark action* by clear, convincing evidence." (emphasis added)).

Musk argues that an unclean hands instruction should not be given with respect to his breach of charitable trust claim because the defense may not be used to "wholly defeat a claim based on a public policy expressed by the Legislature in a statute." *Salas* v. *Sierra Chem. Co.*, 59 Cal. 4th 407, 432 (2014). But *Salas* concerned a statutory cause of action, for violation of the Fair Employment and Housing Act. *Id.* at 416-17. Musk's charitable trust claim is not for violation of a statute, but for breach of common law trust duties. That Cal. Bus. & Prof. Code § 17510.8 may provide one way to show the creation of a charitable trust does not change that result, particularly given that the provision is by its own terms "declarative of existing trust law principles." In any event, the unclean hands instruction should be given because, as Musk concedes, it is a valid defense to his other claims, and even under *Salas* the unclean hands defense "may guide the court in fashioning relief," including by reducing damages. 59 Cal. 4th at 432.

**PLAINTIFF'S OBJECTIONS**

The standard of proof for unclean hands is clear and convincing evidence, not preponderance of the evidence. *See Pinkette Clothing, Inc. v. Cosmetic Warriors Ltd.*, 894 F.3d 1015, 1029 (9th Cir. 2018) ("Only a showing of wrongfulness, willfulness, bad faith, or gross negligence, proved by clear and convincing evidence, will establish sufficient culpability for invocation of the doctrine of unclean hands."). Defendants cite *Mattco Forge, Inc. v. Arthur Young & Co.*, 52 Cal. App. 4th 820 (1997), and *Ajaxo, Inc.* v. *E\*Trade Fin. Corp.*, 48 Cal. App. 5th 129 (2020). But neither case addressed the correct standard of proof.

No unclean hands instruction should be given with respect to the breach of charitable trust claim because "[e]quitable defenses such as unclean hands may not . . . be used to wholly defeat a claim based on a public policy expressed by the Legislature in a statute." *Salas v. Sierra Chem. Co.*, 59 Cal. 4th 407, 432 (2014); *see* Cal. Bus. & Prof. Code § 17510.8.

Date submitted: February 26, 2026.

**STOP**

99

1

## **CLOSING INSTRUCTIONS**

2  **38.    DUTY TO DELIBERATE**

3        Before you begin your deliberations, elect one member of the jury as your presiding juror.  The

4  presiding juror will preside over the deliberations and serve as the spokesperson for the jury in court.

5        You shall diligently strive to reach agreement with all of the other jurors if you can do so.  Your

6  verdict must be unanimous.

7        Each of you must decide the case for yourself, but you should do so only after you have

8  considered all of the evidence, discussed it fully with the other jurors, and listened to their views.

9        It is important that you attempt to reach a unanimous verdict but, of course, only if each of you

10  can do so after having made your own conscientious decision.  Do not be unwilling to change your

11  opinion if the discussion persuades you that you should.  But do not come to a decision simply because

12  other jurors think it is right or change an honest belief about the weight and effect of the evidence simply

13  to reach a verdict.

14

15  **AUTHORITY**

16        Jury charge in *Genentech v. Biogen MA, Inc.*, No. 4:23-cv-00909, Dkt. 202 (N.D. Cal. July

17  2, 2025) (Gonzalez Rogers, J.); Manual of Model Civil Jury Instructions for the District Courts of

18  the Ninth Circuit No. 3.1 (Dec. 2025).

19

20  Date submitted: February 26, 2026.

21

22

23

24

25

26

27

28

1    **39.     CONSIDERATION OF EVIDENCE – CONDUCT OF THE JURY**

2         Because you must base your verdict only on the evidence received in the case and on these

3    instructions, I remind you that you must not be exposed to any other information about the case or to the

4    issues it involves.  Except for discussing the case with your fellow jurors during your deliberations:

5         Do not communicate with anyone in any way and do not let anyone else communicate with you

6    in any way about the merits of the case or anything to do with it.  This includes discussing the case in

7    person, in writing, by phone, tablet, computer, or any other means, via email, via text messaging, or any

8    internet chat room, blog, website or application, including but not limited to Facebook, YouTube, X

9    (formerly known as Twitter), Instagram, LinkedIn, Snapchat, TikTok, or any other forms of social

10   media.  This applies to communicating with your family members, your employer, the media or press,

11   and the people involved in the trial.  If you are asked or approached in any way about your jury service

12   or anything about this case, you must respond that you have been ordered not to discuss the matter and

13   to report the contact to the court.

14        Do not read, watch, or listen to any news or media accounts or commentary about the case or

15   anything to do with it; do not do any research, such as consulting dictionaries, searching the internet, or

16   using other reference materials; and do not make any investigation or in any other way try to learn about

17   the case on your own.  Also, do not do any research about this case, the law, or the people involved –

18   including the parties, the witnesses, or the lawyers – until you have been excused as jurors.  If you

19   happen to read or hear anything touching on this case in the media, turn away and report it to me as soon

20   as possible.

21        These rules protect each party's right to have this case decided only on evidence that has been

22   presented here in court.  Witnesses here in court take an oath to tell the truth, and the accuracy of their

23   testimony is tested through the trial process.  If you do any research or investigation outside the

24   courtroom, or gain any information through improper communications, then your verdict may be

25   influenced by inaccurate, incomplete, or misleading information that has not been tested by the trial

26   process. Each of the parties is entitled to a fair trial by an impartial jury, and if you decide the case based

27   on information not presented in court, you will have denied the parties a fair trial.  Remember, you have

28   taken an oath to follow the rules, and it is very important that you follow these rules.

101

A juror who violates these restrictions jeopardizes the fairness of these proceedings. If any juror is exposed to any outside information, please notify the court immediately.

**AUTHORITY**

Jury charge in *Genentech v. Biogen MA, Inc.*, No. 4:23-cv-00909, Dkt. 202 (N.D. Cal. July 2, 2025) (Gonzalez Rogers, J.); Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit No. 3.2 (Dec. 2025).

Date submitted: February 26, 2026.

**40.    COMMUNICATION WITH COURT**

If it becomes necessary during your deliberations to communicate with me, you may send a note through the Courtroom Deputy, signed by any one or more of you.  No member of the jury should ever attempt to communicate with me except by a signed writing.  I will not communicate with any member of the jury on anything concerning the case except in writing or here in open court. If you send out a question, I will consult with the lawyers before answering it, which may take some time.  You may continue your deliberations while waiting for the answer to any question. Remember that you are not to tell anyone – including the court – how the jury stands, whether in terms of vote count or otherwise, until after you have reached a unanimous verdict or have been discharged.

**AUTHORITY**

Jury charge in *Genentech v. Biogen MA, Inc.*, No. 4:23-cv-00909, Dkt. 202 (N.D. Cal. July 2, 2025) (Gonzalez Rogers, J.); Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit No. 3.3 (Dec. 2025).

Date submitted: February 26, 2026.

1    **41.    RETURN OF VERDICT**

2        A verdict form has been prepared for you <u>on each of Plaintiff's claims and on each of the</u>

3    <u>Defendants' affirmative defenses</u>.   <u>Each form has questions you must answer.   I have already</u>

4    <u>instructed you on the law that you are to use in answering these questions.   You must follow my</u>

5    <u>instructions and each form carefully.   You must consider each question separately.   Although you</u>

6    <u>may discuss the evidence and the issues to be decided in any order, you must answer the questions</u>

7    <u>on each verdict form in the order they appear.   After you answer a question, the form tells you what</u>

8    <u>to do next.</u>

9        You must be unanimous on an answer before you can move on to the next question.

10        <u>As I explained, the first questions you will answer are whether Plaintiff's claims are barred</u>

11    <u>by the relevant statutes of limitations.</u>   After you have reached unanimous agreement on a verdict

12    on those questions, your presiding juror should complete the verdict form <u>on the statute of</u>

13    <u>limitations defense for all of Plaintiff's claims</u> according to your deliberations, sign and date it, and

14    advise the Courtroom Deputy that you are ready to return to the courtroom.   <u>If you have unanimously</u>

15    <u>determined that one or more of Plaintiff's claims is timely, you will then be instructed to return to</u>

16    <u>your deliberations and answer the other questions for those claims</u>.

17        <u>As I explained, the first question you will answer for each claim is whether Plaintiff's claim</u>

18    <u>is barred by the relevant statute of limitations.</u>   After you have reached unanimous agreement on a

19    verdict <u>on that question, if you have determined that the claim is timely, you should then answer the</u>

20    <u>other question for that claim, namely, whether Plaintiff has shown that any Defendant is liable</u>.

21

22    * The Defendants' proposal in <span style="color:blue">blue text</span>; Musk's proposal in <span style="color:red">red text</span>.

23

24    **PLAINTIFF'S AUTHORITY AND POSITION**

25        Plaintiff maintains that the jury should decide both the statute of limitations defense and

26    liability on the merits at the same time.   Those questions are clearly intertwined, particularly for the

27    continuous accrual doctrine.   The Court should not require the jury to decide the statute of limitations

28    defense in artificial isolation from the inextricably linked questions of liability.

1

2    **DEFENDANTS' AUTHORITY AND POSITION**

3        Manual of Model Civil Jury Instructions for the District Courts of the Ninth Circuit No. 3.5

4    (Dec. 2025); Judicial Council of California Civil Jury Instructions No. 5012 (2025 ed.) (Introduction

5    to Special Verdict Form).

6        The proposed instruction reflects proposed underscored changes to Ninth Circuit Model

7    Civil Jury Instruction No. 3.5. *See* Standing Order re: Pretrial Instructions in Civil Cases

8    § 3(g)(ii)(H) (Mar. 17, 2025) ("If any party seeks to alter Model Instructions, that party (or parties,

9    if stipulated) shall provide the instruction with a redline reflecting the proposed changes to the

10   Model Instructions."). The changes to the first sentence and the third paragraph are based on the

11   Court's ruling to have the jury first decide the application of the statute of limitations to each of

12   Musk's claims. The remaining changes to the first paragraph are based on the first paragraph of

13   CACI 5012. The proposed second paragraph is adapted from the second paragraph of CACI 5012,

14   as modified to reflect that federal law requires a unanimous verdict. Fed. R. Civ. P. 48(b); *Jazzabi*

15   v. *Allstate Ins. Co.*, 278 F.3d 979, 985 (9th Cir. 2002) (unanimity required for verdict on affirmative

16   defense).

17

18   Date submitted: February 26, 2026.

19

20

21

22

23

24

25

26

27

28

**STAGE 2 – REMEDY INSTRUCTIONS**

**42-P.  DISGORGEMENT OF WRONGFUL GAINS (Plaintiff Only)**

Plaintiff contends that Altman, Brockman, OpenAI, Inc., the other OpenAI Defendants, and Microsoft derived wrongful gains from Musk's contributions to OpenAI by using those contributions for purposes different from the charitable purposes for which he contributed them.  As a remedy, Plaintiff seeks an order disgorging those wrongful gains.

Plaintiff may seek an order disgorging wrongful gains for each of the claims for which he proves liability.  You must determine whether Plaintiff has met the requirements for an order disgorging wrongful gains and, if so, the amount of disgorgement to order.


**PLAINTIFF'S AUTHORITY**

Restatement (Third) of Restitution § 49(4) ("When restitution is intended to strip the defendant of a wrongful gain, the standard of liability is not the value of the benefit conferred but the amount of the profit wrongfully obtained."); *id.* § 51(2), (4) (disgorgement of wrongful gains available for each claim asserted); *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 599-600 (9th Cir. 2020) ("California  law recognizes a right to disgorgement of profits resulting from unjust enrichment . . . ."); *Ward v. Taggart*, 51 Cal. 2d 736, 741 (1959) ("[T]he public policy of this state does not permit one to 'take advantage of his own wrong.' "); *Am. Master Lease LLC v. Idanta Partners, Ltd.*, 225 Cal. App. 4th 1451, 1483 (2014) ("Disgorgement based on unjust enrichment is an appropriate remedy for aiding and abetting a breach of fiduciary duty."); *County of San Bernardino v. Walsh*, 158 Cal. App. 4th 533, 542-43 (2007) (where there is "conscious disregard of the rights of another," "[t]he emphasis is on the wrongdoer's enrichment, not the victim's loss," and the wrongdoer "should be required to disgorge all profit"); *id.* at 543 ("[D]isgorgement of profits is particularly applicable in cases dealing with breach of a fiduciary duty."); *Meister v. Mensinger*, 230 Cal. App. 4th 381, 398-99 (2014) (similar).


**DEFENDANTS' OBJECTIONS**

The Defendants object to Musk's four disgorgement instructions in full and offer a single

106

competing instruction, No. 46-D. The Parties' positions with respect these instructions are set forth in brief statements following No. 46-D.

Date submitted: February 26, 2026.

1    **43-P.  DISGORGEMENT – REQUIREMENTS (Plaintiff Only)**

2        To obtain an order disgorging wrongful gains on a claim, Plaintiff must show that the

3    Defendant was either a "conscious wrongdoer" or a "defaulting fiduciary."  If Plaintiff proves his

4    claims for breach of charitable trust, fraud, constructive fraud, or aiding and abetting breach of

5    charitable trust, you may rely on the facts establishing the claim to conclude that the Defendant is a

6    conscious wrongdoer or defaulting fiduciary.

7        With respect to Plaintiff's claims for unjust enrichment, you must separately determine

8    whether the Defendant was a conscious wrongdoer or defaulting fiduciary.  A "conscious

9    wrongdoer" is someone who acted with knowledge of the wrong or despite a known risk that the

10   conduct violated the plaintiff's rights.  A "defaulting fiduciary" is someone who breaches a fiduciary

11   duty to the plaintiff, whether willfully or negligently.  Defendants had a fiduciary duty to use Musk's

12   contributions for a charitable purpose if (1) Musk made contributions to OpenAI for a charitable

13   purpose and manifested the intention that OpenAI use the contributions for that charitable purpose;

14   or (2) Defendants solicited charitable donations from Musk and then accepted Musk's charitable

15   donations.

16

17   **PLAINTIFF'S AUTHORITY**

18       Restatement (Third) of Restitution § 51(4) (2011) ("[T]he unjust enrichment of a conscious

19   wrongdoer, or of a defaulting fiduciary without regard to notice or fault, is the net profit attributable

20   to the underlying wrong."); *id.* § 51(3) ("A "conscious wrongdoer" is a defendant who is enriched

21   by misconduct and who acts (a) with knowledge of the underlying wrong to the claimant, or

22   (b) despite a known risk that the conduct in question violates the rights of the claimant."); *County

23   of San Bernardino v. Walsh*, 158 Cal. App. 4th 533, 543 (2007) ("[D]isgorgement of profits is

24   particularly applicable in cases dealing with breach of a fiduciary duty."); Order Denying in part

25   Defendants' Motions for Summary Judgment at 9 (Jan. 15, 2026) (Dkt. 390) ("A charitable trust

26   requires 'a proper manifestation by the settlor of an intention to create a trust, a trust res, and a

27   charitable purpose.'" (quoting *City of Palm Springs v. Living Desert Rsrv.*, 70 Cal. App. 4th 613,

28   620 (1999))); Cal. Bus. & Prof. Code § 17510.8 (2024) ("[T]here exists a fiduciary relationship

108

between a charity or any person soliciting on behalf of a charity, and the person from whom a charitable contribution is being solicited.").

**DEFENDANTS' OBJECTIONS**

The OpenAI Defendants object to Musk's four disgorgement instructions in full and offer a single competing instruction, No. 46-D. The Parties' positions with respect these instructions are set forth in brief statements following No. 46-D.

Microsoft also objects to Musk's four disgorgement instructions in full and joins in Proposed Instruction No. 46-D.

Microsoft also objects that Microsoft owed no fiduciary duty to Musk and therefore Microsoft could not be a "defaulting fiduciary." Moreover, Microsoft cannot be a "conscious wrongdoer" if a verdict for Plaintiff is returned on only non-Microsoft claims, yet the Proposed Instruction confusingly suggests the opposite.

In addition, the second paragraph lumps Microsoft under unjust enrichment, but there is no unjust enrichment claim against Microsoft. The paragraph confuses the parties and remedies.

Further, Microsoft solicited nothing and accepted nothing from Musk, so the last sentence's reference to "Defendants" is confusing.

Given this and the other issues with the Proposed Instruction noted above, it would confuse the jury and would be unworkable as to Microsoft.

Date submitted: February 26, 2026.

**44-P.  DISGORGEMENT – AMOUNT (Plaintiff Only)**

If you decide that Plaintiff is entitled to an order for disgorgement of wrongful gains, you must decide the amount by which Altman, Brockman, OpenAI, Inc., the other OpenAI Defendants, or Microsoft wrongfully gained from Musk's contributions to OpenAI.  Plaintiff does not have to prove the exact dollar amount of each Defendant's wrongful gains.  However, Plaintiff must produce evidence that permits at least a reasonable approximation of the amount of the Defendant's wrongful gain.  You must not speculate or guess in determining those amounts.

**PLAINTIFF'S AUTHORITY**

Restatement (Third) of Restitution § 51(5)(d) (2011) ("A claimant who seeks disgorgement of profit has the burden of producing evidence permitting at least a reasonable approximation of the amount of the wrongful gain.  Residual risk of uncertainty in calculating net profit is assigned to the defendant.").

**DEFENDANTS' OBJECTIONS**

The Defendants object to Musk's four disgorgement instructions in full and offer a single competing instruction, No. 46-D. The Parties' positions with respect these instructions are set forth in brief statements following No. 46-D.

Date submitted: February 26, 2026.

110

**45-P.  DISGORGEMENT – INCREASES IN VALUE (Plaintiff Only)**

In determining the amount of wrongful gains that a Defendant received, you should include not only realized profits, but also net increases in value of the Defendant's assets.

**PLAINTIFF'S AUTHORITY**

Restatement (Third) of Restitution § 51(5)(a) (2011) ("Profit includes any form of use value, proceeds, or consequential gains (§ 53) that is identifiable and measurable and not unduly remote."); *id.* cmt. e ("The profit for which the wrongdoer is liable by the rule of § 51(4) is the net increase in the assets of the wrongdoer, to the extent that this increase is attributable to the underlying wrong," including "profits in the form of net income or appreciated property value."); *id.* illus. 2 ("Embezzler uses $100,000 of Employer's money to purchase Blackacre . . . .  Property values have increased, and by the time the embezzlement comes to light the value of Blackacre is more than $150,000. . . . Employer would be entitled to a money judgment against Embezzler for the present value of Blackacre, thereby stripping Embezzler of the gain attributable to the wrong."); *Am. Master Lease LLC v. Idanta Partners, Ltd.*, 225 Cal. App. 4th 1451, 1486 (2014) ("As independent wrongdoers . . . defendants were subject to disgorgement of the profit or 'net increase in the assets' they obtained.").

**DEFENDANTS' OBJECTIONS**

The Defendants object to Musk's four disgorgement instructions in full and offer a single competing instruction, No. 46-D. The Parties' positions with respect these instructions are set forth in brief statements following No. 46-D.

Date submitted: February 26, 2026.

## 46-D.  DISGORGEMENT (Defendants Only)[11]

Plaintiff contends that OpenAI, Inc. and certain other OpenAI Defendants each derived wrongful gains from Musk's claimed contributions to OpenAI, Inc. by using those contributions for purposes different from the charitable purposes for which he contributed them.  Plaintiff contends that Microsoft derived wrongful gains from its knowing substantial assistance of OpenAI's breach of charitable trust that arose from Musk's charitable contributions.  As a remedy, Plaintiff seeks disgorgement of those alleged wrongful gains.

Plaintiff bears the burden of demonstrating the amount of disgorgement to which he is entitled by a preponderance of the evidence.  He is not required to prove the exact dollar amount of any Defendant's wrongful gains.  However, he must produce enough evidence to allow you to make a reasonable approximation of any such gains, which means they must be identifiable, measurable, and not unduly remote from the underlying wrong.  You must not speculate or guess in awarding disgorgement of wrongful gains.

In determining the amount of a Defendant's wrongful gains, you may only consider the amount of the net profit or increased value that is attributable to the underlying wrong.  That means that any award to Musk may only include increased profits or value that would not have otherwise been achieved had the underlying wrong not occurred.

You should also credit Defendants for any money expended in acquiring or preserving the property or in carrying on the business that is the source of the profit or increased value Plaintiff seeks.  To do so, you should determine the amount of a Defendant's profits or increased value

---

[11] Because the Court has determined to divide the trial into a liability stage and a remedy stage, the Defendants submit that remedy instructions should be given to the jury only if there is a finding of liability as to any of Musk's claims, as part of the final instructions of the remedy stage. Thus, the instruction as written assumes a prior finding of liability.

The Defendants contend that Musk's claim for disgorgement of wrongful gains should not be submitted to the jury because he cannot obtain it in this case as a matter of law: it is an equitable remedy and he cannot demonstrate that he lacks an adequate remedy at law. The Defendants also contend that there is no right to a jury determination of disgorgement of wrongful gains because it is equitable rather than legal. Because the Court can submit the disgorgement claim to the jury on an advisory basis, the Defendants propose the disgorgement instruction herein. *See* Joint Pretrial Conference Statement (Disputed Legal Issues Pts. 1, 2).

1  attributable to the underlying wrong, determine the amount that Defendant expended to obtain those

2  profits or increased value, and deduct those expenditures from the profits or increased value.

3

4  **DEFENDANTS' AUTHORITY**

5      There is no CACI instruction for disgorgement. This proposed instruction is based on

6  Restatement (Third) of Restitution § 51 (2011), and the instructions given in *Rodriguez v. Google,*

7  *LLC*, No. 3:20-cv-04688-RS, Dkt. 666 (N.D. Cal. Sept. 4, 2025); *Proofpoint, Inc. v. Vade Secure,*

8  *Inc.*, No. 3:19-cv-04238-MMC, Dkt. 805 (N.D. Cal. Aug. 25, 2021); and *Am. Master Lease LLC v.*

9  *Idanta Partners, Ltd.*, No. BC367987 (Cal. Super. Ct. 2017).

10     For the second paragraph, see Restatement (Third) of Restitution § 51(5)(d) (2011)

11  ("reasonable approximation"); *id.* § 51(5)(a) (identifiable, measurable, and not unduly remote); id.

12  § 51 cmt. i (discussing plaintiff's burden of proof); and the *Rodriguez* instruction ("You must not

13  speculate or guess in awarding damages.").

14     For the third paragraph, see the *Proofpoint* instructions (disgorgement reaches "benefit that

15  he would not have otherwise achieved had he not breached that contract"); the *Rodriguez* instruction

16  (disgorgement reaches "benefit that it otherwise would not have achieved but for the at-issue data");

17  and Restatement (Third) of Restitution § 51 cmt. e (2011) (discussing "the increase over profits that

18  would otherwise have been realized, attributable to the defendant's interference with the claimant's

19  interests").

20     For the final paragraph, see the *Am. Master* Lease instructions ("[y]ou should give

21  Defendants credit for money expended in acquiring or preserving the property or in carrying on the

22  business that is the source of the profit subject to an award of unjust enrichment"); the *Rodriguez*

23  instruction (directing the jury to "calculate the amount [of disgorgement]" by determining Google's

24  "total revenue," determining Google's "expenses in obtaining that gross revenue," and deducting

25  "Google's expenses from that revenue"); and Restatement (Third) of Restitution § 51 cmts. f & h

26  (2011) (discussing questions of causation, credits, and deductions).

27

28

**PLAINTIFF'S OBJECTIONS**

Plaintiff objects to Defendant's instruction No. 46-D.  The Parties' positions with respect these instructions are set forth in brief statements following No. 46-D.

Date submitted: February 26, 2026.

1  **PLAINTIFF'S POSITION**

2      Plaintiff objects to Proposed Instruction 46-D's statement that "Plaintiff contends that

3  Microsoft derived wrongful gains from its knowing substantial assistance of OpenAI's breach

4  of charitable trust that arose from Musk's charitable contributions" as misstating Plaintiff's

5  claims and the law.  Aiding and abetting is a species of secondary liability, so if the jury finds

6  that Microsoft is liable for aiding and abetting the OpenAI Defendants' breaches of charitable

7  trust, Microsoft is liable for all wrongful gains that Microsoft derived as a result of ***the OpenAI***

8  ***Defendants' breaches of charitable trust***, not merely the wrongful gains that Microsoft derived

9  from ***its substantial assistance to*** those breaches.  *See Frame v. PricewaterhouseCoopers LLP*,

10  36 Cal. Rptr. 3d 209, 223 (2005) ("As an aider and abettor, PwC would be jointly and severally

11  liable to the victims of the fraud, which allegedly include Six Sigma and the Investors."), *review*

12  *granted*, 132 P.3d 210 (Cal. 2006); Dan B. Dobbs et al., The Law of Torts § 435 (2d ed.) ("One

13  who knowingly provides substantial aid or encouragement to another's commission of a tort is

14  also jointly and severally liable for it along with the person who actually carries out the tortious

15  acts."); *Richard B. LeVine, Inc. v. Higashi*, 131 Cal. App. 4th 566, 579 (2005) ("Liability based

16  on an aiding and abetting or conspiracy theory is also 'derivative,' i.e., liability is imposed on

17  one person for the direct acts of another.").

18      Plaintiff further objects to the statement "That means that any award to Musk may only

19  include increased profits or value that would not have otherwise been achieved had the

20  underlying wrong not occurred" on the ground that it misstates the law.  Disgorgement of

21  wrongful gains does not require a showing of strict "but for" causation.  *See* Restatement

22  (Third) of Restitution § 51 cmt. f (2011) ("Absence of but-for causation does not necessarily

23  exonerate the wrongdoer, because a finding that the defendant would have realized the profit

24  in any event does not compel the conclusion that the defendant, under the circumstances, has

25  not been unjustly enriched.  To take an obvious example, a trustee who makes a profit from the

26  personal use of trust assets could not escape liability in restitution by proving that he could have

27  (and would have) made the same profit legitimately, supposing that his access to the trust assets

28  had been hindered in some way."); *Uzyel v. Kadisha*, 188 Cal. App. 4th 866, 894 (2010); *SEC*

115

*v. Teo*, 746 F.3d 90, 108 (3d Cir. 2014); *Rodriguez v. Google LLC*, No. 3:20-cv-04688, 2024 WL 38302, at *12 (N.D. Cal. Jan. 3, 2024).  Instead, wrongful gains include any "net profit attributable to the underlying wrong" that is "identifiable and measurable and not unduly remote."  Restatement (Third) of Restitution § 51(4)-(5) (2011).

**DEFENDANTS' POSITION**

The Defendants object to Musk's Proposed Jury Instructions Nos. 42-P to 45-P. Despite needlessly spanning four separate instructions, Musk's proposed instructions omit several important requirements in determining the amount of disgorgement: (1) that wrongful gains be identifiable, measurable, and not unduly remote from the underlying wrong; (2) that wrongful gains be attributable to the underlying wrong, and not include gains that Defendants would have accrued anyway; and (3) that Defendants be credited for money expended in carrying on the business that is the source of the gains sought to be disgorged. The Defendants' Proposed Instruction No. 46-D accounts for these requirements, while also instructing the jury on the issue of disgorgement in a single, readily digestible instruction.

1. The Defendants' proposed instruction includes the requirement that the alleged wrongful gains "must be identifiable, measurable, and not unduly remote from the underlying wrong." This language is supported by the Restatement, which is clear that "[i]n determining net profit," one "rule[]" that applies is that the profit must be "identifiable and measurable and not unduly remote." Restatement (Third) of Restitution § 51(5)(a). Musk does not object to this requirement.

2. The Defendants' proposal includes the following paragraph: "In determining the amount of a Defendant's wrongful gains, you may only consider the amount of the net profit or increased value that is attributable to the underlying wrong. *That means that any award to Musk may only include increased profits or value that would not have otherwise been achieved had the underlying wrong not occurred*." Musk objects to the second sentence, but the language is supported by both the primary authority upon which Musk relies and recent Northern District of California jury instructions. *See* Restatement (Third) of Restitution § 51 cmt. e (2011) (discussing "the increase over profits that would otherwise have been realized, attributable to the defendant's interference

116

1    with the claimant's interests"); *Rodriguez* v. *Google, LLC*, No. 3:20-cv-04688-RS, Dkt. 666 (N.D.

2    Cal. Sept. 4, 2025) ("benefit that it otherwise would not have achieved but for the at-issue data");

3    *Proofpoint, Inc.* v. *Vade Secure, Inc.*, No. 3:19-cv-04238-MMC, Dkt. 805 (N.D. Cal. Aug. 25, 2021)

4    ("benefit that he would not have otherwise achieved had he not breached that contract").

5    　　　3. The Defendants' proposed instruction provides for credit "for any money expended in

6    acquiring or preserving the property or in carrying on the business that is the source of the profit or

7    increased value Musk seeks." This language, too, is supported by the Restatement and California

8    law. *See* Restatement (Third) of Restitution § 51 cmts. f & h (2011); *Am. Master Lease LLC* v.

9    *Idanta Partners, Ltd.*, 225 Cal. App. 4th 1451, 1491-92 (2014) ("the trial court should instruct the

10   jury that it should give defendants credit for money expended in acquiring or preserving the property

11   or in carrying on the business that is the source of the profit subject to disgorgement"). Musk does

12   not object to this portion of the proposed instruction.

13   　　　It is critical that the instruction reflect these requirements, which serve to reinforce "[t]he

14   object of restitution," "to eliminate the profit from wrongdoing while avoiding, so far as possible,

15   the imposition of a penalty." Restatement (Third) of Restitution § 51(4) (2011).

16

17

18

19

20

21

22

23

24

25

26

27

28

**47.    PUNITIVE DAMAGES**

If you decide that a Defendant is liable for [breach of charitable trust, fraud, constructive fraud, and/or aiding and abetting breach of charitable trust], you must decide whether that conduct justifies an award of punitive damages.  The purposes of punitive damages are to punish a wrongdoer for the conduct that harmed the plaintiff and to discourage similar conduct in the future.

You may award punitive damages against an Individual Defendant (Altman or Brockman) only if Musk proves by clear and convincing evidence that the Individual Defendant engaged in that conduct with malice, oppression, or fraud.

You may award punitive damages against an Entity Defendant (OpenAI, Inc. or Microsoft) only if Musk proves that that Entity Defendant acted with malice, oppression, or fraud.  To do this, Musk must prove one of the following by clear and convincing evidence:

1.  that the malice, oppression, or fraud was conduct of one or more officers, directors, or managing agents of the Entity Defendant, who acted on behalf of the Entity Defendant; or

2.  that the conduct constituting malice, oppression, or fraud was authorized by one or more officers, directors, or managing agents of the Entity Defendant; or

3.  that one or more officers, directors, or managing agents of the Entity Defendant knew of the conduct constituting malice, oppression, or fraud and adopted or approved that conduct after it occurred.

"Malice" means that a defendant acted with intent to cause injury or that a defendant's conduct was despicable and was done with a willful and knowing disregard of the rights or safety of another.  A defendant acts with knowing disregard when the defendant is aware of the probable dangerous consequences of the defendant's conduct and deliberately fails to avoid those consequences.

"Oppression" means that a defendant's conduct was despicable and subjected Musk to cruel and unjust hardship in knowing disregard of his rights.

"Despicable conduct" is conduct that is so vile, base, or contemptible that it would be looked down on and despised by reasonable people.

---

118

"Fraud" means that a defendant intentionally misrepresented or concealed a material fact and did so intending to harm Musk.

An employee is a "managing agent" if the employee exercises substantial independent authority and judgment in corporate decisionmaking such that the employee's decisions ultimately determine corporate policy.

There is no fixed formula for determining the amount of punitive damages, and you are not required to award any punitive damages. If you decide to award punitive damages, you should consider all of the following factors separately for each defendant in determining the amount:

(a) How reprehensible was that defendant's conduct? In deciding how reprehensible a defendant's conduct was, you may consider, among other factors:

1.   whether the conduct caused physical harm;

2.   whether the defendant disregarded the health or safety of others;

3.   whether Musk was financially weak or vulnerable and the defendant knew Musk was financially weak or vulnerable and took advantage of him;

4.   whether the defendant's conduct involved a pattern or practice; and

5.   whether the defendant acted with trickery or deceit.

(b) Is there a reasonable relationship between the amount of punitive damages and Musk's harm?

(c) In view of that defendant's financial condition, what amount is necessary to punish him or it and discourage future wrongful conduct?  You may not increase the punitive award above an amount that is otherwise appropriate merely because a defendant has substantial financial resources.

Punitive damages may not be used to punish a defendant for the impact of his or its alleged misconduct on persons other than Musk.

**AUTHORITY**

Judicial Council of California Civil Jury Instructions No. 3947 (2025 ed.) (adapted).

Date submitted: February 26, 2026.

119

1

2      DATED: February 26, 2026                    WACHTELL, LIPTON, ROSEN & KATZ

3
                                                   */s/ William Savitt*
4                                                  William Savitt (*pro hac vice*)

5
                                                   MORRISON & FOERSTER LLP
6

7                                                  */s/ William Frentzen*
                                                   William Frentzen (CA SBN 343918)
8
                                                   *Attorneys for the OpenAI Defendants*
9

10
       DATED: February 26, 2026                    DECHERT LLP
11

12                                                 */s/ Russell P. Cohen*
                                                   Russell P. Cohen (SBN 213105)
13
                                                   *Attorneys for Defendant Microsoft Corporation*
14

15     DATED: February 26, 2026                    MOLOLAMKEN LLP

16
                                                   */s/ Steven F. Molo*
17                                                 Steven F. Molo (*pro hac vice*)

18                                                 *Attorneys for Plaintiff Elon Musk*

19

20

21

22

23

24

25

26

27

28

**ECF ATTESTATION**

I, William Frentzen, am the ECF User whose ID and password are being used to file this **[PROPOSED] JOINT JURY INSTRUCTIONS**.  In accordance with Civil Local Rule 5-1, concurrence in the filing of this document has been obtained from each of the other signatories, and I shall maintain records to support this concurrence for subsequent production for the Court if so ordered or for inspection upon request by a party.

Date: February 26, 2026                    ___*/s/William Frentzen*___
                                                        William Frentzen

---

[PROPOSED] JOINT JURY INSTRUCTIONS
CASE NO.: 4:24-cv-04722-YGR