United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **ELON MUSK, ET AL.,**<br><br>Plaintiffs,<br><br>vs.<br><br>**SAMUEL ALTMAN, ET AL.,**<br><br>Defendants. | CASE NO. 4:24-cv-04722-YGR<br><br>**PRETRIAL ORDER NO. 2 RE: MOTIONS *IN LIMINE* AND *DAUBERT* MOTION**<br><br>Re: Dkt. Nos. 393, 402, 403, 404, 405, 406, 407, 409, 410, 412, 413, 414, 415, 426 |

This Order addresses: (1) the parties' motions *in limine*; (2) defendants' *Daubert* motion to exclude opinions three through six of plaintiff's damages expert Dr. C. Paul Wazzan; and (3) associated administrative motions and stipulations to seal. Having carefully considered the papers submitted, and for the reasons stated on the record at the pretrial conference held on March 13, 2026, the Court **ORDERS** as follows:

## I.      MOTIONS *IN LIMINE*

First, the Court addresses the motions *in limine* submitted by plaintiff Elon Musk (Dkt. Nos. 402, 403, 404, 406, 407), defendants under the OpenAI umbrella (Dkt. Nos. 409, 410), and defendant Microsoft (Dkt. Nos. 412, 414, 415).

### A.      PLAINTIFF'S MOTIONS *IN LIMINE*

**No. 1: To Exclude Evidence of Attorney General Decisions**

The motion is **GRANTED IN PART AND DENIED IN PART**.

Musk seeks to exclude evidence related to the investigations that the California and Delaware Attorneys General conducted around October 2025. Neither Attorney General objected to OpenAI's conversion into a for-profit public benefit corporation. Musk argues that evidence related to those decisions are hearsay and are irrelevant and unduly prejudicial because they are

based on different legal standards and attempt to encroach on the jury's fact-finding role.

The Court will permit OpenAI witnesses to testify that OpenAI's restructuring into a public benefit corporation involved conversations and negotiations with the California and Delaware Attorneys General. OpenAI witnesses may not testify as to the ultimate decision of, or any report from, the Attorneys General or the specifics of those negotiations. The Court will not allow a mini-trial on the negotiations between OpenAI and those third parties.

Thus, the Court grants in large part plaintiff's motion and excludes the attached exhibits. Exhibits 1 and 2 are press releases and hearsay lacking in any exception for admissibility. Exhibit 3 to the motion is the Memorandum of Understanding between OpenAI and the Attorney General of California which itself indicates that it has "no impact on any other case" (¶ 23), and Exhibit 4 is a letter of non-objection by the Attorney General of Delaware. No one from either Office of the Attorney General has been called to testify. To allow such evidence would merely invite a one-sided presentation of an extra-judicial negotiation without the ability to cross-examine.

### No. 2: To Exclude WilmerHale's Investigation and Findings Concerning Altman Dismissal

The motion is **GRANTED IN PART AND DENIED IN PART**.

Musk seeks to exclude evidence related to WilmerHale's investigation and findings concerning Samuel Altman's dismissal from OpenAI as unduly prejudicial, subject to selective privilege disclosures, and containing hearsay.

The Court will permit witnesses to testify that OpenAI consulted with lawyers related to this event. The Court will not permit defense witnesses to testify that a prominent law firm conducted an independent investigation upon which OpenAI relied. That an organization would rely on the advice of lawyers is neither surprising nor controversial, thus the generic testimony is appropriate. That said, OpenAI cannot bolster its position or reliance with references to the scope or nature of the investigation as such an approach would require a mini-trial on the investigation itself.

Accordingly, the Court envisions no basis to admit Exhibits 1–5 to the motion, namely the

2

resolutions to be adopted (Ex. 1); the press release recounting the results (Ex. 2); emails documenting the media coverage (Exs. 3 and 4); and a social media post from Mira Murati (Ex. 5).

**No. 3: To Exclude Evidence Relating to xAI's Business and Competitive Practices**

The motion is **GRANTED IN PART AND DENIED IN PART**.

Musk seeks to exclude all documents and testimony relating to x.AI Corporation's ("xAI") business and competitive practices, its February 2025 bid to acquire the assets of OpenAI, Inc., and xAI's artificial intelligence chatbot, Grok, as irrelevant and unduly prejudicial.

Musk's involvement in xAI is highly relevant to this case, particularly as to xAI's corporate structure and the extent to which xAI and OpenAI compete. Musk's credibility and potential financial incentives are directly at issue. That portion of the motion is denied. With that in mind, the Court will not permit the proceedings to turn into a mini-trial about xAI and the nuances of its articles of incorporation. That portion of the motion is granted.

The Court will not exclude the deposition testimony and exhibits attached to this motion on those grounds. (Exs. 1–14.)

**No. 4: To Exclude Irrelevant Information about Elon Musk**

The motion is **GRANTED IN PART AND DENIED IN PART**.[1]

Musk seeks to exclude evidence related to his political activities, possible ketamine use, attendance at Burning Man in 2017, and relationship with Shivon Zilis as irrelevant and irreparably prejudicial.

The Court agrees with Musk that defendants may not inquire into Musk's ketamine use because, although any supposed lapse in memory resulting from ketamine during Musk's negotiations with OpenAI may be relevant, defendants could not point to other evidence in the record that suggests that Musk used ketamine or that could explain the effects of ketamine. The Court grants the motion on that basis.

The Court denies the remainder of the motion. Musk's relationship with Zilis, which

---

[1] The Court **DENIES** the majority of the parties' administrative motions to seal at Dkt. Nos. 405 and 426. Musk may redact only the highlighted sentence on page four, line ten.

Musk's counsel described as "at times a romantic relationship," is highly relevant to Zilis's credibility and Zilis's role as a conduit between Musk and OpenAI. Musk's attendance at Burning Man in 2017 is relevant to the attention he paid to his negotiations with OpenAI, which supposedly occurred during the same period. Finally, Musk's political activities are relevant to the extent that he attempted to use political power to harm competitors like OpenAI through projects like Stargate. The Court cautions counsel that too much inquiry into any of these topics may become unduly prejudicial under Rule 403.

### No. 5: To Exclude Cumulative Expert Testimony

The motion is **DENIED**.

Musk seeks to preclude OpenAI defendants from calling three expert witnesses, Peter Frumkin, Daniel J. Hemel, and John C. Coates IV, to provide cumulative testimony at trial. The motion is denied. The Court's use of time limits is intended to maintain efficiency. Neither party may dictate how the other uses their trial time.

### B.    OPENAI'S MOTIONS *IN LIMINE*

### No. 1: To Exclude Expert Testimony of Dr. Stuart Russell

The motion is **GRANTED IN PART AND DENIED IN PART.**

OpenAI defendants move to exclude plaintiff's proffered expert on AI safety, Dr. Stuart Russell, under *Daubert* and Federal Rules of Evidence 702 and 403. Dr. Russell summarizes his four opinions as follows:

- "Opinion #1: Artificial intelligence, or AI, is a powerful and transformative technology." (Dkt. No. 409-2 at 1.)
- "Opinion #2: Without investment and further progress in understanding how AI operates and how to control AI, the technology presents substantial risks of misuse, systemic effects, and malfunction." (*Id.*)
- "Opinion #3: AI companies and governments have very strong incentives to pursue artificial general intelligence, despite the safety risks." (*Id.*)
- "Opinion #4: Were the risks of AI not adequately addressed, they could become potentially catastrophic." (*Id.*)

United States District Court
Northern District of California

4

United States District Court
Northern District of California

As an initial matter, the Court finds that Dr. Russell is qualified to proffer opinions as to the transformative power of AI, its risks, and the incentives driving it. Dr. Russell is a professor of computer science at the University of California, Berkeley, who has studied AI for nearly fifty years. (*Id.* ¶ 1.) He has researched and published extensively on AI, including AI safety. (*Id.* ¶ 5, Ex. A.)

Next, the Court rejects OpenAI defendants' arguments that Dr. Russell's opinions are not relevant to facts at issue in this case. The fact that Dr. Russell has not proffered opinions on OpenAI's specific safety practices does not render his opinions unfit for helping the jury determine whether OpenAI breached its charitable commitments to Musk by pursuing profit. These opinions also are not unfairly prejudicial when Musk has independently pursued his own for-profit AI company. Dr. Russell's opinions regarding the transformative power of AI and its potential risks are directly related to Musk's theory of the case. As such, the motion is denied as to Dr. Russell's first and second opinions.

OpenAI defendants also argue that Dr. Russell's third opinion should be independently excluded because it is "based on nothing more than Russell's say-so" and an "anonymous news article." This argument is unpersuasive given Dr. Russell's experience working in the field of AI (*Id.* ¶¶ 1–5), including his AI safety policy work and co-founding of the International Association for Safe and Ethical AI. *See Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*, 618 F.3d 1025, 1043 (9th Cir. 2010) (expertise based on "forty years of experience" working in an industry provided sufficient basis to admit testimony). Dr. Russell also cites evidence of massive private investments in AI as a basis for offering his opinion that companies have strong incentives to pursue the technology despite its safety risks. (*See* Dkt. No. 409-2 ¶ 46.) As such, the motion is denied as to Dr. Russell's third opinion.

Lastly, OpenAI defendants argue that Dr. Russell's fourth opinion should be independently excluded as "speculative and unreliable." OpenAI defendants take issue with Dr. Russell's citation to probabilities that artificial generative intelligence will cause human extinction that are based "entirely on unsourced hearsay that he hasn't analyzed himself." At the pretrial conference, Musk confirmed that Dr. Russell does not adopt these probabilities as his own opinion. An expert

cannot be "a conduit or transmitter for testimonial hearsay." *United States v. Shih*, 73 F.4th 1077, 1098 (9th Cir. 2023) (quoting another case). Moreover, the probative value of Dr. Russell's fourth opinion is substantially outweighed by a danger of unfair prejudice under Federal Rules of Evidence 403 to the extent it relies on unsupported assertions of such probabilities. The motion is granted as to Dr. Russell's fourth opinion.

### No. 2: To Exclude News Articles and Related Hearsay

The motion is **GRANTED IN PART AND DENIED IN PART.**

OpenAI defendants move to exclude Musk's trial exhibits ("PX") 324 and 363 and deposition testimony concerning those exhibits as inadmissible hearsay and PX 362. The Court begins with the first two:

- PX 324 is a March 28, 2025 article in *The Wall Street Journal* regarding Sam Altman's removal from OpenAI and reinstatement (Ex. A), which is then quoted in the deposition of former OpenAI board member Tasha McCauley. (Ex. E, McCauley Depo. Tr. at 81:5–16, 81:21–82:8.)
- PX 363 is a May 26, 2024 article in *The Economist* regarding AI regulation authored by McCauley and another former OpenAI board member, Helen Toner. (Ex. B.)

In his opposition and at the pretrial conference, Musk stated that he does not intend to introduce PX 324 and 363 as evidence but that he would like to refer to those exhibits through deposition testimony from McCauley and Toner, who were questioned about those exhibits. Precisely how Musk plans to use the testimony remains elusive. In any event, having reviewed the designations, the Court finds as follows:

*First*, the *Wall Street Journal* article itself is hearsay. No witness proffered at trial authored the article, including McCauley, who was questioned about it in her deposition. To the extent that the disputed deposition designations quote verbatim from the *Wall Street Journal* article, that testimony remains hearsay. Plaintiff cannot use a backdoor to introduce these hearsay statements into evidence. The motion is granted as to this testimony.

*By contrast*, Toner and McCauley authored the *Economist* article. Toner's deposition

United States District Court
Northern District of California

transcript (Ex. G) which quotes from PX 363 relates to Toner's written work. Thus, asking her questions regarding statements that she wrote in the *Economist* is appropriate.

As such, given the context, the motion is granted as to the portions of the depositions that incorporate or respond to excerpts from PX 324 but is denied as to the portions that incorporate or respond to PX 363. The parties shall apply this approach to other disputes.

*Finally*, PX 362 is a series of social media posts made on May 17, 2024 by a former OpenAI executive regarding his reasons for leaving OpenAI. (Ex. C.) The social media posts are hearsay. Musk argues that he does not plan to use those posts for the truth of the matter asserted, but rather for the non-hearsay purpose of bolstering his statute of limitations defense. The posts are not relevant to that defense. Musk's argument that the 2024 posts tend "to show that Musk had no reason to discover OpenAI's transformation into a commercial venture any sooner" is belied by his prior assertion that he concluded OpenAI was becoming a for-profit venture—and engaged counsel to investigate his claims—in 2023. (*See* Dkt. No. 350 at 9.) Because Musk asserts no relevant non-hearsay purpose for admitting PX 362, the motion is also granted as to that exhibit.

### C.    MICROSOFT'S MOTIONS *IN LIMINE*

**No. 1: To Exclude Evidence Related to Dr. Jonathan Arnold's Family Law Litigation**

The motion is **GRANTED**.[2]

For the reasons stated on the record, Dr. Jonathan Arnold's prior litigation involving family matters is not relevant to his expert qualifications or opinions in this action. Moreover, opening the door to such questioning risks unfair prejudice and misleading the jury on the issues about which Dr. Arnold will be called to testify, which substantially outweighs its probative value. The Court will not allow a mini-trial on such collateral issues.

**No. 2: To Exclude Expert Testimony from Dean David Schizer Related to Microsoft's Conduct**

The motion is **GRANTED**.

Musk conceded in his opposition and at the pretrial conference that he does not intend to

---

[2] The Court **GRANTS** Microsoft's administrative motion to seal portions of Dr. Arnold's deposition testimony and the parties' stipulation to the same. Dkt No. 413.

United States District Court
Northern District of California

seek testimony from Dean David Schizer regarding Microsoft's conduct in dealing with OpenAI, which is outside the scope of his expert report. As such, Musk is precluded from doing so at trial.

**No. 3: To Exclude Expert Testimony from Dr. C. Paul Wazzan Related to Calculations of Wrongful Gains Attributable to Microsoft**

The motion is **DENIED**.

Microsoft seeks to exclude testimony by Musk's damages expert, Dr. C. Paul Wazzan, under Federal Rules of Evidence 702 and 403 for failing to calculate what portion of Microsoft's gains are attributable to Microsoft's alleged misconduct versus that of OpenAI. Microsoft argues that this renders Dr. Wazzan's methodology unreliable as applied to Microsoft and irrelevant to Musk's theory of Microsoft's liability. In opposition, Musk argues that Dr. Wazzan is not required to apportion wrongful gains derived specifically from Microsoft's misconduct because aiding and abetting is a theory of secondary liability for OpenAI's primary wrong. The Court agrees with Musk.

First, aiding and abetting liability is not limited to harm caused by the aiding and abetting itself. Rather, "[i]t is a basis on which a defendant is held liable for the tort that was aided and abetted, though some or all of the elements of the tort were fulfilled by the conduct of another." Restatement (Third) of Torts: Liab. for Econ. Harm § 28 cmt. a (2020). "The defendant is subject to 'secondary' liability for what the primary wrongdoer has done." *Id.* Thus, the defendant is "held to account . . . for harm to which the aiding and abetting made a contribution." *Id.* cmt. e; *see Neilson v. Union Bank of California, N.A.*, 290 F.Supp.2d 1101, 1134 (C.D. Cal. 2003) ("[T]he act of aiding and abetting is distinct from the primary violation; liability attaches because the aider and abettor behaves in a manner that enables the primary violator to commit the underlying tort."). Here, the jury can be asked to resolve this factual issue.

Second, the "profit for which the wrongdoer is liable . . . is the net increase in the assets of the wrongdoer, to the extent that this increase is attributable to the underlying wrong." Restatement (Third) of Restitution and Unjust Enrichment § 51 cmt. e (2011). *American Master Lease LLC v. Idanta Partners, Ltd.*, 225 Cal.App.4th 1451 (2014), is instructive. There, the court held that aiding and abetting defendants that purchased stock in a company whose founders

United States District Court
Northern District of California

violated their fiduciary duties to the plaintiff were properly "subject to disgorgement of the profit or 'net increase in the assets' they obtained" from their stock purchase. *Id.* at 1486.

Lastly, Musk contends that *all* of Microsoft's investments in OpenAI caused Musk harm by assisting OpenAI in breaching its fiduciary duties to Musk. (*See* Dkt. No. 396 at 13.) As noted above, this is the factual issue at play. The jury will be asked to determine which investments, if any, caused the relevant harm.

As such, Dr. Wazzan's methodology is not unreliable or "contrary to law" by assuming that Microsoft's gains on those investments are attributable to OpenAI's breach and then apportioning Musk's stake in those profits that flow from his contributions to OpenAI. Neither does it risk confusing issues, misleading the jury, or unfair prejudice. For these reasons, Microsoft's motion is denied.

## II.    *DAUBERT* MOTION

Next, the Court addresses defendants' motion to exclude opinions three through six of Dr. Wazzan. (Dkt. No. 393.)[3] Defendants argue those opinions are inadmissible under Federal Rule of Evidence 702 and the cases applying it, including *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

Federal Rule of Evidence 702 permits an expert's opinion testimony if the witness is qualified and based upon that qualification, the witness's opinion is relevant and reliable. Reliability turns on "the soundness of [the expert's] methodology." *Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311, 1318 (9th Cir. 1995); *Engilis v. Monsanto Co.*, 151 F.4th 1040, 1048 (9th Cir. 2025) ("[T]he reliability test may be applied to an expert's reasoning process."). "[J]udges are entitled to broad discretion when discharging their gatekeeping function" under Rule 702. *United States v. Hankey*, 203 F.3d 1160, 1168 (9th Cir. 2000).

Defendants do not challenge Dr. Wazzan's qualifications. Rather, they primarily challenge the methodology underlying Dr. Wazzan's third opinion, which estimates that fifty to seventy-five

---

[3] Defendants filed a stipulated administrative motion to file a corrected version of their *Daubert* motion at Dkt. No. 394, which the Court granted. Dkt. No. 401. As set forth in that order, the Court construes the version filed at Dkt. No. 394 as the operative *Daubert* motion.

<div style="writing-mode: vertical-rl">United States District Court<br>Northern District of California</div>

percent of OpenAI's value is attributable to Musk's contributions. Defendants also challenge Dr. Wazzan's fourth, fifth, and sixth opinions to the extent that they apply that percentage range to calculate OpenAI's and Microsoft's allegedly wrongful gains. Lastly, defendants independently challenge Dr. Wazzan's methodology for assuming that Microsoft's stake in the OpenAI for-profit entity should flow back to the nonprofit, resulting in double-counting.

For the reasons stated more fully on the record, the issue before the Court is not whether the Court agrees with Dr. Wazzan but whether in the context of the dispute, the methodology is unreliable or based on insufficient facts and data. Dr. Wazzan adequately explains his fifty to seventy-five percent estimate based on (1) Musk's share of financial contribution to OpenAI prior to his departure in 2018, (2) Musk's proposed equity stake in a pro forma cap table that OpenAI's founders created in 2017, (3) Musk's current equity stake in xAI, and (4) Musk's non-monetary contributions to OpenAI. The report describes why each factor is relevant and how they lead to the estimated percentage range. (Dkt. No. 393-2, Expert Report of C. Paul Wazzan, Ph.D. ("Rpt.") ¶¶ 71–98.) His analysis is grounded in citation to financial literature as well as his academic and industry experience, including seed funding in technology startups through his venture capital firm. (*Id.* ¶¶ 1–7, 10.)

Defendants' objection that Dr. Wazzan fails to apply an "accepted methodology" is unpersuasive in light of the unique factors at play in valuing Silicon Valley startups and the relatively novel factual circumstances underlying Musk's claims. *See Elosu v. Middlefork Ranch Inc.*, 26 F.4th 1017, 1026 (9th Cir. 2022) ("Experts working in specialized, scientific, and uncertain fields regularly . . . generate novel hypotheses about complex issues."). Nor is their concern that Dr. Wazzan has "cherry-pick[ed] convenient factors" persuasive, which goes "to the weight of the testimony and its credibility, not its admissibility." *Id.* at 1028 (quoting *Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*, 738 F.3d 960, 970 (9th Cir. 2013)). Defendants' argument that Dr. Wazzan does not reliably apply his methodology by failing to compare Musk's contributions to those of others is belied by the record. (*See* Rpt. ¶¶ 72–74, 97.)

The Court also rejects defendants' argument that Dr. Wazzan's methodology is unreliable for failing to apportion damages claim-by-claim or contribution-by-contribution and failing to

10

apply a causal analysis. As Musk's proffered damages expert, Dr. Wazzan assumed liability and then sought "to quantify the portion of Defendants' profits or enrichment that may fairly be attributed to Mr. Musk's Contributions." (*Id.* ¶ 8.) Damages experts are "entitled to *assume* liability in order to model the damages." *Lin v. Solta Med., Inc.*, 2024 WL 5199905, at *5 (N.D. Cal. Dec. 23, 2024) (quoting another case) (emphasis in original). Moreover, Dr. Wazzan's approach is consistent with the disgorgement remedy that Musk seeks for each of his claims. (Dkt. No. 392.) *See* Restatement (Third) of Restitution and Unjust Enrichment § 51(4) (disgorgement remedy is "the net profit attributable to the underlying wrong"). To the extent the jury finds defendants liable for some, but not all, of Musk's claims, or that defendants wrongfully profited from some, but not all, of Musk's contributions, Dr. Wazzan's testimony may still aid in deciding an appropriate award. *See In re Exxon Valdez*, 270 F.3d 1215, 1248 (9th Cir. 2001) ("Reasonable jurors . . . may make their own reasonable judgment on the evidence, accepting part, all, or none of any witness's testimony."). Moreover, "[p]roof of causation often comes from fact witnesses, and it is appropriate for expert witnesses to assume causation will be established and then proceed to calculate the damages." *Lin*, 2024 WL 5199905, at *5 (quoting another case).

Lastly, defendants' specific challenges as to Microsoft are unavailing. For the reasons stated above as to Microsoft's motion *in limine* No. 3, Dr. Wazzan's methodology is not unreliable for failing to tie Microsoft's alleged ill-gotten profits to specific aiding and abetting acts. Aiding and abetting is a theory of secondary liability "for the tort that was aided and abetted." Restatement (Third) of Torts: Liab. for Econ. Harm § 28 cmt. a. Dr. Wazzan adequately supports his methodology for calculating Microsoft's disgorgement, assuming it is found liable—i.e., what portion of Microsoft's gains from its investments in OpenAI's for-profit venture are traceable to Musk's contributions. (Rpt. ¶¶ 102-06.) *See Am. Master Lease LLC*, 225 Cal.App.4th at 1488–89 (parties are "entitled to present evidence, including expert testimony . . . on valuing the defendants' enrichment" from investments that aided and abetted). Whether this methodology results in "double counting" of an award to Musk can be addressed post-trial. Musk cannot double recover. This approach merely provides options for recovery.

United States District Court
Northern District of California

Defendants' motion to exclude opinions three through six of Dr. Wazzan is **DENIED.**[4]

## III.    CONCLUSION

For the foregoing reasons, the Court rules as follows:

- Motions *in Limine*:

  - Plaintiff's No. 1 is **GRANTED IN PART AND DENIED IN PART.**

  - Plaintiff's No. 2 is **GRANTED IN PART AND DENIED IN PART.**

  - Plaintiff's No. 3 is **GRANTED IN PART AND DENIED IN PART.**

  - Plaintiff's No. 4 is **GRANTED IN PART AND DENIED IN PART.**

  - Plaintiff's No. 5 is **DENIED.**

  - OpenAI defendants' No. 1 is **GRANTED IN PART AND DENIED IN PART.**

  - OpenAI defendants' No. 2 is **GRANTED IN PART AND DENIED IN PART.**

  - Microsoft's No. 1 is **GRANTED.**

  - Microsoft's No. 2 is **GRANTED.**

  - Microsoft's No. 3. is **DENIED**.

- Defendants' *Daubert* Motion is **DENIED.**

With respect to all rulings, if a party opens the door, the other party may request reconsideration of the evidentiary rulings, but such request must be made outside the presence of the jury. To the extent this Order excludes certain evidence and testimony, such evidence and testimony may still be introduced for purposes of impeachment after discussion with the Court.

This Order terminates Docket Numbers 393, 402, 403, 404, 405, 406, 407, 409, 410, 412, 413, 414, 415, 426.

**IT IS SO ORDERED.**

Dated: March 25, 2026

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**

---

[4] The Court defers ruling on Microsoft's administrative motion to redact competitively sensitive information in Dr. Wazzan's deposition transcript and the parties' stipulation regarding the same. Dkt. No. 395. The Court understands the parties are still meeting and conferring over the treatment of competitively sensitive information at trial and will address the issue at a later date.

United States District Court
Northern District of California