JORDAN ETH (CA SBN 121617)
JEth@mofo.com
WILLIAM FRENTZEN (CA SBN 343918)
WFrentzen@mofo.com
DAVID J. WIENER (CA SBN 291659)
DWiener@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105
Telephone:    (415) 268-7000
Facsimile:    (415) 268-7522

WILLIAM SAVITT (admitted *pro hac vice*)
WDSavitt@wlrk.com
BRADLEY R. WILSON (admitted *pro hac vice*)
BRWilson@wlrk.com
SARAH K. EDDY (admitted *pro hac vice*)
SKEddy@wlrk.com
STEVEN WINTER (admitted *pro hac vice*)
SWinter@wlrk.com
NATHANIEL CULLERTON (admitted *pro hac vice*)
NDCullerton@wlrk.com
WACHTELL, LIPTON, ROSEN & KATZ
51 West 52nd Street
New York, NY 10019
Telephone:    (212) 403-1000
Facsimile:    (212) 403-2000

*Attorneys for Defendants Samuel Altman, Gregory Brockman,*
*OpenAI, Inc., OpenAI L.P., OpenAI, L.L.C., OpenAI GP, L.L.C.,*
*OpenAI OpCo, LLC, OpenAI Global, LLC, OAI Corporation, LLC,*
*OpenAI Holdings, LLC, OpenAI Startup Fund Management, LLC,*
*OpenAI Startup Fund GP I, L.L.C., OpenAI Startup Fund I, L.P.,*
*OpenAI Startup Fund SPV GP I, L.L.C., OpenAI Startup Fund SPV GP II, L.L.C.,*
*OpenAI Startup Fund SPV GP III, L.L.C., OpenAI Startup Fund SPV GP IV, L.L.C.,*
*OpenAI Startup Fund SPV I, L.P., OpenAI Startup Fund SPV II, L.P.,*
*OpenAI Startup Fund SPV III, L.P., OpenAI Startup Fund SPV IV, L.P.,*
*Aestas Management Company, LLC, and Aestas LLC*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

| | |
|---|---|
| ELON MUSK, et al., | Case No. 4:24-cv-04722-YGR |
| Plaintiffs, | **OPENAI DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE NO. 4** |
| v. | |
| | **PUBLIC VERSION** |
| SAMUEL ALTMAN, et al., | |
| Defendants. | Date:  March 13, 2026 |
| | Time:  9:00 AM |
| | Courtroom:  1 – 4th Floor |
| | Judge:  Hon. Yvonne Gonzalez Rogers |

Musk moves (under seal) to exclude ill-defined categories of evidence concerning his "political involvement, social or recreational choices" and "personal life" on the ground that the evidence is "scandalizing" or "inflammatory." OpenAI seeks to introduce no evidence "gratuitously," as Musk charges. To the contrary: the evidence Musk has identified for exclusion is admissible because it is directly relevant to matters in dispute in the case, and to Musk's—and his principal witness's—bias and credibility. To the extent Musk also seeks to exclude as-yet unidentified evidence, the motion is premature and should be denied on that basis.

## BACKGROUND

Musk seeks to exclude evidence on three topics: (1) his relationship with Shivon Zilis; (2) his use of certain drugs; and (3) his "political affiliations." But the challenged evidence on these topics is tailored to relevant issues of credibility and bias.

*Zilis's relationship with Musk.* Originally a plaintiff in this action, Zilis was a central participant in and witness to the 2017 negotiations with Musk over the potential formation of a for-profit OpenAI affiliate. Zilis went on to serve on OpenAI's nonprofit board for more than three years, where she participated in approving the Microsoft investments in OpenAI that Musk now claims were breaches of charitable trust. Musk's counsel has told the Court that Zilis will testify in support of Musk's contention that certain "promises" were made to him in 2017. Ex. A (SJ Hr'g Tr.) at 24:12-19.

Because it bears on Zilis's credibility, OpenAI will present evidence that she has been in a concealed long-term relationship with Musk since 2016, while she was working as Musk's liaison to OpenAI. As Musk prepared to resign from OpenAI in 2018, he instructed Zilis to "stay close and friendly to OpenAI" so that she could "keep info flowing" to him. Ex. B (DX-0761). Zilis did so, joining OpenAI's board in 2020—still hiding her relationship with Musk. Zilis went on to have twins with Musk in 2021, a fact not disclosed to the board until more than a year later. Zilis's eyewitness testimony is critical to the core facts of the case. That Zilis concealed her romantic relationship with Musk; remains in a romantic relationship with Musk today; lives with him at least part time; raises four children with him; and was with him the morning of her deposition is not "gratuitous." Ex. C (Zilis Tr.) at 10:11-13, 11:6-12:11. It goes directly to Zilis's credibility.

***Musk's recreational activities.*** In late August and September 2017, Musk and OpenAI's other founders—Sam Altman, Greg Brockman, and Ilya Sutskever—held discussions concerning the formation of a for-profit affiliate of OpenAI. These discussions are central to the case: Musk alleges Altman and Brockman falsely committed to a pure nonprofit structure in perpetuity, which purportedly induced him to continue supplying funds to OpenAI (to pay its monthly rent). OpenAI will present evidence that Musk instead knew exactly what was being proposed—a new OpenAI for-profit entity—and enthusiastically supported that structure until his demands to control the for-profit were rejected.

Musk's activities and state of mind during these discussions is squarely at issue, particularly given that he claimed at deposition not to recall anything about the discussions. Ex. D (Musk Tr.) at 57:22-59:13. OpenAI fairly questioned Musk on these topics at deposition—including his attendance at the Burning Man festival from August 27 to September 4, 2017, while critical negotiations about the future of OpenAI were ongoing, and his use of the drug ketamine (a drug with known dissociative effects) while he was there—neither of which Musk denied. Ex. D at 56:21-57:58-21.

***Musk's abuse of power to interfere with OpenAI.*** At deposition, Musk testified that, while he served as a "special government employee," he "complained to White House officials" about OpenAI's "Stargate" project to benefit his own AI company, xAI. Ex. D at 15:6-16:8. Evidence that Musk used his government position to benefit his company at OpenAI's expense is relevant to Musk's bias and motive and thus to his overall credibility.

## ARGUMENT

***Zilis's relationship with Musk bears directly on her credibility and Musk's knowledge.*** Zilis is a key witness: she was present for many of the discussions where alleged promises were made and intends to testify about them on Musk's behalf. The existence, duration, and nature of Musk's concealed relationship with Zilis—including their frequent communication, their failure to disclose their relationship, their cohabitation, and their co-parenting of multiple children—go directly to her credibility and bias. They reveal a "relationship which might lead [Zilis] to slant, unconsciously or otherwise, [her] testimony" in Musk's favor and are therefore admissible. *United*

*States* v. *Abel*, 469 U.S. 45, 52 (1984). Because the jury is entitled to consider the "powerful distorting effect" that a witness's "emotions or feelings toward the parties" may have, courts have long permitted inquiry into a witness's relationship with a party. 1 *McCormick on Evidence* § 39 (9th ed.); *see also Milla* v. *City of Los Angeles*, 2023 WL 4291467, at *3 (C.D. Cal. June 9, 2023) (denying motion to exclude evidence of witness's familial relationship), *aff'd*, 2025 WL 1794111 (9th Cir. June 30, 2025); *United States* v. *Ahakuelo*, 2022 WL 7106168, at *6 (D. Haw. Oct. 12, 2022) (denying motion to exclude evidence of witness's "romantic relationship").

The extent of that relationship is also relevant to Musk's prior knowledge of several transactions of which he now complains. As this Court has recognized, Zilis will be a key witness regarding supposed promises made to Musk. Ex. A at 24:12-19. Her deposition testimony, emails, and text messages reflect direct knowledge of Musk's relationship with OpenAI from 2015 onward; his discussions with other cofounders about OpenAI's future in 2017 and 2018; and other facts central to his claims and to OpenAI's statute-of-limitations and laches defenses. Evidence of Zilis's "close relationship" with Musk helps explain why she "has knowledge of certain facts, such as [Musk's] thoughts, motives, and intentions during the course of events at issue here." *United States* v. *Nosal*, 2013 WL 11327121, at *6 (N.D. Cal. Mar. 29, 2013).

OpenAI has no intention or desire to elicit gratuitous details about Musk's private life—it intends only to elicit evidence relevant to the issues Musk has put in dispute. Musk offers no reason why such evidence is "unduly prejudicial," MIL at 4, and none is apparent.

***Musk's 2017 activities bear on his credibility and state of mind.*** Nor does OpenAI have any interest in gratuitously probing Musk's "social or recreational choices." MIL at 1. But a narrow fraction of those choices is relevant here. In late August and early September 2017, Musk and the other cofounders were discussing (and Musk supported) creating a for-profit OpenAI affiliate. At deposition, Musk claimed not to recall these discussions, yet denied that they included statements and representations to which other firsthand witnesses will attest. *See* Ex. D at 57:22-59:13.

Musk's whereabouts, activities and state of mind during these consequential negotiations are directly relevant to his credibility, and his credibility is at the core of his entire case. It is plainly relevant that Musk spent multiple days at Burning Man in the midst of negotiations he now claims

not to remember—it speaks, for example, to the seriousness with which he took the discussions, and his focus, or lack thereof, on the future of OpenAI, something he now says was of vital importance to him. Rule 403 doesn't warrant exclusion, either—there's nothing unfairly prejudicial about attending Burning Man, an event that tens of thousands attend each year.

Musk's use of ketamine during the festival—which he did not deny (Ex. D at 56:21-58:21)—is likewise probative of his perceptions and state of mind and thus relevant to credibility. "Evidence that a witness was under the influence of alcohol or drugs at the time of the events testified to by the witness typically is admissible to attack credibility" because "perception may be distorted by alcohol or drugs." 27 *Wright & Miller's Federal Criminal Practice* § 6097 (2d ed.); *see also United States* v. *Rodriguez*, 359 Fed. App'x 833, 835 (9th Cir. 2009) (reversing trial court decision to exclude testimony about witness's drug use because it "called into question [his] ability to perceive and remember the events about which he testified" and thus "bear[ed] on his credibility"). To the extent the Court is concerned about potential prejudice arising from the name of the drug or its legality, OpenAI can question Musk on the topic without specifying drug type or legal status.

***Musk's abuse of power to interfere with OpenAI's business is a matter of credibility.*** OpenAI agrees that political affiliations and activities, standing alone, are not relevant to this case. But the specific evidence Musk challenges concerns his bias and financial motive here, not politics. Musk argues that the only purpose of two text exchanges with Mark Zuckerberg, one of which incidentally references DOGE, is to inflame negative sentiments about Musk's political and social affiliations. MIL at 3 (citing Musk Exs. 2, 3). But once again, these messages are directly relevant to this case: they demonstrate Musk's attempt to enlist Zuckerberg in his recent bid to purchase, *on a for-profit basis*, OpenAI's assets for over $97 billion—*the same assets Musk claims must remain nonprofit and open source*, OpenAI Defs.' Opp'n to MIL #3 at 2—as well as discussions about this very lawsuit. These matters go directly to the sincerity of Musk's claims and are thus relevant and admissible. *Abel*, 469 U.S. at 52. The remaining challenged evidence (MIL at 1) includes testimony from Musk's deposition revealing his efforts to use his White House connections to aid xAI and harm OpenAI, facts also probative of his motives in this trial.

OPENAI DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE NO. 4
CASE NO. 4:24-CV-04722-YGR

Date:  February 25, 2026                    MORRISON & FOERSTER LLP


                                            /s/ Jordan Eth
                                            JORDAN ETH (CA SBN 121617)
                                            JEth@mofo.com
                                            WILLIAM FRENTZEN (CA SBN 343918)
                                            WFrentzen@mofo.com
                                            DAVID J. WIENER (CA SBN 291659)
                                            DWiener@mofo.com
                                            MORRISON & FOERSTER LLP
                                            425 Market Street
                                            San Francisco, CA 94105
                                            Telephone:    (415) 268-7000
                                            Facsimile:    (415) 268-7522

                                            WILLIAM SAVITT (admitted *pro hac vice*)
                                            WDSavitt@wlrk.com
                                            BRADLEY R. WILSON (admitted *pro hac vice*)
                                            BRWilson@wlrk.com
                                            SARAH K. EDDY (admitted *pro hac vice*)
                                            SKEddy@wlrk.com
                                            STEVEN WINTER (admitted *pro hac vice*)
                                            SWinter@wlrk.com
                                            NATHANIEL CULLERTON (admitted *pro hac vice*)
                                            NDCullerton@wlrk.com
                                            WACHTELL, LIPTON, ROSEN & KATZ
                                            51 West 52nd Street
                                            New York, NY 10019
                                            Telephone:    (212) 403-1000
                                            Facsimile:    (212) 403-2000

                                            *Attorneys for the OpenAI Defendants*

OPENAI DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE NO. 4
CASE NO. 4:24-CV-04722-YGR