MARC TOBEROFF (CA SBN 188547)
MToberoff@toberoffandassociates.com
TOBEROFF & ASSOCIATES, P.C.
23823 Malibu Road, Suite 50-363
Malibu, CA 90265
Telephone: (310) 246-3333

STEVEN F. MOLO (*pro hac vice*)
ROBERT K. KRY (*pro hac vice*)
JENNIFER M. SCHUBERT (*pro hac vice*)
MOLOLAMKEN LLP
430 Park Avenue
New York, NY 10022
Telephone: (212) 607-8160

*Attorneys for Plaintiffs Elon Musk
and X.AI Corp.*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# OAKLAND DIVISION

| | |
|---|---|
| ELON MUSK, et al., | Case No. 4:24-cv-04722-YGR |
| Plaintiffs, | **PLAINTIFF'S AMENDED NOTICE OF REMEDIES** |
| v. | |
| SAMUEL ALTMAN, et al., | |
| Defendants. | |

Plaintiff Elon Musk respectfully submits this amendment to his Notice of Remedies filed January 16, 2026 (Dkt. 392). Plaintiff's notice stated that, "[i]f the jury finds [a] Defendant liable, Plaintiff plans to seek appropriate equitable relief from the Court, including an injunction," and that "[t]hose equitable remedies would be addressed by the Court after trial." Dkt. 392 at 4. Plaintiff submits this Amended Notice to specify the principal injunctive relief he plans to seek and to amend his prior notice so the trial remains focused on those critical remedies.

The remedies Musk intends to seek are strictly tied to his purpose in bringing this lawsuit: to prevent the subordination of a public charity — one he co-founded and for which he was the primary supporter during its formative years — to private, for-profit interests. Defendants Sam Altman, Greg Brockman, and others solicited donations, labor, and public goodwill under solemn

1

promises that OpenAI would operate as a nonprofit for the benefit of humanity. Then, having accumulated billions of dollars in assets under that charitable shelter, they converted those assets into a wealth machine for themselves, Microsoft, and Silicon Valley insiders. That is what Musk brings this action to stop. Musk therefore will not seek, either at trial or in equitable proceedings afterwards, a remedy directed to benefiting himself personally.

The remedies Musk will seek are instead designed to undo exactly the harms identified above: to return all ill-gotten gains, including Microsoft's, to the OpenAI charity; to strip Sam Altman and Greg Brockman of their positions of authority and the personal financial benefits they extracted from OpenAI's illicit for-profit operations and conversion; to require that both the nonprofit and any for-profit subsidiary honor OpenAI's founding commitments to safety-first AI development and open research for the broad benefit of humanity; and, to best achieve those goals, to unwind OpenAI's for-profit conversion and restructuring.

## I. THE CHARITABLE TRUST FRAMEWORK AND THE BASIS FOR STRUCTURAL RELIEF

OpenAI was founded as a nonprofit dedicated to the safe development of artificial general intelligence for the long-term benefit of humanity. Altman and Brockman solicited substantial donations and commitments from Musk and others on the explicit representation that OpenAI would never be operated for private profit and would share its research openly with the world. Those commitments were the foundational consideration upon which the charity was built and the basis on which donors contributed funds, AI engineers committed their careers, and the public provided tax and other benefits. Defendants pocketed the benefits of that charitable status — tax exemptions, donor contributions, and the reputational credibility of a public-benefit mission — while secretly planning, and ultimately executing, a wholesale conversion of OpenAI into a for-profit enterprise that, along with profligate self-dealing, was designed to generate extraordinary personal wealth for Altman, Brockman, Microsoft, and other investors. That is the breach of charitable trust, fraud, and unjust enrichment at the heart of this case.

California law is clear that courts have broad equitable authority to remedy exactly this kind of misconduct. A plaintiff with standing may bring an action to "***enjoin, correct***, obtain damages

for *or to otherwise remedy* a breach of a charitable trust." Cal. Corp. Code § 5142(a) (emphases added). Structural relief — including divestiture, disgorgement, appointment of a receiver, and removal of offending fiduciaries — is not extraordinary in this context; it is the ordinary and appropriate remedy when charitable trustees betray the public trust. *See, e.g.*, *People v. Wounded Warriors Support Grp.*, No. RG-17-856929, 2018 WL 6581211, at *1-2 (Cal. Super. Ct. Nov. 6, 2018) (ordering removal of directors and appointment of receiver following jury verdict against nonprofits); *L.B. Rsch. & Educ. Found. v. UCLA Found.*, 130 Cal. App. 4th 171, 176 (2005) (seeking specific performance of charitable endowment); Morgan Wahler, *The Problem of Charitable Trust Enforcement: Addressing the Insufficiencies of the Attorney General System and Proposing New Reform*, 48 ACTEC L.J. 361, 367-70 (2023) (describing imposition of independent overseer to monitor the J. Paul Getty Trust's operations after financial misconduct by head of charity).

## II.    THE INJUNCTIVE RELIEF PLAINTIFF WILL SEEK

If the Defendants are found to have breached OpenAI's charitable trust, unjustly enriched themselves at the charity's expense, committed fraud, or aided and abetted any breach of charitable trust, Plaintiff will seek five forms of post-trial equitable relief from the Court.

*First*, Plaintiff will seek a permanent injunction requiring both the OpenAI nonprofit and any for-profit subsidiary or successor to honor the original charter commitments on which the charity was founded: safety-first AI development, open research, and the pursuit of AI for the broad benefit of humanity, not for the enrichment of a narrow class of private investors. Defendants made those commitments to the public as the price of the public's trust and tax subsidies. A verdict confirming that Defendants breached those commitments will empower this Court to hold Defendants — and any corporate subsidiary or successor — permanently to those promises. Any future product release, capital raise, or corporate transaction that implicates those commitments should be subject to this Court's continuing jurisdiction and contempt authority.

*Second*, Plaintiff will seek an order removing Altman as a director from the OpenAI nonprofit board and removing both Altman and Brockman as officers of the OpenAI for-profit. Removal of a charity's officers and directors is a common remedy where those individuals fail to protect or carry out the charity's public mission. *See, e.g.*, *Wounded Warriors*, 2018 WL 6581211,

3

at *1-2 (removing charity's directors following finding of misconduct); *People v. Help Hospitalized Veterans*, No. RIC 1212288, 2013 WL 8213349 (Cal. Super. Ct. Aug. 28, 2013) (removing directors pursuant to settlement). The evidence at trial will show that Altman and Brockman repeatedly disregarded their fiduciary duties and used OpenAI to enrich themselves. Neither of them is fit to serve as a steward for OpenAI and its public mission.

*Third*, Plaintiff will seek an order requiring Altman and Brockman to disgorge to the OpenAI charity all equity and other personal financial benefits they obtained as a result of OpenAI's for-profit operations, including all profits derived from self-dealing transactions. Altman and Brockman were fiduciaries of a public charity. They were expressly prohibited from using that position to enrich themselves. The evidence will demonstrate that they did exactly that — accumulating equity and compensation that should have been entirely off limits under the nonprofit structure they publicly championed. Those proceeds belong to the charity, not to its faithless stewards.

*Fourth*, Plaintiff will seek an order requiring disgorgement of all ill-gotten gains flowing from OpenAI's unauthorized for-profit conversion and operations — not limited to Altman and Brockman's personal equity, but extending to all financial interests improperly diverted from the charity and its charitable mission. This includes assets obtained through transactions that subordinated the nonprofit's charitable purposes to the financial interests of private investors and for-profit partners such as Microsoft, as well as self-dealing transactions by insiders. Any assets obtained at the charity's expense belong to the OpenAI charity and must be returned to it. Plaintiff does not and will not seek these funds for himself. He seeks their return to the charitable trust that was breached.

*Fifth*, and most fundamentally, Plaintiff will seek an order unwinding the for-profit conversion and restructuring as a purported public benefit corporation, restoring OpenAI to the role of a bona fide public charity that operates as the nonprofit it was intended to be, consistent with its founding charter and mission. Divestiture and structural unwinding are established remedies in analogous contexts. *See, e.g.*, *California v. Am. Stores Co.*, 495 U.S. 271, 278-95 (1990) (divestiture is "simple, relatively easy to administer, and sure" and "should always be in the forefront of a court's mind"); *Saint Alphonsus Med. Ctr.-Nampa Inc. v. St. Luke's Health Sys., Ltd.*, 778 F.3d 775, 793

4

(9th Cir. 2015) (affirming divestiture order following merger); *Steves & Sons, Inc. v. JELD-WEN, Inc.*, 988 F.3d 690 (4th Cir. 2021) (affirming unwinding of merger in private action filed four years after closing).  Those remedies are even more appropriate here, where the public interest is not merely a background policy concern but the very purpose that gave the charity its legal existence.

## CONCLUSION

To whatever extent the central role of injunctive relief was not clear from Musk's prior filings, it should be clear now.  Musk will make such conforming changes to his proposed jury instructions and verdict form as necessary to remove any doubt as to these issues.

Dated:  April 7, 2026

TOBEROFF & ASSOCIATES, P.C.

By:    */s/ Marc Toberoff*
     Marc Toberoff (CA SBN 188547)

MOLOLAMKEN LLP

By:    */s/ Steven F. Molo*
     Steven F. Molo (*pro hac vice*)

## **SIGNATURE ATTESTATION**

I hereby attest that the signatories listed above, on whose behalf this Notice is submitted, concur in the filing's content and have authorized the filing.

Dated:  April 7, 2026

*/s/ Marc Toberoff*
Marc Toberoff (CA SBN 188547)