JORDAN ETH (CA SBN 121617)
JEth@mofo.com
WILLIAM FRENTZEN (CA SBN 343918)
WFrentzen@mofo.com
DAVID J. WIENER (CA SBN 291659)
DWiener@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105
Telephone:    (415) 268-7000
Facsimile:    (415) 268-7522

WILLIAM SAVITT (admitted *pro hac vice*)
WDSavitt@wlrk.com
BRADLEY R. WILSON (admitted *pro hac vice*)
BRWilson@wlrk.com
SARAH K. EDDY (admitted *pro hac vice*)
SKEddy@wlrk.com
STEVEN WINTER (admitted *pro hac vice*)
SWinter@wlrk.com
NATHANIEL CULLERTON (admitted *pro hac vice*)
NDCullerton@wlrk.com
WACHTELL, LIPTON, ROSEN & KATZ
51 West 52nd Street
New York, NY 10019
Telephone:    (212) 403-1000
Facsimile:    (212) 403-2000

*Attorneys for Defendants Samuel Altman, Gregory Brockman,*
*OpenAI, Inc., OpenAI L.P., OpenAI, L.L.C., OpenAI GP, L.L.C.,*
*OpenAI OpCo, LLC, OpenAI Global, LLC, OAI Corporation, LLC,*
*OpenAI Holdings, LLC, OpenAI Startup Fund Management, LLC,*
*OpenAI Startup Fund GP I, L.L.C., OpenAI Startup Fund I, L.P.,*
*OpenAI Startup Fund SPV GP I, L.L.C., OpenAI Startup Fund SPV GP II, L.L.C.,*
*OpenAI Startup Fund SPV GP III, L.L.C., OpenAI Startup Fund SPV GP IV, L.L.C.,*
*OpenAI Startup Fund SPV I, L.P., OpenAI Startup Fund SPV II, L.P.,*
*OpenAI Startup Fund SPV III, L.P., OpenAI Startup Fund SPV IV, L.P.,*
*Aestas Management Company, LLC, and Aestas LLC*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

| | |
|---|---|
| ELON MUSK, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>SAMUEL ALTMAN, et al.,<br><br>Defendants. | Case No. 4:24-cv-04722-YGR<br><br>**OPENAI DEFENDANTS' RESPONSE TO MUSK'S AMENDED NOTICE OF REMEDIES** |

Plaintiff Elon Musk this week filed an "Amended Notice of Remedies." In it, Musk claims to "clarify" the remedies he has been pursuing in this action. In fact, however, the Amended Notice does not "clarify" Musk's position but changes it entirely. The Amended Notice of Remedies directly contradicts statements Musk has been making to the Court for months. It identifies remedies Musk has nowhere before sought and which he has previously repudiated. It anticipates a trial on issues never before identified and as to which no evidentiary record has been compiled. It would render many of the Court's pretrial rulings moot and require a new round of pretrial motion practice. In short, the Amended Notice of Remedies seeks to upend the expectations of the parties and the Court, no doubt in recognition that Musk's claims are neither plausible nor appealing—and with the apparent objectives of sandbagging the defendants and injecting chaos into the proceedings, while trying to recast his public narrative about his lawsuit. Musk realized far too late that the case he has chosen to pursue for over a year does not hold up to scrutiny. Musk has abandoned the only remedy he has pursued. He cannot now replace it on the eve of trial with extravagant new remedies that are legally improper and factually unsupported. Without a remedy, there remains no case left to try.

On January 16, Musk filed a Notice of Remedies at the Court's direction. There, Musk identified a single remedy—disgorgement of $100-plus billion, to be paid by the OpenAI nonprofit to Musk himself. Musk's lone damages expert, Dr. Paul Wazzan, opined only as to this proposed disgorgement remedy. The parties prepared extensive pretrial briefing—including disputed legal issues, motions *in limine*, and a *Daubert* motion directed at Wazzan—all addressed to Musk's lone proposed remedy. The parties likewise spent weeks preparing jury instructions and witness lists predicated on that lone remedy and appeared for a pretrial conference where Musk's counsel reaffirmed his lone theory of recovery again and again. The Court then made *Daubert* and evidentiary rulings against the backdrop of Musk's proposed remedy.

Musk now proposes to expunge all of that. In the Amended Notice, Musk proposes to pursue monetary remedies—the disgorgement of unspecified "ill-gotten gains"—not for himself but on behalf of the OpenAI nonprofit. Such remedies are of course derivative, and Musk has no standing to pursue derivative claims (as this Court has already held). Musk also seeks to pursue broad

1

injunctive remedies that are not pleaded in the complaint, not mentioned in the Notice of Remedies, and that Musk has long refused to identify when pressed, and that are also legally unsound and devoid of any factual support.

This legal ambush is both improper and prejudicial. Musk's proposed amendment would require the presentation of different evidence and different witnesses than the case he sponsored until three days ago. And the Court's recent legal and evidentiary rulings following the pretrial conference were predicated on Musk's representations regarding the relief he was pursuing. Much pretrial work would have to be redone were Musk permitted to upend the case at the last minute. Musk's tactical maneuvering, in furtherance of a coordinated PR campaign, has created a mess that cannot reasonably be addressed in the time remaining before trial—a mess that the Court and Defendants should not be required to try to unravel. Having abandoned the only remedy he pursued, Musk cannot, on the eve of trial, substitute different ones.

## BACKGROUND

Of the 26 claims Musk originally pled, four are set for trial against the OpenAI Defendants: unjust enrichment, fraud, constructive fraud, and breach of charitable trust. The OpenAI nonprofit is a defendant on each of those claims, and is the only entity defendant on Musk's claims for fraud, constructive fraud, and breach of charitable trust.[1]

Among the 26 originally pleaded claims were three derivative claims—claims that sought to recover not for the benefit of Musk as plaintiff, but for the OpenAI nonprofit. The Court dismissed those claims, ruling that Musk lacked standing to pursue remedies on behalf of the OpenAI nonprofit. Dkt. 121 at 16 n.13; Dkt. 163 at 8.

On November 29, 2024, Musk moved for a preliminary injunction to enjoin an early version of OpenAI's proposed recapitalization transaction. Dkt. 46. Musk told the Court that OpenAI had "not received, and may never obtain, proper approvals from the California and Delaware Attorneys General." Dkt. 73 at 19-20. "Absent such approval," Musk argued, "the Court should enjoin OpenAI from further violating its obligations and abandoning its mission as a safety-first charitable organization." *Id.* at 20. The Court denied Musk's motion. Dkt 121.

---

[1] Microsoft is a defendant only as to the claim of aiding and abetting breach of charitable trust.

In September 2025, OpenAI disclosed that a substantially different form of recapitalization would close shortly, pending approval of the California and Delaware Attorneys General. Musk neither sought to enjoin the transaction before it closed on October 28, 2025 following such approval, nor to amend his complaint to rescind it afterwards. To the contrary, Musk presented a nonprofit expert, David Schizer, who testified at deposition that his "concern is not this [2025] transaction itself," but rather "earlier" restructurings.

On January 16, 2026, after the close of discovery, Musk filed a notice setting forth the "principal remedies he seeks on each of his claims." Dkt. 392 at 1. That filing, made at the Court's direction, identified only one remedy: a disgorgement theory premised on Wazzan's analysis. It repeatedly described "wrongful gains" that Musk was "now entitled to disgorge." *Id.* at 1-3. Because the Notice included a boilerplate statement that Musk might still pursue some unidentified form of further relief, the OpenAI Defendants promptly asked Musk to disclose all equitable relief he intended to seek. Ex. 1. Musk refused but promised to include "remedy instructions" in his proposed jury instructions. *Id.*

That never happened. Instead, in his proposed jury instructions, Musk reiterated the disgorgement theory he had disclosed, and argued in the joint pretrial conference statement that (i) the disgorgement remedy he sought was legal rather than equitable because he could "show just grounds for recovering money to pay for some benefit the defendant had received *from him*" (Dkt. 427 at 25), and that (ii) Musk had no adequate remedy at law because compensatory damages "would not compensate *Musk* for the distinct harm he suffered from Defendants' unauthorized use of his charitable contributions," *id.* at 28 (emphases added).

On March 13, the parties appeared for the pretrial conference. Musk again made no mention of any remedy other than personal disgorgement from the nonprofit. Rather, Musk created the unmistakable impression that the Wazzan-supported disgorgement remedy was the only remedy he sought, such that without Wazzan's testimony, there would be no case left to try. When the Court asked whether Musk intended to "raise the issue of the October 2025 recapitalization and the terms thereof," counsel responded that Musk would only "raise the issue that that occurred," would "not [] get into a great deal of detail," and would offer "[j]ust the basic document saying that there's a

conversion." Dkt. 445 at 82. And after hearing argument on Musk's disgorgement theory, the Court asked Musk's counsel: "[T]he remedy that you are seeking is identical in all four claims. That's what you've given me, correct?" Musk's counsel confirmed: "Correct, Your Honor." The Court then followed up: "All right. So you're not seeking any other kind of remedy[.]" *Id.* at 20. Musk's counsel did not disagree. On the basis of these arguments the Court issued extensive pretrial evidentiary rulings in the succeeding days.

On April 7, three weeks before trial, Musk filed an "amended" notice of remedies. The Amended Notice abandoned the disgorgement remedy Musk had exclusively sponsored just weeks earlier and proposed a "plan" to instead seek "structural relief." Dkt. 459 at 1, 2.

The Amended Notice was part of a preplanned press attack. Within minutes of the filing, the *Wall Street Journal* quoted Musk's attorney, Marc Toberoff, as saying Musk "is not seeking a single dollar for himself" and is asking the court to "return everything that was taken from a public charity." Ex. 2 at 2. Mr. Toberoff added: "That was the essence of his complaint from the outset of the case until OpenAI's spin doctors got to work distorting it"—notwithstanding that Musk's lawyers and filings had repeatedly affirmed the positions that his Amended Notice suddenly repudiated. *Id*. Musk then posted the *WSJ* article and Mr. Toberoff's claims to his over 200 million followers on X. Ex. 3.

The Amended Notice promises that "Musk will make [] conforming changes to his proposed jury instructions and verdict form" to reflect his new theory. Dkt. 459 at 5. Three full business days have passed, and Musk has yet to provide those changes. Trial commences on April 27.

## ARGUMENT

### I.    Musk cannot pursue his new monetary remedy.

The Amended Notice seeks a completely different monetary remedy than the one Musk has previously pursued. In January, Musk said his remedy was the Wazzan disgorgement theory and that Musk would receive any award. As Musk's original January notice explained, Wazzan purported to calculate the OpenAI nonprofit's alleged wrongful gains by multiplying the current value of the for-profit enterprise by the nonprofit's share of that entity, and then multiplying that output by the portion of the nonprofit's value supposedly attributable to Musk's contributions. Dkt.

392 at 2. The net result was the amount that "Mr. Musk is now entitled to disgorge." *Id.*

Whether plausible or not, Wazzan's analysis purported to identify what gains were at issue, from whom, and in what amount. As Wazzan recognized both in his report and at deposition, his analysis was premised on the understanding that Musk was seeking to recover alleged wrongful gains from the OpenAI nonprofit (a defendant on each of Musk's remaining claims) and to recover those gains for himself (the plaintiff on each of those claims). *See, e.g.*, Dkt. 393-2 (Wazzan Report) ¶ 29 ("Mr. Musk is entitled to recover the wrongful gains that OpenAI and Microsoft obtained by misusing the charitable contributions he made to OpenAI Nonprofit."); Dkt. 393-5 (Wazzan Dep.) at 68:19-24 ("Q. [I]f Mr. Musk prevails and the Court adopts your analysis, OpenAI nonprofit should be paying back some of the wrongful gains that you analyze; is that correct? A. Some portion of their economic interests would transfer to Musk, yes.").

The Amended Notice abandons that framework. Musk now says he is not seeking relief for himself and instead seeks to "return all ill-gotten gains, including Microsoft's, to the OpenAI charity." Dkt. 459 at 2. That request bears little resemblance to the remedy Wazzan's report sponsored or Musk disclosed in January. Musk has provided no notice or information about his new remedy theory—asserting only that he will seek disgorgement of unspecified "assets" from unidentified "transactions" to be returned to the nonprofit. *Id.* at 4. What transactions? What assets? What amounts? From whom, precisely? Musk never says.

Nor has Musk put forward any evidence of any kind in support of his new theory. At deposition, Wazzan disclaimed any analysis of wrongful gains by any person or any OpenAI entity other than the nonprofit. When asked "what portion" of the wrongful gains he had calculated was "a gain by the OpenAI nonprofit," Wazzan's response was unequivocal: "All of it." Dkt. 393-5 (Wazzan Dep.) at 70. Wazzan also admitted that there was no "other OpenAI defendant" for which he had "undertaken an analysis of wrongful profits." *Id.* at 182-83. Not Altman. Not Brockman. Not the OpenAI employee vehicle. Not any "other" entity. It is for this reason that the OpenAI Defendants objected to Musk's proposal to include Altman and Brockman on the verdict form: Neither Musk nor his expert had "articulated any framework or methodology for calculating the amount of [their] purported wrongful gains." Dkt. 427 at 37 (Disputed Legal Issue No. 4).

Nor can Musk plausibly claim, as Mr. Toberoff told the press, that seeking recovery for the nonprofit "was the essence of his complaint from the outset of this case." Ex. 2 at 2. The OpenAI nonprofit is a *defendant* in that complaint. Musk's January Notice of Remedies confirms that the only monetary relief he was seeking was amounts he would be personally entitled to recover. Dkt. 392. And in the pretrial conference statement, Musk argued that the key question was whether "the plaintiff seeks to recover specific identifiable property or only a sum of money," and he insisted his disgorgement remedy was legal because he sought a money judgment for a benefit Defendants had received "from him." Dkt. 427 at 25. He also argued that he was entitled to seek his disgorgement remedy because compensatory damages "would not compensate *Musk* for the distinct harm he suffered from Defendants' unauthorized use of his charitable contributions." *Id.* at 28 (emphasis added). That is irreconcilable with the new suggestion that Musk has been seeking only charity-directed relief all along.

Musk's change of position also deprives him of standing. Musk pretends to seek to recover alleged wrongful gains not for himself but for the nonprofit corporation. This is the definition of a derivative action. The Court has already held, however, that Musk lacks standing to pursue derivative relief on behalf of the OpenAI nonprofit, dismissing Musk's derivative fiduciary duty claims in its May 1, 2025 order on that basis. Dkt. 163 at 8.

Musk should not be permitted at this late stage to pursue a newly disclosed remedy that Defendants had no opportunity to test through motion practice, or expert discovery, or as contemplated by the Court's rigorous pretrial process.

**II.      Musk should not be permitted to seek a permanent supervisory injunction over OpenAI's future conduct or the removal of its directors and officers.**

The Amended Notice seeks an injunction that would require "both the OpenAI nonprofit and any for-profit subsidiary or successor" to honor Musk's view of OpenAI's "original charter commitments," with "[a]ny future product release, capital raise, or corporate transaction" supposedly subject to this Court's "continuing jurisdiction and contempt authority." Dkt. 459 at 3. That sweeping remedial relief has never been pleaded, never previously been identified, and should not now be permitted.

This proposed remedy is exorbitant. Musk effectively asks a federal court sitting in diversity in California to manage—indefinitely—the future conduct of a Delaware nonprofit and its for-profit affiliate, including all future financings and transactions. That relief is not remotely administrable, as it would require the Court to evaluate and police future business decisions as they arise, without endpoint or any workable limiting principle. It also would displace the ongoing supervisory role of the California and Delaware Attorneys General, who spent over a year reviewing (and then approving) the very structures and transactions that Musk would have the Court overturn, and under whose jurisdiction the OpenAI nonprofit remains subject.

The Amended Notice also improperly seeks removal of Altman as a director of the nonprofit board and removal of Altman and Brockman as officers. Dkt. 459 at 3-4. That relief was never pleaded and never identified in any way before the Amended Notice. There exists no evidence at all to support it, and Defendants have had no opportunity to prepare the record opposing it. This remedy is also improperly derivative in character. It cannot be introduced into the case now.

Moreover, California law does not even authorize Musk to seek this kind of relief. California Corporations Code section 5223 authorizes only a director, a threshold number of members, or the Attorney General to seek removal of a director. Musk—a former donor and a former director who left the board years ago—is none of those. The two authorities Musk cites confirm his lack of standing. Dkt. 459 at 3-4 (citing *People* v. *Wounded Warriors Support Grp.*, 2018 WL 6581211, at *1-2 (Cal. Super. Ct. Nov. 6, 2018) (action brought by California Attorney General pursuant to section 5223); *People* v. *Help Hospitalized Veterans*, 2013 WL 8213349 (Cal. Super. Ct. Aug. 28, 2013) (action brought by California Attorney General)).

### III.    Musk should not be permitted to seek unwinding of the October 2025 recapitalization.

The Amended Notice's last requested form of proposed injunctive relief—described by Musk as "most fundamenta[l]"—seeks unwinding of the October 2025 recapitalization. Dkt. 459 at 4-5. It is also untenable.

Musk previously sought preliminary injunctive relief directed at a preliminary iteration of the recapitalization transaction. At that time, Musk argued that OpenAI had "not received, and may

7

never obtain, proper approvals from the California and Delaware Attorneys General" and that "*[a]bsent such approval*, the Court should enjoin OpenAI from further violating its obligations and abandoning its mission as a safety-first charitable organization." Dkt. 73 at 19-20 (emphasis added). The Court denied Musk's motion. Dkt. 121.

The transaction that closed in October 2025 satisfied the precondition that Musk had identified: it was approved by the California and Delaware Attorneys General. The transaction was also different from the initial transaction presented during the preliminary injunction proceedings; it followed substantial negotiations with both Attorneys General and included modifications to the structure, including provisions confirming that the nonprofit remained in control, and ongoing engagement with the Attorneys General. Ex. 4 & Dkt. 402-3 (California); Ex. 5 & Dkt. 402-4 (Delaware).

When Musk was made aware in September 2025 of the term sheet and memorandum of understanding for the impending recapitalization, he made no effort to enjoin it. When the transaction closed on October 28, 2025, Musk did not amend his complaint or update his prayer for relief to seek rescission of the transaction. To the contrary, Musk presented a nonprofit expert, David Schizer, who testified at deposition that his "concern is not this [2025] transaction itself," but rather "earlier" restructurings.

That course of conduct and representation to the Court cannot be squared with Musk's present assertion that unwinding the now-approved recapitalization is the "most fundamenta[l]" relief he seeks in the case. Dkt. 459 at 4. Nor can it be squared with what Musk's lead trial counsel told this Court directly only weeks ago. When the Court considered Musk's motion *in limine* to exclude documents concerning the California and Delaware Attorneys Generals' review of that very transaction—evidence that would be critical to any attempt by Musk to unwind the recapitalization—Musk's counsel (Mr. Molo, not Mr. Toberoff) told the Court: "So we are where we are with the status of OpenAI. How we got there and what the AGs have to do with it *have nothing to do with the issues in the case*." Dkt. 445 at 77 (emphasis added). And when the Court asked whether Musk intended to "raise the issue of the October 2025 recapitalization and the terms thereof," Mr. Molo said only that Musk would "raise the issue that that occurred," would "not []

get into a great deal of detail," and would offer "[j]ust the basic document saying that there's a conversion." *Id.* at 82. Now Musk wants to make this the central issue in the case.

Musk cannot treat the recapitalization as trivial when seeking to exclude evidence about it, benefit from evidentiary rulings relying on his representations, and then recast that same transaction as the "most fundamenta[l]" relief in the case when it suits him. By the time trial begins, the transaction will have been closed for more than six months. Any attempt to unwind it now would unsettle the expectations of numerous parties and counterparties who have ordered their affairs around the completed recapitalization. Musk should not be permitted, at this late hour, to transform a long-closed transaction into the centerpiece of the relief he seeks.

\*        \*        \*

The Amended Notice seeks to recast Plaintiff's case at the last minute. It anticipates a trial on legal theories that have never been tested and factual issues as to which no evidentiary record has been compiled—all because Plaintiff wants to reshuffle the deck and start over. Plaintiff pursued only one remedy and recommitted over and over to that one remedy. He has now abandoned that remedy. The Court should preclude him from pursuing new ones now.

Date:  April 10, 2026                    MORRISON & FOERSTER LLP


*/s/ William Frentzen*
JORDAN ETH (CA SBN 121617)
JEth@mofo.com
WILLIAM FRENTZEN (CA SBN 343918)
WFrentzen@mofo.com
DAVID J. WIENER (CA SBN 291659)
DWiener@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105
Telephone:    (415) 268-7000
Facsimile:    (415) 268-7522

WILLIAM SAVITT (admitted *pro hac vice*)
WDSavitt@wlrk.com
BRADLEY R. WILSON (admitted *pro hac vice*)
BRWilson@wlrk.com
SARAH K. EDDY (admitted *pro hac vice*)
SKEddy@wlrk.com
RANDALL W. JACKSON (admitted *pro hac vice*)
RWJackson@wlrk.com
STEVEN WINTER (admitted *pro hac vice*)
SWinter@wlrk.com
NATHANIEL CULLERTON (admitted *pro hac vice*)
NDCullerton@wlrk.com
WACHTELL, LIPTON, ROSEN & KATZ
51 West 52nd Street
New York, NY 10019
Telephone:    (212) 403-1000
Facsimile:    (212) 403-2000

*Attorneys for the OpenAI Defendants*