MARC TOBEROFF (CA SBN 188547)
MToberoff@toberoffandassociates.com
TOBEROFF & ASSOCIATES, P.C.
23823 Malibu Road, Suite 50-363
Malibu, CA  90265
Telephone: (310) 246-3333

STEVEN F. MOLO (*pro hac vice*)
ROBERT K. KRY (*pro hac vice*)
JENNIFER M. SCHUBERT (*pro hac vice*)
MOLOLAMKEN LLP
430 Park Avenue
New York, NY  10022
Telephone: (212) 607-8160

*Attorneys for Plaintiffs Elon Musk
and X.AI Corp.*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# OAKLAND DIVISION

| | |
|---|---|
| ELON MUSK, et al., | Case No. 4:24-cv-04722-YGR |
| Plaintiffs, | **PLAINTIFF'S REPLY REGARDING AMENDED NOTICE OF REMEDIES (DKT. 459)** |
| v. | |
| SAMUEL ALTMAN, et al., | |
| Defendants. | |

OpenAI's Response to Plaintiff's Amended Notice of Remedies misstates the record and makes premature arguments over the scope of injunctive and other equitable relief that are more appropriately addressed after trial.  Dkt. 460.  Plaintiff has consistently sought such equitable relief throughout this case.  The original Complaint, First Amended Complaint, and operative Second Amended Complaint all demanded broad equitable relief.  *See, e.g.*, Dkt. 170 ¶¶ 280, 299, 315, 404, 417 & prayer ¶ 5.  Plaintiff's January 16, 2026 Notice of Remedies expressly advised Defendants of Plaintiff's intent to seek "appropriate equitable relief from the Court, including an injunction," after trial.  Dkt. 392 at 4.  Restoring the OpenAI charity to its rightful role and ensuring that its governance is never again corrupted are not novel requests in this case, and Plaintiff's reiteration of those requests in his Amended Notice is not prejudicial to anyone.  Defendants saw those requests

1

in the Complaint; they confronted them in the preliminary injunction motion. Defendants cannot reasonably fault Plaintiff's voluntary specification – weeks before trial begins – of the details of the injunctive relief he will seek after trial.

The immediate occasion for Plaintiff's Amended Notice of Remedies, to which Defendants take such objection in their late-night Friday filing, is this Court's recent rulings on pretrial disputes. At the pretrial conference, the Court framed the parties' dispute as follows: "Plaintiff argues that their remedy that they seek is a legal remedy. The defense argues that it's not legal. It's equitable." Dkt. 445 at 13. In its subsequent Pretrial Order No. 3, issued less than two weeks ago, the Court ruled that the disgorgement remedy Plaintiff seeks is in fact equitable. Dkt. 456 at 1-3. Under that ruling, the case now sounds fundamentally in equity: An advisory jury will decide the facts before the Court fashions appropriate equitable relief.

Consistent with that development, Musk filed the Amended Notice of Remedies to specify the injunctive and other equitable relief he seeks while keeping the focus of the case on those central equitable remedies by making the OpenAI charity the beneficiary of his monetary claims. Yet Defendants, having successfully insisted that Musk's remedies are equitable, now cry foul when Musk details the contours of the equitable relief he has always sought. That is the central absurdity of Defendants' position: After successfully advocating for an equitable framework, they profess shock when Plaintiff files a notice that they previously demanded setting out the details of the equitable relief that Plaintiff seeks.

Worse still, the charity's fiduciaries now argue that Musk's only permissible remedy is *against the charity*, not them. The conflict of interest inherent in that agenda is glaring. Anyone outside OpenAI's boardroom and cap table can see that OpenAI's use of a publicly subsidized charity to lay the groundwork for a trillion-dollar IPO is wrong and must not be permitted to proceed. That is precisely the subordination of OpenAI's public mission that Plaintiff's requests for equitable relief seek to prevent. Plaintiff has been pressing those remedies throughout the case. Defendants show no basis for avoiding them now.

## I.     PLAINTIFF HAS CONSISTENTLY SOUGHT EQUITABLE REMEDIES

Plaintiff has made clear throughout this litigation that he plans to seek injunctive and other equitable relief from the Court after trial.  The original Complaint, First Amended Complaint, and Second Amended Complaint all include broad demands for injunctive relief.  Dkt. 1; Dkt. 32; Dkt. 170 ¶¶ 280, 299, 315, 404, 417 & prayer ¶ 5.  Consistent with those demands, Plaintiff's January 16, 2026 Notice of Remedies expressly stated that, "[i]f the jury finds [a] Defendant liable, Plaintiff plans to seek appropriate equitable relief from the Court, *including an injunction*," and that "[t]hose equitable remedies would be addressed by the Court after trial."  Dkt. 392 at 4 (emphasis added).  Defendants' purported shock at the Amended Notice thus rings hollow.  Plaintiff has been seeking injunctive and other equitable remedies throughout the case.

Defendants complain that the Amended Notice's specification of the details of that injunctive relief has thrown a wrench into their preparations for trial.  But Plaintiff does not plan to seek injunctive relief *at trial*.  He plans to seek that relief *after trial*.  *See* Dkt. 459 at 3 ("*If the Defendants are found [liable]*, Plaintiff will seek five forms of *post-trial equitable relief* from the Court." (emphasis added)).  Defendants can submit whatever evidence and argument they consider relevant in those post-trial proceedings.  Defendants never explain how Plaintiff's mere specification of the details of the injunctive relief he plans to seek in post-trial proceedings could prejudice their ability to prepare for the distinct issues set for trial.

Defendants have been well aware of Plaintiff's post-trial plans throughout the case.  In response to Plaintiff's January 16 Notice of Remedies, OpenAI demanded that Plaintiff disclose the " 'other monetary remedies' (in addition to punitive damages) that Plaintiff intends to seek" and "all of the 'equitable relief' *(in addition to an injunction)* that Plaintiff intends to seek."  Dkt. 460-2 at 2 (emphasis added).  That phrasing by its terms shows that OpenAI knew that Plaintiff was seeking "an injunction" and other "equitable relief."  *Id.*  Plaintiff responded that "[w]e did not understand [the Court's instructions] to be ordering us to file a binding statement of all legal and equitable relief we might seek at trial, *or to specify the precise contours of all equitable relief we might seek from the court after trial*."  *Id.* at 1 (emphasis added).  That response confirmed that Plaintiff planned to seek "equitable relief . . . after trial," as is the norm.  *Id.*  OpenAI never sought clarification from

3

the Court about its instructions and never asked the Court to impose a timetable for disclosure of anticipated post-trial requests for injunctive or other equitable relief.

OpenAI points to Plaintiff's statement in that email exchange that "[w]e will be including remedy instructions in our proposed jury instructions" and that, "[i]f those don't address your concerns, let's plan to discuss at the meet and confer." Dkt. 460-2 at 1. But that statement obviously referred to remedies that would be submitted *to the jury*, not requests for injunctive or other equitable relief that Plaintiff would submit to the Court after trial. In any event, OpenAI received Plaintiff's proposed jury instructions, and those instructions did not include any proposed post-trial requests for equitable relief. OpenAI never objected to that omission and never renewed its demand for disclosure of anticipated post-trial requests, despite Plaintiff's invitation to meet and confer. *Id.* Instead, OpenAI simply let the matter drop and never raised it again for three months. OpenAI complains only now, when – weeks before trial – Plaintiff specified the very details regarding post-trial equitable relief that OpenAI said it wanted.[1]

Microsoft's suggestion (by joinder) that it was somehow blindsided by Plaintiff's disclosure is even more groundless. Dkt. 461. Microsoft identified an employee on its witness list, Yina Arenas, for the *sole purpose* of calling her during post-trial proceedings on equitable remedies. *See* Dk. 431 at 19 ("Microsoft would only call Ms. Arenas for any post-trial remedy proceeding."). Microsoft thus fully appreciated that there would be post-trial proceedings on equitable relief and was already mapping out its evidentiary strategy for those proceedings.

## II.    OPENAI AND MICROSOFT ARE NOT PREJUDICED BY DIRECTING MONETARY RELIEF TO THE OPENAI CHARITY

Beyond fleshing out the details of anticipated post-trial requests for equitable relief, the Amended Notice also explains that – consistent with the now fundamentally equitable character of this case – any monetary relief should go to the OpenAI charity. The Amended Notice does not seek disgorgement from any new party or expand the relief sought against anyone. Instead, it merely

---

[1] Plaintiff's counsel's confirmation at the pretrial conference that "the remedy that [we] are seeking is identical in all four claims" did not somehow waive Plaintiff's right to seek equitable relief after trial. Dkt. 445 at 20. Plaintiff seeks the same injunctive and other equitable relief on all four claims and has never suggested otherwise.

specifies *the party to whom the disgorgement will be paid*:  Rather than going to Musk, the funds will go to the OpenAI nonprofit.

That approach promotes the fundamental remedial goal of California law to advance the interests of *charities* rather than the particular plaintiff bringing a charitable trust claim (whether a director, officer, donor, or the Attorney General).  Cal. Corp. Code § 5142(a).  The statute's broad grant of authority to "otherwise remedy" breaches of charitable trust surely includes the power to return funds to the very charity from which they were stolen.  *Id.*  Plaintiff's approach also keeps this case focused where it should be: on Defendants' egregious looting of a public charity that was set up to develop safety-first open source AI for the benefit of all humanity.  Defendants may be unhappy about losing their opportunity to argue that the jury should rule in their favor to avoid giving Musk a windfall.  But they cannot seriously expect this Court to order that the richest man in the world *must* receive Defendants' ill-gotten gains, rather than the charity they looted.

Defendants' efforts to rebut the claim that "Musk has been seeking only charity-directed relief all along" attack a strawman.  Dkt. 460 at 6.  The only even arguable change the Amended Notice of Remedies makes is to the party that would receive the proceeds of any disgorgement.  The relevant question is not whether there was a change in that beneficiary, but whether Defendants would be prejudiced by it.  Plainly, they would not.  It is inconceivable that Defendants could be prejudiced by directing any monetary recovery to *their own nonprofit* – a charity to which Altman, at least, owes fiduciary duties – rather than to the plaintiff bringing the suit.

Nor is there any merit to Defendants' argument that Plaintiff is asserting new claims against new parties.  The Amended Notice's fourth request for relief seeks "an order requiring disgorgement of all ill-gotten gains flowing from OpenAI's unauthorized for-profit conversion and operations – not limited to Altman and Brockman's personal equity, but extending to all financial interests improperly diverted from the charity," including "assets obtained through transactions that subordinated the nonprofit's charitable purposes to the financial interests of private investors and for-profit partners such as Microsoft."  Dkt. 459 at 4.  That is not a new claim.  The Second Amended Complaint expressly sought disgorgement from Altman, Brockman, Microsoft, and the OpenAI for-profit entities.  Dkt. 170 ¶¶ 279, 298, 314, 402, 416 & p. 51 n.13.  Plaintiff has pursued his

5

disgorgement claim against Microsoft throughout the case. Dkt. 393-2 (Wazzan Rep.) ¶¶ 102-106. Plaintiff set out the details of his disgorgement claims against Altman and Brockman months ago. Dkt. 427 at 38-39 (pretrial conference statement). And Plaintiff's unjust enrichment claim against the OpenAI for-profit entities has been front and center recently because, at the Court's direction, the parties substituted the new OpenAI for-profit entity (OpenAI Group PBC) for the existing web of OpenAI for-profit entities on that claim. Dkt. 446 at 2 ¶ 9(a); Dkt. 448 (stipulation). None of these claims is new.

OpenAI argues that, by seeking an order directing any proceeds to the OpenAI charity, Musk somehow transformed his claims into derivative ones. But Musk seeks disgorgement for the unauthorized use of *his own* charitable contributions. He is not suing on behalf of all donors or the charity as a whole. His claims are therefore direct, not derivative. *See Turner v. Victoria*, 15 Cal. 5th 99, 108, 113, 124-28 (2023) (charitable trust enforcement suit under Cal. Corp. Code § 5142 not derivative); *Grosset v. Wenaas*, 42 Cal. 4th 1100, 1108 (2008) (claim is derivative where "the gravamen of the complaint is injury to the corporation, or to the whole body of its stock and property"); *Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031, 1035 (Del. 2004) (similar). Courts have broad equitable authority to order the transfer of charitable assets to advance a charity's public mission. *See, e.g.*, *In re Veterans' Indus., Inc.*, 8 Cal. App. 3d 902, 918-19, 925-26 (1970) (recognizing authority to direct that trust assets "be transferred to another corporation, organization, society, or trust so that the original trust purposes can be carried out"); Restatement (Third) of Trusts § 67 (2003). Exercising that authority here does not make the suit derivative merely because charitable assets are being transferred back to the charity itself.[2]

OpenAI also incorrectly argues that Dr. Wazzan's expert analysis supports an award only against the OpenAI nonprofit, not the OpenAI for-profit. That is not true. Dr. Wazzan's three-step analysis determines the portion of the OpenAI *for-profit's* (then) $500 billion valuation that is attributable to Musk's contributions. Dkt. 393-2 ¶¶ 8, 29, 99. Nowhere in his report does Dr.

---

[2] The Court's prior rulings that Musk lacked standing to bring certain *concededly* derivative claims under provisions with specific statutory criteria for derivative standing are beside the point. Dkt. 121 at 16 n.13; Dkt. 163 at 8. Those rulings did not address claims like the ones here that are based solely on Musk's *own* contributions.

Wazzan say that his opinion is valid only if that amount is disgorged from the nonprofit rather than the for-profit. Why would he? If $65 billion of the for-profit's $500 billion value is attributable to Musk's unlawfully repurposed contributions, that misconduct could be remedied *either* by disgorging $65 billion from the for-profit *or* $65 billion from the nonprofit's stake in the for-profit. That is an equitable question about how to implement a disgorgement order against multiple defendants, not a question about the amount of OpenAI's wrongful gains.

OpenAI quotes Dr. Wazzan's statement that "Mr. Musk is entitled to recover the wrongful gains that ***OpenAI*** and Microsoft obtained by misusing the charitable contributions he made to ***OpenAI Nonprofit***." Dkt. 393-2 ¶29 (emphasis added). That phrasing supports Plaintiff, not OpenAI: Dr. Wazzan recognized that Musk made his contributions to "OpenAI Nonprofit," but his report takes no view on which "OpenAI" entity should disgorge the wrongful gains.[3]

OpenAI filed a lengthy *Daubert* motion challenging Dr. Wazzan's opinions on numerous grounds. Dkt. 393. It also disputed whether Dr. Wazzan's analysis supports a disgorgement claim against Altman or Brockman. Dkt. 427 at 36-38. OpenAI should not be permitted to take a third swing at Dr. Wazzan's analysis. OpenAI has known throughout the case that Plaintiff is seeking disgorgement against the for-profit. *See, e.g.*, Dkt. 170 ¶279 & p. 51 n.13. Yet it never challenged the adequacy of Dr. Wazzan's analysis to support that claim before now.

Those points apply even more forcefully to Microsoft. There is no conceivable reason why Dr. Wazzan's analysis of ***Microsoft's*** wrongful gains would depend on whether Microsoft must pay the OpenAI charity rather than Musk. Microsoft never explains why it would, and instead simply "joins" OpenAI's response, which does not address that issue. Dkt. 461. Microsoft has now brought *two* unsuccessful challenges to Dr. Wazzan's opinions. Dkts. 393, 415. The Court should not give

---

[3] OpenAI points to one muddled exchange at Dr. Wazzan's deposition where OpenAI asked whether Dr. Wazzan had computed wrongful gains for Altman, Brockman, "the employee vehicle, Aestas," or "any other OpenAI defendant." Dkt. 393-5 at 181:11-183:7. Plaintiff's counsel objected to those questions for not specifying whether they included the OpenAI for-profit of not. *Id.* at 181:18-24 ("MR. KRY: Objection. . . . Are you including the OpenAI for-profit in that question?"); *id.* at 183:6 (same objection). OpenAI's counsel refused to clarify. *Id.* at 181:25 ("I'm asking him a question."). Dr. Wazzan never gave a clear response. *Id.* at 182:1 ("Yeah, I don't follow."); *id.* at 182:17 ("I'm sorry. I just don't follow the question."); *id.* at 183:7 ("Not specifically.").

Microsoft yet another bite at the apple.

### III.    OPENAI'S ARGUMENTS ON THE MERITS OF PLAINTIFF'S CLAIMS FOR EQUITABLE RELIEF ARE PREMATURE

OpenAI's remaining arguments focus on the *merits* of the injunctive relief Musk seeks. Those arguments are as meritless as they are premature. If the jury finds Defendants liable at trial, there will be time enough in post-trial proceedings to make submissions over what the Court should order. There is no reason to address those issues now. But if the Court is nonetheless inclined to do so, it should have no difficulty rejecting all of OpenAI's arguments.

**Prohibitory Injunction.** OpenAI urges that an injunction requiring it to comply with its charitable obligations would be "exorbitant" because it would require the Court to monitor compliance on an ongoing basis. But California law expressly contemplates such remedies by authorizing courts to "enjoin" breaches of charitable trust. Cal. Corp. Code § 5142(a). Oversight mechanisms to ensure a charity complies with its obligations are thus routine features of charitable trust litigation. *See, e.g.*, *People v. Wounded Warriors Support Grp.*, No. RG-17-856929, 2018 WL 6581211, at *1-2 (Cal. Super. Ct. Nov. 6, 2018) (ordering "[a]ppointment of a receiver to manage the affairs of [defendant charities]"); *L.B. Rsch. & Educ. Found. v. UCLA Found.*, 130 Cal. App. 4th 171, 176 (2005) (seeking specific performance of charitable endowment); *Smithers v. St. Luke's-Roosevelt Hosp. Ctr.*, 281 A.D.2d 127, 133 (N.Y. App. Div. 2001) (same); *cf. Melendres v. Skinner*, 113 F.4th 1126, 1136 (9th Cir. 2024). The Court will presumably wait until post-trial proceedings to fashion appropriate relief that ensures that OpenAI complies with its charitable obligations without entangling itself in OpenAI's operations. But the suggestion that a court of equity *lacks power* to compel a charity to do what it promised has no support in the law.

**Removal from Office.** OpenAI argues that Plaintiff cannot seek Altman or Brockman's removal from office because California Corporations Code § 5223 authorizes only directors, members, or the Attorney General to seek removal of a charity's directors. But Plaintiff is not relying on that statute. Instead, Plaintiff invokes Section 5142, which grants the Court broad authority "to *enjoin*, *correct*, obtain damages for or to *otherwise remedy* a breach of a charitable trust." Cal. Corp. Code § 5142(a) (emphasis added). OpenAI cites no authority holding that Section

8

5223 is the exclusive mechanism for removing a charity's directors (much less an officer, which the statute does not even mention). Not every breach of charitable trust will justify removing an officer or director under Section 5142. But this one surely does, given Altman and Brockman's egregious pattern of faithless behavior. After trial and full post-trial briefing, the Court may disagree. But the suggestion that the Court lacks even the *power* to order this remedy is meritless.

**Unwinding the PBC Conversion.** Finally, OpenAI argues that the Court should not unwind OpenAI's 2025 conversion into a public benefit corporation because Plaintiff did not obtain a preliminary injunction stopping the conversion before it happened. Plaintiff's Amended Notice cites several cases where courts ordered divestiture or other structural relief even after a transaction had closed. Dkt. 459 at 4-5. OpenAI has no response. Again, the Court can decide after trial, with the benefit of a full evidentiary record and post-trial submissions, whether Plaintiff has shown an entitlement to this relief.

OpenAI also accuses Plaintiff of downplaying the significance of the 2025 conversion. But Plaintiff's nonprofit expert, Dean David Schizer, identified several negative consequences of that restructuring for OpenAI's governance. *See* Dkt. 414-2 (Schizer Rep.) ¶¶ 263-268, 270-273, 275 (citing two-thirds vote requirement to remove CEO and conflicting loyalties arising from PBC structure, among other defects). The one sentence of deposition testimony that OpenAI quotes – that Dean Schizer's "concern is not this [2025] transaction itself" but rather "earlier" restructurings – was addressing only one specific issue, the nonprofit's economic interests as against Microsoft; his point was simply that, having given up so much in the prior Microsoft deals, the nonprofit was stuck with the consequences. *See* Schizer Dep. 143:8-22; Schizer Rebuttal Rep. ¶ 148 ("[E]ven though OpenAI used a more robust process in connection with the 2025 restructuring, it was stuck with the unfavorable economic position it had already accepted in its prior deals with Microsoft."). That statement in no way downplays the other objectionable features of OpenAI's 2025 conversion.[4]

_____

[4] Nor did Plaintiff's counsel downplay the restructuring at the pretrial conference. The comment that "we are where we are with the status of OpenAI" and "[h]ow we got there and what the AGs have to do with it have nothing to do with the issues in the case" simply underscored that the AGs' role in the restructuring *process* was irrelevant. Dkt. 445 at 77. And the statement that Plaintiff would not "get into a great deal of detail" was obviously not a disavowal of the opinions expressly set forth in Dean Schizer's expert report. *Id.* at 82.

## **CONCLUSION**

The Court should proceed with a trial on liability and disgorgement of wrongful gains, with any proceeds going to the OpenAI nonprofit rather than to Musk himself.  Plaintiff's claims for injunctive and other equitable relief should be addressed in post-trial proceedings on a full evidentiary record.  Plaintiff is submitting conforming amendments to his proposed jury instructions and verdict form to clarify that the Court will resolve the claims for injunctive and other equitable relief in separate proceedings after trial.

Dated:  April 12, 2026                    TOBEROFF & ASSOCIATES, P.C.

By:    */s/ Marc Toberoff*
        Marc Toberoff (CA SBN 188547)

MOLOLAMKEN LLP

By:    */s/ Steven F. Molo*
        Steven F. Molo (*pro hac vice*)

10

**SIGNATURE ATTESTATION**

I hereby attest that the signatories listed above, on whose behalf this document is submitted, concur in the filing's content and have authorized the filing.

Dated:  April 12, 2026                                    /s/ Steven F. Molo
                                                         Steven F. Molo (*pro hac vice*)