MARC TOBEROFF (CA SBN 188547)
MToberoff@toberoffandassociates.com
TOBEROFF & ASSOCIATES, P.C.
23823 Malibu Road, Suite 50-363
Malibu, CA  90265
Telephone: (310) 246-3333

STEVEN F. MOLO (*pro hac vice*)
ROBERT K. KRY (*pro hac vice*)
JENNIFER M. SCHUBERT (*pro hac vice*)
MOLOLAMKEN LLP
430 Park Avenue
New York, NY  10022
Telephone: (212) 607-8160

*Attorneys for Plaintiffs Elon Musk
and X.AI Corp.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| | |
|---|---|
| ELON MUSK et al., | Case No. 4:24-cv-04722-YGR |
| Plaintiffs, | **PLAINTIFF'S NOTICE REGARDING VERIFIED WAIVER OF REMEDIES** |
| v. | Judge:  Hon. Yvonne Gonzalez Rogers |
| SAMUEL ALTMAN et al., | |
| Defendants. | |

Plaintiff Elon Musk hereby confirms that he will not seek an award to himself, xAI, or any fund that he controls as to his claims set for trial.  Plaintiff's preference would be that any award be entered in favor of the OpenAI charity directly, and he irrevocably commits to that remedy if it is available.  If the Court concludes that that remedy is not available and that the appropriate remedy is to return Defendants' wrongful gains to the Donor Advised Funds, Musk agrees to that remedy and irrevocably commits to direct the Donor Advised Funds to donate the award to the OpenAI charity.  Finally, if the Court concludes that a claim for nominal damages is necessary to support Musk's standing to bring any claim, to establish any cause of action, or to overcome any other impediment to effective relief, Musk hereby demands an award of nominal damages from all Defendants on all claims.

As explained at the April 17 hearing, Plaintiff's position is that the question of who should receive the proceeds of any disgorgement order is a remedy question directed to this Court's equitable discretion. 4/17 Hr'g Tr. 16:3-17:9. "Once the primary purpose of disgorgement has been served by depriving the wrongdoer of ill-gotten gains, the district court has broad discretion in determining the disposition of the disgorged funds," including "'how and to whom the money will be distributed.'" *SEC v. First Pac. Bancorp*, 142 F.3d 1186, 1192 (9th Cir. 1998); *see also Amalgamated Clothing & Textile Workers Union, AFL-CIO v. Murdock*, 861 F.2d 1406, 1412-15 (9th Cir. 1988) (invoking catchall "appropriate equitable relief" power to redirect disgorgement award to other parties).

That equitable authority is particularly broad in charitable trust cases. California law permits courts "to enjoin, correct, obtain damages for or to ***otherwise remedy*** a breach of a charitable trust." Cal. Corp. Code § 5142(a) (emphasis added). Consistent with that broad language, courts emphasize the expansive scope of their equitable powers in charitable trust cases. *See, e.g.*, *Orange Cath. Found. v. Arvizu*, 28 Cal. App. 5th 283, 293 (2018) ("The equitable powers of a court are not curbed by rigid rules of law, but rather are broad enough to address novel conditions and meet the requirements of every case. . . . [E]quitable remedies are flexible, capable of expanding to meet the increasing complexities of these changing times." (quotation marks omitted)).

That broad equitable authority includes the power to direct funds to the beneficiary that will best serve a charity's mission. For example, courts often exercise equitable cy pres authority to direct funds to other persons or entities when necessary to accomplish a charity's mission. *See, e.g.*, *In re Veterans' Indus., Inc.*, 8 Cal. App. 3d 902, 918-19, 925-26 (1970) (recognizing authority to direct that trust assets "be transferred to another corporation, organization, society, or trust so that the original trust purposes can be carried out"); *Blocker v. State*, 718 S.W.2d 409, 416 (Tex. App. 1986) (ordering "transfer [of] the assets to . . . an organization dedicated to a similar, if not identical, purpose"); Restatement (Third) of Trusts § 67 (2003). Courts invoke similar equitable cy pres authority to direct proceeds to nonparties in class actions. *See, e.g.*, *In re Google Inc. St. View Elec. Commc'ns Litig.*, 21 F.4th 1102, 1113 (9th Cir. 2021) (confirming that "a district court may . . . approve a class-action settlement that provides monetary relief only in the form of *cy pres* payments

2

to third parties"); *Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1305 (9th Cir. 1990) ("[N]umerous state courts have utilized cy pres . . . procedures to ensure that wrongdoers do not 'retain ill gotten gains' . . . ."). Those cases foreclose any argument that courts lack equitable authority to direct monetary proceeds to anyone other than the named plaintiff.

As Plaintiff explained in connection with his Amended Notice of Remedies, equitable relief has figured prominently throughout this case. Dkt. 462 at 3-4. Every complaint has included broad demands for injunctive relief. Dkt. 1; Dkt. 32; Dkt. 170 ¶¶280, 299, 315, 404, 417 & prayer ¶5. Plaintiff's original January 16, 2026 Notice of Remedies made clear that, "if the jury finds [a] Defendant liable, Plaintiff plans to seek appropriate equitable relief from the Court, including an injunction," and that "[t]hose equitable remedies would be addressed by the Court after trial." Dkt. 392 at 4. Consistent with that history, at the April 13 hearing, this Court rejected Defendants' argument that Musk had not sufficiently pursued equitable remedies. At the April 17 hearing, even OpenAI admitted that "injunctive relief had been sought" in the case. 4/17 Hr'g Tr. 13:2-6. This Court never set a deadline for Plaintiff to itemize his specific requests for equitable relief, nor would such a deadline make sense at this juncture, given that equitable remedies are normally sought from the Court ***after trial***. *See Teutscher v. Woodson*, 835 F.3d 936, 944 (9th Cir. 2016) ("[T]he jury's determination of the legal claims must occur 'prior to any final court determination of [the] equitable claims . . . .' ").[1]

Contrary to Defendants' assertion, Plaintiff's renewed emphasis on equitable remedies was not an eleventh-hour tactical switch. Plaintiff filed his Amended Notice of Remedies a mere seven days after this Court ruled, at Defendants' insistence, that Plaintiff's disgorgement remedies were

---

[1] Equitable relief was actively litigated during discovery as well. For example, after OpenAI and Microsoft sought to withhold valuation documents under the business strategy doctrine, Plaintiff moved to compel on the ground that the documents were relevant to his equitable claims: "Plaintiffs seek documents that are plainly highly relevant to their preexisting Phase I claims" because "Musk . . . ***seeks a permanent injunction against OpenAI's for-profit conversion***." Dkt. 239 at 5 (emphasis added). Magistrate Judge Hixson agreed, explaining that the discovery was relevant because "[t]he transaction that OpenAI and Microsoft are negotiating ***is*** the transaction Plaintiffs are seeking to enjoin in this case." Dkt. 251 at 7-8. In another dispute, Defendants invoked "the availability of equitable remedies" as a justification for seeking certain discovery, specifically citing the Court's ruling on irreparable harm in the preliminary injunction order. Dkt. 199 at 2-3.

equitable rather than legal – a ruling that shifted the entire focus of this case to equitable remedies. Dkt. 456 at 1-3. Having achieved their goal of eliminating any binding jury on liability and removing the jury from the remedies phase of the case entirely, Defendants should not be heard to complain that Musk is now emphasizing the equitable remedies he has sought throughout the case.

The Court should therefore accept Musk's verified waiver that he will not seek an award to himself, xAI, or any fund that he controls as to the claims set for trial. As shown above, this Court has ample equitable authority to direct the proceeds of disgorgement to whatever entity would best advance OpenAI's mission. Musk is confident that his post-trial briefing on the merits of the equitable relief he seeks will confirm the propriety of those remedies. To the extent the Court has any concerns about the impact of Musk's commitment not to seek personal monetary relief on his standing or the viability of any claims, the Court should accept Plaintiff's request to add a demand for nominal damages on each of his claims.

Dated:  April 20, 2026                           TOBEROFF & ASSOCIATES, P.C.


                                   By:   /s/ Marc Toberoff
                                         Marc Toberoff (CA SBN 188547)


                                         MOLOLAMKEN LLP


                                   By:   /s/ Steven F. Molo
                                         Steven F. Molo (*pro hac vice*)

## **VERIFICATION**

Plaintiff Elon Musk hereby verifies that the statements of fact in the foregoing notice concerning the remedies he seeks in this case are true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on April 20, 2026 _____

Elon Musk

PLAINTIFF'S NOTICE REGARDING VERIFIED WAIVER OF REMEDIES
CASE NO.: 4:24-CV-04722-YGR

**<u>SIGNATURE ATTESTATION</u>**

I hereby attest that the signatories listed above, on whose behalf this document is submitted, concur in the filing's content and have authorized the filing.


Dated:  April 20, 2026                              /s/ Steven F. Molo
                                                     Steven F. Molo (*pro hac vice*)

6