JORDAN ETH (CA SBN 121617)
JEth@mofo.com
WILLIAM FRENTZEN (CA SBN 343918)
WFrentzen@mofo.com
DAVID J. WIENER (CA SBN 291659)
DWiener@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105
Telephone:    (415) 268-7000
Facsimile:    (415) 268-7522

WILLIAM SAVITT (admitted *pro hac vice*)
WDSavitt@wlrk.com
BRADLEY R. WILSON (admitted *pro hac vice*)
BRWilson@wlrk.com
SARAH K. EDDY (admitted *pro hac vice*)
SKEddy@wlrk.com
RANDALL W. JACKSON (admitted *pro hac vice*)
RWJackson@wlrk.com
STEVEN WINTER (admitted *pro hac vice*)
SWinter@wlrk.com
NATHANIEL CULLERTON (admitted *pro hac vice*)
NDCullerton@wlrk.com
WACHTELL, LIPTON, ROSEN & KATZ
51 West 52nd Street
New York, NY 10019
Telephone:    (212) 403-1000
Facsimile:    (212) 403-2000

*Attorneys for Defendants Samuel Altman, Gregory Brockman,
OpenAI, Inc., OpenAI L.P., OpenAI, L.L.C., OpenAI GP, L.L.C.,
OpenAI OpCo, LLC, OpenAI Global, LLC, OAI Corporation, LLC,
OpenAI Holdings, LLC, OpenAI Startup Fund Management, LLC,
OpenAI Startup Fund GP I, L.L.C., OpenAI Startup Fund I, L.P.,
OpenAI Startup Fund SPV GP I, L.L.C., OpenAI Startup Fund SPV GP II, L.L.C.,
OpenAI Startup Fund SPV GP III, L.L.C., OpenAI Startup Fund SPV GP IV, L.L.C.,
OpenAI Startup Fund SPV I, L.P., OpenAI Startup Fund SPV II, L.P.,
OpenAI Startup Fund SPV III, L.P., OpenAI Startup Fund SPV IV, L.P.,
Aestas Management Company, LLC, and Aestas LLC*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

| | |
|---|---|
| ELON MUSK, et al.,<br><br>        Plaintiffs,<br><br>   v.<br><br>SAMUEL ALTMAN, et al.,<br><br>        Defendants. | Case No. 4:24-cv-04722-YGR<br><br>**OPENAI DEFENDANTS' RESPONSE TO MUSK'S NOTICES REGARDING VERIFIED WAIVER OF REMEDIES AND FRAUD CLAIMS** |

Trial begins in five days but Plaintiff still refuses to state plainly what claims he will pursue and what remedies he will seek. These evasive tactics appear designed to obscure that Plaintiff has abandoned every remedy available to him and has no cognizable theory of relief remaining. The OpenAI Defendants would be pleased to present further briefing to the Court at its convenience to establish the irretrievable deficiencies in Plaintiff's retooled lawsuit. At a minimum, to avoid prejudice at trial, Plaintiff's gamesmanship calls for immediate redress in the form of an order (1) precluding Plaintiff from pursuing disgorgement; and (2) directing Plaintiff to file compliant notices (a) dismissing (or not) his fraud and constructive fraud claims and (b) unequivocally waiving all remedies in which Plaintiff has any interest.

## BACKGROUND

Months ago, Elon Musk avoided summary judgment by persuading the Court he could adduce evidence showing he (1) retained control rights over contributions made to donor advised funds ("DAFs") and fiscal sponsors that in turn donated to OpenAI, Inc., *see* Dkt. No. 350 at 14; Dkt. No. 390 at 15; and (2) was personally defrauded, *see* Dkt. No. 350 at 22-23, Dkt. No. 390 at 17-19. In his Notice of Remedies, also filed months ago, the sole articulated remedy Musk identified on any of the claims set for trial was a disgorgement award to him personally, tied to his personal contributions to OpenAI. Dkt. 392. The evidentiary and expert record had been developed on the basis of this asserted remedy, and this asserted remedy only.

Two and a half weeks before trial, Musk filed an "Amended" Notice of Remedies that bore no resemblance to the initial notice and very little connection to the evidentiary record. Dkt. 459. Musk abandoned the personal harm theories he had pressed to keep this case alive, abandoned the only remedy he had been pursuing to date (disgorgement to him personally, from the OpenAI nonprofit), and sought to cloak himself as representative of the public interest. Never mind that the Office of the California Attorney General deemed him unfit for the role over a year ago. Dkt. 157-1. In Musk's new telling, it is not he but the OpenAI nonprofit (still a defendant on all claims) or the DAFs (never named in this suit) who have been harmed and should receive a disgorgement award. Dkt. 484. Because Musk no longer seeks to enforce duties allegedly owed to him by virtue of his

1

donations, his personal charitable trust has evaporated. And now, apparently to avoid the implausibility of arguing personal harm while disclaiming all personal remedies, Musk proposes to dismiss the fraud claims he has long promoted. Dkt. 485. More accurately, he only sort-of proposes to dismiss the fraud claims—he seeks the right to take the dismissal back if the Court decides his changes of position have undermined his other claims. *Id.* at 2.

## **ARGUMENT**

Musk's remedies shell game should not be countenanced: He (now) asserts no personal injury to be redressed, and has no standing to sue on behalf of the public, the OpenAI nonprofit, or the DAFs. A plaintiff cannot come to court just to air a grievance. If Musk is permitted to proceed at all, he should at a minimum be precluded from pursuing any disgorgement remedy. That remedy has no legal basis however framed, and Musk's ever-shifting articulations of its framing—to whom does it go? from whom is it paid? on what factual basis? on what legal authority?—put Defendants in an impossible position on the eve of trial.

The OpenAI Defendants further request an order (1) directing Musk to immediately file a compliant notice regarding his fraud claims—one that either voluntarily dismisses the claims or does not; and (2) directing Musk to supplement his waiver of personal remedies to comply with the Court's April 17, 2026 order, Dkt. 477.

### **I.      Musk should at a minimum be precluded from seeking disgorgement.**

In their April 10 response to Plaintiff's "Amended Notice of Remedies," the OpenAI Defendants argued that Musk could not lawfully pursue either a non-personal derivative disgorgement remedy—on behalf of a defendant whom he does not represent—or the exorbitant and derivative injunctive relief described in the amended notice. Dkt. 460. Now, Musk has moved the goal posts once more, suggesting that disgorgement could flow not to him or the OpenAI nonprofit but to the non-party DAFs that actually made the contributions. Dkt. 484 at 1.

None of the relief Musk is pursuing now is available to him—and Musk's latest efforts to marshal authority only underscore the point. Musk invokes the *cy pres* doctrine, but *cy pres* generally applies only "when a charity is originally or later becomes impossible, inexpedient, or

OPENAI DEFENDANTS' RESPONSE TO MUSK'S NOTICES REGARDING VERIFIED WAIVER OF
REMEDIES AND FRAUD CLAIMS
CASE NO. 4:24-CV-04722-YGR

impracticable of fulfillment." *In re Veterans' Indus., Inc.*, 8 Cal. App. 3d 902, 917 n.12 (1970) (quoting Bogert, *The Law of Trusts and Trustees* § 431, p. 390 (2d ed. 1964)). Musk does not pretend that to be the case here. And while the doctrine has also been deployed to address leftover proceeds of a class action settlement, that concern likewise manifestly is not at issue here.

As for Musk's new ask for a "return" of any wrongful gains to the DAFs, he cites no authority that would allow him to make that ask on behalf of parties that have never been in this case. The DAFs—entities owned and controlled by Vanguard and Fidelity—have not appeared in this action and have given no indication they believe their rights have been violated or that they seek a remedy. Even more fundamentally, the request undermines Musk's very basis for maintaining his underlying claims. The Court denied summary judgment on Musk's charitable trust claim based on his allegations that he imposed restrictions on the donations he made through DAFs (and fiscal sponsors), and retained the continuing right to enforce those restrictions. *See* Dkt. 390 at 15. By suggesting instead that the DAFs have the relevant property rights—that they are the owners of the claim and they are the rightful beneficiaries of any remedy—Musk appears to close off the pathway to standing the Court recognized in its summary judgment ruling.

The OpenAI Defendants are mindful of the Court's intention to "address the availability of Musk's proposed equitable remedies at a later date." Dkt. 477 at 3. But Musk's shifting, illogical, and untenable positions on remedy raise serious questions whether he has any claim here at all. At a minimum, he should not be permitted to seek any disgorgement remedy. He has already abandoned the theory of disgorgement he pursued for nearly the entirety of this case and has no standing to pursue his new theory. Plaintiff's other recently-articulated remedies fail for reasons noted above and summarized in Dkt. 460. As set out in that filing, there is no case left to try. The OpenAI Defendants are prepared to submit briefing further establishing why at any time convenient to the Court.

## II.      Musk should be directed to file a compliant fraud claims notice.

During the April 17 conference, Plaintiff's counsel announced that Musk had "decided to dismiss" his claims for fraud and constructive fraud. 4/17/26 Hearing Tr. at 5-6. After further

OPENAI DEFENDANTS' RESPONSE TO MUSK'S NOTICES REGARDING VERIFIED WAIVER OF
REMEDIES AND FRAUD CLAIMS
CASE NO. 4:24-CV-04722-YGR

colloquy, he equivocated. *Id.* at 7-8. The Court then directed Musk to "file either a notice of voluntary dismissal of [his fraud] claims, or a statement explaining that he elects not to dismiss them." Dkt. 477 at 4.

Musk did not comply with this instruction. He instead filed a two-page notice saying he would voluntarily dismiss only if the Court allowed him to proceed with other claims: "[S]o long as the Court plans to proceed to trial on the breach of charitable trust and unjust enrichment claims," Musk wrote, "this notice may be treated as a notice of voluntary dismissal of those claims." Dkt. 485 at 2.

No Federal Rule allows a litigant to bargain with the Court like this. If Musk wants to voluntarily dismiss his fraud claims, he should make a proper, unconditional submission proposing to do so. Defendants and the Court are entitled to know what claims are to be tried.

**III.     Musk should be directed to supplement his waiver.**

On April 17, the Court directed Musk to verify that none of he, xAI, or any other Musk-controlled fund would "seek an award . . . as to all remaining causes of action." Dkt. 477 at 4. The "remaining causes" include the antitrust claims that xAI filed and that are slated for Phase II proceedings. Musk's verified waiver makes no mention of these and instead seeks to limit its compliance with the Court's order to "his claims set for trial," Dkt. 484 at 1. Musk also reserves the right to seek nominal damages in his favor "if the Court concludes that a claim for nominal damages is necessary to support Musk's standing, to establish any cause of action, or to overcome any other impediment to effective relief." Dkt. 484 at 1.

While Musk thus confirms abandonment of any claim for disgorgement in his favor, he refuses to comply with the Court's order. Musk should be directed to supplement his waiver or else forgo the right to make the arguments identified in the Court's April 17 order.

OPENAI DEFENDANTS' RESPONSE TO MUSK'S NOTICES REGARDING VERIFIED WAIVER OF REMEDIES AND FRAUD CLAIMS
CASE NO. 4:24-CV-04722-YGR

Date:  April 22, 2026

MORRISON & FOERSTER LLP

*/s/ William Frentzen*

JORDAN ETH (CA SBN 121617)
JEth@mofo.com
WILLIAM FRENTZEN (CA SBN 343918)
WFrentzen@mofo.com
DAVID J. WIENER (CA SBN 291659)
DWiener@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105
Telephone:    (415) 268-7000
Facsimile:    (415) 268-7522

WILLIAM SAVITT (admitted *pro hac vice*)
WDSavitt@wlrk.com
BRADLEY R. WILSON (admitted *pro hac vice*)
BRWilson@wlrk.com
SARAH K. EDDY (admitted *pro hac vice*)
SKEddy@wlrk.com
RANDALL W. JACKSON (admitted *pro hac vice*)
RWJackson@wlrk.com
STEVEN WINTER (admitted *pro hac vice*)
SWinter@wlrk.com
NATHANIEL CULLERTON (admitted *pro hac vice*)
NDCullerton@wlrk.com
WACHTELL, LIPTON, ROSEN & KATZ
51 West 52nd Street
New York, NY 10019
Telephone:    (212) 403-1000
Facsimile:    (212) 403-2000

*Attorneys for the OpenAI Defendants*

OPENAI DEFENDANTS' RESPONSE TO MUSK'S NOTICES REGARDING VERIFIED WAIVER OF
REMEDIES AND FRAUD CLAIMS
CASE NO. 4:24-CV-04722-YGR