MARC TOBEROFF (CA SBN 188547)
MToberoff@toberoffandassociates.com
TOBEROFF & ASSOCIATES, P.C.
23823 Malibu Road, Suite 50-363
Malibu, CA  90265
Telephone: (310) 246-3333

STEVEN F. MOLO (*pro hac vice*)
ROBERT K. KRY (*pro hac vice*)
JENNIFER M. SCHUBERT (*pro hac vice*)
MOLOLAMKEN LLP
430 Park Avenue
New York, NY  10022
Telephone: (212) 607-8160

*Attorneys for Plaintiffs Elon Musk
and X.AI Corp.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| | |
|---|---|
| ELON MUSK et al., | Case No. 4:24-cv-04722-YGR |
| Plaintiffs, | **PLAINTIFF'S BRIEF ON CAL. BUS. & PROF. CODE § 17510.8** |
| v. | |
| SAMUEL ALTMAN et al., | |
| Defendants. | |

Plaintiff Elon Musk respectfully submits this brief pursuant to the Court's April 29, 2026 order on the record that the parties file briefs addressing Plaintiff's breach of charitable trust claim under California Business and Professions Code § 17510.8.

**ARGUMENT**

Plaintiff asserts breach of charitable trust on three independent legal grounds: (1) common law breach of charitable trust under cases such as *Holt v. College of Osteopathic Physicians & Surgeons*, 61 Cal. 2d 750 (1964), and *L.B. Research & Education Foundation v. UCLA Foundation*, 130 Cal. App. 4th 171 (2005), as well as the Restatement (Third) of Trusts § 94 (2012); (2) statutory breach of charitable trust under California Corporations Code § 5142(a); and (3) statutory breach of charitable trust under California Business and Professions Code § 17510.8.  This brief addresses only the third of those three grounds.

The evidence at trial supports a claim against Defendants under that statute.  OpenAI and Altman "solicited" charitable donations from Musk.  And Section 17510.6's exclusion for the "membership" of a charity does not apply.

## I.   OPENAI AND ALTMAN "SOLICITED" CONTRIBUTIONS FROM MUSK

Section 17510.8 provides:  "Notwithstanding any other provision of this article, there exists a fiduciary relationship between a charity or any person soliciting on behalf of a charity, and the person from whom a charitable contribution is being solicited."  Cal. Bus. & Prof. Code § 17510.8.  "The acceptance of charitable contributions by a charity or any person soliciting on behalf of a charity establishes a charitable trust and a duty on the part of the charity and the person soliciting on behalf of the charity to use those charitable contributions for the declared charitable purposes for which they are sought."  *Id.*

Under Section 17510.8, "when the fundraiser solicits money for a declared purpose, the donation must be used for that purpose."  *People v. Orange County Charitable Servs.*, 73 Cal. App. 4th 1054, 1069 n.7 (1999); *see also Exec. Comm. Representing Signing Petitioners of Archdiocese of W. U.S. v. Kaplan*, No. 03-cv-8947, 2004 WL 6084228, at \*8 (C.D. Cal. Sept. 17, 2004) ("[Section] 17510.8 states that a fiduciary relationship exists between a charity or a person soliciting on behalf of a charity and the person from whom the charity is soliciting.").  "In California, any

1

individual or organization that solicits charitable funds is considered a 'charitable trustee' . . . and is accountable for such funds." Cal. Dep't of Justice, *Attorney General's Guide for Charities* 4 (2024). By making solicited parties the express statutory object and beneficiary of a traditional common law duty, the statute "establish[es] elements of [a] pre-existing common law cause[] of action." *Crusader Ins. Co. v. Scottsdale Ins. Co.*, 54 Cal. App. 4th 121, 125 (1997).

By its plain terms, Section 17510.8 establishes two requirements: The plaintiff must be a "person from whom a charitable contribution [was] solicited"; and the defendant must have "accept[ed]" the contributions. Cal. Bus. & Prof. Code § 17510.8. Both requirements are met here, multiple times over.

*First*, Sam Altman explicitly solicited donations from Musk when they were founding OpenAI together. On October 18, 2015, Altman emailed Musk: "As discussed I think starting with a $100MM commitment (and leaving the time unspecified) is the way to go. . . . *Specific asks for you:  1) Can you donate $30MM over the next 5 years?*" PX007 (emphasis added) (introduced at 4/28 Tr. 348:5-349:19 (Musk)). A few months later, Altman renewed his request: "*Can you do $20MM a year for the each of the next 3 years?*" PX069 (emphasis added). By their plain terms, those express requests for financial assistance were solicitations for donations within the meaning of the statute. OpenAI accepted the fruits of those solicitations by receiving Musk's quarterly donations and rent payments over the next five years. PX112.

*Second*, OpenAI solicited donations from Musk once again in 2020, after Musk informed OpenAI that he planned to stop paying OpenAI's rent. On July 22, 2020, OpenAI's CFO Chris Clark wrote to Musk's financial advisor Jared Brichall and pleaded for more donations: "Since the non-profit needs to remain on the lease, *it would greatly help the nonprofit org if you're willing to assist with covering a portion of the anticipated near term landlord passthroughs and security costs*." PX103 (emphasis added) (to be introduced through Birchall). Clark made two funding proposals, one of which was that Musk "could simply keep the current $290k monthly Fidelity grants going through the end of September." *Id.* Musk agreed to that proposal and kept funding OpenAI's rent for another two months. PX112. Once again, OpenAI accepted those donations, bringing this case squarely within the ambit of Section 17510.8.

Musk therefore falls squarely within the scope of the statute.  As a party solicited to make donations that were accepted but then misused by the charity for unauthorized activity, Musk is empowered to vindicate his rights under California law.

## II.    SECTION 17510.6'S MEMBERSHIP EXCLUSION DOES NOT APPLY

OpenAI claims that Section 17510.8 does not apply because another provision, Section 17510.6, states that "[t]he provisions of this article shall not apply to solicitations, sales, offers, or attempts to sell *within the membership* of a charitable organization or upon its regular occupied premises."  Cal. Bus. & Prof. Code § 17510.6 (emphasis added).  OpenAI contends that Musk was a "member" of OpenAI from the time he founded the organization in 2015 until he left the OpenAI board in February 2018.  That argument fails for multiple reasons.

*First*, the argument is irrelevant to Chris Clark's solicitation of donations from Musk in July 2020.  PX103.  That solicitation occurred over two years *after* Musk left the board in February 2018.  And Musk continued to make monthly rent payments for two more months after Clark's solicitation.  PX112.  There is no conceivable basis for applying the membership instruction to those donations.

*Second*, although the statute requires that the plaintiff be a "person from whom a charitable contribution [was] solicited," the charitable trust arises only upon "[t]he *acceptance* of charitable contributions by a charity or any person soliciting on behalf of a charity."  Cal. Bus. & Prof. Code § 17510.8 (emphasis added).  Musk contributed almost $10 million in rent after leaving the board in February 2018.  PX112.  The statute applies to OpenAI's *acceptance* of those donations, even if Musk was a member of OpenAI at some earlier time.

*Third*, Section 17510.6's membership exclusion does not apply because Section 17510.8 contains a broad "notwithstanding" clause that renders Section 17510.6 inapplicable.  Section 17510.8 states that it applies "*[n]otwithstanding* any other provision of this article."  Cal. Bus. & Prof. Code § 17510.8 (emphasis added).  That broad "notwithstanding" clause displaces any contrary provisions like Section 17510.6.  "When the Legislature intends for a statute to prevail over all contrary law, it typically signals this intent by using phrases like 'notwithstanding any other law' or 'notwithstanding other provisions of law.'"  *In re Greg F.*, 55 Cal. 4th 393, 406 (2012); *see also Arias v. Superior Ct.*, 46 Cal. 4th 969, 983 (2009) ("The statutory phrase 'notwithstanding any other

3

provision of law' has been called a 'term of art' that declares the legislative intent to override all *contrary* law.'"). That is precisely the sort of language the Legislature enacted here. Section 17510.6 is another provision "of this article," so Section 17510.8 applies "notwithstanding" that other provision.

The enactment dates of the two provisions confirm that conclusion. "If conflicting statutes cannot be reconciled, later enactments supersede earlier ones . . . ." *State Dep't of Pub. Health v. Superior Ct.*, 60 Cal. 4th 940, 960 (2015); *see also Cross v. Superior Ct.*, 11 Cal. App. 5th 305, 322 (2017) ("It is well established that a statute enacted later in time controls over an earlier-enacted statute . . . ."). Section 17510.8 was enacted in 1992 (Stats.1992, c. 1100 (A.B. 3053), § 1), whereas Section 17510.6 was enacted years earlier in 1980 (Stats. 1980, c. 1267, p. 4294, § 8). The more recent statute therefore governs in any conflict.

Finally, Section 17510.8 itself declares that "[t]his section is declarative of existing trust law principles." Cal. Bus. & Prof. Code § 17510.8. Existing trust law principles include no carveout for the membership of charitable organizations. The statute should not be construed to impose such a requirement either.

OpenAI relies on *Cohen v. Kabbalah Centre International*, 35 Cal. App. 5th 13 (2019), in which a California intermediate appellate court construed Section 17510.6's membership exclusion to apply to Section 17510.8 notwithstanding the latter provision's notwithstanding clause. *Id.* at 23. But that case misread the statute. *Cohen* reasoned that "[Section 17510.8's notwithstanding clause] has no application here . . . because this section is within the article that does not apply to 'solicitations' within the membership of a charitable organization." 35 Cal. App. 5th at 23. That reasoning gets the statutory interpretation backwards. *Section 17510.8* is the provision that contains a categorical "notwithstanding" clause that evinces a legislative intent to trump any contrary provision. There is no similar language in 17510.6. Any conflict between the two provisions must therefore be resolved in favor of Section 17510.8. That is the precise reason why the Legislature included the notwithstanding clause in Section 17510.8 but not 17510.6.

State intermediate appellate decisions like *Cohen* "are not binding if a federal court is 'convinced by other persuasive data.'" *City of Portland v. HomeAway.com, Inc.*, 240 F. Supp. 3d

4

1099, 1108 n.5 (D. Or. 2017).  Here, *Cohen* simply misread the statute and ignored the plain implication of the Legislature's decision to include a "notwithstanding" clause in Section 17510.8 but not 17510.6.  The Court should follow the plain text of the statute.

### CONCLUSION

For all the foregoing reasons, the trial evidence supports Plaintiff's statutory breach of charitable trust claim under Section 17510.8, and Section 17510.6's membership exclusion does not preclude the claim.

Dated:  April 30, 2026                    MOLOLAMKEN LLP

By:    */s/ Robert K. Kry*
       Robert K. Kry (*pro hac vice*)