JORDAN ETH (CA SBN 121617)
JEth@mofo.com
WILLIAM FRENTZEN (CA SBN 343918)
WFrentzen@mofo.com
DAVID J. WIENER (CA SBN 291659)
DWiener@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105
Telephone:    (415) 268-7000
Facsimile:    (415) 268-7522

WILLIAM SAVITT (admitted *pro hac vice*)
WDSavitt@wlrk.com
BRADLEY R. WILSON (admitted *pro hac vice*)
BRWilson@wlrk.com
SARAH K. EDDY (admitted *pro hac vice*)
SKEddy@wlrk.com
RANDALL W. JACKSON (admitted *pro hac vice*)
RWJackson@wlrk.com
STEVEN WINTER (admitted *pro hac vice*)
SWinter@wlrk.com
NATHANIEL CULLERTON (admitted *pro hac vice*)
NDCullerton@wlrk.com
WACHTELL, LIPTON, ROSEN & KATZ
51 West 52nd Street
New York, NY 10019
Telephone:    (212) 403-1000
Facsimile:    (212) 403-2000

*Attorneys for Defendants Samuel Altman, Gregory Brockman,*
*OpenAI, Inc., OpenAI L.P., OpenAI, L.L.C., OpenAI GP, L.L.C.,*
*OpenAI OpCo, LLC, OpenAI Global, LLC, OAI Corporation, LLC,*
*OpenAI Holdings, LLC, OpenAI Startup Fund Management, LLC,*
*OpenAI Startup Fund GP I, L.L.C., OpenAI Startup Fund I, L.P.,*
*OpenAI Startup Fund SPV GP I, L.L.C., OpenAI Startup Fund SPV GP II, L.L.C.,*
*OpenAI Startup Fund SPV GP III, L.L.C., OpenAI Startup Fund SPV GP IV, L.L.C.,*
*OpenAI Startup Fund SPV I, L.P., OpenAI Startup Fund SPV II, L.P.,*
*OpenAI Startup Fund SPV III, L.P., OpenAI Startup Fund SPV IV, L.P.,*
*Aestas Management Company, LLC, and Aestas LLC*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

| | |
|---|---|
| ELON MUSK, et al., <br><br> Plaintiffs, <br><br> v. <br><br> SAMUEL ALTMAN, et al., <br><br> Defendants. | Case No. 4:24-cv-04722-YGR <br><br> **OPENAI DEFENDANTS' FURTHER BRIEFING REGARDING CHARITABLE SOLICITATIONS STATUTE** <br><br> Courtroom:  1 – 4th Floor <br> Judge:  Hon. Yvonne Gonzalez Rogers |

The OpenAI Defendants submit this memorandum in response to the Court's request for further briefing regarding the applicability of Cal. Bus. & Prof. Code §§ 17510.6 and 17510.8 to Musk's charitable trust claim. As detailed below, there is no legal or factual basis for Musk's argument that a charitable trust was created under those provisions of California's charitable solicitations statute. Accordingly, the jury should not be instructed regarding this alternative basis for Musk's claim.

*    *    *

Musk primarily argues that a charitable trust was created because he manifested an intention that OpenAI, Inc. use the funds he donated only for specified charitable purposes. *See* Dkt. 427.1 at 1 (Plaintiff's Statement of Elements); Dkt. 433 at 22 (Plaintiff's Proposed Jury Instruction 18-P).

Musk separately claims that a charitable trust was created pursuant to Cal. Bus. & Prof. Code § 17510.8[1] based on two alleged charitable solicitations: (1) an email Altman sent to Musk in February 2016 regarding Musk's quarterly $5 million payments, and (2) an email Chris Clark sent to Jared Birchall in July 2020 regarding Musk's final two monthly rent payments. Trial Tr. (Apr. 29, 2026) at 639:8-25. Neither satisfies the statute's requirements for creating a charitable trust.

**(1) *Altman's February 2016 email*.** Altman's February 2016 email asking if Musk could "do $20MM a year for [] each of the next 3 years," PX-0069—for a total of $60 million out of the $1 billion Musk had already pledged as a founding commitment (DX-0509)—did not create a charitable trust under § 17510.8 because both Altman and Musk were "members" of OpenAI, Inc. at the time of the alleged solicitation. § 17510.6.

Section 17510.6 provides that "[t]he provisions of [Article 1.3]"—which includes § 17510.8—"***shall not apply*** to solicitations … ***within the membership*** of a charitable organization

---

[1] Cal. Bus. & Prof. Code § 17510.8 provides that: "Notwithstanding any other provision of this article, there exists a fiduciary relationship between a charity or any person soliciting on behalf of a charity, and the person from whom a charitable contribution is being solicited. The acceptance of charitable contributions by a charity or any person soliciting on behalf of a charity establishes a charitable trust and a duty on the part of the charity and the person soliciting on behalf of the charity to use those charitable contributions for the declared charitable purposes for which they are sought. This section is declarative of existing trust law principles."

or upon its regular occupied premises." § 17510.6. It is undisputed that Musk "was a member of OpenAI from its founding through his departure from the board on February 21, 2018." Dkt. 360-3 (Statement of Undisputed Facts in Support of Motion for Summary Judgment) (No. 39; "Undisputed"); *see also* Dkt. 427 (Joint Pretrial Conference Statement Undisputed Facts No. 14) (Musk was a member of the board from January 3, 2016 to February 21, 2018); DX-1261 at '455 (OpenAI, Inc.'s Bylaws) (defining the corporation's members to include all members of its board of directors). Therefore, the statute's express exclusion of solicitations "within the membership of a charitable organization" renders § 17510.8 inapplicable to Altman's alleged February 2016 solicitation.

Musk argues that § 17510.6 does not apply on account of § 17510.8's "notwithstanding" clause. That is wrong. Section 17510.8's "notwithstanding" clause cannot limit § 17510.6 because the clause itself is within a "provision[] of this article [which] shall not apply." § 17510.6. If the article doesn't apply, a section within it cannot either.

Two California decisions have addressed this precise question, and both have rejected Plaintiff's contention. The California Court of Appeal in *Cohen* v. *Kabbalah Centre Int'l, Inc.* held squarely that § 17510.6 renders 17510.8 inapplicable to "'solicitations' within the membership of a charitable organization." 35 Cal. App. 5th 13, 23 (2019). The plaintiff in that case, just like Musk here, argued that § 17510.8's "notwithstanding" clause trumped § 17510.6's member-exclusion. The court rejected that argument: "This clause has no application here, however, because this section is ***within the article that does not apply to 'solicitations' within the membership of a charitable organization***." *Id.* (citing § 17510.6). The second decision, *Buck* v. *Peace Apostolic Church, Inc.*, likewise found that § 17510.8 did not apply because the plaintiff there was a member of the defendant charitable organization. 2023 WL 9064440, at *6 (Cal. Super. Ct. Oct. 31, 2023) (describing § 17510.6 as "an exception to" § 17510.8).[2]

---

[2] *Arias* v. *Superior Court*, 46 Cal. 4th 969 (2009), which Musk has previously cited, is inapposite. First, it does not concern § 17510.6 or § 17510.8 at all but rather an unrelated Labor Code provision. Second, *Arias* recognizes that "notwithstanding" clauses only override truly "contrary" law. *Id.* at 983. There is no such conflict here because, as explained above, the two provisions are readily harmonized by reading § 17510.8 to cover solicitations other than those "within the membership

Applying § 17510.6's member-exclusion as written is entirely consistent with the purpose of the statute—which is to "protect[] *the public* against the predatory practices of charitable solicitors," not a co-founder from his fellow members. *People* v. *Orange Cnty. Charitable Servs.*, 73 Cal. App. 4th 1054, 1059 (1999) (applying § 17510.8 to 130 individuals and business entities engaged in commercial fundraising).[3] Section 17510.8 lies within Article 1.3 ("Charitable Solicitations") of Chapter 1 ("Advertising") of Part 3 ("Representations to the Public") of the Business and Professions Code. The Article's stated purpose "is to safeguard *the public* against fraud, deceit and imposition" and "restrict harmful solicitation methods." § 17510(b). Numerous sections of the statute are directed at such public-facing practices—*e.g.*, addressing solicitations in "newspaper[s]," or "by public outcry or proclamation," or those "involv[ing] persons standing in a public roadway soliciting contributions from passing motorists" (§§ 17510.2(c), 17510.25)—and highlight the statute's inapplicability to the facts here. One provision requires a solicitor to "exhibit to the prospective donor" a "'Solicitation or Sale for Charitable Purposes Card,'" which should be signed and have the name and address of the solicitor or the soliciting organization. § 17510.3(a). Alternatively, the solicitor may present a brochure containing the same information. *Id.* None of any of this would make sense if the intent was to apply § 17510.8 to a co-founder like Musk.

**(2) *Chris Clark's July 2020 email regarding monthly rent.*** At yesterday's conference, Musk's counsel suggested that a July 22, 2020 email from OpenAI's Chris Clark to Musk associate Jared Birchall after Musk left the board created a charitable trust under § 17510.8. PX-103. As explained below, this email is not a "solicitation for charitable purposes" under the statute, because Clark's request was not for a charitable contribution to OpenAI, Inc., but rather for sharing building costs between OpenAI, Inc. and Neuralink—Musk's for-profit company that Musk also housed in

---

of a charitable organization or upon its regular occupied premises," to which all of Article 1.3's provisions do "not apply." § 17510.6. Unless otherwise noted, emphasis is added.

[3] Musk has also previously argued that § 17510.6's member-exclusion should not apply to donations that were "accepted" after Musk ceased being member. The Court of Appeal in *Cohen* also rejected that § 17510.8's references to acceptance of solicited contributions could override § 17510.6's plain terms excluding "solicitations within the membership of a charitable organization" from the article's remit. *Cohen*, 35 Cal. App. 5th at 23 ("soliciting and accepting contributions are two sides of the same coin").

the building.[4] And even if Clark's request were construed as a solicitation, Musk's charitable trust claim on this theory would be limited to *two* monthly rent payments of $290,000 each (or $580,000 in total)—which were indisputably used for their intended purposes, *i.e.*, to pay the rent for those months.

(i) The evidence will show that in early June 2020 Musk told Birchall to cancel the monthly rent contributions he had been making to OpenAI, Inc. for its rent in the Pioneer Building, which housed both OpenAI and Neuralink. DX-0914. On July 22, 2020, Clark emailed Birchall and "confirmed" that OpenAI's "for-profit entity" would be "happy to cover 100% of the rent effective immediately." PX-103. Clark then gauged whether Birchall would be willing to "cover[] a portion of the anticipated near term landlord passthroughs and security costs." *Id.* As the email reflects, Clark suggested $570k as an appropriate figure and offered that Birchall could alternatively "keep the current $290k monthly Fidelity grants going through the end of September *and get to roughly the same amount.*" *Id.* Birchall followed Clark's alternative recommendation, emailing Musk's financial advisor that managed his Fidelity DAF account that "September should be [Musk's] last grant to Open AI." DX-0917. Two monthly rent payments followed Clark's July 22, 2020 email for a total of $580,000. Undisputed Facts No. 16.

(ii) Even if Clark's July 22, 2020 email constituted a solicitation that could form a charitable trust under § 17510.8, that charitable trust would be limited to those two rent payments (totaling $580,000) and would not include any of the money or property donated before the alleged solicitation. *See* Cal. Bus. & Prof. Code § 17510.8 ("establish[ing] a charitable trust and a duty on the part of the charity … to use *those charitable contributions* for the declared charitable purposes for which they are sought"); *see also* Restatement (Third) of Trusts § 2 (2003) (defining a charitable trust as a "fiduciary relationship *with respect to property*"); *L.B. Rsch. & Educ. Found.* v. *UCLA Found.*, 130 Cal. App. 4th 171, 177 (2005) (same). The evidence will be undisputed that OpenAI,

---

[4] Cal. Bus. & Prof. Code § 17510.2(a) defines a "solicitation for charitable purposes" as "any request, plea, entreaty, demand, or invitation, or attempt thereof, to give money or property, in connection with which any of the following applies: (1) Any appeal is made for charitable purposes. (2) The name of any charity, philanthropic or charitable organization is used or referred to in any such appeal as an inducement for making any such gift. (3) Any statement is made to the effect that the gift or any part thereof will go to or be used for any charitable purpose or organization …."

Inc. used those contributions for their intended purposes—*i.e.*, to pay the rent. And in all events, any alleged charitable trust premised on § 17510.8 could not support the relief Musk seeks, which includes injunctive relief regarding the structure and future operations of OpenAI.

*     *     *

For these reasons, the Court should not permit Musk to rely on § 17510.8 as an alternative basis for his charitable trust claim.

Dated:  April 30, 2026                    Respectfully Submitted,

MORRISON & FOERSTER LLP

*/s/ William Frentzen*
JORDAN ETH (CA SBN 121617)
JEth@mofo.com
WILLIAM FRENTZEN (CA SBN 343918)
WFrentzen@mofo.com
DAVID J. WIENER (CA SBN 291659)
DWiener@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105
Telephone:    (415) 268-7000
Facsimile:    (415) 268-7522

WILLIAM SAVITT (admitted *pro hac vice*)
WDSavitt@wlrk.com
BRADLEY R. WILSON (admitted *pro hac vice*)
BRWilson@wlrk.com
SARAH K. EDDY (admitted *pro hac vice*)
SKEddy@wlrk.com
RANDALL W. JACKSON (admitted *pro hac vice*)
RWJackson@wlrk.com
STEVEN WINTER (admitted *pro hac vice*)
SWinter@wlrk.com
NATHANIEL CULLERTON (admitted *pro hac vice*)
NDCullerton@wlrk.com
WACHTELL, LIPTON, ROSEN & KATZ
51 West 52nd Street
New York, NY 10019
Telephone:    (212) 403-1000
Facsimile:    (212) 403-2000

*Attorneys for the OpenAI Defendants*