MARC TOBEROFF (CA SBN 188547)
MToberoff@toberoffandassociates.com
TOBEROFF & ASSOCIATES, P.C.
23823 Malibu Road, Suite 50-363
Malibu, CA 90265
Telephone: (310) 246-3333

STEVEN F. MOLO (*pro hac vice*)
ROBERT K. KRY (*pro hac vice*)
JENNIFER M. SCHUBERT (*pro hac vice*)
MOLOLAMKEN LLP
430 Park Avenue
New York, NY  10022
Telephone: (212) 607-8160

*Attorneys for Plaintiffs Elon Musk
and X.AI Corp.*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# OAKLAND DIVISION

| | |
|---|---|
| ELON MUSK et al., | Case No. 4:24-cv-04722-YGR |
| Plaintiffs, | **PLAINTIFF'S OPPOSITION TO OPENAI DEFENDANTS' MOTION TO PRECLUDE AND FOR PARTIAL RECONSIDERATION** |
| v. | |
| SAMUEL ALTMAN et al., | Judge:  Hon. Yvonne Gonzalez Rogers |
| Defendants. | |

Defendants seek to preclude Plaintiff from pursuing any claims based on OpenAI's October 2025 conversion into a for-profit public benefit corporation that eliminated the caps on investor profits. Dkts. 529, 530. Alternatively, they ask the Court to reconsider its ruling on Plaintiff's Motion in Limine No. 1 and permit evidence about the California and Delaware attorney general decisions concerning that conversion. *Id.* The Court should deny both requests.

**ARGUMENT**

**I.    PLAINTIFF HAS CONSISTENTLY CHALLENGED THE 2025 PUBLIC BENEFIT CORPORATION CONVERSION THROUGHOUT THIS CASE**

Defendants assert that Plaintiff sandbagged them by challenging OpenAI's 2025 conversion into a for-profit public benefit corporation at trial. That claim is sheer fiction. Plaintiff has challenged that conversion throughout the case.

OpenAI publicly announced its planned PBC conversion on September 11, 2025, DX1168, and Defendants consummated the transaction on October 28, 2025, DX1178. But Defendants knew that Plaintiff was challenging that conversion much earlier. Plaintiff's First Amended Complaint, filed on November 14, 2024, specifically alleged that OpenAI's "wholescale conversion of OpenAI, Inc. into a for-profit entity" was "now in full swing," that Altman was now "fast-tracking his plan to turn the non-profit Musk co-founded into the for-profit business Altman had always envisaged," and that "OpenAI and Microsoft [had] hir[ed] investment banks to negotiate their deal." Dkt. 32 ¶¶2, 194-195. The complaint sought "preliminary and permanent injunctive relief" to stop that breach of charitable trust. *Id.* ¶425. The Second Amended Complaint repeated those allegations. Dkt. 170 ¶¶2, 192-193, 404.

On November 29, 2024, Plaintiff filed a motion for preliminary injunction seeking to enjoin OpenAI from "directly or indirectly undertaking any action for the purpose of, or tending to have the effect of, furthering the conversion of OpenAI, Inc. to a for-profit enterprise." Dkt. 46 at ii. The Court denied the motion on the ground that the "likelihood of success on the merits [was] a toss-up." Dkt. 121 at 13, 15. But given the serious issues raised, the Court ordered "an expedited trial on the claim" – the same expedited trial the parties are currently litigating. *Id.* at 15. Plaintiff's challenge to the 2025 for-profit conversion is thus the very reason this trial is occurring.

1

Once OpenAI publicly announced its conversion plans on September 11, 2025, Plaintiff demanded related documents the same day.  And after OpenAI consummated the conversion on October 28, 2025, Plaintiff demanded more documents, which OpenAI produced on November 14, 2025.  In the meantime, Plaintiff pursued information about the conversion in depositions, questioning OpenAI's corporate representative for *20 pages* on the topic.  Wu Dep. 229:12-249:16.

Plaintiff then squarely addressed this topic in expert reports.  Plaintiff's nonprofit expert, Dean David Schizer, spent fifteen paragraphs of his opening report critiquing the 2025 PBC conversion.  Schizer Report ¶¶ 262-277 (Oct. 29, 2025).  He faulted the conversion for "weakening the nonprofit's already questionable control," including by granting the nonprofit board only indirect authority over for-profit operations, by relying on formal control mechanisms that had already proven ineffective, by imposing a PBC structure in which directors must balance the mission against pursuit of profits, and by imposing an unusual 2/3 supermajority vote requirement to remove Altman as CEO.  *Id.* ¶¶ 263-275.  Dean Schizer also faulted the conversion for replacing the former capped-profit structure with traditional uncapped equity stakes.  *Id.* ¶¶ 276-277.  He then elaborated on those points in his rebuttal report.  Schizer Rebuttal Report ¶¶ 125-148 (Nov. 24, 2025).

OpenAI's assertion that "Schizer's report . . . did not attack the 2025 recapitalization transaction" (Mot. at 5) is thus incontestably false.  Plaintiff is attaching the relevant excerpts as **Exhibit A** and **Exhibit B** so the Court can see for itself.

Given that comprehensive challenge, Defendants cannot seriously claim they were somehow blindsided by Plaintiff's position at trial.  Their arguments rest on isolated quotations taken out of context that cannot reasonably be interpreted as disavowals of Dean Schizer's extensive analysis.

For example, Defendants complain that Mr. Musk did not answer questions about the PBC conversion at his deposition.  But as their own quotation shows, Musk declined to answer because the question – "How is it that . . . the proposed restructuring transaction differs from the existing capped-profit structure for purposes of your claim of breach of contract?" – called for a legal conclusion he did not feel qualified to provide.  Musk Dep. 325:20-326:19.  Declining to opine about the *legal details* of a claim does not amount to a waiver of the claim.  And regardless, Defendants never sought an order compelling Mr. Musk to respond at the time.

2

Defendants point to a single line from Dean Schizer's deposition where he stated that his "concern is not this [2025] transaction itself," but rather "earlier" transactions. Schizer Dep. 143:14-21. But the full quotation makes clear that the comment related only to **one aspect** of the restructuring: "the economics for the nonprofit." *Id.* Dean Schizer's point was that, given how much value the nonprofit had already given up in 2023, it was no surprise that the nonprofit received only a modest stake when it negotiated with Microsoft in 2025. *See* Schizer Rebuttal Report ¶ 148 ("[E]ven though OpenAI used a more robust process in connection with the 2025 restructuring, it was stuck with the unfavorable economic position it had already accepted in its prior deals with Microsoft. Because the nonprofit had already parted with so much of the economic return, it could not get back what it had already lost.").

Defendants point to counsel's statements at the pretrial conference that Plaintiff would not "get into a great deal of detail" about the 2025 conversion. 3/13 H'rg Tr. at 82:12-16 (Dkt. 445). Given that Dean Schizer had already set out the precise opinions he would offer in his expert report, Defendants could not reasonably interpret those comments as waivers of Dean Schizer's opinions.

Finally, Defendants accuse Dean Schizer of perpetrating a "bait and switch" at trial. Mot. at 6. Tellingly, Defendants never challenged any of this trial testimony on the ground that it was not disclosed in the expert reports – instead choosing to focus on other evidently more pressing issues such as whether Dean Schizer worked on any AI-related cases while clerking for Justice Ruth Bader Ginsburg in the 1990s. A disclosure objection would have failed anyway, because Dean Schizer's expert reports thoroughly address these topics. But regardless, it is too late to object now.

Because Plaintiff pressed his challenge to the 2025 PBC conversion throughout the case, and never said or did anything to waive it, Defendants' motion to preclude should be denied.

## II.   THE COURT SHOULD NOT RECONSIDER ITS RULING EXCLUDING THE ATTORNEY GENERAL DECISIONS

In the alternative, Defendants ask the Court to reconsider its ruling on Plaintiff's Motion in Limine No. 1 so their witnesses can tell the jury that the California and Delaware attorneys general did not oppose OpenAI's restructuring. But this Court's reasons for granting that motion were sound, and nothing has changed that warrants a different course now.

3

As the Court explained, Musk sought to exclude evidence related to the attorney general decisions because those decisions were "hearsay and are irrelevant and unduly prejudicial because they are based on different legal standards and attempt to encroach on the jury's fact-finding role." Dkt. 452 at 1-2. The Court agreed. "No one from either Office of the Attorney General has been called to testify. To allow such evidence would merely invite a one-sided presentation of an extra-judicial negotiation without the ability to cross-examine." *Id.* at 2.

That ruling was plainly correct. The attorney general decisions relied on overtly political considerations that have no conceivable relevance to this case. The California decision recites that "OpenAI is committed to creating jobs, economic stimulus, and problem-solving that Californians need," that OpenAI "generates thousands of jobs and over a billion dollars of positive economic impact for California annually," and that OpenAI "will continue to increase its hiring of employees in the state, expand its office presence in its home state of California, and generate material local and state tax revenue for the state." Dkt. 402-3 at 1. The California Attorney General decided not to oppose the conversion in part because OpenAI agreed to "maintain its NFP headquarters and have its PBC headquarters in California." *Id.* at 2 ¶ 1; *see also* Dkt. 402-1 at 1 (highlighting "commitment that OpenAI will remain right here in California").

Both decisions were conditioned on long lists of forward-looking representations about how the for-profit would operate that may or may not turn out to be true. Dkt. 402-3 at 2-5; Dkt. 402-4 at 2-6. And the attorneys general relied solely on information provided by OpenAI. Dkt. 402-3 at 6 ¶ 28 ("The Attorney General . . . is expressly and solely relying upon the Information and the Representations, which OpenAI has asserted to be true and accurate in all material respects."); Dkt. 402-4 at 6 (same). Musk was not a party to either investigation and had no meaningful opportunity to respond. As the Court observed, moreover, the California decision expressly states that it has "no impact on any other case." Dkt. 452 at 2 (quoting Dkt. 402-3 at 5 ¶ 23).

Nothing has changed that has any bearing on the Court's rationale. Defendants complain that Plaintiff is now giving more emphasis to the 2025 conversion than he did before trial. But the Court did not grant Motion in Limine No. 1 because it thought the PBC conversion was irrelevant. The Court granted the motion because it thought that the ***attorney general decisions about the***

4

*conversion* were unreliable: "To allow such evidence would merely invite a one-sided presentation of an extra-judicial negotiation without the ability to cross-examine." Dkt. 452 at 2. That remains a compelling basis to exclude the attorney general decisions, no matter how much emphasis Plaintiff devotes to the 2025 conversion at trial.

**CONCLUSION**

The Court should deny OpenAI's motion in its entirety.

Dated: May 10, 2026                                MOLOLAMKEN LLP

                                          By:    */s/ Robert K. Kry*
                                                 Robert K. Kry (*pro hac vice*)

PLAINTIFF'S OPPOSITION TO MOTION TO PRECLUDE AND FOR PARTIAL RECONSIDERATION
CASE NO.: 4:24-CV-04722-YGR