MARC TOBEROFF (CA SBN 188547)
MToberoff@toberoffandassociates.com
TOBEROFF & ASSOCIATES, P.C.
23823 Malibu Road, Suite 50-363
Malibu, CA  90265
Telephone: (310) 246-3333

STEVEN F. MOLO (*pro hac vice*)
ROBERT K. KRY (*pro hac vice*)
JENNIFER M. SCHUBERT (*pro hac vice*)
MOLOLAMKEN LLP
430 Park Avenue
New York, NY  10022
Telephone: (212) 607-8160

*Attorneys for Plaintiffs Elon Musk
and X.AI Corp.*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# OAKLAND DIVISION

| | |
|---|---|
| ELON MUSK, et al., | Case No. 4:24-cv-04722-YGR |
| Plaintiffs, | **PLAINTIFF'S OPPOSITION TO MOTION TO PRECLUDE AND STRIKE DR. WAZZAN'S TESTIMONY (DKT. 564)** |
| v. | |
| SAMUEL ALTMAN, et al., | |
| Defendants. | |

Plaintiff respectfully submits this opposition to Defendants' motion to preclude and strike two sentences from Dr. Wazzan's written trial testimony.  Dkt. 564.  Those sentences state in their entirety:  "My range of $65.5 billion to $109.4 billion represents the portion of the OpenAI *for-profit's* value that is attributable to Mr. Musk's contributions.  I express no opinion on whether those wrongful gains should be disgorged from the OpenAI for-profit or from the OpenAI nonprofit."  Dkt. 542 ¶ 121.  Defendants' motion should be denied because the first sentence was repeatedly disclosed in Dr. Wazzan's expert report, and the second is merely a clarification of a topic on which Dr. Wazzan is *not* opining, to which Rule 26's disclosure requirement does not apply.

Dr. Wazzan's expert report repeatedly explains that his three-step analysis estimates OpenAI's wrongful gains based on the portion of the ***OpenAI for-profit's*** (then) $500 billion value

1

that is attributable to Mr. Musk's contributions.  *See* Wazzan Report ¶8 (Dkt. 393-2) ("I therefore proceed by determining the value of the ***OpenAI for-profit entity*** . . . ; determining the share of that value that is held by the OpenAI nonprofit; and then determining the share of the nonprofit's value that is attributable to Musk's contributions as opposed to contributions from other parties."); *id.* ¶29 ("[T]he first step of my damages analysis is to calculate the current value of ***OpenAI For-Profit*** (Section IV).  I then calculate the portion of this value that should be attributed to OpenAI Nonprofit's stake in OpenAI For-Profit (Section V) and, in turn, the portion of OpenAI Nonprofit's value that should be attributed to Mr. Musk's contributions (Section VI)."); *id.* ¶99 (similar) (all emphasis added); *see also* Wazzan Supp. Report ¶5 (Dkt. 393-3) (listing figures).

Those disclosures all closely track the first sentence in the trial testimony that OpenAI seeks to preclude:  "My range of $65.5 billion to $109.4 billion represents the portion of the OpenAI ***for-profit's*** value that is attributable to Mr. Musk's contributions."  Dkt. 542 ¶121.  Defendants' claim that this sentence was not disclosed in Dr. Wazzan's expert report thus has no basis in fact.  This statement was repeatedly disclosed.

Nor is there any basis for excluding the second sentence:  "I express no opinion on whether those wrongful gains should be disgorged from the OpenAI for-profit or from the OpenAI nonprofit."  Dkt. 542 ¶121.  Rule 26 requires an expert to disclose "a complete statement of all ***opinions*** the witness will express."  Fed. R. Civ. P. 26(a)(2)(B)(i) (emphasis added).  A mere clarification that an expert is ***not*** expressing an opinion on a particular topic is not itself an "opinion" subject to disclosure under Rule 26.  It is the very opposite of an opinion.

Defendants' real complaint seems to be that, in their view, Dr. Wazzan's report set forth a basis for disgorgement only against the nonprofit, not the for-profit.  But nothing in Dr. Wazzan's expert report "targeted the nonprofit and the nonprofit alone."  Mot. at 1.  Tellingly, Defendants never cite any specific paragraph of the report that imposes that limitation – because there is none.  Rather, Dr. Wazzan's report repeatedly refers to "OpenAI's wrongful gains" generally without distinguishing between the nonprofit and for-profit entities.  *See, e.g.*, Wazzan Report ¶29 (Dkt. 393-2) ("I estimate ***OpenAI's wrongful gains*** to be between $83.03 billion and $212.59 billion."); *id.* ¶71 (referring to "the share of ***OpenAI's wrongful gains*** attributable to Mr. Musk"); *id.* heading

2

above ¶99 ("Summary of **OpenAI's Wrongful Gains**"); *id.* ¶100 Ex. 10 ("**OpenAI's Wrongful Gains** Based on MOU Pro Forma Allocation"); *id.* ¶115 ("I can quantify **OpenAI's wrongful gains** under the OpenAI PBC structure . . . .") (all emphasis added).

Dr. Wazzan thus determines the amount of wrongful gains derived from Mr. Musk's contributions by OpenAI as a whole, without taking any position on whether those gains should be disgorged from the nonprofit or the for-profit. That approach makes sense because, under Dr. Wazzan's analysis, any wrongful gains for which the nonprofit is liable stem from the nonprofit's stake in the for-profit and the resulting share of gains from the for-profit's unauthorized commercial operations. Whether to disgorge those gains from the for-profit or the nonprofit is a question of remedy, not a question of how to measure OpenAI's wrongful gains.

While OpenAI accuses Plaintiff of "inject[ing] chaos into these proceedings," Mot. at 1, OpenAI had no difficulty perceiving this issue after Dr. Wazzan served his expert report last fall. On November 24, 2025, OpenAI's expert Ilya Strebulaev served a rebuttal report stating: "Dr. Wazzan's failure to perform his assignment is clearly demonstrated by the fact that his report assumes that Mr. Musk is entitled to the same recovery from OpenAI regardless of . . . which OpenAI Defendants are found to have engaged in wrongdoing . . . . ***It is also demonstrated by Dr. Wazzan's failure to estimate the amount of wrongful gains received by any specific OpenAI entities or individuals, which Dr. Wazzan attempts to mask by referring generally to 'OpenAI's wrongful gains.'***" Strebulaev Report ¶14 (attached as Exhibit A) (emphasis added). OpenAI thus knew six months ago that Dr. Wazzan was not advancing separate wrongful gains models for the for-profit and nonprofit entities.

Nor did Plaintiff clarify his position only "yesterday afternoon, ***after trial ended***." Mot. at 1. Plaintiff set out his position on these issues in detail in his Reply in support of his Amended Notice of Remedies filed over a month ago on April 12, 2026. Dkt. 462 at 6-7. OpenAI could have sought relief from the Court weeks before trial, but instead waited until after trial to bring its concerns to the Court's attention. That undue delay is an independent basis for denying the motion.

OpenAI points to statements from Dr. Wazzan's deposition. Mot. at 2. But Rule 26 permits exclusion of expert testimony only where an opinion is not disclosed in the expert's ***report***. Fed. R.

3

Civ. P. 26(a)(2)(B)(i), 37(c)(1).  Alleged conflicts between an expert's trial testimony and deposition testimony are grounds for impeachment, not exclusion.  *See FTC v. Qualcomm Inc.*, No. 17-CV-00220, 2018 WL 6460573, at \*5 (N.D. Cal. Dec. 10, 2018) ("discrepancy between [expert's] testimony at his deposition and his expert report" is not "sufficient ground to exclude").[1]

In any case, OpenAI fails to show any conflict with the deposition testimony.  OpenAI quotes passages where Dr. Wazzan confirmed that the OpenAI nonprofit wrongfully gained from OpenAI's commercial operations.  Wazzan Dep. 68:9-18, 70:16-23.  But that does not mean that **only** the nonprofit may be held liable for those gains.  If the OpenAI for-profit earned $65 billion from Mr. Musk's contributions, the Court may disgorge those wrongful gains **either** from the nonprofit's stake in the for-profit **or** from the for-profit directly.  Dr. Wazzan's estimate of OpenAI's wrongful gains provides a sufficient basis for either remedy.[2]

## CONCLUSION

Defendants' motion to preclude should be denied.

Dated:  May 17, 2026                              MOLOLAMKEN LLP

                                        By:    /s/ Robert K. Kry
                                               Robert K. Kry (*pro hac vice*)

---

[1] Defendants cite *Engilis v. Monsanto Co.*, 151 F.4th 1040 (9th Cir. 2025), for the proposition that, "[w]here an expert's trial testimony . . . contradicts the expert's deposition testimony, it must be excluded under Rule 37(c)(1)."  Mot. at 2.  But *Engilis* says no such thing.  Rule 37(c)(1) applies only to "fail[ure] to provide information . . . as required by Rule 26(a) or (e)."  Fed. R. Civ. P. 37(c)(1).  It says nothing about deposition testimony at all.

[2] OpenAI also cites one muddled exchange where OpenAI asked whether Dr. Wazzan had computed wrongful gains for Altman, Brockman, "the employee vehicle, Aestas," or "any other OpenAI defendant."  Wazzan Dep. 181:11-183:7.  Plaintiff's counsel objected to those questions for not specifying whether they included the OpenAI for-profit.  *Id.* at 181:18-24 ("MR. KRY: Objection. . . .  Are you including the OpenAI for-profit in that question?"); *id.* at 183:6 (same objection).  OpenAI's counsel refused to clarify.  *Id.* at 181:25 ("I'm asking him a question.").  Dr. Wazzan never gave a clear response.  *Id.* at 182:1 ("Yeah, I don't follow."); *id.* at 182:17 ("I'm sorry. I just don't follow the question."); *id.* at 183:7 ("Not specifically.").

4