# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| | |
|---|---|
| ELON MUSK, ET AL., <br><br> Plaintiffs, <br> v. <br><br> SAMUEL ALTMAN, ET AL., <br><br> Defendants. | Case No. 4:24-cv-04722-YGR <br><br><br> **JURY INSTRUCTIONS** |

The Court attaches hereto the jury instructions, which were used to instruct the jury orally on May 14, 2026.

Dated:   May 14, 2026

_____
YVONNE GONZALEZ ROGERS
UNITED STATES DISTRICT COURT JUDGE

Case No. 4:24-cv-04722-YGR

Members of the Jury: Now that you have heard all of the evidence, it is my duty to instruct you on the law that applies to this case.

You each have a copy of these instructions which you can take with you into the jury room to consult during your deliberations.

It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath to do so.

Please do not read into these instructions or anything that I may say or do or have said or done that I have an opinion regarding the evidence or what your verdict should be.

To help you follow the evidence, I will give you a brief summary of the positions of the parties:

Plaintiff Elon Musk claims that he provided his money, reputation, guidance, and other resources to enable OpenAI to develop artificial intelligence technology on a nonprofit basis for the public good. Plaintiff contends that Sam Altman, Greg Brockman, and The OpenAI Foundation (formerly known as OpenAI, Inc.) broke their promises to use his contributions and resources to maintain OpenAI as a nonprofit and instead operated OpenAI as a for-profit venture. Plaintiff contends that these actions constituted breach of charitable trust and unjust enrichment. Plaintiff alleges both of those claims against Altman, Brockman, and The OpenAI Foundation, and also alleges unjust enrichment against OpenAI Group PBC. I will sometimes refer to all those defendants together as the "OpenAI defendants." OpenAI Group PBC has been substituted for the OpenAI for-profit entities for purposes of the unjust enrichment claim, so that if liability is established against any of the for-profit entities on this claim, OpenAI Group PBC shall bear that liability. In addition to his claims against the OpenAI defendants, plaintiff contends that Microsoft Corporation aided and abetted OpenAI's wrongful conduct by knowingly providing substantial assistance to Altman, Brockman, or The OpenAI Foundation's breach of charitable trust. Plaintiff has the burden of

proving his claims by a preponderance of the evidence unless I instruct you that a different standard of proof applies to a particular element of his claims.

The defendants deny those claims.

The OpenAI defendants contend that they made no false promises to Musk, that Musk's contributions to The OpenAI Foundation did not carry the restrictions Musk claims, and that The OpenAI Foundation has always been, and remains to this day, a nonprofit organization.

Microsoft contends that it did not know that Musk made donations for specific charitable purposes or that The OpenAI Foundation, Altman, or Brockman committed a breach of charitable trust. Microsoft also contends that it did not give substantial assistance to The OpenAI Foundation, Altman, or Brockman in breaching a charitable trust and that its actions were not a substantial factor in causing harm to Musk.

The defendants also assert three affirmative defenses: one, that each of plaintiff's claims is barred by the relevant statute of limitations; two, that plaintiff unreasonably delayed in bringing this lawsuit; and three, that Musk's own misconduct bars his claims. The defendants generally have the burden of proof on these affirmative defenses, but Musk has the burden of proof on a portion of the statute of limitations defense as I will instruct.

Plaintiff denies the defendants' affirmative defenses.

When a party has the burden of proving any claim or affirmative defense by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim or affirmative defense is more probably true than not true.

You should base your decision on all of the evidence, regardless of which party presented it.

When a party has the burden of proving any claim or defense by clear and convincing evidence, it means that the party must present evidence that leaves you with a firm belief or conviction that it is highly probable that the factual contentions of the claim or defense are true. This is a higher standard of proof than proof by a preponderance of the evidence, but it does not require proof beyond a reasonable doubt.

You should decide the case as to each defendant separately. Unless otherwise stated, the

Case No. 4:24-cv-04722-YGR

instructions apply to all parties.

The evidence you are to consider in deciding what the facts are consists of:

1. the sworn testimony of any witness;

2. the exhibits that are admitted into evidence;

3. any facts to which the lawyers have agreed; and

4. any facts that I have instructed you to accept as proved.

In reaching your verdict, you may consider only the testimony and exhibits received into evidence. Certain things are not evidence, and you may not consider them in deciding what the facts are. I will list them for you:

1. Arguments and statements by lawyers are not evidence. The lawyers are not witnesses. What they say in their opening statements, closing arguments, and at other times is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

2. Questions and objections by lawyers are not evidence. Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence. You should not be influenced by the objection or by the Court's ruling on it.

3. Testimony that is excluded or stricken, or that you have been instructed to disregard, is not evidence and must not be considered.

4. Anything you may have seen or heard when the Court was not in session is not evidence. You are to decide the case solely on the evidence received at the trial.

Some evidence was admitted only for a limited purpose.

If I instructed you that an item of evidence was admitted only for a limited purpose, you must consider it only for that limited purpose and not for any other purpose.

Evidence may be direct or circumstantial. Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did. Circumstantial evidence is proof of one or more facts from which you could find another fact. By way of example,

if you wake up in the morning and see that the sidewalk is wet, you may find from that fact that it rained during the night. However, other evidence, such as a turned-on garden hose, may provide a different explanation for the presence of water on the sidewalk. Therefore, before you decide that a fact has been proven by circumstantial evidence, you must consider all the evidence in the light of reason, experience, and common sense.

You should consider both kinds of evidence. The law makes no distinction between the weight to be given to either direct or circumstantial evidence. It is for you to decide how much weight to give to any evidence.

There are rules of evidence that control what can be received into evidence. When a lawyer asked a question or offered an exhibit into evidence and a lawyer on the other side thought that it was not permitted by the rules of evidence, that lawyer may have objected.

If I overruled the objection, the question could be answered, or the exhibit was received. If I sustained the objection, the question could not be answered, or the exhibit was not received. If I sustained an objection to a question, you must ignore the question and must not guess what the answer might have been.

I may have ordered that evidence be stricken from the record and that you disregard or ignore that evidence. That means when you are deciding the case, you must not consider the stricken evidence for any purpose.

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, or part of it, or none of it.

In considering the testimony of any witness, you may take into account:

1.  the opportunity and ability of the witness to see or hear or know the things testified to;

2.  the witness's memory;

3.  the witness's manner while testifying;

4.  the witness's interest in the outcome of the case, if any;

5.  the witness's bias or prejudice, if any;

6.  whether other evidence contradicted the witness's testimony;

7.  the reasonableness of the witness's testimony in light of all the evidence; and

8.  any other factors that bear on believability.

Sometimes a witness may say something that is not consistent with something else the witness said. Sometimes different witnesses will give different versions of what happened. People often forget things or make mistakes in what they remember. Also, two people may see the same event but remember it differently. You may consider these differences, but do not decide that testimony is untrue just because it differs from other testimony.

However, if you decide that a witness has deliberately testified untruthfully about something important, you may choose not to believe anything that witness said. On the other hand, if you think the witness testified untruthfully about some things but told the truth about others, you may accept the part you think is true and ignore the rest.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify. What is important is how believable the witnesses were, and how much weight you think their testimony deserves.

You have heard testimony from experts who testified about their opinions and the reasons for those opinions. This opinion testimony is allowed, because of the specialized knowledge, skill, experience, training, or education of these witnesses.

Such opinion testimony should be judged like any other testimony. You may accept it or reject it and give it as much weight as you think it deserves, considering the witness's specialized knowledge, skill, experience, training, or education, the reasons given for the opinion, and all the other evidence in the case.

You heard deposition testimony from one or more witnesses. A deposition is the sworn testimony of a witness taken before trial. The witness is placed under oath to tell the truth and lawyers for each party may ask questions. The questions and answers are recorded. When a person is unavailable to testify at trial, the deposition of that person may be used at trial. You should not give more or less weight to testimony merely because it is presented by deposition rather than live

Case No. 4:24-cv-04722-YGR

in court.

Under the law, a corporation is considered to be a person. It can only act through its employees, agents, directors, or officers. Therefore, a corporation is responsible for the acts of its employees, agents, directors, and officers performed within the scope of their authority.

The Court will now explain the substantive law applicable to the claims brought in this Action. Plaintiff asserts the following claims:

- First Claim: Breach of charitable trust against Altman, Brockman, and The OpenAI Foundation.
- Second Claim: Restitution based on unjust enrichment against Altman, Brockman, The OpenAI Foundation, and OpenAI Group PBC.
- Third Claim: Aiding and abetting breach of charitable trust against Microsoft.

Musk's first claim is for breach of charitable trust. Musk brings this claim against defendants Altman, Brockman, and The OpenAI Foundation.

To establish that claim against any one of these defendants, Musk must prove both of the following:

1. that in making one or more charitable contributions to a defendant, Musk created a charitable trust through that contribution or contributions with that defendant; and

2. that the defendant then breached the terms of the charitable trust.

As used above, a "charitable trust" can be created when there is a proper manifestation by the plaintiff of an intent to create a trust with trust property and a charitable purpose. An outright donation to a charitable institution, expressly or impliedly, to be used for general purposes is charitable but does not create a trust.

As used above, the term "trust property" means property that was in existence and ascertainable at the time of the creation of the trust. Plaintiff's knowledge or skill, or plaintiff's contributions of knowledge, skill, or labor do not qualify as trust property.

As used above, the term "purpose" must be charitable and specific. Charitable trust purposes include: (a) the relief of poverty; (b) the advancement of knowledge; (c) the advancement of religion; (d) the promotion of health; (e) governmental or municipal purposes; and (f) other purposes that are beneficial to the community. The purpose must also be specific. An example of a specific charitable purpose is a gift to a hospital to support medical research on a particular disease, but not a gift to the hospital generally.

As used above, the term "proper manifestation" means the plaintiff must communicate that he intended to impose an enforceable obligation on the defendant to devote the trust property to those charitable purposes.

In determining whether a charitable trust was created, a different standard of proof exists depending on whether the trust is oral or written. Musk must prove the existence and terms of an oral trust by clear and convincing evidence. Musk must prove the existence and terms of a written

trust by a preponderance of the evidence.

If a trust is created and subsequently the whole of the trust property ceases to exist, the trust is terminated because the trustee or defendant no longer holds anything in trust.

If you find that a charitable trust exists, you must next determine whether Altman, Brockman, or The OpenAI Foundation breached the terms of that charitable trust.

A charitable trust is breached if Musk's charitable contributions are used for purposes different from the charitable purposes for which they were contributed.

Musk's second claim is for restitution based on unjust enrichment. Musk brings this claim against defendants Altman, Brockman, The OpenAI Foundation, and OpenAI Group PBC.

Musk claims that each defendant must restore to plaintiff that which the defendant received but which should belong to plaintiff. Musk is entitled to restitution if he proves that a defendant knew or had reason to know:

    1.  that the defendant received a benefit; and

    2.  that the defendant unjustly retained the benefit at plaintiff's expense.

As used above, the term "benefit" denotes any form of advantage. A person is enriched if that person receives a benefit at another's expense.

In determining whether a benefit was "unjustly" retained, you may consider whether plaintiff showed that a defendant knew or had reason to know that the benefit was to be used for charitable purposes and then was not.

Musk's third claim is for aiding and abetting the breach of charitable trust. Musk brings this claim against defendant Microsoft.

If you find that Musk did not prove that Altman, Brockman, or The OpenAI Foundation committed a breach of charitable trust, you must find that Microsoft is not liable for aiding and abetting.

If you find that Musk did prove that either Altman, Brockman, or The OpenAI Foundation is liable for breach of charitable trust, you must determine whether Microsoft is responsible for aiding and abetting that breach. Microsoft is responsible as an aider and abettor if Musk proves all of the following:

1. that Microsoft had actual knowledge that Musk made his donations for specific charitable purposes, and that Altman, Brockman, or The OpenAI Foundation were committing or going to commit breach of charitable trust by using the donations for different purposes;

2. that Microsoft gave substantial assistance or encouragement to Altman, Brockman, or The OpenAI Foundation in breaching the charitable trust created by Musk; and

3. that Microsoft's conduct was a substantial factor in causing harm to Musk.

As used above, a "substantial factor in causing harm" is a factor that a reasonable person would consider to have contributed to the harm. It must be more than a remote or trivial factor. It does not have to be the only cause of the harm.

"Actual knowledge" can be shown by direct or circumstantial evidence, which I have already defined. A vague suspicion of wrongdoing or a hunch is not actual knowledge. Actual knowledge is not the same as "constructive knowledge," which is when a party should have known a fact.

Mere knowledge that Altman, Brockman or The OpenAI Foundation were committing or going to commit a breach of charitable trust and failure to prevent it do not constitute aiding and abetting.

You will need to determine whether Musk's claims were filed within the time set by law. This defense is based on each statute of limitations. To succeed on this defense for any claim, defendants must prove by a preponderance of the evidence that the claimed harm occurred before the following dates:

1. August 5, 2021 for breach of charitable trust;

2. August 5, 2022 for restitution based on unjust enrichment; and

3. November 14, 2021 for aiding and abetting breach of charitable trust.

If the defendants prove that Musk's claimed harm occurred before the applicable date, the claim was still filed on time if Musk proves by a preponderance of the evidence that before each relevant date, he did not discover, and did not know of facts that would have caused a reasonable person to suspect, that he had suffered the claimed harm and could not have discovered those facts with reasonable diligence.

The defendants also contend that Musk unreasonably delayed bringing this lawsuit. Here, the complaint was filed against the OpenAI defendants on August 5, 2024 and against Microsoft on November 14, 2024. To succeed on this defense called laches, the defendants must prove all of the following by a preponderance of the evidence:

1. that Musk unreasonably delayed bringing this lawsuit; and

2. that the delay resulted in prejudice to the defendants.

As used above, "prejudice" means something harmful. For example, prejudice can result from a defendant taking actions or suffering consequences that it would not have had the lawsuit been filed sooner. Prejudice can also result if there was evidence that would have been available had the lawsuit been filed sooner but is no longer available.

The defendants also contend that they should not be held liable for Musk's claims because of Musk's misconduct. To succeed on this defense called unclean hands, the defendants must prove all of the following by a preponderance of the evidence:

1. that Musk engaged in conduct that was unconscionable;

2. that Musk's conduct was directly related to his claims; and

3. that Musk's conduct resulted in such prejudice to defendants that it would be unfair to hold them liable for Musk's claims.

**STOP**

Before you begin your deliberations, elect one member of the jury as your presiding juror. The presiding juror will preside over the deliberations and serve as the spokesperson for the jury in court.

You shall diligently strive to reach agreement with all of the other jurors if you can do so. Your verdict must be unanimous.

Each of you must decide the case for yourself, but you should do so only after you have considered all of the evidence, discussed it fully with the other jurors, and listened to their views.

It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision. Do not be unwilling to change your opinion if the discussion persuades you that you should. But do not come to a decision simply because other jurors think it is right or change an honest belief about the weight and effect of the evidence simply to reach a verdict.

Because you must base your verdict only on the evidence received in the case and on these instructions, I remind you that you must not be exposed to any other information about the case or to the issues it involves. Except for discussing the case with your fellow jurors during your deliberations:

Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it. This includes discussing the case in person, in writing, by phone, tablet, computer, or any other means, via email, via text messaging, or any internet chat room, blog, website or application, including but not limited to Facebook, YouTube, X (formerly known as Twitter), Instagram, LinkedIn, Snapchat, TikTok, or any other forms of social media. This applies to communicating with your family members, your employer, the media or press, and the people involved in the trial. If you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and to report the contact to the court.

Do not read, watch, or listen to any news or media accounts or commentary about the case or anything to do with it; do not do any research, such as consulting dictionaries, searching the

internet, or using other reference materials; and do not make any investigation or in any other way try to learn about the case on your own. Also, do not do any research about this case, the law, or the people involved – including the parties, the witnesses, or the lawyers – until you have been excused as jurors. If you happen to read or hear anything touching on this case in the media, turn away and report it to me as soon as possible.

These rules protect each party's right to have this case decided only on evidence that has been presented here in court. Witnesses here in court take an oath to tell the truth, and the accuracy of their testimony is tested through the trial process. If you do any research or investigation outside the courtroom, or gain any information through improper communications, then your verdict may be influenced by inaccurate, incomplete, or misleading information that has not been tested by the trial process. Each of the parties is entitled to a fair trial by an impartial jury, and if you decide the case based on information not presented in court, you will have denied the parties a fair trial. Remember, you have taken an oath to follow the rules, and it is very important that you follow these rules.

A juror who violates these restrictions jeopardizes the fairness of these proceedings. If any juror is exposed to any outside information, please notify the court immediately.

If it becomes necessary during your deliberations to communicate with me, you may send a note through the Courtroom Deputy. A note to me can be signed by any one or more of you. It does not have to be the presiding juror. No member of the jury should ever attempt to communicate with me except by a signed writing. I will not communicate with any member of the jury on anything concerning the case except in writing or here in open court. If you send out a question, I will consult with the lawyers before answering it, which may take some time. You may continue your deliberations while waiting for the answer to any question. Remember that you are not to tell anyone – including the Court – how the jury stands, whether in terms of vote count or otherwise, until after you have reached a unanimous verdict or have been discharged.

A verdict form has been prepared for you. I have already instructed you on the law that you are to use in answering these questions. You must follow my instructions and each form carefully.

You must consider each question separately. After you answer a question, the form tells you what to do next. You must be unanimous on each answer.