UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

ELON MUSK, ET AL., )
) 4:24-CV-04722 YGR
PLAINTIFFS, )
) OAKLAND, CALIFORNIA
VS. )
) APRIL 27, 2026
SAMUEL ALTMAN, ET AL., )
) VOLUME 1
DEFENDANTS. )
) PAGES 1-197
)
________________________________ )

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE YVONNE GONZALEZ ROGERS
UNITED STATES DISTRICT JUDGE

A P P E A R A N C E S:

FOR THE PLAINTIFFS: MOLOLAMKEN LLP
430 PARK AVENUE
NEW YORK, NEW YORK 10022
**BY: STEVEN F. MOLO**
**ALEXANDRA C. EYNON**
**JENNIFER SCHUBERT**
**SARA TOFIGHBAKHSH**

MOLOLAMKEN LLP
600 NEW HAMPSHIRE AVENUE
WASHINGTON, D.C. 20037
**BY: ROBERT K. KRY**
**WALTER HAWES, IV**

(APPEARANCES CONTINUED ON THE NEXT PAGE.)

OFFICIAL COURT REPORTER: IRENE L. RODRIGUEZ, CSR, CRR, RMR
CERTIFICATE NUMBER 8074

PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
TRANSCRIPT PRODUCED WITH COMPUTER

A P P E A R A N C E S: (CONT'D)

FOR THE PLAINTIFFS: TOBEROFF AND ASSOCIATES, P.C.
23823 MALIBU ROAD, SUITE 50-363
MALIBU, CALIFORNIA 90265
**BY: MARC TOBEROFF**

FOR DEFENDANT OPENAI:
WACHTELL, LIPTON, ROSEN AND KATZ
51 WEST 52ND STREET
NEW YORK, NEW YORK 10019
**BY: WILLIAM SAVITT**
**SARAH K. EDDY**
**RANDALL JACKSON**
**NATHANIEL CULLERTON**

MORRISON & FOERSTER LLP
425 MARKET STREET
SAN FRANCISCO, CALIFORNIA 94105
**BY: WILLIAM FRENTZEN**
**JORDAN ETH**

FOR DEFENDANT MICROSOFT:

DECHERT LLP
45 FREMONT STREET, 26TH FLOOR
SAN FRANCISCO, CALIFORNIA 94105
**BY: RUSSELL P. COHEN**
**HOWARD MARK ULLMAN**
**HANNAH LEONE**

DECHERT LLP
U.S. BANK TOWER
63 W. 5TH STREET, SUITE 4900
LOS ANGELES, CALIFORNIA 90071
**BY: NISHA PATEL GUPTA**

DECHERT LLP
1900 K. STREET, N.W.
WASHINGTON, D.C. 20006
**BY: JOHN A. JURATA**

(APPEARANCES CONTINUED ON THE NEXT PAGE.)

A P P E A R A N C E S: (CONT'D)

DECHERT LLP
CIRA CENTRE
2929 ARCH STREET
PHILADELPHIA, PENNSYLVANIA 19104
**BY: YOSEF WEITZMAN**
**FORREST E. LOVETT**

ALSO PRESENT:

PERSUADIUS
**BY: JON WALTON, TRIAL TECHNICIAN**

DRC LEGAL
**BY: FRANS SCHIMPER, TRIAL TECHNICIAN**
**KEVIN DERITA, TRIAL TECHNICIAN**

IMPACT TRIAL
**BY: JESSE STEVENSON, TRIAL TECHNICIAN**

OAKLAND, CALIFORNIA April 27, 2026

P R O C E E D I N G S

(COURT CONVENED AT 8:01 A.M.)

(JURY OUT AT 8:01 A.M.)

**THE CLERK:** CALLING CIVIL MATTER 24-CV-04722 YGR, MUSK VERSUS ALTMAN, ET AL.

PARTIES PLEASE STATE YOUR APPEARANCES FOR THE RECORD.

**MR. MOLO:** GOOD MORNING, YOUR HONOR.

**THE COURT:** GOOD MORNING, MR. MOLO.

**MR. MOLO:** GOOD MORNING, YOUR HONOR.

STEVEN MOLO, ROBERT KRY --

**THE COURT:** AT THIS POINT, LET'S JUST GET YOUR NAME.

**MR. MOLO:** ALL RIGHT. STEVEN MOLO FOR THE PLAINTIFF, YOUR HONOR.

**THE COURT:** OKAY.

**MR. SAVITT:** GOOD MORNING, YOUR HONOR.

WILLIAM SAVITT FOR THE OPENAI DEFENDANTS.

**THE COURT:** GOOD MORNING. JUST YOU FOR NOW.

**MR. COHEN:** GOOD MORNING, YOUR HONOR.

RUSSELL COHEN FOR MICROSOFT.

**THE COURT:** OKAY. GOOD MORNING.

SO THESE PROCEEDINGS -- MR. CUENCO, AT THIS POINT WE HAVE THE OVERFLOW COURTROOM. ARE WE -- WHERE ARE WE?

THE CLERK: COURTROOM NUMBER 2, YOUR HONOR.

**THE COURT:** OKAY. SO FOR THOSE IN COURTROOM NUMBER

2, YOU'RE WELCOME TO COME TO COURTROOM NUMBER 1 IF YOU WANT JUST FOR THE PRE-JURY SELECTION PORTION. I NEED THE COURTROOM FOR PURPOSES OF SEATING ALL OF THE PROSPECTIVE JURORS, BUT IN THIS PRE-SELECTION PERIOD, YOU'RE WELCOME TO COME OVER IF YOU WANT.

OKAY. WE HAVE JUST A NUMBER OF THINGS TO DO TODAY.

TYPICALLY IT TAKES THE JURY OFFICE AN HOUR-PLUS TO CHECK IN ALL OF THE JURORS. THEY HAVE TO WATCH THE VIDEOS, WHICH YOU HAVE ACCESS TO AS WAS INDICATED IN MY STANDING ORDER, ON BIAS AND IMPLICIT BIAS. SO IT TAKES SOMETIMES AN HOUR OR SO FOR US TO GET THE INFORMATION.

YOU'VE BEEN GIVEN, AS YOU KNOW, A COUPLE OF LISTS, YOU'VE BEEN GIVEN A RANDOM LIST AND AN ALPHA LIST.

WE DON'T HAVE THE FINAL LIST UNTIL WE FIND OUT WHO DOESN'T SHOW UP.

SO WE WILL HAVE NO-SHOWS. IT HAPPENS. BUT I'VE INSTRUCTED THE JURY OFFICE HOPEFULLY TO BRING IN ENOUGH JURORS THAT IT'S NOT GOING TO BE A PROBLEM.

AS YOU CAN SEE, I'VE GOT SIX CHAIRS UP HERE. THAT MEANS WHAT I WILL DO, JUST AS A REMINDER, I WILL TAKE THE FIRST 20 OFF OF THE RANDOM LIST AND I WILL RE-SORT THOSE IN ALPHABETICAL ORDER SO THAT THE JURORS DON'T REALLY HAVE AN UNDERSTANDING OF HOW THE PROCESS WORKS. LIMITED CONFUSION HELPS DECREASE THE TENSION IN THE COURTROOM. OKAY?

THEN ONCE I GET THROUGH THAT SET OF 20, WE'LL PROBABLY

TAKE A SHORT BREAK. I WILL PROBABLY GET ANOTHER SET OF 20 IN AND TALK TO THEM.

AT THAT POINT I THOUGHT YOU-ALL -- I THOUGHT I HAD AUTHORIZED AN ACRYLIC PODIUM. DO YOU NOT HAVE --

**MR. MOLO:** WE DO, WE HAVE IT. I DON'T KNOW IF IT'S HEAR TODAY.

**THE COURT:** SO THE ONLY THING IS THAT WHAT IS GOING TO HAPPEN IS THAT YOU'RE GOING TO HAVE 20 HERE AND YOU'RE GOING TO HAVE 20 IN THE FIRST COUPLE OF ROWS, AND YOU'RE GOING TO DIRECT YOUR QUESTIONS TO THAT POOL.

I WOULD SUGGEST, AND I'M ASSUMING THESE ARE LAWYERS IN THE FIRST ROW, YOU NEED TO MOVE TO THE THIRD ROW. OTHERWISE WHOEVER IS DOING THE VOIR DIRE IS NOT GOING TO BE ABLE TO SEE OVER YOUR HEADS. SO WE CAN -- MR. CUENCO, WE CAN PUT A RESERVED SIGN ON THAT THIRD ROW. OKAY?

**THE CLERK:** YES, YOUR HONOR.

**THE COURT:** ALL RIGHT. YOU HAVE SOME OBJECTIONS THAT I WILL DEAL WITH IF WE CAN, JUST TO GET YOU IN THE PRACTICE OF THE MORNING EVENTS BEFORE THE JURY SHOWS UP. WE'LL START WITH ANY LIST OF ISSUES THAT YOU WANT TO ADDRESS. I HAVE A COUPLE QUESTIONS, BUT BASICALLY DECISIONS FOR YOU ON THE OBJECTIONS ON THE OPENING SLIDES.

SO WE WILL START, MR. MOLO, WITH YOU. ARE THERE ANY ISSUES THAT YOU WANTED TO DISCUSS THIS MORNING WHILE WE'RE WAITING FOR THE JURY?

**MR. KRY:** GOOD MORNING, YOUR HONOR. ROBERT KRY FOR THE PLAINTIFF.

**THE COURT:** MR. KRY.

**MR. KRY:** I CAN ADDRESS THAT.

**THE COURT:** I WANT THE LIST. I DON'T WANT YOU TO ARGUE. I JUST WANT A LIST OF ISSUES, IF ANY.

**MR. KRY:** SO STARTING WITH THE ISSUES THAT PLAINTIFF HAS RAISED, THERE'S AN OBJECTION TO --

**THE COURT:** OKAY. SO YOU HAVE OBJECTIONS TO SLIDES, RIGHT?

**MR. KRY:** YES.

**THE COURT:** WHAT ELSE?

**MR. KRY:** THAT'S THE ONLY THING FOR PLAINTIFFS.

**THE COURT:** THAT'S WHAT I MEAN BY THE LIST.

**MR. KRY:** THANK YOU, YOUR HONOR.

**THE COURT:** JUST THE ISSUE. YOU CAN STAY THERE.

WHO DO I HAVE FOR THE DEFENSE?

**MR. SAVITT:** YOUR HONOR, THE OPENAI DEFENDANTS HAVE ONLY ONE ISSUE, AND THAT'S THE ISSUE THAT MR. KRY HAS IDENTIFIED.

**THE COURT:** OKAY. THANK YOU.

**MR. SAVITT:** THANK YOU.

**MR. COHEN:** SAME, YOUR HONOR. THE ONLY ISSUE IS THE SLIDES, AND MS. PATEL WILL DEAL WITH THAT.

**THE COURT:** THANK YOU.

08:07:05 SO IF THIS IS THE WAY THAT IT'S GOING TO WORK, THEN MY 30 MINUTES IN THE MORNING IS GOING TO BE WONDERFUL. WE WON'T HAVE TO DEAL WITH THAT. BUT TYPICALLY THAT'S NOT THE WAY IT WORKS. TYPICALLY I GET MULTIPLE ISSUES OVERNIGHT AND WE HAVE 30 MINUTES TO RESOLVE THEM.

08:07:21 OKAY. SO ON THESE OBJECTIONS, I'VE TAKEN A LOOK AT THEM. OPENAI'S OBJECTIONS TO PLAINTIFFS' DEMONSTRATIVES, THE SLIDE WITH RESPECT TO THE MUSEUM IS OVERRULED.

08:07:45 THE SLIDE WITH RESPECT TO NUMBER 22, I THOUGHT THAT I SAW THAT THAT WAS REPLACED; IS THAT RIGHT?

08:07:57 **MR. KRY:** YES, YOUR HONOR, WE DO HAVE AN ALTERNATIVE VERSION OF THAT ONE.

08:08:00 **THE COURT:** OKAY. IS THERE AN OBJECTION TO THE ALTERNATIVE?

08:08:06 **MR. FRENTZEN:** YES, YOUR HONOR.

08:08:08 SORRY. WILLIAM FRENTZEN FOR THE OPENAI DEFENDANTS.

08:08:10 YES, YOUR HONOR, IT'S FUNCTIONALLY THE SAME THING.

08:08:13 **THE COURT:** WELL, IT'S NOT FUNCTIONALLY THE SAME. WHAT I SAW WAS THAT ONE WERE MANUFACTURED PICTURES. THEY HAVE THE SAME IDENTICAL PICTURE ON THE SIDE OF THE TABLE, MR. FRENTZEN. OVERRULED.

08:08:29 **MR. FRENTZEN:** UNDERSTOOD.

08:08:32 **THE COURT:** OKAY. ON NUMBER 23 -- OKAY. ON 23 I DID STRIKE ONE OF THE OPINIONS, THE LAST OPINION OF MR. RUSSELL. WHAT I DIDN'T HAVE A CHANCE TO DO WAS A WORD SEARCH TO SEE

08:08:44 WHETHER THE PHRASE "EXISTENTIAL RISK" WAS IN OTHER PARTS OF THE REPORT. I THOUGHT THAT THE REAL ISSUE HERE, AS IS NOTED IN THE RESPONSE TO THE OBJECTION, WERE HIS PROBABILITIES, WHICH WERE TOTALLY WITHOUT BASIS.

08:09:05 SO DOES HE USE THE TERM "EXISTENTIAL RISK" IN THE REPORT?

08:09:11 **MR. FRENTZEN:** I'M SORRY, YOUR HONOR. DOES HE USE IT IN THE REPORT?

08:09:14 **THE COURT:** IN THE PART OF THE REPORT THAT WAS NOT STRUCK, DOES HE USE THE TERM?

08:09:18 **MR. FRENTZEN:** I DON'T KNOW, YOUR HONOR, BUT I CAN GET THE ANSWER TO THAT.

08:09:21 **MR. KRY:** YOUR HONOR, HE DOES NOT.

08:09:22 **THE COURT:** WHAT?

08:09:24 **MR. KRY:** HE DOES NOT USE THAT PARTICULAR TERM IN THE REPORT.

08:09:27 **THE COURT:** OKAY. THEN IT'S STRUCK.

08:09:28 **MR. FRENTZEN:** THANK YOU, YOUR HONOR.

08:09:29 **MR. KRY:** YOUR HONOR, JUST SO I'M CLEAR ABOUT THE COURT'S RULING. WE AGREE --

08:09:33 **THE COURT:** IS IT IN THE REPORT THAT WAS NOT STRUCK?

08:09:36 **MR. KRY:** HE DESCRIBED EXISTENTIAL RISKS.

08:09:40 **THE COURT:** DOES HE USE THE PHRASE, MR. KRY, "EXISTENTIAL RISK" IN THE PART OF THE REPORT THAT WAS NOT STRUCK?

08:09:50 **MR. KRY:** I DON'T RECALL IF HE USES THAT EXACT TERM,

BUT HE DESCRIBES EXISTENTIAL RISK. BUT YOU CAN CERTAINLY REPLACE THE TERM.

**MR. MOLO:** THE ANSWER IS YES. THE WHOLE CASE IS ABOUT EXISTENTIAL RISK TO A CERTAIN DEGREE.

**THE COURT:** MR. MOLO?

**MR. MOLO:** I'M SORRY.

**THE COURT:** I'M NOT GOING TO LET PEOPLE JUMP UP AND TAG TEAM.

**MR. MOLO:** I APOLOGIZE.

**MR. KRY:** THE ONLY TESTIMONY WE WANT TO PUT IN IS NOT THE TESTIMONY ABOUT PROBABILITIES, JUST THE TESTIMONY ABOUT THE NATURE OF CERTAIN RISKS.

**THE COURT:** WAS THAT PART STRUCK?

**MR. KRY:** NO.

**THE COURT:** IS THAT ACCURATE?

**MR. FRENTZEN:** YOUR HONOR, AS I SAID, THE COURT'S QUESTION WAS WHETHER THE PHRASE "EXISTENTIAL RISK" WAS USED. I SAID TO YOU CANDIDLY I CAN CHECK AND FOUND OUT. I HAVE NOW HEARD MR. KRY SAY NO AND THEN SAY YES.

I DON'T KNOW IF HE ACTUALLY KNOWS HIMSELF, YOUR HONOR, BUT THE POINT WAS OPINION FOUR WAS STRUCK BY THE COURT. THAT WAS THE COURT'S ORDER. SO AT THAT POINT -- I MEAN, OPINION FOUR WAS ABOUT CATASTROPHIC EXISTENTIAL RISK, AND THE WHOLE POINT WAS WHY ARE WE SCARING THE JURORS ON SPECULATION ABOUT WHICH THE WITNESS CAN'T EVEN APPLY ANY SORT OF PERCENTAGE?

08:11:04 **THE COURT:** I DON'T DISAGREE. WHAT I HAVE NOT HAD AN OPPORTUNITY TO FIGURE OUT IS WHETHER IT WAS IN OTHER PARTS OF THE REPORT AND WHETHER THOSE THINGS WERE NOT STRUCK.

08:11:15 SO LET ME TAKE A LOOK. WE'RE GOING TO HAVE TIME.

08:11:18 **MR. FRENTZEN:** SURE.

08:11:19 **THE COURT:** YOU TAKE A LOOK, AND I'LL GIVE YOU PLENTY OF NOTICE. ALL RIGHT?

08:11:23 **MR. FRENTZEN:** WILL DO, YOUR HONOR. THANK YOU.

08:11:25 **THE COURT:** SO THAT ONE IS DEFERRED.

08:11:30 44. WAS THIS -- THIS WAS REPLACED. IS THIS -- OR NO? WE HAVE A NEW 43? I HAVE A SLIDE THAT IS ENTITLED "NONPROFIT" WITH FIVE ROWS.

08:11:50 **MR. KRY:** YES, YOUR HONOR. SORRY. IT LOOKS LIKE THE NEW ONE IS SLIDE 43. THE PAGE NUMBERS MAY HAVE MOVED AROUND ON THAT ONE, BUT THAT REFERS TO THE SAME SLIDE. THE ONLY CHANGE WE MADE TO THAT ONE IS ADDING A NEW ENTRY AT THE BOTTOM FOR SAM ALTMAN AS CEO. THAT PARTICULAR CHANGE I DON'T THINK WAS DIRECTED TO THE OPENAI DEFENDANT'S OBJECTIONS.

08:12:09 **THE COURT:** ON THE OBJECTIONS FOR BOTH, AND WE HAVEN'T GOTTEN TO THE DEFENDANTS' SLIDES, PART OF THIS IS THAT THEY REALLY ARE YOUR THEORIES OF THE CASE, AND I'M NOT GOING TO STRIKE EVERYTHING.

08:12:24 SOMETIMES YOU CAN'T PROVE WHAT YOU PROMISE, AND IF YOU DON'T PROVE WHAT YOU PROMISE, THAT'S USUALLY RAISED DURING CLOSING.

BUT I'VE TOLD YOU MULTIPLE TIMES, WE ARE NOT TALKING ABOUT REMEDIES. THE REFERENCE TO $130 BILLION STAKE IS STRICKEN. I DON'T WANT THOSE NUMBERS IN THIS TRIAL.

56. THAT'S -- THE OBJECTION IS OVERRULED.

57. THE OBJECTION IS OVERRULED.

ON MICROSOFT'S OBJECTIONS TO SLIDE 37 THE REFERENCE TO 20 BILLION, 3 EXCLAMATIONS, IT IS STRICKEN.

PLAINTIFFS' OBJECTIONS -- OH NO. THAT'S A NEW SLIDE, THE ONE WITH GREG BROCKMAN.

**MR. KRY:** THAT ONE IS OLD. I THINK THE ORDER OF THE SLIDES IS A LITTLE BIT OUT OF ORDER, BECAUSE WE PUT THE MICROSOFT OBJECTIONS SECOND.

IF I UNDERSTAND YOUR HONOR'S RULING, YOU OVERRULED THE OBJECTIONS TO THE SLIDE THAT HAS MR. ALTMAN AND HIS TESTIMONY ABOUT POTENTIALLY TAKING EQUITY.

**THE COURT:** CORRECT.

**MR. KRY:** YOUR HONOR ALSO OVERRULED MICROSOFT'S OBJECTION TO THE SLIDE THAT REFERS TO THE SELECTING BOARD MEMBERS, BUT YOUR HONOR SUSTAINED THE OBJECTION TO THE PICTURE OF GREG BROCKMAN AND HIS EQUITY STAKE.

**THE COURT:** I DON'T THINK THERE'S A PROBLEM WITH MR. BROCKMAN'S PICTURE, BUT THE 20 BILLION RED EXCLAMATIONS, THAT IS STRICKEN.

**MR. KRY:** YOUR HONOR, IF WE JUST CHANGE THE TYPEFACE AND THE FONT COLOR TO MAKE IT MORE NEUTRAL, WOULD THAT BE

ACCEPTABLE?

**MR. FRENTZEN:** YOUR HONOR --

**THE COURT:** NO, IT'S NOT, BECAUSE YOU'RE TALKING ABOUT THE FUTURE REMEDIES, YOU'RE TALKING ABOUT WHAT HIS STAKE IS IN THE FUTURE.

**MR. KRY:** NO, YOUR HONOR, THAT'S COMING IN FOR A TOTALLY DIFFERENT PURPOSE. THE ISSUE WITH GREG BROCKMAN'S REMEDY IS IT GOES TO BIAS. HE HAS A ENORMOUS FINANCIAL STAKE IN THE CASE AS A RESULT AFTER OF THIS EQUITY INTEREST HE ACQUIRED BACK IN 2019, AND SO IT'S A CRITICAL POINT GOING TO BIAS.

**THE COURT:** WHO WANTS TO RESPOND?

**MR. FRENTZEN:** I'M SORRY, YOUR HONOR?

**THE COURT:** DOES ANYBODY WANT TO RESPOND?

**MR. FRENTZEN:** YEAH, YOUR HONOR. I MEAN, IT'S OBVIOUSLY JUST INFLAMMATORY ARGUMENT. THE WAY THEY'VE SET IT OUT HERE IT BASICALLY LOOKS LIKE A WANTED POSTER. IT'S NOT APPROPRIATE FOR OPENING STATEMENT.

**MR. KRY:** YOUR HONOR, WE'RE HAPPY TO TONE DOWN THE TYPEFACE AND THE EXCLAMATION POINTS.

**THE COURT:** SO LET ME ASK, BECAUSE I'VE ISSUED AN ORDER, AND I DON'T KNOW IF YOU-ALL HAVE TALKED ABOUT IT. IN TERMS OF THE FINANCIAL BIAS ON CROSS-EXAMINATION, HAVE YOU-ALL TALKED ABOUT -- BECAUSE YOU'VE GOT FINANCIAL BIAS ON BOTH SIDES. YOU'VE GOT MUSK' FINANCIAL BIAS, ALTMAN AND BROCKMAN.

HAVE YOU TALKED ABOUT HOW THAT EVIDENCE IS GOING TO COME IN? BECAUSE IT'S THE SAME RULE FOR EVERYBODY.

**MR. KRY:** WE HAVEN'T CONFERRED, YOUR HONOR, BUT WE UNDERSTAND BASED ON YOUR HONOR'S PRIOR RULING THAT THAT SORT OF FINANCIAL BIAS EVIDENCE IS POTENTIALLY RELEVANT TO MUSK, AND SO WE'RE JUST ASKING FOR THE SAME STATEMENTS FOR THE DEFENDANTS.

**THE COURT:** RIGHT. BUT ARE YOU GOING TO ASK ME TO USE ACTUAL NUMBERS?

**MR. FRENTZEN:** I'M SORRY, YOUR HONOR. I DON'T UNDERSTAND THE COURT'S QUESTION.

**THE COURT:** ARE WE TALKING ABOUT WHEN YOU CROSS-EXAMINE HIM, ARE WE GOING TO TALK ABOUT BILLIONS OR ARE YOU TRYING TO PUT IN SPECIFIC QUANTITIES OF BILLIONS?

**MR. FRENTZEN:** MAY I HAVE A MOMENT, YOUR HONOR, BECAUSE I DON'T --

**THE COURT:** SO IT'S FINE WITH ME IF YOU-ALL WANT TO CONFER ON THIS, BUT IF --

**MR. FRENTZEN:** YES.

**THE COURT:** -- THE ANSWER IS NO, WE WANT TO TALK ABOUT 100 BILLION OR 20 BILLION, THEN THIS CAN BE APPROPRIATE IN A --

**MR. FRENTZEN:** YEAH, I DON'T THINK WE DO, YOUR HONOR, BUT MAY I HAVE A MOMENT?

**THE COURT:** ALL RIGHT. GO AHEAD.

**MR. KRY:** YOUR HONOR, WE CERTAINLY DO.

(DISCUSSION OFF THE RECORD.)

**MR. FRENTZEN:** YOUR HONOR, OUR POSITION IS THAT IN, FOR EXAMPLE, THE CROSS-EXAMINATION OF MR. MUSK, WE WOULD NOT INTEND TO ELICIT A SPECIFIC DOLLAR FIGURE RELATED TO HIS INTEREST IN THIS CASE UNLESS, OF COURSE, THE OTHER SIDE IS GOING TO TRY TO DO THE SAME WITH RESPECT TO OUR CLIENTS.

SO I HOPE --

**THE COURT:** SO WHAT DO YOU WANT TO SAY, MR. FRENTZEN?

**MR. FRENTZEN:** WELL, HE HAS AN INTEREST AS A COMPETITOR, BUT WE'RE NOT GOING TO PUT A DOLLAR TAG ON THAT. IT IS NOT OUR INTENTION, UNLESS THE OTHER SIDE IS GOING THERE, BUT WE THINK THAT BOTH SIDES SHOULD NOT GO THERE.

**MR. KRY:** YOUR HONOR, IF I COULD RESPOND TO THAT?

**THE COURT:** YOU MAY.

**MR. KRY:** TWO THINGS. FIRST OF ALL, THE PARTIES ARE VERY DIFFERENTLY SITUATED, BECAUSE THERE'S NO EVIDENCE EVEN IN DISCOVERY ABOUT THE AMOUNT OF MR. MUSK'S FINANCIAL INTERESTS, SO DEFENDANTS ARE GIVING UP NOTHING.

ON OUR SIDE, THE FACT THAT MR. BROCKMAN HAS AN ENORMOUS EQUITY STAKE IN THIS FOR-PROFIT IS DIRECTLY RELEVANT --

**THE COURT:** THAT IS NOT TRUE. YOU HAVE BROUGHT IN AN EXPERT THAT SAYS THAT HE'S -- THAT HIS INTEREST IS IN THE AMOUNT OF $132 BILLION.

**MR. KRY:** NOT FOR THE INDIVIDUAL DEFENDANT, YOUR HONOR. I THINK THAT'S --

08:18:37 **THE COURT:** FOR MR. MUSK.

08:18:38 **MR. KRY:** OH, FOR MR. MUSK. FAIR ENOUGH. I WAS REFERRING TO WHAT MR. --

08:18:42 **THE COURT:** AND I SHUT THAT DOWN FOR YOUR -- IN PART FOR YOUR CLIENT'S BENEFIT, SO DON'T COME IN HERE AND TELL ME THAT YOU DON'T HAVE AN EQUAL ISSUE AT STAKE.

08:18:55 **MR. KRY:** I APOLOGIZE FOR BEING IMPRECISE, YOUR HONOR. I WAS TALKING ABOUT MR. FRENTZEN'S COMMENT ABOUT THE STAKE IN X.AI, MR. MUSK'S COMPANY.

08:19:05 **MR. FRENTZEN:** THAT'S NOT WHAT I WAS SAYING.

08:19:08 **MR. KRY:** IN THAT CASE I APOLOGIZE FOR MISUNDERSTANDING. I DO WANT TO MENTION, YOUR HONOR, THIS EVIDENCE OF THE STAKES OF MR. BROCKMAN OF MICROSOFT ALSO COME IN FOR THE SEPARATE REASON ON THE MERITS, BECAUSE EVEN APART FROM REMEDIES, WE HAVE TO PROVE UP THE FACT THAT THERE WAS A BREACH OF CHARITABLE TRUST, THAT THIS ENTITY WAS REPURPOSED FROM A FOR-PROFIT THAT SUPPORTED THE NONPROFITS --

08:19:29 **THE COURT:** THE AMOUNT -- THE NUMBER ITSELF IS IRRELEVANT TO THAT QUESTION.

08:19:32 **MR. KRY:** RESPECTFULLY, YOUR HONOR, I'M NOT SURE THAT'S TRUE, BECAUSE WHAT THE TESTIMONY WILL SHOW, AND DEAN SCHIZER WILL TESTIFY TO THIS, IS THAT IT'S PERMISSIBLE TO HAVE NONPROFIT/FOR-PROFIT COLLABORATIONS SO LONG AS THE FOR-PROFIT IS PRIMARILY SUPPORTING THE NONPROFIT'S OPERATIONS AND NOT ENRICHING OUTSIDE INVESTORS.

AND WHAT CAUSED THIS PARTICULAR ARRANGEMENT TO CROSS THAT LINE WAS THE SCALE. IT WAS THE SHEER AMOUNT OF MONEY THAT MICROSOFT PUT IN; IT WAS THE SHEER AMOUNT OF MONEY THAT OPENAI GAVE TO ITS SENIOR EXECUTIVES LIKE MR. BROCKMAN.

SO THE AMOUNT OF MR. BROCKMAN'S EQUITY, THE AMOUNT OF MICROSOFT'S STAKE IN THE ENTITY, AND THE AMOUNT OF THE FOR-PROFIT'S FINANCIAL SHARE OF THIS ENTITY IS DIRECTLY RELEVANT TO WHETHER A BREACH OCCURRED, BECAUSE IF THIS HAD REMAINED A REASONABLE, CUSTOMARY FOR-PROFIT/NONPROFIT COLLABORATION --

**THE COURT:** WELL, WHAT IS THE LINE?

**MR. KRY:** THAT IS FOR THE JURY, YOUR HONOR.

**THE COURT:** WHAT IS IT THAT YOU'RE GOING TO ARGUE TO THE JURY? WHERE IS THE LINE?

**MR. KRY:** CERTAINLY, YOUR HONOR, THE $13 BILLION OR THE $10 BILLION THAT MICROSOFT PUT IN IN 2023 CROSSED THAT LINE. CERTAINLY THE ENORMOUS --

**THE COURT:** WHAT IS THE OPPOSITE END?

**MR. KRY:** THE OPPOSITE END IS THE MUSEUM STORY, YOUR HONOR. IT'S A SITUATION WHERE YOU HAVE A DISCRETE FOR-PROFIT THAT IS DIRECTLY SUPPORTING THE NONPROFIT'S ACTIVITIES AND NOT PRIMARILY CHANNELLING AND ENRICHING THE FRUITS OF THE TECHNOLOGY TO OTHER FOR-PROFIT INTERESTS.

SO THERE IS A DIVIDING LINE. THE JURY WILL BE ASKED TO DIVIDE IT. BUT WHERE THAT LINE IS ABSOLUTELY DEPENDS ON JUST

08:21:10 HOW ENORMOUS BROCKMAN'S EQUITY STAKE IS AND JUST HOW ENORMOUS
08:21:17 MICROSOFT'S STAKE IS.

08:21:18 **THE COURT:** RESPONSE.

08:21:18 **MR. FRENTZEN:** YES, YOUR HONOR, IT'S NOT RELEVANT TO
08:21:20 THE FACTS AT ISSUE HERE. I NOTE MR. KRY STARTED TALKING ABOUT
08:21:29 OUTSIDE INVESTORS AND THEN TRIED TO SHIFT TO MR. BROCKMAN.

08:21:31 SO THIS IS JUST NOT -- THE COURT'S QUESTION, WHICH HE
08:21:34 REALLY DIDN'T HAVE AN ANSWER TO, IS THAT THEY'RE JUST TRYING TO
08:21:38 HIT AND DO A STICKER SHOCK WITH THE JURY. THAT'S IT. THAT'S
08:21:41 WHAT IT IS.

08:21:42 THEY'RE TRYING TO PUT IT IN TERMS THAT IN SOME WAY THEY
08:21:45 THINK MAY BE FOUND SHOCKING TO THE JURORS, AND THAT'S IT.

08:21:50 THIS JURY IS HERE AS AN ADVISORY JURY TO DETERMINE THE
08:21:54 FACTS IN THE CASE, NOT TO PASS JUDGMENT ON, YOU KNOW,
08:21:59 PROSPECTIVE OR POTENTIAL DOLLAR FIGURES ATTACHED TO THIS
08:22:03 VENTURE.

08:22:03 **THE COURT:** WHAT IS, WHAT IS THE DEFENDANTS' POSITION
08:22:08 WITH RESPECT TO THIS ISSUE OF -- THAT MR. KRY JUST OUTLINED IN
08:22:16 TERMS OF THE RELATIVE DONATIONS AND THE POINT OF THE
08:22:22 CONTRIBUTION TO THE ENTITY VERSUS THE INDIVIDUALS?

08:22:28 WHAT IS THE RESPONSE GOING TO BE DURING TRIAL FROM THE
08:22:31 DEFENDANTS TO HIS POINT?

08:22:33 **MR. FRENTZEN:** I'M SORRY, YOUR HONOR? TO WHICH POINT
08:22:36 THAT HE WAS MAKING?

08:22:37 **THE COURT:** THE LAST POINT THAT HE JUST MADE WITH

RESPECT TO HIS ARGUMENT THAT THIS -- THAT THE REFERENCE TO 20 BILLION SHOULD COME IN. DO YOU WANT HIM TO STATE IT AGAIN?

**MR. FRENTZEN:** I'M SORRY, YOUR HONOR. I'M NOT GETTING THE COURT'S QUESTION. I APOLOGIZE.

**THE COURT:** ALL RIGHT. STATE IT MORE SUCCINCTLY.

**MR. KRY:** YOUR HONOR, OUR POSITION IS THAT FOR-PROFIT AND NONPROFIT COLLABORATIONS ARE PERMISSIBLE WITHIN LIMITS, COMPENSATION TO TALENTED EXECUTIVES ARE PERMISSIBLE WITHIN LIMITS, BUT AT SOME POINT THAT LINE IS CROSSED, AND IN THIS CASE THAT LINE WAS CROSSED, BUT TO DECIDE WHETHER IT WAS CROSSED, THE JURY NEEDS TO KNOW HOW MUCH MR. BROCKMAN IS WALKING AWAY WITH AND HOW MUCH MICROSOFT IS WALKING AWAY WITH.

**THE COURT:** ALL RIGHT. A RESPONSE?

**MR. FRENTZEN:** MY RESPONSE, YOUR HONOR, IS HE HAS INVENTED IN SOME WAY SOME FORM OF ASSIGNING A DOLLAR FIGURE TO AN AGREEMENT IN AN ARRANGEMENT WHICH DID NOT INCLUDE A DOLLAR FIGURE.

AND SO IT DOESN'T MATTER, IT'S ACTUALLY AN IRRELEVANT POINT.

**MS. PATEL:** YOUR HONOR, NISHA PATEL ON BEHALF OF MICROSOFT. WE THINK THAT SAME RATIONALE APPLIES TO MICROSOFT'S EQUITY STAKE IN THE PVC AS WELL.

WE DON'T HAVE AN ISSUE WITH MICROSOFT'S INVESTMENTS COMING INTO THE RECORD, BUT WE DON'T SEE ANY RELEVANCE WITH THE ACTUAL EQUITY STATE. WE THINK THAT GOES STRAIGHT TO DAMAGES, WHICH

SHOULD NOT BE PERMISSIBLE IN THIS CASE.

**MR. KRY:** YOUR HONOR, IF I COULD RESPOND ON THAT. THE EVIDENCE WILL SHOW, BOTH THE DEAL DOCUMENTS AND THE TESTIMONY FROM DEAN SCHIZER, THAT THE AMOUNTS OF EQUITIES THAT WERE GIVEN TO EMPLOYEES THROUGH THE EMPLOYEE VEHICLE AND THE AMOUNT THAT WAS GIVEN TO MICROSOFT AS A DEAL TERM WERE ABSOLUTELY SPECIFIED IN THOSE CONTRACTS.

THE EVIDENCE WILL ALSO SHOW THAT OPENAI TOOK COMPLETELY INADEQUATE STEPS TO VET THE REASONABLENESS AND PROPORTIONALITY OF THOSE EQUITY STAKES TO EMPLOYEES AND STAKES TO FOR-PROFIT INVESTORS LIKE MICROSOFT IT WAS GIVING AWAY, AND DEAN SCHIZER WILL TESTIFY ABOUT, ON THESE FACTS, THE SHEER MAGNITUDE OF THOSE STAKES TO OUTSIDE INVESTORS AND THE STAKES TO FOR-PROFIT EXECUTIVES LIKE MR. BROCKMAN CROSSED THE LINE. THAT'S OUR CASE.

AND SO WE WOULD ASK YOUR HONOR NOT TO EXCLUDE THIS TESTIMONY. IF YOUR HONOR HAS --

**THE COURT:** WHICH OPINION DOES HE -- WHICH OPINION IS THE ONE AT ISSUE? I'VE GOT HIS REPORT IN FRONT OF ME.

**MR. KRY:** OKAY. SO STARTING WITH OPINION NUMBER 1, IT IS CUSTOMARY PRACTICE FOR NONPROFITS TO USE FOR-PROFIT AFFILIATES FOR A RANGE OF PURPOSES --

**THE COURT:** OKAY. HOLD ON. SO YOU HAVE TO REMEMBER NOT TO SPEAK SO QUICKLY THAT THE COURT REPORTER CAN'T GET YOUR STATEMENTS IN.

08:25:39 **MR. KRY:** THANK YOU, YOUR HONOR.

08:25:41 **THE COURT:** ALL RIGHT. SO I'M LOOKING AT OPINION NUMBER 1. THERE ISN'T A REFERENCE TO A DOLLAR AMOUNT. SO I UNDERSTAND THE GENERIC. ALL RIGHT. WHERE ELSE DOES HE SAY THIS?

08:25:56 **MR. KRY:** SO NUMBER 2.

08:25:57 **THE COURT:** WHERE ELSE? WHICH OTHER OPINIONS?

08:26:01 **MR. KRY:** OKAY. SO NUMBER 3 ESPECIALLY, THIS IS WHERE HE GETS INTO THE FINANCIAL TERMS OF THE ARRANGEMENTS WITH MICROSOFT.

08:26:07 **THE COURT:** JUST GIVE ME THE NUMBERS.

08:26:10 **MR. KRY:** NUMBER 3.

08:26:11 **THE COURT:** WHAT ELSE?

08:26:14 **MR. KRY:** NUMBER 4.

08:26:15 **THE COURT:** WHAT ELSE?

08:26:32 **MR. KRY:** NUMBER 10.

08:26:37 **THE COURT:** WAS A MOTION BROUGHT TO STRIKE 1, 2, 3, 4, OR 10? NO?

08:26:43 **MR. FRENTZEN:** I DON'T BELIEVE WE MOVED TO --

08:26:45 **THE COURT:** I ASKED WHETHER A MOTION TO STRIKE WAS BROUGHT AGAINST OPINIONS 1, 2, 3, 4, AND 10.

08:26:52 **MR. FRENTZEN:** I UNDERSTAND. I DON'T BELIEVE SO, YOUR HONOR.

08:26:54 **THE COURT:** YES. YOUR COLLEAGUE WAS LOOKING AT ME AND I WAS QUESTIONING WHAT THEY ARE CONFERRING UPON.

**MR. FRENTZEN:** YES.

**THE COURT:** OKAY. I'LL TAKE A LOOK AT 1, 2, 3, 4, AND 10, AND THEN I'LL LET YOU KNOW.

**MR. FRENTZEN:** THANK YOU, YOUR HONOR.

**MR. KRY:** FOR THE RECORD, YOUR HONOR, THERE WAS NO DAUBERT MOTION.

**THE COURT:** FOR THE RECORD WHAT?

**MR. KRY:** THERE WAS NO DAUBERT MOTION AGAINST PROFESSOR SCHIZER. THE ONLY MOTION BROUGHT IN WAS BY MICROSOFT, AND THAT WAS ON DISCRETE ISSUES THAT ARE TOTALLY IRRELEVANT TO THIS DISCUSSION.

**THE COURT:** OKAY. DO YOU WANT TO BE HEARD ON OPINIONS 1, 2, 3, 4, AND 10?

**MS. PATEL:** NO, YOUR HONOR.

**THE COURT:** OKAY. THE NEXT ONE I HAVE THEN IS PLAINTIFFS' -- WELL, I HAVE A SLIDE 54. I DON'T KNOW IF IT'S A NEW SLIDE. IT'S A MICROSOFT SLIDE -- OR AT LEAST IT HAS MICROSOFT. SO I THINK THIS IS A PLAINTIFFS' SLIDE.

**MS. PATEL:** YES, YOUR HONOR, WE HAVE AN OBJECTION TO THE SLIDE AND IN PARTICULAR TO THE LAST BULLET, WHICH NOTES THAT MICROSOFT PARTICIPATED IN SELECTION OF BOARD MEMBERS.

**THE COURT:** OVERRULED. IF THEY'VE GOT SOME EVIDENCE, THAT'S THEIR OWN DOING.

THEN I HAVE A NEW SLIDE 20.

**MR. KRY:** SO THE NEW SLIDES, YOUR HONOR, I THINK YOU

ALREADY RULED ON TWO OF THEM -- TWO OF THE REVISED SLIDES. THE NEW SLIDE IS NUMBER 56. THAT'S -- IS THIS THE ONE YOUR HONOR IS REFERRING TO?

**THE COURT:** NO. I'M LOOKING AT -- WELL, IT DIDN'T HAVE A NUMBER. THAT WAS IT. SLIDE 20. PLAINTIFFS' OBJECTIONS TO OPENAI'S DEMONSTRATIVES.

THESE ARE THE TWO CIRCLES?

**MR. FRENTZEN:** YES, YOUR HONOR.

**THE COURT:** OVERRULED.

AND THEN SLIDES 25 TO 29, OVERRULED.

**MS. PATEL:** THANK YOU, YOUR HONOR.

**THE COURT:** OKAY. SO I'LL TAKE A LOOK AT THE OPINIONS ON SCHIZER I THINK IS HOW YOU SAID IT, AND I'LL LET YOU KNOW.

OKAY.

**MR. KRY:** THANK YOU, YOUR HONOR.

**MS. PATEL:** THANK YOU, YOUR HONOR.

**THE COURT:** ARE THERE ANY QUESTIONS ABOUT JURY SELECTION? ANYTHING ELSE YOU WANT TO TALK ABOUT? OTHERWISE, WHAT WE'LL DO IS WE'LL STAND IN RECESS UNTIL THE JURY IS HERE.

**MR. MOLO:** SO, YOUR HONOR, IF YOU WOULDN'T MIND, I KNOW YOU WENT THROUGH THIS AT THE PRETRIAL, BUT IF YOU COULD JUST RECAP FOR US THE WAY THAT YOU'RE GOING TO EXERCISE THE STRIKES.

I WOULD ALSO SUGGEST HAVING GONE THROUGH THE

QUESTIONNAIRES -- WHICH BY THE WAY WERE EXTREMELY HELPFUL BECAUSE WE GOT A LOT DONE AND THROUGH THAT. I THINK, YOU KNOW, GIVEN THE NATURE OF THE CASE, AN EXTRA STRIKE PER SIDE, GIVING US FOUR, IF YOU GAVE US FIVE, I THINK THAT WOULD BE CALLED FOR.

**THE COURT:** WELL, I'M GOING TO GET THE JURY PICKED TODAY.

**MR. MOLO:** I AGREE WITH THAT. WE WANT TO GET IT PICKED TODAY.

**THE COURT:** SO I WOULD HAVE TO GO BACK AND DO A SOFT COUNT. I DON'T KNOW IF I AM GOING TO GIVE YOU THAT MUCH.

**MR. MOLO:** OKAY.

**MR. SAVITT:** YOUR HONOR, GOOD MORNING AGAIN. JUST FOR THE RECORD, THE OPENAI DEFENDANTS ARE ENTIRELY PREPARED TO PROCEED IN ACCORDANCE WITH YOUR HONOR'S INSTRUCTIONS FOR VOIR DIRE PURPOSES.

**THE COURT:** BUT I AM -- I'M SORRY, MR. COHEN, DID YOU WANT TO SAY SOMETHING?

**MR. COHEN:** YES, YOUR HONOR. THANK YOU.

WE AS WELL ARE PREPARED TO PROCEED WITH HOW THE COURT HAS SET THIS UP WITH THE NUMBER OF STRIKES THAT THE COURT HAD DETERMINED EARLIER.

**THE COURT:** YES. I AM NOT INTERESTED IN HAVING A JURY, MR. MOLO, THAT I DON'T THINK IS GOING TO BE FAIR.

**MR. MOLO:** NEITHER ARE WE.

**THE COURT:** AND I WILL LIKELY BE A LITTLE BIT MORE

LENIENT WITH FOR-CAUSE CHALLENGES THAT I MIGHT BE ASKED. I NEED A JURY THAT IS GOING TO LOOK AT THE EVIDENCE AND COME UP WITH A FACTUAL FINDING THAT I THINK IS USEFUL AND HELPFUL, AND A LOT OF PEOPLE DON'T LIKE YOUR CLIENT.

**MR. MOLO:** I'M AWARE.

**THE COURT:** AND A LOT OF PEOPLE DON'T LIKE -- THEY DON'T LIKE MR. ALTMAN EITHER.

SO I UNDERSTAND THAT. AND IF I DON'T THINK THAT SOMEONE REALLY CAN -- I DON'T THINK IF -- IF I DON'T THINK THAT THEY CAN GET PAST THEIR BIAS, THEN, YOU KNOW, FRANKLY I DON'T WANT THEM ON THE JURY.

SO WE'LL SEE WHAT WE HEAR TODAY. AND I APPRECIATE, I REALLY DO APPRECIATE ALL OF THE STRIKES THAT YOU-ALL AGREE TO IN ADVANCE. I THINK THAT WILL STREAMLINE THE PROCESS QUITE A BIT. I'LL LET YOU KNOW BEFORE YOU EXERCISE YOUR STRIKES WHETHER THERE'S, I THINK, VALID TO HAVE ONE MORE.

**MR. MOLO:** GREAT.

**THE COURT:** OKAY. SO WHAT WILL HAPPEN IS AFTER I HAVE -- AFTER I DO ENOUGH VOIR DIRE TO THINK THAT BASICALLY TO BELIEVE THAT I HAVE ENOUGH PROSPECTIVE JURORS THERE -- AND I THINK I SHOULD BE ABLE TO DO IT WITH THE 40. WE'LL SEE -- THEY WILL ALL LEAVE THE COURTROOM. AND WHEN THEY LEAVE THE COURTROOM, YOU'RE NOT GOING TO GET A LOT OF TIME, FIVE, TEN MINUTES TO CONFER. AND YOU HAVE A LOT OF PEOPLE WHO CAN ALL TAKE A LOT OF NOTES.

AND I'LL HAVE YOU AT THE MIC, AND WE'LL SAY WHAT IS THE PLAINTIFFS' STRIKE? AND YOU'LL STRIKE. AND THIS IS AFTER FOR-CAUSE CHALLENGES.

AND YOU'LL ISSUE YOUR STRIKE, AND THEN THE DEFENSE WILL ISSUE A STRIKE, AND WE'LL GO BACK AND FORTH UNTIL YOU HAVE EITHER EXHAUSTED IT OR I HAVE PASSES THAT SAY I HAVE A JURY.

SO THAT WILL NOT HAPPEN IN FRONT OF THE JURORS.

AND THEN THEY'LL COME BACK IN, WE'LL CALL UP THOSE WHO ARE SELECTED, AND THEN THEY WILL BE SWORN, AND WE'LL BE DONE.

**MR. MOLO:** GREAT.

**THE COURT:** WHAT WE WILL DO BEFORE I ISSUE -- BEFORE YOU ISSUE THE LAST STRIKE, IT IS MY PRACTICE TO JUST MAKE SURE EVERYBODY IS CLEAR WE GO THROUGH, AGAIN, WHO IT LOOKS LIKE IS ON THE JURY, AND THEN THAT WAY THERE'S NO SURPRISES.

SO I WOULD APPRECIATE IT IF YOU WOULD ONLY USE LAST NAMES. THERE'S A LOT OF -- YOU KNOW, THERE'S A LOT OF PRESS OUT THERE, AND I DON'T WANT TO HAVE MY JURORS NERVOUS IN ANY WAY ABOUT THEIR RELATIVE PRIVACY. I THINK HAVING LAST NAMES IS KIND OF SUFFICIENT. THERE'S A LOT OF INFORMATION THAT YOU HAVE IN THOSE QUESTIONNAIRES, AND I DON'T INTEND OBVIOUSLY TO RECITE EVERYTHING THAT MIGHT OTHERWISE PROVIDE EXTRA INFORMATION THAT IS NOT NECESSARY FOR PURPOSES OF THE PROCESS. OKAY?

QUESTIONS? MORE QUESTIONS?

**MR. MOLO:** JUST ON THE LAWYER VOIR DIRE. SO YOU WILL QUESTION THE PANEL, AND THEN YOU WILL QUESTION -- OR THE

08:34:59 VENIRE, AND THEN YOU WILL QUESTION INDIVIDUALS ON THAT, AND THEN WE WOULD GET A CHANCE TO --

08:35:05 **THE COURT:** SO YOU CAN DO A PANEL, AND I WILL TELL THEM IN ADVANCE THAT I'VE GIVEN YOU A VERY LIMITED AMOUNT OF TIME TO DO VOIR DIRE AND NOT TO HOLD IT AGAINST YOU BECAUSE YOU WOULD LIKE TO SPEND A LOT OF TIME TALKING TO THEM, BUT THAT'S NOT YOUR OPTION.

08:35:22 SO I GO DOWN INDIVIDUALLY. SO I SPEND TIME WITH EVERY INDIVIDUAL JUROR, AND I'VE READ AND REVIEWED THEIR QUESTIONNAIRES, I HAVE FOLLOW-UP QUESTIONS TO TRY TO UNDERSTAND THE BASICS.

08:35:36 THOSE WHO HAVE SAID THINGS ABOUT YOUR CLIENTS THAT WOULD BE -- WELL, I THOUGHT THERE WERE A COUPLE WHO ACTUALLY LIKED YOUR CLIENTS, SO YOU'LL HAVE TO MAKE SURE THAT THEY CAN, TOO, BE FAIR.

08:35:50 BUT THOSE INDIVIDUALS I'LL PROBABLY SPEND A LITTLE BIT MORE TIME WITH.

08:35:55 IT IS MY EXPERIENCE THAT BY THE END OF THE DAY THE JURORS KNOW WHAT I'M GOING TO ASK, AND SO THEY'RE MUCH MORE WILLING TO BE FORTHCOMING. THERE ARE A FEW PEOPLE WHO I THINK I MIGHT STILL EXCUSE FOR FINANCIAL HARDSHIP, SO THERE ARE THOSE IN THERE AS WELL. BUT, AGAIN, WE SHOULD BE ABLE TO GET THROUGH THIS TODAY.

08:36:17 **MR. MOLO:** OKAY. AND SHOULD WE -- SO WE'LL BE RAISING THE HARDSHIP ISSUES AND THE CAUSE ISSUES OBVIOUSLY

BEFORE THE PEREMPTORIES.

DO YOU WANT TO RAISE HARDSHIP FIRST, OR SHOULD WE EVEN USE THAT AT THIS TIME TO MAYBE TALK ABOUT THAT EVIDENCE? IT'S UP TO YOU, OBVIOUSLY.

**THE COURT:** SO YOU REMEMBER HARDSHIPS ARE ONLY -- WELL, THEY'RE TYPICALLY MY DECISION. I TYPICALLY DON'T TAKE A LOT OF ARGUMENT ON THE HARDSHIP. IF THERE'S A HARDSHIP, I GRANT THE HARDSHIP.

IF YOU-ALL BETWEEN YOURSELVES -- I WOULD USE THIS TIME TO CONFER NOW THAT YOU'VE HAD MORE TIME. IF YOU WANT TO STIPULATE THAT SOME MORE OF THESE CAN BE EXCUSED AND THEY'RE HERE, I'M HAPPY TO TAKE THAT STIPULATION, LET THE JURY OFFICE KNOW, AND THEN YOU CAN EXCUSE THEM, AND THEN WE DON'T EVEN HAVE TO BRING THEM IN IN THE FIRST INSTANCE.

**MR. MOLO:** THAT'S WHAT I THOUGHT. FOR EXAMPLE, THERE'S A WOMAN WHO HAS ONCOLOGY APPOINTMENTS. AND IT JUST SEEMS TO ME LIKE --

**THE COURT:** SO MEET AND CONFER.

**MR. MOLO:** RIGHT.

**THE COURT:** AND PART OF THE PROBLEM WITH SOME OF THESE JURORS IS THAT THEY DIDN'T GIVE US INFORMATION WHEN THESE DECISIONS WERE MADE IN THE FIRST INSTANCE. SO WE ONLY GOT THE INFORMATION LATER.

**MR. MOLO:** OKAY.

**THE COURT:** BUT I'M HERE. SO TALK TO EACH OTHER.

SEE IF YOU AGREE. AND IF YOU DO, LET ME KNOW.

**MR. MOLO:** THANK YOU.

**THE COURT:** ALL RIGHT. ANYTHING ELSE?

**MR. SAVITT:** NO. THAT'S VERY CLEAR. THANK YOU, YOUR HONOR.

**THE COURT:** ALL RIGHT. AND I'M ASSUMING THAT -- WELL, I WILL ASK EACH OF YOU TO -- AT A CERTAIN POINT IN TIME TO INTRODUCE YOURSELVES AND YOU CAN INTRODUCE YOUR TEAM. YOU CAN DECIDE WHO IT IS YOU WANT TO INTRODUCE. THOSE ARE REALLY BIG TEAMS THAT YOU HAVE HERE, BUT I'M ASSUMING I'M LOOKING TO THE THREE OF YOU TO DO THAT.

**MR. MOLO:** THAT WOULD BE GREAT.

**THE COURT:** OKAY.

**MR. SAVITT:** YES, YOUR HONOR.

**MR. COHEN:** YES, YOUR HONOR.

**THE COURT:** WE'RE GOING TO STAND IN RECESS. I'M GOING TO SPEND JUST A LITTLE BIT OF TIME UP HERE GETTING ORGANIZED. SO YOU-ALL MULL AROUND. WE WILL STAND IN RECESS. THANK YOU.

**MR. SAVITT:** THANK YOU, YOUR HONOR.

**THE CLERK:** COURT IS IN RECESS.

(RECESS FROM 8:38 A.M. UNTIL 9:30 A.M.)

(JURY IN AT 9:30 A.M.)

**THE COURT:** WELCOME TO THE UNITED STATES COURTHOUSE FOR THE NORTHERN DISTRICT OF CALIFORNIA. YOU'VE ALL BEEN

CALLED AS PROSPECTIVE JURORS IN THE CASE OF ELON MUSK VERSUS SAM ALTMAN, GREG BROCKMAN, OPENAI, AND MICROSOFT. THIS IS CASE NUMBER 24-CV-04722.

IF ALL OF THE PROSPECTIVE JURORS WOULD PLEASE STAND SO YOU CAN BE SWORN.

(PROSPECTIVE JURORS WERE GIVEN THE OATH.)

**PROSPECTIVE JURORS:** I DO.

**THE CLERK:** THANK YOU. PLEASE BE SEATED.

**THE COURT:** WELL, BY YOUR UNENTHUSIASTIC RESPONSE TO WHAT I THOUGHT WAS A VERY CHEERFUL GOOD MORNING, I CAN TELL THAT YOU'RE NOT PARTICULARLY HAPPY TO BE HERE.

SO LET ME START BY THANKING YOU, BY THANKING YOU FOR HONORING YOUR CITIZENSHIP BECAUSE THAT'S WHAT YOU'VE DONE BY COMING HERE TODAY.

THE RIGHT TO A TRIAL BY JURY I THINK IS GUARANTEED TO ALL OF US BY THE UNITED STATES CONSTITUTION, AND IT'S A CHERISHED RIGHT.

IT'S ALSO A RIGHT THAT JUDGES LIKE MYSELF CANNOT PROVIDE TO INDIVIDUALS UNLESS INDIVIDUALS LIKE YOU COME TO THE COURTHOUSE AND HONOR YOUR CITIZENSHIP.

BEFORE I CONTINUE, I DO WANT TO MAKE SURE, CAN EVERYONE HEAR ME? THAT IS, IF NOT, CAN YOU RAISE YOUR HAND. WE HAVE SOME ASSISTED LISTENING DEVICES FOR JURORS.

OKAY. I KEEP UP HERE WITH ME THIS VERY OLD LITTLE PAMPHLET, CONSTITUTION, AND I'VE HAD IT SINCE I WAS IN COLLEGE,

WHICH WAS A VERY LONG TIME AGO, AND I KEEP IT UP HERE AS A REMINDER THAT IN COURTROOMS ALL ACROSS OUR COUNTRY JUDGES ARE PROTECTING THE RIGHTS THAT ARE IN THIS CONSTITUTION.

AND I THINK YOU CAN PICK UP A NEWSPAPER OR LISTEN TO A PODCAST OR DO SOMETHING ELECTRONICALLY OR WHEREVER YOU GET YOUR NEWS, AND IF YOU FOCUS ON WHAT'S HAPPENING AROUND THE WORLD, THAT RIGHT TO A JURY VERDICT IS NOT GUARANTEED IN OTHER COUNTRIES. IT IS SOMETHING THAT -- AND ACTUALLY I JUST SPOKE AT A GLOBAL CONFERENCE IN LONDON LAST WEEK, AND IT WAS INTERESTING HOW THIS CONCEPT THAT WE HAVE JUST DOESN'T EXIST IN VERY MANY PLACES. AND IT'S IMPORTANT TO OUR DEMOCRACY.

BUT I UNDERSTAND THAT IT TAKES TIME OUT OF YOUR SCHEDULE. SO THE REALITY IS, DEMOCRACY IS NOT CONVENIENT. IT'S NOT. AND SOMETIMES IT INVOLVES TAKING TIME OUT OF OUR SCHEDULE, BECAUSE I THINK WE TAKE IT FOR GRANTED SOMETIMES.

BUT THIS IS ONE WAY THAT YOU CAN ENGAGE WITH YOUR DEMOCRACY. ALL OF YOU AS CITIZENS, ALL OF YOU HAVE A RIGHT TO SERVE AS A TRIAL JUROR, AND THAT RIGHT CANNOT BE DENIED TO YOU ON THE BASIS OF YOUR RACE, RELIGION, GENDER, NATIONAL ORIGIN, SEXUAL ORIENTATION, OR ECONOMIC STATUS. IT IS ACTUALLY YOUR RIGHT.

IT WASN'T THAT LONG AGO IN OUR COUNTRY'S HISTORY THAT THAT RIGHT WAS NOT AFFORDED TO ALL OF US, MYSELF INCLUDED. JURORS USED TO BE COMPRISED OF WHITE MEN, AND THAT WAS IT.

SO IT IS YOUR RIGHT.

09:35:01 LET ME SHARE WITH YOU A FEW THINGS. AS YOU CAN TELL, THIS IS A CIVIL CASE. IT IS NOT A CRIMINAL CASE. AND I'VE READ, I SPENT ALL -- I SPENT THE WEEKEND. I'VE READ YOUR QUESTIONNAIRES. I KNOW MANY OF YOU HAVE NOT BEEN ON JURIES BEFORE. SO LET ME JUST GIVE YOU A LITTLE KIND OF THUMBNAIL SKETCH.

09:35:23 IT IS A JUROR'S JOBS TO DETERMINE THE FACTS OF A DISPUTE. IN THIS PARTICULAR CASE, THE PARTIES DISAGREE ABOUT WHAT HAPPENED FACTUALLY IN THEIR DISPUTE.

09:35:39 NOW, FREQUENTLY PARTIES RESOLVE THESE THINGS ON THEIR OWN. THAT'S FINE. BUT HERE THEY DON'T AGREE.

09:35:47 SO WHAT WE DO IS WE CALL JURORS TOGETHER TO LISTEN TO ALL OF THE EVIDENCE AND TO DECIDE FACTS. NOT THE LAW, FACTS. YOU ALSO DON'T PASS JUDGMENT. THAT IS NOT YOUR JOB. ALL JURORS DO ARE TRY TO RESOLVE FACTUAL DISPUTES.

09:36:05 IT IS THE JOB OF THE JUDGE TO DECIDE WHAT THE LAW IS AND TO INSTRUCT THE JURORS ABOUT WHAT THE LEGAL FRAMEWORK IS.

09:36:13 IT IS THE JOB OF THE ATTORNEYS TO REPRESENT THEIR CLIENTS AND PUT ON THE BEST CASE THAT THEY CAN.

09:36:24 IF WE ARE ALL DOING OUR JOB, AT THE END OF THE DAY WE GET SOMETHING THAT IS CALLED A VERDICT, AND IT IS KIND OF OUR BEST INDICATION OF HOW TO MAKE ALL OF THESE COMPONENT PARTS WORK.

09:36:37 NOW, DURING THE TRIAL, BECAUSE A LAWYER'S JOB IS TO PROTECT THEIR CLIENTS, AND WE HAVE A FEDERAL CODE OF EVIDENCE, I'VE GOT A COPY OF IT UP HERE, THEY MAKE OBJECTIONS. I'M SURE

SOME OF YOU HAVE SEEN LAWYER SHOWS, TRIAL SHOWS. AGAIN, "MY COUSIN VINNY" IS ONE OF MY FAVORITES. THEY MAKE THE OBJECTIONS AND IT IS MY JOB TO RULE ON THE OBJECTIONS.

NOW, SOMETIMES I'LL INSTRUCT THE JURY WHAT IT IS, BUT THAT IS A FULL COURSE IN A LAW SCHOOL. I'M NOT GOING TO WASTE ALL OF YOUR TIME AND EXPLAIN EVERYTHING THAT WE HAVE IN TERMS OF THE EVIDENCE, BUT WE ARE ALL DOING OUR JOB.

WHAT I'M LOOKING FOR IS JURORS WITH AN OPEN MIND. MORE THAN ANYTHING ELSE IN EVERY TRIAL, AND I HAVE DONE MANY TRIALS, WHAT WE ARE LOOKING FOR IS TO ALLOW THE PARTIES TO PRESENT THEIR CASE, THEIR BEST CASE, AND THEN FOR THE JURORS TO KEEP AN OPEN MIND AND LISTEN TO BOTH SIDES, AND THEN HELP THE PARTIES OUT, IN A SENSE, BY DECIDING WHAT THE FACTS ARE.

OKAY. I'VE BEEN TALKING FOR A WHILE, SO NOW I'M GOING TO TAKE A SIDE BREAK AGAIN AND ASK THIS QUESTION. IS THERE ANYBODY -- ANY OF THE PROSPECTIVE JURORS WHO DO NOT UNDERSTAND WHAT I'VE BEEN SAYING IN TERMS OF ENGLISH? IF YOU CAN RAISE YOUR HAND IF YOU'RE HAVING A LANGUAGE PROBLEM.

OKAY. I'LL TALK TO YOU-ALL IN A MINUTE. OKAY.

SO LET'S SHIFT GEARS AND TALK A LITTLE BIT ABOUT THE CASE, AND THEN I'LL TALK ABOUT THE PARAMETERS OF THE TRIAL, BUT I'M GOING TO LET THE PARTIES INTRODUCE THEMSELVES AS SOON AS I INTRODUCE A COUPLE OF PEOPLE WHO ARE VERY IMPORTANT.

MY COURTROOM DEPUTY, EDWIN CUENCO, IS RIGHT HERE. HE'S THE PERSON WITH WHOM JURORS WILL HAVE THE MOST CONTACT.

AND THEN MY COURT REPORTER, IRENE RODRIGUEZ, WHO IS IN FRONT OF ME HERE, SHE'S OUR COURT REPORTER, AND I WILL SAY SHE IS THE PERSON WHO WORKS THE ABSOLUTE MOST IN ANY TRIAL, AND THAT IS BECAUSE WHATEVER IS BEING SAID BY WHOEVER IS SAYING IT, SHE HAS TO TYPE THAT DOWN.

SO WHILE I'VE BEEN TALKING, YOU KNOW, PEOPLE OVER HERE, MAYBE THEY WERE DAYDREAMING, I DON'T KNOW, MAYBE THEY WERE THINKING ABOUT POTENTIALLY OTHER THINGS, BUT IT DOESN'T MATTER WHAT ANYONE ELSE IS THINKING, SHE ALWAYS HAS TO TYPE WHAT'S BEING SAID.

THAT MEANS THAT ONCE IN A WHILE I HAVE TO TAKE A BREAK, BECAUSE OTHERWISE IRENE WON'T MAKE IT PAST THIS TRIAL AND MANY OTHER TRIALS. OKAY?

SO LET'S START WITH THE PLAINTIFF. MR. MOLO, I'LL LET YOU INTRODUCE YOUR TEAM.

**MR. MOLO:** OKAY. THANK YOU, YOUR HONOR.

MY NAME IS STEVE MOLO, AND I'M A LAWYER THAT REPRESENTS ELON MUSK IN THIS CASE. IT'S A PLEASURE TO BE HERE THIS MORNING, AND I SHARE JUDGE GONZALEZ ROGERS'S THANKS FOR YOU COMING AND BEING OF SERVICE. IT'S AN INCONVENIENCE, AND WE REALLY APPRECIATE IT. SO THANK YOU.

SO AS JUDGE GONZALEZ ROGERS EXPLAINED, OUR JOB IS TO TRY TO PRESENT THE CASE TO YOU AS BEST WE CAN, AND THAT MEANS TRYING TO BE EFFICIENT --

**THE COURT:** SO, MR. MOLO, I'M NOT LOOKING FOR AN

OPENING STATEMENT. AS I AM LOOKING LOOKING FOR ARE INTRODUCTIONS. TELL THEM WHO YOUR TEAM IS AND THEN YOU CAN SIT DOWN.

**MR. MOLO:** MY ONLY POINT IS SOME MAY NOT BE HERE ALL OF THE TIME. IT'S NOT OUT OF LACK OF INTEREST OR RESPECT FOR YOU, IT'S BECAUSE THEY'RE OFF DOING SOMETHING ELSE RELATED TO THE CASE.

SO WE HAVE HERE JOHN WALTON, WHO YOU WILL SEE EVERY DAY; JEN SCHUBERT, MY PARTNER; ROBERT KRY, MY PARTNER; WALTERS HAWES; ERIC NITZ; ALEX EYNON; SARA TOFIGHBAKHSH; AND CHAD LACKEY, WHO IS A CONSULTANT WHO WORKS FOR US. THE OTHERS ARE ALL FROM OUR FIRM.

AND THEN MARC TOBEROFF IS ANOTHER LAWYER WHO HAS HIS OWN FIRM WHO REPRESENTS MR. MUSK AS WELL.

IT'S A PLEASURE TO BE HERE THIS MORNING. THANK YOU.

**THE COURT:** THANK YOU, MR. MOLO. I APOLOGIZE IF I DID NOT MAKE THAT CLEAR EARLIER.

**MR. MOLO:** OKAY.

**THE COURT:** ON THE DEFENSE SIDE, MR. SAVITT.

**MR. SAVITT:** THANK YOU, YOUR HONOR. GOOD MORNING, EVERYONE. IT'S A REAL PLEASURE TO SEE YOU AND LET ME JOIN IN OUR THANKS FOR YOU-ALL BEING HERE AND SERVING IN THE WAY THAT YOU HAVE.

MY NAME IS WILLIAM SAVITT. I'M A LAWYER. I REPRESENT SAM ALTMAN, GREG BROCKMAN, AND THE OPENAI DEFENDANTS, AND WE'RE

DELIGHTED TO HAVE THE OPPORTUNITY TO PRESENT OUR CASE.

LET ME INTRODUCE FIRST MY CLIENTS. SAM ALTMAN. SAM, WOULD YOU STAND UP AND INTRODUCE YOURSELF. SAM ALTMAN. NEXT TO SAM IS GREG BROCKMAN.

TO SAM'S RIGHT IS JOSH ACHIAM.

**THE CLERK:** EXCUSE ME, COUNSEL, ARE YOU USING THE WIRELESS MICROPHONE?

**THE COURT:** MR. SAVITT, HOW ABOUT USING THE ONE IN THE MIDDLE.

**MR. SAVITT:** OKAY. JOSH ACHIAM, WHO IS THE REPRESENTATIVE OF OPENAI.

I'M ALSO VERY LUCKY TO HAVE A SPECTACULAR TEAM THAT WILL BE WORKING WITH ME AND WITH US DURING THE COURSE OF THIS TRIAL, AND LET ME INTRODUCE THEM.

RANDALL JACKSON; BRAD WILSON; JOSH DUBIN; WILL FRENTZEN; AND SARAH EDDY. WE ARE GRATEFUL TO BE HERE AND VERY GLAD TO HAVE THE OPPORTUNITY TO BE WITH YOU. THANK YOU.

**THE COURT:** MR. COHEN.

**MR. COHEN:** GOOD MORNING, EVERYONE.

MY NAME IS RUSS COHEN. I REPRESENT MICROSOFT, WHICH IS ANOTHER DEFENDANT IN THIS CASE.

I, TOO, ECHO EVERYONE'S THANKS FOR YOUR TIME BEING HERE AND FOR THE IMPORTANT DUTY THAT YOU HAVE.

SO LET ME BE BRIEF. I'LL INTRODUCE MY TEAM. STARTING WITH NISHA PATEL GUPTA, WHO IS ONE OF MY COLLEAGUES;

JAY JURATA; AND HERE FROM MICROSOFT IS BECKY FRANCIS.

SO THANK YOU VERY MUCH FOR YOUR TIME.

**THE COURT:** OKAY. THANK YOU.

SO LET ME TELL YOU JUST A LITTLE BIT ABOUT THE TRIAL.

THE NEXT SLIDE, EDWIN. THERE YOU GO.

SO I AM LOOKING FOR NINE JURORS. LOOK AROUND THE ROOM. MOST OF YOU WILL NOT BE HERE WITH US. I'M ONLY LOOKING FOR NINE.

IN TERMS OF THE TIMING OF THE TRIAL, THE WAY I RUN TRIALS IS AS FOLLOWS:

I START WITH THE LAWYERS EARLY IN THE MORNING, BUT I START WITH THE JURY AT 8:30 SHARP AND I RUN THE TRIAL UNTIL 1:40 IN THE AFTERNOON WITH NO LUNCH. THERE ARE TWO 20-MINUTE BREAKS.

ONE OF THE REASONS -- AND WE'RE NOT IN TRIAL ON FRIDAY.

I DON'T DO THAT TO GO PLAY GOLF. I DON'T PLAY GOLF.

BUT I DO THAT FOR A NUMBER OF REASONS. ONE IS THAT HERE IN FEDERAL COURT WE HAVE HUNDREDS AND HUNDREDS OF CASES, AND MY CASES DON'T GO AWAY WHEN I'M IN TRIAL. THERE'S NO ONE ELSE TO DO MY WORK FOR ME, JUST LIKE YOU. SO WHEN YOU'RE HERE, MANY OF YOU, UNLESS YOU'RE RETIRED, YOUR WORK DOESN'T GO AWAY. AND EVEN WHEN YOU'RE RETIRED, MANY OF YOU ARE INVOLVED IN ORGANIZATIONS.

SO WHAT THIS ALLOWS US TO DO IS TO GET OUR TRIAL IN. AT THE END OF THE TRIAL DAY I GET TO DO MY OTHER WORK. I GET TO DO MY WORK ON FRIDAYS, BRING OTHER CASES IN ON FRIDAYS. I WORK

OVER THE WEEKENDS. THAT'S HOW WE GET IT ALL DONE.

IT ALSO MEANS, JUST SO THAT YOU KNOW, I RESPECT JURORS' TIME. YOU AREN'T PAID VERY MUCH TO BE HERE. YOU'RE PAID VERY LITTLE TO BE HERE, BUT I WANT YOU TO KNOW THAT WHEN YOU ARE HERE, EVERYTHING WE DO IS FOR YOU. SO WE START ON TIME, WE END ON TIME, YOU CAN HAVE, YOU KNOW, YOU CAN SCHEDULE MEETINGS FOR THE BREAKS IF YOU NEED TO.

AND I PUT LAWYERS ON TIME LIMITS IN CIVIL CASES. NOT CRIMINAL CASES, BUT CIVIL CASES.

SO I HAVE A PRETTY GOOD SENSE OF WHEN THIS CASE SHOULD END. WHAT I DON'T HAVE A GOOD SENSE OF IS HOW LONG IT WILL TAKE THIS JURY TO DELIBERATE, BECAUSE THAT'S ENTIRELY UP TO THE JURY.

BUT I ANTICIPATE -- AND WE CAN GO BACK TO THE CALENDAR, EDWIN.

I ANTICIPATE THIS CASE SHOULD BE DONE BY, REALLY, THURSDAY THE 21ST OF MAY. THAT SHOULD ALLOW ENOUGH TIME TO GET ALL OF THE EVIDENCE IN AND FOR THE JURY TO DELIBERATE. SO THAT'S WHAT THE SCHEDULE LOOKS LIKE. REALLY THREE WEEKS OF EVIDENCE, MAYBE THREE WEEKS AND A DAY, BUT ABOUT THREE WEEKS OF EVIDENCE, MONDAY THROUGH THURSDAY, 8:30, AND THEN YOU FINISH AT 1:40.

I THINK THE OTHER THING THAT IS IMPORTANT TO REMEMBER IS WHEN WE END THE DAY AT THAT TIME, IT MEANS YOU CAN GET ON THE ROAD BEFORE TRAFFIC GETS HEAVY AGAIN, AND THAT, AGAIN, I THINK WILL HELP WITH THE AMOUNT OF TIME THAT IS COMMITTED.

09:46:30 SO IN TERMS OF HARDSHIPS, AND WE'RE GOING TO START MOVING TO YOUR QUESTIONNAIRES SOON, BUT IN TERMS OF HARDSHIPS, I DON'T -- I DON'T GIVE HARDSHIPS VERY EASILY. LET'S DO IT THIS WAY. LOOK TO YOUR LEFT AND LOOK TO YOUR RIGHT. LOOK TO YOUR LEFT AND LOOK TO YOUR RIGHT, AND YOU SEE YOUR OTHER JURORS.

09:46:54 MY QUESTION THAT'S ALWAYS IN MY HEAD, AND I KIND OF IMPLICITLY ASKED YOU, IS WHAT MAKES YOU SO SPECIAL THAT THE PERSON TO YOUR LEFT OR RIGHT SHOULD SERVE BUT NOT YOU? THAT'S -- AND SOMETIMES WE HAVE THAT.

09:47:15 I ROUTINELY LET TEACHERS, I EXCUSE THEM BECAUSE TEACHERS, ESPECIALLY IN SCHOOL DISTRICTS THAT DON'T HAVE A LOT OF MONEY, YOU KNOW, I DON'T WANT A CLASS FULL OF 25 CHILDREN WATCHING VIDEOS BECAUSE THEIR TEACHER IS OVER HERE AND NOT THERE.

09:47:32 THERE ARE INDIVIDUALS WHO HAVE TO TAKE CARE OF ELDERLY PARENTS, AND THERE IS NO OTHER PERSON TO TAKE CARE OF THEM. THAT'S A HARDSHIP.

09:47:41 SO IT'S KIND OF THE SPECIAL CIRCUMSTANCE. THAT'S WHAT I'M LOOKING FOR, A SPECIAL CIRCUMSTANCE THAT MIGHT MEAN THAT YOU REALLY CAN'T SERVE.

09:47:49 THE OTHER THING THAT I WILL SHARE WITH YOU IS AS TRIALS GO, THIS IS RELATIVELY SHORT. I'M NOT CALLING YOU IN FOR ONE OF MY THREE-MONTH PRISON RICO CASES. SO, YOU KNOW, IT'S A RELATIVELY SHORT TRIAL.

09:48:07 AND I WILL REALLY HONOR YOUR TIME.

09:48:16 SO LET'S TALK A LITTLE BIT ABOUT THE CASE BEFORE I START

09:48:20 VOIR DIRE. IN THIS CASE PLAINTIFF, ELON MUSK, ASSERTS TWO CLAIMS AGAINST SAM ALTMAN, GREG BROCKMAN, AND OPENAI.

09:48:32 ONE IS A CLAIM FOR WHAT WE CALL BREACH OF A CHARITABLE TRUST, AND THE SECOND IS A CLAIM FOR UNJUST ENRICHMENT.

09:48:39 MR. MUSK ALSO SUED MICROSOFT. ONE CLAIM AGAINST MICROSOFT FOR AIDING AND ABETTING ON HIS CLAIM OF BREACH OF CHARITABLE TRUST. THESE CLAIMS ARISE OUT OF CHARITABLE CONTRIBUTIONS THAT MR. MUSK CAUSED TO BE MADE TO THE OPENAI NONPROFIT OVER THE PERIOD OF 2016 TO 2020, AND THEN THE SUBSEQUENT CREATION AND OPERATION OF A FOR-PROFIT AFFILIATE OF OPENAI.

09:49:11 SO THAT'S WHAT THE CASE IS ABOUT.

09:49:17 NOW THAT I'VE GIVEN YOU SOME BACKGROUND, I'M GOING TO GET STARTED ON THIS PROCESS THAT WE CALL VOIR DIRE. VOIR DIRE IS AN ENGLISH ANGLO -- OR AN ANGLO-FRENCH TERM THAT LITERALLY MEANS TO SPEAK THE TRUTH. THAT'S WHAT WE WANT YOU TO DO.

09:49:33 LIKE I SAID, I'M LOOKING FOR NINE JURORS WHO CAN BE FAIR, AND WE NEED YOU TO SPEAK THE TRUTH TO US.

09:49:39 NOW, I DON'T KNOW -- IT DIDN'T LOOK LIKE MANY OF YOU WERE IN TEXAS, BUT I KNOW THERE'S A LOT OF PEOPLE WHO MOVE FROM CALIFORNIA TO TEXAS AND BACK AND FORTH. SO IF YOU'RE EVER ON A TEXAS JURY AND THE JUDGE STARTS TELLING YOU THAT YOU'RE GOING TO START DOING VOIR DIRE, VOIR DIRE IS THE TEXAS WAY TO SAY VOIR DIRE, WHICH IS THE FRENCH WAY.

09:50:06 SO LET'S GO AHEAD AND GET STARTED.

09:50:13 MR. CUENCO, CAN OUR FIRST JUROR HAVE THE MICROPHONE.

09:50:37 ALL RIGHT. IS YOUR LAST NAME, JUST TO BE SURE, BABANTO?

09:50:44 **PROSPECTIVE JUROR:** YES.

09:50:45 **THE COURT:** GOOD MORNING.

09:50:49 SO, MS. BABANTO, YOU WERE BORN IN THE PHILIPPINES?

09:50:53 **PROSPECTIVE JUROR:** YES, I WAS.

09:50:54 **THE COURT:** AND WHEN DID YOU COME TO THE 09:50:55 UNITED STATES?

09:50:56 **PROSPECTIVE JUROR:** 2015.

09:50:57 **THE COURT:** OKAY. WE WANT YOU TO SPEAK A LITTLE BIT 09:50:59 LOUDER INTO THAT MIC. AND IF YOU HOLD IT RIGHT ABOUT THERE, 09:51:03 RIGHT, THEN IT WILL PICK UP AND EVERYBODY CAN HEAR.

09:51:06 LET'S TRY AGAIN. SO WHEN DID YOU COME?

09:51:09 **PROSPECTIVE JUROR:** 2015.

09:51:10 **THE COURT:** 2015. AND IN TERMS OF YOUR 09:51:20 QUESTIONNAIRE, AS A REGISTERED NURSE, DOES YOUR COMPANY PAY FOR 09:51:24 JURY DUTY?

09:51:27 **PROSPECTIVE JUROR:** NO, THEY DON'T.

09:51:28 **THE COURT:** NOW, IN TERMS OF YOUR HOURS, I'VE 09:51:30 EXPLAINED TO YOU HOW I RUN TRIAL. CAN YOU MANAGE YOUR SCHEDULE 09:51:34 SO THAT YOU CAN DO BOTH OF THESE THINGS?

09:51:37 **PROSPECTIVE JUROR:** TO BE HONEST, AS MUCH AS I WANT 09:51:39 TO, LIKE, SERVE, MY SCHEDULE IS ACTUALLY LIKE AN EIGHT-HOUR 09:51:46 SCHEDULE TOO. AND SO AS A MINIMUM DATA NURSE, I'M THE ONLY ONE 09:51:50 IN MY FACILITY THAT DOES THE JOB, SO MOST LIKELY I WILL HAVE TO 09:51:54 GO TO WORK AFTER. AND SO IT'S JUST TAXING IF THAT WERE THE

SCHEDULE.

**THE COURT:** TELL ME WHAT YOUR JOB IS.

**PROSPECTIVE JUROR:** I'M AN MDS NURSE, MINIMUM DATA SET NURSE. I WORK IN A SKILLED NURSING FACILITY. UNDER MEDICINE CARE GUIDELINES, I'M USUALLY REQUIRED TO GO AND SEE PATIENTS THAT COME INTO OUR FACILITY AND THOSE WHO ALSO LEAVE.

AND SO AS THE ONLY SOLE MDS NURSE IN THE FACILITY, I WILL HAVE TO GO TO WORK MOSTLY EVERY DAY.

**THE COURT:** OKAY. WELL, WHAT HAPPENS IF YOU GET SICK?

**PROSPECTIVE JUROR:** USUALLY I DO HAVE COVERAGE, BUT RIGHT NOW IT'S SOMETHING THAT I HAVE TO PROCESS WITH AN ADMINISTRATOR TO GET IT SORTED OUT.

RIGHT NOW I DON'T KNOW WHAT IT WOULD LOOK LIKE, SO I DIDN'T ASK FOR ANY COVERAGE. BUT A LOT OF TIMES I DON'T GET SICK OFTEN. AND SO I WOULD USUALLY WORK FROM HOME IF THAT'S THE CASE.

**THE COURT:** WELL, HOW CAN YOU -- HOW CAN YOU DO YOUR JOB FROM HOME?

**PROSPECTIVE JUROR:** A LOT OF TIMES I WOULD PRE -- DO MY ASSESSMENTS AHEAD OF TIME. AND THEN FOR ONE DAY -- USUALLY I WOULD TAKE A BREAK FOR ONE DAY IF I NEED TO, BUT THE PAST YEAR I HAVE NOT TAKEN SICK LEAVE. SO IT'S BEEN LIKE THAT FOR ME.

**THE COURT:** OKAY. LET'S TALK ABOUT YOUR

QUESTIONNAIRE IN TERMS OF -- AND YOU INDICATED SOME KIND OF NEGATIVE FEELINGS ABOUT MR. MUSK.

**PROSPECTIVE JUROR:** IT'S USUALLY ONLINE.

**THE COURT:** WHAT'S THAT?

**PROSPECTIVE JUROR:** IT'S USUALLY JUST WHAT YOU SEE ONLINE.

**THE COURT:** YES. BUT YOU SEEM TO NOT HAVE A VERY POSITIVE VIEW OF MR. MUSK; IS THAT RIGHT?

**PROSPECTIVE JUROR:** SORT OF.

**THE COURT:** OKAY. AND YOU WATCHED THE -- I'M SURE EVERYBODY DID -- THE BIAS VIDEO?

**PROSPECTIVE JUROR:** YES.

**THE COURT:** SO SOMETIMES WE HAVE WHAT WE CALL, AS THE VIDEO SHOWED, UNCONSCIOUS BIASES, AND WE ALL HAVE THEM IN ONE WAY OR ANOTHER, AND THAT'S HOW WE SURVIVE AS HUMANS.

AND WHAT IS MOST IMPORTANT IS TO TRY TO FIGURE OUT, IN TERMS OF BEING A JUROR, WHETHER YOU CAN PUT THOSE BIASES AWAY. SO LET'S SAY WE GET OVER THE HUMP OF THE FINANCIAL HARDSHIP OR YOUR WORK HARDSHIP.

CAN YOU TELL ME WHETHER -- WHAT YOUR THOUGHTS ARE IN TERMS OF BEING IN A CASE WHERE MR. MUSK IS THE PLAINTIFF AND WHETHER YOU CAN BE FAIR TO MR. MUSK?

**PROSPECTIVE JUROR:** HONESTLY, WHEN YOU WERE DISCUSSING THE CASE, I DIDN'T QUITE UNDERSTAND WHAT IT WAS ABOUT. AND SO IF I AM PRESENTED WITH FACTS AND EVIDENCES, I

BELIEVE I WILL HAVE TO GO WITH THAT AND HAVE TO PUT AWAY MY BIASES.

**THE COURT:** YES. SO LET'S BE CLEAR, WE'RE NOT HERE TO TRY THE CASE. I'M NOT GOING TO GIVE ANYBODY A LOT OF INFORMATION ABOUT THE CASE, AND I DON'T WANT THE LAWYERS TO GIVE YOU A LOT OF INFORMATION ABOUT THE CASE BECAUSE THAT'S NOT THE POINT RIGHT NOW.

THE POINT IS WHETHER YOU CAN BE OPEN-MINDED AND FAIR.

**PROSPECTIVE JUROR:** I BELIEVE SO.

**THE COURT:** OKAY. SO LET'S SEE.

AND THEN YOU HAD -- YOU SAID YOU'RE NOT A BIG FAN OF AI, OF USING AI IN THE WORKPLACE.

ARE PEOPLE BEGINNING TO USE AI IN THE WORKPLACE?

**PROSPECTIVE JUROR:** CORRECT.

**THE COURT:** AND HOW ARE THEY USING IT?

**PROSPECTIVE JUROR:** RIGHT NOW IT'S MOSTLY SCRUBBING REPORTS. AND SO USUALLY MY JOB IS TO ACTUALLY REVIEW PATIENT RECORDS. AND SO OUR COMPANY RIGHT NOW HAS STARTED USING THIS AI TOOL WHERE IT WOULD HELP US SCRUB IT. BUT AT THE END OF THE DAY, I DON'T REALLY TRUST IT BECAUSE I STILL HAVE TO REVIEW THEIR FINDINGS.

IT WOULD JUST FIND THE STUFF FOR ME, BUT IT WOULDN'T REALLY DETERMINE IF THAT WAS FACTUAL.

**THE COURT:** OKAY. DO YOU HOLD IT AGAINST THE AI COMPANIES THAT THIS IS A PRODUCT THAT IS NOW OUT THERE?

**PROSPECTIVE JUROR:** NOT REALLY.

**THE COURT:** OKAY. IT'S JUST NOT WORKING TO YOUR SATISFACTION AT THIS POINT?

**PROSPECTIVE JUROR:** IT JUST ADDS MORE JOB -- IT JUST GIVES ME MORE JOB TO DO.

**THE COURT:** SO IT'S NOT REDUCING YOUR WORKLOAD, IT'S INCREASING YOUR WORKLOAD?

**PROSPECTIVE JUROR:** YES, THAT'S HOW I SEE IT.

**THE COURT:** OKAY. BUT, AGAIN, YOU THINK YOU CAN BE FAIR GIVEN THAT THIS CASE IS ABOUT KIND OF THE ESTABLISHMENT OF AN AI COMPANY AND KIND OF HOW IT HAS CHANGED OVER TIME?

**PROSPECTIVE JUROR:** I BELIEVE SO.

**THE COURT:** ALL RIGHT. THANK YOU.

LET'S GO AHEAD AND PASS IT.

LAST NAME CAMPBELL; IS THAT RIGHT?

**PROSPECTIVE JUROR:** THAT'S CORRECT.

**THE COURT:** GOOD MORNING, SIR.

**PROSPECTIVE JUROR:** GOOD MORNING.

**THE COURT:** ALL RIGHT. SO IN TERMS OF YOUR TRAVEL, IT WILL NOT BE IMPACTED. AND YOUR EYES ARE FIRM. SO DID YOUR TRAVEL CHANGE? I HAVE IT AS THE 28TH.

**PROSPECTIVE JUROR:** MY NONREFUNDABLE AIRLINE TICKET IS THE 28TH, THAT'S CORRECT. THERE IS OTHER TRAVEL THAT I HAD PLANNED BEFORE THAT THAT DIDN'T INVOLVE NONREFUNDABLE STUFF. SO THAT DIDN'T GET LISTED.

**THE COURT:** OKAY. YEAH, YOU DIDN'T TELL ME ABOUT IT. SO GO AHEAD AND TELL ME ABOUT IT.

**PROSPECTIVE JUROR:** OH, I'M SCHEDULED TO HELP MY SON MOVE FROM SOUTHERN CALIFORNIA TO PORTLAND HERE IN THE NEXT WEEK AND A HALF.

**THE COURT:** OKAY.

**PROSPECTIVE JUROR:** AND I'M NOT SURE WHETHER I'M GOING TO BE DRIVING, WHAT VEHICLE, OR WHAT U-HAUL TRAILER OR U-HAUL TRUCK OR WHATEVER. BUT THAT MOVE IS GOING TO HAPPEN, AND I DON'T KNOW THE EXACT DATE. BUT ANYWAY, THAT'S THE OTHER TRAVEL I'VE GOT PLANNED.

**THE COURT:** OKAY. SO -- AND YOUR PLAN WAS TO FLY TO SOUTHERN CALIFORNIA AND THEN DRIVE TO PORTLAND?

**PROSPECTIVE JUROR:** THAT'S CORRECT. OR MAYBE DRIVE TO SOUTHERN CALIFORNIA AND PULL A TRAILER TO OREGON.

**THE COURT:** OKAY. AND IF YOU'RE SEATED AS A JUROR, CAN THAT HAPPEN AT THE END OF THE MONTH?

**PROSPECTIVE JUROR:** NO, BECAUSE I'LL BE IN -- ON THE 28TH I LEAVE FOR DENVER FOR A FEW DAYS SO...

**THE COURT:** OKAY.

**PROSPECTIVE JUROR:** I THINK THAT -- IF I CAN CUT TO THE CHASE HERE, I THINK THE BIGGER ISSUE WITH ME IS I'M NOT SURE IF I CAN GET PAST THE AVID BIASES I HAVE. I'M AN AVID NEWS JUNKIE, MY WIFE CALLS ME. I STARTED READING THE NEWSPAPER IN ENGLISH CLASS IN HIGH SCHOOL. I'VE SUBSCRIBED TO A

NEWSPAPER EVER SINCE. I'M ONE OF THE DYING BREEDS.

I SUBSCRIBE TO THREE NEWSPAPERS, AND IN THE COURSE OF READING THOSE NEWSPAPERS, I TEND TO DEVELOP OPINIONS ON POLITICAL MATTERS AND OTHER ISSUES THAT CONCERN -- AND I DO HAVE SOME STRONG FEELINGS WITH REGARD TO ELON AND JUST HOW HE DOES THINGS AND SO FORTH.

**THE COURT:** OKAY. AND EVEN THOUGH YOU SAY YOU TRUST SOME OF THESE SOURCES AND DON'T TRUST OTHERS, HAVE YOU NEVER WANTED TO BE IN A FRONT SEAT AND MAKE A DECISION AND BE PART OF A DECISION-MAKING PROCESS YOUR OWN AS OPPOSED TO READING SOME OTHER PEOPLE'S VIEWS OF THINGS?

**PROSPECTIVE JUROR:** YEAH, I DON'T MIND BEING PART OF THE DECISION-MAKING PROCESS. BUT I'VE BEEN IN -- NOT TO DISPARAGE SOME OF THE COUNSEL HERE TODAY, BUT I'VE SEEN HOW IN MY JOB I WAS -- I WORKED FOR A CONSTRUCTION COMPANY THAT WAS INVOLVED IN A CIVIL MATTER AND DID NOT GO OUR WAY, AND TO THIS DAY I FELT THAT WE GOT CHEATED.

WE WERE PORTRAYED AS THE CHEATER, AND IT WAS THE OTHER WAY AROUND. AND I FELT THAT WE -- THE LONG AND THE SHORT OF IT IS THAT WE GOT OUTLAWYERED, AND THE FACTS OF THE MATTER REALLY DIDN'T COME INTO PLAY, YOU KNOW, IN A MANNER THAT COULD HAVE BEEN BETTER REPRESENTED FOR US.

**THE COURT:** WELL, I CAN ASSURE YOU THAT THIS CALIBER OF LAWYERS HERE, THEY'RE ALL AT THE SAME PLAYING FIELD. NO ONE IS OUTLAWYERING SOMEONE ELSE.

AGAIN, I THINK THAT COMES BACK TO THIS ISSUE OF, YOU KNOW, WHETHER YOU CAN -- WHETHER YOU ARE THE KIND OF PERSON THAT CAN PLAY A PART AS OPPOSED TO JUST BEING THE KIND OF PERSON THAT OBSERVES.

**PROSPECTIVE JUROR:** YES, I COULD PLAY A PART. BUT, AGAIN, I DO HAVE SOME STRONG OPINIONS ON --

**THE COURT:** WHAT IS YOUR STRONGEST OPINION?

**PROSPECTIVE JUROR:** MY STRONGEST OPINION IS THAT ELON DOESN'T CARE ABOUT PEOPLE, MUCH LIKE OUR PRESIDENT. HE PROBABLY CARES MORE ABOUT MONEY AND HIS CUTS WITH THOSE GOING THROUGH AGENCIES, CUTTING OUT AGENCIES AND PEOPLE AND SO FORTH, ONLY LOOKING AT DOLLARS AND NOT REALLY KNOWING WHAT THOSE PEOPLE DID OR WHAT THE AGENCY DID KIND OF SHOWED THAT, YOU KNOW, NOTHING ELSE MATTERED.

**THE COURT:** ALL RIGHT. AND FROM YOUR QUESTIONNAIRE, IT DOESN'T SOUND LIKE YOU KNOW MUCH OF ANYTHING ABOUT MR. ALTMAN OR MR. BROCKMAN?

**PROSPECTIVE JUROR:** I KNOW GENERALLY WHO THEY ARE, AND THEY DO POP UP, OBVIOUSLY, IN STUFF THAT I READ. BUT ELON IS OUT THERE MORE, I THINK. SO I TEND TO OBSERVE AND READ MORE ABOUT HIM.

**THE COURT:** GREAT. ALL RIGHT. LET'S GO AHEAD AND PASS IT. THANK YOU.

OKAY. CARDENAS?

**PROSPECTIVE JUROR:** YES.

**THE COURT:** SO YOU SAY THAT YOU WORK PART-TIME.

**PROSPECTIVE JUROR:** YES. CORRECT.

THE COURT: AND WHO DO YOU WORK FOR?

**PROSPECTIVE JUROR:** FOR PERSONAL PEOPLE. THEY ARE RETIRED ALREADY, AND THEY ASSIGN ME TO WORK FOR THEM FOR 23 YEARS ALREADY. AND NOW THEY DECIDED TO PUT ME ONLY AT PART-TIME ONLY FOR THE MOST NECESSARY THINGS THAT THEY NEED DURING THE WEEK. SO I COOK FOR THEM AND ALL OF THE SHOPPING AND I TAKE CARE OF THEM.

**THE COURT:** OKAY. AND DO YOU SPEAK ENGLISH TO THEM?

**PROSPECTIVE JUROR:** YES.

**THE COURT:** YOU WERE BORN IN MEXICO. WHEN DID YOU COME TO THE UNITED STATES?

**PROSPECTIVE JUROR:** 1992.

**THE COURT:** ALL RIGHT. SO YOU'VE BEEN IN THE UNITED STATES FOR --

**PROSPECTIVE JUROR:** 30 YEARS.

**THE COURT:** -- OVER 30 YEARS?

**PROSPECTIVE JUROR:** YES.

**THE COURT:** AND YOU SPEAK ENGLISH?

**PROSPECTIVE JUROR:** YES.

**THE COURT:** YOU RAISED YOUR HAND WHEN YOU SAID YOU WEREN'T UNDERSTANDING THINGS.

**PROSPECTIVE JUROR:** EXCUSE ME?

**THE COURT:** DID YOU GO TO HIGH SCHOOL IN THE

UNITED STATES?

OH, NOT YOU. SO YOU DIDN'T RAISE YOUR HAND?

**PROSPECTIVE JUROR:** NO.

**THE COURT:** OKAY. THANK YOU. IT WAS THE NEXT TWO.

ALL RIGHT. IN TERMS OF THE SCHEDULE THAT I MENTIONED, ANY CONCERNS ABOUT BEING ABLE TO KEEP DOING THE WORK FOR YOUR EMPLOYERS?

**PROSPECTIVE JUROR:** NO.

**THE COURT:** OKAY. AND IT LOOKED LIKE -- IT LOOKED LIKE YOU DIDN'T HAVE ANY PROBLEMS WITH ANY OF THE PARTIES?

**PROSPECTIVE JUROR:** NO.

**THE COURT:** OKAY.

**PROSPECTIVE JUROR:** THAT'S THEIR PROBLEMS.

**THE COURT:** THAT'S THEIR PROBLEM?

**PROSPECTIVE JUROR:** YES.

**THE COURT:** OKAY. YES. IT ACTUALLY IS THEIR PROBLEM.

DO YOU HAVE ANY CONCERNS ABOUT SERVING?

**PROSPECTIVE JUROR:** NO.

**THE COURT:** OKAY. AND YOU'VE NOT SERVED BEFORE; RIGHT?

**PROSPECTIVE JUROR:** NEVER. THIS IS MY FIRST TIME.

**THE COURT:** PERFECT. PASS THE MIC.

OKAY. LAST NAME IS CARTER?

**PROSPECTIVE JUROR:** THAT'S CORRECT, YOUR HONOR.

**THE COURT:** OKAY. WHEN DID YOU COME FROM THE PHILIPPINES?

**PROSPECTIVE JUROR:** 1984.

**THE COURT:** A LITTLE BIT CLOSER.

**PROSPECTIVE JUROR:** 1984.

**THE COURT:** 1984. SO YOU'VE BEEN HERE QUITE A WHILE?

**PROSPECTIVE JUROR:** YES, YOUR HONOR.

**THE COURT:** AND WHY DID YOU RAISE YOUR HAND WHEN I ASKED ABOUT --

**PROSPECTIVE JUROR:** I DON'T SPEAK ENGLISH FLUENTLY.

**THE COURT:** SO YOU'RE WORKING AS A NURSE'S ASSISTANT?

**PROSPECTIVE JUROR:** YES, AT THE DEPARTMENT OF CORRECTIONS.

**THE COURT:** OKAY. AND IN YOUR JOB AT THE DEPARTMENT OF CORRECTIONS FOR ABOUT 20 YEARS, DON'T YOU USE ENGLISH.

**PROSPECTIVE JUROR:** I DO. YES.

**THE COURT:** YOU DO, YOU USE ENGLISH?

**PROSPECTIVE JUROR:** YES.

**THE COURT:** SO EXPLAIN TO ME WHAT YOUR JOB IS.

**PROSPECTIVE JUROR:** I DO PATIENT CARE IN THE HOSPITAL AT THE DEPARTMENT OF CORRECTIONS.

**THE COURT:** OKAY. AND DO YOU USE ENGLISH EIGHT HOURS A DAY?

**PROSPECTIVE JUROR:** YES, YOUR HONOR.

**THE COURT:** OKAY. SO WHEN DID YOU GET -- AT WHAT

POINT WERE YOU GETTING A LITTLE BIT CONFUSED IN TERMS OF WHAT I WAS SAYING?

**PROSPECTIVE JUROR:** THE WAY YOU'VE EXPLAINED SOMETIMES, I CAN'T REALLY CATCH THE ENGLISH WORDS.

**THE COURT:** DID YOU HAVE TO HAVE TRAINING TO BE A NURSING ASSISTANT?

**PROSPECTIVE JUROR:** YES, I HAVE A CERTIFICATE HERE.

**THE COURT:** OKAY. AND THAT WAS IN ENGLISH?

**PROSPECTIVE JUROR:** YES.

**THE COURT:** THE DEPARTMENT OF CORRECTIONS, THEY PAY YOU FOR JURY SERVICE; RIGHT?

**PROSPECTIVE JUROR:** OH, I DON'T KNOW ANYTHING ABOUT THAT.

**THE COURT:** YOU DIDN'T ASK?

**PROSPECTIVE JUROR:** NO.

**THE COURT:** IT LOOKS LIKE YOU DON'T HAVE ANY STRONG OPINIONS ABOUT ANY OF -- ABOUT MR. MUSK OR MR. ALTMAN; IS THAT CORRECT?

**PROSPECTIVE JUROR:** ALL I KNOW IS THAT MR. ELON MUSK IS THE RICHEST MAN IN THE WORLD, AND I DON'T KNOW WHAT HE DO OR HIS PROJECT OR ANYTHING POLITICS, I DON'T KNOW ANYTHING ABOUT IT.

**THE COURT:** OKAY. SO YOU'RE KIND OF A BLANK SLATE?

**PROSPECTIVE JUROR:** YES, YOUR HONOR.

**THE COURT:** AND THEN DO YOU USE AI IN YOUR JOB?

**PROSPECTIVE JUROR:** NO, WE DON'T, AND I DON'T EVEN KNOW. I COULDN'T TELL IF IT'S AI OR NOT. THEY'RE LIKE -- THEY LOOK REAL.

**THE COURT:** OKAY. ARE THERE TIMES IN YOUR JOB WHEN YOU'RE TREATING PRISONERS WHERE YOU HAVE TO DECIDE WHETHER OR NOT THEY'RE TELLING YOU THE TRUTH?

**PROSPECTIVE JUROR:** I'M SORRY. WHAT IS THE QUESTION AGAIN?

**THE COURT:** YEAH. WHEN SOMEONE COMES TO YOU AND COMPLAINS ABOUT SOMETHING -- WELL, LET ME ASK YOU, WHAT KIND OF SERVICE DO YOU GIVE THE PRISONERS?

**PROSPECTIVE JUROR:** I DO PATIENT CARE; ACTIVITY OF DAILY LIVING. I ASSIST THEM FOR TOILETING, FEEDING AND DRESSING AND WORK WITH A LICENSED NURSE.

**THE COURT:** OKAY. SO YOU HELP THE LICENSED NURSE?

**PROSPECTIVE JUROR:** YES.

**THE COURT:** AND HAVE YOU ALWAYS HAD THAT JOB AT THE CDCR?

**PROSPECTIVE JUROR:** YES.

**THE COURT:** WHAT CONCERNS, IF ANY, DO YOU HAVE ABOUT SERVING?

**PROSPECTIVE JUROR:** ABOUT THE FINANCIAL HARDSHIP, BECAUSE I STILL WORK FULL TIME.

**THE COURT:** RIGHT. BUT I -- IT WOULD BE ODD TO ME THAT THE CALIFORNIA DEPARTMENT DIDN'T PAY YOU WHILE YOU WERE

HERE. IT'S A GOVERNMENT ENTITY.

**PROSPECTIVE JUROR:** I DON'T KNOW, BUT I HAVE TO SUBMIT MY JURY SUMMONS TO THEM.

**THE COURT:** RIGHT.

**PROSPECTIVE JUROR:** AND I'M NOT SURE ABOUT HOW THEY PAY, BUT I CAN ASK.

**THE COURT:** OKAY. AND IF THEY COULD PAY YOU, THEN THERE WOULDN'T BE A FINANCIAL HARDSHIP; RIGHT?

**PROSPECTIVE JUROR:** I LIVE WITH OVERTIME, YOUR HONOR, BECAUSE I HAVE BILLS.

**THE COURT:** OKAY.

**PROSPECTIVE JUROR:** AND WE ALWAYS GET MANDATED AT WORK, TOO.

**THE COURT:** SAY THAT AGAIN?

**PROSPECTIVE JUROR:** WE WORK ALMOST 16 HOURS A DAY BECAUSE OF STAFF SHORTAGE.

**THE COURT:** OKAY. SO WHAT IS YOUR TYPICAL DAY?

**PROSPECTIVE JUROR:** I WORK ALMOST SEVEN DAYS, EVERY DAY, 16 HOURS.

**THE COURT:** SO YOU COULD THEN WORK ON DAYS WHEN WE WEREN'T HERE? THAT IS, YOU COULD DO -- IT WOULDN'T OBVIOUSLY BE EVERYTHING, BUT YOU COULD DO SOME WORK?

**PROSPECTIVE JUROR:** YES, BUT I WOULDN'T BE ABLE TO AFFORD TO TAKE SOME TIME OFF BECAUSE I LIVE ON MY OVERTIME ALMOST EVERY DAY.

**THE COURT:** ALL RIGHT. LET'S GO AHEAD AND PASS. THANK YOU.

LAST NAME IS CHU; IS THAT CORRECT?

**PROSPECTIVE JUROR:** YES.

**THE COURT:** AND WHEN DID YOU COME FROM HONG KONG?

**PROSPECTIVE JUROR:** YES, FROM HONG KONG.

**THE COURT:** WHEN DID YOU COME HERE?

**PROSPECTIVE JUROR:** 1980.

**THE COURT:** 19?

**PROSPECTIVE JUROR:** '80.

**THE COURT:** '80. SO, AGAIN, YOU'VE BEEN HERE FOR QUITE A SIGNIFICANT PERIOD OF TIME; RIGHT?

**PROSPECTIVE JUROR:** YES.

**THE COURT:** AND YOU WORKED FOR THE CITY AND COUNTY OF SAN FRANCISCO?

**PROSPECTIVE JUROR:** YES.

**THE COURT:** DOING WHAT?

**PROSPECTIVE JUROR:** CLERICAL JOB.

**THE COURT:** MORE SPECIFICALLY, WHAT DID YOU DO?

**PROSPECTIVE JUROR:** INVENTORY.

**THE COURT:** AND IN TERMS OF INVENTORY, WHAT WOULD YOU INVENTORY?

**PROSPECTIVE JUROR:** MEDICAL SUPPLY AND INPUT INFORMATION IN THE COMPUTER.

**THE COURT:** OKAY. AND WAS ALL OF THAT DONE IN

ENGLISH?

**PROSPECTIVE JUROR:** HUH?

**THE COURT:** WAS IT ALL DONE IN ENGLISH?

**PROSPECTIVE JUROR:** YEAH.

**THE COURT:** SO FOR HOW LONG DID YOU DO YOUR JOB IN ENGLISH?

**PROSPECTIVE JUROR:** TWENTY-SEVEN.

**THE COURT:** TWENTY-SEVEN YEARS?

**PROSPECTIVE JUROR:** TWENTY-SEVEN.

**THE COURT:** OKAY. AND DID YOU SPEAK TO YOUR COWORKERS IN ENGLISH?

**PROSPECTIVE JUROR:** YES.

**THE COURT:** DID YOU EVER HAVE TO MANAGE ANYBODY?

**PROSPECTIVE JUROR:** NO.

**THE COURT:** OKAY. HOW MANY PEOPLE DID YOU WORK WITH?

**PROSPECTIVE JUROR:** IT'S ONLY ME IS DOING THE WHOLE FULL INVENTORY.

**THE COURT:** WHAT ARE YOU DOING NOW IN YOUR RETIREMENT?

**PROSPECTIVE JUROR:** I'M RETIRED.

**THE COURT:** I KNOW. ARE YOU DOING ANYTHING IN PARTICULAR FOR YOUR RETIREMENT?

**PROSPECTIVE JUROR:** YES.

**THE COURT:** AND HOW DO YOU SPEND YOUR DAYS?

**PROSPECTIVE JUROR:** WHAT?

10:12:20 **THE COURT:** HOW -- WHAT DO YOU DO ON A DAILY BASIS?

10:12:23 **PROSPECTIVE JUROR:** RIGHT NOW?

10:12:24 **THE COURT:** YES.

10:12:30 **PROSPECTIVE JUROR:** I'M DOING EXERCISE AND WATCHING
10:12:32 T.V. THAT'S IT.

10:12:32 **THE COURT:** OKAY. SO INSTEAD OF WATCHING T.V., YOU
10:12:41 CAN COME HERE AND WATCH WITNESSES; RIGHT?

10:12:43 **PROSPECTIVE JUROR:** YEAH.

10:12:50 **THE COURT:** ALL RIGHT. ANYTHING ELSE YOU WANT ME OR
10:12:52 THE PARTIES TO THINK ABOUT IN TERMS OF YOUR SERVICE?

10:12:55 **PROSPECTIVE JUROR:** NO. I HAVE LIMITED ENGLISH TO
10:13:01 UNDERSTAND HIGH TECHNOLOGY.

10:13:05 **THE COURT:** WELL, THIS ISN'T A TECHNICAL CASE; THAT
10:13:08 IS, IT'S -- WE DO PATENT CASES. I TOTALLY UNDERSTAND. A
10:13:16 PATENT CASE IS VERY TECHNICAL. PROBABLY ONE OF MY TOUGHEST
10:13:20 CASES WAS OVER THE ARCHITECTURE OF A SEMICONDUCTOR CHIP. THAT
10:13:24 WAS A TOUGH CASE.

10:13:26 THIS IS JUST A CASE ABOUT PROMISES AND BREACHES OF
10:13:30 PROMISES. SO IT'S VERY -- IT WON'T GET TECHNICAL IN THAT WAY
10:13:38 AT ALL.

10:13:39 OTHER CONCERNS?

10:13:43 **PROSPECTIVE JUROR:** YEAH, BUT I THINK I'M NOT TOTALLY
10:13:46 UNDERSTANDING. MAYBE ONLY 70 AND 80 PERCENT.

10:14:00 **THE COURT:** ALL RIGHT. I WILL THINK ABOUT THAT.
10:14:01 THANK YOU.

ALL RIGHT. NEXT I THINK I HAVE FRIHART?

**PROSPECTIVE JUROR:** YES.

**THE COURT:** DID I SAY THAT PROPERLY?

**PROSPECTIVE JUROR:** FRIHART.

**THE COURT:** FRIHART. ALL RIGHT.

DO YOU COMMUTE TO STANFORD?

**PROSPECTIVE JUROR:** CORRECT.

**THE COURT:** SO BEING HERE WOULD ACTUALLY BE LESS OF A COMMUTE FOR YOU?

**PROSPECTIVE JUROR:** YES.

**THE COURT:** AND DOES STANFORD PAY YOU FOR JURY SERVICE?

**PROSPECTIVE JUROR:** I'M NOT 100 PERCENT SURE. I'M NOT SURE IF I HAVE TO USE MY PTO OR IF THEY JUST COVER IT.

**THE COURT:** SO IT DOESN'T LOOK LIKE YOU HAVE STRONG OPINIONS ONE WAY OR THE OTHER AGAINST THE PARTIES; IS THAT RIGHT?

**PROSPECTIVE JUROR:** I DON'T THINK MORE THAN ANYBODY ELSE.

**THE COURT:** OKAY. AND TO THE EXTENT THAT THERE IS ANYTHING THERE, DO YOU THINK THAT YOU COULD PUT THAT ASIDE AND FOCUS HERE JUST ON WHAT'S PRESENTED IN THE COURTROOM?

**PROSPECTIVE JUROR:** YES, I BELIEVE I COULD.

THE COURT: HAVE YOU EVER WORKED IN TEAMS BEFORE?

**PROSPECTIVE JUROR:** THE APPLICATION?

10:15:38 **THE COURT:** NO, MICROSOFT WAS HAPPY THAT YOU ASKED THAT QUESTION. I MEANT IN THE TRADITIONAL SENSE OF WORKING IN A TEAM ENVIRONMENT.

10:15:49 **PROSPECTIVE JUROR:** YES, MY WORK IS ENTIRELY IN A TEAM ENVIRONMENT.

10:15:53 **THE COURT:** OKAY. WOULD YOU DESCRIBE YOURSELF AS SOMEONE WHO CAN GET ALONG AND BE EFFECTIVE IN DECISION-MAKING PROCESSES IN GROUPS?

10:16:08 **PROSPECTIVE JUROR:** YES.

10:16:09 **THE COURT:** AND WHAT DO YOU DO AS A NURSE SPECIALIST?

10:16:12 **PROSPECTIVE JUROR:** SO MY SPECIALTY IS PSYCHIATRY ON CENTER RESOURCE TO THE HOSPITAL ON NURSING PRACTICE AND HOW TO BEST CARE FOR PATIENTS WITH MENTAL HEALTH CONDITIONS.

10:16:21 **THE COURT:** OKAY. AND HOW LONG HAVE YOU BEEN IN THAT FIELD?

10:16:28 **PROSPECTIVE JUROR:** SEVEN YEARS.

10:16:32 **THE COURT:** SO YOU WENT STRAIGHT THERE AFTER SCHOOL, TO STANFORD?

10:16:35 **PROSPECTIVE JUROR:** NO. I DID HAVE OTHER JOBS WHERE I WAS, LIKE, A CLINICAL NURSE SPECIALIST.

10:16:42 **THE COURT:** DO YOU HAVE ANY CONCERNS ABOUT AI AND ITS USE IN THE WORKPLACE?

10:16:47 **PROSPECTIVE JUROR:** SIMILAR TO WHAT OTHER PEOPLE HAVE SAID, THAT I PERSONALLY DON'T USE IT MUCH, BECAUSE I FIND THAT I DO HAVE TO, YOU KNOW, DOUBLE CHECK EVERYTHING, SO AT THIS

10:16:59 POINT I WOULD RATHER JUST DO IT MYSELF.

10:17:01 **THE COURT:** YES. OKAY.

10:17:02 DO YOU HAVE ANY CONCERNS ABOUT SERVING?

10:17:04 **PROSPECTIVE JUROR:** NO.

10:17:05 **THE COURT:** ALL RIGHT. GREAT. LET'S GO AHEAD AND 10:17:07 PASS IT.

10:17:08 I BELIEVE THE LAST NAME IS HAN; IS THAT RIGHT?

10:17:13 **PROSPECTIVE JUROR:** YES, CORRECT.

10:17:14 **THE COURT:** GOOD MORNING.

10:17:15 **PROSPECTIVE JUROR:** GOOD MORNING.

10:17:34 **THE COURT:** IN TERMS OF YOUR QUESTIONNAIRE, WHEN DID 10:17:35 YOU COME FROM CHINA?

10:17:38 **PROSPECTIVE JUROR:** I CAME TO THE STATES IN 2007.

10:17:41 **THE COURT:** OKAY. AND WHAT DOES KLA STAND FOR AND 10:17:48 WHAT DOES IT DO?

10:17:50 **PROSPECTIVE JUROR:** KLA IS THE FULL NAME OF MY 10:17:56 COMPANY, AND SO THEY'RE SAYING -- IT'S KEEP LOOKING AHEAD. BUT 10:17:59 IT'S THE FULL NAME OF THE COMPANY. IT'S A YIELD MANAGEMENT 10:18:08 COMPANY. SO WE DO, WE INSPECT DEFECTS IN THE WAFERS WHEN THEY 10:18:20 MAKE WAFERS, LIKE DATA ENTRY -- THE DEFECT IN THE WAFER 10:18:20 PRODUCTION, IN THE SEMICONDUCTOR PRODUCTION.

10:18:25 **THE COURT:** YOU WOULD HAVE LIKED TO HAVE BEEN ON MY 10:18:28 PATENT CASE THEN. I SAID THE EXACT CASE WHERE I HAD IT OVER 10:18:33 THE ARCHITECTURE OF THE SEMICONDUCTOR CHIP, YOU WOULD HAVE 10:18:36 LIKED THAT. AND THEY PROBABLY WOULD HAVE KICKED YOU OFF

BECAUSE YOU PROBABLY KNOW TOO MUCH.

**PROSPECTIVE JUROR:** I'M ON THE OPPOSITE SIDE. I'M DOING OPTICAL DESIGN.

**THE COURT:** YOU'RE IN DESIGN?

**PROSPECTIVE JUROR:** OPTICAL DESIGN.

**THE COURT:** OKAY.

**MR. MOLO:** WE DESIGN OPTICS TO IMAGE AND TO VERIFY DETECTION.

**THE COURT:** HOW MANY PEOPLE -- AND WHEN I ASK YOU IF YOU WORK ON A TEAM, I'M NOT TALKING ABOUT MICROSOFT, OKAY?

HOW ABOUT YOU, DO YOU WORK IN TEAMS?

**PROSPECTIVE JUROR:** I MANAGE A SMALL TEAM OF FOUR PEOPLE, FOUR ENGINEERS.

**THE COURT:** AND WHAT SPECIFIC EXPERTISE IN TERMS OF ENGINEERING DO YOU HAVE? THAT IS, WHAT KIND OF ENGINEERING DO YOU DO SPECIFICALLY?

**PROSPECTIVE JUROR:** OPTICAL ENGINEERING.

**THE COURT:** OKAY. AND THERE'S ACTUALLY A DEGREE IN ELECTRO-OPTICS?

**PROSPECTIVE JUROR:** OH, YEAH, IT'S ELECTRO-OPTICS.

**THE COURT:** ALL RIGHT. SO YOU'VE GOT SOME -- WELL, YOU SAID YOU DON'T HAVE A STRONG OPINION.

TELL ME WHAT YOUR THOUGHTS ARE ABOUT MR. MUSK. IT LOOKS LIKE YOU THINK THE TECHNOLOGY IS INTERESTING AS, YOU KNOW, ENGINEERS SOMETIMES DO.

DO YOU THINK -- DO YOU HAVE -- IS THERE ANYTHING WHERE YOU MIGHT HOLD ANYTHING AGAINST MR. MUSK IN HIS CASE BECAUSE OF SOMETHING HE'S DONE OUTSIDE OF THIS COURTROOM?

**PROSPECTIVE JUROR:** I DON'T HAVE A VERY STRONG OPINIONS LIKE EVERYBODY ELSE. AND I HAVE A MODEL Y MYSELF. BUT, YEAH, YOU KNOW, HE HAS BEEN INVOLVED IN A LOT OF POLITICAL SIDE OF THINGS, RIGHT?

**THE COURT:** OKAY. SO I THINK --

**PROSPECTIVE JUROR:** BUT I DON'T THINK I HAVE A VERY STRONG OPINION.

**THE COURT:** OKAY. DO YOU THINK YOU COULD TREAT HIM FAIRLY IN THIS CASE?

**PROSPECTIVE JUROR:** I THINK SO.

**THE COURT:** AND YOU CAN KEEP AN OPEN MIND?

**PROSPECTIVE JUROR:** YEAH.

**THE COURT:** IN TERMS OF THE DEFENDANTS, YOU DIDN'T MENTION IT. SO I'M ASSUMING YOU DON'T HAVE ANY HARD OR STRONG FEELINGS ABOUT ANY OF THE DEFENDANTS; IS THAT RIGHT?

**PROSPECTIVE JUROR:** NO. CORRECT.

**THE COURT:** I AM CORRECT?

**PROSPECTIVE JUROR:** YEAH.

**THE COURT:** ANY CONCERNS ABOUT SERVING?

**PROSPECTIVE JUROR:** I -- WELL, I HAVE TWO KIDS. I HAVE A FOUR-YEAR-OLD AND A TEN-YEAR-OLD. SO IT'S ONLY ME AND MY WIFE. WE HAVE NO OTHER HELP. BUT OTHER THAN THAT, I THINK

MY COMPANY PAYS TEN DAYS FOR JURY DUTY, YEAH.

**THE COURT:** OKAY.

**PROSPECTIVE JUROR:** YEAH, OTHER THAN THOSE, I THINK I DON'T HAVE ANY OTHER SITUATION.

**THE COURT:** AND YOUR WIFE IS AN ENGINEER AS WELL?

**PROSPECTIVE JUROR:** YES, SHE IS.

**THE COURT:** AND DOES SHE WORK FROM HOME OR DOES SHE GO INTO THE OFFICE?

**PROSPECTIVE JUROR:** SHE GOES INTO THE OFFICE. WE BOTH GO INTO THE OFFICE FIVE DAYS A WEEK.

**THE COURT:** OKAY. ALL RIGHT. THANK YOU VERY MUCH.

LET'S GO AHEAD. AND YOUR LAST NAME IS HAWKEY?

**PROSPECTIVE JUROR:** YES.

**THE COURT:** DID I SAY THAT RIGHT?

**PROSPECTIVE JUROR:** YOU DID.

**THE COURT:** GOOD MORNING.

**PROSPECTIVE JUROR:** GOOD MORNING.

**THE COURT:** ALL RIGHT. LOOKING AT YOUR QUESTIONNAIRE. LET ME ASK THIS IN TERMS OF SOME OF THE THINGS YOU DIDN'T WANT TO SAY ON YOUR QUESTIONNAIRE. THE REASON THAT I REQUEST THESE THE QUESTIONS IS TO MAKE SURE THAT NO ONE HAS CONFLICTS.

ARE ALL OF YOUR CHILDREN MINORS, OR DO YOU HAVE MINOR CHILDREN?

**PROSPECTIVE JUROR:** I DO, YEAH. I HAVE A TWO AND A

10:22:42 FIVE-YEAR-OLD.

10:22:43 **THE COURT:** ANY OLDER CHILDREN THAT MIGHT WORK AND
10:22:46 NONE OF THEM WORK FOR THE DEFENDANTS?

10:22:48 **PROSPECTIVE JUROR:** NO, I DON'T THINK SO. I HOPE
10:22:50 NOT.

10:22:50 **THE COURT:** OKAY. IN TERMS OF THE TOPICS THAT WE'VE
10:23:02 REALLY BEEN TALKING ABOUT, AS YOU CAN TELL, SOME PEOPLE HAVE
10:23:06 STRONG FEELINGS AGAINST MR. MUSK, AGAIN ARTIFICIAL
10:23:13 INTELLIGENCE, THOSE KINDS OF THINGS.

10:23:14 DO YOU HAVE ANY CONCERNS ABOUT THOSE ISSUES?

10:23:18 **PROSPECTIVE JUROR:** I DON'T. WHAT WAS THE QUESTION
10:23:23 SPECIFICALLY?

10:23:24 **THE COURT:** DO YOU HAVE ANY CONCERNS ABOUT BEING ABLE
10:23:26 TO TREAT MR. MUSK FAIRLY?

10:23:35 **PROSPECTIVE JUROR:** I DON'T. I HAVE QUESTIONS ABOUT
10:23:37 THE POLITICAL STUFF, BUT I THINK OVERALL, NO.

10:23:40 **THE COURT:** AND HOW ABOUT THE DEFENDANTS? WE HAVE
10:23:42 OPENAI OR MR. ALTMAN OR MICROSOFT. DO YOU HAVE ANY CONCERNS
10:23:44 ABOUT BEING ABLE TO TREAT THEM FAIRLY?

10:23:47 **PROSPECTIVE JUROR:** NO.

10:23:47 **THE COURT:** DO YOU HAVE ANY CONCERNS ABOUT THE TOPIC,
10:23:54 WHICH HERE WILL BE THE CREATION OF AN ARTIFICIAL INTELLIGENCE
10:24:04 COMPANY? DO YOU HAVE ANY CONCERNS ABOUT THAT TOPIC?

10:24:07 **PROSPECTIVE JUROR:** NO.

10:24:10 **THE COURT:** DO YOU HAVE ANYTHING YOU WOULD LIKE ME TO

THINK ABOUT IN TERMS OF YOU BEING ABLE TO SERVE ON THE JURY?

**PROSPECTIVE JUROR:** THE WAY YOU DESCRIBED THE HARDSHIP, INITIALLY I THOUGHT I WOULD SAY YES, I HAVE A HARDSHIP, BUT NO.

YOU KNOW, I WORK FOR HOME, AND I THINK I CAN USE MY PTO TO GET PAID. EXCUSE ME. I DO DO THE SCHOOL RUNS FOR THE KIDS. I CAN PROBABLY GET SOME HELP DOING THAT.

SO, PER YOUR DEFINITION, NO.

**THE COURT:** OKAY. WELL, I APPRECIATE THAT. THAT'S ONE OF THE REASONS THAT I ASK THAT QUESTION.

OKAY. LET'S GO AHEAD AND PASS IT DOWN.

I ALWAYS HAVE A PROBLEM. HOW DO I SAY IT? IS IT KOCH?

**PROSPECTIVE JUROR:** YOU CAN SAY KOCH.

**THE COURT:** THAT'S HOW YOU WOULD SAY IT?

**PROSPECTIVE JUROR:** UH-HUH.

**THE COURT:** OKAY. SO I CAN APPRECIATE WHAT YOU'RE DOING IN YOUR PH.D. WHAT I COULDN'T TELL -- YOU KNOW, THESE QUESTIONNAIRES ARE JUST THERE TO GET SOME BASIC INFORMATION.

OKAY. NOW THAT I HAVE EXPLAINED HOW OUR DAY ACTUALLY WORKS, ARE YOU ABLE TO GO AND MANAGE YOUR SPECIMENS AFTER THE DAY STARTS AND BEFORE THE DAY STARTS? IS THERE A WAY THAT YOU CAN BALANCE THAT IN TERMS OF YOUR RESEARCH?

**PROSPECTIVE JUROR:** MY JOB IS IN NOVATO, SO IT WOULD BE DIFFICULT TO COMMUTE HERE AND THEN COMMUTE THERE EVERY DAY. SO I THINK THAT WOULD STILL BE DIFFICULT.

10:26:04 **THE COURT:** AND YOU LIVE THOUGH IN SAN FRANCISCO?

10:26:11 **PROSPECTIVE JUROR:** YES.

10:26:11 **THE COURT:** SO DON'T YOU PASS BY OAKLAND ON YOUR WAY TO NOVATO?

10:26:15 **PROSPECTIVE JUROR:** NO, I TAKE THE GOLDEN GATE BRIDGE.

10:26:18 **THE COURT:** ALL RIGHT. BUT IF YOU CAME HERE AND THEN WENT TO NOVATO AND THEN HOME, ISN'T THAT KIND OF -- IT'S INCONVENIENT, I UNDERSTAND, BUT IT IS SOMEWHAT ON THE WAY.

10:26:28 **PROSPECTIVE JUROR:** SURE.

10:26:35 **THE COURT:** IN TERMS OF WHEN YOU HAVE TO BE THERE TO MAKE SURE THAT THE EXPERIMENTS CONTINUE, IF YOU GOT THERE IN THE AFTERNOON, YOU KNOW, COULD YOU STILL DO IT IN THE AFTERNOON, EARLY EVENING SO THAT YOU DIDN'T LOSE ALL OF YOUR WORK?

10:26:49 **PROSPECTIVE JUROR:** I WOULD BE ABLE TO MAINTAIN THE STRAINS THAT I CURRENTLY HAVE GROWING, BUT I WOULDN'T BE ABLE TO DO ANY EXPERIMENTS IN THE ALLOTTED TIME. SO IT WOULD BE LIKE A MONTH OF NOT DOING ANY EXPERIMENTAL WORK.

10:27:01 **THE COURT:** OKAY. BUT YOU WOULDN'T LOSE YOUR WORK. YOU COULD MAINTAIN IT?

10:27:04 **PROSPECTIVE JUROR:** I COULD MAINTAIN IT, YES.

10:27:07 **THE COURT:** SO I UNDERSTAND THAT'S AN ISSUE FOR YOU, BUT I WANTED TO EXPLORE THAT A LITTLE BIT MORE THAN WE COULD IN THE QUESTIONNAIRE.

**PROSPECTIVE JUROR:** UH-HUH.

**THE COURT:** ALL RIGHT. HOW ABOUT IN TERMS OF -- WELL, YOU'RE SOMEONE WHO SEEMS TO USE AI AND IT'S HELPFUL AS OPPOSED TO A WASTE OF TIME OR NEUTRAL?

**PROSPECTIVE JUROR:** YEAH.

**THE COURT:** SO CAN YOU TELL US A LITTLE BIT ABOUT YOUR VIEW ON AI?

**PROSPECTIVE JUROR:** SO LIKE EVERYONE ELSE, I HAVE A PH.D. IN GENETICS, AND I DO WRITE CODE, AND I USE CHATGPT AND OTHERS LIKE QUAD TO HELP WRITE CODE AT WORK. AND I ALSO USE IT FOR EMAILS. AND THEN IN MY PERSONAL LIFE, I ALSO USE CHATGPT. I HAVE A SUBSCRIPTION.

**THE COURT:** OKAY. AND THEN IN TERMS OF MR. MUSK, YOU SAY THAT YOU DISAGREE WITH A LOT OF THINGS THAT HE'S DONE. DO YOU THINK YOU COULD BE FAIR TO MR. MUSK IN THIS TRIAL?

**PROSPECTIVE JUROR:** YES, I DO. I THINK I COULD BE FAIR.

**THE COURT:** OKAY. AND EVEN THOUGH YOU USE CHATGPT, COULD YOU BE FAIR IN TERMS OF, LIKE, NOT GIVING THEM AN ADVANTAGE AS YOU LIKE THEIR PRODUCT?

**PROSPECTIVE JUROR:** I THINK I COULD BE FAIR. IT'S JUST ONE OF THE AI'S, YEAH.

**THE COURT:** YOU'RE SOMEONE WHO RAISED RELIGION IN A QUESTION ABOUT IT MIGHT AFFECT YOUR VIEWS. I KNOW SOME PEOPLE ARE CONCERNED WHO RAISED THE ISSUE OF RELIGION, THAT SOMEHOW

THEY'RE PASSING JUDGMENT, WHICH IS WHY I TRY TO EXPLAIN THAT WHAT -- YOU'RE NOT REALLY PASSING JUDGMENT. THAT'S NOT THE JOB OF A JUROR.

THE JOB OF A JUROR IS TO WORK WITH OTHERS TO FIGURE OUT WHAT THE FACTS ARE.

DO YOU HAVE ANY CONCERNS ABOUT YOUR ABILITY TO, YOU KNOW, MAINTAIN YOUR FAITH AND YET STILL ENGAGE IN A FACT-FINDING MISSION?

**PROSPECTIVE JUROR:** NO, I DON'T HAVE ANY CONCERNS.

**THE COURT:** OKAY. BUT OTHER THAN THAT YOUR WORK, DO YOU HAVE ANY CONCERNS THAT YOU WOULD LIKE US TO THINK ABOUT IN TERMS OF YOUR SKILLS?

**PROSPECTIVE JUROR:** NO.

**THE COURT:** OKAY. NEXT.

ANOTHER ONE, IS IT MANASSE?

**PROSPECTIVE JUROR:** MANASSE.

**THE COURT:** MANASSE. GOOD MORNING.

**PROSPECTIVE JUROR:** GOOD MORNING.

**THE COURT:** OKAY. I TAKE IT THE CITY OF OAKLAND DOES PAY FOR SERVICE?

**PROSPECTIVE JUROR:** YES, IT DOES.

**THE COURT:** AND WOULD THIS BE A NICE CHANGE OF PACE TO SERVE ON THIS JURY?

**PROSPECTIVE JUROR:** EXCUSE ME. I WOULD STILL HAVE TO WORK IN THE AFTERNOONS BECAUSE THERE'S STAFF REPORTS WAITING

FOR ME AND WORK HAS TO CONTINUE.

**THE COURT:** OKAY. OKAY.

BUT DO YOU THINK YOU COULD MANAGE?

**PROSPECTIVE JUROR:** YES.

THE COURT: SO YOU'VE GOT A STRONG OPINION ABOUT MR. MUSK?

**PROSPECTIVE JUROR:** YES, I DO.

**THE COURT:** AND SAME QUESTION TO YOU. DO YOU THINK THAT YOU CAN -- IN THIS PARTICULAR DISPUTE, DO YOU THINK YOU COULD BE FAIR TO HIM OR NOT?

**PROSPECTIVE JUROR:** I WOULD DO MY BEST. YOU NEED A MORE SIGNIFICANT ANSWER THAN THAT I'M SURE.

**THE COURT:** RIGHT. WELL, I THINK THE PARTIES WOULD CERTAINLY WANT SOMETHING.

**PROSPECTIVE JUROR:** YEAH.

**THE COURT:** AND WE'RE ALL DIFFERENT. YOU KNOW, AS A JUDGE, I'VE BEEN TRYING TO PUT ASIDE PERSONAL FEELINGS ABOUT FOLKS AND YOU JUST HAVE TO TRY AND BE AS OBJECTIVE AS POSSIBLE.

**PROSPECTIVE JUROR:** UH-HUH.

**THE COURT:** AND HERE, YOU KNOW, HE'S A VERY WELL-KNOWN PERSON, BUT THERE ARE WELL-KNOWN PEOPLE ON THE OTHER SIDE, TOO.

**PROSPECTIVE JUROR:** YEAH.

**THE COURT:** AND THEY CAN'T AGREE. SO THEY HAVE DECIDED IN THEIR BEST JUDGMENT THAT IT IS BETTER TO HAVE A JURY

OF INDIVIDUALS THAT THEY DON'T KNOW DECIDE THIS CASE RATHER THAN SETTLE.

**PROSPECTIVE JUROR:** YES.

**THE COURT:** AND SO THAT'S -- BUT WE WANT IT TO BE FAIR MORE THAN ANYTHING ELSE.

**PROSPECTIVE JUROR:** RIGHT.

**THE COURT:** AND I DON'T GET VERY MUCH TIME WITH YOU-ALL. SO THAT'S WHY I'M ASKING, ARE YOU THE KIND OF PERSON THAT CAN SAY, YEAH, HE'S A JERK, I THINK WHICH IS JUST WHAT YOU SAID?

**PROSPECTIVE JUROR:** YES, IT IS.

**THE COURT:** YEAH, HE'S A JERK, BUT WE'RE GOING TO PUT THAT ASIDE, AND I'M JUST GOING TO FOCUS ON WHAT THE EVIDENCE IS THAT THE JUDGE SAYS IS WHAT I SHOULD CONSIDER.

CAN YOU DO THAT?

**PROSPECTIVE JUROR:** YES.

**THE COURT:** OKAY.

**PROSPECTIVE JUROR:** I THINK SO.

**THE COURT:** OKAY. AND YOUR OTHER JURORS WOULD HELP YOU.

THAT IS, YOU-ALL GET TO REMIND EACH OTHER IN THE JURY ROOM THAT YOU'RE NOT THERE TO BE THE ADVOCATE, YOU'RE THERE TO BE COLLABORATIVE AND FIGURE OUT WHAT YOU THINK THE EVIDENCE SHOWS.

OKAY. WHAT ABOUT THE OTHER ENTITIES THAT WE'VE TALKED ABOUT?

**PROSPECTIVE JUROR:** I'M FAMILIAR WITH THE OTHER ENTITIES. I USE SOME OF THEIR PRODUCTS. I DON'T REALLY HAVE STRONG FEELINGS ABOUT --

**THE COURT:** OKAY. DOES THE CITY OF OAKLAND USE AI YET, OR NO?

**PROSPECTIVE JUROR:** WE ARE EXPLORING IT.

**THE COURT:** ALL RIGHT.

**PROSPECTIVE JUROR:** IT'S STILL IN THE DEVELOPMENT PHASE.

**THE COURT:** ALL RIGHT. ANYTHING ELSE YOU WOULD LIKE US TO CONSIDER?

**PROSPECTIVE JUROR:** NO.

**THE COURT:** ALL RIGHT. THANK YOU.

**PROSPECTIVE JUROR:** THANK YOU.

**THE COURT:** WE'RE GOING TO PASS IT ALL OF THE WAY BACK HERE, AND I THINK I HAVE MR. MENDOZA; IS THAT RIGHT?

**PROSPECTIVE JUROR:** CORRECT.

**THE COURT:** GOOD MORNING.

**PROSPECTIVE JUROR:** GOOD MORNING.

**THE COURT:** OKAY. MR. MENDOZA, DOES TRIPLE A PAY FOR JURY SERVICE?

**PROSPECTIVE JUROR:** THEY DO, YES.

**THE COURT:** AS AN INSURANCE UNDERWRITER -- WELL, HOW LONG HAVE YOU DONE THAT -- YOU HAVEN'T DONE THAT JOB FOR VERY LONG.

**PROSPECTIVE JUROR:** LIKE A YEAR AND A HALF OR SO.

**THE COURT:** WHAT WERE YOU DOING BEFORE THAT?

**PROSPECTIVE JUROR:** I WAS IN COLLEGE AND WORKING PART-TIME AT BEST BUY.

**THE COURT:** OKAY. HAVE YOU -- WHAT -- IN TERMS OF UNDERWRITING, WHAT IS THE UNIVERSE OF MATERIAL THAT YOU HAVE TO EVALUATE IN ORDER TO MAKE A DECISION IN UNDERWRITING CONTENTS?

**PROSPECTIVE JUROR:** WE HAVE A KNOWLEDGE CENTER THAT WE USE TO GET INFORMATION THAT GETS UPDATED FREQUENTLY, BUT IT'S AN UNDERWRITING CLASS THAT YOU HAVE TO TAKE.

**THE COURT:** HOW DID YOU FALL INTO THAT CAREER?

**PROSPECTIVE JUROR:** A FRIEND. IT PAYS WELL, SO.

**THE COURT:** OKAY. BECAUSE YOUR DEGREE WAS IN SOMETHING TOTALLY DIFFERENT.

**PROSPECTIVE JUROR:** THAT'S CORRECT, YEAH, CRIMINAL JUSTICE.

**THE COURT:** AND DID YOU DECIDE ACTIVELY YOU DIDN'T WANT TO DO CRIMINAL JUSTICE AFTER YOU GOT YOUR DEGREE?

**PROSPECTIVE JUROR:** I STILL DO EVENTUALLY, YEAH.

**THE COURT:** OKAY. DO YOU OPERATE IN TEAMS OR DO YOU OPERATE --

**PROSPECTIVE JUROR:** YES, A TEAM, YEAH, ABSOLUTELY, YEAH.

**THE COURT:** AND DO YOU LIKE ENGAGING WITH OTHER PEOPLE IN PROBLEM-SOLVING?

**PROSPECTIVE JUROR:** I DO, YEAH, I DO.

**THE COURT:** IN YOUR QUESTION YOU -- IN ONE OF YOUR ANSWERS YOU MENTIONED KIND OF SOCIAL MEDIA PLATFORMS.

**PROSPECTIVE JUROR:** UH-HUH.

**THE COURT:** THAT'S NOT THIS CASE. AND YOU DON'T -- YOU SAID YOU DON'T REALLY LIKE MR. MUSK?

**PROSPECTIVE JUROR:** CORRECT.

**THE COURT:** OKAY. SO CAN YOU ANSWER THE QUESTION THAT I'VE BEEN ASKING MANY JURORS? CAN YOU PUT ASIDE THOSE FEELINGS AND FOCUS ON THE EVIDENCE FOR THIS PARTICULAR DISPUTE?

**PROSPECTIVE JUROR:** YES, YOUR HONOR.

**THE COURT:** OKAY. SO IN TERMS OF -- YOU SAID YOU DO LIKE OPENAI. WELL, WHY DO YOU LIKE OPENAI?

**PROSPECTIVE JUROR:** IT'S USEFUL, LIKE ANY OTHER TOOL, LIKE GOOGLE, RIGHT. IT'S SOMETIMES NOT ALWAYS CORRECT.

**THE COURT:** SO YOU LIKE THE TOOLS IT CREATES?

**PROSPECTIVE JUROR:** CORRECT, YES.

**THE COURT:** AND ARE YOU USING THEM IN YOUR JOB?

**PROSPECTIVE JUROR:** NOT -- MYSELF, NO, BUT I SOMETIMES USE IT AT WORK FOR CERTAIN THINGS.

**THE COURT:** DO YOU USE IT PERSONALLY?

**PROSPECTIVE JUROR:** YEAH, MY PERSONAL LIFE, YEAH.

**THE COURT:** AND WHAT KINDS OF THINGS DO YOU USE IT FOR?

**PROSPECTIVE JUROR:** EVERYTHING. IF I DON'T USE

GOOGLE, I USE THAT.

**THE COURT:** DO YOU HAVE ANY RELIGIOUS CONCERNS ABOUT SERVING IN THIS FACT-FINDER ENDEAVOR?

**PROSPECTIVE JUROR:** I'M RELIGIOUS, BUT I SHOULD BE OKAY.

**THE COURT:** ANYTHING YOU WANT TO TALK ABOUT IN TERMS OF RELIGIOUS POLICY? I'M NOT AN EXPERT, BUT I HAVE SOME BACKGROUND.

**PROSPECTIVE JUROR:** NO.

**THE COURT:** AND IT LOOKS LIKE YOU SAID YOU USE GOOGLE'S AI AT WORK.

**PROSPECTIVE JUROR:** AT WORK I USE GOOGLE BUT AT HOME I USE CHATGPT.

**THE COURT:** OKAY. IN THIS CASE YOU WON'T HAVE TO -- THE JURY WON'T HAVE TO DECIDE THE DAMAGES PORTION OF THIS CASE. YOU SAID -- YOU MADE A REFERENCE, THOUGH, TO AN INSANE AMOUNT OF MONEY SOMETIMES THAT PEOPLE ARE AWARDED.

WHAT WAS GOING THROUGH YOUR HEAD WHEN YOU MADE THAT COMMENT?

**PROSPECTIVE JUROR:** DIFFERENT CASES. I WASN'T REALLY SURE BUT --

**THE COURT:** IS THERE A CONCERN ABOUT SITTING ON A CASE WHERE THERE WAS A LOT OF MONEY THAT WAS BEING TALKED ABOUT?

**PROSPECTIVE JUROR:** I JUST PERSONALLY THINK SOMETIMES

WHAT PEOPLE CAN GET IS WAY MORE THAN WHAT THEY PROBABLY -- OR I GUESS SHOULD GET.

**THE COURT:** OKAY. AND THERE WAS NOTHING IN PARTICULAR THAT CAME TO MIND?

**PROSPECTIVE JUROR:** NO, HUH-UH.

**THE COURT:** OKAY. ANYTHING ELSE YOU WANTED TO THINK ABOUT IN TERMS OF YOU SERVING?

**PROSPECTIVE JUROR:** NO.

**THE COURT:** OKAY. NEXT, IS THAT MR. MUZAFFAR?

**PROSPECTIVE JUROR:** MUZAFFAR.

**THE COURT:** MUZAFFAR?

**PROSPECTIVE JUROR:** YEAH. GOOD MORNING, YOUR HONOR.

**THE COURT:** GOOD MORNING. WELL, WHEN DID YOU COME FROM PAKISTAN?

**PROSPECTIVE JUROR:** EARLY '80S. '82, '83.

**THE COURT:** OKAY. AND WILL PALO ALTO -- I'M ASSUMING THAT PALO ALTO WILL PAY FOR SERVICE?

**PROSPECTIVE JUROR:** ABSOLUTELY.

**THE COURT:** OKAY. WILL THIS BE A REVERSE COMMUTE FOR YOU THEN?

**PROSPECTIVE JUROR:** IT WILL BE, BUT IT IS WHAT IT IS. IT'S A LONG COMMUTE, BUT IF I AM TO BE HERE, I WILL BE HERE.

**THE COURT:** OKAY. YOU DIDN'T SEEM TO HAVE ANY CONCERNS ABOUT THE INDIVIDUALS, THE COMPANIES. IS THERE ANYTHING ABOUT THOSE TOPICS THAT WE'VE BEEN TALKING ABOUT THAT

YOU WOULD LIKE ME TO THINK ABOUT IN TERMS OF SERVICE?

**PROSPECTIVE JUROR:** NOT AT ALL. I DON'T HAVE ANY STRONG OPINIONS ABOUT ANYONE.

**THE COURT:** OKAY. AND DO YOU, DO YOU USE ARTIFICIAL INTELLIGENCE?

**PROSPECTIVE JUROR:** NO, I DON'T.

**THE COURT:** ALL RIGHT. IS THERE ANYTHING ABOUT YOUR PHYSICAL CONDITION THAT I SHOULD KNOW ABOUT?

**PROSPECTIVE JUROR:** WELL, I HAVE A LOT OF PHYSICAL ISSUES, BUT IT SHOULDN'T AFFECT MY JURY DUTY. I MEAN, I'M WORKING FULL TIME ANYWAY, DESPITE ALL OF MY PHYSICAL AILMENTS.

**THE COURT:** OKAY. YOU JUST MENTIONED SOMETHING, SO I WANTED TO MAKE SURE TO ASK.

**PROSPECTIVE JUROR:** YEAH. NO, I'M OKAY.

**THE COURT:** OKAY.

**PROSPECTIVE JUROR:** SURE. I JUST WANT TO LET YOU GUYS KNOW, BUT OTHER THAN THAT I'M OKAY. I'M WORKING FULL TIME ANYWAY.

**THE COURT:** OKAY.

**PROSPECTIVE JUROR:** DESPITE EVERYTHING.

**THE COURT:** ALL RIGHT. THANK YOU SO MUCH.

NEXT, DO YOU USE BOTH LAST NAMES, PEREZ REYES?

**PROSPECTIVE JUROR:** YES.

**THE COURT:** OKAY. GOOD MORNING.

**PROSPECTIVE JUROR:** GOOD MORNING.

**THE COURT:** AND WHEN DID YOU COME FROM GUATEMALA?

**PROSPECTIVE JUROR:** 2015.

**THE COURT:** SO, AGAIN, WITH YOU, YOU DIDN'T QUITE GIVE ME ENOUGH INFORMATION ABOUT YOUR REQUEST. SO, FIRST OF ALL, DO YOU KNOW WHETHER SAFEWAY WILL PAY FOR JURY SERVICE?

**PROSPECTIVE JUROR:** I'M NOT WORKING AT SAFEWAY. I'M SELF-EMPLOYED.

**THE COURT:** OKAY. AND IN TERMS OF -- IS THAT A SMALL COMPANY THAT DOES PAINTING?

**PROSPECTIVE JUROR:** YEAH.

**THE COURT:** OKAY. HOW MANY PEOPLE?

**PROSPECTIVE JUROR:** SEVEN.

**THE COURT:** SEVEN. AND ARE YOU PAID BY THE HOUR OR ARE YOU PAID -- ARE YOU SALARIED?

**PROSPECTIVE JUROR:** SALARIED.

**THE COURT:** IN TERMS OF WORK, IS IT POSSIBLE TO WORK WITH THE OUTFIT IN THE AFTERNOONS AND EVENINGS AND ON THE WEEKENDS? HOW DO THE JOBS WORK?

**PROSPECTIVE JUROR:** I USUALLY WORK MORNING BUT IT'S OKAY IF I'M HERE OR NOT.

**THE COURT:** IT IS OKAY?

**PROSPECTIVE JUROR:** YEAH.

**THE COURT:** OKAY. DO YOU HAVE -- YOU SEEM TO INDICATE THAT YOU DIDN'T HAVE ANY CONCERNS THAT THIS LAWSUIT INVOLVED ELON MUSK. IS THAT STILL THE CASE?

**PROSPECTIVE JUROR:** YES.

**THE COURT:** OKAY. ARE YOU FAMILIAR WITH WHO HE IS?

**PROSPECTIVE JUROR:** YES.

**THE COURT:** HOW ABOUT SAM ALTMAN, DO YOU KNOW WHO HE IS?

**PROSPECTIVE JUROR:** YES.

**THE COURT:** OKAY. ANY CONCERNS ABOUT THE FACT THAT THERE'S A DISPUTE BETWEEN THOSE TWO FOLKS?

**PROSPECTIVE JUROR:** NO, NOT REALLY.

**THE COURT:** DO YOU USE AI?

**PROSPECTIVE JUROR:** YEAH.

**THE COURT:** YOU DO?

**PROSPECTIVE JUROR:** YEAH.

**THE COURT:** YOU DO. IN WHAT WAY?

**PROSPECTIVE JUROR:** FOR THE CONTRACTS, BECAUSE I'M A PAINTER AND SO I HAVE TO USE THE CONTRACTS AND I USE THE GOOGLE OR CHATGPT.

**THE COURT:** OKAY. AND HOW DO YOU USE IT? DO YOU PUT THE CONTRACTS IN, OR WHAT IS IT THAT YOU DO?

**PROSPECTIVE JUROR:** BASICALLY I PUT THE NAME OF THE PERSON AND THE LABORERS, AND THE SYSTEM GIVES ME A NOTE, AND SO THAT'S EASY FOR ME.

**THE COURT:** AND WHAT IS THE INFORMATION THAT YOU'RE TRYING TO GET FROM THE PROGRAM?

**PROSPECTIVE JUROR:** OH, BASICALLY IT'S, LIKE, A

10:43:01 CONTRACT FOR THE WORK.

10:43:02 **THE COURT:** I SEE. SO YOU'RE USING IT TO GENERATE SOME KIND OF A CONTRACT?

10:43:06 **PROSPECTIVE JUROR:** **YES.**

10:43:07 **THE COURT:** OKAY. AND IS THE PAINTING COMPANY YOUR COMPANY?

10:43:13 **PROSPECTIVE JUROR:** YES.

10:43:15 **THE COURT:** IT IS?

10:43:16 **PROSPECTIVE JUROR:** YEAH.

10:43:17 **THE COURT:** OKAY. SO YOU'RE THE ONE WHO IS IN CHARGE?

10:43:19 **PROSPECTIVE JUROR:** YES.

10:43:20 **THE COURT:** AND WHERE DID THE NAME COME FROM?

10:43:41 **PROSPECTIVE JUROR:** IT'S MY GRANDFATHER.

10:43:42 **THE COURT:** ALL RIGHT. ANY CONCERNS THAT YOU HAVE ABOUT SERVING?

10:43:44 **PROSPECTIVE JUROR:** NO.

10:43:58 **THE COURT:** LET'S GO AHEAD AND PASS IT DOWN, LAST NAME PRUM OR PRUM?

10:44:03 **PROSPECTIVE JUROR:** PRUM.

10:44:05 **THE COURT:** GOOD MORNING.

10:44:07 **PROSPECTIVE JUROR:** GOOD MORNING.

10:44:18 **THE COURT:** OKAY. SO WHEN DID YOU COME FROM CHINA?

10:44:20 **PROSPECTIVE JUROR:** 1984.

10:44:27 **THE COURT:** AND IT LOOKS LIKE YOUR ARRANGEMENTS WITH

10:44:32 UCSF ARE SUCH THAT YOU COULD NOT -- YOU WOULD NOT BE PAID; IS THAT RIGHT?

10:44:38 **PROSPECTIVE JUROR:** THAT IS CORRECT.

10:44:39 **THE COURT:** OKAY. NOW, IN TERMS OF YOUR -- COULD YOU TELL ME ABOUT YOUR DAY IN TERMS OF WORK AND NOW THAT YOU KNOW WHAT OUR SCHEDULE LOOKS LIKE, WHETHER OR NOT YOU CAN MANAGE DOING BOTH, OR AT LEAST PART OF THAT?

10:44:53 **PROSPECTIVE JUROR:** YEAH. SO TWICE A WEEK I WORK AT A COMMUNITY COLLEGE, AND I WORK WITH COLLEGE STUDENTS DOING MENTAL HEALTH COUNSELLING.

10:45:01 THAT SHOULD BE COVERED FOR JURY DUTY.

10:45:04 AND THE OTHER THREE DAYS I'M A PER-DIEM STATUS AT UCSF.

10:45:10 **THE COURT:** SO THE COMMUNITY COLLEGE PIECE YOU COULD DO FOR THE TWO DAYS.

10:45:13 AND WE'RE NOT IN SESSION ON FRIDAYS. SO THAT WOULD BE THE THIRD DAY. SO WHAT IS YOUR SCHEDULE? I MEAN, HOSPITALS CAN HAVE VERY LONG DAYS.

10:45:29 WHAT IS YOUR SCHEDULE AND CAN YOU GO TO WORK, LET'S SAY, AFTER BEING IN TRIAL FOR PART OF THE DAY?

10:45:36 **PROSPECTIVE JUROR:** MY SCHEDULE IS USUALLY 8:30 TO 5:00, SO I WILL NOT BE ABLE TO GO.

10:45:41 **THE COURT:** AND WHAT DO YOU DO THEN FOR UCSF THAT THEY'RE KIND OF PAYING YOU ON THIS PER-DIEM BASIS?

10:45:52 **PROSPECTIVE JUROR:** I AM A DISCHARGE PLANNER. I'M A SOCIAL WORKER. SO I WORK WITH A CASE MANAGER TO DO

PSYCHOSOCIAL ASSESSMENTS, CARE PLANNING AND DISCHARGE PLANNING. SO IT INVOLVES WORK WITH THE PATIENTS AND FAMILIES AND DOCTORS, NURSES.

**THE COURT:** OKAY. AND WHAT HAPPENS IF YOU'RE HERE AND NOT THERE, ASIDE FROM THE FINANCE?

**PROSPECTIVE JUROR:** NOTHING. THE HOSPITAL FUNCTIONS WITHOUT ME BEING THERE.

**THE COURT:** AND THEY CAN -- AND THEY HAVE PEOPLE THAT THEY CAN PUT IN YOUR SLOT?

**PROSPECTIVE JUROR:** WHETHER OR NOT THEY DO, THEY'RE GOING TO HAVE TO DO WITHOUT PEOPLE BEING THERE. IT'S COMMON FOR THERE TO BE A SHORTAGE AT A HOSPITAL SETTING.

**THE COURT:** OKAY. YOU'VE SERVED ON A JURY BEFORE?

**PROSPECTIVE JUROR:** YES.

**THE COURT:** AND CAN YOU TELL ME ABOUT THAT CASE?

**PROSPECTIVE JUROR:** I BELIEVE IT WAS A CRIMINAL CASE THAT INVOLVED AN ACT OF VIOLENCE SURROUNDING GAMBLING, CASINO INCIDENT.

**THE COURT:** OKAY. AND YOU REACHED A VERDICT. WHAT WAS THE VERDICT?

**PROSPECTIVE JUROR:** GUILTY.

**THE COURT:** WERE YOU THE FOREPERSON?

**PROSPECTIVE JUROR:** DID YOU SAY WAS I THE FOREPERSON?

**THE COURT:** CORRECT.

**PROSPECTIVE JUROR:** YES.

**THE COURT:** SO YOU ACTUALLY HAVE EXPERIENCE IN BEING A FOREPERSON. YOU'RE THE FIRST PERSON THAT WE HAVE WITH EXPERIENCE.

**PROSPECTIVE JUROR:** I'M NOT SURE I UNDERSTAND YOUR QUESTION, IF I HAVE EXPERIENCE BEING A FOREPERSON.

**THE COURT:** SO THE FOREPERSON IS THE ONE WHO CONTROLS THE DISCUSSION IN THE JURY.

**PROSPECTIVE JUROR:** NO.

**THE COURT:** YOU WERE NOT THE FOREPERSON?

**PROSPECTIVE JUROR:** NO.

**THE COURT:** OKAY. SO YOU JUST PARTICIPATED IN THE DELIBERATIONS?

**PROSPECTIVE JUROR:** CORRECT.

**THE COURT:** OKAY. I'VE HAD A COUPLE OF JURORS COME IN WHO HAVE BEEN ON THREE OR FOUR JURIES. AND I HAD TO GIVE THEM THE BAD NEWS THAT ONCE YOU'VE BEEN ON MANY JURIES, THE LIKELIHOOD OF BEING SELECTED GOES EVEN HIGHER BECAUSE PEOPLE KNOW THAT YOU CAN REACH A VERDICT. BUT THAT'S OKAY.

OTHER THAN -- OTHER THAN THE FINANCIAL ISSUE -- AND I TAKE IT YOU STILL WANT US TO TAKE THAT INTO CONSIDERATION?

**PROSPECTIVE JUROR:** YES. AMONG OTHER THINGS.

**THE COURT:** OKAY. GO AHEAD. WHAT ARE THE OTHER THINGS?

**PROSPECTIVE JUROR:** I AM ON STANDBY FOR SUBPOENAED CASE AT THE HOSPITAL FOR A PREVIOUS PATIENT OF MINE, AND I'M ON

STANDBY FROM NOW UNTIL MAY 31ST WHEN I TRAVEL OUT OF THE COUNTRY. BUT I DON'T HAVE THE DATE YET, BUT IT'S GOING TO BE IN THE NEXT FEW WEEKS.

**THE COURT:** OKAY.

**PROSPECTIVE JUROR:** AND I'M RECOVERING FROM A MEDICAL CONDITION. SO MY EYE IS VERY -- IT'S BLURRY, AND SO I DO NEED TO USE EYE DROPS THROUGHOUT THE DAY.

**THE COURT:** OKAY. ANY OTHER CONCERN ABOUT SERVING JUST IN THE NATURE OF THE DISPUTE THAT WE'RE DEALING WITH?

**PROSPECTIVE JUROR:** NOT REALLY.

**THE COURT:** ANYTHING ELSE YOU WANT US TO THINK ABOUT? ANYTHING ELSE YOU WANT US TO THINK ABOUT?

**PROSPECTIVE JUROR:** I DO HAVE A TRIP ON THE 31ST INTERNATIONALLY FOR A MISSIONS TRIP, SO JUST IN CASE THIS GOES OVER THREE WEEKS.

**THE COURT:** IT WILL NOT. I PROMISE YOU.

OKAY. I'LL GO AHEAD. NEXT IS RESKA. IS THAT HOW I SAY IT?

**PROSPECTIVE JUROR:** GOOD. GOOD MORNING.

**THE COURT:** IRENE, HOW ARE YOU DOING?

THE REPORTER: GOOD. THANK YOU.

**THE COURT:** DO YOU KNOW WHETHER YOUR COMPANY PAYS FOR JURY DUTY?

**PROSPECTIVE JUROR:** THEY DO.

**THE COURT:** AND CAN YOU TELL ME A LITTLE BIT ABOUT

YOUR JOB, WHAT YOU DO AS AN ANALYST.

**PROSPECTIVE JUROR:** I WORK IN MASTER DATA MANAGEMENT. SO WE TAKE CARE OF THE DATA THAT THE BUSINESS PROVIDES US WITH AND TRY TO CLEAN IT UP, AND ENFORCE THEIR RULES SO THAT WAY THEY CAN USE IT TO MAKE PAYMENTS OR USE IT IN MANUFACTURING, ET CETERA.

**THE COURT:** OKAY. SO IT'S -- IT'S NOT -- THERE ARE LOTS OF DATA ANALYSTS. ARE YOU USING YOUR ECONOMICS BACKGROUND FOR THAT?

**PROSPECTIVE JUROR:** NO.

**THE COURT:** NO. OKAY.

**PROSPECTIVE JUROR:** MATH BACKGROUND.

**THE COURT:** ALL RIGHT. HAVE YOU -- DO YOU HAVE EXPERIENCE READING CONTRACTS?

**PROSPECTIVE JUROR:** NOT LIKE -- NOT LEGALLY REALLY, YOU KNOW. WE JUST MIGHT SKIM THEM TO SEE WHAT KIND OF DATA WE PULL FROM IT, LIKE AN ADDRESS OR WHAT BANK ACCOUNT WE'RE SUPPOSED TO BE USING FOR SOME TYPE OF PAYMENT, BUT NOTHING --

**THE COURT:** OKAY. ALL RIGHT.

SOMEONE HAS GOT A PHONE?

**PROSPECTIVE JUROR:** I THOUGHT I TURNED IT OFF. I'M SORRY.

**THE COURT:** OKAY. THANK YOU.

LET'S SEE. IT LOOKS LIKE YOU DON'T HAVE PARTICULARLY STRONG FEELINGS ONE WAY OR THE OTHER AGAINST ANY OF THE

PRINCIPALS IN THIS CASE?

**PROSPECTIVE JUROR:** NOT REALLY.

**THE COURT:** OKAY. HOW ABOUT ON AI, ANY OPINIONS WITH RESPECT TO THAT?

**PROSPECTIVE JUROR:** CAUTIOUS OPTIMISM.

**THE COURT:** OKAY.

**PROSPECTIVE JUROR:** I'VE GOT TO USE IT FOR WORK.

**THE COURT:** OKAY. AND HOW DO YOU USE IT FOR WORK?

**PROSPECTIVE JUROR:** I CAN USE IT FOR RESEARCH LIKE FIGURING OUT HOW CERTAIN TAX CODES MIGHT WORK IN DIFFERENT COUNTRIES, OTHER SORT OF FINANCIAL RULES FOR BANK DATA AS WELL. AND THEN THERE THEY ARE ALSO TRAINING ME ON SOME PROGRAM CALLED DATABRICKS.

**THE COURT:** YEAH. SO LET'S KEEP IT CLOSE TO YOUR MOUTH, THE MIC.

**PROSPECTIVE JUROR:** SORRY.

**THE COURT:** THAT'S OKAY.

**PROSPECTIVE JUROR:** I'M TRYING NOT TO BREATHE ON IT.

**THE COURT:** I CAN UNDERSTAND.

YOU'VE SAY YOU'VE BEEN ON A JURY BEFORE?

**PROSPECTIVE JUROR:** UH-HUH.

**THE COURT:** YES?

**PROSPECTIVE JUROR:** YES.

**THE COURT:** CAN YOU GIVE ME JUST A -- DO YOU REMEMBER WHAT THE CASE WAS ABOUT?

**PROSPECTIVE JUROR:** A MAN WAS STALKING HIS EX-GIRLFRIEND AND DID SOME PROPERTY DAMAGE TO HER CAR AND STUFF LIKE THAT.

**THE COURT:** SO YOU REACHED A VERDICT. AND WHAT WAS THE VERDICT?

**PROSPECTIVE JUROR:** GUILTY.

**THE COURT:** AND HOW ABOUT YOU, DID YOU HAPPEN TO BE THE FOREPERSON IN THE JURY ROOM?

**PROSPECTIVE JUROR:** NO.

**THE COURT:** DO YOU HAVE ANY CONCERNS ABOUT SERVING?

**PROSPECTIVE JUROR:** NOT REALLY, NO.

**THE COURT:** WHEN YOU SAY "NOT REALLY," WHAT GAVE YOU THE HESI -- WHY DID YOU HESITATE?

**PROSPECTIVE JUROR:** I JUST WANTED TO THINK ABOUT IT.

**THE COURT:** BUT NOW THAT YOU'VE THOUGHT ABOUT IT, YES? NO?

**PROSPECTIVE JUROR:** NO.

**THE COURT:** OKAY. THANK YOU SO MUCH.

LET'S GO AHEAD AND PASS IT TO MR. ROSTEL?

**PROSPECTIVE JUROR:** ROSTEL.

**THE COURT:** ROSTEL. THANK YOU.

GOOD MORNING.

**PROSPECTIVE JUROR:** GOOD MORNING.

**THE COURT:** SO COULD YOU TELL ME -- IT LOOKS LIKE YOU'RE RETIRED.

**PROSPECTIVE JUROR:** CORRECT.

**THE COURT:** HOW ARE YOU SPENDING YOUR DAYS IN YOUR RETIREMENT?

**PROSPECTIVE JUROR:** I SPLIT MY WEEKS BETWEEN MY GRANDKIDS IN SACRAMENTO AND HOME IN SANTA ROSA.

**THE COURT:** OKAY.

**PROSPECTIVE JUROR:** SO MOSTLY HOBBY ACTIVITIES, EXERCISE, ET CETERA.

**THE COURT:** OKAY. AND WHAT DID YOU DO AS A PROGRAM MANAGER FOR YOUR EMPLOYER?

**PROSPECTIVE JUROR:** SO I MANAGED A SMALL TEAM FOR CLASSIFIED PRODUCT DEVELOPMENT.

**THE COURT:** WHAT DOES THAT MEAN?

**PROSPECTIVE JUROR:** THAT MEANS I CAN'T TELL YOU WHAT I WORKED ON.

**THE COURT:** CAN YOU TELL ME WHO YOUR CLIENTS WERE?

**PROSPECTIVE JUROR:** I WAS WORKING DIRECTLY FOR LOCKHEED MARTIN.

**THE COURT:** OKAY.

**PROSPECTIVE JUROR:** AND PREVIOUSLY FOR NORTHROP GRUMMAN.

**THE COURT:** OKAY. IT SOUNDS LIKE SOME OF MY CONVERSATIONS WITH MY SON.

**PROSPECTIVE JUROR:** OKAY. GOOD.

**THE COURT:** NOW, IT SAYS THAT DEPOSITION SERVICES.

10:54:22 IS THERE ANY MEANING TO THAT NAME?

10:54:24 **PROSPECTIVE JUROR:** IT'S DEPOSITION SCIENCES.

10:54:26 **THE COURT:** SCIENCES.

10:54:27 **PROSPECTIVE JUROR:** AND YOU PROBABLY SAW THE BAD HANDWRITING OF MINE. IT'S TYPICAL.

10:54:34 **THE COURT:** I FORGOT TO PUT MY GLASSES ON.

10:54:37 **PROSPECTIVE JUROR:** IT DOESN'T HAVE IT WITH LEGAL DEPOSITIONS. IT HAS TO DO WITH THIN FILM DEPOSITIONS ON SUBSTRATES, WHICH YOU'RE PROBABLY VERY FAMILIAR WITH.

10:54:45 **THE COURT:** ALL RIGHT. SO VERY TECHNICAL STUFF?

10:54:47 **PROSPECTIVE JUROR:** YES.

10:54:53 **THE COURT:** AND IT TOOK ADVANTAGE OF YOUR PHYSICS BACKGROUND?

10:54:57 **PROSPECTIVE JUROR:** I'M SORRY?

10:54:58 **THE COURT:** I SAID AND IT TOOK ADVANTAGE OF YOUR PHYSICS BACKGROUND?

10:55:01 **PROSPECTIVE JUROR:** CORRECT.

10:55:02 **THE COURT:** IN TERMS OF YOUR TWO JURY TRIALS, COULD YOU TELL US ABOUT THOSE?

10:55:05 **PROSPECTIVE JUROR:** ONE WAS A CHILD ENDANGERMENT CASE, AND THE OTHER ONE WAS SPOUSAL ABUSE.

10:55:11 **THE COURT:** AND ON THE FIRST --

10:55:13 **PROSPECTIVE JUROR:** YES.

10:55:14 **THE COURT:** I TAKE IT VERDICTS WERE REACHED ON BOTH?

10:55:17 **PROSPECTIVE JUROR:** CORRECT.

**THE COURT:** ALL RIGHT. SO THE CHILD ENDANGERMENT, WHAT WAS THE VERDICT THERE?

**PROSPECTIVE JUROR:** IT WAS GUILTY. I CAN'T REMEMBER HOW MANY COUNTS THERE WERE, BUT WE ONLY FOUND GUILTY ON ONE COUNT.

**THE COURT:** AND THE OTHERS, DID YOU HANG OR DID YOU FIND HIM NOT GUILTY?

**PROSPECTIVE JUROR:** THE OTHERS WERE NOT GUILTY.

**THE COURT:** OKAY. AND THEN HOW ABOUT THE ABUSE?

**PROSPECTIVE JUROR:** GUILTY.

**THE COURT:** OKAY. WERE YOU THE FOREPERSON?

**PROSPECTIVE JUROR:** I WAS NOT.

**THE COURT:** ON EITHER ONE?

**PROSPECTIVE JUROR:** NEITHER ONE.

**THE COURT:** OKAY. IN TERMS OF MR. MUSK --

**PROSPECTIVE JUROR:** YES.

**THE COURT:** -- YOU'VE INDICATED YOUR DISPLEASURE WITH HIS ACTIVITIES.

**PROSPECTIVE JUROR:** CORRECT.

**THE COURT:** DO YOU THINK YOU COULD GIVE HIM A FAIR TRIAL IN THIS PARTICULAR CASE?

**PROSPECTIVE JUROR:** I DO. MY DISPLEASURE IS POLITICALLY RELATED, NOT WORK OR BUSINESS RELATED.

**THE COURT:** OKAY. AND LET'S SEE. YOU SAY YOU HAVE SOME LIMITED SENSE OF REVIEWING CONTRACTS. COULD YOU GIVE THE

10:56:24 PARTIES A SENSE OF WHAT IT IS THAT YOU KNOW OR DO?

10:56:27 **PROSPECTIVE JUROR:** SURE. SO WHEN WE WERE WORKING AS CONTRACTORS OR SUBCONTRACTORS FOR VARIOUS COMPANIES, THERE WOULD BE A CONTRACT THAT SHOWED WHAT WE WERE SUPPOSED TO DEVELOP AND THE DETAILS OF WHAT WE WERE TRYING TO ACCOMPLISH.

10:56:44 AND SO BASICALLY I WAS CREATING AN OUTLINE OF WHAT THE WORK FORMAT WOULD LOOK LIKE FROM THE CONTRACT.

10:56:50 **THE COURT:** OKAY. ALL RIGHT. IS THERE ANYTHING ELSE YOU WOULD LIKE US TO THINK ABOUT?

10:57:01 **PROSPECTIVE JUROR:** NO.

10:57:01 **THE COURT:** ALL RIGHT. THANK YOU VERY MUCH.

10:57:04 **PROSPECTIVE JUROR:** THANK YOU.

10:57:04 **THE COURT:** PASS IT DOWN.

10:57:06 NEXT LAST NAME DELGADO.

10:57:10 **PROSPECTIVE JUROR:** YEAH.

10:57:11 **THE COURT:** GOOD MORNING.

10:57:12 **PROSPECTIVE JUROR:** GOOD MORNING.

10:57:13 **THE COURT:** IT'S STILL MORNING.

10:57:14 **PROSPECTIVE JUROR:** YEP.

10:57:29 **THE COURT:** ALL RIGHT. SO YOU HAVE SOME FINANCIAL CONCERNS ABOUT SERVING?

10:57:32 **PROSPECTIVE JUROR:** YES.

10:57:32 **THE COURT:** CAN YOU TELL ME A LITTLE BIT MORE, NOW THAT YOU KNOW WHAT OUR SCHEDULE IS. I MEAN, IS THERE ANYWAY THAT YOU THINK YOU COULD COME AND DO THIS IN THE MORNING, AND

THEN IN THE AFTERNOON GO AND WORK ON THE PAINTING JOBS?

**PROSPECTIVE JUROR:** NO. I USUALLY WORK MONDAY THROUGH FRIDAY, 7:00 TO 3:00.

**THE COURT:** 7:00 TO 3:00. AND DO YOU DO RESIDENTIAL OR COMMERCIAL, OR WHAT DO YOU DO?

**PROSPECTIVE JUROR:** BOTH.

**THE COURT:** YOU CAN'T WORK AT FIVE DIFFERENT PLACES IN ANY GIVEN DAY. WHERE ARE YOU WORKING CURRENTLY?

**PROSPECTIVE JUROR:** SF, SAN FRANCISCO.

**THE COURT:** WHAT KIND OF FACILITY? RESIDENTIAL OR --

**PROSPECTIVE JUROR:** RESIDENTIAL.

**THE COURT:** ARE YOU -- HOW BIG IS THE GROUP OF PEOPLE THAT YOU WORK WITH?

**PROSPECTIVE JUROR:** IT'S -- I USUALLY MANAGE A GROUP OF, LIKE, THREE PEOPLE.

**THE COURT:** OKAY. ARE YOU MANAGING OR ARE YOU PAINTING?

**PROSPECTIVE JUROR:** I'M PAINTING. I RUN THE CREW.

**THE COURT:** AND YOU RUN THE CREW. OKAY.

AND YOUR WIFE DOES NOT WORK?

**PROSPECTIVE JUROR:** NO.

**THE COURT:** IS THAT CORRECT?

**PROSPECTIVE JUROR:** YEAH.

**THE COURT:** ALL RIGHT. SO YOU'VE GOT THE FINANCIAL CONCERNS. ANY CONCERNS ABOUT THE NATURE OF THIS CASE?

10:58:55 **PROSPECTIVE JUROR:** NO.

10:58:56 **THE COURT:** AND IT LOOKED LIKE YOU DIDN'T HAVE ANY PARTICULAR OPINIONS, STRONG OR --

10:59:02 **PROSPECTIVE JUROR:** NO.

10:59:03 **THE COURT:** SO YOUR PRIMARY CONCERN IS FINANCIAL?

10:59:06 **PROSPECTIVE JUROR:** YEAH.

10:59:06 **THE COURT:** ANYTHING ELSE YOU WOULD LIKE US TO KNOW?

10:59:09 **PROSPECTIVE JUROR:** NO. THAT'S ABOUT IT.

10:59:10 **THE COURT:** OKAY. ALL RIGHT. THANK YOU, SIR.

10:59:12 LAST NAME SILVA?

10:59:18 **PROSPECTIVE JUROR:** CORRECT.

10:59:19 **THE COURT:** GOOD MORNING.

10:59:21 **PROSPECTIVE JUROR:** GOOD MORNING.

10:59:23 **THE COURT:** YOU HAD YOUR MRI?

10:59:43 **PROSPECTIVE JUROR:** I DID.

10:59:44 **THE COURT:** OKAY. AND DO YOU HAVE ANY SURGERY SCHEDULED THAT I SHOULD KNOW ABOUT?

10:59:49 **PROSPECTIVE JUROR:** I DO NOT.

10:59:50 **THE COURT:** WHAT KIND OF INVESTIGATIONS DO YOU DO?

10:59:56 **PROSPECTIVE JUROR:** UM, I DO FRAUD, THEFT, THREATS, AND ANTI MONEY LAUNDERING.

11:00:07 **THE COURT:** AND WHAT WAS THAT?

11:00:08 **PROSPECTIVE JUROR:** ANTI MONEY LAUNDERING.

11:00:11 **THE COURT:** ANTI MONEY LAUNDERING?

11:00:13 **PROSPECTIVE JUROR:** YES.

**THE COURT:** SO I TAKE IT AS AN INVESTIGATOR, YOU'RE PRETTY GOOD AT EVALUATING INDIVIDUALS?

**PROSPECTIVE JUROR:** I LIKE TO THINK SO.

**THE COURT:** OKAY. AND IN MANY WAYS, YOU KNOW, ONE OF THE THINGS THAT IS SO IMPORTANT ABOUT HAVING JURORS IS THAT JURORS EVALUATE THE CREDIBILITY OF WITNESSES, AND THAT'S A BIG ISSUE.

DO JURORS THINK THEY'RE CREDIBLE OR NOT? DO THEY BELIEVE ALL, PART, OR NONE OF WHAT ANY INDIVIDUAL SAYS? THAT'S A BIG JOB FOR JURORS. AND IT SEEMS LIKE YOU DO THAT AS PART OF YOUR LIVING. WOULD THAT BE FAIR?

**PROSPECTIVE JUROR:** YES.

**THE COURT:** NOW, IN TERMS OF MR. MUSK, WHO YOU CLEARLY DO NOT -- IT LOOKS LIKE YOU DON'T LIKE. YOU HAVE SOME STRONG OPINIONS ABOUT MR. MUSK.

**PROSPECTIVE JUROR:** THAT IS CORRECT.

**THE COURT:** ARE YOU -- DO YOU THINK YOU'RE ABLE TO PUT THOSE OPINIONS ASIDE AND TREAT HIM FAIRLY?

**PROSPECTIVE JUROR:** I DO.

**THE COURT:** AND LET ME JUST SAY, AS AN INVESTIGATOR, ARE THERE TIMES WHEN THERE ARE PEOPLE YOU DON'T LIKE AND YOU STILL HAVE TO FIGURE OUT, LIKE, WHAT HAPPENED?

**PROSPECTIVE JUROR:** THAT IS CORRECT. OBVIOUSLY IT WOULD BE, YOU KNOW, I DON'T HAVE SUCH STRONG FEELINGS FOR THE PEOPLE I WORK FOR ON A DAILY BASIS THAT I DO WITH MR. MUSK, BUT

I DO BELIEVE THAT THE FACTS ARE THE FACTS, AND THAT IS WHAT THIS CASE ENTAILS.

SO, YOU KNOW, WHILE I DO NOT LIKE HIM, I CAN DEFINITELY SEPARATE MY FEELINGS ABOUT HIM FROM THE FACTS OF THE CASE.

**THE COURT:** AND IT SEEMS LIKE YOU MUST HAVE TO DO THAT. IT'S JUST PART OF YOUR DAILY JOB?

**PROSPECTIVE JUROR:** THAT'S CORRECT.

**THE COURT:** AND WHAT ABOUT -- IT ALSO SOUNDED LIKE, YOU KNOW, YOU'RE NOT NECESSARILY SYMPATHETIC TO MR. ALTMAN OR MR. BROCKMAN EITHER.

**PROSPECTIVE JUROR:** NO.

**THE COURT:** YOU'RE NOT SYMPATHETIC TO ANY ONE OF THEM?

**PROSPECTIVE JUROR:** NO.

**THE COURT:** THAT'S CORRECT?

**PROSPECTIVE JUROR:** I'M SORRY, THAT'S CORRECT.

**THE COURT:** SO WITH RESPECT TO THOSE INDIVIDUALS, DO YOU THINK YOU COULD TREAT THEM FAIRLY AS PART OF THIS PROCESS TO HELP SOLVE THE DISPUTE THAT WE'RE FACED WITH?

**PROSPECTIVE JUROR:** I BELIEVE SO, BECAUSE, AGAIN, THE PEOPLE INVOLVED ARE IRRELEVANT. IT'S THE FACTS THAT ARE PRESENTED THAT IS IMPORTANT.

**THE COURT:** OKAY. LET'S SEE. DO YOU USE AI AS PART OF YOUR JOB?

**PROSPECTIVE JUROR:** VERY RARELY.

**THE COURT:** OKAY. IS THERE ANYTHING YOU WOULD LIKE US TO CONSIDER IN TERMS OF YOU SERVING AS A JUROR?

**PROSPECTIVE JUROR:** NO, YOUR HONOR.

**THE COURT:** AND GIVEN THE NATURE OF THE JOB, YOUR JOB, YOU COULD COME HERE AND STILL MAINTAIN WORK OR -- I DON'T KNOW, DOES YOUR JOB PAY FOR YOU TO BE HERE?

**PROSPECTIVE JUROR:** IT DOES PAY, YES.

**THE COURT:** OKAY. THANK YOU.

LET'S SEE. IS IT STODGEL, STODGEL?

**PROSPECTIVE JUROR:** STODGEL.

**THE COURT:** OKAY. STODGEL. GOOD MORNING.

OKAY. SO YOU'RE NOW RETIRED; IS THAT RIGHT?

**PROSPECTIVE JUROR:** YES.

**THE COURT:** OKAY. AND HOW ARE YOU SPENDING YOUR DAYS?

**PROSPECTIVE JUROR:** WELL, I WORK OUT, I DO GARDENING, I DO COOKING, I HELP OUT AT MY CHURCH, I DO BIBLE STUDY. DIFFERENT THINGS.

**THE COURT:** OKAY. AND IN TERMS OF THE CASE WHERE YOU WERE A JUROR, DO YOU HAVE ANY OTHER MEMORY OF BEING -- OF THE SPECIFICS OF THAT CASE?

**PROSPECTIVE JUROR:** YES. IT WAS A THREE-STRIKES CASE, AND THE PERSON WAS -- THE VERDICT WAS GUILTY.

**THE COURT:** OKAY. WERE YOU THE FOREPERSON?

**PROSPECTIVE JUROR:** NO, I WASN'T.

**THE COURT:** DO YOU HAVE ANY TRIPS PLANNED THAT I SHOULD KNOW ABOUT?

**PROSPECTIVE JUROR:** NO.

**THE COURT:** IT DOESN'T SEEM LIKE YOU HAVE ANY PARTICULARLY STRONG OPINIONS ONE WAY OR THE OTHER WITH MR. MUSK OR MR. ALTMAN OR MR. BROCKMAN? IS THAT --

**PROSPECTIVE JUROR:** NO. LIKE EVERYONE ELSE SAYS, THE FACTS OF THE CASE ARE WHAT ARE MOST IMPORTANT.

**THE COURT:** OKAY. DO YOU HAVE ANY CONCERNS ABOUT SERVING?

**PROSPECTIVE JUROR:** ABOUT WHAT?

**THE COURT:** ABOUT SERVING AS A JUROR?

**PROSPECTIVE JUROR:** NO, NOT AT ALL.

**THE COURT:** ANYTHING YOU WOULD LIKE THE PARTIES TO KNOW?

**PROSPECTIVE JUROR:** NOT REALLY.

**THE COURT:** ALL RIGHT. LET'S GO AHEAD AND PASS IT DOWN.

I THINK I HAVE MR. WARREN.

**PROSPECTIVE JUROR:** YES.

**THE COURT:** GOOD MORNING.

**PROSPECTIVE JUROR:** GOOD MORNING.

**THE COURT:** ALL RIGHT. DO YOU WORK BY YOURSELF OR DO YOU WORK FOR A SMALL COMPANY?

**PROSPECTIVE JUROR:** I WORK WITH TWO OTHER GUYS, BUT

I'M PARTNERED WITH MY UNCLE.

**THE COURT:** OKAY. SO GIVEN THAT YOU CONTROL YOUR SCHEDULE, DO YOU THINK YOU COULD SERVE AS A JUROR AND DO YOUR JOB IN THE AFTERNOONS AND WEEKENDS AND EVENINGS?

**PROSPECTIVE JUROR:** WELL, A LOT OF MY JOB IS THROUGHOUT THE WEEK, AND BEING THAT I'M THE BOSS MAINLY, SO IF I'M NOT WORKING, I'M NOT GETTING PAID.

SO IT WOULD BE FINANCIAL, BUT I COULD MAKE SOME ADJUSTMENTS IF NEED BE.

**THE COURT:** IT SEEMS TO ME THESE DAYS ELECTRICIANS ARE -- PEOPLE -- LIKE, YOU DO ANYTHING TO GET THE ELECTRICIAN TO COME.

**PROSPECTIVE JUROR:** YEAH, THEY TALK ABOUT IT RIGHT NOW.

**THE COURT:** SO IF YOU HAD TO KIND OF GO LATER INTO THE DINNER HOUR OR SOMETHING LIKE THAT, PERHAPS IT WOULDN'T BE SUCH A HARDSHIP?

**PROSPECTIVE JUROR:** NOT SO MUCH. MOST OF MY WORK DO COME FROM THE MORNING TIMES. WE TRY TO DO IT FROM THE MORNING TO THE AFTERNOON TO GET IN NOBODY'S WAY DURING DINNERTIME OR IN CASE OF A PROJECT IT GOES ON LONGER.

**THE COURT:** DO YOU DO A LOT OF WORK THROUGH GENERAL CONTRACTORS, OR IS THIS DIRECT WITH THE PERSON WHO NEEDS THE WORK DONE?

**PROSPECTIVE JUROR:** I WOULD SAY IT'S MORE LIKE A

60/40, 40 TO GENERALS AND THE 60 TO ACTUALLY OTHER PEOPLE HIRING ME.

**THE COURT:** OKAY. ALL RIGHT.

IT LOOKS LIKE YOU'VE USED AI TO ASSIST YOU IN SOME OF YOUR HOBBY TYPE WORK?

**PROSPECTIVE JUROR:** YES, I DO.

**THE COURT:** COULD YOU EXPLAIN THAT?

**PROSPECTIVE JUROR:** ON MY OFF TIMES I ACTUALLY DO GAME DEVELOPMENT ON THE SIDE AND MAKE LITTLE VIDEO GAMES, AND I USUALLY USE OPENAI, BUT I HAVE STARTED TO OPEN UP TO USING OTHER ONES, AND IT'S SPORADICALLY, MAYBE FOR CODING OUT BUGS, IF I HAVE ANY BUGS IN MY GAMES OR ANYTHING LIKE THAT, BUT NOTHING CRAZY, NOR DO I USE IT TOO MUCH IN MY PERSONAL LIFE.

**THE COURT:** OKAY. ANY CONCERNS ABOUT GIVING A FAIR TRIAL TO THE PARTIES?

**PROSPECTIVE JUROR:** NOPE, NONE AT ALL.

**THE COURT:** OKAY. ANYTHING ELSE YOU WOULD LIKE US TO THINK ABOUT?

**PROSPECTIVE JUROR:** OUTSIDE MY FINANCIAL SITUATION, NOT AT ALL.

**THE COURT:** OKAY. ALL RIGHT.

ALL RIGHT. WE'VE GONE THROUGH ONE SET HERE.

I HAVE SOME INSTRUCTIONS. WE'RE GOING TO TAKE A LITTLE BREAK. AS I TOLD YOU, I REALLY HAVE TO MAKE SURE THE COURT REPORTER GETS A BREAK.

I DON'T WANT TO BRING YOU-ALL BACK TOMORROW. I WANT TO GET DONE WITH THIS PROCESS TODAY. SO WE AREN'T GOING TO TAKE LONG, LONG BREAKS BECAUSE THE LONGER THE BREAK I TAKE, THE LONGER THIS PROCESS IS GOING TO TAKE.

I'M GOING TO GIVE YOU SOME INSTRUCTIONS. EVERYBODY LISTEN UP.

WE'RE GOING TO TAKE A -- IT'S 11:09. WE'RE GOING TO TAKE A RECESS UNTIL 11:30, WHICH IS 20 MINUTES. THERE ARE BATHROOMS ON THIS FLOOR AND ONE FLOOR DOWN, ET CETERA. SO GO AHEAD AND TAKE A QUICK BREAK, AND THEN I'M GOING TO TALK TO ANOTHER 20 WHO ARE GOING TO COME UP HERE.

SO HERE'S WHERE IT GETS TRICKY, BUT IT MAKES IT FASTER.

EVERYBODY TAKE A LOOK AT WHO YOU'RE SITTING NEXT TO, AND THIS SET OF 20, YOU'RE GOING TO SIT IN THIS EXACT SAME WAY, RIGHT, NEXT TO THE PEOPLE WHO YOU'RE SITTING NEXT TO IN THE FIRST ROW AND IN THE SECOND ROW, RIGHT?

SO, MR. CUENCO, WHY DON'T YOU -- ACTUALLY, DANNY, CAN YOU GO THERE AND SHOW THEM?

SO YOU'RE GOING TO SIT IN THOSE FIRST TWO ROWS, AND I'M GOING TO BRING UP ANOTHER 20, AND THE FOLLOWING PEOPLE -- I'M GOING TO HAVE THE FOLLOWING PEOPLE -- YEAH, SO HE'S GOING TO SHOW YOU. THAT FIRST ROW AND THE SECOND ROW, THAT'S WHERE YOU-ALL ARE GOING TO SIT WHEN YOU COME BACK FROM THE BREAK. OKAY?

AND I'M GOING TO HAVE THE FOLLOWING INDIVIDUALS STAND UP,

AND I DON'T WANT YOU TO SIT DOWN WHEN YOU COME BACK, BECAUSE WE'RE GOING TO BRING YOU UP FRONT.

SO LAST NAME PEREZ ANGELES.

**PROSPECTIVE JUROR:** WHAT WAS THE LAST NAME?

**THE COURT:** KIRA. YEAH, CAN YOU STAND.

ALL RIGHT. SO LIKE I SAID, DON'T SIT BACK THERE. WE'RE GOING TO PULL YOU UP HERE.

LAST NAME WOLDAY.

LAST NAME SOBTI.

LAST NAME CABRERA.

LAST NAME MINGOA.

BLOSEN.

MARTINEZ.

HUANG, H-U-A-N-G.

VICENCIO.

ECCLESTON.

MALARDINO.

THIS ONE IS REALLY TOUGH. SHAHVEKILIAN.

SUTIONO.

STRAY.

MAI.

LIANG.

MAZZOLA.

CULBERSON.

VANGRAAFEILAND.

11:12:23 AND THAI.

11:12:25 SO IF YOU'RE STANDING UP, WHEN YOU COME BACK INTO THE COURTROOM, JUST STAND IN THAT AREA OVER THERE, AND JUST WAIT FOR MR. CUENCO TO DIRECT YOU TO WHERE YOU SHOULD BE SITTING. OKAY? DON'T SIT BACK IN THAT -- IN THOSE PEWS.

11:12:40 ALL RIGHT. HAVE A SEAT.

11:12:45 THE NEXT THING THESE ARE MY "DO-NOT ORDERS."

11:12:48 DURING THIS PERIOD OF TIME I AM STILL QUESTIONING YOU. YOU ARE ORDERED, FIRST, DO NOT DISCUSS THIS CASE WITH ANYONE; DO NOT BE TWEETING OR XING, OR WHATEVER THEY CALL IT THESE DAYS, I DO NOT DO ANY OF THAT STUFF. DO NOT CALL ANYONE, DO NOT TALK TO ANYONE, DO NOT USE ANY SOCIAL MEDIA.

11:13:08 IT'S REALLY IMPORTANT THAT WE KNOW WHAT YOUR OPINIONS ARE, AND WE'VE HEARD A LOT OF PEOPLE TALK, AND I STILL NEED TO TALK TO MORE OF YOU. SO I WANT TO KNOW YOUR OPINION. I DON'T WANT YOU OUT THERE LOOKING FOR INFORMATION, DOING ANY RESEARCH, DOING -- USING ANY INTERNET PLATFORM, NOTHING. DO NOT INVESTIGATE THIS CASE IN ANY WAY.

11:13:33 IT'S A SHORT BREAK. GO TO THE BATHROOM. CHECK YOUR OWN PERSONAL EMAILS, THAT'S FINE. BUT DO NOT COMMUNICATE IN ANY WAY WITH ANYONE ABOUT THIS CASE. DO NOT TALK TO ANYONE IN ANY WAY ABOUT THIS CASE. OKAY?

11:13:48 JUST SAY NO. DO NOT. SAY NO, NO, NO.

11:13:57 AND THEN WE CAN GET THROUGH THIS.

11:13:59 ONCE WE GET BACK -- AND I WOULD SAY THE MEDIA, THE PRESS,

THE PARTIES ARE ALL ORDERED NOT TO COMMUNICATE WITH YOU AS WELL. NOT YOUR FAMILY MEMBERS, NOT YOUR EMPLOYER. NO ONE.

WHEN YOU GET BACK -- AND THEN I'LL GET THROUGH ANOTHER SET OF DISCUSSIONS. AFTER I DO THAT, THEN THE PARTIES ARE GOING TO BE ABLE TO ASK YOU A FEW QUESTIONS.

AND THEN WE'LL GO THROUGH THE NEXT ROUND AFTER THAT. OKAY?

ALL RIGHT. SO AT THIS POINT YOU'RE ALL -- YOU MAY ALL LEAVE THE COURTROOM. COME BACK. THE COURTROOM DOORS WILL BE CLOSED TO YOU UNTIL 11:30.

**THE CLERK:** COURT IS IN RECESS.

(JURY OUT AT 11:15 A.M.)

**THE COURT:** THE RECORD WILL REFLECT THAT THE VENIRE HAS LEFT THE COURTROOM.

**THE CLERK:** EXCUSE ME, YOUR HONOR. SOMEONE IS SEATED IN THE GALLERY.

THE COURT: IS THAT A JUROR?

**THE CLERK:** EXCUSE ME, SIR, ARE YOU A PROSPECTIVE JUROR?

**THE COURT:** OKAY. AS I MENTIONED IN MY PRETRIAL ORDER, YOU-ALL CAN USE THE BATHROOMS HERE IN OUR JURY ROOM. THERE ARE TWO. DO NOT GO INTO THE SECURED HALLWAY. YOU CAN GO IN AND OUT THE SAME WAY. WE'LL STAND IN RECESS UNTIL 11:30.

**THE CLERK:** WE'RE IN RECESS.

(RECESS FROM 11:16 A.M. UNTIL 11:39 A.M.)

11:39:16 (JURY IN AT 11:39 A.M.)

11:39:16 **THE COURT:** OKAY. WE ARE BACK ON THE RECORD. THE 11:39:19 RECORD WILL REFLECT THAT THE PARTIES ARE PRESENT, AND THE JURY 11:39:22 PANEL IS BACK.

11:39:23 WELCOME TO THE FRONT. WE'LL KEEP GOING.

11:39:32 IT'S BEEN MY EXPERIENCE OVER TIME THAT IF JURORS ARE 11:39:35 LISTENING, THEN YOU KIND OF KNOW WHAT QUESTIONS ARE COMING AND 11:39:39 THINGS START TO MOVE A LITTLE BIT MORE QUICKLY.

11:39:43 ANYWAY.

11:39:55 OKAY. PEREZ. PEREZ. HOW DO YOU PRONOUNCE IT?

11:40:02 **PROSPECTIVE JUROR:** PEREZ.

11:40:02 **THE COURT:** I DON'T THINK THAT MIC IS ON, MR. CUENCO. 11:40:12 CAN YOU CHECK THAT?

11:40:12 **THE CLERK:** IT SHOULD BE ON.

11:40:13 **THE COURT:** OKAY. CAN YOU TRY AGAIN?

11:40:27 **THE CLERK:** MIC CHECK.

11:40:29 **THE COURT:** THANK YOU.

11:40:30 DO YOU USE BOTH LAST NAMES?

11:40:33 **PROSPECTIVE JUROR:** JUST PEREZ.

11:40:39 **THE COURT:** OKAY. SO IN TERMS OF YOUR WORK 11:40:43 COMMITMENT, YOU HEARD ME TALK ABOUT OUR SCHEDULE. DO YOU THINK 11:40:50 THAT YOU CAN MANAGE BOTH BEING A JUROR AND DOING YOUR WORK?

11:40:53 **PROSPECTIVE JUROR:** YES.

11:40:54 **THE COURT:** IN TERMS OF MR. MUSK, WHAT DO YOU THINK 11:41:04 ABOUT BEING ABLE TO TREAT HIM FAIRLY?

11:41:06 **PROSPECTIVE JUROR:** I WOULD BE ABLE TO DO THAT?

11:41:08 **THE COURT:** YOU WOULD OR WOULD NOT?

11:41:10 **PROSPECTIVE JUROR:** I WOULD, YES.

11:41:13 **THE COURT:** OKAY. EVEN THOUGH YOU'VE NOT BEEN PARTICULARLY HAPPY WITH HIS ACTIONS?

11:41:17 **PROSPECTIVE JUROR:** YES.

11:41:18 **THE COURT:** OKAY. I STILL CAN'T HEAR YOU FOR SOME REASON. MAYBE IT'S THE WAY YOU'RE HOLDING THE MIC.

11:41:23 **PROSPECTIVE JUROR:** I THINK IT'S TURNING OFF.

11:41:30 **THE COURT:** MAYBE IT'S BATTERIES?

11:41:31 **THE CLERK:** IT WAS A FRESH SET.

11:42:00 (PAUSE IN PROCEEDINGS.)

11:42:00 **THE COURT:** OKAY. LET'S TRY IT AGAIN.

11:42:02 I HEARD YOU SAY YES; IS THAT RIGHT?

11:42:04 **PROSPECTIVE JUROR:** YES.

11:42:05 **THE COURT:** OKAY. CAN YOU TELL ME A LITTLE BIT ABOUT YOUR JOB?

11:42:15 **PROSPECTIVE JUROR:** YES. I AM A PROGRAM MANAGER FOR A NONPROFIT IN SAN FRANCISCO, SPECIFICALLY THE SAN FRANCISCO HIV PLANNING COUNCIL.

11:42:28 **THE COURT:** OKAY.

11:42:28 **PROSPECTIVE JUROR:** SO IT'S VERY BUREAUCRATIC WORK.

11:42:31 **THE COURT:** AND WHAT ARE YOUR JOB DUTIES?

11:42:34 **PROSPECTIVE JUROR:** I MANAGE ONE PERSON UNDER ME. AND THEN IT'S MOSTLY WORK FROM HOME, SO IT'S VERY FLEXIBLE.

**THE COURT:** OKAY. BUT IN TERMS OF -- YOU SAID "BUREAUCRATIC." WHAT EXACTLY -- WHAT DO YOU DO? WHAT IS YOUR DAY LIKE?

**PROSPECTIVE JUROR:** YEAH. SO I HAVE A COUPLE OF MEETINGS WITH OTHER COUNCIL MEMBERS AS PART OF THAT COMMUNITY PLANNING COUNCIL THROUGHOUT THE MONTH, AND THEN THEY ARE ESSENTIALLY LOOKING THROUGH PRESENTATIONS FROM COMMUNITY MEMBERS. AND THEN EVENTUALLY WE GET THE FUNDING FROM DIFFERENT AGENCIES, AND THAT'S WHAT THEY DECIDE. THAT'S KIND OF THE BIG DECISION THROUGHOUT THE YEAR IS WHERE FUNDING GOES.

**THE COURT:** ARE YOU WRITING PROPOSALS TO GET FUNDING? OR WHAT IS YOUR ROLE IN THAT PROCESS?

**PROSPECTIVE JUROR:** SO MY ROLE IS JUST TO MANAGE THE GROUP AS A WHOLE. SO IT'S MORE PEOPLE MANAGING.

**THE COURT:** SO YOU MANAGE PEOPLE?

**PROSPECTIVE JUROR:** YES.

**THE COURT:** AND YOU LIKE DOING THAT?

**PROSPECTIVE JUROR:** YES.

**THE COURT:** AND YOU LIKE WORKING IN GROUPS?

**PROSPECTIVE JUROR:** YES.

**THE COURT:** OKAY. GOOD. ANY CONCERNS ABOUT THAT?

**PROSPECTIVE JUROR:** NO.

**THE COURT:** ALL RIGHT. LET'S GO AHEAD AND PASS IT.

IS THE LAST NAME WOLDAY?

**PROSPECTIVE JUROR:** YES, THAT'S CORRECT.

11:43:50 **THE COURT:** GOOD MORNING.

11:43:53 **PROSPECTIVE JUROR:** GOOD MORNING, YOUR HONOR.

11:44:03 **THE COURT:** WHERE WERE YOU BORN?

11:44:06 **PROSPECTIVE JUROR:** I WAS BORN IN ERITREA. ASMARA.

11:44:09 **THE COURT:** AND WHERE --

11:44:12 **PROSPECTIVE JUROR:** IT'S LOCATED IN EAST AFRICA NEXT 11:44:15 TO ETHIOPIA.

11:44:16 **THE COURT:** OKAY. WHEN DID YOU COME TO THE STATES?

11:44:18 **PROSPECTIVE JUROR:** I CAME HERE IN 2017.

11:44:23 **THE COURT:** OKAY. AND YOU'RE WORKING FOR WELLS 11:44:27 FARGO?

11:44:27 **PROSPECTIVE JUROR:** THAT'S CORRECT.

11:44:27 **THE COURT:** AND DO THEY PAY FOR JURY SERVICE?

11:44:29 **PROSPECTIVE JUROR:** YES, THEY DO.

11:44:37 **THE COURT:** IN TERMS OF YOUR FAITH, DO YOU HAVE ANY 11:44:40 CONCERNS GIVEN MY EXPLANATION ABOUT YOUR ABILITY TO SERVE AS A 11:44:43 JUROR?

11:44:43 **PROSPECTIVE JUROR:** YES, I AM ABLE TO SERVE AS A 11:44:45 JUROR.

11:44:45 **THE COURT:** OKAY. SO YOU'RE NOT CONCERNED THAT 11:44:47 THAT'S SOMEHOW CONTRARY TO YOUR CASE?

11:44:51 **PROSPECTIVE JUROR:** NO. I BELIEVE THAT IF SOMEONE IS 11:44:58 NOT TREATED FAIRLY, THAT'S SOMETHING THAT I WOULD THINK THAT'S 11:45:01 NOT GOOD. SO --

11:45:03 **THE COURT:** OKAY. DO YOU USE AI?

**PROSPECTIVE JUROR:** YES.

**THE COURT:** AND WHAT IS YOUR VIEW ON AI?

**PROSPECTIVE JUROR:** I USE AI AND I'M POSITIVE TOWARDS IT. I USE IT FOR WORK SOMETIMES AND -- ACTUALLY MOST OF THE TIME BECAUSE THEY WANT US TO USE IT MORE OFTEN AND -- YEAH.

**THE COURT:** AND HOW DO THEY WANT YOU TO USE IT? CAN YOU EXPLAIN?

**PROSPECTIVE JUROR:** SO I USE FOR CODE SUGGESTION AND DOCUMENTATION, AND MOST OF THE TIME IT'S ENCRYPTED THAT WE WORK. SO WE DON'T GIVE IT TOO MUCH TO THE AI. LIKE, I USE CLOUD, AND IT'S MORE LIKE DOCUMENT SUGGESTIONS OR THE CODE SUGGESTIONS SOMETIMES.

**THE COURT:** OKAY. AND YOU HAVE NO CONCERNS ABOUT BEING ABLE TO TREAT THE PARTIES FAIRLY; IS THAT FAIR?

**PROSPECTIVE JUROR:** YES, THAT'S CORRECT.

**THE COURT:** OKAY. ANYTHING YOU WOULD LIKE THE PARTIES TO THINK ABOUT IN TERMS OF YOUR SERVICE?

**PROSPECTIVE JUROR:** NO.

**THE COURT:** OKAY. LET'S GO AHEAD AND PASS IT DOWN.

WAS THE LAST NAME SOBTI?

**PROSPECTIVE JUROR:** SOBTI.

**THE COURT:** GOOD MORNING. AND WHEN DID YOU COME FROM INDIA?

**PROSPECTIVE JUROR:** 1997.

**THE COURT:** WHAT KIND OF COMPANY IS 4 MAIN STREET?

11:46:37 **PROSPECTIVE JUROR:** SO WE ARE BUILDING SOFTWARE TO TAKE PHONE CALLS ON BEHALF OF SMALL BUSINESSES.

11:46:42 **THE COURT:** OKAY. AND AS A COMPUTER ENGINEER, CAN YOU TELL ME WHAT YOU'RE DOING IN THAT PROCESS?

11:46:47 **PROSPECTIVE JUROR:** YES. SO DAY-TO-DAY I AM WRITING SOFTWARE, AND ALSO IN BUSINESS, CUSTOMER MEETINGS AND SUCH. AND ALSO WRITING SOFTWARE.

11:47:02 **THE COURT:** ARE YOU USING AI TO HELP WRITE CODE OR NOT?

11:47:05 **PROSPECTIVE JUROR:** YES, VERY MUCH.

11:47:06 **THE COURT:** OKAY. IN TERMS OF BEING FAIR TO BOTH SIDES, DO YOU HAVE ANY CONCERNS ABOUT YOUR ABILITY TO BE FAIR IN THIS CASE?

11:47:21 **PROSPECTIVE JUROR:** NO.

11:47:21 **THE COURT:** NO CONCERNS?

11:47:22 **PROSPECTIVE JUROR:** NO.

11:47:23 **THE COURT:** AND THE COMPANY 4 MAIN STREET, THAT'S YOUR OWN COMPANY; IS THAT RIGHT?

11:47:27 **PROSPECTIVE JUROR:** YES, ME AND MY COFOUNDER.

11:47:29 **THE COURT:** HOW MANY EMPLOYEES DO YOU HAVE?

11:47:37 **PROSPECTIVE JUROR:** JUST THE TWO OF US, AND WE HAVE SOME CONTRACTORS OFFSHORE.

11:47:40 **THE COURT:** OKAY. SO GIVEN THAT YOU'RE THE BOSS THEN, YOU CAN MANAGE BEING A JUROR AND GETTING YOUR WORK DONE?

11:47:47 **PROSPECTIVE JUROR:** YES.

11:47:53 **THE COURT:** WHEN DID YOU GRADUATE FROM PRINCETON?

11:47:56 **PROSPECTIVE JUROR:** 2005, I BELIEVE.

11:48:00 **THE COURT:** NEAR AND DEAR TO MY HEART. I'M A TIGER.
11:48:04 OKAY. LET'S GO AHEAD AND PASS IT BACK.
11:48:06 LAST NAME CABRERA?

11:48:09 **PROSPECTIVE JUROR:** YEAH.

11:48:09 **THE COURT:** GOOD MORNING.

11:48:10 **PROSPECTIVE JUROR:** GOOD MORNING.

11:48:11 **THE COURT:** YOU'VE HAD SOME FINANCIAL CONCERNS?

11:48:13 **PROSPECTIVE JUROR:** YEAH, MY JOB DOES NOT PAY ME.

11:48:15 **THE COURT:** OKAY. AND IN TERMS OF OUR SCHEDULE, WHAT 11:48:33 KIND OF WORK DO YOU DO AS A LAB TECH, AND CAN YOU MANAGE IT 11:48:36 GIVEN OUR SCHEDULE, WORKING OFF HOURS OR SOMETHING?

11:48:40 **PROSPECTIVE JUROR:** NOT REALLY. WE WORK COHESIVELY, 11:48:44 WITH MY COWORKERS. SO I DO STUFF IN THE MORNING AND THEN MY 11:48:50 COWORKERS KIND OF FOLLOW AFTER. SO THEY WOULD JUST DO MY JOB. 11:48:55 SO THERE'S REALLY NOTHING FOR ME TO DO AFTER.
11:49:00 AND I ALSO WORK FOR ROVER. SO I ALSO HAVE CLIENTS SET UP 11:49:04 FOR THE TIME THAT WE'RE SUPPOSED TO BE HERE.

11:49:07 **THE COURT:** AND WHAT IS ROVER?

11:49:08 **PROSPECTIVE JUROR:** IT'S A DOG WALKING COMPANY.

11:49:17 **THE COURT:** IN TERMS OF YOUR BILLS OR AND THINGS LIKE 11:49:19 THAT, IS THERE ANYONE WHO COULD HELP WITH THE FINANCES?

11:49:22 **PROSPECTIVE JUROR:** NO. JUST ME.

11:49:28 **THE COURT:** OKAY. LET'S GO AHEAD AND PASS IT BACK.

LAST NAME MINGOA?

**PROSPECTIVE JUROR:** MINGOA, YES.

**THE COURT:** DID I PRONOUNCE THAT RIGHT?

**PROSPECTIVE JUROR:** YES.

**THE COURT:** GOOD MORNING.

**PROSPECTIVE JUROR:** GOOD MORNING.

**THE COURT:** DOES THE CITY OF DAILY CITY PAY FOR YOU TO BE HERE?

**PROSPECTIVE JUROR:** TO MY KNOWLEDGE I BELIEVE THEY DO. HOWEVER, MY STATUS AS A PART-TIMER I THINK PREVENTS ME FROM GETTING THAT BENEFIT. BUT I WOULD HAVE TO BE DOUBLY SURE.

**THE COURT:** OKAY. IN TERMS OF OUR SCHEDULE, IS THERE -- SINCE YOU ARE -- WELL, GIVE ME YOUR PART-TIME SCHEDULE. WHEN DO YOU WORK?

**PROSPECTIVE JUROR:** I WORK FIVE DAYS A WEEK MONDAY THROUGH FRIDAY FOR ABOUT SIX HOURS; GENERALLY LIKE 10:00 TO 4:00.

**THE COURT:** OKAY. AND THAT'S PART-TIME?

**PROSPECTIVE JUROR:** YEAH.

**THE COURT:** WHAT ARE YOUR JOB DUTIES?

**PROSPECTIVE JUROR:** IT'S KIND OF A MIXED BAG. I HELP MANAGE A RECREATION FACILITY. IT'S NEXT TO A PARK. SO IT'S A LOT OF WORK ADMINISTRATIVE WORK, SOME DATA ENTRY, DATA ANALYSIS. WE HAVE A FOOD PROGRAM, SO THERE'S A LITTLE BIT OF FOOD SERVICE AND STUFF OF THAT NATURE. SERVING THE LOCAL

POPULATION, MOSTLY SENIORS.

**THE COURT:** AND IS THERE A WAY -- GIVEN WHEN IT'S OPEN, COULD YOU WORK IN THE AFTERNOONS?

**PROSPECTIVE JUROR:** WE WOULD CLOSE BY THE TIME I WOULD GET BACK.

**THE COURT:** OKAY. HOW ABOUT ARE YOU OPEN SEVEN DAYS A WEEK?

**PROSPECTIVE JUROR:** ONLY MONDAY THROUGH FRIDAY.

**THE COURT:** ALL RIGHT. ARE YOU LIVING AT HOME OR ARE YOU LIVING ON YOUR OWN?

**PROSPECTIVE JUROR:** I LIVE WITH MY TWO SIBLINGS.

**THE COURT:** SO IN TERMS OF THE FINANCIAL CIRCUMSTANCES, IF YOU WERE HERE AND COULDN'T BRING INCOME IN FOR THE THREE-PLUS WEEKS, WOULD THEY BE ABLE TO COVER YOU?

**PROSPECTIVE JUROR:** THEY WOULD, YES.

**THE COURT:** OKAY. ANY CONCERNS ABOUT SERVING OTHER THAN THAT?

**PROSPECTIVE JUROR:** NO, BEHIND THE, I GUESS, MINOR INCONVENIENCE FINANCIALLY.

**THE COURT:** OKAY. YOU SEEM TO BE PARTICULARLY NEGATIVE ON AI?

**PROSPECTIVE JUROR:** AS A CONCEPT, YEAH, BUT NOTHING PARTICULARLY RELEVANT.

**THE COURT:** AND YOU WOULDN'T HOLD THE FACT THAT THESE FOLKS ARE ENGAGED IN AN AI BUSINESS AGAINST THEM?

**PROSPECTIVE JUROR:** NO.

**THE COURT:** DO YOU THINK YOU COULD BE FAIR?

**PROSPECTIVE JUROR:** YES.

**THE COURT:** OKAY. THANK YOU. LET'S PASS IT. IS IT BLOSEN?

**PROSPECTIVE JUROR:** YES, BLOSEN.

**THE COURT:** GOOD AFTERNOON OR GOOD MORNING. WE'RE STILL IN THE MORNING.

**PROSPECTIVE JUROR:** THANK YOU.

**THE COURT:** TAIWAN. WHEN DID YOU MOVE FROM TAIWAN?

**PROSPECTIVE JUROR:** WHEN? TAIWAN?

**THE COURT:** YES.

**PROSPECTIVE JUROR:** WHEN DID I COME? 1993.

**THE COURT:** OKAY. AND YOU'RE AN ANALYST? NO, YOU'RE A --

**PROSPECTIVE JUROR:** MY HUSBAND.

**THE COURT:** IS AN ANALYST?

**PROSPECTIVE JUROR:** YES, HIGH TECH.

**THE COURT:** OKAY. DO YOU HAVE -- I COULDN'T TELL. SO YOU SAY UNEMPLOYED BUT ALSO AN INTERIOR DESIGNER?

**PROSPECTIVE JUROR:** OH. I AM A PERFORMING DANCER AND I ALSO DO INTERIOR DESIGN. I USED TO BE AN INTERIOR ARCHITECT AND NOW I DO PART-TIME FOR INTERIOR DESIGN.

**THE COURT:** OKAY. AND DO YOU HAVE ANY CONCERNS FINANCIALLY ABOUT SERVING?

11:53:34 **PROSPECTIVE JUROR:** NO. I THINK THE SCHEDULE WILL BE AN ISSUE BECAUSE I NEED TO BE ON THE DANCE FLOOR EVERY DAY, BUT BASED ON THE SCHEDULE, I THINK I CAN MANAGE THAT.

11:53:45 **THE COURT:** OKAY.

11:53:46 **PROSPECTIVE JUROR:** YEAH, AND THE PROJECT, I PROBABLY HAVE TO PUT IT ON HOLD FOR THREE WEEKS.

11:53:50 **THE COURT:** OKAY. AND IT DOESN'T SOUND LIKE YOU HAVE ANY STRONG OPINIONS ONE WAY OR THE OTHER ABOUT ANY OF THE PARTIES?

11:53:58 **PROSPECTIVE JUROR:** NOT AT ALL. MY FAMILY BOTH -- MY SON AND MY HUSBAND BOTH ARE IN THE HIGH-TECH INDUSTRY, AND I'VE BEEN USING AI AND ALSO, YOU KNOW, LIKE THE TESLA, WE REALLY LIKE THE FSD, ALSO AI AS WELL. I THINK THAT'S REALLY BENEFIT OUR LIFE A LOT.

11:54:19 **THE COURT:** AND IS IT HELPING WITH INTERIOR DESIGN?

11:54:22 **PROSPECTIVE JUROR:** I THINK SO, TOO, YES. I DID USE THAT A LITTLE BIT TO WORK, BUT MAINLY FOR EMAIL.

11:54:29 **THE COURT:** OH, MAINLY FOR EMAIL.

11:54:30 **PROSPECTIVE JUROR:** AND PLANNING THE TRIPS.

11:54:32 **THE COURT:** YES, I'VE HEARD IT'S GOOD FOR THAT.

11:54:35 **PROSPECTIVE JUROR:** YEAH.

11:54:35 **THE COURT:** OKAY. ANY CONCERNS ABOUT SERVING?

11:54:40 **PROSPECTIVE JUROR:** SO FAR, NO.

11:54:41 **THE COURT:** OKAY. THANK YOU. LET'S GO AHEAD, AND THE NEXT, I THINK IS MARTINEZ THE LAST NAME?

11:54:47 **PROSPECTIVE JUROR:** MARTINEZ, YEAH.

11:54:49 **THE COURT:** ALL RIGHT. GOOD MORNING.

11:54:58 ALL RIGHT. YOU WORK FOR THE CITY AND COUNTY OF SAN FRANCISCO, AND THEY DO PAY FOR YOU TO BE HERE; RIGHT?

11:55:04 **PROSPECTIVE JUROR:** YES, I'M ACTUALLY ON ADA RIGHT NOW, SO I'M NOT WORKING RIGHT NOW.

11:55:14 **THE COURT:** OKAY. AND IS THERE ANYTHING ABOUT THAT SITUATION FOR WHICH YOU'RE ON LEAVE THAT WOULD PROHIBIT YOU FROM BEING ABLE TO SERVE AS A JUROR?

11:55:22 **PROSPECTIVE JUROR:** TOMORROW I ACTUALLY HAVE A PRE-OP APPOINTMENT BECAUSE I'LL BE HAVING SURGERY ON THE 12TH.

11:55:29 **THE COURT:** OKAY. YOU DIDN'T PUT THAT IN YOUR QUESTIONNAIRE.

11:55:33 **PROSPECTIVE JUROR:** THAT IS ACTUALLY ALL NEW.

11:55:35 **THE COURT:** OKAY. ALL RIGHT. LET'S GO AHEAD AND PASS IT. I'M NOT GOING TO HAVE YOU MISS SURGERY.

11:55:41 THE LAST NAME IS HUANG.

11:55:46 **PROSPECTIVE JUROR:** YES.

11:55:47 **THE COURT:** DID I SAY THAT RIGHT? DID I SAY IT CORRECTLY? YOU TELL ME HOW TO SAY IT PROPERLY.

11:55:52 **PROSPECTIVE JUROR:** HUANG.

11:55:53 **THE COURT:** AND WHEN DID YOU COME FROM CHINA?

11:56:00 **PROSPECTIVE JUROR:** OH, WHAT TIME? 2011.

11:56:11 **THE COURT:** 2011?

11:56:12 **PROSPECTIVE JUROR:** YEAH.

11:56:16 **THE COURT:** AND YOU'RE WORKING FOR THE SAN FRANCISCO SCHOOL DISTRICT?

11:56:19 **PROSPECTIVE JUROR:** YEAH.

11:56:19 **THE COURT:** IT'S A PRETTY NEW JOB IT LOOKS LIKE.

11:56:22 **PROSPECTIVE JUROR:** ALMOST 11 MONTHS.

11:56:25 **THE COURT:** YES. SO WHAT WERE YOU DOING BEFORE THAT?

11:56:28 **PROSPECTIVE JUROR:** BEFORE? I WORKED FOR THE AIRPORT. I WORKED FOR THE AIRPORT.

11:56:38 **THE COURT:** YOU WORKED FOR THE AIRPORT?

11:56:39 **PROSPECTIVE JUROR:** YEAH.

11:56:40 **THE COURT:** AND ALSO DOING JANITORIAL WORK OR WHAT WERE YOU DOING?

11:56:48 **PROSPECTIVE JUROR:** THE COMPANY NAME IS ALLIANCE GROUND INTERNATIONAL, THE COMPANY.

11:56:52 **THE COURT:** OKAY. HOW -- WHEN YOU CAME BACK IN 2011, WHAT KIND OF JOBS HAVE YOU GENERALLY HAD OVER THE LAST, LET'S SAY FIVE YEARS?

11:57:15 **PROSPECTIVE JUROR:** FIVE YEARS? I THINK ALMOST FOUR YEARS BEFORE THE JOBS.

11:57:24 **THE COURT:** OKAY. THAT WAS AT THE AIRPORT?

11:57:26 **PROSPECTIVE JUROR:** YEAH, AT THE OAKLAND AIRPORT.

11:57:29 **THE COURT:** AND WHEN YOU WORKED AT THE AIRPORT AND HERE AT SAN FRANCISCO UNIFIED, HAVE YOU BEEN USING ENGLISH THE WHOLE TIME?

11:57:35 **PROSPECTIVE JUROR:** SOMETIMES, THIS JOB, BECAUSE I

DON'T NEED TO COMMUNICATE FOR THE PERSON ALWAYS.

**THE COURT:** OKAY. WE'VE BEEN IN COURT FOR A FEW HOURS HERE. HAVE YOU UNDERSTOOD WHAT I'VE BEEN SAYING AND TALKING TO PEOPLE ABOUT?

**PROSPECTIVE JUROR:** MAYBE 80 PERCENT. NOT 100 PERCENT. MY ENGLISH IS NOT VERY GOOD. SO, YEAH.

**THE COURT:** HAVE YOU TAKEN ENGLISH CLASSES?

**PROSPECTIVE JUROR:** NO.

**THE COURT:** HOW HAVE YOU LEARNED YOUR ENGLISH?

**PROSPECTIVE JUROR:** BEFORE I GO TO CITY COLLEGE AND TAKE A CLASS.

**THE COURT:** OKAY. CITY COLLEGE?

**PROSPECTIVE JUROR:** YEAH.

**THE COURT:** HAVE YOU HEARD OF ELON MUSK?

**PROSPECTIVE JUROR:** NO.

**THE COURT:** NO. HAVE YOU HEARD OF ARTIFICIAL INTELLIGENCE? THE CONCEPT OF AI OR ARTIFICIAL INTELLIGENCE, HAVE YOU HEARD ABOUT THAT AT ALL?

**PROSPECTIVE JUROR:** I KNOW THIS NAME, BUT A LOT OF INFORMATION I DON'T KNOW.

**THE COURT:** OKAY. OKAY. THANK YOU. GO AHEAD AND PASS IT.

OKAY. I THINK I HAVE THE LAST NAME IS VICENCIO.

**PROSPECTIVE JUROR:** VICENCIO.

**THE COURT:** OKAY. GOOD MORNING.

**PROSPECTIVE JUROR:** GOOD MORNING.

**THE COURT:** SIR, WHEN DID YOU COME FROM THE PHILIPPINES?

**PROSPECTIVE JUROR:** 2015.

**THE COURT:** NOW, YOU SAY YOU'RE WORKING PART-TIME. YOU'RE DOING UBER, THAT'S YOUR PRIMARY SOURCE OF INCOME?

**PROSPECTIVE JUROR:** YES.

**THE COURT:** OKAY. IN TERMS OF THAT, ARE YOU -- DO YOU LIVE WITH OTHER ADULTS?

**PROSPECTIVE JUROR:** NO.

**THE COURT:** OKAY. SO WHO -- THERE'S A QUESTION HERE ABOUT FAMILY AND FAMILY WITH -- LET ME START FROM THE BEGINNING.

DO YOU LIVE ALONE OR WITH OTHER PEOPLE?

**PROSPECTIVE JUROR:** I LIVE ALONE.

**THE COURT:** AND YOUR UBER WORK IS TAKING CARE OF ALL OF YOUR BILLS; IS THAT RIGHT?

**PROSPECTIVE JUROR:** YES, CORRECT.

**THE COURT:** SO IF YOU'RE SERVING AS A JUROR, THEN THAT MEANS THAT YOU CAN DO YOUR UBER WORK IN THE EVENINGS AND AFTERNOONS?

**PROSPECTIVE JUROR:** YES.

**THE COURT:** WILL THAT BE ENOUGH TO COVER YOUR FINANCES?

**PROSPECTIVE JUROR:** YES.

**THE COURT:** OKAY. HAVE YOU EVER HEARD OF ELON MUSK?

**PROSPECTIVE JUROR:** YES.

**THE COURT:** AND DO YOU HAVE ANY CONCERNS ABOUT SERVING ON A JURY?

**PROSPECTIVE JUROR:** NO.

**THE COURT:** AND HAVE YOU HEARD OF SAM ALTMAN OR GREG BROCKMAN?

**PROSPECTIVE JUROR:** NO, I DON'T KNOW THEM.

**THE COURT:** OKAY. HOW ABOUT OPENAI, HAVE YOU EVER HEARD OF THAT COMPANY?

**PROSPECTIVE JUROR:** AI, YEAH.

**THE COURT:** YOU'VE HEARD OF AI?

**PROSPECTIVE JUROR:** YES.

**THE COURT:** HAVE YOU HEARD OF THE COMPANY OPENAI?

**PROSPECTIVE JUROR:** NO.

**THE COURT:** DO YOU USE AI?

**PROSPECTIVE JUROR:** SOMETIMES.

**THE COURT:** AND HOW DO YOU USE IT?

**PROSPECTIVE JUROR:** TO CORRECT MY GRAMMAR SOMETIMES. THAT'S IT. PERSONAL.

**THE COURT:** OKAY. AND HOW OFTEN ARE YOU USING YOUR ENGLISH?

**PROSPECTIVE JUROR:** NOT OFTEN.

**THE COURT:** NOT OFTEN?

**PROSPECTIVE JUROR:** YEAH.

12:01:26 **THE COURT:** OKAY. WE'VE BEEN TALKING FOR A LONG TIME. HOW MUCH HAVE YOU UNDERSTOOD?

12:01:30 **PROSPECTIVE JUROR:** MAYBE LIKE 90 PERCENT.

12:01:32 **THE COURT:** 90 PERCENT. OKAY. WHAT KIND OF THINGS DO YOU DO WHEN YOU'RE NOT WORKING?

12:01:47 **PROSPECTIVE JUROR:** I PLAY BASKETBALL. JUST TO STAY HOME.

12:01:51 **THE COURT:** DO YOU LIKE THE WARRIORS?

12:01:53 **PROSPECTIVE JUROR:** OF COURSE. AND OTHER SPORTS.

12:01:58 **THE COURT:** AND OTHER SPORTS.

12:02:00 AND WHEN YOU PLAY BASKETBALL, ARE YOU WITH A GROUP OF PEOPLE? OR WHERE DID YOU GET THE GROUP OF PEOPLE TO PLAY BASKETBALL?

12:02:08 **PROSPECTIVE JUROR:** IN DALY CITY, GELLERT PARK, I PLAY OVER THERE.

12:02:14 **THE COURT:** OKAY. AND ARE ALL OF THE PEOPLE FROM THE PHILIPPINES?

12:02:18 **PROSPECTIVE JUROR:** DIFFERENT PEOPLE, BUT MOST OF THEM ARE FILIPINO.

12:02:21 **THE COURT:** OKAY. AND WHEN YOU ARE ALL TOGETHER AND YOU'RE PLAYING BASKETBALL AND YOU'RE HAVING FUN, ARE YOU SPEAKING ENGLISH?

12:02:26 **PROSPECTIVE JUROR:** YEAH, SOME ARE ENGLISH-SPEAKING AND SOME ARE FILIPINO.

12:02:29 **THE COURT:** OKAY. ALL RIGHT. LET'S GO AHEAD AND

12:02:38 PASS IT.

12:02:45 NOW, ECCLESTON.

12:02:49 **PROSPECTIVE JUROR:** ECCLESTON, YES.

12:02:50 **THE COURT:** I GET TO SAY GOOD AFTERNOON TO YOU.

12:03:00 NOW, WHERE WERE YOU BORN?

12:03:02 **PROSPECTIVE JUROR:** I WAS BORN IN FREMONT, 12:03:04 CALIFORNIA.

12:03:12 **THE COURT:** AND YOU'RE DOING PROPERTY MANAGEMENT?

12:03:14 **PROSPECTIVE JUROR:** YES, IT'S A FAMILY BUSINESS.

12:03:15 **THE COURT:** IT'S A FAMILY BUSINESS. AND DO YOU RUN 12:03:19 THE FAMILY BUSINESS?

12:03:20 **PROSPECTIVE JUROR:** MY PARENTS STILL RUN IT. I JUST 12:03:23 HELP OUT.

12:03:24 **THE COURT:** OKAY. IF YOU SERVE AS A JUROR, ARE THEY 12:03:26 GOING TO FIRE YOU?

12:03:28 **PROSPECTIVE JUROR:** NO. THEY WOULD UNDERSTAND. IT 12:03:31 SHOULD BE OKAY.

12:03:32 **THE COURT:** HAVE YOU TALKED -- DO THEY KNOW YOU'RE 12:03:34 HERE FOR JURY DUTY?

12:03:36 **PROSPECTIVE JUROR:** YES, THEY KNOW I'M HERE.

12:03:37 **THE COURT:** OKAY. WHAT KIND OF THINGS DO YOU DO IN 12:03:40 YOUR PROPERTY MANAGEMENT ROLE?

12:03:41 **PROSPECTIVE JUROR:** PRIMARILY I DO A LOT OF 12:03:43 LANDSCAPING. I FIX A LITTLE BIT OF THINGS. I'M STILL LEARNING 12:03:47 HOW TO DO OTHER THINGS, BUT PRIMARILY IT'S THE LANDSCAPING.

**THE COURT:** AND THE CLIENTS THAT YOUR FAMILY BUSINESS HAS, WHAT KIND OF CLIENTS?

**PROSPECTIVE JUROR:** OH, IT'S RESIDENTIAL.

**THE COURT:** IT'S ALL RESIDENTIAL?

**PROSPECTIVE JUROR:** YEAH.

**THE COURT:** WHEN YOU WORK, WHAT ARE YOUR WORK HOURS TYPICALLY?

**PROSPECTIVE JUROR:** TYPICALLY 9:00, 9:30 TO ABOUT 5:00, 5:30.

**THE COURT:** OKAY. AND YOU SAID YOU'VE ATTENDED OHLONE COLLEGE?

**PROSPECTIVE JUROR:** I DID.

**THE COURT:** HOW MANY YEARS HAVE YOU BEEN DOING THAT?

**PROSPECTIVE JUROR:** OH, JUST A LITTLE OVER A YEAR.

**THE COURT:** DO YOU KNOW WHAT YOU WANT TO GET A DEGREE IN?

**PROSPECTIVE JUROR:** NO. IT WAS YEARS AGO. I'M STICKING WITH THE FAMILY BUSINESS.

**THE COURT:** I SEE. OKAY. DO YOU HAVE -- WELL, I'LL ASK COUNSEL.

KEVIN SCOTT. CAN SOMEONE TELL ME WHO 7 SCOTT IS?

**MR. COHEN:** YOUR HONOR, HE'S THE CHIEF TECHNOLOGY OFFICER AT MICROSOFT.

**THE COURT:** SO DO YOU -- YOU SAID THAT YOU MIGHT KNOW A KEVIN SCOTT.

12:05:06 **PROSPECTIVE JUROR:** I DO. I DON'T KNOW IF IT'S THE SAME ONE I KNEW.

12:05:09 **THE COURT:** DO YOU KNOW IF HE WORKS AT MICROSOFT? HE'S A BIG --

12:05:13 **PROSPECTIVE JUROR:** HONESTLY, I DON'T KNOW.

12:05:17 **THE COURT:** OKAY. PROBABLY NOT.

12:05:19 **PROSPECTIVE JUROR:** IT'S A COMPANY.

12:05:27 **THE COURT:** SO YOU'RE FAMILIAR WITH ELON MUSK?

12:05:30 **PROSPECTIVE JUROR:** I AM.

12:05:30 **THE COURT:** AND ANY CONCERNS ABOUT BEING A JURY IN A CASE THAT HE'S INVOLVED IN?

12:05:36 **PROSPECTIVE JUROR:** NO, NO CONCERNS. I HOPE I'M GOING TO BE FAIR TO BOTH SIDES. I DON'T HAVE ANY PARTICULAR OPINIONS ABOUT EITHER SIDE.

12:05:44 **THE COURT:** ALL RIGHT. ARTIFICIAL INTELLIGENCE, ARE YOU GOOD WITH THAT? WHAT ARE YOUR FEELINGS WITH ARTIFICIAL INTELLIGENCE?

12:05:50 **PROSPECTIVE JUROR:** I DON'T THINK THERE'S NECESSARILY ANYTHING WRONG WITH IT. I'M OPEN TO IT.

12:05:53 **THE COURT:** OKAY. DO YOU USE IT AT ALL?

12:05:55 **PROSPECTIVE JUROR:** JUST A LITTLE BIT FOR LIKE CHATGPT, LOOKING AT MOVIE TRIVIA QUESTIONS AND STUFF LIKE THAT.

12:06:02 **THE COURT:** OKAY. ANYTHING ELSE YOU WOULD LIKE TO SAY?

12:06:10 **PROSPECTIVE JUROR:** NO, THAT'S IT, YOUR HONOR.

**THE COURT:** OKAY. PASS IT ALL OF THE WAY BACK OVER HERE.

GOOD AFTERNOON.

**PROSPECTIVE JUROR:** GOOD AFTERNOON.

**THE COURT:** MALARDINO; IS THAT CORRECT?

**PROSPECTIVE JUROR:** MALARDINO.

**THE COURT:** MALARDINO. GOT IT.

SO LET'S TALK ABOUT YOUR JOB FIRST IN TERMS OF YOUR ABILITY TO SERVE AND WHETHER YOU WOULD BE PAID OR ANYTHING.

**PROSPECTIVE JUROR:** YEAH, I WOULD BE PAID. IT'S JUST TRYING TO FIT IT ALL IN.

**THE COURT:** I TOTALLY UNDERSTAND.

AND WHAT DO YOU DO AS THE DEPUTY DIRECTOR?

**PROSPECTIVE JUROR:** SO I WORK FOR A NONPROFIT FOR PEOPLE WITH DISABILITIES AND OLDER ADULTS TO LIVE INDEPENDENTLY IN THE COMMUNITY. AND MY ROLE IS STAFF MANAGEMENT, DATA MANAGEMENT, OFFICE MANAGEMENT. ALL OF THE ABOVE.

**THE COURT:** OKAY. AND HOW MANY PEOPLE WOULD YOU SAY YOU MANAGE?

**PROSPECTIVE JUROR:** SO RIGHT NOW WE HAVE 38 EMPLOYEES. I HAVE EIGHT DIRECT REPORTS.

**THE COURT:** OKAY. AND DO YOU FIND YOURSELF IN SITUATIONS WHERE YOU'RE TRYING TO RESOLVE A DISPUTE BETWEEN TWO OTHER EMPLOYEES AND YOU'RE TRYING TO FIGURE OUT WHO IS TELLING THE TRUTH AND MAYBE WHO IS STRETCHING THE TRUTH?

12:07:36 **PROSPECTIVE JUROR:** YES.

12:07:37 **THE COURT:** AND IS THAT KIND OF A COMMON THING THAT
12:07:40 YOU HAVE TO DO?

12:07:41 **PROSPECTIVE JUROR:** YES. WE ARE A SMALL ORGANIZATION
12:07:44 AND JUST MERGED WITH ANOTHER, SO IT'S A BLENDING OF THE TWO.

12:07:47 **THE COURT:** RIGHT. YOU SERVED ON ANOTHER JURY. YOU
12:07:51 SERVED ON A JURY.

12:07:52 CAN YOU TELL US ABOUT THAT JURY EXPERIENCE?

12:07:55 **PROSPECTIVE JUROR:** YES. IT WAS IN SONOMA COUNTY,
12:07:57 AND IT WAS A GRAND THEFT AUTO AND IDENTITY THEFT.

12:08:01 **THE COURT:** AND THE JURY FOUND THE VERDICT, AND WHAT
12:08:04 WAS THAT?

12:08:05 **PROSPECTIVE JUROR:** THE VERDICT WAS GUILTY.

12:08:06 **THE COURT:** OKAY. WERE YOU THE FOREPERSON?

12:08:08 **PROSPECTIVE JUROR:** NO.

12:08:09 **THE COURT:** YOU'VE GOT SOME CONCERNS ABOUT MR. MUSK.
12:08:19 DO YOU THINK YOU COULD BE FAIR TO HIM IN THIS CASE?

12:08:22 **PROSPECTIVE JUROR:** I DO.

12:08:23 **THE COURT:** DO YOU HAVE KIND OF ANY INFORMATION ABOUT
12:08:27 THE DEFENDANTS IN THIS CASE, THE INDIVIDUALS OR -- NO?

12:08:30 **PROSPECTIVE JUROR:** NO.

12:08:30 **THE COURT:** HOW ABOUT ARTIFICIAL INTELLIGENCE, ANY
12:08:33 CONCERNS ABOUT THAT BEING THE SUBJECT MATTER?

12:08:36 **PROSPECTIVE JUROR:** NO.

12:08:37 **THE COURT:** OKAY. ANYTHING THAT YOU THINK THE

PARTIES WOULD LIKE TO KNOW ABOUT YOU IN TERMS OF A POTENTIAL JUROR?

**PROSPECTIVE JUROR:** NO. I JUST HAVE ONE QUESTION.

**THE COURT:** SURE.

**PROSPECTIVE JUROR:** MY -- I MIGHT FLY TO SAN DIEGO FOR THE WEEKEND, WHICH DOESN'T IMPACT THE TRIAL. BUT I HAVE GOTTEN STRANDED IN SAN DIEGO, SO I'M JUST WONDERING WHAT HAPPENS IF I WERE CHOSEN.

**THE COURT:** WE'LL CROSS THAT BRIDGE WHEN WE GET THERE, AND HOPEFULLY WE DON'T GET THERE. SO --

**PROSPECTIVE JUROR:** THANK YOU.

**THE COURT:** YES. AND WHEN IS THAT TRIP PLANNED?

**PROSPECTIVE JUROR:** MAY 9TH AND 10TH.

**THE COURT:** GREAT. THANK YOU. ALL RIGHT.

SO NEXT -- THIS IS THE HARD ONE. OKAY. GO AHEAD. YOU TELL ME.

**PROSPECTIVE JUROR:** SHAHVEKILIAN.

**THE COURT:** SHAHVEKILIAN?

**PROSPECTIVE JUROR:** YES.

**THE COURT:** AND YOU'VE GOT SOME FINANCIAL CONCERNS?

**PROSPECTIVE JUROR:** YES. I ONLY WORK TECHNICALLY PART-TIME, SIX HOURS A WEEK, 9:00 A.M. TO 3:00 P.M. I'M A STRENGTH AND CONDITIONING COACH. TO ALL MY CLIENTS I SET UP IN THE MORNING, AND I ALSO HAVE CLIENTS SET UP FOR THE NEXT MONTH. SO WE HONESTLY HAVE MONEY GOING INTO THE GYM THE ENTIRE TIME.

I HAVE TO MAKE SURE THERE'S ENOUGH MONEY TO PAY RENT. IF I DON'T END UP GETTING MY CLIENTS, I DON'T THINK THERE'S GOING TO BE ENOUGH MONEY FOR THE PLACE TO CONTINUE TO STAY OPEN.

**THE COURT:** HOW MANY PEOPLE ARE IN THIS? YOU'VE IDENTIFIED A PERSON WHO IS YOUR EMPLOYER. SO EXPLAIN TO ME THE SITUATION.

**PROSPECTIVE JUROR:** SO DAVE SPITZ, S-P-I-T-Z, HE OWNS THE GYM. SO I'M THE ONE THAT RUNS ONE LOCATION, WHILE HE'S TRYING TO CONTINUE TO RUN ANOTHER LOCATION. AND SO THERE'S NOT ENOUGH TIME FOR HIM TO BE ABLE TO RUN BOTH LOCATIONS AT THE EXACT SAME TIME.

**THE COURT:** OKAY. AND YOUR SESSIONS ARE WHEN?

**PROSPECTIVE JUROR:** 9:00 A.M. TO 3:00 P.M. AND THEN AFTER THAT, I AM STUDYING TO GET ANOTHER CERTIFICATION FOR OLYMPIC WEIGHTLIFTING SO I CAN BECOME AN INTERNATIONAL COACH.

**THE COURT:** HOW MANY DAYS A WEEK?

**PROSPECTIVE JUROR:** STUDYING?

**THE COURT:** NO. WHERE YOU HAVE APPOINTMENTS.

**PROSPECTIVE JUROR:** MOST OF THE TIME IT'S FIVE DAYS A WEEK, BUT I WORK SIX DAYS OF THE WEEK.

**THE COURT:** AND WHAT ABOUT MOVING APPOINTMENTS TO THE AFTERNOON?

**PROSPECTIVE JUROR:** THESE ARE THE TIMES THAT THE CLIENTS HAVE SAID THAT THEY'RE ONLY OPEN FOR. SO I'VE -- WE'VE ALREADY MADE -- WE'VE ADJUSTED FOR THE CLIENTS. WE'VE ALREADY

ASKED IF WE CAN MOVE IT ON FOR LATER, BECAUSE HONESTLY IT HELPS EVERYBODY OUT. BUT FOR THEM, THEY ARE NOT AVAILABLE IN THE SECOND HALF OF THE DAY.

**THE COURT:** OKAY. ALL RIGHT.

IN TERMS OF THE OTHER ISSUES, DO YOU HAVE CONCERNS ABOUT SERVING ON THE JURY?

**PROSPECTIVE JUROR:** NO, I --

**THE COURT:** WELL, LET'S START WITH MR. MUSK.

**PROSPECTIVE JUROR:** IT'S MORE POLITICAL. BUT AS I'VE HEARD THROUGHOUT THE DAY, I CAN OBVIOUSLY HOLD IT ASIDE BECAUSE IT'S NOT A POLITICAL ARGUMENT HERE.

**THE COURT:** OKAY. AND THE DEFENDANTS, DO YOU HAVE ANY OPINIONS, STRONG OR NEGATIVE, ABOUT THOSE DEFENDANTS?

**PROSPECTIVE JUROR:** IT STILL FALLS UNDER THE SAME THING, SO I SHOULDN'T JUDGE. IT SHOULDN'T MAKE ME JUDGE SOMETHING BIASLY.

**THE COURT:** OKAY. WHAT ABOUT AI? YOU SEEM TO HAVE SOME CONCERNS ABOUT USE OF DATA.

**PROSPECTIVE JUROR:** YEAH, I FEEL LIKE SINCE IT'S -- WE DON'T HAVE TOO MUCH DATA ON IT, THAT IT COULD -- THERE ARE SOME PARTS THAT IT HAS TAKEN DATA FROM US THAT WE'RE NOT REALLY -- THAT'S NOT REALLY KNOWN.

BUT AT THE SAME TIME, IT'S USEFUL, BUT I WANT LONG-TERM DATA ON IT SO I CAN HAVE A BETTER UNDERSTANDING ON IT. THAT'S REALLY MY WHOLE BELIEF.

**THE COURT:** ALL RIGHT. ANYTHING YOU WOULD LIKE THE PARTIES TO THINK ABOUT?

**PROSPECTIVE JUROR:** NO.

**THE COURT:** OKAY. THANK YOU SO MUCH.

**PROSPECTIVE JUROR:** THANK YOU.

**THE COURT:** OKAY. NEXT I HAVE --

**PROSPECTIVE JUROR:** SUTIONO.

**THE COURT:** SUTIONO?

**PROSPECTIVE JUROR:** UH-HUH.

**THE COURT:** GOOD AFTERNOON.

**PROSPECTIVE JUROR:** GOOD AFTERNOON.

**THE COURT:** WHERE DID YOU COME FROM, INDONESIA.

**PROSPECTIVE JUROR:** WELL, I WAS BORN IN INDONESIA, BUT I LEFT THERE WHEN I WAS THREE. ACTUALLY, I GREW UP IN MACAO. I LEFT MACAO IN 1981 TO CANADA, AND I MOVED TO U.S. IN 1998.

**THE COURT:** OKAY. AND THIS INSURANCE SERVICES CORPORATION OR INC., ARE YOU A PART OWNER?

**PROSPECTIVE JUROR:** I'M PART OWNER. I HAVE THREE OR FOUR MORE COFOUNDERS, AND I HAVE ABOUT 300 AGENTS. MY RESPONSIBILITY IS A CTO/CFO.

**THE COURT:** AND HOW MANY PEOPLE DO YOU HAVE REPORTING TO YOU?

**PROSPECTIVE JUROR:** DIRECTLY REPORTING TO ME IS ABOUT FOUR, WHICH IS A TECHNICAL TEAM. AND THEN A SIDE LINE

REPORTING TO ME IS TWO, WHICH ARE THE AGENTS REPORT ON PEOPLE.

**THE COURT:** OKAY. WHAT IS YOUR PERSPECTIVE ON WHETHER OR NOT YOU CAN BALANCE DOING YOUR WORK AND GETTING THINGS DONE AND SERVING ON A JURY?

**PROSPECTIVE JUROR:** THAT'S NO PROBLEM, BECAUSE DURING THE DAY IN THE MORNING I USUALLY GO TO THE GYM. AND THEN MY WORK REALLY STARTS IN THE AFTERNOON AND EVENING.

**THE COURT:** OKAY. CAN YOU TELL US A LITTLE BIT ABOUT THIS LAWSUIT WHERE THERE WAS A BREACH OF FIDUCIARY DUTY?

**PROSPECTIVE JUROR:** YEAH. SO WE HAD SIX PARTNERS TO START WITH. THREE OF THEM KIND OF LEFT THE COMPANY, BUT THEY ARE FORMING THEIR OWN COMPANY SO WE ARE SUING THEM. THE BREACH OF THE FIDUCIARY DUTY. THE ACCOUNTANT IS SUING US AS WELL. ACTUALLY MAYBE THIS IS USEFUL FOR THE JURY SELECTION.

ABOUT THREE WEEKS AGO THESE PEOPLE ACTUALLY TRIED TO FILE A TEMPORARY RESTRAINING ORDER ON ME MANAGING THE COMPANY. AND THE COURT ACTUALLY THROW THE CASE AWAY BECAUSE I WAS ABLE TO PRODUCE A LOT OF EVIDENCE THAT I WAS ACTUALLY MANAGING THE MONEY CORRECTLY AND STUFF LIKE THAT. AND ANYTHING AND ALL OF THAT, THAT IS JUST PROVING MY WAY OF DEALING WITH THE COMPANY IN THE REGULAR AND THEN COMPLIANCE MATTER.

**THE COURT:** AND I TAKE IT THAT YOUR LAWSUIT WAS IN STATE COURT OR WAS IT IN FEDERAL COURT?

**PROSPECTIVE JUROR:** IT'S IN THE STATE COURT.

**THE COURT:** STATE COURT.

12:16:12 **PROSPECTIVE JUROR:** SO WE FILED AGAINST THEM IN L.A. COUNTY, AND THEN THEY FILED THE RESTRAINING ORDER IN SAN MATEO COUNTY.

12:16:22 **THE COURT:** OKAY. NOW, IN THIS CASE AT THE END OF THE CASE, THE JUDGE GIVES YOU THE INSTRUCTIONS ABOUT WHAT THE LAW IS FOR THIS CASE.

12:16:35 I DON'T KNOW WHAT HAPPENED IN YOUR CASE, BUT I'M GOING TO GIVE YOU INSTRUCTIONS. ARE YOU GOING TO BE ABLE TO FOLLOW THOSE INSTRUCTIONS? CAN YOU JUST KIND OF LEAVE ASIDE WHATEVER HAPPENED IN YOUR OWN CASE AND JUST FOCUS ON THE EVIDENCE HERE?

12:16:50 **PROSPECTIVE JUROR:** EVEN FOR MYSELF, I ALWAYS LOOK AT THE BOUNDARY AND LAW AND COMPLIANCE. WHATEVER IT TAKES TO DO IT, THEN I WILL DO IT.

12:16:59 **THE COURT:** OKAY. IN TERMS OF YOUR RELIGIOUS VIEWS, DO YOU HAVE ANY CONCERNS ABOUT BEING ABLE TO SERVE AS A JUROR?

12:17:08 **PROSPECTIVE JUROR:** NO CONCERN.

12:17:10 **THE COURT:** OKAY. ANYTHING ELSE YOU WOULD LIKE THE PARTIES TO KNOW?

12:17:22 **PROSPECTIVE JUROR:** NO.

12:17:22 **THE COURT:** OKAY. THANK YOU.

12:17:28 MS. STRAY?

12:17:31 **PROSPECTIVE JUROR:** YES.

12:17:31 **THE COURT:** OKAY. SO THIS -- AGAIN, THIS IS GOING TO GO A LITTLE BIT LONGER THAN TEN DAYS. DO YOU HAVE CONCERNS ABOUT THAT?

**PROSPECTIVE JUROR:** ASIDE FROM LISTENING TO EVERYONE TODAY AND HOW -- JUST THE SCHEDULE BEING SHORTER THAN I ORIGINALLY THOUGHT, I CAN WORK AROUND IT. I HAVE A PRETTY FLEXIBLE SCHEDULE.

**THE COURT:** GREAT. ONE OF THE REASONS I LIKE THAT SCHEDULE IS BECAUSE IT DOES ALLOW PEOPLE TO TRY TO BALANCE GETTING EVERYTHING DONE.

CAN YOU TELL US WHAT YOUR ROLE IS AS A SCIENTIST?

**PROSPECTIVE JUROR:** SURE. I DO MOSTLY LAB WORK, SO I'M A BENCH SCIENTIST, AND OUR COMPANY IS AN EARLY-STAGE BIOPHARMACEUTICAL COMPANY, SO MY RESPONSIBILITY IS BASICALLY TO DO SCREENING AND REPRESENTING THE BIOLOGY TEAM -- EXCUSE ME. I'M PART OF THE BIOLOGY TEAM, SO REPRESENT THE BIOLOGY TEAM WITH THE OTHER TEAMS, METABOLISM AND OTHER GROUPS THAT DO DIFFERENT PARTS OF THE JOB.

**THE COURT:** AND CAN YOU TELL US WHAT YOU'RE WORKING ON, THAT IS, OR IS THAT PROPRIETARY?

**PROSPECTIVE JUROR:** A LITTLE BIT. IT'S ANTIVIRALS, SO WE DO CHEMICAL -- ANTIVIRALS, ANTIVIRAL, SO WE DO -- WE MAKE COMPOUNDS AGAINST VIRUSES AND TRY TO PREVENT THE VIRUS FROM REPLICATING.

**THE COURT:** AND THIS IS, THIS IS PRERELEASE?

**PROSPECTIVE JUROR:** YES.

**THE COURT:** IN TERMS OF, DO YOU HAVE -- I MEAN, IT SOUNDS LIKE YOU'VE HEARD ABOUT THIS CASE IN TERMS OF YOUR

NOTES. DO YOU THINK THAT YOU COULD GIVE MR. MUSK A FAIR TRIAL HERE?

**PROSPECTIVE JUROR:** I DO. I THINK, LIKE EVERYONE ELSE, IT'S POLITICAL, AND IT'S NOT -- IT'S ABOUT THE FACTS OF THE CASE. AND I JUST READ THE HEADLINES ABOUT THE CASE. I DON'T KNOW LOT ABOUT THE DETAILS.

**THE COURT:** OKAY. YOU SAID THAT YOU SET UP CONTRACTS, BUT DO YOU HAVE -- ARE YOU INVOLVED AT ALL IN THE CREATION OF CONTRACTS?

**PROSPECTIVE JUROR:** IT'S MORE -- SO WE DO, LIKE, MATERIAL TRANSFER AGREEMENTS, WHICH IS MORE, YOU KNOW, WE HAVE AN AGREEMENT WITH, LET'S SAY IT'S A UNIVERSITY, AND THEY'LL TRANSFER REAGENTS TO US AND THEN WE CAN USE IT LEGALLY, AND THEN WE HAVE A CONTRACT THAT WE HAVE TO SIGN FOR THAT, BUT OUR LEGAL TEAM HANDLES MOST OF THAT, SO I JUST DO THE TECHNICAL PART OF IT.

**THE COURT:** OKAY. AND ALSO IT LOOKS LIKE YOU MIGHT HAVE SOME CONCERNS ABOUT HOW THESE AI COMPANIES ARE GATHERING INFORMATION.

**PROSPECTIVE JUROR:** YEAH.

**THE COURT:** SO, AGAIN, THAT'S NOT KIND OF THE POINT. WE ARE GOING TO GET INTO -- WELL, DO YOU HAVE ANY CONCERNS ABOUT NOT BEING ABLE TO TREAT OPENAI OR MICROSOFT AS COMPANIES THAT ARE USING OR HAVING THESE AI COMPANIES, AND TREAT THEM FAIRLY?

**PROSPECTIVE JUROR:** YEAH, AND WE DO USE AI IN MY COMPANY, SO...

**THE COURT:** OKAY.

**PROSPECTIVE JUROR:** IT WAS MORE CONCERNED ABOUT THE GATHERING OF THE INFORMATION, YEAH. BUT I THINK I CAN BE UNBIASSED.

**THE COURT:** OKAY. ANYTHING ELSE YOU WOULD LIKE US TO THINK ABOUT?

**PROSPECTIVE JUROR:** NO.

**THE COURT:** ALL RIGHT. MOVING -- IS IT MAI?

**PROSPECTIVE JUROR:** THAT IS CORRECT.

**THE COURT:** GOOD AFTERNOON.

**PROSPECTIVE JUROR:** GOOD AFTERNOON, YOUR HONOR.

**THE COURT:** AND WHEN DID YOU COME FROM VIETNAM?

**PROSPECTIVE JUROR:** 2007.

**THE COURT:** 2007. WHEN -- AND AS A SOFTWARE ENGINEER, CAN YOU TELL ME WHAT YOU'RE DOING FOR TRULIOO?

**PROSPECTIVE JUROR:** YEAH, FOR TRULIOO, SO I'M A PRINCIPAL SOFTWARE ENGINEER, SO I WRITE A LOT OF THE SOFTWARE AND DESIGN SOFTWARE AND SUPPORT TEAMS WHEN IT COMES TO OPERATIONS, WHICH MEANS THAT WHEN THE APPLICATION GOES DOWN, I GET PAGED. SO I'M ON CALL RIGHT NOW. SO YEAH.

**THE COURT:** OKAY. AND HOW MANY PEOPLE ARE IN THAT ROLE?

**PROSPECTIVE JUROR:** IN THE ROLE THAT I'M IN RIGHT

NOW?

**THE COURT:** YES.

**PROSPECTIVE JUROR:** OH, I DO NOT KNOW. IT'S A BIG COMPANY. I DIRECTLY WORK WITH ABOUT 25 PEOPLE ON A DAY-TO-DAY BASIS.

**THE COURT:** OKAY. AND IS YOUR ROLE PRETTY INDEPENDENT, OR DO YOU WORK WITH OTHERS IN GROUPS?

**PROSPECTIVE JUROR:** I MOSTLY WORK WITH OTHER PEOPLE, YEAH.

**THE COURT:** WITH OTHER PEOPLE?

**PROSPECTIVE JUROR:** YEAH. SO, FOR EXAMPLE, WHEN OTHER PEOPLE WRITE CODE, I WILL HAVE TO REVIEW THEM, AND I HAVE TO MENTOR A LOT OF PEOPLE.

**THE COURT:** AND HOW MANY PEOPLE DO YOU MANAGE, IF ANY?

**PROSPECTIVE JUROR:** I AM NOT A MANAGER, SO I DON'T DIRECTLY MANAGE PEOPLE, BUT I WORK WITH ABOUT 25 PEOPLE ON A DAILY BASIS.

**THE COURT:** OKAY. YOU'VE INDICATED THAT YOU'VE GOT STRONG NEGATIVE FEELINGS ABOUT MR. MUSK?

**PROSPECTIVE JUROR:** THAT'S CORRECT.

**THE COURT:** AND SAME QUESTION TO YOU.

**PROSPECTIVE JUROR:** YES.

**THE COURT:** AND WHAT DO YOU THINK?

**PROSPECTIVE JUROR:** I CAN LEAVE THAT ASIDE AND JUST

12:22:53 HANDLE THE FACTS.

12:22:54 **THE COURT:** OKAY. WHAT ABOUT THE OTHER -- THE DEFENDANTS, DO YOU HAVE ANY OPINIONS OF THEM, STRONG OR NEGATIVE? I MEAN STRONG OR NEGATIVE OR POSITIVE?

12:23:06 **PROSPECTIVE JUROR:** I DON'T THINK SO. I DO USE THAT TOOL, BUT I DON'T HAVE A STRONG OPINION ABOUT OPENAI AS A COMPANY.

12:23:15 **THE COURT:** OKAY. AND DO YOU HAVE ANY CONCERNS ABOUT AI, PERIOD?

12:23:18 **PROSPECTIVE JUROR:** LIKE OTHER PEOPLE, A LITTLE BIT ABOUT DATA GATHERING, BUT OUTSIDE OF THAT I THINK OF IT AS JUST ANOTHER TOOL.

12:23:24 **THE COURT:** OKAY. ANYTHING ELSE YOU WOULD LIKE US TO CONSIDER IN TERMS OF SERVING?

12:23:34 **PROSPECTIVE JUROR:** NO.

12:23:35 **THE COURT:** OKAY. NEXT? MS. LIANG?

12:23:46 **PROSPECTIVE JUROR:** YES.

12:23:50 **THE COURT:** SO I WAS HAVING A DIFFICULT TIME UNDERSTANDING YOUR ATTACHMENTS. DO YOU HAVE -- AND I SHOULD SAY IF THERE IS ANYTHING -- IF YOU WANT TO TALK ABOUT THIS PRIVATELY, WE CAN TALK ABOUT THIS PRIVATELY, BUT DO YOU HAVE MEDICAL APPOINTMENTS?

12:24:09 **PROSPECTIVE JUROR:** YES.

12:24:09 **THE COURT:** BUT THEY WEREN'T UNDER YOUR NAME, SO ANYWAY, I WAS JUST NOT SURE WHAT THE ATTACHMENTS WERE FOR.

12:24:18 **PROSPECTIVE JUROR:** THAT IS FOR PHYSICAL THERAPY, AND I HAVE A CHRONIC SCIATICA. I HAVE TO SEE -- I HAVE TO DO THE PHYSICAL THERAPY ONCE A WEEK, AND TOMORROW I HAVE THE APPOINTMENT, AND THEN I HAVE A RETURNING APPOINTMENT TO SEE THE DOCTOR NEXT TUESDAY.

12:25:03 **THE COURT:** OKAY. AND I SEE THAT THE APPOINTMENT NEXT TUESDAY IS RIGHT HERE ON GRAND AVENUE, AND IT'S AFTER WE GET OUT OF COURT, SO THAT SHOULDN'T BE A PROBLEM.

12:25:18 AND THEN IN TERMS OF YOUR PHYSICAL THERAPY -- OH, I SEE. ALL RIGHT. SO TOMORROW IT MIGHT BE A LITTLE BIT TIGHT, BUT IS THERE A WAY TO PUSH IT LATER INTO THE AFTERNOON?

12:25:52 **PROSPECTIVE JUROR:** NO, BECAUSE THE THERAPIST, HE ONLY HAS THAT TIME. SO THE THERAPIST ONLY --

12:26:11 **THE COURT:** THE THERAPIST ONLY HAS THAT TIME, SHE SAYS.

12:26:13 WHEN DID YOU COME FROM CHINA?

12:26:16 **PROSPECTIVE JUROR:** 1982.

12:26:18 **THE COURT:** AND THEN -- AND YOU RETIRED FROM -- YOU DID A SALES TABLE AT PEET'S THAT WHOLE TIME?

12:26:37 **PROSPECTIVE JUROR:** YES.

12:26:37 **THE COURT:** AND WHEN YOU WORKS AT PEET'S WERE YOU USING ENGLISH? DID YOU HAVE ANY ISSUES WITH THE ENGLISH LANGUAGE HERE?

12:26:45 **PROSPECTIVE JUROR:** A LITTLE BIT, BECAUSE I WORKED FOR ACCOUNTS PAYABLE, AND MOSTLY DEAL WITH THE NUMBERS, SO

THAT'S PRETTY EASY FOR ME. I PAY BILLS. I RUN CHECKS. IT'S NOT DIFFICULT.

**THE COURT:** YES. AND HOW MANY PEOPLE WERE IN THAT DEPARTMENT?

**PROSPECTIVE JUROR:** FIRST IT WAS REALLY SMALL. WHEN I STARTED IN 1989 IT WAS ONLY, LIKE, MAYBE FOUR OR FIVE PEOPLE.

AND THEN BY THE TIME I RETIRED IT'S MORE THAN MAYBE 20-SOMETHING, 30.

**THE COURT:** AND AT THE TIME THAT YOU WERE RETIRING, WERE YOU MANAGING THAT GROUP, GIVEN YOUR TENURE?

**PROSPECTIVE JUROR:** NO.

**THE COURT:** IS THAT A NO?

**PROSPECTIVE JUROR:** NO.

**THE COURT:** OKAY. IN YOUR FREE TIME, DO YOU USE YOUR ENGLISH?

**PROSPECTIVE JUROR:** YEAH, MAYBE, BECAUSE MY, MY HUSBAND DOESN'T READ AND WRITE ENGLISH. HE CAME FROM HONG KONG WHEN HE WAS LITTLE, AND THEN MOST OF THE TIME MY DAUGHTER, WE HAVE TO SPEAK ENGLISH WITH MY DAUGHTER.

**THE COURT:** OKAY. YOU HAVE JUST THE ONE DAUGHTER?

**PROSPECTIVE JUROR:** YES.

**THE COURT:** AND WHERE DOES SHE WORK?

**PROSPECTIVE JUROR:** SHE WORKS IN REDWOOD CITY.

**THE COURT:** SHE'S IN REDWOOD CITY DOING WHAT?

**PROSPECTIVE JUROR:** POSHMARK.

12:28:33 **THE COURT:** OKAY. SO YOU HAVE YOUR MEDICAL ISSUE. DO YOU HAVE OTHER CONCERNS ABOUT SERVING ON A JURY?

12:28:38 **PROSPECTIVE JUROR:** I CANNOT SIT TOO LONG, BECAUSE IF I SIT TOO LONG I STAND UP AND THEN WHEN I WALK MY LEG AND MY BACK IS REALLY PAINFUL.

12:28:53 **THE COURT:** OKAY.

12:28:53 **PROSPECTIVE JUROR:** AND PLUS I GET A HEADACHE TOO BECAUSE OF MY NECK.

12:28:59 **THE COURT:** WELL, THAT I CAN ACCOMMODATE. I'VE HAD PLENTY OF JURORS, AND I PUT THEM ON THE END AND THEY CAN GET UP AND STAND WHENEVER THEY NEED TO, SO THAT I CAN ACCOMMODATE.

12:29:09 BUT OTHER CONCERNS?

12:29:11 **PROSPECTIVE JUROR:** NO.

12:29:17 **THE COURT:** OKAY. OKAY. THANK YOU.

12:29:23 LAST NAME MAZZOLA?

12:29:26 **PROSPECTIVE JUROR:** YES.

12:29:26 **THE COURT:** GOOD AFTERNOON.

12:29:34 SIR, WHEN DID YOU COME FROM ETHIOPIA?

12:29:37 **PROSPECTIVE JUROR:** I'M FROM ITALY. 2009. I WAS BORN IN ETHIOPIA, BUT I'M NOT FROM ETHIOPIA.

12:29:47 **THE COURT:** OKAY. SO YOU WENT FROM ETHIOPIA TO ITALY? OR TELL ME YOUR WHOLE TRANSITION.

12:29:55 **PROSPECTIVE JUROR:** MY FAMILY WAS TEMPORARILY IN ETHIOPIA, BUT WHEN I WAS TWO YEARS OLD WE MOVED TO ITALY, BUT WE WERE ALREADY ITALIAN CITIZENS.

**THE COURT:** OKAY. AND THEN YOU SAID YOU CAME FROM ITALY IN 2009?

**PROSPECTIVE JUROR:** YES, CORRECT.

**THE COURT:** ALL RIGHT. SO YOU WERE DOING -- CAN YOU TELL ME WHAT YOU WERE DOING FOR THIS COMPANY AS AN ELECTRICAL ENGINEER?

**PROSPECTIVE JUROR:** YEAH, I'M AN ELECTRICAL ENGINEER, AND I MANAGE THE HARDWARE TEAM OF SEVEN PEOPLE.

**THE COURT:** OKAY.

**PROSPECTIVE JUROR:** SEVEN ENGINEERS.

**THE COURT:** AND -- GO AHEAD.

**PROSPECTIVE JUROR:** AND IT IS A SYSTEM THAT IS CURRENTLY MEASURING AIR QUALITY IN CALIFORNIA FOR AN IMPORTANT AGENCY.

**THE COURT:** AND WHAT IS YOUR ROLE IN PARTICULAR? ARE YOU --

**PROSPECTIVE JUROR:** I WAS THE LEAD ELECTRICAL ENGINEER AND MANAGING THE DEVICES TEAM FOR THE ORGANIZATION.

**THE COURT:** OKAY. YOU HAVE STRONG OPINIONS ABOUT MR. MUSK?

**PROSPECTIVE JUROR:** YEAH.

**THE COURT:** OKAY. SO ARE YOU THE KIND OF PERSON THAT CAN PUT THOSE ASIDE OR NOT?

**PROSPECTIVE JUROR:** IT'S A HARD QUESTION. LIKE, I CAN TRY, OF COURSE, BUT I'M VERY AWARE OF MY POTENTIAL BIAS

REGARDING HIS WAY TO DO BUSINESS.

**THE COURT:** OKAY.

**PROSPECTIVE JUROR:** AND ALSO HIS POLITICAL INVOLVEMENT. SO IT'S MOSTLY POLITICAL AND ETHICAL.

**THE COURT:** AND WHAT ABOUT THE FOLKS ON THE OTHER SIDE OF THE COURTROOM, THE DEFENDANTS, DO YOU HAVE ANY STRONG OPINIONS ABOUT --

**PROSPECTIVE JUROR:** SINCE I READ A LOT ABOUT THE CASE IN THE PAST, EVEN ACROSS THE YEARS, SO I FOLLOWED IT AND OVER THE YEARS I WAS KIND OF HOPING FOR A DIFFERENT OUTCOME, AND FOR THE COMPANY TO KEEP OPERATING TO BENEFIT THE SOCIETY USING AI TOOLS TO BENEFIT SOCIETY IN GENERAL.

**THE COURT:** SO YOU SAID IT'S YOUR SENSE THAT YOU FOLLOWED IT IN THE BEGINNING. YOU SAID YOU'RE PREDISPOSED ONE WAY OR THE OTHER, AND DON'T TELL ME WHICH, BUT ARE YOU PREDISPOSED ONE WAY OR THE OTHER?

**PROSPECTIVE JUROR:** NOT REALLY, BECAUSE THE FACTS WILL MATTER, BUT IT WAS MOSTLY HOPE.

**THE COURT:** I SEE. ONE OF THE THINGS THAT'S REALLY INTERESTING, AND I DON'T KNOW WHERE YOU'RE GETTING YOUR INFORMATION, WHETHER YOU GET IT STRAIGHT FROM THE DOCUMENTS OR YOU GET IT FROM THE NEWS. YOU KNOW, I'VE TRIED A LOT OF CASES, AND WHEN IT'S JUST -- WELL, EVEN WHEN I'M -- IT'S A BENCH TRIAL, I HEAR ONE SIDE AND I THINK, GOSH, THAT SOUNDS SO COMPELLING, AND THEN I HEAR THE OTHER SIDE, AND I SAY, OH, WOW,

THAT SOUNDS SO COMPELLING.

YOU KNOW, IT REALLY DOES MATTER TO WAIT TO HEAR EVERYTHING. AND, FRANKLY, YOU KNOW, THE WITNESSES ON THE STAND MATTER. DO I BELIEVE THAT PERSON OR DO I NOT BELIEVE THAT PERSON? DOES THAT MAKE ANY SENSE GIVEN ALL OF THE EVIDENCE, OR NOT?

AND THERE'S, YOU KNOW, OUR FIRST AMENDMENT RIGHTS AND THE RIGHTS OF FREE PRESS ARE CRITICALLY IMPORTANT. BUT THERE ARE TIMES WHEN I READ THOSE ARTICLES AND IT'S ABOUT MY STUFF, AND I THINK, REALLY? THAT'S NOT AS ACCURATE AS I WOULD LIKE IT TO BE, OR MAYBE IT'S JUST PART OF THE STORY.

SO I THINK IT'S SO IMPORTANT IN TRIALS THAT ALL WE DO IS FOCUS ON WHAT IS ACTUALLY IN THE TRIAL ITSELF WITHOUT REGARD TO OTHER STUFF. BECAUSE THE WHOLE POINT OF A TRIAL IS THAT SOMEONE PRESENTS, AND THEN THE OTHER SIDE GETS TO ATTACK THAT PRESENTATION, AND VICE VERSA. THEY BOTH DO IT TO EACH OTHER. AND IT'S THAT ADVERSARIAL POSITION THAT REALLY TEASES OUT -- HELPS US TEASE OUT WHAT'S TRUE VERSUS WHAT'S NOT TRUE OR CLOSER TO THE TRUTH OR WHATEVER.

DO YOU THINK, GIVEN ALL OF THE BACKGROUND THAT YOU SAY THAT YOU HAVE, THAT YOU CAN KIND OF PUT THAT ASIDE AND JUST REALLY FOCUS ON WHAT WE'RE ALL HEARING HERE IN THE COURTROOM? THAT'S WHAT WE HAVE TO FOCUS ON.

DO YOU THINK YOU COULD DO THAT?

**PROSPECTIVE JUROR:** YEAH.

12:34:33 **THE COURT:** OR IS THERE TOO MUCH?

12:34:35 **PROSPECTIVE JUROR:** I THINK MOST LIKELY I CAN DO IT. I WAS TRYING TO GIVE YOU ENOUGH TOOLS TO EVALUATE MY POTENTIAL BIAS COMPARED TO THE REST OF THE CANDIDATES.

12:34:46 **THE COURT:** YES.

12:34:48 **PROSPECTIVE JUROR:** SO I WOULDN'T SAY I WOULD BE THE MOST UNBIASSED CANDIDATE, BUT I CAN DEFINITELY TRY.

12:34:54 **THE COURT:** OKAY. THANK YOU.

12:34:58 **PROSPECTIVE JUROR:** THANK YOU.

12:34:58 **THE COURT:** ALL RIGHT. LET'S GO AHEAD AND PASS IT TO -- IS IT CULBERSON?

12:35:03 **PROSPECTIVE JUROR:** YES.

12:35:07 **THE COURT:** GOOD AFTERNOON.

12:35:08 **PROSPECTIVE JUROR:** GOOD AFTERNOON. DID I TURN THIS OFF?

12:35:10 **THE COURT:** THERE YOU ARE, MS. CULBERSON.

12:35:16 SO DOES THE CREDIT UNION PAY FOR YOUR JURY SERVICE?

12:35:20 **PROSPECTIVE JUROR:** YES, MA'AM. THEY PAY UP TO 80 HOURS, AND THEN I HAVE SOME PTO THAT I CAN USE IF NEEDED.

12:35:25 **THE COURT:** OKAY. AND DO YOU THINK GIVEN OUR SCHEDULE THAT YOU COULD DO SOME WORK, LIKE, AT THE END OF THE DAY AT ALL?

12:35:34 **PROSPECTIVE JUROR:** YES, THAT'S THE PLAN. SO THEY UNDERSTAND THE COMMUTE AND HOW LONG IT WOULD TAKE ME TO GET BACK TO SANTA ROSA. AND THEN AS SOON AS I'M THERE, I REPORT

BACK TO WORK AND WORK UNTIL 6:00 P.M.

**THE COURT:** OKAY. IN TERMS OF THIS CASE, IT DOESN'T SEEM LIKE YOU HAVE STRONG OPINIONS ONE WAY OR THE OTHER ABOUT ANY OF THE PARTIES?

**PROSPECTIVE JUROR:** NO, MA'AM.

**THE COURT:** AND NO STRONG OPINIONS ABOUT AI?

**PROSPECTIVE JUROR:** I WOULD SAY IF ANY, I HAVE POSITIVE. WE DO USE AI AT WORK. I FIND IT HELPFUL FOR MY JOB POSITION.

**THE COURT:** AND HOW DO YOU USE IT?

**PROSPECTIVE JUROR:** SO I'M AN ONLINE BANKING VIRTUAL SUPPORT SPECIALIST AND I WORK ON A DIGITAL CHAT TEAM. SO WHEN YOU'RE IN YOUR ONLINE BANKING AND YOU HIT THE REQUEST TO CHAT, IT COMES TO MY TEAM. WE HAVE AI NAMED ELAINE. SHE BASICALLY GETS ALL OF THE CHATS FIRST AND CAN ANSWER VERY GENERAL QUESTIONS, BRANCH HOURS, BRANCH LOCATIONS. AND THEN IF THE CUSTOMER HAS ANY FURTHER QUESTIONS, THEN WE GET THE CHAT AFTER THAT.

**THE COURT:** OKAY. I SEE.

DO YOU HAVE ANY CONCERNS ABOUT SERVING?

**PROSPECTIVE JUROR:** ABOUT WHAT, I'M SORRY?

**THE COURT:** ABOUT SERVING?

**PROSPECTIVE JUROR:** NO.

**THE COURT:** ALL RIGHT. TERRIFIC. LET'S GO AHEAD AND PASS IT DOWN.

VANGRAAFEILAND.

**PROSPECTIVE JUROR:** VANGRAAFEILAND.

**THE COURT:** AND IS THAT TWO NAMES OR ONE NAME?

**PROSPECTIVE JUROR:** ONE.

**THE COURT:** SO SAY IT ONE MORE TIME.

**PROSPECTIVE JUROR:** VANGRAAFEILAND.

**THE COURT:** WHAT IS EEC CODE?

**PROSPECTIVE JUROR:** IT IS A BEDDING MANUFACTURING COMPANY.

**THE COURT:** A WHAT?

**PROSPECTIVE JUROR:** BEDDING. LIKE, HOME TEXT TILES, COMFORTERS AND WINDOW TREATMENTS AND SHEETS AND THINGS LIKE THAT.

**THE COURT:** OKAY. AND WHAT IS YOUR ROLE AS THE DESIGNER?

**PROSPECTIVE JUROR:** I DESIGN PRINT AND PATTERN PRIMARILY FOR BEDDING SETS LIKE COMFORTERS, DUVETS, QUILTS, THINGS LIKE THAT.

**THE COURT:** ARE THESE CUSTOMIZED? SPECIALIZED?

**PROSPECTIVE JUROR:** WE DESIGN SPECIFICALLY FOR PARTICULAR RETAILS.

**THE COURT:** OKAY. SO YOU'RE DOING THIS AT THE WHOLESALE -- YOU'RE NOT SELLING TO CONSUMERS, YOU'RE SELLING TO COMPANIES?

**PROSPECTIVE JUROR:** WE DO BOTH BECAUSE WE ALSO HAVE

AN E-COMMERCE PLATFORM THAT SELLS DIRECT TO CONSUMERS. BUT PRIMARILY MY JOB IS SOMEONE TO BUYERS AT DEPARTMENT STORES AND THINGS LIKE THAT.

**THE COURT:** OKAY. YOU DON'T LIKE MR. MUSK?

**PROSPECTIVE JUROR:** NO, I DON'T.

**THE COURT:** SO YOU KNOW MY QUESTION. SO CAN YOU ANSWER MY QUESTION?

**PROSPECTIVE JUROR:** YEAH. BUT I COULD BE IMPARTIAL. I DON'T THINK THAT WOULD BE A PROBLEM.

**THE COURT:** OKAY. IN YOUR ROLE, DO YOU -- DO YOU HAVE TO WORK WITH OTHER PEOPLE?

**PROSPECTIVE JUROR:** I PRIMARILY -- MOST OF MY WORK IS BY MYSELF, BUT IT DOES GET REVIEWED BY MY BOSS. AND I WORK WITH SALES TEAMS THAT THEN WORK WITH SOME OF THE RETAILERS. SO I WORK PRIMARILY BY MYSELF, AND THEN I INTERFACE WITH OTHER PEOPLE AS A TEAM.

**THE COURT:** DO YOU LIKE WORKING IN GROUPS? I MEAN --

**PROSPECTIVE JUROR:** I DO.

**THE COURT:** OKAY. AND THEN WHAT ABOUT AI? DO YOU HAVE ANY -- IT SAYS YOU DO USE AI.

**PROSPECTIVE JUROR:** WE DO USE AI AT MY COMPANY AND I DO USE SEVERAL DIFFERENT PLATFORMS FOR IMAGE GENERATION FOR RECOLORING OUR WORK FOR -- AND THEN JUST SIMPLY FOR SPEAKING, FOR DICTATION, THERE'S AN AI PROGRAM THAT I USE.

SO I USE IT FOR A VARIETY OF THINGS.

12:39:38 **THE COURT:** OKAY. IS THERE ANYTHING THAT YOU WOULD LIKE THE PARTIES TO KNOW IN TERMS OF YOUR SERVICE AS A JUROR?

12:39:44 **PROSPECTIVE JUROR:** NO.

12:39:49 **THE COURT:** OKAY. AND, MS. THAI.

12:39:55 **PROSPECTIVE JUROR:** GOOD AFTERNOON.

12:39:56 **THE COURT:** GOOD AFTERNOON. AND WHEN DID YOU COME FROM VIETNAM?

12:39:59 **PROSPECTIVE JUROR:** I WAS BORN IN VIETNAM BUT RAISED IN AUSTRALIA, AND I MOVED TO THE STATES IN 1998.

12:40:07 **THE COURT:** OKAY. LET'S SEE. ALAMEDA COUNTY IS WHERE YOU'RE WORKING. SO THEY'LL PAY FOR YOUR SERVICE; RIGHT?

12:40:20 **PROSPECTIVE JUROR:** YES, YES.

12:40:21 **THE COURT:** AND IN TERMS OF MANAGING WHAT YOU PROBABLY STILL HAVE TO DO, IS THERE ANY PROBLEM, ANY CONCERNS ABOUT SERVING?

12:40:29 **PROSPECTIVE JUROR:** NO, NO CONCERN AT ALL.

12:40:32 **THE COURT:** IN TERMS OF -- LET'S SEE. YOU HAVE A TRIP, BUT THAT'S NOT GOING TO BE A PROBLEM BECAUSE THAT'S AT THE END OF THE MONTH.

12:41:02 **PROSPECTIVE JUROR:** THE TRIP WAS ACTUALLY -- I JUST CAME BACK FROM THE TRIP A COUPLE OF DAYS AGO.

12:41:06 **THE COURT:** OKAY. I THOUGHT YOU HAD ANOTHER ONE AT THE END OF MAY. MAYBE THAT WAS SOMEWHERE ELSE.

12:41:13 **PROSPECTIVE JUROR:** THAT WAS ME.

12:41:15 **THE COURT:** THAT WAS YOU?

**PROSPECTIVE JUROR:** YEAH.

**THE COURT:** OKAY. DO YOU HAVE ANY CONCERNS ABOUT SERVING IN THIS CASE?

**PROSPECTIVE JUROR:** NO, I DON'T.

**THE COURT:** IT DOESN'T LOOK LIKE YOU HAVE ANY STRONG OPINIONS ABOUT THE PARTIES?

**PROSPECTIVE JUROR:** I DO NOT.

**THE COURT:** WHAT ABOUT ARTIFICIAL INTELLIGENCE, ANY STRONG OPINIONS ABOUT THOSE?

**PROSPECTIVE JUROR:** NO STRONG OPINION.

I USE IT EVERY NOW AND THEN PERSONALLY, BUT JUST FOR FUN.

**THE COURT:** OKAY. AND IN TERMS OF REVIEWING CONTRACTS, CAN YOU TELL US A LITTLE BIT ABOUT YOUR ROLE IN DEALING WITH CONTRACTS?

**PROSPECTIVE JUROR:** YEAH. I BRIEFLY WORKED AS A TEMPORARY EMPLOYEE WITH ALAMEDA COUNTY PUBLIC HEALTH. AND AT THE TIME I JOINED THEM I WAS THE ASSISTANT TO THE DIRECTOR OF COVID TESTING. AND WE ACTUALLY CONTRACT OUT TO A NUMBER OF CBOS, AND I JUST ASSISTED THE PROGRAM MANAGERS OR THE PROGRAM SPECIALISTS WITH SOME OF THE CONTRACT REVIEW AND BUDGET AND STUFF LIKE THAT.

**THE COURT:** PERFECT. OKAY.

SO THIS IS WHAT WE'RE GOING TO DO. WE'RE GOING TO GO FOR ANOTHER 40 MINUTES, 30 TO 40 MINUTES. IF THEY -- IF THE ATTORNEYS MISBEHAVE, THEN I'LL CUT OFF THEIR TIME AND THEY'LL

ONLY GET 15, BOTH SIDES.

HERE'S WHAT WE'RE GOING TO DO, I'M GOING TO LET THE LAWYERS ASK YOU QUESTIONS FOR THIS SET HERE. AND THEY MAY DO IT FOR EVERYBODY ELSE, BUT THE OTHER TWO SETS. SO I'LL ASK THE LAWYERS IN THAT FRONT SEAT TO MOVE AT THIS POINT OFF THAT FRONT SEAT.

THE LAWYERS, YOU SHOULD KNOW, WOULD LOVE TO TALK TO YOU-ALL ALL DAY LONG, AND I TOLD THEM THEY CANNOT DO THAT. THEY GET TO SPEAK TO YOU, JUST EACH SIDE, FOR 20 MINUTES EACH SIDE.

AND THAT'S BECAUSE ULTIMATELY THEY'RE GOING TO HAVE A ROLE IN DECIDING WHO THEY WANT TO CHOOSE TO SERVE ON THIS JURY. AND I STILL HAVEN'T TALKED TO OTHERS IN THE COURTROOM, SO WE'LL SEE WHERE THIS GOES.

BUT WE'LL DO THIS IN A TWO-STEP PROCESS.

**PROSPECTIVE JUROR:** MAY I ASK A QUESTION?

**THE COURT:** YES.

**PROSPECTIVE JUROR:** WOULD I BE ABLE TO BE DISMISSED IF I'M NOT GOING TO BE ON HERE BECAUSE YOU SAID SOMETHING ABOUT ME BEING DISMISSED?

**THE COURT:** YES, BUT I NEED YOU TO JUST STAY.

**PROSPECTIVE JUROR:** OKAY.

**THE COURT:** MR. MOLO.

**MR. MOLO:** THANK YOU, YOUR HONOR. IT'S BEEN A LONG MORNING ALREADY AND AN AFTERNOON.

12:44:12 **THE COURT:** MR. MOLO, YOU'RE GOING TO SPEAK INTO THAT MICROPHONE.

12:44:19 **MR. MOLO:** OKAY. I HAVE A FEW QUESTIONS.

12:44:29 AS THE JUDGE SAID, I WON'T BE ABLE TO TALK VERY LONG. I'M SORRY ABOUT THAT.

12:44:33 MS. CARTER -- MS. CARTER. OH, I HAD A QUESTION.

12:44:46 YOU MENTIONED THAT MR. MUSK IS -- YOU CALLED HIM THE RICHEST MAN IN THE WORLD. HE MAY BE. HE'S VERY, VERY RICH, THERE'S NO QUESTION ABOUT THAT.

12:44:57 IS THERE ANYTHING ABOUT THAT THAT CREATES A PROBLEM FOR YOU IN BEING FAIR IN THE CASE?

12:45:04 **PROSPECTIVE JUROR:** NO. I DON'T HAVE A PROBLEM WITH ELON MUSK, BUT I DON'T REALLY KNOW ABOUT HIM THAT MUCH.

12:45:19 **MR. MOLO:** BECAUSE WHETHER --

12:45:21 **PROSPECTIVE JUROR:** EVERYBODY KNOWS HE'S THE RICHEST MAIN BE THE WORLD. EVERYBODY KNOWS THAT.

12:45:26 **MR. MOLO:** OKAY. WHETHER YOU'RE THE RICHEST MAN IN THE WORLD OR THE POOREST MAN OR WOMAN IN THE WORLD, YOU'RE ENTITLED TO EQUAL JUSTICE AND A FAIR SHAKE IN COURT, RIGHT?

12:45:34 **PROSPECTIVE JUROR:** YES, I DO.

12:45:36 **MR. MOLO:** THANK YOU VERY MUCH FOR THAT.

12:45:50 FRIHART.

12:45:53 **PROSPECTIVE JUROR:** FRIHART.

12:45:54 **MR. MOLO:** AM I PRONOUNCING IT CORRECTLY?

12:45:58 WHEN YOU WERE ASKED ABOUT HAVING OPINIONS ABOUT THE

PARTIES, YOU SAID SAME AS EVERYONE, BUT THAT DIDN'T TELL US SORT OF LIKE WHAT THAT MEANT.

WHAT ARE THOSE OPINIONS, IF YOU WILL?

**PROSPECTIVE JUROR:** YEAH, BUT ETHICALLY AND POLITICALLY I DON'T AGREE WITH ANYTHING THAT ELON MUSK HAS DONE. AND I DO HAVE ETHICAL CONCERNS ABOUT AI AND HOW IT MIGHT BE REPLACING PEOPLE'S JOBS IN THE NEAR FUTURE.

**MR. MOLO:** AND YOUR FEELINGS ABOUT MR. MUSK, ARE THOSE THINGS THAT YOU THINK WILL GET IN THE WAY ABOUT YOU BEING FAIR TO HIM?

**PROSPECTIVE JUROR:** NO. LIKE I SAID, I THINK I CAN SET THOSE ASIDE AND LOOK AT THE FACTS OF THE CASE.

**MR. MOLO:** OKAY. AND YOUR CONCERNS ABOUT AI AND PEOPLE LOSING THEIR JOBS, COULD YOU JUST EXPLAIN THAT A LITTLE BIT MORE?

**PROSPECTIVE JUROR:** AI IS REPLACING A LOT OF PEOPLE'S JOBS.

**MR. MOLO:** THAT ABOUT SAYS IT ALL, ESPECIALLY IF IT'S YOUR JOB, RIGHT?

ANYTHING ELSE THAT YOU WANT TO SHARE?

**PROSPECTIVE JUROR:** NO.

MR. MOLO: MS. KOCH, K-O-C-H.

**PROSPECTIVE JUROR:** YES.

**MR. MOLO:** YOU HAD A LETTER FROM YOUR BOSS THAT SAID YOU COMING AND SERVING ON THE JURY WOULD BE A PROBLEM FOR YOUR

EMPLOYER.

AND I JUST WANT TO MAKE SURE THAT IF YOU WENT TO THE TROUBLE OF HAVING YOUR BOSS WRITE THE LETTER, IS IT GOING TO BE AN ISSUE FOR YOU? BECAUSE IT'S NOT JUST SHOWING UP AND SAYING, HEY, I'VE GOT OTHER THINGS TO DO WITH WORK. THIS WAS KIND OF AN EXTENSIVE -- AND YOU OBVIOUSLY HAVE AN IMPORTANT JOB?

**PROSPECTIVE JUROR:** YEAH, I AM FUNDED BY FEDERAL GRANTS TO DO RESEARCH, SO IT WOULD BE DIFFICULT TO BASICALLY STOP ALL EXPERIMENTS.

**MR. MOLO:** BECAUSE I THINK YOU SAID -- MAYBE I MISUNDERSTOOD, BUT I THOUGHT YOU SAID THAT YOU THOUGHT YOU COULD COME AND IT WOULDN'T BE A PROBLEM, BUT THEN --

**PROSPECTIVE JUROR:** THE ORGANISMS WOULDN'T DIE. I WOULD BE ABLE TO GO IN AND FEED THEM, BUT I WOULDN'T BE ABLE TO DO THE RESEARCH THAT I'M PAID TO DO, BECAUSE THAT TAKES MORE THAN A FEW HOURS.

**MR. MOLO:** AND THAT IS WHAT YOUR BOSS WAS CONCERNED ABOUT?

**PROSPECTIVE JUROR:** YEAH, HE WAS VERY CONCERNED ABOUT.

**MR. MOLO:** DO YOU THINK THAT WOULD WEIGH ON YOUR MIND A LITTLE BIT WHILE YOU WERE HERE AS A JUROR?

**PROSPECTIVE JUROR:** IF I'M GOING IN IN THE AFTERNOONS AND AT NIGHT AND ON THE WEEKENDS, THEN, YES, I WOULD BE THINKING ABOUT IT.

**MR. MOLO:** OKAY. MR. MAZZOLA.

**PROSPECTIVE JUROR:** I'M SORRY.

**MR. MOLO:** SURE. YOU SAID YOU DIDN'T KNOW IF YOU COULD BE THE MOST UNBIASSED JUROR?

**PROSPECTIVE JUROR:** CORRECT.

**MR. MOLO:** BECAUSE YOU HAVE STRONG VIEWS AGAINST MR. MUSK; IS THAT RIGHT?

**PROSPECTIVE JUROR:** YES, OVER THE YEARS.

**MR. MOLO:** AND I THINK YOU EVEN SAID THAT YOU WERE HOPING FOR A SPECIFIC OUTCOME IN THE CASE AND YOU WERE FOLLOWING IT?

**PROSPECTIVE JUROR:** YES, BUT THAT'S A DIFFERENT LAYER.

**MR. MOLO:** DIFFERENT AI?

**PROSPECTIVE JUROR:** NO, A DIFFERENT LAYER OF THE CONVERSATION --

**MR. MOLO:** OH, YEAH.

**PROSPECTIVE JUROR:** BASICALLY I READ ABOUT THE CASE IN AI, MUSK VERSUS ALTMAN, AND I WAS VERY INTERESTED, AND I THINK IT GOES BEYOND AI. WE'RE TALKING ABOUT STRATEGIES THAT COUNTRIES WILL USE GEOPOLITICALLY, SO I THINK THIS IS AN IMPORTANT CASE AND USING AI IN A MORE RESPONSIBLE WAY AND MORE BENEFICIAL TO SOCIETY WAS THE HOPE I WAS TALKING ABOUT.

SO OVER THE YEARS WHEN I READ IN THE NEWS THAT THIS NONPROFIT WAS, LIKE, MAKING GREAT PROGRESS, I WAS HOPEFUL THAT

12:50:04 THE SOCIETY, RESEARCH INSTITUTIONS AND PEOPLE WOULD BENEFIT MORE DIRECTLY, AND THAT THE BIG SHIFT HAPPENED, AND SO THAT'S THE HOPE I WAS TALKING ABOUT, BUT IT'S UNRELATED TO MY PERSONAL OPINION VERSUS MUSK.

12:50:26 **MR. MOLO:** OKAY. SO IF YOU FOUND OUT THAT YOU ACTUALLY SHARED SOME OF THE VIEWS WITH MR. MUSK, AFTER YOU HEAR HIS VIEWS, WELL, FIRST OF ALL, WOULD YOU KEEP AN OPEN MIND TO AT LEAST HEAR WHAT HIS VIEWS ARE?

12:50:43 **PROSPECTIVE JUROR:** TOTALLY, YEAH, OF COURSE. BIASES ARE OFTEN NOT VERY -- THEY'RE LIKE -- THEY'RE PRESENT, WE KNOW, AND OF COURSE I CAN TRY TO BE AS OPEN-MINDED AS POSSIBLE. WE ALL THINK WE ARE OPEN-MINDED PEOPLE UNTIL WE STOP BEING OPEN-MINDED, BUT IT IS TRUE THAT OVER THE YEARS I HAD NEGATIVE OPINIONS ABOUT ELON MUSK, ENGINEER, BUSINESSMAN, BUT MANY OF HIS ACTIONS WERE VERY, VERY, I THINK, HARMFUL FOR THE COUNTRY.

12:51:22 **MR. MOLO:** OKAY. THIS CASE REALLY DOESN'T HAVE ANYTHING TO DO WITH ANY OF HIS POLITICAL ACTIVITY. THAT'S ONE OF THE GREAT THINGS ABOUT AMERICA, THAT JUDGE GONZALEZ ROGERS WAS HOLDING UP A COPY OF THE CONSTITUTION, AND THE CONSTITUTION DOES GIVE EVERY ONE OF US THE RIGHT TO BE A JUROR, BUT IT ALSO GIVES EVERY ONE OF US A RIGHT TO HAVE A POLITICAL BELIEF, AND WHAT MAKES THE COUNTRY GREAT IS THE ABILITY FOR SOMEBODY HAS ONE POLITICAL BELIEF, SOMEBODY HAS ANOTHER POLITICAL BELIEF, BUT YET WE CAN ALL LIVE HERE TOGETHER, AND WHEN IT COMES TO BEING HERE IN COURT, WE'RE ENTITLED, NOT JUST HOPEFUL, BUT

WE'RE ENTITLED TO JUSTICE AND FAIRNESS, REGARDLESS OF OUR POLITICAL BELIEFS.

DOES ANYBODY AMONG YOU HAVE A, YOU KNOW, HAVE A PROBLEM WITH THAT? BECAUSE IT'S UNDERSTANDABLE, PEOPLE HAVE STRONG BELIEFS, AND THEY'RE ENTITLED TO HAVE STRONG BELIEFS, BUT OUR COUNTRY IS FOUNDED ON THAT CONCEPT.

SO I GET IT. PEOPLE DIDN'T LIKE DOGE, A LOT OF PEOPLE DIDN'T LIKE DOGE. THIS CASE IS NOT ABOUT DOGE. IT'S ABOUT VERY, VERY SPECIFIC INTERACTIONS BETWEEN PEOPLE OVER THE CREATION OF A NONPROFIT TO SAFELY DEVELOP ARTIFICIAL INTELLIGENCE ON AN OPEN PLATFORM, AND NO ONE IS TO PROFIT FROM IT. THAT'S WHAT THE CASE IS ABOUT, AND MR. MUSK IS SEEKING TO ENFORCE THAT.

DOES THAT CREATE A PROBLEM FOR ANYBODY?

BECAUSE, AGAIN, LOOK, AS YOU SAY, THE RICHEST MAN IN THE WORLD, AND WHEN YOU'RE A FAMOUS PERSON WHO IS ON TELEVISION ALL OF THE TIME, PEOPLE ARE INEVITABLY GOING TO HAVE OPINIONS. BUT IT'S JUST, THOSE OPINIONS CAN'T CROP IN. BUT IF THEY DO, IF THEY DO, IT'S OKAY, SAY SO. LET US KNOW AND THERE'S NO SHAME IN IT. THERE'S NO NEGATIVE AROUND THAT, IT'S JUST THE WAY PEOPLE ARE, AND IT'S PERFECTLY FINE.

LET ME ASK A FEW MORE OF YOU SOME SPECIFIC QUESTIONS.

MR. MANASSE -- EVERYONE HAS MOVED AROUND SO I HAVE TO LOOK AROUND.

WHEN YOU WERE ASKED A QUESTION ABOUT MR. MUSK, AND YOU HAD

NEGATIVE VIEWS ON HIM, TOO, AND AGAIN, IT'S YOUR RIGHT TO HAVE THOSE VIEWS, AND I'M NOT IN ANY WAY TRYING TO SAY YOU SHOULDN'T HAVE WHATEVER VIEWS YOU HAVE.

BUT WHEN YOU WERE ASKED, CAN YOU GET PAST THOSE, YOU SAID, I'LL DO MY BEST. OKAY?

I GUESS MY QUESTION IS WHAT IF YOUR BEST ISN'T ENOUGH? AGAIN, IT'S PERFECTLY FINE IF YOU CAN'T GET PAST IT.

**PROSPECTIVE JUROR:** I CAN GET PAST IT.

**MR. MOLO:** DO YOU THINK? IT'S ALL RIGHT IF YOU CAN'T. THAT'S PERFECTLY FINE.

**PROSPECTIVE JUROR:** UM, I CAN GET PAST IT.

**MR. MOLO:** MR. CAMPBELL, IT SOUNDS LIKE YOU'VE GOT A BIG COMMITMENT HELPING YOUR SON DRIVE FROM LA.

**PROSPECTIVE JUROR:** YEAH, I'M SOMEWHAT ON CALL. I DON'T GET CONTROL WHEN THAT'S GOING TO HAPPEN, BUT, YOU KNOW, WHEN THEY DECIDED TO MAKE -- PULL THE PLUG, THEN I SAID, HEY, I'LL BE THERE AND GIVE YOU A HAND. HE AND HIS WIFE ARE MOVING FROM SOUTHERN CALIFORNIA TO THE PORTLAND, OREGON AREA.

**MR. MOLO:** SO THIS IS A COMPLICATED TRIP?

**PROSPECTIVE JUROR:** YEAH, IT'S COMPLICATED. THAT'S WHAT DADS DO, THEY SHOW UP WHEN THEIR KIDS NEED HELP, AND THEY DON'T TELL THEM WHAT TO DO AND HOW TO DO IT, BUT SAY, HEY, I'M GOING TO BE THERE, I'LL GIVE YOU A HAND.

**MR. MOLO:** ALL RIGHT. IF YOU WERE SITTING ON THE JURY, WOULD YOU BE KIND OF EDGY OVER THE FACT THAT THEY MIGHT

BE NEEDING YOU AND YOU CAN'T BE THERE?

**PROSPECTIVE JUROR:** I'M SURE WE CAN MAKE IT WORK IN SOME FASHION, BUT, AGAIN, I DON'T KNOW ALL OF THE VARIABLES AND HOW -- WHAT THE EXACT TIMING IS GOING TO BE AND HOW LONG DELIBERATIONS HERE MIGHT TAKE. THERE'S A NUMBER OF FACTORS THAT ARE UNKNOWN, AND I'M JUST --

**MR. MOLO:** YOU HAD ALSO EXPRESSED SOME -- YOU HAD SOME BIASES AGAINST MR. MUSK, WERE YOUR WORDS, AND INABILITY TO -- LET ME ASK YOU A QUESTION. IF THERE WAS A RACE BETWEEN MR. MUSK AND THE OTHER SIDE, A RUNNING RACE, AND YOU WERE THE PRIZE, WOULD HE BE SORT OF STARTING BEHIND THE STARTING LINE OR WOULD HE BE AT THE SAME STARTING LINE WITH THE OTHERS?

**PROSPECTIVE JUROR:** NO, I THINK HE WOULD BE STARTING AT THE SAME STARTING LINE, YEAH. I DON'T HAVE AN ISSUE WITH THAT.

**MR. MOLO:** OKAY.

**PROSPECTIVE JUROR:** MY JOB, AS WORKING IN CONSTRUCTION, I DEALT WITH CONTRACTS AND SPECIFICATIONS. I SOLVED PROBLEMS EVERY DAY, SO I WOULD SEEK TO SEE WHATEVER CONTRACT THERE WAS AND NOW, YOU KNOW, MR. MUSK MAY HAVE AN OPINION ABOUT THAT, MR. ALTMAN MAY HAVE AN OPINION ABOUT THAT, BUT IF THE CONTRACT SAYS, YOU KNOW, THIS IS WHAT YOU DO, THEN THAT'S WHAT YOU DO.

**MR. MOLO:** MS. SILVA, HI. I CAN'T COME OVER TO YOU, BUT I CAN GO THIS WAY BECAUSE I NEED TO BE NEXT TO THIS

MICROPHONE HERE.

SO YOU HAVE AN INTERESTING JOB INVOLVING MONEY LAUNDERING INVESTIGATION. HOW LONG HAVE YOU DONE THAT?

**PROSPECTIVE JUROR:** I HAVE BEEN DOING IT SINCE -- I'VE BEEN WITH THE COMPANY FOR ALMOST TEN YEARS, AND I'VE PROBABLY BEEN DOING IT FOR ABOUT SEVEN.

**MR. MOLO:** OKAY. AND YOU EXPRESSED SOME VERY STRONG VIEWS IN YOUR QUESTIONNAIRE RESPONSE, AND THAT WAS UNDER OATH, TOO.

SO DO YOU STILL ADHERE TO THOSE? THERE'S NOTHING THAT YOU -- IN YOUR QUESTIONNAIRE THAT YOU'D CHANGE, IS THERE?

**PROSPECTIVE JUROR:** NO.

**THE COURT:** FIVE MINUTES, MR. MOLO.

**MR. MOLO:** FIVE MINUTES?

**THE COURT:** FIVE MINUTES.

**MR. MOLO:** SURE. MR. MAI. YOU, TOO, EXPRESSED SOME VERY STRONG NEGATIVE VIEWS IN YOUR QUESTIONNAIRE RESPONSE, AND I'M NOT TRYING TO CHANGE YOUR VIEWS. YOU'RE ENTITLED TO THOSE. THAT'S ANOTHER ONE OF THE GREAT THINGS ABOUT AMERICA, RIGHT?

AND SO I JUST WANTED TO KNOW, IS THERE ANYTHING ABOUT YOUR QUESTIONNAIRE RESPONSE THAT YOU WOULD CHANGE AFTER BEING HERE TODAY?

**PROSPECTIVE JUROR:** MY FEELINGS ARE MY FEELINGS, BUT I WILL NOT LET IT DICTATE WHAT, YOU KNOW, COMES OUT OF THE FACTS.

**MR. MOLO:** OKAY. IS IT MS. CABRERA?

**PROSPECTIVE JUROR:** HI.

**MR. MOLO:** HI. SO YOU MENTIONED THAT YOU GOOGLED THE CASE.

**PROSPECTIVE JUROR:** YEAH. WELL, MY BOSS IS REALLY INTO ELON MUSK, SO HE TALKS ABOUT HIM ALL OF THE TIME, SO WE DEBATE BACK AND FORTH. SO HE ALREADY KNEW ABOUT EVERYTHING.

**MR. MOLO:** OKAY.

**PROSPECTIVE JUROR:** SO WHEN I GOT THE QUESTIONNAIRE AND THEY WERE ASKING ALL OF THESE QUESTIONS, I ASKED HIM, AND THAT WENT INTO THE WHOLE OF THE GOOGLE UNIT.

**MR. MOLO:** THE JUDGE IS GOING TO TELL YOU-ALL THAT THIS IS SOMETHING THAT YOU CAN'T DO AS A JUROR. I UNDERSTAND AT THE TIME WHY THAT HAPPENED, BUT I WAS JUST KIND OF CURIOUS ABOUT THAT.

**THE COURT:** DON'T FORGET TO SPEAK INTO THE MICROPHONE.

**PROSPECTIVE JUROR:** SORRY.

**MR. MOLO:** BUT YOU, TOO, HAVE NEGATIVE FEELINGS ABOUT MUSK; RIGHT?

**PROSPECTIVE JUROR:** YES.

**MR. MOLO:** AND, I MEAN, DO YOU THINK THAT HE CAN DO ANYTHING RIGHT?

**PROSPECTIVE JUROR:** YEAH. I MEAN, WELL, LIKE EVERYBODY ELSE, MY FEELINGS HAVE NOTHING TO DO WITH THE CASE,

SO THAT'S MY PROBLEM, NOT HIS, YOU KNOW? SO I WOULD DO WHAT I HAVE TO DO TO GET WHERE WE HAVE TO GO.

**MR. MOLO:** TO DO JUSTICE, RIGHT?

**PROSPECTIVE JUROR:** RIGHT.

**MR. MOLO:** THAT'S WHAT WE'RE HERE TO DO, IS TO DO JUSTICE, DO THE RIGHT THING FOR THE RIGHT REASONS, AND NOT BECAUSE OF THE WAY THAT WE FEEL ABOUT SOMEBODY.

IT'S NOT ALWAYS EASY. IN FACT, IT'S PRETTY HARD. IT TAKES A PRETTY STRONG PERSON TO MUSTER THAT AND SAY, I DON'T REALLY LIKE THIS PERSON, OR I LIKE THIS CAUSE, WHATEVER IT MIGHT BE.

BUT WE KNOW IF WE DON'T ACT ON THAT AS A SOCIETY, THEN WE CAN'T HAVE A FREE SOCIETY.

ONCE WE START ACTING BASED UPON OUR PREJUDICES OR BIASES -- AND ALSO, BY THE WAY, PEOPLE DO CHANGE. THEY DO EVOLVE. THEY'RE DIFFERENT. PEOPLE'S VIEWS ON MR. MUSK TODAY MIGHT HAVE BEEN DIFFERENT IN 2015 AND IT MAY BE DIFFERENT FIVE YEARS FROM NOW. BUT IT'S REALLY IMPORTANT TO KEEP THAT OPEN MIND.

IF I MAY HAVE JUST ONE MOMENT TO CONSULT WITH MY COLLEAGUES?

**THE COURT:** YOU HAVE TWO MINUTES.

**MR. MOLO:** THANK YOU.

(DISCUSSION AMONGST PLAINTIFFS' COUNSEL OFF THE RECORD.)

**MR. MOLO:** I JUST HAVE A COUPLE MORE QUESTIONS.

MS. STRAY WORKS FOR THE BIOTECH COMPANY. AH. OKAY.

AND HOW ABOUT -- CAN YOU JUST GIVE US A LITTLE BIT MORE INFORMATION ABOUT HOW YOUR COMPANY WORKS WITH UNIVERSITIES AND WHAT IT DOES?

**PROSPECTIVE JUROR:** YEAH. FOR INSTANCE, WE HAVE REAGENTS THAT WE LICENSE FROM THE UNIVERSITY, AND SO THEY GIVE US A CERTAIN NUMBER OF YEARS. SO WE CAN USE IT, AND WE PAY THEM A ROYALTY FOR THAT. SO WE HAVE THAT TYPE OF AGREEMENTS.

**MR. MOLO:** OKAY. SO WHAT I WOULD LIKE YOU TO ASK YOURSELF IN YOUR HEAD IS, CAN I GIVE ELON MUSK A FAIR SHAKE? CAN I HEAR WHAT THE EVIDENCE IS GOING TO BE, WOULD I WANT TO BE JUDGED IN THE SAME WAY? WOULD I WANT TO BE JUDGED BY ME? AND IF YOU CAN'T DO IT, IT'S PERFECTLY FINE. THERE'S NOTHING WRONG WITH THAT.

NEXT QUESTION. WHO WOKE UP ON JANUARY 1ST AND SAID, YOU KNOW, I THINK I'LL PROBABLY BE IN A COURTROOM WITH ELON MUSK SOMETIME THIS YEAR? ANYBODY? I DIDN'T THINK SO.

THANK YOU, YOUR HONOR.

**THE COURT:** ALL RIGHT. THANK YOU.

MR. SAVITT, ARE YOU-ALL DIVIDING TIME OR TAKING THE WHOLE TIME? WHAT ARE YOU DOING?

**MR. SAVITT:** YOUR HONOR, I'M GOING TO GO AS QUICKLY AS I CAN AND LEAVE A FEW MINUTES TO MICROSOFT. THAT'S OUR PLAN TODAY, YOUR HONOR.

**THE COURT:** ALL RIGHT. GO AHEAD.

**MR. SAVITT:** HELLO AGAIN. GOOD AFTERNOON.

BILL SAVITT. I REPRESENT THE OPENAI DEFENDANTS. WE'RE THE PEOPLE WHO MR. MUSK IS SUING AND WANTED TO BEGIN BY SAYING THANK YOU AGAIN.

I KNOW THIS ISN'T EASY. I APPRECIATE IT'S A LITTLE TOUGH ANSWERING LOTS AND LOTS OF QUESTIONS IN FRONT OF LOTS AND LOTS OF PEOPLE, IN FRONT OF A ROOMFUL OF STRANGERS.

WE REALLY VALUE YOUR COMPLETE CANDOR IN THIS PROCESS. IT'S IMPORTANT. IT'S WHAT MAKES THE SYSTEM WORK.

AS THE COURT SAID, WE WOULD LOVE TO SPEND A LOT OF TIME WITH EACH AND EVERY ONE OF YOU. IF I DID THAT, I WOULD RUN OUT OF TIME EXCEEDINGLY QUICKLY SO I WON'T.

I HAVE A FEW QUESTIONS TO FOLLOW UP ON SOME OF THE THINGS WE HEARD THIS MORNING AND THIS AFTERNOON IN YOUR QUESTIONNAIRES, AND SEE WHAT WE CAN LEARN.

BUT I ASK ALL OF THESE QUESTIONS WITH APOLOGIES BECAUSE I KNOW IT'S BEEN A LONG DAY SO FAR, AND I KNOW THIS IS A COMPLICATED PROCESS.

MR. RESKA. HELLO. HOW ARE YOU DOING?

**PROSPECTIVE JUROR:** I'M ALL RIGHT.

HELLO.

**MR. SAVITT:** HELLO. AND THANK YOU AGAIN. YOU SAID, SIR, ON YOUR QUESTIONNAIRE THAT YOU'VE HEARD THAT MR. MUSK WAS SUING ABOUT AI. WHAT IS YOUR IMPRESSION ABOUT MR. MUSK AND MR. ALTMAN FROM WHAT YOU'VE HEARD?

01:07:33 **PROSPECTIVE JUROR:** WELL, I DON'T REALLY CARE EITHER WAY I GUESS. I JUST SAW THE HEADLINE AND I DIDN'T READ INTO IT AND DIVE DEEPER, SO I DON'T HAVE ANY OPINION EITHER WAY. I JUST SAW IT AND SWIPED PAST IT.

01:07:48 **MR. SAVITT:** UNDERSTOOD. THANK YOU FOR THAT.

01:07:49 YOU I THINK MENTIONED IN YOUR QUESTIONNAIRE, MR. RESKA, THAT YOU TRUST SOME NEWS SOURCES MORE THAN OTHERS.

01:07:55 DO I RECALL THAT CORRECTLY?

01:07:57 **PROSPECTIVE JUROR:** YES.

01:07:58 **MR. SAVITT:** LET ME ASK YOU, WHICH NEWS SOURCES DO YOU TEND TO TRUST MORE?

01:08:02 **PROSPECTIVE JUROR:** MOSTLY INDEPENDENT NEWS, YOU KNOW. IT'S HARD TO SAY BECAUSE -- YOU KNOW, MOSTLY INDIVIDUALS. YEAH.

01:08:13 **MR. SAVITT:** ANY NEWS ORGANIZATIONS THAT YOU'RE PARTICULARLY UNINTERESTED OR DISTRUSTFUL OF?

01:08:18 **PROSPECTIVE JUROR:** LIKE CNN, YOU KNOW. MOSTLY THAT.

01:08:22 **MR. SAVITT:** AND ARE THERE ANY OTHER NEWS ORGANIZATIONS THAT YOU TEND TO PUT MORE TRUST IN?

01:08:27 **PROSPECTIVE JUROR:** NOT PARTICULARLY, NO.

01:08:37 **MR. SAVITT:** IS THERE ANY SENSE IN WHICH IT WOULD BE FAIR TO SAY THAT AS YOU'RE THINKING ABOUT THIS CASE, THAT MR. MUSK MIGHT START OFF A LITTLE BIT AHEAD IN YOUR MIND AS YOU'RE CONSIDERING SITTING DOWN IN THE JURY BOX?

01:08:48 **PROSPECTIVE JUROR:** NOT REALLY BECAUSE I DON'T REALLY

KNOW WHAT'S IN THE CONTRACT. SO I DON'T KNOW.

**MR. SAVITT:** OKAY. WELL, I APPRECIATE IT, MR. RESKA. THANK YOU SO MUCH FOR ANSWERING MY QUESTIONS.

MS. KOCH.

**PROSPECTIVE JUROR:** THANK YOU.

**MR. SAVITT:** THANK YOU. YOU GET ASKED BY EVERYBODY. SO I'LL HAVE A VERY, VERY QUICK QUESTION FOR YOU FOLLOWING UP ON MY COLLEAGUE'S QUESTION TO YOU.

I THINK I REMEMBER YOU IN YOUR COLLOQUY, IN YOUR DISCUSSION WITH THE COURT SAYING THAT NOTWITHSTANDING THE OTHER THINGS GOING ON IN YOUR LIFE, AND EVERYONE HAS THEM, YOU THOUGHT YOU COULD MAKE THIS WORK.

IS THAT FAIR?

**PROSPECTIVE JUROR:** YES, I COULD MAKE IT WORK. YES.

**MR. SAVITT:** THANK YOU. I APPRECIATE THAT.

AND, MR. CAMPBELL?

**PROSPECTIVE JUROR:** YES, SIR.

**MR. SAVITT:** THANK YOU. I JUST HAD THE SAME QUESTION FOR YOU THAT I HAD FOR -- FOR MS. KOCH BECAUSE I KNOW YOU HAVE A LOT GOING ON. IT SOUNDS LIKE IT WILL BE INTERESTING OR FUN, OR I HOPE IT WILL, WITH YOUR SON. BUT I JUST WANTED TO CONFIRM THAT YOU COULD MAKE IT WORK.

**PROSPECTIVE JUROR:** I COULD MAKE IT WORK. HE WOULDN'T BE HAPPY ABOUT THAT, BUT I COULD MAKE IT WORK.

**MR. SAVITT:** WE APPRECIATE THAT, AND I JUST WANTED TO

CLARIFY THAT.

I HAD A QUESTION NOW FOR MR. WEI. I THINK IT WAS HAN WEI. OH, I'M SORRY IF I MISPRONOUNCED YOUR NAME. MY APOLOGIES, SIR.

**PROSPECTIVE JUROR:** IT'S OKAY.

**MR. SAVITT:** SORRY ABOUT THAT. LET ME ASK YOU, YOU SAID IN YOUR QUESTIONNAIRE THAT -- MR. MUSK ENDORSING THE PRESIDENT DURING THE ELECTION, BUT IT DIDN'T END WELL FOR HIM.

DO YOU REMEMBER PUTTING THAT IN YOUR QUESTIONNAIRE?

**PROSPECTIVE JUROR:** YEAH, KIND OF.

**MR. SAVITT:** YEAH, I WAS WONDERING WHAT YOU MEANT BY THAT.

**PROSPECTIVE JUROR:** IT'S JUST THE POLITICAL SIDE OF THINGS THAT EVERYBODY IS TALKING ABOUT. NOTHING NEW. AND I THINK I CAN PUT THEM ASIDE. I THINK I CAN PUT THEM ASIDE.

**MR. SAVITT:** THANK YOU. YOU MENTIONED ALSO IN YOUR QUESTIONNAIRE THAT YOU LIKE TESLA CARS AND THAT YOU THINK SPACEX IS VERY COOL.

AS YOU KNOW, MR. MUSK IS THE PLAINTIFF HERE. HE'S THE ONE WHO FILED THIS LAWSUIT.

WOULD IT BE FAIR TO SAY THAT BECAUSE OF YOUR ENTHUSIASM FOR HIS BUSINESSES, YOU START THE CASE WITH A LEAN IN HIS FAVOR?

**PROSPECTIVE JUROR:** NO.

**MR. SAVITT:** NOT AT ALL?

**PROSPECTIVE JUROR:** NOT AT ALL.

**MR. SAVITT:** OKAY. DO YOU HAVE ANY NEGATIVE VIEWS, SIR, OF MR. BROCKMAN OR MR. ALTMAN?

**PROSPECTIVE JUROR:** NO.

**MR. SAVITT:** AND I ASKED THIS QUESTION TO ONE OF YOUR CO-PANELIST, BUT IT WAS ON YOUR QUESTIONNAIRE AS WELL. AND IT WAS AN INTERESTING ONE, THANK YOU FOR THAT.

YOU SAID YOU TRUST OTHER NEWS SOURCES MORE THAN OTHERS. I WAS WONDERING WHICH ONES YOU DO TEND TO TRUST?

**PROSPECTIVE JUROR:** SOMETHING THAT IS MORE LIKE BBC AND REUTERS.

**MR. SAVITT:** OKAY. THANK YOU VERY MUCH. I REALLY APPRECIATE IT.

I ALSO HAD A COUPLE OF QUESTION FOR MR. WARREN.

SIR -- THERE HE IS. GOOD AFTERNOON. HOW ARE YOU?

**PROSPECTIVE JUROR:** HELLO.

**MR. SAVITT:** YOU ALSO SAID, MR. WARREN, YOU TRUSTED SOME NEWS SOURCES MORE THAN OTHERS, IF I RECALL FROM YOUR QUESTIONNAIRE; IS THAT RIGHT?

**PROSPECTIVE JUROR:** YES.

**MR. SAVITT:** AND IF I COULD ASK, WHICH NEWS SOURCES DO YOU TEND TO CREDIT THE MOST?

**PROSPECTIVE JUROR:** MOSTLY WATCH INDEPENDENT NEWS. NOT TOO MUCH MAINSTREAM.

**MR. SAVITT:** NOT TOO MUCH MAINSTREAM.

AND YOU SHARED SOME THOUGHTS ON YOUR QUESTIONNAIRE ABOUT

ARTIFICIAL INTELLIGENCE. I DON'T KNOW IF YOU RECALL. THEY WERE REALLY, REALLY QUITE INTERESTING, SO THANK YOU FOR THEM. AND THEY WERE COMPLEX.

WHAT I WANTED TO JUST MAKE SURE TO ASK, SIR, WAS WHETHER IT WOULD BE RIGHT TO SAY THAT GIVEN YOUR VIEWS ABOUT OPENAI, YOU COME INTO THE CASE WITH A LITTLE BIT OF A LEAN AGAINST OPENAI AND MR. ALTMAN?

**PROSPECTIVE JUROR:** I WOULDN'T SAY SO MUCH. MY QUALM WITH AI IS MORE ETHICAL, MORE ON THAT SIDE OF IT, NOT NECESSARILY IT AS A TOOL OR AS A SOFTWARE PRODUCT.

**MR. SAVITT:** THANK YOU. AND THAT MAKES A LOT OF SENSE HAVING READ YOUR QUESTIONNAIRE.

IS -- DO YOU HAVE SKEPTICISM ABOUT ARTIFICIAL INTELLIGENCE AND THE SUSPICION AGAINST THOSE WHO ARE TRYING TO BUILD IT?

**PROSPECTIVE JUROR:** NOT NECESSARILY AGAINST THE PEOPLE TRYING TO -- I WOULD PUT IT MORE LIKE THIS. I HAVE A -- A -- I HAVE A -- COULD YOU SHOOT THAT QUESTION TO ME AGAIN?

**MR. SAVITT:** I WAS ASKING WHETHER IT WAS RIGHT TO THINK, GIVEN WHAT WE'VE TALKED ABOUT IN YOUR QUESTIONNAIRE, THAT YOU HAVE A CERTAIN SUSPICION ABOUT ARTIFICIAL INTELLIGENCE AND THE PEOPLE WHO ARE BUILDING IT?

**PROSPECTIVE JUROR:** OKAY. YEAH. SO NOT NECESSARILY SUSPICION AGAINST THE SOFTWARE ITSELF. THE SUSPICION MORE COMES TO THE ALIGNMENT OF EXACTLY WHERE THEY'RE TRYING TO GO WITH AI. AS IT STANDS CURRENTLY, I HAVE NO QUALMS WITH IT, BUT

I DO TEND TO HAVE MY GLASS HALF FULL ON WHAT IS TO COME LATER ON, YES.

**MR. SAVITT:** THAT'S SUPER INTERESTING. THANK YOU. AND IF I COULD JUST ASK YOU TO TELL ME A LITTLE BIT ABOUT WHAT YOU THINK ABOUT WHERE IT MIGHT BE GOING AND WHAT'S ON YOUR MIND WHEN YOU SAY THAT?

**PROSPECTIVE JUROR:** WELL, AT ITS CURRENT PACE AND MOST DEFINITELY JUST GOING HOG WILD WITHOUT ANY REGULATION, DEFINITELY MAKES ME WORRY ABOUT WHAT EXACTLY THEY'RE TRYING TO GO AFTER, AS OPPOSED TO JUST TRYING TO BETTER MANKIND.

**MR. SAVITT:** THANK YOU FOR THAT.

DO YOU HAVE ANY CONCERNS ON YOUR PART THAT YOU WOULD THINK THAT MAYBE THE DEFENDANTS HERE START A LITTLE BIT BEHIND BECAUSE OF YOUR CONCERNS ABOUT ARTIFICIAL INTELLIGENCE?

**PROSPECTIVE JUROR:** NO, NOT NECESSARILY. MY CONCERNS ABOUT ARTIFICIAL INTELLIGENCE IS GENERAL. IT GOES ACROSS EVERY SINGLE OTHER SOFTWARE AND THE LIKE.

SO WHETHER IT'S ALTMAN OR ELON MUSK MAKING IT OR EVEN GOOGLE, THAT'S HOW I FEEL ABOUT AI. THE INDIVIDUALS, HOWEVER, THAT WILL COME THROUGH WHATEVER FACTS COME UP IN COURT.

**MR. SAVITT:** THANK YOU. LAST QUESTION FOR YOU, SIR, IS WHAT IS YOUR VIEW OF ELON MUSK?

**PROSPECTIVE JUROR:** HONESTLY, POLITICALLY, I DON'T REALLY LIKE THE DUDE. BUT WHEN IT COMES DOWN TO SOFTWARE AND STUFF LIKE THAT, THAT'S A WHOLE DIFFERENT CONTINENT. I'LL

LEAVE THAT TO THE TECH GUYS FOR THAT ONE.

**MR. SAVITT:** VERY GOOD. THANK YOU, SIR. I APPRECIATE IT.

I WANTED TO ASK A QUESTION OR TWO AS WELL OF MR. HAWKEY, WHO I ALSO THINK WAS FROM THE EARLIER SESSION.

MR. HAWKEY, THANK YOU.

DO YOU CONSIDER MR. MUSK TO BE A REALLY INNOVATIVE BUSINESSMAN?

**PROSPECTIVE JUROR:** I DO.

**MR. SAVITT:** DO YOU THINK HIS INVOLVEMENT IN THE COMPANY IS WORTH A LOT TO IT?

**PROSPECTIVE JUROR:** I WOULD NEED MORE CONTEXT AND MORE INFORMATION.

**MR. SAVITT:** THAT'S FAIR. THAT'S FAIR. YOU WROTE ON YOUR QUESTIONNAIRE THAT YOU OWN A TESLA. DO YOU REMEMBER THAT?

**PROSPECTIVE JUROR:** IT'S MY WIFE'S. I GET TO DRIVE IT SOMETIMES.

**MR. SAVITT:** YOU GET TO DRIVE IT. IT SOUNDS LIKE YOU WORKED IT OUT PRETTY WELL.

IS IT FAIR TO SAY THAT YOU MIGHT BE LEANING TOWARDS MR. MUSK A LITTLE BIT FROM THE START BECAUSE OF YOUR ADMIRATION FOR HIS PRODUCTS?

**PROSPECTIVE JUROR:** NO. IT'S A GREAT CAR BUT, YEAH, I'M NOT -- IT WOULDN'T SKEW MY BIAS IN THAT DIRECTION.

**MR. SAVITT:** THANK YOU, SIR.

AND A FURTHER QUESTION ABOUT YOUR -- THE NEWS YOU LOOK AT BECAUSE YOU ALSO HAD SOME INTERESTING THOUGHTS ON YOUR QUESTIONNAIRE ABOUT THAT.

HAVE YOU HEARD ABOUT THIS CASE THROUGH THE MEDIA?

**PROSPECTIVE JUROR:** I HAVE NOT.

**MR. SAVITT:** YOU DON'T KNOW ANYTHING ABOUT THE CASE COMING IN. THIS IS ALL YOU'RE LEARNING ABOUT?

**PROSPECTIVE JUROR:** YEAH. I UNPLUGGED FROM I GUESS, LIKE, MY APPLE NEWS FEED, LIKE, POST ELECTION. I WAS JUST KIND OF TIRED OF DOING SCROLLING. SO RIGHT NOW I JUST KIND OF READ NEWSPAPERS, FOLLOW THE RESPECTIVE NEWSPAPERS ON INSTAGRAM, AND FOLLOW NPR.

**MR. SAVITT:** THANK YOU VERY MUCH. I APPRECIATE YOUR ANSWERS. THANK YOU.

A COUPLE OF QUESTIONS FOR MR. SOBTI. THANK YOU, SIR.

**THE COURT:** YOU'RE TEN MINUTES IN.

**MR. SAVITT:** TEN MINUTES IN?

**THE COURT:** TEN MINUTES IN.

**MR. SAVITT:** HOW MANY DO I GET, 15?

**THE COURT:** TWENTY.

**MR. SAVITT:** TWENTY.

**THE COURT:** TWENTY BETWEEN THE TWO OF YOU.

**MR. SAVITT:** THANK YOU, YOUR HONOR.

MR. SOBTI, GOOD AFTERNOON.

**PROSPECTIVE JUROR:** HELLO.

**MR. SAVITT:** AND AS WITH EVERYONE, THANKS AGAIN FOR PUTTING UP WITH ALL OF THIS. WE'RE REALLY GRATEFUL.

YOU WROTE ON YOUR QUESTIONNAIRE THAT YOU REMEMBER ABOUT HEARING ABOUT ANTITRUST LAWSUITS AGAINST MICROSOFT. DO YOU RECALL THAT? TELL ME WHAT YOU REMEMBER ABOUT WHAT YOU READ?

**PROSPECTIVE JUROR:** I THINK IT WAS FROM THE LATE '90S, EARLY 2000S, BUT I HAVE NOT TRACKED THEM. I DON'T FOLLOW THE NEWS THAT MUCH, LIKE, IN THE LAST FIVE -- MANY MORE YEARS, I DON'T DO THAT DAY BY DAY. I DON'T DO THAT. IT'S JUST TOO MUCH TO TAKE IN. SO I DON'T KEEP TRACK OF THINGS.

**MR. SAVITT:** GOT IT. THANK YOU.

I NOTICE ALSO IN YOUR QUESTIONNAIRE THAT YOU'RE THE COFOUNDER OF AN AI STARTUP; IS THAT RIGHT?

**PROSPECTIVE JUROR:** CORRECT.

**MR. SAVITT:** WHAT WHY YOUR OPINIONS ABOUT SAM ALTMAN AND CHATGPT?

**PROSPECTIVE JUROR:** WE USE THEIR PRODUCT.

**MR. SAVITT:** DO YOU CONSIDER MR. MUSK TO BE A VERY SAVVY BUSINESSMAN?

**PROSPECTIVE JUROR:** SOME OF THE COMPANIES HE HAS CREATED THEY ARE PRETTY INCREDIBLE. SO THEY'RE UNIQUE COMPANIES. AS A BUSINESSMAN, I DO NOT KNOW. LIKE, BUSINESS IS DIFFERENT FROM TECHNOLOGY. SO I AM NOT SURE.

**MR. SAVITT:** THANK YOU.

WOULD IT BE FAIR TO SAY THAT YOU ADMIRE MR. MUSK?

01:19:11 **PROSPECTIVE JUROR:** WELL, IT'S A MIXED BAG.

01:19:17 SO, LIKE, TESLA, I THINK IT'S A GOOD THING TO HAVE AN 01:19:22 OPTION TO HAVE ELECTRIC CARS AND NOT DIESEL THAT RELY ON FOSSIL 01:19:28 FUEL FOR TRANSPORTATION. SO IT'S GOOD TO HAVE THAT OPTION.

01:19:32 SO IN THOSE TERMS, I THINK THAT'S A GOOD THING, BUT THE 01:19:37 LIST IS ALSO PRETTY LONG IN TERMS OF, LIKE, HOW ONE MAY DISLIKE 01:19:49 HIM AS A CITIZEN.

01:19:52 **MR. SAVITT:** THANK YOU FOR THAT. DO YOU THINK IT 01:19:54 WOULD BE FAIR TO THINK THAT BECAUSE OF THE THINKING YOU'VE DONE 01:20:00 ABOUT MR. MUSK, THAT HE STARTS A LITTLE BIT AHEAD IN ANY 01:20:04 CONTROVERSY IN YOUR THINKING ABOUT HIM?

01:20:07 **PROSPECTIVE JUROR:** NO.

01:20:07 **MR. SAVITT:** NO, NOT AT ALL.

01:20:09 AND YOU ALSO MENTIONED IN YOUR QUESTIONNAIRE THAT YOU 01:20:11 TRUST SOME NEWS SOURCES MORE THAN OTHERS. DO YOU REMEMBER 01:20:14 THAT, SIR?

01:20:14 **PROSPECTIVE JUROR:** YES.

01:20:15 **MR. SAVITT:** WHICH ONES DO YOU TRUST?

01:20:16 **PROSPECTIVE JUROR:** SO I GREW UP READING "THE NEW 01:20:19 YORK TIMES," AND I WAS DEFINITELY THROUGH COLLEGE. BUT NOW I 01:20:24 DO MAKE IT A POINT WHENEVER I OPEN A "NEW YORK TIMES" TAB, I 01:20:30 ALSO OPEN A FOX NEWS TAB JUST TO MAKE SURE WHAT I'M MISSING, SO 01:20:38 I TRY TO OPEN THEM AT THE SAME TIME.

01:20:40 **MR. SAVITT:** WHICH ONE DO YOU TRUST MORE?

01:20:41 **PROSPECTIVE JUROR:** SO I TRUST A NEWS SOURCE MORE IF

01:20:46 THEY'RE ABLE TO ADMIT THEIR MISTAKES, AND I DON'T READ FOX NEWS
01:20:52 THAT MUCH, BUT I HAVE SEEN "NEW YORK TIMES" ADMIT MISTAKES, SO
01:20:57 THAT'S A GOOD THING, I THINK.

01:21:00 **MR. SAVITT:** THANK YOU. AND THANK YOU, SIR. I VERY
01:21:03 MUCH APPRECIATE THAT, THAT.

01:21:05 MS. BLOSEN, OR BLOSEN. THANK YOU.

01:21:25 I'M SORRY, MA'AM. THANK YOU VERY MUCH. AND AGAIN, MY
01:21:28 THANKS TO THE REPORTER FOR PUTTING UP WITH ALL OF THESE
01:21:30 QUESTIONS.

01:21:30 YOU INDICATED -- I WANTED TO ASK YOU SOME -- A LITTLE BIT
01:21:33 MORE ABOUT YOUR BUSINESS, AND YOU TALKED ABOUT -- I WAS
01:21:35 WONDERING WHETHER YOU DEAL WITH VERBAL AGREEMENTS IN IT. DO
01:21:38 YOU DEAL WITH VERBAL AGREEMENTS IN YOUR BUSINESS, MA'AM?

01:21:42 **PROSPECTIVE JUROR:** NO.

01:21:43 **MR. SAVITT:** YOU DO NOT. AND DO YOU DEAL WITH
01:21:45 WRITTEN CONTRACTS?

01:21:46 **PROSPECTIVE JUROR:** NO.

01:21:48 **MR. SAVITT:** ARE YOU A FAN OF ELON MUSK, WOULD YOU
01:21:50 SAY?

01:21:50 **PROSPECTIVE JUROR:** I WOULDN'T SAY THAT, BUT I DO
01:21:56 USE, YOU KNOW, TESLA AND WE DO USE OPENAI, SO I THINK IT'S JUST
01:22:01 BASED ON HOW GOOD THE QUALITY OF THE PRODUCT THAT WE ADMIRE,
01:22:06 FOR THE HIGH-TECH, THAT FIELD IS SOMETHING PERSONAL.

01:22:11 **MR. SAVITT:** THAT'S TOTALLY FAIR, AND THANK YOU FOR
01:22:13 THAT.

AND IS -- JUST TO INQUIRE, IS THERE ANY SENSE IN WHICH IT WOULD BE FAIR TO SAY THAT YOUR ATTITUDE TOWARDS HIS PRODUCTS GIVES HIM A HEAD START WHEN YOU'RE THINKING ABOUT ANY DISPUTE HE MIGHT BE INVOLVED IN?

**PROSPECTIVE JUROR:** I DON'T THINK SO. WE DON'T REALLY PUT THE PERSON AND THE PRODUCT TOGETHER.

**MR. SAVITT:** GOT IT.

**PROSPECTIVE JUROR:** UH-HUH. IT'S TWO SEPARATE THINGS.

**MR. SAVITT:** WELL, THAT'S VERY FAIR. THANK YOU SO MUCH.

**THE COURT:** ONE MORE, MR. SAVITT.

**MR. SAVITT:** ONE LAST -- LET ME ASK MR. ECCLESTON, SIR, YOU STATED IN YOUR QUESTIONNAIRE THAT YOU HAVE STRONG RELIGIOUS BELIEFS, AND YOU DIDN'T KNOW IF IT WOULD AFFECT YOUR ABILITY TO SERVE IN THE CASE.

DO YOU RECALL THAT, SIR?

**PROSPECTIVE JUROR:** YEAH, I SAID SOMETHING LIKE THAT, BUT I THINK I'M WILLING TO PUT IT ASIDE AND JUST TRY TO BE FAIR TO BOTH SIDES.

**MR. SAVITT:** I APPRECIATE THAT. I JUST WANTED TO MAKE SURE I UNDERSTOOD WHAT YOU MEANT WHEN YOU SAID THAT, SIR.

COULD YOU EXPLAIN?

**PROSPECTIVE JUROR:** I MEAN, I JUST -- I HAVE CHRISTIAN BELIEFS, YOU KNOW, BUT I'LL DO THE BEST OF MY ABILITY

TO PUT THAT ASIDE AND JUST BE FAIR TO BOTH SIDES AND BE OPEN-MINDED HERE TO BOTH SIDES.

**MR. SAVITT:** THANK YOU. I JUST WANTED TO MAKE SURE I'D UNDERSTOOD THAT, SO I APPRECIATE THE EXPLANATION.

CAN YOU TELL US WHAT YOU THINK ABOUT ELON MUSK?

**PROSPECTIVE JUROR:** I DON'T HAVE ANY PROBLEMS WITH HIM, WITH BOTH SIDES, I DON'T HAVE ANY PROBLEMS WITH ANYONE.

**MR. SAVITT:** WOULD YOU CALL YOURSELF AN ELON FAN?

**PROSPECTIVE JUROR:** I MEAN, I LIKE SOME OF HIS -- SPACEX, YOU KNOW, I THINK THAT'S REALLY GOOD, YOU KNOW. I ALSO LIKE OPENAI, TOO, OPENAI. SO I WANT TO BE FAIR TO BOTH SIDES AND HEAR BOTH SIDES OF THE ARGUMENT FAIRLY.

**MR. SAVITT:** THANK YOU. VERY MUCH APPRECIATED, SIR.

AND MS. SILVA. MS. SILVA, I JUST WANTED TO CONFIRM, I KNOW MY COLLEAGUE ON THE OTHER SIDE ASKED YOU A QUESTION ABOUT YOUR ABILITY TO PUT ANY OF YOUR IDEAS TO THE SIDE AND TO BE A FAIR WITNESS -- TO BE A FAIR JUROR. I WANTED TO MAKE SURE -- I THINK YOU TOLD THE JUDGE THAT YOU WERE CONFIDENT THAT YOU COULD PUT THOSE VIEWS ASIDE AND JUDGE THE MATTER IMPARTIALLY. I JUST WANTED TO CONFIRM THAT MYSELF.

**PROSPECTIVE JUROR:** YES, DEFINITELY.

**MR. SAVITT:** I'M GOING TO CEDE THE REST OF MY TIME TO MY FRIEND.

**MR. COHEN:** THANK YOU, EVERYONE.

I KNOW IT'S BEEN A VERY LONG MORNING. I'M GOING TO BE

BRIEF.

BUT I DO WANT TO ASK ALL OF YOU, HAS ANYTHING THAT YOU'VE HEARD TODAY ABOUT THE CASE OR ANYTHING IN YOUR OWN EXPERIENCE LEAD YOU TO HAVE A NEGATIVE VIEW AT ALL ABOUT MY CLIENT, MICROSOFT? IF YOU DO, COULD YOU PUT UP YOUR HANDS.

ANYONE?

OKAY. I APPRECIATE THAT.

YOUR HONOR?

**THE COURT:** ONE MINUTE. DO YOU HAVE ONE MORE QUESTION?

**MR. COHEN:** I REALLY DON'T, YOUR HONOR.

**THE COURT:** ALL RIGHT. THANK YOU.

**MR. COHEN:** THANK YOU.

**THE COURT:** THANK YOU, MR. COHEN.

OKAY. PROSPECTIVE JURORS, THIS IS WHAT YOU'RE GOING TO DO. I NEED TO NOW SPEND SOME TIME, JUST A LITTLE BIT OF TIME WITH THE LAWYERS AND TALK TO THEM. SO WE ARE GOING TO GO INTO SESSION WITHOUT ALL OF YOU IN HERE.

IT IS 1:25. AND I WOULD ASK THAT YOU BE BACK AT THE COURTROOM DOORS BY 1:50. OKAY? 1:50. I HOPE TO HAVE ANSWERS FOR SOME OF YOU AT THAT TIME, AND WE WILL OPEN UP WHEN WE'RE READY, BUT WE SHOULD BE READY FOR YOU BY 1:50.

SO, AGAIN, MY "DO NOT ORDER" STILL APPLIES. NONE OF YOU HAVE BEEN RELEASED. DO NOT COMMUNICATE ABOUT THIS, DO NOT RESEARCH ANYTHING, DO NOT TALK TO ANYONE, JUST DO NOT DO

ANYTHING ABOUT THIS CASE WHILE YOU'RE TAKING YOUR SHORT BREAK.

OKAY? SO WE'LL SEE YOU BACK HERE AT APPROXIMATELY 1:50.

**THE CLERK:** PLEASE RISE FOR THE JURY.

(JURY OUT AT 1:27 P.M.)

**THE COURT:** OKAY. I'M GOING TO EXCUSE SOME PEOPLE. SO LET ME DO THAT SO YOU DON'T HAVE TO STRUGGLE OVER THE TOPIC.

THE RECORD WILL REFLECT THAT THE VENIRE IS NOT WITH US.

I'M GOING TO EXCUSE THE FOLLOWING FOR FINANCIAL HARDSHIP REASONS, AND I'M LOOKING AT WHAT WE CALL THE JUDGE'S LIST, WHICH IS THE RANDOM LIST:

JUROR NUMBER 18, PRUM.

ARE YOU WITH ME?

**MR. MOLO:** PRUM.

**THE COURT:** IS EVERYBODY WITH ME?

**MR. SAVITT:** YES.

**THE COURT:** JUROR 23, SALGADO;

JUROR 40, CABRERA;

I JUST EXCUSED MARTINEZ, 44, GIVEN HER SURGERY;

JUROR 50, SHAHVEKILIAN;

I'M ALSO GOING TO EXCUSE 34, CHU, FOR HARDSHIP IN TERMS OF ENGLISH;

AND 45, HUANG. SAME REASON.

AND THE ONLY PERSON WHO I BELIEVE HAS A VALID CAUSE IS 36, CAMPBELL. WE'RE EXCUSING SUA SPONTE.

IF YOU WANT ME TO HEAR OTHER CAUSE CHALLENGES, YOU CAN

BRING THOSE AT THIS TIME.

**MR. MOLO:** OKAY. MAY I TURN THIS BACK?

**THE CLERK:** LET ME HELP YOU, COUNSEL.

**MR. MOLO:** WAS 10 EXCUSED, JUDGE?

NO, SHE WAS NOT. CHERICE SILVA, THIS IS THE ONE WHO HAD THE MONEY-LAUNDERING INVESTIGATION.

**THE COURT:** DENIED.

**MR. MOLO:** I ASKED HER TO REAFFIRM HER QUESTIONNAIRE, AND JUST TO BE CLEAR, IT SAYS ELON MUSK IS A GREEDY, RACIST, HOMOPHOBIC PIECE OF GARBAGE.

**THE COURT:** YEAH. SHE ALSO SAID THAT SHE'S AN INVESTIGATOR AND SHE DOESN'T LIKE A LOT OF PEOPLE, AND SHE FOCUSES ON THE FACTS AND ONLY ON THE FACTS.

**MR. MOLO:** I UNDERSTAND HAVING A NEGATIVE OPINION, BUT THIS IS REALLY VITRIOLIC.

**THE COURT:** OTHERS, DO YOU WANT TO WEIGH IN ON THIS?

**MR. JACKSON:** YOUR HONOR, WE AGREE ENTIRELY WITH THE COURT. WE THINK THE QUESTIONING WAS FAIR THAT THE COURT CONDUCTED, AND IT MADE CLEAR THAT THIS JUROR SAID THAT SHE COULD SEPARATE HER FEELINGS, AND THAT SHE WAS PERFECTLY CAPABLE OF BEING IMPARTIAL, SO WE DON'T THINK IT'S AN APPROPRIATE CAUSE CHALLENGE.

**THE COURT:** I AGREE WITH YOU, SHE DOES NOT LIKE HIM AT ALL, BUT THAT IS HER JOB, SO, NO, IT'S DENIED.

**MR. MOLO:** 21, MANASSE, SAME THING IN HIS

QUESTIONNAIRE, HE SAYS -- I AM SORRY, I AM SORRY. I TALKED TOO FAST THERE.

ELON MUSK IS A WORLD-CLASS JERK, AND HE REALLY WAS EQUIVOCATING. I QUESTIONED HIM, AND HE EQUIVOCATED. HE'S THE FELLOW THAT WORKS FOR OAKLAND AS A CITY PLANNER.

**THE COURT:** DENIED.

**MR. MOLO:** OKAY. 37 --

**THE COURT:** THE NONPROFIT.

**MR. MOLO:** 37 I WOULD RAISE FOR CAUSE. TESLA. IT GOES ON. IF YOU READ THE FIRST PASSAGE, SHE TALKS ABOUT: AS A WOMAN OF COLOR, I'M VERY AWARE OF DAMAGING STATEMENTS AND ACTIONS THAT ELON MUSK HAS ENACTED AND BEEN PART OF. SHE MENTIONS DOGE AND HOW IT HARMED A PARTNER, HER PARTNER, WHO WORKS IN THE HEALTHCARE FIELD.

SO IT SEEMS MORE PERSONAL. I MEAN, SHE'S SAYING THAT DOGE SOMEHOW HARMED HER PARTNER.

**THE COURT:** I DON'T RECALL THAT YOU FOLLOWED UP ON THAT.

**MR. MOLO:** I DON'T BELIEVE I ASKED HER ANYTHING SPECIFICALLY ON THAT, BUT IT WAS IN THE QUESTIONNAIRE. I MEAN, IT SEEMS LIKE FINANCIAL --

**THE COURT:** SHE ALSO SAID THE EXACT OPPOSITE WHEN I QUESTIONED HER.

LOOK, THE REALITY IS PEOPLE DON'T LIKE HIM.

**MR. MOLO:** I'M WELL AWARE.

01:35:27 **THE COURT:** MANY PEOPLE DO NOT LIKE HIM, BUT THAT DOESN'T MEAN THAT AMERICANS CANNOT NEVERTHELESS HAVE INTEGRITY FOR THE JUDICIAL PROCESS AND OTHER THAN MR. CAMPBELL, WHO I THINK ACTUALLY CAN'T GET OVER, AND IS A NEWS JUNKY AND WILL NOT BE ABLE TO NOT CONSIDER THINGS OUTSIDE, EVERY ONE OF THESE INDIVIDUALS WHO I QUESTIONED ROSE UP TO THE PLATE AND SAID -- AND I WAS TESTING THEM ABOUT WHETHER I THOUGHT THAT THEY COULD GET BEYOND THEIR BIAS AGAINST MR. MUSK.

01:36:12 DENIED.

01:36:13 **MR. MOLO:** OKAY. AND I DON'T -- ONE MOMENT.

01:36:25 (DISCUSSION AMONGST PLAINTIFFS' COUNSEL OFF THE RECORD.)

01:36:31 **MR. MOLO:** THOSE ARE OUR CAUSE CHALLENGES.

01:36:33 **THE COURT:** YOUR NAME AGAIN, PLEASE.

01:36:35 **MR. JACKSON:** YES, YOUR HONOR. THIS IS RANDALL JACKSON ON BEHALF OF MR. ALTMAN AND MR. BROCKMAN AND THE OPENAI DEFENDANTS.

01:36:43 **THE COURT:** OKAY.

01:36:45 **MR. JACKSON:** YOUR HONOR, WE DON'T HAVE ANY ADDITIONAL CAUSE CHALLENGES.

01:36:48 **MR. COHEN:** NOR DO WE, YOUR HONOR.

01:36:50 **THE COURT:** OKAY. IT'S 1:36. I'LL GIVE YOU FOUR MINUTES TO CONFER AND THEN WE START PEREMPTORIES.

01:36:57 **MR. MOLO:** THANK YOU.

01:36:58 **MR. COHEN:** THANK YOU.

01:36:58 **THE COURT:** AND I DID PROMISE WE WOULD GO THROUGH.

SO THIS IS THE JURY THAT I HAVE.

**MR. JACKSON:** YOUR HONOR, MAY I JUST ASK ONE QUESTION BEFORE YOU START?

IS THE ORDER THAT YOU'RE ABOUT TO GIVE US --

**THE COURT:** THE JUDGE'S LIST.

**MR. JACKSON:** THAT'S THE JUDGE'S LIST. IS THAT GOING TO BE THE ORDER THAT THE JURORS WOULD BE SEATED IN?

**THE COURT:** CORRECT.

**MR. JACKSON:** OKAY. THANK YOU.

**THE COURT:** SO HERE'S WHO I HAVE:

I HAVE NUMBER 9 -- I MEAN, EXCUSE ME. NUMBER 6;

NUMBER 7;

NUMBER 8;

NUMBER 10;

11;

12;

15;

16; AND,

17.

I'LL GIVE EACH --

**MR. MOLO:** THAT'S TEN PEOPLE.

**THE COURT:** THEN I -- I JUST THOUGHT I COUNTED --

**MR. MOLO:** WAS IT NINE BY ACCIDENT?

**MR. SAVITT:** NO, IT WAS NINE.

**THE COURT:** THAT'S NINE.

01:38:27 **MR. MOLO:** I'M SORRY. I HAD JUROR NUMBER 9, AND THEN YOU SAID NO, NUMBER 6.

01:38:31 **THE COURT:** AND THEN 17.

01:38:33 SO MENDOZA IS THE LAST ONE. MENDOZA IS NUMBER 9.

01:38:41 **MR. MOLO:** 6, 7, 8, 10, 11, 12, 15, 16, 17.

01:38:58 **THE COURT:** YES, THAT'S NINE.

01:39:00 **MR. MOLO:** IS THAT RIGHT? OKAY. THANK YOU.

01:39:05 HOW MUCH TIME DO WE HAVE?

01:39:24 **THE COURT:** AND I HAVE ENOUGH -- YOU'LL EACH GET FIVE, FIVE STRIKES FOR EACH SIDE.

01:39:29 **MR. MOLO:** FIVE STRIKES.

01:39:31 **THE CLERK:** HERE'S YOUR WORKSHEET, YOUR HONOR.

01:40:09 **THE COURT:** THANK YOU.

01:40:09 (PAUSE IN PROCEEDINGS.)

01:40:09 **THE COURT:** DO YOU HAVE A QUESTION, MR. RANDALL -- JACKSON?

01:40:09 **MR. JACKSON:** JACKSON IS THE LAST NAME, YOUR HONOR.

01:40:10 JUDGE, WE JUST WANTED TO MAKE SURE WE UNDERSTOOD. I KNOW THAT THERE ARE DIFFERENT METHODS, AND YOUR HONOR HAS THE EXPERIENCE HERE. WE WERE WONDERING, IS THE COURT PLANNING TO QUALIFY 17 JURORS -- I'M SORRY -- THE TOTAL 19 JURORS, SINCE WE HAVE FIVE STRIKES NOW, AND THEN HAVE A STRIKE FROM THAT ENTIRE GROUP? OR IS THE COURT PLANNING TO --

01:40:36 **THE COURT:** YOU CAN STRIKE FROM ANYBODY IN THE FIRST FEW PANELS.

**MR. JACKSON:** IN THE FIRST TWO PANELS, WE CAN STARTED FROM ANYWHERE.

**THE COURT:** YOU CAN START FROM ANYWHERE. SO I SUGGEST THAT PERHAPS THE 40TH PERSON YOU DON'T WANT TO STRIKE.

**MR. JACKSON:** YES, YOUR HONOR.

**THE COURT:** THAT'S WHY WE WENT THROUGH -- SO IF SOMEONE GOT STRUCK FROM THE FIRST NINE, THEN MR. MANASSE, WHO IS JUROR 21, IS ON.

**MR. JACKSON:** THANK YOU, YOUR HONOR. WE JUST WANTED TO MAKE SURE. SOME OF THE JUDGES WE APPEAR BEFORE HAVE THE, YOU KNOW, THE FIRST IN THE BOX METHOD.

**THE COURT:** YOU CAN STRIKE FROM THE WHOLE THING. THAT'S WHY YOU'RE GETTING FIVE. I DID MY COUNT. I HAVE ENOUGH.

**MR. JACKSON:** THAT'S PERFECT. THANK YOU, YOUR HONOR.

(RECESS FROM 1:41 P.M. UNTIL 1:44 P.M.)

**THE COURT:** WE'RE BACK ON THE RECORD, MR. MOLO. YOUR FIRST STRIKE.

**MR. MOLO:** OUR FIRST STRIKE IS JUROR NUMBER 10, SILVA.

**THE COURT:** OKAY. NUMBER 10. AND THAT IS OFF, AND WHICH BRINGS ON EDWARD CHARLES OR NUMBER 21, MANASSE.

DEFENSE?

**MR. JACKSON:** NUMBER 6, YOUR HONOR.

**THE COURT:** OKAY. NUMBER 6, MR. RESKA, IS OFF.

THAT PUTS ON 24, CARTER.

PLAINTIFF?

**MR. MOLO:** 21, MR. MANASSE.

**THE COURT:** OKAY. 21, MANASSE IS OFF, WHICH BRINGS ON 25, WARREN.

DEFENSE?

**MR. JACKSON:** NUMBER 16, YOUR HONOR.

**THE COURT:** OKAY. NUMBER 16, HAN, IS OFF, WHICH BRINGS ON 28, FRIHART.

**MR. MOLO:** NUMBER 11, KOCH.

**THE COURT:** KOCH IS OFF, WHICH BRINGS ON 30, ROSTEL.

**MR. MOLO:** 30 JUST MOVED UP?

**THE COURT:** YES.

DEFENSE?

**MR. JACKSON:** NUMBER 25, YOUR HONOR.

**THE COURT:** OKAY. 25 IS OFF, THAT IS WARREN, WHICH BRINGS ON 32, MUZAFFAR.

PLAINTIFF?

**MS. SCHUBERT:** MAY WE HAVE A MOMENT, YOUR HONOR?

**THE COURT:** YES.

YOU EACH GET TWO MORE.

(PAUSE IN PROCEEDINGS.)

**MR. MOLO:** IS 17 IN THE VENIRE OR NOT AT THIS POINT?

**THE COURT:** YES.

**MR. MOLO:** OKAY. THEN WE'LL USE THAT ON MENDOZA.

(PAUSE IN PROCEEDINGS.)

**THE COURT:** MR. MOLO, WAS THAT A STRIKE OR ARE YOU STILL THINKING?

**MR. MOLO:** 17.

**THE COURT:** 17. OKAY.

SO 17, MENDOZA IS OFF, AND THAT BRINGS ON 33 HAWKEY.

**MR. JACKSON:** NUMBER 33, YOUR HONOR.

**THE COURT:** OKAY. WHICH THEN BRINGS ON 37, PEREZ, KIRA PEREZ.

SO LET ME GO THROUGH BEFORE YOU HAVE YOUR LAST STRIKES SO THAT EVERYBODY IS ALIGNED.

SO THE NINE THAT I'M SHOWING IS NUMBER 7, CARDENAS;

NUMBER 8, BABANTO;

NUMBER 12, PEREZ REYES;

NUMBER 15, STODGEL;

NUMBER 24, CARTER;

NUMBER 28, FRIHART;

NUMBER 30, ROSTEL;

NUMBER 32, MUZAFFAR; AND,

NUMBER 9, PEREZ.

**MR. MOLO:** TWO PEREZES?

**THE COURT:** CORRECT. NOW, THE TWO THAT ARE IN THE POCKET -- SO ARE WE -- IS EVERYBODY WITH ME?

**MR. MOLO:** THE LAST PEREZ, I THINK THERE'S A QUESTION. I BELIEVE YOU SAID YOU WERE COUNTING THE NUMBERS

NINE.

**MR. JACKSON:** IT'S 37.

**MR. MOLO:** JUROR 37?

**THE COURT:** I'M SORRY, JUROR 37 WHO IS THE LAST NUMBER.

**MR. MOLO:** RIGHT, SHE'S THE NINTH.

**THE COURT:** RIGHT.

**MR. MOLO:** WE'VE GOT IT.

**THE COURT:** OKAY. SO THE TWO THAT ARE IN THE POCKET, THE NEXT TWO UP ARE 38 AND 39. I WANT TO MAKE SURE EVERYBODY IS ON BOARD.

**MR. MOLO:** WE STRIKE JUROR NUMBER 37, THE PEREZ, THE SECOND PEREZ.

**THE COURT:** SO THE LAST STRIKE IS NUMBER 37, PEREZ, WHICH PUTS 38, WOLDAY ON.

DOES THE DEFENSE PASS OR ARE YOU EXERCISING YOUR LAST STRIKE?

**MR. JACKSON:** WE PASS, YOUR HONOR.

**THE COURT:** OKAY. WE'RE PRETTY MUCH OUT OF TIME.

IF I HAVE LAWYERS ON THE LAST TWO ROWS ON THE LEFT SIDE, COULD YOU-ALL GO STAND IN THE BACK IN CASE?

I DON'T KNOW IF I'M GOING TO HAVE ENOUGH ROOM FOR ALL OF THE JURORS WHEN THEY COME IN. SO IF YOU'RE ON THAT DEFENSE SIDE AND YOU'RE A LAWYER TO A PARTY, CAN YOU JUST STAND ON THE BACK WALL, PLEASE, IN CASE I NEED MORE SEATS? IT WON'T BE FOR

LONG.

MR. CUENCO, IF YOU'LL OPEN THE DOORS AND HAVE THEM JUST SIT ANYWHERE IN THE COURTROOM. NO ONE COMES UP FRONT.

(JURY IN AT 1:56 P.M.)

**THE COURT:** JUST SCRUNCH IF YOU CAN. JUST EVERYBODY MOVE TO THE MIDDLE BEFORE YOU CAN GET ASSIGNED SEATING.

SO IF THE FOLLOWING INDIVIDUALS WILL PLEASE COME FORWARD:

LAST NAME CARDENAS.

MS. CARDENAS, WE'RE GOING TO HAVE YOU SIT IN THE VERY FIRST SEAT IN THE VERY FIRST ROW.

LAST NAME BABANTO.

MS. BABANTO, YOU'RE GOING TO SIT IN THE SECOND ONE.

LAST NAME PEREZ REYES, ERICK.

LAST NAME STODGEL.

LAST NAME FRIHART.

MS. FRIHART, YOU'LL BE THE FIFTH SEAT IN THAT FRONT ROW.

AND THEN IN THE BACK ROW, LAST NAME ROSTEL.

LAST NAME MUZAFFAR.

LAST NAME CARTER.

AND LAST NAME WOLDAY.

OKAY. IF THE NINE OF YOU WOULD PLEASE STAND AND RAISE YOUR RIGHT HAND, PLEASE.

**THE CLERK:** PLEASE RAISE YOUR RIGHT HAND TO BE SWORN.

(SELECTED JURORS WERE GIVEN THE OATH.)

**JURORS:** I DO.

**THE COURT:** YOU ARE OUR JURY. PLEASE HAVE A SEAT.

SO, PROSPECTIVE MEMBERS OF THE JURY, YOU ARE NOW EXCUSED. LET ME, BEFORE YOU RUSH OUT OF HERE, SAY AGAIN TO YOU THANK YOU FOR ENGAGING WITH US TODAY, FOR BEING A TRUE AMERICAN, FOR BEING -- AND FOR HONORING YOUR CITIZENSHIP. IT REALLY MATTERS.

WHAT WE DO IN THESE COURTROOMS, ACROSS THE COUNTRY, WHAT YOU'VE DONE TODAY, IT MATTERS TO OUR DEMOCRACY. AND I AM -- IT'S TRULY AN HONOR TO HAVE SPENT A DAY WITH YOU, AND I APPRECIATE YOU COMING IN.

SO YOU ARE NOW ALL EXCUSED, AND YOU MAY LEAVE. THANK YOU.

YOU CAN ALL BE SEATED. YOU'RE OUR JURY, AND WE'LL BE SPEND THE NEXT COUPLE OF WEEKS TOGETHER.

WHAT WILL HAPPEN -- LIKE I SAID, WE START, AND FROM HERE I'M GOING TO GIVE YOU A FEW INSTRUCTIONS, AND THEN MR. CUENCO WILL TAKE YOU INTO THE JURY ROOM AND GIVE YOU BADGES.

WHAT YOU CAN EXPECT IS THAT WE'LL START PROMPTLY AT 8:30 EACH MORNING. WE'LL BE DONE AT 1:40. WE'LL GIVE YOU A CALENDAR SO THAT YOU HAVE IT. I TRY TO BE VERY PROMPT AND PRECISE WITH MY BREAKS SO THAT IN CASE YOU HAVE TO DO CALLS OR DEAL WITH ANYTHING, YOU CAN DO THAT.

TOMORROW WE'LL PROVIDE YOU WITH SOME, LIKE, BREAKFAST FOODS AND BAGELS AND STUFF, BECAUSE IT GETS TO BE A LONG DAY. BUT AFTER THAT, YOU'LL SEE WE'VE GOT A MICROWAVE IN THERE AND A FRIDGE. YOU CAN BRING THINGS THAT YOU-ALL LIKE FOR YOURSELVES.

YOU'LL SEE HOW IT WORKS.

AND YOU'LL HAVE A NOTEBOOK WHICH HAS PAPER. I REQUIRE THAT THE PARTIES ACTUALLY GIVE YOU A PICTURE OF EVERYBODY WHO TESTIFIES BECAUSE YOU'LL BE INSTRUCTED AT THE END OF THE DAY, LIKE, DO YOU BELIEVE THIS PERSON OR NOT?

AND I CAN TELL YOU, YOU PROBABLY DON'T REMEMBER MUCH OF WHAT I SAID IN THE MORNING. SO THINK ABOUT WHAT YOU MIGHT REMEMBER ON DAY 1 VERSUS DAY 20. SO I'LL GIVE YOU SOME INSTRUCTIONS ABOUT TAKING NOTES AND THINGS. BUT ANYWAY, WE WILL PROVIDE THAT FOR YOU.

WE'LL ALSO GIVE YOU A PHONE NUMBER SO THAT YOU CAN GIVE THAT PHONE NUMBER TO YOUR LOVED ONES IN CASE THERE'S AN EMERGENCY. SOMEONE WILL PICK THAT UP. I WILL STOP THE TRIAL, AND WE'LL GET THE MESSAGE TO YOU. I DON'T WANT YOU TO BE NERVOUS OR CONCERNED ABOUT ANYTHING THAT IS HAPPENING. OKAY?

DO ANY OF YOU HAVE QUESTIONS? DO YOU HAVE ANY QUESTIONS?

**JUROR:** SO IN THE MORNING WE JUST --

**THE COURT:** HE WILL SHOW YOU.

**JUROR:** OKAY.

**THE COURT:** THERE'S A SPECIAL HALLWAY THAT YOU'LL GO THROUGH TO GET TO THE JURY ROOM.

YES?

**JUROR:** DO YOU GET ANY NOTES? I MEAN, SHE TRANSCRIBES. BUT DO YOU GET TO READ THAT BECAUSE I DON'T KNOW THAT I CAN REMEMBER EVERYTHING.

02:03:52 **THE COURT:** SO, NO IS THE SHORT ANSWER. YOU WILL NOT GET A TRANSCRIPT.

02:03:57 **JUROR:** OKAY.

02:03:58 **THE COURT:** YOU'LL TAKE NOTES, AND YOU'LL HAVE EVIDENCE. THERE WILL BE DOCUMENTS THAT GET ADMITTED, AND YOU WILL HAVE ANY OF THAT EVIDENCE WITH YOU IN THE JURY ROOM FOR YOU TO CONSIDER. AND A BIG PART OF THIS IS WHO ARE YOU GOING TO BELIEVE, AND WHO ARE YOU NOT GOING TO BELIEVE? AND THAT'S WHY I HAVE THEM GIVE YOU PICTURES SO THAT YOU CAN TAKE NOTES WITH RESPECT TO THAT.

02:04:33 OTHER QUESTIONS? NO? OKAY.

02:04:36 THEN THIS INSTRUCTION I'M GOING TO GIVE YOU, I'M GOING TO GIVE IT TO YOU MULTIPLE TIMES UNTIL I'M SURE IT'S INGRAINED IN YOUR HEAD. THIS IS BASICALLY A MORE FORMAL VERSION OF MY "DO-NOT ORDERS."

02:04:53 SO BECAUSE YOU MUST BASE YOUR VERDICT ONLY ON THE EVIDENCE RECEIVED IN THIS CASE AND ON THESE INSTRUCTIONS, YOU MUST NOT BE EXPOSED TO ANY OTHER INFORMATION ABOUT THIS CASE OR THE ISSUES IT INVOLVES, EXCEPT THAT YOU CAN DISCUSS THE CASE WITH YOUR JUROR -- FELLOW JURORS, BUT ONLY DURING DELIBERATIONS. YOU CANNOT DISCUSS THESE ISSUES DURING THE COURSE OF THE TRIAL.

02:05:17 DO NOT COMMUNICATE WITH ANYONE IN ANY WAY, AND DO NOT LET ANYONE ELSE COMMUNICATE WITH YOU IN ANY WAY ABOUT THE MERITS OF THIS CASE OR ANYTHING TO DO WITH IT. THIS INCLUDES DISCUSSING THE CASE IN PERSON, IN WRITING, BY PHONE, BY ANY ELECTRONIC

MEANS VIA EMAIL, TEXT MESSAGING, INTERNET, CHAT ROOM, BLOG, WEBSITE, APPLICATION, INCLUDING BUT NOT LIMITED TO FACEBOOK, YOUTUBE, X, INSTAGRAM, LINKEDIN, SNAPCHAT, OR ANY KIND OF FORM OF SOCIAL MEDIA.

THIS APPLIES TO COMMUNICATING WITH YOUR FAMILY MEMBERS, YOUR EMPLOYER, THE MEDIA, THE PRESS, AND ANY PEOPLE INVOLVED IN THE TRIAL.

IF YOU ARE ASKED OR APPROACHED IN ANY WAY ABOUT YOUR JURY SERVICE OR ABOUT ANYTHING IN THIS CASE, YOU MUST RESPOND THAT YOU HAVE BEEN ORDERED NOT TO DISCUSS THE MATTER AND PLEASE REPORT ANY CONTACT TO ME.

DO NOT READ, WATCH, OR LISTEN TO ANY NEWS OR MEDIA ACCOUNTS OR ANY COMMENTARY ABOUT THE CASE OR ANYTHING TO DO WITH IT.

DO NOT DO ANY RESEARCH, CONSULT A DICTIONARY -- SUCH AS CONSULTING DICTIONARIES, SEARCHING THE INTERNET, OR USING ANY REFERENCE MATERIALS.

DO NOT MAKE ANY INVESTIGATION OR IN ANY WAY TRY TO LEARN ABOUT THE CASE OR ON YOUR OWN.

DO NOT VISIT OR VIEW ANY CASE DISCUSSED IN THE CASE OR PLACE DISCUSSED IN THE CASE.

DO NOT USE INTERNET PROGRAMS OR ANY OTHER DEVICES TO SEARCH FOR OR VIEW ANY PLACE DISCUSSED DURING THE TRIAL.

DO NOT DO ANY RESEARCH ABOUT THIS CASE, THE LAW, OR THE PEOPLE INVOLVED IN IT, INCLUDING THE PARTIES, THE WITNESSES,

02:06:58 AND THE LAWYERS UNTIL YOU HAVE BEEN EXCUSED AS JURORS.

02:07:02 IF YOU HAPPEN TO READ OR HEAR ANYTHING TOUCHING ON THIS 02:07:08 CASE IN THE MEDIA, JUST TURN AWAY AND REPORT IT TO ME AS SOON 02:07:13 AS POSSIBLE.

02:07:14 THERE WILL BE MEDIA COVERAGE OF THIS CASE, AND I'M SURE 02:07:23 YOU SAW THERE'S MEDIA OUTSIDE. THEY HAVE ALL BEEN INSTRUCTED 02:07:29 AND THEY ARE ORDERED NOT TO TALK TO YOU. SO THERE SHOULD BE NO 02:07:39 CONTACT.

02:07:39 I DON'T KNOW WHAT NEWS MEDIA YOU-ALL LISTEN TO, BUT IF YOU 02:07:46 HAPPEN TO LISTEN TO SOMETHING AND IT GETS PICKED UP, JUST 02:07:50 CHANGE THE CHANNEL.

02:07:53 YOU ARE THE MOST IMPORTANT PEOPLE IN THIS ROOM RIGHT NOW. 02:07:57 AND ULTIMATELY YOU-ALL ARE GOING TO COLLECTIVELY MAKE A 02:08:01 DECISION, NOT THE MEDIA, NOT ANYONE ELSE. YOU HAVE THE BEST 02:08:06 SEATS IN THE COURTHOUSE, AND IT'S YOUR OPINION THAT PEOPLE ARE 02:08:16 CONCERNED ABOUT. I THINK MOST OF YOU OR MANY OF YOU SAID YOU 02:08:18 KIND OF TRUST MEDIA, YOU KIND OF DON'T, SO YOU DON'T KNOW WHAT 02:08:22 THEIR PERSPECTIVES ARE, AND FRANKLY, WE DON'T CARE, RIGHT? ALL 02:08:28 WE CARE ABOUT IS WHAT IS PRESENTED RIGHT HERE TO YOU. THAT'S 02:08:30 WHAT WE CARE ABOUT. SO THAT'S THE MOST IMPORTANT THING.

02:08:39 THE PARTIES, BY THE WAY, IF YOU HAPPEN TO SEE THEM, 02:08:41 ACCIDENTALLY GET IN AN ELEVATOR WITH THEM, THEY AREN'T GOING TO 02:08:45 TALK TO YOU. IT'S NOT BECAUSE THEY'RE TRYING TO BE RUDE, IT'S 02:08:52 BECAUSE THEY KNOW THEY'VE BEEN ORDERED BY ME NOT TO TALK TO 02:08:55 YOU.

02:08:55 AND THAT IS EVEN, LIKE, LITTLE THINGS, LIKE MAYBE THEY SEE YOU READING A BOOK WHILE YOU'RE WAITING TO GET INTO THE HALLWAY OR SOMETHING LIKE THAT. JUST DON'T HAVE ANY CONVERSATIONS WITH FOLKS. OKAY?

02:09:14 IF YOU HAVE ANY CONCERNS WHATSOEVER, OR DURING THE COURSE OF THE TRIAL, PLEASE LET MR. CUENCO KNOW SO THAT I CAN GET -- SO HE CAN CONTACT ME. HE'LL BE IN REGULAR TOUCH WITH YOU. YOU MAY EVEN SEE ME AS I GO TO MY CHAMBERS WHEN YOU ARE LEAVING OR COMING. AND THAT'S KIND OF ABOUT IT, RIGHT? BECAUSE YOU JUST DON'T WANT TO HAVE ANY IMPROPER COMMUNICATION WHATSOEVER. OKAY?

02:09:37 THESE RULES PROTECT EACH PARTY'S RIGHT TO HAVE THE CASE DECIDED ONLY ON THE EVIDENCE THAT HAS BEEN PRESENTED HERE IN OPEN COURT.

02:09:46 WITNESSES HERE IN COURT TAKE AN OATH TO TELL THE TRUTH, AND THE ACCURACY OF THAT TESTIMONY IS TESTED THROUGH THE TRIAL PROCESS. I WAS TALKING ABOUT THAT EARLIER TODAY.

02:09:59 IF YOU DO ANY RESEARCH OR INVESTIGATION OUTSIDE OF THE COURTROOM OR GAIN ANY INFORMATION THROUGH IMPROPER COMMUNICATIONS, THEN YOUR VERDICT MAY BE INFLUENCED BY INACCURATE, INCOMPLETE OR MISLEADING INFORMATION THAT HAS NOT BEEN TESTED BY THE TRIAL PROCESS.

02:10:19 EACH OF THE PARTIES IS ENTITLED TO A FAIR TRIAL BY AN IMPARTIAL JURY, AND IF YOU DECIDE THE CASE BASED ON INFORMATION THAT WAS NOT PRESENTED HERE IN COURT, YOU WILL HAVE DENIED THE

PARTIES A FAIR TRIAL.

REMEMBER, YOU HAVE TAKEN AN OATH TO FOLLOW THESE RULES, AND IT'S VERY IMPORTANT THAT YOU FOLLOW THEM.

A JUROR WHO VIOLATES THESE RESTRICTIONS JEOPARDIZES THE FAIRNESS OF THESE PROCEEDINGS. AGAIN, IF YOU HAVE ANY CONCERNS WHATSOEVER, JUST LET MR. CUENCO KNOW SO THAT I CAN ENGAGE WITH YOU. OKAY?

AND WHEN I ENGAGE WITH YOU, IT WILL BE IN OPEN COURT. OKAY? ALL RIGHT.

ANY LAST QUESTIONS? IF NOT, MR. CUENCO WILL TAKE YOU BACK. NO? OKAY.

GREAT. WE WILL SEE YOU TOMORROW MORNING. THANK YOU.

**THE CLERK:** PLEASE RISE FOR THE JURY.

(JURY OUT AT 2:11 P.M.)

**THE COURT:** OKAY. THE RECORD WILL REFLECT THAT THE JURORS ARE GONE. I HAVE ONE THING TO TELL YOU -- HAVE A SEAT. I HAVE ONE THING TO TELL YOU ABOUT THE OUTSTANDING OBJECTION.

IS THERE ANYTHING ELSE THAT YOU-ALL WANT TO TALK ABOUT? IF NOT -- IF WE'RE GOING TO HAVE A LONG DISCUSSION, WHICH IS FINE, THEN I NEED TO GIVE THE COURT REPORTER A BREAK, UNLESS SHE TELLS ME OTHERWISE.

**MR. KRY:** YOUR HONOR, WE JUST WANTED TO MENTION THAT WE HANDED UP A REVISED SLIDE THAT WAS THE SUBJECT OF ONE OF THE DISPUTES THIS MORNING TO THE COURTROOM DEPUTY.

**THE COURT:** OKAY. AS LONG AS THE OTHER SIDE HAS SEEN

IT AND THAT HAS BEEN ADDRESSED. DID YOU SHOW IT TO THE OTHER SIDE?

**MR. KRY:** YES. WE DID, YOUR HONOR.

YOUR HONOR, FOR THE SLIDES ON WHICH YOU RESERVED, MY COLLEAGUE WAS JUST --

**THE COURT:** ON THE -- OKAY. DO YOU ALL HAVE ANYTHING ELSE OTHER THAN FOR ME TO DEAL WITH THIS LAST SLIDE?

MR. COHEN?

**MR. COHEN:** WE DON'T, YOUR HONOR.

**THE COURT:** MR. SAVITT.

**MR. SAVITT:** NO.

**THE COURT:** OKAY. WITH RESPECT TO THE LAST SLIDE THAT I HAD RESERVED ON, I ASKED MY LAW CLERKS TO DO A WORD SEARCH IN THE REPORT, AND THE OPINIONS THAT HAD BEEN APPROVED DID NOT INCLUDE ANY REFERENCE TO THAT EXISTENTIAL THREAT. IT SHALL NOT BE ON THE SLIDE, AND FRANKLY IT SHALL NOT BE MENTIONED DURING THIS TRIAL.

**MR. KRY:** YOUR HONOR, THAT'S WHAT -- WE REMOVED THAT WORD FROM THE SLIDE.

**THE COURT:** THEN THAT OBJECTION IS SUSTAINED AND THEY FIXED IT.

ANYTHING ELSE, MR. FRENTZEN?

**MR. FRENTZEN:** WELL, I'M SORRY, I DON'T MEAN TO -- I'M NOT SURE IT'S FIXED IN THE SENSE THAT THEY REPLACED ONE OF THE PIECES OF LANGUAGE, WHICH WAS THAT PARTICULAR THING WITH

MISALIGNMENT AND LOSS OF CONTROL.

I HEARD WHAT THE COURT JUST SAID, AND I THINK SO LONG AS THEY'RE NOT GOING TO VEER INTO EXISTENTIAL THREAT, CATASTROPHIC HARM, ET CETERA, IN OPENING, THEN I THINK WE'RE OKAY. I DON'T KNOW WHAT THEY THINK THIS ENCOMPASSES, BUT SO LONG AS THE COURT IS TRACKING AND WE ARE TRACKING, I DON'T THINK WE HAVE AN ISSUE WITH IT, AND HOPEFULLY THAT'S NOT GOING TO BE AN ISSUE TOMORROW, YOUR HONOR.

**THE COURT:** WHO IS DOING THE OPENING?

**MR. MOLO:** I'M SORRY? OH. IT'S -- THE TITLE THAT IS THERE IS STRAIGHT FROM THE EXPERT'S OPINION, AND I'M GOING TO BRIEFLY MENTION THAT HE'S GOING TO TALK ABOUT THESE HANDFUL OF HARMS. THERE'S FOUR HARMS THAT --

**THE COURT:** LET'S JUST -- TO BE VERY CLEAR, WE ARE NOT USING WORDS LIKE "CATASTROPHIC."

**MR. MOLO:** I WILL NOT USE "EXISTENTIAL THREAT." HIS TESTIMONY IS HI TESTIMONY, AND THE COURT IS FAMILIAR WITH IT, BECAUSE YOU HAVE THE REPORT, SO HE'LL TESTIFY TO THOSE THINGS WHEN HE TESTIFIES, AND THE WORD "EXISTENTIAL THREAT" IS THERE, AND IT'S NOT GOING TO BE THERE THEN.

**THE COURT:** OKAY.

**MR. MOLO:** BUT THE WORDS THAT ARE ON THE SLIDE ARE LITERALLY A TITLE IN HIS OPINION.

**THE COURT:** ALL RIGHT.

**MR. MOLO:** CAN I BE CLEAR, I CAN USE THE WORD "20

BILLION," BUT I JUST CAN'T PUT IT IN BIG RED LETTERS. ON THE OTHER SLIDE WITH BROCKMAN, THE FACT THAT HE HAS THIS $20 BILLION INTEREST, THEY OBJECTED TO THE BIG RED LETTERS, I'M FINE TAKING THOSE OUT.

THE FACT THAT HE HAS A $20 BILLION INTEREST IS AT THE HEART OF THE CASE. THIS IS --

**THE COURT:** THIS IS NOT AT THE HEART OF THE CASE. I MEAN, COME ON.

**MR. MOLO:** THEY VIOLATED THE CHARITABLE MISSION AND ENRICHED THEMSELVES AS A RESULT OF IT.

**MR. FRENTZEN:** YOUR HONOR, IT'S NOT AT THE HEART OF THE CASE. THE COURT HAS ALREADY POINTED THAT OUT. WE DISCUSSED THIS THIS MORNING. IT'S AN INAPPROPRIATE SLIDE. THE ARGUMENT THAT COMES WITH IT IS INAPPROPRIATE AS WELL.

**THE COURT:** HERE'S WHAT I'M GOING TO DO. YOU CAN REFERENCE BILLIONS. I HAVEN'T HEARD THE EVIDENCE. REFERENCE BILLIONS AND LEAVE IT AT THAT.

**MR. MOLO:** OKAY. THANK YOU.

**MR. COHEN:** YOUR HONOR, CAN WE JUST CLARIFY THAT THAT SAME RULING APPLIES TO A REFERENCE TO MICROSOFT'S INTEREST IN THE --

**THE COURT:** LET'S KEEP IT GENERIC, BILLIONS AT THIS POINT.

**MR. COHEN:** THANK YOU.

**MR. KRY:** THANK YOU, YOUR HONOR.

02:16:25 **THE COURT:** ALL RIGHT. ANYTHING ELSE?

02:16:27 **MR. FRENTZEN:** THANK YOU, YOUR HONOR.

02:16:28 **THE COURT:** OKAY. WE'LL STAND IN RECESS UNTIL 8:00
02:16:43 A.M. TOMORROW. THANK YOU.

02:16:45 (COURT ADJOURNED AT 2:16 P.M.)

CERTIFICATE OF REPORTER

I, THE UNDERSIGNED OFFICIAL COURT REPORTER OF THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA, 280 SOUTH FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY CERTIFY:

THAT THE FOREGOING TRANSCRIPT, CERTIFICATE INCLUSIVE, IS A CORRECT TRANSCRIPT FROM THE RECORD OF PROCEEDINGS IN THE ABOVE-ENTITLED MATTER.

Irene Rodriguez

IRENE RODRIGUEZ, CSR, RMR, CRR
CERTIFICATE NUMBER 8074

DATED: APRIL 27, 2026